**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: ) | |
| ) | |
| Charles Paxton Paret, ) | Case No. 23-217-ELG |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Developer RE1 LLC, ) | |
| ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, ) | |
| ) | (Cases Consolidated) |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| 423 Kennedy St Holdings LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Special Counsel for*
*JPK NewCo LLC;*
*Counsel for the Defendants*

287

# **TABLE OF CONTENTS**

I.     Introduction ................................................................................................... 1

II.    Relevant Facts and Allegations ..................................................................... 3

     a.  Facts and Allegations Internal to the Consolidated Cases ................... 4

     b.  Facts and Allegations Correlative to *In re JPK NewCo LLC,* Case No. 24-262-ELG (Bankr. D.D.C. 2024) ................................................... 5

     c.  Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) ........................................... 6

III.   Argument: The Motion Merits Denial ........................................................... 8

     a.  Removal is Timely ............................................................................... 8

         i.  Paret Case ..................................................................................... 8

         ii.  JPK Case .................................................................................... 12

     b.  Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............. 13

         i.  The Paret Case Renders this Dispute "Core" ......................... 14

         ii.  The JPK Case Renders this Dispute "Core" ......................... 16

         iii.  Mandatory Abstention is Inapplicable to Cases Removed from the Superior Court of the District of Columbia ...................................... 18

     c.  The Centrality of this Case to Two Bankruptcy Estates—and this Honorable Court's Topical Expertise—Militate Against Discretionary Abstention ........................................................................................... 19

     d.  Analysis of Equitable Abstention Occasions the Same Result ........................... 26

IV.   Conclusion ................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bohm v. Howard (In re Howard)*,
2010 Bankr. LEXIS 5109 (Bankr. W.D. Pa. May 17, 2010) ........................................ 12

*Brown v. Chesnut (In re Chesnut)*,
422 F.3d 298 (5th Cir. 2005) ................................................. 10, 11, 12, 24

*Camofi Master LDC v. United States Coal Corp.*,
527 B.R. 138 (Bankr. S.D.N.Y. 2015) ................................................. 26

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008) ................................ 20

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976) ................................................. 19, 26

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959) ................................................. 19

*Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*,
432 B.R. 583 (Bankr. S.D. Tex. 2010) ................................................. 11

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023) ................................................. 20

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021) ................................................. 20

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ................................................. 13

*In re Brittain*,
435 B.R. 318 (Bankr. D.S.C. 2010) ................................................. 9

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004) ................................................. 19

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011) ................................................. 19

iii

*In re Glob. Outreach, S.A.*,
2009 Bankr. LEXIS 1602 (Bankr. D.N.J. June 8, 2009) ............................................. 11

*In re Grooms*,
599 B.R. 155 (Bankr. W.D. Okla. 2019) ..................................................................... 9

*In re HP Bennett, LLC*,
2023 Bankr. LEXIS 3010 (Bankr. D.D.C. Dec. 22, 2023) ......................................... 25

*In re Levenstein*,
371 B.R. 45 (Bankr. S.D.N.Y. 2007) ........................................................................ 11

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ......................................... 26

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) ...................................................................................... 20

*In re Okorie*,
2024 Bankr. LEXIS 339 (Bankr. S.D. Miss. Feb. 12, 2024) .................................... 11

*In re Rosales*,
2012 Bankr. LEXIS 4366 (Bankr. W.D. Tex. Sep. 21, 2012) ................................... 26

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995) ........................................................................................ 13

*In re Sklar*,
626 B.R. 750 (Bankr. S.D.N.Y. 2021) ...................................................................... 25

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013) ......................................... 13

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) .................................................................................... 19

*Patterson v. United States*,
2007 U.S. Dist. LEXIS 43705 (D.D.C. June 18, 2007) ........................................... 18

*Power Plant Entm't Casino Resort Ind., LLC v. Mangano*,
484 B.R. 290 (Bankr. D. Md. 2012) .......................................................................... 21

iv

290

*Schmidt v. U.S. Marshal Serv. (In re Villarreal)*,
2007 WL 470507 (Bankr. S.D. Tex. Feb. 8, 2007)......................................................... 11

*Stancil v. Bradley Invs., LLC (In re Stancil)*,
487 B.R. 331 (Bankr. D.D.C. 2013) ............................................................................... 25

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005).......................................... 22

*Taub v. Taub (In re Taub)*,
427 B.R. 208 (Bankr. E.D.N.Y. 2010)................................................................... 11, 24

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) ............................................................................. 19

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ............................... 13, 20, 21


## Statutes

11 U.S.C. § 362 ................................................................................................................ 9

11 U.S.C. § 541 ................................................................................................................ 9

28 U.S.C. § 151 .............................................................................................................. 22

28 U.S.C. § 157 ........................................................................................... 2, 15, 17, 18

28 U.S.C. § 1334 ............................................................................................ 13, 14, 18


## Rules

Federal Rule of Bankruptcy Procedure 7065 .................................................................. 6

Federal Rule of Bankruptcy Procedure 9027 ............................................................ 8, 12

Federal Rule of Civil Procedure 65 ................................................................................. 6

Local Rule 9013-1 ............................................................................................................ 1

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Motion for Remand (the "Motion," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I.     Introduction

This case concerns the Plaintiffs' breach of four promissory notes and ensuing efforts to enjoin creditors from exercising remedies under those notes and correlative deeds of trust. Two of those notes and deeds of trust are owned by JPK, a debtor in bankruptcy. Wendell Webster (the "Trustee"), the Chapter 7 trustee of the estate of Charles Paret—another debtor in bankruptcy—claims to own an interest in at least two (if not all four) of the notes and deeds of trust. The Trustee also claims to own an interest in at least one of the Plaintiffs. It necessarily follows that this litigation will have a momentous impact upon the administration of two separate bankruptcy estates, while also being likely dispositive of JPK's ability to reorganize. And there is thusly little question—pragmatically and legally—that this litigation is properly conducted in this Honorable Court.

Notwithstanding these realities, the Plaintiffs seek a remand to the District of Columbia Superior Court on four theories: (i) removal is untimely; (ii) mandatory abstention is required; (iii) discretionary abstention is appropriate; and (iv) equitable remand is appropriate. Each of these contentions is substantively and legally unavailing.

1

As to the timing of removal, the Plaintiffs appear to misapprehend the relationship between the governing rule and Title 11 of the United States Code (the "Bankruptcy Code"). The Motion suggests that "no stay was imposed on the Consolidated Cases," Motion, DE #13, at ¶ 26, but the automatic stay set forth in Section 362 of the Bankruptcy Code (the "Automatic Stay") is, as titularly suggested, automatic. No party ever sought relief from the Automatic Stay to pursue this litigation and, as such, the clock to remove this case never started running. Equally, however, even if there did exist a temporal defect, such would have been cured by the commencement of the JPK bankruptcy.

In terms of mandatory abstention, this is the epitome of a core proceeding. The Plaintiffs are seeking to void liens in which the Trustee claims an ownership interest, thereby directly invoking Section 157(b)(2)(K) of Title 28 of the United States Code. The Plaintiffs are also seeking to enjoin the liquidation of debt instruments in which the Trustee claims a partnership interest, thereby directly invoking Section 157(b)(2)(O) of the same Title. And while the JPK bankruptcy was filed after the Motion was docketed, it bears notation that the same two provisions would be applicable to JPK, with the Plaintiffs' requests to cancel debt instruments held by JPK additionally amounting to claims that concern the "allowance or disallowance of claims against the estate" of JPK, thereby further invoking Section 157(b)(2)(B) of the same Title.

The theory of discretionary abstention bodes no better. This case will be markedly important to the Trustee's administration of Charles Paret's bankruptcy estate and likely dispositive, nearly *en toto*, of JPK's bankruptcy estate. The issues raised in this litigation—which concern, chiefly, the adjudication of rights in a commercial debtor/creditor context—are issues on which this Honorable Court enjoys expertise. And while the Plaintiffs assert that the District of Columbia Superior Court is more familiar with these issues and these cases, such does not appear

2

to be a statement rooted in any fidelity to pragmatism; it has been well more than a year since a substantive hearing was held in either of these cases and the overwhelming docket activity has been merely that of the parties seeking to modify scheduling orders and consolidate claims.

The Motion only addresses equitable abstention fleetingly, but the arguments set forth on that matter are no more persuasive. It appears the real issue here is that the Plaintiffs do not wish for a new discovery schedule to be issued. Yet the Plaintiffs joined SNL as a party only recently, with that Defendant's motion to dismiss still pending and with that Defendant accordingly having not yet had occasion to take *any* discovery. And the Plaintiffs are somehow yet to join JPK, despite being affirmatively on notice—for several months—that JPK now holds two of the promissory notes and deeds of trust the Plaintiffs are seeking to nullify. In any event, however, whether or not a new discovery order is entered is a substantively separate question that can be addressed in due course, and that will need to be addressed without regard to whether or not this case is remanded; conflating a procedural question with a jurisdictional motion advances no cognizable purpose other than the muddying of matters.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II.    Relevant Facts and Allegations

The allegations at the core of this case are markedly familiar in nature, closely mirroring those regularly confronted by this Honorable Court in claim objections and adversary proceedings alike:

3

### a. Facts and Allegations Internal to the Consolidated Cases

1.       On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2.       The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3.       Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4.       The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5.       Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6.       DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

4

7. The two respective complaints are colorful in nature, expressly alleging that "Money is the Root of All Evil," DRP Complaint, DE #1-2, at p. 13, and accusing WCP of corruption, 423 Kennedy Complaint, DE #1-2, at p. 669.

8. In light of the two complaints and correlative motions for injunctive relief, the Superior Court entered injunctions prohibiting the Defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust. *See* Hearing Order, DE #1-2, at pp. 1473-78.

9. The DRL Note for $524,000.00, and the 423 Kennedy Note for $1,256,000.00, were both transferred to JPK, which continues to hold both debt instruments and be the beneficiary of the correlative deeds of trust. *See* Notice of Removal, DE #1, at ¶ 9.

10. When DRL joined SNL as a defendant, just earlier this year, SNL moved to dismiss, noting that (i) the promissory note formerly held by WCP, and once assigned to SNL, has now been assigned to JPK; and (ii) JPK is thusly an indispensable party to these proceedings. *See* Motion to Dismiss, DE #1-2, at pp. 1646-1649; Assignment of Deed of Trust, DE #1-2, at pp. 1651-1652.

   **b. Facts and Allegations Correlative to *In re JPK NewCo LLC*, Case No. 24-262-ELG (Bankr. D.D.C. 2024)**

1. On July 23, 2024, Shaheen Sariri ("Mr. Sariri") filed an involuntary petition for Chapter 11 relief against JPK. *See In re JPK NewCo LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Main Case").

2. An order for relief was thereafter entered in the JPK bankruptcy. *See* JPK Main Case at DE #8.

3. JPK's two most valuable assets are the promissory notes on which DRL and 423 Kennedy are obligated. *See* JPK Main Case at DE #12, ¶ 3.

5

296

4.      If not first joined by the Plaintiffs, JPK intends to move to intervene in this consolidated case so as to preserve its property rights in those two promissory notes. *Id.* at ¶ 4(b).

5.      Enforcement of those two promissory notes and the correlative deeds of trust will be integral to JPK's formation of a plan of reorganization. *Id.* at ¶ 3.

6.      JPK is presently bound by the injunctions entered in this case, <mark>Fed. R. Bankr. P. 7065</mark>; <mark>Fed. R. Civ. P. 65(d)(2)</mark>, despite not being a party to this case. *See* JPK Main Case at DE #12, ¶ 3.

7.      In short, this litigation is actively preventing JPK from exercising its rights under the promissory notes and deeds of trust that are assets of JPK, and this litigation will prevent JPK from being able to reorganize in this Honorable Court, unless JPK is joined herein—either (i) by the Plaintiffs; (ii) pursuant to the motion to dismiss filed by SNL; or (iii) by JPK, pursuant to a motion to intervene.

   c.   **Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)**

1.      Charles Paxton Paret ("Mr. Paret") is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2.      In connection with the administration of Mr. Paret's bankruptcy estate, Wendell Webster, the Chapter 7 trustee ("Mr. Webster" or the "Trustee"), has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3.      The Webster Complaint appears to allege the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

4.     The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5.     The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

6.     It genuinely appears that Mr. Webster, a seasoned Chapter 7 trustee is, upon the performance of due diligence and conducting of some variety of an investigation, alleging that he—in his capacity as Mr. Paret's trustee—owns some combination of the promissory notes, deeds of trusts, and real estate assets at issue in this case.

7.     Mr. Webster's beliefs appear to be rooted in those of Mr. Paret himself who, upon questioning under oath, has indicated that he believes his partnership with Mr. Huertas owns DRL and 423 Kennedy or, at minimum, the debt instruments upon which those entities are obligated and/or the real estate assets held by those entities. *See* Notice of Removal, DE #1, at ¶¶ 16-19.

8.     For the avoidance of ambiguity, Mr. Huertas, DPCL and WCP uniformly believe the Trustee's allegations, and Mr. Paret's mirror allegations, to be factually and legally errant, with no partnership existing. The summary of those allegations herein ought not be mistaken for a suggestion that (i) the allegations have any merit whatsoever; or (ii) the allegations can withstand a now-pending motion to dismiss, Paret Adversary at DE #41. But these are nonetheless the solemn extant allegations of a bankruptcy trustee with a sterling reputation and decades of experience.

7

298

### III.     Argument: The Motion Merits Denial

#### a.   Removal is Timely

Removal of this case is timely for two reasons. First, the Plaintiffs never received stay relief to proceed with this litigation, following initiation of Mr. Paret's bankruptcy case, and the deadline to remove thusly never commenced running. And, second, even if removal were untimely in the prism of Mr. Paret's case, removal would certainly be timely in the JPK case, where an order for relief was entered less than two weeks ago.

##### i.     Paret Case

The rule governing removal of actions in the context of bankruptcy proceedings provides, *inter alia*:

> If the claim or cause of action in a civil action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

Subsection (B) of the foregoing rule is critical. As noted in the official Notes of Advisory Committee:

> As long as the stay remains in effect there is no reason to impose a time limit for removal to the bankruptcy court and, therefore, clause (B) of subdivision (a)(2) provides that a removal application may be filed within 30 days of entry of an order terminating the stay. Parties to stayed litigation will not be required to act immediately on commencement of a case under the Code to protect their right to remove.

Fed. R. Bankr. P. 9027 advisory committee's note.

The Plaintiffs, seemingly cognizant of the foregoing rule, posit, *inter alia*, ". . . no stay was imposed on the Consolidated Cases." Motion, DE #13, at ¶ 26. Yet this is fundamentally inaccurate

since the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay") is, as titularly suggested, "automatic."

The Automatic Stay familiarly applies to all "property of the estate." 11 U.S.C. § 362(a)(3). "Property of the estate," in turn, is inclusive of ". . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And, as observed by a sister court, ". . . a debtor may hold an equitable interest in property without holding title thereto under the theory of a resulting trust." *In re Brittain*, 435 B.R. 318, 324 (Bankr. D.S.C. 2010).

Importantly, it is not just the Webster Complaint that identifies the assets at issue in this litigation as being assets of Mr. Paret's estate. Rather, Mr. Paret has scheduled himself as owning a membership interest in 423 Kennedy. *See* Paret Main Case, Schedule A/B: Property, DE #50, at p. 10. And Mr. Paret has, too, claimed a direct ownership interest in both the DRL Property and the 423 Kennedy Property, on his schedules. *Id.* at p. 8, § 42; p. 12 at ll. 24-33, 50-60. Mr. Paret is expressly claiming to own a partnership interest in the real estate assets directly at issue in this case, while also claiming to own an interest in one of the two Plaintiffs herein.

The question, thusly, becomes whether the Automatic Stay is applicable to assets of a debtor's estate when ownership of those assets is in dispute. Certainly the Defendants herein gladly join the Plaintiffs in urging the Trustee's contentions, in the Paret Adversary, are folly. Yet case law firmly holds that no matter the convictions of parties in disagreement, the Automatic Stay *does* apply unless and until the subject dispute is resolved: "There has developed a doctrine that the stay should continue to apply when the ownership of the estate property is in bona fide dispute." *In re Grooms*, 599 B.R. 155, 165 (Bankr. W.D. Okla. 2019).

Indeed, application of the Automatic Stay to so-called "arguable property" is not a novel concept unique to this case. The United States Court of Appeals for the Fifth Circuit confronted

one such situation in the context of a case where there existed a dispute as to whether real estate
was a non-filing spouse's "separate property" or, rather, "community property" also owned by a
debtor on account of his marriage. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir.
2005). This mattered a great deal since the spouse of the party listed on the deed to the property
sought bankruptcy protection but the individual actually named on the deed did not. *Id.*

The deed in *Chesnut* was signed only by the non-filing spouse, specifically reciting that
said property was being acquired "as her sole and separate property. . ." *Id.* Yet mortgage payments
were thereafter missed and a foreclosure was thusly scheduled. *Id.* Five days before the
foreclosure, the deed holder's husband filed for Chapter 13 protection, asserting an interest in the
property titled solely in his wife's name. *Id.*

The *Chesnut* lender, observing that the party on the subject deed had not sought bankruptcy
protection—with only the apparent owner's spouse having filed for Chapter 13 relief—proceeded
with a foreclosure of the real estate asset. *Id.* at 301. The debtor then brought suit for violation of
the Automatic Stay, reasoning that without permitting the bankruptcy court to first determine if
the debtor's claimed ownership interest was legitimate, any foreclosure was illegal. *Id.*

In *Chesnut*, the District Court—on appeal—ultimately held that the filing debtor did *not*
have an ownership interest in the foreclosed asset. *Id.* And, as such, the District Court overturned
the Bankruptcy Court's finding that the Automatic Stay had been violated. *Id.* But the Fifth Circuit,
in turn, reversed, holding that the ultimate disposition of property ownership is immaterial to
application of the Automatic Stay during a time period in which the subject asset falls into the
category of "arguable property" awaiting adjudication as to proper ownership:

> Where seized property is arguable property, it is no answer for the creditor to defend
> the foreclosure by claiming that the property was not properly covered by the stay.
>
> . . . a retroactive classification of the property to shape the scope of the stay would
> encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition

10

and may not be able to vindicate his rights in a later adversary proceeding, a creditor could simply seize arguable property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after foreclosure (as did the district court here), when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

*Id.* at 304.

The holding in *Chesnut* is not an outlier. The United States Bankruptcy Court for the Southern District of Texas has observed that not only does the Automatic Stay apply to "arguable property" but, too, that any claims as to the ownership of "arguable property" are necessarily core proceedings since such "concern[] a claim against the estate." *Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583, 630 (Bankr. S.D. Tex. 2010). The United States Bankruptcy Court for the Eastern District of New York has been perhaps blunter: "Courts in this Circuit have concluded that the automatic stay applies even where 'the debtor's claimed interest in property may turn out to be groundless.'" *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010) (quoting *In re Levenstein*, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007); citing *Schmidt v. U.S. Marshal Serv. (In re Villarreal)*, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb. 8, 2007)).

Other courts have held similarly, recognizing the enormous risk—and palpable injustice—that would be occasioned by allowing creditors to take action against arguable property merely because creditors have conviction that they will ultimately prevail in showing such arguable property to not actually be a debtor's asset. *See, e.g., In re Glob. Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at *22 (Bankr. D.N.J. June 8, 2009) (". . .the principle put forth regarding 'arguable property' is instructive here."); *In re Okorie*, 2024 Bankr. LEXIS 339, at *11-12 (Bankr. S.D. Miss. Feb. 12, 2024) ("PriorityOne was not free to decide for itself that the stay did not apply. In the absence of controlling authority, whether the stay protected the Clinic Property was a question

11

for this Court.") (citing *Chesnut*, 422 F.3d at 304); *Bohm v. Howard (In re Howard)*, 2010 Bankr. LEXIS 5109, at *10 (Bankr. W.D. Pa. May 17, 2010) ("Defendant's alleged 'good faith' belief that the Mineral Rights proceeds were not property of the estate, does not give the Defendant the right to unilaterally maintain control over and dissipate estate property. Allowing the Defendant to excuse her behavior on this 'good faith' defense would run contrary to the principals espoused in the Bankruptcy Code.").

The Trustee claims that the real estate assets and the promissory notes at issue in this litigation are assets of Mr. Paret's estate. Mr. Paret has not only scheduled them as assets but, too, gone a step further, claiming an ownership interest in one of the Plaintiffs. WCP, DPCL and Mr. Huertas certainly disagree with these assertions, but such does not change that the assertions render the promissory notes and the real estate assets herein "arguable property." Inherent in "arguable" property is the notion of an argument. It is a strange grouping to see DRL, 423 Kennedy, WCP, DPCL, and Mr. Huertas all on the same side of an issue, but that does not change that there is an issue, with someone no less formidable than a bankruptcy trustee on the other side. And such, in turn, means the Automatic Stay is—and has been—applicable to this case.

With the Automatic Stay being applicable, the timeliness argument of the Plaintiffs necessarily fails. Rule 9027 is express in using language that provides for a removal deadline that is the "longest of" three time periods, and the period applicable to termination of the Automatic Stay never even started running—much less lapsed—in this case. Removal is timely in nature.

### ii. JPK Case

Even if, *arguendo*, removal were untimely in the prism of the Paret Main Case, removal would certainly still be timely in the JPK bankruptcy, since an order for relief was entered a scant two weeks ago. Should this Honorable Court find removal to have not otherwise been timely in

nature, the Defendants respectfully request leave to amend their Notice of Removal, so as to expressly correlate the same with the JPK bankruptcy (which did not exist at the time of original removal). Such would, no doubt, be timely in nature. And, as discussed in greater detail *infra*, the JPK bankruptcy is as integral to maintenance of this case in this Honorable Court as is the Paret bankruptcy.

**b. Mandatory Abstention is Inapplicable Since this is a Core Proceeding**

The Plaintiffs next assert that mandatory abstention is necessitated herein because these are not "core" proceedings. In so doing, the Plaintiffs appear to misconstrue what does—or does not—constitute a "core" proceeding, tainting the resulting analysis in the Motion. This matter is core, for multiple reasons, to both the Paret bankruptcy and the JPK bankruptcy, and mandatory abstention is thusly inapplicable *sub judice*.

As observed by this Honorable Court in, ironically, a case involving one of the entities the Trustee is apparently seeking to borrow money from to finance the Paret Adversary, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language of the mandatory abstention statute itself:

13

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

==28 U.S.C. § 1334(c)(2).==

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been commenced in a "court of the United States." As discussed in detail *infra*, these are core proceedings, so this Honorable Court need not reach the second prong. Yet, even if the second prong were to be reached, it would not be satisfied *sub judice*.

### i.        The Paret Case Renders this Dispute "Core"

Mr. Paret claims an ownership interest in both the DRL Property and the 423 Kennedy Property, with the Trustee additionally asserting Mr. Paret to own an interest in the promissory notes secured by those real estate assets. The Plaintiffs are seeking cancellation of the subject debt instruments and permanent injunctions prohibiting foreclosure; the Defendants are seeking to proceed with foreclosures so both properties may be sold at public auction. It is accordingly rather difficult to surmise how this case is not core to Mr. Paret's bankruptcy.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11. . .

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

14

305

==28 U.S.C. § 157(b)(2).==

These proceedings are plainly core under Section 157(b)(2)(B) insofar as (i) Mr. Paret claims to own the DRL Property and the 423 Kennedy Property; (ii) WCP and JPK assert the existence of liens on the DRL Property and the 423 Kennedy Property; and (iii) this consolidated case will determine the validity, *vel non*, of those liens and their underlying debt instruments. If WCP and JPK ultimately prevail, each entity will have a claim against "arguable property" of Mr. Paret's estate. If the positions of the Plaintiffs are ultimately prevailing, these putative claims against "arguable property" of Mr. Paret's estate will be disallowed.

The same is true pursuant to Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. WCP and JPK assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens are each against "arguable property" of Mr. Paret's estate. Such very much renders these consolidated cases core proceedings.

Analysis under Section 157(b)(2)(O) invites the same result. WCP and JPK are seeking to foreclose assets that are "arguable property" of Mr. Paret's estate. The Trustee is affirmatively claiming to hold an interest in the promissory notes underlying the liens that would be foreclosed. Mr. Paret also appears to be contending that he owns part—or all—of 423 Kennedy (the entity), a single asset real estate company that will lose its sole notable asset if foreclosed. And while these positions of Mr. Paret are, no doubt, mildly schizophren==ic (==with there being a notable tension between claiming to both own a company and to own an interest in the secured debt owed by that company), such is not so brazenly strange a concept as to be facially implausible: the equity

interests of many debtors in this Honorable Court are, too, the holders of secured claims in the resulting cases.

Indeed, it is impossible to surmise an outcome to this litigation that does not directly impact the current posture of the Trustee's administration of Mr. Paret's estate. If WCP and JPK prevail, the Trustee will assuredly continue in positing that he is entitled to a share of any resulting proceeds, with the Trustee having alleged such monies ought to be held to constitute a constructive trust for the estate's benefit. If the Plaintiffs prevail, the Trustee will assuredly focus on the contention that Mr. Paret is the owner of 423 Kennedy (the entity), whilst simultaneously having to recognize that any claims of the estate to the proceeds of the DRL lending activity are now of diminished—if any—value.

### ii. The JPK Case Renders this Dispute "Core"

This litigation is also manifestly core to the JPK bankruptcy case, with JPK owning two of the four at-issue promissory notes and two of the four at-issue deeds of trust. The Plaintiffs are seeking, through these consolidated cases, to cancel the debt instruments held by JPK; it is genuinely difficult to conceive of a proceeding more "core" in nature than one seeking to cancel or nullify the two largest assets of a debtor's bankruptcy estate.

In the context of the JPK case, the Section 157 analysis is similar but not entirely overlapping, with there being additional, independent factors militating in favor of a "core" finding:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate. . .

16

307

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

Insofar as the two most significant assets of JPK's estate are one of the DRL Notes and one of the 423 Kennedy Notes, alongside the correlative deeds of trust, this litigation will be central to the administration of JPK's estate. As has already been intimated in a filing in the JPK case, a plan of reorganization will center on collecting on these two promissory notes, with the monies collected therefrom being utilized to fund a plan. *See* JPK Main Case at DE #12, ¶ 3. This litigation is accordingly "core" under Section 157(b)(2)(A).

Similarly, the crux of these lawsuits is the Plaintiffs' efforts to have promissory notes— including those held by JPK—cancelled. Even though the Plaintiffs have, remarkably, refused to join JPK in these consolidated cases, the Plaintiffs are making claims against JPK's estate by seeking equitable relief that will void assets of the estate if successful; there is simply no cogent manner of reading the *ad damnum* clauses herein without observing that the Plaintiffs are seeking direct relief against promissory notes belonging to JPK. This is accordingly the epitome of a core proceeding under Section 157(b)(2)(B).

In terms of Section 157(b)(2)(C), the analysis is slightly trickier. Since the Plaintiffs have refused to join JPK as a party to this litigation, JPK is yet to file a responsive pleading that would include a counterclaim. However, once joined, JPK will be suing both DRL and 423 Kennedy for breach of the at-issue promissory notes.

The Section 157(b)(2)(K) analysis is the same as with Mr. Paret's case: the Plaintiffs are seeking determinations as to the validity, *vel non*, of liens. The only difference is that with JPK the security instruments and underlying promissory notes are not "arguable property" but, rather,

17

seemingly unrefuted property.[1] A debtor in bankruptcy—JPK—is the record-holder of two deeds of trust; the Plaintiffs are arguing those deeds of trust are invalid and unenforceable. It is legitimately difficult to conceive of a fact pattern that falls more squarely in the ambit of Section 157(b)(2)(K).

Similarly, this case falls well within the scope of Section 157(b)(2)(O). While the catch-all provision is often stretched in other contexts, the facts *sub judice* rather firmly and properly invoke core status under this provision. This litigation will, more than any other judicial proceeding, impact the liquidation of assets of JPK's estate. If the Plaintiffs prevail in receiving all of the relief they seek, JPK will be unable to liquidate its two largest assets. If WCP and JPK prevail, at least in part, those assets will be ripe for prompt liquidation through foreclosure. There is a very direct correlation between the ultimate outcome of these consolidated cases and JPK's ability to liquidate assets pursuant to a plan of reorganization.

      iii.      **Mandatory Abstention is Inapplicable to Cases Removed from the Superior Court of the District of Columbia**

As noted *supra*, there are two conjunctive prongs to mandatory abstention analysis: (i) whether a proceeding is core and (ii) whether a case could have been commenced in a "court of the United States" in the first instance. Since this is very much a core proceeding, the second prong need not be addressed. However, even if that second criterion were somehow reached, the Plaintiffs would still fail to show that this case "could not have been commenced in a court of the United States," 28 U.S.C. § 1334(c)(2), for the very simple reason that the Superior Court of the District of Columbia is a "court of the United States." *See, e.g.*, *Patterson v. United States*, 2007 U.S. Dist. LEXIS 43705, at *2 (D.D.C. June 18, 2007) (". . . Superior Court judges are federal

---

[1] Ironically, to the extent the notes and deeds of trust are "arguable property," such is solely because of the claims being leveled by Mr. Paret and the Trustee—further engulfing this consolidated action in the universe of two bankruptcy proceedings.

Article I judges appointed by the President of the United States for fixed terms and confirmed by the Senate.") (citing *Palmore v. United States*, 411 U.S. 389, 392 (1973)).

### c. The Centrality of this Case to Two Bankruptcy Estates—and this Honorable Court's Topical Expertise—Militate Against Discretionary Abstention

The Plaintiffs are also errant in suggesting discretionary abstention to be proper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and two separate bankruptcy cases pending in this Honorable Court. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents—are ones upon which this Honorable Court has expertise. The outcome of this litigation will have a profound impact upon the reorganization of JPK and will, too, materially inform the composition of the estate of Mr. Paret being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d. 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its

19

jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998)). The Plaintiffs suggest a more expansive set of twelve factors, Motion, DE #13, at ¶ 32, from this Honorable Court's ruling in *A V. Car & Home*:

> (a) efficiency in the administration of the debtor's estate;
> (b) the extent to which state law issues predominate over bankruptcy issues;
> (c) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;
> (d) the presence of a related proceeding commenced in state court;

20

311

(e) the existence of a jurisdictional basis other than § 1334;

(f) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(g) the substance rather than form of an asserted "core" proceeding;

(h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(i) the burden of the federal court's docket;

(j) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(k) the existence of a right to a jury trial; and

(l) whether non-debtor parties are involved in the proceeding.

*A V. Car & Home*, 2018 Bankr. LEXIS 3955, at *21-22 (quoting *Power Plant Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012)). For purposes of symmetry between the briefs, the Defendants will analyze all of the *A V. Car & Home* factors.

Taking the first factor, this litigation needs to be brought to a resolution so as to allow both the Paret and JPK estates to be properly administered. If the Trustee owns the DRL Property and the 423 Kennedy Property, or any of the promissory notes, or 423 Kennedy itself, such will have a profound impact upon the estate he is charged with administering. Similarly, JPK cannot much go about liquidating its two most notable assets until the injunction prohibiting such liquidation is lifted, either by way of intervening order or final judgment. This litigation is absolutely central to both bankruptcy cases, and this factor accordingly weighs heavily in favor of denying abstention.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor

21

312

matters." *Sticka v. Rivera (In re Rivera)*, ==2005 Bankr. LEXIS 3423, at \*29== (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

In assessing the third criterion, there are no "difficult or unsettled questions of state law" at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

On the fourth question, there is no related proceeding commenced in state court, aside from the initial suit filed by 423 Kennedy that was *sua sponte* dismissed by the Superior Court more than a year-and-a-half ago. *See* Motion, DE #13, at p. 3, n. 1. These two consolidated cases are, of course, deeply related to one another. But both cases have been properly removed to this Honorable Court.

The fifth factor is one of the few that bodes in favor of the Plaintiffs: there is no jurisdictional basis for this suit to be heard in the United States District Court for the District of Columbia—or this Honorable Court, which is a "unit" of the District Court, ==28 U.S.C. § 151==— other than the pendency of the Paret and JPK bankruptcies.

The sixth inquiry is "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." As noted *passim*, the relatedness of this proceeding to the Paret and JPK

bankruptcies is markedly intimate in nature. The disposition of these consolidated cases will directly weigh on whether the Trustee in Mr. Paret's case can liquidate multiple "arguable property" assets. And the disposition will be central to JPK's plan of reorganization, with the latter debtor having an asset base comprised largely—albeit not entirely—of two of the four promissory notes and deeds of trust that the Plaintiffs are seeking to have cancelled or nullified herein.

The seventh consideration is the substance—in lieu of form—of "core" proceedings. This is particularly important *sub judice*; while none of the causes of action in these consolidated cases are expressly titled as efforts to determine the validity of liens, such is very much the substance of what is being sought. Equally, this is a matter that will directly weigh on the administration of the JPK estate, for the reasons discussed throughout. And, as previewed above, this is a case in which JPK will absolutely be bringing counterclaims against the Plaintiffs as soon as JPK is joined, either by the Plaintiffs through amendment or by way of a motion to intervene.

The eighth question is "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court." It genuinely does not appear possible to sever the non-core issues from these consolidated cases. Theoretically, the causes of action against Mr. Drazin, for breach of fiduciary duty, might be somehow severable. But severing those claims would only serve to work enormous logistical complications upon the litigation and risk the rendering of inconsistent judgments. Mr. Drazin is being sued for breaching his fiduciary duty, as a trustee under deeds of trust, by scheduling foreclosures in accord with the debt instruments owned by WCP, JPK and, per Mr. Paret's contentions, Mr. Paret. To consider Mr. Drazin's fidelity to his ministerial charge in one court, and the enforceability of the very deeds of trust that appoint Mr. Drazin in another court, would be a recipe for unbridled chaos. Put most simply, the core claims cannot be severed from the other claims without forcing a series of legal gymnastics that,

314

almost *per se*, run contra to the very equitable notions underlying remand in rare and extraordinary circumstances.

The ninth inquiry is the burden on this Honorable Court's docket. There does not appear to be any reason to surmise these consolidates cases would place an undue burden on the docket.

The tenth factor is the likelihood of forum shopping. The Plaintiffs suggest such to be a factor: "Removal at this untimely and late stage, days before important depositions were about to be taken, and just nine weeks before trial, raises a strong likelihood of forum shopping." Motion, DE #13, at ¶ 35. What the Plaintiffs miss, however, is that (i) per the Plaintiffs' own counsel, no such depositions were about to be taken; *see* E-mail from Counsel for Plaintiffs, DE #12-1 ("I do not expect these depositions to go forward on the dates and times noted, but rather to serve as placeholders given that we have to re-coordinate the scheduling of depositions that we previously planned to accomplish before the 7/9/24 close of discovery."); and (ii) the taking of depositions—or commencement of a trial—would have been a violation of the Automatic Stay and, as such, void.

As noted in Section III(a)(i), *supra*, the Automatic Stay applies to "arguable property." *Chesnut*, 422 F.3d at 300; *Taub*, 427 B.R. at 221. Mr. Paret has scheduled the DRL Property and the 423 Kennedy Property as assets of his estate. He has also asserted that he owns 423 Kennedy, rendering it an asset of his estate. Equally, the Trustee has contended that the promissory notes and deeds of trust at issue in these consolidated cases are, too, assets of Mr. Paret's estate. So the Automatic Stay has been in effect since, at minimum, November 15, 2023 (the date on which Mr. Paret filed schedules listing this arguable property). *See* Paret Main Case at DE #50. Quite plainly, the Plaintiffs have never sought stay relief. And, under the law of this Honorable Court, any actions in violation of the Automatic Stay are not merely voidable but, indeed, void. *See, e.g., In re HP*

24

315

*Bennett, LLC*, 2023 Bankr. LEXIS 3010, at *10 (Bankr. D.D.C. Dec. 22, 2023) ("This Court agrees with the majority that acts taken in violation of the automatic stay are void.") (citing *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *In re Sklar*, 626 B.R. 750, 762-63 (Bankr. S.D.N.Y. 2021)). It necessarily follows that the Plaintiffs' theory of forum shopping is misplaced. This case was not removed to stop depositions and a trial from occurring; depositions and a trial could not have occurred, as a matter of law, because the Plaintiffs never sought relief from the Automatic Stay.

The eleventh factor is the right to a trial by jury. There can be no trial by jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory Note, DE #1-2, at p. 56, § 7.[2]

The final consideration is the existence of non-debtor parties in the proceedings. This criterion is unusually complex instantly for three reasons: (i) Mr. Paret and the Trustee are contending a partnership that encompasses the assets implicated in these proceedings; (ii) Mr. Paret contends he owns 423 Kennedy, which is a party to these proceedings; and (iii) as noted *passim*, JPK is an indispensable party to these proceedings and is a debtor in bankruptcy. So while no debtor is presently identified in the caption of these consolidated cases, one debtor and his Chapter 7 trustee are asserting their rights to be substantively implicated, and another debtor is noting that it is an indispensable party.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2,

---

[2] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical provision.

2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, <mark>424</mark>

<mark>U.S. at 813</mark>. There is simply no basis to make such an exception in these consolidated cases, where

nearly every factor militates against abstention and where the administration of two separates

debtors' estates hangs in the proverbial balance. This Honorable Court has expertise in the issues

presented in this litigation, has a docket that can ably accommodate this litigation, and has

jurisdiction over this litigation.

### d.  Analysis of Equitable Abstention Occasions the Same Result

The Motion also seeks abstention on equitable grounds. *See* Motion, DE #13, at § D, p. 11.

This doctrine, however, is generally regarded as being coterminous with discretionary abstention.

*Camofi Master LDC v. United States Coal Corp.*, <mark>527 B.R. 138, 143</mark> n.3 (Bankr. S.D.N.Y. 2015).

And where the two notions are viewed as not completely overlapping, courts nonetheless assess

such requests using the same factors. *In re Rosales*, <mark>2012 Bankr. LEXIS 4366, at *13</mark> (Bankr. W.D.

Tex. Sep. 21, 2012).

Nonetheless, it bears observation that the two arguments posited in support of equitable

abstention—delay in taking depositions and a pending request for a new scheduling order—are

undermined by the reality that this litigation is subject to the Automatic Stay. Insofar as this point

is discussed in some detail twice above, *see, supra,* §§ III(a)(i); III(c), the Defendants will forbear

from repeating the same analysis and simply incorporate the foregoing arguments by reference.

### IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion;

and (ii) afford such other and further relief as may be just and proper.

26

317

Respectfully submitted,

Dated: August 20, 2024          By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        Bar No. MD18071
                                        The VerStandig Law Firm, LLC
                                        9812 Falls Road, #114-160
                                        Potomac, Maryland 20854
                                        Phone: (301) 444-4600
                                        mac@mbvesq.com
                                        *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of August, 2024, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                        /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR REMAND

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs") submit this reply in support of their Motion for Remand (the "Motion for Remand") (ECF No. 13) and to address the Opposition to the Motion for Remand (the "Opposition") filed on August 20, 2024 by DP Capital LLC ("DP Capital"), Russell Drazin ("Mr. Drazin"), Daniel Huertas ("Mr. Huertas"), WCP Fund I LLC ("WCP Fund I"), and SF NU, LLC ("SF NU") (collectively, "Defendants") and JPK NewCo LLC ("JPK Newco.") (ECF No. 20).  In support of their reply, the Plaintiffs state as follows:

### INTRODUCTION

The Defendants and JPK Newco rely heavily on the fact that JPK Newco was put into involuntary bankruptcy a mere three days after Plaintiffs filed their Motion for Remand.  *See In Re JPK NewCo, LLC*, Case No. 24-00262-EL (the "JPK Chapter 11 Case").  But that reliance is misplaced.  While the Opposition was purportedly filed on behalf of Defendants *and* JPK Newco, JPK Newco currently lacks standing to contest the Motion for Remand.[1]  The Defendants' newfound reliance on the JPK Bankruptcy Case fares no better than their original reliance on the Chapter 7 proceeding involving Charels Paret ("Mr. Paret"), *In Re Charles Paxton Paret,* Case No. 23-00217-ELG (the "Paret Chapter 7 Case") and a related adversary proceeding first filed by Mr. Paret against Daniel Huertas ("Mr. Huertas"), *Charles Paret v. Daniel Huertas*, AP No.: 23-10025-ELG (the "Paret Adversary Proceeding").  That is because neither Mr. Paret nor JPK Newco are parties to the Consolidated Cases.  Moreover, any relation

---

[1]  Defendants' counsel, Maurice B. VerStandig, filed the Opposition on behalf of the Defendants and JPK NewCo even though he has not yet received approval to act as JP NewCo's counsel.

2

between the Paret Chapter 7 Case and the Paret Adversary Proceeding, on the one hand, and the

Consolidated Cases, on the other hand, is tenuous, at best.

<u>RESPONSE TO THE DEFENDANTS' OPPOSITION</u>

A.     <u>The Automatic Stay Does Not Apply to the Claims in the Consolidated Cases.</u>

In the Opposition, the Defendants argue that the automatic stay pursuant to 11 U.S.C.

§362(a)(3) is applicable to the Consolidated Cases as a result of the filing of the Paret Chapter 7

Case.[2]  Opp. at p. 9.  But the plain language of 11 U.S.C. §362(a)(3) makes clear that the

automatic stay only prevents "any act to obtain possession of the property of the estate or of

property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3).

The automatic stay is not implicated here because the claims in the Consolidated Cases do not

involve either obtaining possession of any property of the estate, or obtaining property from the

estate, or exercising control over any property of the estate.  The Consolidated Cases involve

state-law claims for monetary damages against specific persons not in bankruptcy and stopping

two wrongful foreclosures.  Because the automatic stay does not apply to the Plaintiffs' claims,

the Defendants cannot rely upon Fed. R. Bankr. P. 9027(a)(2) to avoid the untimeliness of their

Notice of Removal.

B.     <u>The 423 Kennedy Property and the DRL Property Do Not Constitute Property of
the Estate of Mr. Paret.</u>

Before addressing why the Defendants' reliance on the JPK Chapter 11 Case is

misplaced, a brief response to the claim that the Consolidated Cases constitute a core proceeding

is appropriate.  The Plaintiffs both possess and own, and have for some time, the properties

---

[2]     The Defendants claim a stay was automatically imposed when the Paret Chapter 7 Case was
initiated, but Defendants then rely on Mr. Paret's schedules, which were not filed until months later.
*See* ECF No. 50 in the Paret Chapter 7 Case.

Case 24-90022-ELG Doc 1-2 Filed 08/26/24 Entered 08/26/24 19:49:27 Desc Main
Case 1:25-cv-02240-GLG Document 1 Filed 08/26/24 Page 36 of 1284
Exhibit A - All Docket Entries (Part 4) of 12 Page 36 of 1284

located at 423 Kennedy Street, NW, Wahington, DC 20011 (the "423 Kennedy Property")[3] and

5501st Street, NW, Washington, DC 20011 and 5505 1st Street, NW, Washington, DC 20011 (the

"DRL Property").[4]  Copies of the deeds to both properties will be provided at the August 27,

2024 hearing.  Any claim that the 423 Kennedy Property and the DRL Property are owned by

Mr. Paret, thus purportedly rendering the Consolidated Cases a "core proceeding," are

demonstrably false.

> 1.   The Chapter 7 Trustee's Allegations Are Not Determinative.

In their removal notice, the Defendants relied on allegations made by Wendall Webster,

the Chapter 7 Trustee (the "Ch. 7 Trustee") who filed the Third Amended Complaint in the Paret

Adversary Proceeding against Mr. Huertas (and others).  More specifically, the Defendants

pointed to the Ch. 7 Trustee's allegations pertaining to a partnership that allegedly existed

between Mr. Paret and Mr. Huertas "that 'involve[s]' 423 Kennedy and myriad other companies

and real estate assets." *See* ECF No. 1 ("Notice of Removal") at p. 3, ¶ 11.  The Defendants also

claimed that "the Trustee asserts a partnership interest in assets titled in the name of both 423

Kennedy and [Developer RE1]." *Id.* p. 6, ¶ 25.[5]

---

[3]   By Deed dated July 8, 2016 recorded in the District's land records as Document # 2016073584, 423 Kennedy St NW LLC conveyed part of what comprises the 423 Kennedy Property to 423 Kennedy.  By Deed dated August 3, 2017 and recorded in the District's land records as Document # 2017087687, Louis R. Williams and Patricia A. Williams conveyed the other portion of what comprises the 423 Kennedy Property to 423 Kennedy.

[4]   By Deed dated December 23, 2021 recorded in the District's land records as Document # 2021169018, 5501 1st St Holdings LLC conveyed part of what makes up the DRL Property to Developer RE1.  By Deed dated December 23, 2021 recorded in the District's land records as Document # 2021169017, 71 Kennedy St Holdings LLC conveyed the other portion of what makes up the DRL Property to Developer RE1.  Both 5501 1st St Holdings LLC and 71 Kennedy St Holdings LLC are currently listed in the District's online records as dissolved companies.

[5]   The Defendants dispute those partnership allegations.  *See, e.g.,* Notice of Removal at p. 6, ¶ 27 ("Mr. Huertas and WCP deny – in the most vehement terms possible – that there ever existed a partnership with Mr. Paret."); Motion to Dismiss filed on August 14, 2024 (ECF No. 41 in the Paret

The Defendants cite to several cases that dealt with disputed claims to property. According to the Defendants, the 423 Kennedy Property and the DRL Property constitute "arguable property" of Mr. Paret's bankruptcy estate. The Defendants, however, stretch the notion of "arguable property" a bit too far. *In Re Brittan*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010), one of the cases cited in the Opposition, helps explain why there is no real dispute that neither the 423 Kennedy Property nor the DRL Property are part of the bankruptcy estate of Mr. Paret. In that case, the South Carolina Bankruptcy Court explained, applying South Carolina law, that "a member's bankruptcy estate has no interest in property of an LLC and that the estate's property interest is limited to the member's distributional interest." *In re Brittain*, 435 B.R. at 322. The same concept holds true in the District where "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04.

This Court has also previously observed that, "[w]hen a member of an LLC files for bankruptcy, '[t]here is no question that the economic rights [of that member], that is the membership interest, becomes property of the estate.'" *Simu v. Carvalho* (In re Carvalho), 2016 Bankr. LEXIS 3969, at *8 (Bankr. D.D.C. Nov. 15, 2016) (citing *Spain v. Williams*, 455 B.R. 485, 502 (Bankr. E.D. Va. 2011)). The interest of a member in a domestic limited liability company is called a "Transferrable Interest", which is defined as:

> the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right. The term applies to any fraction of the interest, by whomever owned.

D.C. Code § 29-801.02. D.C. Code § 29-805.01 further provides that "[a] transferrable interest is personal property." It follows that the property interest that a member of a limited liability

---

Adversary Proceeding) at p. 21 ([DP Capital] and [WCP Fund I] maintain no partnership ever existed.").

8161\0002\4870-1807-3307.v2

323

company has is limited to that member's transferrable interest, which is personal property and that is the interest that becomes party of an individual debtor's bankruptcy estate.

There is no evidence before the Court that Mr. Paret, individually, has ever owned the 423 Kennedy Property or the DRL Property. The filings in the Paret Chapter 7 Case also make it clear that Mr. Paret may claim, at most, a *partnership interest* in a "General partnership with Daniel Huertas," as shown on Mr. Paret's Schedules (ECF No. 50 in the Paret Chapter 7 Case). Specifically, the Ch. 7 Trustee alleges is that "[m]ultiple limited liability corporations are involved in the HP partnership transaction, including as follows: ". . . 423 Kennedy St Holdings LLC purchased [the 423 Kennedy Property] for a combined amount of $1,725,000 . . . and 5505 1st St Holdings LLC purchased [the DRL Property] for $1,000,000 on July 19, 2017…" Third Am. Compl. at ¶ 45 (ECF No. 38-1 in the Paret Adversary Proceeding). The Trustee then alleges that an email from Mr. Huertas "effectuated" that the partnership "included 50% ownership of the LLC Properties." *Id*. at ¶ 45. The Trustee did not allege, however, that Mr. Paret, individually, has a member interest in either 423 Kennedy or Developer RE1. Even if he did so contend, Mr. Paret's interest, if any, would be limited to his membership interest in the limited liability company that owns the property, not an interest in the property itself.

It is also worth noting that neither Mr. Paret nor the Ch. 7 Trustee have initiated proceedings against either of the Plaintiffs as the record owners of the DRL Property and the 423 Kennedy Property. Both Mr. Paret and the Ch. 7 Trustee seemingly recognize that if causes of action exist regarding those properties, the only cognizable claims are properly brought against Mr. Paret's alleged partner and not against the actual property owners. For example, the Chapter 7 Trustee has not asserted a quiet title claim against the property owners of record.

6

2.  The Authority the Defendants Rely Upon is Either Inapplicable or Distinguishable.

In *Brown v. Chestnut (In re Chestnut)* 422 F.3d 298, 300 (5ᵗʰ Cir. 2005), another case cited to support the "arguable property" contention, the Fifth Circuit considered a dispute over whether real estate was "separate property" versus "community property", and it was in the context of considering "the question whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right . . . ." *Brown,* 422 F.3d at 300. The facts in the Consolidated Cases are easily distinguishable from the facts in *Chesnut.* In the Consolidated Cases, it is the Plaintiffs who seek to enjoin the Defendants from proceeding with foreclosures on properties that the Plaintiffs own (not Mr. Paret). Indeed, if the automatic stay applied here, it is the Defendants who would seemingly be violating that stay by trying to foreclose on properties that are the "arguable property" of Mr. Paret. The *Chestnut* decision also cautioned that: "[n]ot every bankruptcy petition, with an attendant claim of a right in property, will transform what is obviously not property of the estate into arguable property that is subject to process requirements." *Id.* at 306.

The Defendants' citation to *Taub v. Taub* (*In re Taub*), 427 B.R. 208 (Bankr. E.D.N.Y. 2010), is also not helpful to their position. In *Taub,* the debtor had a legal interest in four properties, three of which were titled in her name alone and the other titled with her husband as tenants by the entirety. *Taub,* 427 B.R. at 213. The properties at issue in *Taub* were the subject of divorce proceedings. In this case, there is not even an allegation that either the 423 Kennedy Property or the DRL Property are now, or have ever been, titled in Mr. Paret's name.

C.  The Filing of JPK Chapter 11 Case Did Not Convert the Claims in the Consolidated Cases Into A Core Proceeding.

In support of removal, the Defendants initially cited to 28 U.S.C. §§ 157(b)(2)(I) and (O) under the guise that the Consolidated Cases involve a "core" proceeding. The Motion for

7

Remand shows why those provisions are inapplicable here, namely because the Consolidated

Cases seek monetary and injunctive relief against parties that are not debtors in any bankruptcy

proceeding.  In the Opposition, the Defendants again cite to inapplicable provisions, this time

claiming that the Consolidated Cases implicate 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (K).

      In relying on U.S.C. § 157(b)(2)(A) and (B), the Defendants and JPK Newco point to

JPK Newco's *unrelated* bankruptcy proceeding.  JPK Newco's involuntary petition was filed on

July 23, 2024, three days after the Plaintiffs filed the Motion for Remand.  JPK Newco's

assertions can be dismissed based upon its lack of standing.  Several bankruptcy courts have

found that where a non-party to an adversary proceeding files a motion or objection to the relief

sought, that party lacks standing.  *See Flener v. Monticello Banking Co.* (*In re Alexander)*, Nos.

06-10238(1)(7), 08-1013, 2009 Bankr. LEXIS 3721, at *2 (Bankr. W.D. Ky. Nov. 16, 2009)

(denying debtor's motion where debtor lacked standing because he "is not a party to

this adversary proceeding and has not sought to intervene in this action as a party.) [6]

      While JPK Newco claims it will move to intervene in the Consolidated Cases, it has not

done so – nor did it take that step in the Consolidated Cases before removal.  And contrary to

what is represented in the Opposition, the Plaintiffs do not seek relief "to determine the validity

of liens."  Opp. at p. 23.  As for U.S.C. § 157(b)(2)(C), the Defendants and JPK assert that "the

analysis is slightly trickier" and claim "JPK will be suing both DRL and 423 Kennedy for breach

of the at-issue promissory notes." Opp. at p. 17.  But as it stands, the Defendants and JPK

recognize there are no "counterclaims by the estate against persons filing claims against the

---

[6]    *See also Beekman Paper Co. v. Saint Theresa Props., Inc.* (*In re Saint Theresa Props., Inc.*),
152 B.R. 852, 853 n.1 (Bankr. S.D.N.Y. 1993) (declining to consider submissions from non-parties
who had not sought to intervene, but who "purported to file papers" objecting to motion); *Redmond
v. Brooke Holdings, Inc. (In re Brooke Corp.)*, Nos. 08-22786, 10-6225, 2017 Bankr. LEXIS 1038, at
*3 (Bankr. D. Kan. Apr. 14, 2017) (denying motion of non-party to an adversary proceeding).

8

estate," as contemplated by <mark>28 U.S.C. § 157(b)(2)(C)</mark>.  Regardless, the JPK Chapter 11 Case is

not related to Mr. Paret's Chapter 11 Case.  The filing of an involuntary petition against JPK

Newco does nothing to further the Defendants' contention that claims in the Consolidated Cases

are "core" claims.

Defendants also now claim that <mark>28 U.S.C. § 157(b)(2)(K)</mark> is implicated.  Opp. at pp. 17-

18.  But that section pertains to "determinations of the validity, extent, or priority of liens."  The

injunctive relief sought by the Plaintiffs in the Consolidated Cases centers on the Plaintiffs'

request to enjoin wrongful foreclosures.[7]  The Plaintiffs are not asking for determinations of the

validity, extent, or priority of any lien.  Since the Plaintiffs' claims do not arise under title 11 nor

in a case under title 11, the Plaintiffs claims cannot be qualified as "core" proceedings.

     D.    <u>Mandatory Abstention Is Applicable Here.</u>

The Defendants also contend that mandatory abstention never applies to a case removed

from D.C. Superior Court.  Opp. at pp. 18-19.  Defendants cite only to *Patterson v. United*

*States*, <mark>2007 U.S. Dist. LEXIS 43705, at \*2</mark> (D.D.C. June 18, 2007) in support of their contention

that D.C. Superior Court is "a court of the United States" within the meaning of 28 U.S.C.

1334(c)(2), rendering mandatory abstention inapplicable to cases removed from D.C. Superior

Court.  This contention is not correct.  With respect to mandatory abstention, the statute provides

that:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district *court shall abstain from hearing such proceeding if an*

---

[7]   Two DC Superior Court judges have already issued injunctions prohibiting any foreclosures
on the two properties until further order of the Court.

8161\0002\4870-1807-3307.v2

Case 24-10023-ELG Doc 1-2 Filed 08/26/24 Entered 08/26/24 19:49:20 Desc Main
Exhibit A - All Docket Entries (Part 1) Page 42 of 1284

> *action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.*

28 U.S.C. 1334(c)(2) (italic emphasis added). This court has previously found that mandatory

abstention applied to cases removed from, and remanded back to, the D.C. Superior Court. *See*

*e.g*., *Welch Family Ltd. P'ship Four v. Brown* (*In re A V. Car & Home, LLC*), 2018 Bankr. LEXIS

3955, at *21 (Bankr. D.D.C. Dec. 14, 2018) (concluding mandatory abstention applies and

remanding case to D.C. Superior Court); and *Majidy v. Bello* (*In re Bello*), 2018 Bankr. LEXIS

1223 (Bankr. D.D.C. Apr. 17, 2018) (applying mandatory abstention under Section § 1334(c)(2)

and remanding case to D.C. Superior Court).

Additionally, while *Patterson* does include an observation that D.C. Superior Court

judges "are federal Article I judges," that case did not hold that the D.C. Superior Court is "a

court of the United States" versus "a State forum." In *In re Bello*, this Court explained that

"court of the United States" equates to federal jurisdiction for purposes of 28 U.S.C. § 1334(c)(2)

observing that "Section 1334(c)(2) requires courts to abstain from hearing cases that are based on

a state law claim, for which the court only has related to jurisdiction, there is no other federal

jurisdiction, that is commenced in state court, and can be timely adjudicated in that state court."

*Id.* at 4. Indeed, the Defendants acknowledge that "there is no jurisdictional basis for this suit to

be heard . . . in this Honorable Court . . . other than the pendency of the Paret and JPK Newco

bankruptcies." Opp. at p. 22. Since the Consolidated Cases are, at best, only related to a core

proceeding, mandatory abstention is required. Accordingly, remand to the state-forum, in this

case the D.C. Superior Court, is appropriate.

E. <u>The Factors Governing Discretionary Abstention Also Require a Remand.</u>

Even if this Court were to fall back to the factors governing discretionary abstention, an

analysis of those factors shows that a remand is appropriate. In arguing that discretionary

<div align="center">10</div>

8161\0002\4870-1807-3307.v2

328

abstention is not appropriate here, the Defendants (and JPK Newco) continually point to the administration of Mr. Paret's bankruptcy estate and of JPK Newco's bankruptcy estate as a key factor, but they fail to identify exactly how, it at all, the Consolidated Cases will impact the administration of either bankruptcy estate.  Again, in the Consolidated Cases the Plaintiffs seek monetary relief from certain parties and Mr. Paret is not one of those parties.  The Plaintiffs also sought to enjoin certain parties from wrongfully foreclosing on the properties that the Plaintiffs own.  To the extent JPK Newco now claims an interest in the loan documents related to the 423 Kennedy Property or the DRL Property, the Plaintiffs are not seeking to "cancel" the promissory notes or the deeds of trusts, but rather to have the court determine that certain provisions in the loan documents are either unenforceable or could not be invoked as a basis for either a default under the loan documents or in support of a foreclosure.

## CONCLUSION

The Consolidated Cases should be remanded because removal was untimely.  Alternatively, the Consolidated Cases should be remanded on the basis of either mandatory abstention or discretionary abstention.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  August 26, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandra J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
  *and 423 Kennedy St Holdings, LLC*

11

8161\0002\4870-1807-3307.v2

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th  day of August, 2024, a true copy of the foregoing

Plaintiffs' Reply in Support of Motion for Remand was served electronically and a Notice of

Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James. D. Sadowski
James D. Sadowski

12

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF
### IN SUPPORT OF THEIR MOTION FOR REMAND

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers") submit this supplemental brief in support of their Motion for Remand (the "Motion for Remand") (ECF # 13) to address subsequent developments in the two bankruptcy cases involving Charles Paret (23-10025) (adversary proceeding alleging a partnership) and the JPK NewCo LLC involuntary case petition (Case No. 24-00262). For convenience, the Borrowers will refer to Case. No. 23-10025 as the "Paret Adversary Proceeding" and to Case No. 24-00262 as the "JPK Involuntary Proceeding".

A.     UPDATES IN THE PARET ADVERSARY PROCEEDING (23-10025)

After the Motion for Remand was filed, on August 14, 2024, Daniel Huertas, WCP Fund I, LLC, and DPA Capital d/b/a Washington Capital Partners (the "WCP Defendants") filed a twenty-seven page motion to dismiss all of the claims in the Third Amended Complaint, which the Chapter 7 Trustee opposed. See ECF # 41 in 23-10023. A hearing on that motion was initially set for October 30, 2024, but that hearing was continued to December 18, 2024. For reasons that were apparently never explained on the record, on November 12, 2024, the WCP Defendants and the Chapter 7 Trustee submitted a consent order to resolve the motion to dismiss, which the Court entered on November 12, 2024. ECF # 47 in 23-10023. In that consent order, the Court dismissed Count II (Breach of Fiduciary Duty), Count IV (Breach of the Duty of Good Faith and Fair Dealing), and Count V (Fraud) without prejudice. The surviving counts were Count I (Declaratory Judgment as to the existence of a partnership) and Count III (Breach of Partnership Agreement). The only surviving Count that contains a request for the imposition of a constructive trust over the Partnership Property *as a remedy* is Count II.

It is worth noting that a constructive trust is not a separate cause of action, rather, it is an equitable remedy that a court devises *after* litigation. *See, e.g., Hickey v. Scott,* 738 F.

Supp. 2d 55, 61 (D.D.C. 2010) (citing *Macharia v. United States,* 238 F. Supp. 2d 13, 31 (D.D.C. 2002) (italic emphasis added) and *United States v. BCCI Holdings (Lux.),* S.A., 46 F.3d 1185, 1190 (D.C. Cir. 1995). A constructive trust arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it." *Graves v. Graves,* 51 A.3d 521, 524 (D.C. 2012) (citing *Gray v. Gray,* 412 A.2d 1208, 1210 (D.C. 1980); *In re Estate of Reilly,* 933 A.2d 830, 837 (D.C. 2003) (same). The burden of proof for establishing a constructive trust is by clear and convincing evidence. *Hertz v. Klavan,* 374 A.2d 871, 873 (D.C. 1977).

Here, it would be speculation for the Court to now conclude that the Chapter 7 Trustee will prove that a partnership existed as alleged in the Paret Adversary Proceeding. It would be even more speculative for the Court to now conclude that the Chapter 7 Trustee will meet the clear and convincing standard of proof for the imposition of a constructive trust. But speculation is what the WCP Defendants base one of their jurisdictional arguments upon. As the argument goes, *if* it is later determined that there is a valid partnership, and *if* the loan documents involving the properties owed by Developer RE1 and 423 Kennedy are considered Partnership Property, and *if* the Court imposes a constructive trust over the loan documents (or the loan proceeds), then the Court has jurisdiction over all of the claims in the removed cases. These many "ifs" are the thinnest of reeds upon which the WCP Defendants can argue that the Court has either core or "related to" jurisdiction over *all of the claims* in the Removed Cases as a result of the still-unproven allegations in the Paret Adversary Proceeding.

B.    UPDATES IN THE JPK INVOLUNTARY CASE (24-00262)

After the Motion for Remand was filed, on September 23, 2024 the US Trustee's office filed a motion to dismiss JPK Involuntary Case as being filed in bad faith. ECF # 37 in

3

24-00262.  Shaheen Sariri, the petitioning creditor, filed an opposition to the motion to dismiss

on October 9, 2024.  ECF # 48 in 24-00262.  On October 15, 2024, the WCP Defendants filed a

forty-eight page Opposition to the motion.  ECF # 56 in 24-00262.

The first two Operating Reports filed by JPK NewCo confirmed that it has just $935.00

in a bank account, no other funds to operate, no income from customers, and that is has no

employee taxes to pay.  ECF ## 62-63 in 24-00262.  On October 25, 2024, Daniel Huertas gave

testimony at the meeting of creditors, during which he confirmed nearly all of the allegations that

the US Trustee's office had set forth in its motion to dismiss.  Mr. Huertas confirmed that JPK

NewCo really had no business purposes and was created "on the advice of counsel".  Mr.

Huertas' admissions are discussed in more detail in Section 2, *infra*.  The US Trustee's office

will be pursuing discovery and taking depositions related to the motion to dismiss pursuant to the

Scheduling Order issued on November 13, 2024.  ECF # 70 in 24-00262.  The resolution of that

motion to dismiss is scheduled for an evidentiary hearing on February 4th and 6th of next year.

S̲UPPLEMENTAL̲ A̲RGUMENTS̲ ̲IN̲ S̲UPPORT̲ ̲OF̲ ̲THE̲ M̲OTION̲ ̲FOR̲ R̲EMAND̲

1.    There Is Now No Question that the Petitioning Creditor Has Engaged in the
      Forum Shopping of a Simple Breach of Contract Claim.

In his Opposition to the motion to dismiss in the JPK Involuntary Proceeding, Mr.

Sariri represented that:

> Mr. Sariri *elected* to file an involuntary bankruptcy *rather than*
> *pursue his remedies in the Superior Court of the District of*
> *Columbia* because he was concerned about the length of time it
> would take for him to obtain a money judgment in Superior Court
> and whether the Debtor's assets would be dissipated by that time.

ECF # 48 in 24-00262 (Sariri Opp.) at 2, ¶ 5 (italic emphasis added).

This contention lacks merit on its face, other than conclusively showing that Mr. Sariri,

like the WCP Defendants, is attempting to engage in forum shopping.  For starters, this Court is

8161\0002\4916-0299-6481.v2

not the proper court to use to collect a debt under a promissory note. Mr. Sariri's claim about

possible delay in obtaining a money judgment against JPK NewCo in Superior Court also rings

hollow. Given that his alleged claim is under a promissory note for which there was an

undisputed event of non-payment, such a claim would easily be decided quickly in Superior

Court by the filing a motion for summary judgment – this even assuming that JPK NewCo would

even invest any time in defending against the claim. Forum shopping of a routine breach of

contract claim by a lone disgruntled creditor is not a valid reason to file an involuntary

bankruptcy petition.

2. Mr. Huertas Has Confirmed That JPK NewCo is Not a Legitimate Business and
That It Had No Real Business Purpose.

After the Motion for Remand was filed, many of the allegations that the US

Trustee's office made about JPK NewCo in the motion to dismiss the JPK Involuntary

Proceeding were confirmed at the meeting of creditors by Mr. Huertas in his sworn testimony.

*See generally* Exhibit 1 (complete transcript from the JPK NewCo meeting of creditors).

In response to various questions at the meeting of creditors, Mr. Huertas confirmed that JPK

NewCo's only purpose was to hold "troubled assets" as a result of "advice of counsel" as noted

in the following excerpt:

5

```
 5              MS. EUSTIS:  Okay.  Thank you.

 6              Mr. Huertas, what is the nature of the Debtor's

 7    business?  What does the Debtor do?

 8              MR. HUERTAS:  The Debtor business, are you -- are you

 9    referring to JPK NewCo?

10              MS. EUSTIS:  Yes.

11              MR. HUERTAS:  JPK NewCo is it's a holding company of

12    the -- some troubled assets that we had placed in there under

13    advice of counsel.

14              MS. EUSTIS:  So you said it's a holding company of

15    troubled assets that was formed on advice of counsel?  Is that

16    what you -- I just want to make sure I heard you correctly.

17              MR. HUERTAS:  Correct.  It's a holding company.

18    Holding two troubled assets that we have.
```

Ex. 1 at 7, lines 5-18.

Mr. Huertas also confirmed that JPK NewCo was not engaged in any business activities

and had no other ongoing business operations:

```
13              MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14    NewCo engaged in any other business activities?

15              MR. HUERTAS:  Not at this time.

16              MS. EUSTIS:  So at the time that it was formed, there

17    was no other ongoing business operations of JPK NewCo?

18              MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

Mr. Huertas also confirmed that JPK NewCo was not engaged in any other business activities and had no other ongoing business operations:

```
13            MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK
14    NewCo engaged in any other business activities?
15            MR. HUERTAS:  Not at this time.
16            MS. EUSTIS:  So at the time that it was formed, there
17    was no other ongoing business operations of JPK NewCo?
18            MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

Mr. Huertas also confirmed that Mr. Sariri was a longtime friend of Mr. Huertas:

```
11            MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,
12    have a prior relationship with Mr. Sariri?
13            MR. HUERTAS:  Yes.
14            MS. EUSTIS:  And what was that relationship?
15            MR. HUERTAS:  A business relationship.
16            MS. EUSTIS:  How long had you previously known him
17    for?
18            MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been
19    a while.  Probably north of fourteen years, fifteen years.
20            MS. EUSTIS:  Would you consider Mr. Sariri a friend of
21    yours personally?
22            MR. HUERTAS:  Yes.
```

Ex. 1 at 9, lines 11-22.

7

Mr. Huertas also confirmed that JPK NewCo had the same address as his company, DP
Capital, LLC "and its affiliates":

```
23          MS. EUSTIS:  And your counsel indicated that the
24   principal address of JPK is in Virginia.  What is that address?
25          MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

1    McLean, Virginia 22102.
2           MS. EUSTIS:  And do any other businesses operate out
3    of that address?
4           MR. HUERTAS:  Yes.
5           MS. EUSTIS:  What businesses?
6           MR. HUERTAS:  DP Capital LLC and its affiliates.
```

Ex. 1 at 9, lines 11-22 and 10, lines 1-6.

Mr. Huertas also confirmed that JPK NewCo did not pay any rent and had no other
business locations:

```
7           MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --
8           MR. HUERTAS:  No.
9           MS. EUSTIS:  Okay.  Are there any other --
10          MR. HUERTAS:  The answer was no rent.
11          MS. EUSTIS:  I'm sorry.  Go ahead.
12          MR. HUERTAS:  Yeah.  The answer was no, no rent.

13          MS. EUSTIS:  Okay.  Are there any other locations
14   affiliated or associated with JPK NewCo?
15          MS. EUSTIS:  No.
```

8

Ex. 1 at 10, lines 1-15.

Mr. Huertas also confirmed that JPK NewCo had no operating expenses:

```
13          MS. EUSTIS:  What are JPK's post-petition obligations?
14   What are its operating costs?
15          MR. HUERTAS:  Sorry.  Can you please repeat the
16   question?  There was some noise in the background.
17          MS. EUSTIS:  Sure.  And if you are not me or Mr.
18   Huertas, can you please mute your line?  Thank you.
19          Yes.  So what are JPK NewCo's operating expenses?
20          MR. HUERTAS:  Currently, zero.
```

```
4           MS. EUSTIS:  Okay.  And you indicated that there are
5    no operating expenses currently.  Have there ever been any
6    operating expenses for JPK?
7           MR. HUERTAS:  No.  No.
8           MS. EUSTIS:  Do you anticipate that there will be any
9    operating expenses for JPK?
10          MR. HUERTAS:  Not at this time.
```

Ex. 1 at 17, lines 13-20, and 18, lines 4-10.

Mr. Huertas also confirmed that JPK NewCo did not have any employees, and that it had

no day-to-day operations, and that DP Capital LLC maintained JPK NewCo's books and records:

9

```
22              MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23              MR. HUERTAS:  No employees.

24              MS. EUSTIS:  Are there day-to-day operations of JPK

25      NewCo?

 1              MR. HUERTAS:  No.

 2              MS. EUSTIS:  Okay.  Who maintains the books and

 3      records for JPK NewCo?

 4              MR. HUERTAS:  Can you please repeat the question?

 5              MS. EUSTIS:  Who maintains the books and records for

 6      JPK NewCo?

 7              MR. HUERTAS:  DP Capital LLC.
```

Ex. 1 at 10, lines 13-17, and 11, lines 1-7.

Mr. Huertas also testified that he did not know who owned SF NU, LLC, a 29.44% co-owner of JPK NewCo:

```
 7              Mr. Huertas, do you know who the owners of SF NU, LLC

 8      are?

 9              MR. HUERTAS:  No.

10              MS. EUSTIS:  Do you have any ownership interest in SF

11      NU, LLC?

12              MR. HUERTAS:  No.
```

Ex. 1 at 12, lines 7-12.

Mr. Huertas also testified that he has an ownership interest in the WCP Fund I, LLC:

10

```
13              MS. EUSTIS:  And what about WCP Fund I LLC?  Do you
14   know who the members of this entity are?
15              MR. HUERTAS:  Yes, I know who the members are.
16              MS. EUSTIS:  And who are they?
17              MR. HUERTAS:  There are several members because it's a
18   fund in excess of thirty different LLCs or -- or individuals.
19   I don't have all of those right in my -- readily available, but
20   there is several members of the fund.
21              MS. EUSTIS:  Okay.  And do you have any interests
22   personally in WCP Fund I, LLC?
23              MR. HUERTAS:  Yes.
```

Ex. 1 at 17, lines 13-23.

These facts alone demonstrate that JPK NewCo was not a legitimate business, but was instead created on advice of the WCP Defendants' bankruptcy counsel for a non-business reason. The sole, improper purpose of creating JPK NewCo was to use that company as a means to manufacture JPK NewCo's insolvency in order to forum shop the Superior Court consolidated cases to this Court.[1] The Court should not allow the manufactured involuntary bankruptcy filing of JPK NewCo to serve as a jurisdictional bootstrap for the removed cases.  Mr. Huertas' existing

---

[1] JPK NewCo also contends that is was formed as a result of settlement discussions that took place at a mediation, but that mediation (before JAMS) concluded on January 25, 2024 after the WCP Defendants, acting through Mr. Huertas, unilaterally decided that the mediation was over. More than two months later on March 29, 2024, the WCP Defendants sent a settlement proposal (by email) that only involved the 423 Kennedy project.  That proposal made no mention of any special purpose entity that had been created, or needed to be created, and the "new" proposal contained economic terms that were less favorable to 423 Kennedy than the last proposal that was made during the mediation.  423 Kennedy did not respond to the March 25, 2025 proposal because it concluded that the proposal was just another sign of the WCP Defendants' bad faith tactics.  In any event, there was no legitimate settlement need for JPK NewCo to continue to exists because the March 29, 2024 proposal, by its plain terms, expired at "the close of business on Friday, April 12, 2024."

testimony demonstrates that JPK NewCo is the alter-ego of the existing Defendants in the

Superior Court cases who did not want to continue to lose the litigation battles in that court.

       3.      <u>The Court Should Not Put its Stamp of Approval on this Obvious Attempt to
Create Bankruptcy Court Jurisdiction In Order and to Improperly Forum Shop
State Law Claims</u>.

        It does not take a vivid imagination to see the opportunity for future forum

shopping mischief that this Court will create if it allows the WCP Defendants to remove state

court claims after creating a limited liability company that only existed on paper, and whose only

purpose was to create removal jurisdiction to this Court. Put another way, if the Court does not

remand these cases, this Court will put its stamp of approval on the deliberate forum shopping of

state law claims by a lender to a bankruptcy court. In addition to unfairly allowing the WCP

Defendants to change the Borrower's choice of forum in this case, a decision denying the Motion

for Remand here will result in future consequences down the line. No future borrower-plaintiff

will be able to successfully maintain litigation in DC Superior Court against a lender because a

future lender-defendant could replicate what the WCP Defendants have done here, *i.e.,* create a

new company with no business purpose, transfer assets to that company, create loans that the

newly-created company has no ability to pay, then consent to that newly-created company being

placed into involuntary bankruptcy by a friendly creditor. This type of jurisdictional

gamesmanship is not what Congress envisioned when it created the bankruptcy court system that

placed statutory guard rails on the Court's ability to handle what are purely state law claims.

CONCLUSION

The Consolidated Cases should be remanded because removal was untimely.

Alternatively, the Consolidated Cases should be remanded on the basis of either mandatory

abstention or discretionary abstention.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: November 27, 2024 /s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of November, 2024, a true copy of the

foregoing Plaintiffs' Supplemental Brief in Support of Their Motion for Remand was served

electronically and a Notice of Electronic filing should be sent to all persons receiving notices via

the Court's CM/ECF system.

/s/ James. D. Sadowski
James D. Sadowski

13

1                      UNITED STATES BANKRUPTCY COURT
                             DISTRICT OF COLUMBIA
2
      In Re:                        .  Case No. 24-00262-ELG
3                                   .  Chapter 11
      JPK NEWCO LLC,                .
4                                   .  Washington, D.C.
                  Debtor.           .  October 29, 2024
5     . . . . . . . . . . . . . .   .

6     CONTINUED MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF
                           THE BANKRUTPCY CODE
7                     BEFORE KRISTEN S. EUSTIS, ESQ.
                   OFFICE OF THE UNITED STATES TRUSTEE
8
      APPEARANCES:
9
      For the Debtor:          Wolff & Orenstein, LLC
10                             By: JEFFREY M. ORENSTEIN, ESQ.
                               15245 Shady Grove Road
11                             Suite 465
                               Rockville, Maryland 20852
12
      For Office of the U.S.   U.S. Department of Justice
13    Trustee:                 By: KRISTEN S. EUSTIS, ESQ.
                               1725 Duke Street
14                             Suite 650
                               Alexandria, Virginia 22314
15
      For Subchapter V         Offit Kurman, P.A.
16    Trustee:                 By: STEPHEN A. METZ, ESQ.
                               7501 Wisconsin Avenue
17                             Suite 1000W
                               Bethesda, Maryland 20814
18
      For Shaheen Sariri:      Hirschler Fleischer
19                             By: KRISTEN E. BURGERS, ESQ.
                               1676 International Drive
20                             Suite 1350
                               Tysons, Virginia 22102
21
      For 423 Kennedy St       Greenstein DeLorme & Luchs, P.C.
22    Holdings LLC and         By: JAMES D. SADOWSKI, ESQ.
      Developer RE1 LLC:       801 17th Street, Northwest
23                             Suite 1000
                               Washington, District of Columbia
24                             20006

25



Case 25-00200-ELG Doc 21 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (Panel Meeting C Exhibits) Page 2 of 42

2

1    Also Present:              Daniel Huertas
                                Debtor representative
2
     Proceedings recorded by electronic sound recording.
3    Transcript produced by transcription service.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from AI Docket Emcles (2 Meeting Page 6 of 42          3
Exhibit Transcript from AI Docket Emcles (2 Meeting) of 1284 Page 3 of 42

```
 1              (Proceedings commenced at 10:02 a.m.)

 2              MS. EUSTIS:  Good morning.  This is the continued 341

 3    meeting of creditors in the case of JPK NewCo LLC, case number

 4    24-262, pending in the United States Bankruptcy Court for the

 5    District of Columbia.  My name's Kristen Eustis.  I'm an

 6    attorney with the Department of Justice, and I represent the

 7    United States Trustee for Region 4 in connection with this

 8    case.  Today's October 29th, 2024, and it is approximately

 9    10:02 a.m.

10              Counsel for the Debtor, can you please identify

11    yourself and your client for the record?

12              MR. ORENSTEIN:  Good morning.  Jeff Orenstein on

13    behalf of JPK NewCo, and with me this morning is Daniel

14    Huertas, principal.

15              MS. EUSTIS:  Thank you.  I can confirm for the record

16    that I have reviewed a copy of Mr. Huertas' identification, and

17    he is who he says he is.

18              Also on the line, Mr. Metz, can you please identify

19    yourself for the record?

20              MR. METZ:  Sure.  Good morning.  This is Steve Metz,

21    the subchapter V trustee.

22              MS. EUSTIS:  Thank you.

23              Mr. Sadowski.

24              Okay.  Ms. Burgers.

25              MS. BURGERS:  Good morning.  This is Kristen Burgers
```

Case 25-00200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from All Docket Entries (Part 1) Meeting Page 61 of 1284 Page 4 of 42

4

1    on behalf of the petitioning creditors, Shaheen Sabiri.

2            THE COURT:  Okay.  And Jim Sadowski is also on the

3    line.

4            Anyone else on the line that I have not identified?

5            Okay.  Pardon.

6            MR. SADOWSKI:  I'm sorry.  Mr. Eustis, I'm sorry.  I

7    think I was on mute when I said who I was here for.  It's Jim

8    Sadowski for Developer RE1 LLC and 423 Kennedy St Holdings LLC.

9    Sorry about that.

10           MS. EUSTIS:  That's okay.  Thank you.

11           Mr. Huertas.  So first, I will ask questions of you,

12   and then I will allow creditors and parties-in-interest the

13   opportunity to question you about the Debtor's financial

14   affairs.  For those that will be asking questions, please

15   identify yourselves before asking questions so that the Court

16   reporter, if a transcript is requested of this 341 meeting,

17   will be able to identify your voice.

18           So unless you have any questions, Mr. Huertas, we can

19   go ahead and get started.

20           MR. HUERTAS:  Let's get started.

21           MS. EUSTIS:  Okay.

22        (Debtor representative sworn.)

23           MS. EUSTIS:  Please state your name and address.

24           MR. HUERTAS:  Daniel Huertas.  909 Chinquapin Road,

25   McLean, Virginia, 22102.

```
 1               MS. EUSTIS:  Thank you.  And did you attend the

 2    initial debtor interview in connection with this case?

 3               MR. HUERTAS:  Yes.

 4               MS. EUSTIS:  And to the best of your knowledge and

 5    belief, have all of the schedules and the statement of

 6    financial affairs been filed in this case?

 7               MR. HUERTAS:  Yes.

 8               MS. EUSTIS:  And to the best of your knowledge and

 9    belief, is the information that's contained in the schedules

10    and statement of financial affairs true and correct?

11               MR. HUERTAS:  Yes.

12               MS. EUSTIS:  And did you review and sign the

13    statements and schedules before they were filed with the court?

14               MR. HUERTAS:  I did.  The one thing I want to point

15    out, there was a small typo that I -- I found, but I don't know

16    if this is the right time to do it or -- but I found a small

17    typo in the form.

18               MS. EUSTIS:  Sure.  What was the typographical error?

19               MR. HUERTAS:  It's on page 12 of my attachment of the

20    schedules.  We have an extra five on the junior lien.

21               MR. ORENSTEIN:  It's the continuation sheet for the

22    schedule A/B.

23               MS. EUSTIS:  Okay.  And Mr. Orenstein, what was that

24    address?

25               MR. ORENSTEIN:  And it's the address -- it's the
```

Case 25-00200-ELG Doc 26-1 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from ALE Docket - Emcees LLC Meeting of Creditors Page 6 of 42

6

1    address of First Street, Northwest.  It's listed as 55501 First

2    Street, Northwest.  I believe it should be 5501 First Street,

3    Northwest.

4            MS. EUSTIS:  Okay.  Thank you.

5            And thank you, Mr. Huertas, for that.

6            Mr. Huertas, has the Debtor closed its pre-petition

7    bank accounts?

8            MR. HUERTAS:  Yes.

9            MS. EUSTIS:  And where did it maintain its pre-

10   petition bank account?

11           MR. HUERTAS:  Previously was in United Bank.

12           MS. EUSTIS:  Okay.  And was this the Debtor's only

13   account?

14           MR. HUERTAS:  Correct.  Yes.

15           MS. EUSTIS:  Okay.  And has the Debtor opened a

16   debtor-in-possession account?

17           MR. HUERTAS:  Have I opened a -- a -- the new account

18   as requested by the -- by the request?  Yes, I did as what I

19   was supposed to do.

20           MS. EUSTIS:  Okay.  And where is that account located,

21   the debtor-in-possession account?

22           MR. HUERTAS:  I believe it's the same bank, United

23   Bank, but it has a -- it's a different account number.

24           MS. EUSTIS:  Okay.  Mr. Orenstein, was a form 1 signed

25   by the bank?  I didn't see it.

Case 24-10200-ELG  Doc 261  Filed 09/02/24  Entered 09/02/24 19:06:02  Desc
Exhibit Transcript from Meeting of Creditors  Page 7 of 42                    7

Case 24-10200-ELG  Doc 261  Filed 09/02/24  Entered 09/02/24 19:06:02  Desc
Exhibit A - Docket Entries LLC Meeting of Creditors Page 64 of 1284 Page 7 of 42

```
 1              MR. ORENSTEIN:  It was.

 2              MS. EUSTIS:  Okay.

 3              MR. ORENSTEIN:  It was.  It was provided some time

 4   ago.

 5              MS. EUSTIS:  Okay.  Thank you.

 6         Mr. Huertas, what is the nature of the Debtor's

 7   business?  What does the Debtor do?

 8              MR. HUERTAS:  The Debtor business, are you -- are you

 9   referring to JPK NewCo?

10              MS. EUSTIS:  Yes.

11              MR. HUERTAS:  JPK NewCo is it's a holding company of

12   the -- some troubled assets that we had placed in there under

13   advice of counsel.

14              MS. EUSTIS:  So you said it's a holding company of

15   troubled assets that was formed on advice of counsel?  Is that

16   what you -- I just want to make sure I heard you correctly.

17              MR. HUERTAS:  Correct.  It's a holding company.

18   Holding two troubled assets that we have.

19              MS. EUSTIS:  Okay.  Where was the business formed?

20              MR. HUERTAS:  I believe the business was formed in

21   Virginia.

22              MS. EUSTIS:  Okay.  In what year?

23              MR. HUERTAS:  This year.

24              MS. EUSTIS:  2024?

25              MR. HUERTAS:  Correct.
```

Case 25-00200-ELG Doc 26-1 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Events LLC Meeting Page 65 of 284 Page 8 of 42

8

1          MS. EUSTIS:  Okay.  And you said it was formed to hold

2     these two troubled assets?

3          MR. HUERTAS:  Correct.

4          MS. EUSTIS:  And who previously held these two

5     troubled assets?

6          MR. HUERTAS:  One was held by WCP Fund I LLC.  And the

7     different one was held by SF NU, LLC.

8          MR. ORENSTEIN:  Kristen, just to clarify, it was

9     formed in the District of Columbia, not in Virginia.

10          MS. EUSTIS:  Okay.  Thank you, Mr. Orenstein.

11          MR. ORENSTEIN:  Thank you.  The principal office is in

12     Virginia, but it's a D.C. entity.

13          MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14     NewCo engaged in any other business activities?

15          MR. HUERTAS:  Not at this time.

16          MS. EUSTIS:  So at the time that it was formed, there

17     was no other ongoing business operations of JPK NewCo?

18          MR. HUERTAS:  Correct.

19          MS. EUSTIS:  And who is Sam Sariri?

20          MR. HUERTAS:  Shaheen Sariri.

21          MS. EUSTIS:  Okay.

22          MR. HUERTAS:  Shaheen Sariri is a creditor of JPK

23     NewCo.

24          MS. EUSTIS:  And he loaned JPK NewCo Money?

25          MR. HUERTAS:  Yes.

Case 25-00200-ELG Doc 21 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from Aller Deposition Excerpts (Partial) Meeting Page 66 of 1284 Page 9 of 42

9

1          MS. EUSTIS:  And how much did Mr. Sariri loan to JPK

2   NewCo?

3          MR. HUERTAS:  $50,000.

4          MS. EUSTIS:  And what was that $50,000 used for by

5   JPK?

6          MR. HUERTAS:  The $50,000 was utilized to fund the

7   cost associated with the litigation.  And we funded a loan to a

8   third-party.

9          MS. EUSTIS:  And who was the third-party?

10          MR. HUERTAS:  The third-party is Energy Morocco LLC.

11          MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,

12   have a prior relationship with Mr. Sariri?

13          MR. HUERTAS:  Yes.

14          MS. EUSTIS:  And what was that relationship?

15          MR. HUERTAS:  A business relationship.

16          MS. EUSTIS:  How long had you previously known him

17   for?

18          MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been

19   a while.  Probably north of fourteen years, fifteen years.

20          MS. EUSTIS:  Would you consider Mr. Sariri a friend of

21   yours personally?

22          MR. HUERTAS:  Yes.

23          MS. EUSTIS:  And your counsel indicated that the

24   principal address of JPK is in Virginia.  What is that address?

25          MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript of 341 Meeting - Part B Page 67 of 1284 Page 10 of 42

10

 1  McLean, Virginia 22102.

 2          MS. EUSTIS:  And do any other businesses operate out

 3  of that address?

 4          MR. HUERTAS:  Yes.

 5          MS. EUSTIS:  What businesses?

 6          MR. HUERTAS:  DP Capital LLC and its affiliates.

 7          MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --

 8          MR. HUERTAS:  No.

 9          MS. EUSTIS:  Okay.  Are there any other --

10          MR. HUERTAS:  The answer was no rent.

11          MS. EUSTIS:  I'm sorry.  Go ahead.

12          MR. HUERTAS:  Yeah.  The answer was no, no rent.

13          MS. EUSTIS:  Okay.  Are there any other locations

14  affiliated or associated with JPK NewCo?

15          MS. EUSTIS:  No.

16          MS. EUSTIS:  And just to be clear, JPK NewCo does not

17  own the space out of which it operates; is that correct?

18          MR. HUERTAS:  That is correct.

19          MS. EUSTIS:  Okay.  So there's no rental obligations

20  at all?

21          MR. HUERTAS:  That's correct.

22          MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23          MR. HUERTAS:  No employees.

24          MS. EUSTIS:  Are there day-to-day operations of JPK

25  NewCo?

```
 1              MR. HUERTAS:  No.

 2              MS. EUSTIS:  Okay.  Who maintains the books and

 3      records for JPK NewCo?

 4              MR. HUERTAS:  Can you please repeat the question?

 5              MS. EUSTIS:  Who maintains the books and records for

 6      JPK NewCo?

 7              MR. HUERTAS:  DP Capital LLC.

 8              MS. EUSTIS:  Okay.  Is there any individual at DP

 9      Capital LLC that is in charge of maintaining the books and

10      records of the Debtor?

11              MR. HUERTAS:  Yes.

12              MS. EUSTIS:  And who would that be?

13              MR. HUERTAS:  Yes.  Christina with an H.  Christina.

14              MS. EUSTIS:  Um-hum.

15              MR. HUERTAS:  Araujo, A-R-A-U-J-O.

16              MS. EUSTIS:  Great.  Thank you for spelling that for

17      me.

18              MR. HUERTAS:  Sure.

19              MS. EUSTIS:  Okay.  Are the owners of the Debtor still

20      SF NU, LLC and WCP Fund I LLC?

21              MR. HUERTAS:  Yes.

22              MS. EUSTIS:  Okay.  And do you recall what the split

23      of ownership is between WCP Fund I and SF NU?

24              MR. HUERTAS:  I do not recall.  I wonder if I can ask

25      my counsel to see if he has that.  I don't recall the split.
```

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript of the Docket Entries (Part III) Page 12 of 42

12

```
 1            MS. EUSTIS:  Okay.  That's okay.

 2            MR. HUERTAS:  (Unintelligible) --

 3            MR. ORENSTEIN:  I believe it's -- I believe it's in

 4    the statement of financial affairs.

 5            MS. EUSTIS:  It is, Mr. Orenstein.  That's fine.  If

 6    he doesn't recall, that's fine.  I don't need the split.

 7            Mr. Huertas, do you know who the owners of SF NU, LLC

 8    are?

 9            MR. HUERTAS:  No.

10            MS. EUSTIS:  Do you have any ownership interest in SF

11    NU, LLC?

12            MR. HUERTAS:  No.

13            MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14    know who the members of this entity are?

15            MR. HUERTAS:  Yes, I know who the members are.

16            MS. EUSTIS:  And who are they?

17            MR. HUERTAS:  There are several members because it's a

18    fund in excess of thirty different LLCs or -- or individuals.

19    I don't have all of those right in my -- readily available, but

20    there is several members of the fund.

21            MS. EUSTIS:  Okay.  And do you have any interests

22    personally in WCP Fund I, LLC?

23            MR. HUERTAS:  Yes.

24            MS. EUSTIS:  Okay.  Okay.  So going back to JPK NewCo,

25    are there any other officers or directors other than SF NU, LLC
```

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript of the Docket Entries (Part 1) Page 13 of 42

13

1    and WCP Fund I LLC?

2             MR. HUERTAS:  No.

3             MS. EUSTIS:  Have there been any changes in the

4    ownership of JPK in the last year?

5             MR. HUERTAS:  No.

6             MS. EUSTIS:  Does anyone receive any compensation from

7    JPK NewCo LLC?

8             MR. HUERTAS:  No.

9             MS. EUSTIS:  Does JPK have an interest in any other

10   business entity?

11            MR. HUERTAS:  No.

12            MS. EUSTIS:  Has any individual or entity guaranteed

13   any portion of the Debtor's debts?

14            MR. HUERTAS:  Can you please repeat the question?

15            MS. EUSTIS:  Sure.  Are there any individuals or

16   entities that have guaranteed any portion of the Debtor's

17   business debts?

18            MR. HUERTAS:  No.

19            MS. EUSTIS:  Does the Debtor utilize an accountant?

20            MR. HUERTAS:  No.

21            MS. EUSTIS:  Okay.  And since the Debtor was formed

22   this year, there have been no obligations to file state or

23   federal tax returns; is that correct?

24            MR. HUERTAS:  That's correct.  Yeah.  It was done this

25   year, so we haven't had any obligation to file tax returns or

Case 25-00200-ELG   Doc 26-1   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcript for the DE Meeting of Creditors   Page 14 of 42

14

1    any of that sort.

2         MS. EUSTIS:  Okay.  Other than Mr. Sariri, are there

3    any other creditors of JPK?

4         MR. HUERTAS:  I listed, besides Mr. Sariri, the

5    disputed litigation from 423 Kennedy St Holdings LLC and

6    Developer RE1 LLC as potential creditors --

7         MS. EUSTIS:  Okay.

8         MR. HUERTAS:  -- due to the litigation.

9         MS. EUSTIS:  And is there the potential that there

10   could be monetary amounts due and owing to Developer RE1 and

11   Kennedy St in connection with that litigation?

12        MR. HUERTAS:  Yes, there is a potential.  I don't -- I

13   don't think I owe them anything, but there's a potential for

14   the litigation.

15        MS. EUSTIS:  Okay.  But other than Developer RE1,

16   Kennedy St, and Sariri, there are no other creditors of JPK?

17        MR. HUERTAS:  That's correct.

18        MS. EUSTIS:  Has the Debtor loaned any money to any of

19   its owners, officers, or directors within the last year?

20        MR. HUERTAS:  No.

21        MS. EUSTIS:  Has JPK repaid any loan to any of its

22   owners, officers, or directors within the last year?

23        MR. HUERTAS:  No.

24        MS. EUSTIS:  Have any of its owners, officers,

25   directors loaned any money to the Debtor within the past year?

Case 25-10002-ELG  Doc 261  Filed 09/02/24  Entered 09/02/24 19:06:02  Desc
Exhibit Transcript of the Docket Entries (Part II) Page 72 of 128 Page 15 of 42

15

```
 1              MR. HUERTAS:  No.

 2              MS. EUSTIS:  So other than the relationship that you

 3     described with Mr. Sariri, does Mr. Sariri have any

 4     relationship to SF NU or WCP and its members that you're aware

 5     of?

 6              MR. HUERTAS:  No, no.

 7              MS. EUSTIS:  Okay.  And Mr. Sariri is not a relative

 8     of yours; is that correct?

 9              MR. HUERTAS:  That's correct.

10              MS. EUSTIS:  Has JPK NewCo sold or transferred any

11     property within the last year?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  Have there been any distributions paid by

14     JPK to anyone within the last year?

15              MR. HUERTAS:  No.

16              MS. EUSTIS:  And do Mr. Sariri, Developer RE1, or

17     Kennedy St have any liens on any of JPK's assets?

18              MR. HUERTAS:  No.

19              MS. EUSTIS:  And what are JPK's assets?

20              MR. HUERTAS:  JPK's assets are the three notes that it

21     holds today.

22              MS. EUSTIS:  So it holds three notes.

23              MR. HUERTAS:  That is correct.

24              MS. EUSTIS:  Can you describe those notes?

25              MR. HUERTAS:  The three notes are Energy Morocco LLC.
```

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript of All Docket Entries (Part 4) Page 73 of 128 Page 16 of 42

16

1    Do you need an amount?

2         MS. EUSTIS:  Yes, please.

3         MR. HUERTAS:  $26,000.  There's a junior lien on 5501

4    First Street, Northwest, Washington, D.C., for 711,741.83.  And

5    there's one more junior lien on 419-423 Kennedy Street,

6    Northwest, Washington, D.C., for $1,678,387.

7         MS. EUSTIS:  Okay.  Thank you.  And is Energy Morocco

8    current on its payments to JPK?

9         MR. HUERTAS:  Not currently.

10        MS. EUSTIS:  Are any payments being made on the junior

11   liens?

12        MR. HUERTAS:  No.

13        MS. EUSTIS:  Have any payments been made by Energy

14   Morocco since the loan was made to it?

15        MR. HUERTAS:  Not.

16        MS. EUSTIS:  Were any payments --

17        MR. ORENSTEIN:  Wait, so the Energy Morocco -- oh, I'm

18   sorry.  The Energy Morocco loan is a note that balloons in

19   December.  And the two junior liens that he described, as you

20   know, that's the subject of litigation that's presently stayed.

21        MS. EUSTIS:  Right.  So Mr. Huertas, my next question

22   was were any payments due under the note to Energy Morocco?

23        MR. HUERTAS:  Were any payments due from Energy

24   Morocco?

25        MS. EUSTIS:  Yes.

```
 1                    MR. HUERTAS:  Yes, as form of a loan.

 2                    MS. EUSTIS:  Okay.  So Energy Morocco is in default

 3      under the note?

 4                    MR. HUERTAS:  Under the note as written, yes.

 5                    MS. EUSTIS:  Okay.  Since filing for bankruptcy, is

 6      the Debtor current with all of its post-petition obligations?

 7                    MR. HUERTAS:  Can I ask counsel to help answer the

 8      question?

 9                    MS. EUSTIS:  No.  I need to know if Energy Morocco --

10      or I'm sorry, not Energy Morocco.  I'm sorry.  JPK NewCo is

11      current on its post-petition obligations.

12                    MR. HUERTAS:  I believe it is.

13                    MS. EUSTIS:  What are JPK's post-petition obligations?

14      What are its operating costs?

15                    MR. HUERTAS:  Sorry.  Can you please repeat the

16      question?  There was some noise in the background.

17                    MS. EUSTIS:  Sure.  And if you are not me or Mr.

18      Huertas, can you please mute your line?  Thank you.

19                    Yes.  So what are JPK NewCo's operating expenses?

20                    MR. HUERTAS:  Currently, zero.

21                    MS. EUSTIS:  Has the Debtor had to borrow any money

22      post-petition?

23                    MR. HUERTAS:  Sorry.  Can you please repeat the

24      question?

25                    MS. EUSTIS:  Sure.  Has the Debtor had to borrow any
```

Case 25-10200-ELG   Doc 261   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcription - the Deskin Group - Part 1 of 2   Page 18 of 42

18

1    money since filing for bankruptcy?

2         MR. HUERTAS:  No.  Outside of what we have, no.  We

3    haven't borrowed anything else.

4         MS. EUSTIS:  Okay.  And you indicated that there are

5    no operating expenses currently.  Have there ever been any

6    operating expenses for JPK?

7         MR. HUERTAS:  No.  No.

8         MS. EUSTIS:  Do you anticipate that there will be any

9    operating expenses for JPK?

10        MR. HUERTAS:  Not at this time.

11        MS. EUSTIS:  Okay.  So Energy Morocco, there was a

12   loan made to it, you indicated, in the amount of $26,000; is

13   that correct?

14        MR. HUERTAS:  That's correct.

15        MS. EUSTIS:  What is Energy Morocco?

16        MR. HUERTAS:  Energy Morocco is -- is a company -- is

17   in the business of renovating real estate assets.

18        MS. EUSTIS:  And have you or any of the entities that

19   you have an interest in ever loaned money to Energy Morocco

20   before?

21        MR. HUERTAS:  Yes.

22        MS. EUSTIS:  And what entities have made loans to

23   Energy Morocco before?

24        MR. HUERTAS:  WCP Fund I.

25        MS. EUSTIS:  And what were those loans in connection

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript of A-41 DocketEntries (P Meeting of Creditors) Page 19 of 42

19

1    with?

2              MR. HUERTAS:  I don't have that ready available.  We

3    had made similar loans to Energy Morocco in the past.

4              MS. EUSTIS:  Okay.  Do you recall what this loan would

5    be used for, the $26,000 loan?

6              MR. HUERTAS:  Renovation expenses.

7              MS. EUSTIS:  Associated with what project?

8              MR. HUERTAS:  Several projects.  It wasn't just

9    associated with one single project.

10             MS. EUSTIS:  Okay.  And do you know who the owners of

11   Energy Morocco are or the members?

12             MR. HUERTAS:  No.

13             MS. EUSTIS:  Mr. Huertas, did you discuss the filing

14   of an involuntary petition with Mr. Sariri?

15             MR. HUERTAS:  No.

16             MS. EUSTIS:  Did you discuss why JPK NewCo needed a

17   loan from Mr. Sariri with Mr. Sariri?

18             MR. HUERTAS:  Did I discuss why I needed the loan?

19             MS. EUSTIS:  Yes.

20             MR. HUERTAS:  I needed -- let me recall.  Very

21   briefly, I just requested a loan for $50,000.

22             MS. EUSTIS:  And you didn't have any -- did you have

23   any other discussions with Mr. Sariri regarding the loan?

24             MR. HUERTAS:  No.

25             MS. EUSTIS:  Did you negotiate the terms of the loan

1    with Mr. Sariri?

2            MR. HUERTAS:  In our initial conversation.

3            MS. EUSTIS:  In your initial conversation, you did,

4    or --

5            MR. HUERTAS:  Yeah.  We -- we discuss -- yeah, we --

6    in our initial -- yeah, I mean, yes, we discussed the terms of

7    the loan.

8            MS. EUSTIS:  Did anyone else discuss the terms of the

9    loan with Mr. Sariri on --

10           MR. HUERTAS:  No.

11           MS. EUSTIS:  -- JPK NewCo's behalf?

12           MR. HUERTAS:  No.  And was JPK NewCo represented by

13   counsel in connection with the negotiation of the loan with Mr.

14   Sariri?

15           MR. HUERTAS:  No.

16           MS. EUSTIS:  Was Mr. Sariri represented by counsel

17   that you're aware of in connection with the loan?

18           MR. HUERTAS:  Not that I'm aware of.

19           MS. EUSTIS:  Who drafted the note with Mr. Sariri?

20           MR. HUERTAS:  I believe was one of my counsels, one of

21   my legal counsels.

22           MS. EUSTIS:  One of your attorneys?  One of JPK's

23   attorneys?

24           MR. HUERTAS:  Yes.

25           MS. EUSTIS:  I just want to clarify who you mean by

1    "you" -- or "my".

2            MR. HUERTAS:  Right.  It has been a while.  I -- I

3    believe it was one of the JPK -- it -- I mean, it was one of my

4    counsels, not JPK counsels.  I don't -- I don't recall exactly

5    how -- how we went about it.

6            MS. EUSTIS:  Okay.  Would it have been Mr. VerStandig?

7            MR. HUERTAS:  I don't recall.

8            MS. EUSTIS:  Were there any other attorneys other than

9    Mr. VerStandig that were we're working with you at this time or

10   JPK at this time?

11           MR. HUERTAS:  Yeah, there were other people I was

12   working at that time.  There's some that I don't -- I don't

13   recall exactly.  I don't recall exactly who wrote it.

14           MS. EUSTIS:  Do you recall the names of the attorneys

15   that were working with JPK and you on this at the time?

16           MR. HUERTAS:  I don't think they were JPK attorneys.

17   That's the reason that I don't recall exactly who it was.

18           MS. EUSTIS:  Okay.  What about with Energy Morocco?

19   Who drafted the note between -- the note on behalf of Energy

20   Morocco?  Was that drafted by folks on behalf of JPK, or was

21   that drafted by Energy Morocco representatives?

22           MR. HUERTAS:  I -- I don't recall exactly how we wrote

23   that note either.  I think it was internally, we -- we had one

24   of our forms.  So I think I did it myself.  I don't recall

25   exactly how I did it.  I have to go back and see how -- how it

Case 24-10023-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcription of the Docket Entry (Part) Meeting Page 22 of 42

22

1    was done.

2           MS. EUSTIS:  Okay.  Part of the involuntary being

3    filed against JPK, did Mr. Sariri either on his own or through

4    counsel make demand for payment on JPK?

5           MR. HUERTAS:  Yes, make demand for payments.

6           MS. EUSTIS:  Mr. Sariri made demand for payment?

7           MR. HUERTAS:  Correct.  Yeah.

8           MS. EUSTIS:  And if you could provide to your counsel

9    to provide to me any written demand for payment that was made

10   by Mr. Sariri, I would appreciate that.

11          MR. HUERTAS:  I don't think I have anything in

12   writing.  It was a phone conversation.  I told Mr. Sariri that

13   based on the nature of where we stand with the notes, we would

14   not be able to make payments.  And we told him that we were not

15   able to -- to make the financial obligation at this -- at this

16   time.

17          MS. EUSTIS:  Okay.  And the note was -- the money was

18   loaned by Mr. Sariri only almost a month before the involuntary

19   was filed; is that accurate?

20          MR. HUERTAS:  Yes, that is correct.

21          MS. EUSTIS:  Okay.  Okay.  Mr. Metz, do you have any

22   questions for Mr. Huertas?

23          MR. METZ:  I do not.  Thank you.

24          MS. EUSTIS:  Thank you.

25          Mr. Sadowski.

1          MR. SADOWSKI:  Yes, I do.  Jim Sadowski, counsel for

2     Developer RE1  and 423 Kennedy St Holdings LLC.

3          Good morning, Mr. Huertas.  To follow up on some of

4     the questions that Ms. Eustis asked, you mentioned that initial

5     conversation with Mr. Sariri about this promissory note or

6     loan.  What date did that happen, that initial conversations?

7          MR. HUERTAS:  I don't recall.

8          MR. SADOWSKI:  Well, was it six months ago?  Was it

9     two months ago?  What's your best range of when that happened?

10          MR. HUERTAS:  Before I received the funds.  I don't

11     recall exactly when.  I'm sorry.  Just before we received the

12     funds, obviously.

13          MR. SADOWSKI:  Okay.  And when did you receive the

14     funds?

15          MR. HUERTAS:  I -- I got to go look.  I don't have an

16     exact date.

17          MR. SADOWSKI:  Okay.  And how did you receive the

18     funds?

19          MR. HUERTAS:  I don't recall.  I'm sorry.

20          MR. SADOWSKI:  Was it a check?  Was it a wire

21     transfer?  Was it something else?

22          MR. HUERTAS:  I think it was a wire.  I'm not a

23     hundred-percent sure.

24          MR. SADOWSKI:  Okay.  Now, the bank account with

25     United Bank, when was that account opened?

Case 25-10200-ELG  Doc 261  Filed 09/02/24  Entered 09/02/24 18:06:02  Desc
Exhibit Transcript of An the Docket Entries (Part B) Creditor's Page 24 of 42

24

1           MR. HUERTAS:  In the earlier part of this year.  I

2   don't have a date.

3           MR. SADOWSKI:  Okay.  But you have bank statements,

4   right, that would show when that account was opened?

5           MR. HUERTAS:  I'm sure we have bank statements.

6           MR. SADOWSKI:  Okay.  And what money went in and out

7   of that account during the period of time that JP (sic) NewCo

8   had activity in that account?

9           MR. HUERTAS:  It was related to this loan and the

10   other funds was related to this litigation.

11           MR. SADOWSKI:  Okay.  Is United Bank the same bank

12   that's used by DP Capital?

13           MR. HUERTAS:  Same bank.

14           MR. SADOWSKI:  Same bank?  And the same bank that's

15   used by WCP Fund?

16           MR. HUERTAS:  Same bank.  Different account numbers.

17           MR. SADOWSKI:  Okay.  Whose idea was it to create JPK

18   NewCo?

19           MR. HUERTAS:  I believe I've already answered the

20   question related to JPK NewCo.

21           MR. SADOWSKI:  It was your lawyer's idea then?

22           MR. HUERTAS:  JPK NewCo was created under advice of

23   counsel.

24           MR. SADOWSKI:  Okay.  So it wasn't your idea to do

25   that, right?

Case 25-00200-ELG   Doc 26-1   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcript of A - the Deskarel Cross Examination Page 82 of 1284   Page 25 of 42

25

```
 1              MR. HUERTAS:  I have already answered that question.

 2              MR. SADOWSKI:  Is that a no?

 3              MR. HUERTAS:  JPK NewCo was created under advice of

 4    counsel.

 5              MR. SADOWSKI:  Okay.  So it wasn't your idea, correct?

 6              MR. HUERTAS:  JPK NewCo was created under advice of

 7    counsel.

 8              MR. SADOWSKI:  All right.  When was that advice given?

 9    What time frame?

10              MR. HUERTAS:  Sometime late last year, early this

11    year.

12              MR. SADOWSKI:  And that advice that was given, was

13    that advice given by Mr. VerStandig?

14              MR. HUERTAS:  JPK NewCo was created under the advice

15    of counsel.

16              MR. SADOWSKI:  All right.  Which counsel?

17              MR. ORENSTEIN:  Daniel, you can answer that question.

18    You cannot tell him what was said, but you can tell him who

19    gave you the advice.

20              MR. HUERTAS:  Mr. Marc -- Mac VerStandig.

21              MR. SADOWSKI:  Okay.  Was there any other attorney

22    besides Mr. VerStandig involved in that advice?

23              MR. HUERTAS:  No.

24              MR. SADOWSKI:  Okay.  Who selected the name JP (sic)

25    NewCo?
```

```
 1              MR. HUERTAS:  Sorry.

 2              MR. SADOWSKI:  So who came up with the name, JPK

 3    NewCo?  JPK, does that stand for someone's initials, or why did

 4    you use JPK NewCo?

 5              MR. HUERTAS:  Yeah, it's, like, initials

 6              MR. SADOWSKI:  Okay.  And whose initials are JPK?

 7              MR. HUERTAS:  The initial JPK is Joseph P. Kennedy.

 8              MR. SADOWSKI:  Okay.  All right.  All right.  Is that

 9    just a political person that you decided to use his initials,

10    as opposed to, like, JPK or RFK?

11              MR. HUERTAS:  I just like the initials.

12              MR. SADOWSKI:  Okay.  And the preparation of the note

13    with Mr. Sariri, I believe you said you weren't sure who

14    prepared that.  Did JPK NewCo get a bill for the preparation of

15    that note from any attorney?

16              MR. HUERTAS:  No.

17              MS. EUSTIS:  How about the preparation of the note

18    with Energy Morocco?  Did JPK get the legal bill for

19    preparation of that note?

20              MR. HUERTAS:  I don't think so.  I don't know.  It

21    didn't.

22              MR. SADOWSKI:  Has JPK incurred any legal expenses

23    before it filed for bankruptcy?

24              MR. ORENSTEIN:  And just as a correction.  People keep

25    saying before it filed bankruptcy.  It's involuntary.
```

```
 1              MR. SADOWSKI:  Sorry.  You're right.  Before the

 2    involuntary petition was filed on July 3rd, had JPK incurred

 3    any legal expenses?

 4              MR. HUERTAS:  I don't recall nothing outside of this.

 5              MR. SADOWSKI:  All right.  Who's paying the bills to

 6    Mr. VerStandig related to any pre-petition services that he

 7    gave JPK NewCo?

 8              MR. HUERTAS:  Sorry.  Repeat the question.

 9              MR. SADOWSKI:  Yeah.  Before July 3rd, 2023, that's

10    the petition date.  When I say pre-petition, that means before

11    July 3rd, 2024.  Sorry.  Who was paying the legal bills for Mr.

12    VerStandig to give advice about forming JPK NewCo?  Was that

13    being paid by WCP Fund, DP Capital, or somebody else?

14              MR. HUERTAS:  I don't recall exactly the entity, but

15    it's one of -- one of DP Capital affiliates, I'm sure.

16              MR. SADOWSKI:  Okay.  Now, was it ever discussed that

17    one reason to create JPK NewCo was to be able to put that

18    company into bankruptcy so that the litigation with my clients

19    could be removed to bankruptcy court?

20              MR. ORENSTEIN:  Objection.  That would be attorney-

21    client privilege if such a conversation took place.

22              MR. SADOWSKI:  Okay.  Mr. Huertas, you're not going to

23    answer that --

24              MR. ORENSTEIN:  I'm instructing him not to answer that

25    question.
```

1          MR. SADOWSKI:  Okay.  What were the business reasons

2     for forming JPK NewCo?

3          MR. HUERTAS:  JPK NewCo was formed because at a time

4     after the mediation process that we had, I think sometime late

5     last year, there were some negotiations around how to make

6     those liens and ourselves have an agreement.  And the only --

7     the best way to -- to make that agreement work was to take the

8     troubled assets into one entity, as we had a discussion related

9     to participation.  So the only way to do it, like I said, was

10    this way, and it was done under advice of counsel.

11         MR. SADOWSKI:  Okay.  Now, when did the mediation

12    happen between the defendants in the litigation with my

13    clients?  When did that mediation occur with JAMS and Judge

14    Levie?  Do you remember the dates?

15         MR. HUERTAS:  I don't remember the dates, but I -- I

16    think sometime late last year or (unintelligible) I -- I don't

17    exactly when, but it was -- it was cold.

18         MR. SADOWSKI:  Yeah.  Let me see if I can help you

19    with that, Daniel, because I know it was a while ago.  On my

20    calendar, on January 9th, I have a time entry -- I'm sorry, a

21    calendar entry for mediation of JAMS, January 9th, 2024.  Does

22    that refresh your recollection as to when the first mediation

23    session was held?

24         MR. HUERTAS:  I mean, you want me to -- you want me to

25    take your word for it, then I know it was early this year or

1   sometime late last year.  I don't recall exactly.  It was a
2   while ago --
3            MR. SADOWSKI:  Yeah.
4            MR. HUERTAS:  -- like you said very well.  But it was
5   before JPK was formed.
6            MR. SADOWSKI:  Okay.  And when was the last mediation
7   session before Jams?  Do you remember that date?
8            MR. HUERTAS:  No, I don't have it.  I don't remember
9   the date.
10           MR. SADOWSKI:  Well, was it within a couple weeks of
11  the first session, or what's your recollection of that?
12           MR. HUERTAS:  I -- I don't recall.
13           MR. SADOWSKI:  Okay.  Do you know why the first
14  mediation session was continued to a second date in January?
15           MR. HUERTAS:  I mean, like I said, I -- I don't
16  recall.  It was a while ago.
17           MR. SADOWSKI:  Okay.
18           MR. HUERTAS:  I know that --
19           MR. SADOWSKI:  When did the -- okay.  When did the
20  mediation end?
21           MR. HUERTAS:  I don't understand your question.  When
22  did it end?
23           MR. SADOWSKI:  Well, my recollection from my calendars
24  and my time sheets and my bills that I sent to the client is
25  that there were two mediation sessions, one on January 9th, and

1  the second one on January 25th.  And the mediation concluded on

2  January 25th.  Does that sound about right in terms of timing?

3          MR. HUERTAS:  Unfortunately, you'll need to go by the

4  date you are stating.  I don't want to use your dates.  For --

5  like I said, it was some time before either late last year or

6  early this year.  I don't recall exactly.

7          MR. SADOWSKI:  Okay.  What was the reason the

8  mediation ended?

9          MR. HUERTAS:  I don't recall.

10          MR. SADOWSKI:  Well, isn't that true, Mr. Huertas,

11  that you were the one who told the mediator -- or sorry, who

12  ended the mediation?

13          MR. HUERTAS:  I don't recall.

14          MR. SADOWSKI:  Okay.  What would help refresh your

15  recollection as to why the mediation ended?  Do you have any

16  business records?  Do you have any notes?

17          MR. HUERTAS:  I don't have any notes.

18          MR. SADOWSKI:  Okay.  Returning to the schedules that

19  were filed -- sorry.  Let's talk about SF NU, LLC.  Now, Ms.

20  Eustis asked you if you knew who the owners are, and you said

21  you don't know.  Well, who do you communicate with when you

22  want to communicate with SF NU, LLC?

23          MR. HUERTAS:  I communicate with Mr. Shrensky, Jason

24  Shrensky.

25          MR. SADOWSKI:  Could you spell his name, please, for

Case 24-10023-ECG   Doc 261   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcript of A+ Docket Evidence (Part 1) - Meeting Page 88 of 128   Page 31 of 42

31

1    the record?

2          MR. HUERTAS:  Jason, J-A-S-O-N, Shrensky,

3    S-H-R-E-N-S-K-Y.

4          MR. SADOWSKI:  Okay.  Other than Mr. Shrensky, is

5    there anyone else that you communicate with at SF NU, LLC?

6          MR. HUERTAS:  No.

7          MS. EUSTIS:  Okay.  Why were the notes -- the two

8    notes that I think you've described it as distressed assets or

9    tainted assets, why were they transferred to SF NU, LLC?

10          MR. HUERTAS:  I don't think that's a question for me.

11    I -- I already answer the question related to -- to that so --

12          MR. SADOWSKI:  Oh, because I had a question for you.

13          MR. HUERTAS:  I'm (unintelligible) question.  Okay.

14          MR. SADOWSKI:  Because I have a question for you, Mr.

15    Huertas.

16          MR. HUERTAS:  Well, I can't hear you.  No one answered

17    a question for a different company.  I don't know.

18          MR. SADOWSKI:  Well, you know the answer to that

19    question, correct?

20          MR. HUERTAS:  I don't have an answer for you.

21          MR. SADOWSKI:  So you don't know why the notes were

22    transferred to SF NU, LLC?

23          MR. HUERTAS:  Hold on.  Repeat that again.

24          MR. SADOWSKI:  You don't know why the notes were

25    transferred to SF NU, LLC?

1          MR. HUERTAS:  Why the notes were transferred to SF NU,

2     LLC?  I don't -- I don't -- I don't understand your question.

3          MR. SADOWSKI:  Okay.  These notes that are being held

4     by JPK NewCo were originally held by SF NU, LLC, correct.

5          MR. HUERTAS:  One of them.  That's incorrect.

6          MR. SADOWSKI:  Okay.

7          MR. HUERTAS:  There's one of them.

8          MR. SADOWSKI:  All right.  Which one was currently

9     held by SF NU, LLC?

10          MR. HUERTAS:  I got to go look.  I don't have it

11     exactly, but I think it's the smaller -- the smaller one.

12          MR. SADOWSKI:  Okay.  So you think that -- well, I

13     guess I can just look at your continuation sheet.  So you think

14     that was the second -- where did I see that?

15          MR. ORENSTEIN:  The smaller one would be First Street.

16          MR. SADOWSKI:  Yeah.  Okay.  Yeah, I'm not real good,

17     Mr. Orenstein, with the street addresses.  I'm better with the

18     entity names, but okay.  So and the other one was -- what's the

19     other one, and why was that other one transferred from the

20     original holder to SF NU, LLC?

21          MR. HUERTAS:  I don't -- I don't understand question.

22     You're asking me why the other note was transferred to SF NU,

23     LLC?  That never happened.

24          MR. SADOWSKI:  Correct.  Correct.

25          MR. HUERTAS:  I don't understand your -- I -- I -- I

1   don't understand your question.

2          MR. SADOWSKI:  Well, I'm trying to figure out what the

3   business purpose is for these notes getting transferred from

4   one entity to the next to the next.  And the business purpose

5   that we were told in some of your filings and in your testimony

6   was that these were tainted assets, and there was some sort of

7   settlement agreement that might be created to hold these assets

8   and figure out a settlement if the assets were held by somebody

9   else.  So I'm trying to figure out why was there a business

10  need to do that.  No settlement agreement was reached, correct,

11  between --

12         MR. ORENSTEIN:  Mr. Sadowski, I'm going to -- Mr.

13  Sadowski, I'm going to interrupt you for a moment, because I'm

14  not sure if you're confusing your own questions.  You asked him

15  why the notes were transferred to SF NU.  And for purposes of

16  the bankruptcy, he's already testified that WCP and SF NU

17  transferred the notes to JPK.  So I'm not sure if you're mixing

18  up your question.

19         MR. SADOWSKI:  Yeah, well, I'm trying to figure out

20  two pieces of that, Mr. Orenstein, and thanks for that because

21  maybe my questions aren't as great as I thought they should be.

22  I want to find out why they went from WCP Fund I LLC to SF NU,

23  and then why they then went from SF NU to JPK NewCo.  There's

24  two steps there because that's where I'm headed with this.

25         So the first question is why transfer the notes out of



```
 1    WCP Fund I to SF NU, LLC to begin with.  And then the second
 2    part of that question is why then transfer them again to JPK
 3    NewCo.
 4            MR. HUERTAS:  Okay.  So -- so the first question is
 5    related to internal business practices.  That's probably not
 6    the right forum for me to talk about WCP's or DP Capital
 7    business practices.  How we do business.
 8            The second question, I can't really answer your
 9    question as far as how or why we transfer the note from the
10    fund to JPK NewCo.  And I said to you multiple times that it
11    was under the advice of counsel.
12            MR. SADOWSKI:  Okay.  So is there any other reason
13    other than the advice of counsel why the notes were transferred
14    to JPK NewCo?
15            MR. HUERTAS:  I already gave you an answer.
16            MR. SADOWSKI:  That was the only reason they were
17    transferred, because of advice of counsel?
18            MR. HUERTAS:  On advice of counsel, correct.
19            MR. SADOWSKI:  Okay.  One second just to look through
20    my notes.
21            Now, you mentioned that the WCP Fund I is comprised
22    of -- and I'm not trying to pin you down exactly to what you
23    said, but I wrote down thirty different LLCs and individuals
24    and that you have an interest in WCP Fund I.  What is the
25    extent of your interest in WCP Fund I?
```

1             MR. HUERTAS:  I'm a member of the fund.

2             MR. SADOWSKI:  Individually?  And what percentage do

3      you own?

4             MR. HUERTAS:  I own (unintelligible) percent.

5             MR. ORENSTEIN:  I'm going to -- I'm going to object to

6      this question.  I'm going to instruct him not to answer.  This

7      doesn't seem to have anything to do with the operations of JPK

8      or the issues in the JPK case.

9             It's your position that this is relevant with regard

10     to the motion to dismiss, which the United States Trustee has

11     filed.  We're in the process of scheduling -- in the process of

12     having a scheduling order entered that will allow for discovery

13     in this case.  And I think if you're going to ask questions

14     about WCP, it's appropriate for WCP to have its own counsel

15     present at that time to object to the extent that I think

16     it's -- to the extent that he thinks that it's necessary.  I

17     don't think this is appropriate for a 341 meeting.

18            MR. SADOWSKI:  Well, you didn't object before when he

19     gave that answer, Mr. Orenstein.  I'll ask a different

20     question.

21            Mr. Huertas, other than an individual interest in WCP

22     Fund I, do you have an individual interest in any of the LLCs

23     that make up WCP Fund I?

24            MR. ORENSTEIN:  I'm going to give the -- I'm going to

25     make the same objection.  For the reasons stated, I'm going to

1    instruct him not to answer that.

2           MS. EUSTIS:  Mr. Sadowski, this is Kristen Eustis.  I

3    agree with Mr. Orenstein that Mr. Huertas would be entitled to

4    have his own personal counsel present for anything further with

5    respect to his personal interests in these entities.

6           MR. SADOWSKI:  Okay.  Got it.  Okay.  Objection's been

7    noted.  Thank you, Counsel.

8           Mr. Huertas, how did you arrive at the numbers that

9    were used on the schedules to come up with the $2.4 million?

10   Where did those amounts come from?

11          MR. HUERTAS:  Those numbers, I believe, were the

12   unpaid principal balance at the time that I -- that I filled

13   this out.

14          MR. SADOWSKI:  Okay.  So you have some accounting

15   somewhere that shows as of the date you prepared the schedules,

16   X dollars was owed under each of the lien -- of the notes?

17   Sorry.

18          MR. HUERTAS:  Well, that's a face amount.  That's

19   the -- that's the face amount of the current value.  That's

20   what I was asked.

21          MR. SADOWSKI:  Okay.

22          MS. EUSTIS:  You asked me something different.  I'm

23   just clarifying that when I completed the schedules, it was

24   based on what's the total face amount and the current value.

25          MR. SADOWSKI:  Okay.  So getting to Energy of (sic)

Case 24-10200-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript of Dkt. Entries (Meeting of Creditors) Page 37 of 42

37

1    Morocco LLC, was this $26,000 -- did that serve some other

2    purpose for Energy of (sic) Morocco LLC?  In other words, did

3    the Debtor use those funds -- I'm sorry.  Let me ask it a

4    different way.  Does Energy of (sic) Morocco LLC received draws

5    from DP Capital under various construction projects?

6            MR. HUERTAS:  I'm not going to answer that question.

7    It's related to a separate business, and I'll do it -- I'll do

8    it when my counsel is present for me to answer any other

9    questions related --

10           MR. SADOWSKI:  Okay.  Well, how about the --

11           MR. HUERTAS:  -- (unintelligible) DP Capital.

12           MR. HUERTAS:  How about this $26,000?  Why did Energy

13    of (sic) Morocco need that money at that time?

14           MR. HUERTAS:  They request additional funds for the

15    renovations, and we did a loan for that purpose.

16           MR. SADOWSKI:  And was JPK's business to be loaning

17    money to people for renovations?

18           MR. HUERTAS:  JPK business is again the holding

19    company and the holding company of loans -- of notes.

20           MR. SADOWSKI:  But it wasn't in the loaning business,

21    was it?

22           MR. HUERTAS:  Not before.

23           MR. SADOWSKI:  Okay.  How did JPK expect to pay Mr.

24    Sariri back the money that Mr. Sariri loaned JPK?

25           MR. HUERTAS:  Hopefully, some of these loans, we'll

1     start paying.  And for the payments of the loans, either from

2     Energy Morocco or once the payments for 423 Kennedy and

3     Developer RE1 start happening, we will take care of the

4     creditors.

5             MR. SADOWSKI:  Okay.  And when did JPK expect the --

6             MR. HUERTAS:  (Unintelligible).

7             MR. SADOWSKI:  When did JPK expect that either of my

8     clients were going to start paying money on those loans?

9             MR. HUERTAS:  I don't know.  That's a great question

10    for you and your clients.

11            MR. SADOWSKI:  No, that's a question for you.  You

12    said that you expected -- you just said that you expected that

13    at some point you would pay Mr. Sariri back with money that you

14    got from Developer RE1 and 423 Kennedy.  So what led JPK NewCo

15    to believe that there was going to be money coming in from

16    those two loans in the next year?

17            MR. HUERTAS:  I don't know.  I think if there is

18    payments received -- you ask me a question how I'm -- how I

19    am -- how am I going to pay Mr. Sariri, and the answer to your

20    question was out of the payments that we'll receive in the

21    future, who knows when, related to the Energy Morocco, as well

22    as the junior liens that are in here.

23            MR. SADOWSKI:  All right.  Just one second, Ms.

24    Eustis.

25            All right.  That concludes my questions, Ms. Eustis.



Case 24-10023-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 19:06:02 Desc
Exhibit Transcript of 8-11-24 Docketed (Cont.) Meeting Page 96 of 128 Page 39 of 42

39

```
 1                 Thank you, Mr. Huertas and Mr. Orenstein.

 2            MS. EUSTIS:  Thank you.

 3            Ms. Burgers, do you have any questions?

 4            Okay.  Ms. Burgers had indicated at the beginning of

 5       this meeting that she might have to drop off, so it appears

 6       that she has.

 7            Mr. Huertas, what is the Chapter 11 plan for JPK?

 8       It's my understanding from your testimony that there's no

 9       revenue currently coming in, that the notes that JPK holds are

10       no one is making payment on those notes.  So how does JPK

11       propose that it's going to exit bankruptcy?

12            MR. HUERTAS:  Sure.  Thank you for the question.  At

13       some point, our goal through the resolution of some of these

14       issues related to 423 Kennedy St and Developer RE1 LLC is

15       having the ability, once JPK NewCo is able to bring those funds

16       from these notes, being able to pay back its creditors so --

17            MS. EUSTIS:  And the plan is due, I believe, in two

18       weeks.  And so do you anticipate that those funds will start

19       coming in by the end of the year?

20            MR. HUERTAS:  I don't know.  I -- I'm not an expert on

21       this.  I have no idea.  But at this time, right now, we have

22       three -- two delinquent junior liens in -- in default.  And

23       unfortunately, the Energy Morocco is in default as well.

24            MR. ORENSTEIN:  This is Orenstein.

25            MS. EUSTIS:  Go ahead, Mr. Orenstein.
```

Case 24-10023-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript of Trustee Cross (Partial) of Creditors Meeting Page 40 of 42

40

1     MR. ORENSTEIN: Yeah, thanks. I'm sure you saw the

2 status report that we filed last week The money from Energy

3 Morocco is due under the note to be paid in December. We're

4 hoping that that will come in by that time. The litigation

5 with 423 Kennedy and Developer RE1, as you know, is stayed

6 pending the Court's decision on whether or not this bankruptcy

7 case will be dismissed. We're hoping that it's not going to be

8 dismissed and at that point, that the Court will lift the stay

9 so that the litigation can continue.

10     And you're right, the -- I believe it's -- I want to

11 say, off the top of my head, it's the 9th that the plan is due.

12 I may be wrong about that, but it's within the next two weeks.

13 And the plan, generally speaking, will provide that payments

14 will be made from the collection of these notes as and when the

15 payments are received.

16     MS. EUSTIS: Okay. All right. Well, thank you. I

17 appreciate that.

18     Does anyone else have any questions for Mr. Huertas

19 today?

20     Okay. Hearing none. I'm going to conclude this

21 meeting today. And just, Mr. Orenstein and Mr. Huertas, for

22 your benefit, that does not mean I don't have any more

23 questions for you. I do, and I do anticipate getting some

24 discovery out in connection with the motion to dismiss. So I

25 just wanted to make sure that was clear for the record that by

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript of the Meeting of Creditors (Part II) Page 41 of 42

41

1    concluding this meeting of creditors, that does not mean that

2    my office does not have any further questions for you in

3    relation to its motion to dismiss.

4         But with that, this --

5         MR. ORENSTEIN:  We understand, and Mr. Huertas is

6    aware of the fact that you may want to take depositions of JPK

7    or potentially Mr. Huertas himself.

8         MS. EUSTIS:  Great.  Thank you, Mr. Orenstein.

9         And thank you all so much for your time today.  I will

10    conclude this meeting.

11       (Whereupon the hearing was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 24-10200-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript of the Docket Entries (Partial) Page 99 of 128 Page 42 of 42

42

1                                 CERTIFICATE

2    I certify that the foregoing is a correct transcript from the

3    electronic sound recording of the proceedings in the above-

4    entitled matter.

5

6

7

8    /s/                                 Date: November 13, 2024

9    ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY TO SUPPLEMENTAL BRIEF
## CONCERNING PLAINTIFFS' MOTION FOR REMAND

1

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, in reply to the Plaintiffs' Supplemental Brief in Support of Their Motion for Remand (the "Supplemental Brief," as found at DE #26, with the underlying motion being known as the "Motion to Remand," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") and state as follows:

## I.    Introduction

This Honorable Court requested supplemental briefing on the Motion to Remand after entering an order granting in part, and denying in part, a previously-pending motion to dismiss the matter of *Webster v. DP Capital LLC, et al.*, Case No. 23-10025 (the "Paret Adversary"). It thusly comes as some surprise that the Plaintiffs have expended only three paragraphs—of their 12-page Supplemental Brief—addressing this issue, with the rest of the filing harping on issues raised by the bankruptcy filing of JPK NewCo LLC ("JPK"). This is all the more surprising given that a pending motion to dismiss the JPK bankruptcy is not set for hearing until February 2025, with discovery still ongoing in that matter.

To be sure, there exist two independent—albeit related—reasons to deny the Motion to Remand: this litigation is core to the chapter 7 bankruptcy case of Charles Paxton Paret ("Mr. Paret") and this litigation is core to the chapter 11 bankruptcy case of JPK. Insofar as the fate of the JPK bankruptcy will not be known until February 2025, and the centrality of this adversary proceeding to that bankruptcy has already been well briefed, it is unclear why the Plaintiffs would

2

387

focus their Supplemental Brief thereupon—especially after being asked to direct the brief toward the implications of the Paret Adversary partially surviving a motion to dismiss.

The Defendants and JPK, however, elect to not follow suit and will instead focus briefly on the JPK bankruptcy while dedicating the weight of this brief to the implications of the Paret Adversary. Indeed, the Defendants and JPK have already briefed the implications of the JPK bankruptcy on this adversary proceeding, DE #20 at §§ I, II(a-b), III(a)(ii); III(b)(ii)-IV, and see the JPK-focused analysis as unchanged from the time of that initial briefing. For instant purposes, however, suffice it to posit that the JPK-centric allegations in the Supplemental Brief do not come as notably troubling. The Plaintiffs appear to be preoccupied with the ideas that (i) JPK is a holding company for troubled assets, formed on the advice of counsel; (ii) JPK's business activities are limited to those of a holding company that has also engaged in direct lending activity; (iii) JPK's debtor representative has a pre-existing relationship with a lender who extended financing to JPK; (iv) JPK shares an address with one of its equity holders; (v) JPK does not have day-to-day operational expenses since JPK is a holding company engaged in direct lending activity; and (vi) the debtor representative does know the identities of both members of JPK (both of which are legal entities, not natural persons) but, when quizzed, does not know all the members of one of those legal entities.

None of the foregoing contentions about JPK are surprising or, for that matter, controversial. It would be surprising if a troubled asset holding company was *not* formed with the input or advice of counsel. It would be strange if a troubled asset holding company employed a staff, rented independent office space, or did not have a relationship with its lender. And while a debtor representative should certainly know the identities of a debtor's equity holders in a small

388

business case (perhaps not in a larger case), there is no reason a debtor representative should—or would—know the identities of the derivative equity holders of those equity holders.

In short, it appears the Plaintiffs are outraged that a holding company, formed on the advice of counsel, is permitted to seek bankruptcy protection. Short of lobbying Congress to amend Section 109 of the Bankruptcy Code, however, these qualms appear to be misplaced. And, as noted above, JPK was not the requested topic of supplemental briefing and is a debtor whose bankruptcy case will remain subject to a motion to dismiss until at least February 2025.

All of which necessarily returns to the oddity of this brief being a response to the three scant paragraphs of the Supplemental Brief in which the Paret Adversary is actually discussed. The Plaintiffs correctly observe, therein, that if Mr. Huertas, WCP or DPCL (the "Webster Defendants") succeed in the subject litigation, Mr. Paret's estate will not have an interest in the outcome of the above-captioned litigation. And while the Webster Defendants certainly will not argue herein—or anywhere else—that they ought not succeed in the Paret Adversary, the Plaintiffs' arguments seem to very much miss the point: a venerable chapter 7 trustee, with more than 30 years of experience and an esteemed reputation, is pursuing claims that an estate he helms actually owns an interest in (i) the very promissory notes at issue in this litigation; (ii) the very properties at issue in this litigation; (iii) any profits (or losses) occasioned in connection with the outcome of this litigation; and (iv) one of the Plaintiffs. Those claims have now survived a motion to dismiss. And it would be accordingly antithetical to both established law and common sense for this litigation, so central to the trustee's causes of action, to be sent away from the court in which the trustee is pursuing his own claims and administering Mr. Paret's bankruptcy estate.

4

## II.    Argument: Remand is Improper in Light of the Paret Adversary

The Plaintiffs' claims have been strange from the outset, as they essentially urge that consumer lending standards ought to apply to commercial loans and that trustees under commercial deeds of trust must serve as independent mediators and/or arbitrators of any grievances before coordinating the foreclosure of real property. Yet those contentions have now, somehow, grown even stranger, as the Plaintiffs appear to be advocating for the Webster Defendants in the Paret Adversary, taking the cliché of "strange bedfellows" to a new extreme. And, keeping with the word-of-the-moment theme, this places the Defendants and JPK in the strange position of agreeing with the Plaintiffs: The Webster Defendants probably should prevail in the Paret Adversary. But, unless and until such a victory is actually had (and the Paret Adversary is now subject to a scheduling order that puts a pretrial conference in October 2025), case law instructs the objects of the trustee's fixation are—and should continue—to be regarded as assets of Mr. Paret's estate.

In connection with a question concerning the timeliness of removal, and only in that narrow context, the Defendants have previously touched upon the doctrine of "arguable property." *See* Opposition to Plaintiffs' Motion to Remand, DE #20, at § III(a)(1). Under that doctrine, "arguable property" is defined as "an asset to which the debtor has only an arguable claim of right," *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005), and "[w]hen property is determined to be 'arguable property' of the estate, it should be presumed to be property of the estate." *William M. Condrey, P.C. v. Endeavour Highrise, L.P. (In re Endeavour Highrise L.P.)*, 425 B.R. 402, 414 (Bankr. S.D. Tex. 2010) (citing *In re Global Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at * 21 (Bankr. D.N.J. June 8, 2009) (citing *In re Chesnut*, 422 F.3d at 303); *STFG, Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*, 2008 Bankr. LEXIS 1491, at *7 (Bankr. S.D. Tex. Apr. 14, 2008); *In re Levenstein*, 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007)).

5

This doctrine necessarily controls, as there is no question but that both Mr. Paret and his trustee have an *arguable* claim of right to the real estate assets and promissory notes at issue in this litigation, as well as an arguable claim of right to participate in any profit/loss occasioned by this litigation. They have made their argument in the form of a complaint; the portions of that complaint seeking a declaratory judgment as to the existence of a partnership—and seeking recourse for an alleged breach of that putative partnership—have survived a motion to dismiss. In short, almost everything at issue in this litigation is the "arguable property" of Mr. Paret's bankruptcy estate and is accordingly "presumed to be property of the estate." *In re Endeavour Highrise L.P.*, 425 B.R. at 414.

It also bears notate that enforcement of the "arguable property" doctrine necessarily extends to the definition of a bankruptcy court's jurisdiction, going so far as to stand for the proposition that a party's right to trial by jury can actually be waived if enforcing that right would hinder a bankruptcy court's ability to efficiently adjudicate disputes focused on "arguable property." *In re Endeavour Highrise L.P.*, 425 B.R. at 416-17 (citing *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329 (2d. Cir. 1993)).

In short, this Honorable Court can—and should—retain the instant case. The "core" nature of the proceeding has been addressed in prior briefing and is unchanged, so there is no genuine question but that jurisdiction instantly exists. This leaves only a question as to whether remand ought to be discretionarily entertained. But, as also noted in prior briefing, discretionary remand is a rare and exceptional remedy, *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976), that case law implores only be exercised only fleetingly and in extraordinary circumstances, *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing

*Colorado River*, <mark>424 U.S. at 817</mark>; *Neufeld v. City of Baltimore*, <mark>964 F.2</mark>d. 347, 349 (4th Cir. 1992));

*Cty. Of Allegheny v. Frank Mashuda Co.*, <mark>360 U.S. 185, 188-89</mark> (1959)).

There is nothing about the Paret Adversary that suggests circumstances so rare and extraordinary as to justify or warrant "[a]bdication of the obligation to decide cases," *Cty. Of Allegheny*, <mark>360 U.S. at 188-189</mark>, when, to the contrary, case law is manifest that bankruptcy courts are to assume jurisdiction over "arguable property" unless and until a debtor or trustee's argument concerning such "arguable property" is defeated by final adjudication. The Plaintiffs are, in essence, asking that the disposition of "arguable property"—assets that, by legal definition, presumptively belong to Mr. Paret's estate—be permitted by the Superior Court. And such a contention is simply without any support in governing law.

Perhaps that absence of legal support is why the topical briefing of the Plaintiffs is a scant three paragraphs. Perhaps that absence of legal support is why the Plaintiffs veered off topic and harped so firmly on the JPK bankruptcy. And perhaps that absence of legal support is why the Plaintiffs have assumed the strange position of essentially advocating for the Webster Defendants in connection with the Paret Adversary. Regardless, however, that absence of legal support is dispositive of the Motion to Remand: this case properly belongs in this Honorable Court.

## III.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion to Remand; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

7

Respectfully submitted,

Dated: December 4, 2024          By:     /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig, Esq.
                                         Bar No. MD18071
                                         The VerStandig Law Firm, LLC
                                         9812 Falls Road, #114-160
                                         Potomac, Maryland 20854
                                         Phone: (301) 444-4600
                                         mac@mbvesq.com
                                         *Counsel for the Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December, 2024, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                         /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

394

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## RUSSELL DRAZIN'S MOTION FOR SUMMARY JUDGMENT

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion for Summary Judgment on Claims Against Russell Drazin ("Motion") [ECF No. 7]. For convenience, the Borrowers will refer to Mr. Drazin as the "Trustee".

The Court should deny the Motion because: (a) two Superior Court judges have already determined that the Borrowers have sufficiently pled claims against the Trustee and those prior decisions constitute the law of the case; (b) the Trustee failed to address the causes of action that were asserted against him for declaratory judgment; (c) the sole affidavit filed by the Trustee in support of the Motion is facially deficient and relies upon inadmissible hearsay; (d) multiple material disputes of fact exist; and (e) the Motion is premature, as the Borrowers have not had the benefit of full discovery. The Borrowers have included a Declaration of Mel Negussie ("Negussie Decl.") in further support of this Opposition.

I.    BRIEF PROCEDURAL AND FACTUAL BACKGROUND

A.    The Consolidated Action

This action involves two consolidated cases, Case No.: 2022-CAB-005935 and Case No.: 2023-CAB-004260, (collectively, the "Consolidated Action") that deal with common issues of fact, similar loan documents, similar events and transactions underlying the disputes in each case, and nearly all of the same Defendants.[1] The Borrowers, respectively, entered into construction finance loans that were later financed. Negussie Decl. ¶¶ 6-7. WCP Fund is the

---

[1]    Borrowers note that SF NU, LLC remains a defendant only in Case No.: 2022-CAB-005935. Defendants, DP Capital, LLC d/b/a Washington Capital Partners ("DP Capital"), the WCP Fund I, LLC ("WCP Fund"), Danuel Huertas ("Mr. Huertas"), and the Trustee are defendants in both cases in the Consolidated Action and are hereinafter referred to collectively as "Defendants."

lender under the relevant loan documents. *Id.* In the Consolidated Action, the Borrowers

maintain that the Defendants, including the Trustee, have committed wrongdoing under the loan

documents in their joint effort to sabotage a refinancing of the loans. As for the Trustee, the

Borrowers have asserted three separate causes of action against the Trustee for:

1) Injunctive Relief – to prevent the Trustee (and the Defendants) from foreclosing under the deeds of trust;

2) Breach of Fiduciary Duty – based on the Trustee's admitted conflict of interest and his failure (and inability) to faithfully execute his duties to the Borrowers under the deeds of trust given his admitted conflict of interest; and

3) Declaratory Judgment – that the Trustee cannot serve as trustee under the deeds of trust and that the foreclosure notices issued by the Trustee in June of 2023 are invalid.

The Defendants removed the Consolidated Action to this Court from the Superior Court of the

District of Columbia on July 4, 2024.[2]

The Borrowers seek to prevent the Trustee from foreclosing on the properties they own

until all of their claims have been decided and to prevent the Defendants from wrongfully

executing on the powers of sale included in the loan documents. The Borrowers also seek to

hold the Trustee liable for the damages caused by his breach of fiduciary duties. The Trustee

makes two limited arguments in support of the Motion: (a) that the Borrowers have suffered no

damages because the foreclosures were enjoined; and (b) that a Trustee can rarely be sued for

breach of fiduciary duties because a Trustee primarily performs ministerial acts. As explained

below, each of these arguments lack merit, both factually and legally.

---

[2] The Borrowers continue to contend that the Consolidated Action case was improperly removed, with removal in large part based upon a bad faith, manufactured bankruptcy case filed by JPK NewCo, LLC (24-00262-ELG), and that this case should be remanded to the Superior Court. The Motion itself demonstrates that a primary reason, if not *the* primary reason, the Defendants removed this case was to try to have this Court revisit and reverse prior adverse decisions that had been made against them.

3

## II.  THE MOTION FOR SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law."  *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983).  In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.*  The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Rule 56 of the Federal Rules of Civil Procedure provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56.

## III.  LEGAL ARGUMENT

### A.  The Law of the Case Doctrine Bars the Trustee from Trying to Relitigate Issues That Have Already Been Decided by the Superior Court.

The law of the case doctrine generally discourages litigants from attempting to relitigate issues already determined in the same case.  *See Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) (applying the doctrine after explaining that "[t]he doctrine of law of the case conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single question.'").  The doctrine of law of the case generally means that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (1996) (emphasis in original).  In the Motion, the Trustee asks this

4

Court, without so stating, to disregard and effectively overturn multiple prior decisions of the Superior Court. The Trustee, however, has failed to allege error in those decisions or any exceptional circumstances that would allow this Court to either reexamine or reverse those prior decisions. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (The 9th Circuit explained the District Court may revisit "decisions entered by another judge in the same case if there are cogent reasons or exceptional circumstances.").

The fact that Defendants removed this case does not alter the applicability of the law of the case doctrine. It is well-established that federal courts may apply the doctrine of law of the case to follow state court decisions entered prior to removal. *See, e.g., Bowrin v. District of Columbia*, 2023 U.S. Dist. LEXIS 229958, at *19 (D.D.C. Decl. 28, 2023) (recognizing that courts have invoked the doctrine of law of the case to follow decisions by state courts prior to removal and choosing to do the same after observing that "[w]hile this Court's independent review may have produced a different outcome . . . the Superior Court's conclusion is reasonable."); *Pac. Emplrs. Ins. Co. v. Sav-A-Lot*, 291 F.3d 392, 398 (6th Cir. 2002) (explaining that "[t]he doctrine [of law of the case] also has relevance to rulings made by state courts prior to removal."); *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 759 F. Supp. 542, 544 (D. Minn. 1991) (observing that "[u]pon removal, the federal court must treat all state court rulings as if they had occurred in federal court.").

    B.    <u>The Prior Decisions that the Trustee Impermissibly Seeks to Relitigate.</u>

Three specific Orders are most relevant to the law of the case doctrine. First, the Superior Court already found that the claim for injunctive relief against Mr. Drazin was adequately pled by the Borrowers. Second, with regard to 423 Kennedy, the Superior Court already determined that the Trustee has a conflict of interest and that, consistent with DC law, the Trustee now has burden to show that he acted faithfully in carrying out his fiduciary duties to

the Borrowers and the transaction.  This is a burden that the Trustee has not met in the Motion.

Third, as with 423 Kennedy, with regard to Developer RE1, the Superior Court granted similar

relief in enjoining the Defendants in that case, including the Trustee, from proceeding with a

foreclosure.

        1.    <u>The April 7, 2023 Order</u>

        On January 26, 2023, the Trustee (with his co-defendants) sought dismissal of

Case No. 2022-CAB-005935, including the cause of action for injunctive relief, by filing a

Motion to Dismiss.  With their Motion to Dismiss, Defendants argued that injunctive relief was

not a viable cause of action.  On April 7, 2023, the Honorable Ebony M. Scott issued an Order

*denying* the Motion to Dismiss (the "April 7, 2023 Order").   A copy of the April 7, 2023 Order,

as it is defined below, is attached hereto and incorporated herein as Exhibit 1.   Developer RE1

subsequently filed a Second Amended Complaint in Case No. 2022-CAB-005935 that primarily

added claims against Mr. Drazin, to which the Trustee filed an Answer on April 2, 2024,

apparently recognizing that Judge Scott was likely not going to grant a new motion to dismiss.[3]

Perhaps realizing the futility of his prior assertions, the Trustee now relegates the s*ame argument*

on injunctive relief to a footnote.  Motion at 7, n. 4.  The Motion should be denied as the April 7,

2023 Order constitutes the law of the case, the causes of action for injunctive relief have been

sufficiently pled, and the Trustee has failed to set forth any basis for reversing this prior decision.

---

[3]    The Borrowers note that the Trustee also responded to the Complaint (in Case No. 2023-CAB-004260) with an Answer filed on September 3, 2023.

2.     The July 24, 2023 Order

On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive, twenty-wo page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 2. In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their burden by establishing a likelihood of success on the merits." *See* TRO Order at p. 17. Judge Lee also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that when the Trustee acted as counsel to WCP, this created a conflict. *See* First TRO Order at pp. 16-17. Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee." *Id* at p. 17. As a result of Judge Lee's determination, the Trustee bears the burden of demonstrating he faithfully executed his fiduciary duties to the Borrowers, something he has not done in the Motion -- and likely cannot due given his ongoing conflict of interest and the disputed facts here.

3.     The August 15, 2023 Order

On August 15, 2023, Judge Scott entered a Hearing Order by which she, among other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 3. In the Second TRO Order, Judge Scott came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record demonstrates that the *Defendants* 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *See* Second TRO Order at p. 4 (italic emphasis added). Pursuant to the Second TRO Order, Judge Scott ordered that the Defendants, including the Trustee, "must immediately stop taking any action to foreclose on the Property [owned by Developer RE1] pending further order of this Court." *Id*. at p. 5.

These three prior decisions, which were made after either extensive briefing, oral arguments, two evidentiary hearings, or some combination of those things, should not be revisited under the law of the case doctrine, in particular because the Trustee has not set forth any legal basis for disturbing those prior decisions. *See e.g., Gabriel v. Weltmer*, 266 F. Supp. 664, 665 (D. Ariz. 1967) (applying the doctrine of law of the case and rejecting defendant's attempt to use "the process of removal to have [the federal court] sit in review of the [state court].").

    C.    <u>The Trustee's Assertions in the Motion Further Demonstrate Why His Removal is Appropriate</u>.

The Trustee relies heavily upon *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194 (D.C. 1980) in support of his Motion. Motion at 10 (citing *Perry).* In *Perry*, an individual sought to set aside a foreclosure sale *after* it had occurred. *Perry,* 412 A.2d at 1196. The *Perry* Court observed that the individual did not allege "fraud, misrepresentation, self-dealing, or other overreaching by the trustees (or of related benefit to the noteholder)." *Id*. at 1199. Unlike the facts here, the individual in *Perry* did not allege she was not in default at the time of the foreclosure sale, or that the lender had ginned up defaults after the fact as a pretext. The Borrowers here expressly allege that the Trustee acted as counsel to the Defendants to manufacture defaults after-the-fact as a pretext to support each of the Notices of Default. *See generally* Developer RE1's Second Am. Compl. at ¶¶ 81-86 and 423 Kennedy's Compl. at ¶¶ 88-93. The Borrowers further allege that the Trustee was dominated by the lender and acted at all times as counsel to the lender rather than as trustee under the loan documents in breach of his fiduciary duties to them. *See, e.g.,* Developer RE1's Second Am. Compl. at ¶¶ 151-53; *see also Sheridan v. Perpetual Bldg. Asso.*, 322 F.2d 418, 422 (D.C. Cir. 1963) (trustees found liable where they showed "callous indifference to" the borrower's rights and "continual consultation

with, if not dominance by" the lender). Specifically, the Borrowers' position here is that the
Trustee sought to proceed with foreclosures knowing that he had an irreconcilable conflict of
interest and that most of the pretextual defaults that he initially asserted (as counsel for the
Lender) had either been cured of were of a de minimis nature. Two different DC Superior Court
judges have already determined that the Trustee's actions here constitute legally actionable
misconduct, and that the Borrowers here are likely to prevail on their claims. One Superior
Court judge also found that the Trustee has the burden to demonstrate that he faithfully upheld
his duties to act in fairness to the Borrowers and the transactions, not just to the demands of the
Lender. Moreover, contrary to the Trustee's position in the Motion, the Borrowers have alleged
that the Trustee has a financial incentive to inflate the amounts that are claimed to be due. *See*
Developer RE1's Second Am. Compl. at ¶ 80 and 423 Kennedy's Compl. at ¶ 96.[4]

It is well-established that "[w]hen it is shown that a fiduciary has conflicting interests,
ancient principles require him to bear the burden of proving that he has been faithful to his trust."
*Sheridan v. Perpetual Bldg. Asso.,* 299 F.2d 463, 465 (1962). The Motion does not meet that
burden, and sidesteps the fact that to prevail here, the Trustee has the affirmative burden to prove
that he faithfully upheld his duties to act in fairness to the Borrowers and the transactions. A
Motion supported by an Affidavit that does not address those factual issues at all, and that is not
based upon the personal knowledge of the Trustee does not cut it. *See* Part C, *infra.*

     D.    The Motion Fails to Address the Declaratory Judgment Counts.

In the Motion, the Trustee requests dismissal of *all* counts against him, but he did not
address at all the declaratory judgment claims. The Trustee's assertions in the Motion actually
further illuminate why declaratory relief is appropriate. The Trustee asserts that as a result of the

---

[4]    Both operative Complaints are in the record from the Superior Court filed at ECF 1-2.

402

claims against him, he has been "sideline[d]…from serving as litigation co-counsel" in the instant action. Motion at 3. The Trustee also takes issue with what he refers to as the Borrowers' contention that the Trustee had a duty "to act as some variety of an arbiter or third-party neutral." Motion at 7. The Trustee also suggests, without any proof, that there is some nefarious reason for why he was sued. *Id.*

The Trustee's assertions further demonstrate that he has always been acting as attorney to WCP and the WCP Fund rather than as Trustee under the deeds of trust. The factual finding that the Trustee had a conflict of interest has already been made, and the Defendants did not contest that fact at either of the TRO hearings. While the Trustee argues that he does not need to function as a neutral in dealing with the Borrowers, it is well-established that a trustee has a duty to act in an impartial manner with regard to *both* the borrower and the lender. *See Nat'l Life Ins. Co. v. Silverman*, 147 U.S. App. D.C. 56, 454 F.2d 899, 915 (1971) ("Trustees under deeds of trust also have the duty to act for the benefit of both parties, borrower as well as lender, and to be impartial."). That the Trustee would suggest that, but for this lawsuit, he would be acting as litigation counsel, further illuminates his ongoing conflict interest exists that requires his removal as trustee.

      E.    <u>The Motion is Not Supported by Admissible Evidence.</u>

Under the law, the burden of proof here is on the Trustee. Therefore, he is required, at a minimum, to set forth admissible evidence to prove that he faithfully carried out his duties to the Borrowers and the transactions, and that there are no material facts in dispute as to that issue. Despite this burden, the Trustee has failed to submit a single piece of admissible evidence regarding the actions he allegedly took in relation to upholding his fiduciary duties, as required. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The factual support

for the Motion is entirely based upon the Affidavit of Daniel Huertas, which is not based upon

personal knowledge, but inadmissible hearsay and the arguments of counsel, which are not

evidence. *Barnette v. Ridge*, 2004 U.S. Dist. LEXIS 27546, at *18 n.6 (D.D.C. Nov. 15, 2004)

(noting that the "mere arguments of counsel" to the contrary are not evidence). An affidavit in

support of a motion seeking summary judgment must be made on personal knowledge. *See* Fed.

R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated.").

      Mr. Huertas' Affidavit is not made on personal knowledge. Instead, Mr. Huertas asserts

that he is "familiar with" the efforts taken with respect to the foreclosure sales – information that

he could not have personal knowledge about unless he was sitting next to Mr. Drazin when each

of the described actions were taken. Mr. Huertas's Affidavit is entirely based upon inadmissible

hearsay – either what Mr. Drazin told Mr. Huertas or what Mr. Drazin sent to Mr. Huertas -- so

that affidavit cannot be relied upon in support of a summary judgment decision. *See, e.g.,*

*Richardson v. District of Columbia*, 522 A.2d 1295, 1298 (D.C. 1987) (reversing the trial court's

granting of summary judgment after concluding that the affidavit submitted with the motion for

summary judgment was not based on personal knowledge, contained "patent hearsay," and was

inadequate to support the motion). More importantly, nowhere in his Affidavit does Mr. Huertas

mention, much less prove, that Mr. Drazin "at all times" faithfully complied with his fiduciary

duties to the Borrower and the transactions. This defect is fatal to the Trustee's request for

summary judgment at this stage.

      F.    <u>There Are Material Facts in Dispute.</u>

      Regarding the purportedly undisputed facts set forth by the Trustee, the Borrowers

respond as follows:

As for No. 6 of the facts the Trustee claims are not in dispute, this fact is in dispute. The

Borrowers dispute that they were "habitually" late in making payments on their respective

promissory notes and that both Borrowers allowed "senior liens" to accrue. By December 8,

2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents

referenced herein. Negussie Decl. ¶ 9. Developer RE1 also presented evidence at the TRO

Hearing showing that the lender's own records did not list the loans in default status when the

Notices of Default were sent. *See* Exhibit 4 (Exhibit S from the Developer RE1 TRO Hearing

showing that both loans for Developer RE1 were listed as "current"). Finally, at his deposition

on July 19, 2023, Mr. Huertas was confronted with the lender's loan records for Developer RE1

and was unable to identify what loans were current and what loans were not current. *See* Exhibit

5 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could

not identify any specific reasons how Developer RE1 was in default, and confirming that the

lender's records did not list a "default" status until February 1, 2023).

      The Trustee contends the Borrowers have not been damaged as a result of his actions

solely because the foreclosures have not yet occurred.[5] Under the Trustee's incorrect damages

theory, the Borrowers would be forced to wait until the Trustee goes through with a foreclosure

before asserting causes of action against him. There is no factual or legal basis for this

contention. The Borrowers *have* already suffered damages as a result of the Trustee's

misconduct that includes damages caused by their inability to refinance the loans, rising interest

rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the

projects. Negussie Decl. ¶ 13. There will also be damages for the increased costs to complete

the projects as a result of supply chain shortages and inflation. *Id.* To top it off, due to nearly all

---

[5] Defendants previously raised this same argument which was rejected with entry of the April 7, 2023
Order in the Superior Court.

of those factors and a now depressed sales market, there is very little chance that either project

will result in a profit.  *Id.* at ¶ 14.  As to 423 Kennedy, there are also likely damages to the

building because it has been vacant and open to environmental elements.  *Id.*  Both Borrowers

have also incurred carrying costs, such as property taxes, insurance, and payments to vendors.

Both Borrowers have also suffered reputational damages.  *Id.*

        To protect their rights under the loan documents, the Borrowers were forced to take legal

action.  Negussie Decl. ¶ 12.   As a result, the Borrowers have incurred and continue to incur

attorneys' fees and costs.  Negussie Decl. ¶ 13.  The Borrowers dispute that the Trustee has acted

faithfully to his duties as Trustee since December of 2022.  The Borrowers believe the Trustee

has acted as counsel for WCP at all times since December of 2022 rather than as a conflict-free

Trustee under the loan documents.  Negussie Decl. ¶ 15.

        As for the Trustee's claims that he is somehow being unfairly targeted here, the Trustee

could have easily avoided being implicated in nearly all of the Borrower's claims had he taken

the simple step of resigning as Trustee when the conflict first arose.  Instead, the Trustee

"doubled down" and went forward with preparing foreclosure notices and scheduling foreclosure

sales after he knew that he had been sued and was already in serious legal jeopardy.

        G.      The Borrowers Are Entitled to Additional Discovery to Oppose the Motion

        Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they

cannot present essential facts to justify their opposition, "(1) defer considering the motion or

deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any

other appropriate order."  Fed. R. Civ. P. 56(d).  There are a variety of facts, documents, and

information that the Borrowers are entitled to discover that would further support the Borrower's

opposition to the Motion, such as:

- When the Trustee realized that he had a conflict of interest and whether he conducted any research on that issue;

- Complete records and communications related to the Notices of Foreclosure Sale of Real Property or Condominium Unit that the Trustee recorded (for example, did the Trustee vet those documents with the other Defendants);

- What the Trustee claims to have done (and not done) in order to faithfully execute his fiduciary duties to the Borrowers and the transaction;

- Records and information showing all payments the Trustee received from any of the Defendants (in his capacity as Trustee);

- All records and communications related to the Default Notices and how the Trustee contends he can comply with his fiduciary duties when he is bound to follow (as counsel) the instructions of his clients;

- Records of all commissions or other payments the Trustee received related to the deeds of trust including, but not limited to, the advertisement in the Washington Post;

- An explanation regarding how the Trustee could possibly faithfully execute his duties to the Borrowers and the transaction once he realized that a conflict of interest arose;

- Whether the Trustee was in continual consultation with the lender and was dominated by the lender;

- The length of the Trustee's relationship(s) with the Defendants and what disclosures, if any, the Trustee asserts were made to the Borrowers regarding such relationship(s).

Negussie Decl. ¶ 16.

As of the date this case was removed, the Trustee (and other Defendants) had failed to comply with discovery by, among other things: refusing to answer multiple interrogatories; refusing to allow his deposition to be taken (as Trustee); refusing to produce legal invoices; redacting legal invoices that were produced without explanation; and failing to produce any form of a privilege log. The evidence gathered thus far demonstrates that the Trustee always acted as

14

attorney to the lenders rather than as trustee under the loan documents, resulting in damages to the Borrowers.

At this stage, and because there is already no doubt that there are multiple material facts in dispute, the Court should give the Borrowers the opportunity to conduct further discovery. *See Travelers Indem. Co. v. United Food & Commer. Workers Int'l Union,* 770 A.2d 978 (D.C. 2001) (noting that Rule 56 (f) allows the Count to deny a motion for summary judgment to permit discovery "if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (a motion for summary judgment should be denied "when the non-moving party has not had the opportunity to discover information that is essential to his opposition.").  The Borrowers are entitled to complete discovery regarding many issues, such as the Trustee's conflicting roles here, what actions, if any, the Trustee took to comply with his fiduciary duties to the Borrowers and the transactions, his financial interests in the transactions, and why he did not resign as trustee given the conflict of interest.  This information would likely provide further reasons for why the Motion should be denied.

## IV.   CONCLUSION

There are multiple reasons why the Court must deny the Motion.  For these reasons, and for any reasons that may be advanced at a hearing on the Motion, the Plaintiffs, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Motion.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated:  January 17, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ebm@gdllaw.com |
               ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*   and 423 Kennedy St Holdings, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendant Russell Drazin's Motion for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.


/s/ James D. Sadowski
James D. Sadowski

Case 24-10200-ELG   Doc 321   Filed 09/01/25   Entered 09/01/25 19:26:22   Desc
Affidavit - Docket Entries (Part 1)   Page 24 of 184

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>   CHARLES PAXTON PARET,<br><br>   *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>   *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>   *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>   *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>   *Defendants.* | |

## DECLARATION OF MEL NEGUSSIE

I, Mel Negussie, am over 18 years of age, have personal knowledge of the facts set forth herein, and declare as follows:

1.      423 Kennedy St Holdings, LLC ("423 Kennedy") is a domestic, sole purpose, limited liability company that owns the real property known as 423 Kennedy, N.W., Lot 56, Square 3260 (the "423 Kennedy Property").

410

2.       Developer RE1, LLC ("Developer RE1") is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "5501 1st Street Property").

3.       I am a member of both Developer RE1 and 423 Kennedy.

4.       The sole purpose of 423 Kennedy is to own and develop the 423 Kennedy Property.

5.       The sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

6.       In January of 2020, DP Capital LLC d/b/a Washington Capital Partners ("WCP") helped 423 Kennedy obtain a construction finance loan for the 423 Kennedy Property, which original loan was later refinanced. WCP Fund I, LLC ("WCP Fund") is the lender under the loan documents.

7.       On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the 5501 1st Street Property, which original loan was later refinanced. WCP Fund is the lender under the loan documents.

8.       The loan documents referenced in paragraphs 6 and 7 above were documents prepared by the Trustee that 423 Kennedy and Developer RE1 were not allowed to modify.

9.       By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein.

10.      On December 8, 2022, I received two unsigned Notices of Default by email, one regarding the 5501 1st Street Property and the other regarding the 423 Kennedy Property. Neither Notice of Default set forth a default. The email also included Payoff Statements. The

2

Payoff Statements demanded additional amounts of $727,598.77 (for Developer RE1) and $1.5 million (for 423 Kennedy) for "Default Interest" and "Default Penalt[ies]."

11.    After receiving the Notices of Default, I immediately called Mr. Huertas who told me to contact WCP's counsel, the Trustee.

12.    As a direct result of the wrongful conduct of the Trustee, Developer RE1 and 423 Kennedy were forced to initiate legal action to protect their rights under the loan documents referenced herein.

13.    The Borrowers have already suffered damages as a result of the Trustee's misconduct to include damages caused by their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects.  There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation.  As to 423 Kennedy, there are likely damages to the building at the 423 Kennedy Property because it has been vacant and open to environmental elements.  Both Borrowers have incurred carrying costs, such as property taxes, insurance, and payments to vendors.  Both Borrowers have suffered reputational damages.  I have personally fielded questions from other developers and financers about why the projects at the 423 Kennedy Property and the 5501 1st Street Property were not completed.

14.    Due to nearly all of the factors listed above, and a now depressed sales market, there is very little chance that either project will result in a profit.

15.    The evidence that we have obtained so far shows that the Trustee has acted at all times on behalf of WCP and the WCP Fund as its counsel rather than as trustee under the loan documents referenced herein.

3

412

16.     Developer RE1 and 423 Kennedy seek to discover information and documents as

to the Trustee's actions in relation to his duties under the loan documents referenced herein to

include the following:

- When the Trustee realized that he had a conflict of interest and whether he
  conducted any research on that issue;

- Complete records and communications related to the Notices of
  Foreclosure Sale of Real Property or Condominium Unit that the Trustee
  recorded (for example, did the Trustee vet those documents with the other
  Defendants);

- What the Trustee claims to have done (and not done) in order to faithfully
  execute his fiduciary duties to the Borrowers and the transaction;

- Records and information showing all payments the Trustee received from
  any of the Defendants (in his capacity as Trustee);

- All records and communications related to the Default Notices and how
  the Trustee contends he can comply with his fiduciary duties when he is
  bound to follow (as counsel) the instructions of his clients;

- Records of all commissions or other payments the Trustee received related
  to the deeds of trust including, but not limited to, the advertisement in the
  Washington Post;

- An explanation regarding how the Trustee could possibly faithfully
  execute his duties to the Borrowers and the transaction once he realized
  that a conflict of interest arose;

- Whether the Trustee was in continual consultation with the lender and was
  dominated by the lender;

- The length of the Trustee's relationship(s) with the Defendants and what
  disclosures, if any, the Trustee asserts were made to the Borrowers
  regarding such relationship(s).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __17th__ day of January, 2025.

_____

Mel Negussie

EXHIBIT 1

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**     **2022-CAB-005935** |
|     **Plaintiff,** | |
|     **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a** | |
| **WASHINGTON CAPITAL** | **Next Court Event: Mediation** |
| **PARTNERS,** *et al.*, | **November 16, 2023 at 1:30 p.m.** |
|     **Defendants.** | |

## <u>ORDER</u>

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

                                           **Associate Judge Ebony M. Scott**
                                              *(Signed in Chambers)*

416

**Copies via Odyssey to**:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

417

# EXHIBIT 2

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

| | | |
|---|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : | |
| **Plaintiff** | : | |
| | : | |
| | : | |
| **vs** | : | <mark>Docket No. 2023</mark> **CAB 4260** |
| | : | |
| | : | |
| **DP CAPITAL /D/B/A WASHINGTON** | : | |
| **PARTNERS, ET. AL.** | : | |
| **Defendant** | : | |

### ORDER

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of
Contract (Count 1); tortious interference with business relations (Court II); breach of
duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee
(Count VI). The Complaint also seeks declaratory judgments regarding the meaning
of provisions in the two Deeds of Trusts and a determination that the liquidated
damages provisions are unenforceable because those provisions constitute a penalty
(Count IV). Plaintiff also makes a claim that the trustee cannot serve in that position
because of the existence of a conflict (Count VII). Finally, in Count V plaintiff's
seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count
V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary
Restraining Order to Prevent an Imminent Foreclosure Sale. On July, 20, 2023
defendants filed an opposition. The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,
plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3) that the balance of injuries favors granting an injunction, and 4) that the public interest would be served by granting the request for an injunction. *Ifill v. District of Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to demonstrate that each of the factors, taken together, weigh in favor of issuing an injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I.   Likelihood of Success on the Merits

### A.  The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the existence of a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute regarding whether there was a valid contract between the parties. The parties do not agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants improperly discontinued performance of the contract by stopping construction draws for the 423 Kennedy Street property (the project). When defendants discontinued construction draws, they knew that plaintiff would not be able to move forward with the project. Shortly after the construction draws stopped, defendant gave notice of default to plaintiffs. Plaintiffs claim that there is no basis for the default because plaintiffs had complied with the terms of both deeds of trust and the reasons advanced by defendants for the default is nothing more than a pretext. According to plaintiff, the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain

control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that

it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to

continue to make payments on the deeds.

       Defendants contend that plaintiff was in default on the second deed of trust

because plaintiffs continually made late payments the loan.  In addition, defendant

argues that plaintiff was in default because the District of Columbia Department of

Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine

due on that infraction remained unpaid causing a lien to be placed on the 423

property.  Based on the terms of the deed of trust, defendants argue, that this failure to

cure the lien caused by the failure to pay the infraction created a basis to default

loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they

failed to make the payments necessary by the maturity date of the loan.

       At the hearing, Mel Negussie testified that he is a 50 percent owner of 423

Kennedy ST. Holdings along with several small investors known as Brighton KSDC

that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited

liability company that owns and has developed the 423 Kennedy Street property.

According to Mr. Negussie, his company entered into a construction financing loan

with the defendants and executed two deeds of trusts and two commercial deeds of

trust for each deed on March 31, 2022.  Approximately 50% of the project was

completed at the time of the refinancing.  The first commercial deed of trust was for

$8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim

that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

 Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy. According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble. 423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance. Those payoff statements did not reflect a default or late fees.[3] On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development. Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6] When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin. On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7] The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

423

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction.  Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10]  Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and
not injunctive relief.[12]

 The testimony from the hearing established that plaintiffs and defendants
entered into a construction loan that obligated plaintiffs to make interest payments
beginning May 1, 2022. Defendants provided notice there would be no further
construction draws after October 2022.[13] In that same email Daniel Huertas inquired
about the "status of the payoffs of both loans." Defendants previously issued payoff
statements dated October 24, 2022 that made no reference to a default, late fees or
any accelerated payments.[14] The payoff statement for the first deed of trust does
reference a construction draw balance of $2,703,485.96. There is no reference to a
construction draw for the second deed of trust. A second set of payoff statements was
issued on November 21, 2022 that reflected no evidence of a default or lates fee but
did reference the same amount due as a construction draw balance.[15] The evidence
established that plaintiffs learned from Huertas that there would no more construction
draws sometime in late October 2022. Negussie testified that based on the absence of
additional construction draws, Huertas understood that plaintiffs would have to obtain
new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is
reflected in a November 3rd email exchange between Huertas and Negussie where the
payoffs of both loans was discussed,[16] and later in a November 15th email where
Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id*, at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of
construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

426

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced
payments as construction draws.  Perhaps some of the most compelling evidence
supporting the fact that the construction draws were part of the contract is that the
payoff statements that reflect the terms of payments between the parties includes a
reference to a construction draw balance that remained due.  In addition, Negussie
testified that construction draws were consistently distributed for five or six months
following each request made by plaintiffs with the last payment occurring in October
2022.  These facts are sufficient to establish that the parties acted as if the
construction draws were part of the agreement that obligated the parties and that the
parties understood that the construction draws were an essential part of the agreement
because the project could not move forward without those funds being available to
plaintiffs.  Defendants argue that the failure of defendants to make construction draws
does not excuse plaintiffs' noncompliance with the second deeds because there was
no requirement for a construction draw on that agreement.  Defendants' argument
glosses over the point that both deeds and their commercial counterparts were
identical in almost all respects, were executed at the same time and were part and
parcel of the same objective of the parties: the refinancing and development of the
423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore
the uncontroverted testimony of Negussie on each of these points and the objective
facts that support that testimony.  The testimony further established that the parties
treated the construction draws as a part of the contract and plaintiffs relied on those
terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem.  Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.
[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation. This Court concludes that there is sufficient reliable evidence to conclude that plaintiffs would have continued to make interest payments on the loan but for defendants' unilateral decision to discontinue the agreed upon construction draws. Even after the construction draws were discontinued, plaintiffs continued to make monthly until the end of 2022. There is no reason to believe that plaintiffs would not have made payments by the maturity date given that the project was 75-80% completed when the construction draws stopped. Negussie's testimony that Huertas discontinued the construction draws because the lenders were unhappy with work on the Charles Paret project further supports plaintiffs' contention that the default was actually a pretext. Negussie testified that Huertas wanted 423 Kennedy to rescue the Paret project by covering a $700,000 shortfall. When Negussie refused to address the shortfall created in a project that he was not involved with, it was not until then that construction draws were discontinued, payoff statements were withdrawn and default notices were issued. It is more than curious that defendants issued a default notice on the second deed that did not contain a construction draw provision while at the same time included default notice on the 5501 1st Street project also under construction by Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach of contract. The evidence presented by plaintiffs is more than sufficient to support the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a pretext. A breach of the terms of a contract means an unjustified failure to perform all of any part of what is promised in the contract. *District Cablevision v. Limited Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003). The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

**B.  The Tortious Interference with Business Claim**

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The email exchanges between Negussie and Huertas demonstrates this knowledge.  As Negussie testified, defendants provided "clean" payoff statements  that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022.  The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due.  As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure.  Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default.  According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022.  The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."  Trustees on deeds must exercise their powers "with religious fidelity to ethical principles."  Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both the borrower and the lender.  Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both.  The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

**III.  Balancing of the Injuries**

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the
rule creates a mandatory imposition of a bond for the protection of the enjoined party
has not been directly addressed by the District of Columbia Court of appeals.  The
local rule is almost identical to the federal version, so federal precedent is instructive.
The circuits are split on this issue and the circuits that have interpreted the rule as
being discretionary have recognized several exceptions to the mandatory language.
The District of Columbia Court of Appeals has suggested that the security
requirement is phrased in mandatory terms with the amount of any bond imposed
being left to the discretion of the trial court.  If the trial court exercises its discretion
to waive the bond requirement, it is important that the trial judge states the reasons for
taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* ==354
A.2d 233, 237== (D.C. 1976).

 Considering the underlying facts discussed in this order, the Court declines to
impose a bond for the following reasons.  First, defendant have not provided any
evidence of what an appropriate bond might be under the circumstances.  While
defendants' counsel made a proffer of what might be appropriate, that proffer was not
accompanied by any direct evidence that would demonstrate that the suggested bond
was rationally related to any potential harm.  Second, plaintiffs testified that they
made payments on the loan through the end of December 2022 even though
defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the
movant gives security in an amount that the court considers proper to pay the costs and damages
sustained by any party found to have been wrongfully enjoined or restrained. The United States, the
District of Columbia, and officers or agencies of either are not required to give security.

438

move forward. The clear import of that testimony was that plaintiffs had limited
funds available to continue in the project. If the bond requirement were interpreted as
a mandatory requirement, the inability of a moving party to pay a bond would
effectively deny access to judicial review. Lastly, equity would support the waiver of
the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary
injunction hearing with the trial on the merits. It is the Court's intention to schedule
this matter for a combined hearing on a date convenient to the Court and available to
the parties.

### VI. Conclusion

The Court concludes that plaintiffs have made the showing necessary to
support the issuance of an order enjoining defendants from foreclosing on the 423
Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is
concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear
from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits
defendants from conducting a foreclosure sale on the property located at 423
Kennedy Street until further order of this Court or at any time before the conclusion
of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what
track should be used for a scheduling order. The parties should also consider a more
expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


   July 24, 2023                                     /s/          
       Date                                    MILTON C. LEE, JR.
                                          ASSOCIATE JUDGE


cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

# EXHIBIT 3

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
# CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.      2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.***,** | **Next Event: Remote Mediation Session November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

## <u>HEARING ORDER</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day. The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

442

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

443

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full.  As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms.  The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements.  The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means.  Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260.  In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

444

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

445

that were necessary for the project to move forward.   Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale.  Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing.  Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

446

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

                                     **Associate Judge Ebony M. Scott**
                                        *(Signed in Chambers)*

<u>**Copies via Odyssey to**</u>:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

447

# EXHIBIT 4

| Property: | 5501 1st St NW Washington DC 20011-5207 |
|---|---|

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| GRAND TOTAL | $ 362,353.69 |
|---|---|



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i



454



https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym





https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy





https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
|---|---|
| Payment Amount: $5,410.15, Due Date: 06/01/2022 | |



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e





https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay





https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4





https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcutegpdscyz4wj4m





https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e



# EXHIBIT 5

Page 1

1        SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                      CIVIL DIVISION

3      _____

4      DEVELOPER RE1, LLC,

5             Plaintiff,

6          v.                          No.

7      DP CAPITAL, LLC d/b/a WASHINGTON    2022-CAB-005935

8      CAPITAL PARTNERS, et al.,

9             Defendants.

10     _____

11                      DEPOSITION OF

12                      DANIEL HUERTAS

13     DATE:          Wednesday, July 19, 2023

14     TIME:          10:01 a.m.

15     LOCATION:      Greenstein DeLorme & Luchs, PC

16                    801 17th Street Northwest, Suite 1000

17                    Washington, DC 20006

18     REPORTED BY:   Matthew Yancey, Notary Public

19     JOB NO.:       6012872

20

21     PAGES 87-100, 105-222, 251-287 ARE CONFIDENTIAL

22

Page 2

```
1          A P P E A R A N C E S
2  ON BEHALF OF PLAINTIFF DEVELOPER RE1, LLC:
3     JAMES D. SADOWSKI, ESQUIRE
4     ALEXANDRIA J. SMITH, ESQUIRE
5     Greenstein DeLorme & Luchs, PC
6     801 17th Street Northwest, Suite 1000
7     Washington, DC 20006
8     jds@gdllaw.com
9     ajs@gdllaw.com
10    (202) 452-1400
11
12 ON BEHALF OF DEFENDANTS:
13    MAURICE B. VERSTANDIG, ESQUIRE
14    The VerStandig Law Firm, LLC
15    1452 West Horizon Ridge Parkway, Suite 665
16    Henderson, NV 89012
17    mac@mbvesq.com
18    (301) 444-4600
19
20 ALSO PRESENT:
21    Mel Negussie, Developer RE1, LLC
22
```

Page 3

```
1              I N D E X
2  EXAMINATION:                        PAGE
3    By Mr. Sadowski              7
4
5            E X H I B I T S
6  NO.      DESCRIPTION             PAGE
7  Exhibit 1   Plaintiff's requests production  73
8  Exhibit 2   Notice of foreclosure        90
9  Exhibit 3   Complaint Developer RE1, LLC  135
10 Exhibit 4   First amended complaint      138
11 Exhibit 5   Email Thread 4:31            155
12 Exhibit 6   Chart Status Reason          165
13 Exhibit 7   Chart Status Reason WCP 0708 176
14 Exhibit 8   Email Thread WCP 0628        258
15
16
     * retained by Mr Sadowski
17
18
19
20
21
22
```

Page 4

```
1              I N D E X (Cont'd)
2     QUESTIONS INSTRUCTED NOT TO ANSWER
3     PAGE          LINE
4     27            19
5     34            6
6     50            15
7     51            10
8     110           12
9     269           8
10    274           8
11
12
13
14
15
16
17
18
19
20
21
22
```

Page 5

```
1          P R O C E E D I N G S
2        THE REPORTER:  Good morning.  My name
3  is Matthew Yancey; I am the reporter assigned by
4  Veritext to take the record of this proceeding.  We
5  are now on the record at 10:01 a.m.
6        This is the deposition of Daniel
7  Huertas --
8        MR. HUERTAS:  Yes, sir.
9        THE REPORTER:  -- taken in the matter
10 of Developer RE1, LLC vs. DP Capital, LLC doing
11 business as Washington Capital Partners, et al., on
12 July 19, 2023, at 801 17th Street Northwest,
13 Suite 1000, Washington, DC, 20006.
14        I'm a notary authorized to take
15 acknowledgments and administer oaths in the District
16 of Columbia.
17        Additionally, absent any objection
18 before the witness is sworn, all parties and the
19 witness understand and agree that any certified
20 transcript produced from the recording of this
21 proceeding:
22        - is intended for all uses permitted
```

2 (Pages 2 - 5)

Page 162

1  Q  Is Paragraph 29 true?

2  A  No, it's not true.

3  Q  Okay.  What's not true about it?

4  A  That he didn't make all the payments, it's

5  not true.

6  Q  What payments, as of November 30, 2022, had

7  not been made?

8  A  I don't have the record.  So I can't -- I

9  can't tell you.  I don't have the record.

10  Q  Okay.  Who has that record?

11  A  I don't have the record.

12  Q  I know you don't have the record.  You've

13  told me that now twice.

14  A  Yeah.

15  Q  Who has that record of payments as of

16  November 3, 2022, that there was an unpaid balance due

17  at that time?

18  A  Right.  The servicing department should have

19  that record.  I don't have that record.

20       MR. SADOWSKI:  Okay.  Just can second.

21  Mel, can I have the Post-its?  Okay.

22  //

Page 163

1  BY MR. SADOWSKI:

2  Q  Paragraph 32, Page 5 of Exhibit 4, is that

3  true?

4  A  Paragraph 32?

5  Q  Paragraph 32, yes.

6  A  Okay.  Let me read it.  No, that's not true.

7  Q  Okay.  What's untrue about it?

8  A  Borrower was in default.

9  Q  And how did the WCP -- how do you know that?

10  A  Borrower was in default.

11  Q  Well, in Paragraph 29, you couldn't tell me

12  whether or not the borrow was in default because you

13  didn't have the records or how much was due.

14  A  Right.

15  Q  So how can you say with confidence that the

16  borrower's in default, under 32, if you don't have the

17  records?

18  A  Borrower's that are not current with their

19  payments are in default.

20  Q  Okay.  So --

21  A  That's a -- not making their -- not making a

22  payment is a form of default.

Page 164

1  Q  Okay.  So as of November 15, 2022, what

2  outstanding payments were there under the loans?

3  A  Like I said, I don't have the record.

4  Q  So you don't know.

5  A  I can tell you that Mr. Negussie was in

6  default.

7  Q  Now, when you say Mr. Negussie is in

8  default, do you mean RE1?

9  A  RE1.

10  Q  Okay.

11  A  All of the above.

12       MR. SADOWSKI:  All right.  Okay.  It's

13  two pages.  You're going to need to find us a stapler,

14  Alex.  I don't think you'll have to go far until this

15  stapler arrives.

16       THE REPORTER:  Sure.

17       MR. SADOWSKI:  Are we on No. 6?

18       MR. VERSTANDIG:  There's no Bates on

19  the second page.

20       MR. SADOWSKI:  That's because it's

21  all -- it's all one page.  I'll represent that --

22       MR. VERSTANDIG:  Oh.  It's just 54; got

Page 165

1  it.

2       MR. SADOWSKI:  -- Exhibit 6 is an

3  enlarged printout of WCP 0054.

4       (Exhibit 6 was marked for

5       identification.)

6       MR. VERSTANDIG:  Thank you.

7  BY MR. SADOWSKI:

8  Q  Daniel, let me know when you're done looking

9  at Exhibit 6.

10  A  Sure.  Go ahead; ask your question.

11  Q  Oh, okay.  What is it?

12  A  It looks like -- I -- I mean, I don't have

13  here the record but payments of the 1 -- RE1, sorry.

14  Q  Okay.  Are you able to read the print on

15  this exhibit?

16  A  I don't have the property address here.  So

17  I'm sorry.  If I don't have a property address or

18  something that can say that to the fact, I cannot -- I

19  can't use this.

20       MR. VERSTANDIG:  I'll stipulate that

21  this is counterintuitively 54, which came first in the

22  production, is the second loan to Developer RE1

42 (Pages 162 - 165)

Page 166

1  secured by 5501/505 [sic] 1st Street.
2          MR. SADOWSKI:  Is there another one of
3  these for the first loan in the production?
4          MR. VERSTANDIG:  Yeah, I believe it's
5  either 606 or 608 in the production.  If I'm off by a
6  few pages, I am not messing with you for sport; I
7  promise.
8          MR. SADOWSKI:  Same drill for Margaret,
9  thanks.
10         MR. VERSTANDIG:  If it's not 606 or
11 608, look at 806 or 808.  I have the ability to jumble
12 numbers in my mind.
13         MR. SADOWSKI:  It's one of those days
14 of card counting.
15 BY MR. SADOWSKI:
16     Q  Okay.  So as for Exhibit 6, Daniel, your
17 counsel has indicated that he's represented that this
18 is a screen print from the system from the second deed
19 of trust.
20     A  Okay.
21     Q  Do you believe him?
22         MR. VERSTANDIG:  Just to be clear, I

Page 167

1  didn't say "from the system," and if you need me to
2  extrapolate there, I can.
3          MR. SADOWSKI:  All right.  Why don't
4  you just tell Daniel what it is so he knows what to
5  look at?
6          MR. VERSTANDIG:  All right.  I'll
7  represent as follows.  The loan file that was produced
8  in this case for the second loan to Developer RE1
9  includes an Excel sheet that is demonstrative of the
10 payment history on the second loan.  This is a print
11 of that Excel sheet.
12         THE WITNESS:  Okay.
13 BY MR. SADOWSKI:
14     Q  Okay.  Looking at Exhibit 6, can you tell me
15 whether, as of November 3, 2022, there was an overdue
16 payment under the second deed of trust?
17     A  Mr. Negussie was in default starting on
18 July 1st.
19     Q  That wasn't the question.  The question was,
20 looking at Exhibit 6, as of November 3, 2022, what
21 payments under the second deed of trust were unpaid as
22 of that date?

Page 168

1      A  Right.  I'm -- I'm responding based on what
2  I can answer in my role.  I can see that Mr. Negussie
3  was defaulted as of July.
4      Q  Right.  But that's not the question.  The
5  question is, how much money was owed, or was any money
6  owed, as of November 3, 2022?
7      A  I can't -- I can't answer that question.
8  I'm not in the accounting department.  I'm just going
9  to tell you, based on what I see, based on what you
10 presented to me, that Mr. Negussie was in default in
11 July.
12     Q  Okay.  So you can't read this printout and
13 figure out whether or not there was an outstanding
14 amount due under the loan at any date.
15     A  No, I can't.
16     Q  All right.
17     A  I can just tell you, based on what I see
18 here in front of me when Mr. Negussie got in default.
19 Mr. Negussie started being default July.
20     Q  Right.  But when was this notation put in
21 here, "defaulted"?
22     A  As I stated, I'm not in that department.

Page 169

1  You're asking me a question --
2      Q  I'm asking you to look at it right now.
3  What does it say?
4      A  I answered the question.
5      Q  Okay.  Well, I'm looking at it, and I'm
6  looking at the first page.  And the word "defaulted"
7  doesn't appear until February 1, 2023.  Do you see
8  that?  You're not looking at it.
9      A  No, because I answered your question.  You
10 can -- you can ask me 20 different ways --
11     Q  No, you're evading the question.
12     A  No, you can ask me 20 different ways, like I
13 explained to you.
14     Q  On Exhibit 6, when is the first indication
15 that RE1 was in default?  On Exhibit 6, where is it?
16         MR. VERSTANDIG:  Object, but you can
17 answer.
18         THE WITNESS:  I already answer your
19 question.
20 BY MR. SADOWSKI:
21     Q  You didn't answer the question.  Okay.  What
22 date was Developer RE1 noted in default?

43 (Pages 166 - 169)

Page 170

1    A   I'm looking -- I'm looking at the payment,
2   July 14th --
3    Q   Okay.  And under the Servicing Status
4   Category --
5    A   I'm also -- I'm -- sir, I'm speaking.  You
6   said not to interrupt me.
7    Q   You're right.
8    A   I don't interrupt you.  So please, don't
9   interrupt me.
10   Q   Yeah.
11   A   Mr. Negussie has a copy of his promissory
12  notes, and according to the promissory notes and the
13  stipulation of it, as the deed of trust,
14  that's -- he's in default.
15      So I don't have to look at it here.  I just
16  got to look at when the payment was made, July 14.
17   Q   That's not the question.  The question is
18  where on Exhibit 6 does it indicate -- does it use the
19  word "defaulted"?  What date was the first date?
20   A   I don't know how to answer your question.
21  I'm sorry.
22   Q   You can look at Exhibit 6, and you look for

Page 171

1   the word.
2    A   I already told you that Mr. Negussie is in
3   default.
4       MR. VERSTANDIG:  All right.  Hold on.
5   I object to the question.  I won't give a speaking
6   objection.
7       MR. SADOWSKI:  On what basis?
8       MR. VERSTANDIG:  That said --
9       MR. SADOWSKI:  A non-speaking
10  objection, basis?
11  BY MR. SADOWSKI:
12   Q   Where on this document --
13      MR. SADOWSKI:  What's the objection?
14      MR. VERSTANDIG:  Let me finish.  With
15  my objection noted, and if you want -- but let me
16  finish because I think you're going to like where this
17  goes.
18      Mr. Huertas, you can look at the
19  document and indicate, just reading the document,
20  without any external scope of knowledge, where on that
21  document the word "defaulted" first appears, and you
22  can answer that question.

Page 172

1       And I don't have an objection to you
2   answering that question.  Depending on how things get
3   rephrased, I may interpose a different objection in a
4   minute.
5       THE WITNESS:  Right.
6       MR. VERSTANDIG:  But you can indicate
7   where on this document the word "defaulted" first
8   appears.
9       THE WITNESS:  Right.  I see in this
10  document the word "default" appears in one, two -- on
11  the February 1, 2023, payment.
12  BY MR. SADOWSKI:
13   Q   Okay.  And is that also correct -- from the
14  Servicing Status Column?
15   A   Well, that's where --
16      MR. VERSTANDIG:  Can we stipule that
17  doesn't appear anywhere other than the Service --
18      MR. SADOWSKI:  Yeah.  Can I have the
19  witness here just --
20  BY MR. SADOWSKI:
21   Q   I'm talking about this.
22   A   Yeah, that's what I read.

Page 173

1    Q   Servicing Status.
2    A   Right.
3    Q   See that, those words.  Right?
4    A   Yeah, that's what I see.
5    Q   Now, going to the next page, which is the
6   continuation of the spreadsheet --
7    A   Right.
8    Q   -- where does the word "defaulted" first
9   appear on that second page of Exhibit 6?
10      MR. VERSTANDIG:  Hold on.  I don't
11  think it's a continuation.  I think it's just a
12  blowup.
13      THE WITNESS:  Yeah, that's --
14      MR. SADOWSKI:  You might be right.
15  Then I should be looking at the second page.
16  BY MR. SADOWSKI:
17   Q   Okay.  All right.  So the second page of
18  Exhibit 6 is just an enlarged version of the first
19  page.
20   A   Blurry version of the first page.
21   Q   Okay.  All right.  When does the system at
22  WCP start putting in the word "defaulted"?

44 (Pages 170 - 173)

Page 174

1   A   In this specific situation, it says right
2   here.  The "defaulted" word appears on the
3   February 1st payment.
4   Q   Right.  I got that.  But I'm trying to --
5   A   Right.
6   Q   Okay.  Why did it change from -- okay.
7   Let's go back.  Let's go to another question.  Looking
8   at the line right below February 1, 2023, there's a
9   date January 1, 2023.  Do you see that?
10  A   Yeah.  January 1, 2023, I see that.
11  Q   Okay.  And in the Servicing Status, what
12  does it indicate in that column?
13  A   Well, it reads Servicing Status Current.
14  Q   Okay.  So what does that mean, Serving
15  Status Current?
16  A   Well, I can tell you what it says here.  It
17  says "current."  It doesn't mean anything to me.
18  Q   Okay.  Then why --
19  A   It says the word "current."
20  Q   -- do you use the terms "current,"
21  "defaulted," "late," "one to 15 days," "originated"?
22  Why are those terms used on servicing status?

Page 175

1   A   As I stated, this is an internal code for
2   this.  So right now, it says "current."
3   Q   Okay.  Who's in charge of making the codes?
4   A   Nobody's in charge of making the codes.
5   Q   What is your understanding of what
6   the word "current" means?
7   A   Like I said, the -- the coding here is -- it
8   says "current."
9   Q   All right.  That's not the question.  What
10  is your understanding about what the word "current"
11  means?
12  A   That for this specific line, it says that
13  activity is "current."
14  Q   Okay.  So as of January 1, 2023, what, if
15  any, payment due under the loan was not current?
16  A   Except for that specific line, it says
17  "current."
18  Q   Okay.  So as of that date, doesn't that mean
19  that there's no amount owed under the loan?
20  A   For that specific activity, it shows that
21  it's current.
22  Q   Okay, so 7.

Page 176

1   (Exhibit 7 was marked for
2   identification.)
3   THE WITNESS:  What are these ones?
4   MR. VERSTANDIG:  I will stipulate for
5   the record that this is a printout of an Excel sheet
6   with the loan file for the first promissory note that
7   correlates to the first deed of trust where Developer
8   RE1 is obligated on the promissory note and the
9   property situated at 5501/5505 1st Street serves as
10  collateral on the deed of trust.
11  Q   Okay.  Mr. Huertas, what is Exhibit 7?
12  A   It's -- based on what I heard, it's -- it's
13  the first deed of trust for the subject property.
14  Q   And when does the word "defaulted" first
15  appear, in terms of time, on Exhibit 7 in the
16  Servicing Status Column?
17  A   Yeah.  The -- the word "defaulted" appears
18  on Line 2-1-2023.
19  Q   Okay.  And when does the -- the word
20  immediately below that is the word "current."  Right?
21  A   Yes.
22  Q   And that indicates a date of January 1,

Page 177

1   2023.  Correct, "current"?
2   A   For that particular activity, correct.
3   Q   Okay.  Now, let's put 6 and 7 kind of next
4   to each other, if you will.
5   There's another column there that says
6   "Status Reason."  Do you see that?  It's the second
7   column from the left.
8   A   Yes.
9   Q   Okay.  As of January 1, 2023, what does
10  Exhibit 6 indicate in the Status Reason Column?
11  A   In which one?
12  Q   Well, doesn't the word "paid" appear there?
13  A   In which line?
14  Q   One, two, three, four -- one, two, three,
15  four, five, six, seven lines down from the top.
16  A   The word -- it says "paid."
17  Q   Okay.  And what does that indicate to you?
18  A   For that activity, it was paid.
19  Q   Okay.  And isn't it true that on Exhibit 6,
20  the word paid appears before every date before
21  January 1, 2023, in the Status Reason Column?
22  A   The word "paid" appears in the other lines,

45 (Pages 174 - 177)

Page 178

1 yeah.

2  Q  Okay. And on Exhibit 7, isn't it also true
3 that the word "paid" appears on every line starting
4 with January 1, 2023, going down all the way to
5 December 23, 2021?

6  Isn't that correct that the word "paid"
7 appears in the Status Reason?

8  A  The word "paid" appears.

9  Q  And those dates there are corresponding to
10 what?

11  A  Those dates?

12  Q  Yeah. Isn't that a payment due date?

13  A  That's a payment due date.

14  Q  Okay. So to recap, on Exhibit 6 and
15 Exhibit 7, for every payment due on the date that's
16 listed on those two exhibits from December 23, 2021,
17 through January 1, 2023, it indicates "paid."

18  A  The word "paid" appears in those lines.

19  Q  Okay. And was RE1, in fact, current on the
20 payments due under the first deed of trust and the
21 second deed of trust as of January 1, 2023?

22  A  No.

Page 179

1  Q  Okay. What was outstanding as of those
2 two -- okay. Then why, if they were not current --
3 then why doesn't this indicate that?

4  A  I cannot tell you how the system was
5 generating that, but the borrower was not current.

6  Q  So what was incorrect about it? What's
7 incorrect about all those indications of "paid"?

8  A  July payment, as you can see, on both, it's
9 July 14th, borrower was in default in the month of
10 July.

11  Q  So what? So why does that change what's
12 listed here as "paid"?

13  A  I can't speak about a system that shows
14 that. I can just tell you --

15  Q  So your system doesn't work?

16  A  I guess not.

17  Q  All right. Who is the person most qualified
18 at WCP to answer questions about when amounts are paid
19 and unpaid under RE1's loans?

20  A  I think I'm qualified.

21  Q  Well, who's the best person? You said
22 before that you didn't know the records.

Page 180

1  A  Right.

2  Q  You weren't sure.

3  A  If you want specific details on accounting,
4 that would be somebody else.

5  Q  Who would that be?

6  A  My VP of finance.

7  Q  Who is that?

8  A  Christina Araujo.

9  MR. VERSTANDIG: Alpha, Romeo, Alpha,
10 Uniform, Juliet, Oscar.

11  THE WITNESS: Yeah.

12 BY MR. SADOWSKI:

13  Q  Okay. Okay. So let's go back to
14 Paragraph 29 of Exhibit 4.

15  A  Which page?

16  Q  Sorry, Page 5 of Exhibit 4, Paragraph 29.

17  A  Okay.

18  Q  And that's the same question that I asked a
19 few questions ago, several.

20  What amounts were outstanding under the RE1
21 first deed of trust or second deed of trust as of
22 November 3, 2022?

Page 181

1  A  I don't have the specific amounts.

2  Q  Okay. Well, these records here show
3 everything was paid. So if there was something that
4 was unpaid, what was it?

5  MR. VERSTANDIG: Hold on. Objection,
6 the records do not show everything being paid on
7 November 3rd.

8  MR. SADOWSKI: 2022? They show being
9 paid as of January 1, 2023, two months later.

10  MR. VERSTANDIG: You just asked as of
11 November 3, 2022. This record shows that the payment
12 due November 1st was made on November 9th.

13  MR. SADOWSKI: You're coaching now,
14 Mr. VerStandig. Okay.

15 BY MR. SADOWSKI:

16  Q  What amounts on November 3, 2022, did RE1
17 owe under either the first deed of trust or the second
18 deed of trust?

19  A  I -- I already told you that.

20  Q  What did they owe?

21  A  I don't have the amounts.

22  Q  You don't know?

46 (Pages 178 - 181)

Page 182

1    A    It's more.  I don't have the amounts.
2  Correct.
3    Q    Okay.  If they owed money as of that date,
4  why isn't it reflected on Exhibit 6 and Exhibit 7?
5    A    That's a report.
6    Q    Okay.
7    A    You just issue a report.
8    Q    So what other reports are there out there
9  that I haven't seen?
10    A    That's the one report that we have.
11    Q    Okay.
12    A    But that's a report that we had for the
13  payments, specific to something, to just one aspect of
14  it.
15    Q    Okay.  When do late charges get posted to
16  the WCP accounting system?
17    A    Late charges are posted, or the system
18  generates a late charge on the 5th.
19    Q    Okay.  Are there any late charges shown on
20  the system printouts in Exhibit 6 and Exhibit 7?
21    A    It shows some late charges.
22    Q    Where?

Page 183

1    A    Line 10/1, 12/1.  I don't know if I'm doing
2  this right.  That's on Exhibit 7.  Look -- are we
3  looking at Exhibit 7 or Exhibit 6?
4    Q    The Late Fee Amount Due Column.
5    A    Yeah.  Which exhibit do you want me to look
6  at?
7    Q    They're both there.  They have the same
8  column.  Right?  So are you talking about this column
9  here, right here with these?  Exhibit 6, it says
10  "523.56."
11    A    It shows two in here for 10/6 and 12/6.
12    Q    Okay.  That's the 523.56 number.
13    A    Yeah.
14    Q    And then on the corresponding Exhibit 7,
15  there's two entries as well on that for 238.02.  Do
16  you see that?
17    A    Mm-hmm.
18    Q    Right?
19    A    Yeah.
20    Q    Were those late charges ever paid?
21    A    I can infer from here that the ACH cleared.
22  So I'm guessing, yes.

Page 184

1    Q    Okay.  All right.  So as of January 1, 2023,
2  what amounts, if any, were owed for late charges as of
3  that date?
4    A    I don't have the specific amount.  I don't
5  have a response to your question.
6    Q    Okay.  Who would be able to answer that
7  question?
8    A    I already give you a name, Christina Araujo.
9    Q    Okay.  All right.  Now, when did somebody at
10  WCP -- oh, well, sorry, strike that.
11         How does the system change from "current" to
12  "defaulted," as it did here on February 1, 2023?
13    A    I cannot tell you for everything, but for
14  this specific situation, I guess it changed on 2/1.
15    Q    Right.  But does someone have to manually go
16  in and click a button and say a "loan is in default"?
17  How does that work?
18    A    I don't know.
19    Q    Will Christina know the answer to that
20  question?
21    A    Maybe, I don't know if she could answer.
22    Q    Who else might know the answer to that

Page 185

1  question?
2    A    I have to ask.  I don't know.  I have to
3  ask.
4    Q    Okay.
5    A    It's a great question for me, too.  I need
6  to figure it out.
7    Q    Okay.  Now, let's go back to Exhibit 4.
8    A    Page?
9    Q    Five.
10    A    Page 5.
11    Q    Now, down to Paragraph 33, I'd ask you to
12  read that and let me know when you're done.
13    A    Okay.
14    Q    Is the information in Paragraph 33 accurate?
15    A    No.
16    Q    What's not accurate about it?
17    A    It is obvious that the developer couldn't
18  secure the financing; otherwise, we wouldn't be here.
19    Q    Okay.  Did you know as of November 15th,
20  when I say "you," did either you or WCP know that RE1
21  was in the process of refinancing a loan with Main
22  Street Bank?

47 (Pages 182 - 185)

Page 282

1  morning right before the sale.
2  BY MR. SADOWSKI:
3      Q   Okay.  And is there a WCP investment
4  vehicle, whether it's an entity or not -- let me take
5  that back.
6      So let's assume we're at the day of the
7  foreclosure.  What, in your experience, would WCP do
8  to make sure that it had a buyer prepared to meet the
9  criteria for the foreclosure sale at the foreclosure
10  sale?
11      How do you plan for that?  What do you do?
12  Like, do you send somebody there?  Do you create a new
13  entity?  Those are the kind of questions I'm going to
14  have.
15      A   Right, I understand.  For this specific
16  situation, we don't have anything at this time.
17      This happened on Tuesday.  So prior to the
18  sale, maybe the night before or the morning of, we'll
19  figure out where we stand and make a determination.
20      Q   And who will be involved in that process,
21  other than any legal counsel?
22      A   I get involved in that process.

Page 283

1      Q   And who else besides you?
2      A   I do it for the most part.  I try not to get
3  involved -- more people, but I do it for the most
4  part.
5      Q   Okay.  When there was a foreclosure of
6  2507 I Street -- there was one.  Right?
7      A   Yes.
8      Q   Who ended up buying the property at
9  foreclosure?
10      A   The lender took it back.
11      Q   So what?  Did the lender buy it, or did the
12  lender create some interim entity to serve as the
13  buyer?
14      A   The lender took it back because there were
15  no bidders at the foreclosure sale.
16      Q   Oh, okay.  And of these other properties
17  that you mentioned that were "problematic," I'm just
18  using the term loosely.
19      A   Right.
20      Q   Did Holbrook go to foreclosure?
21      A   I'm sorry.  Which one?
22      Q   1262 Holbrook.

Page 284

1      A   1262 through 1268, again, that property, as
2  I recall, I believe we didn't have any real bidders on
3  the other end.
4      It was a second subject to the first.  So
5  some people just -- and then most people don't want to
6  bid on a second trust just because they don't know the
7  nature of the first.
8      Q   Okay.  So what are WCP's expectations as to
9  this foreclosure, given that you're foreclosing under
10  the second deed of trust?
11      A   I don't have any expectations; our goal is
12  to get our money back.
13      MR. SADOWSKI:  So we're at exactly your
14  five o'clock.  We, obviously, didn't finish.  I don't
15  know that I can reconvene tomorrow, and I think you'd
16  probably rather work on your --
17      MR. VERSTANDIG:  I mean, candidly, I
18  would.      MR. SADOWSKI:  Yeah.
19      MR. VERSTANDIG:  Hold on.  We can do
20  this on the record.  It may make sense to assess after
21  Friday anyway.
22      MR. SADOWSKI:  Of course, right.  So

Page 285

1  we're going to leave it open.  It's not completed
2  because we didn't finish either by time.
3      And then there are also some
4  outstanding document issues that we probably need to
5  address, but we'll agree to reconvene the deposition
6  at a mutually convenient date and time.
7      MR. VERSTANDIG:  And for the record, I
8  will cross him at the close of the deposition.
9      MR. SADOWSKI:  Okay.
10      THE WITNESS:  How many hours did it go?
11      MR. SADOWSKI:  Doctor's appointment, my
12  friend, go, go.
13      THE WITNESS:  No, I understand.
14      THE REPORTER:  Should I take us off?
15      MR. SADOWSKI:  Yes.
16      THE REPORTER:  We're off the record at
17  5:01 p.m.
18      (Signature waived.)
19      (Whereupon, at 5:01 p.m., the
20      proceeding was concluded.)
21
22

72 (Pages 282 - 285)

Page 286

1           CERTIFICATE OF DEPOSITION OFFICER

2      I, MATTHEW YANCEY, the officer before whom

3  the foregoing proceedings were taken, do hereby

4  certify that any witness(es) in the foregoing

5  proceedings, prior to testifying, were duly sworn;

6  that the proceedings were recorded by me and

7  thereafter reduced to typewriting by a qualified

8  transcriptionist; that said digital audio recording of

9  said proceedings are a true and accurate record to the

10  best of my knowledge, skills, and ability; that I am

11  neither counsel for, related to, nor employed by any

12  of the parties to the action in which this was taken;

13  and, further, that I am not a relative or employee of

14  any counsel or attorney employed by the parties

15  hereto, nor financially or otherwise interested in the

16  outcome of this action

17             MATTHEW YANCEY

18          Notary Public in and for the

19           District of Columbia

20

21

22

Page 287

1             CERTIFICATE OF TRANSCRIBER

2      I, AMY DAMOTH, do hereby certify that this

3  transcript was prepared from the digital audio

4  recording of the foregoing proceeding, that said

5  transcript is a true and accurate record of the

6  proceedings to the best of my knowledge, skills, and

7  ability; that I am neither counsel for, related to,

8  nor employed by any of the parties to the action in

9  which this was taken; and, further, that I am not a

10  relative or employee of any counsel or attorney

11  employed by the parties hereto, nor financially or

12  otherwise interested in the outcome of this action.

13

14

15            AMY DAMOTH

16

17

18

19

20

21

22

73 (Pages 286 - 287)

The order below is hereby signed.

Signed: January 28 2025



_Elizabeth L. Gunn_
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 23-00217-ELG |
| Charles Paxton Paret, <br> Debtor. | Chapter 7 |
| Developer RE1 LLC, <br> Plaintiff <br><br> v. <br><br> DP Capital LLC, *et al.*, <br> Defendants | Adv. Pro. No. 24-10023-ELG <br> (Cases Consolidated) |
| 423 Kennedy St Holdings LLC, <br> Plaintiff <br><br> v. <br><br> DP Capital, LLC, *et al.*, <br> Defendants | |

## ORDER GRANTING DEFENDANT SF NU, LLC'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING PLAINTIFF DEVELOPER RE1 LLC'S MOTION TO DISMISS DEFENDANT WCP FUND I LLC'S COUNTERCLAIM WITHOUT PREJUDICE

The Court has before it the *Motion to Dismiss* (ECF No. 1-2, p. 1646[1]) (the "Motion to Dismiss") filed by SF NU, LLC (the "Defendant") and the *Motion to Dismiss Defendant WCP Fund I LLC's Counterclaim* (ECF No. 1-2, p. 1655) (the "Motion to Dismiss Counterclaim" and, together with the Motion to Dismiss, the "Motions") filed by Developer RE1 LLC (the "Plaintiff"), and the responses filed thereto. The Court held a hearing on both Motions on January 28, 2024 (the "Hearing"). Upon consideration of the Motions, the responses, the arguments of the parties at the Hearing, and for the reasons stated on the record at the Hearing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1)      The *Motion to Dismiss* (ECF No. 1-2, p. 1646) is **GRANTED**, with leave to amend on or before February 25, 2025. Should a third amended complaint not be filed by February 25, 2025, the case shall be dismissed without further order of this Court.

2)      The *Motion to Dismiss Counterclaim* (ECF No. 1-2, p. 1655) is **DENIED**, without prejudice.

3)      The Defendants shall have fourteen (14) days after filing of any amended complaint to file an answer or other responsive pleading.

4)      A scheduling conference shall be held on April 2, 2025 at 10:00 a.m. by Zoom for government. Parties should contact Gunn_Hearings@dcb.uscourts.gov for Zoom instructions and familiarize themselves with General Order 2024-03, *Order Establishing Hearing Protocols Before Judge Gunn*.


[signed and dated above]

---

[1] The Motion to Dismiss and Motion to Dismiss Counterclaim were originally filed in the Superior Court for the District of Columbia prior to the removal of this matter to this Court and were docketed herein as part of the transfer of the record as part of Exhibit B to the Notice of Removal found at ECF No. 1.

Copy to: All counsel of record.

The order below is hereby signed.

Signed: February 11 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO REMAND

1

490

Upon review of the Motion for Remand (the "Motion," as found at DE #13) filed by

Developer RE1 LLC and 423 Kennedy St Holdings LLC, the opposition of DP Capital, LLC, WCP

Fund I LLC, SF NU, LLC, Daniel Huertas, Russell Drazin  and JPK NewCo LLC, debtor-in-

possession thereto (the "Opposition," as found at DE #20), arguments adduced at a hearing

thereupon, governing law, and the record herein, it is, by the United States Bankruptcy Court for

the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, DENIED WITHOUT PREJUDICE.

I ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*
*and Special Counsel for*
*JPK NewCo, LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## CONSENT MOTION TO EXTEND TIME
## TO FILE AMENDED COMPLAINT

Plaintiffs Developer RE1 LLC and 423 Kennedy St Holdings LLC, with the consent of the Defendants, move this Court to extend the deadline for the Plaintiffs to file an amended complaint. In support of their request, the Plaintiffs represent to the Court as follows:

1.      This case involves two consolidated cases that were removed from D.C. Superior Court on July 4, 2024.

2.    At the last motions hearing set in this case on January 28, 2025, the Court

ordered the Plaintiffs to file an amended complaint by February 25, 2025.  ECF # 31.

3.    The Plaintiffs need additional time to prepare the amended complaint in part due

to:  (a) several other emergency litigation matters that arose as a result of recent Executive

Orders; (b) the need to consult with the Plaintiffs as a result of the dismissal of JPK NewCo,

LLC's involuntary bankruptcy case (24-00262-ELG); and (c) because it now makes more sense

to file one combined amended complaint on behalf of both Plaintiffs rather than filing separate

amended complaints that will in large part be duplicative and overlap.

4.    The Defendants counsel has consented to a brief extension of time for the filing

of the amended complaint (to March 5, 2025).

5.    No party will be prejudiced by this brief extension of time.

For cause shown, the Plaintiffs and the Defendants jointly request that the Court extend

the deadline for the filing of an amended complaint to March 5, 2025.  A proposed order is

attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  February 25, 2025          /s/ James D. Sadowski
                                  James D. Sadowski (DC Bar #446635)
                                  Alexandria J. Smith (DC Bar #1781067)
                                  801 17th Street, N.W., Suite 1000
                                  Washington, D.C.  20006
                                  Phone: (202) 452-1400; Fax: (202) 452-1410
                                  Emails:  jds@gdllaw.com; ajs@gdllaw.com
                                  *Counsel for Developer RE1 LLC and*
                                  *423 Kennedy St Holdings LLC*

2

<u>C</u>ERTIFICATE OF <u>S</u>ERVICE

I HEREBY CERTIFY that on this 25th day of February, 2025, a true copy of the foregoing

Consent Motion to Extend Time to File Amended Complaint was filed electronically and a

Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | Adv. Pro. No. 24-10023-ELG |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

### Consent Order Granting Motion to Extend
### Time to File Amended Complaint

The Court has before it the Motion to Extend Time to File Amended Complaint (the

"Motion to Extend", ECF # 32) filed on February 24, 2025 by Developer RE1, LLC and 423

Kennedy St Holdings, LLC in the above-captioned case.

For cause shown, it is Ordered that:

1.      The Motion to Extend is Granted; and

2.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file

an amended complaint is extended until March 5, 2025.


[Signed and dated above]

I ask for this:

/s/ James D. Sadowski
_____
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
_____
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for Defendants*

8161\0002\4918-5323-8303.v1

Case 25-00200-ELG Doc 37-1 Filed 09/25/25 Entered 09/25/25 19:20:22 Desc
Proposed Order Consent Order Extending Deadline to File Amended Complaint Page 4 of 4

Case 24-00262-ELG Doc 371 Filed 09/25/25 Entered 09/25/25 12:40:22 Desc
Exhibit A - All Docketing (Part 1) Page 212 of 1284

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

### END OF ORDER

8161\0002\4918-5323-8303.v1

The order below is hereby signed.

Signed: February 25 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND
## TIME TO FILE AMENDED COMPLAINT

The Court has before it the Motion to Extend Time to File Amended Complaint (the "Motion to Extend", ECF # 32) filed on February 24, 2025 by Developer RE1, LLC and 423 Kennedy St Holdings, LLC in the above-captioned case.

For cause shown, it is ORDERED that:

1.      The Motion to Extend is GRANTED; and

2.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an amended complaint is extended until March 5, 2025.

[Signed and dated above]

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for Defendants*

8161\0002\4918-5323-8303.v1

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

**END OF ORDER**

4

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## THIRD AMENDED COMPLAINT

COME NOW THE PLAINTIFFS, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas, Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri. The Third Amended Complaint includes claims for tortious interference with business relations,

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances. The Third Amended Complaint also adds JPK NewCo and Mr. Sariri as Defendants.[1] In support of its Third Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

<u>THE PARTIES</u>

1. The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2. The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3. The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4. The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5. The WCP controls the WCP Fund.

6. The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

---

[1]    Counsel for the existing parties have agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a third amended complaint for Developer RE1 and a first amended complaint for 423 Kennedy.

2

7.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.      The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.     The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".

11.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

> *the highest ethical practices in the industry*, which historically
> have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.     But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

13.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.     Developer RE1 is partially owned by Mr. Negussie.

15.     Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.     The Lender Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the RE1 Property and the improvements that Developer RE1 made to the RE1 Property.

17.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

The Ownership of 423 Kennedy, Its Purpose, and the Property.

18.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the 423 Property.

4

20.     The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24.     Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Developer RE1 Loan Documents with the WCP and the WCP Fund.</u>

28.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First RE1 DOT was attached to Developer RE1's Complaint as Exhibit A.[2]

29.     The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

30.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 DOT before it was signed.

31.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's Complaint.

32.     The First RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

33.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 Note before it was signed.

---

[2]     Counsel for the parties agreed that this Third Amended Complaint can reference the prior complaint exhibits that are already in the record and that there also is no need to attach those Exhibits again to this filing.

6

34.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35.     The Second RE1 DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38.     The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41.     The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42.     The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

7

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

<u>The 423 Kennedy Loan Documents with the WCP and the WCP Fund.</u>

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

8

Drazin as Trustee.  A true copy of the Second 423K DOT was attached as Exhibit C to 423

Kennedy's Complaint.

52.     The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin

as counsel for the WCP and the WCP Fund.

53.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K DOT before it was signed

54.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust

Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which

was attached to the 423 Kennedy Complaint as Exhibit D.

55.     The Second 423K Note was a form of promissory note that was prepared by Mr.

Drazin as counsel for the WCP and the WCP Fund.

56.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K Note before it was signed.

57.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination

fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58.     The new, refinanced loans for 423 Kennedy were set to mature on March 31,

2023.

59.     Beginning in April of 2022, the WCP and the WCP Fund started providing

construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to

closing.

60.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an

Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

61.     Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the 423 Property with another lender.

62.     As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

63.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

   The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423
   Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging
   the Refinancings of the Loans for Both Properties.

64.     On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

65.     The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

66.     The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

67.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

<center>10</center>

First 423K Note and to release the First 423K DOT from the Property. A true copy of the

October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint

as Exhibit E.

68. On or about October 24, 2022, WCP transmitted a Payoff Statement for the

Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under

the Second 423K Note and to release the Second 423K DOT from the Property. A true copy of

the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69. As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

70. As of October 24, 2022, there was no allegation made by any Defendant to 423

Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If
They Did Not Accede to His Demands Regarding Another Unrelated
Development.

71. On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr.

Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas

stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of

the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72. As of November 3, 2022, there was no allegation made by any Defendant that any

default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

73. As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

11

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

<div align="center">12</div>

80.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note and to release the First 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

83.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes and deeds of trust.

84.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached as to Developer RE1's Complaint as Exhibit I.

86.     WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

87.     None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included any request by any Defendant for the payment of default fees, default interest, or any other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K DOT.

88.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

90.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

91.     As of December 7, 2022, Developer RE1 had made all payments due under the
First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in
interest payments to the WCP Fund.

92.     As of December 8, 2022, 423 Kennedy had made all payments due under the First
423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in
interest payments to the WCP Fund.  That interest amount is in addition to prior payments made
by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds,
> Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr.
> Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated
> Project, "Or Else".

93.     On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during
a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were
displeased with how the development of another, unrelated property (located at 2507 I Street,
NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW
will be referred to as the "2507 I Street Project".

94.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the
payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was
associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I
Street Project has "turned out very bad and that the person who lent the money to WCP
("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the
quality of the work done," and that this Investor Lender "is very wealthy and will make life hard
for you", and "has now bought the notes" and another project financed by WCP, and that WCP is
"defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

15

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"

shortfall on the 2507 I Street Project.

96.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Lender Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

97.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer

RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated

project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either

Mr. Negussie or to be making threats to any other development project that Mr. Negussie was

involved with.

98.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I

Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent

were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their

loan documents with the WCP Fund.

99.     The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose

limited liability company that is partially owned by Mr. Negussie.

100.     The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop

the 423 Property.

101.     The Lender Defendants knew that there is no legal or other business relationship

between 423 Kennedy and Developer RE1.

16

102.    The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.    The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.    Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.    The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.    The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.    The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.    The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.    The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

8161\0002\4927-8583-7600.v2

519

110.     The Lender Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.     The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

112.     The Lender Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

113.     The Lender Defendants knew that the sole purpose of Developer RE1 is to develop the RE1 Property.

> ### Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 and 423 Kennedy By Improperly Demanding Payment More than $2 Million of "Default Penalties" and "Default Interest" And By Threatening Developer RE1 and 423 Kennedy With Foreclosure.

114.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1 Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy Complaint.

115.     The "Notice of Default" sent to Developer RE1 appears to reference the First RE1 DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.    The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K

DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.    Each "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that

the Vice President of the WCP is Christina Araujo.

118.    Each "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.    The lack of a signature on each "Notice of Default" and the failure by the WCP to

include the referenced exhibit with each "Notice of Default" are indications that the two notices

were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.    Each Notice of Default did not contain any legal basis or other explanation for

how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan

documents.

121.    Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts,

states:

> All notices, demands, requests and other communications pursuant
> to the provisions of the Note and this Deed of Trust shall be in
> writing and shall be deemed to have been properly given or served
> for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight
> delivery service or a local courier service, charges prepaid, or three
> (3) calendar days after having been sent by United States
> Registered or Certified Mail - Return Receipt Requested, postage
> prepaid, to the respective addresses as follows:
>
>   (a) If to the Grantor, then to: 1629 K Street, Suite 300,
> Washington DC 20006
>
>   (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200,
> Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

19

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW,
Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite
200, Falls Church, VA 22043, with a courtesy copy to Pardo &
Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street,
NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in
writing to the other. Whenever in this Deed of Trust the giving of
notice by mail or otherwise is required, the giving of such notice
may be waived in writing by the person or persons entitled to
receive such notice.

*See* deeds of trust at pages 17-18.

122.    In the deeds of trust, email is not listed as a permissible means to send notice.

123.    In the email that transmitted the letters purporting to be default notices under the
two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the
two Payoff Statements for Developer RE1 that were included with the email transmitting each
"Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N,
respectively.

124.    The Payoff Statement sent by WCP for the first loan included a demand that
Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00.
*See* Ex. M to Developer RE1's Complaint.

125.    The Payoff Statement sent by WCP for the second loan including a demand that
Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126.    In the email that transmitted the letter purporting to be a "Notice of Default"
under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of
the two Payoff Statements that were included with the email transmitting each "Notice of
Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

20

8161\0002\4927-8583-7600.v2

127.    The new Payoff Statement sent by WCP for the first loan included a demand that

423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30.

Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423

Kennedy.

128.    The new Payoff Statement sent by WCP for the second loan including a demand

that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by

the WCP.

### Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

129.    After receiving the email with each Notice of Default, Mr. Negussie called Mr.

Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that

Developer RE1 and 423 Kennedy were in default under any loan document.  During that call,

Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr.

Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas

directed someone from the WCP to send the Notice of Default to Developer RE1 and 423

Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of

the loan documents to try to find a reason to justify the Defendants' decision to declare that

Developer RE1 was in default of the loan documents when they each knew, in fact, that there

were no defaults by Developer RE1 under any of its loan documents.

131.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no

valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were improperly placed in default by the Defendants.

132.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the deeds of trust.

133.     As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

134.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

135.     The real reason that the Lender Defendants improperly alleged that Developer RE1 and 423 Kennedy were in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

136.     The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

22

137.    There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given

that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

138.    As a result of their spite, their evil, improper motive, and their greed, the Lender

Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under

the loan documents to try to line their own pockets and to cause as much financial and

reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.    The Lender Defendants also caused WCP to issue a "Notice of Default" to

Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and

prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had

secured, or were in the process of securing, with Main Street Bank.

140.    The Lender Defendants also caused WCP to issue each notice "Notice of Default"

to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1

from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.    The Lender Defendants also caused the WCP to issue the each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU (*i.e.*, 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.    The Lender Defendants knew that they had no legal right to demand that

Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the

Lender Defendants claimed existed at the 2507 I Street Project.

143.    The actions of the Lender Defendants, which they took acting in concert, were

taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

23

and its members, and 423 Kennedy and its members. The Lender Defendants' misconduct is a form of extortion.

> The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144. Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a) "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b) Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022." A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146. Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water
claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline
date for these charges has expired" and that "[b]ills must be paid or disputed by their respective
due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,
2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already
expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for
Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for
an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the
Petition for Administrative Hearing were attached to Developer RE1's Complaint together as
Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT,
Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged
Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment
without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual
basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because
cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section
7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas
had requested that he provide for the Lender Defendants.  When asked by counsel for Developer
RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

25

527

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152. The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153. 423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154. On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155. 423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156. Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157. 423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

26

Case 24-10228-ELG Doc 40-2 Filed 08/05/25 Entered 08/05/25 19:25:27 Desc Main
Case 1-25-01024-ELG Doc 40-2 Filed 08/05/25 Entered 08/05/25 19:25:27 Desc
Exhibit A - All Docket Entries Part 7 of 4 Page 243 of 1284
Exhibit A - All Docket Entries Part 7 of 4 Page 27 of 48

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI. A copy of confirmation of the $1,657.34 payment to the District was attached to 423 Kennedy's Complaint as Exhibit R.

158. December 10, 2022 is less than thirty days after November 17, 2022.

159. On December 11, 2022, the District of Columbia Office of Administrative Hearings (OAH) vacated the Final Order. *See* Exhibit S to 423 Kennedy's Complaint.

160. There are no outstanding fines owed by 423 Kennedy to the District.

161. 423 Kennedy cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal from, or to discharge (by payment), any lien filed by the District.

162. The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163. The deeds of trust each have a Section 7.9 that is identical. Section 7.9 is part of the "Events of Default" provisions of the deeds of trust. Section 7.09 states:

> Other Indebtedness. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164. The Lender Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

27

165.    In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or Developer RE1, two conditions must have occurred:  (1) the borrower must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166.    The deeds of trust do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

167.    There is also no common control of Developer RE1 and 423 Kennedy.

168.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169.    Mr. Negussie does not have a "controlling" interest in Developer RE1.

170.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred under any of the deeds of trust, even if one of them was actually in "default" of any loan agreement with the WCP Fund.

171.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Lender Defendants falsely, and improperly, claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of trust.

172.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint (the use of "Loans" appears to be referring to the notes and deeds of trust).

28

173. The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174. The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022. True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175. The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176. The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177. No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.

178. The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179. There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180. If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

181.     If any of the Defendants follow through on any scheduled foreclosure sale, 423
Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton
Group's investors, will be irreparably harmed and they could lose their entire investments.

182.     The Lender Defendants' conduct shows that they have an evil motive, that they
are acting with actual malice to impose damages on Developer RE1 and others, and they are
intentionally and willfully disregarding Developer RE1's rights under the loan documents and
under the law.  The Defendants' misconduct and improper lending practices also constitute
outrageous conduct further justifying an award of punitive damages.

183.     The Lender Defendants knew that the First 423K Note and the Second 423K Note
list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their
improper interference with Developer RE1's and 423 Kennedy's business relations -- right
before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close
on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so
that they can try to foreclose on the two properties.

184.     As of January 11, 2023, none of the Lender Defendants had sent either Developer
RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either
the deed of trust.

185.     On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer
RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure
Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25,
2023 at 2:10 p.m.

186.     On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a
Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

30

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00 p.m. A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as Exhibit T.

187.     On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee under the deeds of trust due to his conflict of interest. After receiving that letter, Mr. Drazin refused to resign as Trustee.

**423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.**

188.     The Property owned by 423 Kennedy has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

189.     The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

190.     Around December of 2022, the Property owned by 423 Kennedy had a current value of $11.9 million.

191.     Around December of 2022, the Property owned by Developer RE1 had a current value of $4 million.

192.     There was no valid, legal basis under any provisions of the deeds of trust that would have permitted the Lender Defendants to foreclose on the Properties owned by Developer RE1 and 423 Kennedy.

193.     The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete construction, and Developer RE1 and 423 Kennedy's refinancing efforts. But for the Lender

31

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP

Fund in full in December of 2022.

194.    The Lender Defendants also deliberately timed their improper interference with

423 Kennedy's and Developer RE1's business relations during the approaching Christmas and

New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close

on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any

refinancing indefinitely so that they can try to foreclose on the properties owned by Developer

RE1 and 423 Kennedy.

195.    The Lender Defendants' conduct shows that they have an evil motive, that they

are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others,

and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights

under the loan documents and under the law.  The Lender Defendants' misconduct and improper

lending practices also constitute outrageous conduct further justifying an award of punitive

damages.

The DC Superior Court Enjoins the Lender Defendants.

196.    On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive,

twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for

Temporary Restraining Order (the "First TRO Order").

197.    In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their

burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee

also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that

when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17.

Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of

demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

32

198.     On August 15, 2023, Judge Scott entered a Hearing Order by which she, among other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order").  In the Second TRO Order, Judge Scott came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of trust."  Second TRO Order at p. 4 (italic emphasis added).  Pursuant to the Second TRO Order, Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking any action to foreclose on the Property [owned by Developer RE1] pending further order of this Court."  *Id.* p. 5.

       The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then
       Engage in Multiple Fraudulent Transfers.

199.     Some of the parties engaged in private mediation in January of 2024, but that mediation (with JAMS) was not successful.  The second mediation session on January 25, 2024 was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.     JPK NewCo was formed after the mediation concluded, sometime in early February of 2024.  Since its formation, JPK NewCo has conducted no business, it has no employees, it generates no income, it produces no goods, and it provides no services.

201.     On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.     On or about April 15, 2024, SF NU transferred the Developer RE1 loan documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.     This transfers described in paragraphs 201-202 were not supported by any consideration.

33

204.    This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.    The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.    On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.    The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.    The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.    The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.    Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.    Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

34

212. The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213. The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214. The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215. The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216. At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217. JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

8161\0002\4927-8583-7600.v2

<div align="center">

COUNT I

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

</div>

218.    Paragraphs 1-217 of the Third Amended Complaint are incorporated by reference.

219.    423 Kennedy and Developer RE1 were in the process of closing on a refinancing of their existing loans with Main Street Bank.

220.    The Count I Defendants each knew of the existence of Developer RE1's and 423 Kennedy's business relations with Main Street Bank.

221.    As a result of the Count I Defendants' improper demand that Developer RE1 and 423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could not obtain a release of the respective deeds of trust on their properties as part of the refinancing of their loans with Main Street Bank.

222.    As a direct result of the Count I Defendants' direct and continuing interference with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were not able to go to closing on the refinancing loans with Main Street Bank.

223.    The Count I Defendants have intentionally interfered with Developer RE1's and 423 Kennedy's development of their properties and their refinancing of the loans with Main Street Bank without any valid justification.

224.    Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants' tortious interference with their business relations, and will continue to be damaged if the Count I Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be

<div align="center">36</div>

determined) that they have suffered and will suffer as a result of the Count I Defendants'

intentional interference with their business relations (currently estimated to be at least $3 million

for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of

$2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

225.     Paragraphs 1–224 of the Third Amended Complaint are incorporated by

reference.

226.     Every contract in the District of Columbia contains an implied covenant of good

faith and fair dealing.

227.     The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or

SF NU, and/or JPK NewCo.

228.     The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF

NU, and or JPK NewCo. are contracts.

229.     Through their improper conduct, the Count II Defendants have breached the

implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor under Count II against

Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU,

LLC and/or JPK NewCo:  (a) any and all damages (to be determined) that the Plaintiffs has

suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and

fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's

fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

37

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

230.    Paragraphs 1–229 of the Third Amended Complaint are incorporated by reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

38

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that under Count III, this Honorable Court declare that: (a) under Section

7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI,

LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b)

any provision of either the deed of trust that allows the lender to declare a default by Developer

RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the

process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust

have liquidated damages (and other) provisions that are unenforceable and cannot be used to

support any basis for a foreclosure.

## COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE DEEDS OF TRUST AND
ANY FORECLOSURE UNTIL AFTER A TRIAL ON THE MERITS)
Count IV Is Asserted Against All Defendants except Defendant Sariri

236. Paragraphs 1–235 of the Third Amended Complaint are incorporated by

reference.

237. Unless they are enjoined, the Count IV Defendants will continue to improperly

claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

238. The Count IV Defendants' unethical, outrageous, and illegal conduct, as

described in this Third Amended Complaint, is causing irreparable harm to Developer RE1 and

423 Kennedy. The properties that Developer RE1 and 423 Kennedy own are unique, and

Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

39

Case 24-10023-ELG Doc 40-2 Filed 08/05/25 Entered 08/05/25 11:22:27 Desc Main
Case 1:25-cv-02240-LGS Document 40 Docket Entries (Part 4) of Page 256 of 1284
Exhibit A - All Docket Entries (Part 4) of Page 40 of 44

239.     Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240.     If the Count IV Defendants are not all enjoined, they will proceed to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the Count IV Defendants from invoking any remedy under the note and deeds of trust, including, without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any provisions in the notes and deeds of trust that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's claims in the Third Amended Complaint have been decided.

COUNT V
BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241.     Paragraphs 1-240 of the Third Amended Complaint are incorporated by reference.

242.     As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243.     Defendant Drazin knew that he had actual conflicts of interest while serving simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244.     While serving in his role as Trustee under the deeds of trust, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

245.     While serving in his role as Trustee under the deed of trust, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

40

246.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.     While serving in his role as Trustee under the deeds of trust, Defendant Drazin has been in continual consultation with, and dominated by, the Defendants.

248.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Third Amended Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts of interest.

249.     Due to his actual conflicts of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants Except Defendant Sariri

250.     Paragraphs 1-249 of the Third Amended Complaint are incorporated by reference.

41

251.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the deeds of trust.

252.    Due to his conflict of interest as counsel for one or more of the Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds of trust.

253.    Any actions taken by Defendant Drazin as Trustee under the deeds of trust must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to the borrowers under the deeds of trust.

254.    There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

255.    There is an actual and justiciable controversy between Developer RE1and 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

COUNT VII
TO SET ASIDE FRAUDULENT TRANSFERS
Count VII is Asserted Against All Defendants except Defendant Drazin

256.    Paragraphs 1-255 of the Third Amended Complaint are incorporated by reference.

42

257.     The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258.     The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of SF NU and/or the WCP Fund.

259.     The transfers described in paragraphs 201-202 were made without consideration and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange for the transfer.

260.     The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo believed or reasonably should have believed that it would incur a debt beyond its ability to pay that debt when it became due.

261.     The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count VII this Honorable Court:  (a) set aside all fraudulent transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an injunction preventing any further disposition of the loan documents for Developer RE1 and 423 Kennedy until after all claims in this case have been decided.

8161\0002\4927-8583-7600.v2

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Third Amended

Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 5, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and*
*423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Third Amended Complaint was filed through

eFileDC this 5th day of March, 2025, and a notice of filing should be sent by eFileDC to all

counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

44

# United States Bankruptcy Court
## for the District of Columbia

In re:  Charles Paxton Paret

                              Debtor

Developer RE1 LLC, et al.,


                              Plaintiff

        v.

Shaheen Sariri, et al.,


                              Defendant s

Bankruptcy Case No: 23-00217-ELG

Chapter: 7



Adv. Proceeding No: 24-10023-ELG

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to complain within 35 days.

| Address of the Clerk: | Clerk's Office |
|---|---|
| | U.S. Bankruptcy Court |
| | 333 Constitution Avenue NW |
| | Washington, DC 20001 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and address of Plaintiff's Attorney: | James D. Sadowski |
|---|---|
| | Greenstein DeLorme & Luchs, P.C. |
| | 801 17th Street, NW, Suite 1000 |
| | Washington, DC  20006 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a scheduling conference in this matter will be held in Courtroom 1, United States Courthouse, 333 Constitution Avenue NW, Washington, DC 20001 on   April 2, 2025      at 10:00 am  .

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

                              Angela Caesar
                              Clerk of the Bankruptcy Court


_____                    By:_____
          Date                                              Deputy Clerk

547

# CERTIFICATE OF SERVICE

I, _____ (name), certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made. I further certify that the service of this summons and a copy of the complaint was made _____ (date) by:

☐    Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐    Personal Service: By leaving the process with defendant or with an officer or agent of the defendant at:

☐    Residence Service: By leaving the process with the following adult at:

☐    Publication: The defendant was served as follows: [Describe briefly]

☐    State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]           (name of state)

Under penalty of perjury, I declare the foregoing is true and correct.

_____         _____
Date                     Signature

| Print Name |
| --- |
| _____ |
| Business Address |
| _____ |
| City         State         Zip |

## United States Bankruptcy Court for
## the District of Columbia

| | |
|---|---|
| In re: Charles Paxton Paret | Bankruptcy Case No: 23-00217-ELG |
| Debtor | Chapter: 7 |
| Developer RE1 LLC, et al | |
| Plaintiff | |
| v. | Adv. Proceeding No: 24-10023-ELG |
| Shaheen Sariri | **Scheduling Conference:** 4/2/2025 at 10:00 |
| Defendant | |

### SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to complain within 35 days.

| Address of the Clerk: | Clerk's Office |
|---|---|
| | U.S. Bankruptcy Court |
| | 333 Constitution Avenue NW |
| | Washington, DC 20001 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and address of Plaintiff's Attorney: | James D. Sadowski |
|---|---|
| | Greenstein DeLorme & Luchs, PC |
| | 801 17th Street, N.W. |
| | Suite 1000 |
| | Washington DC, DC 20006 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a scheduling conference in this matter will be held in Courtroom 1 and via Zoom (email Gunn_Hearings@dcb.uscourts.gov for meeting information) on 4/2/2025 at 10:00 AM.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Angela Caesar
Clerk of the Bankruptcy Court

| | |
|---|---|
| 3/17/2025 | By: /s/ Aimee Mathewes |
| Date | Deputy Clerk |

549

# CERTIFICATE OF SERVICE

I, _____ (name), certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this summons and a copy of the complaint was made _____ (date) by:

☐     Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐     Personal Service: By leaving the process with defendant or with an officer or agent of the defendant at:

☐     Residence Service: By leaving the process with the following adult at:

☐     Publication: The defendant was served as follows: [Describe briefly]

☐     State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]                    (name of state)

Under penalty of perjury, I declare the foregoing is true and correct.

_____                _____
      Date                                             Signature

Print Name
_____

Business Address
_____

City                           State                Zip

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET, | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP CAPITAL LLC, ET AL, | |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC, ET AL, | |
| *Defendants.* | |

## DEVELOPER REI, LLC'S ANSWER TO COUNTERCLAIM

Plaintiff/Counter-Defendant, Developer RE1, LLC ("Developer RE1"), by undersigned counsel, hereby files its Answer to the Counterclaim filed by the WCP Fund I, LLC ("WCP Fund"). Developer RE1 responds to the allegations of the Counterclaim as follows:

### PARTIES[1]

1.     The allegations of paragraph 1 of the Counterclaim are admitted.

---

[1]     Developer RE1 cites to the subheadings in the Counterclaim for convenience only and not as an admission as to the validity of the terms used or as to the claims that have been asserted.

8161\0002\4900-2477-5466.v2

2.        The allegations of paragraph 2 of the Counterclaim are admitted.

<div align="center">J<span style="font-variant:small-caps">URISDICTION AND</span> V<span style="font-variant:small-caps">ENUE</span></div>

3.        The allegations of paragraph 3 of the Counterclaim state a legal conclusion regarding jurisdiction for which no response is required.

4.        The allegations of paragraph 4 of the Counterclaim state a legal conclusion regarding venue for which no response is required. To the extent a response is required, Developer RE1 denies that venue is appropriate in this Court.

<div align="center">G<span style="font-variant:small-caps">ENERAL</span> A<span style="font-variant:small-caps">LLEGATIONS</span>: T<span style="font-variant:small-caps">HE</span> WCP P<span style="font-variant:small-caps">ROMISSORY</span> N<span style="font-variant:small-caps">OTE</span></div>

5.        The allegations of paragraph 5 of the Counterclaim are admitted.

6.        In response to the allegations of paragraph 6, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

7.        In response to the allegations of paragraph 7, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

8.        In response to the allegations of paragraph 8, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

9.        Developer RE1 denies the allegations of paragraph 9.

10.       Developer RE1 denies the allegations of paragraph 10.

<div align="center">2</div>

11.     Developer RE1 denies the allegations of paragraph 11.

## COUNT I – BREACH OF CONTRACT

12.     Developer RE1 incorporates by reference its responses to paragraphs 1-11 of the Counterclaim.

13.     In response to the allegations of paragraph 13, Developer RE1 admits only that the referenced promissory note is considered to be a contract.

14.     Developer RE1 denies the allegations of paragraph 14.

15.     Developer RE1 denies the allegations of paragraph 15.

16.     Developer RE1 denies the allegations of paragraph 16.

17.     Developer RE1 denies all allegations of the Counterclaim that have not been expressly admitted.

## FIRST DEFENSE

The claims in the Counterclaim are barred by the doctrine of first breach.

## SECOND DEFENSE

The claims in the Counterclaim are barred by the prevention doctrine.

## THIRD DEFENSE

The claims in the Counterclaim are barred by the WCP Fund's failure to comply with the duty of good faith and fair dealing.

## FOURTH DEFENSE

The claims in the Counterclaim are barred by the WCP Fund's intentional interference with Developer RE1's business relations.

3

<u>FIFTH  DEFENSE</u>

The WCP Fund may not have standing the enforce the terms of the referenced promissory note.

<u>SIXTH  DEFENSE</u>

The claims in the Counterclaim are barred, in whole or in part, by the WCP Fund's unclean hands.

<u>SEVENTH  DEFENSE</u>

The claims in the Counterclaim are barred, in whole or in part, because certain provisions of the referenced promissory note are unenforceable.

<u>EIGHTH  DEFENSE</u>

The claims in the Counterclaim are barred, in whole or in part, by the doctrine of recoupment.

<u>NINTH  DEFENSE</u>

The claims in the Counterclaim are barred, in whole or in part, by the doctrine of setoff.

WHEREFORE, having fully answered, Plaintiff/Counter-Defendant Developer RE1, LLC respectfully requests that this Honorable Court:

A.      Enter judgment against the WCP Fund I, LLC, on Count 1 of the Counterclaim.

B.      Dismiss the Counterclaim with prejudice;

C.      Award Developer RE1, LLC its costs and attorneys' fees, if allowed by  law, incurred in connection with a defense of the Counterclaim; and

D.      Enter such other and further relief as this Court deems just and proper.

4

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 18, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of Developer REI LLC's Answer to Counterclaim was filed through eFileDC this 18th day of March, 2025, and a Notice of Filing should be sent by ECF to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

8161\0002\4900-2477-5466.v2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | |
| Charles Paxton Paret, ) | Case No. 23-217-ELG |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Developer RE1 LLC, ) | |
| ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, ) | |
| ) | (Cases Consolidated) |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| 423 Kennedy St Holdings LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*Table of Contents*

I.    Introduction ...................................................................................................... 1

II.    Standard: Motion to Dismiss ........................................................................... 3

III.    Standard: Motion for Summary Judgment....................................................... 4

IV.    Material Facts Not in Dispute ......................................................................... 5

        a.  Loan Issuance and Funding ................................................................ 5

        b.  RE1 Defaults ...................................................................................... 6

        c.  423 Kennedy Defaults......................................................................... 8

V.    Plaintiffs' Allegations ................................................................................... 10

VI.    Argument: Count VII of the Complaint—Seeking to Set Aside a Putative
Fraudulent Transfer—Should be Dismissed ................................................ 11

        a.  There is No Contention WCP or SNL are Insolvent ........................... 11

        b.  There is No Cogent Theory of Hinderance, Delay or Fraud................ 13

VII.    Argument: The Complaint Should be Dismissed as Against SNL ................. 15

        a.  Count II – Breach of the Duty of Good Faith and Fair Dealing ......... 15

        b.  Count III – Declaratory Relief (Breaches) / Count IV – Injunctive
Relief / Count VI – Declaratory Relief (Mr. Drazin's Services) ........ 17

        c.  Count VII – Fraudulent Conveyance .................................................. 18

VIII.    Argument: Summary Judgment is Proper ..................................................... 18

        a.  The Defendants' Repetitive and Habitual Defaults Bar Relief for
Tortious Interference (Count I), Breach of the Duty of Good Faith
and Fair Dealing (Count II), Declaratory Judgment (Count III) and
Permanent Injunctive Relief (Count IV) ........................................... 18

            i.  Tortious Interference (Count I) .................................................. 20

            ii.  Breach of the Implied Covenant of Good Faith and Fair
Dealing (Count II) .................................................................. 21

        b.  Permanent Injunctive Relief (Count IV) is Not a Cause of Action..... 23

ii

c.  Summary Judgment is Properly Entered on the Claim for
    Declaratory Relief .................................................................................... 23

d.  Mr. Drazin Incorporates his Prior Summary Judgment Motion,
    which is Presently Under Advisement ...................................................... 25

IX.  Conclusion ........................................................................................................ 25

iii

*Table of Authorities*

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................... 3

*Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*,
2021 WL 1921016 (S.D. Cal. 2021) ................................................ 5

*Base One Techs., Inc. v. Ali*,
78 F. Supp. 3d 186 (D.D.C. 2015) ................................................ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 3

*Branin v. TMC Enterprises, LLC*,
832 F. Supp. 2d 646 (W.D. Va. 2011) ............................................. 4

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ......................................................... 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................... 5

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D. D.C. 2020) ................................................ 3

*Close It! Title Servs. v. Nadel*,
248 A.3d 132 (D.C. 2021) .............................................................. 20

*Coe v. Holder*,
2013 U.S. Dist. LEXIS 85337 (D.D.C. June 18, 2013) ................... 23

*Conley v. Gibson*,
355 U.S. 41 (1957) ........................................................................... 3

*Diamond v. Atwood*,
43 F.3d 1538 (D.C. Cir. 1995) ......................................................... 5

*Finard & Co. v. Capitol 801 Corp.*,
1992 U.S. App. LEXIS 23402 (D.C. Cir. Sep. 23, 1992) ............... 19

*Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
2010 WL 2732334 (D. Md. 2010) ................................................... 4

iv

*Flast v. Cohen*,
392 U.S. 83 (1968) .......................................................................................... 24

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*,
2004 WL 1043086 (S.D. N.Y. 2004) ................................................................. 5

*Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC*,
2023 U.S. Dist. LEXIS 84754 (D.D.C. May 15, 2023) ................................... 23

*Gordon v. Washington*,
295 U.S. 30 (1935) .......................................................................................... 23

*Guttenberg v. Emery*,
41 F. Supp. 3d 61 (D.D.C. 2014) ..................................................................... 23

*Hais v. Smith*,
547 A.2d 986 (D.C. 1988) ......................................................................... 15, 22

*Holcomb v. Powell*,
433 F.3d 889 (D.C. Cir. 2006) ........................................................................... 5

*HRH Servs., LLC v. Travelers Indem. Co.*,
2024 U.S. Dist. LEXIS 234196 (D.D.C. Dec. 30, 2024) ................................. 17

*Kemp v. Eiland*,
139 F. Supp. 3d 329 (D.D.C. 2015) ................................................................. 23

*Kiviti v. Bhatt*,
80 F.4th 520 (4th Cir. 2023) ............................................................................. 24

*Kowal v. MCI Commc'ns Corp.*,
16 F.3d 1271 (D.C. Cir. 1994) ........................................................................... 3

*Landow v. Georgetown-Inland W. Corp.*,
454 A.2d 310 (D.C. 1982) ............................................................................... 18

*Martin v. Santorini Capital, LLC*,
236 A.3d 386 (D.C. 2020) ............................................................................... 17

*Mayorga v. Merdon*,
928 F.3d 84 (D.C. Cir. 2019) ............................................................................. 5

*Mero v. City Segway Tours of Wash. DC, LLC*,
826 F. Supp. 2d 100 (D.D.C. 2011) ........................................................... 15, 16

v

*Nugent v. Unum Life Ins. Co. of Am.*,
  752 F. Supp. 2d 46 (D.D.C. 2010) ........................................................ 15

*Paul v. Howard Univ.*,
  754 A.2d 297 (D.C. 2000) .................................................................... 22

*Pueschel v. Nat'l Air Traffic Controllers' Ass'n*,
  606 F. Supp. 2d 82 (D.D.C. 2009) ........................................................ 24

*Robinson v. Am. Honda Motor Co.*,
  551 F.3d 218 (4th Cir. 2009) ................................................................. 4

*Schuler v. PricewaterhouseCoopers, LLP*,
  595 F.3d 370 (D.C. Cir. 2010) .............................................................. 24

*SJ Enters., LLC v. Quander*,
  207 A.3d 1179 (D.C. 2019) .................................................................. 18

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) .............................................................................. 24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ................................................................. 5

*Tinsley v. OneWest Bank, FSB*,
  4 F. Supp. 3d 805 (S.D. W. Va. 2014) .................................................... 4

*United States v. Robinson*,
  494 B.R. 715 (W.D. Tenn. 2013) .......................................................... 14

*Whitt v. Am. Prop. Constr., P.C.*,
  157 A.3d 196 (D.C. 2017) .................................................................... 20

*Wyoming Outdoor Council v. Dombeck*,
  148 F.Supp.2d 1 (D.D.C. 2001) ............................................................. 5

**Statutes**
11 U.S.C. § 548 ...................................................................................... 11

D.C. Code § 28-3104 ......................................................................... 11, 12

D.C. Code § 28-3105 ......................................................................... 11, 12

D.C. Code § 29-3101 .............................................................................. 11

D.C. Code § 29-801.04 ........................................................................... 17

vi

Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5 ................................................................ 14

**Rules**

Federal Rule of Bankruptcy Procedure 7012 ............................................................................ 1

Federal Rule of Bankruptcy Procedure 7056 ............................................................................ 1

Federal Rule of Civil Procedure 8 ............................................................................................ 3

Federal Rule of Civil Procedure 12 .......................................................................................... 1

Federal Rule of Civil Procedure 56 .......................................................................................... 1

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SNL"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants," and each a "Defendant"),[1] by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7012, Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 12, and Federal Rule of Civil Procedure 56, and move to dismiss this action or, in the alternative, for summary judgment in favor of the Defendants and against Developer RE1 LLC ("RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs," and each a "Plaintiff"), and in support thereof state as follows:

## I.     Introduction

Time and again, the Plaintiffs defaulted under the terms of promissory notes and deeds of trust. The Plaintiffs were repetitively late making interest payments—sometimes by more than a month. One of the Plaintiffs outright failed to make various interest payments at all. Both Plaintiffs allowed senior liens to accrue on their lenders' collateral, in contravention of governing loan documents. And when loans were accordingly declared to be in default, and collateral scheduled for foreclosure, the Plaintiffs brought suit, insisting they ought not be held to the terms of the very loan documents they signed.

To be sure, the Plaintiffs' case is actually far more pernicious than summarized above. These two borrowers, seemingly intent on scorching earth, did not merely sue their lenders—they sued their lenders' principal, their lenders' attorney, and just about anyone with an even vaguely cognizable nexus to their lenders. In fact, it appears the Plaintiffs are now even suing an individual

---

[1] One additional defendant—Shaheen Sariri ("Mr. Sariri")—has been added to this action, though not added to the caption of the case. Undersigned counsel does not presently represent Mr. Sariri, though it is possible such an engagement may (or may not) ensue. This filing is not made on behalf of Mr. Sariri. The references herein to undersigned counsel representing "The Defendants" are not intended to suggest entry of an appearance on behalf of Mr. Sariri.

1

Case 24-50024-KLG  Doc 44-2  Filed 08/09/25  Entered 08/09/25 19:40:27  Desc Main
Document  Page 9 of 83

Case 25-00230-ELG  Doc 4  Filed 08/09/25  Entered 08/09/25 11:04:20  Desc Main
Exhibit A - All Docket Entries  Page 278 of 1284

whose sole putative act of tortious wrongdoing was having the temerity to lend funds to a company

that holds two of the at-issue promissory notes and deeds of trust.

It necessarily follows that the Plaintiffs' case ought to proceed no further. For too long,

DRL and 423 Kennedy have both failed to repay the funds they borrowed and simultaneously

obstructed efforts to sell the collateral they posted for those loans. For too long, DRL and 423

Kennedy have propagated legally meritless theories that commercial lenders ought to be held to

the same standards as their consumer counterparts. And for too long, DRL and 423 Kennedy have

treated their contractual obligations with equal parts nonchalance and disregard.

The core issue in this case is neither novel nor complex. The Plaintiffs are both commercial

borrowers who repetitively and habitually failed to make interest payments on time. They allowed

senior liens to accrue on collateral. And then, when they discovered the loans were being treated

as defaulted, and foreclosures were being scheduled, they went on the offensive. DRL and 423

Kennedy insist such default declarations and foreclosures are improper because there is a lack of

purity in the motivation underlying the lenders' post-default actions. Yet, in so doing, DRL and

423 Kennedy both overlook that the law does not regard motivation as having any material

relevance. The law simply regards whether or not breaches occurred, and on this record there is no

question but that breaches occurred—time and again and again and again.

With promissory notes and deeds of trust having been breached, the correlative lenders

became entitled to charge the default interest rates thereunder and to proceed with foreclosures of

the relevant collateral. That they may have initially declined to do so, forbearing out of generosity,

is immaterial; the lenders' rights became cemented when the breaches occurred. That is not a

controversial proposition. Yet that, somehow, is the very notion the Plaintiffs are endeavoring to

challenge in this suit. And given that the challenge is one devoid of legal merit, it is thusly proper

<center>2</center>

to dismiss those causes of action not previously subjected to such a motion and to enter summary judgment on the remaining claims.

## II.     Standard: Motion to Dismiss

As recently observed by the United States District Court for the District of Columbia, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

3

Further, while assessment of a motion to dismiss is generally confined to the four corners of an underlying pleading, "the court may consider documents extrinsic to the complaint if they are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

## III.    Standard: Motion for Summary Judgment

The standard for a motion seeking summary judgment is familiarly set forth in the Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine what facts are "material," a court must look to the substantive law on which each claim rests. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.
> In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." By pointing to

4

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*, 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

IV.   **Material Facts Not in Dispute**

a.   **Loan Issuance and Funding**

1.      On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B.

<center>5</center>

2.       The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D.

3.       Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F.

4.       The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H.

**b.   RE1 Defaults**

5.       Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

6.       DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4.

7.       DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5.

6

8.      DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6.

9.      Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

10.     DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7.

11.     The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2.

12.     DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J.

13.     DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed).

14.     DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2]

---

[2] This does not include additional defaults under the First DRL Note

7

### c. 423 Kennedy Defaults

15.     Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3.

16.     423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8.

17.     423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9.

18.     423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10.

19.     423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11.

20.     423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12.

21.     423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13.

8

22.     423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14.

23.     Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3.

24.     The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15.

25.     Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1.

26.     On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L.

27.     In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3]

---

[3] This does not include additional defaults under the First 423 Kennedy Note.

9

V.     **Plaintiffs' Allegations**

While not relevant to this motion, for the reasons discussed more fully *infra*, the core of the Plaintiffs' contentions in this suit is that defaults were only declared—and foreclosures were only scheduled—after a falling out occurred between the Plaintiffs' principal and Mr. Huertas. *See* Complaint, DE #40, at ¶¶ 64-187. Theorizing that "money is the root of all evil," *id.* at p. 23, and accusing the Defendants of having "corrupt" and "evil" motives, *id.* at pp. 10, 32, the Plaintiffs insist that they were well on their way to refinancing the subject debt when defaults were declared, *id.* at ¶¶ 193-194.

The only even vaguely relevant portion of these allegations, for purposes of this motion, is their temporal horizon. The Plaintiffs allege the Defendants to have commenced a "corrupt plan" on or about October 6, 2022. *Id.* at ¶ 64. Yet, as noted above, DRL and 423 Kennedy had each defaulted under their respective loan documents, multiple times, prior to October 6, 2022. *See, supra,* § IV(b-c).

The Complaint is rich with vitriol and makes often-counterfactual allegations. But, for purposes of this motion, the whole of those allegations may be rather simply restated as follows: WCP and DPCL initially forbore from exercising their remedies under loan documents, notwithstanding the myriad defaults of the Plaintiffs, until such a time as a falling out occurred between and amongst the parties. Once a falling out occurred, WCP and DPCL elected to no longer voluntarily forbear from exercising their legal rights. The Plaintiffs now wish to litigate the finer points of the falling out; the Defendants posit that such is immaterial, since the Defendants were never under any obligation to voluntarily forbear from exercising their default remedies in the first place.

10

572

VI.     **Argument: Count VII of the Complaint—Seeking to Set Aside a Putative Fraudulent Transfer—Should be Dismissed**

The Plaintiffs, in Count VII, evince a fundamental misunderstanding of the laws governing fraudulent conveyances. This claim is brought against every Defendant, except Mr. Drazin, on the theory that a lender's transfer of a promissory note, in the midst of litigation, constitutes a violation of the modern version of the Statute of Elizabeth. Neither the relevant statutory language nor case law support such a wayward theory.

The Complaint does not cite to any statute for Count VII but, since neither Plaintiff is a debtor in bankruptcy (and since both plaintiffs are thusly without recourse under Section 548 of the Bankruptcy Code), it would seem this claim is brought pursuant to Section 29-3101, *et seq.* of the District of Columbia Code. The pertinent provisions thereof prohibit transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or undertaken for less than reasonably equivalent value at such a time as an obligor is either insolvent or on the verge of being rendered insolvent. D.C. Code §§ 28-3104; 28-3105. The Plaintiffs appear to be alleging both theories, and each is significantly misplaced.

a.   **There is No Contention WCP or SNL are Insolvent**

The Complaint does not allege WCP or SNL to be insolvent. *See* Complaint, DE #40, *passim*. And this is, on its face, a core problem for the Section 28-3105 claim, since insolvency is an element of a fraudulent conveyance claim premised upon an absence of reasonably equivalent consideration. The Plaintiffs, rather, intimate that JPK is insolvent. *Id.* at ¶¶ 260-261. In so doing, the folly of the cause of action is revealed.

11

573

The focus of the District of Columbia fraudulent conveyance law (like seemingly every other fraudulent conveyance law) is on the solvency of the *transferor*, not the *transferee*. Section 28-3104 prohibits transactions for less than reasonably equivalent value where a *transferor* either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the [transferor] were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the [transferor] would incur, debts beyond the [transferor's] ability to pay as they became due.

D.C. Code § 28-3104(a)(2) (interlineating "transferor" for "debtor" so as to track the statutory language without the confusion of the Plaintiffs actually being the parties who are indebted to certain of the Defendants).

The same is true for Section 28-3105, which prohibits transactions where "the transfer was made . . . if the [transferor] made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the [transferor] was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." D.C. Code § 28-3105(a) (similarly interlineating).

It bears notation that WCP and SNL both certainly realized reasonably equivalent value in transferring the at-issue promissory notes, insofar as they received equity in JPK in exchange for the transfers. But such is wholly immaterial for instant purposes. The Plaintiffs are trying to conflate the *transferors* with the *transferee*. The law does not regard—one iota—whether or not a recipient is solvent, on the verge of being rendered insolvent, or inadequately capitalized; the law is concerned solely with whether a *transferor* is at such a risk. And this portion of Count VII accordingly fails on its face.

12

### b. There is No Cogent Theory of Hinderance, Delay or Fraud

The other theory of a fraudulent conveyance promulgated in the Complaint is equally wayward. The Plaintiffs theorize that the transfer of the promissory notes, to JPK, was undertaken to "hinder or delay the adjudication of the claims in this case," Complaint, DE #40, at ¶ 204, and to "hinder or delay the Plaintiffs from reaching the assets of [WCP] and [SNL]," *id.* at § 205. The second contention is facially non-sensical, as evidenced by the fact the Plaintiffs are still suing both WCP and SNL. The first contention is seemingly more dangerous, as the Plaintiffs seem to argue that *any* action undertaken to defend litigation is, *ipso facto*, an action to hinder, delay or defraud creditors.

As to the second contention (concerning the assets of WCP and SNL): the Plaintiffs either have tort claims against the Defendants, *in rem* claims against the promissory notes and deeds of trust, or some combination thereof. If the Plaintiffs have tort claims, transferring the promissory notes and deeds of trust does not move the needle in the slightest—WCP and SNL, to whatever extent they were liable in tort before the transfers, remain liable in tort after the transfers. The Complaint does not suggest or explain otherwise. No one is contending that any tort liabilities, resting on SNL or WCP, were sold or assigned, nor even that liabilities could be sold or assigned under District of Columbia law.

Equally, if the Plaintiffs have *in rem* claims against the promissory notes and deeds of trust, such claims survive the transfer. Not only do the Plaintiffs have the ability to join JPK in this suit, to advance such *in rem* claims, but—somewhat ironically—it is the Defendants who pointed out that JPK should be joined herein, it is the Defendants who noted JPK is a necessary party, and it is the Defendants who insisted upon such even when the Plaintiffs initially refused to bring suit against JPK.

13

575

Nothing about the transfer would wipe out any liability that rested with WCP or SNL. Nor would anything about the transfer wipe out any *in rem* liability that follows the promissory notes and deeds of trust. And it is thusly altogether unclear how it is the Plaintiffs maintain the transfer to have been designed to prevent assets of WCP and/or SNL from being reached.

As for a delay of the adjudication of claims in this case, such is an even odder proposition. As noted *supra*, the prohibition on fraudulent conveyances emanates from the Statute of Elizabeth, enacted some 454 years ago. *See* Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5; *United States v. Robinson*, 494 B.R. 715, 722 n.36 (W.D. Tenn. 2013). Yet the Defendants are unaware of—and undersigned counsel cannot locate—any case law, whatsoever, holding that tactics used in the defense of litigation can give rise to a violation of fraudulent conveyance laws.

To be sure, what the Plaintiffs are alleging is that the siloing of potentially troubled assets is, *ipso facto*, a fraudulent conveyance. If so, every so-called "Texas two step" would, too, be a fraudulent conveyance. And, equally, every sale of a troubled promissory note would be a fraudulent conveyance.

Clearly, such cannot be. Moreover, and of some note, the Plaintiffs do not cogently allege how it is that the transfer of the promissory notes actually caused any hinderance or delay. If the contemplated answer to such is that JPK became a debtor in bankruptcy, three problems emerge: (i) assuredly, the filing of a bankruptcy petition cannot constitute a hinderance or delay for purposes of fraudulent conveyance liability, or nearly every chapter 11 debtor in America will be committing a tort by docketing an order for relief; (ii) this litigation was removed *before* JPK was placed into bankruptcy; and (iii) it is the Plaintiffs—not the Defendants—who fervently sought a stay of open motions shortly following removal.

14

576

In short, Count VII of the Complaint is simply nonsensical. The Plaintiffs appear to either misapprehend controlling law or to be in search of some theory—any theory—upon which to rest a case they understand to be otherwise ill-fated. Either way, this count merits dismissal with prejudice.

## VII. Argument: The Complaint Should be Dismissed as Against SNL

SNL is not alleged to have originated any loans. SNL is not alleged to have serviced any loans. And SNL is not alleged to currently own any loans. So it is—very genuinely—altogether unclear why SNL is still a party to this lawsuit.

SNL is a named defendant to the claims for breach of the duty of good faith and fair dealing (Count II), for declaratory relief as to whether a lender is allowed to foreclose following a borrower's breach of loan documents (Count III), permanent injunctive relief (Count IV), declaratory relief as to whether Mr. Drazin may serve as a trustee (Count VI), and avoidance of a fraudulent conveyance (Count VII). Yet none of these causes of action actually make sense as against SNL.

### a. Count II – Breach of the Duty of Food Faith and Fair Dealing

Under District of Columbia law, survival of a motion to dismiss a claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to "allege facts to show that defendant 'has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero v. City Segway Tours of Wash. DC, LLC*, 826 F. Supp. 2d 100, 106-07 (D.D.C. 2011) (quoting *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988))).

15

Here, the Plaintiffs allege that SNL "engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail." Complaint, DE #40, at ¶ 12. But the Complaint never actually alleges *what* that conduct was, or what actions constituted this unethical and outrageous conduct.

References to SNL, in the pleading, are notably sparse. The Plaintiffs allege that (i) WCP initially assigned the junior RE1 promissory note to SNL, *id.* at ¶ 41; (ii) WCP may have also assigned a 423 Kennedy deed of trust to SNL, *id.* at ¶ 60; (iii) SNL "is believed to also have a financial interest" in a loan the Plaintiffs insist to be of no relation, *id.* at ¶ 94; (iv) Mr. Drazin sent a foreclosure notice on behalf of SNL, *id.* at ¶ 185; and (v) SNL both transferred a note to JPK and owns part of JPK, *id.* at ¶¶ 201-202.

Purchasing a promissory note and then assigning the note to another entity—even when the seller owns part of the new entity—is a rather common practice; it is difficult to conceive of how such could rise to the level of "unethical, outrageous conduct," *id.* at ¶ 12. Similarly, having a financial interest in other loans is par for the course for a lender; it is equally difficult to conceive how such could amount to "unethical, outrageous conduct," *id.* And sending a foreclosure notice, after a borrower has repeatedly defaulted on a promissory note, is similarly well shy of the "unethical, outrageous conduct," *id.*, alleged.

Most pertinently, however, these actions cannot be said to amount to "tak[ing] steps, or refus[ing] to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero*, 826 F. Supp. 2d at 106-07. None of what is alleged of SNL would have prevented the Plaintiffs from timely making loan payments. Nor would any of the actions have prevented the Plaintiffs from paying taxes and utility bills. Nor would any of the actions have prevented the Plaintiffs from doing much of anything else.

16

All that is alleged of SNL is that the entity purchased debt instruments and then exercised rights—including foreclosure and assignment rights—thereunder. Such assuredly cannot constitute a breach of the implied duty of good faith and fair dealing.

### b. Count III – Declaratory Relief (Breaches) / Count IV – Injunctive Relief / Count VI – Declaratory Relief (Mr. Drazin's Services)

The next three causes of action against SNL are for declaratory and injunctive relief concerning the forward-looking rights of noteholders and beneficiaries under deeds of trust, as well as Mr. Drazin's capacity to serve as a trustee. Yet, as the Plaintiffs themselves note in some detail, and bemoan at great length, SNL no longer owns any of the relevant promissory notes and is no longer a beneficiary under any of the relevant deeds of trust. The interests of SNL have been transferred to JPK. And it is thusly unclear why SNL is being made a party to causes of action directed toward the establishment of forward-looking rights, *vel non*.

 Axiomatically, "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04(a). *See also Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) (holding a limited liability company is distinct from its members); *HRH Servs., LLC v. Travelers Indem. Co.*, 2024 U.S. Dist. LEXIS 234196, at *25 (D.D.C. Dec. 30, 2024) (holding similarly).

While there is no question but that SNL owns part of JPK, such is not grounds to sue SNL in connection with debt instruments held by JPK. Whether or not JPK can take actions based upon the Plaintiffs' habitual defaults is a question that impacts JPK, not SNL. The same goes for whether or not JPK can foreclosure and, too, whether or not JPK may rely upon the services of Mr. Drazin as a trustee under the pertinent deeds of trust held by JPK.

17

### c. Count VII – Fraudulent Conveyance

The issues with the fraudulent conveyance claim against SNL are discussed fully above.
*See, supra,* § VI.

### VIII.  Argument: Summary Judgment is Proper

> **a.  The Defendants' Repetitive and Habitual Defaults Bar Relief for Tortious Interference (Count I), Breach of the Duty of Good Faith and Fair Dealing (Count II), Declaratory Judgment (Count III) and Permanent Injunctive Relief (Count IV)**

The thrust of the Plaintiffs' claims in this case is that even though DRL and 423 Kennedy repeatedly and habitually were late making interest payments, and even though DRL and 423 Kennedy allowed senior liens to accrue on their respective assets, the Defendants could not lawfully declare the Plaintiffs to be in default and exercise remedies under the loan documents. The loan documents are notably devoid of provisions allowing for defaults to be cured (and, in any event, the Plaintiffs' defaults have steadily continued—through the present day—as punctuated by a failure to pay the loans at maturity). Yet the Plaintiffs rationalize that since they *eventually* made the payments, and since they *eventually* rid the properties of senior liens, their repetitive and habitual breaches ought to be disregarded. Such simply is not so.

Axiomatically, there cannot be a waiver of strict compliance with a contract "where time is contractually stipulated to be of the essence." *Landow v. Georgetown-Inland W. Corp.*, 454 A.2d 310, 313 (D.C. 1982). *See also SJ Enters., LLC v. Quander*, 207 A.3d 1179, 1184 (D.C. 2019) (noting a party's contractual obligations to be "discharged" when a contractual counterparty fails to adhere to a "time is of the essence" clause); *Landow*, 454 A.2d at 313 ("The gist of the buyer's argument is that so long as he was making a good faith effort to obtain building permits, the settlement date in the original written contract, even though containing a 'time is of the essence' clause, would be orally extended from time to time. We find that this argument is without legal

foundation as well as commercially impracticable."); *Finard & Co. v. Capitol 801 Corp.*, 1992 U.S. App. LEXIS 23402, at *3 (D.C. Cir. Sep. 23, 1992) (strictly construing a "time is of the essence" clause such that a contractual party's rights are waived for failing to timely perform thereunder).

Here, all four promissory notes provide, *inter alia*, "[t]ime is of the essence as to all provisions of this Note." First DRL Note, Ex. A, at § 10; Second DRL Note, Ex. B, at § 10; First 423 Kennedy Note, Ex. E, at § 10; Second 423 Kennedy Note, Ex. F, at § 10.

None of the promissory notes provide any allowance for the cure of monetary defaults. *Id.*, *passim*. Nor do any of the promissory notes require the borrowers to be given notice of any defaults thereunder. *Id., passim*. So once interest payments were not timely made, there existed defaults on the part of both DRL and 423 Kennedy that (i) ran afoul of the notes' plain terms; (ii) ran afoul of the notes' "time is of the essence" clauses; (iii) could not be cured through tardy payment; and (iv) did not require the giving of notice—much less occasion to cure—to the borrowers.

As noted *supra*, this happened on myriad occasions with both Plaintiffs. They were habitually late making payments. And these late payments largely came *before* the alleged confrontation between the Plaintiff's principal and Mr. Huertas that is central to the complaint.

So the question posed, in the form of the claims for tortious interference (Count I), breach of the implied covenant of good faith and fair dealing (Count II), declaratory relief (Count III), and injunctive relief (Count IV), is whether the lenders, following a series of repetitive and habitual contractual breaches by the borrowers, were entitled to exercise their correlative rights under the loan documents. And this question is, of course, answered in the affirmative. To suggest otherwise would be to not merely undermine the plain language of the promissory notes and District of

19

Columbia precedent on "time is of the essence" clauses but, too, to endeavor to impose on commercial debt instruments the standards heretofore only known to apply to consumer loans.

### i.  Tortious Interference (Count I)

Count I of the Complaint posits that WCP, DPCL and Mr. Huertas are liable for tortious interference with business relations, with the putative underlying sin being the demand that the Plaintiffs "pay [d]efault [i]nterest and [d]efault [p]enalties," Complaint, DE #40, at ¶ 221. The borrowers theorize that the demand for such default interest and penalties—remedies provided for under the loan documents—caused an inability to refinance debt and a breakdown in relations with a potential refinance lender. *Id.* at ¶¶ 221-223. In so theorizing, the Plaintiffs seem to miss that incursion of default interest and penalties was in express accord with the provisions of the loan documents and came only after the Plaintiffs repetitively and habitually breached their obligations thereunder.

Under District of Columbia law, a claim for tortious interference with business relations requires the showing of four elements: "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Close It! Title Servs. v. Nadel*, 248 A.3d 132, 141 (D.C. 2021) (quoting *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017)).

For summary judgment purposes, the fourth element is key. While the Defendants do question the first element (it appears, from discovery, there may not have been as valid a relationship with a refinance lender as the Plaintiffs suggest) and vehemently dispute the third

20

element (there certainly was not any intentional interference), those two elements run too close to potential disputes of material fact. The fourth element, however, does not.

Rather plainly, the Plaintiffs' liability for default interest and other breach-centric damages stems not from any actions of the lenders but, rather, from the Plaintiffs' own habitual, repetitive, and recurring breaches of the promissory notes. At the time of the putative refinance efforts, the Plaintiffs owed default interest because they failed to timely make interest payments *ad nausea* and because they allowed senior liens to accrue on collateral. More defaults would, of course, follow later (most notably including a failure to repay the loans at maturity). But numerous breaches and defaults occurred long before the Plaintiffs even allege refinance efforts to have been afoot.

To be sure, the Plaintiffs cannot in good faith deny that they were habitually and repetitively late making interest payments. Nor can they deny that they permitted senior liens to accrue upon the collateral. Nor can they deny that these are plain language breaches of the applicable loan documents. What they contend, rather, is that it is unfair for the Defendants to actually enforce these plain language provisions, and that habitually tardy payments ought to be forgiven. But there is no actual legal foundation for these contentions, with such not only running afoul of the "time is of the essence" clauses in the loan documents but, too, of longstanding principles guiding the construction of commercial agreements in accord with the plain terms thereof.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II of the Complaint alleges that by enforcing the default provisions of the loan documents, DPCL, WCP, SNL and JPK ran afoul of the implied covenant of good faith and fair dealing. In so doing, the Plaintiffs appear to conflate the implied duty of a contractual party to not

21

*interfere* with a counterparty's performance and the right of a party to enforce its rights under a contract following a counterparty's breach. The former is actionable in tort; the latter is nothing more than what the parties agreed to in executing the loan documents in the first instance.

Familiarly, District of Columbia law provides for a duty of good faith and fair dealing in connection with contractual performance:

> . . . all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing.

*Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987-988 (D.C. 1988)).

What the Plaintiffs allege here is that *by enforcing the plain terms of the loan documents*, the lenders violated the implied covenant of good faith and fair dealing. The Plaintiffs reason that even though there were habitual and repetitive defaults, WCP and its co-Defendants had a duty to *not* enforce the default provisions of the agreements, to not charge default interest, and to not exercise remedies under deeds of trust.

Or, stated otherwise, what the Plaintiffs allege here is that the "time is of the essence" provision of the promissory notes, coupled with the District of Columbia's extensive case law on the enforcement of such provisions, should be wholly disregarded. And, compounding the oddity of the theory, the Plaintiffs posit such ought to not merely be wholly disregarded but, too, the lenders' efforts to rely on this plain provision of the loan documents, and this extensive case law, is actually a violation of the implied covenant of good faith and fair dealing.

22

584

### b.  Permanent Injunctive Relief (Count IV) is Not a Cause of Action

Count IV of the Complaint is for "permanent injunctive relief." Such is not a cause of

action, however, but rather merely a remedy available to litigants who successfully pursue

freestanding causes of action in certain circumstances. *See, e.g.*, *Genesis Capital, LLC v. Lauravin*

*Luxury Apartments Homes, LLC*, 2023 U.S. Dist. LEXIS 84754, at *6 (D.D.C. May 15, 2023)

("Like a preliminary injunction, a receivership is not a cause of action but rather a form of relief.")

(citing *Gordon v. Washington*, 295 U.S. 30, 37 (1935)); *Base One Techs., Inc. v. Ali*, 78 F. Supp.

3d 186, 199 (D.D.C. 2015) ("Injunctive relief, however, is not a freestanding cause of action, but

rather — as its moniker makes clear — a form of relief to redress the other claims asserted by

Plaintiff.") (citing *Guttenberg v. Emery*, 41 F. Supp. 3d 61 (D.D.C. 2014)); *Kemp v. Eiland*, 139

F. Supp. 3d 329, 343 (D.D.C. 2015) ("a 'request for injunctive relief is a remedy and does not

assert any separate cause of action.'") (citing *Coe v. Holder*, 2013 U.S. Dist. LEXIS 85337 at *2

n.4 (D.D.C. June 18, 2013) (internal citations omitted)).

In light of this claim not actually being a cause of action, summary judgment is properly

entered thereupon in favor of the Defendants.

### c.  Summary Judgment is Properly Entered on the Claim for Declaratory Relief

Count III of the Complaint is premised upon a red herring. Therein, the Plaintiffs seek a

declaratory judgment as to "whether an unresolved dispute about water bills, or the late payment

of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture

of the Property." Complaint, DE #40, at § 234. The answer, to be sure, is found in the affirmative:

permitting senior liens to accrue on collateral is, in the prism of the loan documents *sub judice*,

grounds of default upon which a foreclosure may be premised. But the question is also terrifically

misstated in a deceptive fashion: the Plaintiffs defaulted, habitually and repetitively, under the loan

documents by failing to timely make interest payments. The Plaintiffs then defaulted by failing to

23

585

pay the loans at maturity. And the question, thusly, should be rephrased as follows: "After a borrower has habitually defaulted under loan documents, by failing to make payments despite time being expressly of the essence, may a lender avail itself of the remedies set forth in those loan documents?" And that question is, unsurprisingly, also answered in the affirmative.

To be sure, what the Plaintiffs ask in Count III is either academic or misleading. If they simply inquire as to whether the accrual of senior liens may give rise to foreclosure, such is academic since the Plaintiffs committed numerous other defaults under the applicable loan documents. Answering that question, without recognizing the full scope of the breaches at issue herein, would be to issue an advisory opinion premised upon hypothetical facts. And such is, of course, forbade in this judicial circuit. *See, e.g.*, *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 86 (D.D.C. 2009) ("Pueschel's generic question is in essence a request for an advisory opinion, something federal courts are not empowered to render.") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 104 (1998)); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 377 (D.C. Cir. 2010) ("Because a federal court does not have jurisdiction to issue an advisory opinion, we must decline Murphy's request to consider the issue.") (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). *But see Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) (holding Article III case or controversy rigors to not attach to proceedings in bankruptcy courts).

Similarly, if the Plaintiffs pose the question under the pretense of having not otherwise breached the applicable loan documents time and again, such is misleading. As noted *supra*, the Plaintiffs' late payments and missed payments are extraordinary in nature and were of an extraordinary nature *before* a foreclosure was ever scheduled. They may wish to focus merely upon the senior liens they permitted to accrue on the lenders' collateral, even though such are

24

586

contractual breaches unto themselves, but the undisputed facts of this case set forth countless other breaches of a monetary variety. And, as urged *passim*, such runs plainly afoul of case law governing agreements in which time is expressly of the essence.

### d. Mr. Drazin Incorporates his Prior Summary Judgment Motion, which is Presently Under Advisement

Mr. Drazin has previously moved for summary judgment herein, DE #7, and the subject motion is presently under advisement, having been fully briefed and then subsequently argued, DE #32. Insofar as that motion is under advisement, the issue appears to have been fully submitted to this Honorable Court. However, to whatever extent Mr. Drazin may need to formally reassert his independent motion for summary judgment, upon the presentation of a new complaint, he hereby does so and incorporates, by reference, his prior briefing on the matter.

## IX.   Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter judgment in their favor, and against the Plaintiffs, on the Complaint; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 19, 2025          By:     /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for the Defendants*

25

587

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was
served electronically upon filing via the ECF system, with copies being sent to all parties receiving
electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

26

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                          **$3,579,000.00**

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## 1.  BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.   **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                          Page **1** of 9

WCP0449

589

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

**2.    INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

**3.    PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

WCP0450

Case 25-10028-ELG   Doc 41   Filed 09/19/25   Entered 09/19/25 21:20:42   Desc
Exhibit A-II Docket Entries (Part V) Note - Page 305 of 1284

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;
b.  If default be made in the performance of any other covenant contained in this Note;
c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

WCP0451

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

WCP0452

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

WCP0453

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

WCP0454

### 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

WCP0455

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

WCP0456

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 12.2015                                    Page **9** of **9**

WCP0457

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                        **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.      **BORROWER'S PROMISE TO PAY**

        FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

        Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.      **[ASSIGNMENT OF
CONTRACTS]**

        Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

598

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Case 25-00200-ELG Doc 42 Filed 09/01/25 Entered 09/01/25 12:02:02 Desc
Exhibit B - ADR Secured Promissory Note Page 4 of 9
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

601

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Case 25-10020-ELG  Doc 42  Filed 09/10/25  Entered 09/10/25 21:04:22  Desc
Exhibit A-D Block Entire Person (Part) Note  Page 6 of 84
5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Case 24-10023-ECG   Doc 422   Filed 09/19/25   Entered 09/19/25 21:20:02   Desc
Exhibit B - Docket Entries (Part I)   Page 318 of 1284
2905 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Rev 12.2015                                                                                   Page **7** of **9**

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

605

5305 1st St NW Washington DC 20011
5301 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Managing Member




COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_:

I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.



_____
NOTARY PUBLIC

My commission expires: _____
ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024




Rev 12.2015                                                    Page 9 of 9

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON
PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and
grantor have an agreement whereby the noteholder may make or contemplates making
advances from time to time against the security described in this credit line deed of trust.
The maximum aggregate amount of principal to be secured at any one time is
$3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e.,
grantor) and the consequences of default are set forth herein.

   **THIS DEED OF TRUST**, made effective as of December 23, 2021, by
and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability
Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of
1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter
referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street,
NW, Suite 2, Washington, DC 20015.

   WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited
Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815
Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter
defined) under any co-lending agreement, for money borrowed in the amount of
**$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and
delivered a certain Commercial Deed of Trust Note of even date herewith, in the original
principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note");
and

   WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent
holder of the Note secured hereby the full and punctual payment of said debt, when and as
the same shall become due and payable, as well as any and all renewals and extensions of
said Note, or any part thereof, together with interest thereon, and the performance of the
covenants and agreements herein and therein contained, and also to secure the
reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee,
and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees
under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions
of this Deed of Trust for all money which may be advanced as herein provided for, and for
any and all costs and expenses incurred or paid on account of any litigation at law or in

WCP0469

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

ARTICLE I

DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

WCP0470

608

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

WCP0471
609

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<center>ARTICLE II</center>

<center>GRANT</center>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

WCP0472

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

WCP0473

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

WCP0474

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

WCP0475

613

Case 24-10023-ELG   Doc 43   Filed 09/19/25   Entered 09/19/25 12:04:02   Desc
Exhibit All-Docket First Deed Part Trust   Page 328 of 1284

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

WCP0476

614

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

WCP0477

Case 24-10020-ELG   Doc 423   Filed 09/01/25   Entered 09/01/25 21:04:02   Desc
Exhibit A - Docket Entered (Part 1)   Page 330 of 784
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

WCP0478

616

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

WCP0479

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page **12** of 25

WCP0480

618

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

ARTICLE VIII

DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

WCP0481

619

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

WCP0482

620

Case 25-10020-ELG   Doc 43   Filed 09/01/25   Entered 09/01/25 12:04:02   Desc
Exhibit A - Docket Entries (Part 1)   Page 335 of 1284

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

WCP0483

621

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

Page **16** of 25

WCP0484

622

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.


ARTICLE X

RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

ARTICLE XI

MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

WCP0485

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016

WCP0486

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

WCP0487

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income").  Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property.  Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents.  Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary.  Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property.  Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases.  The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases.  In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

WCP0488

626

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

WCP0489

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

## ARTICLE XII

## STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

WCP0490

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

(SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this **24** day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

WCP0491

629

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

WCP0492

630

WCP0493

631

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

632

Case 24-10023-ELG   Doc 44-24   Filed 09/01/25   Entered 09/01/25 12:04:02   Desc
Exhibit A IDR Second Deed of Trust   Page 2 of 25
3301 1st St NW Washington DC 20011
3301 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

633

Case 25-10020-ELG  Doc 424  Filed 09/01/25  Entered 09/01/25 21:20:42  Desc
Exhibit A DID Ducket Entire Deed of Trust  Page 348 of 1284
3503 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Case 2:21-00266-EG Doc 424 Filed 09/01/25 Entered 09/01/25 20:02:02 Desc
Exhibit A AID Rackets of Trust Page 349 of 1284
5301 1st St NW Washington DC 20011
5301 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Case 24-10020-ELG Doc 424 Filed 09/01/25 Entered 09/01/25 21:04:22 Desc
Exhibit A (Docket Entries) Page 350 of 1284
3304 11st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

636

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

637

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

638

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

639

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

640

Case 1:21-00200-ECG Doc 424 Filed 09/01/25 Entered 09/01/25 12:04:02 Desc
Exhibit A Docket Entries (Part 1) Page 355 of 1284

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

641

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

**Page 11 of 25**

642

Case 24-00266-ELG Doc 44 Filed 09/10/25 Entered 09/10/25 12:04:22 Desc
Exhibit A Docket Entries (Part 1) Page 357 of 1284
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

643

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

ARTICLE VIII

DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

644

Case 24-00262-ELG Doc 44 Filed 09/01/25 Entered 09/01/25 21:20:22 Desc
Exhibit A Docket Entries (Part 1) Page 359 of 1284

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

645

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of **25**

646

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016                                         Page **16** of 25

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page 17 of 25

648

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

649

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

**11.7 Applicable Law.**

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

**11.8 Time of Essence.**

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

**11.9 Business Purpose.**

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

**11.10 Tenant Leases and Rents.**

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

652

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

653

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

    I hereby certify on this **24** day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

654

**EXHIBIT A**

**LEGAL DESCRIPTION**

655

# EXHIBIT "A"
## Property Description

**Closing Date:** December 23, 2021

**Borrower(s):** Developer RE1 LLC

**Property Address:** 5501 1st Street Northwest, Washington, DC 20011

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
1101 4th St. SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

- [ ] Deed
- [x] Deed of Trust
- [ ] Lease for a Term of 30 years or more
- [ ] Re-recording
- [ ] Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | Suffix | 0137 | | 3389 | Suffix | 71/72 |
| --- | --- | --- | --- | --- | --- | --- |
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

Square and/or Parcel [_____]  Lot(s) [_____]

Property Address: [5501-5505] Street Number  [1st Street] Street Name  [NW] Quadrant  Unit No.

Property Use:
- [ ] Dwelling Units ≤ 5
- [ ] Apartment
- [ ] Commercial

Is any part of the *entire* building commercial (Class 2)?
- [X] Yes*
- [ ] No
- [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
- [ ] Yes†
- [ ] No

† If Yes, this instrument will be taxed as commercial.

Fee Interest % Conveyed: [100] %

Was personal property included in this transfer?
- [ ] Yes*
- [ ] No

*If Yes, what type? [_____]  Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]  Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]  State [DC]  Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]  Firm [District Title]

Address [1775 I Street Northwest, #560]  Phone No. [(202) 518-9300 ext. 309]

City [Washington]  State [DC]  Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]  Grantor [_____]

Grantor [_____]  Grantor [_____]

Address [1629 K Street NW, Suite 300]  Phone No. [(202) 271-5046]

City [Washington]  State [DC]  Zip [20006]

Grantor(s) Tenancy
- [ ] Tenants in Common
- [ ] Joint Tenants
- [ ] Trustee
- [ ] Tenants by Entirety
- [ ] Sole

ROD 1 Revised 08/2019

★★★

**Government of the District of Columbia**
Office of Tax and Revenue
1101 4th St. Street, SW Washington, DC 20024        Phone (202)727-5374

| 3389 | | 0137, 71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

| Grantee | WCP Fund I LLC | Grantee | |
|---|---|---|---|
| Grantee | | Grantee | |

| Address | 2815 Hartland Road, Suite 200 | Phone No. | (703) 344-1733 |
|---|---|---|---|
| City | Falls Church | State | VA | Zip | 22043 |

**Grantee(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|---|---|---|
| Last Name | First Name | Middle Name |

| Address | | Unit No. | |
|---|---|---|---|
| City | | State | | Zip | |
| Phone | | | |

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

### I. Deed

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

1. Acquisition Price _____ _____/_____

   Cash _____ _____/_____

   *Amount of 1st Deed of Trust* _____

      Purchase Money Amount _____

      Other Exempt Amount _____ _____

      Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

      Purchase Money Amount _____

      Other Exempt Amount _____ _____

      Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

      Purchase Money Amount _____

      Other Exempt Amount _____ _____

      Nonexempt Amount: _____

2. Current Tax Year Assessed Value (If No or Nominal Consideration) _____ _____/_____

ROD 1 Revised 08/2019

**Government of the District of Columbia**

659

**Office of Tax and Revenue**
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

| Square | Suffix | Lot |
|--------|--------|-----|
| 3389 | | 0137 ,71, 72 |

## II. Deeds of Trust (no transfer of title)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)   $524,000.00

**Tax Exemption Application**
Recordation Tax
(Cite to Specific DC Code Provision)

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher, use Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | **Total** | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date  December 23, 2021 | Date  December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

Notary Public

Notary Public

My Commission Expires  ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My Commission Expires:
STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires Feb.

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                                    **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.   BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a
District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the
order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd
Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under
any co-lending agreement (together with its successors and assigns, the "Lender"), at such
address and place, or at such other place or places as the Lender may from time to time
designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together
with interest at the rate hereinafter provided, from the date of this Note (as set forth above)
until paid. All amounts due under this Note are secured by a Deed of Trust of even date
herewith ("Deed of Trust") on the real property referenced in the Deed of Trust
("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note")
and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed
of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.   **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                          Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.  **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.  **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.  BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.  BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;
b.  If default be made in the performance of any other covenant contained in this Note;
c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

663

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

664

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                    Page **6** of **9**

666

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                              Page 7 of 9

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

LOAN-006491

1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

_(signature)_ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

_(signature)_
NOTARY PUBLIC

My commission expires: _5/14/2025_

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of **9**

669

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                        **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC,** a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

670

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

671

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.    BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.    BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a.  If default be made in any payment due under this Note;
  b.  If default be made in the performance of any other covenant contained in this Note;
  c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                           Page 3 of 9

672

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

**6.** **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

### 9.   SUCCESSORS AND ASSIGNS

(a)      Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)      Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)      Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

675

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015

Page 7 of 9

676

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

677

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)

By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

By:     Brighton Capital LLC
Its:     Managing Member

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Authorized Signer, on behalf
of Balakrishnarao Sure and
Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____)

I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC _____

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                          Page **9** of **9**

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON
PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and
grantor have an agreement whereby the noteholder may make or contemplates making
advances from time to time against the security described in this credit line deed of trust.
The maximum aggregate amount of principal to be secured at any one time is
$8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e.,
grantor) and the consequences of default are set forth herein.

      **THIS DEED OF TRUST,** made effective as of March 31, 2022, by and between
**423 Kennedy St Holdings LLC,** a District of Columbia  Limited Liability Company,
hereinafter referred to as the "Grantor"_(index as Grantor),_ with an address of 1629 K
Street, Suite 300, Washington DC 20006, and **Russell S. Drazin,** hereinafter referred to
as the "Trustee"_ (index as Grantee),_ with an address of 4400 Jenifer Street, NW, Suite
2, Washington, DC 20015.

      WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC,** a Delaware
Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address
of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as
hereinafter defined) under any co-lending agreement, for money borrowed in the
amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor
has  made  and delivered a certain Commercial Deed of Trust Note of even date herewith,
in the original principal amount of the Loan Amount payable to the order of the
Beneficiary (the "Note"); and

      WHEREAS, the  Grantor  desires  to  secure  the  Beneficiary  and  any
subsequent holder of the Note secured hereby the full and punctual payment of said debt,
when and as the same shall become due and payable, as well as any and all renewals and
extensions of said Note, or any part thereof, together with interest thereon, and the
performance of the covenants and agreements herein and therein contained, and
also  to  secure  the  reimbursement  to  the  holder  or  holders  of  said Note or to the
Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the
Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or
Substitute Trustee under the provisions of this Deed of Trust for all money which may be
advanced as herein provided for, and for any and all costs and expenses incurred or paid
on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

681

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

     (n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

     NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

     IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

682

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

683

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">

ARTICLE IV

AFFIRMATIVE COVENANTS

</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

### 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

686

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

Page **10** of **25**

688

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

### DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

### 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

### 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

694

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

Page **18** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

### 11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

### 11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

### 11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016                                                    Page **20** of **25**

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

699

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF,** the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:   Mel Melaku Negussie
Its:   Member-Manager

By:   Brighton - KSDC, LLC
Its:   Member-Manager

    By:   Brighton Capital LLC
    Its:   Managing Member

    _(signature)_ (SEAL)

    By:   Mel Melaku Negussie
    Its:   Authorized Signer, on behalf
           of Balakrishnarao Sure and
           Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear M e l  M e l a k u  N e g u s s i e, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

701

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

703

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

**DEED OF TRUST**

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

704

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page **2** of **25**

705

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<center>ARTICLE II</center>

<center>GRANT</center>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

713

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

716

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

717

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of **25**

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

Page **20 of 25**

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

724

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

725

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:   Mel Melaku Negussie
Its:   Member-Manager

By:   Brighton - KSDC, LLC
Its:   Member-Manager

    By:   Brighton Capital LLC
    Its:   Managing Member
    _(signature)_ (SEAL)
    By:   Mel Melaku Negussie
    Its:   Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF   District of Columbia   ) SS:
STATE OF                  )

    I hereby certify on this 31ˢᵗ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires:     5/14/2025

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                          **Page 23 of 25**

726

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## EXHIBIT A

## LEGAL DESCRIPTION

727

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**     **March 31, 2022**

**Borrower(s):**     **423 Kennedy St Holdings LLC**

**Property Address:**   **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision
made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District
of Columbia in Plat Book 214 at Page 78.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF CHRISTINA ARAUJO

1.      My name is Christian Araujo, I am over the age of eighteen, and I am competent to testify to the matters set forth herein.

2.      I am the Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners.

3.      In my capacity as Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners, I am familiar with the loans made to 423 Kennedy St Holdings LLC ("423

730

Docusign Envelope ID: D8A47ECC-E98F-4E5A-8C55-BC6692B99DAB

Case 24-02060-EEG Doc 429 Filed 09/19/25 Entered 09/19/25 12:04:02 Desc
Exhibit A - Declaration of Carl Braun Page 4 of 284

Kennedy") and Developer RE1 LLC ("DRL") that are at issue in the above-referenced litigation, as well as the payment histories thereof.

4.      In connection with the second loan to DRL (the "Second DRL Loan"), DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late.

5.      In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late.

6.      In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late.

7.      DRL failed to pay the Second DRL Loan at maturity and the loan remains unpaid.

8.      In connection with the second loan to 423 Kennedy (the "Second 423 Loan"), 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late.

9.      In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late.

10.      In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late.

11.      In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late.

12.      In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made.

13.     In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made.

14.     In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made.

15.     423 Kennedy failed to pay the Second 423 Loan at maturity and the loan remains unpaid.

16.     Further declarant sayeth naught.


I declare under penalty of perjury that the foregoing is true and correct.


Executed On: 3/19/2025

Christina Araujo

732

Filed & Recorded
08/30/2022 10:15 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
Customer Service
202-354-3750


**dc**
water is life

# DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

## DELINQUENT ACCOUNTS SECTION

DC Water and Sewer Authority
Vs
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 2022-08-29
Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389
Suffix:
Lot: 0138

### Amount Due (including penalties, if any): $43,956.32
## CERTIFICATE OF DELINQUENT WATER/SEWER CHARGES

This is to certify that, pursuant to D.C. Official Code, 2001, Section 34-2407.02 and Section 34-2110, the Water and Sewer Authority has a continuing lien for delinquent water/sewer service charges upon the land and the improvements thereon at the above service address. From the date of its filing, this certificate shall have the force and effect of a lien created by a judgment entered by the Superior Court of the District of Columbia and will remain in force and effect until the water/sewer charges, plus any interest and penalties thereon, shall have been fully paid by cash, certified check or money order to the Water and Sewer Authority.

**By:**

Manager, Credit & Collections Customer Service Department DC Water and Sewer Authority.

## ACKNOWLEDGEMENT

This is to acknowledge that the foregoing certificate was filed with the Recorder of Deeds of the District of Columbia on the _____.

**By:** _____
Recorder of Deeds Government of the District of Columbia

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006



**DC Office of Tax and Revenue**

 MyTax DC



‹ **Home**

# Property Details

› **Make a Payment**

| | | | |
|---|---|---|---|
| SSL | : 3389- -0138 | **Balance Due** | : **$20,** |
| Premise Address | : 5501 1ST ST NW WASHINGTON DC 20011-5258 | | |

Details    Assessment    **Tax Information**    Map    Applications and Actions

Tax Summary    **Tax History**    Billing History    Payment History

---

## Current Year

Help

### 2025 First Half

| Description | Amount | Balance |
|---|---|---|
| Real Property Tax | $20,625.00 | $20,625.00 |

---

## Past Years

### 2024

| Description | Amount | Balance |
|---|---|---|
| Real Property Payments/Credits | ($33,951.49) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |
| Real Property Interest | $1,132.29 | $0.00 |

| Description | Amount | Balance |
|---|---|---|
| Real Property Penalty | $2,983.56 | $0.00 |

## 2023

| Description | Amount | Balance |
|---|---|---|
| Real Property Payments/Credits | ($29,835.64) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |

## 2022

| Description | Amount | Balance |
|---|---|---|
| Real Property Payments/Credits | ($16,745.17) | $0.00 |
| Real Property Tax | $14,818.74 | $0.00 |
| Real Property Interest | $444.56 | $0.00 |
| Real Property Penalty | $1,481.87 | $0.00 |

*For more historical data, please contact OTR Customer Service at (202) 727-4TAX.*

Filed & Recorded
11/17/2022 05:07 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE
DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
OFFICE OF CIVIL
INFRACTIONS

### CERTIFICATE OF DELINQUENT FINES
FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO
THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:  Lot: 0056

NOI No. : VR22-00182

Address of Premises:

423 KENNEDY ST NW

This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1)
of the D.C. Code, which establishes a continuing lien upon the real property
(including improvements) and personal property of an owner in the District of
Columbia who fails to pay all outstanding fines, penalties or other costs associated
with a final adjudication of a Notice of Infraction issued pursuant to the Civil
Infractions Act of 1985, as amended.

This Certificate, from the date of its filing, has the force and effect, as against the
aforesaid delinquent party or parties, of a lien created by a judgment granted by the
Superior Court of the District of Columbia. This lien remains in force and effect until
the entire assessed amount set forth below, together with penalties and other costs
(including, but not limited to, court costs and administrative fees) are paid. Failure to
pay the outstanding amount within ninety (90) days after the date to appeal the final
decision and order, if no appeal has been filed, may result in the sale of the owner's
property for costs at the next tax sale in the same manner and under the same
conditions as property sold for delinquent general taxes.

Document No: 1

Assessed Amount: $1590.00

By _____

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

736

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF HEARING ON MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

1

737

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

738

Respectfully submitted,

Dated: March 19, 2025    By:    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The VerStandig Law Firm, LLC
                                    9812 Falls Road, #114-160
                                    Potomac, Maryland 20854
                                    Phone: (301) 444-4600
                                    mac@mbvesq.com
                                    *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig

739

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | |
| Charles Paxton Paret, ) | Case No. 23-217-ELG |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| ) | |
| Developer RE1 LLC, ) | |
| ) | |
| Plaintiff, ) | Adv. Case No. 24-10023-ELG |
| ) | |
| v. ) | (Cases Consolidated) |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| 423 Kennedy St Holdings LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1

740

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

Respectfully submitted,

Dated: March 19, 2025          By:     /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                       /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

PLAINTIFFS' RENEWED MOTION FOR REMAND AND TO SUSPEND
DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINE

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings

LLC ("423 Kennedy") (collectively, "Plaintiffs"), pursuant to 11 U.S.C. § 105(a), 28 U.S.C.

§1334(c) and §1452(b), Fed. R. Bankr. P. 9006, and LBR 9027-1(b) move this Court to: (a)

remand this adversary proceeding to the D.C. Superior Court; and (b) suspend the other pending

motion, hearing, and response deadline until after a decision is made on this renewed motion for remand. In support of these requests, the Plaintiffs represent as follows:

<div align="center">OVERVIEW</div>

1.      The Court is already familiar with the factual and procedural history of these removed cases. Given that familiarity, and because brevity is the heart of good pleading, the Plaintiffs refer the Court to the prior filings related to the remand issue, in particular:

    a.      the Plaintiffs' Statement of No Consent to Final Orders of Judgment filed on July 16, 2024 (ECF No. 12);

    b.      the Plaintiffs' first Motion for Remand and to Suspend Deadlines filed on July 21, 2024 (ECF No. 13);

    c.      the Plaintiffs' Omnibus Objections to Motions Filed and Notice by Defendants filed on July 22, 2024 (ECF No. 16); and

    d.      the Plaintiffs' Reply in Support of Motion for Remand filed on August 26, 2024 (ECF No. 21); and

    e.      the Plaintiffs' Supplemental Brief in Support of Motion for Remand filed on November 27, 2024 (ECF No. 26).

2.      The Court should also take into consideration the following filings in the involuntary bankruptcy petition case (24-00262-ELG) involving JPK NewCo, LLC ("JPK NewCo"). These filings outline the scheme that the Defendants engaged in to attempt to bootstrap the threadbare jurisdictional arguments for removal by manufacturing a "core proceeding", *i.e.,* the filing of the involuntary petition against JPK NewCo:

    a.      The US Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b) (ECF No. 37 in 24-00262-ELG);

    b.      The Plaintiffs' Statement in Support of the US Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b) (ECF No. 57 in 24-00262-ELG);

    c.      The Monthly Operating Reports filed by JPK New Co that show no legitimate business activity whatsoever for JPK NewCo (ECF

8161\0002\4911-6425-8860.v1

Nos. 62, 63, 71, 73, 80, and 84 in 24-00262-ELG);

d.  The transcript from the meeting of creditors held in the JPK NewCo case, again confirming that JPK NewCo was not a legitimate business;[1] and

e.  The Limited Objection to Application for Compensation (ECF No. 86 in 24-00262-ELG).

3.  To reiterate, JPK NewCo was created by the Defendants and their counsel, acting in concert, for the improper purposes of: (a) delaying a trial on the Plaintiffs claims in D.C. Superior Court and hindering their ability to pursue their claims; and (b) so that the Defendants could relitigate prior decisions from that Court in this Court – a Court that they consider to be their "home court" that would make decisions more favorable to their positions.

4.  After extensive briefing, this Court held a hearing on the motion for remand and denied that motion without prejudice. ECF Nos. 28 and 35. The Court's denial of the motion for remand "without prejudice" was in part due to the fact that the viability of the JPK NewCo involuntary case (24-00262-ELG) was on thin ice because the US Trustee's Office had filed a motion to dismiss that case for being filed in bad faith

5.  The original alleged basis for removal jurisdiction was the pendency of mere *allegations* in an adversary proceeding involving Charles Paret in another case that one of the Defendants (Daniel Huertas) removed to this Court on September 1, 2023, just shy of one month *after* three of his related companies, as creditors, had filed an involuntary petition against Mr. Paret (23-00217) on August 4, 2023.[2]

---

[1]  A copy of the transcript from the JPK NewCo meeting of creditors is attached as Exhibit 1.

[2]  The petitioning creditors in 23-00217-ELG were: DP Capital, LLC; 1Sharpe Opportunity Immediate Trust; and WCP Fund I, LLC. *See* ECF No. 1 in 23-00217-ELG. Christina Araujo, who completed all of JPK New Co's monthly operating reports, and Mr. VerStandig signed the involuntary petition.

3

6.     To say that the allegations of Mr. Paret about an alleged partnership being formed, in which he claims, without support, that he has a continuing ownership interest in 423 Kennedy and Developer RE1, are "flimsy" would be the understatement of the year.  Mr. Paret signed documents in December 2020 and December 2021 in which he confirmed that he no longer had any membership interests in the entities that owned the two properties now owned by Developer RE1 and 423 Kennedy.  *See* Exhibit 2 and (two Declarations signed by Mr. Paret in December 2021 regarding the membership interests in the prior entities that owned the Developer RE1 property);[3] *see also* Exhibit 4 (Affidavit of Mr. Paret regarding the ownership of 423 Kennedy dated January 31, 2020).

7.     Several of the Defendants in the adversary proceeding filed motions to dismiss Mr. Paret's partnership (and other) evolving claims, but later folded by signing an agreed order that kept several of Mr. Paret's claims intact.  *See* ECF No. 3 (Motion to Dismiss filed by Mr. Huertas), ECF No. 15 (Motion to Dismiss filed by Mr. Huertas and DP Capital), ECF No. 41 (Motion to Dismiss filed by Mr. Huertas, DP Capital, and the WCP Fund), and ECF No. 46 (Order granting in part and denying in part the last motion to dismiss) in 23-10025-ELG.  The timing of the decision to fold -- in November of 2024 -- before the Court issued a decision on the first motion for remand, should not be lost on this Court.  It was to the Defendants benefit here to keep the Paret claims alive for jurisdictional purposes.

8.     On February 24, 2025, the Court entered an order dismissing the JPK NewCo involuntary case "WITHOUT PREJUDICE" on the basis that the Debtor "failed to pay the quarterly fee due to the United States Truste [sic – "Trustee"]" and for no other reason.  ECF No. 85 (in 24-00262-ELG).

---

[3]   These documents reference 71 Kennedy Street Holdings LLC and 5501 1st St Holdings, LLC. Those entities conveyed title to NT Group, LLC, who then conveyed title to Developer RE1.

4

9.       As Plaintiffs' counsel predicted at a hearing in July of last year -- this before knowing anything about JPK NewCo. -- JPK NewCo was using the removal process to attempt to relitigate issues that have already been decided by the D.C. Superior Courts.  On March 19, 2025, the Defendants filed a Motion to Dismiss or, In the Alternative, for Summary Judgment ("Motion to Dismiss").  The Motion to Dismiss asserts many of the same arguments that were previously asserted, and rejected by, two different judges in D.C. Superior Court before the cases were removed.

10.      As a result of the dismissal of the JPK NewCo involuntary case, the jurisdictional dynamics have now shifted dramatically in favor of remanding these cases to the D.C. Superior Court.  JPK NewCo is no longer a defendant in a pending bankruptcy case, and the court does not have jurisdiction over JPK NewCo's property.

11.      This Court was never designed to be either the Defendants' "home court" or to act as the first line of appeal for the Defendants from prior, adverse decisions made by the D.C. Superior Court, but allowing this case to continue here is exactly what this Court will become.

12.      The type of manipulative, procedural gamesmanship that the Defendants have engaged in, which has to date gone unchecked, should not be condoned by this Court.  This Court was established, with limited jurisdiction, to hear legitimate core bankruptcy proceedings filed by legitimate debtors, with additional "related to" jurisdiction, all of which is sorely lacking here.

13.      This case should go no further until the Court decides this renewed motion for remand.

14.     For purposes of judicial economy, the Court should issue an order under 11 U.S.C. §105(a) suspending the deadlines and hearings for the Motion to Dismiss until after a decision is made on this renewed motion for remand.

WHEREFORE, Plaintiffs request that the Court grant this motion by: (a) continuing to withhold a decision on the Motion for Summary Judgment filed by Russell Drazin (ECF No. 7); (b) suspending the hearing and response deadline for the Motion to Dismiss (ECF No. 44); (c) remanding these consolidated cases to the D.C. Superior Court; and (d) requiring the Defendants to pay the Plaintiffs for the attorney's fees that they have incurred and will incur as a result of the Defendants' improper removal of the cases. The Plaintiffs request that they be permitted to submit an application in support of an award of attorneys' fees within a reasonable time period after the entry of the remand order.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 25, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ajs@gdllaw.com | ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and 423 Kennedy St. Holdings, LLC*

6

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of March, 2025, a true copy of the foregoing

Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and

Related Response Deadlines was served electronically and a Notice of Electronic filing should

be sent to all persons receiving notices via the Court's CM/ECF system.


/s/ James D. Sadowski
James D. Sadowski

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. E Transcript Meeting of Creditors (Part 1) JPK New Co1 of 1284 Page 1 of 42

1

<pre>
 1                      UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF COLUMBIA
 2
     In Re:                         .  Case No. 24-00262-ELG
 3                                  .  Chapter 11
     JPK NEWCO LLC,                 .
 4                                  .  Washington, D.C.
                   Debtor.          .  October 29, 2024
 5   . . . . . . . . . . . . . . .  .

 6    CONTINUED MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF
                          THE BANKRUTPCY CODE
 7                 BEFORE KRISTEN S. EUSTIS, ESQ.
                  OFFICE OF THE UNITED STATES TRUSTEE
 8
     APPEARANCES:
 9
     For the Debtor:          Wolff & Orenstein, LLC
10                            By: JEFFREY M. ORENSTEIN, ESQ.
                              15245 Shady Grove Road
11                            Suite 465
                              Rockville, Maryland 20852
12
     For Office of the U.S.   U.S. Department of Justice
13   Trustee:                 By: KRISTEN S. EUSTIS, ESQ.
                              1725 Duke Street
14                            Suite 650
                              Alexandria, Virginia 22314
15
     For Subchapter V         Offit Kurman, P.A.
16   Trustee:                 By: STEPHEN A. METZ, ESQ.
                              7501 Wisconsin Avenue
17                            Suite 1000W
                              Bethesda, Maryland 20814
18
     For Shaheen Sariri:      Hirschler Fleischer
19                            By: KRISTEN E. BURGERS, ESQ.
                              1676 International Drive
20                            Suite 1350
                              Tysons, Virginia 22102
21
     For 423 Kennedy St       Greenstein DeLorme & Luchs, P.C.
22   Holdings LLC and         By: JAMES D. SADOWSKI, ESQ.
     Developer RE1 LLC:       801 17th Street, Northwest
23                            Suite 1000
                              Washington, District of Columbia
24                            20006

25
</pre>



Case 25-00200-ELG Doc 46-1 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Transcript Meeting of Creditors (Part 1) Page 465 of 1284 Page 2 of 42

2

```
 1    Also Present:              Daniel Huertas
                                 Debtor representative
 2
      Proceedings recorded by electronic sound recording.
 3    Transcript produced by transcription service.

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 24-00262-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 18:06:59  Desc
Exhibit Ex. E Transcript All Meeting of Creditors (Part II)  Page 466 of 1284  Page 3 of 42

3

1          (Proceedings commenced at 10:02 a.m.)

2          MS. EUSTIS:  Good morning.  This is the continued 341

3   meeting of creditors in the case of JPK NewCo LLC, case number

4   24-262, pending in the United States Bankruptcy Court for the

5   District of Columbia.  My name's Kristen Eustis.  I'm an

6   attorney with the Department of Justice, and I represent the

7   United States Trustee for Region 4 in connection with this

8   case.  Today's October 29th, 2024, and it is approximately

9   10:02 a.m.

10          Counsel for the Debtor, can you please identify

11   yourself and your client for the record?

12          MR. ORENSTEIN:  Good morning.  Jeff Orenstein on

13   behalf of JPK NewCo, and with me this morning is Daniel

14   Huertas, principal.

15          MS. EUSTIS:  Thank you.  I can confirm for the record

16   that I have reviewed a copy of Mr. Huertas' identification, and

17   he is who he says he is.

18          Also on the line, Mr. Metz, can you please identify

19   yourself for the record?

20          MR. METZ:  Sure.  Good morning.  This is Steve Metz,

21   the subchapter V trustee.

22          MS. EUSTIS:  Thank you.

23          Mr. Sadowski.

24          Okay.  Ms. Burgers.

25          MS. BURGERS:  Good morning.  This is Kristen Burgers

Case 25-00200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 19:06:59   Desc
Exhibit Ex. Exhibit Transcript Meeting of Creditors (Part 1) 341 Page 467 of 1284 Page 4 of 42

4

1     on behalf of the petitioning creditors, Shaheen Sabiri.

2            THE COURT:  Okay.  And Jim Sadowski is also on the

3     line.

4            Anyone else on the line that I have not identified?

5            Okay.  Pardon.

6            MR. SADOWSKI:  I'm sorry.  Mr. Eustis, I'm sorry.  I

7     think I was on mute when I said who I was here for.  It's Jim

8     Sadowski for Developer RE1 LLC and 423 Kennedy St Holdings LLC.

9     Sorry about that.

10           MS. EUSTIS:  That's okay.  Thank you.

11           Mr. Huertas.  So first, I will ask questions of you,

12    and then I will allow creditors and parties-in-interest the

13    opportunity to question you about the Debtor's financial

14    affairs.  For those that will be asking questions, please

15    identify yourselves before asking questions so that the Court

16    reporter, if a transcript is requested of this 341 meeting,

17    will be able to identify your voice.

18           So unless you have any questions, Mr. Huertas, we can

19    go ahead and get started.

20           MR. HUERTAS:  Let's get started.

21           MS. EUSTIS:  Okay.

22        (Debtor representative sworn.)

23           MS. EUSTIS:  Please state your name and address.

24           MR. HUERTAS:  Daniel Huertas.  909 Chinquapin Road,

25    McLean, Virginia, 22102.

Case 25-10200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. Ex Transcript All Meeting of Creditors (Part II) Page 468 of 1284   Page 5 of 42

5

1          MS. EUSTIS:  Thank you.  And did you attend the

2     initial debtor interview in connection with this case?

3          MR. HUERTAS:  Yes.

4          MS. EUSTIS:  And to the best of your knowledge and

5     belief, have all of the schedules and the statement of

6     financial affairs been filed in this case?

7          MR. HUERTAS:  Yes.

8          MS. EUSTIS:  And to the best of your knowledge and

9     belief, is the information that's contained in the schedules

10    and statement of financial affairs true and correct?

11         MR. HUERTAS:  Yes.

12         MS. EUSTIS:  And did you review and sign the

13    statements and schedules before they were filed with the court?

14         MR. HUERTAS:  I did.  The one thing I want to point

15    out, there was a small typo that I -- I found, but I don't know

16    if this is the right time to do it or -- but I found a small

17    typo in the form.

18         MS. EUSTIS:  Sure.  What was the typographical error?

19         MR. HUERTAS:  It's on page 12 of my attachment of the

20    schedules.  We have an extra five on the junior lien.

21         MR. ORENSTEIN:  It's the continuation sheet for the

22    schedule A/B.

23         MS. EUSTIS:  Okay.  And Mr. Orenstein, what was that

24    address?

25         MR. ORENSTEIN:  And it's the address -- it's the

Case 25-00200-ELG  Doc 46-21  Filed 09/25/25  Entered 09/25/25 18:06:59  Desc
Exhibit Ex. Exhibit A - Transcript of Meeting of Creditors (Part II) Page 469 of 1284 Page 6 of 42

6

1    address of First Street, Northwest.  It's listed as 55501 First

2    Street, Northwest.  I believe it should be 5501 First Street,

3    Northwest.

4              MS. EUSTIS:  Okay.  Thank you.

5              And thank you, Mr. Huertas, for that.

6              Mr. Huertas, has the Debtor closed its pre-petition

7    bank accounts?

8              MR. HUERTAS:  Yes.

9              MS. EUSTIS:  And where did it maintain its pre-

10   petition bank account?

11             MR. HUERTAS:  Previously was in United Bank.

12             MS. EUSTIS:  Okay.  And was this the Debtor's only

13   account?

14             MR. HUERTAS:  Correct.  Yes.

15             MS. EUSTIS:  Okay.  And has the Debtor opened a

16   debtor-in-possession account?

17             MR. HUERTAS:  Have I opened a -- a -- the new account

18   as requested by the -- by the request?  Yes, I did as what I

19   was supposed to do.

20             MS. EUSTIS:  Okay.  And where is that account located,

21   the debtor-in-possession account?

22             MR. HUERTAS:  I believe it's the same bank, United

23   Bank, but it has a -- it's a different account number.

24             MS. EUSTIS:  Okay.  Mr. Orenstein, was a form 1 signed

25   by the bank?  I didn't see it.

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:26:59 Desc
Exhibit Ex. Trans - Transcript of Meeting of Creditors (Part I) Page 7 of 42

7

1          MR. ORENSTEIN:  It was.

2          MS. EUSTIS:  Okay.

3          MR. ORENSTEIN:  It was.  It was provided some time

4     ago.

5          MS. EUSTIS:  Okay.  Thank you.

6          Mr. Huertas, what is the nature of the Debtor's

7     business?  What does the Debtor do?

8          MR. HUERTAS:  The Debtor business, are you -- are you

9     referring to JPK NewCo?

10          MS. EUSTIS:  Yes.

11          MR. HUERTAS:  JPK NewCo is it's a holding company of

12     the -- some troubled assets that we had placed in there under

13     advice of counsel.

14          MS. EUSTIS:  So you said it's a holding company of

15     troubled assets that was formed on advice of counsel?  Is that

16     what you -- I just want to make sure I heard you correctly.

17          MR. HUERTAS:  Correct.  It's a holding company.

18     Holding two troubled assets that we have.

19          MS. EUSTIS:  Okay.  Where was the business formed?

20          MR. HUERTAS:  I believe the business was formed in

21     Virginia.

22          MS. EUSTIS:  Okay.  In what year?

23          MR. HUERTAS:  This year.

24          MS. EUSTIS:  2024?

25          MR. HUERTAS:  Correct.

```
 1              MS. EUSTIS:  Okay.  And you said it was formed to hold

 2    these two troubled assets?

 3              MR. HUERTAS:  Correct.

 4              MS. EUSTIS:  And who previously held these two

 5    troubled assets?

 6              MR. HUERTAS:  One was held by WCP Fund I LLC.  And the

 7    different one was held by SF NU, LLC.

 8              MR. ORENSTEIN:  Kristen, just to clarify, it was

 9    formed in the District of Columbia, not in Virginia.

10              MS. EUSTIS:  Okay.  Thank you, Mr. Orenstein.

11              MR. ORENSTEIN:  Thank you.  The principal office is in

12    Virginia, but it's a D.C. entity.

13              MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14    NewCo engaged in any other business activities?

15              MR. HUERTAS:  Not at this time.

16              MS. EUSTIS:  So at the time that it was formed, there

17    was no other ongoing business operations of JPK NewCo?

18              MR. HUERTAS:  Correct.

19              MS. EUSTIS:  And who is Sam Sariri?

20              MR. HUERTAS:  Shaheen Sariri.

21              MS. EUSTIS:  Okay.

22              MR. HUERTAS:  Shaheen Sariri is a creditor of JPK

23    NewCo.

24              MS. EUSTIS:  And he loaned JPK NewCo Money?

25              MR. HUERTAS:  Yes.
```

Case 25-00206-ELG Doc 46-21 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. That Script All Meeting of Creditors (Part II) Page 472 of 1284 Page 9 of 42

9

1     MS. EUSTIS:  And how much did Mr. Sariri loan to JPK

2     NewCo?

3          MR. HUERTAS:  $50,000.

4          MS. EUSTIS:  And what was that $50,000 used for by

5     JPK?

6          MR. HUERTAS:  The $50,000 was utilized to fund the

7     cost associated with the litigation.  And we funded a loan to a

8     third-party.

9          MS. EUSTIS:  And who was the third-party?

10          MR. HUERTAS:  The third-party is Energy Morocco LLC.

11          MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,

12     have a prior relationship with Mr. Sariri?

13          MR. HUERTAS:  Yes.

14          MS. EUSTIS:  And what was that relationship?

15          MR. HUERTAS:  A business relationship.

16          MS. EUSTIS:  How long had you previously known him

17     for?

18          MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been

19     a while.  Probably north of fourteen years, fifteen years.

20          MS. EUSTIS:  Would you consider Mr. Sariri a friend of

21     yours personally?

22          MR. HUERTAS:  Yes.

23          MS. EUSTIS:  And your counsel indicated that the

24     principal address of JPK is in Virginia.  What is that address?

25          MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

Case 25-10200-ELG Doc 46-1 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docketing Cred (Part-1) Page 473 of 1284 Page 10 of 42

10

```
1    McLean, Virginia 22102.
2            MS. EUSTIS:  And do any other businesses operate out
3    of that address?
4            MR. HUERTAS:  Yes.
5            MS. EUSTIS:  What businesses?
6            MR. HUERTAS:  DP Capital LLC and its affiliates.
7            MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --
8            MR. HUERTAS:  No.
9            MS. EUSTIS:  Okay.  Are there any other --
10           MR. HUERTAS:  The answer was no rent.
11           MS. EUSTIS:  I'm sorry.  Go ahead.
12           MR. HUERTAS:  Yeah.  The answer was no, no rent.
13           MS. EUSTIS:  Okay.  Are there any other locations
14   affiliated or associated with JPK NewCo?
15           MS. EUSTIS:  No.
16           MS. EUSTIS:  And just to be clear, JPK NewCo does not
17   own the space out of which it operates; is that correct?
18           MR. HUERTAS:  That is correct.
19           MS. EUSTIS:  Okay.  So there's no rental obligations
20   at all?
21           MR. HUERTAS:  That's correct.
22           MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?
23           MR. HUERTAS:  No employees.
24           MS. EUSTIS:  Are there day-to-day operations of JPK
25   NewCo?
```

Case 25-00200-ELG Doc 46-1 Filed 09/25/25 Entered 09/25/25 19:06:59 Desc
Exhibit Ex. 1 - Transcript of Docket Entries (Part-I) PK-474 of 1284 Page 11 of 42

11

1           MR. HUERTAS:  No.

2           MS. EUSTIS:  Okay.  Who maintains the books and

3     records for JPK NewCo?

4           MR. HUERTAS:  Can you please repeat the question?

5           MS. EUSTIS:  Who maintains the books and records for

6     JPK NewCo?

7           MR. HUERTAS:  DP Capital LLC.

8           MS. EUSTIS:  Okay.  Is there any individual at DP

9     Capital LLC that is in charge of maintaining the books and

10    records of the Debtor?

11          MR. HUERTAS:  Yes.

12          MS. EUSTIS:  And who would that be?

13          MR. HUERTAS:  Yes.  Christina with an H.  Christina.

14          MS. EUSTIS:  Um-hum.

15          MR. HUERTAS:  Araujo, A-R-A-U-J-O.

16          MS. EUSTIS:  Great.  Thank you for spelling that for

17    me.

18          MR. HUERTAS:  Sure.

19          MS. EUSTIS:  Okay.  Are the owners of the Debtor still

20    SF NU, LLC and WCP Fund I LLC?

21          MR. HUERTAS:  Yes.

22          MS. EUSTIS:  Okay.  And do you recall what the split

23    of ownership is between WCP Fund I and SF NU?

24          MR. HUERTAS:  I do not recall.  I wonder if I can ask

25    my counsel to see if he has that.  I don't recall the split.

Case 25-10200-ELG Doc 421 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript of Docket Entries (Part-II) PK New 475 of 1284 Page 12 of 42

12

1          MS. EUSTIS:  Okay.  That's okay.

2          MR. HUERTAS:  (Unintelligible) --

3          MR. ORENSTEIN:  I believe it's -- I believe it's in

4   the statement of financial affairs.

5          MS. EUSTIS:  It is, Mr. Orenstein.  That's fine.  If

6   he doesn't recall, that's fine.  I don't need the split.

7          Mr. Huertas, do you know who the owners of SF NU, LLC

8   are?

9          MR. HUERTAS:  No.

10          MS. EUSTIS:  Do you have any ownership interest in SF

11   NU, LLC?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14   know who the members of this entity are?

15          MR. HUERTAS:  Yes, I know who the members are.

16          MS. EUSTIS:  And who are they?

17          MR. HUERTAS:  There are several members because it's a

18   fund in excess of thirty different LLCs or -- or individuals.

19   I don't have all of those right in my -- readily available, but

20   there is several members of the fund.

21          MS. EUSTIS:  Okay.  And do you have any interests

22   personally in WCP Fund I, LLC?

23          MR. HUERTAS:  Yes.

24          MS. EUSTIS:  Okay.  Okay.  So going back to JPK NewCo,

25   are there any other officers or directors other than SF NU, LLC

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Post-I) JPK New LLC 128 Page 13 of 42

13

1     and WCP Fund I LLC?

2              MR. HUERTAS:  No.

3              MS. EUSTIS:  Have there been any changes in the

4     ownership of JPK in the last year?

5              MR. HUERTAS:  No.

6              MS. EUSTIS:  Does anyone receive any compensation from

7     JPK NewCo LLC?

8              MR. HUERTAS:  No.

9              MS. EUSTIS:  Does JPK have an interest in any other

10    business entity?

11             MR. HUERTAS:  No.

12             MS. EUSTIS:  Has any individual or entity guaranteed

13    any portion of the Debtor's debts?

14             MR. HUERTAS:  Can you please repeat the question?

15             MS. EUSTIS:  Sure.  Are there any individuals or

16    entities that have guaranteed any portion of the Debtor's

17    business debts?

18             MR. HUERTAS:  No.

19             MS. EUSTIS:  Does the Debtor utilize an accountant?

20             MR. HUERTAS:  No.

21             MS. EUSTIS:  Okay.  And since the Debtor was formed

22    this year, there have been no obligations to file state or

23    federal tax returns; is that correct?

24             MR. HUERTAS:  That's correct.  Yeah.  It was done this

25    year, so we haven't had any obligation to file tax returns or

Case 25-00200-ELG Doc 46-1 Filed 09/25/25 Entered 09/25/25 18:26:59 Desc
Exhibit Ex. 1 - Transcript of Docket Entry Creditor (Part-II) PK Page 477 of 1284 Page 14 of 42

14

1   any of that sort.

2           MS. EUSTIS:  Okay.  Other than Mr. Sariri, are there

3   any other creditors of JPK?

4           MR. HUERTAS:  I listed, besides Mr. Sariri, the

5   disputed litigation from 423 Kennedy St Holdings LLC and

6   Developer RE1 LLC as potential creditors --

7           MS. EUSTIS:  Okay.

8           MR. HUERTAS:  -- due to the litigation.

9           MS. EUSTIS:  And is there the potential that there

10  could be monetary amounts due and owing to Developer RE1 and

11  Kennedy St in connection with that litigation?

12          MR. HUERTAS:  Yes, there is a potential.  I don't -- I

13  don't think I owe them anything, but there's a potential for

14  the litigation.

15          MS. EUSTIS:  Okay.  But other than Developer RE1,

16  Kennedy St, and Sariri, there are no other creditors of JPK?

17          MR. HUERTAS:  That's correct.

18          MS. EUSTIS:  Has the Debtor loaned any money to any of

19  its owners, officers, or directors within the last year?

20          MR. HUERTAS:  No.

21          MS. EUSTIS:  Has JPK repaid any loan to any of its

22  owners, officers, or directors within the last year?

23          MR. HUERTAS:  No.

24          MS. EUSTIS:  Have any of its owners, officers,

25  directors loaned any money to the Debtor within the past year?

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-I) PK Page 478 of 1284 Page 15 of 42

15

```
 1              MR. HUERTAS:  No.

 2              MS. EUSTIS:  So other than the relationship that you

 3    described with Mr. Sariri, does Mr. Sariri have any

 4    relationship to SF NU or WCP and its members that you're aware

 5    of?

 6              MR. HUERTAS:  No, no.

 7              MS. EUSTIS:  Okay.  And Mr. Sariri is not a relative

 8    of yours; is that correct?

 9              MR. HUERTAS:  That's correct.

10              MS. EUSTIS:  Has JPK NewCo sold or transferred any

11    property within the last year?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  Have there been any distributions paid by

14    JPK to anyone within the last year?

15              MR. HUERTAS:  No.

16              MS. EUSTIS:  And do Mr. Sariri, Developer RE1, or

17    Kennedy St have any liens on any of JPK's assets?

18              MR. HUERTAS:  No.

19              MS. EUSTIS:  And what are JPK's assets?

20              MR. HUERTAS:  JPK's assets are the three notes that it

21    holds today.

22              MS. EUSTIS:  So it holds three notes.

23              MR. HUERTAS:  That is correct.

24              MS. EUSTIS:  Can you describe those notes?

25              MR. HUERTAS:  The three notes are Energy Morocco LLC.
```

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) PKF Page 479 of 1284 Page 16 of 42

16

```
 1     Do you need an amount?

 2              MS. EUSTIS:  Yes, please.

 3              MR. HUERTAS:  $26,000.  There's a junior lien on 5501

 4     First Street, Northwest, Washington, D.C., for 711,741.83.  And

 5     there's one more junior lien on 419-423 Kennedy Street,

 6     Northwest, Washington, D.C., for $1,678,387.

 7              MS. EUSTIS:  Okay.  Thank you.  And is Energy Morocco

 8     current on its payments to JPK?

 9              MR. HUERTAS:  Not currently.

10              MS. EUSTIS:  Are any payments being made on the junior

11     liens?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  Have any payments been made by Energy

14     Morocco since the loan was made to it?

15              MR. HUERTAS:  Not.

16              MS. EUSTIS:  Were any payments --

17              MR. ORENSTEIN:  Wait, so the Energy Morocco -- oh, I'm

18     sorry.  The Energy Morocco loan is a note that balloons in

19     December.  And the two junior liens that he described, as you

20     know, that's the subject of litigation that's presently stayed.

21              MS. EUSTIS:  Right.  So Mr. Huertas, my next question

22     was were any payments due under the note to Energy Morocco?

23              MR. HUERTAS:  Were any payments due from Energy

24     Morocco?

25              MS. EUSTIS:  Yes.
```

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Post-I) PK - Page 480 of 1284 Page 17 of 42

17

```
1              MR. HUERTAS:  Yes, as form of a loan.

2              MS. EUSTIS:  Okay.  So Energy Morocco is in default

3    under the note?

4              MR. HUERTAS:  Under the note as written, yes.

5              MS. EUSTIS:  Okay.  Since filing for bankruptcy, is

6    the Debtor current with all of its post-petition obligations?

7              MR. HUERTAS:  Can I ask counsel to help answer the

8    question?

9              MS. EUSTIS:  No.  I need to know if Energy Morocco --

10   or I'm sorry, not Energy Morocco.  I'm sorry.  JPK NewCo is

11   current on its post-petition obligations.

12             MR. HUERTAS:  I believe it is.

13             MS. EUSTIS:  What are JPK's post-petition obligations?

14   What are its operating costs?

15             MR. HUERTAS:  Sorry.  Can you please repeat the

16   question?  There was some noise in the background.

17             MS. EUSTIS:  Sure.  And if you are not me or Mr.

18   Huertas, can you please mute your line?  Thank you.

19             Yes.  So what are JPK NewCo's operating expenses?

20             MR. HUERTAS:  Currently, zero.

21             MS. EUSTIS:  Has the Debtor had to borrow any money

22   post-petition?

23             MR. HUERTAS:  Sorry.  Can you please repeat the

24   question?

25             MS. EUSTIS:  Sure.  Has the Debtor had to borrow any
```

Case 25-10200-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 19:20:59  Desc
Exhibit Ex. 1 - Transcript (Docket Entries Post-II) PK - Page 481 of 1284  Page 18 of 42

18

1  money since filing for bankruptcy?

2          MR. HUERTAS:  No.  Outside of what we have, no.  We

3  haven't borrowed anything else.

4          MS. EUSTIS:  Okay.  And you indicated that there are

5  no operating expenses currently.  Have there ever been any

6  operating expenses for JPK?

7          MR. HUERTAS:  No.  No.

8          MS. EUSTIS:  Do you anticipate that there will be any

9  operating expenses for JPK?

10         MR. HUERTAS:  Not at this time.

11         MS. EUSTIS:  Okay.  So Energy Morocco, there was a

12 loan made to it, you indicated, in the amount of $26,000; is

13 that correct?

14         MR. HUERTAS:  That's correct.

15         MS. EUSTIS:  What is Energy Morocco?

16         MR. HUERTAS:  Energy Morocco is -- is a company -- is

17 in the business of renovating real estate assets.

18         MS. EUSTIS:  And have you or any of the entities that

19 you have an interest in ever loaned money to Energy Morocco

20 before?

21         MR. HUERTAS:  Yes.

22         MS. EUSTIS:  And what entities have made loans to

23 Energy Morocco before?

24         MR. HUERTAS:  WCP Fund I.

25         MS. EUSTIS:  And what were those loans in connection

Case 25-10200-ELG   Doc 41   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II)   Page 482 of 1284   Page 19 of 42

19

1   with?

2          MR. HUERTAS:  I don't have that ready available.  We

3   had made similar loans to Energy Morocco in the past.

4          MS. EUSTIS:  Okay.  Do you recall what this loan would

5   be used for, the $26,000 loan?

6          MR. HUERTAS:  Renovation expenses.

7          MS. EUSTIS:  Associated with what project?

8          MR. HUERTAS:  Several projects.  It wasn't just

9   associated with one single project.

10          MS. EUSTIS:  Okay.  And do you know who the owners of

11   Energy Morocco are or the members?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  Mr. Huertas, did you discuss the filing

14   of an involuntary petition with Mr. Sariri?

15          MR. HUERTAS:  No.

16          MS. EUSTIS:  Did you discuss why JPK NewCo needed a

17   loan from Mr. Sariri with Mr. Sariri?

18          MR. HUERTAS:  Did I discuss why I needed the loan?

19          MS. EUSTIS:  Yes.

20          MR. HUERTAS:  I needed -- let me recall.  Very

21   briefly, I just requested a loan for $50,000.

22          MS. EUSTIS:  And you didn't have any -- did you have

23   any other discussions with Mr. Sariri regarding the loan?

24          MR. HUERTAS:  No.

25          MS. EUSTIS:  Did you negotiate the terms of the loan

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript - All Docket Entries (Part-I)PK NewCo LLC Page 20 of 42

20

1    with Mr. Sariri?

2            MR. HUERTAS:  In our initial conversation.

3            MS. EUSTIS:  In your initial conversation, you did,

4    or --

5            MR. HUERTAS:  Yeah.  We -- we discuss -- yeah, we --

6    in our initial -- yeah, I mean, yes, we discussed the terms of

7    the loan.

8            MS. EUSTIS:  Did anyone else discuss the terms of the

9    loan with Mr. Sariri on --

10           MR. HUERTAS:  No.

11           MS. EUSTIS:  -- JPK NewCo's behalf?

12           MR. HUERTAS:  No.  And was JPK NewCo represented by

13   counsel in connection with the negotiation of the loan with Mr.

14   Sariri?

15           MR. HUERTAS:  No.

16           MS. EUSTIS:  Was Mr. Sariri represented by counsel

17   that you're aware of in connection with the loan?

18           MR. HUERTAS:  Not that I'm aware of.

19           MS. EUSTIS:  Who drafted the note with Mr. Sariri?

20           MR. HUERTAS:  I believe was one of my counsels, one of

21   my legal counsels.

22           MS. EUSTIS:  One of your attorneys?  One of JPK's

23   attorneys?

24           MR. HUERTAS:  Yes.

25           MS. EUSTIS:  I just want to clarify who you mean by

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:06:59 Desc
Exhibit Ex. 1 - Trans. of All Docket Entries (Part-I) Page 484 of 1284 Page 21 of 42

21

1    "you" -- or "my".

2           MR. HUERTAS:  Right.  It has been a while.  I -- I

3    believe it was one of the JPK -- it -- I mean, it was one of my

4    counsels, not JPK counsels.  I don't -- I don't recall exactly

5    how -- how we went about it.

6           MS. EUSTIS:  Okay.  Would it have been Mr. VerStandig?

7           MR. HUERTAS:  I don't recall.

8           MS. EUSTIS:  Were there any other attorneys other than

9    Mr. VerStandig that were we're working with you at this time or

10   JPK at this time?

11          MR. HUERTAS:  Yeah, there were other people I was

12   working at that time.  There's some that I don't -- I don't

13   recall exactly.  I don't recall exactly who wrote it.

14          MS. EUSTIS:  Do you recall the names of the attorneys

15   that were working with JPK and you on this at the time?

16          MR. HUERTAS:  I don't think they were JPK attorneys.

17   That's the reason that I don't recall exactly who it was.

18          MS. EUSTIS:  Okay.  What about with Energy Morocco?

19   Who drafted the note between -- the note on behalf of Energy

20   Morocco?  Was that drafted by folks on behalf of JPK, or was

21   that drafted by Energy Morocco representatives?

22          MR. HUERTAS:  I -- I don't recall exactly how we wrote

23   that note either.  I think it was internally, we -- we had one

24   of our forms.  So I think I did it myself.  I don't recall

25   exactly how I did it.  I have to go back and see how -- how it



Case 25-10200-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 19:20:59  Desc
Exhibit Ex. 1 - Transcript Excerpt - Docket Entered (Part-I) PK Page 485 of 1284  Page 22 of 42

22

1    was done.

2            MS. EUSTIS:  Okay.  Part of the involuntary being

3    filed against JPK, did Mr. Sariri either on his own or through

4    counsel make demand for payment on JPK?

5            MR. HUERTAS:  Yes, make demand for payments.

6            MS. EUSTIS:  Mr. Sariri made demand for payment?

7            MR. HUERTAS:  Correct.  Yeah.

8            MS. EUSTIS:  And if you could provide to your counsel

9    to provide to me any written demand for payment that was made

10   by Mr. Sariri, I would appreciate that.

11           MR. HUERTAS:  I don't think I have anything in

12   writing.  It was a phone conversation.  I told Mr. Sariri that

13   based on the nature of where we stand with the notes, we would

14   not be able to make payments.  And we told him that we were not

15   able to -- to make the financial obligation at this -- at this

16   time.

17           MS. EUSTIS:  Okay.  And the note was -- the money was

18   loaned by Mr. Sariri only almost a month before the involuntary

19   was filed; is that accurate?

20           MR. HUERTAS:  Yes, that is correct.

21           MS. EUSTIS:  Okay.  Okay.  Mr. Metz, do you have any

22   questions for Mr. Huertas?

23           MR. METZ:  I do not.  Thank you.

24           MS. EUSTIS:  Thank you.

25           Mr. Sadowski.

Case 25-10200-ELG Doc 61 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) Page 486 of 1284 Page 23 of 42

23

```
 1              MR. SADOWSKI:  Yes, I do.  Jim Sadowski, counsel for

 2     Developer RE1  and 423 Kennedy St Holdings LLC.

 3              Good morning, Mr. Huertas.  To follow up on some of

 4     the questions that Ms. Eustis asked, you mentioned that initial

 5     conversation with Mr. Sariri about this promissory note or

 6     loan.  What date did that happen, that initial conversations?

 7              MR. HUERTAS:  I don't recall.

 8              MR. SADOWSKI:  Well, was it six months ago?  Was it

 9     two months ago?  What's your best range of when that happened?

10              MR. HUERTAS:  Before I received the funds.  I don't

11     recall exactly when.  I'm sorry.  Just before we received the

12     funds, obviously.

13              MR. SADOWSKI:  Okay.  And when did you receive the

14     funds?

15              MR. HUERTAS:  I -- I got to go look.  I don't have an

16     exact date.

17              MR. SADOWSKI:  Okay.  And how did you receive the

18     funds?

19              MR. HUERTAS:  I don't recall.  I'm sorry.

20              MR. SADOWSKI:  Was it a check?  Was it a wire

21     transfer?  Was it something else?

22              MR. HUERTAS:  I think it was a wire.  I'm not a

23     hundred-percent sure.

24              MR. SADOWSKI:  Okay.  Now, the bank account with

25     United Bank, when was that account opened?
```

Case 24-10021-ELG Doc 621 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-I) PK Page 487 of 1284 Page 24 of 42

24

```
 1              MR. HUERTAS:  In the earlier part of this year.  I
 2    don't have a date.
 3              MR. SADOWSKI:  Okay.  But you have bank statements,
 4    right, that would show when that account was opened?
 5              MR. HUERTAS:  I'm sure we have bank statements.
 6              MR. SADOWSKI:  Okay.  And what money went in and out
 7    of that account during the period of time that JP (sic) NewCo
 8    had activity in that account?
 9              MR. HUERTAS:  It was related to this loan and the
10    other funds was related to this litigation.
11              MR. SADOWSKI:  Okay.  Is United Bank the same bank
12    that's used by DP Capital?
13              MR. HUERTAS:  Same bank.
14              MR. SADOWSKI:  Same bank?  And the same bank that's
15    used by WCP Fund?
16              MR. HUERTAS:  Same bank.  Different account numbers.
17              MR. SADOWSKI:  Okay.  Whose idea was it to create JPK
18    NewCo?
19              MR. HUERTAS:  I believe I've already answered the
20    question related to JPK NewCo.
21              MR. SADOWSKI:  It was your lawyer's idea then?
22              MR. HUERTAS:  JPK NewCo was created under advice of
23    counsel.
24              MR. SADOWSKI:  Okay.  So it wasn't your idea to do
25    that, right?
```

Case 25-00200-ELG   Doc 46-1   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. 1 - Transcript of Docket Entry (Part-I) JPK New CO LLC 128   Page 25 of 42

25

1          MR. HUERTAS:  I have already answered that question.

2          MR. SADOWSKI:  Is that a no?

3          MR. HUERTAS:  JPK NewCo was created under advice of

4     counsel.

5          MR. SADOWSKI:  Okay.  So it wasn't your idea, correct?

6          MR. HUERTAS:  JPK NewCo was created under advice of

7     counsel.

8          MR. SADOWSKI:  All right.  When was that advice given?

9     What time frame?

10         MR. HUERTAS:  Sometime late last year, early this

11    year.

12         MR. SADOWSKI:  And that advice that was given, was

13    that advice given by Mr. VerStandig?

14         MR. HUERTAS:  JPK NewCo was created under the advice

15    of counsel.

16         MR. SADOWSKI:  All right.  Which counsel?

17         MR. ORENSTEIN:  Daniel, you can answer that question.

18    You cannot tell him what was said, but you can tell him who

19    gave you the advice.

20         MR. HUERTAS:  Mr. Marc -- Mac VerStandig.

21         MR. SADOWSKI:  Okay.  Was there any other attorney

22    besides Mr. VerStandig involved in that advice?

23         MR. HUERTAS:  No.

24         MR. SADOWSKI:  Okay.  Who selected the name JP (sic)

25    NewCo?

Case 25-10200-ELG Doc 61 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Post-II) PK Page 489 of 1284 Page 26 of 42

26

1        MR. HUERTAS:  Sorry.

2        MR. SADOWSKI:  So who came up with the name, JPK

3   NewCo?  JPK, does that stand for someone's initials, or why did

4   you use JPK NewCo?

5        MR. HUERTAS:  Yeah, it's, like, initials

6        MR. SADOWSKI:  Okay.  And whose initials are JPK?

7        MR. HUERTAS:  The initial JPK is Joseph P. Kennedy.

8        MR. SADOWSKI:  Okay.  All right.  All right.  Is that

9   just a political person that you decided to use his initials,

10   as opposed to, like, JPK or RFK?

11        MR. HUERTAS:  I just like the initials.

12        MR. SADOWSKI:  Okay.  And the preparation of the note

13   with Mr. Sariri, I believe you said you weren't sure who

14   prepared that.  Did JPK NewCo get a bill for the preparation of

15   that note from any attorney?

16        MR. HUERTAS:  No.

17        MS. EUSTIS:  How about the preparation of the note

18   with Energy Morocco?  Did JPK get the legal bill for

19   preparation of that note?

20        MR. HUERTAS:  I don't think so.  I don't know.  It

21   didn't.

22        MR. SADOWSKI:  Has JPK incurred any legal expenses

23   before it filed for bankruptcy?

24        MR. ORENSTEIN:  And just as a correction.  People keep

25   saying before it filed bankruptcy.  It's involuntary.

Case 25-00200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-I) Page 490 of 1284 Page 27 of 42

27

1          MR. SADOWSKI:  Sorry.  You're right.  Before the

2   involuntary petition was filed on July 3rd, had JPK incurred

3   any legal expenses?

4          MR. HUERTAS:  I don't recall nothing outside of this.

5          MR. SADOWSKI:  All right.  Who's paying the bills to

6   Mr. VerStandig related to any pre-petition services that he

7   gave JPK NewCo?

8          MR. HUERTAS:  Sorry.  Repeat the question.

9          MR. SADOWSKI:  Yeah.  Before July 3rd, 2023, that's

10   the petition date.  When I say pre-petition, that means before

11   July 3rd, 2024.  Sorry.  Who was paying the legal bills for Mr.

12   VerStandig to give advice about forming JPK NewCo?  Was that

13   being paid by WCP Fund, DP Capital, or somebody else?

14          MR. HUERTAS:  I don't recall exactly the entity, but

15   it's one of -- one of DP Capital affiliates, I'm sure.

16          MR. SADOWSKI:  Okay.  Now, was it ever discussed that

17   one reason to create JPK NewCo was to be able to put that

18   company into bankruptcy so that the litigation with my clients

19   could be removed to bankruptcy court?

20          MR. ORENSTEIN:  Objection.  That would be attorney-

21   client privilege if such a conversation took place.

22          MR. SADOWSKI:  Okay.  Mr. Huertas, you're not going to

23   answer that --

24          MR. ORENSTEIN:  I'm instructing him not to answer that

25   question.

Case 25-01002-EEG  Doc 46-1  Filed 09/25/25  Entered 09/25/25 18:06:59  Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-1) PKR Law 091  Page 28 of 42

28

1          MR. SADOWSKI:  Okay.  What were the business reasons

2     for forming JPK NewCo?

3          MR. HUERTAS:  JPK NewCo was formed because at a time

4     after the mediation process that we had, I think sometime late

5     last year, there were some negotiations around how to make

6     those liens and ourselves have an agreement.  And the only --

7     the best way to -- to make that agreement work was to take the

8     troubled assets into one entity, as we had a discussion related

9     to participation.  So the only way to do it, like I said, was

10    this way, and it was done under advice of counsel.

11         MR. SADOWSKI:  Okay.  Now, when did the mediation

12    happen between the defendants in the litigation with my

13    clients?  When did that mediation occur with JAMS and Judge

14    Levie?  Do you remember the dates?

15         MR. HUERTAS:  I don't remember the dates, but I -- I

16    think sometime late last year or (unintelligible) I -- I don't

17    exactly when, but it was -- it was cold.

18         MR. SADOWSKI:  Yeah.  Let me see if I can help you

19    with that, Daniel, because I know it was a while ago.  On my

20    calendar, on January 9th, I have a time entry -- I'm sorry, a

21    calendar entry for mediation of JAMS, January 9th, 2024.  Does

22    that refresh your recollection as to when the first mediation

23    session was held?

24         MR. HUERTAS:  I mean, you want me to -- you want me to

25    take your word for it, then I know it was early this year or

Case 24-10206-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) Page 492 of 1284 Page 29 of 42

29

```
1   sometime late last year.  I don't recall exactly.  It was a
2   while ago --
3          MR. SADOWSKI:  Yeah.
4          MR. HUERTAS:  -- like you said very well.  But it was
5   before JPK was formed.
6          MR. SADOWSKI:  Okay.  And when was the last mediation
7   session before Jams?  Do you remember that date?
8          MR. HUERTAS:  No, I don't have it.  I don't remember
9   the date.
10         MR. SADOWSKI:  Well, was it within a couple weeks of
11  the first session, or what's your recollection of that?
12         MR. HUERTAS:  I -- I don't recall.
13         MR. SADOWSKI:  Okay.  Do you know why the first
14  mediation session was continued to a second date in January?
15         MR. HUERTAS:  I mean, like I said, I -- I don't
16  recall.  It was a while ago.
17         MR. SADOWSKI:  Okay.
18         MR. HUERTAS:  I know that --
19         MR. SADOWSKI:  When did the -- okay.  When did the
20  mediation end?
21         MR. HUERTAS:  I don't understand your question.  When
22  did it end?
23         MR. SADOWSKI:  Well, my recollection from my calendars
24  and my time sheets and my bills that I sent to the client is
25  that there were two mediation sessions, one on January 9th, and
```

Case 24-10200-EG Doc 621 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. 1 - Trial Transcript All Docket Entries (Part II) PKF Page 493 of 1284 Page 30 of 42

30

1    the second one on January 25th.  And the mediation concluded on

2    January 25th.  Does that sound about right in terms of timing?

3         MR. HUERTAS:  Unfortunately, you'll need to go by the

4    date you are stating.  I don't want to use your dates.  For --

5    like I said, it was some time before either late last year or

6    early this year.  I don't recall exactly.

7         MR. SADOWSKI:  Okay.  What was the reason the

8    mediation ended?

9         MR. HUERTAS:  I don't recall.

10        MR. SADOWSKI:  Well, isn't that true, Mr. Huertas,

11   that you were the one who told the mediator -- or sorry, who

12   ended the mediation?

13        MR. HUERTAS:  I don't recall.

14        MR. SADOWSKI:  Okay.  What would help refresh your

15   recollection as to why the mediation ended?  Do you have any

16   business records?  Do you have any notes?

17        MR. HUERTAS:  I don't have any notes.

18        MR. SADOWSKI:  Okay.  Returning to the schedules that

19   were filed -- sorry.  Let's talk about SF NU, LLC.  Now, Ms.

20   Eustis asked you if you knew who the owners are, and you said

21   you don't know.  Well, who do you communicate with when you

22   want to communicate with SF NU, LLC?

23        MR. HUERTAS:  I communicate with Mr. Shrensky, Jason

24   Shrensky.

25        MR. SADOWSKI:  Could you spell his name, please, for

Case 24-10200-ELG Doc 421 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) Page 494 of 1284 Page 31 of 42

31

1    the record?

2            MR. HUERTAS:  Jason, J-A-S-O-N, Shrensky,

3    S-H-R-E-N-S-K-Y.

4            MR. SADOWSKI:  Okay.  Other than Mr. Shrensky, is

5    there anyone else that you communicate with at SF NU, LLC?

6            MR. HUERTAS:  No.

7            MS. EUSTIS:  Okay.  Why were the notes -- the two

8    notes that I think you've described it as distressed assets or

9    tainted assets, why were they transferred to SF NU, LLC?

10            MR. HUERTAS:  I don't think that's a question for me.

11    I -- I already answer the question related to -- to that so --

12            MR. SADOWSKI:  Oh, because I had a question for you.

13            MR. HUERTAS:  I'm (unintelligible) question.  Okay.

14            MR. SADOWSKI:  Because I have a question for you, Mr.

15    Huertas.

16            MR. HUERTAS:  Well, I can't hear you.  No one answered

17    a question for a different company.  I don't know.

18            MR. SADOWSKI:  Well, you know the answer to that

19    question, correct?

20            MR. HUERTAS:  I don't have an answer for you.

21            MR. SADOWSKI:  So you don't know why the notes were

22    transferred to SF NU, LLC?

23            MR. HUERTAS:  Hold on.  Repeat that again.

24            MR. SADOWSKI:  You don't know why the notes were

25    transferred to SF NU, LLC?

Case 24-10023-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Trial Transcript All Docket Entries (Part-II) PKF-405-LC128 Page 32 of 42

32

1          MR. HUERTAS:  Why the notes were transferred to SF NU,

2     LLC?  I don't -- I don't -- I don't understand your question.

3          MR. SADOWSKI:  Okay.  These notes that are being held

4     by JPK NewCo were originally held by SF NU, LLC, correct.

5          MR. HUERTAS:  One of them.  That's incorrect.

6          MR. SADOWSKI:  Okay.

7          MR. HUERTAS:  There's one of them.

8          MR. SADOWSKI:  All right.  Which one was currently

9     held by SF NU, LLC?

10          MR. HUERTAS:  I got to go look.  I don't have it

11     exactly, but I think it's the smaller -- the smaller one.

12          MR. SADOWSKI:  Okay.  So you think that -- well, I

13     guess I can just look at your continuation sheet.  So you think

14     that was the second -- where did I see that?

15          MR. ORENSTEIN:  The smaller one would be First Street.

16          MR. SADOWSKI:  Yeah.  Okay.  Yeah, I'm not real good,

17     Mr. Orenstein, with the street addresses.  I'm better with the

18     entity names, but okay.  So and the other one was -- what's the

19     other one, and why was that other one transferred from the

20     original holder to SF NU, LLC?

21          MR. HUERTAS:  I don't -- I don't understand question.

22     You're asking me why the other note was transferred to SF NU,

23     LLC?  That never happened.

24          MR. SADOWSKI:  Correct.  Correct.

25          MR. HUERTAS:  I don't understand your -- I -- I -- I

Case 24-10288-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:06:59 Desc
Exhibit Ex. 1 - Transcript All Docketing in Cred. (Part-II) Page 496 of 1284 Page 33 of 42

33

1   don't understand your question.

2        MR. SADOWSKI: Well, I'm trying to figure out what the

3   business purpose is for these notes getting transferred from

4   one entity to the next to the next. And the business purpose

5   that we were told in some of your filings and in your testimony

6   was that these were tainted assets, and there was some sort of

7   settlement agreement that might be created to hold these assets

8   and figure out a settlement if the assets were held by somebody

9   else. So I'm trying to figure out why was there a business

10  need to do that. No settlement agreement was reached, correct,

11  between --

12       MR. ORENSTEIN: Mr. Sadowski, I'm going to -- Mr.

13  Sadowski, I'm going to interrupt you for a moment, because I'm

14  not sure if you're confusing your own questions. You asked him

15  why the notes were transferred to SF NU. And for purposes of

16  the bankruptcy, he's already testified that WCP and SF NU

17  transferred the notes to JPK. So I'm not sure if you're mixing

18  up your question.

19       MR. SADOWSKI: Yeah, well, I'm trying to figure out

20  two pieces of that, Mr. Orenstein, and thanks for that because

21  maybe my questions aren't as great as I thought they should be.

22  I want to find out why they went from WCP Fund I LLC to SF NU,

23  and then why they then went from SF NU to JPK NewCo. There's

24  two steps there because that's where I'm headed with this.

25            So the first question is why transfer the notes out of



Case 24-10205-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. 1 - Trans. Tript All. Docket Entres (Part-II) PKT No. 497 of 1284 Page 34 of 42

34

1   WCP Fund I to SF NU, LLC to begin with.  And then the second

2   part of that question is why then transfer them again to JPK

3   NewCo.

4          MR. HUERTAS:  Okay.  So -- so the first question is

5   related to internal business practices.  That's probably not

6   the right forum for me to talk about WCP's or DP Capital

7   business practices.  How we do business.

8          The second question, I can't really answer your

9   question as far as how or why we transfer the note from the

10  fund to JPK NewCo.  And I said to you multiple times that it

11  was under the advice of counsel.

12         MR. SADOWSKI:  Okay.  So is there any other reason

13  other than the advice of counsel why the notes were transferred

14  to JPK NewCo?

15         MR. HUERTAS:  I already gave you an answer.

16         MR. SADOWSKI:  That was the only reason they were

17  transferred, because of advice of counsel?

18         MR. HUERTAS:  On advice of counsel, correct.

19         MR. SADOWSKI:  Okay.  One second just to look through

20  my notes.

21         Now, you mentioned that the WCP Fund I is comprised

22  of -- and I'm not trying to pin you down exactly to what you

23  said, but I wrote down thirty different LLCs and individuals

24  and that you have an interest in WCP Fund I.  What is the

25  extent of your interest in WCP Fund I?

Case 24-10206-ELG  Doc 461  Filed 09/02/25  Entered 09/02/25 19:06:59  Desc
Exhibit Ex. 1 - Transcript of Docketed 341 Creditors (Part-II) Page 498 of 1284  Page 35 of 42

35

1          MR. HUERTAS:  I'm a member of the fund.

2          MR. SADOWSKI:  Individually?  And what percentage do

3    you own?

4          MR. HUERTAS:  I own (unintelligible) percent.

5          MR. ORENSTEIN:  I'm going to -- I'm going to object to

6    this question.  I'm going to instruct him not to answer.  This

7    doesn't seem to have anything to do with the operations of JPK

8    or the issues in the JPK case.

9          It's your position that this is relevant with regard

10   to the motion to dismiss, which the United States Trustee has

11   filed.  We're in the process of scheduling -- in the process of

12   having a scheduling order entered that will allow for discovery

13   in this case.  And I think if you're going to ask questions

14   about WCP, it's appropriate for WCP to have its own counsel

15   present at that time to object to the extent that I think

16   it's -- to the extent that he thinks that it's necessary.  I

17   don't think this is appropriate for a 341 meeting.

18         MR. SADOWSKI:  Well, you didn't object before when he

19   gave that answer, Mr. Orenstein.  I'll ask a different

20   question.

21         Mr. Huertas, other than an individual interest in WCP

22   Fund I, do you have an individual interest in any of the LLCs

23   that make up WCP Fund I?

24         MR. ORENSTEIN:  I'm going to give the -- I'm going to

25   make the same objection.  For the reasons stated, I'm going to

Case 25-00200-ELG Doc 621 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Post-II) PKF Page 499 of 1284 Page 36 of 42

36

1   instruct him not to answer that.

2          MS. EUSTIS:  Mr. Sadowski, this is Kristen Eustis.  I

3   agree with Mr. Orenstein that Mr. Huertas would be entitled to

4   have his own personal counsel present for anything further with

5   respect to his personal interests in these entities.

6          MR. SADOWSKI:  Okay.  Got it.  Okay.  Objection's been

7   noted.  Thank you, Counsel.

8          Mr. Huertas, how did you arrive at the numbers that

9   were used on the schedules to come up with the $2.4 million?

10  Where did those amounts come from?

11         MR. HUERTAS:  Those numbers, I believe, were the

12  unpaid principal balance at the time that I -- that I filled

13  this out.

14         MR. SADOWSKI:  Okay.  So you have some accounting

15  somewhere that shows as of the date you prepared the schedules,

16  X dollars was owed under each of the lien -- of the notes?

17  Sorry.

18         MR. HUERTAS:  Well, that's a face amount.  That's

19  the -- that's the face amount of the current value.  That's

20  what I was asked.

21         MR. SADOWSKI:  Okay.

22         MS. EUSTIS:  You asked me something different.  I'm

23  just clarifying that when I completed the schedules, it was

24  based on what's the total face amount and the current value.

25         MR. SADOWSKI:  Okay.  So getting to Energy of (sic)

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:26:59 Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) PK New 500 of 1284 Page 37 of 42

37

1    Morocco LLC, was this $26,000 -- did that serve some other

2    purpose for Energy of (sic) Morocco LLC?  In other words, did

3    the Debtor use those funds -- I'm sorry.  Let me ask it a

4    different way.  Does Energy of (sic) Morocco LLC received draws

5    from DP Capital under various construction projects?

6            MR. HUERTAS:  I'm not going to answer that question.

7    It's related to a separate business, and I'll do it -- I'll do

8    it when my counsel is present for me to answer any other

9    questions related --

10           MR. SADOWSKI:  Okay.  Well, how about the --

11           MR. HUERTAS:  -- (unintelligible) DP Capital.

12           MR. HUERTAS:  How about this $26,000?  Why did Energy

13   of (sic) Morocco need that money at that time?

14           MR. HUERTAS:  They request additional funds for the

15   renovations, and we did a loan for that purpose.

16           MR. SADOWSKI:  And was JPK's business to be loaning

17   money to people for renovations?

18           MR. HUERTAS:  JPK business is again the holding

19   company and the holding company of loans -- of notes.

20           MR. SADOWSKI:  But it wasn't in the loaning business,

21   was it?

22           MR. HUERTAS:  Not before.

23           MR. SADOWSKI:  Okay.  How did JPK expect to pay Mr.

24   Sariri back the money that Mr. Sariri loaned JPK?

25           MR. HUERTAS:  Hopefully, some of these loans, we'll

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. 1 - Transcript of Docketed in Chief (Post-II)PK - Page 501 of 1284 Page 38 of 42

38

1    start paying.  And for the payments of the loans, either from

2    Energy Morocco or once the payments for 423 Kennedy and

3    Developer RE1 start happening, we will take care of the

4    creditors.

5         MR. SADOWSKI:  Okay.  And when did JPK expect the --

6         MR. HUERTAS:  (Unintelligible).

7         MR. SADOWSKI:  When did JPK expect that either of my

8    clients were going to start paying money on those loans?

9         MR. HUERTAS:  I don't know.  That's a great question

10   for you and your clients.

11        MR. SADOWSKI:  No, that's a question for you.  You

12   said that you expected -- you just said that you expected that

13   at some point you would pay Mr. Sariri back with money that you

14   got from Developer RE1 and 423 Kennedy.  So what led JPK NewCo

15   to believe that there was going to be money coming in from

16   those two loans in the next year?

17        MR. HUERTAS:  I don't know.  I think if there is

18   payments received -- you ask me a question how I'm -- how I

19   am -- how am I going to pay Mr. Sariri, and the answer to your

20   question was out of the payments that we'll receive in the

21   future, who knows when, related to the Energy Morocco, as well

22   as the junior liens that are in here.

23        MR. SADOWSKI:  All right.  Just one second, Ms.

24   Eustis.

25        All right.  That concludes my questions, Ms. Eustis.



Case 24-10090-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 18:20:59  Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Part-II) PK Page 501 of 1284  Page 39 of 42

39

1            Thank you, Mr. Huertas and Mr. Orenstein.

2            MS. EUSTIS:  Thank you.

3            Ms. Burgers, do you have any questions?

4            Okay.  Ms. Burgers had indicated at the beginning of

5       this meeting that she might have to drop off, so it appears

6       that she has.

7            Mr. Huertas, what is the Chapter 11 plan for JPK?

8       It's my understanding from your testimony that there's no

9       revenue currently coming in, that the notes that JPK holds are

10      no one is making payment on those notes.  So how does JPK

11      propose that it's going to exit bankruptcy?

12           MR. HUERTAS:  Sure.  Thank you for the question.  At

13      some point, our goal through the resolution of some of these

14      issues related to 423 Kennedy St and Developer RE1 LLC is

15      having the ability, once JPK NewCo is able to bring those funds

16      from these notes, being able to pay back its creditors so --

17           MS. EUSTIS:  And the plan is due, I believe, in two

18      weeks.  And so do you anticipate that those funds will start

19      coming in by the end of the year?

20           MR. HUERTAS:  I don't know.  I -- I'm not an expert on

21      this.  I have no idea.  But at this time, right now, we have

22      three -- two delinquent junior liens in -- in default.  And

23      unfortunately, the Energy Morocco is in default as well.

24           MR. ORENSTEIN:  This is Orenstein.

25           MS. EUSTIS:  Go ahead, Mr. Orenstein.

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. 1 - Transcript All Meeting of Cred (Part-I) Page 503 of 1284 Page 40 of 42

40

1        MR. ORENSTEIN:  Yeah, thanks.  I'm sure you saw the

2   status report that we filed last week The money from Energy

3   Morocco is due under the note to be paid in December.  We're

4   hoping that that will come in by that time.  The litigation

5   with 423 Kennedy and Developer RE1, as you know, is stayed

6   pending the Court's decision on whether or not this bankruptcy

7   case will be dismissed.  We're hoping that it's not going to be

8   dismissed and at that point, that the Court will lift the stay

9   so that the litigation can continue.

10        And you're right, the -- I believe it's -- I want to

11  say, off the top of my head, it's the 9th that the plan is due.

12  I may be wrong about that, but it's within the next two weeks.

13  And the plan, generally speaking, will provide that payments

14  will be made from the collection of these notes as and when the

15  payments are received.

16        MS. EUSTIS:  Okay.  All right.  Well, thank you.  I

17  appreciate that.

18        Does anyone else have any questions for Mr. Huertas

19  today?

20        Okay.  Hearing none.  I'm going to conclude this

21  meeting today.  And just, Mr. Orenstein and Mr. Huertas, for

22  your benefit, that does not mean I don't have any more

23  questions for you.  I do, and I do anticipate getting some

24  discovery out in connection with the motion to dismiss.  So I

25  just wanted to make sure that was clear for the record that by

Case 25-00200-ELG  Doc 46-1  Filed 09/25/25  Entered 09/25/25 18:06:59  Desc
Exhibit Ex. 1 - Trans script - Docket Entries (Post-1) PK Law S04 LC128  Page 41 of 42

41

1   concluding this meeting of creditors, that does not mean that

2   my office does not have any further questions for you in

3   relation to its motion to dismiss.

4           But with that, this --

5           MR. ORENSTEIN:  We understand, and Mr. Huertas is

6   aware of the fact that you may want to take depositions of JPK

7   or potentially Mr. Huertas himself.

8           MS. EUSTIS:  Great.  Thank you, Mr. Orenstein.

9           And thank you all so much for your time today.  I will

10  conclude this meeting.

11          (Whereupon the hearing was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 25-10200-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 19:06:59  Desc
Exhibit Ex. 1 - Transcript All Docket Entries (Post-I) PK New S05 bC128  Page 42 of 42

42

```
1                          CERTIFICATE

2     I certify that the foregoing is a correct transcript from the

3     electronic sound recording of the proceedings in the above-

4     entitled matter.

5

6

7

8     /s/ [signature]

9     _____        Date: November 13, 2024
      ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## CONSENT OF THE MEMBERS OF
### 5505 1st St Holdings LLC

The undersigned, Member(s) of 5505 1st St Holdings LLC a District of Columbia Limited Liability Company, adopt the following resolutions:

**WHEREAS**, resolutions were previously adopted by 5505 1st St Holdings LLC whereby the then existing members of 5505 1st St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS**, the previous resolutions were adopted in error and to correct the error therein, 5505 1st St Holdings LLC hereby executes the following resolutions;

**WHEREAS**, Coloma River Holdings LLC, a District of Columbia limited liability company is the sole member of the Company;

**WHEREAS**, Charles Paret is a sole member of Coloma River Holdings LLC; and

**WHEREAS**, Coloma River Holdings LLC hereby relinquishes its membership interest and resigns from membership in 5505 1st St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS**, the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED**, that Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, hereby relinquishes its membership interest and resigns from membership of 5505 1st St Holdings LLC in exchange for the PREVIOUS PAYMENT.

**RESOLVED**, in exchange for PREVIOUS PAYMENT, NT Group LLC shall be the sole member of the Company.

**RESOLVED**, Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, Charles Paret, sole member of Coloma River Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED**, that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Coloma River Holdings LLC, sole member of the 5505 1st St Holdings LLC, hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**5505 1st St Holdings LLC**
a District of Columbia limited liability company

By: COLOMA RIVER HOLDINGS LLC, its          **DATE: December 30, 2021**
    Managing Member and Sole Member

By: _____
    Charles Paret, its
    Managing Member and Sole Member

**ACKNOWLEDGED, ACCEPTED AND AGREED:**

**NT GROUP LLC,**                           **DATE: December 30, 2021**
a Delaware limited liability company

MEMBER:

_____
By: Mel Negussie, managing member

## UNANIMOUS WRITTEN CONSENT OF THE
## MEMBERS OF
### 71 Kennedy St Holdings LLC

The undersigned, Member(s) of 71 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company ("Company"), adopt the following resolutions:

**WHEREAS**, resolutions were previously adopted by 71 Kennedy St Holdings LLC whereby the then existing members of 71 Kennedy St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS**, the previous resolutions were adopted in error and to correct the error therein, 71 Kennedy St Holdings LLC hereby executes the following resolutions;

**WHEREAS**, Charles Paret is the sole member of 71 Kennedy St Holdings LLC;

**WHEREAS**, Charles Paret hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously been paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS**, the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED**, that Charles Paret, sole member of 71 Kennedy St Holdings LLC, hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for PREVIOUS PAYMENT.

**RESOLVED**, in exchange for PREVIOUS PAYMENT, NT Group LLC shall become the sole member of the Company.

**RESOLVED**, Charles Paret, sole member of 71 Kennedy St Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED**, that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Charles Paret, sole member of 71 Kennedy St Holdings LLC hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**71 Kennedy St Holdings LLC**
a District of Columbia limited liability company
**MEMBER:**

Charles, Paret, its
Sole member

**DATE: December 30, 2021**


**ACKNOWLEDGED, ACCEPTED AND AGREED:**

**NT GROUP LLC,**
a Delaware limited liability company

MEMBER:

By: Mel Negussie, managing member

**DATE: December 30, 2021**

## AFFIDAVIT OF CHARLES PARET

I, Charles Paret (the "Affiant"), solemnly swear under the penalties of perjury and upon personal knowledge and due inquiry that the following statements are true:

1.  That I am the organizer of Coloma River Holdings, LLC a Delaware Limited Liability Company organized on May 26, 2016 ("Coloma"). I am currently and at all times since its May 26, 2016 inception, until the date of this Affidavit, the sole owner/member and sole manager of Coloma.

2.  That I am the organizer of Charles Paret, LLC a District of Columbia Limited Liability Company organized on January 8, 2014 ("Paret LLC"). I am currently and at all times since its January 8, 2014 inception, until the date of this Affidavit, the sole owner/member and sole manager of Paret, LLC.

3.  That I am the organizer of 423 Kennedy St Holdings, LLC a District of Columbia Limited Liability Company organized on May 20, 2016 ("Kennedy Street").

4.  The initial owners of Kennedy Street were myself, Mr. Charles Paret, and Mr. Adam Lobene. On or about April 17, 2017 Mr. Paret and Mr. Lobene entered into an agreement whereby all of Mr. Lobene's right title and interest to Kennedy Street was purchased by Mr. Paret for the sum of $30,000. Such $30,000 was paid to Mr. Lobene and as a result I, Charles Paret was then the 100% holder of all right title and interest in and to Kennedy Street.

5.  That on or about July 31, 2017 Mr. John Gosnell acquired an equity interest in and to Kennedy Street. whereupon the owners of Kennedy Street were then Paret LLC and Mr. John Gosnell.

6.      That on November 27, 2018, Brighton-KSDC, LLC acquired an equity interest in and to Kennedy Street. As of such November 27, 2018 date, the owners of Kennedy Street were Brighton-KSDC, LLC, Paret LLC, and Mr. John Gosnell.

7.      That on September 13, 2019, I Charles Paret executed an Assignment of Membership Interest whereby I purported to transfer 50% of all right title and interest from Paret, LLC to Coloma. This transfer was in error, and deemed null and void. For the avoidance of doubt, this error was further rectified by the joining of Coloma to the transfer to Mel Melaku Negussie referenced in paragraphs 9 and 10 below.

8.      That on January 17, 2020, Mr. John Gosnell did redeem all of his right title and interest in and to Kennedy Street. As a result of this transaction all of the membership interests in Kennedy Street were held by Brighton-KSDC, LLC and Paret, LLC.

9.      That simultaneously with the making of a loan from Washington Capital Partners "WCP") to Kennedy Street, WCP has required that the sole holders of membership interest in and to Kennedy Street be Brighton-KSDC, and Mel Melaku Negussie. I, Charles Paret do as of the date of closing on the WCP loan, transfer all right title and interest held by Paret LLC, to Mel Melaku Negussie.

10.     For the avoidance of doubt, I Charles Paret, have caused each of myself, Paret LLC and Coloma to join in the foregoing transfer to Mel Melaku Negussie such that the ownership of Kennedy Street is now as follows:

Brighton-KSDC, LLC          50%

Mel Melaku Negussie         50%

11.     I, Charles Paret also hereby provide further assurance that if any interests I may have either personally or through an entity of which I am a member, in either the property that is the

2

subject of this loan from WCP, or in an entity who holds an interest in said property are later discovered, I will execute any and all necessary documents to effect the complete transfer of said interest to Kennedy Street, or any successors in interest thereto.

This affidavit is provided for the benefit of Washington Capital Partners, LLC and Brighton-KSDC, LLC, such that they are entitled to rely on the same to ensure that the making of the loan is enforceable against Kennedy Street and not susceptible to fraud.

I HEREBY CERTIFY AS OF THIS 31st DAY OF JANUARY, 2020, UNDER PENALTIES OF PERJURY THAT THE MATTERS AND FACTS HERE AND ABOVE SET FORTH ARE UPON MY PERSONAL KNOWLEDGE AND ARE TRUE.

_____
Charles Paret

STATE OF VIRGINIA
COUNTY OF FAIRFAX

I hereby certify that, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Charles Paret, known to me (or satisfactorily proven) to be the persons whose name is subscribed to the within instrument, and acknowledged the same for the purposes therein contained, and further acknowledged the foregoing instrument to be their act, and in my presence signed and sealed the same, giving oath under penalties of perjury that the consideration recited herein is correct.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires  05 · 31 · 2021

PARAS SAXENA
Notary Public-Reg. # 7100494
COMMONWEALTH OF VIRGINIA
My Commission Expires May 31, 2021

3

798

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Proc. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## NOTICE OF HEARING AND OPPORTUNITY TO OBJECT TO PLAINTIFF'S RENEWED MOTION FOR REMAND AND TO SUSPEND DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINES

NOTICE IS HEREBY GIVEN that the Plaintiffs, by undersigned counsel, have filed a

Renewed Motion for Remand and to Suspend the Defendants' Motions, Hearings, and Related

Response Deadlines ("Motions"). The Motions seek to remand this case back to D.C. Superior

Court and to suspend all related hearings for motions filed and noticed by the Defendants (ECF. Nos. 44 - 45).

<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

NOTICE OF DEADLINE TO OBJECT:  If you do not want the court to grant the Motions, or if you want the Court to consider your views on the Motions, then on or before **April 10, 2025,** you or your attorney must file with the Court a written objection to the Motions, together with the proposed order required by Local Bankruptcy Rule 9072-1.  The objection and proposed order must be filed with the Clerk of the Bankruptcy Court, E. Barrett Prettyman U.S. Courthouse, 3rd and Constitution Avenue, N.W., Washington, D.C. 20001.  The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

If you mail, rather than deliver, your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the court will receive it by the date stated above. You must also mail a copy of your objection to:

> James D. Sadowski, Esq.
> Greenstein DeLorme & Luchs, P.C.
> 801 17th Street, N.W., Suite 1000
> Washington, DC  20006
> *Counsel for Plaintiffs Developer RE1, LLC*
> *  and 423 Kennedy St. Holdings, LLC*

NOTICE OF HEARING:  A hearing on the Motions has been schedule before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 a.m.  The hearing will be held in a hybrid in-person or Zoom for Government format. All participants may choose to appear either (a) in-person in Courtroom 1, United States Bankruptcy

Court for the District of Columbia, E. Barrett Prettyman Courthouse, 333 Constitution Ave. NW,

Washington, DC 20001 or (b) by video using Zoom for Government.  All parties participating by

Zoom for Government before Judge Gunn should review and be familiar with the Virtual

Hearing expectations.  For the Zoom meeting code, you may contact Courtroom Deputy Aimee

Mathewes by email at Aimee_Mathewes@dcb.uscourts.gov.

  If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motions and may enter an order granting the relief requested.

Parties in interest with questions may contact the undersigned.

       Respectfully submitted,

       GREENSTEIN DELORME & LUCHS, P.C.


Dated:  March 25, 2025     /s/ James D. Sadowski
       James D. Sadowski, DC Bar. No. 446635
       Alexandria J. Smith, DC Bar. No. 1673542
       801 17th Street, N.W. - Suite 1000
       Washington, DC  20006
       Telephone: (202) 452-1400 ext. 5407
       Email:   jds@gdllaw.com; ajs@gdllaw.com
       *Counsel for Plaintiffs Developer RE1, LLC and*
        *423  Kennedy St. Holdings, LLC*


### CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on this 25th day of April, 2025, a true copy of this Notice of

Hearing and Opportunity to Object to Plaintiffs' Renewed Motion for Remand and to Suspend

the Defendants' Motions, Hearings, and Related Response Deadlines was served electronically

and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

       /s/ James D. Sadowski
       James D. Sadowski

The order below is hereby signed.

Signed: April 1 2025



_Elizabeth L. Gunn_
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| Charles Paxton Paret, | ) Case No. 23-217-ELG |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| Developer RE1 LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. Case No. 24-10023-ELG |
| | ) |
| | ) (Cases Consolidated) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| 423 Kennedy St Holdings LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |

## CONSENT ORDER RESCHEDULING HEARINGS AND DEADLINES

1

Upon the consent of Developer RE1 LLC and 423 Kennedy St Holdings LLC (the "Plaintiffs") and DP Capital, LLC, WCP Fund I LLC, SF NU, LLC, Daniel Huertas, Russell Drazin and JPK NewCo LLC (the "Defendants"), and in the interests of judicial economy, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

ORDERED, that the status conference currently scheduled in this matter be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44, with notice thereof being found at DE #45) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Plaintiffs' renewed motion for remand (as found at DE #46, with notice thereof being found at DE #47) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the deadline for the Plaintiffs to respond to the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44) be, and hereby is, EXTENDED to and through April 16, 2025.

2

803

We ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

/s/ James D. Sadowski (signed w/ express permission)
James D. Sadowski, Esq.
DC Bar # 446635
Greenstein Delorme & Luchs P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*and 423 Kennedy St. Holdings, LLC*

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR REMAND

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## **TABLE OF CONTENTS**

I.      Introduction ...................................................................................................... 1

II.     Relevant Facts and Allegations ....................................................................... 2

      a.  Facts and Allegations Internal to the Consolidated Cases .................... 3

      b.  Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case
          No. 23-10025-ELG (Bankr. D.D.C. 2023) ............................................. 4

      c.  Settlement of the Paret Adversary ........................................................ 4

      d.  Procedural Posture ................................................................................ 5

III.    Argument: The Motion Merits Denial .............................................................. 6

      a.  Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............... 6

      b.  The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this
          Honorable Court's Expertise Militate Against Discretionary Abstention ............. 9

      c.  The Plaintiffs' Latest Amendment Introduces a Question of Federal
          Bankruptcy Law .................................................................................... 14

      d.  The Motion is Untimely ........................................................................ 15

    IV.  Conclusion ...................................................................................................... 17

806

# TABLE OF AUTHORITIES

**Cases**

*1015 Half St. Corp. v. Warehouse Concepts, Inc.*,
1999 U.S. Dist. LEXIS 19135 (D.D.C. Oct. 26, 1999)....................................................... 15

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008)....................................................... 10

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976)....................................................................................................... 9, 14

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959)............................................................................................................. 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
463 U.S. 1 (1983).......................................................................................................... 12, 15

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023)................................................................................ 10

*Holmstrom v. Peterson*,
492 F.3d 833 (7th Cir. 2007) ............................................................................................ 16

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021).............................................................................. 10

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ..................................................................................... 6

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004)................................................................................. 9

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011)............................................................................... 9

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ............................................... 13

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) ............................................................................................. 10

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995)................................................................................................. 7

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013)................................................... 6

iii

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) ........................................................................... 9

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005) .......................... 11

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) ................................................................. 9

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ............................ 6

**Statutes**
28 U.S.C. § 1334 .......................................................................................... 6, 7

28 U.S.C. § 1447 .............................................................................................. 15

**Rules**
Local Rule 9013-1 .............................................................................................. 1

Local Rule 9027-1 ....................................................................................... 2, 15

iv

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants" and each a "Defendant") by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Plaintiffs' Renewed Motion for Remand (the "Motion," as found at DE #46) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I.      Introduction

Approximately nine months after this case was first removed, the Plaintiffs again seek a remand. This time, the Motion does not cite any case law—whatsoever—and only once invokes a statute outside the filing's prefatory paragraph. The Motion is, thusly, something of an enigma, appearing to be premised, *en toto*, upon contentions that (i) JPK never should have been permitted to be a debtor in bankruptcy in the first instance; and (ii) an absence of merit underlying the claims being asserted against various Defendants by the bankruptcy estate of Charles Paret ("Mr. Paret," with the underlying estate being known as the "Estate" and Wendell Webster, the trustee thereof, being known as the "Trustee").

The first contention would be immaterial, since this adversary proceeding was not docketed within the JPK bankruptcy (and, indeed, was filed before JPK even entered bankruptcy), except the Plaintiffs have now added a claim for relief premised upon the JPK bankruptcy being part and parcel of an alleged fraudulent conveyance. In light of that added claim, though, it becomes ever-important to establish that JPK's bankruptcy was a legitimate filing, for a proper purpose, undertaken in a manner consistent with federal bankruptcy law. It is not bad faith for an entity to be created with cognizance of potential reorganizational actions and the Plaintiffs are—and always

1

have been—errant in asserting otherwise. Remanding this case, and asking the Superior Court to opine on questions of bankruptcy law, would be not only illogical but, indeed, contra to the well-established design of bankruptcy courts being the forums that opine on questions of bankruptcy law.

The second contention—which is more centrally the focus of this brief—is fundamentally errant. There is now a proposed settlement of the Trustee's claims against certain Defendants that, if approved, will cement the Estate's partnership interest in the promissory notes and deeds of trust underlying this litigation. A direct correlation exists between the outcome of this litigation and the recovery occasioned by the Estate, with the Estate's assets including a partnership interest in the very debt instruments being litigated *sub judice*.

Accordingly, the Motion merits denial for three reasons. First, this case is a core proceeding in connection with Mr. Paret's bankruptcy and, as such, this case is properly heard in this Honorable Court. Second, by pleading a new cause of action that turns on resolution of a question of bankruptcy law, the Plaintiffs have introduced a federal question best resolved by this Honorable Court. And, third, the Motion is untimely in nature, having been filed after the thirty day deadline established by Local Rule 9027-1(b) and Title 28 of the United States Code. However, insofar as this Honorable Court did deny a prior remand motion without prejudice, DE #35, the Defendants will focus this brief on the former two issues, going to the substantive—and not procedural—infirmity of the current Motion.

## II.    Relevant Facts and Allegations

Insofar as this Honorable Court is, by now, no doubt quite familiar with the facts of these consolidated cases, the following overview is intentionally brief in nature:

### a. Facts and Allegations Internal to the Consolidated Cases

1.      On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2.      The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3.      Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4.      The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5.      Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6.      DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

3

**b. Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)**

1. Mr. Paret is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2. In connection with the administration of Mr. Paret's bankruptcy estate, the Trustee has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3. The Webster Complaint alleges the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

4. The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5. The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

**c. Settlement of the Paret Adversary**

1. In March 2025, the Trustee entered into a settlement agreement (the "Settlement Agreement"), with Mr. Huertas, WCP and DPCL—subject to judicial approval—to resolve the Paret Adversary. *See* Paret Main Case at DE #158.

2. Pursuant to the Settlement Agreement, Mr. Huertas, WCP and DPCL will, *inter alia*, (i) cause a modest sum of money to be paid to the Trustee; (ii) recognize Mr. Paret's Estate as "having a limited partnership interest," *id.* at ¶ 10(b), in the DRL Notes and 423 Kennedy Notes;

4

(iii) use the proceeds of the DRL Notes and 423 Kennedy Notes to pay certain additional monies into Mr. Paret's estate, *id.* at ¶ 10(c); and (iv) owe one half of all "net proceeds" derived from the DRL Notes and the 423 Kennedy Notes, to the Trustee (with the computation of "net proceeds" depending on the ultimate performance of the DRL Notes and 423 Kennedy Notes), Paret Main Case at DE #158-1, § 3(c).

3.      In light of the Settlement Agreement, Mr. Paret's Estate is (i) recognized as a limited partner in connection with the promissory notes at issue in this litigation; and (ii) has a vested pecuniary interest in the outcome of this litigation. *Id.* at § 3.

### d.  Procedural Posture

1.      These consolidated cases were originally removed on July 4, 2024. *See* DE #1.

2.      Since removal, this Honorable Court has (i) held a hearing on the original remand motion, DE #23; (ii) denied the original remand motion, DE #35; (iii) held a hearing on Mr. Drazin's motion for summary judgment, taking the same under advisement, DE #34; (iv) held a hearing on SNL's motion to dismiss, *id.*; (v) held a hearing on the Plaintiff's motion to dismiss a counterclaim, *id.*; (vi) allowed additional time for the Plaintiffs to file an amended complaint, DE #38; (vii) seen an amended, consolidated pleading filed by the Plaintiffs, DE #40; (viii) issued a summons to a newly-added defendant, DE #42; and (ix) seen a motion to dismiss or, in the alternative, for summary judgment filed by all defendants except Shaheen Sariri ("Mr. Sariri"),[1] DE #44.

3.      The Plaintiffs' third amended complaint, docketed after this Honorable Court dismissed the prior iteration with leave to amend, adds a cause of action for fraudulent conveyance,

---

[1] For want of ambiguity, Mr. Sariri is not represented by undersigned counsel (at least as of present) and, despite being a defendant in this litigation, is not one of the defined "Defendants" for purposes of this brief.

<center>5</center>

premised upon the JPK bankruptcy. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261.

4.    The crux of the newly-added cause of action is that transferring assets to JPK, with knowledge JPK may then seek to reorganize in chapter 11, amount to a tortious act, since the Plaintiffs assert it is *per se* illegal for an entity to be created—and then receive assets—whilst cognizant that a reorganization may soon ensue. *Id.*

### III.    Argument: The Motion Merits Denial

Since the Motion does not engage any statutory analysis or cite any case law, the grounds upon which a remand is being sought are slightly unclear. However, since the Plaintiffs do invoke Sections 1334(c) and 1452(b) in the prefatory clause of the Motion, the Defendants will assume the request is premised upon some combination of (i) equitable abstention; and/or (ii) mandatory abstention. The facts of this case support neither.

#### a.   Mandatory Abstention is Inapplicable Since this is a Core Proceeding

Mandatory abstention is inapplicable to cases that encompass a core bankruptcy proceeding. Insofar as the litigation *sub judice* is objectively core in the prism of Mr. Paret's bankruptcy, mandatory abstention is accordingly inappropriate.

As observed by this Honorable Court, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC),* 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-

core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, <mark>45 F.3d 702, 708</mark> (2d

Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language

of the mandatory abstention statute itself:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

<mark>28 U.S.C. § 1334(c)(2).</mark>

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not

be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been

commenced in a "court of the United States." As discussed in detail *infra*, these are core

proceedings, so the second prong need not be reached. (To whatever extent the second prong is to

be considered, the Defendants would note the District of Columbia Superior Court to be a "court

of the United States," but the Defendants appreciate such consideration is one unlikely to be

instantly dispositive.)

The Trustee has now been asserting, for nearly a year, that Mr. Paret owns an interest in

the promissory notes at issue in the instant litigation. And, under the Settlement Agreement, Mr.

Paret's Estate will be recognized as holding a limited partnership interest in those promissory notes

and the proceeds thereof. The Plaintiffs, in turn, are seeking cancellation of the subject debt

instruments and permanent injunctions prohibiting foreclosure. The Defendants, by contrast, are

seeking to proceed with foreclosures so both properties may be sold at public auction to raise

money to retire the promissory notes.

Stated otherwise: under the terms of the Settlement Agreement, the Trustee and Estate will hold a direct pecuniary interest in the outcome of this litigation. If the Defendants prevail, monies will flow into Mr. Paret's Estate. If the Plaintiffs prevail, the inflow of monies into Mr. Paret's Estate will be curtailed. The better the outcome for the Defendants, the better the outcome for Mr. Paret's Estate.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

> (K) determinations of the validity, extent, or priority of liens. . .

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

These proceedings are plainly core under Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. The Defendants assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens all secure promissory notes in which Mr. Paret's Estate is to hold a limited partnership interest under the Settlement Agreement. And this is accordingly a proceeding that will "determine[e] … the validity" of liens in which the Estate holds an interest.

Analysis under Section 157(b)(2)(O) invites the same result. The Defendants are seeking to collect upon promissory notes in which the Estate will have a limited partnership interest. If the Plaintiffs succeed, the assets of Mr. Paret's Estate will be diminished proportionately. If the Defendants succeed, the assets of Mr. Paret's Estate stand to grow proportionately. The promissory notes hanging in the balance are, under the Settlement Agreement, partially assets of the Estate.

8

816

And it is difficult to conceive of a proceeding more core than one that seeks to cancel, diminish, and enjoin collection of a bankruptcy estate's assets.

### b. The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this Honorable Court's Topical Expertise Militate Against Discretionary Abstention

Discretionary abstention is also improper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and Mr. Paret's Estate. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents, as well as the permissibility of pre-structured bankruptcy filings—are ones upon which this Honorable Court has expertise. The outcome of this litigation will materially inform the composition of the Estate being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d. 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate

9

817

a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998)).

Taking the first factor, this litigation will have a direct impact on the Estate and needs to be concluded so the Estate may be fully administered. The Trustee will receive funds from the liquidation of the DRL Notes and the 423 Kennedy Notes. If those notes are cancelled, the Estate will be accordingly hampered. If those notes are collected in full, the Estate stands to make a great

deal of money. And so long as collection of those notes is enjoined,[2] the Estate stands in a state of paralysis.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at *29 (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

It also bears notation that—as discussed *infra*—the Third Amended Complaint introduces a substantial federal question into these proceedings. The Plaintiffs are contending that an entity may be held liable for a fraudulent conveyance if found to have siloed assets into a new entity with cognizance of a potential bankruptcy filing. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. If accepted, this would render every so-called "Texas two step" a tortious act for which civil liability may be sought. And consideration of this cause of action will, no doubt, require consideration of the law governing good faith bankruptcy filings. To be sure, not only is this cause of action not one truly subsumed within state law but, too, this cause of action is one that would render this case independently removable as now being inclusive of a federal question. *See, e.g.*,

---

[2] Insofar as a motion to dismiss was granted by this Honorable Court, DE #31, but leave to amend was granted, it is unclear if the pre-removal injunction survived dismissal and repleading. The Defendants do not herein take any position as to whether or not the injunction remains in effect.

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, <mark>463 U.S. 1, 13</mark> (1983) ("Even though state law creates appellant's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

In assessing the third criterion, there are no difficult or unsettled questions of state law at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

The fourth question is one of "comity," which militates in favor of denying the Motion. As noted *passim*, this litigation is intimately related to a pending bankruptcy case and now involves a substantive question of bankruptcy law There is no cognizable notion of comity that suggests cases tied to bankruptcy proceedings, involving questions of bankruptcy law, ought to be returned to state court; to the contrary, it is the longstanding practice of this Honorable Court—and sister bankruptcy courts—to retain jurisdiction over core proceedings.

On the fifth question, this case is closely related to Mr. Paret's main bankruptcy case. Mr. Paret has premised much of his case upon the notion that he has partnership rights in various assets of WCP. The Trustee, in turn, has followed on these contentions through an adversary proceeding. The Settlement Agreement likely represents the single largest opportunity for Mr. Paret's Estate

12

to yield funds for distribution to creditors. And the success, *vel non*, of the Plaintiffs in this case
will accordingly impact—rather profoundly—the scope of any return to creditors of Mr. Paret.[3]

The sixth consideration is the existence of a right to trial by jury. There can be no trial by
jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to
a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory
Note, DE #1-2, at p. 56, § 7.[4]

The final consideration is one of prejudice to the "involuntarily removed defendants."
Putting aside that it is the Defendants who removed these consolidated cases (and assuming
prejudice to plaintiffs would accordingly stand in the place of this criterion), there is plainly no
prejudice. This Honorable Court is located two blocks from the Superior Court. Remote
appearances are as readily managed in this Honorable Court as the Superior Court. The docket of
this Honorable Court is actually notably more nimble than that of the Superior Court, allowing for
the prompter scheduling of hearings. And, as noted by the *Sticka* Court, bankruptcy courts enjoy
preeminent expertise on the topic of the debtor/creditor relationship; this Honorable Court is
exceedingly well qualified to adjudicate the various debtor/creditor issues that permeate these
consolidated cases.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates
against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2,
2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

---

[3] It is, of course, entirely possible Mr. Paret is concealing other assets that may be discovered by
the Trustee. As established at various hearings in the main case, Mr. Paret appears to be unusually
apprehensive to making full disclosures and offering information in a candid, forthright and
fulsome manner.

[4] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical
provision.

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, <mark>424 U.S. at 813</mark>. There is simply no basis to make such an exception in these consolidated cases, where every factor militates against abstention and where the administration of the Estate hangs in the proverbial balance. This Honorable Court has expertise in the issues presented in this litigation, has a docket that can ably accommodate this litigation, and has jurisdiction over this litigation.

      **c. The Plaintiffs' Latest Amendment Introduces a Question of Federal Bankruptcy Law**

Remand is improper for all of the reasons set forth *supra*. Yet even if, *arguendo*, remand might otherwise be within the realm of discretion, the Plaintiffs have essentially foreclosed any such argument through their election to amend their pleading and sue the Defendants on the theory that the JPK bankruptcy was the *coup de grace* of a fraudulent conveyance. This is now a case that, as pleaded, turns on a substantive question of bankruptcy law. And this is, accordingly, a case that most certainly ought not be remanded to the Superior Court.

There is a circuitous infirmity to the Motion when juxtaposed to the latest pleading of the Plaintiffs: the Plaintiffs are now suing the Defendants, on the theory that the JPK bankruptcy was the byproduct of a fraudulent conveyance, whilst simultaneously urging this Honorable Court to remand (or abstain from hearing) the instant litigation. The Plaintiffs are, at once, now advancing a claim for relief premised upon an allegedly improper utilization of bankruptcy law *and* protesting that such claim for relief should not be adjudicated by a bankruptcy court. Suffice it to posit, this is not a cogent contention, and this new claim for relief only affords added rationale to deny the Motion.

As noted above, the Supreme Court has made clear that "[e]ven though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a

14

substantial question of federal law in dispute between the parties." *Constr. Laborers Vacation Tr.*, ==463 U.S. at 13==.

Here, the Plaintiffs are suing the Defendants on the theory that the transfer of promissory notes and deeds of trust, to JPK, with cognizance that a bankruptcy may follow, amounts to a fraudulent conveyance. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. The Defendants, if they are not successful on a pending motion to dismiss or for summary judgment, DE #44, will be compelled to defend this cause of action by noting the propriety of a bankruptcy-cognizant transfer. And this Honorable Court, in turn, will need to weigh in on the legality of such a bankruptcy-cognizant pre-petition asset transfer.

To be sure, adjudication of this newly-added cause of action will turn on "resolution of a substantial question of federal law," *Constr. Laborers Vacation Tr.*, ==463 U.S. at 13==. And this case is accordingly one that would now be independently removable as containing a federal question squarely within the expertise of this Honorable Court.

### d. The Motion is Untimely

Finally, the Defendants additionally note the Motion to be untimely in nature. Under the rules governing practice in this Honorable Court, a motion seeking remand must be filed within 30 days of the date of removal. Local Rule 9027-1(b). And the deadline is not merely rule-based but, too, statutory in nature. *See* ==28 U.S.C. § 1447(c)== ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).") *See also 1015 Half St. Corp. v. Warehouse Concepts, Inc.*, ==1999 U.S. Dist. LEXIS 19135, at *12== (D.D.C. Oct. 26, 1999) (noting a motion to remand on any grounds other than an absence of subject matter jurisdiction must be filed within 30 days of removal).

15

While the Defendants do appreciate that the original remand motion was denied without prejudice, and that such denial may be construed as affording some relief from the temporal dictates of the Local Rules (or even Title 28), the Defendants also note that the tight timeline is designed to avoid the belated remand of cases that have long-since departed another court's docket. *See, e.g., Holmstrom v. Peterson*, 492 F.3d 833, 837 (7th Cir. 2007) (noting the 30-day statutory deadline is "designed to ensure that all remand motions based on defects other than lack of subject matter jurisdiction were made within 30 days to ensure judicial efficiency.")

Where, as here, a case has been pending in this Honorable Court for nearly ten months, and a litany of hearings have been held and an accompanying litany of orders having been issued, there is a synergy in keeping a case in this Honorable Court. Indeed, the operative pleading in this case— an amended, consolidated complaint—was filed *after* removal, in this Honorable Court. That operative pleading adds two new defendants, one of whom—Mr. Sariri—has been added for reasons solely correlative to his interactions with this Honorable Court. And this Honorable Court has, by now, held far more hearings on this case than did the court from which it was removed nearly 10 months ago.

Stated otherwise: Title 28 of the United States Code is designed to ensure cases not be hampered by delayed remand efforts, which unavoidably strain "judicial efficiency." *Holmstrom*, 492 F.3d at 837. Such is particularly true where, as there, this Honorable Court has gleaned a notable "familiarity" with the instant case. Motion, DE #46, at ¶ 1. And to the extent there exist equitable considerations in analysis of the Plaintiffs' second effort to secure a remand, such accordingly militate in favor of denying the Motion.

16

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 12, 2025        By:      /s/ Maurice B. VerStandig
                                      Maurice B. VerStandig, Esq.
                                      Bar No. MD18071
                                      The VerStandig Law Firm, LLC
                                      9812 Falls Road, #114-160
                                      Potomac, Maryland 20854
                                      Phone: (301) 444-4600
                                      mac@mbvesq.com
                                      *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

17

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET,

    *Debtor.*

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,

    *Defendants.*

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

Case No. 23-00217-ELG

Chapter 7

Adv. Pro. No. 24-10023-ELG

## CONSENT MOTION TO EXTEND DEADLINES

The Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings LLC, and the initial Defendants in these consolidated cases jointly move this Court to briefly extend two deadlines related to two pending motions. In support of their consent request, the movants represent to the Court as follows:

1.    This case involves two consolidated cases that were removed from D.C. Superior Court on July 4, 2024.

8161\0002\4898-5854-1623.v1

826

2.      Pending before the Court are a Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF # 44) ("Motion to Dismiss") and a Renewed Motion for Remand (ECF # 46).  These motions are currently set for a hearing on May 8, 2025 at 10:00 a.m.

3.      The Defendants that filed the Motion to Dismiss[1] requested additional time (until April 12, 2025) to respond to the Renewed Motion for Remand, which request was consented to by the Plaintiffs.

4.      The Plaintiffs requested additional time (until April 18, 2025) to respond to the Motion to Dismiss, which request was consented to by the Defendants that filed the Motion to Dismiss.

5.      No party will be prejudiced by these brief extensions of time.

For cause shown, the movants jointly request that the Court extend the deadlines as noted in paragraphs 3 and 4.  A proposed consent order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  April 16, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C.  20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Developer RE1 LLC and*
*  423 Kennedy St Holdings LLC*

---

[1]      The defendants that filed the Motion to Dismiss include all defendants named in the Third Amended Complaint except Defendant Shaheen Shariri.

2

<u>C</u>ERTIFICATE  OF  <u>S</u>ERVICE

I HEREBY CERTIFY that on this 16th day of April, 2025, a true copy of the foregoing

Consent Motion to Extend Deadlines was filed electronically and a Notice of Electronic filing

should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET

    *Debtor.*

Case No. 23-00217-ELG

Chapter 7

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,

    *Defendants.*

Adv. Pro. No. 24-10023-ELG

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

## CONSENT ORDER GRANTING MOTION TO EXTEND DEADLINES

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423 Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is ORDERED that:

1.      The Motion to Extend is GRANTED; and

2.      The deadline to respond to the Renewed Motion for Remand (ECF # 46) is extended, *nunc pro tunc,* to April 12, 2025; and

3.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.

[Signed and dated above]

8161\0002\4904-5105-3367.v1

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen*
*Shariri)*

3

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

**END OF ORDER**

8161\0002\4904-5105-3367.v1

The order below is hereby signed.

Signed: April 17 2025



_Elizabeth L. Gunn_
_U.S. Bankruptcy Judge_

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>_Debtor._ | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    _Plaintiff,_<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    _Defendants._ | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    _Plaintiff,_<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    _Defendants._ | |

## Consent Order Granting Motion to Extend Deadlines

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423 Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is Ordered that:

1.      The Motion to Extend is Granted; and

2.      The deadline to respond to the Renewed Motion for Remand (ECF # 46) is extended, *nunc pro tunc,* to April 12, 2025; and

3.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.

[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen*
*Shariri)*

8161\0002\4904-5105-3367.v1

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD 20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC 20006
jds@gdllaw.com

**END OF ORDER**

4

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn          *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
   *Nature[s] of Suit:*   01   Determination of removed claim or cause
                      21   Validity, priority or extent of lien or other interest
                             in property
                      91   Declaratory judgment
                      72   Injunctive relief – other

*Plaintiff*
————————————————

**Developer RE1 LLC**                                  represented by   **James D. Sadowski**
1629 K Street NW                                                Greenstein DeLorme & Luchs, PC
Suite 300                                                       801 17th Street, N.W.
Washington, DC 20006                                            Suite 1000
                                                                Washington DC, DC 20006
                                                                202–452–1400
                                                                Fax : 202–452–1410
                                                                Email: jds@gdllaw.com
                                                                *LEAD ATTORNEY*

                                                                **Alexandria Jean Smith**
                                                                Greenstein DeLorme and Luchs PC
                                                                801 17th Street NW
                                                                Suite 1000
                                                                Washington, DC 20006
                                                                202–452–1400
                                                                Email: ajs@gdllaw.com
                                                                *LEAD ATTORNEY*

*Plaintiff*
————————————————

**423 Kennedy St Holdings LLC**                        represented by   **James D. Sadowski**
1629 K Street, NW                                               (See above for address)
Suite 300                                                       *LEAD ATTORNEY*
Washington, DC 20006
                                                                **Alexandria Jean Smith**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*

V.

*Defendant*
————————————————

**WCP Fund I LLC**                                     represented by   **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                                 The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                                    9812 Falls Road
1452 W. Horizon Ridge Pkwy                                      #114–160
#665                                                            Potomac, MD 20854

1

Henderson, NV 89012                              301−444−4600
301−444−4600                                     Email: mac@mbvesq.com

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**DP Capital LLC**                               represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                   (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**SF NU, LLC**                                   represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                   (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Daniel Huertas**                               represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                   (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Russell Drazin**                               represented by **Maurice Belmont VerStandig**
Pardo Drazin LLC                                   (See above for address)
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**JPK NewCo LLC**                                represented by **Maurice Belmont VerStandig**
8401 Greensboro Drive                              (See above for address)
Suite 960
McLean, VA 22102

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Shaheen Sairi**                                represented by **Shaheen Sairi**
                                                   PRO SE

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/04/2024 | | 1 | Adversary case 24−10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A − Meeting of Creditors Transcript # 2 Exhibit B − All Pleading |

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24–10023–ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Dismiss # 2 Exhibit B – Opposition to Motion to Dismiss # 3 Exhibit C – Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Quash Subpoena # 2 Exhibit B – Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period – *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A – Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B – Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A – First Developer RE1 Promissory Note # 2 Exhibit B – Second Developer RE1 Promissory Note # 3 Exhibit C – First Developer RE1 Deed of Trust # 4 Exhibit D – Second Developer RE1 Deed of Trust # 5 Exhibit E – First 423 Kennedy Street Promissory Note # 6 Exhibit F – Second 423 Kennedy Street Promissory Note # 7 Exhibit G – First 423 Kennedy Street Deed of Trust # 8 Exhibit H – Second 423 Kennedy Street Deed of Trust # 9 Exhibit I – Developer RE1 Notice of Default # 10 Exhibit J – 423 Kennedy Street Notice of Default # 11 Exhibit K – Developer RE1 Affidavit of Non–Residential Mortgage Foreclosure # 12 Exhibit L – 423 Kennedy Street Affidavit of Non–Residential Mortgage Foreclosure # 13 Exhibit M – Developer RE1 Notice of Foreclosure # 14 Exhibit N – 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O – Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non–Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT.) PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # 2 Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28–3104 # 4 Exhibit DC Code Section 28–3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4–7–23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; AND WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>*Defendants.* | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion to Dismiss or, in the alternative, for Summary Judgment ("Motion") [ECF No. 44] filed by six of the seven Defendants, namely: DP Capital LLC ("WCP"), WCP Fund I LLC ("WCP Fund"), Daniel

Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SF NU"), and JPK

NewCo LLC ("JPK") (collectively, "Defendants").

I.   <u>INTRODUCTION</u>

The Court has some general familiarity with the factual and procedural background of

this litigation from prior filings, including the Borrowers' Opposition to Mr. Drazin's Motion for

Summary Judgment filed on January 17, 2025 (the "Opposition") [ECF No. 30].[1]  The

Borrowers continue to view the Defendants' removal of the cases from Superior Court as a form

of improper appeal.  The Defendants were dissatisfied with prior, unfavorable decisions rendered

in the Superior Court by two different judges.  *See* Plaintiffs' Renewed Motion for Remand and

to Suspend Defendants' Motions, Hearings, and Related Response Deadline [ECF No. 46].  With

the Motion, Defendants now seek the dismissal of Count VII - To Set Aside Fraudulent Transfers

of the Third Amended Complaint (the "Complaint"), as well as the dismissal of all claims against

SF NU.  The Defendants also request the entry of summary judgment on the remaining causes of

action against them.  For the reasons set forth below, and in the accompanying Exhibits, the

Court should deny both motions.[2]

II.  <u>CONDENSED BACKGROUND</u>

A.   <u>The Loan Documents</u>

On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition

finance loan for the property located at as 5501 1st Street, N.W., in Washington, D.C. (the

---

[1]      As Mr. Drazin's Motion for Summary Judgment is currently pending, pursuant to Fed. R.
Civ. P. 10(c), the Borrowers hereby incorporate by reference the factual background and all the
arguments made in the Opposition as if fully stated herein.

[2]      To assist the Court with showing the many material facts in dispute, the Borrowers have
assembled their Response to the Defendants' Material Facts Not in Dispute (the "Borrowers'
Response"), which is attached as Exhibit 1.  The Borrowers have also included as support a
Declaration of Mel Negussie ("Negussie Decl."), which is attached as Exhibit 2.

"Developer RE1 Property"), which original loan was later refinanced. As part of that refinancing, Developer RE1 signed the following documents:

- A Deed of Trust (the "Developer RE1 First DOT") for the Developer RE1 Property that named WCP Fund as Beneficiary and Mr. Drazin, as Trustee.
- A Commercial Deed of Trust Note (the "Developer RE1 First Note") in the amount of $3,579,000.00, as "Borrower," in favor of WCP Fund.
- A second, additional Deed of Trust ("Developer RE1 Second DOT") for the Developer RE1 Property that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second Commercial Deed of Trust Note (the "Developer RE1 Second Note") in the amount of $524,000.00, as "Borrower."

These documents are collectively referred to as the "Developer RE1 Loan Documents".

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records of the District of Columbia as Document # 2024035623, SF NU assigned and transferred to JPK its rights, title and interests in the Developer RE1 Second DOT.

In January of 2020, WCP helped 423 Kennedy obtain a construction finance loan for the property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 in Washington, D.C. (the "423 Kennedy Property"), which was later refinanced. As part of that refinancing, 423 Kennedy signed the following documents:

- A Deed of Trust (the "423 Kennedy First DOT") for the 423 Kennedy Property that named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A Commercial Deed of Trust Note (the "423 Kennedy First Note") in the amount of $8,689,693.00, as "Borrower" in favor of WCP Fund.
- A second, additional Deed of Trust for the 423 Kennedy Property (the "423 Kennedy Second DOT") that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second, Commercial Deed of Trust Note (the "423 Kennedy Second Note") in the amount of $1,256,000.00, as "Borrower."

These documents are collectively referred to as the "423 Kennedy Loan Documents." The Developer RE1 Loan Documents and the 423 Kennedy Loan Documents are collectively referred to as the "Loan Documents."

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records of the District of Columbia as Document # 2024035864, WCP assigned and transferred to JPK its rights, title and interests in the 423 Kennedy Second DOT.

B.  Executive Summary of the Facts.

The Defendants removed these consolidated cases for the improper purpose of trying to avoid, and having this Court revisit, several key motions and decisions that they lost before two different judges in the D.C. Superior Court.  These decisions were made after extensive briefing, testimony from both sides at two evidentiary (TRO) hearings, oral argument, and some post-hearing briefing.  The Defendants were unsuccessful with a prior motion to dismiss that Judge Ebony Scott denied in the Developer RE1 case.  More importantly, the Defendants lost two motions for a TRO before two different judges in which they made the exact claims that they now assert again here in their summary judgment motion, *i.e.,* that multiple late or missed payments, along with other alleged defaults that had either been waived or cured, prevent the Borrowers from pursuing their claims.  Two different D.C. Superior Court judges have not just determined that the Borrowers' claims are viable, but that the Borrowers are likely to prevail on the merits of those claims.  This Court was never designed to be a first line of appeal from adverse decisions of the D.C. Superior Court, but as to all of the claims in the Third Amended Complaint except than new Count VII, that is precisely what the Defendants are asking this Court to be.  The Court should reject the Defendants' improper attempt to relitigate issues and arguments that have already been decided against them.

As for the condensed facts, this case is about the Lender Defendants decision to intentionally sabotage two development projects, to cause financial harm to the Borrowers and one of the Borrower's principals, and to improperly foreclose on two development projects, one of which was near completion, because one or more of the Lender Defendants was unhappy

4

13

about how another development project (at 2507 I Street) turned out.  The Lender Defendants

knew that the Borrowers were well on their way toward refinancing their loans, which would

have resulted in payment in full of those loans.  The Lender Defendants issued pre-textual

default notices to pressure the Borrowers into paying millions of dollars in "Default Interest" and

"Default Penalties."  The Lender Defendants then tasked their lawyer, who was also serving as

Trustee under all of the deeds of trust, to find reasons to try to justify the pretextual defaults after

the fact.

This case was also removed in July of 2024 because the Borrowers were about to take the

corporate depositions of the Lender Defendants, and their employees, in which the Borrowers

were highly likely to develop additional evidence in support of their claims.  Now the Lender

Defendants are trying, though a summary judgment decision, to prevent the Borrowers from

obtaining information in discovery that they know will be unfavorable to their positions.

III.     THE LEGAL STANDARDS

A.     The Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and

plain statement of the claim showing that the pleader is entitled to relief, to give the defendant

fair notice of what the claim is about and the grounds upon which it rests.  *See, e.g.*, *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6), "the 'complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief [that?] is plausible on its face.'"  *See, e.g.*, *Wood v. Moss*, 134 S. Ct.

2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Since our system

favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied

only after less dire alternatives have been explored without success."  *Trakas v. Quality Brands,*

*Inc.*, 245 U.S. App. D.C. 165, 759 F.2d 185, 186-87 (1985) (citing *Camps v. C & P Telephone Co.*, 223 U.S. App. D.C. 396, 692 F.2d 120, 123-24 (D.C. Cir. 1981)).

Because the Borrowers have more than pled facts sufficient to support plausible claims against SF NU, the Motion to Dismiss should be denied.

    B.    <u>The Motion for Summary Judgment Standard</u>

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.* The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Summary judgment "is not appropriate when 'a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Greer*, 451 U.S. App. D.C. 45, 47, 987 F.3d 1089, 1091 (2021) (quoting *Thompson v. District of Columbia*, 967 F.3d 804, 813, 448 U.S. App. D.C. 411 (D.C. Cir. 2020)). "Once it is determined that material facts are in dispute 'summary judgment may not be granted.'" *Weiss v. Kay Jewelry Stores, Inc.*, 152 U.S. App. D.C. 350, 470 F.2d 1259, 1262 (1972) (quoting *Dewey v. Clark*, 86 U.S. App. D.C. 137, 143, 180 F.2d 766, 772 (1950)). "Summary judgment is an extreme remedy and should be awarded only when the truth is clear; doubts must be resolved against the moving party." *BEACH v. RIGGS Nat'l BANK*, Civil Action No. 83-2402, 1985 U.S. Dist. LEXIS 19871, at *10 (May 13, 1985) (citing *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259 (D.C. Cir. 1972)).

When these standards are applied to Defendants' request for summary judgment, summary judgment should be denied.

<div align="center">6</div>

IV.   L<small>EGAL</small> A<small>RGUMENT</small>: W<small>HY THE</small> M<small>OTION TO</small> D<small>ISMISS SHOULD BE DENIED</small>

The Court should deny the Motion because the Borrowers have sufficiently pled Count VII (To Set Aside Fraudulent Transfers), as well as all the other claims asserted against SF NU.

A.   Count VII of the Complaint - To Set Aside Fraudulent Transfers - is Adequately Pled.

Count VII is primarily predicated on several transfers made to and by JPK NewCo, LLC ("JPK"), the named debtor in a now dismissed bankruptcy proceeding.[3]  The Court could deny the motion to dismiss based upon one undisputed fact alone that is also a judicial admission: JPK and the WCP have already admitted that the loan transfers to JPK were made with the express purpose of trying to hinder the Borrowers from collecting on their claims.  *See* Opposition of WCP Fund I LLC to the U.S. Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(B) ( ECF No. 56 in the JPK Case ("[I]nsofar as a good faith analysis of the claims in the litigation reveals relief to be sought in the form of an in rem setoff against liability due and owing on the four promissory notes, *transferring the two junior notes into a separate entity effectively serves to firewall any liability from reaching WCP or its various co-defendants*.") (italic emphasis added).[4]  This judicial admission, standing alone, defeats any argument that the Borrowers have not sufficiently pled a fraudulent conveyance claim.  The WCP and JPK have admitted that the "junior liens" were transferred to prevent liability (to the Borrowers) "from reaching WCP or its various co-defendants."[5]

---

[3]   *See In re JPK NewCo, LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Case").

[4]   In JPK's Opposition to the United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b), JPK repeated the arguments of the WCP Fund LLC in the WCP Opposition "as if set forth in substance here."  *See* ECF No. 58 at p.1. in the JPK Case.

[5]   "Firewall" is a term used both in the auto industry and the computer industry.  Cars have firewalls to prevent and hinder engine heat, noise, and fumes from reaching the passenger compartment.  Computers have "firewalls" to prevent and hinder hackers and viruses from gaining entry into, or spreading in, computer systems.

7

Indeed, the transfers to JPK represent just one type of fraudulent transfer contemplated by

D.C. law.  The Uniform Fraudulent Transfer Act, D.C. Code §§ 28-3101, *et seq.,* ("UFTA")

defines several types of fraudulent transfers.  D.C. Code

§ 28-3104(a) defines a fraudulent transfer as:

> (a) *A transfer made,* or obligation incurred, by a debtor *is fraudulent as to a creditor,* whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to *hinder, delay,* or defraud *any creditor of the debtor*; or
>>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

D.C. Code § 28-3104 (a) (italic emphasis added).

In the Third Amended Complaint, the Borrowers, as creditors, allege that, their debtor(s),

SN FU and/or the WCP, transferred the Loan Documents described in paragraphs 201-02 of the

Complaint with the intent to hinder or delay the claims of the Borrowers.  Comp. ¶¶ 257-48.

Nothing more is required to state a claim under D.C. Code § 28-3104(a)(1) or (2).  *See Bertram*

*v. WFI Stadium, Inc.,* 41 A.3d 1239, 1245 (D.C. 2012) (explaining that it is sufficient to state a

claim under the UFTA to allege that the debtor incurred an obligation with the intent to hinder,

delay, or defraud the creditor).  Moreover, contrary to Defendants' position, there is no

requirement in the UFTA that a plaintiff allege that either SN FU or the WCP were insolvent at

8

17

the time of the transfers. Rather, the insolvency of the person that made the transfer is simply

one factor, among many others, that may be considered in determining intent. *See* D.C. Code

§ 28-3104(b)(9) (one of the factors that may be considered when determining actual intent is

whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred"). A copy of D.C. Code § 28-3104 is attached as Exhibit 3 for the

Court's convenience.

Relatedly, D.C. Code § 28-3105(a) allows the Borrowers to pursue a claim based on

fraudulent conveyance against SF NU and/or the WCP if they made a transfer "to an insider for

an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to

believe that the debtor was insolvent." D.C. Code § 28-3105. A copy of D.C. Code § 28-3105 is

attached hereto as Exhibit 4. As the Borrowers also allege, the transfers by SN FU and/or the

WCP were made when the obligation was incurred by JPK at a time when JPK believed or

reasonably believed that it would incur a debt beyond its ability to pay that debt when it became

due at a time when it was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred. Compl. ¶¶ 260-61. The transfers at issue here are precisely the kind

of fraudulent transfers contemplated by the express language of the UFTA. The Borrowers have

stated a plausible claim in Count VII, so the Defendants' Motion to Dismiss Count VII should

be denied.

      B.    <u>SF NU is a Proper Defendant.</u>

Contrary to Defendants' assertions, SF NU is a proper defendant and Borrowers have

stated plausible claims against SF NU under Count II (Breach of the Duty of Good Faith and Fair

Dealing); Count III (Declaratory Judgment); Count IV ( Permanent Injunctive Relief); Count VI

for (Declaratory Judgments - Mr. Drazin Cannot Serve as the Trustee and as to the Foreclosure

Notices), and Count VII (Set Aside Fraudulent Transfers).

<center>9</center>

1.    The Borrowers Have Stated a Plausible Claim in Count II (Breach
of the Covenant of Good Faith and Fair Dealing).

"Every contract includes an implied covenant of good faith and fair dealing.". *See*

*Wright v. Howard Univ.*, 60 A.3d 749, 754-55 (D.C. 2013). To state a claim for breach of the

covenant of good faith and fair dealing based on the laws of the District of Columbia, the

following is required:

> [A] plaintiff must allege either 'bad faith or conduct that is arbitrary or
> capricious.' . . . If a party 'evades the spirit of the contract, willfully
> renders imperfect performance, or interferes with performance by the
> other party, he or she may be liable for breach of the covenant of good
> faith and fair dealing.

*See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).

In Count II, the Borrowers allege that SF NU breached the covenant of good faith and

fair dealing that is implied in every contract in the District of Columbia. The Defendants claim

that the allegations against SF NU are scant, but that is simply not true. The Borrowers allege

that the WCP Fund appears to have assigned its interest in the Second Developer RE1 DOT to

SF NU in an Assignment of Deed of Trust. Compl. ¶ 41. SF NU is believed to also have a

financial interest in the 2507 I Street Project. Compl. ¶ 94. JPK is dominated and controlled by

Mr. Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU. Compl. ¶

217. WCP Fund, WCP, Mr. Huertas, and SF NU also caused the WCP to issue each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU. Compl. ¶ 141. SF NU is named in this action based, in part, on the

Notice of Foreclosure Sale of Real Property or Condominium to Developer RE1, issued on June

23, 2023, by Mr. Drazin, apparently on behalf of SF NU. Compl. ¶ 185. Thereafter, SFNU

transferred the Developer RE1 Loan Documents. Borrowers allege that the transfer by SF NU of

the Developer RE1 Loan Documents to JPK was a transfer that was not supported by any consideration. Compl. ¶¶ 202-203. The Borrowers also allege that such transfer was made "with the specific intent to hinder or delay the adjudication of the claims in this case." Compl. ¶ 204. The Borrowers allege that the transfers were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP Fund and SF NU." Compl. ¶ 205.

The Borrowers further allege that the WCP Fund transferred the 423 Kennedy Loan Documents to JPK, an insider owned by the WCP Fund and SF NU. Compl. ¶ 201. The Borrowers allege notes and deeds of trust between the Borrowers and the WCP, and/or SF NU, and/or JPK that are contracts. Compl. ¶¶ 227-228. The Borrowers further allege that "[t]hrough their improper conduct, the Count II Defendants have breached the implied covenant of good faith and fair dealing contained in the respective contracts." Compl. ¶ 229. Additionally, SF NU is defined as one of the "Lender Defendants." Compl. ¶ 8. In the Third Amended Complaint, there are 49 allegations against the Lender Defendants. Compl. ¶¶ 16, 20, 79, 93, 96, 99, 100-03, 105-13, 131, 133-35, 138-44, 151, 157, 164, 171-72, 178, 182-84, 189, 192-95, 208-09, 212, 214-15). The Defendants do not substantively address this plethora of allegations in their Motion, instead focusing only on their claim that SF NU no longer holds the loan documents.

In pursuing this cause of action, the Borrowers' allegations against SF NU, including that it breached of the covenant of good faith and fair dealing through its actions in holding and/or wrongfully transferring the Developer RE1 Loan Documents and in interfering with the Borrowers' rights under the Loan Documents, are plainly enough to state a claim for breach of the covenant of good faith and fair dealing implicit in the Loan Documents. Therefore, dismissal of Count II is not appropriate.

11

2.      <u>The Borrowers Have Stated a Claim for Count III and VI (for Declaratory Judgment) and Count IV (Injunctive Relief).</u>

As to Counts III, IV, and VI, the Defendants' sole argument seems to be their contention that SF NU no longer owns the Loan Documents and is no longer a beneficiary under the relevant Loan Documents.  The Borrowers, however, seek to set aside the fraudulent transfers of the junior liens by SFNU to JPK.  If those transfers are set aside, the declaratory judgments and injunctive relief claims will implicate the rights of SF NU.  SF NU also participated in an attempted foreclosure on one of the properties (and may do so again).  SF NU is also responsible for the misconduct that it engaged in, as one of the Lender Defendants, before the junior liens were transferred.  Accordingly, SF NU is still a proper defendant even though it currently does not hold title to the junior liens.

3.      <u>As Discussed Above, Borrowers Have Stated a Claim in Count VII to Set Aside Fraudulent Transfers.</u>

That SF NU claims "[t]he interests of [SF NU] have been transferred to JPK" is just one fact upon which Count VII is based.  The Borrowers also allege that SF NU fraudulently transferred the Developer RE1 loan documents (the junior lien) "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP and SF NU."  Compl. ¶ 205.  Thus, SF NU's request for dismissal of Count VII is without merit and should be denied.

V.      <u>ARGUMENT: WHY SUMMARY JUDGMENT IS NOT APPROPRIATE</u>

This Court should deny the request for summary judgment because: (a) the Defendants should not be permitted to relitigate issues already determined by the Superior Court under the law of the case doctrine; (b) the Borrowers have multiple, viable defenses as to why the loans were not paid; (c) multiple disputes of material fact exist which preclude summary judgment on Counts I – VI; and (d) the motion for summary judgment is premature because the Borrowers have not have the benefit of full discovery.

12

21

As for the Defendants' "Material Facts Not in Dispute," that list consists largely of improper legal conclusions and Defendants' interpretations of the Loan Documents. In the Borrowers' Response, the Borrowers have designated each of Defendants' purported facts as disputed, admitted, and/or not material. The Borrowers also object to Defendants' legal conclusions to the extent that they are not supported by the record or are contrary to the terms of the Loan Documents. There are multiple, material disputes of fact exist that preclude the entry of summary judgment on Counts I – VI.

A.     <u>The Defendants Impermissibly Seek to Relitigate Issues Already Determined.</u>

As for the 423 Kennedy Loan Documents, on July 24, 2023, after a full evidentiary hearing, Judge Milton C. Lee, Jr. issued a comprehensive 22-page Order granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 5. In the First TRO Order, Judge Lee addressed and dismissed the Defendants' contentions as to "late" payments and a lien placed on the 423 Kennedy Property. As the Defendants have not raised any new facts, the Borrowers ask this Court to reject the Defendants' attempt to relitigate these issues and effectively reverse Judge Lee's prior factual findings and decision.

As for the Developer RE1 Loan Documents, on August 15, 2023, after a full evidentiary hearing, Judge Ebony M. Scott entered a Hearing Order by which she, among other things, granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 6. In the Second TRO Order, Judge Scott also addressed and dismissed the Defendants' contentions as to a water lien, real estate taxes, and "a breach of the deed of trust as a result of default." *See* Second TRO Order at p. 4. Relevant here, Judge Scott

observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *Id.* at p. 5. Judge Scott observed the that the parties had filed a Notice of Related Case due to the similarities between the case involving the 423 Kennedy Property and the Developer RE1 Property. Judge Scott stated that, "the Court found Judge Lee's opinion quite persuasive." *Id.*

The factual and legal determination made by Judge Lee and Judge Scott are discussed in further detail below.

        1.    <u>The July 24, 2023 Order</u>

Regarding Defendants' claim that 423 Kennedy defaulted under the Loan Documents, these issues were determined by Judge Lee who concluded that "[i]n regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default." First TRO Order at p. 11. Another matter Defendants wholly fail to address was also determined by Judge Lee – Specifically, Judge Lee addressed the WCP Fund's failure to provide the agreed upon construction to 423 Kennedy. In doing so, Judge Lee stated that, "the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs." *Id.* at p. 10. Thus, Defendants' actions constituted both a first breach under the 423 Kennedy Loan Documents and prevented 423 Kennedy from moving forward with its project. Regarding the lien placed on the 423 Kennedy Property in relation to a final order regarding a notice of infraction, Judge Lee stated that "[i]t is difficult for the Court to concluded that defendants realistically believed that it was appropriate or legally proper to base a default for multi-million dollar protect [sic] on a $500 fine that plaintiffs did not know about and was cured almost immediately after plaintiffs learned of the lien through the default." *Id.* at p. 12. Judge Lee also pointed to Section 7.6 of the deed of

trust stating that "[t]hat provision indicates the plaintiffs had the right to discharge or appeal any

lien within 30 days of the judgment." *Id*. Judge Lee concluded that Mr. Negussie's testimony

"demonstrated that 423 Kennedy acted promptly to resolve the lien once they learned of the

existence of the violation." *Id.* at p. 12. Judge Lee ultimately concluded that 423 Kennedy

"carried their burden by establishing a likelihood of success on the merits." *See id.* at p. 17.

        2.      <u>The August 15, 2023 Order</u>

In the Second TRO Order, Judge Scott observed that there is "evidence of a pretextual

basis for the default." Second TRO Order at p. 4. Judge Scott also noted that "Defendant's

counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water

bills were being sent to the wrong address." *Id.* at n. 2. Regarding the purportedly late

payments, Judge Scott observed that "[a]lthough [Mr. Negussie] admitted that four or five loan

payments were untimely, he testified that Defendants always accepted the payments." *Id.* at p. 3.

Judge Scott also observed that one of the purported defaults Defendants claim pertains to real

estate taxes "which were paid by the time Plaintiff received the default email." *Id.* at p. 4.

     B.     <u>Material Disputes of Fact Exist that Preclude the Entry of Summary
Judgment on Count I for Tortious Interference.</u>

In claiming entitlement to summary judgment on Count I (Tortious Interference) the

Defendants claim that the fourth element, resulting damages, is "key." In making this claim, the

Defendants acknowledge that at least two of the elements of this cause of action "run too close to

potential disputes of material fact." Motion at p. 21. Rather, Defendants claim, without citation

to the record, that the Borrowers have not been damaged as a result of Defendants' actions. This

is insufficient, as material disputes of fact exist regarding the damages the Borrowers have

sustained and the cause of those damages.

<div align="center">15</div>

As the Borrowers already demonstrated when responding to a similar argument made by Mr. Drazin, the Borrowers *have* suffered damages as a result of the Defendants' misconduct that includes their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects. *See* Negussie Decl. ¶ 18. There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation. *Id.* To top it off, due to nearly all of those factors and a now depressed sales market, there is very little chance that either project will result in a profit. *Id.* ¶ 19. There are also likely damages to the building because it has been vacant and open to environmental elements. *Id.* ¶ 18. Both Borrowers have also incurred carrying costs, such as property taxes, insurance, and payments to vendors. Both Borrowers have also suffered reputational damages. *Id.*

To protect their rights under the loan documents, the Borrowers were also forced to take legal action. *Id.* ¶ 10. As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs. *Id.* In sum, the damages element of Count I is the only element the Defendants attack and material disputes of fact exist that prevent the entry of summary judgment on the issue of damages. Moreover, the Defendants have again failed to cite to any admissible evidence in support of their claim that the Borrowers have not suffered damages, as required. As such, because the element of damages *is* a disputed material fact, the Defendants' request for summary judgment on Count I should be denied. *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C. 1991) (reversing trial court's grant of summary judgment in a case where "sworn complaint disputed all of the material facts relied on by [the movant's] summary judgment motion.").

16

25

C.    Material Disputes of Fact Exist That Preclude Summary Judgment on
      Count II for Breach of the Implied Covenant of Good Faith and Fair
      Dealing.

Contrary to Defendants' statement that they are alleged only to have enforced the plain

terms of the Loan Documents, the Borrowers have alleged much more in terms of facts.  This

includes that DP Capital, the WCP Fund, and SF NU did not comply with and breached the loan

documents and actively interfered with the Borrowers' ability to comply with them.  DP Capital,

the WCP Fund, and SF NU actively interfered with and/or prevented the Borrowers from

complying with the Loan Documents. *See* Borrowers' Response ¶¶ 14 and 27.   There are also

material disputes of fact regarding whether the DP Capital, the WCP Fund, and SF NU complied

with the Loan Documents.  Specifically, the Borrowers also contend that the DP Capital, the

WCP Fund, and SF NU, breached the relevant Loan Documents first.   *See id.* ¶¶ 14 and 27.

Judge Lee and Judge Scott have already made factual determinations regarding both the

Defendants' breaches and the Defendants' interference with the Borrowers' ability to comply

with the Loan Documents.  *See generally* First and Second TRO Orders.

In this case, the prevention doctrine and the first breach doctrine go hand in hand.  To the

extent Lender Defendants claim the Borrowers defaulted under the Loan Documents, the

Borrowers contend that it was the Lender Defendant's prior breaches, namely the refusal to

provide construction draws and pre-textual claims of defaults, that prevented the Defendants

from refinancing their loans, and ultimately resulting in this litigation. *See* Borrowers' Response

¶¶ 14 and 27.  As a result, the Borrowers maintain that they are not liable to the Lender

Defendants for any claimed breaches that occurred due to the Defendants' wrongful conduct, as

the Lender Defendants actively prevented the Borrowers' from complying with the loan

documents. *See Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 311 n.4 (D.C. 1984) (referring

to "the firmly established principle of contract law that prevention by one party excuses

17

performance by the other"). The Lender Defendants' actions also constituted first breaches of the Loan documents that excused the Borrowers' further performance. *See Rosenthal v. Sonnenschein Nath & Rosenthal, LLP,* 985 A.2d 443, 452 (D.C. 2009) (explaining that after a party breaches a contract, "the injured party need not continue to perform; it may abjure the contract and sue for damages."). The WCP Fund's failure to provide construction draws to 423 Kennedy was already determined to be a first breach by Judge Lee, who noted that "the project could not move forward without those funds [construction draws] being available to plaintiffs." *See* First TRO Order at p. 10.

Regarding the Defendants' contention that the Borrowers' made late payments, the Borrowers contend that the WCP Fund accepted all late payments, or were themselves responsible for those late payments by not properly crediting an interest reserve escrow, and/or waived any defaults based upon late payment. Negussie Decl. ¶ 13. To the extent the Defendants point to a "time is of the essence" clause, the WCP Fund's failure to declare defaults at the time of any alleged nonpayment constituted a waiver of the right to later declare defaults based on late payments that were accepted. As the U.S. Court of Appeals for the D.C. Circuit has previously observed, "the course of conduct of the parties may bring about a modification of their strict legal rights and obligations to the point that the creditor could be said to have created a waiver of its right to accelerate 'without at least implicitly giving prior notice of its intention to do so should default again occur.'" *See Kummli v. Myers,* 400 F.2d 774, 777 (1968) (quoting *Har-Rich Realty Corp. v. Am. Consumer Indus., Inc.,* 351 F.2d 785, 777 (1965)). There is also language in the notes suggesting that a waiver of a default can occur. *See* Section 3 of Exhibits A and E to the Motion (first sentence after subpart (d) ("Failure to exercise any of the options aforementioned or the failure to exercise any other option herein…shall not constitute a waiver

18

of the right to exercise the same *in the event of any subsequent default*."))  Most importantly for summary judgment purposes, the issue of waiver is always a question of fact.  *BDO USA, LLP v. Jia-Sobota,* 283 A.3d 699 (D.C. 2022) (noting that the question of waiver is "a fact-intensive inquiry.").

    The Borrowers also presented testimony and documentary evidence at the TRO hearings showing that the lender's own records did not list the loans in default status when the Notices of Default were sent.  *See* Exhibit 7 (Exhibit S from the Developer RE1 TRO Hearing showing that both loans for Developer RE1 were listed as "current").  The lender's records reflect the same for 423 Kennedy.  *See* screenprint from the lender's records attached hereto as Exhibit 8.  With respect to 423 Kennedy, the lender sent multiple payoff statements to 423 Kennedy, that, until December 8, 2022 did not include any default interest or default penalties that clearly, if not conclusively, supports a waiver defense and that the defaults alleged later were pre-textual.  Additionally, when Mr. Huertas was questioned about what types of default had occurred by Developer RE1, he was not able to identify any type of default nor when the loans were current or not.  *See* Exhibit 9 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirming that the lender's records did not list a "default" status until February 1, 2023).

    As the Borrowers have valid defenses to enforcement of the loan documents and there are material disputes of fact regarding DP Capital, the WCP Fund, SF NU, and JPK's intentional interference with their refinancing of the Loan Documents, the request for summary judgment on Count II should be denied.

D.       Defendants' Request as to Count IV (for Permanent Injunctive Relief)
         Should Be Rejected.

The sole basis of Defendants' request for entry of summary judgment on Count IV is

their claim that injunctive relief is not a separate cause of action.  Defendants' do not, however,

dispute that the Borrowers' may be entitled to injunctive relief.   Judge Scott implicitly rejected

this argument when it was raised in a prior Motion to Dismiss.  A copy of Judge Scott's April 7,

2023 Order is attached as Exhibit 10.   A copy of the transcript from the March 24, 2023 Initial

Scheduling Conference before Judge Scott is also attached as Exhibit 11.

The Defendants have not raised any new arguments on this issue, and relitigating the

same issue that a prior judge already decided is barred by the law of the case doctrine.  *See*

*Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) ("[t]he doctrine of law of the case

conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single

question.'").   Because the Defendants do not deny the Borrowers' entitlement to injunctive

relief, the Court should not dismiss Count IV.  If the Court does not follow the law of the case

doctrine, it should alternatively decide that injunctive relief is an available remedy here.[6]

E.       Defendants Have Not Met Their Burden as to Count III and Count VI for
         Declaratory Judgment.

As a preliminary matter, while Defendants claim they are seeking summary judgment on

both Counts III and VI as to the Borrowers' causes of action for Declaratory Judgment, they fail

to substantively address Count VI.  To the extent Defendants request summary judgment on

---

[6]     *See, e.g., Sunlight Trading, LLC v. Potomac Abatement, Inc.*, 2019 D.C. Super. LEXIS
578, 13 (D.C. 2019). In *Sunlight,* a trial judge observed that it could dismiss an injunctive relief count
"based on stylistic preferences or deny its dismissal while acknowledging that it is merely a remedy."
The judge in *Sunlight* ultimately chose the latter option by explaining "that injunctive relief is
merely a remedy for the other independent causes of action."

Counts III and VI, they claim only that the Borrowers seek advisory opinions.  The Defendants

are wrong.

It is well-established that parties to a contract may seek a declaratory judgment regarding

the existence of a contract, dispute(s) under a contract, and what the contract states and/or

allows.  *See Smith v. Wash. Post Co.,* 962 F. Supp. 2d 79, 89 (D.D.C. 2013) (explaining that

"[p]arties to a contract may request a declaratory judgment stating whether a valid contract exists

and, if so, what its provisions mean."); *see also Zlotnick v. Jack I. Bender & Sons, Inc.,* 285 F.

Supp. 548, 555 (1968) (observing that "[d]eclaratory judgment is appropriate to interpret the

written instrument running between the parties and to resolve their legal relationship.").  This is

exactly what the Borrowers seek with Counts III and VI of the Complaint – legal determinations

as to the rights of the parties under the Loan Documents.  *See* Complaint ¶¶ 230-35 and ¶¶ 250-

55.

Defendants also suggest, without support, that the Borrowers seek advisory opinions in

Count III.  But the cases they cite for support are inapposite here because the Borrowers do not

seek an advisory opinion.  In *Pueschel,* a federal trial judge rejected a request that it issue what

would amount to an advisory opinion on a dispute over the non-movant's objection to discovery

requests.  *See Pueschel v. Nat'l Air Traffic Controllers' Ass'n* 606 F. Supp. 2d 82, 86 (D.D.C.

2009) (determining that "there is no concrete discovery dispute upon which to rule" after

observing that the movant's motion "does not set forth the text of any discovery request to which

the defendant objected, much less the text of any objection.").  But unlike the plaintiffs in

*Pueschel,* the Borrowers here have set forth concrete disputes upon which they properly seek

judicial determinations regarding the rights and liabilities under the Loan Documents.  *See*

Complaint ¶¶ 230-35 and ¶¶ 250-55.  The Borrowers are entitled to the requested legal

determinations.  For these reasons, the Defendants' request for summary judgment as to Counts

III and VI should be denied.

      F.    <u>The Borrowers Are Entitled to Additional Discovery to Oppose the
Motion</u>

    Under <mark>Fed. R. Civ. P. 56(d)</mark>, if the Borrowers show by affidavit or declaration that they

cannot present essential facts to justify their opposition, the Court can: "(1) defer considering the

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order." <mark>Fed. R. Civ. P. 56(d)</mark>.  Although the Borrowers believe that

they have already demonstrated that there are multiple, material facts in dispute that preclude

summary judgment, it should be noted that there are a variety of facts, documents, and

information that the Borrowers are entitled to discover that would further support the Borrower's

opposition to the Motion.  As the Borrowers noted at the outset, if the Borrowers take the

corporate depositions of the Lender Defendants and the individuals that participated in the

decisions and actions taken here, they are highly likely to find even more evidence to support

their claims and defenses.  Those essential facts that would further support this opposition

include:

- Confirming that the Lender Defendants have waived defaults related to the alleged late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to put pressure on the Borrowers related to the 2507 I Street project and to "make trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (<mark>ECF # 30</mark>, page 14).

VI. CONCLUSION

There are multiple reasons why the Court must deny the Motions. For these reasons, and for any reasons that may be advanced at a hearing on the motions, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: April 18, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ebm@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

23

32

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; SF NU, LLC; AND WCP<br>FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>    *Defendants.* | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' LIST OF MATERIAL FACTS NOT IN DISPUTE AND LIST OF ADDITIONAL MATERIAL FACTS IN DISPUTE[1]

| Defendants' "Material Facts Not in Dispute" | Plaintiffs' Response & Supporting Evidence |
|---|---|
| 1. On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B. | The terms of the DRL Notes speak for themselves and are not disputed. |
| 2. The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D. | The terms of the DRL Deeds of Trust speak for themselves and are not disputed. |
| 3. Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 4. The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H. | The terms of the 423 Kennedy Deeds of Trust speak for themselves and are not disputed. |

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

| | |
|---|---|
| 5. Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | The terms of the Second DRL Note speak for themselves and are not disputed. |
| 6. DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 7. DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 8. DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |

|  |  |
|---|---|
| 9. Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | Denied/disputed. The terms of the Second DRL Note speak for themselves and are not disputed. But Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 10. DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7. | Denied/disputed. Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 11. The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2. | Denied/disputed. The terms of the DRL Deeds of Trust speak for themselves and are not disputed. But Developer RE1 has valid defenses and a right to cure an alleged lien default prior to a foreclosure. |
| 12. DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J. | Denied/disputed. Developer RE1 disputes this purported fact as the record demonstrates that Developer RE1 did not timely receive the water and sewer bills that resulted in the referenced lien. Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. Developer RE1 did not receive the invoices 2/23/22, 3/18/22, 4/19/22, and 6/16/22 until August 31, 2022.  Negussie Decl. ¶ 11.<br><br>Judge Scott also made findings that Developer RE1 took immediate steps to resolve the lien and this could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition.<br><br>The lender's own records show that the loan was never in default status as a result of this |

| | lien. *See* Exhibit 7 to the Borrowers' Opposition. |
|---|---|
| 13. DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed). | Disputed. Developer RE1 disputes this purported fact as it paid the taxes on the Developer RE1 Property. Negussie Decl. ¶ 12.<br><br>The lender's own records show that the loan was never in default status as a result of this lien. *See* Exhibit 7 to the Borrowers' Opposition. |
| 14. DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2] | Developer RE1 presented evidence at the Developer RE1 TRO Hearing showing that the lender's own records did not list the loans in default status when the Notices of Default were sent. *See* Exhibit 7 to the Borrowers' Opposition and Exhibit S from the Developer RE1 TRO Hearing (showing that both loans for Developer RE1 were listed as "current").<br><br>This alleged fact is also disputed because at his deposition, Mr. Huertas could not state what DRL loans were current and what loans were not current. *See* Exhibit 9 to Opposition (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirmed that the lender's records did not list a "default" status until February 1, 2023).<br><br>Developer RE1 further disputes this purported fact as WCP accepted all payments Developer RE1 made. Negussie Decl. ¶13.<br><br>Developer RE1 also disputes this purported fact because the Lander Defendants interfered with, and prevented, the refinancing of the loans that Developer RE1 had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 14. |

| | This summary of alleged defaults is also disputed for the reasons previously stated in the prior references to these alleged defaults. |
|---|---|
| 15. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 16. 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
| 17. 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 18. 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were |

| Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10. | either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
|---|---|
| 19. 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 20. 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 21. 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 22. 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |

| 23. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
|---|---|
| 24. The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 25. Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1. | The terms of the 423 Deeds of Trust are not disputed. |
| 26. On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L. | Denied/disputed. 423 Kennedy was not aware of the lien, and when it became aware, it immediately took steps to resolve it.<br><br>Judge Lee also made a finding that 423 Kennedy took immediate steps to resolve the lien and that it was highly questionable this $500 fine could validly serve as a basis for a default on a multi-million dollar project. *See* Exhibit 5 to the Borrowers' Opposition.<br><br>The lender's own records show that the loan was never in default status as a result of this lien. *See* Exhibit 8 to the Borrowers' Opposition. |
| 27. In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, | Disputed/denied. 423 Kennedy presented evidence at its TRO Hearing showing that the lender's own records did not list the loans in |

| | |
|---|---|
| with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3] | default status when the Notices of Default were sent. *See* Exhibit 8 to the Opposition.<br><br>423 Kennedy disputes this purported fact as it the lender who held the loan documents at the time of the alleged defaults who first breached the same with their refusal to provide construction draws. Negussie Decl. ¶ 16.<br><br>423 Kennedy further disputes this purported fact as WCP accepted all payments 423 Kennedy made. Negussie Decl. ¶ 13.<br><br>423 Kennedy also disputes this purported fact as the Lender Defendants interfered with – and—prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 15.<br><br>423 Kennedy had valid legal and factual defenses to the alleged defaults, such as first breach, the prevention doctrine, and waiver. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## DECLARATION OF MEL NEGUSSIE[1]

    I, Mel Negussie, am over 18 years of age, have personal knowledge of the facts set forth herein, and declare as follows:

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

1.    423 Kennedy St Holdings, LLC ("423 Kennedy") is a domestic, sole purpose, limited liability company that owns the real property known as 423 Kennedy, N.W., Lot 56, Square 3260 (the "423 Kennedy Property").

2.    Developer RE1, LLC ("Developer RE1") is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "5501 1st Street Property").

3.    I am a member of both Developer RE1 and 423 Kennedy.

4.    The sole purpose of 423 Kennedy is to own and develop the 423 Kennedy Property.

5.    The sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

6.    In January of 2020, DP Capital LLC d/b/a Washington Capital Partners ("WCP") helped 423 Kennedy obtain a construction finance loan for the 423 Kennedy Property, which original loan was later refinanced.  WCP Fund I, LLC ("WCP Fund") is the lender under the loan documents.

7.    On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the 5501 1st Street Property, which original loan was later refinanced. WCP Fund is the lender under the loan documents.

8.    By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein.

9.    On December 8, 2022, I received two unsigned Notices of Default by email, one regarding the 5501 1st Street Property and the other regarding the 423 Kennedy Property. Neither Notice of Default set forth a default.  The email also included Payoff Statements.  The

2

Payoff Statements demanded additional amounts of $727,598.77 (for Developer RE1) and $1.5 million (for 423 Kennedy) for "Default Interest" and "Default Penalt[ies]."

10.     As a direct result of the wrongful conduct of Defendants, Developer RE1 and 423 Kennedy were forced to initiate and/or maintain legal action to protect their rights under the loan documents referenced herein. As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs.

11.     Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022.  Developer RE1 did not receive the invoices 2/23/22, 3/18/22, 4/19/22, and 6/16/22 until August 31, 2022.

12.     Developer RE1 paid all taxes on the Developer RE1 Property.

13.     All interest payments made by the Developer RE1 and 423 Kennedy were accepted by WCP.

14.     The "Notice of Default" WCP issued to Developer RE1 interfered with –and— prevented the refinancing of the loans that  Developer RE1 had secured, or was in the process of securing with Main Street Bank.

15.     The "Notice of Default" WCP issued to 423 Kennedy interfered with –and— prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of securing with Main Street Bank.

16.     On or about October 6, 2022, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

17.     Developer RE1 and 423 Kennedy were not required to make interest payments after Defendants breached the Loan Documents.

18.     The Borrowers have already suffered damages as a result of Defendants'
misconduct to include damages caused by their inability to refinance the loans, rising interest
rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the
projects.  There will also be damages for the increased costs to complete the projects as a result
of supply chain shortages and inflation.  As to 423 Kennedy, there are likely damages to the
building at the 423 Kennedy Property because it has been vacant and open to environmental
elements.  Both Borrowers have incurred carrying costs, such as property taxes, insurance, and
payments to vendors.  Both Borrowers have suffered reputational damages.  I have personally
fielded questions from other developers and financers about why the projects at the 423 Kennedy
Property and the 5501 1st Street Property were not completed.

19.      Due to nearly all of the factors listed above, and a now depressed sales market,
there is very little chance that either project will result in a profit.

20.     Developer RE1 and 423 Kennedy seek to discover information and documents as
to the Defendants' actions in relation to the loan documents referenced herein to include the
following:

- Confirming that the Lender Defendants have waived defaults related to the alleged
  late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans
  to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to
  put pressure on the Borrowers related to the 2507 I Street project and to "make
  trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (ECF # 30, page 14).

21.     The facts alleged in the Third Amended Complaint are true and correct to the best of my knowledge.

22.     I testified truthfully at two different TRO hearings held on Friday, July 21, 2023 and Wednesday, July 26, 2023.

23.     The decisions entering a TRO issued by both Judge Milton Lee and Judge Ebony Scott accurately reflect and summarize most of the testimony that I gave at the two TRO hearings.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of April, 2025

_____

Mel Negussie

## [D.C. Code § 28-3104](#)

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code  >  Division V. Local Business Affairs. (Titles 25 — 37)  >  Title
28. Commercial Instruments and Transactions. (Subts. I — II)  >  Subtitle II. Other Commercial
Transactions. (Chs. 21 — 54)  >  Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3104. Transfers fraudulent as to present and future creditors.

**(a)**  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

**(1)**  With actual intent to hinder, delay, or defraud any creditor of the debtor; or

**(2)**  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

**(A)**  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

**(B)**  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**(b)**  In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

**(1)**  The transfer or obligation was to an insider;

**(2)**  The debtor retained possession or control of the property transferred after the transfer;

**(3)**  The transfer or obligation was disclosed or concealed;

**(4)**  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

**(5)**  The transfer was of substantially all the debtor's assets;

**(6)**  The debtor absconded;

**(7)**  The debtor removed or concealed assets;

**(8)**  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

**(9)**  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

**(10)**  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

**(11)**  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, [42 DCR 6773](#).)

Erin McAuliffe

47

Case 24-10021-ELG    Doc 543    Filed 09/01/25    Entered 09/01/25 20:52:00    Desc
Exhibit A in DC Code Section Part 04    Page 528 of 1284
§ 28-3104. Transfers fraudulent as to present and future creditors.

Annotations

# Notes

**Prior Codifications.**

1981 Ed., *§ 28-3104.*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *§ 28-3101.*

**Editor's notes.**

Uniform Law: This section is based upon § 4 of the Uniform Fraudulent Transfer Act.

# CASE NOTES

 **Attachment.**

 **Transfer.**

**Attachment.**

Client's judgment lien did not automatically attach to the attorney's "share" of the property upon the divorce, because he had no such share as the property was owned solely by the wife, as resolved by the couple's property settlement agreement, the divorce decree, and the warranty deed; the Superior Court did not err in denying the client's motion for a determination that the property was dually owned by the couple, and the property was not an assert of the attorney that could be the subject of a transfer that was fraudulent, and the client had at no time a right to attach the property. *Blount v. Padgett, 261 A.3d 200, 2021 D.C. App. LEXIS 294 (D.C. 2021).*

**Transfer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64. 2-2603(G), a disclaimer was not a transfer. *Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020).*

# Research References & Practice Aids

**Section references.**

This section is referenced in *§ 28-3103*, *§ 28-3108*, and *§ 28-3109.*

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

## [D.C. Code § 28-3105](#)

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code  >  Division V. Local Business Affairs. (Titles 25 — 37)  >  Title 28. Commercial Instruments and Transactions. (Subts. I — II)  >  Subtitle II. Other Commercial Transactions. (Chs. 21 — 54)  >  Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3105. Transfers fraudulent as to present creditors.

**(a)**  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**(b)**  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, *[42 DCR 6773](#)*.)

Annotations

## Notes

**Prior Codifications.**

1981 Ed., *[§ 28-3105.](#)*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *[§ 28-3101.](#)*

**Editor's notes.**

Uniform Law: This section is based upon § 5 of the Uniform Fraudulent Transfer Act.

## CASE NOTES

**Disclaimer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64.2-2603(G), a disclaimer was not a transfer. *[Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020)](#)*.

# Research References & Practice Aids

**Section references.**

This section is referenced in § 28-3103, § 28-3108, and § 28-3109.

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

423 KENNEDY ST HOLDINGS LLC,    :
      **Plaintiff**    :
      :
      :
  **vs**    : **Docket No. 2023 CAB 4260**
      :
      :
DP CAPITAL /D/B/A WASHINGTON  :
PARTNERS, ET. AL.    :
      **Defendant**  :

### ORDER

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of

Contract (Count 1); tortious interference with business relations (Court II); breach of

duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee

(Count VI).  The Complaint also seeks declaratory judgments regarding the meaning

of provisions in the two Deeds of Trusts and a determination that the liquidated

damages provisions are unenforceable because those provisions constitute a penalty

(Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position

because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's

seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count

V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023

defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,

plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3) that the balance of injuries favors granting an injunction, and 4) that the public interest would be served by granting the request for an injunction. *Ifill v. District of Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to demonstrate that each of the factors, taken together, weigh in favor of issuing an injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I. Likelihood of Success on the Merits

### A. The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the existence of a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute regarding whether there was a valid contract between the parties. The parties do not agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants improperly discontinued performance of the contract by stopping construction draws for the 423 Kennedy Street property (the project). When defendants discontinued construction draws, they knew that plaintiff would not be able to move forward with the project. Shortly after the construction draws stopped, defendant gave notice of default to plaintiffs. Plaintiffs claim that there is no basis for the default because plaintiffs had complied with the terms of both deeds of trust and the reasons advanced by defendants for the default is nothing more than a pretext. According to plaintiff, the real reason for the default was to create leverage against plaintiffs to force them to

52

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion. Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan. In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property. Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1] Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares. 423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property. According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022. Approximately 50% of the project was completed at the time of the refinancing. The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00. Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default. During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment. The first payment was due on May 1, 2022. That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust. When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022. Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners. Mr. Huertas informed Negussie that there would be no further construction draws for the project. According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings. Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time. Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022.  Defendants provided notice there would be no further construction draws after October 2022.[13]  In that same email Daniel Huertas inquired about the "status of the payoffs of both loans."  Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14]  The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96.  There is no reference to a construction draw for the second deed of trust.  A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15]  The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022.  Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing.  Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id*, at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022.  The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street.  Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18]  Neither notice identifies the basis for the default.  Each of the payoff statements make no reference to unpaid late fees.  Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants.  While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement.  In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws.  Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.?  What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date. In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default. First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments. It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments. According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current. Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately. Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.
[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited*

*Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan. The email exchanges between Negussie and Huertas demonstrates this knowledge. As Negussie testified, defendants provided "clean" payoff statements that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022. The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due. As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan. Based on the email exchange, Huertas knew of the

64

impending refinancing efforts with Main Street Bank.  The issuance of the new December 2022 payoff statements interfered with plaintiffs' ability to complete the refinancing with Main Street Bank.  The evidence of defendants' intent to interfere with the business relationship between plaintiffs and Main Street Bank is found in WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a history of defaulting loans late in the construction process to gain control over the project and because the 423 Kennedy project was close to completion, defendants would be particularly motivated to declare a default on this project because it was so close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they are likely to prevail on the claim for tortious interfere.  Defendants have failed to produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict of interest created by the deeds of trust because he had a fiduciary duty to both the borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel for defendants in connection with the default and foreclosure sale.  Plaintiff argues that when a fiduciary has conflicting interest, the burden shifts to the trustee to demonstrate that he has been faithful to his duties and did not take action that was influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463, 465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure.  Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default.  According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022.  The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."  Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both the borrower and the lender.  Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both.  The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units.  A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project.  As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money.  The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III.  Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant.  The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023.  In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well.  In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action.  As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project.  The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project.  While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

68

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the rule creates a mandatory imposition of a bond for the protection of the enjoined party has not been directly addressed by the District of Columbia Court of appeals.  The local rule is almost identical to the federal version, so federal precedent is instructive.  The circuits are split on this issue and the circuits that have interpreted the rule as being discretionary have recognized several exceptions to the mandatory language.  The District of Columbia Court of Appeals has suggested that the security requirement is phrased in mandatory terms with the amount of any bond imposed being left to the discretion of the trial court.  If the trial court exercises its discretion to waive the bond requirement, it is important that the trial judge states the reasons for taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  First, defendant have not provided any evidence of what an appropriate bond might be under the circumstances.  While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.

    July 24, 2023                                   /s/         
      Date                                  MILTON C. LEE, JR.
                                        ASSOCIATE JUDGE

cc:  James D. Sadowski, Esq.
      Alexandria J. Smith, Esq.
      Counsel for Plaintiffs
      jds@gdllaw.com

      Maurice B. Versandig
      Counsel for Defendants
      mac@mbvesq.com

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.    2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a** **WASHINGTON CAPITAL** **PARTNERS,** *et al.*, | **Next Event: Remote Mediation Session** **November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

<u>**HEARING ORDER**</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed
Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale
("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a
Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023;
and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on
July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property
at issue, which was scheduled for 2:00 p.m. the same day.  The source of the controversy is
Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022.
According to the Defendant, the failure to resolve the alleged default entitled Defendants to
foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the
operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of
$524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1ˢᵗ Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full.  As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms.  The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements.  The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means.  Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260.  In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's  counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

that were necessary for the project to move forward.  Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale.  Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing.  Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

<u>**Copies via Odyssey to**</u>**:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

| Property: | 5501 1st St NW Washington DC 20011-5207 |
|---|---|

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| GRAND TOTAL | $ 362,353.69 |
|---|---|

79



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifgmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i





https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym





https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy





https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
|---|---|
| Payment Amount: $5,410.15, Due Date: 06/01/2022 | |



<https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e>





https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay





https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7ugcrtu4





https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcutegpdscyz4wj4m





https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e





https://payment-link.azurewebsites.net/p/d5t2iew65ufupjdzhpvbs6b7ge

419 Kennedy St NW # 423 Washington DC 20011-6523                               Paid ✓
Payment Amount: $1,008.80, Due Date: 03/31/2022



https://payment-link.azurewebsites.net/p/gwgd3blbzgwujnppboapqylagu

419 Kennedy St NW # 423 Washington DC 20011-6523                               Paid ✓
Payment Amount: $418.67, Due Date: 03/31/2022



https://payment-link.azurewebsites.net/p/7juaua4o4c7uxio72znu45x3bm

419 Kennedy St NW # 423 Washington DC 20011-6523 — Paid
Payment Amount: $31,628.07, Due Date: 05/01/2022



https://payment-link.azurewebsites.net/p/cfxd3oagjbfe7nzrzj6rncl7ra



419 Kennedy St NW # 423 Washington DC 20011-6523 — Paid
Payment Amount: $12,560.00, Due Date: 05/01/2022



https://payment-link.azurewebsites.net/p/dcxcbrbjrijunag77txkyukc3i



https://payment-link.azurewebsites.net/p/gmx2wqnzvuje5bpjy4b2nbvnji





https://payment-link.azurewebsites.net/p/ivghhm2crshexhazoa77nomije



https://payment-link.azurewebsites.net/p/uszys6sdzqfetjee47dbzortcm





https://payment-link.azurewebsites.net/p/ntgkzgurvkqu5eufpuzc42qjtm



https://payment-link.azurewebsites.net/p/rzmwi4pvsiqejgw7fylkt5mrsq





https://payment-link.azurewebsites.net/p/zt3j67rx26ie7h6hsaissn6dwq



https://payment-link.azurewebsites.net/p/qtssglpdepxutiyic4uns6ksuy





https://payment-link.azurewebsites.net/p/jgk2uho67krufandts7ohoprk4



https://payment-link.azurewebsites.net/p/qtssglpdepxutiyic4uns6ksuy





https://payment-link.azurewebsites.net/p/mpzefwl7eriufbxtjt4cngwb4a



https://payment-link.azurewebsites.net/p/qlrpvgtbr7yezcogmwf2tbjx6q





https://payment-link.azurewebsites.net/p/feyrtesljkzuddc2okywtmjevu



https://payment-link.azurewebsites.net/p/gppin77bqfyu7a47457vhksvyu



1          SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                        CIVIL DIVISION

3     _____

4     DEVELOPER RE1, LLC,

5              Plaintiff,

6         v.                              No.

7     DP CAPITAL, LLC d/b/a WASHINGTON    2022-CAB-005935

8     CAPITAL PARTNERS, et al.,

9              Defendants.

10    _____

11                      DEPOSITION OF

12                     DANIEL HUERTAS

13    DATE:          Wednesday, July 19, 2023

14    TIME:          10:01 a.m.

15    LOCATION:      Greenstein DeLorme & Luchs, PC

16                   801 17th Street Northwest, Suite 1000

17                   Washington, DC 20006

18    REPORTED BY:   Matthew Yancey, Notary Public

19    JOB NO.:       6012872

20

21    PAGES 87-100, 105-222, 251-287 ARE CONFIDENTIAL

22

Page 2

```
1        A P P E A R A N C E S
2   ON BEHALF OF PLAINTIFF DEVELOPER RE1, LLC:
3      JAMES D. SADOWSKI, ESQUIRE
4      ALEXANDRIA J. SMITH, ESQUIRE
5      Greenstein DeLorme & Luchs, PC
6      801 17th Street Northwest, Suite 1000
7      Washington, DC 20006
8      jds@gdllaw.com
9      ajs@gdllaw.com
10     (202) 452-1400
11
12  ON BEHALF OF DEFENDANTS:
13     MAURICE B. VERSTANDIG, ESQUIRE
14     The VerStandig Law Firm, LLC
15     1452 West Horizon Ridge Parkway, Suite 665
16     Henderson, NV 89012
17     mac@mbvesq.com
18     (301) 444-4600
19
20  ALSO PRESENT:
21     Mel Negussie, Developer RE1, LLC
22
```

Page 4

```
1        I N D E X (Cont'd)
2   QUESTIONS INSTRUCTED NOT TO ANSWER
3      PAGE           LINE
4      27             19
5      34             6
6      50             15
7      51             10
8      110            12
9      269            8
10     274            8
11
12
13
14
15
16
17
18
19
20
21
22
```

Page 3

```
1          I N D E X
2   EXAMINATION:                    PAGE
3      By Mr. Sadowski          7
4
5          E X H I B I T S
6   NO.      DESCRIPTION          PAGE
7   Exhibit 1   Plaintiff's requests production  73
8   Exhibit 2   Notice of foreclosure      90
9   Exhibit 3   Complaint Developer RE1, LLC   135
10  Exhibit 4   First amended complaint    138
11  Exhibit 5   Email Thread 4:31      155
12  Exhibit 6   Chart Status Reason     165
13  Exhibit 7   Chart Status Reason WCP 0708   176
14  Exhibit 8   Email Thread WCP 0628    258
15
16
        * retained by Mr Sadowski
17
18
19
20
21
22
```

Page 5

```
1        P R O C E E D I N G S
2       THE REPORTER:  Good morning.  My name
3   is Matthew Yancey; I am the reporter assigned by
4   Veritext to take the record of this proceeding.  We
5   are now on the record at 10:01 a.m.
6       This is the deposition of Daniel
7   Huertas --
8       MR. HUERTAS:  Yes, sir.
9       THE REPORTER:  -- taken in the matter
10  of Developer RE1, LLC vs. DP Capital, LLC doing
11  business as Washington Capital Partners, et al., on
12  July 19, 2023, at 801 17th Street Northwest,
13  Suite 1000, Washington, DC, 20006.
14      I'm a notary authorized to take
15  acknowledgments and administer oaths in the District
16  of Columbia.
17      Additionally, absent any objection
18  before the witness is sworn, all parties and the
19  witness understand and agree that any certified
20  transcript produced from the recording of this
21  proceeding:
22      - is intended for all uses permitted
```

2 (Pages 2 - 5)

1  Q  Is Paragraph 29 true?

2  A  No, it's not true.

3  Q  Okay. What's not true about it?

4  A  That he didn't make all the payments, it's

5 not true.

6  Q  What payments, as of November 30, 2022, had

7 not been made?

8  A  I don't have the record. So I can't -- I

9 can't tell you. I don't have the record.

10  Q  Okay. Who has that record?

11  A  I don't have the record.

12  Q  I know you don't have the record. You've

13 told me that now twice.

14  A  Yeah.

15  Q  Who has that record of payments as of

16 November 3, 2022, that there was an unpaid balance due

17 at that time?

18  A  Right. The servicing department should have

19 that record. I don't have that record.

20      MR. SADOWSKI: Okay. Just can second.

21 Mel, can I have the Post-its? Okay.

22 //

1 BY MR. SADOWSKI:

2  Q  Paragraph 32, Page 5 of Exhibit 4, is that

3 true?

4  A  Paragraph 32?

5  Q  Paragraph 32, yes.

6  A  Okay. Let me read it. No, that's not true.

7  Q  Okay. What's untrue about it?

8  A  Borrower was in default.

9  Q  And how did the WCP -- how do you know that?

10  A  Borrower was in default.

11  Q  Well, in Paragraph 29, you couldn't tell me

12 whether or not the borrow was in default because you

13 didn't have the records or how much was due.

14  A  Right.

15  Q  So how can you say with confidence that the

16 borrower's in default, under 32, if you don't have the

17 records?

18  A  Borrower's that are not current with their

19 payments are in default.

20  Q  Okay. So --

21  A  That's a -- not making their -- not making a

22 payment is a form of default.

1  Q  Okay. So as of November 15, 2022, what

2 outstanding payments were there under the loans?

3  A  Like I said, I don't have the record.

4  Q  So you don't know.

5  A  I can tell you that Mr. Negussie was in

6 default.

7  Q  Now, when you say Mr. Negussie is in

8 default, do you mean RE1?

9  A  RE1.

10  Q  Okay.

11  A  All of the above.

12      MR. SADOWSKI: All right. Okay. It's

13 two pages. You're going to need to find us a stapler,

14 Alex. I don't think you'll have to go far until this

15 stapler arrives.

16      THE REPORTER: Sure.

17      MR. SADOWSKI: Are we on No. 6?

18      MR. VERSTANDIG: There's no Bates on

19 the second page.

20      MR. SADOWSKI: That's because it's

21 all -- it's all one page. I'll represent that --

22      MR. VERSTANDIG: Oh. It's just 54; got

1 it.

2      MR. SADOWSKI: -- Exhibit 6 is an

3 enlarged printout of WCP 0054.

4      (Exhibit 6 was marked for

5      identification.)

6      MR. VERSTANDIG: Thank you.

7 BY MR. SADOWSKI:

8  Q  Daniel, let me know when you're done looking

9 at Exhibit 6.

10  A  Sure. Go ahead; ask your question.

11  Q  Oh, okay. What is it?

12  A  It looks like -- I -- I mean, I don't have

13 here the record but payments of the 1 -- RE1, sorry.

14  Q  Okay. Are you able to read the print on

15 this exhibit?

16  A  I don't have the property address here. So

17 I'm sorry. If I don't have a property address or

18 something that can say that to the fact, I cannot -- I

19 can't use this.

20      MR. VERSTANDIG: I'll stipulate that

21 this is counterintuitively 54, which came first in the

22 production, is the second loan to Developer RE1

42 (Pages 162 - 165)

Page 166

1   secured by 5501/505 [sic] 1st Street.
2           MR. SADOWSKI:  Is there another one of
3   these for the first loan in the production?
4           MR. VERSTANDIG:  Yeah, I believe it's
5   either 606 or 608 in the production.  If I'm off by a
6   few pages, I am not messing with you for sport; I
7   promise.
8           MR. SADOWSKI:  Same drill for Margaret,
9   thanks.
10          MR. VERSTANDIG:  If it's not 606 or
11  608, look at 806 or 808.  I have the ability to jumble
12  numbers in my mind.
13          MR. SADOWSKI:  It's one of those days
14  of card counting.
15  BY MR. SADOWSKI:
16      Q   Okay.  So as for Exhibit 6, Daniel, your
17  counsel has indicated that he's represented that this
18  is a screen print from the system from the second deed
19  of trust.
20      A   Okay.
21      Q   Do you believe him?
22          MR. VERSTANDIG:  Just to be clear, I

Page 167

1   didn't say "from the system," and if you need me to
2   extrapolate there, I can.
3           MR. SADOWSKI:  All right.  Why don't
4   you just tell Daniel what it is so he knows what to
5   look at?
6           MR. VERSTANDIG:  All right.  I'll
7   represent as follows.  The loan file that was produced
8   in this case for the second loan to Developer RE1
9   includes an Excel sheet that is demonstrative of the
10  payment history on the second loan.  This is a print
11  of that Excel sheet.
12          THE WITNESS:  Okay.
13  BY MR. SADOWSKI:
14      Q   Okay.  Looking at Exhibit 6, can you tell me
15  whether, as of November 3, 2022, there was an overdue
16  payment under the second deed of trust?
17      A   Mr. Negussie was in default starting on
18  July 1st.
19      Q   That wasn't the question.  The question was,
20  looking at Exhibit 6, as of November 3, 2022, what
21  payments under the second deed of trust were unpaid as
22  of that date?

Page 168

1       A   Right.  I'm -- I'm responding based on what
2   I can answer in my role.  I can see that Mr. Negussie
3   was defaulted as of July.
4       Q   Right.  But that's not the question.  The
5   question is, how much money was owed, or was any money
6   owed, as of November 3, 2022?
7       A   I can't -- I can't answer that question.
8   I'm not in the accounting department.  I'm just going
9   to tell you, based on what I see, based on what you
10  presented to me, that Mr. Negussie was in default in
11  July.
12      Q   Okay.  So you can't read this printout and
13  figure out whether or not there was an outstanding
14  amount due under the loan at any date.
15      A   No, I can't.
16      Q   All right.
17      A   I can just tell you, based on what I see
18  here in front of me when Mr. Negussie got in default.
19  Mr. Negussie started being default July.
20      Q   Right.  But when was this notation put in
21  here, "defaulted"?
22      A   As I stated, I'm not in that department.

Page 169

1   You're asking me a question --
2       Q   I'm asking you to look at it right now.
3   What does it say?
4       A   I answered the question.
5       Q   Okay.  Well, I'm looking at it, and I'm
6   looking at the first page.  And the word "defaulted"
7   doesn't appear until February 1, 2023.  Do you see
8   that?  You're not looking at it.
9       A   No, because I answered your question.  You
10  can -- you can ask me 20 different ways --
11      Q   No, you're evading the question.
12      A   No, you can ask me 20 different ways, like I
13  explained to you.
14      Q   On Exhibit 6, when is the first indication
15  that RE1 was in default?  On Exhibit 6, where is it?
16          MR. VERSTANDIG:  Object, but you can
17  answer.
18          THE WITNESS:  I already answer your
19  question.
20  BY MR. SADOWSKI:
21      Q   You didn't answer the question.  Okay.  What
22  date was Developer RE1 noted in default?

43 (Pages 166 - 169)

Page 170

1   A   I'm looking -- I'm looking at the payment,
2 July 14th --
3   Q   Okay.  And under the Servicing Status
4 Category --
5   A   I'm also -- I'm -- sir, I'm speaking.  You
6 said not to interrupt me.
7   Q   You're right.
8   A   I don't interrupt you.  So please, don't
9 interrupt me.
10  Q   Yeah.
11  A   Mr. Negussie has a copy of his promissory
12 notes, and according to the promissory notes and the
13 stipulation of it, as the deed of trust,
14 that's -- he's in default.
15      So I don't have to look at it here.  I just
16 got to look at when the payment was made, July 14.
17  Q   That's not the question.  The question is
18 where on Exhibit 6 does it indicate -- does it use the
19 word "defaulted"?  What date was the first date?
20  A   I don't know how to answer your question.
21 I'm sorry.
22  Q   You can look at Exhibit 6, and you look for

Page 171

1 the word.
2   A   I already told you that Mr. Negussie is in
3 default.
4       MR. VERSTANDIG:  All right.  Hold on.
5 I object to the question.  I won't give a speaking
6 objection.
7       MR. SADOWSKI:  On what basis?
8       MR. VERSTANDIG:  That said --
9       MR. SADOWSKI:  A non-speaking
10 objection, basis?
11 BY MR. SADOWSKI:
12  Q   Where on this document --
13      MR. SADOWSKI:  What's the objection?
14      MR. VERSTANDIG:  Let me finish.  With
15 my objection noted, and if you want -- but let me
16 finish because I think you're going to like where this
17 goes.
18      Mr. Huertas, you can look at the
19 document and indicate, just reading the document,
20 without any external scope of knowledge, where on that
21 document the word "defaulted" first appears, and you
22 can answer that question.

Page 172

1       And I don't have an objection to you
2 answering that question.  Depending on how things get
3 rephrased, I may interpose a different objection in a
4 minute.
5       THE WITNESS:  Right.
6       MR. VERSTANDIG:  But you can indicate
7 where on this document the word "defaulted" first
8 appears.
9       THE WITNESS:  Right.  I see in this
10 document the word "default" appears in one, two -- on
11 the February 1, 2023, payment.
12 BY MR. SADOWSKI:
13  Q   Okay.  And is that also correct -- from the
14 Servicing Status Column?
15  A   Well, that's where --
16      MR. VERSTANDIG:  Can we stipule that
17 doesn't appear anywhere other than the Service --
18      MR. SADOWSKI:  Yeah.  Can I have the
19 witness here just --
20 BY MR. SADOWSKI:
21  Q   I'm talking about this.
22  A   Yeah, that's what I read.

Page 173

1   Q   Servicing Status.
2   A   Right.
3   Q   See that, those words.  Right?
4   A   Yeah, that's what I see.
5   Q   Now, going to the next page, which is the
6 continuation of the spreadsheet --
7   A   Right.
8   Q   -- where does the word "defaulted" first
9 appear on that second page of Exhibit 6?
10      MR. VERSTANDIG:  Hold on.  I don't
11 think it's a continuation.  I think it's just a
12 blowup.
13      THE WITNESS:  Yeah, that's --
14      MR. SADOWSKI:  You might be right.
15 Then I should be looking at the second page.
16 BY MR. SADOWSKI:
17  Q   Okay.  All right.  So the second page of
18 Exhibit 6 is just an enlarged version of the first
19 page.
20  A   Blurry version of the first page.
21  Q   Okay.  All right.  When does the system at
22 WCP start putting in the word "defaulted"?

44 (Pages 170 - 173)

Page 174

1  A  In this specific situation, it says right
2  here.  The "defaulted" word appears on the
3  February 1st payment.
4  Q  Right.  I got that.  But I'm trying to --
5  A  Right.
6  Q  Okay.  Why did it change from -- okay.
7  Let's go back.  Let's go to another question.  Looking
8  at the line right below February 1, 2023, there's a
9  date January 1, 2023.  Do you see that?
10  A  Yeah.  January 1, 2023, I see that.
11  Q  Okay.  And in the Servicing Status, what
12  does it indicate in that column?
13  A  Well, it reads Servicing Status Current.
14  Q  Okay.  So what does that mean, Serving
15  Status Current?
16  A  Well, I can tell you what it says here.  It
17  says "current."  It doesn't mean anything to me.
18  Q  Okay.  Then why --
19  A  It says the word "current."
20  Q  -- do you use the terms "current,"
21  "defaulted," "late," "one to 15 days," "originated"?
22  Why are those terms used on servicing status?

Page 175

1  A  As I stated, this is an internal code for
2  this.  So right now, it says "current."
3  Q  Okay.  Who's in charge of making the codes?
4  A  Nobody's in charge of making the codes.
5  Q  What is your understanding of what
6  the word "current" means?
7  A  Like I said, the -- the coding here is -- it
8  says "current."
9  Q  All right.  That's not the question.  What
10  is your understanding about what the word "current"
11  means?
12  A  That for this specific line, it says that
13  activity is "current."
14  Q  Okay.  So as of January 1, 2023, what, if
15  any, payment due under the loan was not current?
16  A  Except for that specific line, it says
17  "current."
18  Q  Okay.  So as of that date, doesn't that mean
19  that there's no amount owed under the loan?
20  A  For that specific activity, it shows that
21  it's current.
22  Q  Okay, so 7.

Page 176

1  (Exhibit 7 was marked for
2  identification.)
3  THE WITNESS:  What are these ones?
4  MR. VERSTANDIG:  I will stipulate for
5  the record that this is a printout of an Excel sheet
6  with the loan file for the first promissory note that
7  correlates to the first deed of trust where Developer
8  RE1 is obligated on the promissory note and the
9  property situated at 5501/5505 1st Street serves as
10  collateral on the deed of trust.
11  Q  Okay.  Mr. Huertas, what is Exhibit 7?
12  A  It's -- based on what I heard, it's -- it's
13  the first deed of trust for the subject property.
14  Q  And when does the word "defaulted" first
15  appear, in terms of time, on Exhibit 7 in the
16  Servicing Status Column?
17  A  Yeah.  The -- the word "defaulted" appears
18  on Line 2-1-2023.
19  Q  Okay.  And when does the -- the word
20  immediately below that is the word "current."  Right?
21  A  Yes.
22  Q  And that indicates a date of January 1,

Page 177

1  2023.  Correct, "current"?
2  A  For that particular activity, correct.
3  Q  Okay.  Now, let's put 6 and 7 kind of next
4  to each other, if you will.
5  There's another column there that says
6  "Status Reason."  Do you see that?  It's the second
7  column from the left.
8  A  Yes.
9  Q  Okay.  As of January 1, 2023, what does
10  Exhibit 6 indicate in the Status Reason Column?
11  A  In which one?
12  Q  Well, doesn't the word "paid" appear there?
13  A  In which line?
14  Q  One, two, three, four -- one, two, three,
15  four, five, six, seven lines down from the top.
16  A  The word -- it says "paid."
17  Q  Okay.  And what does that indicate to you?
18  A  For that activity, it was paid.
19  Q  Okay.  And isn't it true that on Exhibit 6,
20  the word paid appears before every date before
21  January 1, 2023, in the Status Reason Column?
22  A  The word "paid" appears in the other lines,

45 (Pages 174 - 177)

Page 178

1  yeah.

2     Q    Okay.  And on Exhibit 7, isn't it also true

3  that the word "paid" appears on every line starting

4  with January 1, 2023, going down all the way to

5  December 23, 2021?

6        Isn't that correct that the word "paid"

7  appears in the Status Reason?

8     A    The word "paid" appears.

9     Q    And those dates there are corresponding to

10  what?

11    A    Those dates?

12    Q    Yeah.  Isn't that a payment due date?

13    A    That's a payment due date.

14    Q    Okay.  So to recap, on Exhibit 6 and

15  Exhibit 7, for every payment due on the date that's

16  listed on those two exhibits from December 23, 2021,

17  through January 1, 2023, it indicates "paid."

18    A    The word "paid" appears in those lines.

19    Q    Okay.  And was RE1, in fact, current on the

20  payments due under the first deed of trust and the

21  second deed of trust as of January 1, 2023?

22    A    No.

Page 179

1     Q    Okay.  What was outstanding as of those

2  two -- okay.  Then why, if they were not current --

3  then why doesn't this indicate that?

4     A    I cannot tell you how the system was

5  generating that, but the borrower was not current.

6     Q    So what was incorrect about it?  What's

7  incorrect about all those indications of "paid"?

8     A    July payment, as you can see, on both, it's

9  July 14th, borrower was in default in the month of

10  July.

11    Q    So what?  So why does that change what's

12  listed here as "paid"?

13    A    I can't speak about a system that shows

14  that.  I can just tell you --

15    Q    So your system doesn't work?

16    A    I guess not.

17    Q    All right.  Who is the person most qualified

18  at WCP to answer questions about when amounts are paid

19  and unpaid under RE1's loans?

20    A    I think I'm qualified.

21    Q    Well, who's the best person?  You said

22  before that you didn't know the records.

Page 180

1     A    Right.

2     Q    You weren't sure.

3     A    If you want specific details on accounting,

4  that would be somebody else.

5     Q    Who would that be?

6     A    My VP of finance.

7     Q    Who is that?

8     A    Christina Araujo.

9        MR. VERSTANDIG:  Alpha, Romeo, Alpha,

10  Uniform, Juliet, Oscar.

11        THE WITNESS:  Yeah.

12  BY MR. SADOWSKI:

13    Q    Okay.  Okay.  So let's go back to

14  Paragraph 29 of Exhibit 4.

15    A    Which page?

16    Q    Sorry, Page 5 of Exhibit 4, Paragraph 29.

17    A    Okay.

18    Q    And that's the same question that I asked a

19  few questions ago, several.

20        What amounts were outstanding under the RE1

21  first deed of trust or second deed of trust as of

22  November 3, 2022?

Page 181

1     A    I don't have the specific amounts.

2     Q    Okay.  Well, these records here show

3  everything was paid.  So if there was something that

4  was unpaid, what was it?

5        MR. VERSTANDIG:  Hold on.  Objection,

6  the records do not show everything being paid on

7  November 3rd.

8        MR. SADOWSKI:  2022?  They show being

9  paid as of January 1, 2023, two months later.

10        MR. VERSTANDIG:  You just asked as of

11  November 3, 2022.  This record shows that the payment

12  due November 1st was made on November 9th.

13        MR. SADOWSKI:  You're coaching now,

14  Mr. VerStandig.  Okay.

15  BY MR. SADOWSKI:

16    Q    What amounts on November 3, 2022, did RE1

17  owe under either the first deed of trust or the second

18  deed of trust?

19    A    I -- I already told you that.

20    Q    What did they owe?

21    A    I don't have the amounts.

22    Q    You don't know?

46 (Pages 178 - 181)

Page 182

1     A   It's more.  I don't have the amounts.
2   Correct.
3     Q   Okay.  If they owed money as of that date,
4   why isn't it reflected on Exhibit 6 and Exhibit 7?
5     A   That's a report.
6     Q   Okay.
7     A   You just issue a report.
8     Q   So what other reports are there out there
9   that I haven't seen?
10     A   That's the one report that we have.
11     Q   Okay.
12     A   But that's a report that we had for the
13   payments, specific to something, to just one aspect of
14   it.
15     Q   Okay.  When do late charges get posted to
16   the WCP accounting system?
17     A   Late charges are posted, or the system
18   generates a late charge on the 5th.
19     Q   Okay.  Are there any late charges shown on
20   the system printouts in Exhibit 6 and Exhibit 7?
21     A   It shows some late charges.
22     Q   Where?

Page 183

1     A   Line 10/1, 12/1.  I don't know if I'm doing
2   this right.  That's on Exhibit 7.  Look -- are we
3   looking at Exhibit 7 or Exhibit 6?
4     Q   The Late Fee Amount Due Column.
5     A   Yeah.  Which exhibit do you want me to look
6   at?
7     Q   They're both there.  They have the same
8   column.  Right?  So are you talking about this column
9   here, right here with these?  Exhibit 6, it says
10   "523.56."
11     A   It shows two in here for 10/6 and 12/6.
12     Q   Okay.  That's the 523.56 number.
13     A   Yeah.
14     Q   And then on the corresponding Exhibit 7,
15   there's two entries as well on that for 238.02.  Do
16   you see that?
17     A   Mm-hmm.
18     Q   Right?
19     A   Yeah.
20     Q   Were those late charges ever paid?
21     A   I can infer from here that the ACH cleared.
22   So I'm guessing, yes.

Page 184

1     Q   Okay.  All right.  So as of January 1, 2023,
2   what amounts, if any, were owed for late charges as of
3   that date?
4     A   I don't have the specific amount.  I don't
5   have a response to your question.
6     Q   Okay.  Who would be able to answer that
7   question?
8     A   I already give you a name, Christina Araujo.
9     Q   Okay.  All right.  Now, when did somebody at
10   WCP -- oh, well, sorry, strike that.
11         How does the system change from "current" to
12   "defaulted," as it did here on February 1, 2023?
13     A   I cannot tell you for everything, but for
14   this specific situation, I guess it changed on 2/1.
15     Q   Right.  But does someone have to manually go
16   in and click a button and say a "loan is in default"?
17   How does that work?
18     A   I don't know.
19     Q   Will Christina know the answer to that
20   question?
21     A   Maybe, I don't know if she could answer.
22     Q   Who else might know the answer to that

Page 185

1   question?
2     A   I have to ask.  I don't know.  I have to
3   ask.
4     Q   Okay.
5     A   It's a great question for me, too.  I need
6   to figure it out.
7     Q   Okay.  Now, let's go back to Exhibit 4.
8     A   Page?
9     Q   Five.
10     A   Page 5.
11     Q   Now, down to Paragraph 33, I'd ask you to
12   read that and let me know when you're done.
13     A   Okay.
14     Q   Is the information in Paragraph 33 accurate?
15     A   No.
16     Q   What's not accurate about it?
17     A   It is obvious that the developer couldn't
18   secure the financing; otherwise, we wouldn't be here.
19     Q   Okay.  Did you know as of November 15th,
20   when I say "you," did either you or WCP know that RE1
21   was in the process of refinancing a loan with Main
22   Street Bank?

47 (Pages 182 - 185)

Page 282

1 morning right before the sale.
2 BY MR. SADOWSKI:
3 Q Okay. And is there a WCP investment
4 vehicle, whether it's an entity or not -- let me take
5 that back.
6 So let's assume we're at the day of the
7 foreclosure. What, in your experience, would WCP do
8 to make sure that it had a buyer prepared to meet the
9 criteria for the foreclosure sale at the foreclosure
10 sale?
11 How do you plan for that? What do you do?
12 Like, do you send somebody there? Do you create a new
13 entity? Those are the kind of questions I'm going to
14 have.
15 A Right, I understand. For this specific
16 situation, we don't have anything at this time.
17 This happened on Tuesday. So prior to the
18 sale, maybe the night before or the morning of, we'll
19 figure out where we stand and make a determination.
20 Q And who will be involved in that process,
21 other than any legal counsel?
22 A I get involved in that process.

Page 283

1 Q And who else besides you?
2 A I do it for the most part. I try not to get
3 involved -- more people, but I do it for the most
4 part.
5 Q Okay. When there was a foreclosure of
6 2507 I Street -- there was one. Right?
7 A Yes.
8 Q Who ended up buying the property at
9 foreclosure?
10 A The lender took it back.
11 Q So what? Did the lender buy it, or did the
12 lender create some interim entity to serve as the
13 buyer?
14 A The lender took it back because there were
15 no bidders at the foreclosure sale.
16 Q Oh, okay. And of these other properties
17 that you mentioned that were "problematic," I'm just
18 using the term loosely.
19 A Right.
20 Q Did Holbrook go to foreclosure?
21 A I'm sorry. Which one?
22 Q 1262 Holbrook.

Page 284

1 A 1262 through 1268, again, that property, as
2 I recall, I believe we didn't have any real bidders on
3 the other end.
4 It was a second subject to the first. So
5 some people just -- and then most people don't want to
6 bid on a second trust just because they don't know the
7 nature of the first.
8 Q Okay. So what are WCP's expectations as to
9 this foreclosure, given that you're foreclosing under
10 the second deed of trust?
11 A I don't have any expectations; our goal is
12 to get our money back.
13 MR. SADOWSKI: So we're at exactly your
14 five o'clock. We, obviously, didn't finish. I don't
15 know that I can reconvene tomorrow, and I think you'd
16 probably rather work on your --
17 MR. VERSTANDIG: I mean, candidly, I
18 would. MR. SADOWSKI: Yeah.
19 MR. VERSTANDIG: Hold on. We can do
20 this on the record. It may make sense to assess after
21 Friday anyway.
22 MR. SADOWSKI: Of course, right. So

Page 285

1 we're going to leave it open. It's not completed
2 because we didn't finish either by time.
3 And then there are also some
4 outstanding document issues that we probably need to
5 address, but we'll agree to reconvene the deposition
6 at a mutually convenient date and time.
7 MR. VERSTANDIG: And for the record, I
8 will cross him at the close of the deposition.
9 MR. SADOWSKI: Okay.
10 THE WITNESS: How many hours did it go?
11 MR. SADOWSKI: Doctor's appointment, my
12 friend, go, go.
13 THE WITNESS: No, I understand.
14 THE REPORTER: Should I take us off?
15 MR. SADOWSKI: Yes.
16 THE REPORTER: We're off the record at
17 5:01 p.m.
18 (Signature waived.)
19 (Whereupon, at 5:01 p.m., the
20 proceeding was concluded.)
21
22

72 (Pages 282 - 285)

|  | Page 286 |
|---|---|
| 1 | CERTIFICATE OF DEPOSITION OFFICER |
| 2 | I, MATTHEW YANCEY, the officer before whom |
| 3 | the foregoing proceedings were taken, do hereby |
| 4 | certify that any witness(es) in the foregoing |
| 5 | proceedings, prior to testifying, were duly sworn; |
| 6 | that the proceedings were recorded by me and |
| 7 | thereafter reduced to typewriting by a qualified |
| 8 | transcriptionist; that said digital audio recording of |
| 9 | said proceedings are a true and accurate record to the |
| 10 | best of my knowledge, skills, and ability; that I am |
| 11 | neither counsel for, related to, nor employed by any |
| 12 | of the parties to the action in which this was taken; |
| 13 | and, further, that I am not a relative or employee of |
| 14 | any counsel or attorney employed by the parties |
| 15 | hereto, nor financially or otherwise interested in the |
| 16 | outcome of this action |
| 17 | MATTHEW YANCEY |
| 18 | Notary Public in and for the |
| 19 | District of Columbia |
| 20 | |
| 21 | |
| 22 | |

|  | Page 287 |
|---|---|
| 1 | CERTIFICATE OF TRANSCRIBER |
| 2 | I, AMY DAMOTH, do hereby certify that this |
| 3 | transcript was prepared from the digital audio |
| 4 | recording of the foregoing proceeding, that said |
| 5 | transcript is a true and accurate record of the |
| 6 | proceedings to the best of my knowledge, skills, and |
| 7 | ability; that I am neither counsel for, related to, |
| 8 | nor employed by any of the parties to the action in |
| 9 | which this was taken; and, further, that I am not a |
| 10 | relative or employee of any counsel or attorney |
| 11 | employed by the parties hereto, nor financially or |
| 12 | otherwise interested in the outcome of this action. |
| 13 | |
| 14 | |
| 15 | AMY DAMOTH |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

73 (Pages 286 - 287)

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**    **2022-CAB-005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Court Event: Mediation November 16, 2023 at 1:30 p.m.** |
| **Defendants.** | |

## <u>ORDER</u>

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

Page **1** of **2**

125

**Copies via Odyssey to**:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

```
              SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
                          CIVIL DIVISION


- - - - - - - - - - - - - x
DEVELOPER RE1, LLC,           : Docket Number:  2022 CAB 005935
          Plaintiff,          :
                              :
                              :
          VS.                 :
                              :
                              :
DP CAPITAL, LLC D/B/A         :
WASHINGTON CAPITAL            :
PARTNERS, ET AL.,             : Friday, March 24, 2023
          Defendants.         : Washington, D.C.
- - - - - - - - - - - - - x
```

          The above-entitled action came on for a remote

initial scheduling conference hearing before the HONORABLE

EBONY M. SCOTT, Associate Judge, in Courtroom Number 219.


              APPEARANCES:

              On Behalf of the Plaintiff:

              JAMES D. SADOWSKI, Esquire
              Washington, D.C.


              On Behalf of the Defendants:

              MAURICE B. VERSTANDIG, Esquire
              Washington, D.C.


                                            25-01498



1

TABLE OF CONTENTS

MISCELLANY

PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DENIED                                                              7



```
 1                      P R O C E E D I N G S

 2              THE DEPUTY CLERK:  Your Honor, calling number

 3    three on the calendar, calling the matter of Developer REI

 4    [sic], LLC versus DP Capital, LLC d/b/a Washington Capital

 5    Partners, et al., case number 2022 CAB 5935.

 6              Parties can you please state your name for the

 7    record, starting with plaintiff attorney first.

 8              MR. SADOWSKI:  Good morning, Judge Scott.  Jim

 9    Sadowski for the plaintiff.

10              THE COURT:  Good morning, Counsel.

11              MR. VERSTANDIG:  Good morning, Your Honor.

12    Maurice VerStandig, on behalf of the defendants.

13              THE COURT:  All right.  Good morning to you as

14    well.  Where are you there?  Good.  There you are.  Good

15    morning to you.

16              So this matter is scheduled for a remote

17    scheduling conference, I understand that a motion to

18    dismiss was filed to dismiss the first amended complaint

19    on January the 26th.

20              An opposition was filed on February the 16th.  I

21    do not see that a reply was filed.  Was a reply so filed?

22              MR. VERSTANDIG:  Your Honor, I believe one had

23    been filed.  And I may be errant in that regard.  If Mr.

24    Sadowski says we didn't file one, I would take his word to

25    be accurate.
```



3

```
 1              MR. SADOWSKI:  I can't tell you if he didn't
 2   file it, Judge.  But I can tell you that I didn't have
 3   notice of a filing.  And I checked the docket this
 4   morning, and I didn't see it in there.
 5              So I think if it was filed, even with the
 6   Odyssey delays, it probably would have been on the docket
 7   by now.
 8              THE COURT:  Could we see it on the docket?
 9   Okay.  All right.
10              MR. SADOWSKI:  Your Honor, I suspect that to be
11   true.  And it likely means we did not file one.
12              THE COURT:  Well, I think I heard counsel say
13   that -- well, sir, you should know whether or not you
14   filed a reply, I suspect.
15              MR. VERSTANDIG:  Your Honor, I'm looking through
16   my file.  I don't see a reply.  I don't believe we
17   replied, no.
18              THE COURT:  Okay.  All right.  Give me one
19   moment.  Bear with me.
20              (Pause.)
21              THE COURT:  Okay.  While Odyssey is sort of
22   waking up, at least for me.  One of the things that we
23   must do is to set the matter on a scheduling track.
24              Have the parties discussed a track?
25              MR. SADOWSKI:  I haven't, Judge.  But I think
```



1  this is a Track 2 type of case.

2         THE COURT:  I believe that's true.  Any

3  opposition to Track 2?

4         MR. VERSTANDIG:  None, Your Honor.

5         THE COURT:  Okay.  Track 2, it is.  Well, I

6  did -- I was endeavoring to pull up the docket again.  But

7  it's taking some time.  Let me say this.  The Court has

8  reviewed the motion to dismiss the First Amendment

9  complaint as well as the opposition.  And it appears there

10  was no reply filed.  One moment.

11         MR. VERSTANDIG:  Your Honor, I'm confident there

12  was no reply filed.  We would stand on the motion.

13         THE COURT:  The Court has reviewed the

14  opposition as well.  There doesn't appear to be a reply

15  filed.  And from the Court's understanding of the motion

16  to dismiss, the defendants contend that the plaintiffs,

17  that the plaintiff, rather, failed to make notes under --

18  or failed to make payments rather under a promissory note.

19         And then there are five or six reasons listed as

20  to why, high level listed, as to why the matter should not

21  proceed pursuant to 12(b)(6).

22         One of the claims is that the first amended

23  complaint fails to allege any damages.  Another contention

24  is that the first amended complaint lists or requests

25  injunctive relief solely.



1            And according to the defendants, such relief

2    cannot stand absent some other type of relief for a

3    particular plaintiff.

4            The defendants also -- the defendant also

5    contends -- defendants, rather, also contend that there is

6    no -- that there is a violation of the economic loss

7    doctrine.

8            And I believe that going back to the injunctive

9    relief, that that is not relief according to the

10   defendants that's viable or cognizable under our law.

11           And so the Court will say that in determining

12   12(b)(6) matters, the Court is not looking at the merits

13   of the complaint.  Instead, the Court is looking to the

14   sufficiency of the complaint.

15           That means that the Court must determine, based

16   upon the face, the four corners of the complaint, whether

17   or not the complaint has any legal viability.

18           What does that mean?  That means that the

19   complaint is sufficient to put the defendants on notice of

20   what the claims are.  It's different than a motion for

21   summary judgment in which the Court can't review the

22   entire record, can review affidavits.

23           Discovery has proceeded at that point.  But at

24   this stage, the Court must discern whether or not the

25   complaint is legally sufficient.  One moment.



```
 1              Okay.  And so, accepting all of the allegations
 2    in the complaint as true and certainly reviewing the
 3    allegations in the complaint in the light most favorable
 4    to the plaintiff, the Court can draw the reasonable
 5    inferences that it may draw at this juncture to find that
 6    the defendants violated or committed the acts contained in
 7    the -- or alleged, rather, in the first amended complaint.
 8              Much of the arguments made in the motion to
 9    dismiss, again, they go to the merits of the case.  And
10    here the inquiry is that of sufficiency.
```

**JUDGE'S RULING**

```
12              And the Court does find the first amended
13    complaint to be sufficient in this case, because the Court
14    finds that it puts the defendants on notice, and it
15    certainly passes the Rule 8 muster.  And so, the Court
16    will deny the motion to dismiss the first amended
17    complaint.
18              So we have a Track 2.  I think that's all that
19    we need to do today.  Okay.  Thank you all for your
20    patience.  Have a good weekend.
21              MR. SADOWSKI:  Thank you, Your Honor.
22              MR. VERSTANDIG:  You as well, Judge.
23              THE COURT:  My pleasure.  Bye-bye.
24              (Thereupon, the proceedings were concluded.)
25                          *  *  *  *  *
```



```
1              CERTIFICATE OF TRANSCRIBER
2           I, Jennifer L. Sullivan, transcriber, do hereby
3  certify that I have transcribed the proceedings had and
4  the testimony adduced in the case of DEVELOPER RE1, LLC v.
5  DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,
6  Docket Number:  2022 CAB 005935, in said Court, on the
7  24th day of March, 2023.
8           I further certify that the foregoing 7 pages
9  constitute the official transcript of said proceedings as
10 transcribed from audio recording to the best of my
11 ability.
12          In witness whereof, I have hereto subscribed my
13 name, this 28th day of March, 2025.
14
15
16
17
```

```
18                      TRANSCRIBER
19
20
21
22
23
24
25
```

The order below is hereby signed.

Signed: May 6 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLUMBIA**

In re:

        Charles Paxton Paret,
            Debtor.

Case No. 23-00217-ELG
Chapter 7

Developer RE1 LLC,
        Plaintiff

        v.

DP Capital LLC, *et al.*,
        Defendants

Adv. Pro. No. 24-10023-ELG
(Cases Consolidated)

423 Kennedy St Holdings LLC,
        Plaintiff

        v.

DP Capital, LLC, *et al.*,
        Defendants

**ORDER REQUIRING SUPPLEMENTAL BRIEFING BY MAY 7, 2025**

The Court has before it the *Third Amended Complaint* (ECF No. 40) (the "Third Amended Complaint") filed by Developer RE1 LLC and 423 Kennedy St Holdings LLC (together, the "Plaintiffs"), the *Motion to Dismiss or, in the Alternative, for Summary Judgment* (ECF No. 44) (the "Motion to Dismiss") filed by DP Capital LLC, WCP Fund I LLC, Daniel Hertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (collectively, the "Defendants"), and the *Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadline* (ECF No. 46) (the "Motion for Remand") and responses filed thereto. The Motion to Dismiss and Motion for Remand are scheduled for hearing before this Court on May 8, 2025 at 10:00 a.m.

Following a hearing held on January 28, 2025, the Court has under advisement the *Motion for Summary Judgment on Claims Against Russell Drazin* (ECF No. 7) (the "Drazin Summary Judgment Motion") filed by the Defendants. Upon consideration of the Third Amended Complaint, the Motion to Dismiss, the Motion for Remand, the Drazin Summary Judgment Motion, and the responses filed thereto, the Court finds that further briefing is necessary regarding the pendency of the Drazin Summary Judgment Motion. It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that on or before May 7, 2025, the parties shall file supplemental briefing explaining whether the Drazin Summary Judgment Motion is moot given the pendency of the Third Amended Complaint and the Motion to Dismiss.

[signed and dated above]

Copy to: All counsel of record.

136

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs"), move this Court for leave to file a Fourth Amended Complaint to correct the inadvertent omission of one claim by 423 Kennedy. In support of this request, the Plaintiffs represent as follows:

<center>OVERVIEW</center>

1.      The Court is already familiar with the factual and procedural history of these removed cases.  Pending before the Court are various motions, including the Plaintiffs' Renewed Motion for Remand.  This motion is being filed without prejudice to the Plaintiffs' position that these consolidated cases involving purely state law claims should be remanded to the D.C. Superior Court.

2.      The Plaintiffs filed a Third Amended Complaint on March 5, 2025.  The Third Amended Complaint was filed as a result of several Defendants transferring certain loan documents to a sham company called JPK NewCo, LLC ("JPK").  After those loan documents were transferred, Defendant SF NU, LLC, a co-owner of JPK, argued that JPK was an indispensable party and filed a motion to dismiss on that basis.

3.      The Third Amended Complaint was filed together by both Plaintiffs, with the consent of the Defendants, as one document in order to reduce the costs to all parties of having to respond to two separate, lengthy complaints that contained overlapping facts.

4.      When combing the two, separate complaints into a single document, Plaintiffs' counsel inadvertently omitted including a previously asserted claim of breach of contract on behalf of 423 Kennedy.  *See* ECF #1-2, pp. 684-86 (423 Kennedy's Verified Complaint filed July 13, 2023 (Count I for Breach of Contract).

5.      423 Kennedy's breach of contract claim is primarily premised upon several Defendants' unilateral decision to starve the 423 Kennedy development project of funds by refusing to release construction draws.  *See* Third Amended Complaint, ECF #40, at 10, ¶¶ 64-66.

<center>2</center>

6.      All of the Defendants were previously aware of 423 Kennedy's breach of contract claim as that claim was asserted in 423 Kennedy's complaint, and the viability of that claim was disputed by the initial Defendants and litigated at the hearing on 423 Kennedy's Motion for a Temporary Restraining Order.  *See* <mark>ECF #1-2,</mark> Part I.A, pp. 1268-80 (Judge Milton Lee's Order dated July 24, 2023 summarizing the testimony and finding that 423 Kennedy was likely to prevail on its breach of contract claim).

<u>The Legal Standard for a Motion for Leave to Amend.</u>

7.      Rule 15(a) of the Federal Rules of Civil Procedure, which governs the relief requested in this motion, states that:

(1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) , (e) , or (f) , whichever is earlier.

(2) Other Amendments.  *In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.*

Fed. R Civ. Proc. 15(a) (italic emphasis added).

8.      In a decision involving leave to amend a complaint under Rule 15(a), the D.C. Circuit Court of Appeals noted that:

The provision of Rule 15(a) allowing amendment with leave of court gives the District Court discretion and direction.  It instructs the District Court to determine the propriety of amendment on a case by case basis, using a generous standard.

In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

3

> allowance of the amendment, futility of the amendment, etc. -- the
> leave sought should, as the rules require, be "freely given."

*Harris v. Secretary, United States Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997)
(citing Foman v. Davis, 371 U.S. 178 (1962).

<u>Legal Argument:  The Court Should Allow the Amendment.</u>

9.     Here there is no undue delay, or bad faith, or dilatory motive.  Rather, a
previously asserted claim was inadvertently omitted when two long complaints involving many
overlapping facts and claims were combined into one document.

10.    There would be no prejudice to the Defendants as a result of allowing this
amendment because the inadvertently omitted claim for breach of contract was previously
disclosed, discovery in this case is not yet completed, and no trial date has been set.

WHEREFORE, the Plaintiffs respectfully request that the Court grant this motion by
entering an order granting them leave to file the Fourth Amended Complaint that is attached as
Exhibit 1.  The previously omitted claim for breach of contract is now shown in Count VIII  of
the Fourth Amended Complaint.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 5, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: (202) 452-1400; Fax: 202-452-1410
Email:   jds@gdllaw.com | ajs@gdllaw.com |
ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
and 423 Kennedy St. Holdings, LLC*

4

<u>C</u>ERTIFICATE OF <u>S</u>ERVICE

I HEREBY CERTIFY that on this 6th day of May, 2025, a true copy of the foregoing

Plaintiffs' Motion for Leave to file Fourth Amended Complaint was filed electronically and a

Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

5

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## FOURTH AMENDED COMPLAINT

COME NOW THE PLAINTIFFS, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against

DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas,

Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri.

The Fourth Amended Complaint includes claims for tortious interference with business relations,

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances.[1]  In support of its Fourth Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

<u>THE PARTIES</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5.      The WCP controls the WCP Fund.

6.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

---

[1]      Counsel for the existing parties prior to the filing of the Third Amended Complaint agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a fourth amended complaint for Developer RE1 and a second amended complaint for 423 Kennedy.

2

7.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.      The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.     The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".

11.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

> *the highest ethical practices in the industry*, which historically
> have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.     But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

13.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.     Developer RE1 is partially owned by Mr. Negussie.

15.     Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.     The Lender Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the RE1 Property and the improvements that Developer RE1 made to the RE1 Property.

17.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

The Ownership of 423 Kennedy, Its Purpose, and the Property.

18.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the 423 Property.

4

20.     The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24.     Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing. 423 Kennedy
also relied upon the representations contained in these documents before signing any of the loan
documents at closing.

<u>The Developer RE1 Loan Documents with the WCP and the WCP Fund.</u>

28.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor,
signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as
Beneficiary and Mr. Drazin, as Trustee. A true copy of the First RE1 DOT was attached to
Developer RE1's Complaint as Exhibit A.[2]

29.     The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as
counsel for the WCP and the WCP Fund.

30.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes
to the terms of the First RE1 DOT before it was signed.

31.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note
(the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP
Fund. A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's
Complaint.

32.     The First RE1 Note was a form of promissory note that was prepared by Mr.
Drazin as counsel for the WCP and the WCP Fund.

33.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes
to the terms of the First RE1 Note before it was signed.

---

[2]     Counsel for the parties before the Third Amended Complaint was filed agreed that the
Third Amended Complaint could reference the prior complaint exhibits that are already in the
record and that there also was no need to attach those Exhibits again to the Third Amended
Complaint. No new exhibits are being added in the Fourth Amended Complaint.

34.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35.     The Second RE1 DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38.     The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41.     The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42.     The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

The 423 Kennedy Loan Documents with the WCP and the WCP Fund.

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

8

Drazin as Trustee. A true copy of the Second 423K DOT was attached as Exhibit C to 423 Kennedy's Complaint.

52. The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

53. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second 423K DOT before it was signed

54. On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which was attached to the 423 Kennedy Complaint as Exhibit D.

55. The Second 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

56. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second 423K Note before it was signed.

57. As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58. The new, refinanced loans for 423 Kennedy were set to mature on March 31, 2023.

59. Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

60. The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but

9

has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

61.    Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the 423 Property with another lender.

62.    As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

63.    As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

   The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423
   Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging
   the Refinancings of the Loans for Both Properties.

64.    On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

65.    The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

66.    The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

67.    On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

10

First 423K Note and to release the First 423K DOT from the Property. A true copy of the

October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint

as Exhibit E.

68.    On or about October 24, 2022, WCP transmitted a Payoff Statement for the

Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under

the Second 423K Note and to release the Second 423K DOT from the Property. A true copy of

the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69.    As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

70.    As of October 24, 2022, there was no allegation made by any Defendant to 423

Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If
They Did Not Accede to His Demands Regarding Another Unrelated
Development.</u>

71.    On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr.

Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas

stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of

the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72.    As of November 3, 2022, there was no allegation made by any Defendant that any

default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

73.    As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

11

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

12

80.     On or about November 21, 2022, WCP transmitted another Payoff Statement
listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note
and to release the First 423K DOT from the 423 Property.  A true copy of the November 21,
2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the
amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to
release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022
Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.     As of November 21, 2022, there was no allegation made by any Defendant to 423
Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the
First 423K DOT, or the Second 423K DOT.

83.     As of November 30, 2022, there was no allegation made by any Defendant that
any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes
and deeds of trust.

84.     On November 30, 2022, Developer RE1 made a request by email to WCP for the
payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent
by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.     That same day (November 30, 2022), Developer RE1 requested, and WCP
agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the
second November 30, 2022 email exchange between Developer RE1 and WCP was attached as
to Developer RE1's Complaint as Exhibit I.

13

86.     WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423
Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance
of both loans.

87.     None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included
any request by any Defendant for the payment of default fees, default interest, or any other
amount that was based upon any allegation that there was a "default" by 423 Kennedy under
either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K
DOT.

88.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire
with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the
First RE1 Note and the Second RE1 Note for six to twelve months.  Mr. Huertas replied that the
only way an extension of the maturity date would be granted would be if Developer RE1 paid
down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to
inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the
Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to
$750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1
million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million)
from additional investors.

90.     As of December 7, 2022, there was no allegation made by any Defendant to
Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note,
the First RE1 DOT, or the Second RE1 DOT.

8161\0002\4916-8515-5391.v1

91.     As of December 7, 2022, Developer RE1 had made all payments due under the First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

92.     As of December 8, 2022, 423 Kennedy had made all payments due under the First 423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in interest payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".

93.     On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

94.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

15

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"
shortfall on the 2507 I Street Project.

96.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"
by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to
the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the
Lender Defendants and the unnamed investor "would make trouble for you on all of your other
projects".

97.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it
was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer
RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated
project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either
Mr. Negussie or to be making threats to any other development project that Mr. Negussie was
involved with.

98.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I
Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent
were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their
loan documents with the WCP Fund.

99.     The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose
limited liability company that is partially owned by Mr. Negussie.

100.    The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop
the 423 Property.

101.    The Lender Defendants knew that there is no legal or other business relationship
between 423 Kennedy and Developer RE1.

16

102.    The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.    The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.    Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.    The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.    The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.    The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.    The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.    The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

17

110.     The Lender Defendants knew that Mr. Negussie did not have a controlling interest
in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.     The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy
and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the
two entities are not affiliates of one another, and that the two entities have no business
relationship with each other.

112.     The Lender Defendants knew that Developer RE1 is a domestic, sole purpose
limited liability company that is partially owned by Mr. Negussie.

113.     The Lender Defendants knew that the sole purpose of Developer RE1 is to
develop the RE1 Property.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1
and 423 Kennedy By Improperly Demanding Payment More than $2 Million of
"Default Penalties" and "Default Interest" And By Threatening Developer RE1
and 423 Kennedy With Foreclosure.

114.     Later that same day (December 8, 2022), Mr. Huertas followed through with his
threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1)
by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of
Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the
email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that
were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1
Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy
Complaint.

115.     The "Notice of Default" sent to Developer RE1 appears to reference the First RE1
DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.    The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K

DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.    Each "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that

the Vice President of the WCP is Christina Araujo.

118.    Each "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.    The lack of a signature on each "Notice of Default" and the failure by the WCP to

include the referenced exhibit with each "Notice of Default" are indications that the two notices

were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.    Each Notice of Default did not contain any legal basis or other explanation for

how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan

documents.

121.    Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts,

states:

> All notices, demands, requests and other communications pursuant
> to the provisions of the Note and this Deed of Trust shall be in
> writing and shall be deemed to have been properly given or served
> for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight
> delivery service or a local courier service, charges prepaid, or three
> (3) calendar days after having been sent by United States
> Registered or Certified Mail - Return Receipt Requested, postage
> prepaid, to the respective addresses as follows:
>
>     (a) If to the Grantor, then to: 1629 K Street, Suite 300,
> Washington DC 20006
>
>     (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200,
> Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

19

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

*See* deeds of trust at pages 17-18.

122.    In the deeds of trust, email is not listed as a permissible means to send notice.

123.    In the email that transmitted the letters purporting to be default notices under the two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N, respectively.

124.    The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M to Developer RE1's Complaint.

125.    The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126.    In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of the two Payoff Statements that were included with the email transmitting each "Notice of Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

20

127.    The new Payoff Statement sent by WCP for the first loan included a demand that

423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30.

Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423

Kennedy.

128.    The new Payoff Statement sent by WCP for the second loan including a demand

that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by

the WCP.

### Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

129.    After receiving the email with each Notice of Default, Mr. Negussie called Mr.

Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that

Developer RE1 and 423 Kennedy were in default under any loan document.  During that call,

Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr.

Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas

directed someone from the WCP to send the Notice of Default to Developer RE1 and 423

Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of

the loan documents to try to find a reason to justify the Defendants' decision to declare that

Developer RE1 was in default of the loan documents when they each knew, in fact, that there

were no defaults by Developer RE1 under any of its loan documents.

131.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no

valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

21

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were

improperly placed in default by the Defendants.

132.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as

Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the

deeds of trust.

133.    As of December 8, 2022, Mr. Drazin knew that that his representation of the

Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as

Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower.  Nevertheless, Mr.

Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423

Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from,

and provide legal advice to, the Lender Defendants.

134.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that

he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the

Lender Defendants' issuance of the Default Notice.

135.    The real reason that the Lender Defendants improperly alleged that Developer

RE1 and 423 Kennedy were in default under the loan documents was because the Lender

Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out

the way that they wanted it to.

136.    The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission"

of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a

foreclosure sale.

8161\0002\4916-8515-5391.v1

137.    There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given

that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

138.    As a result of their spite, their evil, improper motive, and their greed, the Lender

Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under

the loan documents to try to line their own pockets and to cause as much financial and

reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.    The Lender Defendants also caused WCP to issue a "Notice of Default" to

Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and

prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had

secured, or were in the process of securing, with Main Street Bank.

140.    The Lender Defendants also caused WCP to issue each notice "Notice of Default"

to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1

from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.    The Lender Defendants also caused the WCP to issue the each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.    The Lender Defendants knew that they had no legal right to demand that

Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the

Lender Defendants claimed existed at the 2507 I Street Project.

143.    The actions of the Lender Defendants, which they took acting in concert, were

taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

23

and its members, and 423 Kennedy and its members. The Lender Defendants' misconduct is a form of extortion.

> The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144.    Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022." A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146.    Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing were attached to Developer RE1's Complaint together as Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152. The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153. 423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154. On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155. 423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156. Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157. 423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

26

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December

10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was

recorded as a result of the NOI.  A copy of confirmation of the $1,657.34 payment to the District

was attached to 423 Kennedy's Complaint as Exhibit R.

158.    December 10, 2022 is less than thirty days after November 17, 2022.

159.    On December 11, 2022, the District of Columbia Office of Administrative

Hearings (OAH) vacated the Final Order.  *See* Exhibit S to 423 Kennedy's Complaint.

160.    There are no outstanding fines owed by 423 Kennedy to the District.

161.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis

provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal

from, or to discharge (by payment), any lien filed by the District.

162.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163.    The deeds of trust each have a Section 7.9 that is identical.  Section 7.9 is part of

the "Events of Default" provisions of the deeds of trust.  Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document
> or instrument evidencing or securing any indebtedness, obligation,
> or liability of any kind or nature - *other than the Indebtedness and
> the Obligations secured hereby* - of Grantor or any guarantor of
> the Indebtedness, *or any of their affiliates, to Beneficiary,* whether
> now existing or hereafter created or arising, direct or indirect,
> material or immaterial, and whether absolute or contingent, joint,
> several or joint and severally and howsoever owned, held, or
> acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164.    The Lender Defendants apparently claim that Section 7.9 is a cross-default

provision.  A cross-default provision in a contract is a provision that allows a "default" under one

agreement to constitute a "default" under another agreement.

27

165.     In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or Developer RE1, two conditions must have occurred:  (1) the borrower must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166.     The deeds of trust do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

167.     There is also no common control of Developer RE1 and 423 Kennedy.

168.     Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169.     Mr. Negussie does not have a "controlling" interest in Developer RE1.

170.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred under any of the deeds of trust, even if one of them was actually in "default" of any loan agreement with the WCP Fund.

171.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Lender Defendants falsely, and improperly, claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of trust.

172.     The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint (the use of "Loans" appears to be referring to the notes and deeds of trust).

28

173. The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174. The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022. True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175. The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176. The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177. No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

<u>Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.</u>

178. The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179. There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180. If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

29

181.     If any of the Defendants follow through on any scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investments.

182.     The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

183.     The Lender Defendants knew that the First 423K Note and the Second 423K Note list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their improper interference with Developer RE1's and 423 Kennedy's business relations -- right before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the two properties.

184.     As of January 11, 2023, none of the Lender Defendants had sent either Developer RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either the deed of trust.

185.     On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

186.     On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

30

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00 p.m. A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as Exhibit T.

187.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee under the deeds of trust due to his conflict of interest. After receiving that letter, Mr. Drazin refused to resign as Trustee.

<u>423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.</u>

188.    The Property owned by 423 Kennedy has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

189.    The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

190.    Around December of 2022, the Property owned by 423 Kennedy had a current value of $11.9 million.

191.    Around December of 2022, the Property owned by Developer RE1 had a current value of $4 million.

192.    There was no valid, legal basis under any provisions of the deeds of trust that would have permitted the Lender Defendants to foreclose on the Properties owned by Developer RE1 and 423 Kennedy.

193.    The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete construction, and Developer RE1 and 423 Kennedy's refinancing efforts. But for the Lender

31

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

194.    The Lender Defendants also deliberately timed their improper interference with 423 Kennedy's and Developer RE1's business relations during the approaching Christmas and New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any refinancing indefinitely so that they can try to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

195.    The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others, and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights under the loan documents and under the law.  The Lender Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

### The DC Superior Court Enjoins the Lender Defendants.

196.    On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive, twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order").

197.    In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17. Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

32

198.     On August 15, 2023, Judge Scott entered a Hearing Order by which she, among

other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted

Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an

Imminent Foreclosure sale (the "Second TRO Order").  In the Second TRO Order, Judge Scott

came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record

demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of

trust."  Second TRO Order at p. 4 (italic emphasis added).  Pursuant to the Second TRO Order,

Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking

any action to foreclose on the Property [owned by Developer RE1] pending further order of this

Court."  *Id.* p. 5.

**The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then
Engage in Multiple Fraudulent Transfers.**

199.     Some of the parties engaged in private mediation in January of 2024, but that

mediation (with JAMS) was not successful.  The second mediation session on January 25, 2024

was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.     JPK NewCo was formed after the mediation concluded, sometime in early

February of 2024.  Since its formation, JPK NewCo has conducted no business, it has no

employees, it generates no income, it produces no goods, and it provides no services.

201.     On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.     On or about April 15, 2024, SF NU transferred the Developer RE1 loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.     This transfers described in paragraphs 201-202 were not supported by any

consideration.

204.     This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.     The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.     On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.     The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.     The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.     The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.     Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.     Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

34

212.     The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213.     The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214.     The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215.     The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216.     At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217.     JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

35

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

218.    Paragraphs 1-217 of the Fourth Amended Complaint are incorporated by

reference.

219.    423 Kennedy and Developer RE1 were in the process of closing on a refinancing

of their existing loans with Main Street Bank.

220.    The Count I Defendants each knew of the existence of Developer RE1's and 423

Kennedy's business relations with Main Street Bank.

221.    As a result of the Count I Defendants' improper demand that Developer RE1 and

423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could

not obtain a release of the respective deeds of trust on their properties as part of the refinancing

of their loans with Main Street Bank.

222.    As a direct result of the Count I Defendants' direct and continuing interference

with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were

not able to go to closing on the refinancing loans with Main Street Bank.

223.    The Count I Defendants have intentionally interfered with Developer RE1's and

423 Kennedy's development of their properties and their refinancing of the loans with Main

Street Bank without any valid justification.

224.    Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants'

tortious interference with their business relations, and will continue to be damaged if the Count I

Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor and against Defendants

36

WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be

determined) that they have suffered and will suffer as a result of the Count I Defendants'

intentional interference with their business relations (currently estimated to be at least $3 million

for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of

$2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

</div>

225.     Paragraphs 1–224 of the Fourth Amended Complaint are incorporated by

reference.

226.     Every contract in the District of Columbia contains an implied covenant of good

faith and fair dealing.

227.     The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or

SF NU, and/or JPK NewCo.

228.     The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF

NU, and or JPK NewCo. are contracts.

229.     Through their improper conduct, the Count II Defendants have breached the

implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor under Count II against

Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU,

LLC and/or JPK NewCo: (a) any and all damages (to be determined) that the Plaintiffs has

suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and

<div align="center">37</div>

fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's

fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT  III

DECLARATORY  JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

</div>

230.    Paragraphs 1–229 of the Fourth Amended Complaint are incorporated by

reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and

the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423

Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are

affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed

does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of*

*American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP,

the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the

WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain

<div align="center">38</div>

unenforceable liquidated damages (and other) provisions, which controversy is ripe for

adjudication.

       W<small>HEREFORE</small>, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that under Count III, this Honorable Court declare that: (a) under Section

7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI,

LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b)

any provision of either the deed of trust that allows the lender to declare a default by Developer

RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the

process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust

have liquidated damages (and other) provisions that are unenforceable and cannot be used to

support any basis for a foreclosure.

<div align="center">

C<small>OUNT</small> IV
P<small>ERMANENT</small> I<small>NJUNCTIVE</small> R<small>ELIEF</small>
(T<small>O STOP ENFORCEMENT OF THE</small> D<small>EEDS OF</small> T<small>RUST AND</small>
<small>ANY</small> F<small>ORECLOSURE</small> U<small>NTIL</small> A<small>FTER A</small> T<small>RIAL ON THE</small> M<small>ERITS</small>)
Count IV Is Asserted Against All Defendants except Defendant Sariri

</div>

       236.    Paragraphs 1–235 of the Fourth Amended Complaint are incorporated by

reference.

       237.    Unless they are enjoined, the Count IV Defendants will continue to improperly

claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

       238.    The Count IV Defendants' unethical, outrageous, and illegal conduct, as

described in this Fourth Amended Complaint, is causing irreparable harm to Developer RE1 and

<div align="center">39</div>

423 Kennedy. The properties that Developer RE1 and 423 Kennedy own are unique, and
Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

239. Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240. If the Count IV Defendants are not all enjoined, they will proceed to foreclose on
the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,
respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the
Count IV Defendants from invoking any remedy under the note and deeds of trust, including,
without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any
provisions in the notes and deeds of trust that the court determines are inapplicable and/or
unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from
initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's
claims in the Fourth Amended Complaint have been decided.

## COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241. Paragraphs 1-240 of the Fourth Amended Complaint are incorporated by
reference.

242. As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary
duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243. Defendant Drazin knew that he had actual conflicts of interest while serving
simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244. While serving in his role as Trustee under the deeds of trust, Defendant Drazin
has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

40

245.    While serving in his role as Trustee under the deed of trust, Defendant Drazin has

at all times acted against, and made decisions that have all been against, the interests and rights

of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

246.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin

has been in continual consultation with, and dominated by, the Defendants.

248.    Defendant Drazin breached his fiduciary duty by engaging in the conduct

described in this Fourth Amended Complaint, by not immediately resigning as Trustee when he

had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to

the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by

issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts

of interest.

249.    Due to his actual conflicts of interest, Defendant Drazin bears the burden of

proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the

Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor under Count V against

Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that

the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his

fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

8161\0002\4916-8515-5391.v1

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants Except Defendant Sariri

250.    Paragraphs 1-249 of the Fourth Amended Complaint are incorporated by reference.

251.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the deeds of trust.

252.    Due to his conflict of interest as counsel for one or more of the Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds of trust.

253.    Any actions taken by Defendant Drazin as Trustee under the deeds of trust must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to the borrowers under the deeds of trust.

254.    There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

255.    There is an actual and justiciable controversy between Developer RE1and 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant

42

Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

## COUNT VII
### TO SET ASIDE FRAUDULENT TRANSFERS
Count VII is Asserted Against All Defendants except Defendant Drazin

256.    Paragraphs 1-255 of the Fourth Amended Complaint are incorporated by reference.

257.    The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258.    The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of SF NU and/or the WCP Fund.

259.    The transfers described in paragraphs 201-202 were made without consideration and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange for the transfer.

260.    The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo believed or reasonably should have believed that it would incur a debt beyond its ability to pay that debt when it became due.

261.    The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count VII this Honorable Court:  (a) set aside all fraudulent transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of

43

more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a

fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an

injunction preventing any further disposition of the loan documents for Developer RE1 and 423

Kennedy until after all claims in this case have been decided.

<div align="center">

COUNT VIII

BREACH OF CONTRACT – 423 KENNEDY

Count VIII is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

262.     Paragraphs 1-261 of the Fourth Complaint are incorporated by reference.

263.     There was either an express contract or an implied-in-fact contract between 423

Kennedy and the WCP and the WCP Fund to fund construction draws.

264.      The WCP and the WCP Fund breached the contract by unilaterally refusing to

fund construction draws and due to no fault of 423 Kennedy.

265.     To the extent that SF NU is found to have been assigned any rights in the contract

from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible

for its breach.

266.     423 Kennedy has been damaged by the breach of contract by the WCP, the WCP

Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that

under Count VIII this Honorable Court enter judgment in its favor and against Defendants DP

Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for:

(a) any and all damages that 423 Kennedy has suffered and will suffer as a result of the

Defendants' breach of contract (currently estimated to be at least $3 million); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

44

</div>

8161\0002\4916-8515-5391.v1

<div align="right">185</div>

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Fourth Amended

Complaint for which a jury trial is allowed under the law.

                              Respectfully submitted,

                              GREENSTEIN DELORME & LUCHS, P.C.


Dated:  May 6, 2025            /s/ James D. Sadowski
                              _____
                              James D. Sadowski (D.C. Bar No. 446635)
                              Alexandria J. Smith (D.C. Bar. No. 1781067)
                              Spencer B. Ritchie (D.C. Bar No. 1673542)
                              801 17th Street, NW, Suite 1000
                              Washington, DC 20006
                              Telephone:  (202) 452-1400
                              Email: jds@gdllaw.com | ajs@gdllaw.com
                              *Counsel for Plaintiffs Developer RE1, LLC and
                              423 Kennedy St Holdings LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Fourth Amended Complaint was filed as an

Exhibit to Plaintiff's Motion for Leave to File Fourth Amended Complaint through ECF this 6th

day of May, 2025, and a notice of electronic filing should be sent by ECF to all counsel of record

in the case.

                              /s/ James D. Sadowski
                              _____
                              James D. Sadowski

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BRIEF REGARDING LACK OF MOOTNESS OF SUMMARY JUDGMENT MOTION

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK")

1

(collectively, the "Defendants"), by and through undersigned counsel, in response to this Honorable Court's Order Requiring Supplemental Briefing by May 7, 2025 (the "Order," as found at DE #56), and assert as follows:

## I.    Introduction

The plaintiffs herein (the "Plaintiffs") contend—in direct contravention of longstanding case law from the District of Columbia Court of Appeals, the United States Court of Appeals for the District of Columbia Circuit, the United States District Court for the District of Columbia, and this Honorable Court—that Mr. Drazin, as a trustee under two deeds of trust, owed some amorphous duty beyond that set forth in the deed of trust itself and District of Columbia statutory law. This contention was errant when the Plaintiffs argued such in opposition to Mr. Drazin's motion for summary judgment (the "Drazin Summary Judgment Motion," as found at DE #7), this contention was errant when the Plaintiffs restated it in their third amended complaint (the "Third Amended Complaint," as found at DE #40), and this contention will remain errant if the Plaintiffs are permitted to docket their fourth amended complaint (the "Fourth Amended Complaint," as found at DE #57-1).

Most importantly, though, because the core wrongfulness of this assertion has not been altered by any subsequent pleading (or requested pleading), the Drazin Summary Judgment Motion is not moot. Where, as here, an incurable deficiency survives an initial pleading and is incorporated into a subsequent pleading, a dispositive motion—whether one for summary judgment or even one seeking dismissal—is not mooted by the new pleading.

As discussed in greater detail *infra*, this notion is both well-explained by precedent (albeit with competing precedent being extant) and sensible in nature. While amendment is often a tool to plead additional facts or even alternative theories, amendment is not a tool through which

2

188

incurable legal maladies may be remedied or otherwise protracted. Especially where, as here, the dispositive motion turns not on sufficiency of pleading but, rather, the non-viability of an underlying theory, amendment is futile in the face of a dispositive motion.

Additionally, as also extrapolated upon below, the concern with mootness, while well-taken, is one that ought not interfere with the Drazin Summary Judgment Motion since (i) the motion is adopted in a separate summary judgment motion directed at the Third Amended Complaint, *see* Motion to Dismiss or, in the Alternative, for Summary Judgment, DE #44, at § VIII(d); and (ii) the doctrine of mootness does not bind bankruptcy courts in connection with adversary proceedings.

## II. Argument: The Drazin Summary Judgment Motion is Not Moot

In connection with both motions for summary judgment and motions to dismiss, case law establishes that amendment of an at-issue pleading does not necessarily invite mootness. This is particularly true where, as here, the subject amendment does not alter the underlying legal defect upon which the correlative dispositive motion is premised. There is well-settled precedent of District of Columbia law only imposing on trustees, serving under deeds of trust, those duties set forth in the correlative lien instruments and under statutory law. No amendment to the pleadings in this case can change that case law or alter the robustness of that precedent. And it follows that no amendment can thusly moot a dispositive motion premised upon the subject precedent.

As noted by the United States District Court for the District of Maryland, in a recent case where mootness was raised in a similar prism: ". . . YWWS's motion for summary judgment was not mooted by Buechler's amended complaint because such a motion is not directed at the adequacy of a complaint's allegations but is instead focused on the merits of the substantive claim." *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012). *See also*

3

189

*United Sec. Fin. Corp. v. First Mariner Bank*, ==2017 U.S. Dist. LEXIS 121869, at \*15== (D. Utah

Aug. 2, 2017) ("Because the claims on which First Mariner sought summary judgment are included

in both the original counterclaim the amended counterclaim, the claims and evidence related to

those claims were not affected by the filing of the amended counterclaim and First Mariner's

motion is not moot.").

To be sure, there does exist conflicting case law, in which courts have found amendment

to moot a pending summary judgment motion. Yet, as noted by one court, the key distinction is

oftentimes that mootness is found to occur where the amendment alters the claim for relief upon

which summary judgment is sought. *See, e.g.*, *Cottonwood Acres, Ltd. Liab. Co. v. First Am. Title

Ins. Co.*, ==2023 U.S. Dist. LEXIS 157978, at \*2== (D. Utah July 21, 2023) ("That said, other courts

have held that where the claims on which summary judgment is sought (and the evidence related

to those claims) are not affected by the filing of an amended complaint, then summary judgment

motions pending when the amended complaint was filed are not necessarily moot.") (citing *United

Sec. Fin. Corp.*, ==2017 U.S. Dist. LEXIS at 121869==).

This distinction, not coincidentally, traces neatly to the distinction often drawn in the prism

of motions to dismiss: when an amendment does not—or, as here, cannot—cure the defect upon

which a dispositive motion is premised, the original motion is not deemed moot:

> Generally, an "amended complaint supersedes the original complaint, thus making
> the motion to dismiss the original complaint moot." However, "[i]f some of the
> defects raised in the original motion remain in the new pleading, the court simply
> may consider the motion as being addressed to the amended pleading." "That is
> particularly true if the amended complaint is 'substantially identical to the original
> complaint.' "

*McDuff v. Jones*, ==2023 U.S. Dist. LEXIS 213250, at \*2-3== (E.D. Mich. Nov. 6, 2023) (quoting *Ky.

Press Ass'n v. Kentucky*, ==355 F. Supp. 2d 853, 857== (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors

of Mich., Inc.*, ==236 F.3d 299, 306== (6th Cir. 2000)); citing *Glass v. Kellogg Co.*, ==252 F.R.D. 367,==

4

368 (W.D. Mich. 2008); quoting *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002); *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022) (citing *Mandali v. Clark*, 2014 U.S. Dist. LEXIS 143850 (S.D. Ohio Oct. 9, 2014))).

This doctrine emanates, in large part, from the longstanding recognition that amendment is a futile exercise where a claim is legally impossible from the outset. *See, e.g.*, *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) ("Amendment is futile if the amended complaint would not withstand a motion to dismiss.") (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012)). *See also Rainey v. Patton*, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26, 2011) (". . . when a motion to amend only addresses a discrete issue, it may not moot the underlying motion to dismiss.") (citing *In re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir. 2004)).

Ultimately, the reasoning of the *Buechler* Court is most persuasive: since the question here is not one of pleading sufficiency but, rather, legal viability, amendment is immaterial. The Third Amended Complaint does not allege that the at-issue deeds of trust set forth greater responsibilities than are actually present therein (nor could they; the subject deeds of trust have long been part of the record in this case). Nor does the Third Amended Complaint posit some independent theory of fiduciary responsibility aside from Mr. Drazin's service as trustee under deeds of trust. So the non-viability of the Plaintiffs' topical contention—that a trustee under a deed of trust has an affirmative obligation to independently investigate and adjudicate disputes—is not curable through amendment. And it is thusly proper to consider the Drazin Summary Judgment Motion, already under advisement, on the merits of the briefing and arguments thereupon.[1]

---

[1] It bears notation that even if the Third Amended Complaint did moot the prior summary judgment motion, the same argument has been restated in a summary judgment motion directed toward the Third Amended Complaint. *See* Motion to Dismiss or, in the Alternative, for Summary Judgment, DE #44, at § VIII(d).

5

### III.    Argument: The Doctrine of Mootness is Inapplicable to Adversary Proceedings

There is a second reason consideration of the Drazin Summary Judgment Motion is not precluded by the docketing of the Third Amended Complaint: the doctrine of mootness is inapplicable to adversary proceedings in bankruptcy courts. For so long as bankruptcy judges are appointed by Circuit Courts of Appeal and serve limited terms (subject to renewal), bankruptcy courts will invariably hold the distinction of both being the federal courts with which members of the public are most likely to come into contact and federal courts unprotected by the safeguards of the constitutional judiciary. A necessary byproduct of this admittedly-curious distinction is that since bankruptcy courts do not within the ambit of Article III of the Constitution, bankruptcy courts are not subject to the "case or controversy" doctrine from which the notion of mootness originates.

As observed by the Supreme Court, "[t]he doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808 (2003); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)). *See also Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) ("Mootness arises out of Article III's 'case-or-controversy' requirement.").

Yet bankruptcy courts are not Article III courts. *Stern v. Marshall*, 564 U.S. 462, 469 (2011). And insofar as bankruptcy judges lack both the tenure and salary protections of Article III judges, bankruptcy courts are idiosyncratically derivative of Article I—not Article III—of the Constitution. *Id.* at 515.

All of which means that, as Article I courts, bankruptcy courts are not bound by the limiting contours of Article III of the Constitution. Or, in the words of a recent Fourth Circuit opinion:

6

192

"Mootness is an Article III doctrine, and bankruptcy courts are not Article III courts. . . So they can constitutionally adjudicate cases that would be moot if heard in an Article III court." *Kiviti*, 80 F.4th at 532 (citing *Stern*, 564 U.S. at 503).

To be sure, the suggestion herein is not that this Honorable Court—or any of its sister courts—ought to commence entertaining moot cases for sport, or issuing advisory opinions on a whim. Nor is this brief necessarily a full-throated defense of *Kiviti*. Yet the Supreme Court, after issuing a call for response, declined to grant certiorari when presented an opportunity to overturn *Kiviti*. *See Kiviti v. Bhatt*, 144 S. Ct. 2519 (2024). And it thusly stands to reason that somewhere in the Fourth Circuit's reasoning there exists at least some kernel of pliable truth.

If ever a bankruptcy court's exemption from the mootness doctrine were to be valued, such would be here. The Defendants, as discussed *supra*, sincerely posit the Drazin Summary Judgment Motion to *not* be moot. Yet even if it were technically moot, declining to issue a ruling thereupon— simply because of an intervening amendment that does not so much as feign to cure the intrinsically-impossible nature of the claims against Mr. Drazin—would be contra to judicial economy and serve only to delay consideration of a motion otherwise destined for adjudication.

That the summary judgment motion directed at the Third Amended Complaint incorporates, by reference, the Drazin Summary Judgment motion, is of particular import in this regard. *Buechler* teaches that mootness does not arise when a claim is either uncured or incurable, just as *Kiviti* teaches that a bankruptcy court may entertain fleetingly moot matters when the interests of justice so dictate. Both independently establish cause to permit adjudication of the Drazin Summary Judgment Motion and, taken together, both well militates against disposing of the briefing and arguments that have already been had on this front.

7

## IV.     Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) not deem the

Drazin Summary Judgment Motion to be moot; (ii) grant the Drazin Summary Judgment Motion;

and (iii) afford such other and further relief as may be just and proper.

<div align="right">

Respectfully submitted,

</div>

Dated: May 6, 2025          By:     /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The VerStandig Law Firm, LLC
                                    9812 Falls Road, #114-160
                                    Potomac, Maryland 20854
                                    Phone: (301) 444-4600
                                    mac@mbvesq.com
                                    *Counsel for the Defendants*

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I HEREBY CERTIFY that on this 6th day of May, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; AND WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' BRIEF REGARDING
## MOOTNESS OF SUMMARY JUDGMENT MOTION

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their response to the Court's Order Requiring Supplemental Briefing by May 7, 2025 (the "Order") [ECF No. 56].  Although the Court invited briefing *only* as to the issue of the mootness of Defendant Drazin's Motion for Summary

195

Judgment, the Defendants took that opportunity to take various pot shots at the merits of the

Third Amended Complaint.  The Borrowers will not respond in kind.

I.    LEGAL ARGUMENT

       The Court Could Exercise its Discretion as to the Issue of Mootness.

       Contrary to Defendants' assertion that an amendment of an at-issue pleading does not

invite mootness, multiple cases have held that an amended complaint supersedes the original

complaint as the operative live pleading and renders a motion for summary judgment on the

original complaint moot.  *Helena Chem. Co. v. Hood (In re Hood)*, Nos. 16-14511-SDM, 19-

01065-SDM, 2022 Bankr. LEXIS 1536, at *15 (Bankr. N.D. Miss. June 1, 2022).  *Lofty, LLC v.

McKelly Roofing, LLC*, No. 2:17-CV-159-D-BR, 2018 U.S. Dist. LEXIS 194592, 2018 WL

6004307, at *1 (N.D. Tex. Nov. 15, 2018) (*citing King v. Dogan*, 31 F.3d 344, 346 (5th Cir.

1994) ("An amended complaint supersedes the original complaint and renders it of no legal

effect unless the amended complaint specifically refers to and adopts or incorporates by

reference the earlier pleading."); *Griffin v. Am. Zurich Ins. Co.,* 697 F. App'x 793, 797 (5th Cir.

2017) ("Once filed, that amended complaint rendered all earlier motions, including [the

plaintiff's] motion for partial summary judgment, moot."); and *Stredwick v. Dallas Margarita

Soc'y, Inc.*, No. 3:12-CV-623-F, 2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430, at *1

(N.D. Tex. June 27, 2012) ("The filing of an amended complaint generally renders pending

motions moot.").

       As a result, the Court could determine that Defendant Drazin's Summary Judgment

Motion, which was directed at the Second Amended Complaint, is moot as a result of the filing

of the Third Amended Complaint.  *See also Sango v. Johnson*, No. 13-12808, 2014 U.S. Dist.

LEXIS 130400, 2014 WL 4658379, at * 1 (E.D. Mich. 2014) (denying as moot the

plaintiff's motion for summary judgment on the original complaint); *see also Malik v. AT & T

*Mobility LLC*, No. 1:08-cv-234, 2008 U.S. Dist. LEXIS 66482, 2008 WL 4104555 (W.D. Mich.

2008) (denying as moot the defendant's motion to dismiss or, in the alternative, for partial

summary judgment on the original complaint).

    As stated in *Rainey*, a case cited by the Defendants, only in the rare case where the

amended complaint is "substantially identical to the original complaint," may a properly filed

amended complaint be insufficient to moot the motion to dismiss.  *Rainey v. Patton*, No.

1:11cv327, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26, 2011) (citing *Greater

Cincinnati Coalition for the Homeless*, 2009 U.S. Dist. LEXIS 84474, 2009 WL 3029661, at *4;

*see also Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*, 529 B.R. 455, 458 (Bankr.

D. Mass. 2015).  For example, when a motion to amend only addresses a discrete issue, it may

not moot an underlying motion to dismiss.  *In Re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir.

2004).

    The complaints at issue here are not substantially identical.  There are major variations in

the Third Amended Complaint when compared to the prior complaints, including:  (a) combining

two complaints that had overlapping facts into one document; (b) adding JPK NewCo, LLC and

Shaheen Sariri as additional defendants; and (c) adding claims to set aside fraudulent

conveyances.  That said, and so the Court does not have to attempt a line-by-line comparison of

the prior complaints with the Third Amended Complaint, the allegations and claims asserted

against Mr. Drazin contained in the Third Amended Complaint were not substantially changed

from the prior complaints.

    Note finally that there was a short period of time for the Borrowers to brief this issue, and

both counsel of record for the Borrowers had busy schedules today and yesterday afternoon that

did not allow them to put "all hands on deck" toward an exhaustive research of the case law on

the mootness issue. The Borrowers' research did not yield any binding D.C. Circuit court cases,

or prior decisions of this court, squarely addressing the mootness issue presented here. The

Borrowers regret not being able to provide a more thorough brief on this issue.

<div style="margin-left: 40%">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated:  May 7, 2025

<div style="margin-left: 40%">

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ebm@gdllaw.com
| ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
  *and 423 Kennedy St Holdings, LLC*

</div>

<div style="text-align: center">

CERTIFICATE OF SERVICE

</div>

I HEREBY CERTIFY that on this 7th day of May, 2025, a true copy of the foregoing

Plaintiffs' Brief Regarding Mootness of Summary Judgment Motion was served electronically

and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

<div style="margin-left: 40%">

/s/ James D. Sadowski
James D. Sadowski

</div>

<div style="text-align: center">4</div>

The order below is hereby signed.

Signed: May 12 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## <u>ORDER GRANTING RENEWED MOTION TO REMAND</u>

Before the Court is the Plaintiffs' *Renewed Motion for Remand* ("Motion for Remand")
(ECF No. 46) and the Defendants' *Opposition to the Motion for Remand* (ECF No. 51). At the
conclusion of the hearing held May 8, 2025 (the "Hearing"), the Court issued an oral ruling
granting the Motion for Remand. The Court enters this Order consistent with the oral ruling.

1. <u>Mandatory Abstention</u>

The Court finds that the Plaintiffs' claims in this case did not arise under Title 11 or arise
in a case under Title 11. As of the date of the Hearing, all of the Plaintiffs' claims as stated in the
Third Amended Complaint (ECF No. 40) arose under state law.[1] Further, none of the Plaintiffs'
claims could have been commenced in a court of the United States absent jurisdiction under 28
U.S.C. § 1334(c)(2). Therefore, the Court finds that it has "related to" jurisdiction over the
Plaintiffs' claims.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain (also referred to as
mandatory abstention):

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). For the reasons stated at the hearing, the Court finds that the renewed
Motion for Remand was timely filed after the dismissal of the JPK NewCo LLC chapter 11 case,

---

[1] The Court previously considered and denied without prejudice a motion to remand filed by the Plaintiffs. At the time
of the previous motion, defendant JPK NewCo LLC was a debtor in a chapter 11 case. The JPK NewCo LLC chapter
11 was dismissed less than 30 days prior to the filing of the Motion for Remand. The dismissal of the JPK NewCo
LLC chapter 11 substantially changed the Court's analysis as to its jurisdiction over the claims in the Third Amended
Complaint.

the Plaintiffs' claims can be timely adjudicated in the Superior Court of the District Court of

Columbia, and, therefore, mandatory abstention is appropriate.

　　2.　Permissive Abstention

　　Alternatively, the Court finds that abstention under 28 U.S.C. § 1334(c)(1)[2] (also referred

to as permissive abstention) is appropriate. In evaluating whether permissive abstention is

appropriate, courts have looked to a variety of factors, including but not limited to:

　　(1) the effect on the efficient administration of the bankruptcy estate;

　　(2) the extent to which issues of state law predominate;

　　(3) the difficulty or unsettled nature of applicable state law;

　　(4) comity;

　　(5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;

　　(6) the existence of the right to a jury trial; and

　　(7) prejudice to the involuntarily removed defendants.

*See, e.g.*, *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998).

As noted in more detail at the hearing, most of the permissive abstention factors either support or

are neutral as to abstention.

　　Therefore, for the reasons stated herein and at the Hearing, it is hereby **ADJUDGED,**

**ORDERED**, and **DECREED** that:

　　1.　　The Plaintiffs' Motion for Remand is **GRANTED**;

　　2.　　The Court hereby **ABSTAINS** under 28 U.S.C. §§ 1334(c)(1) and (c)(2) from

hearing this case.

---

[2] "[N]othing in [§ 1334] prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1).

3.      This Order is not appealable under 28 U.S.C. § 1334(d).

4.      Due to remand, the Court takes no position or action on the *Motion to Dismiss or,*

*In the Alternative, for Summary Judgment* filed by Defendants DP Capital LLC, WCP Fund I LLC,

Daniel Huertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (ECF No. 44).

5.      This case is hereby **REMANDED** to the Superior Court of the District of

Columbia.

[Signed and dated above]

Service to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854

James D. Sadowski, Esq.
Alexandria J. Smith
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006

**END OF ORDER**

4

**United States Bankruptcy Court**
**for the District of Columbia**
**Angela D. Caesar, Clerk**
**333 Constitution Avenue, NW**
**Washington, DC 20001**
**(202) 354-3000**


Date: May 12, 2025



Clerk's Office
Superior Court for the District of Columbia
500 Indiana Avenue, NW
Room JM-170
Washington, DC 20001


      RE:    **YSRTL LLC TES CUSTODIAN v. WATERLOO RESCUE, LLC**
              **D.C. Superior Court Case No: 2022-CAB-005935**
              **Adversary Proceeding #: 24-10023-ELG**



Dear Clerk:

      On <u>May 12, 2025</u>, this Court signed an order remanding the above-entitled case to your Court. Enclosed is a copy of that order together with our case file and a certified copy of the docket entries.



                    ANGELA D. CAESAR, Clerk

              By:       <u>Megan G. Bleskoski</u>
                       Deputy Clerk

# U.S. Bankruptcy Court
## United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
### Adversary Proceeding #: 24−10023−ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn         *Date Filed:* 07/04/24
*Lead BK Case:* 23−00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
  *Nature[s] of Suit:*    01    Determination of removed claim or cause
                 21    Validity, priority or extent of lien or other interest
                      in property
                 91    Declaratory judgment
                 72    Injunctive relief − other

---

*Plaintiff*
_____

**Developer RE1 LLC**                  represented by **James D. Sadowski**
1629 K Street NW                                   Greenstein DeLorme & Luchs, PC
Suite 300                                         801 17th Street, N.W.
Washington, DC 20006                           Suite 1000
                                                   Washington DC, DC 20006
                                                   202−452−1400
                                                   Fax : 202−452−1410
                                                   Email: jds@gdllaw.com
                                                   *LEAD ATTORNEY*

                                                   **Alexandria Jean Smith**
                                                   Greenstein DeLorme and Luchs PC
                                                   801 17th Street NW
                                                   Suite 1000
                                                   Washington, DC 20006
                                                   202−452−1400
                                                   Email: ajs@gdllaw.com
                                                   *LEAD ATTORNEY*

---

*Plaintiff*
_____

**423 Kennedy St Holdings LLC**        represented by **James D. Sadowski**
1629 K Street, NW                                   (See above for address)
Suite 300                                         *LEAD ATTORNEY*
Washington, DC 20006

                                                   **Alexandria Jean Smith**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*

V.

*Defendant*
_____

**WCP Fund I LLC**                       represented by **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                       The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                      9812 Falls Road
1452 W. Horizon Ridge Pkwy                       #114−160
#665                                                    Potomac, MD 20854

1

Henderson, NV 89012
301−444−4600

301−444−4600
Email: mac@mbvesq.com

**Defendant**
_____

**DP Capital LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

**Defendant**
_____

**SF NU, LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

**Defendant**
_____

**Daniel Huertas**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

**Defendant**
_____

**Russell Drazin**
Pardo Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

represented by **Maurice Belmont VerStandig**
(See above for address)

**Defendant**
_____

**JPK NewCo LLC**
8401 Greensboro Drive
Suite 960
McLean, VA 22102

represented by **Maurice Belmont VerStandig**
(See above for address)

**Defendant**
_____

**Shaheen Sairi**

represented by **Shaheen Sairi**
PRO SE

| Filing Date | # | Docket Text |
|---|---|---|
| 07/04/2024 | 1 | Adversary case 24−10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A − Meeting of Creditors Transcript # 2 Exhibit B − All Pleading |

2

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24−10023−ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Dismiss # 2 Exhibit B − Opposition to Motion to Dismiss # 3 Exhibit C − Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Quash Subpoena # 2 Exhibit B − Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period − *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A − Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B − Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A − First Developer RE1 Promissory Note # 2 Exhibit B − Second Developer RE1 Promissory Note # 3 Exhibit C − First Developer RE1 Deed of Trust # 4 Exhibit D − Second Developer RE1 Deed of Trust # 5 Exhibit E − First 423 Kennedy Street Promissory Note # 6 Exhibit F − Second 423 Kennedy Street Promissory Note # 7 Exhibit G − First 423 Kennedy Street Deed of Trust # 8 Exhibit H − Second 423 Kennedy Street Deed of Trust # 9 Exhibit I − Developer RE1 Notice of Default # 10 Exhibit J − 423 Kennedy Street Notice of Default # 11 Exhibit K − Developer RE1 Affidavit of Non−Residential Mortgage Foreclosure # 12 Exhibit L − 423 Kennedy Street Affidavit of Non−Residential Mortgage Foreclosure # 13 Exhibit M − Developer RE1 Notice of Foreclosure # 14 Exhibit N − 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O − Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A − Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing − PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 − Docket Sheet for 2022−CAB−005935 # 2 Exhibit Exhibit 2 − Docket Sheet for 2023−CAB−004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non−Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

4

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | . | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 − April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 − July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 − Order Memorializing TRO Decision # 5 Exhibit No. 4 − Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 − Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom−contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # 2 Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28–3104 # 4 Exhibit DC Code Section 28–3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4–7–23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |



/s/ Megan Bleskoski

05/12/2025

The order below is hereby signed.

Signed: May 12 2025



_Elizabeth L. Gunn_
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## <u>ORDER GRANTING RENEWED MOTION TO REMAND</u>

Before the Court is the Plaintiffs' *Renewed Motion for Remand* ("Motion for Remand") (ECF No. 46) and the Defendants' *Opposition to the Motion for Remand* (ECF No. 51). At the conclusion of the hearing held May 8, 2025 (the "Hearing"), the Court issued an oral ruling granting the Motion for Remand. The Court enters this Order consistent with the oral ruling.

1. <u>Mandatory Abstention</u>

The Court finds that the Plaintiffs' claims in this case did not arise under Title 11 or arise in a case under Title 11. As of the date of the Hearing, all of the Plaintiffs' claims as stated in the Third Amended Complaint (ECF No. 40) arose under state law.[1] Further, none of the Plaintiffs' claims could have been commenced in a court of the United States absent jurisdiction under 28 U.S.C. § 1334(c)(2). Therefore, the Court finds that it has "related to" jurisdiction over the Plaintiffs' claims.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain (also referred to as mandatory abstention):

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). For the reasons stated at the hearing, the Court finds that the renewed Motion for Remand was timely filed after the dismissal of the JPK NewCo LLC chapter 11 case,

---

[1] The Court previously considered and denied without prejudice a motion to remand filed by the Plaintiffs. At the time of the previous motion, defendant JPK NewCo LLC was a debtor in a chapter 11 case. The JPK NewCo LLC chapter 11 was dismissed less than 30 days prior to the filing of the Motion for Remand. The dismissal of the JPK NewCo LLC chapter 11 substantially changed the Court's analysis as to its jurisdiction over the claims in the Third Amended Complaint.

the Plaintiffs' claims can be timely adjudicated in the Superior Court of the District Court of Columbia, and, therefore, mandatory abstention is appropriate.

    2.  <u>Permissive Abstention</u>

    Alternatively, the Court finds that abstention under 28 U.S.C. § 1334(c)(1)[2] (also referred to as permissive abstention) is appropriate. In evaluating whether permissive abstention is appropriate, courts have looked to a variety of factors, including but not limited to:

    (1) the effect on the efficient administration of the bankruptcy estate;

    (2) the extent to which issues of state law predominate;

    (3) the difficulty or unsettled nature of applicable state law;

    (4) comity;

    (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;

    (6) the existence of the right to a jury trial; and

    (7) prejudice to the involuntarily removed defendants.

*See*, *e.g.*, *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998).

As noted in more detail at the hearing, most of the permissive abstention factors either support or are neutral as to abstention.

    Therefore, for the reasons stated herein and at the Hearing, it is hereby **ADJUDGED, ORDERED**, and **DECREED** that:

    1.    The Plaintiffs' Motion for Remand is **GRANTED**;

    2.    The Court hereby **ABSTAINS** under 28 U.S.C. §§ 1334(c)(1) and (c)(2) from hearing this case.

---

[2] "[N]othing in [§ 1334] prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1).

3.      This Order is not appealable under 28 U.S.C. § 1334(d).

4.      Due to remand, the Court takes no position or action on the *Motion to Dismiss or,
In the Alternative, for Summary Judgment* filed by Defendants DP Capital LLC, WCP Fund I LLC,
Daniel Huertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (ECF No. 44).

5.      This case is hereby **REMANDED** to the Superior Court of the District of
Columbia.

[Signed and dated above]

Service to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854

James D. Sadowski, Esq.
Alexandria J. Smith
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006

### END OF ORDER



**ECF
DOCUMENT**
I hereby attest and certify that this is a printed copy of a
Document which was electronically filed with the United
States District and Bankruptcy Courts for the District of
Columbia.
Date Filed:_____
                                                05/12/2025
                                                ANGELA D. CAESAR, CLERK
By:_____
        /s/ Megan Bleskoski

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn          *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
   *Nature[s] of Suit:*   01   Determination of removed claim or cause
                         21   Validity, priority or extent of lien or other interest
                              in property
                         91   Declaratory judgment
                         72   Injunctive relief – other

*Plaintiff*
————————————————
**Developer RE1 LLC**                             represented by **James D. Sadowski**
1629 K Street NW                                                           Greenstein DeLorme & Luchs, PC
Suite 300                                                                       801 17th Street, N.W.
Washington, DC 20006                                               Suite 1000
                                                                                    Washington DC, DC 20006
                                                                                    202–452–1400
                                                                                    Fax : 202–452–1410
                                                                                    Email: jds@gdllaw.com
                                                                                    *LEAD ATTORNEY*

                                                                                    **Alexandria Jean Smith**
                                                                                    Greenstein DeLorme and Luchs PC
                                                                                    801 17th Street NW
                                                                                    Suite 1000
                                                                                    Washington, DC 20006
                                                                                    202–452–1400
                                                                                    Email: ajs@gdllaw.com
                                                                                    *LEAD ATTORNEY*

*Plaintiff*
————————————————
**423 Kennedy St Holdings LLC**              represented by **James D. Sadowski**
1629 K Street, NW                                                    (See above for address)
Suite 300                                                                   *LEAD ATTORNEY*
Washington, DC 20006
                                                                                    **Alexandria Jean Smith**
                                                                                    (See above for address)
                                                                                    *LEAD ATTORNEY*

V.

*Defendant*
————————————————
**WCP Fund I LLC**                                    represented by **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                                     The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                                     9812 Falls Road
1452 W. Horizon Ridge Pkwy                                      #114–160
#665                                                                            Potomac, MD 20854

Henderson, NV 89012                                301−444−4600
301−444−4600                                       Email: mac@mbvesq.com


*Defendant*
————————————————————
**DP Capital LLC**                          represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                    (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012


*Defendant*
————————————————————
**SF NU, LLC**                              represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                    (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012


*Defendant*
————————————————————
**Daniel Huertas**                          represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                    (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012


*Defendant*
————————————————————
**Russell Drazin**                          represented by **Maurice Belmont VerStandig**
Pardo Drazin LLC                                    (See above for address)
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015


*Defendant*
————————————————————
**JPK NewCo LLC**                           represented by **Maurice Belmont VerStandig**
8401 Greensboro Drive                               (See above for address)
Suite 960
McLean, VA 22102


*Defendant*
————————————————————
**Shaheen Sairi**                           represented by **Shaheen Sairi**
                                                    PRO SE


| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/04/2024 | | 1 | Adversary case 24−10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A − Meeting of Creditors Transcript # 2 Exhibit B − All Pleading |

2

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24–10023–ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Dismiss # 2 Exhibit B – Opposition to Motion to Dismiss # 3 Exhibit C – Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Quash Subpoena # 2 Exhibit B – Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period – *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A – Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B – Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A – First Developer RE1 Promissory Note # 2 Exhibit B – Second Developer RE1 Promissory Note # 3 Exhibit C – First Developer RE1 Deed of Trust # 4 Exhibit D – Second Developer RE1 Deed of Trust # 5 Exhibit E – First 423 Kennedy Street Promissory Note # 6 Exhibit F – Second 423 Kennedy Street Promissory Note # 7 Exhibit G – First 423 Kennedy Street Deed of Trust # 8 Exhibit H – Second 423 Kennedy Street Deed of Trust # 9 Exhibit I – Developer RE1 Notice of Default # 10 Exhibit J – 423 Kennedy Street Notice of Default # 11 Exhibit K – Developer RE1 Affidavit of Non–Residential Mortgage Foreclosure # 12 Exhibit L – 423 Kennedy Street Affidavit of Non–Residential Mortgage Foreclosure # 13 Exhibit M – Developer RE1 Notice of Foreclosure # 14 Exhibit N – 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O – Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non–Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # 2 Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28–3104 # 4 Exhibit DC Code Section 28–3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4–7–23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. _____ |
| Plaintiff, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| SF NU, LLC; and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| Plaintiff, | ) | (State Court Cases Consolidated) |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF REMOVAL

Come now WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), SF NU, LLC ("SNL"),

Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (the "Defendants"), by and

through undersigned counsel, pursuant to Section 1452 of Title 28 of the United States Code,

Section 1334 of Title 28 of the United States Code, and Federal Rule of Bankruptcy Procedure

1

<mark>9027</mark>, and hereby give notice of the removal of the above-captioned consolidated matters from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia (which, as noted *infra*, results in the referral of the matter to the United States Bankruptcy Court for the District of Columbia), and in support thereof note as follows:

**The Removed Cases**

1.      These are civil actions commenced in the Superior Court of the District of Columbia by Developer RE1 LLC ("DRL"), on or about December 16, 2022, and by 423 Kennedy St Holdings LLC ("423 Kennedy"), on or about July 13, 2023, with the two cases being subsequently consolidated less than a month ago, on or about June 11, 2024.

2.      DRL owns the real property located at 5501 First Street, NW, Washington, DC 20011 (the "DRL Property").

3.      423 Kennedy owns the real property located at 423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property").

4.      WCP loaned monies to both DRL and 423 Kennedy, securing such loans with deeds of trust fixed upon the DRL Property and the 423 Kennedy Property, respectively.

5.      WCP declared both loans to be in default following the occurrence of various breaches of the promissory notes and deeds of trust; despite such defaults, WCP permitted each borrower until the maturity date of the loans to pay off the underlying promissory notes.

6.      When neither 423 Kennedy nor DRL paid their correlative loans at maturity, WCP commenced the process of foreclosing upon the respective properties.

7.      These cases were brought by 423 Kennedy and DRL in an effort to (i) enjoin WCP from foreclosing; (ii) assert WCP did not have the right to declare defaults under the promissory

notes and deeds of trust; and (iii) seek various forms of damages, including forfeiture and monetary damages.

8.       423 Kennedy and DRL are also suing (i) Mr. Drazin, the substitute trustee under the deeds of trust, on a theory of breach of fiduciary duty; and (ii) Mr. Huertas, DPCL, and SF NU, on various theories (though SF NU is only a party to one of the two consolidated cases), some of which are pegged to ownership of the promissory notes and holding rights under the deeds of trust.

9.       Certain promissory notes and correlative deeds of trust, implicated in these two consolidated cases, are now held by JPK NewCo LLC ("JPK"), a party to whom certain debt instruments were transferred earlier this year. 423 Kennedy and DRL have refused to join JPK, the holder of such instruments, despite the economic and property rights of JPK being implicated by these proceedings.

10.       The core litigation goals in these two cases, on the parts of DRL and 423 Kennedy, appear to be frustrating the collection efforts of the Defendants and JPK, challenging the indebtedness owed to various Defendants and JPK, and seeking relief from the terms of commercial loan documents.

**The Alleged Partnership**

11.       On July 2, 2024, Wendell Webster ("Mr. Webster" or the "Trustee") filed an amended complaint (the "Amended Complaint"), in connection with the Chapter 7 bankruptcy of Charles Paret ("Mr. Paret" or the "Debtor"), alleging, *inter alia*, the existence of a partnership between Messrs. Paret and Huertas that "involve[s]" 423 Kennedy and myriad other companies and real estate assets. *See In re Paret*, Case No. 23-217-ELG at DE #132, ¶ 45.[1]

---

[1] The Amended Complaint was subsequently also docketed in the adversary proceeding captioned *Webster v. Huertas, et al.*, Case No. 23-10025, at DE #39.

3

12.     The Amended Complaint further alleges, *inter alia*, that Mr. Huertas "used" DRL "to purchase foreclosed properties belonging" to the partnership between Messrs. Paret and Huertas. *Id.* at ¶ 46.[2]

13.     While the Amended Complaint suffers myriad flaws, a plain reading of the document reveals the Trustee is asserting that 423 Kennedy is a part of the partnership the Trustee alleges to exist and, further, that the same partnership has an interest in the property owned by DRL. *Id.*, *passim*.

14.     The Amended Complaint seeks "imposition of a constructive trust on" the properties comprising the alleged partnership, "transfer" of the alleged partnership's properties "to the trust," and injunctive relief, among myriad other remedies. *Id.* at pp. 17- 20.

15.     Stated otherwise: the Trustee is asserting that Mr. Huertas and Mr. Paret have a partnership that owns some combination of 423 Kennedy, DRL, the 423 Kennedy Property, the DRL Property, WCP's interest in the 423 Property, and/or WCP's interest in the DRL Property.

**Debtor Allegations**

16.     The assertions in the Amended Complaint are consistent with theories the Debtor has espoused in connection with his bankruptcy proceedings.

17.     Specifically, less than a week ago, on June 25, 2024, a meeting of creditors was held in the Debtor's bankruptcy case (the "Meeting of Creditors").

18.     At the Meeting of Creditors, the following colloquy touched upon the interplay of (i) the alleged partnership, (ii) 423 Kennedy, and (iii) the DRL Property:

MR. SADOWSKI: Okay. One second, Mr. Gardner (sic).

---

[2] The manner in which this allegation is worded is such that it is not clear if the Trustee is alleging DRL was used to purchase multiple properties or a single property; the Defendants do not mean to suggest the Trustee is alleging multiple properties to have been acquired by DRL, especially insofar as it is believed DRL has only ever owned the DRL Property.

4

Now, when you were being asked some questions by Mr. VerStandig, you gave some answers that things were currently in debate. I'm not going to debate you over your answers, but would it be fair to sum it up that -- all right. Let me ask it this way. Do you currently own a membership interest in 423 Kennedy Street Holdings, LLC?

MR. PARET: I believe I do.

MR. SADOWSKI: Okay. And is that belief based upon this theory that WCP was a partner with you? Is that what the basis for that belief is?

MR. PARET: That is correct.

MR. SADOWSKI: Okay. And would the same hold true for 5501? Excuse me. I don't have the address right in front of my face here. 5501 First Street Holdings, LLC, you indicated that it's -- there's a debate over whether you have a membership interest in that. And my understanding from your testimony is that the date is -- that the belief that you have, you have a membership interest is on this partnership theory with the WCP. Is that right?

MR. PARET: That is correct, along with the fact that the LLCs that were in ownership, the investor group have ownership in those LLCs. That's -- that's -- it's still unclear. But that is the -- that's the theory.

Transcript of Meeting of Creditors, attached hereto as Exhibit A, at 46:19-47:17.

19.     The theories espoused by Mr. Paret at the Meeting of Creditors appear to be consistent with those promoted by the Trustee in the Amended Complaint.

### Core and "Related To" Status

20.     If the Trustee is correct (i) that 423 Kennedy is part of the putative partnership between the Debtor and Mr. Huertas; and (ii) that Mr. Huertas has wrongfully "used" DRL to foreclose an asset belonging to the alleged partnership, the disposition of these cases will directly impact the administration of the Debtor's bankruptcy estate without regard to whether 423 Kennedy and DRL prevail, the Defendants prevail, or some combination thereof.

21.     Should the Defendants prevail in these actions, the the lone asset of 423 Kennedy—an alleged part of the partnership the Trustee is seeking to establish—will be foreclosed.

22.     Should 423 Kennedy and/or DRL prevail in these actions, 423 Kennedy—an entity the Trustee insists to be part of the alleged partnership—will retain its eponymous asset, and/or

DRL (an entity the Trustee alleges to have been "used" by Mr. Huertas to take a partnership property) will retain its sole asset.

23. Stated more simply: the Trustee is alleging a vast partnership, concerning myriad properties and interests therein; these cases concern the disposition of two such properties and security interests.

24. The relief sought by DRL and 423 Kennedy in these cases includes, *inter alia*, a determination of the validity and extent of liens; to the extent that the Trustee is correct that one or both of those liens are partnership assets, this is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code.

25. Equally, the Trustee asserts a partnership interest in assets titled in the name of both 423 Kennedy and DRL; to the extent the Trustee is correct in such assertion, these two cases will directly affect the liquidation of the assets of the Debtor's estate, thereby rendering this a core proceeding under Section 157(b)(2)(O) of Title 28 of the United States Code.

26. Further, in light of the various allegations set forth in the Amended Complaint, these two cases are most certainly "related to" the administration of Mr. Paret's bankruptcy estate.

## General Denial

27. For the avoidance of doubt or ambiguity, Mr. Huertas and WCP deny—in the most vehement terms possible—that there ever existed a partnership with Mr. Paret.

28. The removal of these cases is not based upon any theory in which the Amended Complaint ought to be credited as true or legally proper but, rather, solely upon the relatively uncontroversial theory that the Amended Complaint ought to be credited as constituting the current allegations of a bankruptcy trustee in connection with the administration of the estate that he has been charged with liquidating for the benefit of creditors.

6

**Formalistic Recitations**

29.     If the Trustee's allegations in the Amended Complaint are correct, the proceedings in these two cases are subject to the automatic stay set forth in Section 362 of Title 11 of the United States Code, and such stay has never been terminated.

30.     Pursuant to DCt.LBR 5011-1, these consolidated cases are automatically referred to the United States Bankruptcy Court for the District of Columbia upon being removed from the Superior Court of the District of Columbia.

31.     Attached hereto as Exhibit B is "a copy of all process and pleadings," together with all docket entries, in the consolidated cases.

32.     A copy of this notice is being docketed in the Superior Court of the District of Columbia, in a manner substantially contemporaneous with its filing herein, sans Exhibits A and B.

33.     The Defendants consent to the entry of final orders or judgments of the United States Bankruptcy Court for the District of Columbia.

                                            Respectfully submitted,

Dated: July 4, 2024                         By: /s/ Maurice B. VerStandig
                                                Maurice B. VerStandig, Esq.
                                                Bar No. MD18071
                                                The VerStandig Law Firm, LLC
                                                1452 W. Horizon Ridge Pkwy, #665
                                                Henderson, Nevada 89012
                                                Phone: (301) 444-4600
                                                Facsimile: (301) 444-4600
                                                mac@mbvesq.com
                                                *Counsel for the Defendants*

*[Certificate of Service on Following Page]*

7

16

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of July, 2024, a copy of the foregoing is being

tendered to a third party commercial mailing vendor to be sent, via first class mail, postage prepaid,

on July 5, 2024, to:

>James D. Sadowski, Esq.
>Greenstein DeLorme & Luchs, P.C.
>801 17th Street, NW
>Suite 1000
>Washington, DC 20006
>*Counsel for Developer RE1 LLC and*
>*423 Kennedy St Holdings LLC*

>Alexandria J. Smith, Esq.
>Greenstein DeLorme & Luchs, P.C.
>801 17th Street, NW
>Suite 1000
>Washington, DC 20006
>*Counsel for Developer RE1 LLC and*
>*423 Kennedy St Holdings LLC*

>423 Kennedy St Holdings, LLC
>1629 K Street, NW
>Suite 300
>Washington, DC 20006

>Developer RE1 LLC
>1629 K Street, NW
>Suite 300
>Washington, DC 20006

A copy is also being sent to each of the foregoing lawyers, electronically, through the docketing

of this notice in the consolidated Superior Court case.

>/s/ Maurice B. VerStandig
>Maurice B. VerStandig

Case 25-10020-ELG   Doc 1-1   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - McDonough of Entreto (Partial) Transcript   Page 786 of 1284

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF COLUMBIA
 2
      In Re:                         . Case No. 23-00217-ELG
 3                                   . Chapter 7
      CHARLES PAXTON PARET,          .
 4                                   . Washington, D.C.
                   Debtor.           . June 25, 2024
 5    . . . . . . . . . . . . . . .

 6                    341 MEETING OF THE CREDITORS
                        BEFORE WENDELL WEBSTER
 7                        CHAPTER 7 TRUSTEE

 8    APPEARANCES:

 9    For the Debtor:            Martin Law Group, P.C.
                                 By: ELIZABETH KORBUT, ESQ.
10                               8065 Leesburg Pike
                                 Suite 750
11                               Vienna, VA 22182

12    For the Chapter 7          McNamee Hosea, P.A.
      Trustee:                   By: JUSTIN PHILIP FASANO, ESQ.
13                               6404 Ivy Lane
                                 Suite 820
14                               Greenbelt, MD 22070

15    For WCP Fund I LLC, DP     The VerStandig Law Firm, LLC
      Capital LLC, 1Sharpe       By: MAURICE BELMONT VERSTANDIG, ESQ.
16    Opportunity Intermediate   9812 Falls Road
      Trust:                     #114-160
17                               Potomac, MD 20854

18    For Manik Chamarthy:       Greenstein DeLorme & Luchs, P.C.
                                 By: JAMES SADOWSKI, ESQ.
19                               801 17th Street, N.W.
                                 Suite 1000
20                               Washington, DC 20006

21    For Welch Family Limited   By: TODD LEWIS, ESQ.
      Partnership Group:
22

23

24
      Proceedings recorded by electronic sound recording.
25    Transcript produced by transcription service.
```

Colloquy

1          (Proceedings commenced at 10:30 a.m.)

2          (Witness sworn.)

3               MR. WEBSTER:  All right.  State your full name for the

4     record.

5               MR. PARET:  Charles Paxton Paret.

6               MR. WEBSTER:  Did you read the bankruptcy petition and

7     bankruptcy schedules and the forms that were filed in this case

8     on your behalf?

9               MR. PARET:  I did.

10              MR. WEBSTER:  And are you personally familiar with

11    that information?

12              MR. PARET:  I am.

13              MR. WEBSTER:  And it is true and accurate, correct?

14              MR. PARET:  Yes.  There's some edits and additions

15    that were -- that we're making that I found going back through,

16    items that are missing that I still -- that I still believe

17    that I have ownership in that haven't been discontinued or

18    haven't been -- are not part of my larger claims.

19              MR. WEBSTER:  I understand, but you can continue to

20    clarify that, correct, going forward?

21              MR. PARET:  Yes, of course.

22              MR. WEBSTER:  All right.  Now, is there any reason why

23    you can't answer the questions this morning?

24              MR. PARET:  Why would there not be a reason why I

25    can't answer the questions?

Case 25-10020-ELG    Doc 1-1    Filed 09/04/24    Entered 09/04/24 19:05:22    Desc
Exhibit A - Meeting of Creditors (Partial) Transcript    Page 3 of 28

3

Colloquy

1    MR. WEBSTER:  Well, no.  I'm just required to ask you

2    that question.  But I take it there is no reason you can't

3    answer, correct?  You're ready to proceed, right?

4    MR. PARET:  Unless I don't know the answer to the

5    question.

6    MR. WEBSTER:  Very good.  Very good.  I understand.

7    All right.  So do the bankruptcy schedules identify all of your

8    assets and creditors in the case?

9    MR. PARET:  They identify -- there are some missing

10   creditors.  There's some missing -- not -- nobody that had

11   filed anything, but there's missing creditors, I believe.  And

12   there's missing -- there's a few missing properties that I

13   still have ownership in that were not included in there.

14   MR. WEBSTER:  All right.  So I'm going to make a note

15   of that, and we'll follow back up on that.  All right?

16   MR. PARET:  Absolutely.

17   MR. WEBSTER:  You may need to update the schedules at

18   some point to complete them.  Now, do you still live at the

19   same address that you lived at when the bankruptcy petition was

20   filed?

21   MR. PARET:  Well, you're saying 343 First Street?

22   MR. WEBSTER:  Is that the address, 343 First Street?

23   MR. PARET:  It's where I live now.

24   MR. WEBSTER:  343 First Street.  North.  What?

25   Northwest?  Northeast?



Case 25-10088-ELG  Doc 1-2  Filed 09/04/25  Entered 09/04/25 19:05:28  Desc
Exhibit A - Met Dkt of Entries (Partial) - Transcript  Page 787 of 1284

4

Colloquy

1          MR. PARET:  No, no.  Berryville, Virginia.

2          MR. WEBSTER:  343 First Street.  Varityville,

3    Virginia.

4          MR. PARET:  Berryville, Virginia.

5          MR. WEBSTER:  Berryville.  Berryville, Virginia

6          MR. PARET:  22611.  And when the bankruptcy was filed

7    I was moving around between my house in DC where I lived with

8    my ex-wife and our other house here.

9          MR. WEBSTER:  I got you.  So now, let me ask you.  How

10   long did you live in the District of Columbia before you moved

11   to Berryville?

12         MR. PARET:  We haven't.  We've always been in

13   Virginia, but we've -- we've -- we've had a house in DC.  My

14   wife's had a house in DC we'd go back and forth to quite

15   frequently.

16         MR. WEBSTER:  How long did you have that house?

17         MR. PARET:  I never had it.  My wife had it for,

18   maybe, eight, seven -- seven, six years, something like that.

19         MR. WEBSTER:  Oh, I see.  So that never really was

20   your address, the DC house.  Your address was always the

21   Virginia house, correct?

22         MR. PARET:  Yes, sir.

23         MR. WEBSTER:  All right.  How long did you live in

24   Virginia?

25         MR. PARET:  I've lived in Virginia for, maybe, six --



Case 25-10023-ELG    Doc 1-21    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - Meeting of Creditors (Partial) Transcript    Page 788 of 1284

5

Colloquy

1    six years.  Six, seven years.  I had another address before

2    that in DC.  I lived in an apartment before I was married.

3             MR. WEBSTER:  So hold on then.  You lived in Virginia

4    for six years.

5             MR. PARET:  Let me give you -- let me give you the --

6    I would say 2018.  2018, 2019 I started going out more to

7    Virginia.  That's correct.

8             MR. WEBSTER:  All right.  And you still live there

9    now.  You still live in Virginia now, correct?

10            MR. PARET:  Yes.

11            MR. WEBSTER:  All right.

12            MR. PARET:  Between here and Atlanta, where my wife

13   has a business, and we go back and forth.

14            MR. WEBSTER:  And the property that you live in in

15   Virginia, is that your residence, or are you renting it?

16            MR. PARET:  It is.

17            MR. WEBSTER:  Your residence?

18            MR. PARET:  It is my residence.

19            MR. WEBSTER:  All right.

20            MR. PARET:  Okay.

21            MR. WEBSTER:  Are you planning on buying any real

22   estate in the next 120 days?

23            MR. PARET:  No.

24            MR. WEBSTER:  Do you have a mobile phone number you

25   can give me?

Colloquy

1      MR. PARET:  Yes.  202-834-7673.

2      MR. WEBSTER:  And do you have an email address?

3      MR. PARET:  Yes.

4      MR. WEBSTER:  Go ahead.

5      MR. PARET:  C as in Charlie, P as in Paul, P as in

6  Paul.

7      MR. WEBSTER:  Is that two P's?

8      MR. PARET:  Yeah.

9      MR. WEBSTER:  Is that two P's?

10      MR. PARET:  Yeah.  Two P's.

11      MR. WEBSTER:  Okay.  Go ahead.

12      MR. PARET:  @colomariver.com.

13      MR. WEBSTER:  Spell that.

14      MR. PARET:  C-O-L-O-M-A-R-I-V-E-R.com.

15      MR. WEBSTER:  Thank you.  Are you currently single,

16  married or separated?

17      MR. PARET:  I just have a partner.  I'm not married.

18      MR. WEBSTER:  All right.  Single.  Do you have any

19  dependents?

20      MR. PARET:  I have a daughter.

21      MR. WEBSTER:  One daughter.  Are you currently

22  employed?

23      MR. PARET:  Yes.  I'm working as an advisor in putting

24  together real estate transactions.

25      MR. WEBSTER:  Do you have an employment address



Colloquy

1    different from your home?

2            MR. PARET:  No.

3            MR. WEBSTER:  Okay.  Your home address. Have you ever

4    filed for bankruptcy before?

5            MR. PARET:  No, I never filed for bankruptcy.  I was

6    involuntary, put into it.

7            MR. WEBSTER:  I see.  I understand.  Have you

8    purchased a car within the last six months?

9            MR. PARET:  No.

10            MR. WEBSTER:  All right.  You currently own a vehicle?

11            MR. PARET:  I do.

12            MR. WEBSTER:  Is it insured?

13            MR. PARET:  It is.

14            MR. WEBSTER:  All right.  You have any life insurance

15    with cash surrender value?

16            MR. PARET:  No.

17            MR. WEBSTER:  Were you expecting any tax refunds at

18    the time you filed the bankruptcy case -- at the time the

19    bankruptcy case was filed?

20            MR. PARET:  No, but there could be.  We've engaged a

21    tax company, and there could be substantial refunds that we're

22    in the process of working through.

23            MR. WEBSTER:  All right.  In the process.  Okay.

24            MR. PARET:  I can give you the name of that accountant

25    if you need that.



Colloquy

```
 1           MR. WEBSTER:  Please do.

 2           MR. PARET:  It's Bobby Bhatia.

 3           MR. WEBSTER:  Bobby?

 4           MR. PARET:  Bhatia LLP or is it Bhatia, CPA &

 5    Consultants.

 6           MR. WEBSTER:  Spell it for me.  Bobby?

 7           MR. PARET:  B --

 8           MR. WEBSTER:  Wait a minute.  I'm sorry.  Bobby,

 9    B-O-B-B-Y?

10           MR. PARET:  Yes, sir.

11           MR. WEBSTER:  All right.

12           MR. PARET:  B-H-A-T-I-A.

13           MR. WEBSTER:  CPA?

14           MR. PARET:  Yes, sir.

15           MR. WEBSTER:  All right.  And is there a phone number?

16           MR. PARET:  I don't -- I don't have it on me at the

17    moment, but I can have it emailed to you at another time.

18           MR. WEBSTER:  Very good.  Very good.  All right.  Does

19    anyone owe you any money, including wages?

20           MR. PARET:  Yeah.  There's probably a long.  I have to

21    go through that list.  Yeah.

22           MR. WEBSTER:  Okay.  And that would be added to your

23    schedules, correct, monies that are owed?

24           MR. PARET:  You would think -- I think one is, I mean,

25    there's some people that I can't really find that owe me an
```



www.escribers.net  |  800-257-0885

Case 25-10023-ELG    Doc 1-21    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - McDonough Creditors (Partial) Transcript    Page 792 of 1284

9

Colloquy

1    exorbitant amount of money.  I don't know where they're

2    located.  I looked into hiring a private investigator, and I

3    can't seem to -- seem to locate one of the individuals.  The

4    other individual is based in DC.  Owes me probably about

5    $75,000.  He used my money to buy a personal residence instead

6    of an investment.  And he's based in DC.

7            MR. WEBSTER:  All right.  Do you own any antique

8    collectibles?

9            MR. PARET:  I did for -- I had -- I had a bunch of

10   stuff under consignment on a store that I used to manage, but I

11   no longer -- I've been -- I no longer have that property

12   anymore or any of the antiques that were in there other than

13   what's in my house, my furniture and stuff --

14           MR. WEBSTER:  All right.

15           MR. PARET:  -- now.

16           MR. WEBSTER:  So all of your property though, is

17   listed in the bankruptcy schedules now; is that correct?

18           MR. PARET:  That's correct.

19           MR. WEBSTER:  All right.  Do you have any domestic

20   support obligations that you're required to pay?

21           MR. PARET:  Other than taking care of my daughter and

22   my wife, no, I don't have any other.

23           MR. WEBSTER:  But I mean, not -- that's not in the

24   form of a domestic support obligation.  Is that right?

25           MR. PARET:  No, I don't.



Case 25-10023-ELG  Doc 1-21  Filed 09/01/25  Entered 09/01/25 19:05:28  Desc
Exhibit A - Meeting of Creditors - Transcript  Page 793 of 1284

10

Colloquy

1          MR. WEBSTER:  Okay.  All right.

2          MR. PARET:  But --

3          MR. WEBSTER:  Have you --

4          MR. PARET:  I have to take care of my family.

5          MR. WEBSTER:  I understand.  I understand.  Have you

6     transferred any property out of your name in the last four

7     years?

8          MR. PARET:  No.  No.

9          MR. WEBSTER:  All right.  Have you sold a house or

10     business in the last four years?

11          MR. PARET:  You know, I've had -- no.  I've had some

12     properties taken from me, but I haven't had any -- I haven't

13     sold or exited.

14          MR. WEBSTER:  I understand.  Has anyone passed away

15     that you would expect to inherit property from?

16          MR. PARET:  No.

17          MR. WEBSTER:  Have you been involved in an automobile

18     accident where you might have a claim against someone?

19          MR. PARET:  No.

20          MR. WEBSTER:  And now, are you currently involved in

21     any litigation where you're suing anyone?

22          MR. PARET:  Yes.

23          MR. WEBSTER:  All right.  And is that information in

24     the schedules?

25          MR. PARET:  It should be.



Case 25-10023-ELG   Doc 1-21   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 794 of 1283

11

Colloquy

1    MR. WEBSTER:  All right.  We'll follow up if it's not.

2    Now, you said you're -- are you in the process of finalizing

3    your personal taxes, or are these business taxes?  You said you

4    have an accountant that's looking into the tax issues.

5    MR. PARET:  It will be a combination of personal and

6    business.

7    MR. WEBSTER:  All right.  So you're in the process of

8    doing that?

9    MR. PARET:  Yes.

10   MR. WEBSTER:  All right.  And we need to speak to

11   speak to Bobby Bhatia about that.

12   MR. PARET:  (Indiscernible).

13   MR. WEBSTER:  All right.

14   MR. PARET:  And I spoke to my agent at the IRS, and

15   she's aware that we're amending the -- there's some tax

16   obligations that are incorrect that date back to 2019.  So

17   hopefully, by the time we're done with these taxes, all of that

18   will be amended.

19   MR. WEBSTER:  I understand.  Now, did you list all of

20   your bank accounts in the schedules?

21   MR. PARET:  I did.

22   MR. WEBSTER:  All right.  Do you have a stock account

23   or mutual fund account?

24   MR. PARET:  I do not.

25   MR. WEBSTER:  All right.  And have you paid anyone



Colloquy

1    more than $600 in bills in the past three months?

2           MR. PARET:  Other than my current obligations,

3    mortgages, car payments --

4           MR. WEBSTER:  All right.  And that information is

5    reflected in the schedules.  Correct?

6           MR. PARET:  Correct.  All right.

7           MR. WEBSTER:  Do you have a college education fund for

8    your daughter?

9           MR. PARET:  I do not.

10           MR. WEBSTER:  Have you owned or had any interest in an

11   LLC or a business in the past four years?

12           MR. PARET:  Yes, of course.

13           MR. WEBSTER:  And that's reflected in the schedules

14   too, correct?

15           MR. PARET:  Yeah, there's a lot of LLCs.  Now, the

16   problem is most of those LLCs are either defunct or I'm not

17   renewing them.  So either they're -- they're part of the

18   current litigation, or I've just let them go because I can't

19   pay to renew them.

20           MR. WEBSTER:  I understand.  But they are listed in

21   your schedules.

22           MR. PARET:  Yes.

23           MR. WEBSTER:  All right.

24           MR. PARET:  There are some that are missing or that

25   have properties attached to them that were not in the schedules

Case 25-10023-ELG    Doc 1-21    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 796 of 1284

13

Colloquy

1    that I did not think that I would have a claim to, but the LLCs

2    are still active and the properties are still active, and these

3    are assets that are outside of the current litigation with one

4    of my creditors.

5            MR. WEBSTER:  Okay.  So we may have to follow up with

6    you on that.  Have you been involved in any type of trust in

7    the last three years?

8            MR. PARET:  No.  There was a trust that was set up in

9    Virginia that never went -- it was never actually set up.  It

10   was meant to be for a project.  I think it was called the Paret

11   Family Limited Partnership Trust, but it never was set up, and

12   there's nothing attached to it.  And it just -- it should have

13   gone defunct at this point.

14           MR. WEBSTER:  All right.  Do you own any

15   cryptocurrency?

16           MR. PARET:  I did, and it's one of the ongoing

17   litigations.  I'm trying to find one of my -- the gentleman who

18   ran off with it is one of my debtors that ran off with quite --

19   quite a large sum of it.

20           MR. WEBSTER:  All right.  And is that referred to in

21   the schedules?

22           MR. PARET:  It should be, yes.

23           MR. WEBSTER:  All right.  What about a Venmo account?

24   Do you have a Venmo account?

25           MR. PARET:  I personally do not, but I think, like,



Case 25-10023-ELG   Doc 1-21   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - Audio Docket Creditor Transcript   Page 797 of 1284

14

Colloquy

1   one of my -- my retail businesses did for a while.

2         MR. WEBSTER:  All right.  How about a PayPal account?

3         MR. PARET:  No.

4         MR. WEBSTER:  And have you made any electronic

5   transfers to any parties from any of these accounts in the past

6   year?

7         MR. PARET:  To what accounts?

8         MR. WEBSTER:  From any of those electronic accounts in

9   the past year.

10        MR. PARET:  Yeah, I think for my -- it's set up under

11  my house payments where renters can -- people that rent my

12  little cottages that are at my house and properties that I

13  manage, they pay through -- they can pay through Venmo.  It's

14  mostly where they pay.  If they don't pay through Venmo,

15  they'll pay through, like, just an online processing.

16        MR. WEBSTER:  So but --

17        MR. PARET:  That goes to --

18        MR. WEBSTER:  That's the Venmo account, though, that's

19  listed for your business.

20        MR. PARET:  That's correct, Your Honor.  Yes.

21        MR. WEBSTER:  Yeah, you said you said you didn't have

22  one personally, but your business -- you have a business name.

23        MR. PARET:  Yeah.

24        MR. WEBSTER:  All right.

25        MR. PARET:  It should be at least.  I mean, I have an



1    admin that manages all of that.

2              MR. WEBSTER:  All right.  All right.

3              MR. PARET:  I'll double check with you.

4              MR. WEBSTER:  Oh.  Very good.  Okay.  I don't have any

5    more 341 interrogatory questions right now, but we may have to

6    follow up once we review your schedules.  All right?

7              MR. PARET:  Okay.

8              MR. WEBSTER:  All right.  The attorneys on the line

9    beginning with Attorney Fasano.  Do you have any follow-up

10   questions?

11             MR. FASANO:  Yeah.  All right.  Mr. Paret, I saw you

12   listed, it looked like forty or fifty, maybe eighty or ninety

13   LLCs.  I know those LLCs are involved in litigation, but did

14   any of those LLCs still own any property in --

15             MR. PARET:  Yes.

16             MR. FASANO:  Yes.  Which ones are those?

17             MR. PARET:  1114 8th Street Holdings L.L.C.

18             MR. FASANO:  Okay.  And does that one own the property

19   at that address?

20             MR. PARET:  Correct.  And I'm a fifty percent owner of

21   that address of that company.  Yes.

22             MR. FASANO:  Okay.

23             MR. PARET:  There was a very, you know, the partner in

24   that deal, in order to avoid a claim against the property by

25   one of our investors, he made me sign, like, a small release,



Colloquy

1   but I've had my counsel look at it, and he said, that's

2   invalid.  There's been no dissolution of the partnership, and

3   there's been no dissolving of the asset, and it's worth

4   probably $2 million.  And I think we have about a $900,000

5   first position trust that's on that.

6          MR. FASANO:  All right.  Is there any second position

7   trust on it?

8          MR. WEBSTER:  I don't think so.  No.

9          MR. FASANO:  Okay.  Who's the other fifty percent

10  owner?

11         MR. PARET:  I believe Easy Loans (phonetic).  Ryan

12  Shandell.

13         MR. FASANO:  Ryan.  How do you spell his last name?

14         MR. PARET:  S-H-A-N-D-E-L-L.

15         MR. FASANO:  Okay.  Are there any other --

16         MR. PARET:  Go ahead.

17         MR. FASANO:  Are there any other companies that still

18  own property that you have an interest in?

19         MR. PARET:  Yes.  There was 729 Kennedy Street

20  Holdings.  It's not a party to the WCP litigation.

21         MR. FASANO:  Okay.  And what does that own?  I mean,

22  does that own 729 Kennedy Street?

23         MR. PARET:  Yes.

24         MR. FASANO:  So what?  Fifty percent interest?

25         MR. PARET:  1,000,003, and it's -- I think it has a

Case 25-10023-ELG    Doc 1-21    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - MTD Docket Entries - Part 1 - Transcript   Page 800 of 1283

17

Colloquy

1    $550,000 first position.

2            MR. FASANO:  You own --

3            MR. PARET:  No, I own sixty-five percent.  Sixty-three

4    percent, something like that.  I don't know the exact amount.

5            MR. FASANO:  Who's the other owner?

6            MR. PARET:  That's a group of small investors that are

7    part of the litigation.

8            MR. FASANO:  Okay.  And WCP has no lien on that?

9            MR. PARET:  No.

10           MR. FASANO:  Okay.  Who has the lien on that?  .

11           MR. PARET:  Dave McClure (phonetic).  I forget the

12   name of the lender.  It's something, Hive Lending (phonetic).

13   Hive lending.

14           MR. FASANO:  Hive lending?  Like a beehive.

15           MR. PARET:  Yes.

16           MR. FASANO:  Okay.  Anything else?

17           MR. PARET:  Well, there's a property in question that

18   I signed a release for, but it may be a little gray.  There was

19   a property in southeast DC, a fairly sizable site, where we

20   made a deal with a developer that we could close on the land,

21   but in order for him to close on the land he had -- we had to

22   lower our purchase price, and he would give us a concession.  I

23   don't think there's any -- if either -- I mean, I could try to

24   litigate it, but I'm not sure it's worth going after, because

25   we did sign, sort of, a release.  But there was an agreement

Colloquy

1  between us and the other party.  It's just a single individual,

2  but we sold them a property for a million dollars, and the --

3  it ended up being, like, more like 300,000, because we couldn't

4  get the appraisal done.  But I don't know if I have any real

5  claim to it at this point, but -- I forgot.  I forgot about --

6      MR. FASANO:  What is the entity and what is the

7  property?

8      MR. PARET:  I have to send it to you.  It's -- it's

9  just lots.  It's just empty lots.  There's no property.

10      MR. FASANO:  Okay.  And it's not in your company's

11  name right now?

12      MR. PARET:  No, it was in a company that I

13  established.  I think it was reassigned to a new -- it was sold

14  to a new entity, but it was sold for no money.  It was just --

15  we just lowered the price and to get -- to get him approved for

16  the loan, so he could close on it quickly.  It's slightly

17  complicated, but I can -- I can -- it's worth a lot of money

18  now.  It's probably worth maybe $3 million now, but this is

19  five, six, seven years ago, something like that.

20      MR. FASANO:  So you lowered the price and that he

21  would qualify for a loan because he couldn't get the appraisal?

22      MR. PARET:  And we were supposed to -- we were

23  supposed to work together on the property to get the

24  entitlements, which we did work on after he closed and get it,

25  you know, get the financing together.  It was being held in his

Colloquy

1   name during that time.  But a lot of things happened between

2   now and then, and we just sort of.

3          MR. FASANO:  And what is his name?

4          MR. PARET:  His name's Peter Corbett (phonetic).  Or

5   wait, wait.  I'm sorry.  Let me make sure of this.  Corbetts.

6   It's not Peter Corbett.  It's Corbett-Daly (phonetic).

7          MR. FASANO:  Corbett-Daly.  Is that his last name is

8   Corbett-Daly or is --

9          MR. PARET:  Yeah.

10         MR. FASANO:  Okay.

11         MR. PARET:  And the name of the LLC  The name of the

12  LLC was 15th Place Holdings, LLC.

13         MR. FASANO:  UU:  Got it.  And do you know, is that

14  within the last four years?

15         MR. PARET:  2019, sort of.

16         MR. FASANO:  Sort of.

17         MR. PARET:  Maybe.

18         MR. FASANO:  Okay.

19         MR. PARET:  Maybe.  I mean, I think it went into --

20  hold on.  Let me see.  Yeah.  This is all in 2018 from -- we

21  closed in -- it -- the purchase price that we were selling it

22  to the entity, I believe, was for 800,000.  I'm looking at the

23  details now.  We actually ended up settling for 300 or

24  something very way below market value, so he could close on the

25  loan.  But you can build thirty units in --

Colloquy

1        MR. FASANO:  You mean like, a second note on the

2    property?  Second deed of trust.

3        MR. PARET:  No it was -- I think it was more of a -- I

4    have somewhere in an email, I think we -- the structure of how

5    we did it.  I'd have to share it with you.  I'd have to find

6    it.

7        MR. FASANO:  Right.  Any other properties, any other

8    LLCs that still have property?

9        MR. PARET:  I'd have to go back through that list

10   again.  I know it was a lot, but I think there was, like, one

11   or two more that were slightly outstanding.  I'll go -- I don't

12   want to say no, and then have there be another one and me -- me

13   being questioned as regarding of what my you know.  I just, I

14   don't know off the top of my head.  I'd have to go back through

15   to look.

16       MR. FASANO:  Marlin Mead (phonetic), that is the guy

17   who owes you 75,000?

18       MR. PARET:  I mean, it's accruing interest heavily.

19   Yeah.

20       MR. FASANO:  So what?  What happened with that?

21       MR. PARET:  He bought a house using that money, and

22   it's worth quite a lot of money now, I think.  I think it's

23   worth quite substantially.  I can send you the -- I mean, as of

24   it was a $40,000 principal as of July 18th, 2019, accruing

25   three percent a month since that date.

Colloquy

1      MR. FASANO:  So he took your money.  He bought a house

2  with it.  Was there a loan document between you?

3      MR. PARET:  There was a -- there was a promissory

4  note.  And a few other things, I believe.  Yes.  I can -- I can

5  share that with you.

6      MR. FASANO:  Okay.

7      MR. PARET:  But I knew he used that money to buy a

8  house.  And the house is, I think, has 300 or $400,000 in

9  equity in it.

10      MR. FASANO:  Is he living there?

11      MR. PARET:  I believe so.  James Lomax (phonetic).

12  The name of the -- the name of the -- the name of the address

13  that he used to acquire the property was -- can I give you the

14  address?

15      MR. FASANO:  Yeah.

16      MR. PARET:  6017 Seat Pleasant Drive in Capital

17  Heights, Maryland.  But he never he never used that money to

18  buy that house.  He used it to buy something else.  To buy

19  another house that he was developing, and then ended up moving

20  in as a personal residence.

21      MR. FASANO:  Right.  Have you sued?

22      MR. PARET:  I have been emailing him consistently.  I

23  haven't filed suit yet.  But I had enough of other things and

24  other things I'm dealing with regarding filings.

25      MR. FASANO:  Okay.  And James Lomax, IV, that's the



Colloquy

1   guy you can't find?

2           MR. PARET:  Correct.

3           MR. FASANO:  And he sold 320 bitcoin?

4           MR. PARET:  Something like that.

5           MR. FASANO:  I just went online.  That looks like it's

6   valued around $60,000 right now.  Does that seem right?

7           MR. PARET:  Something like that.

8           MR. FASANO:  Okay.

9           MR. PARET:  Yeah, if I could find him.  If you look

10  up, there was an LLC, a Coloma River LLC that he had registered

11  in Florida.  He went ghost on me probably, maybe, five years

12  ago.  We had a total of, like, 500 and something bitcoin,

13  something like that.  I think at the time where it began to

14  disappear was somewhere around 300.  At the time they were,

15  like, $300 a coin or something like -- it wasn't substantial

16  the way it is now, but I've tried to hire people to find him.

17          MR. FASANO:  What else?

18          MR. PARET:  Right.  Keep going.  I think that's about

19  it.

20          MR. FASANO:  Give me two seconds.  The consigned

21  goods.  Were you running a store in Clark County?

22          MR. PARET:  Yeah, I was.  I mean, it was a -- just a

23  hobby project.  Called Neatoville (phonetic).  It was an asset

24  that I was trying to buy over -- over time through, like, a

25  lease to own structure.  And the guy went back on his offer,

Colloquy

1    and I couldn't keep staff there to manage it, and just ended up

2    walking away from the store and everything in it.  There was a

3    lot of, you know, assets and things that were being sold under

4    that, under that LLC, but I didn't have time to manage it, and

5    it didn't really make any money.

6              MR. FASANO:  What was the LLC?

7              MR. PARET:  Neatoville LLC.  N-E-A-T-O.  It doesn't

8    have any value now.  I mean, it's nothing.

9              MR. FASANO:  You would buy goods on consignment?  Or

10   not buy goods.  People would consign goods to it?

11             MR. PARET:  Yeah.  I never was involved in it.  I

12   don't have time to.  I mean, it's not my business.  It was more

13   of a way to, you know, grow community, and it was a hobby, if

14   any.

15             MR. FASANO:  All right.  So you're living at 343 First

16   Street?

17             MR. PARET:  Yeah.

18             MR. FASANO:  Okay.  What is 98 East Fairfax?

19             MR. PARET:  It's part of 343 First Street.  It's just

20   a separate -- a separate parcel.  And I'm here now.  It's the

21   house.  I live on a farm.  I, you know, I have animals.  I take

22   care of the animals, and 98 East Fairfax is the rear entrance

23   of my farm.  It's the main farmhouse that attaches to this

24   parcel.

25             MR. FASANO:  So First Street is the house.  Fairfax is



Case 2:5-10023-FLG Doc 1-21 Filed 09/04/24 Entered 09/04/24 19:05:28 Desc
Exhibit A -- Audio Docket Creditor (Transcript) Page 807 of 1283

24

<center>Colloquy</center>

1    the farm.

2        MR. PARET:  Fairfax is the farm.  It's all connected.

3    And I have a guest house on that property as well.  But it used

4    to be, originally, in the early days, about 100, 150 years ago,

5    It used to be all one parcel.  It was subdivided, and I

6    reconnected them.

7        MR. FASANO:  Are you actively farming there?

8        MR. PARET:  I am.

9        MR. FASANO:  What are you farming?

10       MR. PARET:  I have cows, and I think, a couple of

11   ducks.

12       MR. FASANO:  Any crops?

13       MR. PARET:  No, minus the hay.  That's it.

14       MR. FASANO:  How many cows?  Do you know?

15       MR. PARET:  Eight.

16       MR. FASANO:  And how many ducks?

17       MR. PARET:  Four or six.

18       MR. FASANO:  Are these milk cows?

19       MR. PARET:  Yeah, they're -- they're Angus beef.

20       MR. FASANO:  Angus beef.  So are they (indiscernible)

21   cows?

22       MR. PARET:  I guess they're cows, but they're --

23   they're not, I mean, I'm not breeding them.

24       MR. FASANO:  Right.

25       MR. PARET:  I mean, the guy who manages it all does

Case 25-10020-ELG    Doc 1-21    Filed 09/01/25    Entered 09/01/25 19:05:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 808 of 1284

25

Colloquy

1    it, but we just.  I just do it for food.

2            MR. FASANO:  Right.

3            MR. PARET:  I don't do it for money.

4            MR. FASANO:  You don't sell the cows?  You just --

5            MR. PARET:  No cows.

6            MR. FASANO:  Yeah.  Got it.  Okay.

7            That's going to be all my questions for now.  I'll

8    open up the floor to everyone else.

9            MR. WEBSTER:  Well does Attorney VerStandig have any

10   questions?

11           MR. VERSTANDIG:  Yes.  And just as a sort of

12   preliminary matter, can we keep the 341 open until such a time

13   as amended schedules are filed?

14           UNIDENTIFIED SPEAKER:  I think we're going to need to,

15   yeah.

16           MR. WEBSTER:  Yes, we'll do that.

17           MR. VERSTANDIG:  Mr. Paret, earlier today you

18   indicated that you have a partner, but you're not married.  And

19   then subsequently, you made a reference to your wife.  What is

20   your marital status?

21           MS. KORBUT:  You're muted.

22           MR. PARET:  When I was talking about my wife, I meant

23   my ex-wife.

24           MR. VERSTANDIG:  Okay.  Do you have a support

25   obligation to your ex-wife?



Case 25-10023-ELG   Doc 1-1   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit A - Meeting of Creditors Transcript   Page 809 of 1284

26

Colloquy

1          MR. PARET:  No, I do not.

2          MR. VERSTANDIG:  Do you send your ex-wife money?

3          MR. PARET:  No.

4          MR. VERSTANDIG:  I'm sorry.  Say that one more time.

5          MR. PARET:  No.

6          MR. VERSTANDIG:  Okay.  So when you talked about

7    supporting your child and your wife, what did you mean by

8    supporting your wife?

9          MR. PARET:  Oh, I'm sorry.  I mean, supporting my

10   partner.  I'm not married.  I'm engaged.  I'm not married.

11         MR. VERSTANDIG:  Do you have a wedding date?

12         MR. PARET:  No.

13         MR. VERSTANDIG:  Did you present your partner with an

14   engagement ring?

15         MR. PARET:  I did.

16         MR. VERSTANDIG:  When did you become engaged?

17         MR. PARET:  It's like, I think, October of last year.

18         MR. VERSTANDIG:  October of 2023?

19         MR. PARET:  Correct.

20         MR. VERSTANDIG:  Okay.  Where did you procure the

21   engagement ring?

22         MR. PARET:  I got it through -- well, I got it from --

23   I think I got it from an estate, like, an estate sale.

24         MR. VERSTANDIG:  It's a used engagement ring?

25         MR. PARET:  Yes, absolutely.

Colloquy

 1          MR. VERSTANDIG:  How much did you pay for it?

 2          MR. PARET:  I think I paid, like, 2 or $3,000.

 3          MR. VERSTANDIG:  Are you familiar with the property

 4     known as 4910 Georgia Avenue?

 5          MR. PARET:  Yes.

 6          MR. VERSTANDIG:  Okay.  You're currently being sued in

 7     federal court over your involvement with that property,

 8     correct?

 9          MR. PARET:  Yes.

10          MR. VERSTANDIG:  Do you claim, through partnership or

11     otherwise, to have any ownership interest in that property, as

12     we sit here today?

13          MR. PARET:  Is that pertinent to this conversation?

14          MR. VERSTANDIG:  Yes.

15          MR. PARET:  I mean, can I answer this question without

16     my other counsel?

17          MR. VERSTANDIG:  Mr. Paret, you're under oath, and

18     it's your meeting of creditors.  Unless someone instructs you

19     otherwise, you're going to answer my questions today.  So do

20     you claim to have an ownership interest in 4910 Georgia Avenue?

21          MR. PARET:  I do.

22          MR. VERSTANDIG:  What is the nature of your ownership

23     interest?

24          MR. PARET:  I think that's currently in debate.

25          MS. KORBUT:  Considering it's an ongoing proceeding,

Case 25-10023-ELG   Doc 1-21   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit A - Audio Docket Entries (Partial) Transcript   Page 28 of 53

28

Colloquy

1   is this something that can be updated as the proceeding

2   continues?

3           MR. VERSTANDIG:  Mr. Paret has certainly changed

4   answers in the past.  He's welcome to change them in the

5   future.

6           All right.  Mr. Paret, are you familiar with a

7   property known as 423 Kennedy Street in Washington, DC?

8           MR. PARET:  Yes.

9           MR. VERSTANDIG:  Okay.  Do you claim to have an

10  ownership interest in that property?

11          MR. PARET:  That's currently in debate.

12          MR. VERSTANDIG:  I understand you're saying it's in

13  debate.  What is your position in the debate?  Do you maintain

14  that you have an interest, or do you maintain that you don't

15  have an interest?

16          MR. PARET:  We maintain that we have an interest.

17          MR. VERSTANDIG:  Okay.  When you say we, who is we?

18          MR. PARET:  My LLC, 423 Kennedy Street Holdings.

19          MR. VERSTANDIG:  Okay.  Do you own an interest in 423

20  Kennedy Street Holdings LLC?

21          MR. PARET:  That's currently in debate.

22          MR. VERSTANDIG:  Okay.  But you maintain that you do?

23          MR. PARET:  It's currently in debate.

24          MR. VERSTANDIG:  No.  Mr. Paret, I'm not asking you if

25  there's a debate.  I'm asking you what your position is.  And I

Case 24-10023-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - MMC Docket Entries (Part 1) Transcript   Page 802 of 1284

29

Colloquy

1  understand.  Judges can tell you that you're wrong.  Other

2  people can argue with you.  Is it your position that you own an

3  interest in 423 Kennedy Street, the property in Washington, DC?

4          MR. PARET:  It's currently in debate.

5          MR. VERSTANDIG:  Mr. Paret, that's not an acceptable

6  answer.  If you don't know, you can tell me that you don't

7  know, and we can talk about the facts.  And if you'd rather do

8  this for 4910 Georgia or one of the other sixty-some odd

9  properties, that's fine.  I picked a few properties at random.

10 But I want to understand.  Is it your position -- and look.  A

11 judge may say otherwise.  Lawyers may say otherwise.  Other

12 people may say otherwise.  But is it your position, Charles

13 Paxton Paret, that you own an interest in the real property

14 situated at 423 Kennedy Street in the District of Columbia?

15         MR. PARET:  It's currently in debate.

16         MS. KORBUT:  Mac, I think you got the answer you're

17 going to get on this one.  I think he understood.

18         MR. PARET:  I can go -- I can go all day, Mac.  Let's,

19 you know, you're going to get the same thing out of me.

20         MR. VERSTANDIG:  Okay.

21         MR. PARET:  Let's move on.  In the interest of time.

22         MR. VERSTANDIG:  Mr. Paret, what is your position in

23 that debate?  Do you believe that you own an interest, or do

24 you not believe that you own an interest?  I'm sorry.  I didn't

25 hear an answer.



Case 25-10088-ELG    Doc 1-1    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A -- Md Docket Creditor Transcript    Page 813 of 1284

30

Colloquy

1          MR. PARET:  I didn't give one.

2          MR. VERSTANDIG:  Chuck, please answer the question.

3          MR. PARET:  I -- I believe that my investors have an

4    ownership interest in that property.  And our LLC, our LLC has

5    an ownership interest in that property.  And I'm not going to

6    speak on behalf of my interest.

7          MR. VERSTANDIG:  Why are you not going to speak on

8    behalf of your interest?

9          MR. PARET:  Because it's currently in debate.

10         MR. VERSTANDIG:  Only for the record at this point,

11   because obviously a contempt admission's forthcoming.

12         Mr. Trustee, would you please direct the debtor to

13   answer the question?

14         MR. WEBSTER:  Well, I believe he's saying that he

15   doesn't -- he's not able to answer it, because it's unclear.

16   That's my understanding.

17         MR. PARET:  That is correct, Mr. Webster.

18         MR. VERSTANDIG:  But Mr. Paret, now, it is your

19   position that an entity you own owns an interest in that

20   property?

21         MR. PARET:  I mean, you're trying to get me to answer

22   that question the way you want me to answer the question.  And

23   as Mr. Webster stated, it is currently unclear.  My only

24   position that I'm stating on record is that the LLC that we own

25   had interest in that property, and my investors had interest in

Case 25-00203-ELG    Doc 1-21    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 4 of 113

31

Colloquy

1   that property.  And that is all at this time that I will say.

2          MR. VERSTANDIG:  Well, Mr. Paret, you've sued my

3   client for, I believe, half a billion dollars on the theory

4   that you have an interest in that property and fifty some odd

5   others, correct?

6          MR. PARET:  That is correct.

7          MR. VERSTANDIG:  Did you voluntarily file that

8   lawsuit, or were you forced to do so?

9          MR. PARET:  Force?  Force by who?

10          MR. VERSTANDIG:  Well, I just want to make sure, since

11   you're not answering today, that you at least understood what

12   you were doing when you filed that lawsuit.

13          MR. PARET:  I mean, we were filing that lawsuit on

14   behalf of, you know, the other partners and investors that were

15   in that project.

16          MR. VERSTANDIG:  So you filed it on behalf of them.

17   The lawsuit is Charles Paret v. Daniel Huertas, correct?  You

18   don't have any co-plaintiffs?

19          MR. PARET:  No, there's -- it's currently myself and

20   the LLCs, I believe.

21          MR. VERSTANDIG:  I'm sorry.  It's your position that

22   the LLCs are your co-plaintiffs?

23          MR. PARET:  No.  I'm sorry.  I misspoke.

24          MS. KORBUT:  Mr. VerStandig, is any of this calculated

25   towards finding out whether or not the estate has any assets?

Case 25-10023-ELG    Doc 1-1    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A -- Md Docket Entries (Partial Transcript)    Page 815 of 1284

32

Colloquy

1    MR. VERSTANDIG:  Yeah.  It appears the estate's only

2    asset, other than things that haven't been scheduled and

3    several hundred million dollars in stolen bitcoin is a

4    litigation claim against my client.  I'm trying to gently

5    explore whether or not he even understands the litigation claim

6    he filed

7    MS. KORBUT:  Mac, currently, we're not discussing the

8    litigation claim, and he doesn't have his attorneys present

9    that are representing him in that litigation claim, so I can't

10   really speak to it, nor could I cover what should or shouldn't

11   be disclosed in this meeting under that proceeding.  So this

12   seems like something that needs to be sorted out in the

13   litigation proceedings and not in these ones.

14   MR. VERSTANDIG:  Well, he's not represented in the

15   litigation, because it's an asset of the estate.  So we don't

16   need to worry about him having litigation counsel present.  I'm

17   simply asking for his understanding of what he's asserting.

18   I'm not asking him to make legal conclusions.  I'm not asking

19   him to play judge.

20   MR. PARET:  If my attorneys are present that are

21   representing me, I'm going to give the same response, that it's

22   unclear.

23   MR. VERSTANDIG:  Okay.  Who are the attorneys that are

24   representing you, Mr. Paret?

25   MR. PARET:  Blank Rome, Donald Temple.



Case 25-10023-ELG   Doc 1-1   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - Meld Docket Creditor Transcript   Page 816 of 1284

33

Case 25-10023-ELG   Doc 1-1   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - Meld Docket Creditor Transcript   Page 816 of 1284

Colloquy

1          MR. VERSTANDIG:  When did you engage the services of

2     Blank Rome?

3          MR. PARET:  I currently -- I think they currently are

4     being engaged now, I believe.

5          MR. VERSTANDIG:  So they're not your attorneys at the

6     moment.  They're yet to be engaged?

7          MR. PARET:  I believe so.  They -- they were engaged

8     with me on a -- on a matter of, the OAG matter, which is not

9     related to this.

10         MR. VERSTANDIG:  Well, let me ask you a different

11    question.  Since you were placed into bankruptcy, have you

12    hired any attorney other than the Martin Law Group without the

13    permission of the bankruptcy court?

14         MR. PARET:  No.

15         MR. VERSTANDIG:  Okay.  So if Blank Rome is still

16    being engaged, are you saying that they represented you since

17    before the bankruptcy, even though there is --

18         MR. PARET:  No.  They haven't been formally engaged

19    yet?

20         MR. VERSTANDIG:  Okay.  What about Mr. Temple?  When

21    did you formally engage Mr. Temple?

22         MR. PARET:  I think May or May or April, May, March of

23    2023, somewhere around that time.

24         MR. VERSTANDIG: Is Mr. Temple holding a retainer for

25    you?

Case 25-10088-ELG    Doc 1-1    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 817 of 1283

34

Colloquy

1          MR. PARET:  He is not.

2          MR. VERSTANDIG:  You paid him somewhere between 10 and

3     $20,000, correct?

4          MR. PARET:  That's correct.

5          MR. VERSTANDIG:  Okay.  And that was to represent you

6     in connection with the litigation against my client, correct?

7          MR. PARET:  Correct.

8          MR. VERSTANDIG:  Okay.  And he did not complete that

9     representation, did he?

10          MR. PARET:  He has not as of yet.

11          MR. VERSTANDIG:  Okay.  So is it your position that he

12     owes you some of that money back?

13          MR. PARET:  No.

14          MR. VERSTANDIG:  You believe he earned all of it, even

15     though he didn't finish the representation?

16          MR. PARET:  I mean, he's still working on the

17     representation, so I believe so.

18          MR. VERSTANDIG:  So he represents you?

19          MR. PARET:  I mean, currently, on paper, yes, I

20     believe so.

21          MR. VERSTANDIG:  Do you know when he filed his

22     employment application with the bankruptcy court?

23          MR. PARET:  I don't know if he -- I don't think he was

24     representing me in the bankruptcy court.  It -- Jeff Martin was

25     representing me in the bankruptcy court.



Case 25-10023-ELG   Doc 1-21   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit A - Meeting of Creditors (Transcript)   Page 85 of 143

35

Colloquy

1      MR. VERSTANDIG:  But we can agree that the litigation

2  is in the bankruptcy court, correct?

3      MR. PARET:  Correct.  And we're trying to -- we're

4  waiting on the direction.  And I believe he was entering his

5  office to employ or whatever the language that's used shortly

6  with the trustee.

7      MR. VERSTANDIG:  So it's your understanding that the

8  trustee is going to be engaging Donald Temple?

9      MR. PARET:  And Blank Rome.

10     MR. VERSTANDIG:  Mr. Trustee, subject to the meeting

11 being held up, I have nothing further at this time.  Thank you.

12     MR. WEBSTER:  All right.  Ms. can I have your attorney

13 identify herself?  I see it's listed as Elizabeth.  Can you

14 give me your full name for the record, ma'am?

15     MS. KORBUT:  Elizabeth Korbut.  K-O-R-B as in boy-U-T

16 as in Tom.

17     MR. WEBSTER:  K-O-R-B as in boy.  What else?

18     MS. KORBUT:  U-T as in Tom.

19     MR. WEBSTER:  All right.  Thank you very much.  Any

20 other party on the line have any questions of the debtor?

21     MR. SADOWSKI:  Mr. Gardner (sic), this is Jim

22 Sadowski.  I do.

23     MR. WEBSTER:  All right, Mr. Sadowski.  First of all,

24 what is your connection with the case?

25     MR. SADOWSKI:  I entered an appearance on behalf of

Colloquy

1    Manik Chamarthy --

2              MR. WEBSTER:  All right.

3              MR. SADOWSKI:  -- as a creditor or potential creditor.

4              MR. WEBSTER:  All right.

5              MR. SADOWSKI:  -- related to money that was invested

6    in 4910 Georgia Avenue.

7              MR. FASANO:  Jim, can you spell that?

8              MR. SADOWSKI:  Sure.  Manik Chamarthy?

9              MR. FASANO:  Yeah.

10             MR. SADOWSKI:  Justin, I think I entered an

11   appearance.

12             MR. FASANO:  I'll look it up.  I'll look it up.

13             MR. SADOWSKI:  Yeah.  Mr. Gardner (sic), did you want

14   me to proceed, or are we waiting for Ms. Korbut?

15             UNIDENTIFIED SPEAKER:  You can go ahead.

16             MR. SADOWSKI:  Okay.  Mr. Gardner (sic), am I able to

17   share my screen to pull up the schedules?  It's disabled

18   currently.  I don't have to, but it might be helpful.

19             MR. WEBSTER:  Is there a technical problem?

20             MR. SADOWSKI:  It says the host has disabled

21   participant screen sharing, so I don't think the option is

22   available.

23             MR. WEBSTER:  Hold on a second.  Screen sharing.  I

24   just checked on it.  Let's see if it's available now.

25             MR. SADOWSKI:  It is.  Thank you.



Colloquy

1          MR. WEBSTER:  All right.

2          MR. SADOWSKI:  Permission to share my screen?

3          MR. WEBSTER:  Certainly.

4          MR. SADOWSKI:  Now, Mr. Paret, I can't see what's

5    being shared, but do you see some color-coded numbers and

6    entities on the screen?

7          MR. PARET:  I do.

8          MR. SADOWSKI:  Yeah.  I'll represent to you that this

9    is your schedules, page 10 of 46.  Sure.

10         MR. PARET:  Yeah.

11         MR. SADOWSKI:  Mr. Paret, is there any reason why

12   these things are color coded the way they are?

13         MR. PARET:  I actually have no idea why they were like

14   that.  No idea.

15         MR. SADOWSKI:  Okay.  All right.  And I take it, is

16   this, like, this page is prepared in some sort of Excel file?

17         MR. PARET:  Yes.

18         MR. SADOWSKI:  And does the same holds true for page

19   12, which has some color coding on it.

20         MR. PARET:  Yeah.

21         MR. SADOWSKI:  Is that an Excel file?

22         MR. PARET:  Yes.

23         MR. SADOWSKI:  Okay.  Going back to page 10, I'm

24   looking -- I don't see on page 10.  Maybe I missed it.  I don't

25   see any reference to 4910 Georgia.  Did I miss that or?

Colloquy

1    MR. PARET:  Should be.  It should be in there.

2    There's a -- there's a -- there is a bunch of missing ones that

3    were not listed in here for some reason.  Most of these are

4    defunct, but there is a lot of them that were missing in here.

5    MR. SADOWSKI:  So do you recall what the -- when I say

6    4910 Georgia Avenue, we're talking about the property in DC at

7    that address, right?

8    MR. PARET:  Correct.

9    MR. SADOWSKI:  Yeah.  Do you remember the entity that

10   was associated with that property as an owner?

11   MR. PARET:  Yeah.  It was 4910 Georgia Avenue Holdings

12   LLC.

13   MR. SADOWSKI:  Okay.  Were there any other LLCs

14   involved with the ownership of that property?  .

15   MR. PARET:  I think there was 4910 Georgia Avenue

16   Partners LLC.  Does that ring a bell?

17   MR. SADOWSKI:  It does.  It's actually on my list.

18   And what was that partner's entity relationship to that

19   property?

20   MR. PARET:  That was the property -- that was the

21   ownership structure for their percentage of our ownership.

22   MR. SADOWSKI:  And do you remember what the percentage

23   was?

24   MR. PARET:  Not off the top of my head.

25   MR. SADOWSKI:  Have you heard of an entity called, and

Case 25-10023-ELG  Doc 1-1  Filed 09/04/25  Entered 09/04/25 09:26:28  Desc
Exhibit A - Wel Docket Creditors Transcript  Page 822 of 1283

39

Colloquy

1    I'll spell this.  G4910 LLC.

2              MR. PARET:  Yes.

3              MR. SADOWSKI:  That's G as in go.

4              MR. PARET:  That's correct.

5              MR. SADOWSKI:  How was that entity, G4910 LLC,

6    involved with 4910 Georgia Avenue?

7              MR. PARET:  They were the financing arm of the 4910

8    Georgia Avenue Partners that was then a member of 4910 Georgia

9    Avenue Holdings.  That was the LLC that financed that finance

10   deal.  That was -- I didn't have any ownership of that.  That

11   was the Manik and their group's of ownership.

12             MR. SADOWSKI:  Okay.  Do you remember who else besides

13   you mentioned Manik?  That's Mr. Chamarthy, right?

14             MR. PARET:  Correct.

15             MR. SADOWSKI:  Yeah.  Besides Manik.  I'll just use

16   that name.

17             It's M-A-N-I-K, for those listening.

18             Do you know who else was involved in the financing

19   arm.

20             MR. PARET:  Lala Shore (phonetic), and I think a

21   number of other individuals.  I don't know.  I couldn't -- I

22   couldn't say their names if I -- if you asked me to.  I don't

23   know I can pronounce them.

24             MR. SADOWSKI:  Let me see if I can help you with that.

25   Can you now see on my screen a word file that has Manik number



Case 25-10023-ELG    Doc 1-21    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit A--All Docket Entries (Part 1) Transcript    Page 823 of 1284                    40

Colloquy

1    one at the top?  Manik Chamarthy?

2              MR. PARET:  Correct.

3              MR. SADOWSKI:  Okay.  And there's your spelling.  Let

4    me make this a little bit bigger.  Okay.  Records that I have

5    indicate that Mr. Chamarthy paid $320,000 on September 27th,

6    2018 to District Title.  Do you know what that money was for?

7              MR. PARET:  Yes.  That was the funds that were sent to

8    the closing that WCP requested for the settlement of 4910

9    Georgia Avenue.

10             MR. SADOWSKI:  Okay.  And then how about -- I have a

11   similar questions for some others?  I'm going to scroll down.

12   There's a name here that even I can't pronounce.  It's

13   Venugopal Cheegarama (phonetic).

14             MR. PARET:  Yes.  Yeah.

15             MR. SADOWSKI:  Yeah.

16             MR. PARET:  Correct.

17             MR. SADOWSKI:  And then there's a reference to

18   $180,000 also being paid to District Title on September 27th,

19   2018.  Do you recall what that money was for?

20             MR. PARET:  That was for the settlement.  That was to

21   WCP for the settlement of 4910.  That went into the WCP escrow

22   account.  Both of those did.

23             MR. SADOWSKI:  Okay.  All right.  And then when you

24   say WCP, can you help me out?  There's a whole lender there.

25             MR. PARET:  They're the lender for 4910 Georgia



Colloquy

1   Avenue.

2          MR. SADOWSKI:  And is that Washington Capital

3   Partners?

4          MR. PARET:  That's right.

5          MR. SADOWSKI:  Do you know if that lender had another

6   name besides WCP, like WCP Fund I or Fund II or Fund V?

7          MR. PARET:  I don't know what their escrow account is

8   at District Title or what their -- what the -- what -- I

9   believe it was WCP Fund I or DP Capital.

10          MR. SADOWSKI:  Okay.  And now let me just scroll to

11   the next one, Mr. Paret.  By the way, Mr. Paret, is it Paret or

12   Parae?

13          MR. PARET:  It's Paret.

14          MR. SADOWSKI:  Paret.  Okay.  I'm sorry about that.  I

15   always pronounced it with a t, but like that, but I'll change

16   that.  Now, there's another name here on the screen.  Ravinder

17   (phonetic), E-E-R-A- --

18          MR. PARET:  Yeah.

19          MR. SADOWSKI:  -- V-E-N-I.  It says $100,000 is paid

20   to District Title on January 10th, 2019.  What was that money

21   for?

22          MR. PARET:  It was for 4910 George Avenue.

23          MR. SADOWSKI:  Okay.  Do you know why this payment

24   came in a couple of months behind the others that I've showed

25   you?



Case 25-10023-ELG   Doc 1-21   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit A - Ad - Docket - Creditors' Transcript   Page 825 of 1283

42

Colloquy

1      MR. PARET:  I think it's because there was more funds

2   that were needed for closing.  I'm not a hundred percent sure.

3      MR. SADOWSKI:  Okay.  That's fair.  And you can scroll

4   down to the next one, which is -- give me a second.  We're

5   having a little slow internet connection here.  Okay.  This one

6   I can't pronounce either.  Srikanth.  That's S-R-I-K-A-N-T-H,

7   Tangedipali, T-A-N-G-E-D-I-P-A-L-I and it indicates $50,000 was

8   sent to District Title on January 10th, 2019.  Do you know what

9   those funds were for?

10      MR. PARET:  I believe 4910 Georgia Avenue, but I'd

11   have to -- I'd have to confirm.

12      MR. SADOWSKI:  Okay.  And then the seventh one I have,

13   which would be the last one, indicates -- well, no.  That's

14   only six.  Okay.  So we did this one.  Let me just track back.

15   Going up.  Back to the top, Mr. Paret.  Oh, yeah.  Sorry.

16      (Indiscernible)

17      MR. SADOWSKI:  Yup.  Number 5. 29 C-H-I-N-N-A-R-I LLC.

18   It indicates $200,000 paid to District Title on January 8th,

19   2019.  Do you see that?

20      MR. PARET:  Yes, yes.  These were all -- that's the

21   G4910.  That's Bala Shore (phonetic) wire transfer of 200,000.

22      MR. SADOWSKI:  Okay.  And do you know the collective

23   number?  Sorry, I skipped this one too, Mr. Paret.  I was

24   scrolling too fast.  Number four, Tanuja Vedere.  That's

25   T-A-N-U-J-A.  And then last name capital V-E-D-E-R-E, $150,000.

escribers

www.escribers.net | 800-257-0885

Case 25-10088-ELG Doc 1-21 Filed 09/04/25 Entered 09/04/25 19:25:28 Desc
Exhibit A - Nee Docket Creditors' Transcript Page 826 of 1283

43

Colloquy

1    Now, this was paid, it looks like, a day earlier than some of

2    the others.  January 9, 2019 to District Title.  What was this

3    money for?

4              MR. PARET:  That was for G4910.

5              MR. SADOWSKI:  Okay.  Let's see if I skipped that.  I

6    did that one.  Okay.  So of these seven different payments I

7    asked you questions about, what ultimately came of that

8    collective amount of money?

9              MR. PARET:  Well, I mean, it went to the -- it went to

10   WCP for the closing of 4910 Georgia Avenue.

11             MR. SADOWSKI:  Okay.  Thank you.  And now let me go

12   back, if I may.  I'm just going to minimize that transfer list.

13   And other than the group of investors, the investing arm that I

14   told you about, that you testified about, that the investing

15   arm, which was G4910 LLC, who else invested money in 4910

16   Georgia Avenue?

17             MR. PARET:  Along with myself, and I think there is,

18   like, two or three other investors.  Halmer Name (ph.)

19   invested, I think, around 250,000.  And there was a couple of

20   others.  I don't have the capital stack in front of me.

21             MR. SADOWSKI:  Okay.  And do you remember what your

22   investment was?

23             MR. PARET:  I believe somewhere in the realm of

24   900,000 or a million dollars, somewhere in that realm.

25             MR. SADOWSKI:  And what -- see, what they're closing



Colloquy

1   online with WCP, the loan closed.  Then what happened to that

2   project?

3        MR. PARET:  The project went on for quite some time.

4   There were tremendous delays in the construction, and we

5   weren't able to get our construction funds in time.  I think

6   that that date, I believe, of January 2020 was the beginning of

7   COVID.  At that point of time, WCP Funds began to get

8   assaulted, and it just was a very slow process for the next

9   couple of years of getting construction done on that property.

10  And eventually WCP foreclosed on the property.  A group of the

11  investors, Manik included, made an offer to buy out the

12  portfolio for $2.5 million, to buy out Georgia Avenue for $2.5

13  million more than our debt position, and WCP refused.  And then

14  they foreclosed on the property.

15       MR. SADOWSKI:  Okay.  Now --

16       MR. PARET:  We have a debt position of roughly 7.3

17  million with --

18       MR. SADOWSKI:  Okay.

19       MR. PARET:  -- construction and acquisition, along

20  with their fees.  But because they said the properties were

21  cross-collateralized, they refused to take a lesser number,

22  because they were trying to pay down debt across the portfolio

23  with the money from Georgia Avenue.

24       MR. SADOWSKI:  Now, along -- how do you know that?

25  How did you learn of that fact that you just talked about, why

Case 25-10020-ELG   Doc 1-21   Filed 09/04/25   Entered 09/04/25 09:35:28   Desc
Exhibit A - Med Docket Creditor's Transcript   Page 45 of 83                45

Colloquy

1    WCP was doing that?  Did they tell you that?  Did WCP tell you

2    that, or did you learn that from the grapevine?

3           MR. PARET:  Yeah.  They do.  And they would tell most

4    of the other investors that because of their -- because of the

5    interlacings of my other properties, they had cross-

6    collateralized the debt instruments and they said that the --

7    they needed -- it wasn't enough to pay down the loan overall.

8           MR. SADOWSKI:  And the person you were dealing with at

9    WCP was whom?

10          MR. PARET:  Jared and Daniel Huertas.

11          MR. SADOWSKI:  And does Jared have a name?  Last name?

12          MR. PARET:  Fasnot (phonetic) or something.  I can't

13   pronounce it.

14          MR. SADOWSKI:  Okay.  I'm getting near the end, Mr.

15   Gardner (sic), just FYI.  Now I have up on my screen, Mr.

16   Paret, page 12 of 46.  Do you see it?  It's really hard to see,

17   because it's teeny-weeny print.  Do you know why the -- and I'm

18   going to go down to the line for 419 to 423 Kennedy Street.

19   And I'm squinting at this.  It looks like line 50.  It lists

20   Brighton KSD (phonetic), LLC.  Why is Brighton KSD, LLC listed

21   there?

22          MR. PARET:  Because they were an investor in that

23   property.

24          MR. SADOWSKI:  Okay.

25          MR. PARET:  And I thought they were okay.



Case 25-00228-ELG    Doc 1-21    Filed 09/04/25    Entered 09/04/25 09:25:28    Desc
Exhibit A - Mel Docket Creditors' Transcript    Page 46 of 53

46

Colloquy

1   MR. SADOWSKI:  So is this -- what is this schedule

2   here on page 12 designed to show the world?  What are you

3   trying to -- what information are you trying to convey here,

4   generally?

5   MR. PARET:  I mean, this is just showing --

6   whatchamacallit.  This is basically showing -- I think this is

7   an estimated.  A lot of these numbers are not correct.  So this

8   was just an estimate of what the investors were going to put in

9   and what they were committed to.  A lot of these numbers

10  changed, and some of these investors never even put money in

11  that are on this list.  This list was to show, you know, what

12  the investment start dates would be if they were going to

13  invest, what the numbers would be, but nobody ever got removed

14  from the list.  So this is just an ongoing list that we had.

15  MR. SADOWSKI:  Okay.  And who was maintaining this

16  list?  Was this somebody over at Coloma River?

17  MR. PARET:  Yeah, the person left, like, five years

18  ago.

19  MR. SADOWSKI:  Okay.  One second, Mr. Gardner (sic).

20  Now, when you were being asked some questions by Mr.

21  VerStandig, you gave some answers that things were currently in

22  debate.  I'm not going to debate you over your answers, but

23  would it be fair to sum it up that -- all right.  Let me ask it

24  this way.  Do you currently own a membership interest in 423

25  Kennedy Street Holdings, LLC?



Case 25-10023-ELG    Doc 1-1    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit A - Wed Docket Creditor's Transcript    Page 47 of 53

47

Colloquy

1          MR. PARET:  I believe I do.

2          MR. SADOWSKI:  Okay.  And is that belief based upon

3     this theory that WCP was a partner with you?  Is that what the

4     basis for that belief is?

5          MR. PARET:  That is correct.

6          MR. SADOWSKI:  Okay.  And would the same hold true for

7     5501?  Excuse me.  I don't have the address right in front of

8     my face here.  5501 First Street Holdings, LLC, you indicated

9     that it's -- there's a debate over whether you have a

10    membership interest in that.  And my understanding from your

11    testimony is that the date is -- that the belief that you have,

12    you have a membership interest is on this partnership theory

13    with the WCP.  Is that right?

14         MR. PARET:  That is correct, along with the fact that

15    the LLCs that were in ownership, the investor group have

16    ownership in those LLCs.  That's -- that's -- it's still

17    unclear.  But that is the -- that's the theory.

18         MR. SADOWSKI:  Okay.  And so I'm just -- should tell

19    the world where I'm going and you, Mr. Krays (phonetic).  I'm

20    currently representing those entities in litigation against the

21    WCP, and the operating agreements that I have indicate that

22    those entities are actually owned by members, not including

23    yourself.  So I just want to make sure.  Do you have an

24    operating agreement, a current operating agreement that shows

25    that you have a membership interest in 423 Kennedy Street

Colloquy

1   Holdings, LLC?

2         MR. PARET:  Well, I have the old one.  Yeah.  I can

3   share with you.

4         MR. SADOWSKI:  When you say the old one, wasn't that

5   before your membership interest was sold to Mel Noguchi

6   (phonetic)?

7         MR. PARET:  How much did it sell for?

8         MR. SADOWSKI:  I don't have in front of me.  But let

9   me ask it.  I'm just trying to find out, Mr. Paret, is there a

10  current operating agreement that you have for 423 Kennedy

11  Street Holdings, LLC?  A current operating agreement, not an

12  old one.  Not one that was amended that shows --

13        MR. PARET:  Yeah, I can -- I can share you the one --

14  I can share the one with you that was still signed.  I mean --

15        MR. SADOWSKI:  Let me finish my question.  Yeah.  Is

16  there a current operating agreement that you have that shows

17  that you have a membership interest in 423 Kennedy Street

18  Holdings LLC?

19        MR. PARET:  I'll have to check with you, and I'll send

20  it to you.

21        MR. SADOWSKI:  Okay.  And the same question is, is

22  there a current member -- current operating agreement that

23  you're aware of that shows that you have a membership interest

24  in 5501 First Street Holdings LLC?

25        MR. PARET:  You'd have to check, and we can send it to



Colloquy

1   you.

2          MR. SADOWSKI:  Okay.  Mr. Fasano, these Excel files

3   are really hard to review on screen.  Is it possible you could

4   get us a sanitized version of this in Excel?  Both what's page

5   10 of 46 and 11, and then page 12 of 46 of the schedules.

6          MR. FASANO:  Elizabeth, can you send that to us in

7   Excel?

8          MS. KORBUT:  Probably, as long as I -- I'm assuming

9   that that's something that we have.  I was just put on this not

10  long ago, but assuming that we have the original Excel, that

11  that's our document, yeah, we should be able to send that.

12         MR. SADOWSKI:  All right.  Thank you.

13         And Mr. Gardner (sic), just the last question.

14         Mr. Paret, are you intending to amend the schedules,

15  particularly these color-coded charts here in blue, green,

16  purple, to add the 4910 Georgia Avenue entity as one of those

17  LLCs which you have an interest?

18         MR. PARET:  Yes.

19         MR. SADOWSKI:  Okay.  Those are all the questions I

20  have, Mr. Gardner (sic).  Thank you very much.

21         Thank you, Mr. Paret.

22         MR. WEBSTER:  Any other parties have any questions for

23  the 341 meeting?  All right.  It didn't sound like anyone else

24  has any questions for the 341 meeting.

25         MR. FASANO:  Wendell?



Case 25-10023-ELG   Doc 1-1   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit A -- Meeting of Creditors (Partial) Transcript   Page 50 of 53

50

Colloquy

 1          MR. WEBSTER:  Yes.

 2          MR. FASANO:  I'm just going to give Mr. Paret an

 3   instruction.

 4          MR. WEBSTER:  Certainly.

 5          MR. FASANO:  When the tax return is filed, we need to

 6   get a copy of it.

 7          MR. WEBSTER:  Certainly.

 8          MR. FASANO:  And potentially a turnover of the tax

 9   refund when received.

10          MR. WEBSTER:  Right.

11          MR. FASANO:  So I'm just putting you on notice.

12          MR. WEBSTER:  Right.  Actually, we're not -- we're

13   not.  I'm sorry.  Go ahead.  Who was that?

14          MR. LEWIS:  This is attorney Todd Lewis, on behalf of

15   Welch Family Limited Partnership Group.  I just want to be

16   clear for the record here.  This meeting is going to be

17   continued to a later date?

18          MR. WEBSTER:  Well, I'm not going to conclude it at

19   this point in time, but it's unclear to what extent we'll need

20   to keep it open.  Do you have any questions that need to be

21   asked today?

22          MR. LEWIS:  Not today.  That's why I'm wondering

23   whether the case is clear the 341 is being continued or being

24   adjourned?

25          MR. WEBSTER:  Well, I'm going to keep it open to the



Colloquy

1    extent that there's some issues that we need to follow up on.

2    But at this point in time, that hasn't been clarified.

3              MR. LEWIS:  Okay.  No.

4              MR. WEBSTER:  All right.  Any other parties?  You have

5    any questions?  All right.  I will.

6              UNIDENTIFIED SPEAKER:  No other questions, but we

7    would join in the request of both Mr. Lewis and Mr. VerStandig

8    to leave it open in the event that additional schedules are

9    filed that raise additional questions that we have for this

10   debtor.

11             MR. WEBSTER:  Well, actually, additional schedules are

12   going to be filed.  They're going to be additional information

13   provided.  So we'll decide at that point whether we need to

14   hold another Zoom 341 meeting.

15             But let me just explain to everyone.  Keep in mind,

16   this is a 341 meeting for bankruptcy purposes, not a

17   deposition.  If you need to take a deposition or a 2004 exam,

18   that's actually different from this 341 meeting.  I just want

19   to make sure everyone understands that.  These are not -- this

20   is not a deposition.  Okay?

21             MR. LEWIS:  Understood.

22             MR. WEBSTER:  Very good.  All right.  So with that, we

23   will adjourn the meeting for today and proceed accordingly.

24   Anybody else have anything before we close out?

25             UNIDENTIFIED SPEAKER:  Nothing, Mr. Webster.



Case 25-10020-ELG    Doc 1-1    Filed 09/04/24    Entered 09/04/24 10:05:28    Desc
Exhibit A - Amended Creditor's Transcript    Page 52 of 53

52

1          MR. WEBSTER:  All right.  Thank you, all.

2          UNIDENTIFIED SPEAKER:  Thank you, all.

3          MR. WEBSTER:  Take care.

4          UNIDENTIFIED SPEAKER:  Thank you.

5          MS. KORBUT:  Thank you.

6      (Whereupon the hearing was adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



Case 25-10023-ELG    Doc 1-1    Filed 09/04/24    Entered 09/04/24 19:35:28    Desc
Exhibit A - Meeting of Creditors Transcript    Page 836 of 1284

53

1                              CERTIFICATE

2   I certify that the foregoing is a correct transcript from the

3   electronic sound recording of the proceedings in the above-

4   entitled matter.

5

6

7

8   /s/ Hana Copperman

    _____    Date: June 30, 2024

9   ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



eFiled
12/16/2022 7:28:44 PM
Superior Court
of the District of Columbia

Case 25-10028-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:35:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part II) All Page 83 of 284    Page 1 of 1746

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,
1629 K Street, N.W, Suite 300
Washington, DC  20006

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS,
8401 Greensboro Drive
Suite 960
McLean, VA  22102

  and

WCP FUND I, LLC
2815 Hartland Road
Suite 200
Falls Church, VA  22043

  and

DANIEL HUERTAS,
909 Chinquapin Road
McLean, VA  22102

  and

RUSSELL DRAZIN
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

     *Defendants*.

Case No. 2022-CAB-005935

## COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

4877-9772-9348.v2

Fund I, LLC, Daniel Huertas, and Russell Drazin. The Complaint includes claims for tortious

interference with business relations, breach of the duty of good faith and fair dealing, and

permanent injunctive relief. The Complaint also seeks a declaratory judgment as to the meaning

of certain provisions in two Deeds of Trust. The Complaint also seek injunctive relief to prevent

a foreclosure. In support of its Complaint, Developer RE1 avers as follows:

<div align="center">THE PARTIES</div>

1.　　　The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia

limited liability company that is authorized to do business in the District.

2.　　　The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners". For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

3.　　　The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.　　　The WCP controls the WCP Fund.

5.　　　The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.　　　The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is

counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of

trust that he drafted, the terms of which are at issue in this case.

<div align="center">2</div>

S<small>TATEMENT OF</small> F<small>ACTS</small> A<small>PPLICABLE TO</small> A<small>LL</small> C<small>OUNTS</small>

<u>The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"</u>

7.      In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up
> trusting that if they work with us, we will do everything in our power to help them
> succeed." The duo understands the importance of a client's positive experience and the
> clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've
> developed a highly relational experience with our clients through innovative products,
> practices and standards. *What sets us apart from other lenders is our unwavering
> commitment to the highest ethical practices in the industry*, which historically have been
> very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

8.      But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, and the WCP Fund have engaged in unethical, outrageous conduct that was

specifically designed to make one of their client's construction projects fail.

<u>The Ownership of Developer RE1, Its Purpose, and the Property.</u>

9.      Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

10.     Developer RE1 is partially owned by Mr. Negussie.

11.     Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

12.     The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

4877-9772-9348.v2

73

13.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

16.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

17.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

18.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

19.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

22.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

26.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

27.     The maturity date for the First Note and the Second Note is December 23, 2022.

28.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

29.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not Accede to His Demands Regarding Another, Unrelated Development</u>

30.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." A copy of the November 3, 2022 email is attached as Exhibit E.

4877-9772-9348.v2

31.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email is attached as Exhibit F.

32.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

33.     By as early as November 15, 2022, the Defendants each knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

34.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

35.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP is attached as Exhibit H.

36.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

37.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way

6

an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

38.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

39.     As of December 8, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

40.     As of December 8, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

41.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

42.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP

7

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans." Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

43.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

44.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

45.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

46.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

8

4877-9772-9348.v2

47.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

48.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

49.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

50.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

51.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

52.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

53.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

54.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

55.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two

9

entities are not affiliates of one another, and that the two entities have no business relationship with each other.

56.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

57.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.</u>

58.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

59.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

60.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

61.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

10

62.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

63.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

64.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
>     (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
>     (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
>     (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

65.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

11

66.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

67.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

68.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

69.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

70.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

71.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

12

basis for declaring Developer RE1 to be in default under any of the loan documents and to
conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

72.    The real reason that the Defendants improperly alleged that Developer RE1 was
in default under the loan documents was because the Defendants and/or their representatives,
were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

73.    The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could
collect of "commission" of 2.50% of the total amount then due, and a another "commission" of
5.00% the proceeds of a foreclosure sale.

74.    There is a financial incentive for Mr. Drazin to inflate the amounts that are
claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two
"commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

75.    As a result of their spite, their evil, improper motive, and their greed, the
Defendants improperly alleged that Developer RE1 was in default under the loan documents to
try to line their own pockets and to cause as much financial and reputational damage as possible
to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

76.    The Defendants also caused WCP to issue a "Notice of Default" to Developer
RE1 for the express purpose of trying to interfere with the refinancing of the loans that they
knew that Developer RE1 had secured with Main Street Bank.

---

[1]    423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for
similar claims of misconduct.

4877-9772-9348.v2

77.     The Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

78.     The Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund).

79.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

80.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

81.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1ˢᵗ Street, NW.

14

      (b)       Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."

A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

      82.      For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

      83.      Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

      84.      On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

      85.      On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

4877-9772-9348.v2

86.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

87.     Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

88.     The only provision of the loan documents that Mr. Drazin cited a claimed basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

89.     The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

90.     The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

16

91.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

92.     The late payment of taxes by Developer RE1 cased no harm whatsoever to the WCP Fund.

93.     The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

94.     No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

95.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

96.     The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

97.     The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

<div align="center">17</div>

98.     In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

99.     The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

100.     Developer RE1 does not control 423 Kennedy and vice versa.

101.     Developer RE1 is not controlled by 423 Kennedy and vice versa.

102.     There is also no common control of Developer RE1 and 423 Kennedy.

103.     Mr. Negussie does have a "controlling" interest in 423 Kennedy.

104.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

105.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

106.     The Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

18

<u>Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending
Practices Are Left Unchecked</u>

107.    The Defendants have threatened to foreclose on the Property even though they
know that they have no legal right to foreclose on the Property.

108.    There is no valid, legal basis under any provision of either the First DOT or the
Second DOT that would permit the Defendants to foreclose on the Property.

109.    If the Defendants follow through on their threat to foreclose on the Property,
Developer RE1 and its members will be irreparably harmed and they could lose their entire
investment.

110.    The Defendants' conduct shows that they have an evil motive, that they are acting
with actual malice to impose damages on Developer RE1 and others, and they are intentionally
and willfully disregarding Developer RE1's rights under the loan documents and under the law.
The Defendants' misconduct and improper lending practices also constitute outrageous conduct
further justifying an award of punitive damages.

111.    The Defendants knew that the First Note and the Second Note list a maturity date
of December 23, 2022.  The Defendants deliberately timed their improper interference with
Developer RE1's business relations -- right before a holiday period -- to make it close to
impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to
tie up any refinancing indefinitely so that they can try to foreclose on the Property.

<div align="center">

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

</div>

112.    Paragraphs 1-111 of the Complaint are incorporated by reference.

113.    Developer RE1 was in the process of closing on a refinancing of the existing
loans with Main Street Bank.

<div align="center">19</div>

114.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

115.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

116.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

117.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

118.    Developer RE1 has been damaged by the Defendants'' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for:  (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $1 million if the closing on the refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $500,000.00; (d) costs; and (d) pre- and post-judgment interest.

4877-9772-9348.v2

## COUNT II
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP and WCP Fund Only

119.    Paragraphs 1–118 of the Complaint are incorporated by reference.

120.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

121.    The First Note is a contract between Developer RE1 and the WCP Fund.

122.    The First DOT is a contract between Developer RE1 and the WCP Fund.

123.    The Second Note is a contract between Developer RE1 and the WCP Fund.

124.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

125.    Through its improper conduct, the WCP and the WCP Fund have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners and the WCP Fund 1, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $1 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

## COUNT III
### DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP and WCP Fund Only

126.    Paragraphs 1–125 of the Complaint are incorporated by reference.

127.    The First DOT is a contract between Developer RE1 and the WCP Fund.

128.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

4877-9772-9348.v2

129.    There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

130.    It is settled law in the District that "equity abhors forfeitures ... [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

131.    There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy.

22

## COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

132.     Paragraphs 1–131 of the Complaint are incorporated by reference.

133.     Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

134.     The Defendants unethical, outrageous, and illegal conduct, as described in this

Complaint, is causing irreparable harm to Developer RE1.  The Property is unique, and

Developer RE1 could lose its entire interest in the Property.

135.     If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this

Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under

the First Note, the First DOT, the Second Note, or the Second DOT, including, without

limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First

Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the Complaint have been decided.


## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Complaint

for which a jury trial is allowed under the law.

23

Respectfully submitted,

G REENSTEIN D E L ORME & L UCHS, P.C.

Dated:  December 16, 2022

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

24

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                        Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">ARTICLE II

GRANT</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or
additional advances (whether or not obligatory) made by Beneficiary (i) to protect or
preserve the Mortgaged Property or the lien or security interest created hereby on the
Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter
provided, or (iii) for performance of any of Grantor's obligations hereunder or under the
other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan
Documents (whether or not the original Grantor remains the owner of the Mortgaged
Property at the time of such advances), together with interest thereon as provided for in the
Note, and (e) any and all other indebtedness now owing or which may hereafter be owing
by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express
or implied, direct or indirect, absolute or contingent, or due or to become due, and all
renewals, modifications, amendments, restatements, consolidations, substitutions,
replacements, and extensions thereof.

2.1 Possession.

      Until the occurrence of an Event of Default, the Beneficiary shall promptly permit
the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

      The condition of these presents is such that if Grantor shall pay or cause to be paid
the Indebtedness as and when the same shall become due and payable under the Note, and
shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee
shall release and reconvey unto and at the cost of Grantor the Mortgaged Property
whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be
released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

      Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

      (a) The execution, delivery and performance by Grantor of the Note and this Deed
of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision
of law, any order of any court or other agency of government, or any indenture, agreement
or other instrument to which Grantor is a party or by which they or any of their property is
bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of
time or both) a default under any such indenture, agreement or other instrument, or result
in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of
Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-
in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without
limitation, with respect to (a) any accident to, injury to or death of persons or loss of or
damage to property occurring on or about the Mortgaged Property, (b)any failure on the
part of the Grantor to perform or comply with any of the terms, covenants, conditions and
agreements set forth in the this Deed of Trust, (c) performance of any labor or services or
the furnishing of any materials or other property in respect of the Mortgaged Property or
any other part thereof for construction or maintenance or otherwise, (d) any action brought
against any party attacking the validity, priority or enforceability of this Deed of Trust,
and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection
with any of the foregoing, together with interest thereon from day of such payment at the
default rate set forth in the Note, shall be so much additional indebtedness secured hereby
and, except as otherwise provided herein, shall be immediately and without notice due and
payable by Grantor. The obligations of the Grantor under this Section shall survive any
foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of
Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and
provide said lockbox combination to the Beneficiary. Lockbox is to remain located on
property at all times during term of this Deed of Trust. Grantor irrevocably grants
permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged
Property at any time and for any purpose consistent with ensuring Grantor's compliance
with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged
Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees
as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or
permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

104

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

**Page 10 of 25**

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                        Page **12** of 25

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

**ARTICLE VIII**

**DEFAULT AND FORECLOSURE**

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page **14** of 25

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016                                                      Page **16** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

112

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

11.7 Applicable Law.

      This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

      Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

      Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

      (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

      (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

      (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

115

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

116

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia  Limited Liability
Company

By:     Mel Melaku Negussie    (SEAL)
Its:     Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

118

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

120

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                          **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                    Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

123

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.**     <u>**BORROWER'S RIGHT TO PREPAY**</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.**     <u>**BORROWER'S FAILURE TO PAY AS REQUIRED**</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.   If default be made in any payment due under this Note;

    b.   If default be made in the performance of any other covenant contained in this Note;

    c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.     **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

126

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing
to the other party. Whenever in this Note the giving of notice by mail or otherwise is
required, the giving of such notice may be waived in writing by the person entitled to
receive such notice.

## 9.  **SUCCESSORS AND ASSIGNS**

(a)   Notwithstanding anything to the contrary in this Note, (i) there shall be no
limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights
and obligations under this Note, and (ii) Lender may at any time assign all or a portion of
this Note to one or more Persons (each a "Transferee") without providing notice to
Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the
Transferee thereunder shall be a party hereto and, have the same rights, benefits and
obligations as the Lender hereunder, and (2) the assigning Lender shall have no further
rights hereunder with respect to the assigned portion of this Note. Borrower hereby
acknowledges and agrees that any such assignment will give rise to a direct obligation of
Borrower to the Transferee and that the Transferee shall be considered to be a "Lender"
hereunder.  Each Transferee shall have all of the rights, obligations and benefits with
respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held
by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose
to any Transferee all information, reports, financial statements, certificates and documents
obtained under any provision of any Loan Document.

(b)   Any assignment pursuant to Section 9(a) above may be evidenced by a replacement
note at the election of Lender. Upon written notice from Lender, Borrower shall promptly
(and in any event within three (3) business days after any such request) execute and deliver
to Agent any such documents as Lender may require to confirm such assignment, evidence
the Indebtedness, and/or to otherwise effectuate such assignment including, without
limitation, original replacement notes in form and substance satisfactory to Agent and
payable to the order of Lender and/or a Transferee in an aggregate principal amount equal
to the stated principal amount of the Loan.

(c)   Lender shall act as initial administrative noteholder for itself and any Transferee
(together with any successor administrative noteholder, the **"Agent"**). Borrower
acknowledges that Agent shall have the sole and exclusive authority under this Note and
each Loan Document on behalf of the Lender, subject to the terms of any co-lending
agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender,
notwithstanding that the particular action in question may, pursuant to the Deed of Trust
or any co-lending agreement be subject to the consent or direction of another Person.
Lender may resign or be replaced as Agent in accordance with the terms of any co-lending
agreement and upon such removal or resignation, a successor Agent shall be appointed in
accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

### 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

128

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie

Its:    Managing Member

_(signature)_ (SEAL)

By:    Solomone Abebaw Desta

Its:    Member

COUNTY OF _(handwritten)_

STATE OF _(handwritten)_

    I hereby certify on this ~~24~~ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

Case 25-10023-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 19:25:28   Desc
Exhibit B - All Pleading and Art Docket Entries (Part 1) All Pages   Page 63 of 1716
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<center>ARTICLE I</center>

<center>DEFINITIONS</center>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

133

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016                                                                     Page 3 of 25

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

## GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016

Page **6** of 25

137

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

## 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

## 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:26:28    Desc
Exhibit B - All Pleading and Ar Docket Entries (Path) All Page 21 of 1716
5305 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<u>ARTICLE VII</u>

<u>EVENTS OF DEFAULT</u>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

142

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                 Page **12** of 25

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

146

## ARTICLE IX

## THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

147

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

149

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

150

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited   Liability
Company

*Mel Negussie* (SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _____ ) SS:
STATE OF _____

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## EXHIBIT A

## LEGAL DESCRIPTION

155

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**          **December 23, 2021**

**Borrower(s):**          **Developer RE1 LLC**

**Property Address:**   **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

**Doc #: 2022000482**
**Filed & Recorded**
**01/03/2022 12:42 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**           $150.00
  **SURCHARGE**                $6.50
  **RECORDATION TAX FEES**     $13,100.00
**TOTAL:**                     $13,256.50

# EXHIBIT D

5505 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                        **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

160

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.  BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.  BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a.  If default be made in any payment due under this Note;
  b.  If default be made in the performance of any other covenant contained in this Note;
  c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                                 Page 3 of 9

162

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Case 25-10088-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 09:05:28   Desc
Exhibit B - All Pleading and Docket Entries (Part 1) All Pages 133 and 284 Page 97 of 1716
3505 1st St NW Washington DC 20011
3501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

3505 1st St NW Washington DC 2001
5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)

By:     Mel Melaku Negussie

Its:    Managing Member




COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.




_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015

Page 9 of 9

168

# Exhibit E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time
**From:** mel negussie
**To:** Daniel Huertas
**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:

HI Daniel,

My apologies for the delayed response.

Yes, we are working and making progress to refinance both projects out of WCP.

Regards,
Mel

---

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)
**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time
**From:** Cara Farley
**To:** mel negussie
**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

> Hi Mel,

> Payoff requests received. What good through date would you like?

> Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

---

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT J

| Subject: | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
|---|---|
| Date: | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| From: | Leslie Calderas |
| To: | mel negussie |
| CC: | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| Attachments: | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.


## Leslie Calderas  |  Servicing Manager
Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

    5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT L



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

184

# EXHIBIT M





# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:    WCP Servicing LLC**          **Bank Name: United Bank**
**8401 Greensboro Dr Suite 960**          **Routing Number:** ▓▓▓▓▓
**McLean, VA  22102**          **Account Number:** ▓▓▓▓▓

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

186

# EXHIBIT N





# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | WCP Servicing LLC | **Bank Name: United Bank** |
| | 8401 Greensboro Dr Suite 960 | **Routing Number:** ■■■■■ |
| | McLean, VA  22102 | **Account Number:** ■■■■■ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

188

# EXHIBIT O

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

-----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

-----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

-----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

-----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

191

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> ---
>
> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Case 25-10028-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II)    Page 961 of 1284

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | |
|---|---|---|---|
| Case Number: | 22-594546 | | |
| Account Name: | 2002583-9 | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

---

**PETITION FOR ADMINISTRATIVE HEARING**

**Indicate your relationship to the property:** Owner___  Legal/Rep___  Tenant___  3rd Party/Non-Occupant___  Mgt Company_
**Indicate the property occupancy status during the dispute period** Vacant___  Occupied___ (Number of Occupants _____)
**Daytime/Best Contact Phone Number:** 202-271-5046_____  Email:_____
mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges.  Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges.  Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because:  We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____*Mel Negussie*_____   Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:                3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

| | |
|---|---|
| Payment Amount: | $222.28 |
| Payment Date: | 19-Oct-2022 |
| Submitted Date: | 19-Oct-2022 |

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Developer RE1, LLC
_____
                                    Plaintiff
              vs.
                                                    Case Number    <u>2022-CAB-005935</u>

Daniel Huertas
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                                    Deputy Clerk

Date    December 27, 2022

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Developer RE1, LLC
_____
                              Demandante
          contra
                                              Número de Caso: _____
Daniel Huertas
_____
                              Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                    *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000              Por: _____
Dirección                                                        Subsecretario
Washington, DC  20006

(202) 452-1400                                   Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어 번역을 원하시면 (202)879-4828 로 전화해 주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

Civil Actions Branch
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Developer RE1, LLC
_____
                                    Plaintiff
                vs.

DP Capital, LLC d/b/a Washington Capital Partners    Case Number    2022-CAB-005935
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney                          *Clerk of the Court*

801 17th Street, NW, Suite 1000
_____
Address                                    By _____
Washington, DC  20006                                       Deputy Clerk

(202) 452-1400
_____
Telephone                                    Date    December 27, 2022

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction          Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오           የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

205



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Developer RE1, LLC
_____
                                    Demandante

        contra

                                                            Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                    Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          SECRETARIO DEL TRIBUNAL
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____          Por: _____
Dirección                                                         Subsecretario
Washington, DC  20006

(202) 452-1400
_____          Fecha _____
Teléfono
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828
만약 번역을 원하시면 (202)879-4828 로 전화주십시오       የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                      Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Developer RE1, LLC
_____
                                        Plaintiff
        vs.

                                                    Case Number    2022-CAB-005935
Russell Drazin
_____
                                        Defendant

**SUMMONS**

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635                      _Clerk of the Court_
_____
Name of Plaintiff's Attorney
801 17th Street, NW, Suite 1000                  By _____
_____
Address                                              Deputy Clerk
Washington, DC  20006
(202) 452-1400                                   Date   December 27, 2022
_____
Telephone
如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오   የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

207



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

Developer RE1, LLC
_____
                                         Demandante

     contra

                                        Número de Caso: _____

Russell Drazin
_____
                                        Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mi smo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

                                             *SECRETARIO DEL TRIBUNAL*

801 17th Street, NW, Suite 1000
_____
Dirección                                 Por: _____
Washington, DC 20006                             Subsecretario

(202) 452-1400
_____
Teléfono                                     Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을원하시면(202)879-4828로 전화하십시오     የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                         Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Developer RE1, LLC

_____
                                    Plaintiff
                vs.

WCP Fund, I, LLC

                                            Case Number    2022-CAB-005935
                                                          _____
_____
                                    Defendant

## SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____
(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                    Deputy Clerk

Date   December 27, 2022
     _____

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                          Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

Developer RE1, LLC
_____
                          Demandante

         contra

                                                    Número de Caso: _____

WCP Fund, I, LLC
_____
                          Demandado

## CITATORIO

Al susodicho Demandado:

   Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

   A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____          Por: _____
Dirección                                              Subsecretario
Washington, DC  20006

(202) 452-1400
_____          Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 통역을 원하시면 (202) 879-4828 로 전화주십시오       የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

   IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

   Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                        Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Developer RE1, LLC _____    Case Number: __2022-CAB-005935__

vs    Date: __December 16, 2022__

DP Capital, LLC d/b/a Washington Capital Partners, et al. _____

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>  James D. Sadowski | Relationship to Lawsuit |
| Firm Name:<br>  Greenstein DeLorme & Luchs, P.C. | ☒ Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:                Six digit Unified Bar No.:<br>  (202) 452-1400            446635 | ☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury     ☐ 6 Person Jury     ☒ 12 Person Jury

Demand: $ __1 Million__                           Other: __Punitive Damages - $500,000__

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: __related case # not issued__     Judge: _____     Calendar #: _____
           __yet__

Case No.: _____     Judge: _____     Calendar#: _____

---

**NATURE OF SUIT:**     *(Check One Box Only)*

**A. CONTRACTS**                          **COLLECTION CASES**

Breach of Duty of Good Faith and Fair Dealing

| | | |
|---|---|---|
| ☒ 01 Breach of Contract | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

---

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

---

**C. PERSONAL TORTS**     Tortious Interference with Business Relations

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | ☒ 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
     (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [x] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
     (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
     Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**And a Request for Injunctive Relief to Stop a Foreclosure**

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
     Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
     Judgment [ D.C. Code §
     2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
     42-3301, et seq.)

- [ ] 21 Petition for Subpoena
     [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
     (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

/s/ James D. Sadowski
_____
Attorney's Signature

December 16, 2022
_____
Date

eFiled
12/23/2022 4:48:06 PM
Superior Court
of the District of Columbia

Case 25-10002080-ELLG   Doc 1-2   Filed 09/04/254   Entered 09/04/254 19:05:228   Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) All   Page 979 of 1284   Page 143 of 176

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,
1629 K Street, N.W, Suite 300
Washington, DC 20006

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants.*

Case No. 2022 CAB 005935
Judge Ebony Scott

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, Developer RE1 LLC ("Developer RE1") by counsel, hereby requests that

the Court enter a Temporary Restraining Order enjoining all of the Defendants in this case from

exercising any remedy that they have under certain loan documents, including the remedy of

foreclosure, to preserve the status quo and to prevent irreparable harm to Developer RE1. The

Defendants have engaged in an improper scheme to try to extort money from Developer RE1

(and others), to prevent Developer RE1 from obtaining a refinancing loan, and to foreclose on

valuable real property without any valid basis.

## I.   FACTUAL BACKGROUND

### A.   Developer RE1 and the Property

Developer RE1 is a domestic, sole purpose, limited liability company that owns

real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Compl.

¶ 9. The sole purpose of Developer RE1 is to own and develop the Property. *Id.* ¶ 11.

Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 10.

1

B.    The Defendants and Their Roles

There are four defendants in this case.  DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name "Washington Capital Partners".  *Id.* ¶ 2.  For convenience, this motion refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".  The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia.  *Id.* ¶ 5.  Mr. Huertas controls WCP, and WCP controls the WCP Fund.  *Id.* ¶¶ 4-5.  Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund.  *Id.* ¶ 6.  Mr. Drazin is also the Trustee under two deeds of trust that he drafted.  *Id.*

C.    The Loan Documents

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 13-14.  As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23.  True copies of the First DOT, the First Note, the Second DOT, and the Second Note were attached to the Complaint and are attached to this motion as Exhibits A, B, C, and D, respectively.  These documents are sometimes referred to together as the "loan documents".  The loan documents were for documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25.  The loan documents

2

provided security for the construction financing loans that Developer RE1 needed to develop the Property.

       D.     <u>Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1 Accedes to His Demands Regarding Another, Unrelated Development.</u>

       As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29. On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1. *Id.* ¶ 30. Mr. Huertas wrote that: "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." *Id.* A copy of the November 3, 2022 correspondence was attached to the Complaint and is attached as Exhibit E. On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects." *Id.* ¶ 31. A true copy of the November 15, 2022 email was attached to the Complaint and is attached as Exhibit F.

       E.     <u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents</u>

       By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022. *Id.* ¶ 33. A true copy of a November 17, 2022 email sent by Mr. Huertas was attached to the Complaint and is attached as Exhibit G. As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT. *Id.* ¶ 34.

       On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property. *Id.* ¶ 35. A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to the Complaint and is attached as Exhibit H. That same

<div align="center">3</div>

day (November 30, 2022) Developer RE1 requested, and WCP agreed, to provide the payoff

figures for both loans as of December 23, 2022.  *Id.* ¶ 36.  A copy of the second November 30,

2022 email exchange between Developer RE1 and WCP was attached to the Complaint and is

attached as Exhibit I.

On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP

about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note

and the Second Note for six to twelve months.  *Id.* ¶ 37.  Mr. Huertas replied that the only way

an extension of the maturity date would be granted would be if Developer RE1 paid down the

First Note and the Second Note by $1 million to $1.5 million (in principal).  *Id.*  On or about

December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be

willing to extend the maturity date for the First Note and the Second Note loans for six to twelve

months if Developer RE1 paid down the notes by $500,000 to $750,000.  *Id.* ¶ 38.  Mr. Huertas

reiterated that, at a minimum, the notes needed to be paid down by $1 million.  *Id.*  Mr. Negussie

then told Mr. Huertas that he would try to raise that amount ($1 million) from additional

investors.  *Id.*  As of December 8, 2022 there was still no claim made that any default be

Developer RE1 existed under any of the loan documents.  *Id.* ¶ 39.

F.   Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve
     Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".

By December 8, 2022, Developer RE1 had made all payments due under the

Notes ($332,319.03 in interest payments).  *Id.* ¶ 40.  That day, Mr. Huertas told Developer RE1

that the Defendants and an unnamed investor were displeased with how the development of

another, unrelated property (located at 2507 I Street, NW) had turned out.  *Id.* ¶ 41.  For

convenience, the unrelated development project will be referred to as the "2507 I Street Project".

During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff

statements recently issued and that he was defaulting all loans that Mr. Negussie was associated

with at WCP, including Developer RE1." *Id.* ¶ 42. Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender "is very

wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and

another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also

said: "why don't you do the honorable thing and have your investors buy 2507 I St to make

things right" or have them "take care of the $700,000" shortfall on that project." *Id.* Mr. Huertas

also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall

(on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would

make trouble for you on all of your other projects". *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or

to any development projects were improper. *Id.* ¶ 44. After Mr. Negussie refused to accede to

Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all

prior Payoff Statements that were sent "were withdrawn" and that he would place Developer

RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC

("423 Kennedy") in default under their loan documents. *Id.* ¶ 45.[1]

The Defendants knew that Developer RE1 was not involved in the 2507 I Street Project,

that there is no legal or other business relationship between Developer RE1 and either the

developer for the 2507 I Street Project or 423 Kennedy, and that 423 Kennedy was a sole

---

[1] 423 Kennedy has filed a similar lawsuit against the Defendants. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.).

purpose entity involved with a development project at 5501 1st Street, NW.  *Id.* ¶¶ 46-50, and 52-57.  Mr. Huertas provided no basis for why or how the Defendants could put Developer RE1 in default under the loan documents.  *Id.* ¶ 51.

> G.   Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email.  *Id.* ¶ 58.  A true copy of each "Notice of Default" was attached to the Complaint and are attached as Exhibits J, K, and L.  Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A".  *Id.* ¶¶ 60-61.  Email is also not listed as a permissible means to send a default notice.  *Id.* ¶¶ 64-65; Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1.  *Id.* ¶ 66.  A true copy of the two Payoff Statement that were included with that email were attached to the Complaint and are attached to as Exhibits M and N.  *Id.* ¶¶ 66-68. The Payoff Statement for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".  *Id.*

> H.   Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims.  *Id.* ¶ 69.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that

6

he had to contact the WCP's counsel.  *Id.*  Developer RE1 believes that Mr. Huertas then
instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to
justify the decision to declare that Developer RE1 was in "default".  *Id.* ¶¶ 70-71.  Developer
RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to
conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to
conceal the real reason why Developer RE1 was improperly placed in default -- because the
Defendants were angry about the 2507 I Street Project.  *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a
"commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of
the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts
that are claimed to be due.  *Id.* ¶¶ 73-74.  The Defendants knew that by improperly alleging that
Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default
Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the
refinance loan.  *Id.* ¶¶ 75-77.  The Defendants deliberately interfered with the refinancing loan to
prevent Developer RE1 from being able to go to closing.  *Id.* ¶ 77.  The Defendants also sent a
"Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr.
Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project).  *Id* ¶ 78.  The
Defendants also knew that they had no right to demand that someone else either correct, or pay
for, any problems at the 2507 I Street Project.  *Id.*  ¶ 79.  The Defendants are trying to inflict
damages upon Developer RE1, and their misconduct is a form of extortion.  *Id.* ¶ 80.

I.   <u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT
and the Second DOT</u>

After being asked by counsel for Developer RE1 to provide a basis for the

"default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for.  In a reply

email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";

- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022.";

- Developer RE1 was not entitled to any notice of any default;

- there was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email was attached to the Complaint and is attached as Exhibit O

(italics and underlined emphasis in original). *Id.* ¶ 81.  For convenience, the alleged DC Water

Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax

payment claim will be referred to as "Property Tax Late Payment Claim." *Id.*  ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or

about August 31, 2022, because DC Water was sending the invoices for the Property to the

wrong address. *Id.*  ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22,

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  *Id.*  Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

8

claimed was due.  *Id.*  On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  *Id.*  ¶ 84.  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.  *Id.*  That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  *Id.*  ¶ 85. Developer RE1 is currently waiting for an administrative hearing to be scheduled.  *Id.*  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").  *Id.* ¶ 86. Developer RE1 is still waiting for an administrative hearing to be scheduled on the appeal.  *Id.*

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.  *Id.* ¶ 90.  Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022.  *Id.* ¶ 91.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.  There are currently no outstanding property taxes owed by Developer RE1, and the late payment of taxes caused no harm whatsoever to the WCP Fund.  *Id.* ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text.  No claim of default was made by WCP against Developer RE1 until after WCP became

GDL Documents\4887-8420-9222.v1-12/23/22

aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id.* ¶ 94. The property taxes have now been paid, and Developer RE1, a sole purpose entity, has no affiliates. *Id.* ¶¶ 100-114. Even though there is no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they have threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to. *Id.* ¶ 96.

J.   Developer RE1 Risks Losing the Property

The Defendants have threatened to foreclose on the Property even though they know they do not have any legal basis for doing so. *Id.* ¶ 107. There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶ 108. The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022. The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 111. If the Defendants follow through on their threat to foreclose on the Property, Developer RE1, will be irreparably harmed and could lose its entire investment due to the Defendants' misconduct and improper lending practices. *Id.* ¶¶ 109-10.

II.  PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed a Complaint against the Defendants. The Complaint includes claims for tortious interference with business relations (Count I) and breach

10

of the duty of good faith and fair dealing (Count II).  The Complaint also seeks a declaratory

judgment as to the meaning of certain provisions in two Deeds of Trust (Count III) and

injunctive relief (Count IV).  Because the Defendants have threatened foreclosure, Developer

RE1 asks this Court to preserve the status quo by issuing a temporary injunction that prevents the

Defendants from trying to enforce any remedy under the loan documents, including the remedy

of foreclosure.

III.    LEGAL ARGUMENT

      A.    The Legal Standard for a Temporary Restraining Order

           In determining whether to grant a temporary restraining order or a preliminary

injunction, the Court must consider four factors: (1) the likelihood of irreparable harm in the

absence of the requested injunction; (2) the likelihood of success on the merits on the underlying

action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the

public interest would be served by granting the injunction.  *Ifill v.  District of Columbia*, 665

A.2d 185, 187-88 (D.C. 1995).  The most important inquiry is that concerning irreparable injury.

*District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993).  These four injunctive

relief factors, which are discussed in more detail below, weigh heavily in favor of Developer

RE1.

      B.    Developer RE1 Will Be Irreparably Harmed if the Defendants Follow-Though on
          Their Threat to Foreclose on the Property

           Absent an injunction, the Defendants could foreclose on the Property.  If those

Defendants foreclose on the Property, Developer RE1 will lose its interest in the Property and the

improvements to the Property, which has a current value of almost $4 million.  The law

considers property to be unique, so the possibility that Developer RE1 could lose its interest in

the Property is sufficient, to show irreparable harm.  *See Peterson v. D.C. Lottery & Charitable*

*Games Control Bd.*, No. 94-1643, <mark>1994 U.S. Dist. LEXIS 10309, 1994 WL 413357</mark>, at *4

(D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of

property is considered to be unique, and its loss is always an irreparable injury.").  Accordingly,

this first injunctive relief factor weighs heavily in favor of Developer RE1.

      C.      <u>Developer RE1 Is Likely to Succeed on the Merits as to Its Claims</u>

        (1)     <u>Developer RE1 is Likely to Succeed on its Intentional Interference with a
Business Relationship Claim</u>

          To prevail on a claim of tortious interference with business relations,

Developer RE1 must establish:  (1) the existence of a valid contractual or other business

relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with

that relationship by the defendant; and (4) damages.  *See Onyeoziri v. Spivok*, <mark>44 A.3d 279</mark> (D.C.

2012).  Developer RE1 has alleged sufficient facts to how that the Defendants actions amount to

a tortious interference with business relations.  The conduct alleged to have occurred here show

that the Defendants are attempting to extort money from Developer RE1 (and others) by raising

pre-textual defaults at a time when Developer RE1was on the verge of closing on a refinancing

loan.  Developer RE1 has easily demonstrated the elements of a tortious interference with

business relations claim.

        (2)     <u>Developer RE1 is Likely to Succeed on its Breach of the Duty of Good
Faith and Fair Dealing Claim</u>

          In the District of Columbia, all contracts contain an implied duty of good

faith and fair dealing.  *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006).  In

essence, "neither party shall do anything which will have the effect of destroying or injuring the

right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re

ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr.

D.D.C. Jan. 14, 2022) (quoting *id.*).  Here, Developer RE1 has alleged facts showing that WCP

<div align="center">12</div>

and the WCP Fund breached the implied duty of good faith and fair dealing.  Making up defaults

after the fact in order to put pressure on someone, whether that pressure is to pay someone else's

debt, or to extract exorbitant "default" fees and penalties, are textbook examples of bad faith.

Developer RE1 has also shown that the Defendants are taking improper actions under the loan

documents for the purpose of injuring the rights of Developer RE1 (and others) and to try to

deprive Developer RE1 of the value of the Property.

> (3) <u>Developer RE1 Is Likely to Prevail on Its Claims that the Defendants'</u>
> <u>Allegations of Default Are Pretextual – and that the Alleged Defaults</u>
> <u>Cannot Form a Valid Basis Upon Which to Foreclose on the Property</u>

The facts alleged by Developer RE1 demonstrate that Mr. Huertas

declared Developer RE1 in default for pre-textual reasons.  More importantly, the default claims

that were alleged are either incorrect as a matter of law, or are so trivial in nature that they cannot

be used as a basis upon which to effectuate a forfeiture.

> (4) <u>Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate</u>
> <u>of 423 Kennedy (or Any Other Entity).</u>

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of

in the First DOT and the Second DOT allow them to declare a default because they claim that

Developer RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned

by Mr. Negussie.  Section 7.9 in each deed of trust states:

> <u>Other Indebtedness.</u>  Any default under or breach of any document
> or instrument evidencing or securing any indebtedness, obligation,
> or liability of any kind or nature - *other than the Indebtedness and*
> *the Obligations secured hereby - of Grantor* or any guarantor of
> the Indebtedness*, or any of their affiliates, to Beneficiary,* whether
> now existing or hereafter created or arising, direct or indirect,
> material or immaterial, and whether absolute or contingent, joint,
> several or joint and severally and howsoever owned, held, or
> acquired.

13

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809(6). But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity. There is no business or other relationship between 423 Kennedy and Developer RE1. Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.[2] Developer RE1 does not control 423 Kennedy and vice versa. Both entities are sole purpose limited liability companies whose businesses are separate. Cross-default provisions have also been found to be inherently suspect. *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . ."). The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

(5)     Developer RE1 is Likely to Prevail on Its Argument that a Fine That Caused No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to Foreclose on the Property.

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the

---

[2]     The Complaint contained a typographical error in paragraph 103. The word "not" was mistakenly omitted. Paragraph 103 should have stated: "Mr. Negussie does not have a controlling interest in 423 Kennedy." Developer RE1 will be correcting this mistake in an amended complaint.

Court of Appeals explained in *Tsintolas Realty* by using a sports (basketball) analogy, technical

violations of a contract that cause no harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase
> an analogous passage in *In re DiMartino,* 108 B.R. 394, 403
> (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be
> applied in this law court. Since [the landlord] has suffered no
> monetary harm from any alleged breach [of the settlement
> agreement], the [tenants are] not liable and there can be no set-off
> to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements*

*Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

    Here, just like the landlord in *Tsintolas Realty,* the Defendants are claiming a technical

default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for

which they could not have suffered any actual damages. As the *Tsintolas Realty* court further

explained:

> It is a longstanding principle in civil law that there can be no
> monetary recovery unless the plaintiff has suffered harm." *Mira,*
> 107 F.3d at 473 (citing *Brock v. Robbins,* 830 F.2d 640, 647 (7th
> Cir.1987)). "[M]ere breach without proof of monetary loss is
> *injuria absque dam-no,*" *Cagle v. Southern Bell Tel. & Tel. Co.,*
> 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,*
> "a wrong which results in no loss or damage, and thus cannot
> sustain an action." *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law
> Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

    Developer RE1 is likely to prevail on its argument that technical defaults that caused no

harm cannot serve as a basis for the foreclosure on a Property worth almost $4 million. *See*

*Allen v. United States,* 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992)

("Proportionality is of consummate importance in judicious adjudication[.]")" [.]")". Other

courts have also refused to allow a forfeiture based upon an inconsequential breach of a contract.

15

In *Miller v. Cain Partnership, Ltd.,* No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20,

1993), the court noted several, general rules regarding forfeitures, such as: "Every reasonable

presumption is against forfeiture and every intendment or presumption is against the party

seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts § 407 (1963)) and that

"[f]orfeitures are not favored in equity and unless the penalty is fairly proportionate to the

damages suffered by the breach, relief will be granted when the [party seeking forfeiture] can, by

compensation or otherwise, be placed in the same condition as if the breach had not occurred.")

(quoting *Hooten v. Nacarto GMC Truck, Inc.,* 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)); *see

also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42

("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one.") (issuing an

injunction to prevent the termination of a Joint Venture agreement based upon inconsequential

violations and when there was substantial performance under the contract). Because of the

longstanding rule that equity abhors a forfeiture, especially when the party trying to effectuate

the forfeiture has suffered no damages, the third injunctive relief factor -- the likelihood of

success on the merits -- weighs heavily in Developer RE1's favor.

    D.    <u>The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor</u>

    The irreparable harm to Developer RE1 greatly outweighs any potential injury to

the Defendants, who really can prove no injury because, but for their improper conduct,

Developer RE1 would have gone to closing and repaid the amounts owed in full. The

Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the

WCP Fund could arguably claim that Developer RE1 has caused them are wounds that are self-

inflicted. By refusing pre-textually placing Developer RE1 in default, trying to improperly

extort money from Developer RE1 (and others), and by directly interfering with, and delaying

indefinitely, Developer RE1's closing on a refinance loan, the Defendants have effectively shot

<div align="center">16</div>

themselves in the foot.  The third injunctive relief factor, the "balance of the injuries", also

weighs heavily in favor of Developer RE1.

> E.    The Public Interest is Firmly in Favor of Preventing Foreclosure

The public interest will be served by stopping a foreclosure where the borrower

was not in default and had abided by the terms of its loan documents.  The public interest is

served by ensuring that those who adhere to the terms of loan documents are rewarded, not

penalized.  The public interest is not served by rewarding wrongdoers.  Here, Developer RE1 had

paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements

demanding $727,598.77 "default" penalties.  At best, the defaults alleged by the Defendants

were technical violations of the First and Second DOT.  The public interest will not be served if

the Court, using another sports (tennis) analogy, were to allow what are basically "foot faults" to

decide an entire tennis match, especially in a case like this one where the Defendants have,

acting in concert, engaged in predatory lending practices.  Allowing the Defendants to move

forward with a foreclosure under these circumstances would actually harm the public as it would

encourage the Defendants to engage in even more deceitful, predatory lending practices.  The

"public interest" factor also favors Developer RE1.

## IV.    CONCLUSION

Based on the facts presented and the attached exhibits, the Court should enter a

Temporary Restraining Order that prevents to Defendants from taking any further action to

foreclose on the Property.  For these reasons and for any reasons that may be advanced at a

hearing on this motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court:

(a) schedule an emergency hearing on this motion; (b) enter the attached proposed order; and

award such other and further relief as the Court may deem just and proper.

GDL Documents\4887-8420-9222.v1-12/23/22

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  December 23, 2022            /s/ James D. Sadowski
                                     _____
                                     Alexandria J. Smith (D.C. Bar. No. 1781067)
                                     James D. Sadowski (D.C. Bar No. 446635)
                                     801 17th Street, NW, Suite 1000
                                     Washington, DC 20006
                                     Telephone:  (202) 452-1400
                                     Email:  jds@gdllaw.com
                                     *Counsel for Plaintiff Developer RE1 LLC*

## REQUEST FOR EMERGENCY ORAL HEARING

Plaintiff requests that this Motion for Temporary Restraining Order be set for an oral

hearing before the Judge in Chambers on an expedited basis.

                                     /s/ Alexandria J. Smith
                                     _____
                                     Alexandria J. Smith

GDL Documents\4887-8420-9222.v1-12/23/22

230

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Motion for a Temporary Restraining Order was served by the Court's electronic filing system this 23rd day of December 2022, and a notice of filing should be served on all counsel of record. I also served a copy of this motion by email (as indicated) and by FedEx on the following persons:

DP Capital d/b/a Washington
  Capital Partners
8401 Greensboro Drive - Suite 960
McLean, VA  22102
rdrazin@pardodrazin.com

WCP Fund I, LLC
c/o National Registered Agents Inc. –
Registered Agent
1015 15th Street, NW, Suite 1000
Washington, DC  20005

Daniel Huertas
909 Chinquapin Road
McLean, VA  22102

Russell S. Drazin
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015

Pardo & Drazin, LLC
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015
Attn:  Russell S. Drazin

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to Russell Drazin, Esq., a Defendant who is also believed to be counsel for the other Defendants, on December 22, 2022.  Mr. Drazin replied that the Defendants did not consent.

/s/ Alexandria J. Smith
Alexandria J. Smith

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] ORDER

Upon Consideration of Plaintiff Developer RE1 LLC's Motion for Temporary Restraining Order, any response thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of injunctive relief.  Accordingly, it is this ___ day of December, 2022, hereby

ORDERED that the Plaintiff's Motion for Temporary Restraining Order is hereby GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to:  (a) exercise any right or remedy that they have under the First DOT, the Second DOT, the First Note, and/or the Second Note; (b) foreclose on the Property (5501 1st Street, N.W., Lot 138, Square 3389); and/or (c) collect any amounts that are claimed to be due under the First Note and the Second Note pending further order of this Court.

SO ORDERED.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

1

GDL Documents\4887-8420-9222.v1-12/23/22

232

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Daniel Huertas
DPA Capital, LLC d/b/a Washington Capital Partners
The WCP Fund 1, LLC
Russel Drazin, Esq.

# EXHIBIT A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

      **THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

      WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

      WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

235

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

236

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                    Page 3 of **25**

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">ARTICLE II

GRANT</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

238

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

    Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

    The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

### ARTICLE III

### REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

    Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

    (a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

239

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Case 25-10023-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 10:25:28   Desc
Exhibit B - All Pleadings and Prodocket Entities (Part A) Page 171 of 1716
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

### 5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

### 5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

243

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

ARTICLE VI

EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

244

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

ARTICLE VII

EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                                 Page 12 of 25

246

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

248

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

249

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

Page **16** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia  Limited Liability
Company

_____(SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member


COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.


_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

# EXHIBIT A

## LEGAL DESCRIPTION

258

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

259

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                              Page 1 of 9

261

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

### 4.    BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

### 5.    BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;
b.  If default be made in the performance of any other covenant contained in this Note;
c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.    <u>**OBLIGATIONS OF PERSONS UNDER THIS NOTE**</u>

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                    Page 4 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

9.    **SUCCESSORS AND ASSIGNS**

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

266

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

267

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_(signature)_ (SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _(handwritten)_
STATE OF _(handwritten)_

    I hereby certify on this 24 day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC



ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

269

# EXHIBIT C

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                 Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<center>ARTICLE II</center>

<center>GRANT</center>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

**2.1 Possession.**

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

**2.2 Condition of Grant.**

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

**3.0 Representations and Warranties.**

Grantor hereby represents and warrants to Beneficiary that:

**3.1 Validity of Loan Instruments.**

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

276

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

277

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

281

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

282

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

283

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

284

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016                                                        Page **16** of 25

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

     This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

     Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

     Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

     (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

Page **20** of **25**

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

## ARTICLE XII

## STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

     This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

     **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _____ ) SS:
STATE OF _____

    I hereby certify on this __24__ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

294

5501 1st St NW Washington DC 20011

LOAN-006182

2nd Trust

295

# EXHIBIT "A"
## Property Description

**Closing Date:**      **December 23, 2021**

**Borrower(s):**      **Developer RE1 LLC**

**Property Address:**   **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

```
Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
   RECORDING FEES          $150.00
   SURCHARGE               $6.50
   RECORDATION TAX FEES    $13,100.00
TOTAL:                     $13,256.50
```

# EXHIBIT D

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.    **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                Page 1 of **9**

299

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

**2.    INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

**3.    PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                            Page 2 of 9

300

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

302

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:      Mel Melaku Negussie
Its:     Managing Member




COUNTY OF _City of Washington_)SS:
STATE OF _District of Columbia_:

I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.


_____
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024


Rev 12.2015                                              Page **9** of **9**

307

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project

**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time
**From:** mel negussie
**To:** Daniel Huertas
**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone

> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:
>
> HI Daniel,
>
> My apologies for the delayed response.
>
> Yes, we are working and making progress to refinance both projects out of WCP.
>
> Regards,
> Mel

---

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleading and Docket Entries (Part H) All Docket Entries    Page 244 of 1716

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown
<darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:
>
> Hi Mel,
>
> Payoff requests received. What good through date would you like?
>
> Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless
> you recognize the sender and know the content is safe.

# EXHIBIT J

| Subject: | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| --- | --- |
| Date: | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| From: | Leslie Calderas |
| To: | mel negussie |
| CC: | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| Attachments: | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.


## Leslie Calderas  l  Servicing Manager

Washington Capital Partners

www.washingtoncapitalpartners.com

8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K



12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A**. Additionally, you signed a Guaranty for the Loan**.**

    This is your last notice before our legal counsel commences foreclosure proceedings**.**  Immediate payment is required to avoid foreclosure**.**  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current**.**  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing**.**

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan**.** All payoff requests must be made in writing**.**

    As your lender, we will exercise all rights and remedies available at law and equity**.**  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings**.**

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT L



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.    I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

# EXHIBIT M

 

# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: United Bank |
|---|---|---|
| | 8401 Greensboro Dr Suite 960 | Routing Number: ▮▮▮▮ |
| | McLean, VA  22102 | Account Number: ▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

325

# EXHIBIT N

 

# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:   WCP Servicing LLC          Bank Name: United Bank
              8401 Greensboro Dr Suite 960   Routing Number: ▮▮▮
              McLean, VA  22102          Account Number: ▮▮▮

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

327

# EXHIBIT O

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

-----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

-----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

-----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

-----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

---

**From:** Leslie Calderas <lcalderas@wcp.team>
**Date:** Thursday, December 8, 2022 at 6:57 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
**Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartn ers.com/

8401 Greensboro Dr Suite 960

McLean, VA 22102

(703) 940-5190





*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

**Subject:**   PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute

**Date:**   Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time

**From:**   mel negussie

**To:**   Administrative.Hearings@dcwater.com

**BCC:**   Chapman Paret

**Priority:**   High

**Attachments:** 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from **February to June 2022.**
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 CANAL STREET, SE | WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | |
|---|---|---|---|
| Case Number: | 22-594546 | | |
| Account Name: | 2002583-9 | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

**Indicate your relationship to the property: Owner**___ Legal/Rep___ Tenant___ 3rd Party/Non-Occupant___ Mgt Company___
**Indicate the property occupancy status during the dispute period** Vacant___ Occupied___(Number of Occupants _____)
**Daytime/Best Contact Phone Number:** 202-271-5046 ___ Email: ___ mel@ntconstruction.net ___

Please provide a statement of facts concerning the disputed charges. Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges. Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because: We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the time of purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____*Mel Negussie*_____ Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:                3389- -0138

Amount Paid:    $16,522.89

Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

EXHIBIT R

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**

Your request confirmation code is: **dmgcxd**

Payment Amount:   $222.28

Payment Date:      19-Oct-2022

Submitted Date:    19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff,*

v.

DPA CAPITAL, LLC D/B/A
WASHINGTON CAPITAL PARTNERS, ET
AL.,

     *Defendants.*

Case No. 2022 CAB 005903
Judge Robert Rigsby

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DPA CAPITAL, LLC D/B/A
WASHINGTON CAPITAL PARTNERS, ET
AL.,

     *Defendants.*

Case No. 2022 CAB 005935
Judge Ebony Scott

## NOTICE OF RELATED CASES

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings

LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related

within the meaning of Rule 40-I.(f). The two cases, the earliest of which (2022 CAB 005903),

involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default

under similar loan documents. The claims in both cases are also the same, and refer to similar

events and transactions. The related cases also have the same Defendants.

4869-3825-6710.v1

342

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    December 23, 2022          /s/ Alexandria J. Smith
                                    James D. Sadowski, #446635
                                    Alexandria J. Smith, #1781067
                                    801 17th Street, N.W., Suite 1000
                                    Washington, D.C. 20006
                                    Telephone:  (202) 452-1400
                                    Facsimile:  (202) 452-1410
                                    E-mail:  jds@gdllaw.com
                                    *Counsel for Plaintiff 423 Kennedy St Holdings,*
                                    *LLC* and *Plaintiff Developer RE1 LLC*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of December, 2022, a true copy of the

foregoing Notice of Related Cases was filed in both of the above-captioned cases (2022 CAB

005903 and 2022 CAB 005935) using eFileDC and that a notice of filing should be sent

electronically to counsel of record in both cases.  Before filing this notice, I also added all

counsel of record in the older case to the service list for the newer case.


                                    /s/ Alexandria J. Smith
                                    Alexandria J. Smith


2



**Superior Court of the District of Columbia**
**Civil - Civil Division**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**(202) 879-1120 | www.dccourts.gov**

**Case Number:** 2022-CAB-005935

**Case Caption:** Developer RE1, LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| 03/24/2023 | 9:30 AM | Remote Courtroom 219 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Ebony M Scott. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated below. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4(m).

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

344

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

For case questions, call the Civil Division Clerk's Office at (202) 879-1120.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውም የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሐፊ ቢሮ (ክለርክስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
## (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:



| **Remote Site - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Remote Site - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
|---|---|
| **Remote Site - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Remote Site - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Remote Site - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.
4. A facial covering will be required for entry into the remote hearing location; if you do not have a facial covering one will be provided.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

## Los centros de acceso remoto son:

| | |
|---|---|
| **Sitio Remoto - 1**<br>Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | **Sitio Remoto - 4**<br>Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Sitio Remoto - 2**<br>Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | **Sitio Remoto - 5**<br>Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Sitio Remoto - 3**<br>Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | **Sitio Remoto - 6**<br>Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*No se puede entrar sin cita previa* |



Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

4. Para ingresar al sitio de la audiencia remota deberá llevar una mascarilla facial; si no tiene mascarilla facial, se le proporcionará una.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
01/12/2023 3:43:00 PM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:05:27    Desc
Exhibit B - All Pleading and Docket Entries (Part II) All Page 1116 of 1284 Page 280 of 716

## AFFIDAVIT OF SERVICE

| Case:<br>2022-CAB-005935 | Court:<br>Superior Court of the District of Columbia-Civil<br>Division-Civil Actions Branch | County:<br>District of Columbia, DC | Job:<br>8179498 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Developer RE1 LLC | | Defendant / Respondent:<br>WCP Fund, I, LLC, et al. | |
| Received by:<br>CPI - Columbia Process and Investigative Services LLC | | For:<br>Greenstein DeLorme & Luchs, P.C. | |
| To be served upon:<br>Russell Drazin | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Russell Drazin, 4400 Jenifer Street NW, Suite 2, Washington, DC 20015
**Manner of Service:** Personal
**Documents:** Summons, Complaint, Exhibits, Initial Order, Information Sheet

**Additional Comments:**
On January 03, 2023 at 4:28 PM, I served the Defendant, Russell Drazin, the referenced documents at the referenced address.

Russell Drazin is a White Male with grey hair. Mr. Drazin is approximately 5'9", 170 pounds, and in his 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Marquis Harris          Date 1/10/23

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public
Date 1/11/23     Commission Expires August 20, 2025

SUZANNE E CRONIN
Notary Public - State of Maryland
Harford County
My Commission Expires Aug 20, 2025

350

eFiled
01/12/2023 3:29:40 PM
Superior Court
of the District of Columbia

Case 25-1000200-ELG    Doc 1-2    Filed 09/01/24    Entered 09/01/24 19:25:27    Desc

Exhibit B - All Pleading and Docket Entries (Part I) All Docket Entries 1284    Page 281 of 1716

## AFFIDAVIT OF SERVICE

| Case:<br>2022-CAB-005935 | Court:<br>Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County:<br>District of Columbia, DC | Job:<br>8179485 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Developer RE1 LLC | | Defendant / Respondent:<br>WCP Fund, I, LLC, et al. | |
| Received by:<br>CPI - Columbia Process and Investigative Services LLC | | For:<br>Greenstein DeLorme & Luchs, P.C. | |
| To be served upon:<br>DP Capital, LLC d/b/a Washington Capital Partners | | | |

I, Marquis Harris, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

Recipient Name / Address:    DP Capital, LLC d/b/a Washington Capital Partners, 8401 Greensboro Drive, Suite 960, McLean, VA 22102
Manner of Service:
Documents:    Summons, Complaint, Exhibits, Initial Order , Information Sheet

Additional Comments:
On January 04, 2023 at 4:50 PM, I served the Defendant, DP Capital, LLC c/b/a Washington Capital Partners, the referenced documents at the referenced address via service upon Intake Specialist, Donna Evans, who is authorized to accept service on behalf of the Defendant.

Donna Evans is a Black Female with black hair. Ms. Evans is approximately 5'4", 190 pounds, and in her 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Marquis Harris                    Date

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date                    Commission Expires

SUZANNE E CRONIN
Notary Public - State of Maryland
Harford County
My Commission Expires Aug 20, 2025

351

eFiled
01/12/2023 10:11:22 AM
Superior Court
of the District of Columbia

Case 2:25-10280-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 09:05:28    Desc
Exhibit B - All Pleadings and Docket Entries (Part H) Page 1116 of 1284 Page 282 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Initial Scheduling Conference
03/24/23 at 9:30 a.m.

## FIRST AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, and Russell Drazin. The First Amended Complaint includes

claims for tortious interference with business relations, breach of the duty of good faith and fair

dealing, and permanent injunctive relief. The First Amended Complaint also seeks a declaratory

judgment as to the meaning of certain provisions in two Deeds of Trust. The First Amended

Complaint also seek injunctive relief to prevent a foreclosure. In support of its First Amended

Complaint, Developer RE1 avers as follows:

### THE PARTIES

1. The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia

limited liability company that is authorized to do business in the District.

2. The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners". For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

4881-0911-2136.v1

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is

counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of

trust that he drafted, the terms of which are at issue in this case.

### STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

#### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

7.      In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up
> trusting that if they work with us, we will do everything in our power to help them
> succeed." The duo understands the importance of a client's positive experience and the
> clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've
> developed a highly relational experience with our clients through innovative products,
> practices and standards. *What sets us apart from other lenders is our unwavering
> commitment to the highest ethical practices in the industry*, which historically have been
> very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

8.      But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, and the WCP Fund have engaged in unethical, outrageous conduct that was

specifically designed to make one of their client's construction projects fail.

2

The Ownership of Developer RE1, Its Purpose, and the Property.

9.      Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

10.     Developer RE1 is partially owned by Mr. Negussie.

11.     Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

12.     The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

13.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an

acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor,

signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as

Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as

counsel for the WCP and the WCP Fund.

16.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes

to the terms of the First DOT before it was signed.

17.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note

(the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A

true copy of the First Note is attached as Exhibit B.

18.     The First Note was a form of promissory note that was prepared by Mr. Drazin as

counsel for the WCP and the WCP Fund.

3

19.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

26.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

27.     The maturity date for the First Note and the Second Note was December 23, 2022.

28.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

4

29.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

   Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
   Accede to His Demands Regarding Another, Unrelated Development

30.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

31.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email is attached as Exhibit F.

32.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

33.     By as early as November 15, 2022, the Defendants each knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

34.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

35.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP is attached as Exhibit H.

4881-0911-2136.v1

36.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022. A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

37.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

38.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

39.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

40.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note. By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

41.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

42.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was

associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done," and that this Investor Lender "is very wealthy and will make life hard

for you", and "has now bought the notes" on Developer RE1 and another project financed by

WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the

honorable thing and have your investors buy 2507 I St to make things right" or have them "take

care of the $700,000" shortfall on the 2507 I Street Project.

43.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

44.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1

or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it

was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or

to be making threats to any other development project that Mr. Negussie was involved with.

7

45.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

46.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

47.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

48.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

49.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

50.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

51.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

52.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

8

53.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited

liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other

50% owner).

54.     The Defendants knew that there is no legal or other business relationship between

Developer RE1 and 2507 Holdings.

55.     The Defendants knew that 2507 Holdings does not control Developer RE1 and

that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two

entities are not affiliates of one another, and that the two entities have no business relationship

with each other.

56.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street

Project

57.     The Defendants knew that Mr. Negussie did not have a controlling interest in

either 423 Kennedy or the 2507 I Street Project.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By
Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default
Interest" and By Threatening Developer RE1 With Foreclosure.

58.     Later that same day (December 8, 2022), Mr. Huertas followed through with his

threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development

project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas,

a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to

423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is

attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr.

Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

59.     The "Notice of Default" sent to Developer RE1 appears to reference the First

DOT, the First Note, the Second DOT, and the Second Note.

9

60.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

61.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

62.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

63.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

64.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

10

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

65.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

66.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

67.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

68.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

69.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

70.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

71.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

72.     The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

73.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and a another "commission" of 5.00% the proceeds of a foreclosure sale.

74.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

75.     As a result of their spite, their evil, improper motive, and their greed, the Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

---

[1]     423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

12

76.     The Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

77.     The Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

78.     The Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund).

79.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

80.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

81.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument

13

No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

        (b)      Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

82.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

83.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

84.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

85.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for

4881-0911-2136.v1

an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the

Petition for Administrative Hearing are attached together as Exhibit P.

86.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1

reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim

"within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in

violation of the covenant in Section 7.6 (entitled "Judgments").

87.     Developer RE1 cannot be declared in "default" based upon the first pre-textual

basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because

cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section

7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

88.     The only provision of the loan documents that Mr. Drazin cited a claimed basis

for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

89.     The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations*
> *secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any*
> *of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

15

90.    The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

91.    The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

92.    The late payment of taxes by Developer RE1 cased no harm whatsoever to the WCP Fund.

93.    The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

94.    No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

95.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

96.    The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

4881-0911-2136.v1

97.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

98.    In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

99.    The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

100.    Developer RE1 does not control 423 Kennedy and vice versa.

101.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

102.    There is also no common control of Developer RE1 and 423 Kennedy.

103.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

104.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

105.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

106.    The Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to

17

deceleration.  <u>There is no right to reinstatement</u>.  <u>The Loans are in default and are accelerated</u>."

*See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the

Second Note, and the Second DOT).

> <u>Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending</u>
> <u>Practices Are Left Unchecked</u>

107.    The Defendants have threatened to foreclose on the Property even though they

know that they have no legal right to foreclose on the Property.

108.    There is no valid, legal basis under any provision of either the First DOT or the

Second DOT that would permit the Defendants to foreclose on the Property.

109.    If the Defendants follow through on their threat to foreclose on the Property,

Developer RE1 and its members will be irreparably harmed and they could lose their entire

investment.

110.    The Defendants' conduct shows that they have an evil motive, that they are acting

with actual malice to impose damages on Developer RE1 and others, and they are intentionally

and willfully disregarding Developer RE1's rights under the loan documents and under the law.

The Defendants' misconduct and improper lending practices also constitute outrageous conduct

further justifying an award of punitive damages.

111.    The Defendants knew that the First Note and the Second Note list a maturity date

of December 23, 2022.  The Defendants deliberately timed their improper interference with

Developer RE1's business relations -- right before a holiday period -- to make it close to

impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to

tie up any refinancing indefinitely so that they can try to foreclose on the Property

18

112.     As of January 11, 2023, none of the Defendants have sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

<div align="center">

COUNT I

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

</div>

113.     Paragraphs 1-112 of the First Amended Complaint are incorporated by reference.

114.     Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

115.     The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

116.     As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

117.     As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

118.     The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

119.     Developer RE1 has been damaged by the Defendants'' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

<div align="center">

19

</div>

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this

Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC,

and Mr. Huertas under Count I for:  (a) any and all damages (to be determined) that the Plaintiff

has suffered and will suffer as a result of the Defendants' intentional interference with Developer

RE1's business relations (currently estimated to be at least $1 million if the closing on the

refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c)

punitive damages of $500,000.00; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP and WCP Fund Only
</div>

120.    Paragraphs 1–119 of the First Amended Complaint are incorporated by reference.

121.    Every contract in the District of Columbia contains an implied covenant of good

faith and fair dealing.

122.    The First Note is a contract between Developer RE1 and the WCP Fund.

123.    The First DOT is a contract between Developer RE1 and the WCP Fund.

124.    The Second Note is a contract between Developer RE1 and the WCP Fund.

125.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

126.    Through its improper conduct, the WCP and the WCP Fund have breached the

implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the

Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this

Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC

d/b/a Washington Capital Partners and the WCP Fund 1, LLC:  (a) any and all damages (to be

determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional

<div align="center">20</div>

4881-0911-2136.v1

interference with contracts (currently estimated to be $1 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT  III

DECLARATORY JUDGMENT

Count III Is Asserted Against Defendants WCP and WCP Fund Only

</div>

127.    Paragraphs 1–126 of the First Amended Complaint are incorporated by reference.

128.    The First DOT is a contract between Developer RE1 and the WCP Fund.

129.    The Second DOT is a contract between Developer RE1 and the WCP Fund.

130.    There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

131.    It is settled law in the District that "equity abhors forfeitures ... [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

132.    There is an actual and justiciable controversy between Developer RE1 and the WCP Fund as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that:  (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a

<div align="center">

21

</div>

default by Developer RE1 after the fact, after the alleged default has already been cured (or is in

the process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy.

<div align="center">

COUNT IV

PERMANENT INJUNCTIVE RELIEF

(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

</div>

133.    Paragraphs 1–132 of the First Amended Complaint are incorporated by reference.

134.    Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

135.    The Defendants unethical, outrageous, and illegal conduct, as described in this

First Amended Complaint, is causing irreparable harm to Developer RE1.  The Property is

unique, and Developer RE1 could lose its entire interest in the Property.

136.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

<div align="center">22</div>

# DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the First

Amended Complaint for which a jury trial is allowed under the law.

<p style="margin-left: 40%;">Respectfully submitted,</p>

<p style="margin-left: 40%;">GREENSTEIN DELORME & LUCHS, P.C.</p>

Dated:  January 12, 2023

/s/ James D. Sadowski
_____
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

4881-0911-2136.v1

<u>C</u>ERTIFICATE OF <u>S</u>ERVICE

I HEREBY CERTIFY that a true copy of this First Amended Complaint was filed

through eFileDC this 12th day of January, 2023, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.  I also checked that the email address listed below each

Defendant was listed as a service contacts for the Defendants when filing the First Amended

Complaint with eFileDC. In addition, I sent a copy of the First Amended Complaint to the

following persons by first class mail, postage prepaid:

>DP Capital, LLC d/b/a Washington Capital Partners
>c/o Russell S. Drazin – Registered Agent
>4400 Jenifer Street, NW, Suite 2
>Washington, DC 20015
>rdrazin@pardodrazin.com
>
>WCP Fund I, LLC
>c/o Corporation Service Company – Registered Agent
>1090 Vermont Avenue, NW
>Washington, DC 20005
>mac@mbvesq.com
>rdrazin@pardodrazin.com
>
>Daniel Huertas
>909 Chinquapin Road
>McLean, VA 22102
>rdrazin@pardodrazin.com
>
>Russell Drazin
>4400 Jenifer Street, NW, Suite 2
>Washington, DC 20015
>rdrazin@pardodrazin.com

/s/ James D. Sadowski
James D. Sadowski

4881-0911-2136.v1

# EXHIBIT A

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

378

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                          Page 3 of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

381

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

     Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

     Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

     Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

     Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

<center>ARTICLE VI</center>

<center>EMINENT DOMAIN – CONDEMNATION</center>

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016                                                      Page **10** of 25

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                     Page 12 of 25

388

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016                                                                 Page **14** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

391

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

ARTICLE IX

THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

Page **16** of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                                              Page 18 of 25

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee
and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each
Transferee shall have all of the rights, obligations and benefits with respect to the
Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it
as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any
Transferee all information, reports, financial statements, certificates and documents
obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note,
at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall
promptly (and in any event within three (3) business days after any such request) execute
and deliver to Agent any such documents as Beneficiary may require to confirm such
assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment
including, without limitation, original replacement notes in form and substance satisfactory
to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate
principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any
Transferee (together with any successor administrative noteholder, the "Agent"). Grantor
acknowledges that Agent shall have the sole and exclusive authority to execute and perform
this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the
terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent
to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant
to this Deed of Trust or any co-lending agreement be subject to the consent or direction of
another Person. Beneficiary may resign or be replaced as Agent in accordance with the
term of any co-lending agreement and upon such removal or resignation, a successor Agent
shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived,
modified, discharged or terminated except by instrument in writing executed by the party
or parties against which enforcement of the change, waiver, modification, discharge or
termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for
convenience of reference only and shall not be considered a part hereof and are not in any
way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

11.7 Applicable Law.

     This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

     Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

     Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

     (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption.  Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents.  Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary.  Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

ARTICLE XII

STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)

By:     Mel Melaku Negussie

Its:     Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

399

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

400

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

401

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.  **BORROWER'S PROMISE TO PAY**

    FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

    Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

    Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                    Page 1 of 9

403

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.    BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.    BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a.  If default be made in any payment due under this Note;
  b.  If default be made in the performance of any other covenant contained in this Note;
  c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.      **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                        Page **4** of **9**

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing
to the other party. Whenever in this Note the giving of notice by mail or otherwise is
required, the giving of such notice may be waived in writing by the person entitled to
receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)      Notwithstanding anything to the contrary in this Note, (i) there shall be no
limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights
and obligations under this Note, and (ii) Lender may at any time assign all or a portion of
this Note to one or more Persons (each a "Transferee") without providing notice to
Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the
Transferee thereunder shall be a party hereto and, have the same rights, benefits and
obligations as the Lender hereunder, and (2) the assigning Lender shall have no further
rights hereunder with respect to the assigned portion of this Note. Borrower hereby
acknowledges and agrees that any such assignment will give rise to a direct obligation of
Borrower to the Transferee and that the Transferee shall be considered to be a "Lender"
hereunder.  Each Transferee shall have all of the rights, obligations and benefits with
respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held
by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose
to any Transferee all information, reports, financial statements, certificates and documents
obtained under any provision of any Loan Document.

(b)      Any assignment pursuant to Section 9(a) above may be evidenced by a replacement
note at the election of Lender. Upon written notice from Lender, Borrower shall promptly
(and in any event within three (3) business days after any such request) execute and deliver
to Agent any such documents as Lender may require to confirm such assignment, evidence
the Indebtedness, and/or to otherwise effectuate such assignment including, without
limitation, original replacement notes in form and substance satisfactory to Agent and
payable to the order of Lender and/or a Transferee in an aggregate principal amount equal
to the stated principal amount of the Loan.

(c)      Lender shall act as initial administrative noteholder for itself and any Transferee
(together with any successor administrative noteholder, the "**Agent**"). Borrower
acknowledges that Agent shall have the sole and exclusive authority under this Note and
each Loan Document on behalf of the Lender, subject to the terms of any co-lending
agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender,
notwithstanding that the particular action in question may, pursuant to the Deed of Trust
or any co-lending agreement be subject to the consent or direction of another Person.
Lender may resign or be replaced as Agent in accordance with the terms of any co-lending
agreement and upon such removal or resignation, a successor Agent shall be appointed in
accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

410

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

I hereby certify on this **24** day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024
My commission expires: _____

Rev 12.2015                                                  Page **9** of 9

411

Case 25-10023-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings and Docket Entries (Part II) All Docket Entries Page 342 of 1716

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

413

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<center>ARTICLE I</center>

<center>DEFINITIONS</center>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

418

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

420

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

422

Case 25-00200-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 09:05:28    Desc
Exhibit B - All Pleading and/Or Docket Entries Part1 All Docket Entries    Page 355 of 1716
5503 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

### EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

423

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

425

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

     (a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

     (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

     (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

     In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

     (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

     (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016

Page 18 of 25

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

     This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

     Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

     Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

     (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

     (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

      This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

      **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:   Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

   I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

**EXHIBIT A**

**LEGAL DESCRIPTION**

436

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

437

# EXHIBIT "A"
## Property Description

**Closing Date:**    December 23, 2021

**Borrower(s):**    Developer RE1 LLC

**Property Address:**    5501 1st Street Northwest, Washington, DC 20011

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

**Doc #: 2022000482**
**Filed & Recorded**
**01/03/2022 12:42 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
   **RECORDING FEES**      $150.00
   **SURCHARGE**        $6.50
   **RECORDATION TAX FEES**   $13,100.00
**TOTAL:**             $13,256.50

# EXHIBIT D

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.      **BORROWER'S PROMISE TO PAY**

        FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

        Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.      **[ASSIGNMENT OF CONTRACTS]**

        Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                            Page **1** of **9**

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

**2.     INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

**3.     PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015    Page **4** of **9**

444

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

7. **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

8. **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at: 1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Case 25-10023-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 10:36:28   Desc
Exhibit B - All Pleadings and Docket Entries (Part 1) Page 376 of 1716
5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)      Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note.  Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)      Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)      Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _ROSA M. GREEN_
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015                                                    Page 9 of 9

449

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time
**From:** mel negussie
**To:** Daniel Huertas
**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:
>
> HI Daniel,
>
> My apologies for the delayed response.
>
> Yes, we are working and making progress to refinance both projects out of WCP.
>
> Regards,
> Mel

---

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown
<darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless
> you recognize the sender and know the content is safe.

# EXHIBIT J

| | |
|---|---|
| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  l  Servicing Manager
Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

      Re:    **NOTICE OF DEFAULT**

    5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

      I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

      This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

      Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

      As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

463

# EXHIBIT L



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

      Re:    **NOTICE OF DEFAULT**

     419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

      I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A**. Additionally, you signed a Guaranty for the Loan.

      This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

      Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

      As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

# EXHIBIT M



# GREAT SERVICE
# BETTER RATES
## FASTER CLOSINGS

# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:    WCP Servicing LLC                    Bank Name: United Bank
                8401 Greensboro Dr Suite 960          Routing Number: ▇▇▇▇▇▇
                McLean, VA  22102                     Account Number: ▇▇▇▇▇▇**

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

467

# EXHIBIT N



# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | | |
|---|---|---|---|
| **Payable to:** | WCP Servicing LLC | **Bank Name: United Bank** |
| | 8401 Greensboro Dr Suite 960 | **Routing Number:** ▉▉▉▉ |
| | McLean, VA  22102 | **Account Number:** ▉▉▉▉ |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT O

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

------------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

------------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

------------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

------------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

472

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> ---
>
> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | |
|---|---|---|---|
| Case Number: | 22-594546 | | |
| Account Name: | 2002583-9 | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

## PETITION FOR ADMINISTRATIVE HEARING

**Indicate your relationship to the property:** Owner____ Legal/Rep.____ Tenant____ 3rd Party/Non-Occupant____ Mgt Company____
**Indicate the property occupancy status during the dispute period:** Vacant____ Occupied____(Number of Occupants _____)
**Daytime/Best Contact Phone Number:** 202-271-5046 _____ **Email:** mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges. Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges. Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because: We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the time of purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____ *Mel Negussie* _____ Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:                3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

Case 25-10023-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:25:28    Desc
Exhibit B - All Pleadings and Ph Docket Entries (partial) All Pages 1246 of 1264    Page 11 of 11
Exhibit B - All Pleadings and Ph Docket Entries (partial) All Pages 1246 of 1264    Page 11 of 11 Time

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

| | |
|---|---|
| Payment Amount: | $222.28 |
| Payment Date: | 19-Oct-2022 |
| Submitted Date: | 19-Oct-2022 |

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

eFiled
01/24/2023 7:22:02 PM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:25:28    Desc
Exhibit B - All Pleadings and Docket Entries (Part III) All Page et 250 of 1284age 414 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## PLAINTIFF'S REPLY IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

The entry of a Temporary Restraining Order is appropriate and necessary. As set forth
more fully below, the Plaintiff, Developer RE1, LLC ("Developer RE1"), has more than
demonstrated the irreparable harm that it will suffer if the Defendants move forward on their
threat to foreclose on the Property. Moreover, the Defendants have not substantively opposed
Developer RE1's arguments regarding likelihood of success on the merits. The balance of
hardship and public policy factors lean decidedly towards Developer RE1 due to the law's
abhorrence of forfeitures. Finally, the Defendants have not articulated a sufficient basis to
support their request for a bond, and a hearing is likely necessary to determine whether a bond is
appropriate, and if so, what the value of that bond should be.

## I. DEVELOPER RE1 HAS DEMONSTRATED IRREPARABLE HARM.

The Defendants do not contest that they have threatened to proceed with a foreclosure on
the Property. Opp'n to Mot. for TRO ("Opp'n") at 4. The threatened sale of real estate, which is
unique, amounts to irreparable harm—the most important factor in the analysis of whether to
grant injunctive relief. *See, e.g., Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C.

4862-8483-1308.v1

2003) ("The basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies."); *see also Peterson v. D.C. Lottery & Charitable Games Ctrl. Bd.*, 1994 U.S. Dist. LEXIS 10309 at *4 (D.D.C. July 28, 1994); *Bashi v. Wells Fargo Home Mortg, Inc.*, 2009 U.S. Dist. LEXIS 96427 (E.D. Mich. Sept. 22, 2009) ("Plaintiff correctly asserts that irreparable harm may flow to him by the reason the sale of his real estate. It is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages. Because a piece of real property is unique, however, its loss has been considered irreparable") (internal citations omitted); *cf. Hongkong & Shanghai Bank. Corp. v. Kallingal*, 2005 Guam 13, 25-26 (Guam 2005) (using a fact-specific inquiry to determine that irreparable harm would result from the loss of real estate rights); *see also Mitchell v. Century 21 Rustic Realty*, 223 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) ("Loss of an interest in real property is generally considered irreparable harm. Loss of an interest in real property is not presumed to be irreparable harm however.").

Plainly, Developer RE1 will be irreparably harmed if the Defendants foreclose on the Property. If the Defendants follow through on their threat to foreclose, Developer RE1 could lose its entire investment. *See* Mot. for TRO ("Mot.") at 9-10.

The Defendants' assertion that a foreclosure sale is not imminent does not undermine Developer RE1's request for injunctive relief. In *Bashi*, *supra*, the Court noted that, the harm threatened to the plaintiff was not imminent because he could avoid the loss of his property by exercising his right of redemption under the Michigan Foreclosure Statute, and determined that "[n]onetheless, I consider this factor favors the Plaintiff." 2009 U.S. Dist. LEXIS 96427 at *10-11. Here the Defendants here have already threatened to foreclose on the Property. Mot. for TRO, Ex. K (". . . our legal counsel *will* commence foreclosure proceedings.") (emphasis added). Notably, Defendants cite no cases in support of their proposition that the filing of a petition for

2

bankruptcy relief amounts to an "adequate legal remedy."[1]  Plainly, Developer RE1 would suffer

irreparable harm if the Defendants were to follow through on their threat to foreclose on the

Property.

## II.   DEVELOPER RE1 IS LIKELY TO SUCCEED ON THE MERITS.

The Defendants do not cite any authority or make any substantive arguments in their

opposition to Developer RE1's request for a Temporary Restraining Order but rather state that

such arguments will be made and substantiated in a Motion to Dismiss.  For the reasons set forth

in the Motion for a Temporary Restraining Order, Developer RE1 is likely to succeed on the

merits.  *See* Mot. for TRO at 11-16.  Further, the Defendants misstate Developer RE1's position.

Developer RE1 does not acknowledge being in default of a valid provision of the loan

documents but rather asserts that such a "default" was manufactured as a pretext to conceal

unlawful, predatory lending conduct.  Mot. for TRO at 12-16.  Further, to the extent any alleged

defaults occurred, those defaults have been cured and cannot be used as a valid basis to foreclose

on the Property.  *Id.* at 16-17.

## III.   THE BALANCE OF INJURIES FAVORS THE DEVELOPER RE1.

The Defendants do not address the issue of balance of injuries to the Developer RE1.  For

the reasons stated in the Motion, this factor favors Developer RE1 as well.  *See* Mot. at 16.

---

[1]    The cases by Defendants in this portion of their opposition are wholly inapposite and do
not mention bankruptcy.  *See, Bill Barret Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336
(D.C. 2009) (pertaining to oxygen contamination caused by exploratory drilling); *District of
Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n.4 (D.C. 1993) (pertaining to the issuance of a
TRO for a zoning permit where the United States Secret Service determined a planned zoning
application had not adequately proposed measures to address the protection of the Vice President's
home); *Dist. of Columbia v. N. Washington Neighbors, Ins.*, 367 A.2d 143, 144 (D.C. 1976) ("The
basic issue in this case is whether the District has the authority to require individual citizens to bear
the cost of repair of the piped connecting their individual water systems to the District's water mains
when they break or whether the District itself must bear that cost").

IV.    THE LAW ABHORS A FORFEITURE.

      The Defendants argue that allowing a debtor under a loan to obtain injunctive relief to

protect its investment with result in a "slippery slope." First, Defendants provide no authority

for this proposition. Second, such relief is plainly available. *See, e.g.*, *Peterson*, 1994 U.S. Dist.

LEXIS 10309 at *4. Additionally, the Defendants rely again, without citation to relevant

authority, on their proposition that filing for bankruptcy represents an adequate remedy at law.

Opp'n at 5-6. For the reasons cited *supra*, Sec. I, this argument is without support. Moreover,

the Defendants' argument that Developer RE1 has "nothing to lose" is contrary to common

sense. Developer RE1 has invested extensive resources undertaking improvements to the

property and stands to lose its entire investment. Compl. § 109.

V.    DEFENDANTS HAVE NOT ARTICULATED A SUFFICIENT BASIS FOR THEIR
      BOND COMPUTATION

      The Defendants state, without support that "it would be accordingly appropriate to set a

bond herein at $870,890.00 - being one year of interest that will accrue while an injunction

pends." Opp'n at 6-7. First, this argument overlooks the permissive language of Rule 65(c),

which states: "The court may issue a preliminary injunction or a temporary restraining order

only if the movant gives security *in an amount that the court considers proper* to pay the costs

and damages sustained by any party found to have been wrongfully enjoined or restrained."

D.C. Super. Ct. R. Civ. P. 65(c) (italic emphasis added); *L'Enfant Plaza Properties, Inc. v.*

*Fitness Systems, Inc.*, 354 A.2d 233, 236-37 (D.C. 1976) ("Whether this discretion enables a

judge to dispense with the requirement of a security is an unsettled question . . . . However, if in

a rare case a trial court in the exercise of its discretion wishes to dispense with the security

requirement, it is imperative that it state its reasons for so doing."). Second, this amount is

arbitrary as it appears to set the bond at interest assessed against the full indebtedness claimed by

4862-8483-1308.v1

487

the Defendants, including default penalties, rather than any payment against principal.  Opp'n at

7-8.  Third, the bond requested by the Defendants also appears to be set so high as to make it

impossible for Developer RE1 to pay it.  Fourth, the current value of the Property (approximately

$4,772,000) exceeds the current alleged indebtedness ($4,139,852.46) by more than $632,000, so

the Defendants already have adequate protection.  For these reasons, the Court should exercise

its discretion to not require that any bond be posted.  Alternatively, as Developer RE1 requested

in its Motion, a separate hearing should be set to determine whether a bond is appropriate and, if

so, what the appropriate bond amount would be.

## VI.   CONCLUSION

For the foregoing reasons, the reasons in the Motion, and any reason that may be

articulated at any hearing on the Motion, Developer RE1 requests that its Motion for a

Temporary Restraining Order be granted and that no bond should be required.

> Respectfully submitted,
>
> GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 24, 2023

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

5

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of January, 2023, a true and correct copy of the

foregoing was served using eFileDC and a notice of service should be sent electronically by

eFileDC to all counsel or record in this case.

/s/ James D. Sadowski
James D. Sadowski

4862-8483-1308.v1

eFiled
01/26/2023 1:52:02 PM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:05:28    Desc
Exhibit B - All Pleadings and Proceedings (Part II) All Docket Entries    Page 420 of 476

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| v. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

## MOTION TO DISMISS FIRST AMENDED COMPLAINT

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(6), and move to dismiss the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof state as follows:

### I.    Introduction

The Plaintiff failed to timely make payments under a promissory note. The Plaintiff also breached various covenants under a deed of trust by not paying monies due and owing to the Washington, DC water and sewer authority ("DC Water") and thereby permitting a senior lien to accrue on encumbered property. The Plaintiff again breached various covenants by not timely paying taxes due and owing on the same property. Yet the Plaintiff – despite tacitly admitting each of these breaches in its Complaint – suggests that DPCL and WCP have done tortious harm by observing the subject defaults and, further, now seeks a permanent injunction prohibiting the Defendants from enforcing any remedies whatsoever.

1

490

The Complaint accordingly merits dismissal for various reasons. First, the Plaintiff patently fails to state a claim for which relief may be granted; the pleading acknowledges the Plaintiff's own breaches yet suggests the plain language of governing loan documents should be cast aside so as to prohibit the Defendants from enforcing those loan documents. Second, the Complaint fails to allege any damages; the Complaint does not allege any foreclosure to have been noticed, advertised or otherwise afoot – the Plaintiff just does not want to have to repay the monies it borrowed. Third, the Complaint violates the economic loss doctrine, by seeking to collect tort-based damages in connection with the breakdown of a purely contractual relationship. Fourth, the lone cause of action alleged against Mr. Drazin – who is sued solely by virtue of being an attorney representing the other Defendants – is for "Permanent Injunctive Relief," which is a remedy but not a cognizable cause of action. Fifth, the claim for injunctive relief fails because the complained-of harm (foreclosure) remains purely hypothetical in nature, with the Complaint not alleging any such proceeding to have been noticed, much less scheduled. Sixth, the injunctive claim also fails because the Plaintiff has two adequate remedies at law, inasmuch as it can either (i) repay the monies due and owing to DPCL and WCP; or (ii) utilize the legal provisions of Title 11 of the United States Code (the "Bankruptcy Code") to stay any foreclosure, should one ever be noticed. And, seventh, the declaratory relief claim fails as a matter of law because the at-issue note and deed of trust are neither procedurally nor substantively unconscionable and the Complaint does not allege facts that would give rise to such a finding.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Complaint be dismissed.

## II.     Standard

As noted by the District of Columbia Court of Appeals – in its embrace of the federal

pleading standard clarified by the Supreme Court of the United States – a pleading must contain

more than merely conclusory, threadbare allegations to survive the scrutiny of a motion to dismiss:

> [T]he pleading standard Rule 8 announces does not require "detailed factual
> allegations," but it demands more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation. ... To survive a motion to dismiss, a complaint must contain
> sufficient factual matter, accepted as true, to "state a claim to relief that is plausible
> on its face." ... A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the defendant is
> liable for the misconduct alleged. The plausibility standard is not akin to a
> "probability requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully. ... Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"

*Potomac Dev. Corp. v. Dist. of Columbia*, 28 A.3d 531, 544 (D.C. 2011) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 665 (2009)).

## III.     Factual Allegations

Taking the Plaintiff's various allegations as true for the expressly limited purpose of this

motion,[1] the Complaint makes the following core contentions:

1.     On December 23, 2021, the Plaintiff borrowed $3,579,000.00 from WCP.

Complaint at ¶ 17.

2.     On the same date, the Plaintiff borrowed an additional $524,000.00 from WCP. *Id.*

at ¶ 23.

---

[1] *See, e.g., Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 137 (D.C. 2006) ("In deciding
a motion to dismiss, the court accepts as true all allegations in the Complaint and views them in a
light most favorable to the non-moving party.") (quoting *Jordan Keys & Jessamy, LLP v. St. Paul
Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C. 2005) (citing *Owens v. Tiber Island Condo. Ass'n*,
373 A.2d 890 (D.C. 1977))).

3

3.      Both obligations were memorialized in promissory notes and secured by liens against the real property commonly known as 5501 1st Street, NW, Washington, D.C. (the "Property"). *Id.* at ¶¶ 9, 14, 20.

4.      While the Plaintiff does not affirmatively acknowledge its failure to make timely payments on the notes in the Complaint, the pleading is notably bereft of any allegation that timely payments were made. *Id.*, *passim*.

5.      Both promissory notes matured on December 23, 2022. *Id.* at ¶ 27.

6.      Both deeds of trust require the Plaintiff to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

First Deed of Trust, Complaint at Exhibit A ("Ex. A"), § 4.2; Second Deed of Trust, Complaint at Exhibit C ("Ex. C"), § 4.2. *See also*, *Id.* at § 1.0(d) (defining "Impositions" to include "real estate taxes" and "water and sewer rents and charges," among other obligations).

7.      The deeds of trust cannot be changed, nor can their provisions be waived, except through a signed writing. Complaint, Ex. A at § 11.4; Complaint, Ex. C at § 11.4.

8.      The Plaintiff failed to pay its water and sewer bills, causing a $44,857.93 lien to be placed upon the Property (with the subject lien being superior to that of WCP and DPCL). Complaint at ¶ 81(a).

9.      The Plaintiff also failed to timely pay more than $16,700.00 in taxes on the Property for the second half of 2022. *Id.* at ¶ 81(b), 91.

4

10.     Neither of the deeds of trust require written notice of a default, nor of acceleration upon default, being commercial loan instruments governed by District of Columbia law. Complaint at Ex. A, *passim*; Commercial Deed of Trust Note, Complaint at Exhibit B ("Ex. B"), *passim*; Complaint at Ex. C, *passim*; Commercial Deed of Trust Note, Complaint at Exhibit D ("Ex. D"), *passim*.

11.     On or about December 8, 2022, WCP and DPCL declared both loans to be in default by virtue of the foregoing breaches. *Id.* at ¶ 59.

12.     Even if WCP had not declared the loans to be in default on December 8, 2022, both would have matured fully just over two weeks later, on December 23, 2022 (*Id.* at ¶ 27), and nowhere does the Plaintiff allege the obligations to have been paid on or before that date.

13.     While not expressly alleged in the Complaint, the promissory notes do contain provisions for late fees and other monies to come due upon a default and acceleration. Complaint at Ex. B, § 5; Complaint at Ex. D, § 5.

To be sure, the Complaint is rife with other allegations – one entire section is titled "Money is the Root of All Evil" (*Id.* at p. 12), and the Plaintiff is not shy to accuse the Defendants of being "spite[ful]," "evil," improperly motivated, and "greed[y]." *Id.* at ¶ 75. But neither the relevance nor pertinence of these allegations is immediately apparent, with allegations of money being the root of all evil striking as particularly inane in the context of a suit brought by a party that admits to having borrowed $4 million without repaying the funds when the notes came due.

**IV.     Argument: The Complaint Merits Dismissal**

      **a.  The Notes and Deeds of Trust Appended to the Complaint Defeat the Plaintiff's Claims**

Notwithstanding a broad swath of colorful language, the Complaint ultimately alleges that (i) the Plaintiff breached promissory notes and deeds of trust; (ii) WCP and DPCL declared defaults

5

of the loan documents following these breaches; and (iii) the Plaintiff now wishes to be free of the default provisions (and, indeed, ordinary repayment provisions) to which it agreed. These allegations are not the fodder of a cognizable cause of action, much less four; these allegations are merely the altogether common laments of a borrower that ran afoul of its promises and finds itself wishing to be rid of its monetary obligations.

As noted *infra*, the Plaintiff never actually alleges any cognizable damages, much of the relief sought herein violates the economic loss rule, and the Complaint comes nowhere close to asserting allegations that would support a finding of unconscionability. But before addressing these issues with the Plaintiff's elected causes of action, some attention is properly addressed to the macroscopic problems that plague the Complaint: what the Plaintiff complains of is nothing more than WCP and DPCL honoring their obligations under a series of contracts and then declaring defaults when the Plaintiff failed to honor its obligations under the same documents.

Under governing law, a contract "must be construed within its four corners." *Moore v. Jones*, 542 A.2d 1253, 1254 (D.C. 1988) (citing *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 235–237 (1975); *Baker v. District of Columbia*, 494 A.2d 1299, 1302 (D.C. 1985); *Dart Drug Corp. v. Schering Corp.*, 320 F.2d 745, 749 (D.C. Cir. 1963)).

Here, the Plaintiff makes much hullabaloo about the timing of when it was sent a default notice. But the promissory notes and deeds of trust appended to the Complaint are conspicuously absent of any provision the Plaintiff be given notice of a default for late payments, much less an opportunity to cure a default correlative to late payments. These are commercial agreements, not residential mortgages, and District of Columbia law is notably without any requirement that notice and a cure opportunity be given to a commercial borrower.

6

Vis a vis the three separate areas of default, each is appreciably material in nature and falls well within the ambit of default events contemplated by the notes and deeds of trust. The Plaintiff's failure to make timely payments is a direct breach of Section 5(a) of the promissory notes. As observed above, the Plaintiff's failure to allege the making of timely payments is quite telling, as such is an allegation the Plaintiff cannot make in good faith.

Equally, however, the defaults openly acknowledged by the Plaintiff give rise to the same contractually-bargained events and remedies. The Plaintiff's failure to timely pay real estate taxes is a breach of Section 4.2 of both deeds of trust, with taxes being an "Imposition" expressly defined by Section 1.0(d) of both deeds of trust. The same goes for the Plaintiff's failure to timely pay water and sewer charges, with such being a default under Section 4.2 of the deeds of trust and being an expressly defined "Imposition" in section 1.0(d) of both deeds of trust.

Real estate taxes assessed against the Property for the second-half of 2022 were due and payable on September 15, 2022. *See* D.C. Code § 47-811(b) ("Real property taxes shall be due and payable semiannually in 2 equal installments, the first installment to be paid on or before March 31st, and the second installment to be paid on or before September 15th . . . ."). The failure to pay is an immediate default and gives rise to a lien upon the assessed real estate. *See* D.C. Code § 47-1331(a) ("A tax shall automatically become a lien on the real property on the date the tax was due and unpaid . . . ."). That lien enjoys superior priority to all other liens, including pre-existing deeds of trust. *See* D.C. Code § 47-1331(b) ("The lien for a tax shall be a prior and preferred claim over all other liens and shall be perpetual.").

In light of the resulting lien, the Plaintiff was also in manifest breach of Section 5.1 of both deeds of trust, which provides, *inter alia*:

> Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any … lien … [or] encumbrance … with respect to

7

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary…

Ex. A at § 5.1; Ex. B at § 5.1.

A similar lien arises on account of the monies owed to DC Water. *See* D.C. Code § 34-2407.02(a) (providing that a certificate of delinquency for unpaid water and sewer charges "shall constitute a continuing lien against the real property"); D.C. Code § 34-2407.02(b) (providing "A lien for water and sanitary sewer charges shall have priority over any other lien, except a lien for District taxes"). And that lien does, too, constitute a breach of both Section 4.2 and Section 5.1 of each deed of trust.

Stated otherwise, the Plaintiff has breached its obligations under the promissory notes by not timely making payments, and has also breached its obligations under the deeds of trust by (i) not timely paying real estate taxes; (ii) not timely paying DC Water obligations; and (iii) allowing liens to encumber the Property on account of these unpaid obligations. Per the Complaint's own allegations, it was not until *after* this occurred that WCP and DPCL declared a default. Yet the Plaintiff now suggests it ought not be construed as being in default and, instead, that somehow WCP and DPCL have done wrong by endeavoring to enforce the bargained-for terms of the loans they extended to the Plaintiff.

In short, this is not a cogent narrative. The legal flaws with the Plaintiff's various claims are discussed in greater detail below, but the whole Complaint necessarily suffers by virtue of its allegations not actually amounting to anything more than "the Plaintiff borrowed money, breached its obligations under the loan documents, and was held in default on account of the breach." No matter how many names the Defendants are called in the pleading, nothing about that narrative invites legal redress, much less redress through the drastic remedies petitioned for in the Complaint.

8

### b. The Plaintiff Has Not Alleged Damages

A fundamental issue encompasses the whole of the Complaint: while the Plaintiff does an ample job affixing pejorative labels to the Defendants and accusing commercial lenders of being greedy, the Plaintiff never actually alleges any cognizable form of damages. As of the filing of the Complaint (and, indeed, as of present), the Plaintiff has both (i) borrowed more than $4 million; and (ii) retained the property it pledged as collateral for those loans. Aside from modest interest and monies paid for property taxes, the Complaint does not actually allege the Plaintiff to have lost any funds or any property. The Plaintiff appears to be currently both having its cake and eating it too; it is thusly exceedingly difficult to surmise just what form of damages can be found in the operative pleading.

As a starting point, each of the two monetary causes of action set forth in the Complaint require an elemental showing of damages. *See, e.g., NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 900 (D.C. 2008) ("We have held that to establish a prima facie case of tortious interference with contractual or other business relationships in the District of Columbia, a plaintiff must prove four elements: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages."); *Window Specialists, Inc. v. Forney Enterprises, Inc.*, 106 F. Supp. 3d 64, 89 (D.D.C. 2015) ("Under District of Columbia law, every contract contains within it an implied covenant of both parties to act in good faith and damages may be recovered for its breach as part of a contract action.") (quoting *Choharis v. State Farm Fire & Cas. Co.*, 961 A.3d 1080, 1087 (D.C. 2008)).

Here, the Plaintiff only alleges damages in the sort of threadbare and conclusory manner shunned by *Iqbal* and *Twombly*, theorizing "Developer RE1 has been damaged by the Defendants'

tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped." Complaint at ¶ 119. The claim for breach of the implied covenant of good faith and fair dealing, while expressly incorporating previous allegations, does not even contain a stand-alone allegation of damages.

To be sure, this is not merely an issue of damages being excluded from the count-specific allegations. There are no damages to be discerned from the face of the Complaint. The Plaintiff often bemoans its need to refinance the at-issue debt facilities, but nowhere is it alleged any of the Defendants have done anything to stop the Plaintiff from refinancing. To the contrary, if the Plaintiff can refinance the at-issue monetary obligations, WCP and DPCL would love nothing more than to be paid off and regain their capital.

Equally, while the Complaint seems to imply the Plaintiff is deeply concerned about the Property being foreclosed, nowhere is it alleged WCP or DPCL have actually commenced a foreclosure proceeding, much less scheduled a sale or run newspaper advertisements. The Plaintiff remains in full helm of the Property; the Defendants are not so much as alleged to have entered the premises, commenced endeavoring to foreclose on their collateral, or done anything more than send default notices. And there is surely no cannon of law whereby the receipt of a commercial foreclosure notice can, unto itself, constitute the suffering of redressable damages.

c. **The Tort Claims are Barred by the Economic Loss Rule**

The Plaintiff's claims for tortious interference and breach of the implied covenant of good faith and fair dealing are also non-colorable pursuant to the District of Columbia's economic loss rule. The Plaintiff acknowledges the subject relationships are governed by promissory notes and deeds of trust, but nonetheless endeavors to seek relief in tort for putative wrongs. One cannot, as

a matter of law, recover in tort for purely economic damages, especially where a relationship is contractual in nature. And Counts I and II are thusly meritorious of dismissal.

As noted by the District of Columbia Court of Appeals, "'Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort.'" *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014) (quoting *Apollo Group, Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995)). Specifically, "as a matter of longstanding policy in courts around the country, '[w]here pure economic loss is at issue[,] not connected with any injury to one's body or property, ... the reach of legal liability is quite limited.'" *Aguilar*, 98 A. 3d at 983 (quoting *In re Exxon Valdez*, 1994 WL 182856, at *8 (D. Alaska 1994) aff'd, 104 F.3d 1196 (9th Cir. 1997); citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (1927)).

This rationale has been tidily expounded upon by the United States District Court for the District of Columbia:

> Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." The D.C. Court of Appeals adopted the economic loss doctrine in Aguilar, observing that it has been a "longstanding policy in courts around the country" that where "pure economic loss is at issue, not connected with any injury to one's body or property, the reach of legal liability is quite limited."

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D. D.C. 2018) (quoting *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 982-983 (D.C. 2014) (quoting *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995))).

As observed by the *Arguilar* Court, this doctrine is not unique to the District of Columbia; in fact, it is the same rule relied upon by a majority of states. *Jefferson v. Collins*, 210 F. Supp. 3d 75, 85 (D. D.C. 2016) ("In *Aguilar*, the District of Columbia Court of Appeal joined a majority of states that have adopted the economic loss rule"). And the economic loss rule has long been held

11

500

to apply to cases centered upon the ownership of real estate. *See, e.g.*, *Singer v. Bulk Petroleum Corp.*, 9 F. Supp. 2d 916, 921 (N.D. Ill. 1998) ("The economic loss doctrine applies to cases which are predicated on real estate transactions.") (citing *NBD Bank v. Krueger Ringier, Inc.*, 686 N.E.2d 704, 708 (Ill. App. 1997)); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 1996 WL 288279 (E.D. Wis. 1996) (applying the economic loss doctrine to "a real estate transaction involving allegedly contaminated property"); *Reighard v. Yates*, 285 P. 3d 1168, 1174 (Utah 2012) ("The economic loss rule prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute. Thus, we hold that under the economic loss rule the Reighards may not recover economic damages to their house but may recover damages due to bodily injury."); *Palco Linings, Inc. v. Pavex, Inc.*, 1990 WL 260746 (M.D. Pa. 1990) ("We have previously shown that the economic loss rule extends to real estate and construction projects").

Here, the Plaintiff's claim for tortious interference is one that manifestly sounds in tort – not contract. And the claim for breach of the implied covenant of good faith and fair dealing, because not presented as one for contractual breach (as urged by the *Window Specialists, Inc.* Court), does, too, sound in tort.[2] *See, e.g.*, *Smith v. Chamber of Commerce of U.S.*, 645 F. Supp. 604, 611 (D.D.C. 1986) (characterizing breach of the implied covenant of good faith and fair dealing as an "alleged tort claim").

To be sure, it appears the Plaintiff has refrained from bringing a claim for breach of contract because the Plaintiff is cognizant that it cannot show where WCP or DPCL have violated any contractual provisions, while it is abundantly clear that the Plaintiff has – on at least three separate

---

[2] The Defendants do not dispute that an allegation of violation of the implied covenant of good faith and fair dealing, if presented in the prism of a claim for breach of contract, would not be subject to the economic loss rule. But such would require the Plaintiff to actually allege specific breaches and damages resulting therefrom, something the Plaintiff has as-yet failed to endeavor to do.

occasions – run afoul of its obligations under the promissory notes and deeds of trust. Yet District

of Columbia law simply does not condone this tactical approach to litigation; tort claims for purely

pecuniary harm are forbade under the economic loss rule.

### d.  The Lone Claim Against Mr. Drazin Must be Dismissed as to All Defendants

Somewhat inexplicably, the Plaintiff has not only sued WCP, DPCL, and their principal

but, too, their lawyer. The sole claim for relief against Mr. Drazin, however, is not actually a

cognizable claim for relief – it is merely a remedy available in connection with other claims for

relief. And it accordingly cannot be said the Plaintiff has succeeded in stating a viable cause of

action against Mr. Drazin.

Case law has long made clear that one cannot sue solely for injunctive relief but, rather,

may request such relief only in connection with a separate, freestanding cause of action. *See, e.g.*,

*Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015) ("…the

claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy, not a

freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199 (D.D.C.

2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014); *Guttenberg v.

Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*, 2022 WL 1773479,

at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not assert any separate

cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341

(D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 152 (D.D.C.

2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but rather ...a form of

relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174 F.Supp.3d 500, 523–

524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199))).

13

502

Since Mr. Drazin is not a named defendant to any other cause of action, dismissal of this count will necessarily result in his dismissal from the instant proceeding. And even if the Plaintiff were to somehow assert a claim for relief that could be accompanied by a prayer for injunctive relief, there would be no cause to join Mr. Drazin as a defendant. Nothing actionable is alleged of Mr. Drazin, with it appearing the Plaintiff has dragged him into court and made him a defendant herein solely to stop him from taking any legal actions on behalf of the other Defendants. Yet under the rules of this Honorable Court, the attorney of an enjoined party is, too, bound by the injunction, so long as they are given notice of the same. *See* D.C. Super. Ct. R. Civ. P. 65(d)(2)(B).

### e.   The Claim for Injunctive Relief Also Fails on the Merits

Even if, *arguendo*, a claim for injunctive relief was cognizable under District of Columbia law as a standalone cause of action, and even if, *arguendo*, the Plaintiff could sue the Defendants' lawyer (something that wreaks mightily of bad faith gamesmanship), the claim for injunctive relief would still fail for two simple reasons. First, the law is clear that an injunction cannot be granted for a solely theoretical harm. And, second, the Plaintiff has multiple adequate remedies at law.

As a starting point, nowhere amongst the myriad allegations made in the Complaint is any claim that a foreclosure has been scheduled or is otherwise in process or underway. While two of the Defendants do, no doubt, have the right to proceed with the foreclosure process, they are not alleged to have commenced that process (nor have they done so).

This distinction is of appreciable import since, as noted by the United States District Court for the District of Columbia, "No matter the stakes and no matter the cause, courts may not grant the 'extraordinary remedy' of an injunction 'based only on a possibility of irreparable harm.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 2021 WL 2036662 (D.D.C. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008)).

Indeed, the harm the Plaintiff seeks to enjoin is, as of present, wholly hypothetical in nature. There is no foreclosure sale to enjoin, nor even advertisements of a foreclosure sale to stop from hitting the local newspapers. The putative harm is thusly nonjusticiable at this juncture in time or, in the words of the *Winter* and *Standing Rock* Courts, there is "only … a possibility of irreparable harm." And that, unto itself, is *per se* insufficient to justify the entry of injunctive relief.

Second, even if a foreclosure were scheduled, the Plaintiff would have an adequate remedy at law. And, under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.D.C. 2009) ("Accordingly, because the injury BBC asserts is of a monetary nature and because BBC has failed to establish by a clear showing that it has no other adequate remedy, BBC's motion for a preliminary injunction must be denied on this basis as well."); *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

The Plaintiff's most simple remedy is the obvious one: it can repay the monies it borrowed. For all the ballyhoo in the Complaint about the Plaintiff not being able to refinance its debts to WCP and DPCL, the Complaint never actually explains why such is the case, nor does logic invite any discernable answer. To be sure, however, WCP and DPCL will most certainly accept payment of the now-fully-matured (and defaulted) promissory notes; and they will, too, release their liens upon receipt of payment of the underlying indebtedness.

Equally, the Plaintiff, if unable to pay the sums due and owing to WCP and DPCL, has ample legal recourse under the Bankruptcy Code. Even if a foreclosure were scheduled, the Plaintiff could stay such by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### f. The Loan Documents Are Not Unconscionable

Finally, the Plaintiff seeks a declaratory judgment that WCP and DPCL's loan documents are "unconscionable and enforceable [sic] as a matter of public policy." Complaint at p. 22. In so doing, what the Plaintiff really asserts is that any commercial loan document without a cure provision to the subjective liking of a borrower should be invalidated. District of Columbia law does not support this position and, to the contrary, permitting such an elastic expansion of law would only serve to render every commercial contract a non-final, non-binding bare outline of terms that can be later stalled in the judicial process through vague allegations of buyer's remorse.

To succeed on a claim of unconscionability, a party must prove a document is both procedurally *and* substantively unconscionable. *See, e.g., Song fi, Inc. v. Google Inc.*, 72 F. Supp.

16

3d 53, 62 (D.D.C. 2014) ("[u]nder D.C. law, a court can void a contract on the grounds that it is unconscionable if the party seeking to avoid the contract proves that the contract was both procedurally and substantively unconscionable.") (quoting *Fox v. Computer World Servs. Corp.*, 920 F.Supp.2d 90, 97 (D.D.C. 2013)).

In addressing procedural unconscionability, "Whether or not an agreement 'is procedurally unconscionable turns on whether a party 'lacked meaningful choice as to whether to enter the agreement.'"" *Song fi, Inc.*, 72 F. Supp. 3d at 62 (quoting *White v. Four Seasons Hotels & Resorts*, 999 F.Supp.2d 250, 257 (D.D.C. 2013) (quoting F*ox v. Computer World Services Corp.*, 920 F.Supp. 2d at 97)).

Here, while the Plaintiff certainly alleges that it was not permitted to change the terms of the promissory notes or deeds of trusts, the Plaintiff never actually alleges that it was without a meaningful choice as to whether to enter into these agreements. To the contrary, the Complaint contains contradicting allegations about whether the Property was already owned by the Plaintiff and merely being refinanced (Complaint at ¶ 14) or whether the loan was to aid the Plaintiff in acquiring the Property (Complaint at ¶ 13). If made to clarify this inconsistency, it is believed the Plaintiff would allege the odd language is reflective of the Plaintiff having acquired the Property from its owner, Mr. Neguisse, for declared consideration of "ZERO DOLLARS."

Even if the Plaintiff was purchasing the Property from a complete stranger, however, the Complaint does nothing to explain why the Plaintiff was without a meaningful choice as to whether to borrow monies from WCP and DPCL on the indicated terms. Nowhere does the Plaintiff allege that no other lender would do business with the Plaintiff or its principal. Nowhere does the Plaintiff allege some temporal exigency compelled it to immediately buy the Property from its owner, without time to investigate the offers of other loan agents and brokers. And certainly nowhere does

17

506

the Plaintiff allege a proverbial firearm was placed against its head in electing to do business with WCP and DPCL.

This is necessarily the end of the analysis; in the absence of procedural unconscionability, there can be no unconscionability under *Fox* and its progeny. But even if the analysis continued, the Complaint does not make any allegations that would give rise to substantive unconscionability *sub judice*.

As noted by the *Song Fi* Court, "'A contract is substantively unconscionable if the contract terms are unreasonably favorable to one party' such that they are 'so outrageously unfair as to shock the judicial conscience.'" *Song fi, Inc.*, 72 F. Supp. 3d at 62 (quoting *Fox*, 920 F. Supp. 2d at 99).

The contractual provisions with which the Plaintiff takes issue herein are (i) a clause requiring taxes to be paid on the real estate serving as the lenders' collateral; (ii) that clause also being utilized to prohibit the Plaintiff from permitting water liens to accrue on the Property; and (iii) the ability of WCP and DPCL to declare a breach to have occurred when that clause is violated. Also, if the Plaintiff is to receive relief herein, it would need to show that the maturity date of the loan is, too, substantively unconscionable, since there is no dispute but that the loan has now matured in full and yet gone without repayment.

These are not clauses that shock the judicial conscious. The Plaintiff has been free to refinance its debt at any time. The Plaintiff is equally free to consider selling the Property to repay the debt. And the Plaintiff is, of course, free to raise capital through other means. More pointedly, though, these are standard terms in commercial loan agreements; WCP and DPCL have not imposed some exotic term whereby a default occurs if something beyond the Plaintiff's control comes to pass. They have, rather, simply required the Plaintiff to not permit WCP and DPCL's

18

liens to be eroded from above by tax and utility liens, and noted that allowing such to happen –
even if subsequently and belatedly cured after much back-and-forth – constitutes a default.

It is not unreasonable for WCP and DPCL to wish their borrowers to be attentive, especially
inasmuch as the maintenance of collateral is concerned. Here, the Plaintiff has admitted to not
paying water bills for months on end, missing no less than five invoices before WCP and DPCL
flagged the issue. Complaint at ¶ 83. Even if, as claimed, this was because bills went to an errant
address, such still begs the question of what commercial operator does not have a monthly budget
for water bills and does not notice when that budget is going wholly unspent. The same goes for
tax payments (where the Plaintiff does not feign a "wrong address" excuse for its delinquency).

Stated otherwise, it is wholly reasonable for WCP and DPCL to expect their borrowers to
be responsible stewards of the collateral protecting loans. Allowing water bills and taxes to go
unpaid for months on end is the anthesis of responsibility. And the lenders are thusly well justified
including a clause in their loan documents that renders such a material breach.

Critically, though, even upon the occurrence of a material breach, the Property is not
instantly foreclosed or forcibly overrun through self-help. The loan documents simply provide the
Plaintiff must then repay the debt (with the notice of default allegedly being sent scantly two weeks
before the maturity date, in any event). If the loan is not repaid, myriad remedies – from collecting
rents, to seeking appointment of a receiver, to – yes – beginning a legally-prescribed foreclosure
process – become available. But due process attaches to each such remedy, with the Plaintiff having
ample time to refinance the debt, raise capital, sell the asset, or make other arrangements.

What is claimed to be substantively unconscionable here is, in reality, altogether common.
These are commercially reasonable terms in a set of commercial loan documents. So it necessarily

follows that even if some procedural unconscionability were present (and none can be said to arise
from the allegations of this Complaint), there is no accompanying substantive unconscionability.

## V.     Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dismiss the
Complaint with prejudice as to Count III and without prejudice as to all other counts; and (ii) afford
such other and further relief as may be just and proper.


Dated: January 26, 2023                    Respectfully Submitted,

                                           /s/ Maurice B. VerStandig
                                           Maurice B. VerStandig, Esq.
                                           DC Bar #1034066
                                           The VerStandig Law Firm, LLC
                                           9812 Falls Road, #114-160
                                           Potomac, Maryland 20854
                                           Telephone: 301-444-4600
                                           Facsimile: 301-444-4600
                                           Electronic Mail: mac@mbvesq.com
                                           *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic
filing system this 26th day of January 2023, and a notice of filing should be served on all counsel
of record.


                                           /s/ Maurice B. VerStandig
                                           Maurice B. VerStandig, Esq.

509

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] ORDER

Upon consideration of the Motion to Dismiss First Amended Complaint (the "Motion")

filed by the defendants herein, any opposition thereto, the authorities cited therein, and the record

herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of

Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that Count III of the First Amended Complaint be, and hereby is, DISMISSED

WITH PREJUDICE; and it is further

ORDERED, that Counts I, II and IV of the First Amended Complaint be, and hereby are,

DISMSISED without prejudice.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

eFiled
01/31/2023 10:31:47 AM
Superior Court
of the District of Columbia

Case 25-10023-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 09:05:28   Desc
Exhibit B - All Pleadings and Procket Entries (Part II) All Docket Entries   Page 441 of 1216

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

       Plaintiff,

v.

DP Capital, LLC, et al.

       Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**OPPOSITION TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Motion for Temporary Restraining Order (the "Motion," with the plaintiff being known as the "Plaintiff") state as follows:

**I.    Introduction**

The Plaintiff herein seeks to enjoin a foreclosure sale that has not been scheduled, noticed, advertised or otherwise set into motion. In so doing, the Plaintiff overlooks the existence of an adequate remedy at law for the thus-far-hypothetical harm it seeks to avoid and, more pointedly, overlooks that it is seeking judicial intervention into a commercial foreclosure where the Plaintiff itself tacitly acknowledges having defaulted under the governing loan documents. The Plaintiff seems to thusly miss that the gravity of the relief being sought is not, in any way, appropriate for the situation at hand.

To be sure, if real estate holding companies could decry the threat of irreparable harm every time their breach of loan documents begets a mere possibility of foreclosure, this Honorable

1

Court's docket would grind to a screeching halt. The District of Columbia has a longstanding tradition of permitting commercial foreclosures to proceed through non-judicial avenues, and Congress has installed in the Bankruptcy Code specific and specialized provisions meant to both halt pending foreclosures and address the qualms raised by debtors facing such remedies. To disturb that tradition and overlook that more-than-adequate legal remedy would be to fundamentally upend the secured lending industry in the District of Columbia and to send the markets for commercial paper into unfettered chaos. Yet that is precisely what the Plaintiff proposed *sub judice* and, as extrapolated upon *infra*, that is just one of many reasons the Motion merits denial.

## II. Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar.*

*Corp.*, <mark>571 F.3d 1288, 1292</mark> (D.C. Cir. 2009) (citing *CFGC v. England*, <mark>454 F.3d 290, 297</mark> (D.C.

Cir. 2006)).

### III.  Argument: The Motion Merits Rejection

#### a.  The Plaintiff is Not Likely to Succeed on the Merits

Prior to the scheduled hearing in this matter, and in accord with the governing deadline for

filing a responsive paper, the Defendants will be docketing herein a motion to dismiss the

Defendant's First Amended Complaint. For myriad reasons, the operative pleading fails to state a

claim for which relief may be afforded and the Defendants incorporate those arguments, as

extrapolated upon in their forthcoming filing, herein.

While brief in nature, the weight of this argument is significant. As will be shown in a

motion to dismiss, the Plaintiff acknowledges being in default under loan documents yet implores

a subjective standard – for which no precedent exists – be introduced to permit that default deemed

somehow-inconsequential in nature. The Plaintiff also runs roughshod over the economic loss rule;

sues at least one party (Mr. Drazin) for "injunctive relief," which is a remedy but not a cognizable

cause of action; and fails utterly to actually plead facts supporting the elements of the various

causes of action identified in the operative pleading.

To be sure, the Plaintiff does not have any measurable likelihood of succeeding on the

merits of its case herein. And it is accordingly appropriate to deny injunctive relief.

#### b.  The Motion Does Not Demonstrate Irreparable Harm

The crux of the Motion is a contention that the Plaintiff – convinced its breach of a deed of

trust is not sufficiently grave to merit recourse – will suffer irreparable harm if a foreclosure occurs.

In making this argument, however, the Plaintiff misses that (i) no foreclosure is alleged to have

been scheduled; and (ii) the Plaintiff has an adequate remedy at law.

3

As a starting point, nowhere amongst the myriad allegations made in the Motion is any claim that a foreclosure has been scheduled or is otherwise in process or underway. While two of the Defendants do, no doubt, have the right to proceed with the foreclosure process, they are not alleged to have commenced that process (nor have they done so).

This distinction is of appreciable import since, as noted by the United States District Court for the District of Columbia, "No matter the stakes and no matter the cause, courts may not grant the 'extraordinary remedy' of an injunction 'based only on a possibility of irreparable harm.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 2021 WL 2036662 (D.D.C. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

Indeed, the harm the Plaintiff seeks to enjoin is, as of present, wholly hypothetical in nature. There is no foreclosure sale to enjoin, nor even advertisements of a foreclosure sale to stop from hitting the local newspapers. The putative harm to be enjoined is purely hypothetical in nature or, in the words of the *Winter* and *Standing Rock* Courts, there is "only … a possibility of irreparable harm." And that, unto itself, is *per se* insufficient to justify the entry of injunctive relief.

Second, even if a foreclosure were scheduled, the Plaintiff would have an adequate remedy at law. And, under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.D.C. 2009) ("Accordingly, because the injury BBC asserts is of a monetary nature and because BBC has failed to establish by a clear showing that it has no other adequate remedy, BBC's motion for a preliminary injunction must be denied on this basis as well."); *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367

A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I(A). No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, even if a foreclosure were scheduled, the Plaintiff could stay such by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding

5

alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. And to permit otherwise, and afford injunctive relief in a case where (i) there is no foreclosure scheduled; and (ii) the Plaintiff tacitly acknowledges a breach of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity literally without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

## IV.    Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not

receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* was $4,139,852.46, as of December 8, 2022. *See* Motion at Exhibit M. The per diem on that obligation is $2,386.00. *Id.* And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $870,890.00 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large in nature. But so, too, is the injunction the Plaintiff seeks herein. The Plaintiff is not merely asking that a foreclosure be enjoined (despite having not been so much as scheduled); the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies literally in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to

7

517

ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial

peril of the parties against whom they seek relief.

### V.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion;

(ii) alternatively, condition an injunction upon the posting of a bond in the amount of $870,890.00;

and (iii) afford such other and further relief as may be just and proper.

Dated: January 17, 2023                    Respectfully Submitted,

                                            /s/ Maurice B. VerStandig
                                            Maurice B. VerStandig, Esq.
                                            DC Bar #1034066
                                            The VerStandig Law Firm, LLC
                                            9812 Falls Road, #114-160
                                            Potomac, Maryland 20854
                                            Telephone: 301-444-4600
                                            Facsimile: 301-444-4600
                                            Electronic Mail: mac@mbvesq.com
                                            *Counsel for the Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 17th day of January 2023, and a notice of filing should be served on all counsel

of record.

                                            /s/ Maurice B. VerStandig
                                            Maurice B. VerStandig, Esq.