eFiled
02/09/2023 11:36:16 AM
Superior Court
of the District of Columbia

Case 25-10028-ELG    Doc 1-32    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings and Docket Together (Part M)    Page 449 of 1716

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

   *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

   *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## CONSENT MOTION TO EXTEND DEADLINE
## FOR PLAINTIFF TO RESPOND TO THE MOTION TO DISMISS

Plaintiff Developer RE1 LLC ("Developer RE1") and DP Capital, LLC d/b/a Washington

Capital Partners, WCP Fund I, LLC, Daniel Huertas, and Russell Drazin (collectively,

"Defendants") jointly move this Court to extend the deadline for Developer RE1 to respond to

the Motion to Dismiss First Amended Complaint ("Motion to Dismiss"). In support of this

Consent Motion, the parties represent to the Court as follows:

1.  Lead counsel for Developer RE1 is currently facing a family medical emergency.

2.  On January 22, 2023, lead counsel for Developer RE1 tested positive for COVID-

19 and was quarantined in a hotel room out of the country the date the Moton to Dismiss was

filed on January 26, 2023.

3.  Although lead counsel has since returned to the country and has recovered, his

wife tested positive for COVID-19 on or about February 1, 2023.

4.  Developer RE1's lead counsel and his wife are the primary caregivers for lead

counsel's wife's parents, who are in a high risk category as they are eighty-four and eighty-five

year's old, respectively. Both parents have pre-existing medical conditions -- vestibular

4864-9254-5104.v1

imbalance (father), and early onset Alzheimer's (mother) -- that require them to be constantly supervised.

5.      Lead counsel's wife's parents have now tested positive for COVID-19 on February 6 and 7, 2023.  One parent (the mother) is currently hospitalized while the other (the father) is now being cared for by Developer RE1's lead counsel at an extra bedroom in his home.

6.      The medical emergency facing Developer RE1's lead counsel this past week, which is ongoing, has prevented Developer RE1's lead counsel from being able to devote the time needed to respond to the Motion to Dismiss by the deadline of February 9, 2023.

7.      No party will be prejudiced by giving Developer RE1 more time to respond to the Motion to Dismiss.

8.      Good cause exists to extend the deadline for Developer RE1 to respond to the Motion to Dismiss.

9.      The parties request that the Court extend the time for Developer RE1 to respond to the Motion to Dismiss to February 16, 2023.  A proposed consent order is attached.

<div style="margin-left:40%">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Date:  February 9, 2023

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar. #446635)
Alexandria J. Smith (D.C. Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

4864-9254-5104.v1

The Verstandig Law Firm, LLC

Date:  February 9, 2023       /s/ Maurice B. VerStandig

Maurice B. VerStandig (D.C. Bar #1034066)
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone:  (301) 444-4600
Email:  mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a*
*Washington Capital Partners, WCP Fund I,*
*LLC, Daniel Huertas, and Russell Drazin*

### Certificate of Service

I Hereby Certify that on this 9th day of February, 2023, a true and correct copy of the

foregoing Consent Motion was served using eFileDC and a notice of service should be sent

electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski

James D. Sadowski

4864-9254-5104.v1

521

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

　　　　*Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

　　　　*Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event:  Scheduling Conference
03/24/23 – 9:30 a.m.

## ORDER

Upon consideration of the parties' Consent Motion to Extend Deadline for Plaintiff to

Respond to the Motion to Dismiss ("Consent Motion"), it is this _____ day of February, 2023

hereby:

ORDERED, that the Consent Motion is GRANTED; and it is further

ORDERED, that the Plaintiff must file its response to the Motion to Dismiss by February

16, 2023.

_____
Honorable Judge Ebony Scott
Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Maurice B. VerStandig, Esq.

4864-9254-5104.v1

eFiled
02/16/2023 5:16:45 PM
Superior Court
of the District of Columbia

Case 2:25-10002080-ELLG   Doc 1-32   Filed 09/04/25   Entered 09/04/25 10:05:28   Desc
Exhibit B - All Pleadings and Docket Together (Part 1 All) Docket Entries   Page 5 of 2443Page 453 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Scheduling Conference
03/24/23 – 9:30 a.m.

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by and through undersigned

counsel, submits its Opposition to the Defendants' Motion to Dismiss. If the facts pled by

Developer RE1 are accepted as true, as they must be at this stage, Developer RE1 has more than

alleged plausible claims, so the motion should be denied. In support of its Opposition,

Developer RE1 states as follows:

I.    THE FACTS IN THE FIRST AMENDED COMPLAINT

Developer RE1 is a limited liability company that owns real property known as 5501 1st

Street, N.W., Lot 138, Square 3389 (the "Property"). Compl. ¶ 9.[1] Developer RE1 is partially

owned by Mel Negussie. *Id.* ¶ 10. The four defendants in this case are: DP Capital, LLC, a

company that uses the trade name "Washington Capital Partners" ("WCP"); the WCP Fund I,

LLC ("WCP Fund"), a company that lends money in the District and is controlled by WCP;

Daniel Huertas ("Mr. Huertas"), an individual that controls WCP; and Russell Drazin ("Mr.

---

[1]    All "Compl." references are to the First Amended Complaint filed on January 12, 2023.

4877-8748-6289.v1

Drazin"), counsel to the WCP and the WCP Fund and the Trustee under two deeds of trust that he drafted. *Id.* ¶¶ 2-6.

On December 23, 2021, the WCP helped Developer RE1 obtain an acquisition finance loan for the Property, which original loan was later refinanced. *Id.* ¶¶ 13-14. As part of that refinancing, Developer RE1 signed the following documents:

(1)     a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

(2)     a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund;

(3)     a second Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

(4)     a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23 (collectively the "loan documents"). The loan documents were form documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify. *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25. The loan documents provided security for the construction financing loans that Developer RE1 needed to develop the Property. As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29.

By November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with Main Street Bank, and that Developer RE1 expected to close on a refinancing loan in December of 2022. *Id.* ¶ 33. By November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 34. On November 30, 2022, Developer RE1 made a request to WCP for the payoff figures for both loans for the Property, and that same day WCP agreed to provide the requested payoff figures. *Id.* ¶¶ 35-36.

Around December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  *Id.* ¶ 37.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).  *Id.*  On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  *Id.* ¶ 38.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  *Id.*  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.  *Id.*  As of December 8, 2022, there was still no claim made that any default by Developer RE1 existed under any of the loan documents.  *Id.* ¶ 39.

By December 8, 2022, Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments).  *Id.* ¶ 40.  That same day by phone, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out (the "2507 I Street Project").  *Id.* ¶ 41.  Mr. Huertas further stated that unnamed investor "is very wealthy and will make life hard for you", and "has now bought the notes" on the Property and another project financed by WCP, and that WCP is "defaulting the loans."  *Id.*  Mr. Huertas also said:  "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them take care of the "$700,000 shortfall" on that project.  *Id.* ¶ 42.  Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor

3

"would make trouble for you on all of your other projects". *Id.* ¶ 43. Mr. Negussie told Mr.

Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to try to force

Developer RE1 or Mr. Negussie to pay for the debts owed for another, unrelated project, and that

it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or

to any other development project involving Mr. Negussie.

After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street

Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements under the loan documents

"were withdrawn" and that he would place Developer RE1 and the borrower on another,

unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their

loan documents. *Id.* ¶ 45. Mr. Huertas followed through with his threats to "make trouble" for

Mr. Negussie, 423 Kennedy, and Developer RE1 by arranging for an employee at WCP (Leslie

Calderas) to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.*

¶ 58. Each "Notice of Default" was unsigned and failed to include either a description of the

alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.*

¶¶ 60-61. Email is not as a permissible means to send a default notice under the loan documents.

*Id.* ¶¶ 64-65. WCP also sent two Payoff Statements to Developer RE1. The Payoff Statement

for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest"

and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included

a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a

"Default Penalty". *Id.* ¶¶ 66-68.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims. *Id.* ¶ 69. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel. *Id.* Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that Developer RE1 was in "default". *Id.* ¶¶ 70-71. Developer RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real reason why Developer RE1 was improperly placed in default, *i.e.,* because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶¶ 73-74. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 75-77. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 77. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 78.

After Developer RE1 asked WCP to provide for a basis for the "default" claim, Mr. Drazin sent the cover story that Mr. Huertas had asked for. Mr. Drazin claimed that Developer RE1 was in "default" because of: a balance due to DC Water ($44,857.93) that resulted in a lien (the "DC Water Alleged Debt Claim"); the late payment of real estate taxes (the "Property Tax Late Payment Claim"); and that "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default". *Id.* ¶ 82.

5

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water sent its invoices to the wrong address. *Id.* ¶ 83. After learning of the DC Water invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was owed. *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. Developer RE1 is currently waiting for an administrative hearing to be scheduled. *Id.* Under Section 7.6 of the First and Second DOT, Developer RE1 arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86.

The Property Tax Late Payment Claim involves the payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022. *Id.* ¶ 90. Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022. *Id.* ¶ 91. There are no outstanding property taxes owed by Developer RE1, and the late payment of taxes caused no harm whatsoever to the WCP Fund. *Id.* ¶ 92. Developer RE1 and 423 Kennedy are also not affiliates of each other, so the claim that there was a cross-default by an affiliate of Developer under Section 7.9 also has no merit as alleged by Mr. Drazin. *Id.* ¶ 100-04.

All of the "defaults" that have been alleged were all claimed after-the-fact as a pre-text. *Id.* ¶ 87 and 96. The property taxes were paid, and Developer RE1 has no affiliates. *Id.* ¶¶ 100-14. There is no legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶¶ 107-08. The Defendants also

6

528

knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The

Defendants deliberately timed their improper interference with Developer RE1's business

relations to make it almost impossible for Developer RE1 to close on the refinancing loan prior

to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on

the Property.  *Id.* ¶ 111.  If the Defendants follow through on their threat to foreclose on the

Property, Developer RE1 will be irreparably harmed because it could lose its entire investment.

*Id.* ¶ 109.

II.    Legal Argument

    A.    The Legal Standard for A Motion To Dismiss

      A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of

a complaint.  *See Luna v. A.E. Eng'g Servs.*, 938 A.2d 744, 748 (D.C. 2007).  A complaint must,

at a minimum, contain a short and plain statement of the claim showing that the plaintiff is

entitled to relief.  D.C. Super. Ct. R. Civ. P. 8(a)(2).  Such a statement must give the opposing

party fair notice of what the plaintiff's claim is and the grounds upon which it rests.  *Bolton v.*

*Bernabei & Katz, PLLC*, 954 A.2d 953, 963 (D.C. 2008).  In reviewing the complaint, the Court

must accept all allegations as true, and construe all facts and inferences in a light most favorable

to the non-moving party.  *See Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C.

2007).  "Factual allegations must be enough to raise a right to relief above the speculative level."

*Clampitt v. Am Univ.*, 957 A.2d 23, 29 (D.C. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007)).  Thus, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must

provide more than a formulaic recitation of the elements of a cause of action or labels and legal

conclusions couched as fact.  *See Grayson*, 980 A.2d at 1144.  "'Rule 8 . . . does not require

'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

4877-8748-6289.v1

529

harmed-me accusation.'" *Potomac Dev. Corp. v. District of Columbia*, 28 A.3d 531, 543–44

(D.C. 2011) (quoting and adopting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544 (2007)).  In the breach of contract context, to survive a 12(b)(6) motion

to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the

nature of the defendant's breach.  *See Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).

> B.      The Notes and Deed Of Trust Do Not Defeat Developer RE1's Claims.

Defendants misstate Developer RE1's position.  *See* Mot. to Dismiss at 5-6.[2]  Developer

RE1 does not acknowledge that any valid defaults exist to support the "death penalty" remedy of

a foreclosure, but rather that the Defendants asserted "default" claims after-the-fact to

intentionally interfere with a closing and as a pretext to conceal unlawful, predatory lending

conduct.  *See, e.g.*, Mot. for TRO at 12-16.  Further, to the extent any alleged defaults occurred,

those defaults have either been cured, or an appeal was pending, so they cannot be used as a

valid basis to foreclose on the Property.  *Id.* at 16-17.  The foreclosure sale provisions in the

Deeds of Trust are provisions that must be construed against the Defendants.  *See 1901 Wyoming*

*Avenue Cooperative Assoc. v. Lee*, 345 A.2d 456, 463 (1975) (any ambiguities in a contract will

be construed strongly against the drafter).  Section 8.0(a) states in plain terms that a foreclosure

sale is conditioned upon "*the continuance of* any such Event of Default . . .".  Compl. Ex. A and

C (First and Second DOT) at page 13, Section 8.0(a) (italic emphasis added).

In their motion the Defendants further engage in argument over the merits of their

claimed defaults of the loan documents by Developer RE1.  *See* Mot. to Dismiss at 5-8.  This is

---

[2]      The Motion to Dismiss claims that "[n]otwithstanding a broad swath of colorful
language, the Complaint ultimately alleges that (i) the Plaintiff breached promissory notes and deeds
of trust; (ii) WCP and DPCL declared defaults of the loan documents following these breaches; and
(iii) the Plaintiff now wishes to be free of the default provisions . . . to which it agreed.").

not the applicable standard at this stage.  As shown *infra,* Developer RE1 has plainly pled facts

which, if true, state valid causes of action.

      C.    <u>Developer RE1 Has Plausibly Alleged Damages.</u>

Defendants overstate the pleading standard for damages.  *See* Mot. to Dismiss at 9-10.

Pursuant to *Silverberg v. Becker,* 191 A.3d 324 (D.C. 2018):  "[W]hile under some statutory

schemes plaintiffs are required 'to plead with particularity actual damages caused,' under the

*Twombly/Iqbal* standard applicable to most claims, 'the lack of detail in the complaint is not a

basis for dismissing a claim for damages at [an] early stage of the litigation[,] as plaintiffs are

under no obligation to plead damages with particularity.'" *Silverberg,* 191 A.3d at 338-39 (D.C.

2018) (reversing a grant of a dismissal where the trial court reasoned that Plaintiff's claim that

they had been "financially damaged" was "bare and conclusory.").

Developer RE1 has met its pleading burden as to damages.  Developer RE1 has generally

pled damages, and those damages are not required to be itemized with particularity.[3]  Compl. at

20 and 21 (estimating damages at $1 million); *see id* (citing *Democracy Partners v. Project

Veritas Action Fund,* 285 F. Supp. 3d 109, 126 (D.C. 2018); *Alemayehi v. Abere,* 199 F. Supp.

3d 74, 86 (D.D.C. 2016); *NCB Mgmt. Servs., Inc. v. FDIC,* 843 F. Supp. 2d 62, 70 (D.D.C.

2012)).  Developer RE1 has also plausibly alleged that it has been "financially damaged" by the

Defendants' tortious interference.  *See* Compl. ¶ 112 (incorporating by reference the preceding

paragraphs); ¶ 111 (explaining how Defendants made it impossible for Developer RE1 to close

on a refinancing loan); ¶¶ 117-18.  Further, Developer RE1 has pled damages for its breach of

---

        [3]    Developer RE1's damages were not capable of being itemized with particularity at the
time the Complaint was filed because: (a) the new closing date had not yet been established; (b) it
was not known at that time when a new closing date would be scheduled; and (c) it was not known
how long the construction of the Project would be delayed.

the covenant of good faith and fair dealing claim.  *See id.* ¶ 119; ¶ 111; ¶ 125.  Accordingly, the

dismissal of Developer RE1's claims based upon a failure to plead damages is not appropriate.

> D.     The Economic Loss Doctrine Does Not Apply to Intentional Torts

The Defendants also overstate the scope of the economic loss doctrine.  *See* Mot. to

Dismiss at 10-13.  The economic loss doctrine prohibits claims of *negligence* where a claimant

seeks to recover purely economic losses sustained as a result of an interruption in commerce

causes by a third party.  *See Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 204 (D.C. 2017).

The only binding case cited by the Defendants stands for this same proposition.  *Aguilar v. RP*

*MRP Washington Harbour, LLC*, 98 A.3d 979, 982 (D.C. 2014)  ("This means that in

jurisdictions that have adopted the [economic loss] doctrine, claimants are barred from

recovering lost profits or lost wages due to the *negligent* interruption of commerce caused by a

third-party") (emphasis added).  The six, non-binding cases cited by the Defendants also all

involved negligence claims.[4]

Here Developer RE1 has not sued for negligence, but rather for an intentional tort --

tortious interference with business relations.  *See* Compl. ¶¶ 112-18.  Taking Developer RE1's

allegations as true, Developer RE1 has more than sustained its burden to plausibly allege a claim

---

[4]     *See William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 19 (D.D.C. 2018) ("Because the economic loss doctrine bars the College's *negligence* claim, the Court will dismiss Count V."); *Jefferson v. Collins*, 210 F. Supp. 3d 75, 84 (D.D.C. 2016) ("Furthermore, the economic loss doctrine, which has been adopted by the District, bars a plaintiff from recovering for purely economic losses under a theory of negligence."); *Singer v. Bulk Petro. Corp.*, 9 F. Supp. 2d 916, 921-22 (N.D. Ill. 1997) ("[T]hus, [plaintiff's] negligence claim is barred by the economic loss doctrine"); *Metal Processing Co., Inc. v. Amoco Oil Co.*, 946 F. Supp. 828, 832 (E.D. Wis. 1996) ("Under the economic loss doctrine, a commercial purchaser of a product cannot recover from the manufacturer under *negligence or strict liability theories*.") (emphasis added); *Reighard v. Yates*, 285 P.3d 1168, 1176 (Utah, 2012) ("The economic loss rule prevents recovery of economic damages under a theory of *nonintential tort*" when a contract covers the subject matter of the dispute.") (emphasis added); *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1271-72 (M.D. Pa. 1990) (involving claims for negligence and negligent misrepresentation).

4877-8748-6289.v1

for tortious interference with business relations.  Developer RE1 has plausibly alleged:  (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship; and (4) resulting damages. *See, e.g.*, *Whitt v. Am. Prop. Constr., P.C.*, <mark>157 A.3d 196, 202</mark> (D.C. 2017) (listing the elements of a claim for tortious interference with business relations); *see also* Compl. ¶¶ 112-18.

Moreover, Developer RE1's breach of the covenant of good faith and fair dealing cause of action is contractual in nature.  *Compare* Mot. to Dismiss at 12 ("And the claim for breach of the implied covenant of good faith and fair dealing, because not presented as one for contractual breach . . . does, too, sound in tort.") *with* Compl. ¶ 125 ("Through its improper conduct, the WCP and the WCP Fund have breached the implied covenant of good faith and fair dealing *contained in* the First Note, the First DOT, the Second Note, and the Second DOT") (emphasis added); *see, e.g.*, *Wright v. Howard Univ.*, <mark>60 A.3d 749, 754-55</mark> (D.C. 2013) ("Every contract includes an implied covenant of good faith and fair dealing.").  Further, Developer RE1 has plausibly alleged each element of the cause of action.  *See Sundberg v. TTR Realty, LLC*, <mark>109 A.3d 1123, 1133</mark> (D.C. 2015), which states:

> To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either 'bad faith or conduct that is arbitrary or capricious.' . . . If a party 'evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the covenant of good faith and fair dealing.

*See also* Compl. ¶¶ 119-25.  The economic loss rule does not foreclose Developer RE1's claims for intentional interference with business relations and for breach of the covenant of good faith and fair dealing.  Because facts supporting both causes of action have been plausibly alleged by Developer RE1, dismissal is not appropriate.

11

E.    <u>Injunctive Relief Pled as to Mr. Drazin</u>

Developer RE1 agrees that Injunctive Relief is not a standalone cause of action.

However, the Complaint does set forth detailed allegations related to Mr. Drazin's participation

in the improper conduct.  *See, e.g.*, Compl. ¶¶ 90, 95, 105, 106.  Mr. Drazin is also listed as the

Trustee under both the First DOT and the Second DOT.  Compl. Exs. A and C, at page 1 (second

full paragraph).  While the full extent of Mr. Drazin's participation in the improper conduct will

not become known until the discovery phase, the allegations in the Complaint indicate that he

has breached the fiduciary duty that he owes to Developer RE1 as Trustee.  *See S&G Inv., Inc. v.*

*Home Fed. Sav. & Loan Ass'n,* 505 F.2d 370, 377-78 n.21 (D.C. Cir. 1974) (citations omitted)

(noting that trustees owe fiduciary duties to both the noteholder and the borrower).

The Defendants' claim that Mr. Drazin must be dismissed as to the request for injunctive

relief downplays the text of Rule 65, which indicates that Mr. Drazin is a necessary party to any

order imposing injunctive relief.   Rule 65 requires that the Court may only issue a temporary

restraining order only upon notice to the adverse party, and that the temporary restraining order

"binds only the following who receive actual notice of it by personal service or otherwise:  "(A)

the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) *other*

*persons* who are *in active concert or participation with* anyone described in Rule 65(d)(2)(A) or

(B).  D.C. Super. Ct. Civ. R. 65(a)(1) and (2)(A)-C) (emphasis added).  Developer RE1 has

alleged that Mr. Drazin actively participated in misconduct with the other named defendants.

Compl. ¶¶ 70, 81, 95, and 109 (alleging that Mr. Drazin agreed helped come up with a cover

story and participated with other Defendants in alleging pre-textual defaults).  If the Court

determines that Mr. Drazin should be dismissed as to Count IV, Developer RE1 will likely later

<div align="center">12</div>

seek leave to amend its Complaint to add Mr. Drazin as a Defendant to Counts I and II, and/or to add new count for breach of the fiduciary duty that he owed to Developer RE1 as Trustee.

     F.     <u>Developer RE1's Claim For Injunctive Relief Is Sufficiently Pled</u>

Defendants misstate the applicable standard under Rule 12(b)(6). *See* Mot. to Dismiss at 14 (arguing that injunctive relief "Fails on the Merits."). First, Developer RE1 does not need to "prevail on the merits" at the Motion to Dismiss stage, but rather must plausibly allege facts that, if true, would entitle Developer RE1 to relief. Second, the threatened sale of real estate, which is unique, amounts to irreparable harm -- the most important factor in the analysis of whether to grant injunctive relief. *See, e.g., Zirkle v. District of Columbia*, 830 A.2d 1250, 1256 (D.C. 2003) ("The basis of injunctive relief . . . has always been irreparable harm and inadequacy of legal remedies.").[5]

The Defendants' assertion that a foreclosure sale is not imminent does not undermine Developer RE1's request for injunctive relief. In *Bashi*, *supra*, the Court noted that, the harm threatened to the plaintiff was not imminent because he could avoid the loss of his property by exercising his right of redemption under the Michigan Foreclosure Statute, and determined that "[n]onetheless, I consider this factor favors the Plaintiff." 2009 U.S. Dist. LEXIS 96427 at *10-11. Here the Defendants have already threatened to foreclose on the Property. Compl. Ex. K (". . . our legal counsel *will* commence foreclosure proceedings.") (emphasis added).

---

     [5]     *See also Peterson v. D.C. Lottery & Charitable Games Ctrl. Bd.*, 1994 U.S. Dist. LEXIS 10309 at *4 (D.D.C. July 28, 1994); *Bashi v. Wells Fargo Home Mortg, Inc.*, 2009 U.S. Dist. LEXIS 96427 (E.D. Mich. Sept. 22, 2009) ("Plaintiff correctly asserts that irreparable harm may flow to him by the reason the sale of his real estate. . . . Because a piece of real property is unique, however, its loss has been considered irreparable") (internal citations omitted); *cf. Hongkong & Shanghai Bank. Corp. v. Kallingal*, 2005 Guam 13, 25-26 (Guam 2005) (using a fact-specific inquiry to determine that irreparable harm would result from the loss of real estate rights); *see also Mitchell v. Century 21 Rustic Realty*, 223 F. Supp. 2d 418, 431 (E.D.N.Y. 2002) ("Loss of an interest in real property is generally considered irreparable harm. Loss of an interest in real property is not presumed to be irreparable harm however.").

<div align="center">13</div>

Notably, Defendants cite no cases in support of their proposition that a petition for bankruptcy relief amounts to an "adequate legal remedy." The cases by Defendants in this portion of their opposition do not mention bankruptcy. *See, Bill Barret Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 336 (D.C. 2009) (pertaining to oxygen contamination caused by exploratory drilling); *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n.4 (D.C. 1993) (pertaining to the issuance of a TRO for a zoning permit where the United States Secret Service determined a planned zoning application had not adequately proposed measures to address the protection of the Vice President's home); *Dist. of Columbia v. N. Washington Neighbors, Ins.*, 367 A.2d 143, 144 (D.C. 1976) ("The basic issue in this case is whether the District has the authority to require individual citizens to bear the cost of repair of the piped connecting their individual water systems to the District's water mains when they break or whether the District itself must bear that cost"). Accordingly, dismissal is inappropriate.

G.    Developer RE1 Has Plausibly Alleged That the Loan Documents Contain Unconscionable Provisions

The Defendants conflate the standard for succeeding on a claim of unconscionability at trial with the standard at the pleading stage. *See* Mot. to Dismiss at 16 ("To succeed on a claim of unconscionability, a party must prove a document is both procedurally *and* substantively unconscionable.") (emphasis added). But a contract may be found unconscionable either because of the manner in which it was made or because of the substantive terms of the contract or, more frequently, because of a combination of both factors. *See Jeter v. Cash*, 2014 D.C. Super. LEXIS 6, *34-35 (D.C. Super. Ct. April 21, 2014) (citing *Urban Invest., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983)). Here, at a minimum, Developer RE1 has alleged substantive unconscionability. Compl. at 21-22 (pointing out the gross unfairness in the contractual

14

provisions regarding additional interest and penalties that are entirely disproportionate to the harm).

Finally, unconscionability is just one portion of Developer RE1's claim for declaratory relief, which includes several other requests. *See* Compl. at 21-22 (the request for relief in Count III). For example, Developer RE1 seeks a declaratory judgment that the Defendants are trying to improperly collect default "penalties" from Developer RE1 as liquidated damages. In the District, a liquidated damages provision in a contract that is found to be a penalty is unenforceable. *See S. Brooke Purll, Inc. v. Vailes,* 850 A.2d 1135, 1138 (D.C. 2004) (noting the rules for the enforceability of a liquidated damages provision).

III.    <u>CONCLUSION</u>

For the foregoing reasons, and for any reasons that may be advanced at a hearing on the motion, Developer RE1 respectfully requests that the Count deny the Defendants' Motion to Dismiss. A proposed order is attached.

<div style="margin-left:40%">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated: February 16, 2023

<div style="margin-left:40%">

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings
LLC*

</div>

15

<div align="center">

O RAL  H EARING  R EQUESTED

</div>

Developer RE1, LLC requests an oral hearing pursuant to D.C. Super. Ct. Civ. R. 12-I(h).

/s/ James D. Sadowski
James D. Sadowski


<div align="center">

C ERTIFICATE  OF  S ERVICE

</div>

I H EREBY  C ERTIFY that on this 16th day of February, 2023, a true and correct copy of

the foregoing Opposition to Defendants' Motion to Dismiss was served using eFileDC and a

notice of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski


<div align="center">

16

</div>

4877-8748-6289.v1

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

      *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event:  Scheduling Conference
03/24/23 – 9:30 a.m.

## [PROPOSED] ORDER DENYING MOTION TO DISMISS

      Upon consideration of the Defendants' Motion to Dismiss ("Motion"), the Plaintiff's

Opposition thereto, and any reply, it is this _____ day of _____, 2023 hereby:

      ORDERED, that the Motion is DENIED.

_____

Honorable Judge Ebony Scott
Associate Judge

<u>Copies electronically to:</u>

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
*Counsel for Plaintiff*

Maurice B. VerStandig, Esq.
*Counsel for Defendants*

17

4877-8748-6289.v1

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

**To:**  Maurice B. Verstandigm                    **Case Number:**    2022-CAB-005935

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) Remote Initial Scheduling Conference on 03/24/2023 at 9:30 AM in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandig
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

|  |  |
|---|---|
| DEVELOPER RE1 LLC,<br><br>     *Plaintiff*,<br><br>v.<br><br>DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, ET AL.<br><br>     *Defendants*. | 2022-CAB-005935<br>Judge Ebony Scott<br>Next Event:  Scheduling Conference<br>03/24/23 – 9:30 a.m. |

**CONSENT PRAECIPE**
**WITHDRAWING MOTION FOR TEMPORARY RESTRAINING ORDER**

The Plaintiff, Developer RE1 LLC ("Developer RE1"), without objection from the

Defendants, DP Capital, LLC d/b/a Washington Capital Partners, WCP Fund I, LLC, Daniel

Huertas, and Russell Drazin (collectively, "Defendants"), hereby withdraws, without prejudice,

the Motion for Temporary Restraining Order filed by Developer RE1 on December 23, 2023.


Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:  February 28, 2023

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar. #446635)
Alexandria J. Smith (D.C. Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

THE VERSTANDIG LAW FIRM, LLC

Date: February 28, 2023

/s/ Maurice B. VerStandig
Maurice B. VerStandig (D.C. Bar #1034066)
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone:  (301) 444-4600
Email:  mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a
Washington Capital Partners, WCP Fund I,
LLC, Daniel Huertas, and Russell Drazin*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of February, 2023, a true and correct copy of

the foregoing Consent Praecipe was served using eFileDC and a notice of service should be sent

electronically by eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

2



**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**2022-CAB-005935**

**Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.**

### TRACK II SCHEDULING ORDER

This Order may not be modified except by leave of Court upon a showing of good cause. Stipulations by counsel will not be effective to change any deadlines in the Order without court approval. Failure to comply with this Order and the deadlines set forth herein may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or the assessment of costs and expenses, including attorney's fees, or other sanctions.

A Joint Pretrial Statement is required unless otherwise ordered by the Court.

### Pretrial Deadlines

| | |
|---:|:---|
| Exchange Lists of Fact Witnesses: | 05/28/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 06/04/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 06/27/2023 |
| Discovery Requests: | 07/11/2023 |
| Close of Discovery[1]: | 08/10/2023 |
| Filing Motions[2]: | 09/09/2023 |
| Dispositive Motions Decided: | 10/09/2023 |
| Mediation Date: | 10/24/2023 - 11/23/2023 |
| Pretrial Date[3]: | (To be set upon completion of Mediation) |

Date: 03/29/2023

Ebony M Scott, Associate Judge

---

[1] No motion relating to discovery and no deposition or other discovery may be had after this date, except by leave of court. Notices of deposition must be served not less than 5 days before the date scheduled for the deposition, and no deposition may be noticed to take place after the close of discovery date.

[2] This deadline does not apply (1) to motions relating to discovery, which must be filed by the close of discovery, or (2) to motions in limine, motions to bifurcate, or any other motion respecting the conduct of the trial, which must be filed at least 3 weeks prior to the pretrial conference.

[3] A Joint Pretrial Statement is required unless otherwise ordered by the Court.

544

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | |
| **Plaintiff,** | **Case No.     2022-CAB-005935** |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.***,** | **Next Court Event: Mediation November 16, 2023 at 1:30 p.m.** |
| **Defendants.** | |

## <u>ORDER</u>

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

545

<u>**Copies via Odyssey to**</u>:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

Case 25-10023-ELG   Doc 1-32   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit B - All Pleadings And Pub Docket Entries (Part I) All Docket Entries Page 477 of 1716

eFiled
06/24/2023 11:13:16 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## ANSWER AND AFFIRMATIVE DEFENSES

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses thereto, state as follows:

### Answer

1.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraph 1 of the Complaint.

3.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-4, 7, 9-14, 17-18, 20, 23, 27, 30-31, 35-36, 46-47, 52-53, 64-68, 73, 89-91, 97, 122-125, and 128-129 of the Complaint.

1

547

4.      The allegations of paragraph 58 of the Complaint are generally denied, *except* it is acknowledged that the referenced e-mail was sent and that the copy appended to the Complaint is a true and genuine copy thereof.

5.      The Defendants generally deny that "money is the root of all evil," as alleged on page 12 of the Complaint.

6.      Paragraphs 82, 113, 120, 127 and 133 of the Complaint do not set forth contentions that call for an admission or denial.

7.      Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

8.      Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

**Affirmative Defenses**

1.      The Complaint fails to state a claim for which relief may be granted.

2.      The plain language of the promissory notes and deeds of trust appended to the Complaint control the relationship between the Plaintiff and the Defendants.

3.      The Complaint fails to plead damages in a legally cognizable manner.

4.      The Plaintiff is barred from recovering herein by the economic loss rule.

5.      Injunctive relief is not a stand-alone cause of action in the District of Columbia.

6.     The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.     The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.     The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.     The Plaintiff is barred from recovering herein by the doctrine of first breach.


Dated: June 24, 2023                         Respectfully Submitted,

                                             /s/ Maurice B. VerStandig
                                             Maurice B. VerStandig, Esq.
                                             DC Bar #1034066
                                             The VerStandig Law Firm, LLC
                                             9812 Falls Road, #114-160
                                             Potomac, Maryland 20854
                                             Telephone: 301-444-4600
                                             Facsimile: 301-444-4600
                                             Electronic Mail: mac@mbvesq.com
                                             *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 24th day of June 2023, and a notice of filing should be served on all counsel of

record.

                                             /s/ Maurice B. VerStandig
                                             Maurice B. VerStandig, Esq.

eFiled
07/11/2023 9:02:23 PM
Superior Court
of the District of Columbia

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:26:28    Desc
Exhibit B - All Pleadings And Public Docket Entries (Part I) All Docket Entries    Page 480 of 1216

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

2022-CAB-005935

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event: Close of Discovery
               8/10/2023

## PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to Developer RE1. The Defendants have engaged in an improper scheme to try to extort money from Developer RE1 (and others). The Defendants also deliberately prevented Developer RE1 from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by Developer RE1 on July 25, 2023 -- before Developer RE1 can complete discovery in this case to expose the full extent of their misconduct. The Court should issue a temporary restraining order stopping any foreclosure sale to prevent an injustice.

## I.    DETAILED FACTUAL BACKGROUND

### Developer RE1 and the Property.

Developer RE1 is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Am. Compl.

4878-8731-9407

550

¶ 9.  The sole purpose of Developer RE1 is to own and develop the Property.  *Id.* ¶ 11.

Developer RE1 is partially owned by Mel Negussie.  *Id.* ¶ 10.

<u>The Defendants and Their Roles.</u>

There are four defendants in this case.  DP Capital, LLC ("DP Capital"), is a Virginia

company that uses the trade name "Washington Capital Partners".  *Id.* ¶ 2.  For convenience, this

motion refers to DP Capital, LLC d/b/a Washington Capital Partners as  "WCP".  The WCP

Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the

District.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia.  *Id.* ¶

5.  Mr. Huertas controls WCP, and WCP controls the WCP Fund.  *Id.* ¶¶ 4-5.  Russell Drazin

("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund.  *Id.* ¶ 6.  Mr. Drazin

is also the Trustee under two deeds of trust that he drafted.  *Id.*

<u>The Loan Documents.</u>

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an

acquisition finance loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 13-14.

As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund;

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23.

4878-8731-9407

True copies of the First DOT, the First Note, the Second DOT, and the Second Note are attached

to this motion as Exhibits A, B, C, and D.[1]  These documents are sometimes referred to together

as the "loan documents".  The loan documents were for documents prepared by Mr. Drazin that

Developer RE1 was not allowed to modify.  *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25.  The loan

documents provided security for the construction financing loans that Developer RE1 needed to

develop the Property.

> <u>Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1
> Accedes to His Demands Regarding Another, Unrelated Development.</u>

As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund

under the First and Second Note.  *Id.* ¶ 29.  On November 3, 2022, Mr. Huertas sent an email to

Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by

Developer RE1.  *Id.* ¶ 30.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be

working with you after the maturity of 5505."  *Id.*  A copy of the November 3, 2022 email is

attached as Exhibit E.  On November 15, 2022, Mr. Huertas sent another email to Developer

RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  *Id.* ¶ 31.  A

true copy of the November 15, 2022 email is attached as Exhibit F.

> <u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of
> "Default" Under Any of the Loan Documents.</u>

By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured

alternative financing for the Property with another lender named Main Street Bank, and that

Developer RE1 expected to close on the new refinancing loans in December of 2022.  *Id.*

¶ 33.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

---

[1]    All but three of the Exhibits attached to this Emergency Motion (Exhibit S, T, and U) were also
attached to the Amended Complaint.

4878-8731-9407

As of November 30, 2022, there was no allegation made by any Defendant that any default by

Developer RE1 existed under either the First Note, the Second Note, the First DOT, or the

Second DOT.  *Id.* ¶ 34.

On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff

figures for both loans for the Property.  *Id.* ¶ 35.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.  That same day (November 30, 2022)

Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of

December 23, 2022.  *Id.* ¶ 36.  A copy of the second November 30, 2022 email exchange

between Developer RE1 and WCP is attached as Exhibit I.  On or about December 1, 2022, Mr.

Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would

agree to extend the maturity date for the First Note and the Second Note for six to twelve

months.  *Id.* ¶ 37.  Mr. Huertas replied that the only way an extension of the maturity date would

be granted would be if Developer RE1 paid down the First Note and the Second Note by $1

million to $1.5 million (in principal).  *Id.*  On or about December 6, 2022, Mr. Negussie

contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date

for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid

down the notes by $500,000 to $750,000.  *Id.* ¶ 38.  Mr. Huertas reiterated that, at a minimum,

the notes needed to be paid down by $1 million.  *Id.*  Mr. Negussie then told Mr. Huertas that he

would try to raise that amount ($1 million) from additional investors.  *Id.*  As of December 8,

2022 there was still no claim made that any default by Developer RE1 existed under any of the

loan documents.  *Id.* ¶ 39.

4878-8731-9407

Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve Another
Debt Owed to the WCP for Another, Unrelated Project, "Or Else".

By December 8, 2022, Developer RE1 had made all payments due under the Notes

($332,319.03 in interest payments).  *Id.* ¶ 40; *see also* Exhibit S (payment history and

screenshots from the WCP web site showing interest payments marked "Paid").  That day, Mr.

Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with

how the development of another, unrelated property (located at 2507 I Street, NW) had turned

out.  *Id.* ¶ 41.  For convenience, the unrelated development project will be referred to as the

"2507 I Street Project".  During that call, Mr. Huertas told Mr. Negussie that WCP was

"withdrawing the payoff statements recently issued and that he was defaulting all loans that Mr.

Negussie was associated with at WCP, including Developer RE1."  *Id.* ¶ 42.  Mr. Huertas further

stated that the 2507 I Street Project has "turned out very bad and that the person who lent the

money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed

off' with the quality of the work done".  *Id.*  Mr. Huertas further stated that the Investor Lender

"is very wealthy and will make life hard for you", and "has now bought the notes" on 423

Kennedy and another project financed by WCP, and that WCP is "defaulting the loans."  *Id.*  Mr.

Huertas also said:  "why don't you do the honorable thing and have your investors buy 2507 I St

to make things right" or have them "take care of the $700,000 shortfall on that project."  *Id.*  Mr.

Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000

shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor

"would make trouble for you on all of your other projects".  *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or

to any development projects were improper.  *Id.* ¶ 44.  After Mr. Negussie refused to accede to

Mr. Huertas' threats over the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior

4878-8731-9407

Payoff Statements that were sent "were withdrawn" and that he would place Developer RE1 and

the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423

Kennedy") in default under their loan documents. *Id.* ¶ 45.[2]  The Defendants knew that

Developer RE1 was not involved in the 2507 I Street Project, that there is no legal or other

business relationship between Developer RE1 and either the developer for the 2507 I Street

Project or 423 Kennedy, and that 423 Kennedy was a sole purpose entity involved with a

development project at 5501 1st Street, NW. *Id.* ¶¶ 46-50, and 52-57.  Mr. Huertas provided no

basis for why or how the Defendants could put Developer RE1 in default under the loan

documents. *Id.* ¶ 51.

> Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By
> Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default
> Interest" and By Threatening Developer RE1 With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to

"make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie

Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email.  *Id.*

¶ 58.  A true copy of that email and each "Notice of Default" are attached as Exhibits J, K, and

L.  Each "Notice of Default" was unsigned and failed to include either a description of the

alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A".  *Id.*

¶¶ 60-61.  Email is also not listed as a permissible means to send a default notice.  *Id.* ¶¶ 64-65;

Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18.   With the

December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1.  *Id.* ¶ 66.

A true copy of the two Payoff Statements that were included with that email are attached as

---

[2]    423 Kennedy filed a similar lawsuit against the Defendants in *423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.) (the "*423 Kennedy* Case").

4878-8731-9407

Exhibits M and N.  *Id.* ¶¶ 66-68.  The Payoff Statement for the first loan included a demand that

Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00,

while the Payoff Statement for the second loan included a demand that Developer RE1 pay

$40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".  *Id.*

    <u>Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.</u>

    Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims.  *Id.* ¶ 69.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel.  *Id.*  Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the

decision to declare that Developer RE1 was in "default".  *Id.* ¶¶ 70-71.  Developer RE1 also

believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact

that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real

reason why Developer RE1 was improperly placed in default -- because the Defendants were

angry about the 2507 I Street Project.  *Id.* ¶¶ 71-72.

    The First and Second DOT state that Mr. Drazin, as Trustee, could collect a

"commission" of 2.50% of the "total amount then due", and another "commission" of 5.00% of

the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts

that are claimed to be due.  *Id.* ¶¶ 73-74.  The Defendants knew that by improperly alleging that

Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default

Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the

refinance loan.  *Id.* ¶¶ 75-77.  The Defendants deliberately interfered with the refinancing loan to

prevent Developer RE1 from being able to go to closing.  *Id.* ¶ 77.  The Defendants also sent a

"Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr.

Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project).  *Id.* ¶ 78.  The

<div align="center">7</div>

Defendants also knew that they had no right to demand that someone else either correct, or pay for, any problems at the 2507 I Street Project. *Id.* ¶ 79. The Defendants are trying to inflict damages upon Developer RE1, and their misconduct is a form of extortion. *Id.* ¶ 80.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.</u>

After being asked by counsel for Developer RE1 to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";

- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.";

- Developer RE1 was not entitled to any notice of any default;

- There was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email is attached as Exhibit O (emphasis in original). *Id.* ¶ 81. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim." *Id.* ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water was sending the invoices for the Property to the wrong address. *Id.* ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22,

4878-8731-9407

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). *Id.* Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

claimed was due. *Id.* On September 22, 2022, DC Water stated in an email that "the dispute

deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their

respective due dates." *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or

about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed

Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted

(by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. At

the time the Complaint was filed Developer RE1, was waiting for an administrative hearing to be

scheduled. *Id.* A true copy of the September 22, 2022 email and the Petition for Administrative

Hearing are attached as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably had a right to

either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment

or lien without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86.

The DC Water Alleged Debt Claim was resolved with DC Water and the lien filed by DC Water

was released on June 12, 2023. A copy of the lien release filed by DC Water is attached as

Exhibit T.

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax

Late Payment Claim) involves the delayed payments of property taxes by Developer RE1 on

October 16 and 19, 2022 instead of on September 15, 2022. *Id.* ¶ 90. Developer RE1 paid

property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the

amount of $222.28 on October 19, 2022. *Id.* ¶ 91. True copies of the receipts for the property

tax payments are attached as Exhibit Q and Exhibit R, respectively. There are currently no

<div align="center">9</div>

outstanding property taxes owed by Developer RE1, and the delayed payment of taxes caused no harm whatsoever to the WCP Fund. *Id.* ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text. No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id.* ¶ 94. The DC Water Alleged Debt Claim was resolved, all property taxes have now been paid, and Developer RE1 has no affiliates. *Id.* ¶¶ 100-114. Even though there was no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they initially threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives were angry that the 2507 I Street Project did not turn out the way that they wanted it to, and/or because the Defendants want to force Developer RE1 to pay unenforceable penalties. *Id.* ¶ 96. *See also* Part III, C.(6), *infra.*

<u>Developer RE1's Initial Motion for a Temporary Restraining Order.</u>

Developer RE1 initially filed a motion for a temporary restraining order on December 23 2022 ("First TRO Motion"), but the First TRO Motion was withdrawn by consent after a judge determined in another case involving similar facts that a threat of foreclosure did not rise to the level of imminent harm warranting injunctive relief. *See* Order dated February 7, 2023 in the

4878-8731-9407

*423 Kennedy* case.[3]  The First TRO Motion was also withdrawn due to ongoing settlement negotiations.[4]

> The Harm to Developer RE1 is Now Imminent.

The Defendants' initial threat of foreclosure in December 2022 has now turned into a reality.  On June 23, 2023, an unknown company called "SF NU, LLC"[5] sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached as Exhibit U.  The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:00 p.m.  There was no valid, legal basis under any provision of either the First DOT or the Second DOT that would have permitted the Defendants to foreclose on the Property.  Compl. ¶ 108.  The Defendants knew that the First Note and the Second Note listed a maturity date of December 23, 2022, so they deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they could foreclose on the Property.  *Id.* ¶ 111.  As will be shown in Part IV.A, *infra,* if the Property is sold at the July 25, 2023 foreclosure sale, Developer RE1 will be irreparably harmed.  *Id.* ¶¶ 109-10.

---

[3]     While the finding of a lack of imminent harm in the 423 Kennedy case is not binding on this Court, the Defendants raised "lack of imminent harm" as a defense to the First TRO Motion.  *See* Opp. to First TRO Motion at 3-4, Part III.b.

[4]     Developer RE1 and the Defendants were engaged in settlement discussions since this case was first filed.  Unfortunately, the lengthy settlement discussions reached an impasse last month after Developer RE1's final settlement proposal was rejected.

[5]     A search of the D.C. Department of Licensing and Consumer Protection's website shows that SF NU, LLC is not authorized to do business in the District.  On July 6 and 8, 2023 Developer RE1 served discovery requests on three of the Defendants in this case to try to find out the relationship between SF NU, LLC and the Defendants in this case, and how SF NU, LLU has the right to enforce any of the loan documents.

4878-8731-9407

## II.  PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed its Complaint.  On January 12, 2023, Developer RE1 filed a First Amended Complaint ("Amended Complaint") to correct a few errors in the Complaint.  The Amended Complaint includes claims for tortious interference with business relations (Count I) and breach of the duty of good faith and fair dealing (Count II).  The Amended Complaint also seeks a declaratory judgment as to the meaning and enforceability of certain provisions in two Deeds of Trust (Count III) and injunctive relief (Count IV).  On January 26, 2023, the Defendants filed a motion to dismiss the Amended Complaint, which was opposed by Developer RE1.  No reply to that opposition was filed.  At the initial conference on March 24, 2023, the Court denied the motion to dismiss orally from the bench and issued a Track II Scheduling Order.[6]

Discovery in the case is ongoing and is not complete.  Only one Defendant (DP Capital, LLC) has served written discovery responses to date, and those responses were incomplete. Developer RE1 served additional discovery responses on the other three Defendants on July 6 and 8, 2023.  Responses to those discovery requests are not due until early August.  No depositions have been taken.  The current date for the close of discovery is August 10, 2023. Because the Defendants are now trying to foreclose on the Property, Developer RE1 asks this Court to preserve the status quo by issuing a temporary restraining order that prevents the Defendants from proceeding with the foreclosure sale.  The Property has a current value of $4 million, which exceeds by sixfold the claimed loan balance due at foreclosure ($655,554.78), so a delay of the foreclosure sale will cause no harm to any of the lender Defendants.

---

[6]  The Court memorialized its oral decision denying the Motion to Dismiss in an Order dated April 7, 2023.

4878-8731-9407

## III.  THE LEGAL STANDARD FOR INJUNCTIVE RELIEF

In determining whether to grant injunctive relief, the Court considers four factors:  (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction.  *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995).  The most important inquiry is that concerning irreparable injury.  *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993).  The four injunctive relief factors each weigh in favor of Developer RE1.

## IV.  LEGAL ARGUMENT

### A.  Developer RE1 Will Be Irreparably Harmed if the Property is Sold at a Foreclosure Sale.

The foreclosure sale is scheduled for July 25, 2023.  Without a restraining order, the Property will be sold and Developer RE1 will lose all its interest in the Property and the improvements to the Property (valued at $4 million).  The law considers property to be unique, so Developer RE1's potential loss of the Property is sufficient, without more, to show irreparable harm.  *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").  Since a foreclosure sale is scheduled for July 25, 2023, there is an imminent need for injunctive relief to prevent Developer RE1 from losing its ownership interest in the Property.  *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim that

4878-8731-9407

irreparable injury is "likely" to occur."). The first injunctive relief factor weighs heavily in favor of Developer RE1.

        **B.**    <u>Developer RE1 Is Likely to Succeed on the Merits of Its Claims.</u>

          **(1)**    <u>Developer RE1 is Likely to Succeed on its Intentional Interference with a Business Relationship Claim.</u>

To prevail on a tortious interference with business relations claim, Developer RE1 must establish: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) damages. *See Onyeoziri v. Spivok*, ==44 A.3d 279== (D.C. 2012). Developer RE1 has alleged sufficient facts to how that the Defendants actions amount to a tortious interference with business relations. The conduct alleged to have occurred here shows that the Defendants attempted to extort money from Developer RE1 (and others) by raising pre-textual defaults at a time when Developer RE1 was on the verge of closing on a refinancing loan. By denying the Defendants' motion to dismiss, the Court has already confirmed that the elements of a tortious interference with business relations claim are present here.

          **(2)**    <u>Developer RE1 is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.</u>

In the District, all contracts contain an implied duty of good faith and fair dealing. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022). Developer RE1 has alleged facts showing that WCP and the WCP Fund breached the implied duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default"

<div align="center">14</div>

fees and unenforceable penalties, are textbook examples of bad faith.  Developer RE1 has also

shown that the Defendants are taking improper actions under the loan documents for the purpose

of injuring the rights of Developer RE1 (and others) and to try to deprive Developer RE1 of the

value of the Property.

> (3)    Developer RE1 Is Likely to Prevail on Its Claims that the Defendants'
> Allegations of Default Were Pretextual – and that any of the Alleged
> Defaults Could Not Support a Valid Basis for a Foreclosure Sale.

The facts alleged by Developer RE1 demonstrate that Mr. Huertas declared

Developer RE1 in default for pre-textual reasons.  More importantly, the default claims that were

alleged were either incorrect as a matter of law, or were subsequently cured, so they could not be

used as a basis upon which to invoke the "death penalty" remedy of a foreclosure.  The loan

documents themselves support Developer RE1's position because a foreclosure sale is expressly

conditioned upon the "continuance of" an Event of Default.  *See* Exs. A and C (Deeds of Trust)

at page 13, Section 8.0 (a) ("During *the continuance of* any Event of Default, the Trustee [may

conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies

upon "*the continuance of* any Event of Default") (italic emphasis added).

> (4)    Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate
> of 423 Kennedy (or Any Other Entity).

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of the First

DOT and the Second DOT allow them to declare a default because they claim that Developer

RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned by Mr.

Negussie.  Section 7.9 in each deed of trust states:

4878-8731-9407

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Exs. A and C (Deed of Trust) at pages 11-12 (emphasis added).  Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code § 6809(6).  But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity.  There is no business or other relationship between 423 Kennedy and Developer RE1.  Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.  Developer RE1 does not control 423 Kennedy and vice versa.  Both entities are sole purpose limited liability companies whose businesses are separate.  Cross-default provisions have also been found to be inherently suspect.  *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . .").  The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

> (5)     Developer RE1 is Likely to Prevail on Its Argument that any Alleged Defaults that Were Cured Cannot Be Used as a Basis to Foreclose on the Property.

In the District, "equity abhors forfeitures . . . [and] so indeed does the law."

*Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads*

16

*v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the *Tsintolas Realty* decision

explained by using a sports (basketball) analogy, technical violations of a contract that cause no

harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous
> passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law
> court. Since [the landlord] has suffered no monetary harm from any alleged
> breach [of the settlement agreement], the [tenants are] not liable and there can be
> no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements*

*Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

Just like the landlord in *Tsintolas Realty,* the Defendants here are claiming technical

defaults that have all been cured to justify the forfeiture of property, after the fact, for which they

did not suffer actual damages. As the *Tsintolas Realty* court further elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery
> unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v.*
> *Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of
> monetary loss is *injuria absque dam-no*," *Cagle v. Southern Bell Tel. & Tel. Co.,*
> 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977) *i.e.,* "a wrong
> which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107
> F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

Developer RE1 is likely to prevail on its argument that any technical defaults that caused

no harm cannot serve as a basis for the foreclosure on a Property. *See Allen v. United States,* 603

A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of

consummate importance in judicious adjudication[.]"). Other courts have also refused to allow a

forfeiture based upon an inconsequential breach of a contract. In *Miller v. Cain Partnership,*

*Ltd.,* No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several,

general rules regarding forfeitures, such as: "Every reasonable presumption is against forfeiture

and every intendment or presumption is against the party seeking to enforce the forfeiture",

(citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and

unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be

granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the

same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck,

Inc.,* 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)).[7]  Because equity abhors a forfeiture, especially

when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive

relief factor weighs in Developer RE1's favor.

> (6)  Developer RE1 is Likely to Prevail on Its Argument that the Claimed
> "Default Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye." *District

Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003).  The D.C. Court of Appeals

has generally upheld the enforcement of a liquidated damages provision "unless it is found to be

a penalty". *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982).  And if the agreement

"to pay fixed sums plainly [is] without reasonable relation to any probable damage which may

follow a breach [, the provision] will not be enforced". *Order of AHEPA v. Travel Consultants,

Inc.,* 367 A.2d 119, 126 (D.C. 1976).  Here, the lender Defendants have admitted that part of the

amounts that the lender is trying to force Developer RE1 to pay to avoid a foreclosure sale are, in

fact, a penalty because they have actually described those charges as such.  *See* Ex. M (seeking

payment of a "Default Penalty" of $357,900.00 under the First DOT) and Ex. N (seeking a

---

[7]  *See also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-
42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an
injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations
and when there was substantial performance under the contract).

18

"Default Penalty" of $52,400.00 under the Second DOT).[8]  Given these two admissions,

Developer RE1 is likely to prevail on part of its declaratory judgment claim in Count III, *i.e.,* that

the loan documents contain identical liquidated damage provisions that are unenforceable as a

matter of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis

for a foreclosure sale.

C.      The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor.

        The irreparable harm to Developer RE1 greatly outweighs any potential injury to

the Defendants, who really can prove no injury because, but for their improper conduct,

Developer RE1 would have gone to closing in December of 2022 and repaid the amounts owed

in full.  The Defendants have suffered no identifiable injuries to date, and any harm that the

WCP or the WCP Fund could arguably claim that Developer RE1 has caused them are wounds

that are self-inflicted.  By pre-textually placing Developer RE1 in default, trying to improperly

extort money from Developer RE1 (and others), trying to collect unenforceable penalties, and by

directly interfering with, and delaying indefinitely, Developer RE1's closing on a refinance loan,

the Defendants have effectively shot themselves in the foot.  The third injunctive relief factor

also weighs in favor of Developer RE1.

D.      The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.

        The public interest will be served by stopping a foreclosure when a lender has

engaged in bad faith, predatory loan practices like those present here.  The public interest is also

served by ensuring that debtors who are on a clear path try to repay their debts are rewarded, not

penalized.  The public interest is not served by rewarding wrongdoers.  Here, Developer RE1 had

---

[8]      The "Default Penalty" is ten percent (10%) of the principal loan balance.  The loan documents
also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

4878-8731-9407

paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements

demanding $727,598.77 in "default" penalties.  At best, the defaults alleged by the Defendants

were technical violations of the First and Second DOT that caused no damages.  The public

interest is not served if the Court, using another sports (tennis) analogy, allows "foot faults" to

decide a tennis match, especially in a case involving predatory lending practices.  Allowing the

Defendants to move forward with a foreclosure under these circumstances would harm the public

as it would embolden the Defendants to engage in even more predatory lending practices.  The

fourth and last injunctive relief factor also favors Developer RE1.

## V.   CONCLUSION

For these reasons, and for any reasons that may be advanced at a hearing on this motion,

the Plaintiff, Developer RE1 LLC, requests that this Honorable Court:  (a) schedule an

emergency hearing on this motion; (b) enter the attached proposed order enjoining any

foreclosure sale, and (c) award such other and further relief as the Court may deem just and

proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated:  July 11, 2022          /s/ James D. Sadowski
                               Alexandria J. Smith (D.C. Bar No. 1781067)
                               James D. Sadowski (D.C. Bar No. 446635)
                               801 17th Street, NW, Suite 1000
                               Washington, DC 20006
                               Telephone:  (202) 452-1400
                               Email:  jds@gdllaw.com
                               *Counsel for Plaintiff Developer RE1 LLC*

## REQUEST FOR AN EMERGENCY ORAL HEARING

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to counsel for the Defendants on July 11, 2023. Counsel for Defendants did not consent to this motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 11th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

4878-8731-9407

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

*Plaintiff*,

v.

DPA CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

*Defendants*.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary

Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition

thereto, the facts and arguments presented at the hearing, and a review of the record of this case,

this Court finds that the Plaintiff has met the standards required for the issuance of temporary

injunctive relief.  Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to

foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further

order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU,

LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

1

4878-8731-9407

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

2

Case 25-10200-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings Ad-Hoc Docket Entries (Part I) - All Docket Entries    Page 55 of 2443

# EXHIBIT A

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

575

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                        Page **5** of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

**4.6 Performance of Other Agreements.**

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

**4.7 Further Assurances.**

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

**4.8 Advances.**

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

**4.9 Deposits for Taxes and Related Matters.**

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

**4.10 Indemnity - Hold Harmless.**

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

### 4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

### 4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

### ARTICLE V

### NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

<div align="center">ARTICLE VI</div>

<div align="center">EMINENT DOMAIN – CONDEMNATION</div>

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

583

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

ARTICLE VII

EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

**Page 11 of 25**

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

  If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

  If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

  With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

  Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

    If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

    (a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

    (b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

    The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

**Page 15 of 25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

589

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Case 25-10088-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 09:26:28   Desc
Exhibit B - All Pleadings and Publicly Docketed Entries (Part A) Washington DC   Page 20 of 16   Page 18 of 16

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016                                              Page **19** of **25**

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

594

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie

Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this **24** day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 5.2016

Page **23** of **25**

596

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

597

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

598

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:35:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part I) Page 8 of 2443

# EXHIBIT B

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                           **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.   BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.   **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

600

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.    <u>BORROWER'S RIGHT TO PREPAY</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.    <u>BORROWER'S FAILURE TO PAY AS REQUIRED</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.   If default be made in any payment due under this Note;
    b.   If default be made in the performance of any other covenant contained in this Note;
    c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
    d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.    <u>**OBLIGATIONS OF PERSONS UNDER THIS NOTE**</u>

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    **SUCCESSORS AND ASSIGNS**

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                                Page 6 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

606

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015                                    Page **8** of **9**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Managing Member

_____(SEAL)
By:     Solomone Abebaw Desta
Its:     Member

COUNTY OF _____

STATE OF _____

I hereby certify on this 24 day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

608

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST,** made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

610

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

## ARTICLE I

## DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

### GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Case 25-10308-ELG  Doc 1-2  Filed 09/04/25  Entered 09/04/25 09:35:28  Desc
Exhibit B - All Plenary Ad - Pub Docket Entries (Part 1) All Docket Entries Page 344 of 1716
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016

**Page 6 of 25**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

617

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V</div>

<div align="center">NEGATIVE COVENANTS</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

618

Case 25-10023-ELG Doc 1-2 Filed 09/04/24 Entered 09/04/24 09:26:28 Desc
Exhibit B - All Pleading and Docket Entries (Part 1) Page 849 of 1716
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

Rev 5.2016

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                        Page 12 of 25

621

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<u>ARTICLE VIII</u>

<u>DEFAULT AND FORECLOSURE</u>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

### 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

### 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

### 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

623

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                                   **Page 15 of 25**

624

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to:  **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at:  **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

627

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

628

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

630

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia  Limited Liability
Company

_Mel Negussie_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page **23** of **25**

632

## EXHIBIT A

## LEGAL DESCRIPTION

633

6001 A1 St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

634

# EXHIBIT "A"
## Property Description

**Closing Date:**   **December 23, 2021**

**Borrower(s):**   **Developer RE1 LLC**

**Property Address:**   **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

**Doc #: 2022000482**
**Filed & Recorded**
**01/03/2022 12:42 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**       $150.00

  **SURCHARGE**           $6.50

  **RECORDATION TAX FEES**    $13,100.00

**TOTAL:**               $13,256.50

# EXHIBIT D

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                         **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                    Page 1 of **9**

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.   INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3.   PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

639

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   <u>BORROWER'S RIGHT TO PREPAY</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   <u>BORROWER'S FAILURE TO PAY AS REQUIRED</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;

b. If default be made in the performance of any other covenant contained in this Note;

c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment.  In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Lender may enforce its rights under this Note against each person individually or against all of such persons together.  This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

641

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

9.    **SUCCESSORS AND ASSIGNS**

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

645

3301 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(SEAL)_

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015

Page 9 of 9

646

Case 25-10202-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) All Docket Entries Page 577 of 1716

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time
**From:** mel negussie
**To:** Daniel Huertas
**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone


On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:

HI Daniel,

My apologies for the delayed response.

Yes, we are working and making progress to refinance both projects out of WCP.

Regards,
Mel

---

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time

**From:** mel negussie

**To:** Cara Farley, Leslie Calderas

**CC:** Darralyn Brown

**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)

**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time

**From:** Cara Farley

**To:** mel negussie

**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

> On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Page 1 of 2**

# EXHIBIT J

| **Subject:** | Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| --- | --- |
| **Date:** | Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time |
| **From:** | Leslie Calderas |
| **To:** | mel negussie |
| **CC:** | Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas |
| **Attachments:** | image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf |

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  I  Servicing Manager
Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



      

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

      Re:    **NOTICE OF DEFAULT**

      5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

      I am the Vice President of Finance for Washington Capital Partners.  I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

      This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

      Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

      As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT L



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re: **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners. I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings. Immediate payment is required to avoid foreclosure. Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current. Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity. My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**

# EXHIBIT M





# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | **WCP Servicing LLC** | **Bank Name: United Bank** |
|---|---|---|
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▬▬▬ |
| | **McLean, VA  22102** | **Account Number:** ▬▬▬ |

When sending the wire please reference our loan number, LOAN-006120 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT N




# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | | |
|---|---|---|---|
| **Payable to:** | WCP Servicing LLC | **Bank Name:** United Bank | |
| | 8401 Greensboro Dr Suite 960 | **Routing Number:** ■■■■■■ | |
| | McLean, VA  22102 | **Account Number:** ■■■■■■ | |

When sending the wire please reference our loan number, LOAN-006182 and
borrower DEVELOPER RE1 LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# Exhibit O

---

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

-----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

-----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

-----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

-----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

669

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> ---
>
> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

671

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

| **Subject:** | PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute |
|---|---|
| **Date:** | Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time |
| **From:** | mel negussie |
| **To:** | Administrative.Hearings@dcwater.com |
| **BCC:** | Chapman Paret |
| **Priority:** | High |
| **Attachments:** | 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf |

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell



David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY  |  1385 CANAL STREET, SE  |  WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | | |
|---|---|---|---|---|
| Case Number: | 22-594546 | | | |
| Account Name: | 2002583-9 | | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

**Indicate your relationship to the property: Owner**___ Legal/Rep.___ Tenant___ 3rd Party/Non-Occupant___ Mgt Company___
**Indicate the property occupancy status during the dispute period** Vacant___ Occupied___(Number of Occupants _____)
**Daytime/Best Contact Phone Number:** 202-271-5046 _____ **Email:** _____
mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges.  Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges.  Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because:  We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the time of purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

Signature _____*Mel Negussie*_____    Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

SSL:                  3389- -0138
Amount Paid:    $16,522.89
Submitted Date: 16-Oct-2022

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

**Subject:** Payment request submitted

**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time

**From:** DoNotReply_MyTax@dc.gov

**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

Payment Amount:    $222.28
Payment Date:        19-Oct-2022
Submitted Date:      19-Oct-2022

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:

(202) 759-1946

e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

# EXHIBIT S

Case 25-10030-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit B - All Pleading And Docket Entries (Part II) Docket 154 of 2443   Page 612 of 1716

| Property: | 5501 1st St NW Washington DC 20011-5207 |
|---|---|

### Interest Payments

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| GRAND TOTAL | $ 362,353.69 |
|---|---|

682



[https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem](https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem)



683



https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i





https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym

5505 1st St NW Washington DC 20011-5207
Payment Amount: $24,624.51, Due Date: 04/01/2022                                          Paid ✓



https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy





https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

5505 1st St NW Washington DC 20011-5207
Payment Amount: $5,410.15, Due Date: 06/01/2022                    Paid ⊘

693



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e

5505 1st St Washington DC 20011-5207
Payment Amount: $24,624.51, Due Date: 06/01/2022                     Paid ⊘



https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay





https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4





<https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44>





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcutegpdscyz4wj4m





https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e



# EXHIBIT T



Filed & Recorded
06/12/2023 08:51 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

water is life

Customer Service 202-354-3750

# DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

## DELINQUENT ACCOUNTS SECTION

DC Water and Sewer Authority
    vs.
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 06/12/2023

Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389 Suffix: Lot: 0138

**RE: Document No: 2022090397**
**Date: August 29, 2022**

### RELEASE OF LIEN

This release of lien is filed pursuant to Title 34, Chapter 24, Section 2407.02, of the District of Columbia Code. (2001 ed.). The above referenced lien has been released for the reason listed below. Accordingly, the Recorder of Deeds of the District of Columbia may record this release of lien.

Reason for Release: **PAID IN FULL**

**Recommended By:**

*Denise Page*

Supervisor, Credit & Collections Department
of Customer Service, DC Water & Sewer
Authority

**Approved By:**

Manager, Credit & Collections Department
of Customer Service, DC Water & Sewer
Authority

**Acknowledged By:**

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006

**Recorder of Deeds**
**Government of the District of Columbia**

710

EXHIBIT  U

★ ★ ★

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square 3389    Suffix [        ]    Lot 0138

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: Developer RE1 LLC

See Exhibit A

FROM: SF NU, LLC    PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:00 P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052259

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on January 3 , 20 22 .

Liber: [        ]    Folio [        ]    Instrument No: 2022000482

Maker(s) of the Note secured by the instrument: Developer RE1 LLC

See Exhibit A    See Exhibit A
Phone    Last Known Address

Description of Property: commercial building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 5501 1st Street, NW, Washington, DC 20011

Square: 3389    Lot: 0138    or Parcel No:

Holder of the Note (Name): SF NU, LLC

Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 678,554.78

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 íRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin

Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square | 3389 |    Suffix |    |    Lot | 0138

    I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 | ,20| 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |
Date

_RD_

(Signature of Noteholder or his agent)

I, | Deborah A. Stewart | , a Notary Public in and for the
| District of Columbia |,
DO HEREBY CERTIFY THAT | Russell S. Drazin |
who is personally well known to me as a party(ies) to this Notice of Foreclo-
sure Sale bearing on the | 23rd | day of | June | , 20| 23 |,
personally appeared before me and executed the said Notice of Foreclosure
Sale and acknowledged the same to be | his | act and deed.

    Given under my hand and seal this | 23rd | day of | June | , 20| 23 |.

_Deborah A. Stewart_
Notary Public

My Commission Expires: | 09/30/2025 |
                       mmddyyyy

*[Notary seal: DEBORAH A. STEWART NOTARY PUBLIC MY COMMISSION EXPIRES 9.30.2025 DISTRICT OF COLUMBIA]*

# EXHIBIT A

Borrower, Grantor, Record Owner:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

# Pardo & Drazin, LLC
### Russell S. Drazin, Attorney
#### 4400 Jenifer Street, NW, Suite 2
#### Washington, DC 20015
#### 202-223-7900

### TRUSTEE'S SALE
### OF REAL PROPERTY

5501 1st Street, NW
Washington, DC 20011

Lot 0138 in Square 3389

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 from Developer RE1 LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $524,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:00 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 5501 1st Street, NW, Washington, DC 20011 (Lot 0138 in Square 3389), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000481 from Developer RE1 LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $3,579,000.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $60,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at

the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(if Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, Christina Araujo                              [name], Vice President of Finance [title]

of WCP Fund I LLC, as servicer to SF NU, LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

5501 1st Street, NW, Washington, DC 20011

3. SF NU, LLC                                        is the holder of the mortgage
recorded as Instrument Number 2022000482                    in the District
of Columbia Recorder of Deeds ("Mortgage").

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

SSL:

3389/0138

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this 21st                    day of June         , 20 23
by Christina Araujo                              (name of person)  as
Vice President of Finance                        (type of authority, e.g. officer,
trustee, etc.) of WCP Fund I LLC, as servicer to SF NU, LLC
(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

*(notary seal: MUHAMMAD T BILAL, NOTARY PUBLIC, REG. #7637841, MY COMMISSION EXPIRES JUNE 30, 2023, COMMONWEALTH OF VIRGINIA)*

Doc #: 2023052259
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES          $25.00
  SURCHARGE               $6.50
TOTAL:                    $31.50

eFiled
07/11/2023 10:34:10 AM
Superior Court
of the District of Columbia

Case 2:25-10020-ELG    Doc 1-2    Filed 07/04/24    Entered 07/04/24 19:35:28    Desc

Exhibit B - All Pleadings And Docket Entries (Part II) All Pages 2 to 4 of 844 Page 649 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
               8/10/2023

## PLAINTIFF'S OPPOSED MOTION TO
## EXCEED THE PAGE LIMIT IN AN EMERGENCY MOTION

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, moves this Court to

allow Developer RE1 to exceed the page limit in an Opposed Emergency Motion for a

Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Emergency Motion")

that will soon be filed by Developer RE1.  In support of its Motion, Developer RE1 represents to

the Court that:

     1.     This case primarily involves a dispute concerning improper allegations of defaults

under mortgage loan documents and whether certain provisions of those loan documents include

unenforceable liquidated damages provisions.

     2.     Developer RE1 filed this case because in December of 2022 its lender, the

Defendant WCP Fund I, LLC ("WCP Fund I"), acting through its loan serving agent, Defendant

DP Capital, LLC d/b/a Washington Capital Partners ("WCP"), had threatened to foreclose on the

improved real property owned by Developer RE1 for improper reasons.

3. In Count IV of the First Amended Complaint, Developer RE1 seeks injunctive relief to prevent, among other things, any foreclosure under the loan documents while this case is being litigated. *See* First Am. Compl. at page 23 (subpart "(c)" of the request for relief).

4. The December 2022 threat of foreclosure has now turned into a reality. In late June of 2023, Developer RE1 received a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). A copy of the Foreclosure Notice is attached as Exhibit A.

5. The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:00 p.m. – less than two weeks away. The foreclosure is being requested by an unknown company called "SF NU, LLC".

6. SF NU, LLC is a New Mexico limited liability company that does not appear to have ever filed a certificate of authority to transact business in the District. SF NU, LLC is believed to be a company owned and controlled by one or more of the Defendants. Online research indicates that the phone number listed for SF NU, LLC on the Foreclosure Notice (703-727-5464) is linked to the WCP. That phone number is also the personal phone number of Defendant Daniel Huertas.

7. Developer RE1 will be filing an opposed emergency motion that seeks the issuance of a temporary restraining order to stop the foreclosure sale on July 25, 2023 (the "Emergency Motion").

8. The Emergency Motion contains a detailed factual background to assist the Court with understanding the factual background, the factual and legal basis for the claims, and the provisions of the loan documents that are being challenged. The factual background portion runs about nine pages.

9.      The Emergency Motion also contains a thorough legal argument section that explains why Developer RE1 meets the standard for injunctive relief.

10.     Although the Court already has some knowledge of the factual background and legal claims in this case from reviewing the Defendants' Motion to Dismiss and Developer RE1's opposition to that motion, rather than incorporate all or part of its opposition by reference, Developer RE1 believes that the better practice is to include all of the information needed for the Court to make a decision as to the Emergency Motion in one, comprehensive filing.

11.     The Emergency Motion also includes multiple, important exhibits, some of which have been previously filed.  Those exhibits are included with the Emergency Motion so that the Court does not have to sift through or review any prior pleadings to find any of those important documents.

12.     Given the lengthy factual background, the number of claims in this case, the number of exhibits, and the exigency of the relief requested, the Emergency Motion will exceed fifteen pages by just four pages, excluding the signature page and required certifications.

13.     The Court's January 1, 2023, Supplemental General Order requires leave of court to file any motion or opposition with a legal memorandum exceeding fifteen (15) double-spaced pages in pages in length.

14.     No party will be prejudiced by the relief requested in this Motion.

15.     Good cause exists to allow Developer RE1 to file its Emergency Motion, which should not exceed nineteen pages, excluding the signature page, the required certifications, and the exhibits.

4874-6842-6607

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 11, 2023

/s/ Alexandria J. Smith
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to counsel for the Defendants on July 10, 2023.  Counsel for the Defendants reply email indicated that "I am not sure why the briefs would need to be that long, but I'm happy to discuss", so consent was not obtained.[1]

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Opposed Motion to Exceed Page Limit in an Emergency Filing was served by the Court's electronic filing system this 11th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

---

[1]    Developer RE1 will supplement this consent certification after a meet and confer session is held over several discovery issues with Defendants' counsel.  Developer RE1 notes that the Motion to Dismiss filed by the Defendants on January 26, 2023 was twenty pages in length.

4

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
8/10/2023

## [PROPOSED] ORDER GRANTING PLAINTIFF'S OPPOSED MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Opposed Motion to Exceed Page Limit in an Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant the relief requested in the Motion.

Accordingly, it is this _____ day of _____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty (20) pages, excluding from the page count the signature page, the request for a hearing, the certificate of consent, the certificate of service, and the Exhibits.

SO ORDERED.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

4874-6842-6607

723

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

# EXHIBIT A

★ ★ ★

**Government of the
District of Columbia**

Office of Tax
and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3389 | Suffix | | Lot | 0138

List Name and adress of each owner of the real property encumbered by said
deed of trust, mortgage, or security instrument.)

TO: | Developer RE1 LLC
| See Exhibit A
|
|

FROM: | SF NU, LLC | PHONE: | (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER
SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM
UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE
TO BE HELD ON | July 25 | , 20 | 23 | , AT
THE OFFICE OF | Harvey West Auctioneers, Inc.
| 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015
| 2:00 | P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT
FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM
THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS
NOTICE OF FORECLOSURE SHALL EXPIRE.

**Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052259**

Security Instrument recorded in the land records of the District of Columbia at the
Recorder of Deed on | January 3 | , 20 | 22 |.

Liber: | | Folio: | | Instrument No: | 2022000482

Maker(s) of the Note secured by the instrument: | Developer RE1 LLC
| See Exhibit A | See Exhibit A
Phone                                    Last Known Address

Description
of Property: | commercial building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: | 5501 1st Street, NW, Washington, DC 20011

Square: | 3389 | Lot: | 0138 | or Parcel No:

Holder of the Note (Name): | SF NU, LLC
Phone: | (703) 727-5464 | Address: | 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ | 678,554.78

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ | N/A commercial loan

Name of person to contact to stop foreclosure sale: | Russell S. Drazin
Address: | 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 | Phone: | (202) 223-7900

** as of June 23, 2023

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square  3389    Suffix    Lot  0138

    I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on  June 23  ,20 23 ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

06/23/2023
Date

*RD*

(Signature of Noteholder or his agent)

I,  Deborah A. Stewart , a Notary Public in and for the
District of Columbia ,
DO HEREBY CERTIFY THAT  Russell S. Drazin
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the  23rd  day of  June , 20 23 , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be  his  act and deed.

Given under my hand and seal this  23rd  day of  June , 20 23 .

*Deborah A Stewart*
Notary Public

My Commission Expires:  09/30/2025
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner</u>:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

# Pardo & Drazin, LLC

**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

## TRUSTEE'S SALE
## OF REAL PROPERTY

5501 1st Street, NW
Washington, DC 20011

Lot 0138 in Square 3389

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 from Developer RE1 LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $524,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:00 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 5501 1st Street, NW, Washington, DC 20011 (Lot 0138 in Square 3389), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000481 from Developer RE1 LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $3,579,000.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $60,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at

the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

----------------------------------------------------------------------------------------------

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the**
**District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, Christina Araujo                    [name], Vice President of Finance [title]

of WCP Fund I LLC, as servicer to SF NU, LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

5501 1st Street, NW, Washington, DC 20011

3. SF NU, LLC                                   is the holder of the mortgage

recorded as Instrument Number 2022000482                    in the District
of Columbia Recorder of Deeds ("Mortgage").

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

SSL:

3389/0138

Signature:

Printed Name:  Christina Araujo

Title:  Vice President of Finance

Date:  June 21, 2023

State of  Virginia

County of  Fairfax

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this 21st                          day of June            ,20 23
by Christina Araujo                              (name of person) as
Vice President of Finance                        (type of authority, e.g. officer,
trustee, etc.) of WCP Fund I LLC, as servicer to SF NU, LLC
(name of party on behalf of whom instrument was executed).

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC  20015

Notary Public

My Commission Expires:

MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7537841
MY COMMISSION
EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

Doc #: 2023052259
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES     $25.00
   SURCHARGE      $6.50
TOTAL:     $31.50

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:35:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part I)    Page 663 of 1716

eFiled
07/13/2023 4:05:05 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,
1629 K Street, N.W - Suite 300
Washington, DC  20006

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS,
8401 Greensboro Drive - Suite 960
McLean, VA  22102,

WCP FUND I, LLC
2815 Hartland Road - Suite 200
Falls Church, VA  22043,

                    Case No: _____2023-CAB-004260_____

DANIEL HUERTAS,
909 Chinquapin Road
McLean, VA  22102,

RUSSELL S. DRAZIN
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015,

 and

SF NU, LLC
1455 Research Boulevard - Suite 510
Rockville, MD 20850

    *Defendants.*

## VERIFIED COMPLAINT

    COMES NOW THE PLAINTIFF, 423 Kennedy St Holdings LLC ("423 Kennedy"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC.  This Verified Complaint

4884-5924-1840.v1

("Complaint") includes claims for breach of contract, tortious interference with business

relations, breach of the duty of good faith and fair dealing, and breach of fiduciary duty by a

Trustee.  The Complaint also seeks a declaratory judgment as to the meaning of certain

provisions in two Deeds of Trust, that certain provisions are unenforceable as a matter of law,

that the Trustee has a conflict of interest that prevents him from serving as Trustee, and that

actions taken by the Trustee are invalid and must be set aside or suspended.  The Complaint also

seeks injunctive relief to prevent a foreclosure.  In support of its Complaint, 423 Kennedy avers

as follows:

<h2 style="text-align:center">THE PARTIES</h2>

1.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") is a District of

Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners".  For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund and services its loans.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico

limited liability company that has not filed a certificate of authority to transact business in the

<div style="text-align:center">2</div>

4884-5924-1840.v1

734

District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU will be referred to as the "Lender Defendants".

7.      The fifth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP, the WCP Fund, and SFNU.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

### STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one, if not more, of their clients' construction projects fail.

3

The Ownership of 423 Kennedy, Its Purpose, and the Property.

10.    423 Kennedy is the record owner of real property in the District known as 423

Kennedy Street, N.W., Lot 56, Square 3260 (the "Property").

11.    423 Kennedy is a domestic, sole purpose, limited liability company, and the sole

purpose of 423 Kennedy is to own and develop the Property.

12.    The Defendants all knew that 423 Kennedy was a sole purpose entity whose only

asset was the Property and any the improvements that 423 Kennedy made to the Property.

13.    423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and

the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

14.    The Brighton Group is comprised of forty-one individual investors, many of

whom used their personal retirement savings to invest in the Brighton Group's membership

interest in 423 Kennedy.

15.    On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a

construction finance loan for the Property with the WPC Fund.

16.    Due to unforeseen complications with the soil and water at the Property, 423

Kennedy increased the original loan amount and refinanced the original construction finance

loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will
Provide Construction Draws to Fund the Project

17.    As part of the refinancing, the WCP and the WCP Fund agreed that they would

provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project

progressed.  The WCP and the WCP Fund's agreement to provide construction draws was

memorialized on the HUD 1 Settlement Statement signed at closing.

4

18.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

19.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Loan Documents with the WCP and the WCP Fund</u>

20.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

21.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First DOT before it was signed.

23.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

24.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First Note before it was signed.

4884-5924-1840.v1

26.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

27.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

28.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second DOT before it was signed

29.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower", a copy of which is attached as Exhibit D.

30.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

31.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second Note before it was signed.

32.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

33.     The new, refinanced loans were set to mature on March 31, 2023.

34.     Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

35.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

6

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

36.     Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the Property with another lender.

37.     As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

38.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

<u>The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.</u>

39.     On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

40.     The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

41.     The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

42.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WEP Fund to retire the balances owed under the

4884-5924-1840.v1

First Note and to release the First DOT from the Property.  A true copy of the October 24, 2022 Payoff Statement for the first loan is attached as Exhibit E.

43.     On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second Note listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property.  A true copy of the Payoff Statement for the second loan is attached as Exhibit F.

44.     As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

45.     As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

46.     On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy.  Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy".  A copy of the November 3, 2022 email is attached as Exhibit G.

47.     As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

48.     As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

49.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email is attached as Exhibit H.

4884-5924-1840.v1

50.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

51.     By as early as November 17, 2022, the Defendants each knew that 423 Kennedy had secured alternative financing for the Property with another lender named Main Street Bank, and that 423 Kennedy expected to close on the new refinancing loan with Main Street Bank in December of 2022.

52.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the First Note and to release the First DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan is attached as Exhibit I.

53.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan is attached as Exhibit J.

54.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

55.     WCP sent all the Payoff Statements listed in paragraphs 42, 43, 52, and 53 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

56.     None of the Payoff Statements that are referenced in paragraphs 42, 43, 52, and 53 included any request by any Defendant for the payment of default fees, default interest, or any

9

other amount that was based upon any allegation that there was a "default" by 423 Kennedy

under either the First Note, the Second Note, the First DOT or the Second DOT.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr.
> Huertas Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt
> Owed to the WCP for Another, Unrelated Project, "Or Else".

57.     As of December 8, 2022, 423 Kennedy had made all payments due under the First

Note and the Second Note.  By that date, 423 Kennedy had paid $514,560.80 in interest

payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423

Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

58.     On December 8, 2022, Mr. Huertas told 423 Kennedy during a telephone call with

Mr. Negussie that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

59.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

60.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was

associated with at WCP, including 423 Kennedy." Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done".  Mr. Huertas further stated that the Investor Lender "is very wealthy

and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another

project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why

don't you do the honorable thing and have your investors buy 2507 I St to make things right" or

have them "take care of the $700,000" shortfall on the 2507 I Street Project.

<div align="center">10</div>

61.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

62.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force 423 Kennedy or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

63.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements that were sent to 423 Kennedy were withdrawn and that he would place 423 Kennedy and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1") in default under their loan documents with the WCP Fund.

64.     The Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

65.     The Defendants knew that the sole purpose of Developer RE1 is to develop the property located in the District at 5501 First Street, NW.

66.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

67.     The Defendants knew that 423 Kennedy does not control Developer RE1 and Developer RE1 does not control 423 Kennedy.

11

68.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

69.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put 423 Kennedy in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put 423 Kennedy in "default" under two, unrelated loans because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

70.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

71.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

72.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and 2507 Holdings.

73.     The Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

74.     The Defendants knew that Mr. Negussie does not have a controlling interest in either 423 Kennedy or 2507 Holdings.

75.     The Defendants knew that 423 Kennedy has no interest in the 2507 I Street Project.

76.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By
Improperly Demanding Payment of More than $1.5 Million in "Default Penalties" and
"Default Interest" and By Threatening 423 Kennedy With Foreclosure.</u>

77.     Later that same day (December 8, 2022), Mr. Huertas followed through with his

threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for

Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Mr.

Negussie by email.  A true the "Notice of Default" is attached as Exhibit K.

78.     "Notice of Default" appears to reference either the First Note, the First DOT, the

Second Note, and/or the Second DOT.

79.     The "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but it was not signed by anyone at the WCP.  The WCP web site indicates that the

Vice President of the WCP is Christina Araujo.

80.     The "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to the notice.

81.     The lack of a signature on the "Notice of Default" and the failure by the WCP to

include the referenced exhibit with the "Notice of Default" are indications that the notice was

hastily prepared by either Mr. Huertas or by someone else at the WCP.

82.     The Notice of Default did not contain any legal basis or other explanation for how

or why 423 Kennedy had defaulted under the terms of any of the loan documents.

83.     Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and

the Second DOT states:

> All notices, demands, requests and other communications pursuant to the
> provisions of the Note and this Deed of Trust shall be in writing and shall
> be deemed to have been properly given or served for all purposes when
> presented personally, or one business day after having been sent by a
> nationally recognized overnight delivery service or a local courier service,

13

charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006

(b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

84.    In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

85.    In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two loans, the WCP included two Payoff Statements. A copy of the two Payoff Statement that were included with the email transmitting each "Notice of Default" are attached as Exhibits L and M.

86.    The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

87.    The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

14

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

Mr. Huertas "Lawyers Up" and Asks Defendant Drazin to Come Up with A Cover Story.

88.     After receiving the email with the Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the WCP and the WCP Fund were now claiming that 423 Kennedy was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

89.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that 423 Kennedy was in default of the loan documents when they each knew, in fact, that there were no defaults by 423 Kennedy under any of its loan documents.

90.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default under any of the loan documents and to conceal the real reason why 423 Kennedy was improperly placed in default by the Defendants.

91.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (423 Kennedy) and to the lender under the First DOT and the Second DOT.

92.     As of December 8, 2022, Mr. Drazin knew that that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary

duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

93.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 421 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

94.     The real reason that the Lender Defendants improperly alleged that 423 Kennedy was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

95.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

96.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from 423 Kennedy Street by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

97.     As a result of their evil, improper motive and their greed, the Defendants improperly alleged that 423 Kennedy was in default under the loan documents to try line their own pockets and to cause as much financial and reputational damage as possible to 423 Kennedy, to Mr. Negussie, and to Developer RE1.[1]

---

[1]     Developer RE1 filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See Developer RE1, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al,* 2022-CAB-005935. That case is currently in the discovery phase.

16

98.     The Lender Defendants also caused WCP to issue each the "Notice of Default" to 423 Kennedy for the express purpose of trying to interfere with the refinancing of the loans that they knew that 423 Kennedy had secured with Main Street Bank.

99.     The Lender Defendants also caused WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of trying to prevent 423 Kennedy from being able to go to closing on the refinancing loan with Main Street Bank.

100.    The Lender Defendants also caused the WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of improperly pressuring either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or to SF NU).

101.    The Defendants knew that they had no legal right to demand that 423 Kennedy, Developer RE1, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

102.    The Defendants knew that they had no legal right, or factual basis, to claim that 423 Kennedy was in default of any loan document.

103.    The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon 423 Kennedy and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

104.    Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr. Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022

17

as Instrument No. 2022114185 ("Fine Certificate").  A copy of Mr. Drazin's reply email listing the alleged defaults is attached as Exhibit N.

105.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA").  The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00.  A true copy of the NOI is attached at Exhibit O.

106.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

107.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI.  A copy of the Final Order is attached as Exhibit P.

108.    423 Kennedy noted an appeal of the Final Order on September 12, 2022.  A copy is 423 Kennedy's appeal is attached as Exhibit Q.

109.    Pursuant to Section 7.6 of the First DOT and the Second DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

110.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI.  However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that was sent to it by The Defendant was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI.  A copy of confirmation of the $1,657.34 payment to the District is attached as Exhibit R.

18

111.    December 10, 2022 is less than thirty days after November 17, 2022.

112.    On December 11, 2022, the District of Columbia Office of Administrative

Hearings (OAH) vacated the Final Order.  *See* Exhibit S.

113.    There are no outstanding fines owed by 423 Kennedy to the District.

114.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis

provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal

from, or to discharge (by payment), any lien filed by the District.

115.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by 423 Kennedy was Section 7.9 of the First DOT and the Second DOT.

116.    The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any
> of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

117.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A

cross-default provision in a contract is a provision that allows a "default" under one agreement to

constitute a "default" under another agreement.

118.    In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy,

two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document

4884-5924-1840.v1

751

or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP

Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

119.    The First DOT and the Second DOT do not define the term "affiliate." Under

federal banking law, the term "affiliate" means "any company that controls, is controlled by, or

is under common control with another company." 15 U.S. Code §6809 (6).

120.    Developer RE1 does not control 423 Kennedy and vice versa.

121.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

122.    There is also no common control of Developer RE1 and 423 Kennedy.

123.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

124.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the

Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred

by 423 Kennedy under either the First DOT or the Second DOT, even if Developer RE1 was

actually in "default" of any loan agreement with the WCP Fund.

125.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover

story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that

423 Kennedy was in default of the First DOT and/or the Second DOT.

126.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly

claimed, without any legal right or justification that: "There is no right to cure. There is no right

to deceleration. There is no right to reinstatement. The Loans are in default and are

accelerated." *See* Ex. N (the use of "Loans" appears to be referring to the First Note, the First

DOT, the Second Note, and the Second DOT) (underlined emphasis in original).

20

<u>423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked</u>

127.     On December 8, 2022, the Defendants threatened to foreclose on the Property even though they know that they had no legal right to foreclose on the Property.

128.     The Property has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

129.     The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct.

130.     The Property has a current value of $11.9 million.

131.     There was no valid, legal basis under any provision of either the First DOT or the Second DOT that would have permitted the Defendants to foreclose on the Property.

132.     The Defendants deliberately sabotaged 423 Kennedy's ability to complete construction and its refinancing efforts.  But for the Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

133.     The Defendants also deliberately timed their improper interference with 423 Kennedy's business relations during an approaching holiday period to make it impossible for 423 Kennedy to close on the refinancing loan with Main Street Bank prior to the end of this year, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property.

134.     On June 23, 2023, Mr. Drazin, apparently now acting on behalf of SF NU, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").  A copy of the Foreclosure Notice is attached as Exhibit T.

135. The Foreclosure Notice sets the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

136. If the Defendants follow through on the scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investment.

137. The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to inflict damages on 423 Kennedy and others, and they are intentionally and willfully disregarding 423 Kennedy's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

138. As of July 12, 2023, none of the Defendants have sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

## COUNT I
### BREACH OF CONTRACT
Count I is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

139. Paragraphs 1-138 of the Complaint are incorporated by reference.

140. There was either an express contract or an implied-in-fact contract between 423 Kennedy and the WCP and the WCP Fund to fund construction draws.

141. The WCP and the WCP Fund breached the contract by unilaterally refusing to fund construction draws and due to no fault of 423 Kennedy.

142. To the extent that SF NU is found to have been assigned any rights in the contract from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible for its breach.

22

143.     423 Kennedy has been damaged by the breach of contract by the WCP, the WCP Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count I this Honorable Court enter judgment in its favor and against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for: (a) any and all damages (final amount to be determined) that 423 Kennedy has suffered and will suffer as a result of the Defendants' breach of contract (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT II
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count II is Asserted Against All Defendants Except Mr. Drazin

144.     Paragraphs 1-143 of the Complaint are incorporated by reference.

145.     423 Kennedy was in the process of closing on a refinancing loan with Main Street Bank.

146.     The Defendants each knew of the existence of 423 Kennedy's business relations with Main Street Bank.

147.     As a result of the Defendants' improper demand that 423 Kennedy pay Default Interest and Default Penalties, 423 Kennedy will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

148.     As a direct result of the Defendants' direct and continuing interference with 423 Kennedy's business relations with Main Street Bank, 423 Kennedy will not be able to go to closing on the refinancing loans with Main Street Bank or any other bank.

4884-5924-1840.v1

149.     The Defendants have intentionally interfered with 423 Kennedy's construction business and development of the Property and 423 Kennedy's refinancing of the loans with Main Street Bank without any valid justification.

150.     423 Kennedy has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count II this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund I, LLC, Mr. Huertas, and SF NU, LLC for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with 423 Kennedy's business relations (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1 million; (d) costs; and (d) pre- and post-judgment interest.

## COUNT III
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count III Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

151.     Paragraphs 1- 150 of the Complaint are incorporated by reference.

152.     Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

153.     The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

154.     The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

4884-5924-1840.v1

155.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

156.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

157.    There was also either an express or implied-in-fact contract between 423 Kennedy and the WCP, the WCP Fund and/or SN FU to fund construction draws.

158.    Through their improper conduct, the WCP, the WCP Fund, and SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, the Second DOT, and the contract to fund construction draws.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court enter judgment in its favor against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the breaches of the duty of good faith and fair dealing (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

## COUNT IV
### DECLARATORY JUDGMENT
Count IV Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

159.    Paragraphs 1-158 of the Complaint are incorporated by reference.

160.    The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

161.    The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

25

162.    The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

163.    The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

164.    There is an actual and justiciable controversy between WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

165.    There is an actual and justiciable controversy between the Count IV Defendants as to whether the Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

166.    There is an actual and justiciable controversy between the WCP, the WCP Fund, and SF NU and 423 Kennedy as to whether the First DOT, the Second DOT, the First Note, and the Second Note contain unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, Developer REI, LLC is not an affiliate of 423 Kennedy St Holdings LLC; and (b) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

4884-5924-1840.v1

COUNT V
INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count V Is Asserted Against All Defendants

167.    Paragraphs 1-166 of the Complaint are incorporated by reference.

168.    Unless enjoined, the Defendants will continue to improperly claim that 423 Kennedy is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

169.    The Defendants unethical, outrageous, and illegal conduct, as described in this Complaint, is causing irreparable harm to 423 Kennedy.  The Property is unique, and 423 Kennedy could lose its entire interest in the Property.

170.    423 Kennedy does not have an adequate remedy at law.

171.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count V this Honorable Court enter an injunction prohibiting the Defendants from invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including, without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the Property until after 423 Kennedy's claims in the Complaint have been decided.

COUNT VI
BREACH OF FIDUCIARY DUTY
Count VI is Asserted Against Defendant Drazin Only

172.    Paragraphs 1-171 of the Complaint are incorporated by reference.

173.     As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrower (423 Kennedy).

174.     Defendant Drazin has had an actual conflict of interest while serving simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the Second DOT.

175.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

176.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of 423 Kennedy, as borrower, under the First DOT and the Second DOT.

177.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to 423 Kennedy's rights as borrower.

178.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

179.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of 423 Kennedy and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

180.     Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that this Honorable Court enter judgment in its favor under Count VI against Defendant Russel S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT VII
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VII is Asserted Against All Defendants

181.     Paragraphs 1-180 of the Complaint are incorporated by reference.

182.     Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

183.     Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (423 Kennedy) as Trustee under the First DOT and the Second DOT.

184.     Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

29

185.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

186.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count VII this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

423 Kennedy St Holdings, LLC demands a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

30

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 13, 2023

/s/ James D. Sadowskif
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Phone:  (202) 452-1400; Fax: 202-452-1410
Email:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

31

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS *et al.*

    *Defendants*.

Case No: _____

## VERIFICATION OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.    I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification on behalf of 423 Kennedy St Holdings, LLC, the Plaintiff in this case ("423 Kennedy").

2.    I have personal knowledge of the facts set forth in the Verified Complaint.

3.    The facts stated in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

4.    423 Kennedy will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:10 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_____
Mel Negussie

# EXHIBIT A

LOAN-006491

Case 25-10021-ELG Doc 1-2 Filed 09/04/24 Entered 09/04/24 19:25:28 Desc
Exhibit B - All Pledged And All Docket Entries (Part III) Page 248 of 2443 Page 696 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

  **THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

  WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

  WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page 2 of 25

767

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016

Page 3 of 25

768

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">ARTICLE IV</div>

<div align="center">AFFIRMATIVE COVENANTS</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

Page 7 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

773

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V</div>

<div align="center">NEGATIVE COVENANTS</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

### EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE -- THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

777

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

778

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

779

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

781

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

      This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

      **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

By:    Brighton Capital LLC
Its:    Managing Member

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily
proven to be the person(s) whose name(s) is set forth in the within instrument, and
executed the within instrument and acknowledged the same instrument to be his/her
act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT B

Prepared by and return to:

Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                              **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**1.    BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                    Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.     **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.     **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                          Page **4** of **9**

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

796

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015    Page **6** of 9

### 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

798

LOAN-006491
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleading And Docket Entries (Part 4) Page 282 Washington DC Of 1716

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

   By:    Brighton Capital LLC
   Its:    Managing Member
   _(signature)_ (SEAL)
   By:    Mel Melaku Negussie
   Its:    Authorized Signer, on behalf
     of Balakrishnarao Sure and
     Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

   I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                                    Page **9** of **9**

# EXHIBIT C

LOAN-006652

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON
PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and
grantor have an agreement whereby the noteholder may make or contemplates making
advances from time to time against the security described in this credit line deed of trust.
The maximum aggregate amount of principal to be secured at any one time is
$1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e.,
grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between
**423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company,
hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K
Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to
as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite
2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware
Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address
of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as
hereinafter defined) under any co-lending agreement, for money borrowed in the
amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor
has made and delivered a certain Commercial Deed of Trust Note of even date herewith,
in the original principal amount of the Loan Amount payable to the order of the
Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any
subsequent holder of the Note secured hereby the full and punctual payment of said debt,
when and as the same shall become due and payable, as well as any and all renewals and
extensions of said Note, or any part thereof, together with interest thereon, and the
performance of the covenants and agreements herein and therein contained, and
also to secure the reimbursement to the holder or holders of said Note or to the
Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the
Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or
Substitute Trustee under the provisions of this Deed of Trust for all money which may be
advanced as herein provided for, and for any and all costs and expenses incurred or paid
on account of any litigation at law or in

802

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

### GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

805

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                         Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

807

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">

ARTICLE V

NEGATIVE COVENANTS

</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

810

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

Page **11** of **25**

812

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

813

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

814

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page **14** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

816

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

     Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

     Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

     In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

     Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

     Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

**Page 16 of 25**

817

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

818

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

819

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

820

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

**Page 20 of 25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

822

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member
    _(signature)_ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
    of Balakrishnarao Sure and
    Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _5/14/2025_

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                                        **Page 23 of 25**

824

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT A

# LEGAL DESCRIPTION

825

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

826

# EXHIBIT "A"
## Property Description

**Closing Date:**         **March 31, 2022**

**Borrower(s):**         **423 Kennedy St Holdings LLC**

**Property Address:**    **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision
made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District
of Columbia in Plat Book 214 at Page 78.

# EXHIBIT D

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                                **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                        Page 1 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                                    Page **2** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                         Page 3 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page **4 of 9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015 Page **5** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page 8 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member
    _____(SEAL)
    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF   District of Columbia   ) SS:
STATE OF   _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of **9**

837

# EXHIBIT E





# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | | |
|---|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** | |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▉▉▉▉▉ | |
| | **Falls Church, VA  22043** | **Account Number:** ▉▉▉▉▉ | |

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

839

# EXHIBIT F





# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▮▮▮▮▮ |
| | **Falls Church, VA  22043** | **Account Number:** ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT G

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT H

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT I



GREAT SERVICE
BETTER RATES
FASTER CLOSINGS

# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:    **WCP Servicing LLC**                    **Bank Name: United Bank**
                    **8401 Greensboro Dr Suite 960**        **Routing Number:** ▮▮▮▮
                    **McLean, VA  22102**                    **Account Number:** ▮▮▮▮

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

847

# EXHIBIT J



# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | |
|---|---|
| **Payable to:** **WCP Servicing LLC** | **Bank Name: United Bank** |
| **8401 Greensboro Dr Suite 960** | **Routing Number:** ▮▮▮▮▮▮ |
| **McLean, VA  22102** | **Account Number:** ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT K



Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A**. Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings. Immediate payment is required to avoid foreclosure. Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current. Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity. My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email – servicing@wcp.team**

# EXHIBIT L




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:  WCP Servicing LLC**            **Bank Name: United Bank**
**8401 Greensboro Dr Suite 960**        **Routing Number:** ▇▇▇▇▇
**McLean, VA  22102**                  **Account Number:** ▇▇▇▇▇

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And Phoenix Docket Entries (Part II) Page 336 of 2443

# EXHIBIT M




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:**   **WCP Servicing LLC**              **Bank Name: United Bank**
                 **8401 Greensboro Dr Suite 960**     **Routing Number:** ▬▬▬▬
                 **McLean, VA  22102**                **Account Number:** ▬▬▬▬

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT N

**James D. Sadowski**

---

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

------------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

------------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

------------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

------------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

858

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

---

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,


**\*\*Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**


**\*\*Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**


## Leslie Calderas  |  Servicing Manager

Washington Capital Partners

https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/

8401 Greensboro Dr Suite 960

McLean, VA 22102

(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT O



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**<u>cb@colomariver.com</u>**


_____*Patrice Derricott*_____

PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No.** **VR22-00182**

**12-3-2021**

**Date of Service**

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

| Business/Company Name | Charge as Respondent (check): ☒ YES  ☐ NO |
|---|---|

| Individual/Agent Name | Charge as Respondent (check): ☐ YES  ☒ NO |
|---|---|

1215 1ST ST NE

cb@colomariver.com

| Mailing Address | | Email Address |
|---|---|---|
| WASHINGTON | DC | 20002-7935 |
| City | State | Zip Code |

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice
WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below
each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day.
If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be
required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For
questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Penalty (if applicable) |
|---|---|---|
| 12G DCMR SUB-SECTION 302.4 | $530.00 | $ |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**   Time of Infraction: **07:37 AM**   Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**   ☐ ADMIT (Pay Fine)   ☐ DENY (Appear for a Hearing)   ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____  No_____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:   Time of Infraction: _____   Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**   ☐ ADMIT (Pay Fine)   ☐ DENY (Appear for a Hearing)   ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____  No_____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the
amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| | GERARD ANDERSON | 10-13-2021 | 1018 |
|---|---|---|---|
| DCRA Employee Signature | Print Name | Date | Badge/Identification Number |

### SEE REVERSE SIDE FOR INSTRUCTIONS

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. **Do not send payment.** Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov.**

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. **Do not send payment.** Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov.** A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT P

District of Columbia

<div align="center">

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square
441 Fourth Street, NW, Suite 450N
Washington, DC 20001-2714
TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

</div>

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

<div align="center">

**FINAL ORDER**

</div>

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021. Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face. The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered. The Government also filed evidence of Respondent's last known home or business address. This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3] The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**." The penalty is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof, starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property, and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**


_Claudia A. Crichlow_

_____
Claudia A. Crichlow
Principal Administrative Law Judge

3

---

## PAYMENT INSTRUCTIONS

**STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.**

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office <u>requires</u> payment be accompanied with a payment voucher that the respondent must secure from DCRA's Office of Civil Infractions. <u>To request a payment voucher</u>, please email <u>DCRA.Civilinfractions@dc.gov</u> with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

<u>INTEREST</u>
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied. For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%. Interest begins 30 calendar days after the fine and/or assessment is levied.

4

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov

I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.


//s W. Green

_____

Clerk / Deputy Clerk

Case No.: 2021-DCRA-VR22-00182

## APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

## HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you). HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

Case 25-10023-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part II)    Page 355 of 2443 Page 803 of 1716

Case No.: 2021-DCRA-VR22-00182

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal. D.C. Official Code § 2-1831.16(g).**

- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order. If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings. If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

### Notice of Infraction Number: VR22-00182

The Notice of Infraction referred to above was:

X Emailed to the Respondent on **December 3, 2021** using the email address(es) provided
by the Respondent. The email included a delivery confirmation receipt,

and/or

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es)
recorded on the Certificate of Service. The evenlope(s) included the return address for
the this agency.

At least 15 calendar days have passed since the email or mailing date described above.  My
review of DCRA records to determine whether or not the email was returned as undeliverable or
whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice
of Infraction was not returned at any time subsequent to the the time it was either emailed or
mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____           ____**December 24, 2021**____
Signature                                    Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

## CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **VR22-00182** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**<u>cb@colomariver.com</u>**

_Patrice Derricott_

PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

Notice No. **VR22-00182**
**12-3-2021**
Date of Service

**Issuing Agency:**    D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

| Business/Company Name | Charge as Respondent (check): ☒ YES ☐ NO |
|---|---|

| Individual/Agent Name | Charge as Respondent (check): ☐ YES ☒ NO |
|---|---|

1215 1ST ST NE                                                      cb@colomariver.com

| Mailing Address | | Email Address |
|---|---|---|
| WASHINGTON | DC | 20002-7935 |
| City | State | Zip Code |

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**    Time of Infraction: **07:37 AM**    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No_____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:    Time of Infraction: _____    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No_____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| | GERARD ANDERSON | 10-13-2021 | 1018 |
|---|---|---|---|
| DCRA Employee Signature | Print Name | Date | Badge/Identification Number |

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30*. **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. **Do not send payment.** Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov**.

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. **Do not send payment.** Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov.** A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT Q

# DISTRICT OF COLUMBIA
# OFFICE OF ADMINISTRATIVE HEARINGS

## Cover Sheet for Electronic Filing

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒The case number is: _____2021-DCRA-VR22-00182_____ .      ☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie

Mailing Address:
1629 K St NW. Suite 300

City, State, Zip: Washington, DC 20006

Telephone: 202-271-5046

E-mail address: cbp@harkenbuilders.com

Representing: 423 Kennedy St Holdings LLC

I agree to receive documents from the court at my email address [ Yes ]   No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:

_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____ )

Person to Whom the Papers Were Sent:

_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____ )

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

879

# DISTRICT OF COLUMBIA

### OFFICE OF ADMINISTRATIVE HEARINGS

One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

## REQUEST TO CHANGE A FINAL ORDER
### ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie

My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300

My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006

My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

# EXHIBIT R

**James D. Sadowski**

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |
| **Importance:** | High |

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

| | |
|---|---|
| Notice of Infraction (NOI) Number: | VR22-00182 |
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



# EXHIBIT S

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

| | |
|---|---|
| DISTRICT OF COLUMBIA DEPARTMENT OF BUILDINGS AS SUCCESSOR AGENCY TO THE DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS,[1] Petitioner, | Case No.: 2021-DCRA-VR22-00182 NOI No.: VR22-00182 |
| v. | |
| 423 KENNEDY ST HOLDINGS LLC, Respondent. | |

**ORDER VACATING FINAL ORDER**
**AND**
**DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED,** that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED,** that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE;** and it is further

**ORDERED,** that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

- 2 -

885

## Certificate of Service:

**By Email:**

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov
        dob.filing@dc.gov

**By First-Class Mail (Postage Paid) and
Email:**

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on <u>December 12, 2022,</u>
this document was served upon the parties
named on this page at the address(es) and by
the means stated.

*(s) Joseph Harrison*
Joseph Harrison
Paralegal Specialist

- 3 -

886

## APPEAL RIGHTS

After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.

## HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you).

## HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">
Clerk<br>
District of Columbia Court of Appeals<br>
430 E Street, NW, Room 115<br>
Washington, DC 20001
</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

<div align="center">- 4 -</div>

# Exhibit  T

★ ★ ★

**Government of the District of Columbia**

Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square 3260   Suffix _____   Lot 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC   PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on April 8 , 20 22 .

Liber: _____   Folio: _____   Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A   See Exhibit A
Phone   Last Known Address

Description of Property: Multi-Familiy Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260   Lot: 0056   or Parcel No: _____

Holder of the Note (Name): WCP Fund I LLC

Phone: (703) 727-5464   Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 *

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 íRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin

Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015   Phone: (202) 223-7900

** as of June 23, 2023

889

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

★★★

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square [ 3260 ]    Suffix [ ]    Lot [ 0056 ]

     I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20[ 23 ]; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

_RD_ _____
(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the
[ District of Columbia ] ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the [ 23rd ] day of [ June ] , 20[ 23 ], personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

    Given under my hand and seal this [ 23rd ] day of [ June ] , 20[ 23 ].

_Deborah A Stewart_ _____
Notary Public

My Commission Expires: [ 09/30/2025 ]
            mmddyyyy

*[Notary seal: DEBORAH A. STEWART NOTARY PUBLIC MY COMMISSION EXPIRES 9-30-2025 DISTRICT OF COLUMBIA]*

# EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo                    [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC                                    is the holder of the mortgage
recorded as Instrument Number 2022038745                    in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

SSL:
3260/0056

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st                    day of June                    , 20 23
by Christina Araujo                                    (name of person) as
Vice President of Finance                              (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed)

Notary Public

My Commission Expires:



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES     $25.00
   SURCHARGE      $6.50
TOTAL:          $31.50

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                            Plaintiff
              vs.

                                                              Case Number    2023-CAB-004260

Daniel Huertas

_____
                                            Defendant

## SUMMONS

To the above named Defendant:

     You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

     You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
                           Deputy Clerk

Date _____
                   July 17, 2023

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요세요       የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                                          Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                    Demandante

contra

Número de Caso: _____

Daniel Huertas
_____
                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC  20006
_____

(202) 452-1400
_____
Teléfono

_SECRETARIO DEL TRIBUNAL_

Por: _____
                    Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
Plaintiff

vs.

Case Number ___2023-CAB-004260___

DP Capital, LLC d/b/a Washington Capital Partners

_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
Deputy Clerk

Date ___July 17, 2023___

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.      የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

Demandante

contra

Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC 20006
_____

(202) 452-1400
_____
Teléfono

*SECRETARIO DEL TRIBUNAL*

Por: _____
Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 서류 번역이 필요하면 (202) 879-4828로 전화해주세요     የትርጉም አገልግሎት ከፈለጉ (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                      Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

|                              |
| Plaintiff |

vs.

|                              |  Case Number  | 2023-CAB-004260 |
WCP Fund, I, LLC

| Defendant |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635

Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000

Address
Washington, DC 20006

(202) 452-1400

Telephone

_Clerk of the Court_

By _____

Deputy Clerk

Date **July 17, 2023**

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bản dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                      Super. Ct. Civ. R. 4

900



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                         Demandante

      contra

                                      Número de Caso: _____

WCP Fund, I, LLC
_____
                         Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC  20006

(202) 452-1400
_____
Teléfono

_____ *SECRETARIO DEL TRIBUNAL*

Por: _____
                              Subsecretario

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화하십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                         Super. Ct. Civ. R. 4

901

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

|                          |
|--------------------------|
| Plaintiff                |

vs.

Case Number _____ 2023-CAB-004260

Russell S. Drazin

|                          |
|--------------------------|
| Defendant                |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date _____ **July 17, 2023**

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                              Demandante
        contra
                                           Número de Caso: _____

Russell S. Drazin
_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____    Por: _____
Dirección                                              Subsecretario
Washington, DC  20006
_____

(202) 452-1400
_____    Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828   Veuillez appeler au (202) 879-4828 pour une traduction   Để có một bài dịch, hãy gọi (202) 879-4828

만약 번역을 원하시면 (202)879-4828 으로 전화해 주십시오    የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                          Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                              Plaintiff
              vs.

                                                    Case Number    2023-CAB-004260

SF NU, LLC

_____
                              Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____                    By _____
Address
Washington, DC  20006

(202) 452-1400
_____                    Date _____ July 17, 2023
Telephone

_Clerk of the Superior Court_

_Deputy Clerk_

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                 Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____

Demandante

contra

Número de Caso: _____

SF NU, LLC
_____

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____
Dirección
Washington, DC  20006

_SECRETARIO DEL TRIBUNAL_

Por: _____
Subsecretario

(202) 452-1400
_____
Teléfono

Fecha _____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화하십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

423 Kennedy St Holdings, LLC

Case Number: _____2023-CAB-004260_____

vs

Date: _____

DP Capital, LLC d/b/a Washington Capital Partners, et. al.

☐ One of the defendants is being sued in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*   James D. Sadowski | Relationship to Lawsuit |
| Firm Name:   Greenstein Delorme & Luchs PC | [X] Attorney for Plaintiff |
| Telephone No.:              Six digit Unified Bar No.: | ☐ Self (Pro Se) |
| 202-452-1400 ext. 7805              446635 | ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury          ☐ 6 Person Jury          [X] 12 Person Jury

Demand: $ __1 Million__          Other: Punitive Damages

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: 2022-CAB-005935          Judge: Ebony Scott          Calendar #: _____

Case No.: _____          Judge: _____          Calendar#: _____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                              **COLLECTION CASES**
                                    Implied Covenant of Good Faith and Fair Dealing

| | | |
|---|---|---|
| [X] 01 Breach of Contract* | ☐ 14 Under $25,000 Pltf. Grants Consent | ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent | ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation | ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent | Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation | ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent | Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration | |
| | Award (Collection Cases Only) | |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**     1. Tortious Interference with Business Relations ; 2. Breach of Fiduciary Duty

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | Not Malpractice) |
| ☐ 03 Assault and Battery | [X] 12 Malicious Interference | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 19 Wrongful Eviction |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 20 Friendly Suit |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 21 Asbestos |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, | ☐ 22 Toxic/Mass Torts |
| ☐ 08 Fraud | Not Malpractice) | ☐ 23 Tobacco |
| | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE          IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  - (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☒ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  - (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability
- ☐ 24 Application to Confirm, Modify,
  - Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

Injunctive Relief - to Stop a Foreclosure

**II.**

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  - Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  - Judgment [ D.C. Code §
  - 2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  - 42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  - [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  - (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

**D. REAL PROPERTY**

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

_____
/s/ James D. Sadowski

Attorney's Signature

July 13, 2023 _____

Date

CV-496/ June 2015

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
            8/10/2023

## PRAECIPE WITH AN UPDATE ON A MOTION THAT IS NOW UNOPPOSED

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, hereby provides

notice to the Court that during a meet and confer session held on July 11, 2023 with Maurice

VerStandig, Esq., Counsel for the Defendants, Mr. VerStandig authorized the undersigned to

advise the Court that the Defendants do not oppose the Opposed Motion to Exceed Page Limit in

an Emergency Filing that was filed on July 11, 2023, so the Court can now treat that motion as

unopposed.

            Respectfully submitted,

            GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 13, 2023         /s/ James D. Sadowski
                          Alexandria J. Smith (D.C. Bar No. 1781067)
                          James D. Sadowski (D.C. Bar No. 446635)
                          801 17th Street, NW, Suite 1000
                          Washington, DC 20006
                          Telephone: (202) 452-1400
                          Email: jds@gdllaw.com
                          *Counsel for Plaintiff Developer RE1 LLC*

4877-0365-2464

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Praecipe With an Update on a Motion that is Now Unopposed was served by the Court's electronic filing system this 13th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

4877-0365-2464

Case 25-10023-ELG    Doc 1-32    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) All Pages 352 to 2448    Page 840 of 1716

eFiled
07/13/2023 4:05:05 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **423 KENNEDY ST HOLDINGS LLC,**<br>1629 K Street, N.W - Suite 300<br>Washington, DC 20006<br><br>    *Plaintiff*,<br><br>v.<br><br>**DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS,**<br>8401 Greensboro Drive - Suite 960<br>McLean, VA 22102,<br><br>**WCP FUND I, LLC**<br>2815 Hartland Road - Suite 200<br>Falls Church, VA 22043,<br><br>**DANIEL HUERTAS,**<br>909 Chinquapin Road<br>McLean, VA 22102,<br><br>**RUSSELL S. DRAZIN**<br>4400 Jenifer Street, NW - Suite 2<br>Washington, DC 20015,<br><br>  and<br><br>**SF NU, LLC**<br>1455 Research Boulevard - Suite 510<br>Rockville, MD 20850<br><br>    *Defendants*. | Case No: ___2023-CAB-004260___ |

## VERIFIED COMPLAINT

COMES NOW THE PLAINTIFF, 423 Kennedy St Holdings LLC ("423 Kennedy"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC. This Verified Complaint

4884-5924-1840.v1

("Complaint") includes claims for breach of contract, tortious interference with business

relations, breach of the duty of good faith and fair dealing, and breach of fiduciary duty by a

Trustee.  The Complaint also seeks a declaratory judgment as to the meaning of certain

provisions in two Deeds of Trust, that certain provisions are unenforceable as a matter of law,

that the Trustee has a conflict of interest that prevents him from serving as Trustee, and that

actions taken by the Trustee are invalid and must be set aside or suspended.  The Complaint also

seeks injunctive relief to prevent a foreclosure.  In support of its Complaint, 423 Kennedy avers

as follows:

<div align="center">THE PARTIES</div>

1.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") is a District of

Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners".  For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund and services its loans.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico

limited liability company that has not filed a certificate of authority to transact business in the

<div align="center">2</div>

4884-5924-1840.v1

District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU will be referred to as the "Lender Defendants".

7.      The fifth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP, the WCP Fund, and SFNU.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

### STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"**

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one, if not more, of their clients' construction projects fail.

3

<u>The Ownership of 423 Kennedy, Its Purpose, and the Property.</u>

10.    423 Kennedy is the record owner of real property in the District known as 423

Kennedy Street, N.W., Lot 56, Square 3260 (the "Property").

11.    423 Kennedy is a domestic, sole purpose, limited liability company, and the sole

purpose of 423 Kennedy is to own and develop the Property.

12.    The Defendants all knew that 423 Kennedy was a sole purpose entity whose only

asset was the Property and any the improvements that 423 Kennedy made to the Property.

13.    423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and

the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

14.    The Brighton Group is comprised of forty-one individual investors, many of

whom used their personal retirement savings to invest in the Brighton Group's membership

interest in 423 Kennedy.

15.    On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a

construction finance loan for the Property with the WPC Fund.

16.    Due to unforeseen complications with the soil and water at the Property, 423

Kennedy increased the original loan amount and refinanced the original construction finance

loan on March 31, 2022.

<u>Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will
Provide Construction Draws to Fund the Project</u>

17.    As part of the refinancing, the WCP and the WCP Fund agreed that they would

provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project

progressed.  The WCP and the WCP Fund's agreement to provide construction draws was

memorialized on the HUD 1 Settlement Statement signed at closing.

4

18.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

19.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing.  423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

<u>The Loan Documents with the WCP and the WCP Fund</u>

20.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

21.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

22.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First DOT before it was signed.

23.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

24.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First Note before it was signed.

<div align="center">5</div>

4884-5924-1840.v1

<div align="right">914</div>

26.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

27.     The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

28.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second DOT before it was signed

29.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower", a copy of which is attached as Exhibit D.

30.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

31.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second Note before it was signed.

32.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

33.     The new, refinanced loans were set to mature on March 31, 2023.

34.     Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

35.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

6

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

36.     Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the Property with another lender.

37.     As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

38.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

### The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.

39.     On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

40.     The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

41.     The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

42.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WEP Fund to retire the balances owed under the

4884-5924-1840.v1

First Note and to release the First DOT from the Property.  A true copy of the October 24, 2022 Payoff Statement for the first loan is attached as Exhibit E.

43.    On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second Note listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property.  A true copy of the Payoff Statement for the second loan is attached as Exhibit F.

44.    As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

45.    As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

46.    On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy.  Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy".  A copy of the November 3, 2022 email is attached as Exhibit G.

47.    As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

48.    As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First Note and the Second Note.

49.    On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email is attached as Exhibit H.

4884-5924-1840.v1

50.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed either the First Note, the Second Note, the First DOT, or the Second DOT.

51.     By as early as November 17, 2022, the Defendants each knew that 423 Kennedy had secured alternative financing for the Property with another lender named Main Street Bank, and that 423 Kennedy expected to close on the new refinancing loan with Main Street Bank in December of 2022.

52.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the First Note and to release the First DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan is attached as Exhibit I.

53.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WEP Fund under the Second Note and to release the Second DOT from the Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan is attached as Exhibit J.

54.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

55.     WCP sent all the Payoff Statements listed in paragraphs 42, 43, 52, and 53 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

56.     None of the Payoff Statements that are referenced in paragraphs 42, 43, 52, and 53 included any request by any Defendant for the payment of default fees, default interest, or any

9

other amount that was based upon any allegation that there was a "default" by 423 Kennedy

under either the First Note, the Second Note, the First DOT or the Second DOT.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr.
> Huertas Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt
> Owed to the WCP for Another, Unrelated Project, "Or Else".

57.    As of December 8, 2022, 423 Kennedy had made all payments due under the First

Note and the Second Note.  By that date, 423 Kennedy had paid $514,560.80 in interest

payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423

Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

58.    On December 8, 2022, Mr. Huertas told 423 Kennedy during a telephone call with

Mr. Negussie that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

59.    SF NU is believed to also have a financial interest in the 2507 I Street Project.

60.    During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was

associated with at WCP, including 423 Kennedy." Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done".  Mr. Huertas further stated that the Investor Lender "is very wealthy

and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another

project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why

don't you do the honorable thing and have your investors buy 2507 I St to make things right" or

have them "take care of the $700,000" shortfall on the 2507 I Street Project.

4884-5924-1840.v1

61.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

62.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force 423 Kennedy or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

63.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements that were sent to 423 Kennedy were withdrawn and that he would place 423 Kennedy and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1") in default under their loan documents with the WCP Fund.

64.     The Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

65.     The Defendants knew that the sole purpose of Developer RE1 is to develop the property located in the District at 5501 First Street, NW.

66.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

67.     The Defendants knew that 423 Kennedy does not control Developer RE1 and Developer RE1 does not control 423 Kennedy.

4884-5924-1840.v1

68.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

69.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put 423 Kennedy in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put 423 Kennedy in "default" under two, unrelated loans because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

70.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

71.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

72.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and 2507 Holdings.

73.     The Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

74.     The Defendants knew that Mr. Negussie does not have a controlling interest in either 423 Kennedy or 2507 Holdings.

75.     The Defendants knew that 423 Kennedy has no interest in the 2507 I Street Project.

76.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project.

12

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By
Improperly Demanding Payment of More than $1.5 Million in "Default Penalties" and
"Default Interest" and By Threatening 423 Kennedy With Foreclosure.</u>

77.    Later that same day (December 8, 2022), Mr. Huertas followed through with his

threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for

Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Mr.

Negussie by email.  A true the "Notice of Default" is attached as Exhibit K.

78.     "Notice of Default" appears to reference either the First Note, the First DOT, the

Second Note, and/or the Second DOT.

79.    The "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but it was not signed by anyone at the WCP.  The WCP web site indicates that the

Vice President of the WCP is Christina Araujo.

80.    The "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to the notice.

81.    The lack of a signature on the "Notice of Default" and the failure by the WCP to

include the referenced exhibit with the "Notice of Default" are indications that the notice was

hastily prepared by either Mr. Huertas or by someone else at the WCP.

82.    The Notice of Default did not contain any legal basis or other explanation for how

or why 423 Kennedy had defaulted under the terms of any of the loan documents.

83.    Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and

the Second DOT states:

> All notices, demands, requests and other communications pursuant to the
> provisions of the Note and this Deed of Trust shall be in writing and shall
> be deemed to have been properly given or served for all purposes when
> presented personally, or one business day after having been sent by a
> nationally recognized overnight delivery service or a local courier service,

13

charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006

(b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

84.    In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

85.    In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two loans, the WCP included two Payoff Statements. A copy of the two Payoff Statement that were included with the email transmitting each "Notice of Default" are attached as Exhibits L and M.

86.    The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

87.    The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".

14

Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

<u>Mr. Huertas "Lawyers Up" and Asks Defendant Drazin to Come Up with A Cover Story.</u>

88.     After receiving the email with the Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the WCP and the WCP Fund were now claiming that 423 Kennedy was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

89.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that 423 Kennedy was in default of the loan documents when they each knew, in fact, that there were no defaults by 423 Kennedy under any of its loan documents.

90.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default under any of the loan documents and to conceal the real reason why 423 Kennedy was improperly placed in default by the Defendants.

91.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (423 Kennedy) and to the lender under the First DOT and the Second DOT.

92.     As of December 8, 2022, Mr. Drazin knew that that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary

<div align="center">15</div>

duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take

instructions solely from, and provide legal advice to, the Lender Defendants.

93.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that

he owed to 421 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants'

issuance of the Default Notice.

94.     The real reason that the Lender Defendants improperly alleged that 423 Kennedy

was in default under the loan documents was because the Lender Defendants and/or their

representatives, were angry that the 2507 I Street Project did not turn out the way that they

wanted it to.

95.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could

collect of "commission" of 2.50% of the total amount then due, and another "commission" of

5.00% the proceeds of a foreclosure sale.

96.     There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from 423 Kennedy Street by the WCP and the WCP Fund given that one of the

two "commissions" payable to him is based upon "the total amount then due".

97.     As a result of their evil, improper motive and their greed, the Defendants

improperly alleged that 423 Kennedy was in default under the loan documents to try line their

own pockets and to cause as much financial and reputational damage as possible to 423

Kennedy, to Mr. Negussie, and to Developer RE1.[1]

---

[1]     Developer RE1 filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for
similar claims of misconduct.  *See Developer RE1, LLC v. DP Capital, LLC d/b/a Washington
Capital Partners, et al,* 2022-CAB-005935.  That case is currently in the discovery phase.

4884-5924-1840.v1

98.     The Lender Defendants also caused WCP to issue each the "Notice of Default" to 423 Kennedy for the express purpose of trying to interfere with the refinancing of the loans that they knew that 423 Kennedy had secured with Main Street Bank.

99.     The Lender Defendants also caused WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of trying to prevent 423 Kennedy from being able to go to closing on the refinancing loan with Main Street Bank.

100.    The Lender Defendants also caused the WCP to issue the "Notice of Default" to 423 Kennedy for the express purpose of improperly pressuring either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or to SF NU).

101.    The Defendants knew that they had no legal right to demand that 423 Kennedy, Developer RE1, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

102.    The Defendants knew that they had no legal right, or factual basis, to claim that 423 Kennedy was in default of any loan document.

103.    The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon 423 Kennedy and its members.  The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

104.    Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr. Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022

4884-5924-1840.v1

as Instrument No. 2022114185 ("Fine Certificate").  A copy of Mr. Drazin's reply email listing the alleged defaults is attached as Exhibit N.

105.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA").  The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00.  A true copy of the NOI is attached at Exhibit O.

106.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

107.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI.  A copy of the Final Order is attached as Exhibit P.

108.    423 Kennedy noted an appeal of the Final Order on September 12, 2022.  A copy is 423 Kennedy's appeal is attached as Exhibit Q.

109.    Pursuant to Section 7.6 of the First DOT and the Second DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

110.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI.  However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that was sent to it by The Defendant was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI.  A copy of confirmation of the $1,657.34 payment to the District is attached as Exhibit R.

18

111.    December 10, 2022 is less than thirty days after November 17, 2022.

112.    On December 11, 2022, the District of Columbia Office of Administrative
Hearings (OAH) vacated the Final Order.  *See* Exhibit S.

113.    There are no outstanding fines owed by 423 Kennedy to the District.

114.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis
provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal
from, or to discharge (by payment), any lien filed by the District.

115.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis
for a "default" by 423 Kennedy was Section 7.9 of the First DOT and the Second DOT.

116.    The First DOT and the Second DOT each have a Section 7.9 that are identical.
Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.
Section 7.09 states:

> <u>Other Indebtedness</u>.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness<u>*, or any
> of their affiliates, to Beneficiary,*</u> whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis
added).

117.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A
cross-default provision in a contract is a provision that allows a "default" under one agreement to
constitute a "default" under another agreement.

118.    In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy,
two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document

19

or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP

Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

119.    The First DOT and the Second DOT do not define the term "affiliate."  Under

federal banking law, the term "affiliate" means "any company that controls, is controlled by, or

is under common control with another company."  15 U.S. Code §6809 (6).

120.    Developer RE1 does not control 423 Kennedy and vice versa.

121.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

122.    There is also no common control of Developer RE1 and 423 Kennedy.

123.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

124.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the

Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred

by 423 Kennedy under either the First DOT or the Second DOT, even if Developer RE1 was

actually in "default" of any loan agreement with the WCP Fund.

125.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover

story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that

423 Kennedy was in default of the First DOT and/or the Second DOT.

126.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly

claimed, without any legal right or justification that:  "There is no right to cure.  There is no right

to deceleration.  There is no right to reinstatement.  The Loans are in default and are

accelerated."  *See* Ex. N (the use of "Loans" appears to be referring to the First Note, the First

DOT, the Second Note, and the Second DOT) (underlined emphasis in original).

20

<u>423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices
Are Left Unchecked</u>

127.    On December 8, 2022, the Defendants threatened to foreclose on the Property

even though they know that they had no legal right to foreclose on the Property.

128.    The Property has been improved by 423 Kennedy by constructing a mixed use,

six level (including the lower cellar unit) building with thirty-three residential units and one

commercial unit comprising 36,512 square feet.

129.    The improvements that 423 Kennedy made to the Property are 75-80% complete,

and the Project would have been completed in the first quarter of 2023 but for the Defendants'

misconduct.

130.    The Property has a current value of $11.9 million.

131.    There was no valid, legal basis under any provision of either the First DOT or the

Second DOT that would have permitted the Defendants to foreclose on the Property.

132.    The Defendants deliberately sabotaged 423 Kennedy's ability to complete

construction and its refinancing efforts.  But for the Defendants' misconduct, 423 Kennedy

would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

133.    The Defendants also deliberately timed their improper interference with 423

Kennedy's business relations during an approaching holiday period to make it impossible for 423

Kennedy to close on the refinancing loan with Main Street Bank prior to the end of this year, and

to tie up any refinancing indefinitely so that they can try to foreclose on the Property.

134.    On June 23, 2023, Mr. Drazin, apparently now acting on behalf of SF NU, sent to

423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure

Notice").  A copy of the Foreclosure Notice is attached as Exhibit T.

135.    The Foreclosure Notice sets the date and time of the foreclosure sale on July 25,

2023 at 2:10 p.m.

136.    If the Defendants follow through on the scheduled foreclosure sale, 423 Kennedy,

its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's

investors, will be irreparably harmed and they could lose their entire investment.

137.    The Defendants' conduct shows that they have an evil motive, that they are acting

with actual malice to inflict damages on 423 Kennedy and others, and they are intentionally and

willfully disregarding 423 Kennedy's rights under the loan documents and under the law.  The

Defendants' misconduct and improper lending practices also constitute outrageous conduct

further justifying an award of punitive damages.

138.    As of July 12, 2023, none of the Defendants have sent 423 Kennedy a written

default notice that complies with the notice provisions of either the First Note, the First DOT, the

Second Note, or the Second DOT.

<div align="center">

COUNT I
BREACH OF CONTRACT
Count I is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

139.    Paragraphs 1-138 of the Complaint are incorporated by reference.

140.    There was either an express contract or an implied-in-fact contract between 423

Kennedy and the WCP and the WCP Fund to fund construction draws.

141.     The WCP and the WCP Fund breached the contract by unilaterally refusing to

fund construction draws and due to no fault of 423 Kennedy.

142.    To the extent that SF NU is found to have been assigned any rights in the contract

from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible

for its breach.

<div align="center">22</div>

143. 423 Kennedy has been damaged by the breach of contract by the WCP, the WCP Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count I this Honorable Court enter judgment in its favor and against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for: (a) any and all damages (final amount to be determined) that 423 Kennedy has suffered and will suffer as a result of the Defendants' breach of contract (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT II
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count II is Asserted Against All Defendants Except Mr. Drazin

144. Paragraphs 1-143 of the Complaint are incorporated by reference.

145. 423 Kennedy was in the process of closing on a refinancing loan with Main Street Bank.

146. The Defendants each knew of the existence of 423 Kennedy's business relations with Main Street Bank.

147. As a result of the Defendants' improper demand that 423 Kennedy pay Default Interest and Default Penalties, 423 Kennedy will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

148. As a direct result of the Defendants' direct and continuing interference with 423 Kennedy's business relations with Main Street Bank, 423 Kennedy will not be able to go to closing on the refinancing loans with Main Street Bank or any other bank.

23

149.     The Defendants have intentionally interfered with 423 Kennedy's construction business and development of the Property and 423 Kennedy's refinancing of the loans with Main Street Bank without any valid justification.

150.     423 Kennedy has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that under Count II this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund I, LLC, Mr. Huertas, and SF NU, LLC for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with 423 Kennedy's business relations (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1 million; (d) costs; and (d) pre- and post-judgment interest.

## COUNT III
### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count III Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

151.     Paragraphs 1- 150 of the Complaint are incorporated by reference.

152.     Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

153.     The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

154.     The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

24

155.     The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

156.     The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

157.     There was also either an express or implied-in-fact contract between 423 Kennedy and the WCP, the WCP Fund and/or SN FU to fund construction draws.

158.     Through their improper conduct, the WCP, the WCP Fund, and SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, the Second DOT, and the contract to fund construction draws.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court enter judgment in its favor against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the breaches of the duty of good faith and fair dealing (currently estimated to be at least $1 million); (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

### COUNT IV
### DECLARATORY JUDGMENT
Count IV Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

159.     Paragraphs 1-158 of the Complaint are incorporated by reference.

160.     The First DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

161.     The Second DOT is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

162.     The First Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

163.     The Second Note is a contract between 423 Kennedy and the WCP Fund and/or SF NU.

164.     There is an actual and justiciable controversy between WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

165.     There is an actual and justiciable controversy between the Count IV Defendants as to whether the Developer RE1 is an "affiliate" of 423 Kennedy, as that term is used in the First DOT and the Second DOT, which controversy is ripe for adjudication.

166.     There is an actual and justiciable controversy between the WCP, the WCP Fund, and SF NU and 423 Kennedy as to whether the First DOT, the Second DOT, the First Note, and the Second Note contain unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count III this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, Developer REI, LLC is not an affiliate of 423 Kennedy St Holdings LLC; and (b) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

26

COUNT V

INJUNCTIVE RELIEF

(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count V Is Asserted Against All Defendants

167.    Paragraphs 1-166 of the Complaint are incorporated by reference.

168.    Unless enjoined, the Defendants will continue to improperly claim that 423
Kennedy is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

169.    The Defendants unethical, outrageous, and illegal conduct, as described in this
Complaint, is causing irreparable harm to 423 Kennedy.  The Property is unique, and 423
Kennedy could lose its entire interest in the Property.

170.    423 Kennedy does not have an adequate remedy at law.

171.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that
under Count V this Honorable Court enter an injunction prohibiting the Defendants from
invoking any remedy under the First Note, the First DOT, the Second Note, or the Second DOT,
including, without limitation, enjoining the Defendants: (a) from attempting to enforce any
provisions in the First Note, the First DOT, the Second Note, and the Second DOT that the court
determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees,
interest, and penalties; and (c) from initiating any foreclosure on the Property until after 423
Kennedy's claims in the Complaint have been decided.

COUNT VI

BREACH OF FIDUCIARY DUTY
Count VI is Asserted Against Defendant Drazin Only

172.    Paragraphs 1-171 of the Complaint are incorporated by reference.

27

173.     As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (423 Kennedy).

174.     Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

175.     While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,

the Lender Defendants.

176.     While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted against, and made decisions that have all been against,

the interests and rights of 423 Kennedy, as borrower, under the First DOT and the Second DOT.

177.     While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has shown a callous indifference to 423 Kennedy's rights as borrower.

178.     While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has been in continual consultation with, and dominated by, the Lender

Defendants.

179.     Defendant Drazin breached his fiduciary duty by engaging in the conduct

described in this Complaint, by not immediately resigning as Trustee when he had actual

knowledge that the interests of 423 Kennedy and the Lender Defendants became adverse, by

continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing

correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of

interest.

4884-5924-1840.v1

180.     Due to his actual conflict of interest, Defendant Drazin bears the burden of
proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the
Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that this
Honorable Court enter judgment in its favor under Count VI against Defendant Russel S. Drazin
for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and
will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated
to be at least $1 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-
and post-judgment interest.

## COUNT VII
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VII is Asserted Against All Defendants

181.     Paragraphs 1-180 of the Complaint are incorporated by reference.

182.     Defendant Drazin has an actual conflict of interest that prevents him from serving
as Trustee under the First DOT and the Second DOT.

183.     Due to his conflict of interest as counsel for the Lender Defendants, Defendant
Drazin cannot uphold his fiduciary duties to the borrower (423 Kennedy) as Trustee under the
First DOT and the Second DOT.

184.     Any actions taken by Defendant Drazin as Trustee under the First DOT and the
Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that
he has been faithful to his obligations to both the borrower (423 Kennedy) and the lender under
the First DOT and the Second DOT.

29

4884-5924-1840.v1

185.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

186.    There is an actual and justiciable controversy between 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully request that under Count VII this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (423 Kennedy) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

423 Kennedy St Holdings, LLC demands a trial by jury as to all claims asserted in the Complaint for which a jury trial is allowed under the law.

4884-5924-1840.v1

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 13, 2023

/s/ James D. Sadowskif

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Phone:  (202) 452-1400; Fax: 202-452-1410
Email:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings LLC*

31

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL, LLC D/B/A WASHINGTON<br>CAPITAL PARTNERS *et al.*<br><br>    *Defendants.* | Case No: _____ |

## VERIFICATION OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.    I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification on behalf of 423 Kennedy St Holdings, LLC, the Plaintiff in this case ("423 Kennedy").

2.    I have personal knowledge of the facts set forth in the Verified Complaint.

3.    The facts stated in the Verified Complaint are true and correct to the best of my knowledge, information, and belief.

4.    423 Kennedy will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:10 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_____
Mel Negussie

# EXHIBIT A

LOAN-006491

Case 25-10021-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:55:36    Desc
Exhibit B - All Pledging And Other Debtors Entities (Part I) All Docket Entries Page 873 of 1716

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page 2 of 25

944

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                      Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument; (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                 Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V

NEGATIVE COVENANTS</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

951

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE -- THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

954

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016                                              Page **13** of **25**

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

### 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

### 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

959

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016                                                             Page **20** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016                                                    Page **21** of **25**

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

     This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

     **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member

_(signature)_ (SEAL)

    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____)

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

_(notary seal)_
JEFFREY DARRAH
NOTARY PUBLIC
MY COMMISSION EXPIRES
5/14/2025
DISTRICT OF COLUMBIA

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

Exhibit B - All Pleadings And All Docket Entries (Part II) All Docket Entries Page 896 of 1716

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

966

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT B

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                    **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.     BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC,** a
District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the
order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd
Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under
any co-lending agreement (together with its successors and assigns, the "Lender"), at such
address and place, or at such other place or places as the Lender may from time to time
designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together
with interest at the rate hereinafter provided, from the date of this Note (as set forth above)
until paid. All amounts due under this Note are secured by a Deed of Trust of even date
herewith ("Deed of Trust") on the real property referenced in the Deed of Trust
("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note")
and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed
of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.    **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                         Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.  **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.  **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.**   **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.**   **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

   a.   If default be made in any payment due under this Note;
   b.   If default be made in the performance of any other covenant contained in this Note;
   c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
   d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

### 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

LOAN-006491
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

Page **8** of 9

976

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

    _(signature)_ (SEAL)

    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
          of Balakrishnarao Sure and
          Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____)

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

_(signature)_
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of **9**

977

# EXHIBIT C

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

### ARTICLE I

### DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

980

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                          Page 5 of 25

983

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

984

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">ARTICLE VII</div>

<div align="center">EVENTS OF DEFAULT</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

990

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">ARTICLE VIII</div>

<div align="center">DEFAULT AND FORECLOSURE</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

992

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016                                            Page **16** of **25**

994

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

995

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016                                              Page **18** of **25**

996

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

997

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption.  Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary.  Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

   By:    Brighton Capital LLC
   Its:    Managing Member
   _____ (SEAL)
   By:    Mel Melaku Negussie
   Its:    Authorized Signer, on behalf
      of Balakrishnarao Sure and
      Naveen Vavilala, Members

COUNTY OF  District of Columbia    ) SS:
STATE OF  _____)

    I hereby certify on this 31ˢᵗ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                                                        **Page 23 of 25**

1001

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT A

## LEGAL DESCRIPTION

1002

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**    **March 31, 2022**

**Borrower(s):**    **423 Kennedy St Holdings LLC**

**Property Address:**    **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.

# EXHIBIT D

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                             **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.      **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                         Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note $43,960.00 to Lender as a loan Amount origination fee, $0.00 to DP Capital LLC for a broker price opinion, and $1,250.00 to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                              Page **2** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.  BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.  BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

  a.  If default be made in any payment due under this Note;
  b.  If default be made in the performance of any other covenant contained in this Note;
  c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
  d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page **4 of 9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                Page **5** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

1012

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:   Mel Melaku Negussie
Its:   Member-Manager

By:   Brighton - KSDC, LLC
Its:   Member-Manager

   By:   Brighton Capital LLC
   Its:   Managing Member
   _____(SEAL)
   By:   Mel Melaku Negussie
   Its:   Authorized Signer, on behalf
      of Balakrishnarao Sure and
      Naveen Vavilala, Members

COUNTY OF   District of Columbia   ) SS:
STATE OF   _____)

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

My commission expires:   5/14/2025

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                                                 Page **9** of **9**

# EXHIBIT E




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▮▮▮▮▮ |
| | **Falls Church, VA 22043** | **Account Number:** ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006491 and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT F




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▮▮▮▮▮▮ |
| | **Falls Church, VA  22043** | **Account Number:** ▮▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT G

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:** Daniel Huertas

**To:** mel negussie

**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT H

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

**Page 1 of 2**

# EXHIBIT I



# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:  WCP Servicing LLC            Bank Name: United Bank
             8401 Greensboro Dr Suite 960    Routing Number: ▆▆▆▆
             McLean, VA  22102               Account Number: ▆▆▆▆

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT J




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | |
|---|---|
| Payable to:   **WCP Servicing LLC** | **Bank Name: United Bank** |
| **8401 Greensboro Dr Suite 960** | **Routing Number:** ▮▮▮▮▮ |
| **McLean, VA  22102** | **Account Number:** ▮▮▮▮▮ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT K



Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email – servicing@wcp.team**

EXHIBIT L





# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▇▇▇ |
| | **McLean, VA 22102** | **Account Number:** ▇▇▇ |

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT M




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **8401 Greensboro Dr Suite 960** | **Routing Number:** ▬▬▬ |
| | **McLean, VA  22102** | **Account Number:** ▬▬▬ |

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT N

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

### 5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

### 423 Kennedy Street, NW (Lot 0056 in Square 3260)

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

-----------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

-----------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

-----------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

-----------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

---

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

1038

# EXHIBIT O



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

### Notice of Infraction Number: <u>VR22-00182</u>

### CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **VR22-00182** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**cb@colomariver.com**

_Patrice Derricott_
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No. VR22-00182**

**12-3-2021**

Date of Service

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other ____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

Business/Company Name                                   Charge as Respondent (check): ☒ YES  ☐ NO

Individual/Agent Name                                   Charge as Respondent (check): ☐ YES  ☒ NO

1215 1ST ST NE                                                              cb@colomariver.com

Mailing Address                                                             Email Address

WASHINGTON                                    DC                  20002-7935

City                                          State              Zip Code

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**   Time of Infraction: **07:37 AM**   Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)   ☐ DENY (Appear for a Hearing)   ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:   Time of Infraction: _____   Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:** ☐ ADMIT (Pay Fine)   ☐ DENY (Appear for a Hearing)   ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| | GERARD ANDERSON | 10-13-2021 | 1018 |
|---|---|---|---|
| DCRA Employee Signature | Print Name | Date | Badge/Identification Number |

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.CivilInfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the side of this Notice and check the **ADMIT WITH EXPLANATION** box. **Do not send payment.** Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov.**

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. **Do not send payment.** Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov.** A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

1042

# EXHIBIT P

<div align="center">

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square

441 Fourth Street, NW, Suite 450N

Washington, DC 20001-2714

TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

</div>

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

<div align="center">

**FINAL ORDER**

</div>

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021. Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face. The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered. The Government also filed evidence of Respondent's last known home or business address. This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3] The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**." The penalty is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof, starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property, and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

1045

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**


_Claudia A. Crichlow_

_____
Claudia A. Crichlow
Principal Administrative Law Judge

1046

---

## PAYMENT INSTRUCTIONS

### STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office <u>requires</u> payment be accompanied with a payment voucher that the respondent must secure from DCRA's Office of Civil Infractions. <u>To request a payment voucher</u>, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

<u>INTEREST</u>
D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied. For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%. Interest begins 30 calendar days after the fine and/or assessment is levied.

Case No.: 2021-DCRA-VR22-00182

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**


**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com


I hereby certify that on September 7, 2022 this
document was served upon the parties named
on this page at the address(es) and by the
means stated.


//s W. Green

_____
Clerk / Deputy Clerk

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov

5

1048

## APPEAL RIGHTS

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

## HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you). HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal. D.C. Official Code § 2-1831.16(g).**

- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order. If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings. If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

### Notice of Infraction Number: <u>VR22-00182</u>

The Notice of Infraction referred to above was:

<u>X</u> Emailed to the Respondent on **December 3, 2021** using the email address(es) provided
by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es)
recorded on the Certificate of Service. The evenlope(s) included the return address for
the this agency.

At least 15 calendar days have passed since the email or mailing date described above. My
review of DCRA records to determine whether or not the email was returned as undeliverable or
whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice
of Infraction was not returned at any time subsequent to the the time it was either emailed or
mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____          __**December 24, 2021**____
Signature                                                      Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

### Notice of Infraction Number: <u>VR22-00182</u>

### CERTIFICATE OF SERVICE

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**<u>cb@colomariver.com</u>**

_Patrice Derricott_
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No.** **VR22-00182**

**12-3-2021**

**Date of Service**

**Issuing Agency:** **D.C. Department of Consumer and Regulatory Affairs**

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other ____ |

**423 KENNEDY ST HOLDINGS LLC**
**CHAMPE V. THORNTON**

| Business/Company Name | | Charge as Respondent (check): ☒ YES  ☐ NO |

**Individual/Agent Name** — Charge as Respondent (check): ☐ YES  ☒ NO

**1215 1ST ST NE**  cb@colomariver.com

| Mailing Address | | Email Address |
| **WASHINGTON** | **DC** | **20002-7935** |
| City | State | Zip Code |

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day. If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation<br>12G DCMR SUB-SECTION 302.4 | Fine for Infraction<br>$530.00 | Penalty (if applicable)<br>$ |

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**    Time of Infraction: **07:37 AM**    Previous Infractions Committed: ☐ 1  ☐ 2  ☐ 3  ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

**SIGNATURE:** _____
**Abatement required? Yes _____  No_____**

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable)<br>$ |

Nature of Infraction:

Date of Infraction:    Time of Infraction: _____    Previous Infractions Committed: ☐ 1  ☐ 2  ☐ 3  ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

**SIGNATURE:** _____
**Abatement required? Yes _____  No_____**

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

| DCRA Employee Signature | GERARD ANDERSON | 10-13-2021 | 1018 |
| | Print Name | Date | Badge/Identification Number |

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30*. **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the side of this Notice and check the **ADMIT WITH EXPLANATION** box. Do not send payment. Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714*; telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov**.

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. Do not send payment. Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714*; telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov**. A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT Q

## DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS

### Cover Sheet for Electronic Filing

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒ The case number is: ___2021-DCRA-VR22-00182___ .     ☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie                      Telephone: 202-271-5046
Mailing Address:                        E-mail address: cbp@harkenbuilders.com
1629 K St NW. Suite 300                 Representing: 423 Kennedy St Holdings LLC
City, State, Zip: Washington, DC 20006

I agree to receive documents from the court at my email address ☐ Yes ☐ No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:

_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

Person to Whom the Papers Were Sent:

_____
Address _____
City, State, Zip Code_____
Date the papers were sent:_____

Method of sending:
☐ Mail  ☐ Commercial Carrier
☐ Fax (Give Fax number) _____
☐ Hand delivery
☐ Email (only if the person has agreed; provide email address _____)

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

**DISTRICT OF COLUMBIA**

**OFFICE OF ADMINISTRATIVE HEARINGS**

One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

## REQUEST TO CHANGE A FINAL ORDER
### ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie

My Case No.: 2021-DCRA-VR22-00182

My Address: 1629 K St NW. Suite 300

My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006

My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

EXHIBIT R

## James D. Sadowski

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |
| **Importance:** | High |

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

| | |
|---|---|
| Notice of Infraction (NOI) Number: | VR22-00182 |
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP



1059

# EXHIBIT S

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

DISTRICT OF COLUMBIA
DEPARTMENT OF BUILDINGS
AS SUCCESSOR AGENCY TO THE
DISTRICT OF COLUMBIA
DEPARTMENT OF CONSUMER AND
REGULATORY AFFAIRS,[1]
    Petitioner,

    v.

423 KENNEDY ST HOLDINGS LLC,
    Respondent.

Case No.: 2021-DCRA-VR22-00182
NOI No.: VR22-00182

**ORDER VACATING FINAL ORDER**
**AND**
**DISMISSING CASE WITHOUT PREJUDICE**

### I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED,** that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED,** that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE;** and it is further

**ORDERED,** that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

## Certificate of Service:

**By Email:**

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov
       dob.filing@dc.gov

**By First-Class Mail (Postage Paid) and
Email:**

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on <u>December 12, 2022,</u>
this document was served upon the parties
named on this page at the address(es) and by
the means stated.

*(s) Joseph Harrison*

Joseph Harrison
Paralegal Specialist

- 3 -

## APPEAL RIGHTS

After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.

## HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you).**

## HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

- 4 -

# EXHIBIT T

★ ★ ★
▬▬▬▬▬
▬▬▬▬▬

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square 3260    Suffix [          ]    Lot 0056
List Name and adress of each owner of the real property encumbered by said
deed of trust, mortgage, or security instrument.)

TO:  423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC          PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER
SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM
UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE
TO BE HELD ON July 25                              , 20 23 , AT
THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10   P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT
FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM
THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS
NOTICE OF FORECLOSURE SHALL EXPIRE.

**Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260**

Security Instrument recorded in the land records of the District of Columbia at the
Recorder of Deed on April 8                              , 20 22 .

Liber: [          ]    Folio: [          ]    Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A          See Exhibit A
Phone              Last Known Address

Description
of Property: Multi-Family Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)
Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260    Lot: 0056    or Parcel No: [          ]

Holder of the Note (Name): WCP Fund I LLC
Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ [          1,598,839.60 *]
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
íRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î
$ [  N/A commercial loan  ]

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square | 3260 |   Suffix |   |   Lot | 0056

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 | ,20 | 23 | ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |
Date

_R D_

(Signature of Noteholder or his agent)

I, | Deborah A. Stewart | , a Notary Public in and for the
| District of Columbia |,
DO HEREBY CERTIFY THAT | Russell S. Drazin |
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June | , 20 | 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June | , 20 | 23 |.

_Deborah A Stewart_

Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy



# EXHIBIT A

<u>Borrower, Grantor, Record Owner:</u>

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC
20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street,
NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

<div align="center">Russell S. Drazin, Trustee</div>

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the**
**District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo                    [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC                              is the holder of the mortgage

recorded as Instrument Number 2022038745                    in the District

of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

SSL:

3260/0056

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on

this 21st                    day of June               , 20 23

by Christina Araujo                              (name of person) as

Vice President of Finance                    (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed)

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC  20015

Notary Public

My Commission Expires:



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

| | |
|---|---|
| RECORDING FEES | $25.00 |
| SURCHARGE | $6.50 |
| TOTAL: | $31.50 |

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

|  |  |
|---|---|
| | Plaintiff |

vs.

Case Number ___2023-CAB-004260___

Daniel Huertas

|  |  |
|---|---|
| | Defendant |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

*Clerk of the Court*

By _____
Deputy Clerk

Date ___July 17, 2023___

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                   Demandante

contra

                                                    Número de Caso: _____

Daniel Huertas
_____
                                   Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                          _SECRETARIO DEL TRIBUNAL_
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000                 Por: _____
_____
Dirección                                                         Subsecretario
Washington, DC  20006
_____

(202) 452-1400                                          Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828       Veuillez appeler au (202) 879-4828 pour une traduction       Để có một bài dịch, hãy gọi (202)879-4828

한국어로 통역을 원하시면 (202)879-4828로 전화주십시요        የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                    Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                                                        Plaintiff

vs.                                                                                            Case Number     2023-CAB-004260

DP Capital, LLC d/b/a Washington Capital Partners

_____
                                                                        Defendant

## SUMMONS

To the above named Defendant:

　　　　You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

　　　　You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney                                           _Clerk of the Court_

801 17th Street, NW, Suite 1000
_____
Address                                                                    By _____
Washington, DC  20006                                                             Deputy Clerk

(202) 452-1400
_____
Telephone                                                                  Date         **July 17, 2023**

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주세요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

　　IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

　　If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                          Super. Ct. Civ. R. 4



## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
#### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                Demandante

            contra

                                                    Número de Caso: _____

DP Capital, LLC d/b/a Washington Capital Partners
_____
                                Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000                 Por: _____
_____
Dirección                                                        Subsecretario
Washington, DC 20006
_____

(202) 452-1400                                  Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202)879-4828로 전화주시기 바랍니다        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                              Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                                    Plaintiff

vs.

WCP Fund, I, LLC                                    Case Number ____2023-CAB-004260____

_____
                                    Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000                    _Clerk of the Court_
_____
Address                                            By _____
Washington, DC  20006                                    Deputy Clerk

(202) 452-1400                                     Date ___July 17, 2023___
_____
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828   ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                    Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                              Demandante

        contra

                                          Número de Caso: _____

WCP Fund, I, LLC
_____
                              Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000                 Por: _____
_____                              Subsecretario
Dirección
Washington, DC 20006

(202) 452-1400                                   Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202)879-4828

만일 번역을 원하시면 (202)879-4828로 전화해 주십시오    የአማርኛ ተርጓሚ ለማግኘት (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                         Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC
_____
                                                    Plaintiff
                    vs.
                                                                        Case Number    2023-CAB-004260
Russell S. Drazin
_____
                                                    Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney

801 17th Street, NW, Suite 1000
_____
Address
Washington, DC  20006
_____

(202) 452-1400
_____
Telephone

_Clerk of the Court_

By _____
                                    Deputy Clerk

Date _____
                              **July 17, 2023**

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시요.    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                            Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                    Demandante

                contra

                                                        Número de Caso: _____

Russell S. Drazin
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____     Por: _____
Dirección                                            Subsecretario
Washington, DC 20006

(202) 452-1400
_____     Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828로 전화주십시오      የአማርኛ ትርጉም ከፈለጉ (202) 879-4828 ይደውሉ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

423 Kennedy St Holdings LLC

_____
                          Plaintiff

vs.

SF NU, LLC                                        Case Number    2023-CAB-004260

_____
                          Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

James D. Sadowski, #446635
_____
Name of Plaintiff's Attorney                      _Clerk of the_

801 17th Street, NW, Suite 1000
_____        By _____
Address
Washington, DC  20006

(202) 452-1400
_____        Date        **July 17, 2023**
Telephone

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시요        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                        Super. Ct. Civ. R. 4



# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

423 Kennedy St Holdings LLC
_____
                                    Demandante

          contra

                                              Número de Caso: _____

SF NU, LLC
_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o el Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

James D. Sadowski, #446635
_____          *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

801 17th Street, NW, Suite 1000
_____     Por: _____
Dirección                                            Subsecretario
Washington, DC 20006

(202) 452-1400
_____     Fecha _____
Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

한국어로 번역을 원하시면 (202) 879-4828로 전화주십시오      ָﻤﺎﺗﻴﻜﺮ ﺗﻮﻟﻮﭘ ﻟﻤﺎﭼﭼﺖ (202) 879-4828 ﻮﻮﺩﻭﻟﻮ

**IMPORTANTE:** SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                    Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

423 Kennedy St Holdings, LLC

Case Number: _____2023-CAB-004260_____

vs

Date: _____

DP Capital, LLC d/b/a Washington Capital Partners, et, al.

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* James D. Sadowski | Relationship to Lawsuit |
|---|---|
| Firm Name: Greenstein Delorme & Luchs PC | [X] Attorney for Plaintiff |
| | ☐ Self (Pro Se) |
| Telephone No.:  Six digit Unified Bar No.: 202-452-1400 ext. 7805    446635 | ☐ Other: _____ |

TYPE OF CASE: ☐ Non-Jury    ☐ 6 Person Jury    [X] 12 Person Jury

Demand: $ 1 Million    Other: Punitive Damages

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: 2022-CAB-005935    Judge: Ebony Scott    Calendar #: _____

Case No.: _____    Judge: _____    Calendar#: _____

---

**NATURE OF SUIT:** *(Check One Box Only)*

**A. CONTRACTS** * Implied Covenant of Good Faith and Fair Dealing      **COLLECTION CASES**

| | |
|---|---|
| [X] 01 Breach of Contract* | ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied |
| ☐ 02 Breach of Warranty | ☐ 17 OVER $25,000 Pltf. Grants Consent   ☐ 18 OVER $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 27 Insurance/Subrogation   ☐ 26 Insurance/Subrogation |
| ☐ 07 Personal Property | Over $25,000 Pltf. Grants Consent   Over $25,000 Consent Denied |
| ☐ 13 Employment Discrimination | ☐ 07 Insurance/Subrogation   ☐ 34 Insurance/Subrogation |
| ☐ 15 Special Education Fees | Under $25,000 Pltf. Grants Consent   Under $25,000 Consent Denied |
| | ☐ 28 Motion to Confirm Arbitration   Award (Collection Cases Only) |

**B. PROPERTY TORTS**

| | | |
|---|---|---|
| ☐ 01 Automobile | ☐ 03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐ 04 Property Damage | |
| ☐ 07 Shoplifting, D.C. Code § 27-102 (a) | | |

**C. PERSONAL TORTS**  1. Tortious Interference with Business Relations ; 2. Breach of Fiduciary Duty

| | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐ 10 Invasion of Privacy | ☐ 17 Personal Injury- (Not Automobile, Not Malpractice) |
| ☐ 02 Alienation of Affection | ☐ 11 Libel and Slander | ☐ 18 Wrongful Death (Not Malpractice) |
| ☐ 03 Assault and Battery | [X] 12 Malicious Interference | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile- Personal Injury | ☐ 13 Malicious Prosecution | ☐ 20 Friendly Suit |
| ☐ 05 Deceit (Misrepresentation) | ☐ 14 Malpractice Legal | ☐ 21 Asbestos |
| ☐ 06 False Accusation | ☐ 15 Malpractice Medical (Including Wrongful Death) | ☐ 22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 16 Negligence- (Not Automobile, Not Malpractice) | ☐ 23 Tobacco |
| ☐ 08 Fraud | | ☐ 24 Lead Paint |

SEE REVERSE SIDE AND CHECK HERE      IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
      (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [x] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
      (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
      Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

Injunctive Relief - to Stop a Foreclosure

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
      Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
      Judgment [ D.C. Code §
      2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
      42-3301, et seq.)

- [ ] 21 Petition for Subpoena
      [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
      (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____
/s/ James D. Sadowski

Attorney's Signature

July 13, 2023 _____

Date

CV-496/ June 2015



## Superior Court of the District of Columbia
### Civil - Civil Actions Branch
### 500 Indiana Ave NW, Room 5000, Washington DC 20001
### (202) 879-1133 | www.dccourts.gov

**Case Number:** 2023-CAB-004260

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

### INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/13/2023 | 9:30 AM | Remote Courtroom 318 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Milton C Lee. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1)  Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

    Link: dccourts.webex.com/meet/ctb318

    Meeting ID: 129 801 7169

2)  When you are ready, click "Join Meeting".
3)  You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1)  Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2)  Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1)  For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2)  For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3)  For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች:**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

1087

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.



## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

📞 202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

**The remote site locations are:**



| **Remote Site - 1** | **Remote Site - 4** |
| --- | --- |
| Balance and Restorative Justice Center<br>1215 South Capitol Street, SW<br>Washington, DC 20003 | Balance and Restorative Justice Center<br>920 Rhode Island Avenue, NE<br>Washington, DC 20018 |
| **Remote Site - 2** | **Remote Site - 5** |
| Balance and Restorative Justice Center<br>1110 V Street, SE<br>Washington, DC 20020 | Reeves Center<br>2000 14th Street, NW, 2nd Floor<br>Community Room<br>Washington, DC 20009 |
| **Remote Site - 3** | **Remote Site - 6** |
| Balance and Restorative Justice Center<br>118 Q Street, NE<br>Washington, DC 20002 | Reeves Center<br>2000 14th Street, NW, Suite 300N<br>Office of the Tenant Advocate<br>Washington, DC 20009<br>*** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

1089

# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

Los centros de acceso remoto son:

**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.** Si necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   DP Capital LLC                    **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

DP Capital LLC
8401 Greensboro DR STE 960
McLean VA  22102

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  WCP Fund I, LLC               **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

WCP Fund I, LLC
2815 Hartland RD STE 200
Falls Church VA  22043

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:** Daniel Huertas                **Case Number:**      2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Daniel Huertas
909 Chinquapin RD
McLean VA  22102

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  Russell  S. Drazin                          **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Russell  S. Drazin
4400 Jenifer ST NW STE 2
Washington DC  20015

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  SF NU, LLC                                    **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

SF NU, LLC
1455 Research BLVD STE 510
Rockville MD  20850

1099

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**    423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   James D Sadowski                      **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

James D Sadowski
GREENSTEIN DELORME & LUCHS PC
801 17TH STREET NW
SUITE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   Alexandria J Smith          **Case Number:**     2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Alexandria J Smith
801 17TH ST NW
STE 1000
WASHINGTON DC  20006

1103

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**   James D Sadowski                    **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

James D Sadowski
GREENSTEIN DELORME & LUCHS PC
801 17TH STREET NW
SUITE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

**To:**  Alexandria J Smith                    **Case Number:**    2023-CAB-004260

### NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/13/2023** at **9:30 AM** in **Remote Courtroom 318**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Alexandria J Smith
801 17TH ST NW
STE 1000
WASHINGTON DC  20006

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
                8/10/2023

**PRAECIPE SUBMITTING VERIFICATION/AFFIDAVIT TO
PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE**

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby submits the

Verification/Affidavit of Mel Negussie that was supposed to be included in the Plaintiff's

Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent

Foreclosure ("Emergency Motion") filed on July 12, 2023.  The Verification/Affidavit, which is

attached to this Praecipe, was not included with the Emergency Motion due to an error by the

undersigned.  The undersigned apologizes to the Court and opposing counsel for this oversight.

          Respectfully submitted,

          GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 14, 2023        /s/ James D. Sadowski
                           Alexandria J. Smith (D.C. Bar. No. 1781067)
                           James D. Sadowski (D.C. Bar No. 446635)
                           801 17th Street, NW, Suite 1000
                           Washington, DC 20006
                           Telephone:  (202) 452-1400
                           Email:  jds@gdllaw.com
                           *Counsel for Plaintiff Developer RE1 LLC*

## Certificate of Service

I Hereby Certify that a copy of this Praecipe and the attachment were served by the

Court's electronic filing system this 14th day of July 2023, and a notice of filing should be served

on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
8/10/2023

## VERIFICATION / AFFIDAVIT OF MEL NEGUSSIE

I, Mel Negussie, declare under oath that:

1.    I am over the age of 18, I am otherwise competent to be a witness, and I am authorized to give this Verification / Affidavit on behalf of Developer RE1, LLC, the Plaintiff in this case ("Developer RE1").

2.    I have personal knowledge of the facts set forth in the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion for TRO").  The facts stated in the Motion for TRO are true and correct to the best of my knowledge, information, and belief.

3.    Developer RE1 will be irreparably harmed if a foreclosure sale that is scheduled for July 25, 2023 at 2:00 p.m., which sale was orchestrated by the Defendants in this case, is not stopped by the issuance of a temporary restraining order.

I declare under penalty of perjury that the foregoing facts are true to the best of my knowledge.

_____
Mel Negussie

4871-2480-0880.v1



# Superior Court of the District of Columbia
## Civil - Civil Actions Branch
### 500 Indiana Ave NW, Room 5000, Washington DC 20001
### (202) 879-1133 | www.dccourts.gov

**Case Number:** 2023-CAB-004260

**Case Caption:** 423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/13/2023 | 9:30 AM | Remote Courtroom 318 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Milton C Lee. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.

2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.

3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).

4) At the time stated below, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.

5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.

6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Anita M. Josey-Herring

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb318

   Meeting ID: 129 801 7169

2) When you are ready, click "Join Meeting".

3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.


**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

2) Enter the Webex Meeting ID listed above followed by "##"


**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.

2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.

3) For case questions, call the Civil Actions Branch Clerk's Office at (202) 879-1133.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov . The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘሩትን የጸሀፊ ቢሮ (ክለርክ'ስ አፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

   Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.

- You can also find the list of legal services providers at dccourts.gov/coronavirus by clicking on the link that says, "List of Legal Service Providers for Those Without an Attorney."

- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.

- Witnesses: tell the judge if you want a witness to testify at your hearing.

- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing



- Join the hearing a few minutes early!

- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.

- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.

- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).

- Speak slowly and clearly so everyone hears what you are saying.

- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.

- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.

- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.

- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.

- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings
### (Click here for more information)



- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.

- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.

- Look at the camera when you speak and avoid moving around on the video.

- Wear what you would normally wear to court.

- Sit in a well-lit room with no bright lights behind you.

- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# Tips for Using DC Courts Remote

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings.  The Courts are committed to enhancing access to justice for all.

There are six remote access sites throughout the community which will operate: **Monday – Friday, 8:30 am – 4:00 pm.**

### The remote site locations are:

| **Remote Site - 1** <br> Balance and Restorative Justice Center <br> 1215 South Capitol Street, SW <br> Washington, DC 20003 |
| --- |
| **Remote Site - 2** <br> Balance and Restorative Justice Center <br> 1110 V Street, SE <br> Washington, DC 20020 |
| **Remote Site - 3** <br> Balance and Restorative Justice Center <br> 118 Q Street, NE <br> Washington, DC 20002 |



| **Remote Site - 4** <br> Balance and Restorative Justice Center <br> 920 Rhode Island Avenue, NE <br> Washington, DC 20018 |
| --- |
| **Remote Site - 5** <br> Reeves Center <br> 2000 14th Street, NW, 2nd Floor <br> Community Room <br> Washington, DC 20009 |
| **Remote Site - 6** <br> Reeves Center <br> 2000 14th Street, NW, Suite 300N <br> Office of the Tenant Advocate <br> Washington, DC 20009 <br> *** No walk-ins at this location*** |

If you want to use a remote site location for your hearing, call **202-879-1900** or email DCCourtsRemoteSites@dcsc.gov **at least 24 hours before your hearing to reserve a remote access computer station**.  If you require special accommodations such as an interpreter for your hearing, please call **202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements**.

**\*You should bring the following items when you come to your scheduled site location\***

1. Your **case number** and any **hyperlinks** provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

**\*Safety and security measures are in place at the remote sites.**

**Contact information to schedule your remote access computer station:**
Call:  **202-879-1900**
Email:  DCCourtsRemoteSites@dcsc.gov

## Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay seis sitios de acceso remoto que funcionarán de l**unes a viernes, de 8:30 am a 4:00 pm**.

<p style="text-align:center">Los centros de acceso remoto son:</p>



**Sitio Remoto - 1**
Balance and Restorative Justice Center
1215 South Capitol Street, SW
Washington, DC 20003

**Sitio Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sitio Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Sitio Remoto - 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Sitio Remoto - 5**
Reeves Center
2000 14th Street, NW, 2nd Floor
Community Room
Washington, DC 20009

**Sitio Remoto - 6**
Reeves Center
2000 14th Street, NW, Suite 300N
Office of the Tenant Advocate
Washington, DC 20009
*No se puede entrar sin cita previa*

Si desea usar un sitio remoto para su audiencia, llame al **202-879-1900** o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov **al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto. Si** necesita adaptaciones especiales, como un intérprete para la audiencia, llame **al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.**

**\*Cuando concurra al sitio programado debe llevar los siguientes artículos\***

1. Su **número de caso** y todos los **hipervínculos** que le hayan proporcionado los Tribunales para la audiencia programada.

2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.

3. Materiales para tomar nota, como papel y lápiz.

**\*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.**

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: **202-879-1900**
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

1117

Case 25-10030-ELG    Doc 1-32    Filed 09/04/25    Entered 09/04/25 09:05:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part II) Page 600 of 1716

eFiled
07/17/2023 12:49:10 PM
Superior Court
of the District of Columbia

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| Developer RE1 LLC, | |
| Plaintiff, | |
| | Case No. 2022 CAB 005935 |
| v. | Judge Ebony Scott |
| DP Capital, LLC, et al. | |
| Defendants. | |

### OPPOSED MOTION FOR PROTECTIVE ORDER TO
### PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 26(c), and move this Honorable Court to enter a protective order prohibiting Developer RE1 LLC (the "Plaintiff") from taking the deposition of Mr. Drazin, counsel for WCP and DPCL,[1] and in support thereof state as follows:

### I.   Introduction

The Plaintiff has noticed the deposition of Mr. Drazin, outside general counsel to WCP and DPCL. Mr. Drazin has counseled WCP and DPCL in connection with the loans at issue in this case and has been joined as a co-defendant in this case for reasons that continue to evade understanding. Indeed, while the Plaintiff has sued Mr. Drazin (perhaps with designs of using such as a pretext for taking his deposition), the Plaintiff has not actually made Mr. Drazin a party to any substantive

_____

[1] A copy of the notice of deposition is attached hereto as Exhibit A.

1

cause of action herein. Rather, Mr. Drazin is merely named as a defendant on a claim for "injunctive relief," which case law has long held to be a remedy but not a cause of action.[2]

This effort of the Plaintiff is improper and appears to be undertaken for solely harassing and vexatious purposes. Case law teaches that the deposing of opposing lawyers is not only frowned upon but, indeed, fodder for the entry of a protective order in most situations. This case is no different, and the facts *sub judice* well lend themselves to entry of an order prohibiting the subject deposition from occurring.

## II.    Standard

The rules of this Honorable Court, modeled after the analogous Federal Rules of Civil Procedure, expressly permit, *inter alia*:

> A party or any person from whom discovery is sought may move for a protective order in this court… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery…

D.C. Super. Ct. R. Civ. P. 26(c). *See also*, Fed. R. Civ. P. 26(c) (providing substantially identically, save for interlineating the words "in the court where the action is pending" for the words "this court").

---

[2] . *See, e.g.*, *Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015) ("…the claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy, not a freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199 (D.D.C. 2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014); *Guttenberg v. Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*, 2022 WL 1773479, at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not assert any separate cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 152 (D.D.C. 2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but rather ...a form of relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174 F.Supp.3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199))).

2

Ordinarily, "'the burden is upon the party seeking non-disclosure or a protective order' to show why it should be granted." *Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 993 n. 15 (D.C. 2011) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Plough, Inc. v. Nat'l Acad. of Sciences*, 530 A.2d 1152, 1156 n. 5 (D.C. 1987)). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "Courts … presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Shelton v. Am. Motors Sales Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir.2003); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009); *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011)).[3]

### III. Argument: The Deposition of Mr. Drazin Should be Prohibited

#### a. The Plaintiff Cannot Meet Its Burden

As noted *supra*, there exists a rebuttal presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Plaintiff cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Drazin can be obtained from other

---

[3] There are numerous references to precedent from federal courts herein, inasmuch as District of Columbia Rule 26 is to be interpreted in accord with Federal Rule of Civil Procedure 26. *See, e.g.*, *Plough Inc.*, 530 A.2d at 1156, n. 5 ("Super. Ct. Civ. R. 26(c) is identical to its federal counterpart. 'In interpreting the applicable discovery rules, we are guided generally by decisions construing the Federal Rules of Civil Procedure, which are substantially the same as the rules of the trial court.'") (quoting *Dunn v. Evening Star Newspaper Co.*, 232 A.2d 293, 295 (D.C. 1967)).

3

witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for WCP and DPCL.

The United States District Court for the District of Columbia has invoked a three prong test, established by the United States Court of Appeals for the Eighth Circuit, in assessing whether a deposition of opposing counsel ought to be permitted, requiring a proponent to demonstrate that "(1) no other means exists to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327).

Here, Mr. Drazin has no discoverable knowledge that cannot be gleaned from WCP, DPCL and/or Mr. Huertas (who is scheduled to be deposed on Wednesday, July 19, 2023). While Mr. Drazin has counseled WCP and DPCL in connection with their loans to the Plaintiff, the whole of the loan documents are possessed by his clients (which documents, through the discovery process, have now been produced to the Plaintiff). Equally, Mr. Drazin never interacted directly with the Plaintiff, except (a) through e-mails, which the Plaintiff has; and (b) at a mediation held following the commencement of this case; even if some aspect of that mediation were to become discoverable (which is far-fetched), Mr. Huertas was present for the entirety of the meeting and can accordingly testify to the events that occurred therein.

Indeed, Mr. Drazin's only knowledge relevant to this case is directly attributable to either (i) his review of documents, furnished by his clients, all of which his clients can produce (and have produced) in discovery to the extent they are not privileged; and (ii) his communications with his clients, which are highly privileged and not subject to discovery. Mr. Drazin has no other pertinent knowledge – he has not interfaced with the Plaintiff, except as disclosed above; he has never

4

personally visited the building that is the collateral for the loans at issue in this case; he did not personally collect payments from the Plaintiff; and he did not elect to lend monies to the Plaintiff.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Drazin can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his clients and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of discovery. And while he could testify to his other interactions with DPCL and WCP as their counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the case at bar.

This leaves the third element – whether information is crucial to the case at bar. Since there is no information that Mr. Drazin can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matter *sub judice*. It is not merely that Mr. Drazin lacks unique possession of discoverable information crucial to this case; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything else can be gleaned through WCP, DPCL, Mr. Huertas, and the troves of documents that DPCL has produced pursuant to the Plaintiff's elastic discovery requests herein.

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly appropriate to prohibit the Plaintiff from deposing Mr. Drazin.

More macroscopically, it bears notation that case law rather strictly informs why such a high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and

their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the 'Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi – in a case invoking the same *Shelton* test as has been embraced in the District of Columbia – explained, "As this court has stated in previous cases, depositions of opposing counsel are discouraged, as they disrupt the adversarial process and lower the standards of the profession. Thus, a party should not be permitted to take the deposition of another party's attorney except in the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas, "While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D.

6

376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, <mark>132 F.R.D. 687, 689</mark> (D. Kan. 1990)).

The *Wilson* and *Mike* holdings are neither random nor outliers. To the contrary, they are both cited herein because they have both been favorably cited by the United States District Court for the District of Columbia. *See Stern*, <mark>276 F.R.D. at 381</mark>. And that local case also notes a blizzard of concurring holdings from other courts, including ones sitting in New York and Illinois. *Id.*

### b. Mr. Drazin's Ministerial Service as Substitute Trustee Does Not Alter the Impropriety of His Deposition Being Taken

Following a good faith conference with counsel for the Plaintiff, it is understood that at least one of the theories espoused for deposing Mr. Drazin is that he is the substitute trustee on a deed of trust, securing an obligation of the Plaintiff to WCP, that is set to be foreclosed. It is, however, a longstanding practice in the District of Columbia for secured parties to have their counsel serve as trustees under deeds of trust, with the resulting obligations being largely ministerial in nature. This reality does not change the analysis set forth above.

As a starting point, Mr. Drazin's service as trustee does not alter any of the *Shelton* factors discussed *supra*. In this capacity, Mr. Drazin has (i) filed an Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper. And there is, as such, nothing about Mr. Drazin's service in this role that would lend

itself to his being asked questions at deposition where the answers to those questions are not readily ascertainable from other sources.

Further, though, the fact that Mr. Drazin's service as trustee does not alter the *Shelton* factors speaks volumes to the ministerial nature of such service. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA,* 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.,* 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n,* 505 F.2d 370, 377 n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n,* 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC,* 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in December 2022 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a

preceding series of independent defaults that include (i) the Plaintiff failing to make at least four payments in a timely fashion; (ii) the Plaintiff allowing a water/sewer lien to accrue on the real estate; and (iii) the Plaintiff allowing a tax lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any discoverable information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to deposition within the contours of the *Shelton* standard.

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiff from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Dated: July 17, 2023                                  Respectfully Submitted,

                                                      /s/ Maurice B. VerStandig
                                                      Maurice B. VerStandig, Esq.
                                                      DC Bar #1034066
                                                      The VerStandig Law Firm, LLC
                                                      9812 Falls Road, #114-160
                                                      Potomac, Maryland 20854
                                                      Telephone: 301-444-4600
                                                      Facsimile: 301-444-4600
                                                      Electronic Mail: mac@mbvesq.com
                                                      *Counsel for the Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on Tuesday, July 11, 2023, I spoke with James Sadowski, counsel for the plaintiff herein, about whether or not his client would agree to not depose Russell Drazin. Mr. Sadowski and I spoke cordially and had a substantive, professional discussion concerning the issue. We were not, however, able to reach an agreement as to the entry of a protective order barring the plaintiff from deposing Mr. Drazin.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## [PROPOSED] PROTECTIVE ORDER

Upon consideration of the Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel (the "Motion") filed by DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin (collectively, the "Defendants"), any opposition thereto, the authorities cited in the Motion, and the record herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the plaintiff herein is prohibited from taking the deposition of Russell Drazin, Esq.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

# Exhibit A

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

      *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery – 8/10/23

## NOTICE OF DEPOSITION OF RUSSELL DRAZIN

Please take notice that the Plaintiff, Developer RE1 LLC ("Developer RE1"), by undersigned counsel, will take the deposition of Russell Drazin before an officer duly authorized to administer oaths, commencing at the following time and continuing thereafter until completed or recessed.

| Deponent | Date & Time |
|---|---|
| Russell Drazin | Wednesday, July 19, 2023 at 9:30 a.m. |

The deposition will take place at the offices of Greenstein DeLorme & Luchs, P.C., 801 17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue day-to-day until completed.  The deposition is being taken for the purposes of discovery and/or for use at trial and for such other purposes as are permitted under applicable law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 9, 2023

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Russell

Drazin was served on July 9, 2023, using eFileDC, and a notice of service should be served on

all counsel of record in this case.

/s/ Alexandria J. Smith
Alexandria J. Smith

8161-0002\4880-9034-8910-1

In The Superior Court of The District Of Columbia
Civil Division

| | |
|---|---|
| Developer RE1 LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2022-CAB-005935 |
| DPA Capital, LLC d/b/a Washington Capital Partners, et al., | Judge Ebony Scott |
| *Defendants*. | |
| 423 Kennedy St Holdings LLC, | |
| *Plaintiff*, | |
| v. | Case No. 2023-CAB-004260 |
| DPA Capital, LLC d/b/a Washington Capital Partners, et al., | Judge Milton Lee |
| *Defendants*. | |

## Notice of Related Cases

Pursuant to D.C. Super. Ct. Civ. R. 40-I.(f)(2)(B), Counsel for 423 Kennedy St Holdings LLC and Developer RE1, LLC notifies the judges that the above-captioned cases are related within the meaning of Rule 40-I.(f). The two cases, the earliest of which is 2022-CAB-005935, involve common issues of facts, i.e., the Defendants alleged that the Plaintiffs were in default under similar loan documents after they sabotaged a refinance of the existing loans. The claims in both cases are also substantially the same, and refer to similar events and transactions. The

related cases also currently have four of five Defendants that are the same. The two cases will
also have the same five Defendants (adding SF NU, LLC as a Defendant in 2022-CAB-005935)
and overlapping claims if Developer RE1 is granted leave to amend its complaint in the older
case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    July 17, 2023

/s/ James D. Sadowski

James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Telephone:  (202) 452-1400
Facsimile:  (202) 452-1410
E-mail:   jds@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings,
LLC* and *Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July 2023, a true copy of the foregoing

Notice of Related Cases was filed in both of the above-captioned cases (2022-CAB-005935 and

2023-CAB-004260) using eFileDC and that a notice of filing should be sent electronically to

counsel of record in both cases. Before filing this notice in the newer case (2023-CAB-004260),

I also added all counsel of record for the Defendants in the older case to the service list for the

newer case.

/s/ James D. Sadowski

Janes D. Sadowski

2

eFiled
07/17/2023 11:14:22 AM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:05:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part I) All Docket Entries    Page 1064 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

DP Capital, LLC, et al.

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") state as follows:

### I.    Introduction

In December 2021, the Plaintiff borrowed slightly over $4 million from WCP and DPCL, through two loans memorialized by promissory notes and secured by deeds of trust. Some seven months later, in July 2022, the Plaintiff defaulted on both promissory notes by failing to timely make interest payments. The Plaintiff defaulted again in October 2022, once again failing to timely make interest payments. Another default, for the same reason, followed in November 2022. A fourth monetary default – again, for failure to timely make an interest payment – ensued in December 2022.

The Plaintiff's defaults did not stop there. The Plaintiff failed to pay water and sewer bills for the property securing the loans, causing a $44,857.93 lien to be imposed. The Plaintiff also

1

failed to timely pay more than $16,700.00 in taxes on the property, causing another lien to incur. And then, on December 23, 2022, the Plaintiff failed to pay the loans at maturity.

With more than six months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than six months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

2

## II.        Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, <mark>667 F. Supp. 2d 67, 74</mark> (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, <mark>295 A.2d 498, 501</mark> (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, <mark>665 A.2d 185, 187</mark>–88 (D.C. 1995) (quoting *In re Antioch Univ.*, <mark>418 A.2d 105, 109</mark> (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp.*, <mark>571 F.3d 1288, 1292</mark> (D.C. Cir. 2009) (citing *CFGC v. England*, <mark>454 F.3d 290, 297</mark> (D.C. Cir. 2006)).

## III.        Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1.        On December 24, 2021, WCP loaned the Plaintiff the sum of $3,579,000.00 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B.

2.        Of even date therewith, WCP loaned the Plaintiffs an additional sum of $524,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D.

3

3.      Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Motion as Exhibit D, at § 3.

4.      The payments due on July 1, 2022 were not made until July 14, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

5.      The payments due on October 1, 2022 were not made until October 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

6.      The payments due on November 1, 2022 were not made until November 9, 2022 for one loan and November 10, 2022 for the other loan. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

7.      The payments due on December 1, 2022 were not made until December 6, 2022. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

8.      Both loans matured on December 24, 2022. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B; Commercial Deed of Trust Note, attached to Motion as Exhibit D.

9.      Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for First Loan, attached hereto as Exhibit 1; Payment History for Second Loan, attached hereto as Exhibit 2.

10. Both the First Loan and the Second Loan are secured by deeds of trust on the real

property commonly known as 5501 1st Street, NW, Washington, DC 20011 and 5505 1st Street,

NW, Washington, DC 20011 (the "Property"). *See* Deed of Trust, attached to Motion as Exhibit A;

Deed of Trust, attached to Motion as Exhibit C.

11. Both deeds of trust require the Plaintiff to pay all taxes and obligations in a timely

manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than
> the due date thereof or the date any fine, penalty, interest or cost may be added
> thereto or imposed by or pursuant to law for the nonpayment thereof (whichever
> date shall first occur) or, at the direction of the Beneficiary, as soon as the same
> become liens, whether or not then due and payable, any Impositions upon or
> assessed against the Mortgaged Property or arising in respect of the occupancy, use
> or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver
> to the Beneficiary from time to time receipts evidencing the payment of all such
> Impositions.

*See* Deed of Trust, attached to Motion as Exhibit A, at § 4.2; Deed of Trust, attached to Motion as

Exhibit C, at § 4.2. *See also*, *Id.* at § 1.0(d) (defining "[i]mpositions" to include "real estate taxes"

and "water and sewer rents and charges," among other obligations).

12. The Plaintiff failed to pay its water and sewer bills, causing a $44,857.93 lien to be

placed upon the Property in August 2022 (with the subject lien being superior to that of WCP and

DPCL). Plaintiff's First Amended Complaint at ¶¶ 81(a), 83; D.C. Code § 34-2407.02(a)

(providing that a certificate of delinquency for unpaid water and sewer charges "shall constitute a

continuing lien against the real property"); D.C. Code § 34-2407.02(b) (providing "[a] lien for

water and sanitary sewer charges shall have priority over any other lien, except a lien for District

taxes").

13. The Plaintiff also failed to timely pay more than $16,700.00 in taxes on the Property

for the second half of 2022, creating another a lien on the Property superior to that of WCP and

DPCL. *Id.* at ¶¶ 81(b), 91; D.C. Code § 47-1331(a) ("A tax shall automatically become a lien on

the real property on the date the tax was due and unpaid…"); D.C. Code § 47-1331(b) ("The lien

for a tax shall be a prior and preferred claim over all other liens and shall be perpetual.").

14.     Neither the promissory notes nor the deeds of trust require written notice of a

default, nor of acceleration upon default, being commercial loan instruments governed by District

of Columbia law. *See* Commercial Deed of Trust Note, attached to Motion as Exhibit B, *passim*;

Commercial Deed of Trust Note, attached to Motion as Exhibit D, *passim*; Deed of Trust, attached

to Motion as Exhibit A, *passim*; Deed of Trust, attached to Motion as Exhibit C, *passim*.

15.     The promissory notes and deeds of trust expressly provide that WCP and DPCL

may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without

waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note,

attached to Motion as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Motion as

Exhibit D, § 5; Deed of Trust, attached to Motion as Exhibit A, § 11.4; Deed of Trust, attached to

Motion as Exhibit C, § 11.4.

**IV.     Argument: The Motion Merits Rejection**

**a.   The Plaintiff is Not Likely to Succeed on the Merits**

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes

at maturity, preceded by multiple payment defaults thereunder and the imposition of multiple

municipal liens on the collateral securing those loans, is not grounds to foreclose under standard

commercial deeds of trust. This is *reductio ad absurdum*.

**i.   Tortious Interference with Business Relations**

The heart of the claim for tortious interference with business relations (Count I) is that

WCP and DPCL should not have declared the promissory notes to be in default on December 8,

2022, when the Plaintiff had already defaulted on each of the notes and their correlative deeds of

trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent

7

default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited more than six months after the loans matured to notice foreclosures, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

## ii.  Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing. Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least seven separate times, including a failure to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

<center>8</center>

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive just over $4,000,000.00 in loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received those fruits. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iii.   The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(5). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(3), and that the violations have been cured, *Id.* at § IV(b)(5). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

<div align="center">9</div>

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation; the Plaintiff repeatedly made late payments multiple times not enumerated above – the late payments identified herein are only those where the delinquency extended for *at least* five days. And, similarly, allowing tens of thousands of dollars in senior liens to encumber a lender's collateral, because of the non-payment of water/sewer and tax bills, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, the late payments were ultimately made on installment interest. And perhaps the senior liens were ultimately retired (that seems less clear). Those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types), but to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $5,000,000.00 on account of loans that matured and were not repaid upon maturity. And this has been true for more than six months, with the maturity having occurred toward the end of 2022.[1]

### iv.  The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is without legal support, as the District of Columbia expressly allows parties to contractually bargain for damages arising on account of contractual breaches.

---

[1] The Motion also argues that an affiliate relationship does not invite a breach of the loan documents. Motion at § IV(b)(3). WCP and DPCL dispute this assertion and believe the relevant third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents – not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

10

The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an agreement to exceed the page count ordinarily governing motions practice). This is problematic, inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms....

11

[A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx*, 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110 (D.C. 2002))).[2]

### b.  The Motion Does Not Demonstrate Irreparable Harm

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the

---

[2] In denying a similar motion for a temporary restraining order in a sister case, this Honorable Court observed, *inter alia*, "Additionally, the Court finds Defendant has acted in accordance with the terms of the contract." *See* Order, attached hereto as Exhibit 3.

Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. <mark>11 U.S.C. § 362</mark>. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c.  Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

13

1146

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

## V.      Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $5,000,000.00. The debt is accruing interest at the rate of $2,735.33 per day. *See* Payoff Statements, attached to Motion as Exhibits M and N. And

14

that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $998,395.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $998,395.45; and (iii) afford such other and further relief as may be just and proper.

<center>15</center>

<center>1148</center>

Dated: July 17, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 17th day of July 2023, and a notice of filing should be served on all counsel

of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

1149

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**[PROPOSED] ORDER**

Upon consideration of the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion") filed by the plaintiff herein, the opposition of the defendants herein thereto, the authorities cited in the defendants' brief in opposition, and the record herein, it is, this _____ day of _____, 2023, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, DENIED

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

1150

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due C | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Principal) | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Principal) | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inte | Unapplied Fund | Principal Payoff | Balance (Total) | Scheduled Payment Stat | Use Late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LP## | Unpaid | 7/1/2023 | -11 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 Uncheduled | | | 71580.01 |
| LP## | Unpaid | 6/1/2023 | 19 | | | Defaulted | 24624.51 | 0.00 | 45041.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | | 73966.00 |
| LP## | Unpaid | 5/1/2023 | 50 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 Uncheduled | | | 71580.01 |
| LP## | Unpaid | 4/1/2023 | 80 | | | Defaulted | 24624.51 | 0.00 | 45041.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | | 73966.00 |
| LP## | Unpaid | 3/1/2023 | 111 | | | Defaulted | 22241.50 | 0.00 | 44566.50 | 66808.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 66808.00 Uncheduled | | | 66808.00 |
| LP## | Unpaid | 2/1/2023 | 139 | | | Defaulted | 24624.51 | 0.00 | 45041.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 Uncheduled | | | 73966.00 |
| LP## | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 12/1/2022 | 201 | 12/6/2022 9:07 | Wire | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 2383.02 ACH - Cleared | | | 0.00 |
| LP## | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | | Late (5-15 Days) | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 2383.02 ACH - Cleared | | | 0.00 |
| LP## | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | | |
| LP## | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | | |
| LP## | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | | Late (5-15 Days) | 23830.18 | 0.00 | 0.00 | 23830.18 | 615.39 | 23214.79 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 ACH - Cleared | | | |
| LP## | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | | Current | 23830.18 | 0.00 | 0.00 | 23830.18 | 0.00 | 23830.18 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | | Current | 22241.50 | 0.00 | 0.00 | 22241.50 | 0.00 | 22241.50 | 0.00 | 0.00 | 22241.50 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |
| LP## | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | | 7149.05 | 0.00 | 0.00 | 7149.05 | 7149.05 | 0.00 | 0.00 | 0.00 | 7149.05 | | 0.00 | 0.00 | 0.00 Uncheduled | | | |

WCP0708

Exhibit B - All Pleadings And All Docket Entries (Part 1) Page 635 of 2443

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|-------------------|-----------------|----------------|------------------|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due C/ | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F | Amount Due (Default Int | Amount Due (Principal | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) | Amount Paid (Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int | Amount Paid (Pr | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inte | Unapplied Funds | Principal Paydow | Balance (Total) | Scheduled Payment Stat | Balance (Inc Late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPHY-111505 | Unpaid | 7/1/2023 | 11 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10480.00 Uncollected | 10480.00 |
| LPHY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10829.33 Uncollected | 10829.33 |
| LPHY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10480.00 Uncollected | 10480.00 |
| LPHY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10829.33 Uncollected | 10829.33 |
| LPHY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | 4894.74 | 9781.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9781.33 Uncollected | 9781.33 |
| LPHY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10829.33 Uncollected | 10829.33 |
| LPHY-102163 | Paid | 1/1/2023 | 170 | 12/21/2022 8:00 Wire | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-100101 | Paid | 12/1/2022 | 201 | 11/6/2022 0:06 Wire | Late (5-15 Days) | 5235.63 | 523.56 | 0.00 | 5759.19 | 6039.96 | 0.00 | 0.00 | 0.00 | 0.00 | 6039.96 | 0.00 | 0.00 | -270.77 ACH - Cleared | |
| LPHY-096006 | Paid | 11/1/2022 | 231 | 11/10/2022 10:15 Stripe | Late (5-15 Days) | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-094608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:11 Stripe | Late (5-15 Days) | 5410.15 | 0.00 | 0.00 | 5759.19 | 5235.63 | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | 0.00 | 0.00 | 523.56 ACH - Cleared | 0.00 |
| LPHY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 13:35 Stripe | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | Late (5-15 Days) | 5235.63 | 0.00 | 0.00 | 5235.63 | 146.30 | 5087.33 | 0.00 | 0.00 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-083055 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | Current | 5235.63 | 0.00 | 0.00 | 5235.63 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | Current | 4886.59 | 0.00 | 0.00 | 4886.59 | 0.00 | 4886.59 | 0.00 | 0.00 | 0.00 | 4886.59 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 Uncollected | |
| LPHY-075196 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | 1570.69 | 0.00 | 0.00 | 1570.69 | 1570.69 | 0.00 | 0.00 | 0.00 | 0.00 | 1570.69 | 0.00 | 0.00 | 0.00 Uncollected | |

WCP0054

Exhibit B - All Pleadings and Docket Entries (Part I) Page 638 of 2443

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|------------------|-----------------|----------------|------------------|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

1156

Exhibit 3

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
## Judge-in-Chambers

|  |  |  |
|---|---|---|
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## PRAECIPE IN SUPPLEMENT TO OPPOSITION TO
## PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
## RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, in supplementation to their earlier-filed brief in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff"), and note as follows:

It has now come to the attention of WCP and DPCL that, during the pendency of this case, the Plaintiff has permitted yet *another* lien to accrue on the property, for failure to conform to the dictates of governing authorities. This follows other liens, discussed more fully in the defendants' prior briefing in opposition to the Motion.

Specifically, it appears that on July 13, 2023 – some two days after the Motion was filed – the District of Columbia Department of Buildings, through its Housing Regulation Administration, filed a "Certificate of Delinquent Costs for Correction of Wrongful Housing Conditions" amongst the land records of the District of Columbia. Said filing is document number 2023058959 in those

records but, due to its relatively-recent vintage, cannot yet be downloaded from the Office of Tax

and Revenue Recorder of Deeds web interface.

As noted in the defendants' opposition to the Motion, there are myriad reasons for the

Motion to be denied. And, in the scheme of the Plaintiff's pattern and practice of breaching its

obligations and covenants under loan documents and performing as a poor steward of the property

it pledged as collateral, the additional citation enumerated herein does little to move the proverbial

needle. But, upon learning of the same, the defendants would nonetheless be remiss to not call

attention to the fact that there is now yet another government lien actively eroding their security

interest from above. And it is respectfully urged this is all the more reason to deny the Motion.


Dated: July 17, 2023            Respectfully Submitted,

                          /s/ Maurice B. VerStandig
                          Maurice B. VerStandig, Esq.
                          DC Bar #1034066
                          The VerStandig Law Firm, LLC
                          9812 Falls Road, #114-160
                          Potomac, Maryland 20854
                          Telephone: 301-444-4600
                          Facsimile: 301-444-4600
                          Electronic Mail: mac@mbvesq.com
                          *Counsel for the Defendants*


**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 17th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

eFiled
07/18/2023 5:12:39 PM
Superior Court
of the District of Columbia

Case 25-10023-ELG    Doc 1-32    Filed 09/04/24    Entered 09/04/24 09:35:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part II) Docket Entries    Page 1093 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

      *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

      *Defendants*.

Case No. 2023-CAB-004260
Judge Milton Lee
Next Event:  Initial Conference
               10/13/2023 at 9:30 am

## PLAINTIFF'S CONSENT MOTION TO
## EXCEED THE PAGE LIMIT IN AN EMERGENCY MOTION

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by counsel, moves this
Court to allow 423 Kennedy to exceed the page limit in an Opposed Emergency Motion for a
Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Emergency Motion")
that will soon be filed by 423 Kennedy. In support of its Motion, 423 Kennedy represents to the
Court that:

     1.     This case primarily involves a dispute concerning a Trustee's conflict of interest,
allegations of defaults under mortgage loan documents, whether certain provisions of those loan
documents include unenforceable liquidated damages provisions, and trying to stop an imminent
foreclosure.

     2.     423 Kennedy filed this case because the Defendants, who 423 Kennedy believes
are acting in concert, recently issued a Notice of Foreclosure Sale of Real Property or
Condominium Unit ("Foreclosure Notice"). A copy of the Foreclosure Notice is attached as
Exhibit A.

4894-3367-7681

3.     In Count V of the Complaint, 423 Kennedy seeks injunctive relief to prevent, among other things, any foreclosure under the loan documents while this case is being litigated. *See* Compl. at page 27 (subpart "(c)" of the request for relief).

4.     The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:10 p.m. – less than one week away.   The foreclosure is being requested by an unknown (to 423 Kennedy) company called "SF NU, LLC".

5.     423 Kennedy will be filing an opposed emergency motion that seeks the issuance of a temporary restraining order to stop the foreclosure sale on July 25, 2023 (the "Emergency Motion").

6.     The Emergency Motion contains a detailed factual background to assist the Court with understanding the factual background, the factual and legal basis for the claims, and the provisions of the loan documents that are being challenged.  The factual background portion runs about nine pages.

7.     The Emergency Motion also contains a thorough legal argument section that explains why 423 Kennedy meets the standard for injunctive relief.

8.     The Emergency Motion also includes multiple, important exhibits.  Those exhibits are included with the Emergency Motion so that the Court does not have to sift through the Complaint to find the important documents.

9.     Given the lengthy factual background, the number of claims in this case, the number of exhibits, and the exigency of the relief requested, the Emergency Motion may exceed twenty pages by just a few, including the signature page and required certifications.

4894-3367-7681

10.     The Court's January 3, 2023, Supplemental General Order requires leave of court to file any motion or opposition with a legal memorandum exceeding twenty (20) double-spaced pages in pages in length.

11.     No party will be prejudiced by the relief requested in this Motion.

12.     Good cause exists to allow 423 Kennedy to file its Emergency Motion, which should not exceed twenty-three pages, including the signature page, the required certifications, and excluding the exhibits.

13.     Counsel for the Defendants consents to this motion so long as any opposition that is filed may exceed the page limit on an equal basis.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 18, 2023                     /s/ Alexandria J. Smith
                                         Alexandria J. Smith (D.C. Bar. No. 1781067)
                                         James D. Sadowski (D.C. Bar. No. 446635)
                                         801 17th Street, NW, Suite 1000
                                         Washington, DC 20006
                                         Telephone: (202) 452-1400
                                         Email: jds@gdllaw.com
                                         *Counsel for Plaintiff 423 Kennedy St Holdings LLC*

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this Motion by sending an email to counsel for the Defendants on July 18, 2023. Counsel for all Defendants consented to the instant Motion over the phone.

/s/ Alexandria J. Smith
Alexandria J. Smith

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Consent Motion to Exceed Page Limit in

an Emergency Filing was served by the Court's electronic filing system this 18th day of July

2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith

4

4894-3367-7681

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:  Initial Conference
              10/13/2023 at 9:30 am

## [PROPOSED] ORDER GRANTING PLAINTIFF'S
## CONSENT MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an

Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant

the relief requested in the Motion.

Accordingly, it is this _____ day of _____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three

(23) pages, including the signature page, the request for a hearing, the certificate of consent, and

the certificate of service.  The Exhibits are excluded from the page count.  The Opposition may

also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

_____
The Honorable Milton Lee
Superior Court of the District of Columbia

4894-3367-7681

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

# EXHIBIT A

**★ ★**

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square 3260   Suffix _____   Lot 0056
List Name and adress of each owner of the real property encumbered by said
deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC   PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER
SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM
UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE
TO BE HELD ON July 25 , 20 23 , AT
THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M.   THIS SALE DATE IS SUBJECT TO POSTPONEMENT
FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM
THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS
NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

Security Instrument recorded in the land records of the District of Columbia at the
Recorder of Deed on April 8 , 20 22 .

Liber: _____   Folio: _____   Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A   See Exhibit A
Phone               Last Known Address

Description
of Property: Multi-Familiy Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)
Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260   Lot: 0056   or Parcel No: _____

Holder of the Note (Name): WCP Fund I LLC
Phone: (703) 727-5464   Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 **
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015   Phone: (202) 223-7900

** as of June 23, 2023

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square | 3260 |    Suffix | |    Lot | 0056 |

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on | June 23 | ,20| 23 |; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

| 06/23/2023 |
Date

_RD_
(Signature of Noteholder or his agent)

I, | Deborah A. Stewart | , a Notary Public in and for the
| District of Columbia |,
DO HEREBY CERTIFY THAT | Russell S. Drazin |
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the | 23rd | day of | June | , 20| 23 |, personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be | his | act and deed.

Given under my hand and seal this | 23rd | day of | June | , 20| 23 |.

_Deborah A Stewart_
Notary Public

My Commission Expires: | 09/30/2025 |
mmddyyyy

*[Notary seal: DEBORAH A. STEWART — NOTARY PUBLIC — MY COMMISSION EXPIRES 9-30-2025 — DISTRICT OF COLUMBIA]*

# EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
### Russell S. Drazin, Attorney
### 4400 Jenifer Street, NW, Suite 2
### Washington, DC 20015
### 202-223-7900

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo                    [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

SSL:

3260/0056

3. WCP Fund I LLC                         is the holder of the mortgage

recorded as Instrument Number 2022038745                  in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

Signature:

Printed Name:   Christina Araujo

Title:  Vice President of Finance

Date:  June 21, 2023

State of    Virginia

County of    Fairfax

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this 21st                          day of June            , 20 23

by  Christina Araujo                              (name of person)  as

Vice President of Finance                         (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed)

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC  20015

Notary Public

My Commission Expires:



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES      $25.00
   SURCHARGE        $6.50
TOTAL:            $31.50

eFiled
07/18/2023 5:19:56 PM
Superior Court
of the District of Columbia

Case 2:25-10203-ELG   Doc 1-2   Filed 07/04/24   Entered 07/04/24 19:55:28   Desc
Exhibit B - All Pleadings And Docket Entries (Part I) All Docket Entries   Page 1107 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL D/B/A WASHINGTON CAPITAL
PARTNERS, ET AL.

    *Defendants.*

2023-CAB-004260

2023-CAB-004260
Judge Milton Lee
Emergency Relief Requested
Initial Conf. - 10/13/23 (9:30 a.m.)

### PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy") by counsel, hereby requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to 423 Kennedy. The Trustee under the deeds of trust at issue in this case has a direct conflict of interest that prevents him from acting as Trustee and from participating in any foreclosure sale until he proves that he has been faithful to his fiduciary duties as trustee. The Defendants here deliberately prevented 423 Kennedy from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by 423 Kennedy on July 25, 2023. The Court should grant injunctive relief suspending any foreclosure sale to prevent an injustice.

### I.   DETAILED FACTUAL BACKGROUND

    423 Kennedy, the Property, and the Defendants and Their Roles.

423 Kennedy is a domestic, sole purpose, limited liability company that owns real property known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "Property"). Compl. ¶¶ 10-11. 423 Kennedy is co-owned 50/50 by Mel Negussie and the Brighton KSDC, LLC

1

4862-3427-3137

("Brighton Group"). *Id.* ¶ 13.[1]  There are five defendants.  DP Capital, LLC ("DP Capital"), is a

Virginia company that uses the trade name "Washington Capital Partners" ("WCP").  *Id.* ¶ 2.

The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending

business.  *Id.* ¶ 3.  Daniel Huertas ("Mr. Huertas") is an individual that controls WCP, and WCP

controls the WCP Fund.  *Id.* ¶¶ 4-5.  SF NU, LLC ("SF NU") is a New Mexico limited liability

that appears to have been assigned rights under the deeds of trust from the WCP Fund.  *Id.* ¶ 6.

Russell Drazin ("Mr. Drazin"), is an individual who is also counsel to the WCP and Trustee

under two deeds of trust that he drafted.  *Id.* ¶ 7.  SF NU sent 423 Kennedy a notice of

foreclosure sale signed by Mr. Drazin that scheduled a foreclosure sale on July 25, 2023 at 2:10

p.m.  *Id.* ¶¶ 134-35.

<u>Before Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide
Construction Draws to Fund the Project.</u>

As part of the refinancing, the WCP and the WCP Fund agreed that they would provide

construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project

progressed, which agreement was memorialized in writing in multiple places.  *Id.* ¶¶ 17, 19.  423

Kennedy relied upon the agreement to provide construction draws before signing the loan

documents.  *Id.* ¶¶ 18-19.

<u>The Loan Documents.</u>

In January of 2020, the WCP helped 423 Kennedy obtain a construction finance loan for

the Property, which original loan was later refinanced.  *Id.* ¶ 15.  As part of that refinancing,

423 Kennedy signed the following documents:

---

[1]    The Brighton Group is comprised of forty-one individual investors, many of whom used their
personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.  *Id.* ¶
14.

4862-3427-3137

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;

- a Commercial Deed of Trust Note (the "First Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund.

- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.

- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $1,256.000.00, as "Borrower".

*Id.* ¶¶ 20, 23, 26, and 29 (the "loan documents").  *See* Exhibit A and B (copies of the First DOT and the First Note).[2]  The loan documents were form documents prepared by Mr. Drazin that 423 Kennedy was not allowed to modify.  *Id.* ¶¶ 21-31.  The loan documents provided security to the WCP Fund for the construction financing loans to 423 Kennedy.

<u>The Lender Defendants Begin Their Corrupt Plan to Foreclose on the Property by Starving 423 Kennedy of Construction Draw Funds.</u>[3]

By October 6, 2022, 423 Kennedy had paid all amounts due to the WCP Fund under the First and Second Note.  *Id.* ¶ 38.  Around that date, Mr. Huertas told 423 Kennedy that the WCP would no longer provide construction draws.  *Id.* ¶ 39.  The reason that Mr. Huertas gave for not funding construction draws was because Mr. Negussie was involved with Mr. Charles Paret in projects that were unrelated to the Property and the Defendants were "disappointed" that those other projects "were not constructed well".  *Id.*  ¶ 40.  The Defendants knew that without construction draws, 423 Kennedy could not complete construction.  *Id.* ¶ 41.

---

[2]   Because the First and Second DOT contain nearly identical terms, as do the First and Second Note, only the First DOT and First Note are attached as Exhibits. The Second DOT and the Second Note were attached to the Complaint as Exhibits B and D.

[3]   For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU are referred to as the "Lender Defendants".  Compl. ¶ 6.

3

**The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default"
Under Any of the Loan Documents.**

      The Defendants knew that 423 Kennedy was in the process of obtaining a refinancing

loan to fully pay the debts to the WCP Fund.  *Id.* ¶ 51.  Around October 24, 2022, the WCP sent

Payoff Statements listing the amounts needed to pay the balances owed under the loans.  *Id.*

¶¶ 42-43.  *See* Exhibits C and D (copies of the Payoff Statements).  As of October 24, 2022, 423

Kennedy had made all payments to the WCP Fund that were due under the loan documents, and

at that time there was no allegation that any default existed.  *Id.* ¶¶ 44-45.  On November 3,

2022, Mr. Huertas emailed 423 Kennedy to inquire about the status of the loan payoffs, in which

he stated that WCP "would not provide any construction loan draws to 423 Kennedy".  *Id.* ¶ 46.

*See* Exhibit E (copy of the email).  By that date, 423 Kennedy had made all payments that were

due under the Notes.  *Id.* ¶ 48.  On November 15, 2022, Mr. Huertas sent another email to 423

Kennedy restating that WCP would not release any more construction draws.  *Id.* ¶ 49.  *See*

Exhibit F (copy of the email).  By that date, there was no allegation made that any default by 423

Kennedy existed either the loan documents.  *Id.* ¶ 50.

      By November 17, 2022, the Defendants knew that 423 Kennedy had arranged for a

refinancing of the two loans with Main Street Bank, and that 423 Kennedy expected to close on

that loan in December of 2022.  *Id.* ¶ 51.  Three days later, WCP transmitted another two Payoff

Statements to 423 Kennedy.  *Id.* ¶¶ 52-53.  Exhibit G and H (copies of the Payoff Statements).

By that time, there was still no claim made that any default existed under any of the loan

documents.  *Id.* ¶ 54.  WCP sent the Payoff Statements because WCP knew that 423 Kennedy

was attempting to go to closing on the refinance loan.  *Id.* ¶ 55.  None of the Payoff Statements

included default fees, default interest, or any other amount based upon any default claim.  *Id.* ¶

56.

<u>After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas
Then Demands that Either 423 Kennedy or Mr. Negussie Resolve Another Debt Owed to the
WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, 423 Kennedy had made all payments due under the Notes

($514,560.80 in interest payments) in addition to prior payments made by 423 Kennedy of

approximately $378,818.53 in interest under the original loan. *Id.* ¶ 57. That day, Mr. Huertas

told 423 Kennedy that the Defendants and an unnamed investor were displeased with how the

development of another, unrelated property located at 2507 I Street, NW had turned out (the

"2507 I Street Project"). *Id.* ¶ 58. During that call, Mr. Huertas told Mr. Negussie that WCP

was "withdrawing the payoff statements recently issued and that he was defaulting all loans that

Mr. Negussie was associated with at WCP, including 423 Kennedy." *Id.* ¶ 60. Mr. Huertas

further stated that the 2507 I Street Project has "turned out very bad and that the person who lent

the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed

off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender

"is very wealthy and will make life hard for you", and "has now bought the notes" on 423

Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr.

Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St

to make things right" or have them "take care of the $700,000" shortfall on that project. *Id.*

Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the

$700,000 shortfall to be paid, then the Defendants and the unnamed investor "would make

trouble for you on all of your other projects". *Id.* ¶ 61.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or

to any development projects were improper. *Id.* ¶ 62. After Mr. Negussie refused to accede to

Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all

prior Payoff Statements that were sent "were withdrawn" and that he would place 423 Kennedy

4862-3427-3137

and the borrower on another, unrelated project named Developer RE1, LLC ("Developer RE1")

in default under their loan documents. *Id.* ¶ 63.

The Defendants knew that 423 Kennedy was not involved in the 2507 I Street Project,

that there is no legal or other business relationship between 423 Kennedy and either the

developer for the 2507 I Street Project or Developer RE1, and that Developer RE1 was a sole

purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 64-68. Mr.

Huertas provided no basis for why or how the Defendants could put 423 Kennedy in default

under the loan documents. *Id.* ¶ 69.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to 423 Kennedy By Improperly
Demanding Payment of More than $1.5 Million in "Default Penalties" and "Default Interest" and
By Threatening 423 Kennedy With Foreclosure.</u>

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to

"make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie

Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. Compl.

*Id.* ¶ 77. *See* Exhibits I and J (copies of the default notices). Each "Notice of Default" was

unsigned and failed to include either a description of the alleged "default" or a referenced "copy

of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 79-80, 82. Email is also not listed as

a permissible means to send a default notice. Compl. Ex. A (First DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two new Payoff Statements. *Id.*

¶ 85. *See* Exhibits K and L (copies of the Payoff Statements). The new Payoff Statement for the

first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a

"Default Penalty" of $868,969.30, while the new Payoff Statement for the second loan including

a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default

Penalty". Compl. ¶¶ 86-87. There were no charges for either "Default Interest" or a "Default

Penalty" listed on any prior Payoff Statements sent by the WCP. *Id.* ¶ 87.

<u>Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.</u>

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 88. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to contact the WCP's counsel. *Id.* 423 Kennedy believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that 423 Kennedy was in "default". *Id.* ¶ 89. 423 Kennedy also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring 423 Kennedy to be in default and to conceal the real reason why 423 Kennedy was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 90, 94.

<u>Mr. Drazin's Conflict of Interest with His Fiduciary Duty as Trustee.</u>

Mr. Drazin knew, as Trustee, that he had a fiduciary duty to both the borrower (423 Kennedy) and to the lender under the First and Second DOT. *Id.* ¶ 91. Mr. Drazin also knew that his representation of the WCP and the WCP Fund as counsel created an actual conflict of interest with his fiduciary duty as Trustee to 423 Kennedy, as borrower. *Id.* ¶¶ 91-92. Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants. Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice. *Id.* ¶ 93.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶ 95-96. The Defendants knew that by improperly alleging

7

defaults after-the-fact, and by adding $1.5 million more in "Default Interest" and "Default Penalt[ies]", 423 Kennedy would not be able to go to closing on the refinance loan. *Id.* ¶¶ 98-99. The Defendants deliberately interfered with the refinancing loan to prevent 423 Kennedy from being able to go to closing and to set them up for foreclosure. *Id.* ¶ 99. The Defendants also sent the "Notice of Default" to improperly pressure 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 100. The Defendants also knew that they had no right to demand that someone else correct, or pay for, any problems at the 2507 I Street Project, and that they had no legitimate basis to claim that 423 Kennedy was in default. *Id.* ¶¶ 101-02. The Defendants are trying to inflict damages upon 423 Kennedy and its members, and their misconduct is a form of extortion. *Id.* ¶ 103.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.</u>

After being asked by counsel for 423 Kennedy to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin claimed that 423 Kennedy was in "default" because:

- "[T]he District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185";

- 423 Kennedy was not entitled to any notice of any default;

- there was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that

- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

*See* Exhibit M (copy of the email) (emphasis in original); *Id.* ¶¶ 104 and 116.

The "Certificate of Delinquent Fines" relates to Notice of Infraction dated December 3, 2021 ("NOI") issued by D.C. Department of Consumer and Regulatory Affairs ("DCRA").  *Id.* ¶ 105.  The violation alleged in the NOI was:  "Prohibitive Excessive Vegetative Growth" that carried with it a $500.00 fine.  *Id*.  423 Kennedy did not get timely notice of the NOI because the DCRA sent a copy to the wrong email address.  *Id*. ¶ 106.  On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI.  *Id*. ¶ 107.  *See* Exhibit N (copy of the Final Order).  423 Kennedy noted an appeal of the Final Order on September 12, 2022.  *Id* ¶ 108.  *See* Exhibit O (copy of the appeal).

Under Section 7.6 of the First and Second DOT, 423 Kennedy arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").  *Id*. ¶ 109.  423 Kennedy had planned to wait for the District to respond to its appeal of the NOI, but after 423 Kennedy received the "Notice of Default", and even though it believed that the "Notice of Default" was improper and was sent as a pretext, 423 Kennedy paid the District $1,657.43 to discharge that fine and any resulting lien.  *Id*. ¶ 110.  *See* Exhibit P (copy of payment confirmation).  On December 11, 2022, the Office of Administrative Hearings vacated the Final Order.  *Id*. ¶ 112.  *See* Exhibit Q.  There are currently no outstanding fines owed by 423 Kennedy to the District.  *Id*. ¶ 113.

The defaults by 423 Kennedy that have been alleged were all claimed after-the-fact as a pre-text.  The "Certificate of Delinquent Fines" was paid, and 423 Kennedy has no affiliates.  *Id*. ¶¶ 110-24.  Even though there was no valid basis under any provision of the loan documents that would permit the Defendants to foreclose on the Property, they first threatened to take that step.  *See* Ex. J ("our legal counsel will commence foreclosure proceedings"); *Id*. ¶ 127.

9

The Irreparable Harm to 423 Kennedy is Now Imminent.

The initial threat of foreclosure in December 2022 has turned into a reality.  On June 23, 2023, SF NU and Drazin sent a Notice of Foreclosure to 423 Kennedy scheduling a foreclosure sale on July 25, 2023 at 2:10 p.m. *Id.* ¶¶ 134-35.  *See* Exhibit R (Notice of Foreclosure).  423 Kennedy improved the Property by building a mixed use, six level building with thirty-three residential units and one commercial unit comprising 36,512 total square feet. *Id.* ¶ 128.  The improvements are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Defendants' misconduct. *Id.* ¶ 129.  The Property has a current value of $11.9 million. *Id.* ¶ 130.  If the Property is sold at a foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors will be irreparably harmed because they could lose their entire investment.

## II.    PROCEDURAL HISTORY

On July 13, 2023, 423 Kennedy filed a Complaint that includes claims for breach of contract (Count I), tortious interference with business relations (Count II), breach of the duty of good faith and fair dealing (Count III), and breach of fiduciary duty by the Trustee (Count VI).  The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust, that the foreclosure notice is invalid, and that certain provisions of the loan documents contain unenforceable liquidated damages provisions that constitute a penalty (Counts IV) and a claim for injunctive relief to stop the foreclosure sale (Count V).  The Complaint also seeks a declaratory judgment that Mr. Drazin cannot serve as Trustee due to his actual conflict of interest (Count VII).  Because the Defendants are trying to sell the Property, 423 Kennedy asks this Court to preserve the status quo by issuing an injunction that prevents the Defendants from trying to enforce the "death penalty" remedy of foreclosure at least until there

10

is a preliminary injunction hearing.  A temporary delay of fourteen days will cause no harm to the Defendants.

## III.   THE LEGAL STANDARD FOR INJUNCTIVE RELIEF

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court considers four factors:  (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction.  *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995).  The most important inquiry is that concerning irreparable injury.  *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993).  These four injunctive relief factors each weigh in favor of 423 Kennedy.

## IV.   LEGAL ARGUMENT

### A.   423 Kennedy Will Be Irreparably Harmed if the Property is Sold at a Foreclosure Sale.

A foreclosure sale of the Property is scheduled for July 25, 2023.  Without a restraining order, the Property will be sold, and 423 Kennedy and its members will lose their interest in the Property and the improvements to the Property (valued at nearly $12 million).  The law considers property to be unique, so 423 Kennedy's potential loss of the Property, without more, is sufficient to show irreparable harm.  *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").  Because the foreclosure sale is already scheduled, there is an emergency need for injunctive relief to prevent 423 Kennedy from losing its interest in the Property.  *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540

11

F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and

not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim

that irreparable injury is "likely" to occur.").  The first injunctive relief factor weighs heavily in

favor of 423 Kennedy.

       B.      <u>423 Kennedy Is Likely to Succeed on the Merits as to Its Claims.</u>

       (1)    <u>423 Kennedy is Likely to Prevail on Its Argument that Mr. Drazin Has a
Conflict of Interest That Prevents Him from Serving as Trustee and From
Upholding His Fiduciary Duty to 423 Kennedy.</u>

As a trustee Mr. Drazin has fiduciary duties *to both the borrowers and the lenders* under

the deeds of trust.  *Perry v. Virginia Mortg. & Inv. Corp.,* 412 A 2d 1194 (D.C. 1980).  It is not

possible for Mr. Drazin to be faithful to his fiduciary duty owed to 423 Kennedy, as borrower,

while at the same time consulting exclusively with, and being counsel to, the Lender Defendants.

Case law in the District is unyielding as to a Trustee with a conflict of interest.  "When it is

shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden

of proving that he has been faithful to his trust."  *Sheridan v. Perpetual Building Assoc.,* 299

F.2d 463, 465 (1962) (en banc) (*Sheridan I*); *accord, Johnson v. Inter-City Mortg. Corp.,* D.C.

App., 366 A.2d 435, 437 (1976) and *Sheridan v. Perpetual Building Assoc.,* 322 F.2d 418, 420

(1963) (*Sheridan II*).  The *Sheridan I* decision recommended, in clear and express terms, that a

substitute trustee should be appointed whenever a trustee that has an obvious conflict of interest

gets involved in issues seriously affecting a borrower's rights such as a foreclosure, as is the case

here.  *Sheridan I,* 299 F 2d. at 465, n.4 ("We think that the [burden shifting] rule applies

wherever a trustee with conflicting interests takes action, such as foreclosure, seriously affecting

the borrower's interests.  Substitution of independent trustees *prior to the taking of any such*

*action* would seem to offer a measure of protection to all concerned.") (italic emphasis added).

Because Mr. Drazin has had a clear conflict of interest since as early as December 8, 2022, under

<div align="center">12</div>

"ancient" law, the burden shifts to Mr. Drazin to prove that he has been faithful to his duties as

Trustee. Mr. Drazin cannot meet that burden because all of the actions that he took here were on

behalf of the Lender Defendants.[4]  As a result, 423 Kennedy is likely to prevail on its breach of

fiduciary claims against Mr. Drazin in Count VI and the declaratory judgment claims in Count

VII. The actions taken by Mr. Drazin to foreclose must be suspended until he proves that he has

been faithful to his role as trustee. *Sheridan I* at 465.

<p style="text-align:center;">(2)    423 Kennedy is Likely to Succeed on its Breach of Contract Claims.</p>

To prevail on a claim of breach of contract, a party must establish:  (1) a valid contract

between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty;

(4) damages caused by that breach. *See Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186

(D.C. 2009). Here, the Lender Defendants stopped funding construction draws as promised for

no valid reason, so 423 Kennedy will easily prevail on its breach of contract claim.

<p style="text-align:center;">(3)    423 Kennedy is Likely to Succeed on its Intentional Interference with a<br>Business Relationship Claim.</p>

To prevail on a tortious interference with business relations claim, 423 Kennedy must

establish:  (1) the existence of a valid contractual or other business relationship; (2) the

defendant's knowledge of the relationship; (3) intentional interference with that relationship by

the defendant; and (4) damages. *See Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).  423

Kennedy has alleged sufficient facts to show that the Defendants' actions amount to a tortious

interference with business relations.  The conduct alleged to have occurred here shows that the

---

[4]    In the related case, Mr. Drazin has filed a motion for a protective order to prevent his deposition from being taken. *See* Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel dated July 17, 2023 filed in *Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095) (the "Related Case") (arguing that everything that Mr. Drazin knows is privileged and not subject to discovery).  This filing contains an admission regarding Mr. Drazin's clear conflict, and that he took no action, as Trustee, to protect the borrower's interests.

<p style="text-align:center;">13</p>

4862-3427-3137

Defendants are attempting to extort money from 423 Kennedy (and others) by raising pre-textual defaults at a time when 423 Kennedy was on the verge of closing on a refinancing loan.  423 Kennedy's Complaint has easily demonstrated the elements of a tortious interference with business relations claim.[5]

> (4) **423 Kennedy is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.**

In the District, all contracts contain an implied duty of good faith and fair dealing.  *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006).  In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022). Here, 423 Kennedy has alleged facts showing that WCP and the WCP Fund breached the implied duty of good faith and fair dealing.  Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default" fees and unenforcable penalties, are textbook examples of bad faith.  423 Kennedy has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of 423 Kennedy (and others) and to try to deprive 423 Kennedy of the value of the Property.

> (5) **423 Kennedy Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Are Pretextual – and that the Alleged Defaults Could Not Form a Valid Basis for a Foreclosure Sale.**

The facts alleged by 423 Kennedy demonstrate that Mr. Huertas declared 423 Kennedy in default for pre-textual reasons.  More importantly, the default claims that were alleged were

---

[5]   In the related case, Judge Ebony Scott has already denied the Defendants' motion to dismiss similar claims.  *See* Order dated April 7, 2023 in the Related Case.

4862-3427-3137

either incorrect as a matter of law, were subsequently cured, or were so trivial in nature that they

could not be used as a basis upon which to invoke the "death penalty" remedy of foreclosure.

The loan documents themselves support 423 Kennedy's position because a foreclosure sale is

expressly conditioned upon the "continuance of" an Event of Default.  *See* Ex. A (First DOT) at

page 13, Section 8.0 (a) ("During the continuance of any Event of Default, the Trustee [may

conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies

upon "the continuance of any Event of Default") (italic emphasis added).

> (6) <u>423 Kennedy is Likely to Prevail on Its Claim that It Is Not an Affiliate of
> Developer RE1 (or Any Other Entity).</u>

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of in the First

DOT and the Second DOT allow them to declare a default because they claim that 423 Kennedy

is an "affiliate" of Developer RE1 – a separate entity that is only partially owned by Mr.

Negussie.  Section 7.9 in each deed of trust states:

> <u>Other Indebtedness</u>.  Any default under or breach of any document or instrument
> evidencing or securing any indebtedness, obligation, or liability of any kind or
> nature - *other than the Indebtedness and the Obligations secured hereby - of
> Grantor* or any guarantor of the Indebtedness*, or any of their affiliates, to
> Beneficiary,* whether now existing or hereafter created or arising, direct or
> indirect, material or immaterial, and whether absolute or contingent, joint, several
> or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) at pages 11-12 (italic and underlined emphasis added).  Although the First

DOT does not define the term "affiliate", under federal banking law, the term "affiliate" means

"any company that controls, is controlled by, or is under common control with another

company."  15 U.S. Code § 6809(6).  But 423 Kennedy is not under common control with

Developer RE1 or any other entity.  423 Kennedy is a sole purpose entity that has two, fifty-

percent owners:  Mr. Negussie and the Brighton KSDC, LLC.  *See* Compl. at ¶ 13.  Mr. Negussie

and the Brighton Group are also co-managing members of 423 Kennedy, so any decisions made

must be agreed to be both co-members.  *See id.* ¶¶ 13-14.  There is no business or other

relationship between 423 Kennedy and Developer RE1.  Although Mr. Negussie does have a

partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.  423

Kennedy does not control Developer RE1 and vice versa.  Both entities are sole purpose limited

liability companies whose businesses are separate.  Cross-default provisions have also been

found to be inherently suspect.  *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs.*

*Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY

2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing

them, a court should carefully scrutinize the facts and circumstances surrounding the particular

transaction . . .").  The Defendants cannot rely upon the "affiliate" language in the cross-default

provision (Section 7.9) to declare a default by 423 Kennedy.

> (7)  423 Kennedy is Likely to Prevail on Its Argument that a Fine That Caused
> No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to
> Foreclose on the Property.

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the

law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American*

*Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted).  As the *Tsintolas*

*Realty* decision noted by using a sports analogy, technical violations of a contract that cause no

harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous
> passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law
> court.  Since [the landlord] has suffered no monetary harm from any alleged
> breach [of the settlement agreement], the [tenants are] not liable and there can be
> no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,*  984 A.2d at 186-87 (citing with approval *Mira v. Nuclear Measurements*

*Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

4862-3427-3137

Just like the landlord in *Tsintolas Realty,* here the Defendants are claiming a technical

default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for

which they could not have suffered any actual damages.  As the *Tsintolas Realty* court further

elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery
> unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v.
> Robbins,* 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of
> monetary loss is *injuria absque dam-no,*" *Cagle v. Southern Bell Tel. & Tel. Co.,*
> 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977) *i.e.,* "a wrong
> which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107
> F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,*  984 A.2d at 187.

423 Kennedy is likely to prevail on its argument that a technical default that caused no

harm – here a $500.00 fine that blossomed into a $1,657.43 fine -- cannot serve as a basis for the

foreclosure on a Property worth almost $12 million.  *See Allen v. United States,* 603 A.2d 1219,

1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of consummate

importance in judicious adjudication[.]").  Other courts have also refused to allow a forfeiture

based upon an inconsequential breach.  In *Miller v. Cain Partnership, Ltd.,* No. 1993 Tenn. App.

LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding

forfeitures, such as:  "Every reasonable presumption is against forfeiture and every intendment or

presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts §

407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly

proportionate to the damages suffered by the breach, relief will be granted when the [party

seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the

breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.,* 772 S.W.2d 41, 46

(Tenn. Ct. App. 1989)).[6]  Because equity abhors a forfeiture, especially when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive relief factor weighs in 423 Kennedy's favor.

> (8)  423 Kennedy is Likely to Prevail on Its Argument that the Claimed "Default Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye."  *District Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003).  The D.C. Court of Appeals has generally upheld the enforcement of a liquidated damages provision "unless it is found to be a penalty".  *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982).  And if the agreement "to pay fixed sums plainly [is] without reasonable relation to any probable damage which may follow a breach [, the provision] will not be enforced".  *Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119, 126 (D.C. 1976).  Here, the lender Defendants have admitted that part of the amounts that the lender is trying to force 423 Kennedy to pay to avoid a foreclosure sale are, in fact, a penalty because they have actually described those charges as such.  *See* Ex. K (seeking payment of a "Default Penalty" of $868,969.30 under the First DOT) and Ex. L (seeking a "Default Penalty" of $125,608 under the Second DOT).[7]  Given these two admissions, 423 Kennedy is likely to prevail on part of its declaratory judgment claim in Count IV, *i.e.,* that the loan documents contain identical liquidated damage provisions that are unenforceable as a matter of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis for a foreclosure sale.

---

[6]   See also *Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract).

[7]   The "Default Penalty" is ten percent (10%) of the principal loan balance.  The loan documents also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

4862-3427-3137

C.    The Balance of the Injuries is Tipped in 423 Kennedy's Favor.

The irreparable harm to 423 Kennedy greatly outweighs any potential injury to the

Defendants, who really can prove no injury because, but for their improper conduct, 423

Kennedy would have gone to closing in December 2022 and repaid the loans.  The Defendants

have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could

arguably claim that 423 Kennedy has caused them are wounds that are self-inflicted.  By refusing

to provide constructions draws, pre-textually placing 423 Kennedy in default, trying to

improperly extort money from 423 Kennedy (and others), trying to collect unenforceable

penalties, and by directly interfering with, and delaying indefinitely, 423 Kennedy's closing on a

refinance loan, the Defendants have effectively shot themselves in the foot.  The third injunctive

relief factor, the "balance of the injuries", also weighs in favor of 423 Kennedy.

D.    The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.

The public interest will be served by stopping a foreclosure where the trustee has a

conflict of interest and the lender has engaged in predatory lending practices.  The public interest

is served by ensuring that debtors who are on a clear path to repay their debts are rewarded, not

penalized.  The public interest is not served by rewarding wrongdoers.  Here, 423 Kennedy had

paid all amounts owed to the WCP and the WCP Fund before they issued "new" Payoff

Statements demanding $1.5 million in "default" penalties.  At best, the default alleged by the

Defendants was a technical violation of the First and Second DOT by not initially paying a $500

fine, which caused no damages to the lender.  The public interest is not served if the Court, using

another sports analogy (tennis), were to allow a "foot fault" to decide an entire tennis match.

This is especially true in a case like this one involving a trustee with a clear conflict of interest

who carries a heavy burden of proof, and that also involves predatory lending practices.

Allowing the Defendants to move forward with a foreclosure would harm the public as it would

4862-3427-3137

embolden the Defendants to engage in even more improper lending practices.  The "public

interest" factor also favors 423 Kennedy.

V.     CONCLUSION

    For these reasons and any reasons that may be advanced at a hearing on this motion, the

Plaintiff, 423 Kennedy St Holdings LLC, requests that this Honorable Court:  (a) schedule an

emergency hearing on this motion; (b) enter the attached proposed order enjoining any

foreclosure sale; and (c) award such other and further relief as the Court may deem just and

proper.

                Respectfully submitted,

                GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 18, 2023           /s/ Alexandria J. Smith
                Alexandria J. Smith (D.C. Bar No. 1781067)
                James D. Sadowski (D.C. Bar No. 446635)
                801 17th Street, NW, Suite 1000
                Washington, DC 20006
                Telephone:  (202) 452-1400
                Email:  jds@gdllaw.com
                *Counsel for Plaintiff 423 Kennedy St Holdings LLC*

4862-3427-3137

## REQUEST FOR AN EMERGENCY ORAL HEARING

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 18th day of July 2023, and a notice of filing should be served on all counsel of record. I also served a copy of this motion by email on counsel for the Defendants in the related case (*Developer RE1, LLC v. DP Capital, LLC, et al.,* 2022-CA-005095).

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING NO CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by speaking with counsel for the Defendants in the related case, who confirmed that this motion should be filed as an opposed motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

21

4862-3427-3137

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) All Docket Entries Page 1128 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff*, | |
| v. | 2023-CAB-004260 |
| DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL., | |
| *Defendants*. | |

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of temporary injunctive relief. Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to foreclose on the Property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 pending further order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

SO ORDERED.

_____

The Honorable _____

Superior Court of the District of Columbia

1

4862-3427-3137

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

EXHIBIT A

LOAN-006491

Case 25-10021-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 19:25:26   Desc
Exhibit B - All Pleadings (Part 1) Docket Entries (Part 1) Docket Entries   Page 1131 of 1716

Prepared by and return to:

Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## **DEED OF TRUST**

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

 (n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

 NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

 IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016                  Page 4 of 25

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

1208

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

ARTICLE V

NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016                                                           Page **9** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

Page **10** of **25**

1210

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part
of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the
Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any
similar law, federal or state, and if such petition shall not be discharged or dismissed within
ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's
lien shall be rendered against the Grantor and the Grantor shall not discharge the same or
cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall
not appeal therefrom or from the order, decree or process upon which or pursuant to which
said judgment was granted, based or entered, and secure a stay of execution pending such
appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned
upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor
shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by
operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest
therein without, in any such case, the prior written consent of Beneficiary. NOTICE -- THE
INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE
TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE
OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective
date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further
covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien
against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor
will not permit the Mortgaged Property to be occupied by anyone, including Grantor.
Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior
to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights
laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any
indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

1212

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

     (a) If to the Grantor, then to to: **1629 K Street, Suite 300, Washington DC 20006**

     (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

     (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

     In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

     (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

     (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

      This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

      **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

_____ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____)

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

1223

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

1224

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

# EXHIBIT B

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                      **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.   BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                             Page 1 of 9

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.     **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.     **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                    Page **4** of **9**

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                    Page **5** of **9**

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

9. **SUCCESSORS AND ASSIGNS**

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**).  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page **6** of **9**

**10.** **SEVERABILITY; RULES OF CONSTRUCTION**

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

1233

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

*[signature]* (SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

    By:     Brighton Capital LLC
    Its:     Managing Member

*[signature]* (SEAL)
    By:     Mel Melaku Negussie
    Its:     Authorized Signer, on behalf
             of Balakrishnarao Sure and
             Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

*[notary seal: JEFFREY DARRAH / NOTARY PUBLIC / MY COMMISSION EXPIRES 5/14/2025 / DISTRICT OF COLUMBIA]*

*[signature]*
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

EXHIBIT C





# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,015,335.18 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $276,849.94 |
| Interest Paid: | ($247,771.80) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,015,335.18** |

**Payoff good through 10/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| | | |
|---|---|---|
| **Payable to:** | **WCP Servicing LLC** | **Bank Name: United Bank** |
| | **2815 Hartland Road Suite 200** | **Routing Number:** ▇▇▇▇▇ |
| | **Falls Church, VA  22043** | **Account Number:** ▇▇▇▇▇ |

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT D




# Payoff Statement

10/24/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,610.00 as of 10/30/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $89,594.68 |
| Interest Paid: | ($77,034.68) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,610.00** |

**Payoff good through 10/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:   WCP Servicing LLC                    Bank Name: United Bank
              2815 Hartland Road Suite 200         Routing Number: ▮▮▮▮▮▮
              Falls Church, VA  22043              Account Number: ▮▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project

**Date:**     Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time

**From:**    Daniel Huertas

**To:**       mel negussie

**CC:**       Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G




# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $6,031,153.71 as of 11/30/2022.

| | |
|---|---:|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of payoff date): | $323,191.50 |
| Interest Paid: | ($278,344.83) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$6,031,153.71** |

**Payoff good through 11/30/2022. Per diem $1,494.89.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:  **WCP Servicing LLC**        **Bank Name: United Bank**
             **8401 Greensboro Dr Suite 960**    **Routing Number:** ▮▮▮▮▮
             **McLean, VA  22102**            **Account Number:** ▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006491 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part I) Docket Entries    Page 728 of 2443

# EXHIBIT H



# Payoff Statement

11/21/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,268,660.00 as of 11/30/2022.

| | |
|---|---|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of payoff date): | $102,573.35 |
| Interest Paid: | ($90,013.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $100.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,268,660.00** |

**Payoff good through 11/30/2022. Per diem $418.67.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

Payable to:   **WCP Servicing LLC**                        **Bank Name: United Bank**
              **8401 Greensboro Dr Suite 960**             **Routing Number:** ███████
              **McLean, VA  22102**                        **Account Number:** ███████

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# Exhibit I



8401 Greensboro Dr, Suite 960

McLean, Virginia 22102

www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

     419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

     I am the Vice President of Finance for Washington Capital Partners.    I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

     This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

     Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

     As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email – <u>servicing@wcp.team</u>**

1249

EXHIBIT J



8401 Greensboro Dr Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A**. Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT K




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC**

Amount Due: $7,174,724.51 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $8,689,693.00 |
| Interest Owed (as of 8/30/22): | $185,661.72 |
| Default Interest Owed (as of payoff date): | $456,927.95 |
| Interest Paid: | ($323,191.50) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($2,703,485.96) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $868,969.30 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$7,174,724.51** |

**Payoff good through 12/23/2022. Per diem $3,990.80.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

| Payable to: | WCP Servicing LLC | Bank Name: **United Bank** |
|---|---|---|
| | **8401 Greensboro Dr Suite 960** | Routing Number: ▉▉▉▉ |
| | **McLean, VA  22102** | Account Number: ▉▉▉▉ |

When sending the wire please reference our loan number, LOAN-006491
and borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*

Leslie Calderas

1253

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part I) Docket Entries    Page 1184 of 1716

# EXHIBIT L




# Payoff Statement

12/08/2022

423 Kennedy St Holdings LLC
1140 3rd St NE
Washington, DC 20002

**Property Address: 419-423 Kennedy St NW Washington DC 20011**

Amount Due: $1,439,944.65 as of 12/23/2022.

| | |
|---|---:|
| Loan Principal: | $1,256,000.00 |
| Interest Owed (as of 8/30/2022): | $63,637.33 |
| Default Interest Owed (as of payoff date): | $97,130.67 |
| Interest Paid: | ($102,573.35) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $150.00 |
| Default Penalty: | $125,600.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$1,439,944.65** |

**Payoff good through 12/23/2022. Per diem $837.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE
CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION
HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT
postclosing@wcp.team.**

**Payable to:** **WCP Servicing LLC**      **Bank Name: United Bank**
                   **8401 Greensboro Dr Suite 960**      **Routing Number:** ▮▮▮▮▮
                   **McLean, VA 22102**      **Account Number:** ▮▮▮▮▮

When sending the wire please reference our loan number, LOAN-006652 and
borrower 423 Kennedy St Holdings LLC.

Sincerely,

*Leslie Calderas*
Leslie Calderas

# EXHIBIT M

**James D. Sadowski**

| | |
|---|---|
| **From:** | Russell S. Drazin <rdrazin@pardodrazin.com> |
| **Sent:** | Friday, December 9, 2022 4:59 PM |
| **To:** | James D. Sadowski |
| **Subject:** | RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St |
| | |
| **Importance:** | High |

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

1

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

------------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

------------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

------------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

------------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo** | **drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

2

1258

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document.  Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default".  Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy.  As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today.  I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400, x5407
Fax:  202.452.1410
E-mail:  jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING:  administrator@gdllaw.com. THANK YOU.  FOR MESSAGES TO CONSUMER DEBTORS:  THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie

---

> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

4

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

## Leslie Calderas  |  Servicing Manager

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190



   

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

5

1261

EXHIBIT N

# OFFICE OF ADMINISTRATIVE HEARINGS

One Judiciary Square
441 Fourth Street, NW, Suite 450N
Washington, DC 20001-2714
TEL: (202) 442-9094 · FAX: (202) 442-4789 · EMAIL: oah.filing@dc.gov

---

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Petitioner,**

**v.**

**423 KENNEDY ST HOLDINGS LLC, Respondent.**

Case No.: 2021-DCRA-VR22-00182

---

## FINAL ORDER

The Department of Consumer and Regulatory Affairs (the Government) mailed the attached Notice of Infraction (NOI) to Respondent on December 3, 2021. Respondent failed to answer the NOI. When a respondent fails to answer, an Administrative Law Judge may find the respondent in default and impose a fine and penalty if two conditions are met: The NOI must be valid on its face, and the Government must have submitted evidence that it properly served the NOI on Respondent.[1]

The NOI is valid on its face. The Government filed a certificate of service stating that the NOI was mailed to Respondent and filed an affidavit stating that the U.S. Postal Service has not returned the NOI undelivered. The Government also filed evidence of Respondent's last known home or business address. This administrative court concludes that Respondent had adequate notice of the charges.[2]

The deadline for Respondent's answer has expired.[3] The NOI states that a respondent who fails to answer by the deadline "**will be subject to a penalty equal to twice the amount of the fine, in**

---

[1] OAH Rule 2805.5.

[2] D.C. Official Code §§ 2-1802.01 and 2-1802.05; *see Kidd Int'l Home Care, Inc. v. Prince*, 917 A.2d 1083, 1086 (D.C. 2007) (due process requires notice "reasonably calculated to afford the party an opportunity to be heard"); *Dusenberry v. United States*, 534 U.S. 161, 170 (2002).

[3] D.C. Official Code §§ 2-1802.02(e) and 2-1802.05; OAH Rule 2812.5.

**addition to the fine itself, and the entry of a default order without additional notice**." The penalty is authorized by statute,[4] and the conditions for issuing a default order have been met.

Therefore, it is hereby:

**ORDERED**, that Respondent is in **DEFAULT** and is **LIABLE** for the violation charged in the NOI; it is further

**ORDERED**, that Respondent must pay fines and penalties in the total amount of **$1590** in accordance with the **Payment Instructions** below within 20 calendar days of the mailing date of this Order; it is further

**ORDERED**, that if Respondent fails to pay within 20 calendar days of the mailing date of this Order, interest shall accrue on the unpaid amount at the rate of 1½ % per month or portion thereof, starting 20 calendar days after the mailing date of this Order, pursuant to D.C. Official Code § 2-1802.03(i)(1); it is further

**ORDERED**, that failure to pay may result in additional sanctions, including the suspension of Respondent's licenses or permits, the placement of a lien on Respondent's real and personal property, and the sealing of Respondent's business premises or work sites, under D.C. Official Code § 2-1801.03; and it is further

**ORDERED,** that any party may ask for reconsideration or relief from this Order as stated below;[5] and it is further

**ORDERED,** that any party may appeal this Order as stated below.

---

[4] D.C. Official Code §§ 2-1801.04(a)(2) and 2-1802.02(f).

[5] Parties are encouraged to provide an email address with any filing. During the Mayor's Declaration of a Public Health Emergency, parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

**This Final Order is dated when it is served, as certified on the Certificate of Service found at the end of this decision.**

*Claudia A. Crichlow*

_____
Claudia A. Crichlow
Principal Administrative Law Judge

3

Case No.: 2021-DCRA-VR22-00182

---

## PAYMENT INSTRUCTIONS

**STARTING IMMEDIATELY ALL PAYMENTS MUST BE MADE DIRECTLY TO THE DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS.**

Online payment can be made with a credit or debit card only. If you wish to pay by check, please mail or bring the check with the Notice of Infraction / Special Assessment / Re-Inspection bill to DCRA Office of Civil Infractions, located at 1100 4th Street, SW, 2nd Floor, Washington DC, 20024. Make your check payable to "DC Treasurer." Please write your Notice of Infraction / Special Assessment / Re-Inspection number on the check.

**Online payment** can be made using the following link: **https://govservices.dcra.dc.gov/paymentportal**. Please enter the Notice of Infraction Number. When paying for multiple fines that have been consolidated, please enter the first number listed in the Final Order.

**Walk-In payment** is available at the **District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.** The walk-in cashier's office requires payment be accompanied with a payment voucher that the respondent  must secure from DCRA's Office of Civil Infractions. To request a payment voucher, please email DCRA.Civilinfractions@dc.gov with reference to the Notice of Infraction Number.

**Mail payment** to **Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.**

To ensure payments are applied accurately, record the Notice of Infraction number on the front of any check or money order and correspondence.

A $65.00 FINE WILL BE IMPOSED ON CHECKS DISHONORED BY THE BANK.

INTEREST

D.C. Official Code § 2-1802.03.(i)(1) provides that fines be paid in full with interest from the date levied.  For each month or portion thereof that a fine and/or assessment remain unpaid interest is accrued at 1.5%.  Interest begins 30 calendar days after the fine and/or assessment is levied.

District of Columbia
Office of Administrative Hearings
One Judiciary Square
441 Fourth Street, NW
Washington, DC  20001-2714


423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

---

**Certificate of Service:**

**By First-Class Mail (Postage Paid):**

423 KENNEDY ST HOLDINGS LLC
1215 1ST ST NE
Washington, DC 20002-7935
cb@colomariver.com

**By Email:**

Esther Yong McGraw
General Counsel
Dep't of Consumer and Regulatory Affairs
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov

I hereby certify that on September 7, 2022 this document was served upon the parties named on this page at the address(es) and by the means stated.


//s W. Green

_____
Clerk / Deputy Clerk

**APPEAL RIGHTS**

**After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order. There are important time limitations described below for doing so.**

**COVID-19 NOTICE:** The deadlines described below may be temporarily suspended or extended due to the COVID-19 pandemic. For up-to-date information about any changes to these deadlines, please visit the Office of Administrative Hearings website at https://oah.dc.gov and the D.C. Court of Appeals website at https://www.dccourts.gov/court-of-appeals.

**HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[6]**

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed. If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty. If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request. **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days if OAH mailed the Final Order to you). HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS**

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2). There is a $100 fee for filing a Petition for Review. Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review. Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[6] All parties must file all documents by either email: oah.filing@dc.gov, fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714. The filing must state when and how copies were served on the other party.

Case No.: 2021-DCRA-VR22-00182

## IMPORTANT NOTICES:

- **The amount of a lawfully imposed fine cannot be modified or reduced on appeal. D.C. Official Code § 2-1831.16(g).**

- **Filing an appeal does not stay (stop) the requirement to comply with a Final Order, including any requirement to pay a fine, penalty or other monetary sanction imposed by a Final Order. If you wish to request a stay, you must first file a written motion for a stay with the Office of Administrative Hearings. If the presiding Administrative Law Judge denies a stay, you then may seek a stay from the Court of Appeals or the Board as appropriate.**



Government of the District of Columbia
Department of Consumer and Regulatory Affairs
Office of Civil Infractions

## AFFIDAVIT THAT NOTICE OF INFRACTION HAS NOT BEEN RETURNED

### Notice of Infraction Number: <u>VR22-00182</u>

The Notice of Infraction referred to above was:

**X** Emailed to the Respondent on **December 3, 2021** using the email address(es) provided
by the Respondent. The email included a delivery confirmation receipt,

<u>and/or</u>

☐ Mailed to the Repsondent on **N/A** First Class U.S. Mail Postage Prepaid to the address(es)
recorded on the Certificate of Service. The evenlope(s) included the return address for
the this agency.

At least 15 calendar days have passed since the email or mailing date described above. My
review of DCRA records to determine whether or not the email was returned as undeliverable or
whether the U.S. Postal Service has returned the mailing to this agency confirmed that the Notice
of Infraction was not returned at any time subsequent to the the time it was either emailed or
mailed to the respondent as reflected in the Certificate of Service.

I declare under penalty of perjury that this information is correct.

_____*Patrice Derricott*_____          _____**December 24, 2021**_____
Signature                                    Date

Patrice Derricott
Program Supports Speclist
Office of Civil Infractions
Department of Consumer and Regulatory Affairs
1100 4th St., SW, Suite E510
Washington, DC 20024



Government of the District of Columbia
Department of Consumer and Regulatory Affairs

Office of Civil Infractions

**Notice of Infraction Number: <u>VR22-00182</u>**

**CERTIFICATE OF SERVICE**

I hereby certify that the attached Notice of Infraction **<u>VR22-00182</u>** and accompanying exhibits were served via email and/or via first class U.S. Mail Postage Prepaid on the parties named on this page at the address(es) below on **December 3, 2021.**

**<u>cb@colomariver.com</u>**


*Patrice Derricott*
PATRICE DERRICOTT
PROGRAM SUPPORT SPECIALIST



## GOVERNMENT OF THE DISTRICT OF COLUMBIA
# NOTICE OF INFRACTION

**Notice No.** **VR22-00182**

**12-3-2021**

**Date of Service**

**Issuing Agency:** D.C. Department of Consumer and Regulatory Affairs

Location of Infraction: 423 KENNEDY ST NW

| Type of Location: | ☒ Vacant Lot/Property | ☐ Construction Site | ☐ Occupied | ☐ Other _____ |
|---|---|---|---|---|

423 KENNEDY ST HOLDINGS LLC
CHAMPE V. THORNTON

**Business/Company Name**     Charge as Respondent (check): ☒ YES ☐ NO

Individual/Agent Name     Charge as Respondent (check): ☐ YES ☒ NO

1215 1ST ST NE     **cb@colomariver.com**

**Mailing Address**     **Email Address**

WASHINGTON     DC     20002-7935

**City**     **State**     **Zip Code**

You are charged with violating the District of Columbia laws or regulations stated below. You MUST SIGN and RETURN this Notice
WITHIN 15 CALENDAR DAYS (20 CALENDAR DAYS IF RECEIVED BY MAIL) of the date of service. You must also indicate below
each infraction whether you ADMIT, ADMIT WITH EXPLANATION, or DENY. **Instructions are on the reverse side of this Notice.**

Note: If DCRA deems the violation to constitute a life-safety hazard, DCRA may reduce the allowable abatement period to one (1) day.
If abatement is required, you must correct the violation, in addition to paying applicable fines. If you do not abate the violation, you may be
required to pay the cost of abatement incurred by the Government of the District of Columbia, in addition to any fine or other penalty. For
questions regarding this Notice of Infraction, please call DCRA Customer Service at (202) 442-4400 or email dcra@dc.gov.

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation 12G DCMR SUB-SECTION 302.4 | Fine for Infraction $530.00 | Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction: **PROHIBITIVE EXCESSIVE VEGETATIVE GROWTH**

Date of Infraction: **10/13/2021**    Time of Infraction: **07:37 AM**    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

| D.C. Official Code AND/OR D.C. Municipal Regulation Citation | Fine for Infraction | Statutory Penalty (if applicable) $ |
|---|---|---|

Nature of Infraction:

Date of Infraction:    Time of Infraction: _____    Previous Infractions Committed: ☐ 1 ☐ 2 ☐ 3 ☐ 4

**ANSWER:**    ☐ ADMIT (Pay Fine)    ☐ DENY (Appear for a Hearing)    ☐ ADMIT WITH EXPLANATION (See reverse side)

SIGNATURE: _____
Abatement required? Yes _____ No _____

**Total Fines and Penalties $530.00**

If you fail to answer each charge on this Notice within the required timeframe, you may be subject to a penalty equal to twice the
amount of the fine, in addition to the fine set forth in this Notice.

I personally declare under penalty of perjury that I observed and/or determined that the infraction(s) charged have been committed.
I further certify under penalty of perjury that:
☒ I am unable to determine whether the respondent is in the military service of the United States.

DCRA Employee Signature    GERARD ANDERSON    10-13-2021    1018

    **Print Name**    **Date**    **Badge/Identification Number**

## SEE REVERSE SIDE FOR INSTRUCTIONS

DCRA Enforcement Notice of Infraction (NOI-October 2020)

## ANSWERING THIS NOTICE OF INFRACTION

**DEADLINE:** You must answer this Notice within 15 calendar days of the date of service listed on the top of the other side of this Notice (20 calendar days if you received this Notice by mail). If you do not answer within the required timeframe, you will be subject to an order finding you in default and assessing both the fine set forth in this Notice and an additional penalty equal to two times the amount of that fine. You also may be subject to other penalties and action allowed by law, including the cost of abating the infraction, suspension of any District of Columbia license or permit that you hold, the sealing of your business, and the placement of a lien on property that you own. You have a right to request a hearing on the infraction charged on this Notice. Your answer must be received by the deadline stated above.

**HOW TO ANSWER:** In your answer to each charge, you should either ADMIT, or ADMIT WITH EXPLANATION, or DENY. The instructions below give information about how to respond to this Notice. Provide your email address and phone number at the bottom of this page.

**1. Admit the Infraction.** You may admit the infraction and waive your right to a hearing by paying the fine.

- **ONLINE** by credit card at https://govservices.dcra.dc.gov/paymentportal.
- In person at the *District of Columbia Office of the Chief Financial Officer's cashier's office at 1101 4th Street, S.W. STE. W1665, Washington, DC 20024 between the hours of 8:15-4:30.* **The walk-in cashier's office requires payment be accompanied with a payment voucher that the customer must secure from DCRA's Office of Civil Infractions** by email at DCRA.Civilinfractions@dc.gov.
- Mail to *Department of Consumer and Regulatory Affairs/Office of Civil Infractions (DCRA/OCI) 1100 4th Street, S.W. Suite E510, Washington, DC 20024.*

**2. Admit the Infraction with Explanation.** If you wish to **admit the infraction but want to submit an explanation** which the administrative law judge may consider in deciding whether the fine should be reduced or suspended, sign on the other side of this Notice and check the **ADMIT WITH EXPLANATION** box. **Do not send payment.** Mail or bring this Notice along with your written explanation and any supporting documents, photographs or other materials to *the Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: (202) 442-9094; **or send electronically to OAH.Filing@dc.gov**.

**3. To Deny the Infraction.** If you wish to deny commission of the infraction, **you are requesting a hearing on the infraction charged in this Notice.** Sign on the other side of this Notice and check the **DENY** box. **Do not send payment.** Mail or bring this Notice to the *Office of Administrative Hearings, One Judiciary Square, 441 4th Street, N.W., Suite 450 N, Washington, D.C. 20001-2714;* telephone: 202-442-9094; **or send electronically to OAH.Filing@dc.gov.** A hearing on this Notice will be scheduled at which you must appear. You will receive a notice from the Office of Administrative Hearings with information about your hearing date.

Questions can be directed to DCRA Customer Service at (202) 442-4400 or dcra@dc.gov.

**EMAIL (print)** _____

**PHONE**_____

# EXHIBIT O

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**

**Cover Sheet for Electronic Filing**

I am filing the attached papers at the Office of Administrative Hearings.

**1. Check one of the boxes below.**

☒ The case number is: ___2021-DCRA-VR22-00182___.    ☐ This is a new case, and a case number has not yet been assigned.

**2. Briefly describe the paper that you are filing:**

Request to Change Final Order for Case # 2021-DCRA-VR22-00182

3. **My name, mailing address, telephone number, and e-mail address are:**

Name: Mel Negussie          Telephone: 202-271-5046
Mailing Address: _____      E-mail address: cbp@harkenbuilders.com
1629 K St NW. Suite 300          Representing: 423 Kennedy St Holdings LLC
City, State, Zip: Washington, DC 20006

I agree to receive documents from the court at my email address  Yes    No

4. You should complete this form, save it to your computer, and then attach it to an e-mail, along with the papers you are filing. The e-mail address for filing papers at OAH is oah.filing@dc.gov. Papers sent to any other e-mail address will **not** be accepted for filing.

**I sent a copy of the attached papers to all other parties or their representatives as listed below.**

Person to Whom the Papers Were Sent:          Method of sending:
_____      ☐ Mail  ☐ Commercial Carrier
Address _____      ☐ Fax (Give Fax number) _____
City, State, Zip Code_____      ☐ Hand delivery
Date the papers were sent:_____      ☐ Email (only if the person has agreed; provide
                              email address _____)

Person to Whom the Papers Were Sent:          Method of sending:
_____      ☐ Mail  ☐ Commercial Carrier
Address _____      ☐ Fax (Give Fax number) _____
City, State, Zip Code_____      ☐ Hand delivery
Date the papers were sent:_____      ☐ Email (only if the person has agreed; provide
                              email address _____)

**If you sent the papers to more than two people, provide the above information for the additional people on a separate sheet.**

# DISTRICT OF COLUMBIA
## OFFICE OF ADMINISTRATIVE HEARINGS
One Judiciary Square
441 Fourth Street, NW, 450 North
Washington, DC 20001-2714
TEL: (202) 442-9094    FAX: (202) 442-9451

# REQUEST TO CHANGE A FINAL ORDER
## ("I want the decision changed")

You may use this form to ask the Administrative Law Judge to change a Final Order **after** it has been issued.

My Name: Mel Negussie                    My Case No.: 2021-DCRA-VR22-00182

My Address:  1629 K St NW. Suite 300     My Telephone No.: 202-271-5046

City/State/Zip Code: Washington, DC 20006    My Fax No.:

If you lost because the Final Order said you did not file something (such as an answer to a Notice of Violation, an answer to a Notice of Infraction, or a Claims Examiner's Determination), explain why you did not file it.

We did not file it because we did not know that this infraction existed. The only notice we received was the Final Order via email. The mailing address on the notice was incorrect and was mailed to the old property owner.

Why do you think that the Final Order is wrong or unfair?  Why should the Administrative Law Judge change the Final Order?

We did not get the notice and did not know that this case was still active. We also have been under construction for the past 12 months and have made improvements to the site and cleaned up the area that we were fined for.

The OAH Resource Center, which has a variety of tools to assist you, is open during regular OAH business hours.  The OAH website is available at www.oah.dc.gov.  It includes the text of the rules, forms, and other helpful information.  The OAH Rules concerning requests for reconsideration and requests for relief from a final order can be found at OAH Rule 2828.

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) Page 759 of 2443

# EXHIBIT P

## James D. Sadowski

| | |
|---|---|
| **From:** | DOB/DLCP Payment Confirmation <DoNotReply-DCRA@dc.gov> |
| **Sent:** | Saturday, December 10, 2022 6:38 AM |
| **To:** | mel@ntconstruction.net |
| **Subject:** | Payment Confirmation for DOB Code Enforcement Fine |
| **Importance:** | High |

This email is generated automatically. Please do not reply.

**Your Payment has been accepted.**

---

Thank you for your recent payment submitted via online payment portal. Please make sure you keep a copy of this email for your records.

**Payment Details:**

Notice of Infraction (NOI) Number: VR22-00182

| | |
|---|---|
| Payment date: | 12/10/2022 |
| Amount Charged: | $ 1657.43 |
| Card number ending in: | 8755 |
| Transaction ID: | AP1C7F27E550 |

Thank you,
DOB/DLCP

---



1278

Case 25-10208-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 19:35:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part I) Page 761 of 2443

# EXHIBIT Q

**DISTRICT OF COLUMBIA**
**OFFICE OF ADMINISTRATIVE HEARINGS**
One Judiciary Square
441 Fourth Street, NW
Washington, DC 20001-2714
TEL: (202) 442-9094
FAX: (202) 442-4789
oah.filing@dc.gov

DISTRICT OF COLUMBIA
DEPARTMENT OF BUILDINGS
AS SUCCESSOR AGENCY TO THE
DISTRICT OF COLUMBIA
DEPARTMENT OF CONSUMER AND
REGULATORY AFFAIRS,[1]
    Petitioner,

    v.

423 KENNEDY ST HOLDINGS LLC,
    Respondent.

Case No.: 2021-DCRA-VR22-00182
NOI No.: VR22-00182

**ORDER VACATING FINAL ORDER**
**AND**
**DISMISSING CASE WITHOUT PREJUDICE**

## I. Introduction

I issued a Final Order in this case, which was served on September 7, 2022, (the "Final Order"), finding Respondent in default for failing to answer Notice of Infraction No. VR22-00182 (the "NOI"). I imposed the authorized fine and late answer penalty. For the reasons set forth below, I now vacate the Final Order and dismiss Case No. 2021-DCRA-VR22-00182 and the NOI, each without prejudice.

---

[1] In accordance with the Department of Buildings Establishment Act of 2020, D.C. Code 10-561.01 et seq., OAH Rule 2816.6, and Mayor's Order 2022-149, OAH retains jurisdiction over the Department of Buildings and the Department of Licensing and Consumer Protection as successor agencies to the Department of Consumer and Regulatory Affairs (DCRA). This matter has been recaptioned to refer to the applicable successor agency to DCRA.

On December 12, 2022, the Petitioner, DOB, filed a Motion of Dismissal with the Office of Administrative Hearings.

*OAH rule 2817.1 The party initiating the case may move to dismiss the case at any time, and the Administrative Law Judge may grant the motion without waiting for a response from the opposing side.*

The District of Columbia Department of Buildings (the "Government") may, at its discretion and as authorized by law, issue a new Notice of Infraction and begin a new case before this administrative court, for the same alleged infraction(s).

It is therefore this 12th day of December, 2022:

**ORDERED**, that the Final Order is **VACATED** and of no further effect whatsoever; and it is further

**ORDERED**, that Notice of Infraction No. VR22-00182 is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED**, that the appeal rights of any party aggrieved by this Order are stated below; and it is further

*(s) Claudia A. Crichlow*
Claudia A. Crichlow
Principal Administrative Law Judge

- 2 -

1281

Case No.: 2021-DCRA-VR22-00182

## Certificate of Service:

**By Email:**

Esther Yong McGraw
General Counsel
Department of Buildings
1100 4th Street, SW – 5th Floor
Washington, DC 20024
**Email:** oaheserve.dcra@dc.gov
        dob.filing@dc.gov

**By First-Class Mail (Postage Paid) and
Email:**

Chapman Paret
629 K St NW
Ste 300
Washington, DC 20006
ecbp@harkenbuilders.com

I hereby certify that on <u>December 12, 2022,</u>
this document was served upon the parties
named on this page at the address(es) and by
the means stated.

*(s) Joseph Harrison*
Joseph Harrison
Paralegal Specialist

- 3 -

1282

### APPEAL RIGHTS

After an administrative law judge has issued a Final Order, a party may ask the judge to change the Final Order and may ask the District of Columbia Court of Appeals to change the Final Order.  There are important time limitations described below for doing so.

### HOW TO REQUEST THE ADMINISTRATIVE LAW JUDGE TO CHANGE THE FINAL ORDER[2]

Under certain limited circumstances and within certain time limits, a party may file a written request with the Office of Administrative Hearings (OAH) asking the administrative law judge to change a final order. OAH Rule 2828 explains the circumstances under which such a request may be made. Rule 2828 and other OAH rules are available at https://oah.dc.gov and at OAH's office. Rule 2828 states that a request to change a final order "shall state whether an appeal [to the District of Columbia Court of Appeals] has been filed.  If an appeal has been filed, OAH has no jurisdiction to decide" the request unless the Court of Appeals has remanded the case to OAH for that purpose.

A request to change a final order does not affect the party's obligation to comply with the final order and to pay any fine or penalty.  If a request to change a final order is received at OAH **within 10 calendar days** of the date the Final Order was filed (**15 calendar days** if OAH mailed the final order to you), the period for filing an appeal with the District of Columbia Court of Appeals does not begin to run until the Administrative Law Judge rules on the request.  **A request for a change in a final order will not be considered if it is received at OAH more than 120 calendar days of the date the Final Order was filed (125 calendar days** if OAH mailed the Final Order to you).

### HOW TO APPEAL THE FINAL ORDER TO THE DISTRICT OF COLUMBIA COURT OF APPEALS

Pursuant to D.C. Official Code § 2-1831.16(c)-(e), any party suffering a legal wrong or adversely affected or aggrieved by this Order may seek judicial review by filing a Petition for Review and six copies with the District of Columbia Court of Appeals at the following address:

<div align="center">

Clerk
District of Columbia Court of Appeals
430 E Street, NW, Room 115
Washington, DC 20001

</div>

The Petition for Review (and required copies) may be mailed or delivered to the Court of Appeals, and must be received there within 30 calendar days of the mailing date of this Order, pursuant to D.C. App. R. 15(a)(2).  There is a $100 fee for filing a Petition for Review.  Persons who are unable to pay the filing fee may file a motion and affidavit to proceed without the payment of the fee when they file the Petition for Review.  Information on petitions for review can be found in Title III of the Court of Appeals' Rules, which are available from the Clerk of the Court of Appeals, or at https://www.dccourts.gov/court-of-appeals.

---

[2] All parties must file all documents by either email: oah.filing@dc.gov,  fax: (202) 442-4789; or mail: OAH, 441 Fourth Street, NW, Suite 450 North, Washington, DC 20001-2714.  The filing must state when and how copies were served on the other party.

- 4 -

# EXHIBIT R

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square | 3260 | Suffix | | Lot | 0056

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A

FROM: WCP Fund I LLC    PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25 , 20 23 , AT THE OFFICE OF Harvey West Auctioneers, Inc.

5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015

2:10 P.M.    THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on April 8 , 20 22 .

Liber: | | Folio: | | Instrument No: 2022038745

Maker(s) of the Note secured by the instrument: 423 KENNEDY ST HOLDINGS LLC

See Exhibit A    See Exhibit A
Phone    Last Known Address

Description of Property: Multi-Familiy Residential Building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 423 Kennedy Street, NW, Washington, DC 20011

Square: 3260    Lot: 0056    or Parcel No:

Holder of the Note (Name): WCP Fund I LLC
Phone: (703) 727-5464    Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 1,598,839.60 *

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 íRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015    Phone: (202) 223-7900

** as of June 23, 2023

1285

★ ★ ★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
## OR CONDOMINIUM UNIT

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square **3260**   Suffix   Lot **0056**

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on **June 23** ,20 **23** ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

**06/23/2023**
Date

**RD** (Signature of Noteholder or his agent)

I, **Deborah A. Stewart** , a Notary Public in and for the **District of Columbia** ,

DO HEREBY CERTIFY THAT **Russell S. Drazin**

who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the **23rd** day of **June** , 20 **23** , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be **his** act and deed.

Given under my hand and seal this **23rd** day of **June** , 20 **23** .

_Deborah A. Stewart_
Notary Public

My Commission Expires: **09/30/2025**
mmddyyyy

*(Notary seal: DEBORAH A. STEWART, NOTARY PUBLIC, MY COMMISSION EXPIRES 9-30-2025, DISTRICT OF COLUMBIA)*

# EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

# Pardo & Drazin, LLC
### Russell S. Drazin, Attorney
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

### TRUSTEE'S SALE
### OF REAL PROPERTY

423 Kennedy Street, NW
Washington, DC 20011

Lot 0056 in Square 3260

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038745 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $1,256,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

### JULY 25, 2023 AT 2:10 PM

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 423 Kennedy Street, NW, Washington, DC 20011 (Lot 0056 in Square 3260), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated March 31, 2022 and recorded on April 8, 2022 as Instrument No. 2022038744 from 423 Kennedy St Holdings LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated March 31, 2022 in the principal amount of $8,689,693.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE:  A deposit of $150,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)



## AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202) 727-5374**

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo                                [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC                                is the holder of the mortgage
recorded as Instrument Number 2022038745                in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

Signature:

Printed Name:  Christina Araujo

Title:  Vice President of Finance

Date:  June 21, 2023

State of  Virginia

County of  Fairfax

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on

this 21st                     day of June        , 20 23

by  Christina Araujo                          (name of person)  as

Vice President of Finance                      (type of authority, e.g. officer,

trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:

SSL:

3260/0056

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES        $25.00
  SURCHARGE             $6.50
TOTAL:                  $31.50

eFiled
07/20/2023 1:54:50 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

Hearing on Motion for Temporary Restraining
Order: July 21, 2023 at 1:30 pm

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

      Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being

collectively known as the "Defendants"),[1] by and through undersigned counsel, pursuant to

District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed

Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion,"

with the plaintiff being known as the "Plaintiff") state as follows:

**I.    Introduction**

      "[T]he court finds Defendant has acted in accordance with the terms of the contract," this

Honorable Court (Mitchell-Rankin, J.) concluded when presented with a similar – albeit not

identical – motion for a temporary restraining order, by 423 Kennedy St Holdings LLC (the

"Plaintiff") in February 2023. *See* Order, attached hereto as Exhibit A. In that instance, the

---

[1] There is a fifth defendant to this action: SF NU, LLC ("SNL"). Undersigned counsel has not, as of present, been engaged to represent SNL. Accordingly, references to the "Defendants" are in exclusion of SNL. However, it appears the inclusion of SNL in this lawsuit is either grossly errant or an act of manifest bad faith, as SNL has – quite literally – nothing to do with the loans at issue *sub judice* and, equally, is an entity wholly independent and separate from the Defendants.

1

Plaintiff's request for injunctive relief was denied and the Plaintiff's case was *sua sponte* dismissed. Now, with a foreclosure of its eponymous property scheduled, the Plaintiff seeks a second bite at the proverbial apple.

The Motion merits denial this time as well. This is a case where the Plaintiff borrowed $9,945,693.00 from WCP on March 31, 2022, through two loans memorialized by promissory notes and secured by deeds of trust. Barely a month later, the Plaintiff defaulted when it failed to make a timely interest payment. A month later, the Plaintiff again defaulted by failing to make another interest payment on time. A third default followed – for the same reason – on July 1, 2022.

A fourth default came a few months later when, on November 17, 2022, the Plaintiff's failure to pay a government fine resulted in a senior lien being imposed on the property securing the debt. A fifth default followed two weeks after, when the Plaintiff did not make its December 1, 2022 interest payment on time. And seventh and eighth defaults ensued on February 1, 2023 and March 1, 2023 when the Plaintiff, yet again, failed to make interest payments.

It is the ninth default, however, that is the most significant. The loans matured on March 31, 2023 and were not repaid. It is not that the Plaintiff only repaid the principal or paid the principal with some portion of the interest; it is, rather, that the Plaintiff altogether failed to repay the loans at maturity.[2]

---

[2] Given the number of defaults, the defendants have created a demonstrative exhibit setting forth the details of each such breach of the loan documents correlative to the second loan, together with the monetary impact of each breach, the correlative provisions of loan documents giving rise to the breach, and the date of each breach. Some of the breaches were missed payments that were later made; many of the missed payments – including the maturity payment – were never made at all. Where a payment was eventually made, that, too, is indicated on the exhibit. *See* Demonstrative Exhibit, attached hereto as Exhibit B. This exhibit does *not* include the breaches of the loan documents for the first loan, since it is the second loan's security interest that is currently scheduled for foreclosure.

With more than three months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than three months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

## II.    Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F.

3

Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief);

*Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer

guidance where similar to the rules of this Honorable Court).

    Specifically, a four prong test controls any request for non-final injunctive relief, with a

"sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2)
> likelihood of success on the merits in the underlying cause of action; (3) [whether]
> the "balance of injuries" favors granting an injunction; and (4) [whether] the public
> interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ.*, 418

A.2d 105, 109 (D.C.1980)).

    Importantly, "When seeking a preliminary injunction, the movant has the burden to show

that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar.*

*Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C.

Cir. 2006)).

## III.    Relevant Facts

    The Defendants submit the following facts to be without genuine dispute and, where

appropriate, to be evidenced by documents appended to the Motion or appended hereto:

    1.    On March 31, 2022, WCP loaned the Plaintiff the sum of $8,689,693 (the "First

Loan"). *See* Commercial Deed of Trust Note, attached to Complaint (the "Complaint") as Exhibit

B.

    2.    Of even date therewith, WCP loaned the Plaintiffs an additional sum of

$1,256,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Complaint

as Exhibit D.

3.      Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D, at § 3.

4.      The interest-only payment of $12,560.00, on the Second Loan, due on May 1, 2022, was not made until July 14, 2022 – some 74 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.[3]

5.      The interest-only payment of $12,978.67, on the Second Loan, due on June 1, 2022, was not made until July 14, 2022 – some 43 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

6.      The interest-only payment of $12,560.00, on the Second Loan, due on July 1, 2022, was not made until July 14, 2022 – some 13 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

7.      On November 17, 2022, the Plaintiff permitted a government lien to encumber the real property securing the loans (the "Property") by failing to pay fines and penalties to the District of Columbia Department of Buildings. *See* Lien Notice, attached hereto as Exhibit D.

8.      The interest-only payment of $12,560.00, on the Second Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

---

[3] The exhibit has two pages. The first page is an excerpt of the pertinent portions of the payment history. The second page is the full payment history. This is done because of the size of the second page and resulting concerns about readability.

5

9.      The interest-only payment of $44,846.67, on the First Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* First Loan Payment History, attached hereto as Exhibit E.[4]

10.     The interest-only payment of $12,978.67, on the Second Loan, due on January 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

11.     The interest-only payment of $46,341.56, on the First Loan, due on January 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

12.     The interest-only payment of $12,978.67, on the Second Loan, due on February 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

13.     The interest-only payment of $46,341.56, on the First Loan, due on February 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

14.     The interest-only payment of $11,722.67, on the Second Loan, due on March 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

15.     The interest-only payment of $41,856.89, on the First Loan, due on March 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

16.     Both loans matured on March 31, 2023. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B; Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

17.     Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for Second Loan, attached hereto as Exhibit C; Payment History for First Loan, attached hereto as Exhibit E.

---

[4] See, *supra*, n. 3.

6

18.     Both the First Loan and the Second Loan are secured by deeds of trust on the real

property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (previously

defined as the "Property"). *See* Deed of Trust, attached to Complaint as Exhibit A; Deed of Trust,

attached to Complaint as Exhibit C.

19.     Both deeds of trust require the Plaintiff to pay any "fine" or "penalty" in a timely

manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than
> the due date thereof or the date any fine, penalty, interest or cost may be added
> thereto or imposed by or pursuant to law for the nonpayment thereof (whichever
> date shall first occur) or, at the direction of the Beneficiary, as soon as the same
> become liens, whether or not then due and payable, any Impositions upon or
> assessed against the Mortgaged Property or arising in respect of the occupancy, use
> or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver
> to the Beneficiary from time to time receipts evidencing the payment of all such
> Impositions.

*See* Deed of Trust, attached to Complaint as Exhibit A, at § 4.2; Deed of Trust, attached to

Complaint as Exhibit C, at § 4.2.

20.     Neither the promissory notes nor the deeds of trust require written notice of a

default, nor of acceleration upon default, being commercial loan instruments governed by District

of Columbia law. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, *passim*;

Commercial Deed of Trust Note, attached to Complaint as Exhibit D, *passim*; Deed of Trust,

attached to Complaint as Exhibit A, *passim*; Deed of Trust, attached to Complaint as Exhibit C,

*passim*.

21.     The promissory notes and deeds of trust expressly provide that WCP and DPCL

may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without

waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note,

attached to Complaint as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Complaint

7

as Exhibit D, § 5; Deed of Trust, attached to Complaint as Exhibit A, § 11.4; Deed of Trust, attached

to Complaint as Exhibit C, § 11.4.

### IV.    Argument: The Motion Merits Rejection

#### a.    The Plaintiff is Not Likely to Succeed on the Merits

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes

at maturity, preceded by multiple payment defaults thereunder and the imposition of a municipal

lien on the collateral securing those loans, is not grounds to foreclose under standard commercial

deeds of trust. This is *reductio ad absurdum*.

#### i.    Breach of Contract

The Plaintiff's first claim (Count I) is for breach of contract. Notably, the Motion devotes

only two sentences to this cause of action, observing (i) the elements of such a claim; and (ii) that

"the Lender Defendants stopped funding constructions draws as promised for no valid reason…"

Motion at § IV(B)(2). The threadbare nature of this assertion – in a filing where the Defendants

agreed that the Plaintiff could exceed the ordinary page count – is notable.

The Plaintiff is correct about the governing elements for a breach of contract claim. *See*

Motion at § IV(B)(2) (noting the elements to be "(1) a valid contract between the parties; (2) an

obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by that

breach.") (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 186 (D.C. 2009)).

The first core problem with this claim, though, is that there is no such contract. The

Complaint posits that "The WCP and WCP Fund's agreement to provide construction draws was

memorialized on the HUD 1 Settlement Statement signed at closing." Complaint at ¶ 17. Yet a

8

review of the settlement statements reveals no such agreement. *See* Settlement Statements, attached hereto as Exhibit F.

Nor is this surprising. A HUD-1 Settlement Statement is a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing. It is not a contract, as a matter of law. *See, e.g.*, *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1265 (S.D. Fla. 2013) ("…a closing statement is not a contract…") (citing *Cornelius v. Fidelity Nat. Title Co.*, 2009 WL 596585, at *3 (W.D. Wash. 2009) *Kirby v. Bank of Am., N.A.*, 2012 WL 1067944, at *8 (S.D. Miss. 2012); *Jankanish v. First Am. Title Ins. Co.*, 2009 WL 779330, at *2 (W.D. Wash. 2009); *Deutsch Tane Waterman & Wurtzel, P.C. v. Hochberg*, 890 N.Y.S.2d 755, 757 (N.Y. App. Div. 2009)); *Koschene v. Hutchinson*, 2007 WL 6013037, at *2 (Va. Cir. 2007) ("…it is apparent to the Court that the HUD–1 is not a contract, but is really a statement as to how funds shall be distributed."); *Jankanish*, 2009 WL 779330, at *2 ("…the current settlement statements do not include terms and conditions, reflect no fee paid as consideration for a separate HUD–1 contract, and contain no contractual promise to perform (or refrain from performing) some act. The Court therefore finds that the HUD–1 statements are not contracts and dismisses count two.") (citing *Cornelius* at 5-6) (citing *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104 (Wash. 1998)); *Garland v. ServiceLink L.P.*, 2013 WL 5428716, at *1 (D. Md. 2013) ("Despite the arrangement, the Garlands do not allege to having signed a formal agreement, noting only that the terms were detailed in a HUD–1 Settlement Statement (the 'HUD–1 Statement'), which the Garlands concede is not a contract").

The Plaintiff also theorizes some agreement to fund constructions draws may have been set forth in a draw budget or a term sheet. Complaint at ¶ 19. Yet the Plaintiff has not appended these documents and, to the contrary, does not point to any provision of either document where

9

WCP, DPCL, or any other person or entity expressly agrees to fund construction draws. And it is thusly difficult to appreciate why the Plaintiff believes either of these documents could form a binding contract – especially in the context of two loans that are memorialized by formal promissory notes (neither of which so much as references a promise to fund construction draws) and deeds of trust (which are also wholly silent on the issue).

Though perhaps the biggest issue with this claim, in the prism of the Motion, is that it is a claim that – should the cause of action survive a motion to dismiss – would invite litigation of monetary damages. The "contract" allegedly breached, to the extent one can be surmised from the Complaint (with the Motion being topically silent), would be an agreement to fund construction – not an agreement to buy or sell real estate. And this would, accordingly, be an agreement for which solely monetary damages could be awarded.

Yet, under District of Columbia law, injunctive relief is not available for a claim that can be remedied through the award of a monetary payment. *See, e.g. Karriem v. Gray*, 623 A.2d 112, 115 (D.C. 1993) ("Because this harm could, conceivably, be cured by a monetary payment an injunction is not needed to avoid irreparable harm to appellant.") (citing *In re Antioch University*, 418 A.2d 105, 109–10 (D.C. 1980)).

To be sure, the Plaintiff does *not* seek a permanent injunction in connection with Count I of its Complaint, asking instead for solely-monetary damages. And this is thusly a claim that (i) is addressed in only two sentences of the Motion; (ii) that appears to be untethered to any legally-cognizable contract; and (iii) that cannot support injunctive relief.

### ii. Tortious Interference with Business Relations

The heart of the claim for tortious interference with business relations (Count II) is that WCP and DPCL should not have declared the promissory notes to be in default on December 8,

1301

2022, when the Plaintiff had already defaulted on the notes and their correlative deeds of trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

11

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited until at least four more defaults occurred – including a failure to pay both loans at maturity – before noticing a foreclosure, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

### iii.  Breach of the Duty of Good Faith and Fair Dealing

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing (Count III). Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least nine separate times, including a failure

12

to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received loaned monies. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

### iv.  Breach of Fiduciary Duty

The Plaintiff also theorizes that Mr. Drazin, a respected local attorney, has a conflict of interest and cannot serve as the trustee foreclosing the second deed of trust, since he is also counsel

13

to WCP and DPCL. In so doing, the Plaintiff not only ignores that the District of Columbia has a longstanding tradition of having creditors' attorneys act as trustees in connection with foreclosure proceeding but, too – and more importantly – that no actual breach of his fiduciary obligations has been alleged. The Plaintiff insists there is a conflict of interest, but does not – and cannot – point to a single action taken by Mr. Drazin that is not in precise conformity with his obligations as expressly set forth in the correlative deed of trust.

In his capacity as trustee, Mr. Drazin has (i) filed a Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper.

Further, Mr. Drazin's service as a trustee is largely ministerial in nature, being intentionally devoid of latitude to make decisions beyond the date/time of a foreclosure sale and where to publish advertisements for the sale. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377

n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in March 2023 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a preceding series of independent defaults that include (i) the Plaintiff failing to make various payments in a timely fashion; (ii) the Plaintiff failing to make other payments altogether; and (iii) the Plaintiff allowing a municipal lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any pertinent information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in

15

the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to suit herein.

### v.  The Defaults are Not "Technical" and Do Give Rise to Foreclosure

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(7). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(5), and that the violations have been cured, *Id.* at § IV(b)(7). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation. Nor is altogether failing to make interest payments, for multiple months (without ever paying those obligations, even tardily) a "technical" violation. And, similarly, allowing a senior to encumber a lender's collateral, because of the non-payment of a government fine, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, *some* of the late payments were ultimately made on installment interest, but several were not. And perhaps the senior lien was ultimately retired (that seems less clear). Still, as this Honorable Court has previously observed, those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types); yet, to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $8.5 million on account of loans that matured and were

16

not repaid upon maturity. And this has been true for more than three months, with the maturity

having occurred toward the end of March 2023.[5]

### vi. The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not

enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is

without legal support, as the District of Columbia expressly allows parties to contractually bargain

for damages arising on account of contractual breaches.

The District of Columbia Court of Appeals has made clear that liquidated damages

provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to
> be forfeited as liquidated damages for breach of contract." This is because a
> liquidated damages clause serves "to simplify the resolution of a breach of contract
> dispute" by "giving the parties an opportunity to resolve the damages question
> without resorting to litigation" and by "fix[ing] the measure of damages at the
> outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v.*

*Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d

359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an

agreement to exceed the page count ordinarily governing motions practice). This is problematic,

inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan

documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the

---

[5] The Motion also argues that an affiliate relationship does not invite a breach of the loan
documents. Motion at § IV(b)(6). WCP and DPCL dispute this assertion and believe the relevant
third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the
instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents
– not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms.... [A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx,* 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.,* 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.,* 804 A.2d 1108, 1110 (D.C. 2002))).

**b.   The Motion Does Not Demonstrate Irreparable Harm**

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

18

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, <mark>630 A.2d 174, 185</mark> n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, <mark>367 A.2d 143, 144</mark> (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. <mark>11 U.S.C. § 362.</mark> The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

19

1310

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

20

## V.      Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $8.5 million. The debt is accruing interest at the rate of $4,828.13 per day. *See* Payoff Statements, attached to Motion as Exhibits K and L. And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $1,762,267.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

21

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $1,762,267.45; and (iii) afford such other and further relief as may be just and proper.

Dated: July 20, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 20th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Exhibit A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION
## Judge-in-Chambers

|  |  |  |
|---|---|---|
| **423 KENNEDY ST. HOLDINGS** | : | |
| | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| | : | |
| **Defendant.** | | |

### ORDER

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00

a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the

Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot

56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such

foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate

imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance

with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete.

Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a

preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the

harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found

no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion

for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in

this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

1316

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

_____

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

Exhibit B

423 K<small>ENNEDY</small> S<small>T</small> H<small>OLDINGS</small>, LLC H<small>ISTORY OF</small> L<small>OAN</small> D<small>OCUMENT</small> D<small>EFAULTS</small>
$1,256,000.00 L<small>OAN FROM</small> WCP F<small>UND</small> I LLC

| **First Default** | **Fifth Default** |
|---|---|
| $12,560.00 Interest Payment | $12,560.00 Interest Payment |
| Due: May 1, 2022 | Due: December 1, 2022 |
| Paid: July 14, 2022 | Paid: December 8, 2022 |
| Payment Made 74 Days Late | Payment Made 7 Days Late |
| *See* Promissory Note § 3; | *See* Promissory Note § 3; |
| Deed of Trust § 7.1 | Deed of Trust § 7.1 |

| **Second Default** | **Sixth Default** |
|---|---|
| $12,978.67 Interest Payment | $12,978.67 Interest Payment |
| Due: June 1, 2022 | Due: January 1, 2023 |
| Paid: July 14, 2022 | Paid: n/a |
| Payment Made 43 Days Late | Payment Never Made |
| *See* Promissory Note § 3; | *See* Promissory Note § 3; |
| Deed of Trust § 7.1 | Deed of Trust § 7.1 |

| **Third Default** | **Seventh Default** |
|---|---|
| $12,560.00 Interest Payment | $12,978.67 Interest Payment |
| Due: July 1, 2022 | Due: February 1, 2023 |
| Paid: July 14, 2022 | Paid: n/a |
| Payment Made 13 Days Late | Payment Never Made |
| *See* Promissory Note § 3; | *See* Promissory Note § 3; |
| Deed of Trust § 7.1 | Deed of Trust § 7.1 |

| **Fourth Default** | **Eighth Default** |
|---|---|
| $1,590.00 Lien Placed on Property | $11,722.67 Interest Payment |
| November 17, 2022 | Due: March 1, 2023 |
| Lienor: DC Department of Buildings | Paid: n/a |
| Reason: "Failure to Pay Fines and Penalties" | Payment Never Made |
| Land Records Document #2022114185 | *See* Promissory Note § 3; |
| *See* Deed of Trust §§ 1.0; 4.1; 4.2; 5.1; 7.2 | Deed of Trust § 7.1 |

**Ninth Default**
Payment of Full Sum at Maturity
Due: March 31, 2023
Paid: n/a
Payment Never Made
Amount Now Due: $1,569,730.80
*See* Promissory Note § 3;
Deed of Trust § 7.1

Exhibit C

| Name | Status | Rea: | Payment Due On | Days Past | Payment Paid On | Payment Method | Servicing Status | mount Due | nterest | mount Due | ate ee | mount Due | De ault | nterest |
|------|--------|------|----------------|-----------|-----------------|----------------|------------------|-----------|---------|-----------|--------|-----------|---------|---------|
| LPAY-113012 | Unpaid | | 8/1/2023 | -13 | | | O | | 12978 67 | | 0 00 | | | 12978 67 |
| LPAY-111259 | Unpaid | | 7/1/2023 | 18 | | | Defaulted | | 12560 00 | | 0 00 | | | 12560 00 |
| LPAY-109379 | Unpaid | | 6/1/2023 | 48 | | | Defaulted | | 12978 67 | | 0 00 | | | 12978 67 |
| LPAY-108293 | Unpaid | | 5/1/2023 | 79 | | | Defaulted | | 12560 00 | | 0 00 | | | 12560 00 |
| LPAY-106376 | Unpaid | | 4/1/2023 | 109 | | | Defaulted | | 12978 67 | | 0 00 | | | 12978 67 |
| LPAY-104932 | Unpaid | | 3/1/2023 | 140 | | | Defaulted | | 11722 67 | | 0 00 | | | 11722 67 |
| LPAY-103819 | Unpaid | | 2/1/2023 | 168 | | | Defaulted | | 12978 67 | | 0 00 | | | 12978 67 |
| LPAY-102228 | Unpaid | | 1/1/2023 | 199 | | | Defaulted | | 12978 67 | | 0 00 | | | 12978 67 |
| LPAY-100115 | Paid | | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | | 12560 00 | | 0 00 | | | 0 00 |
| LPAY-098554 | Paid | | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | | 12978 67 | | 0 00 | | | 0 00 |
| LPAY-096476 | Paid | | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | | 12560 00 | | 0 00 | | | 0 00 |
| LPAY-093144 | Paid | | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | | 12978 67 | | 0 00 | | | 0 00 |
| LPAY-090203 | Paid | | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | | 12978 67 | | 0 00 | | | 0 00 |
| LPAY-087896 | Paid | | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | | 12560 00 | | 0 00 | | | 0 00 |
| LPAY-085179 | Paid | | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delin uent (30-60 D | | 12978 67 | | 0 00 | | | 0 00 |
| LPAY-083482 | Paid | | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delin uent (60-90 D | | 12560 00 | | 0 00 | | | 0 00 |
| LPAY-082525 | Paid | | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | | 418 67 | | 0 00 | | | 0 00 |

Exhibit D

IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



## GOVERNMENT OF THE
## DISTRICT OF COLUMBIA
DC DEPARTMENT OF
BUILDINGS
OFFICE OF CIVIL
INFRACTIONS

### CERTIFICATE OF DELINQUENT FINES
FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO
THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:  Lot: 0056

NOI No. : VR22-00182

Address of Premises:

423 KENNEDY ST NW

This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1) of the D.C. Code, which establishes a continuing lien upon the real property (including improvements) and personal property of an owner in the District of Columbia who fails to pay all outstanding fines, penalties or other costs associated with a final adjudication of a Notice of Infraction issued pursuant to the Civil Infractions Act of 1985, as amended.

This Certificate, from the date of its filing, has the force and effect, as against the aforesaid delinquent party or parties, of a lien created by a judgment granted by the Superior Court of the District of Columbia. This lien remains in force and effect until the entire assessed amount set forth below, together with penalties and other costs (including, but not limited to, court costs and administrative fees) are paid. Failure to pay the outstanding amount within ninety (90) days after the date to appeal the final decision and order, if no appeal has been filed, may result in the sale of the owner's property for costs at the next tax sale in the same manner and under the same conditions as property sold for delinquent general taxes.

Document No: 1

Assessed Amount: $1590.00

By

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

Exhibit E

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | mount Due | nterest | mount Due | ate ee | mount Due | De ault | nterest | mount Due | otal |
|------|---------------|----------------|-----------------|----------------|------------------|-----------|---------|-----------|--------|-----------|---------|---------|-----------|------|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | | 46 341 56 | | - | | | 77 373 39 | | 123 714 95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | | 44 846 67 | | - | | | 74 877 47 | | 119 724 14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | | 46 341 56 | | - | | | 77 373 39 | | 123 714 95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | | 44 846 67 | | - | | | 74 877 47 | | 119 724 14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | | 46 341 56 | | - | | | 77 373 39 | | 123 714 95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | | 41 856 89 | | - | | | 69 885 64 | | 111 742 53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | | 46 341 56 | | - | | | 77 373 39 | | 123 714 95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | | 46 341 56 | | - | | | 77 373 39 | | 123 714 95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | | 44 846 67 | | - | | | - | | 44 846 67 |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | | 46 166 18 | | - | | | - | | 46 166 18 |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | | 43 025 07 | | - | | | - | | 43 025 07 |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | | 42 427 02 | | - | | | - | | 42 427 02 |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | | 40 014 28 | | - | | | - | | 40 014 28 |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | | 37 151 17 | | - | | | - | | 37 151 17 |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | | 36 924 24 | | - | | | - | | 36 924 24 |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | | 31 628 07 | | - | | | - | | 31 628 07 |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | | 1 008 80 | | - | | | - | | 1 008 80 |

1326

Exhibit F

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. 22-0210 | 7. Loan No. | 8. Mortgage Insurance Case No. |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: 423 Kennedy St Holdings LLC 1629 K Street Northwest Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender: WCP Fund I, LLC 2815 Hartland Road Suite 200 Falls Church, VA 22043 |
|---|---|---|
| G. Property Location: 419-423 Kennedy Street, NW Washington, DC 20011 3260-0000-0056 | H. Settlement Agent: District Title Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | I. Settlement Date: 03/31/2022 Funding Date: 03/31/2022 Disbursement Date: 03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,319,912.45 | 403. | |
| 104. Payoff to Washington Capital Partners | $4,546,765.88 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | $9,866,678.33 | 420. Gross Amount Due to Seller | |
| 200. Amount Paid by or in Behalf of Borrower | | 500. Reductions in Amount Due to Seller | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $8,689,693.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Transfer from 22-0210A | $1,176,985.33 | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid by/for Borrower | $9,866,678.33 | 520. Total Reduction Amount Due Seller | |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at Settlement to/from Seller | |
| 301. Gross amount due from borrower (line 120) | $9,866,678.33 | 601. Gross amount due to seller (line 601) | |
| 302. Less amounts paid by/for borrower (line 220) | $9,866,678.33 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

| | | |
|---|---|---|
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |

| | | |
|---|---|---|
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |

| | | |
|---|---|---|
| 901. Daily Interest charges from 03/31/2022 to 04/01/2022 @ $1008.8000 /day | $1,008.80 | |
| 902. Mortgage Insurance premium | | |
| 903. Homeowner's Insurance to Chenault Insurance Services, LLC | $22,185.00 | |
| 904. Prepaid Interest to WCP Fund I LLC | $246,763.00 | |

| | | |
|---|---|---|
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's Insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |

| | | |
|---|---|---|
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title Insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's Title Insurance to Fidelity National Title Insurance Company | $20,796.05 | |
| 1104. Lender's title policy limit $10,862,116.25 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. Title Commitment Fee to District Title | $738.56 | |
| 1108. Release Tracking Fee to Require | $38.49 | |
| 1109. E- Recording Fee to Simplifile | $5.02 | |
| 1110. Abstract Fee to Executive Abstracting Company | $160.00 | |
| 1111. Draw Fees 6 @ $100 to District Title | $600.00 | |
| 1112. CPL (Lender) to Fidelity National Title Insurance Company | $50.00 | |
| 1113. Notary Fees to Bancserv | $200.00 | |

| | | |
|---|---|---|
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $0.00 Mortgage $116,250.00 to District of Columbia District Recording Office | $116,250.00 | |
| 1204. | | |

| | | |
|---|---|---|
| 1301. Property Taxes GT 04/01/2022 to DC Treasurer | $37,547.52 | |
| 1302. Special Assessment Due - A2200101 to DC Treasurer | $726.18 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $5,319,912.45 | |

See signature addendum

1330

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____    3/31/2022                                   Date
By: Mel Melaku Negussie, Manager    Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the
funds to be disbursed in accordance with this statement

Settlement Agent _____                3/31/2022
                                                                                          Date

| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No.<br>22-0210-A | 7. Loan No. | 8. Mortgage Insurance Case No. |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower:<br>423 Kennedy St Holdings LLC<br>1629 K Street Northwest<br>Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender:<br>WCP Fund I, LLC<br>2815 Hartland Road<br>Suite 200<br>Falls Church, VA 22043 |
|---|---|---|
| G. Property Location:<br>419-423 Kennedy Street, NW<br>Washington, DC 20011<br>3260-0000-0056 | H. Settlement Agent:<br>District Title<br><br>Place of Settlement:<br>1775 I Street Northwest #560 Washington, DC 20006 | I. Settlement Date:<br>03/31/2022<br>Funding Date:<br>03/31/2022<br>Disbursement Date:<br>03/31/2022 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due from Borrower | | 400. Gross Amount Due to Seller | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $79,014.67 | 403. | |
| 104. Transfer to 22-0210 | $1,176,985.33 | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | $1,256,000.00 | 420. Gross Amount Due to Seller | |
| 200. Amount Paid by or in Behalf of Borrower | | 500. Reductions In Amount Due to Seller | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $1,256,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes | | 511. County Taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid by/for Borrower | $1,256,000.00 | 520. Total Reduction Amount Due Seller | |
| 300. Cash at Settlement from/to Borrower | | 600. Cash at Settlement to/from Seller | |
| 301. Gross amount due from borrower (line 120) | $1,256,000.00 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | $1,256,000.00 | 602. Less reductions in amounts due seller (line 520) | |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

1332

| Division of commission (line 700) as follows : | | |
|---|---|---|
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 801. Our origination charge to DP Capital, LLC (3.5%) | $43,960.00 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Processing Fee to DP Capital LLC | $1,250.00 | |
| 808. | | |
| 809. | | |
| 810. | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $418.6667 /day | $418.67 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance | | |
| 904. | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $1,334.50 | |
| 1104. Lender's title policy limit $1,570,000.00 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. | | |
| 1108. | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $ Mortgage $31,400.00 to District of Columbia District Recording Office | $31,400.00 | |
| 1204. | | |
| 1301. Property Taxes to DC Treasurer - POC by borrower $34263.90 | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $79,014.67 | |

**See signature addendum**

1333

423 Kennedy St Holdings LLC, a District of Columbia Limited
Liability Company

By: _____  Date

By: Mel Melaku Negussie, Manager

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the
funds to be disbursed in accordance with this statement

_____   3/31/2022
Settlement Agent                                                           Date

Previous editions are obsolete                                                    HUD-1

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

　　　*Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

　　　*Defendants.*

Case No. 2023-CAB-004760
Judge Milton Lee
Next Event:　Initial Conference
　　　　　　　10/13/2023 at 9:30 am

[PROPOSED] ORDER GRANTING PLAINTIFF'S
CONSENT MOTION TO EXCEED PAGE LIMIT

UPON CONSIDERATION of the Plaintiff's Consent Motion to Exceed Page Limit in an

Emergency Filing ("Motion"), and any opposition thereto, the Court funds good cause to grant

the relief requested in the Motion.

Accordingly, it is this _21st_ day of _____July_____, 2023, hereby

ORDERED, that the Motion is GRANTED; and it is further

ORDERED, that the Plaintiff may file an Opposed Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale that does not exceed twenty-three

(23) pages, including the signature page, the request for a hearing, the certificate of consent, and

the certificate of service.  The Exhibits are excluded from the page count.  The Opposition may

also exceed the page limit by an equal number of pages as the Emergency Motion.

SO ORDERED.

_____
*M. Lee*
_____
The Honorable Milton Lee
Superior Court of the District of Columbia

4894-3367-7681

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

423 KENNEDY ST HOLDINGS LLC,          :
              **Plaintiff**          :
                             :
                             :
      **vs**          :  **Docket No. 2023** CAB 4260
                             :
                             :
DP CAPITAL /D/B/A WASHINGTON          :
PARTNERS, ET. AL.          :
              **Defendant**          :

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of Contract (Count 1); tortious interference with business relations (Court II); breach of duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee (Count VI).  The Complaint also seeks declaratory judgments regarding the meaning of provisions in the two Deeds of Trusts and a determination that the liquidated damages provisions are unenforceable because those provisions constitute a penalty (Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023 defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order, plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)

that the balance of injuries favors granting an injunction, and 4) that the public

interest would be served by granting the request for an injunction.  *Ifill v. District of*

*Columbia,* 665 A.2d 185, 187-88 (D.C. 1995).  The moving party has the burden to

demonstrate that each of the factors, taken together, weigh in favor of issuing an

injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I.  Likelihood of Success on the Merits

### A.  The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the

existence of a valid contract between the parties; 2) an obligation or duty arising out

of the contract; 3) a breach of that duty; 4) damages caused by the breach.  *Tsintolas*

*Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009).  There is no real dispute

regarding whether there was a valid contract between the parties.  The parties do not

agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants

improperly discontinued performance of the contract by stopping construction draws

for the 423 Kennedy Street property (the project).  When defendants discontinued

construction draws, they knew that plaintiff would not be able to move forward with

the project.  Shortly after the construction draws stopped, defendant gave notice of

default to plaintiffs.  Plaintiffs claim that there is no basis for the default because

plaintiffs had complied with the terms of both deeds of trust and the reasons advanced

by defendants for the default is nothing more than a pretext.  According to plaintiff,

the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan.  In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property.  Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property.  According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022.  Approximately 50% of the project was completed at the time of the refinancing.  The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

 Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy. According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble. 423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance. Those payoff statements did not reflect a default or late fees.[3] On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development. Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6] When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin. On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7] The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default."  Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022.  Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws.  Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment.  Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction.  Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022.  Defendants provided notice there would be no further construction draws after October 2022.[13]  In that same email Daniel Huertas inquired about the "status of the payoffs of both loans."  Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14]  The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96.  There is no reference to a construction draw for the second deed of trust.  A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15]  The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022.  Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing.  Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem.  Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation for failure to cut the grass because the notice of infraction (NOI) was mailed to an incorrect address.  The Office of Administrative Hearings issued a final order regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members learned of the final order an appeal was filed.  Negussie testified that instead of waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.  It is difficult for the Court to conclude that defendants realistically believed that it was appropriate or legally proper to base a default for multi-million dollar protect on a $500 fine that plaintiffs did know about and was cured almost immediately after plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust addresses the issue of liens on the property.  That provision indicates that plaintiffs had the right to discharge or appeal any lien within the 30 days of the judgment.  The Office of Administrate Hearings final order was issued on December 11, 2022 and that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr. Negussie's testified credibly on these points and demonstrated that 423 Kennedy acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to make interest payments on the loan in 2023 and the failure to satisfy the loan by the maturity date.[21]  The reasons for the failed interest payments leading up to the maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's connection as an affiliate of Developer REI.  This does order not address that basis for the default because the only testimony on this point was received from Mr. Negussie who indicated under oath that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record indicates that there was no basis for a default based on an affiliation.

creation. This Court concludes that there is sufficient reliable evidence to conclude
that plaintiffs would have continued to make interest payments on the loan but for
defendants' unilateral decision to discontinue the agreed upon construction draws.
Even after the construction draws were discontinued, plaintiffs continued to make
monthly until the end of 2022. There is no reason to believe that plaintiffs would not
have made payments by the maturity date given that the project was 75-80%
completed when the construction draws stopped. Negussie's testimony that Huertas
discontinued the construction draws because the lenders were unhappy with work on
the Charles Paret project further supports plaintiffs' contention that the default was
actually a pretext. Negussie testified that Huertas wanted 423 Kennedy to rescue the
Paret project by covering a $700,000 shortfall. When Negussie refused to address the
shortfall created in a project that he was not involved with, it was not until then that
construction draws were discontinued, payoff statements were withdrawn and default
notices were issued. It is more than curious that defendants issued a default notice on
the second deed that did not contain a construction draw provision while at the same
time included default notice on the 5501 1st Street project also under construction by
Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach
of contract. The evidence presented by plaintiffs is more than sufficient to support
the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a
pretext. A breach of the terms of a contract means an unjustified failure to perform
all of any part of what is promised in the contract. *District Cablevision v. Limited
Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003). The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B.  The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The email exchanges between Negussie and Huertas demonstrates this knowledge.  As Negussie testified, defendants provided "clean" payoff statements  that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022.  The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due.  As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank. The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank. The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan. As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere. Defendants have failed to

produce any evidence that would indicate otherwise.

### C. The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale. Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association., 299 F.2d 463,

465* (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure.  Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default.  According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022.  The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."  Trustees on deeds must exercise their powers "with religious fidelity to ethical principles."  Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both the borrower and the lender.  Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both.  The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III. Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm. On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV. The Public Interest

There is a significant public interest involved in this dispute. Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community. A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings. The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement. This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender. Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of an injunction.

### V. Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement. Determination of that issue is not necessary for the Court to determine the injunction relief claim. Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief. That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the

rule creates a mandatory imposition of a bond for the protection of the enjoined party

has not been directly addressed by the District of Columbia Court of appeals.  The

local rule is almost identical to the federal version, so federal precedent is instructive.

The circuits are split on this issue and the circuits that have interpreted the rule as

being discretionary have recognized several exceptions to the mandatory language.

The District of Columbia Court of Appeals has suggested that the security

requirement is phrased in mandatory terms with the amount of any bond imposed

being left to the discretion of the trial court.  If the trial court exercises its discretion

to waive the bond requirement, it is important that the trial judge states the reasons for

taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354

A.2d 233, 237 (D.C. 1976).

 Considering the underlying facts discussed in this order, the Court declines to

impose a bond for the following reasons.  First, defendant have not provided any

evidence of what an appropriate bond might be under the circumstances.  While

defendants' counsel made a proffer of what might be appropriate, that proffer was not

accompanied by any direct evidence that would demonstrate that the suggested bond

was rationally related to any potential harm.  Second, plaintiffs testified that they

made payments on the loan through the end of December 2022 even though

defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


  July 24, 2023                                    /s/
        Date                              MILTON C. LEE, JR.
                                          ASSOCIATE JUDGE



cc:  James D. Sadowski, Esq.
      Alexandria J. Smith, Esq.
      Counsel for Plaintiffs
      jds@gdllaw.com

      Maurice B. Versandig
      Counsel for Defendants
      mac@mbvesq.com

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| 423 Kennedy St Holdings LLC, | |
| Plaintiff, | |
| v. | Case No. 2023 CAB 004260 |
| | Judge Milton Lee |
| DP Capital, LLC, et al. | |
| Defendants. | |

**SUPPLEMENT TO OPPOSITION TO PLAINTIFF'S
OPPOSED MOTION FOR TEMPORARY RESTRAINING
ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being collectively known as the "Defendants"), by and through undersigned counsel, in supplement to their prior opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") and state as follows:

At a hearing on the Motion on July 21, 2023, the Plaintiff's claim for breach of contract – which had previously received minimal attention in the Motion – was highlighted in some detail, with the core of said claim being a contention that WCP was required to advance constructions draws under a promissory note secured by a first deed of trust. It accordingly bears observation that the subject promissory – admitted into evidence by stipulation at the same hearing – provides, *inter alia*:

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on

the loan amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion.

*See* Promissory Note, attached hereto as Exhibit A, at § 1.

In light of the foregoing, the record makes evident that (i) the parties had agreed in the loan documents that WCP was under no obligation to advance any construction draws, and (ii) as a consequence of such, the Plaintiff's claim for breach of contract fails as a matter of law.

Dated: July 22, 2023                              Respectfully Submitted,

                                                  /s/ Maurice B. VerStandig
                                                  Maurice B. VerStandig, Esq.
                                                  DC Bar #1034066
                                                  The VerStandig Law Firm, LLC
                                                  9812 Falls Road, #114-160
                                                  Potomac, Maryland 20854
                                                  Telephone: 301-444-4600
                                                  Facsimile: 301-444-4600
                                                  Electronic Mail: mac@mbvesq.com
                                                  *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 22nd day of July 2023, and a notice of filing should be served on all counsel of record.

                                                  /s/ Maurice B. VerStandig
                                                  Maurice B. VerStandig, Esq.

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et. al.

**To:**   Maurice B. Verstandigm                    **Case Number:**        2022-CAB-005935

## NOTICE OF IN PERSON MOTION HEARING

Your case is scheduled for a(n) **Motion Hearing** on **07/25/2023** at **10:30 AM**

   Courtroom Number: Courtroom 219

   Courtroom Address: 500 Indiana Ave NW, Washington DC 20001

For questions, please contact the Civil Actions Branch Clerk's Office at 202-879-1133.

To change your method of hearing participation, visit www.dccourts.gov/services/remote-hearing-information for instructions and forms.



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

1361

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**    **2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Event: Remote Emergency Motion Hearing** |
| **Defendant.** | **July 25, 2023 at 10:30 A.M.** |

### ORDER SETTING MOTION HEARING

This matter is before the Court on (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023. The Court shall set a Motion Hearing for July 25, 2023, at 10:30 a.m., and shall resolve the pending matters above.

Accordingly, based upon the entire record herein, it is this 24th day of July 2023, hereby:

**ORDERED** that the parties **SHALL APPEAR** for a Motion Hearing on Tuesday, July 25, 2023, at 10:30 a.m., before Judge Ebony M. Scott in courtroom 219. Instructions for participation in the Hearing are below.

**SO ORDERED**.

_____

**Associate Judge Ebony M. Scott**

1363

*(Signed in Chambers)*


<u>**Copies via Odyssey to**</u>:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

1364

## VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in <u>Virtual Courtroom 219</u>, which the parties and counsel may access in the following ways:

(1)    Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(2)    Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3)    Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

**<span style="color:red">Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.</span>**

## COURTROOM PROTOCOL

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, <u>no later than 5:00 p.m. three business days before the hearing</u>.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The <u>exhibits must be separately labeled</u> so that they can be easily identified by all parties and the Court during the remote hearing

Page **3** of **3**

eFiled
07/24/2023 2:36:13 PM
Superior Court
of the District of Columbia

Case 2:25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part II)    Page 848 of 2443  Page 1296 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
            8/10/2023

**PLAINTIFF'S REPLY TO THE DEFENDANTS' OPPOSITION
TO THE OPPOSED EMERGENCY MOTION FOR A TEMPORARY
RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby files its reply to the

Defendants' Opposition to the pending emergency motion to stop a foreclosure sale. Because

time is of the essence as the foreclosure sale that Developer RE1 is trying to stop will take place

tomorrow, July 25, 2023 at 2:00 p.m., and because today Judge Milton Lee issued an order

granting a temporary restraining order in the related case, this Reply will be a short one.

1.      Developer RE1 filed its motion for a temporary restraining order on July 11, 2023

("Emergency Motion"). The gravamen of Developer RE1's arguments were that the Defendants

deliberately sabotaged Developer RE1's refinancing to try to force Developer RE1 to pay it more

money under two loans under a threat of foreclosure. Developer RE1 also argues that the

Defendants allegations of a default were pretextual. The Emergency Motion was verified by Mel

Negussie.

2.      On July 17, 2023, Developer RE1 filed a notice of related cases to alert the Court

that there were two cases pending involving similar facts, similar loan documents, and nearly all

1

of the same Defendants.  The related case is *423 Kennedy St Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.* (2023-CAB-004260).  On July 18, 2023, the Plaintiff in the related case filed a nearly identical motion for a temporary restraining order as the TRO Motion in this case.

3.      The Defendants filed an Opposition to the TRO Motion in this case on July 17, 2023 and in the related case on July 20, 2023.   In both Oppositions, the Defendants did not include any affidavit or other sworn testimony to contradict the facts that were verified by Mr. Negussie.  Rather, the Defendants made legal arguments only as to why the borrowers were not likely to prevail and why injunctive relief was not appropriate.  The legal arguments made by the Defendants in the related case were almost identical to the legal arguments made in the Opposition in this case.

4.      On Friday, July 21, 2023, Judge Milton Lee held a hearing on the TRO motion in the related case.  At that hearing, Mr. Negussie testified and was subject to cross-examination by counsel for the Defendants.  In opposing the TRO motion in the related case, Counsel for the Defendants made many of the same arguments that have been made in this case.

5.      This morning, Judge Lee issued an order granting the TRO motion filed by 423 Kennedy that stops the foreclosure in the related case until the related case is concluded.  In that detailed, twenty-two page decision, Judge Lee found that evidence before him – which included many facts identical to the facts alleged in this case -- supported 423 Kennedy's position that the defaults alleged by the lender (WCP Fund I, LLC) and its servicing agent (DP Capital, LLC), both of whom are defendants in this case, were pretextual.  Judge Lee further found that 423 Kennedy had met all of the required elements for granting injunctive relief.  A copy Judge Lee's

2

July 24, 2023 order granting a temporary restraining order in the related case is attached as

Exhibit A.

6.      Although Judge Lee's decision in the related case is not binding, Developer RE1

requests that the Court take judicial notice of that decision.  Given that Judge Lee found that, on

nearly similar facts involving a different borrower, that (a) the same Defendants in this case

engaged in inequitable conduct and (b) all of the elements necessary for injunctive relief were

present, at a minimum this Court should issue a temporary restraining order to stop the pending

foreclosure sale until an evidentiary hearing can be scheduled in this case.

7.      A temporary stay of the foreclosure sale until this Court can schedule an

evidentiary hearing will cause no harm to the Defendants.  Such a stay would also allow both

judges and the parties to consider whether judicial resources can be preserved by a consolidation

of the two cases.  Alternatively, given that some discovery has already been completed in this

case, the Court could issue an order enjoining the foreclosure sale, then consolidate the

preliminary injunction hearing with the trial in this case.

For these reasons, and for any reasons that may be advanced at a hearing on the

Emergency Motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court:  (a)

schedule an emergency hearing on this Motion, or (b) enter an order enjoining any foreclosure

sale until this case is concluded.

4866-9264-3442

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 24, 2022          /s/ James D. Sadowski
                               Alexandria J. Smith (D.C. Bar. No. 1781067)
                               James D. Sadowski (D.C. Bar No. 446635)
                               801 17th Street, NW, Suite 1000
                               Washington, DC 20006
                               Telephone:  (202) 452-1400
                               Email:  jds@gdllaw.com | ajs@gdllaw.com
                               *Counsel for Plaintiff Developer RE1 LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply was served by the Court's

electronic filing system this 24th day of July 2023, and a notice of filing should be served on all

counsel of record.

                               /s/ James D. Sadowski
                               James D. Sadowski


4

4866-9264-3442

1369

# EXHIBIT A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : | |
| **Plaintiff** | : | |
| | : | |
| | : | |
| **vs** | : | ==Docket No. 2023== **CAB 4260** |
| | : | |
| | : | |
| **DP CAPITAL /D/B/A WASHINGTON** | : | |
| **PARTNERS, ET. AL.** | : | |
| **Defendant** | : | |

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of Contract (Count 1); tortious interference with business relations (Court II); breach of duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee (Count VI). The Complaint also seeks declaratory judgments regarding the meaning of provisions in the two Deeds of Trusts and a determination that the liquidated damages provisions are unenforceable because those provisions constitute a penalty (Count IV). Plaintiff also makes a claim that the trustee cannot serve in that position because of the existence of a conflict (Count VII). Finally, in Count V plaintiff's seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale. On July, 20, 2023 defendants filed an opposition. The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order, plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)

that the balance of injuries favors granting an injunction, and 4) that the public

interest would be served by granting the request for an injunction.  *Ifill v. District of*

*Columbia,* 665 A.2d 185, 187-88 (D.C. 1995).  The moving party has the burden to

demonstrate that each of the factors, taken together, weigh in favor of issuing an

injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

### I.    Likelihood of Success on the Merits

#### A.  The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the

existence of a valid contract between the parties; 2) an obligation or duty arising out

of the contract; 3) a breach of that duty; 4) damages caused by the breach.  *Tsintolas*

*Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009).  There is no real dispute

regarding whether there was a valid contract between the parties.  The parties do not

agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants

improperly discontinued performance of the contract by stopping construction draws

for the 423 Kennedy Street property (the project).  When defendants discontinued

construction draws, they knew that plaintiff would not be able to move forward with

the project.  Shortly after the construction draws stopped, defendant gave notice of

default to plaintiffs.  Plaintiffs claim that there is no basis for the default because

plaintiffs had complied with the terms of both deeds of trust and the reasons advanced

by defendants for the default is nothing more than a pretext.  According to plaintiff,

the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion.  Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan.  In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property.  Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1]  Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares.  423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property.  According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022.  Approximately 50% of the project was completed at the time of the refinancing.  The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00.  Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

 Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022.  The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street.  Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18]  Neither notice identifies the basis for the default.  Each of the payoff statements make no reference to unpaid late fees.  Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants.  While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement.  In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws.  Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.?  What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation. This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022. There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped. Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext. Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall. When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued. It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

      Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract. The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext. A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract. *District Cablevision v. Limited*

*Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003). The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan. The email exchanges between Negussie and Huertas demonstrates this knowledge. As Negussie testified, defendants provided "clean" payoff statements that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022. The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due. As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan. Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association., 299 F.2d 463,

465* (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure.  Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default.  According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022.  The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia."  Trustees on deeds must exercise their powers "with religious fidelity to ethical principles."  Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA,* 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both the borrower and the lender.  Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both.  The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

### II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III. Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the

rule creates a mandatory imposition of a bond for the protection of the enjoined party

has not been directly addressed by the District of Columbia Court of appeals.  The

local rule is almost identical to the federal version, so federal precedent is instructive.

The circuits are split on this issue and the circuits that have interpreted the rule as

being discretionary have recognized several exceptions to the mandatory language.

The District of Columbia Court of Appeals has suggested that the security

requirement is phrased in mandatory terms with the amount of any bond imposed

being left to the discretion of the trial court.  If the trial court exercises its discretion

to waive the bond requirement, it is important that the trial judge states the reasons for

taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* ==354

A.2d 233, 237== (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to

impose a bond for the following reasons.  First, defendant have not provided any

evidence of what an appropriate bond might be under the circumstances.  While

defendants' counsel made a proffer of what might be appropriate, that proffer was not

accompanied by any direct evidence that would demonstrate that the suggested bond

was rationally related to any potential harm.  Second, plaintiffs testified that they

made payments on the loan through the end of December 2022 even though

defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


    July 24, 2023                                  /s/             
        Date                                    MILTON C. LEE, JR.
                                                  ASSOCIATE JUDGE


cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

eFiled
07/25/2023 8:12:06 AM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-32    Filed 09/04/24    Entered 09/04/24 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part II)    Page 875 of 2443    Page 1323 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## DEFENDANTS' EXHIBIT LIST FOR JULY 25, 2023 HEARING

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he attached exhibit list – with the subject exhibits attached hereto – for the hearing in this matter set for July 25, 2023:

1. Payment history for first loan

2. Payment history for second loan

3. First promissory note

4. First deed of trust

5. Second promissory note

6. Second deed of trust

7. Water lien

8. Department of Building lien

9. February 15, 2023 tax bill

Dated: July 25, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 25th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Exhibit 1

| Name | Status Reason | Payment Due On | Days Past Due | Payment Paid On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F... | Amount Due (Default Int... | Amount Due (Pr... | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Prepaid) | Amount Paid (Late Fee) | Amount Paid (Default Int... | Amount Paid (Pr... | Amount Paid (Total) | Beginning Princip... | Ending Principal | Cumulative Inter... | Unapplied Funds | Principal Payoff... | Balance (Total) | Scheduled Payment Status | Amount Due Late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPHY-111516 | Unpaid | 7/1/2023 | -11 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPHY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPHY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 23830.18 | 0.00 | 47749.83 | 71580.01 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 71580.01 | Unscheduled | 71580.01 |
| LPHY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPHY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 22241.50 | 0.00 | 44566.50 | 66808.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 66808.00 | Unscheduled | 66808.00 |
| LPHY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 24624.51 | 0.00 | 49341.49 | 73966.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 | 73966.00 | Unscheduled | 73966.00 |
| LPHY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 Wire | | Current | 24624.51 | 0.00 | 0.00 | 24624.51 | | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 | Unscheduled | |
| LPHY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 Wire | Late (1-15 Days) | | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 2383.02 | 0.00 | 0.00 | 0.00 | 26213.20 | | 0.00 | 0.00 | 2383.02 ACH - Cleared | 0.00 |
| LPHY-096064 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 Wire | Late (1-15 Days) | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-094801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | Late (1-15 Days) | | 23830.18 | 2383.02 | 0.00 | 26213.20 | 23830.18 | 2383.02 | 0.00 | 0.00 | 0.00 | 26213.20 | | 0.00 | 0.00 | 0.00 ACH - Cleared | 0.00 |
| LPHY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 Stripe | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 24624.51 | 0.00 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | Late (1-15 Days) | | 23830.18 | 0.00 | 0.00 | 23830.18 | 615.39 | 23214.79 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 ACH - Cleared | |
| LPHY-086197 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | Current | | 23830.18 | 0.00 | 0.00 | 23830.18 | 0.00 | 23830.18 | 0.00 | 0.00 | 0.00 | 23830.18 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | Current | | 22241.50 | 0.00 | 0.00 | 22241.50 | 0.00 | 22241.50 | 0.00 | 0.00 | 0.00 | 22241.50 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | Current | | 24624.51 | 0.00 | 0.00 | 24624.51 | 0.00 | 24624.51 | 0.00 | 0.00 | 0.00 | 24624.51 | | 0.00 | 0.00 | 0.00 Unscheduled | |
| LPHY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | | 7149.05 | 0.00 | 0.00 | 7149.05 | 7149.05 | 0.00 | 0.00 | 0.00 | 0.00 | 7149.05 | | 0.00 | 0.00 | 0.00 Unscheduled | |

WCP0708

1396

| Name | Status Reason | Payment Due On | Days Past Due Cal | Payment Paid On | Payment Method | Servicing Status |
|---|---|---|---|---|---|---|
| LPAY-111556 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109715 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108082 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106199 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104916 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103841 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102278 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100256 | Paid | 12/1/2022 | 201 | 12/6/2022 0:07 | Wire | Late (5-15 Days) |
| LPAY-098044 | Paid | 11/1/2022 | 231 | 11/9/2022 8:00 | Wire | Late (5-15 Days) |
| LPAY-096801 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092932 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090157 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-088108 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085019 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083297 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080803 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-080088 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078249 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075494 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 1

Exhibit 2

| Name | Status Reason | Payment Due On | Days Past Due | Payment Due On | Payment Method | Servicing Status | Amount Due (Interest) | Amount Due (Late F... | Amount Due (Default Int... | Amount Due (Pri... | Amount Due (Total) | Amount Paid (Interest) | Amount Paid (Interest) Prepaid | Amount Paid (Late Fee) | Amount Paid (Default Int... | Amount Paid (Pr... | Amount Paid (Total) | Beginning Principal | Ending Principal | Cumulative Inter... | Unapplied Funds | Principal Payoff | Balance (Total) | Scheduled Payment Status | Gateway (no late...) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-111505 | Unpaid | 7/1/2023 | 11 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10480.00 | Uncleared | 10480.00 |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Uncleared | 10829.33 |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted | 5235.63 | 0.00 | 5244.37 | 10480.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10480.00 | Uncleared | 10480.00 |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Uncleared | 10829.33 |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted | 4886.59 | 0.00 | 4894.74 | 9781.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 9781.33 | Uncleared | 9781.33 |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted | 5410.15 | 0.00 | 5419.18 | 10829.33 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | | | 0.00 | 0.00 | 10829.33 | Uncleared | 10829.33 |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/21/2022 8:00 Wire | | Current | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 11/4/2022 0:06 Wire | Late (5-15 Days) | | 5235.63 | 523.56 | 0.00 | 5759.19 | 6029.96 | 0.00 | 0.00 | 0.00 | 0.00 | 6029.96 | | | 0.00 | 0.00 | -270.77 | ACH - Cleared | |
| LPAY-098086 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 Stripe | Late (5-15 Days) | | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 Stripe | Late (1-15 Days) | | 5235.63 | 523.56 | 0.00 | 5759.19 | 5235.63 | 0.00 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 523.56 | ACH - Cleared | 0.00 |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/9/2022 13:35 Stripe | Current | | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-090655 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 Stripe | Current | | 5410.15 | 0.00 | 0.00 | 5410.15 | 5410.15 | 0.00 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 Stripe | Late (5-15 Days) | | 5235.63 | 0.00 | 0.00 | 5235.63 | 146.30 | 5087.33 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 0.00 | ACH - Cleared | |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-083055 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 Pre-Paid Interest | Current | | 5235.63 | 0.00 | 0.00 | 5235.63 | 0.00 | 5235.63 | 0.00 | 0.00 | 0.00 | 5235.63 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-078815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 Pre-Paid Interest | Current | | 4886.59 | 0.00 | 0.00 | 4886.59 | 0.00 | 4886.59 | 0.00 | 0.00 | 0.00 | 4886.59 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 Pre-Paid Interest | Current | | 5410.15 | 0.00 | 0.00 | 5410.15 | 0.00 | 5410.15 | 0.00 | 0.00 | 0.00 | 5410.15 | | | 0.00 | 0.00 | 0.00 | Uncleared | |
| LPAY-075196 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 HUD | Originated | | 1570.69 | 0.00 | 0.00 | 1570.69 | 1570.69 | 0.00 | 0.00 | 0.00 | 0.00 | 1570.69 | | | 0.00 | 0.00 | 0.00 | Uncleared | |

WCP0054

| Name | Status Reason | Payment Due On | Days Past Due Ca | Payment Paid On | Payment Method | Servicing Status |
|------|---------------|----------------|------------------|-----------------|----------------|------------------|
| LPAY-111505 | Unpaid | 7/1/2023 | -11 | | | Defaulted |
| LPAY-109659 | Unpaid | 6/1/2023 | 19 | | | Defaulted |
| LPAY-108017 | Unpaid | 5/1/2023 | 50 | | | Defaulted |
| LPAY-106129 | Unpaid | 4/1/2023 | 80 | | | Defaulted |
| LPAY-104825 | Unpaid | 3/1/2023 | 111 | | | Defaulted |
| LPAY-103733 | Unpaid | 2/1/2023 | 139 | | | Defaulted |
| LPAY-102163 | Paid | 1/1/2023 | 170 | 12/23/2022 8:00 | Wire | Current |
| LPAY-100101 | Paid | 12/1/2022 | 201 | 12/6/2022 0:06 | Wire | Late (5-15 Days) |
| LPAY-098596 | Paid | 11/1/2022 | 231 | 11/10/2022 10:10 | Stripe | Late (5-15 Days) |
| LPAY-096608 | Paid | 10/1/2022 | 262 | 10/6/2022 0:15 | Stripe | Late (5-15 Days) |
| LPAY-092751 | Paid | 9/1/2022 | 292 | 9/3/2022 13:35 | Stripe | Current |
| LPAY-090635 | Paid | 8/1/2022 | 323 | 8/5/2022 15:05 | Stripe | Current |
| LPAY-087911 | Paid | 7/1/2022 | 354 | 7/14/2022 8:00 | Stripe | Late (5-15 Days) |
| LPAY-085369 | Paid | 6/1/2022 | 384 | 6/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-083035 | Paid | 5/1/2022 | 415 | 5/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-081105 | Paid | 4/1/2022 | 445 | 4/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-079815 | Paid | 3/1/2022 | 476 | 3/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-078246 | Paid | 2/1/2022 | 504 | 2/1/2022 0:00 | Pre-Paid Interest | Current |
| LPAY-075596 | Paid | 12/23/2021 | 544 | 12/23/2021 0:00 | HUD | Originated |

*Excerpted from previous page to provide zoomed-in depiction of pertinent portion of Exhibit 2

Exhibit 3

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                                   **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.  BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.   **[ASSIGNMENT OF
CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                                      Page 1 of 9

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.   **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.   **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

### 4.    <u>BORROWER'S RIGHT TO PREPAY</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

### 5.    <u>BORROWER'S FAILURE TO PAY AS REQUIRED</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.   If default be made in any payment due under this Note;
    b.   If default be made in the performance of any other covenant contained in this Note;
    c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
    d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.     **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

1406

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    **SUCCESSORS AND ASSIGNS**

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.   Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**10.**    **SEVERABILITY; RULES OF CONSTRUCTION**

     In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

     As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

     Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Rev 12.2015

1408

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN
ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF
WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT
ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR
OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE
HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER
ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO
APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL
NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY
ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE
EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO;
SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE
OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT
JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL
DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE
HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL
MATTERS PERTAINING THERETO ARE TO BE DETERMINED
ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE
PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF
LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(SEAL)_
By:      Mel Melaku Negussie
Its:     Managing Member

_(SEAL)_
By:      Solomone Abebaw Desta
Its:     Member

COUNTY OF _District of Columbia_
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015

1410

Exhibit 4

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<center>ARTICLE I</center>

<center>DEFINITIONS</center>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

1413

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                                    Page **3** of **25**

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

## GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

1415

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

1416

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

**4.3 Repairs and Waste.**

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

**4.4. Insurance.**

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

**4.5 Restoration Following Casualty.**

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

1419

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<u>ARTICLE V</u>

<u>NEGATIVE COVENANTS</u>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

### ARTICLE VI

### EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Case 25-10088-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 09:05:28   Desc
Exhibit B - All Pleadings And Docket Entries (Part IV) Deadlocated Page 2352 of 1716
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

## ARTICLE VII

## EVENTS OF DEFAULT

</div>

7.0 Events of Default.

     The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

     If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

     If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

     If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

     If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

1422

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

1423

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

1424

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

1427

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

1432

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011

LOAN-006120

1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia  Limited Liability
Company

_____(SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_ )

I hereby certify on this **24** day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

1435

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

1436



**Government of the District of Columbia**

Office of Tax and Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

[X] Deed  [ ] Deed of Trust  [ ] Lease for a Term of 30 years or more

[ ] Re-recording  [ ] Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | | |
| Square | Suffix | Lot | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

Square and/or Parcel [_____]   Lot(s) [_____]

Property Address: [5501]   [1st Street]   [NW]  Unit No.
Street Number   Street Name   Quadrant

Property Use:  [ ] Dwelling Units ≤ 5  [ ] Apartment  [ ] Commercial

**Is any part of the entire building commercial (Class 2)?**

[X] Yes*  [ ] No  [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
[ ] Yes†  [ ] No

† If Yes, this instrument will be taxed as commercial.

Fee Interest % Conveyed: [100] %

Was personal property included in this transfer?  [ ] Yes*  [ ] No

*If Yes, what type? [_____]   Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steve Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]   State [DC]   Zip [20006]

### PART D - Return Instrument To

Name [Developer RE1 LLC]   Firm [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [((202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

### PART E – Grantor(s) Information

Grantor [71 Kennedy ST Holdings LLC]   Grantor [_____]

Grantor [_____]   Grantor [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [(202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

**Grantor(s) Tenancy**  [ ] Tenants in Common  [ ] Joint Tenants  [ ] Trustee
[ ] Tenants by Entirety  [ ] Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the
District of Columbia**
Office of Tax and
Revenue
**1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374**

| Square | Suffix | Lot |
|--------|--------|-----|
| 3389 | 0137 (formerly 0822 | |

**PART F – Grantee(s) Information**

Grantee: Developer RE1 LLC   Grantee:
Grantee:   Grantee:
Address: 1629 K Street #300   Phone No. (202) 271-5046
City: Washington   State: DC   Zip: 20006

**Grantee(s) Tenancy**
☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☒ Sole

**PART G - Mailing Address for Grantee** (If different from Part F)

Last Name   First Name   Middle Name
Address   Unit No.
City   State   Zip
Phone

**PART H- Consideration and Financing**
**"complete all items; insert zero if no amount"**

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

**I. Deed**

1. Acquisition Price _____   /
   Cash _____   /
   *Amount of 1st Deed of Trust* _____
      Purchase Money Amount _____   _____
      Other Exempt Amount _____   _____
      Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____
      Purchase Money Amount _____   _____
      Other Exempt Amount _____   _____
      Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____
      Purchase Money Amount _____   _____
      Other Exempt Amount _____   _____
      Nonexempt Amount: _____

2. Current Tax Year Assessed Value
   (If No or Nominal Consideration)   1,190,630.00   /

ROD 1 Revised 08/2019



**Government of the District of Columbia**

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## II. Deeds of Trust (no transfer of title)

Amount of Deed of Trust _____

Exempt Amount (s) _____

Nonexempt Amount(s) _____

3. Total Amount of all Nonexempt Deeds of Trust (I & II) _____

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

| 3389 | | 0137 |
|---|---|---|
| Square | Suffix | Lot |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | $ |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ 17,264.14 |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ 17,264.13 |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ 39,369.00 |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 8. | Transfer Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 34,528.27 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| 71 Kennedy ST Holdings LLC | Developer RE1 LLC |
| Typed Name | Typed Name |
| *Signature* | *Signature* |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021





Notary Public

Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROD 1 Revised 08/2019

**This information is subject to audit. Please keep all supporting documentation.**

File No.: **21-1983 (5501 1ˢᵗ)**
DEED – SHORT FORM D.C.

# 𝕿𝖍𝖎𝖘 𝕯𝖊𝖊𝖉, made this **23rd day of December, 2021**, by and between

**71 Kennedy St Holdings LLC**, party of the first part, and **Developer RE1 LLC**, party of the second part.

WITNESSETH, that in consideration of the sum of ZERO DOLLARS (**$0.00**), the party of the first part do hereby grant unto the party of the second part, in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Being the same property conveyed from MST Kennedy Hodlings LLC dated 03/14/2008 and recorded with District of Columbia District Recording Office on 03/26/2018 as Instrument #2018030042

SUBJECT TO Deeds of trust of record.

AND the said party of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:                                   **71 Kennedy St Holdings LLC**

_____          _____ {SEAL}
                                                 By: NT Group LLC, sole member
                                                 By: Mel Negussie, sole member


DISTRICT OF COLUMBIA
This instrument was acknowledged before me on this 23rd day of December, 2021, by Mel Negussie, sole member of NT Group LLC, sole member of 71 Kennedy St Holdings, LLC..

_____
Signature of Notarial Officer
Title and Rank _Notary Public_

My Commission Expires:          ROSA M. GREEN
                                           NOTARY PUBLIC DISTRICT OF COLUMBIA
                                           My Commission Expires September 30, 2024

After Recording MAIL TO:                    Grantee's Address:
**1629 K Street NW**                            **1629 K Street NW**
**Suite 300**                                        **Suite 300**
**Washington, DC 20006**                      **Washington, DC 20006**



**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument
[X] Deed  [ ] Deed of Trust    [ ] Lease for a Term of 30 years or more
[ ] Re-recording  [ ] Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0071 | | 3389 | | 0072 |
|------|--------|------|--------|--------|--------|------|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

Square and/or Parcel [_____]    Lot(s) [_____]

Property Address:  [ 55015 ]  [ 1st Street ]  [ NW ]  Unit No.
                   Street Number    Street Name    Quadrant

Property Use:  [ ] Dwelling Units ≤ 5    [ ] Apartment    [ ] Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
[X] Yes*    [ ] No    [ ] Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
[ ] Yes†    [ ] No
† If Yes, this instrument will be taxed as commercial.

Fee Interest % Conveyed: [ 100 ] %

Was personal property included in this transfer?    [ ] Yes*  [ ] No
*If Yes, what type? [_____]    Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person
Name [ Steve Oxman ]    Firm [ District Title ]
Address [ 1775 I Street Northwest, #560 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

### PART D - Return Instrument To
Name [ Developer RE1 LLC ]    Firm [ ]
Address [ 1629 K Street NW, Suite 300 ]    Phone No. [ ((202) 271-5046 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

### PART E – Grantor(s) Information
Grantor [ 5505 1st ST Holdings LLC ]    Grantor [ ]
Grantor [ ]    Grantor [ ]
Address [ 1629 K Street NW, Suite 300 ]    Phone No. [ (202) 271-5046 ]
City [ Washington ]    State [ DC ]    Zip [ 20006 ]

Grantor(s) Tenancy  [ ] Tenants in Common  [ ] Joint Tenants  [ ] Trustee
                    [ ] Tenants by Entirety  [ ] Sole

ROD 1 Revised 08/2019

# Government of the District of Columbia

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

| 3389 | 0137 (formerly 0822 |
|---|---|
| Square | Suffix | Lot |

**PART F – Grantee(s) Information**

Grantee: Developer RE1 LLC        Grantee:
Grantee:                          Grantee:
Address: 1629 K Street #300       Phone No.: (202) 271-5046
City: Washington        State: DC        Zip: 20006

**Grantee(s) Tenancy**    ☐ Tenants in Common    ☐ Joint Tenants    ☐ Trustee
☐ Tenants by Entirety    ☒ Sole

**PART G - Mailing Address for Grantee** (if different from Part F)

| Last Name | First Name | Middle Name |
|---|---|---|

Address:                          Unit No.:
City:        State:        Zip:
Phone:

**PART H- Consideration and Financing**
"complete all items; insert zero if no amount"

**Tax Exemption Application**
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

**I. Deed**

|  |  |  |
|---|---|---|
| 1. Acquisition Price | | / |
| Cash | | / |
| *Amount of 1st Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| *Amount of 2nd Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| *Amount of 3rd Deed of Trust* | | |
| Purchase Money Amount | | |
| Other Exempt Amount | | |
| Nonexempt Amount: | | |
| 2. Current Tax Year Assessed Value (If No or Nominal Consideration) | 605,580.00 | / |

ROD 1 Revised 08/2019

1442



## Government of the District of Columbia

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

| 3389 | | 0137 |
|------|------|------|
| Square | Suffix | Lot |

### II. Deeds of Trust (no transfer of title)

Amount of Deed of Trust
Exempt Amount (s)
Nonexempt Amount(s)

3. Total Amount of all Nonexempt Deeds of Trust (I & II)

**Tax Exemption Application Recordation Tax** (Cite to Specific DC Code Provision)

### PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $8,780.91 |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $8,780.91 |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $17,561.82 |

### PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| 5505 1st ST Holdings LLC | Developer RE1 LLC |
| Typed Name | Typed Name |
| _Signature_ | _Signature_ |
| Date   December 23, 2021 | Date   December 23, 2021 |



Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Notary Public

My Commission Expires

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

Notary Public

My Commission Expires

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROD 1 Revised 08/2019

**This information is subject to audit. Please keep all supporting documentation.**

File No.: 21-1983 (5505 1st)
DEED – SHORT FORM D.C.

# 𝕿𝖍𝖎𝖘 𝕯𝖊𝖊𝖉, made this **23rd day of December, 2021**, by and between

**5505 1st St Holdings LLC**, party of the first part, and Developer RE1 LLC, party of the second part.

WITNESSETH, that in consideration of the sum of ZERO DOLLARS (**$0.00**), the party of the first part do hereby grant unto the party of the second part, in fee simple, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

> Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

> NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

Being the same property conveyed from Lemiem W. Debelie and Mussie M. Tesfaye dated 07/19/2017 and recorded with the District of Columbia Recording Office on 07/25/2017 as Instrument #2017081391.

SUBJECT TO deeds of trust of record.

AND the said party of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:                    **5505 1st St Holdings LLC**

_____              _~M̃el Negussie_~          {SEAL}
                                    By: NT Group LLC, sole member
                                    By: Mel Negussie, sole member


DISTRICT OF COLUMBIA
This instrument was acknowledged before me on this ~~23rd~~ 24th day of December, 2021, by Mel Negussie, sole member of NT Group LLC, sole member of 71 Kennedy St Holdings LLC..

_____
Signature of Notarial Officer
Title and Rank _Notary Public_
                          ROSA M. GREEN
My Commission Expires:    NOTARY PUBLIC DISTRICT OF COLUMBIA
                          My Commission Expires September 30, 2024

After Recording MAIL TO:              Grantee's Address:
**1629 K Street NW**                  **1629 K Street NW**
**Suite 300**                         **Suite 300**
**Washington, DC 20006**              **Washington, DC 20006**



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed   ☒ Deed of Trust   ☐ Lease for a Term of 30 years or more

☐ Re-recording   ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
|------|--|------|--|------|--|-------|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum:

**Square and/or Parcel** [_____]   **Lot(s)** [_____]

**Property Address:** [5501-5505] [1st Street] [NW] Unit No.
Street Number   Street Name   Quadrant

**Property Use:** ☐ Dwelling Units ≤ 5   ☐ Apartment   ☐ Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
☒ Yes*   ☐ No   ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†   ☐ No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?   ☐ Yes*  ☐ No

*If Yes, what type? [_____]   Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]   State [DC]   Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]   Phone No. [(202) 518-9300 ext. 309]

City [Washington]   State [DC]   Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]   Grantor [_____]

Grantor [_____]   Grantor [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [(202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

**Grantor(s) Tenancy** ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee
☐ Tenants by Entirety  ☐ Sole

ROD 1 Revised 08/2019

**★ ★ ★**

**Government of the District of Columbia**
Office of Tax and Revenue
1101 4th St. Street, SW Washington, DC 20024    Phone
(202)727-5374

| 3389 | | 0137, 71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

| Grantee | WCP Fund I LLC | Grantee | |
|---|---|---|---|
| Grantee | | Grantee | |

| Address | 2815 Hartland Road, Suite 200 | Phone No. | (703) 344-1733 |
|---|---|---|---|

| City | Falls Church | State | VA | Zip | 22043 |
|---|---|---|---|---|---|

**Grantee(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|---|---|---|
| Last Name | First Name | Middle Name |

| Address | | Unit No. | |
|---|---|---|---|

| City | | State | | Zip | |
|---|---|---|---|---|---|

| Phone | |
|---|---|

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

**Tax Exemption Application**
**Recordation Tax/Transfer Tax**
(Cite to Specific DC Code Provision)

### I. Deed

1. Acquisition Price _____    _____/_____

   Cash _____    _____/_____

   *Amount of 1st Deed of Trust* _____

      Purchase Money Amount _____    _____

      Other Exempt Amount _____    _____

      Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

      Purchase Money Amount _____

      Other Exempt Amount _____    _____

      Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

      Purchase Money Amount _____

      Other Exempt Amount _____

      Nonexempt Amount: _____

2. Current Tax Year Assessed Value
   (If No or Nominal Consideration) _____    _____/_____

ROD 1 Revised 08/2019

**Government of the District of Columbia**

Office of Tax and
Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

**II. Deeds of Trust (no transfer of title)**

| | |
|---|---|
| Amount of Deed of Trust | $ 3,579,000.00 |
| Exempt Amount (s) | $ 3,200,923.90 |
| Nonexempt Amount(s) | $378,076.10 |

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

payoff
trusts

| Square | Suffix | Lot |
|---|---|---|
| 3389 | | 0137 ,71, 72 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $378,076.10

**PART I: Computation of Tax**

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 9,451.90 |
| 8. | Transfer Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 9,451.90 |

**PART J: Affidavit (Part A to J)**

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| _signature_ | _signature_ |
| Signature | Signature |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me
by Grantor(s) this 23rd day of December, 2021

_Notary Public signature_

Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me
by Grantee(s) this 23rd day of December, 2021

_Notary Public signature_

Notary Public

My Commission Expires:

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLUMBIA
Commission Expires ___

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

Exhibit 5

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**1.    BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

1449

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    <u>**INTEREST**</u>

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3.    <u>**PAYMENTS**</u>

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.  **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.  **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a.  If default be made in any payment due under this Note;

b.  If default be made in the performance of any other covenant contained in this Note;

c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Rev 12.2015                                                    Page **7** of **9**

Case 25-00200-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 10:35:22    Desc
Exhibit B - All Pleadings And Pub Docket Entries (Part 1)    Page 1386 of 1716
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

1456

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia  Limited Liability
Company

_(signature)_ (SEAL)
By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015                                                    Page 9 of 9

1457

Exhibit 6

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST,** made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC,** a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin,** hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC,** a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                 Page 2 of 25

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 10:25:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part I)    Page 1391 of 1716
3501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

1461

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

### GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

1462

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016                                                           Page 5 of 25

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Rev 5.2016

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

**4.11 Lockbox Access.**

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

**4.12 Sign Installation.**

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

**5.0 Negative Covenants**

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

**5.1 Other Liens - Transfers**

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

1467

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

1468

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

### EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

1469

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

1470

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006182
**2nd Trust**

ARTICLE IX

THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016                                                                                          Page **16** of 25

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

**Page 17 of 25**

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

     (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

     (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

     (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

     In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

     (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

     (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

1478

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

1479

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF,** the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

*Mel Negussie* (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

I hereby certify on this __24__ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024



Rev 5.2016                                    Page **23** of **25**

# EXHIBIT A

## LEGAL DESCRIPTION

1482

5501 1st St NW Washington DC 20011
LOAN-006182

2nd Trust

1483

# EXHIBIT "A"
## Property Description

**Closing Date:**       **December 23, 2021**

**Borrower(s):**        **Developer RE1 LLC**

**Property Address:**   **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

1484



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed  ☒ Deed of Trust  ☐ Lease for a Term of 30 years or more

☐ Re-recording  ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
|------|--|------|--|------|--|-------|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

Square and/or Parcel [_____]  Lot(s) [_____]

Property Address: [5501-5505] [1st Street] [NW] Unit No.
Street Number          Street Name          Quadrant

Property Use:  ☐ Dwelling Units ≤ 5  ☐ Apartment  ☐ Commercial

Is any part of the **entire** building commercial (Class 2)?
☒ Yes*  ☐ No  ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†  ☐ No

† If Yes, this instrument will be taxed as commercial.

Fee Interest % Conveyed: [100] %

Was personal property included in this transfer?  ☐ Yes*  ☐ No
*If Yes, what type? [_____]  Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]  Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]  State [DC]  Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]  Firm [District Title]

Address [1775 I Street Northwest, #560]  Phone No. [(202) 518-9300 ext. 309]

City [Washington]  State [DC]  Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]  Grantor [_____]

Grantor [_____]  Grantor [_____]

Address [1629 K Street NW, Suite 300]  Phone No. [(202) 271-5046]

City [Washington]  State [DC]  Zip [20006]

Grantor(s) Tenancy  ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee
☐ Tenants by Entirety  ☐ Sole

ROD 1 Revised 08/2019

★ ★ ★

**Government of the District of Columbia**
Office of Tax and Revenue
1101 4th St. Street, SW Washington, DC 20024 Phone (202)727-5374

| 3389 | 0137, 71, 72 |
|---|---|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

Grantee: WCP Fund I LLC     Grantee:

Grantee:     Grantee:

Address: 2815 Hartland Road, Suite 200     Phone No. (703) 344-1733

City: Falls Church     State: VA     Zip: 22043

**Grantee(s) Tenancy**   ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee

☐ Tenants by Entirety  ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| Last Name | First Name | Middle Name |
|---|---|---|

Address:     Unit No.

City:   State:   Zip:

Phone:

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

**Tax Exemption Application Recordation Tax/Transfer Tax**
(Cite to Specific DC Code Provision)

### I. Deed

1. Acquisition Price _____   _____ / _____

   Cash _____   _____ / _____

   *Amount of 1st Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____

   Nonexempt Amount: _____

   *Amount of 2nd Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____

   Nonexempt Amount: _____

   *Amount of 3rd Deed of Trust* _____

   Purchase Money Amount _____

   Other Exempt Amount _____

   Nonexempt Amount: _____

2. Current Tax Year Assessed Value
   (If No or Nominal Consideration) _____   _____ / _____

ROD 1 Revised 08/2019

**Government of the District of Columbia**

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

| 3389 | | 0137 ,71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## II. Deeds of Trust (no transfer of title)

Tax Exemption Application
Recordation Tax
(Cite to Specific DC Code Provision)

| Amount of Deed of Trust | $ 524,000.00 |
|---|---|
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $524,000.00

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | | |
|---|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ | |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ | |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ | |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ | |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 | |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ | |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ | |
| 10. | Total | | $ 13,100.00 | |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

Notary Public

Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My Commission Expires: STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires Feb



ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

Exhibit 7



**dc**
water is life

IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
Customer Service
202-354-3750

Filed & Recorded
09/07/2022 10:15 AM

Customer Service
202-354-3750

## DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

### DELINQUENT ACCOUNTS SECTION

| | |
|---|---|
| DC Water and Sewer Authority | Date: 2022-08-29 |
| Vs | Account No.: 2002583-9 |
| DEVELOPER RE1 LLC | Service Address: 5501 1ST ST NW |
| 1629 K ST NW, STE 300 | Square: 3389 |
| WASHINGTON, DC 20006 | Suffix: |
| | Lot: 0138 |

### Amount Due (including penalties, if any): $43,956.32
### CERTIFICATE OF DELINQUENT WATER/SEWER CHARGES

This is to certify that, pursuant to D.C. Official Code, 2001, Section 34-2407.02 and Section 34-2110, the Water and Sewer Authority has a continuing lien for delinquent water/sewer service charges upon the land and the improvements thereon at the above service address. From the date of its filing, this certificate shall have the force and effect of a lien created by a judgment entered by the Superior Court of the District of Columbia and will remain in force and effect until the water/sewer charges, plus any interest and penalties thereon, shall have been fully paid by cash, certified check or money order to the Water and Sewer Authority.

**By:**

Manager, Credit & Collections Customer Service Department DC Water and Sewer Authority.

## ACKNOWLEDGEMENT

This is to acknowledge that the foregoing certificate was filed with the Recorder of Deeds of the District of Columbia on the _____.

**By:** _____
Recorder of Deeds Government of the District of Columbia

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Exhibit 8

IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE**
**DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
HOUSING REGULATION
ADMINISTRATION

**CERTIFICATE OF DELINQUENT COSTS**
**FOR CORRECTION OF WRONGFUL HOUSING CONDITIONS**

DISTRICT OF COLUMBIA

vs.

DEVELOPER RE1 LLC

1629 K ST NW STE 300

Washington, DC 20006

Date: 7/13/2023

Square - 3389  Suffix -  Lot - 0138

Assmt Control #: A2303814

Address of Premises:

5501 1st Street NW

**This Certificate is filed under the authority of and pursuant to Title 42, Chapter 42, Section 3131 of the D.C. Code, 2002 Edition, as amended. The District of Columbia shall have a continuing lien for taxes against the property for correction of wrongful conditions including administrative, contracting, and advertising costs, if any.**

**This Certificate, from the date of its filing, has the force and effect, as against the aforesaid delinquent party or parties, of a lien created by a judgment granted by the Superior Court of the District of Columbia. This lien remains in force and effect until all fines set forth below, together with penalties and interest thereon, shall be paid.**

**Assessed Amount: $690.75**

By:

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

1491

Exhibit 9



Government of the District of Columbia
Office of the Chief Financial Officer
Office of Tax and Revenue
1101 4ᵗʰ Street, SW
Washington, DC 20024



DEVELOPER RE1 LLC
1629 K ST NW STE 300
WASHINGTON DC  20006-1631

*Below are instructions for individuals with limited English Proficiency who need assistance. All others
please turn to the next page for important information from the Office of Tax and Revenue.*



**Language Assistance**

Si necesita ayuda en Español, por favor llame al **(202) 727-4829** para proporcionarle un
intérprete **de manera gratuita**.

Nếu quý vị cần giúp đỡ về tiếng Việt, xin gọi **(202) 727-4829** để chúng tôi thu xếp có
thông dịch viên đến giúp quý vị **miễn phí**.

Si vous avez besoin d'aide en Français appelez-le **(202) 727-4829** et l'assistance d'un
interprète vous sera **fournie gratuitement**.

በአማርኛ እርዳታ ከፈለጉ በ **(202) 727-4829** ይደውሉ፡፡ የነጻ አስተርጓሚ ይመደብልዎታል፡፡

한국어로 언어 지원이 필요하신 경우 **(202) 727-4829** 로 연락을 주시면 **무료로** 통역이 제공됩니다.

如果您需要用(中文)接受幫助，請電洽 **(202) 727-4829** 將免費向您提供口譯員服務。

**Office of the Chief Financial Officer**
**Office of Tax & Revenue**
**Customer Service Administration**
**1101 4th Street, SW Suite W270**
**Washington, DC 20024**





**Government of the District of Columbia**
Office of the Chief Financial Officer
Office of Tax and Revenue

1101 4th Street, SW
Washington, DC 20024

---

Date of Notice:   February 15, 2023                      Notice Number:   L0008925602

### PROPERTY TAX BILL

| Square | Suffix | Lot | Property Address | Bill Year | Assessment |
|--------|--------|------|------------------|-----------|------------|
| 3389 |  | 0138 | 5501 1ST ST NW | 2023 | $1,808,220 |

| Description | Class | Tax | Penalty | Interest | Credit | Total |
|-------------|-------|-----|---------|----------|--------|-------|
| 2023 First Half Tax | 2 | $14,917.82 | $0.00 | $0.00 | $0.00 | $14,917.82 |
| **Total** |  | **$14,917.82** | **$0.00** | **$0.00** | **$0.00** | **$14,917.82** |
| **Amount Due By March 31, 2023** |  |  |  |  |  | **$14,917.82** |

| Additional Information | (Please see reverse side for important information.) |
|---|---|

- Real Property Tax is based on the Taxable Assessment of $1,808,220.00 at a rate of $1.65 per $100. Estimated annual tax amount $29,835.63.
- 18% of your Tax Year 2023 Real Property Tax is used to pay the General Obligation Bonds debt service requirement.
- Your real property is **NOT** receiving Homestead Deduction/Senior/Disabled Tax Relief or Disabled Veterans Homestead.

**Forecasted Amounts for Late Payments**

| If paid by: | **Apr 1, 2023** | **Amount Due** | **$16,633.37** | If paid by: | **Jun 1, 2023** | **Amount Due** | **$17,080.91** |
|---|---|---|---|---|---|---|---|
| If paid by: | **May 1, 2023** | **Amount Due** | **$16,857.14** | If paid by: | **Jul 1, 2023** | **Amount Due** | **$17,304.68** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**RETURN THIS PORTION WITH YOUR REMITTANCE AND/OR CORRESPONDENCE**

DEVELOPER RE1 LLC
1629 K ST NW STE 300
WASHINGTON DC  20006-1631

| | |
|---|---|
| **Media Number:** | 130313771 |
| **Notice Number:** | L0008925602 |
| **Tax Type:** | Real Property Tax |
| **Account ID:** | 700-001484236 |
| **SSL:** | 3389-   -0138 |
| **Due Date:** | 31-Mar-2023 |
| **Amount Due:** | $14,917.82 |

OFFICE OF TAX AND REVENUE
REAL PROPERTY TAX
ADMINISTRATION
P.O. BOX 98095
WASHINGTON, DC 20090-8095

Amount
Enclosed:   $ _____

**Make check or money order payable to: DC TREASURER**

Please use the enclosed envelope and include your SSL



3389XXXX013801303137717000014842360001491782 7

1495

# TAX BILL INFORMATION

**PAYMENTS:**

**Your first half real property tax payment is due by March 31.** If the due date falls on a weekend or holiday, the payment will be due the next business day.

Pay Online

Make a secure **ACH** or **Credit Card** payment through the *MyTax.DC.gov* online portal:

1. From the *MyTax.DC.gov* homepage, click on the "Make a Real Property Payment" link and enter the Square, Suffix, Lot number, or Street Address.
2. Select the desired payment method (ACH or Credit Card).
3. Select the tax account for which you would like to make a payment.
4. Enter the appropriate information and submit the payment.
5. Retain the confirmation number for your records.

Pay by Check

1. Make your check payable to the "DC Treasurer."
2. To ensure your payment is recorded accurately, you **must** write your **Square, Suffix, Lot (SSL) number** on your check or money order.
3. If you are submitting payments for more than one property, you **must** include separate checks for each payment voucher.
4. Mail your check with the voucher at the bottom of this notice to: Office of Tax and Revenue, P.O. Box 98095, Washington, DC 20090-8095.
   Payments postmarked on or before the due date will be considered timely.

**Please note:** OTR accepts MasterCard, Visa, American Express, and Discover cards for credit card payments. There is a 2.5 percent non-refundable convenience fee, charged by the processor, when making a credit card payment. The convenience fee does not apply to ACH payments. Also, the credit card payment amount is not to exceed $100,000.00 (inclusive of 2.5 percent non-refundable convenience fee) per transaction and is limited to a maximum of two (2) transactions per month.

**TAX SALE:**

Properties delinquent in the payment of real property tax, BID tax, vault rent, special assessments, or other certified liens may be subject to sale at the District's annual tax sale.

**PENALTY, INTEREST, AND FEES:**

The law provides that if your real property and/or BID tax is not paid in full by the due date on the tax bill, the Office of Tax and Revenue **must** charge a penalty equal to 10% of the delinquent tax, as well as interest at the rate of 1.5% per month (or part thereof) until paid in full. Furthermore, a $65 fee will be assessed for each dishonored payment. Waiver requests can be submitted via MyTax.DC.gov for consideration.

**BILL QUESTIONS:**

For assistance with billing related inquiries as well as MyTax.DC.gov, please contact our e-Services Unit at (202) 759-1946 or email e-services.otr@dc.gov, 8:15 am to 5:30 pm, Monday through Friday. For assistance with property classification III (3) and IV (4), please contact the Office of Residential Inspection Unit of the Department of Building at (202) 671-3500 or email vacantbuildings@dc.gov.

eFiled
07/31/2023 5:09:22 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Close of Discovery
11/10/2023

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

The Plaintiff, Developer RE1 LLC ("Developer RE1") hereby files its Opposition to

Defendants DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin's

(collectively, "Defendants") Motion for Protective Order (the "Motion").  This case involves a

dispute over loan documents, including two deeds of trust for which Mr. Russell Drazin ("Mr.

Drazin") serves as the Trustee.  Mr. Drazin is a fact witness.  Mr. Drazin can be deposed as to

what actions he took in his capacity as Trustee, if any, whether he was dominated and controlled

by the Defendants (as Trustee), and as to other facts related to his role as Trustee.  There is no

basis for a protective order in this situation and the Motion should be denied.

## I.  RELEVANT FACTUAL BACKGROUND

This case centers on two deeds of trust and alleged defaults related thereto.[1]  The

gravamen of the Complaint in this matter is that the Defendants manufactured pretextual defaults

---

[1]  For brevity, the complete factual history is omitted from the instant Opposition.  For a full
recitation of the facts of this matter, *see* Plaintiff's Opposed Emergency Motion for a Temporary
Restraining Order to Prevent an Imminent Foreclosure Sale, filed July 11, 2023.

8161\0002\4891-7017-0739.v2

1497

under a Deed of Trust (the "First DOT"), a Commercial Deed of Trust Note (the "First Note"), a second, additional Deed of Trust ("Second DOT"), and a second Commercial Deed of Trust Note (the "Second Note").

There are four defendants in this case. DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name "Washington Capital Partners". Am. Compl. ¶ 2. For convenience, this Opposition refers to DP Capital as the "WCP". The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia. *Id.* ¶ 5. Mr. Huertas controls WCP, and WCP controls the WCP Fund. *Id.* ¶¶ 4-5. Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund. *Id.* ¶ 6. Mr. Drazin is also the Trustee under the First and Second DOT. *Id.*

## II.    PROCEDURAL  HISTORY

Developer RE1 filed its Complaint on December 16, 2022, which was subsequently amended to correct a few errors. Plaintiff filed a Motion for a Temporary Restraining order on December 23, 2022, which was subsequently withdrawn primarily for settlement purposes. On July 17, 2023, Developer RE1 renewed its Motion for a Temporary Restraining Order ("TRO") to prevent a foreclosure sale set for July 25, 2023. The Court granted that renewed motion after an emergency hearing was held on the TRO on July 25, 2023. On Friday, July 21, 2023, Judge Milton Lee held a hearing on a nearly identical Motion for a Temporary Restraining order in a related case (*423 Kennedy St Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.* (2023-CAB-004260)) and issued an Order granting that motion on July 24, 2023. In the 423 Kennedy Order, Judge Lee noted that Mr. Drazin had a conflict of interest in December of 2002. 423 Kennedy Order at 16-17 ("Drazin's position as counsel to WCP created

a conflict because Negussie and his partners were now adversaries over the disposition of the

423 Kennedy Street property.).  The facts in the 423 Kennedy case and this case are intertwined,

in part because Mr. Drazin invoked a cross-default provision in the DOTs as to both Developer

RE1 and 423 Kennedy.

## III.   THE LEGAL STANDARD FOR A PROTECTIVE ORDER

When a party employs a counsel to represent it in a case where the attorney has played a

role in the underlying facts, both the attorney and the party have every reason to expect that the

attorney's deposition may be requested.  *See, e.g.*, *White v. Boarman*, 2011 U.S. Dist. LEXIS

173132 at *5 (D.D.C. June 20, 2011).  The discovery rules of the District of Columbia are to be

accorded a broad and liberal treatment.  *See, e.g.*, *White v. Wash. Met. Area Transit Auth.*, 432

A.2d 726, 728 (D.C. 1981) (citing *Dunn v. Evening Star Newspaper Co.*, 232 A.2d 293, 295

(D.C. 1967)).  Accordingly, a party "may obtain discovery regarding any matter, not privileged,

which is relevant to the subject matter involved in the pending action, including the existence,

description, nation, custody, condition, and location of any books, documents, or other tangible

things and the identify and location of persons having knowledge of any discoverable matter."

*See id.*; *cf. Organic Consumers Ass'n v. Handsome Brook Farm, LLC*, 2017 D.C. Super. LEXIS

27 at *4 (D.C. Super. Ct., Jan. 10, 2017) ("The simplified notice pleading standard relies on

*liberal discovery rules* and summary judgment motions") (emphasis added).

## IV.   LEGAL ARGUMENT

Plaintiff seeks to depose Mr. Drazin in regard to his role as Trustee under the deeds of

trust and as to whether he breached the fiduciary duties that he owed to both Developer RE1 and

423 Kennedy.  Under well-established case law in the District, as a trustee, Mr. Drazin has

fiduciary duties to both the borrowers and the lenders under the deeds of trust.  *See, e.g., Perry v.*

3

*Virginia Mortg. & Inv. Corp.*, ==412 A.2d 1194== (D.C. 1980).  Defendants point to inapposite case

law for the proposition that Plaintiff is seeking to depose opposing counsel for harassment or

vexatious purposes.  Those cited cases are largely nonbinding, federal cases that are factually

distinguishable from the instant case.  In the case that Defendants principally rely on, *Coleman v.*

*D.C.*, ==284 F.R.D. 16, 18== (D.D.C., July 13, 2012), the plaintiff sought to depose an opposing

attorney concerning communications between plaintiff's counsel and the attorney, as well as

emails disclosed by that attorney, and conversations that the attorney had with a doctor regarding

the plaintiff's fitness for duty examinations.  *See id.*  The Court declined to allow a deposition to

proceed, but granted the Plaintiff leave to issue five interrogatories on certain issues related to

the attorney's conversations with the doctor.  Here, Developer RE1 is seeking to depose Mr.

Drazin about his conflict of interest, whether he was dominated and controlled by the

Defendants, how he complied, if at all, with this fiduciary obligations to Developer RE1 (as

Trustee), and other facts regarding his role as Trustee under the loan documents.

 A. <u>The Plaintiff Has Met its Burden</u>

 Trial counsel may be deposed on non-privileged factual information.  *See. e.g.*, *Sadowski*

*v. Gudmundsson*, ==206 F.R.D. 25, 26== (D.D.C. 2002).  Under the framework set forth in *White v.*

*Boarman*, Developer RE1 has easily met each of the relevant factors that a court considers in

determining whether to allow the deposition of opposing counsel.  *See* ==2011 U.S. Dist. LEXIS==

==173132 at *5== (D.D.C. June 20, 2011) (listing the relevant factors:  (1) no other means exists to

obtain the information that to depose opposing counsel; (2) the information sought is relevant

and nonprivileged; and (3) the information is crucial to the preparation of the case).

 First, Mr. Drazin is the only Trustee under the deeds of trust at issue in this case, Mr.

Drazin is the only individual who can state firsthand which actions, if any, he took as Trustee

under the loan documents.  This information cannot be gleaned from WCP, DPCL, or Mr.

<div align="center">4</div>

Huertas. This information is separate from his role as counsel for WCP, DPCL, and Mr. Huertas and is not directly attributable to either his review of documents furnished by his clients and/or communications with his clients.

Second, the information sought from Mr. Drazin is highly relevant and nonprivileged. As Developer RE1 noted at the TRO hearing, Developer RE1 will be filing a motion for leave to amend the First Amended Complaint to add a claim for breach of fiduciary duty against Mr. Drazin and additional claims for declaratory judgment.[2] Mr. Drazin's actions, if any, that he took in regard to the deeds of trust will be highly relevant (indeed, essential) for Developer RE1 to recover under its soon-to-be filed breach of fiduciary duty claim. *See, e.g.*, *Sheridan v. Perpetual Building Assoc.*, 299 F.2d 463, 465 (D.C. Cir. 1962) ("When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust."); *accord Johnson v. Inter-City Mortg. Corp.*, 366 A.2d 435, 437 (D.C. 1976); *Sheridan v. Perpetual Building Assoc.*, 322 F.2d 418, 420 (D.C. Cir. 1963). Mr. Drazin can be questioned about actions he took in his capacity as Trustee, not as counsel to WCP, DPCL, or Mr. Huertas. Moreover, Judge Lee has already determined that 423 Kennedy is likely to prevail on a breach of fiduciary duty claim against Mr. Drazin vis-à-vis a different borrower under nearly identical facts. *See* 423 Kennedy Order at 15-17 (Part C).

Third, as noted above, the testimony sought from Mr. Drain is crucial to Developer RE1's theory of the case, that Mr. Drazin was controlled by the WCP, the DPCL, and Mr. Huertas, and that Mr. Drazin breached his fiduciary duty to the borrowers under the deeds of trust. *See Sheridan*, 299 F.2d at 465.

---

[2]    If Mr. Drazin cannot meet his burden of proving that he was faithful to his duties as Trustee, the actions that he took against Developer RE1 while clouded by a conflict of interest could be set aside as improper.

5

Defendants' reliance on federal cases from Missouri is belied by the fact that the D.C. Cases they rely on state plainly that when a party employs a counsel to represent it in a case where the attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested. *Compare* Mot. for Prot. Ord. at 6 (citing *Wilson v. Scruggs*, 2003 WL 2351358, at *1 (S.D. Mo. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (9th Cir. 1986); *Hickman*, 329 U.S. at 513, *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Mo. 1990)); *with.*, *White v.*, 2011 U.S. Dist. LEXIS 173132 at *5. Mr. Drazin, in choosing to involve himself as trustee under the deeds of trust and as counsel for the lender, and in choosing to not to name a substitute trustee after this litigation was initiated, was on notice that he would likely be deposed. As an attorney practicing real estate law, Mr. Drazin is further presumed to know the law regarding his fiduciary duty to the borrower and the suggested path for a trustee that has an obvious conflict of interest. *See, e.g.*, *Sheridan*, 299 F.2d at 465.

B. <u>Mr. Drazin Cannot Have It Both Ways</u>

Mr. Drazin cannot enjoy the benefit of injecting himself factually into the subject matter of this case as trustee under the deeds of trust and shield himself from discovery due to his role as counsel for the lender. In support of the proposition that Mr. Drazin cannot be deposed, Defendants essentially argue that Mr. Drazin has complied with the terms of the deeds of trust and his duties to (i) obey the plain language of the deed of trust which he is foreclosing; and (ii) obey the dictated of District of Columbia law as they relate to foreclosures. *See* Mot. for Prot. Ord. at 8-9. Developer RE1 is not obligated to take the Defendants at their word regarding whether Mr. Drazin faithfully exercised his duties under the deeds of trust and District of

6

Columbia law; rather, Developer RE1 is entitled to fact discovery to evaluate those assertions. *See. e.g.*, *White*, <mark>432 A.2d at 728</mark>.

The Defendants provided a long string cite about the duties of trustees, none of which shield a trustee from being deposed. *See Evans v. First Mount Vernon, ILA*, <mark>786 F. Supp 2d 347, 356</mark> (D.D.C. 2011) (quoting *In re Rothenberg*, <mark>173 B.R. 4, 16</mark> (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.,* <mark>412 A.2d 1194, 1197</mark>, D.C. 1980)); *S&G Inv. Inc. v. Home Fed,* <mark>505 F.2d 370, 377</mark> *n. 21* (D.C. Cir. 1974) (citing *Sheridan v. Perpetual Bld Ass'n*, <mark>322 F.2d 418, 422</mark> (D.C. Cir. 1963)); *Henok v. Chase Home Fin., LLC*, <mark>915 F. Supp. 2d 162, 169</mark> (D.D.C. 2013). Indeed, these cases articulate the legal roles and responsibilities of a trustee – the very same issues that Developer RE1 is entitled to explore in written discovery requests and by taking Mr. Drazin's deposition.

Finally, the remedy sought by the Defendants – *i.e.,* that Mr. Drazin cannot be deposed on any issue -- is not proportional to the alleged potential harm. Mr. Drazin is now represented by a highly competent attorney. The appropriate time to raise objections regarding any questions to Mr. Drazin that may implicate him having to divulge attorney-client privileged material can be made on a question-by-question basis at his deposition. A blanket prohibition on Mr. Drazin providing any deposition testimony is clearly not warranted under the facts present here.

V.    CONCLUSION

For the foregoing reasons, the Motion for a Protective Order should be denied. A proposed order is attached.

7

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 31, 2022

/s/ Spencer B. Ritchie
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar. No. 1673542)
James D. Sadowski (D.C. Bar. No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Opposition was served by the Court's

electronic filing system this 31st day of July 2023, and a notice of filing should be served on all

counsel of record.

/s/ Spencer B. Ritchie
Spencer B. Ritchie

8161\0002\4891-7017-0739.v2

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:   Close of Discovery
            8/10/2023

## [PROPOSED] ORDER

Upon Consideration of Defendants' Opposed Motion for a Protective Order to Prevent
Plaintiff from Deposing Defendants' Counsel, and the Plaintiff's Opposition thereto, and for the
reasons set forth in that Opposition, it is this _____ day of _____, 2023, hereby

ORDERED that the Motion is DENIED.

SO ORDERED.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

*Copies to counsel of record via EfileDC.*

9

8161\0002\4891-7017-0739.v2

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

      *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:   Close of Discovery
           11/10/2023

## NOTICE OF APPEARANCE

Please note the appearance of Spencer B. Ritchie, Esq., of the law firm of Greenstein

DeLorme & Luchs, P.C., as co-counsel for Plaintiff in the above-captioned matter.

GREENSTEIN DELORME & LUCHS, P.C.

/s/ Spencer B. Ritchie

Dated:  July 31, 2022

James D. Sadowski (D.C. Bar No. 446635)
Spencer B. Ritchie (D.C. Bar No. 1673542)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 31st day of July 2023, and a notice of filing should be served on all counsel of

record.

/s/ Spencer B. Ritchie
Spencer B. Ritchie

eFiled
08/07/2023 6:04:23 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

Next Event: Close of Discovery
November 10, 2023

## REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER TO PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, in reply to the opposition (the "Opposition") of Developer RE1 LLC (the "Plaintiff") to the Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel (the "Motion"), and state as follows:

### I.    Introduction

The Plaintiff appears to be in agreement concerning the controlling standard for deposing an opposing party's counsel, but – rather critically – fails to make a showing under that standard. Rather, the Opposition is reliant upon generalized, threadbare arguments that ignore the myriad less-intrusive options available to the Plaintiff and the sound rationale for insisting those options be first pursued before a deposition of Mr. Drazin is even considered. Equally, the Plaintiff does not demonstrate how the information sought is critical (or even relevant) in nature. And for these reasons, as noted in the underlying Motion, it is appropriate to enter a protective order *sub judice*.

1

## II.    Argument: The *White/Shelton* Standard is Not Satisfied

All parties appear to be in accord that the Motion is governed by the standard set forth in *White v. Boardman*, which adopts a conjunctive three prong test to be applied when a litigant seeks to take the deposition of its adversary's legal counsel. While the Plaintiff acknowledges these rigors and endeavors to argue for their satisfaction, the Opposition ultimately fails on at least two of the three prongs – if not all three.

The *White* standard, as summarized by the Plaintiff itself, holds that an adverse attorney may only be deposed where "(1) no other means exists to obtain the information that to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." Opposition at § IV(A) (p. 4) (summarizing *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011)). The standard, in turn, is adopted from the United States Court of Appeals for the Eighth Circuit, which has observed:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citing *Fireman's Fund Insurance Co. v. Superior Court*, 140 Cal.Rptr. 677, 679 (Cal. App. 3d 1977))

Here, the Plaintiff cannot – and does not – make a showing sufficient to clear the first prong of the *White/Shelton* test. The Opposition insists that Mr. Drazin "is the only individual who can state firsthand which actions, if any, he took as Trustee under the loan documents…" Opposition at § IV(A) (p. 4). Yet this is plainly not the case. The underlying deeds of trust are clear that the trustee is to act "upon the instruction of the Beneficiary," and authorize the trustee to (i) sell property at public auction; (ii) advertise the subject sale; and (iii) ensure such advertisements

2

are placed "in at least one newspaper published or having a general circulation in the country, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks…" *See* Deed of Trust, attached hereto as Exhibit A, at § 8.0.

To be sure, aside from executing a document that is recorded amongst the land records, and execute a deed following a successful auction, this is *all* Mr. Drazin is authorized to do in his ministerial role as trustee. And every element of that work can be readily discovered through another party to this case and/or through a review of public records. WCP is capable of indicating whether or not it instructed Mr. Drazin to commence a foreclosure. WCP is capable of producing ads run in newspapers of general circulation. WCP is capable of showing if those ads were run in successive weeks. And the land records reveal whether or not a proper notice was recorded in advance of a planned (and since-stayed) foreclosure auction.

Indeed, it is not merely that there exist other means of ascertaining this information; it is, too, that the other means are not even difficult or invasive in nature. WCP is a party to this action and can have its corporate designee deposed (just as it can be sent interrogatories or issued document requests). If the Plaintiff does not believe WCP, the Plaintiff is free to subpoena the Washington Post for a copy of advertisements run amongst its pages. If the Plaintiff does not believe a proper notice was placed in the land records, the Plaintiff can check those land records – for free – online. And there is thusly absolutely no information held by Mr. Drazin that is not readily discoverable, with appreciable ease, from other sources.

Equally, the Plaintiff cannot meet – and has not met – the third rigor of the *White/Shelton* test: showing the information "is crucial to the preparation of the case." To the contrary, this is *not* a case where the Plaintiff alleges an improper foreclosure occurred, where an auction was not properly advertised, where a notice was not timely placed in the land records, or anything of the

sort. This is, rather, a case where the Plaintiff has succeeded in staying a foreclosure and where, even prior to the stay being obtained, no one ever suggested the auction to be without proper advertisement or notice. The Plaintiff takes plentiful issue with WCP, DPCL and Mr. Huertas, urging they ought not have declared a loan to be in default and then instructed Mr. Drazin to foreclose. But nowhere in the record of this case may be found so much as a suggestion that once Mr. Drazin was instructed to foreclose, he did so in any manner other than one wholly in accord with the deed of trust and governing law.

With the foreclosure stayed, it is altogether unclear how information about the now-cancelled auction could be "crucial to the preparation of the case." None of the Plaintiff's claims sound in the technical formalities of how a foreclosure sale was to be conducted. To the contrary, the gravamen of the Plaintiff's case is that once it failed to pay a loan at maturity, WCP and DPCL were not entitled to exercise their rights under deeds of trust. The mechanics of a foreclosure that never occurred could not possibly be any less relevant to such a case.

### III.     Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order prohibiting the Plaintiff from taking the deposition of Mr. Drazin; and (ii) afford such other and further relief as may be just and proper.

Dated: August 7, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 7th day of August 2023, and a notice of filing should be served on all counsel

of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

5

Exhibit A

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON
PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and
grantor have an agreement whereby the noteholder may make or contemplates making
advances from time to time against the security described in this credit line deed of trust.
The maximum aggregate amount of principal to be secured at any one time is
$524,000.00. An explicit statement of the rights and obligations of the borrower (i.e.,
grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by
and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability
Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of
1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter
referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street,
NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited
Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815
Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter
defined) under any co-lending agreement, for money borrowed in the amount of
**$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered
a certain Commercial Deed of Trust Note of even date herewith, in the original principal
amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent
holder of the Note secured hereby the full and punctual payment of said debt, when and as
the same shall become due and payable, as well as any and all renewals and extensions of
said Note, or any part thereof, together with interest thereon, and the performance of the
covenants and agreements herein and therein contained, and also to secure the
reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee,
and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees
under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions
of this Deed of Trust for all money which may be advanced as herein provided for, and for
any and all costs and expenses incurred or paid on account of any litigation at law or in
equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

## ARTICLE I

### DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

## GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

1517

Case 25-10202-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:35:28    Desc
Exhibit B - All Pleadings And Docket Entries (Part III)    Page 1001 of 1716
3501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

      Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

      The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

      Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

      (a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

1518

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">

ARTICLE IV

AFFIRMATIVE COVENANTS

</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

1519

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

1521

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

### NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

1523

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

1524

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

1525

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

### ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

1526

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016                                                                 Page **14** of **25**

1527

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## ARTICLE IX

## THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

1529

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

ARTICLE X

RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

ARTICLE XI

MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

1531

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

1535

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_Mel Negussie_ (SEAL)

By:    Mel Melaku Negussie

Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:

STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_Rosa M. Green_

NOTARY PUBLIC

My commission expires: _____



ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

1537

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

1538

# EXHIBIT "A"
## Property Description

**Closing Date:**       **December 23, 2021**

**Borrower(s):**        **Developer RE1 LLC**

**Property Address:**  **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
**1101 4th St. SW,
Washington, DC 20024**
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed ☒ Deed of Trust ☐ Lease for a Term of 30 years or more

☐ Re-recording ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
|------|------|------|------|------|------|------|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

Square and/or Parcel [_____] Lot(s) [_____]

Property Address: [5501-5505] [1st Street] [NW] Unit No.
Street Number ___ Street Name ___ Quadrant

Property Use: ☐ Dwelling Units ≤ 5 ☐ Apartment ☐ Commercial

Is any part of the <u>entire</u> building commercial (Class 2)?
☒ Yes* ☐ No ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes† ☐ No

† If Yes, this instrument will be taxed as commercial.

Fee Interest % Conveyed: [100] %

Was personal property included in this transfer? ☐ Yes* ☐ No

*If Yes, what type? [_____] Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person
Name [Steven Oxman] Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington] State [DC] Zip [20006]

### PART D - Return Instrument To
Name [Steven Oxman] Firm [District Title]

Address [1775 I Street Northwest, #560] Phone No. [(202) 518-9300 ext. 309]

City [Washington] State [DC] Zip [20006]

### PART E – Grantor(s) Information
Grantor [Developer RE1 LLC] Grantor [_____]

Grantor [_____] Grantor [_____]

Address [1629 K Street NW, Suite 300] Phone No. [(202) 271-5046]

City [Washington] State [DC] Zip [20006]

Grantor(s) Tenancy ☐ Tenants in Common ☐ Joint Tenants ☐ Trustee
☐ Tenants by Entirety ☐ Sole

ROD 1 Revised 08/2019

★★★

**Government of the**
**District of Columbia**
Office of Tax and
Revenue
1101 4th St. Street,
SW Washington, DC
20024          Phone
(202)727-5374

| 3389 | 0137, 71, 72 |
|---|---|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

Grantee WCP Fund I LLC       Grantee

Grantee       Grantee

Address 2815 Hartland Road, Suite 200       Phone No. (703) 344-1733

City Falls Church       State VA       Zip 22043

**Grantee(s) Tenancy**  ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee
☐ Tenants by Entirety  ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| Last Name | First Name | Middle Name |
|---|---|---|

Address       Unit No.

City       State       Zip

Phone

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

**Tax Exemption Application**
**Recordation Tax/Transfer Tax**
(Cite to Specific DC Code Provision)

### I. Deed

1.  Acquisition Price                    /

    Cash                    /

    *Amount of 1st Deed of Trust*

        Purchase Money Amount

        Other Exempt Amount

        Nonexempt Amount:

    *Amount of 2nd Deed of Trust*

        Purchase Money Amount

        Other Exempt Amount

        Nonexempt Amount:

    *Amount of 3rd Deed of Trust*

        Purchase Money Amount

        Other Exempt Amount

        Nonexempt Amount:

2.  Current Tax Year Assessed Value
    (If No or Nominal Consideration)                    /

ROD 1 Revised 08/2019

**Government of the District of Columbia**

**Office of Tax and Revenue**
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## II. Deeds of Trust (no transfer of title)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)   $524,000.00

**Tax Exemption Application**
**Recordation Tax**
(Cite to Specific DC Code Provision)

| 3389 | | 0137 ,71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date  December 23, 2021 | Date  December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

Notary Public

Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My Commission Expires:
STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**    **2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS**, *et al.*, | **Next Event: Remote Mediation Session November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

### <u>HEARING ORDER</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day.  The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

1544

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full.  As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms.  The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements.  The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means.  Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260.  In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's  counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

1546

that were necessary for the project to move forward.   Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale.  Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing.  Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

_____

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

<u>**Copies via Odyssey to**</u>**:**

James D. Sadowski, Esq.
<u>jds@gdllaw.com</u>
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
<u>mac@mbvesq.com</u>
*Counsel for Defendants*

eFiled
09/03/2023 9:30:42 PM
Superior Court
of the District of Columbia

Case 25-10023-ELG   Doc 1-32   Filed 09/04/25   Entered 09/04/25 09:25:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part II)   Page 1031 of 2443   Page 1479 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

## ANSWER AND AFFIRMATIVE DEFENSES

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the First Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses thereto, state as follows:

### Answer

1.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraphs 1, 6, 14, and 16 of the Complaint.

3.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-3, 5, 8, 10-13, 15, 20, 23, 26, 29, 32-33, 46, 49, 64, 78-80, 85-87, 105, 107-108, 111-112, 116-117, 128, 135, 153-156, and 160-163 of the Complaint.

1

1549

4.      Per paragraph 7 of the Complaint, the Defendants deny that Mr. Drazin acts as counsel to SFNU, except the Defendants admit that Mr. Drazin does sometimes act as counsel to WCP in its capacity as servicer of certain loans owned by SFNU.

5.      Paragraph 84 of the Complaint is admitted but it is noted the deeds of trust do not require various occurrences be memorialized by formal (or informal) notice.

6.      Paragraphs 139, 144, 151, 159, 167, 172 and 181 of the Complaint do not set forth contentions that call for an admission or denial.

7.      Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

8.      Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

**Affirmative Defenses**

1.      The Complaint fails to state a claim for which relief may be granted.

2.      The plain language of the promissory notes and deeds of trust appended to the Complaint control the relationship between the Plaintiff and the Defendants.

3.      The Complaint fails to plead damages in a legally cognizable manner.

4.      The Plaintiff is barred from recovering herein by the economic loss rule.

5.      Injunctive relief is not a stand-alone cause of action in the District of Columbia.

2

1550

6.       The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.       The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.       The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.       The Plaintiff is barred from recovering herein by the doctrine of first breach.

Dated: September 3, 2023                Respectfully Submitted,

                                           /s/ Maurice B. VerStandig
                                           Maurice B. VerStandig, Esq.
                                           DC Bar #1034066
                                           The VerStandig Law Firm, LLC
                                           9812 Falls Road, #114-160
                                           Potomac, Maryland 20854
                                           Telephone: 301-444-4600
                                           Facsimile: 301-444-4600
                                           Electronic Mail: mac@mbvesq.com
                                           *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 3rd day of September, 2023, and a notice of filing should be served on all counsel

of record.

                                           /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No. 2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, *et al.*,** | **Next Court Event: Remote Mediation Session, November 16, 2023, at 1:30 p.m.** |
| **Defendants.** | |

## ORDER GRANTING DEFENDANTS' OPPOSED MOTION FOR PROTECTIVE ORDER TO PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL

This matter is before the Court on Defendants' Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel, filed on July 17, 2023; Plaintiff's Opposition to Defendants' Motion for a Protective Order, filed on July 31, 2023; and Defendants' Reply to Opposition to Motion for Protective Order to Prevent Plaintiff from Deposing Defendants' Counsel, filed on August 7, 2023. In the Motion, the Defendants move this Court to enter a Protective Order prohibiting Plaintiff, Developer RE1 LLC, from deposing attorney Russell Drazin ("Mr. Drazin"), who serves as counsel for Defendants WCP Fund I LLC and DP Capital, LLC.

The Complaint in this case was filed on December 16, 2022 against Defendants DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Mr. Drazin. *See* Compl. The Plaintiff alleges: (1) Tortious Interference With Business Relations, against Defendants DP Capital, LLC, WCP Fund I LLC, and Daniel Huertas (COUNT I); (2) Breach of the Duty of Good Faith and Fair Dealing, against WCP Fund I LLC only (COUNT II); (3) Declaratory Judgment, against WCP Fund I LLC

(COUNT III); and (4) Permanent Injunctive Relief to Stop Enforcement of The First Deed of Trust, The Second Deed Of Trust, and Any Foreclosure Actions, against all Defendants (COUNT IV). Compl. at ¶¶ 112–135. Plaintiff filed an Amended Complaint on January 12, 2023, though the original counts were left undisturbed. *See* Am. Compl. at ¶¶ 113–136.

In the Defendants' Motion for Protective Order, Defendants largely seek to prohibit the Plaintiff's deposition of Mr. Drazin because Mr. Drazin serves as outside counsel to both Defendants DP Capital, LLC and WCP Fund I LLC. *See* Defs.' Mot. at 1, 3. Defendants argue that the Plaintiff seeks Mr. Drazin's deposition for "solely harassing and vexatious purposes," *id.* at 2, and that the effort to depose Mr. Drazin is an extraordinary measure that is neither necessary nor appropriate in this case, *see id.* at 4–5.

The Defendants point out that deposing counsel is an extraordinary measure that requires the Plaintiff to meet a high burden of showing why a deposition would be proper in this case. *See id.* at 5–7. The Defendants argue that this issue is governed by the standards laid out in *White v. Boarman*, 2011 U.S. Dist. LEXIS 173132 (D.D.C. 2011) and *Shelton v. American Motors Corporation* 805 F.2d 1323 (8th Cir. 1986) (adopted by the United State District Court for the District of Columbia), which sets forth a three-prong test, the *Shelton/White* test, that must be met when a party seeks to depose the counsel of one of the adversary parties. The standard considers whether the information sought can be discoverable through other means, whether the information would be relevant and non-privileged, and whether the information is crucial to the argument the party is attempting to make. *See Shelton*, 805 F.2d at 1327; *White*, 2011 U.S. Dist. LEXIS 173132, at *5.

Defendants state that, as counsel to DP Capital, LLC and WCP Fund I LLC, Mr. Drazin holds no discoverable knowledge that cannot be discovered through depositions of other

individuals in the case, such as Defendant Daniel Huertas. *Id.* at 4. The Defendants contend that any information the Plaintiff would seek to obtain from a deposition can be discovered through other means and any other unique information would be highly privileged by attorney-client confidentiality, and therefore, non-discoverable. *Id.* Further, the Defendants argue that, because the only relevant information can be found through other discovery matters, any information sought from Mr. Drazin would not add to the already discoverable information and would not be a crucial addition to the matter. *Id.* at 5.

Defendants further emphasize that even though Mr. Drazin served as trustee of the deed of trust that secured Plaintiff's obligation to Defendant WCP Fund I LLC, this ministerial duty does not negate the fact that Mr. Drazin still serves as counsel to two Defendants, nor does it alter any of the *Shelton* factors. *Id.* at 7. Additionally, Defendants contend that Mr. Drazin's actions as trustee are ascertainable by resources available on the public record or by depositions with other witnesses. *Id.*

In the Opposition, Plaintiff argues that Mr. Drazin has played a unique role in the underlying facts of the case as counsel to two other Defendants and sole trustee of the deeds at issue. *See* Pl.'s Reply at 3. Plaintiff contends that the deposition of Mr. Drazin is relevant because they intend on bringing a claim against Mr. Drazin for breach of fiduciary duties while serving as trustee. *Id.* Moreover, Plaintiff contends that the request to depose Mr. Drazin is to allow Plaintiff to discover information about his actions as the sole Trustee of the two deeds at issue, and indeed not to ask about questions related to his position as counsel to DP Capital, LLC and WCP Fund I LLC. *Id.* at 4.

Plaintiff argues that they have met the high burden required for deposing the counsel of an opposing party when considering the facts of this case. *Id.* Plaintiff states that because Mr. Drazin

1554

is the only trustee for the deeds of trust, he alone has the information about which actions he took as trustee, and the beneficiaries of the trust are not a suitable substitute for obtaining this information. *Id.* at 4.  Additionally, Plaintiff contends that the information they seek to gain from Mr. Drazin is highly relevant, as they seek information relating to Mr. Drazin's actions as the Trustee and how it relates to Plaintiff's proposed claim for breach of fiduciary duty. *Id.* at 5. Plaintiff further argues that the information they seek is not privileged, as they are not seeking information about what legal advice or counsel Mr. Drazin provided to DP Capital, LLC and WCP Fund I LLC, nor any information about the documents he reviewed or clients he communicated with in his role as counsel. *Id.* at 5.  Finally, Plaintiff argues that the information they seek is in fact crucial to the case, as they contend that Mr. Drazin was "controlled" by Defendants DP Capital, LLC and WCP Fund I LLC, and as a result, Plaintiff seeks information related to whether this caused Mr. Drazin to breach his fiduciary duty. *Id.*

Moreover, Plaintiff argues that because Mr. Drazin inserted himself into the facts at issue as Trustee, he cannot claim his role as counsel to DP Capital, LLC and WCP Fund I LLC because it creates a blanket prohibition against his deposition. *Id.* at 6–7.  Plaintiff states that caselaw does not support prohibiting the deposition of a trustee and argues the Defendants' sought remedy of prohibiting any deposition of Mr. Drazin is too extreme of a measure. *Id.* at 7.

In the Reply to Plaintiff's Opposition, Defendants again emphasize that the Plaintiff has failed to meet the three prongs of the *Shelton/White* standard and failed to prove that the deposition of Mr. Drazin would be appropriate in this matter. *See* Defs.' Reply at 1.  Defendants contest Plaintiff's claim that any actions of Mr. Drazin as Trustee are unable to be discovered by other means. *Id.* at 2.  Defendants contend that, in fact, the deed of the trust states that the Trustee's actions are "upon the instruction of the Beneficiary," and thus, any actions taken by Mr. Drazin

are discoverable by other individuals or from the public record. *Id.* at 2–3. Furthermore, Defendants again emphasize that a deposition of Mr. Drazin would be invasive and inappropriate, given there are other means by which Plaintiff can ascertain the information they seek or because the information would be highly privileged. *Id.* at 3.

Here, this Court finds that the deposition of an opposing party's counsel is an extreme measure that must satisfy a high bar to be considered an appropriate course of action. The District of Columbia Superior Court Civil Rule 26 allows for parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Super. Ct. Civ. R. 26(b)(2)1). However, the Court must "limit the extent of discovery . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Super. Ct. Civ. R. 26(b)(2)(C).

Super. Ct. Civ. R. 26(c) allows for a party to seek protection from the court "on matters relating to a deposition" whereby the Court "may, for good cause, issue an order to protect . . . a person from annoyance, embarrassment, oppression, or undue burden or expense . . . including (A) forbidding the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery, or (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Super. Ct. Civ. R. 26(c)(1)(A), (C), (D). In showing "good cause," a movant must provide "specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998). Further, as courts generally disfavor the deposition of opposing counsel, a court must take a detailed, fact-intensive approach when deciding whether a disposition of the opposing counsel

would be appropriate.  *See Dist. of Columbia v. Beech-Nut Nutrition Co.*, 2022 D.C. Super. LEXIS 51, at *3.

As noted by the parties, the *Shelton/White* standard requires a movant to show that (1) no other means exists to obtain the information than to depose opposing counsel. . . ; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case."  *White*, 2011 U.S. Dist. LEXIS 173132, at *5 (D.D.C. 2011) (citing *Shelton*, 805 F.2d at 1327).  In reviewing the arguments and facts of this case in light of these three factors, the Court does not find that Plaintiff has met this standard.  Considering the first factor, while Plaintiff contends that they seek to obtain information relating to Mr. Drazin's role as Trustee and whether his actions may have breached his fiduciary duties as such, Plaintiff fails to specify just what information they are seeking to obtain that is not discoverable by other less-intrusive measures.  Second, considering the relevancy of the information sought and the attorney-client privilege Mr. Drazin holds as counsel to DP Capital, LLC and WCP Fund I LLC, Defendants make a strong showing that any information that Mr. Drazin may hold is either readily discoverable by other means or covered by attorney-client privilege.  Third, while the Plaintiff claims that the information they seek is crucial to a possible claim of breach of fiduciary duties, the Plaintiff fails to state, with specificity, the actual information sought and why such information cannot be obtained through some other source.

While the Court understands that in this case, Mr. Drazin played the role of both counsel to two other Defendants, DP Capital, LLC and WCP Fund I LLC, as well as Trustee in the two deeds of trust at issue in the matter, the Court still recognizes the extreme nature of deposing a party's counsel.  Acknowledging the potential harms inherent in allowing the deposition of opposing counsel and taking into consideration the facts and arguments laid out by both parties,

the Court finds that the Plaintiff's contentions fail to meet the high burden set out in *Shelton/White*

and grants the Defendant's Motion for a Protective Order preventing the deposition of Mr. Drazin.

Accordingly, on this **19th day of September, 2023**, it is hereby:

**ORDERED** that Defendants' Motion for Protective Order to Prevent Plaintiff from

Deposing Defendants' Counsel shall be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that the Plaintiff herein is prohibited from taking the deposition of attorney

Russell Drazin.

**SO ORDERED.**

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,
Daniel Huertas, & WCP Fund I LLC*

**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**2023-CAB-004260**

**423 Kennedy St Holdings, LLC v. DP Capital LLC et. al.**

### TRACK II SCHEDULING ORDER

This Order may not be modified except by leave of Court upon a showing of good cause. Stipulations by counsel will not be effective to change any deadlines in the Order without court approval. Failure to comply with this Order and the deadlines set forth herein may result in dismissal, default judgment, refusal to let witnesses testify, refusal to admit exhibits, or the assessment of costs and expenses, including attorney's fees, or other sanctions.

A Joint Pretrial Statement is required unless otherwise ordered by the Court.

#### Pretrial Deadlines

| | |
|---|---|
| Exchange Lists of Fact Witnesses: | 12/12/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 12/19/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 01/11/2024 |
| Discovery Requests: | 01/25/2024 |
| Close of Discovery[1]: | 02/26/2024 |
| Filing Motions[2]: | 03/25/2024 |
| Dispositive Motions Decided: | 04/24/2024 |
| Mediation Date: | 05/09/2024 - 06/10/2024 |
| Pretrial Date[3]: | 07/08/2024-08/07/2024 |

Date: 10/13/2023

_____
Milton C Lee, Associate Judge

---

[1] No motion relating to discovery and no deposition or other discovery may be had after this date, except by leave of court. Notices of deposition must be served not less than 5 days before the date scheduled for the deposition, and no deposition may be noticed to take place after the close of discovery date.

[2] This deadline does not apply (1) to motions relating to discovery, which must be filed by the close of discovery, or (2) to motions in limine, motions to bifurcate, or any other motion respecting the conduct of the trial, which must be filed at least 4 weeks prior to the pretrial conference.

[3] A Joint Pretrial Statement is required unless otherwise ordered by the Court.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

     *Defendants*.

2022-CAB-005935
Judge Ebony M. Scott
Discovery Closed – 11/10/23

## CONSENT MOTION TO EXTEND THE SCHEDULING ORDER DEADLINES TO ALLOW THE PARTIES TO PARTICIPATE IN A PRIVATE MEDIATION

The Plaintiff, Developer RE1 LLC ("Developer RE1"), and all of the Defendants, jointly move this Court to modify the Scheduling Order pursuant to District of Columbia Superior Court Rule 16(b)(7)(A). In support of this Consent Motion, the parties state as follows:

1.     This case primarily involves a dispute between a developer, its lender, and persons affiliated with the lender.

2.     Rather than continue to run up legal fees and costs in discovery, the parties have decided to devote their time and resources toward a private mediation before the Honorable Richard Levy (Ret.), a private mediator with JAMS. JAMS has a high success rate in helping resolve contested litigation.

3.     The current discovery closed deadline is November 10, 2023. There is also a court ordered mediation set for November 16, 2023.

4.     Given the private mediator's existing workload, the private mediation with JAMS will not be able to be scheduled until early December 2023, which is several weeks after the close of discovery.

4863-4920-5386.v1

5.      The parties seek an approximate ninety (90) day extension to the existing

Scheduling Order deadlines so that the parties can participate in private mediation with JAMS

and hopefully resolve this case by a private settlement.

6.      This is the parties' second request for a modification of the Scheduling Order.  A

copy of the existing Scheduling Order deadlines is shown in the screen shot below:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

Source:  Hearing Order dated August 15, 2023, page 6.

7.      Because the trial date in this case is not until September 9, 2024, there is

sufficient time after the private mediation is completed to complete discovery should the private

mediation not be successful.

8.      The private mediation will also include the litigants in a related case -- *423

Kennedy St. Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2023-

CAB-004260 (Assigned to Judge Milton Lee) -- so there is an opportunity to resolve two

pending cases before this court, not just this one.

9.      No party will be prejudiced as a result of this extension request, and allowing

mediation could easily result in a settlement of this matter, which will benefit the parties and the

Court.  The private mediation may also result in there being no need for the court ordered

mediations in the two pending cases.

2

10.     Because there is good cause to extend the deadlines and no adverse or prejudicial consequence to doing so, the parties' respectfully request that all upcoming deadlines be extended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Discovery Requests | Expired | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Dispositive Motions Deadline | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| ADR - Mediation | 11/16/2023 | 04/25/2024 |
| Pretrial Date | Set after ADR | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/24 | 09/06/24 [No Change] |
| Jury Trial | 09/09/24 | 09/09/24 [No Change] |

11.     The parties respectfully request that this Court enter an Order extending the Scheduling Order Deadlines in accordance with the proposed schedule set forth above.  A proposed order is attached.

Respectfully submitted,

Dated:  November 6, 2023

/s/ James D. Sadowski
James D. Sadowski, Esq. # 446635
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:    jds@gdllaw.com
*Counsel for Plaintiff*

Dated:  November 6, 2023

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq. #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD  20854
Email:  mac@mbvesq.com
*Counsel for Defendants*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 6, 2023, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

    *Defendants*.

2022-CAB-005935
Judge Ebony M. Scott

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

UPON CONSIDERATION of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines to Allow the Parties to Participate in Private Mediation ("Consent Motion"), and for

good cause shown, it is this _____ day of November, 2023, hereby

ORDERED that the Consent Motion is GRANTED, and the Scheduling Order is amended

as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Discovery Requests | Expired | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Dispositive Motions Deadline | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| ADR - Mediation | 11/16/2023 | 04/25/2024 |
| Pretrial Date | Set after ADR | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/24 | 09/06/24 [No Change] |
| Jury Trial | 09/09/24 | 09/09/24 [No Change] |

_____
Associate Judge Ebony M. Scott

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

DEVELOPER RE1 LLC,                    )
                    Plaintiff,        )
                                      )    Civil Case No. 2022 CAB 005935
v.                                    )
                                      )    Judge Ebony M. Scott
DP CAPITAL, LLC d/b/a                 )
WASHINGTON CAPITAL                    )    Next Court Event:  Remote Status Hearing
PARTNERS, *et al.*,                   )    January 5, 2024 at 10:00 a.m.
                    Defendants.       )

---

## ORDER SETTING STATUS HEARING

This matter was scheduled for Mediation on November 16, 2023, at 1:30 p.m.  Mediation was cancelled due to the Parties' failure to submit the Mediation Readiness Certificate. Accordingly, it is this 6th day of November 2023, hereby:

**ORDERED** that the parties shall appear for a **Remote Status Hearing** on **January 5, 2024, at 10:00 a.m.**, in Courtroom 219 before Judge Ebony M. Scott.  Instructions for remote participation are attached.

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,
Daniel Huertas, & WCP Fund I LLC*

1567

## VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in <u>Virtual Courtroom 219</u>, which the parties and counsel may access in the following ways:

Going to the WebEx website at <u>https://dccourts.webex.com/meet/ctb219</u> or going to <u>https://dccourts.webex.com</u> and entering meeting ID number 129 315 2924; or

(1)    Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering <u>https://dccourts.webex.com/meet/ctb219</u>; or

(3)    Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at <u>judgescottchambers@dcsc.gov</u> as staff will be monitoring the e-mails closely during hearings.

**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**

## COURTROOM PROTOCOL

**Guidelines**: When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway. Each party should be automatically muted by the courtroom clerk when they first arrive. If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function. If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**: Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: <u>https://www.dccourts.gov/services/remote-hearing-information.</u>

**Exhibits**: If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at <u>judgescottchambers@dcsc.gov</u>, copying all sides, <u>no later than 5:00 p.m. three business days before the hearing</u>. You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing. The <u>exhibits must be separately labeled</u> so that they can be easily identified by all parties and the Court during the remote hearing.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| DEVELOPER RE1 LLC, ) | |
| Plaintiff, ) | |
| ) | Civil Case No. 2022 CAB 005935 |
| v. ) | |
| ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a ) | |
| WASHINGTON CAPITAL ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, ) | September 6, 2024 at 2:00 p.m. |
| Defendants. ) | |

---

**ORDER GRANTING CONSENT MOTION TO EXTEND THE SCHEDULING ORDER
DEADLINES TO ALLOW THE PARTIES TO PARTICIPATE IN A PRIVATE
MEDIATION**

Upon consideration of the Consent Motion to Extend the Scheduling Order Deadlines to Allow the Parties to Participate in A Private Mediation, filed on November 6, 2023, and the entire record herein, it is this 9th day of November 2023, hereby:

**ORDERED** that the Consent Motion is **GRANTED**; it is further

**ORDERED** that the Status Hearing currently scheduled for January 5, 2024 shall be **VACATED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Discovery Requests | -- | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Filing Motions | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| Pretrial | To be set upon completion of Mediation | |

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

Page **1** of **2**

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin, Daniel Huertas, & WCP Fund I LLC*

eFiled
03/01/2024 1:55:26 PM
Superior Court
of the District of Columbia

Case 25-10023-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 19:25:28   Desc
Exhibit B - All Pleadings And Docket Entries (Part II) All Pages Page 1501 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event: 05/24/24
Proposed Close of Discovery

## PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

The Plaintiff, Developer RE1 LLC ("Developer RE1"), hereby files its Unopposed

Motion for Leave to File a Second Amended Complaint to add new Defendant SF NU, LLC, to

include additional claims against Defendant Russell Drazin ("Mr. Drazin"), and to update the

estimated damages.

## I.  RELEVANT FACTUAL BACKGROUND

This case primarily involves a dispute between a developer, its lender, and persons

affiliated with the lender.[1]  The gravamen of the Complaint is allegations that the Defendants

manufactured pretextual defaults under a Deed of Trust (the "First DOT"), a Commercial Deed

of Trust Note (the "First Note"), a second, additional Deed of Trust ("Second DOT"), and a

second Commercial Deed of Trust Note (the "Second Note").  There are four defendants in this

case.  DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name

---

[1]    For brevity, the complete factual history of this dispute is not included.  A full recitation of the
facts of this matter is included in the Plaintiff's Opposed Emergency Motion for a Temporary Restraining
Order to Prevent an Imminent Foreclosure Sale filed on July 11, 2023.

4886-5852-6121.v1

"Washington Capital Partners". First Am. Compl. ¶ 2. For convenience, this motion refers to DP Capital as the "WCP". The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia who controls the WCP, and the WCP controls the WCP Fund. *Id.* ¶¶ 4-5. Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund. *Id.* ¶ 6. Mr. Drazin is also the Trustee under the First and Second DOT. *Id.* The new Defendant, SF NU, LLC ("SF NU"), is believed to be the current owner of one or more of the loan documents. Developer RE1 did not learn about SF NU's role until the Defendants produced documents in this case.

## II.    Brief Procedural History

Developer RE1 filed its Complaint on December 16, 2022, which was subsequently amended to correct several typographical errors. Developer RE1 filed a Motion for a Temporary Restraining order on December 23, 2022, which was initially withdrawn primarily for settlement purposes. On July 17, 2023, Developer RE1 renewed its Motion for a Temporary Restraining Order ("TRO") to prevent a foreclosure sale set for the afternoon on July 25, 2023. The Court granted that renewed motion after an emergency hearing was held the morning of July 25, 2023. On Friday, July 21, 2023, Judge Milton Lee held a hearing on a nearly identical Motion for a Temporary Restraining order in a related case (*423 Kennedy St Holdings, LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.* (2023-CAB-004260)) and issued an Order granting that motion on July 24, 2023. In the 423 Kennedy Order, Judge Lee noted that Mr. Drazin had a conflict of interest in December of 2002. 423 Kennedy Order at 16-17 ("Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.). The facts in the 423

2

Kennedy case and this case are intertwined, in part because Mr. Drazin invoked a cross-default

provision in the DOTs as to both Developer RE1 and 423 Kennedy.

After the Court's TRO decision, the parties temporarily agreed to suspend discovery and

not take further legal action in the case so that the parties could focus on a private mediation that

was held with JAMS, which unfortunately was not successful. Developer RE1 now seeks to

amend its complaint to add SFF NU as a Defendant, to include additional claims against Mr.

Drazin, and to update its initial damages estimate.

## III.    LEGAL STANDARD

This Court has discretion as to whether to permit an amendment to a complaint. D.C.

Super. Ct. Civ. Rule 15(a) provides that:

> A party may amend the party's pleading once as a matter of course
> at any time before a responsive pleading is served or, if the
> pleading is one to which no responsive pleading is permitted and
> the action has not been placed on the trial calendar, the party may
> so amend it at any time within 20 days after it is served.
> Otherwise, *a party may amend the party's pleading only by leave
> of court* or by written consent of the adverse party; and *leave shall
> be freely given when justice so requires.* . . .

D.C. Super. Ct. R. 15(a) (italic emphasis added).

The six factors that the Court considers when exercising its discretion over whether to

permit an amendment are:  the number of requests to amend, the length of the pendency of the

litigation, the number of previous continuances, the existence of bad faith or a dilatory motive,

the merit of the amended claim, and the existence of prejudice to the non-moving party. *Johnson

v. Fairfax Village Condominium IV Unit Owners Ass'n.*, 641 A.2d 495, 501 (D.C. 1994); *Bennett

v. Fun & Fitness of Silver Hill, Inc.,* 434 A.2d 476, 479 (D.C. 1981).  The six factors are

sometimes referred to as "the *Johnson* factors".

3

4886-5852-6121.v1

## IV. LEGAL ARGUMENT

This request for leave to amend should be granted pursuant to the District of Columbia's "freely given" liberal amendment standard because the request is timely, the amended claims are meritorious, and the danger of prejudice to the non-moving party is low.  First, this is Developer RE1's first request to seek leave to amend its complaint (the First Amended Complaint was made as of right pursuant to Rule 15(a)(1)).  *See District of Columbia v. MJ Flooring LLC*, 2022 D.C. Super. LEXIS 46 at *4 (D.C. Super Ct. Aug. 24, 2022) (allowing leave to amend complaint where the District of Columbia had already amended its complaint once).

This case will still be in the discovery phase with a proposed motions filing deadline at the end of June 2024.[2]  The proposed Second Amended Complaint is meritorious and relates to adding a new Defendant to clarify Mr. Drazin's involvement as the sole trustee of the promissory notes at issue in this case, and to note the fact that he was controlled by the WCP, the WCP Fund, Mr. Huertas, and/or SF NU.  Developer RE1 contends that Mr. Drazin has a non-waivable conflict of interest and that he breached his fiduciary duty to the borrowers under the deeds of trust.  *See, e.g.*, *Sheridan v. Perpetual Building Assoc.*, 299 F.2d 463, 465 (D.C. Cir. 1962) ("When it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust."); *accord Johnson v. Inter-City Mortg. Corp.*, 366 A.2d 435, 437 (D.C. 1976); *Sheridan v. Perpetual Building Assoc.*, 322 F.2d 418, 420 (D.C. Cir. 1963).  The proposed Second Amended Complaint is neither made in bad faith nor dilatory, rather, it is being filed after the parties were unable to settle the case after

---

[2]     The Parties have just submitted a Consent Motion to Modify the Scheduling Order Deadlines.

4

participating in private mediation.  There will be no prejudice to the Defendants, who are already aware of the claims and do not oppose the motion.[3]

V.    CONCLUSION

For the foregoing reasons, the Unopposed Motion for Leave to Amend should be granted and the Second Amended Complaint, which is attached as Exhibit A, should be deemed filed as of the date of the Court's Order granting leave to amend.  Developer RE1 has also attached a redline version of the Second Amended Complaint as Exhibit B so that the Court case see the revisions.  A proposed Order is also attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 1, 2024

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar. No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Unopposed Motion for Leave to File a Second Amended Complaint was served by the Court's electronic filing system this 1st day of March 2024, and a notice of filing should be served on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

---

[3]    The Defendants reserve their right to file a motion to dismiss as to the amended claims.

5

CERTIFICATE REGARDING CONSENT

THE UNDERSIGNED hereby certifies that counsel for the Defendants confirmed in a

telephone call with co-counsel on February 13, 2024 and February 29, 2024 that the Defendants

do not oppose the relief requested in this motion, so this motion is being filed as "Unopposed".

/s/ James D. Sadowski
James D. Sadowski

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## [PROPOSED] ORDER GRANTING UNOPPOSED
## MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

UPON CONSIDERATION of the Plaintiff's Unopposed Motion for Leave to File a

Second Amended Complaint ("Unopposed Motion for Leave"), it is this _____ day of

_____, 2024, hereby

     **ORDERED** that the Motion is GRANTED; and it is further

     **ORDERED** that the Second Amended Complaint, which was attached as Exhibit A to the

Unopposed Motion for Leave, is deemed FILED as of the date of this Order.

     **SO ORDERED.**

_____
**Judge Ebony Scott**
Associate Judge

Copies to counsel or record via eFileDC.

James D. Sadowski, Esq.
Alexandira J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice VerStandig, Esq.

4886-5852-6121.v1

# EXHIBIT A

In the Superior Court of the District of Columbia
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

      *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas,  Russell Drazin, and SF NU, LLC ("SF NU").  The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief.  The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure.  The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest.  In

support of its Second Amended Complaint, Developer RE1 avers as follows:

### THE PARTIES

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

7.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

2

1580

STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

The WCP Claims that It Is a Company That Can be Trusted and That It Has an
"Unwavering Commitment to the Highest Ethical Standards"

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC,

two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up
> trusting that if they work with us, we will do everything in our power to help them
> succeed." The duo understands the importance of a client's positive experience and the
> clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've
> developed a highly relational experience with our clients through innovative products,
> practices and standards. *What sets us apart from other lenders is our unwavering
> commitment to the highest ethical practices in the industry*, which historically have been
> very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct

that was specifically designed to make one of their client's construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

10.     Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.     Developer RE1 is partially owned by Mr. Negussie.

12.     Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.     The Defendants all knew that Developer RE1 was a sole purpose entity whose

only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

4856-0691-6010.v1

23. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24. On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25. The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27. On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28. The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29. The maturity date for the First Note and the Second Note was December 23, 2022.

30. As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31. As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

5

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

32.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

33.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

34.     As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.     By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.     As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

37.     On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

38.     That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

39.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

40.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

41.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

42.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44. SF NU is believed to also have a financial interest in the 2507 I Street Project.

45. During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans." Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

46. During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

47. During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

8

48.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I
Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent
were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated
project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan
documents with the WCP Fund.

49.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited
liability company that is partially owned by Mr. Negussie.

50.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the
property located in the District at 423 Kennedy Street, NW.

51.     The Defendants knew that there is no legal or other business relationship between
423 Kennedy and Developer RE1.

52.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that
Developer RE1 does not control 423 Kennedy.

53.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of
one another, and that those entities have no business relationship with each other.

54.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put
Developer RE1 in default under any of the loan documents for the Property, other than Mr.
Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan
because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street
Project.

55.     The Defendants knew that the developer of the 2507 I Street Project, and the
borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507
Holdings").

9

56.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

57.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

58.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

59.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

60.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

**Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.**

61.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

10

63.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

64.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

67.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

11

1589

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.      In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.      In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.      The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.      The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

72.      After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.      On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

default of the loan documents when they each knew, in fact, that there were no defaults by
Developer RE1 under any of its loan documents.

74. On information and belief, Mr. Huertas directed Mr. Drazin to come up with a
cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid
basis for declaring Developer RE1 to be in default under any of the loan documents and to
conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75. As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as
Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the
Second DOT.

76. As of December 8, 2022, Mr. Drazin knew that that his representation of the
Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as
Trustee to Developer RE1, as borrower. Nevertheless, Mr. Drazin willfully ignored the fiduciary
duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take
instructions solely from, and provide legal advice to, the Lender Defendants.

77. Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that
he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender
Defendants' issuance of the Default Notice.

78. The real reason that the Lender Defendants improperly alleged that Developer
RE1 was in default under the loan documents was because the Lender Defendants and/or their
representatives, were angry that the 2507 I Street Project did not turn out the way that they
wanted it to.

13

79.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could

collect of "commission" of 2.50% of the total amount then due, and another "commission" of

5.00% the proceeds of a foreclosure sale.

80.     There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two

"commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

81.     As a result of their spite, their evil, improper motive, and their greed, the Lender

Defendants improperly alleged that Developer RE1 was in default under the loan documents to

try to line their own pockets and to cause as much financial and reputational damage as possible

to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82.     The Lender Defendants also caused WCP to issue a "Notice of Default" to

Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans

that they knew that Developer RE1 had secured with Main Street Bank.

83.     The Lender Defendants also caused WCP to issue each notice "Notice of Default"

to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to

go to closing on the refinancing loan with Main Street Bank.

84.     The Lender Defendants also caused the WCP to issue the each "Notice of

Default" to Developer RE1 for the express purpose of improperly pressuring either Developer

RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF

NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]     423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for
similar claims of misconduct.  *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a
Washington Capital Partners, et al.*, 2022-CAB-005903.

4856-0691-6010.v1

85. The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86. The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members. The Defendants' misconduct is a form of extortion.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT</u>

87. Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a) "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b) Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022." A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

15

89.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

90.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

91.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

92.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

93.     Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

4856-0691-6010.v1

94.     The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95.     The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

96.     The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

98.     The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

99.     The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

17

100. No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

101. On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103. The Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

104. In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred: (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105. The First DOT and the Second DOT do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809 (6).

106. Developer RE1 does not control 423 Kennedy and vice versa.

107. Developer RE1 is not controlled by 423 Kennedy and vice versa.

108. There is also no common control of Developer RE1 and 423 Kennedy.

18

109.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

111.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

112.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

113.    The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

114.    There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

115.    If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

116.    The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally

19

1597

and willfully disregarding Developer RE1's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

117.    The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.    As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

120.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

121.    Paragraphs 1-120 of the Second Amended Complaint are incorporated by reference.

122.    Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

20

123.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127.    Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

4856-0691-6010.v1

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

128.    Paragraphs 1–127 of the Second Amended Complaint are incorporated by reference.

129.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

130.    The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

131.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

132.    The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

133.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

134.    Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC:  (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

4856-0691-6010.v1

1600

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135.    Paragraphs 1–134 of the Second Amended Complaint are incorporated by reference.

136.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

137.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

138.    There is an actual and justiciable controversy between Developer RE1 and WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

139.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

140.    There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

141.    There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

23

and the Second Note have unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

## COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

142. Paragraphs 1–141 of the Second Amended Complaint are incorporated by reference.

143. Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144. The Defendants unethical, outrageous, and illegal conduct, as described in this Second Amended Complaint, is causing irreparable harm to Developer RE1. The Property is unique, and Developer RE1 could lose its entire interest in the Property.

24

145.    Developer RE1 does not have an adequate remedy at law.

146.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

147.    Paragraphs 1-146 of the Second Amended Complaint are incorporated by

reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

150.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,

the Lender Defendants.

4856-0691-6010.v1

1603

151.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.     Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

4856-0691-6010.v1

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-
and post-judgment interest.

<div align="center">

### COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants

</div>

156.    Paragraphs 1-155 of the Second Amended Complaint are incorporated by
reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving
as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant
Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the
First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the
Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that
he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under
the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the
Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual
conflict of interest, which controversy is ripe for adjudication.

161.    There is an actual and justiciable controversy between Developer RE1 and the
Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had
an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count
VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the

<div align="center">27</div>

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 1, 2024

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

28

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st  day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

29

# EXHIBIT B

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

       *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

       *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
~~Initial Scheduling
ConferenceDiscovery Close
03/24/23 at 9:30 a.m~~November 10,
2023~~.~~

## ~~FIRST~~ SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, ~~and~~ Russell Drazin, and SF NU, LLC ("SF NU"). The First

Amended Complaint includes claims for tortious interference with business relations, breach of

the duty of good faith and fair dealing, and permanent injunctive relief. The Second~~First~~

Amended Complaint also seeks a declaratory judgment as to the meaning of certain provisions in

~~two~~the two Deeds of Trust, and seeks injunctive relief to prevent a foreclosure. The Second

Amended Complaint also adds SF NU as a Defendant and adds ~~includes~~ a claim for breach of

fiduciary duty against Mr. Drazin. The Second Amended Complaint also seeks a declaratory

judgment declaring that Mr. Drazin cannot serve as the trustee under the two Deeds of Trust due

to an actual conflict of interest.~~The First Amended Complaint also seek injunctive relief to~~

~~prevent a foreclosure.~~ In support of its ~~First~~ Second Amended Complaint, Developer RE1 avers

as follows:

<u>The Parties</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia

limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited

liability that does business under the trade name "Washington Capital Partners".  For

convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as

"WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited

liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides

at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief

Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is

counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of

trust that he drafted, the terms of which are at issue in this case.

6.7.    The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico

limited liability company that has not filed a certificate of authority to transact business in the

District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville,

Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may

sometimes be referred to as the "Lender Defendants".

2

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

<u>The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"</u>

~~7.~~8.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

~~8.~~9.     But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, ~~and~~ the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

<u>The Ownership of Developer RE1, Its Purpose, and the Property</u>

~~9.~~10.   Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

~~10.~~11.  Developer RE1 is partially owned by Mr. Negussie.

~~11.~~12.  Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

~~12.~~13.  The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

13.14.  On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

14.15.  As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

15.16.  The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

16.17.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

17.18.  On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

18.19.  The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

19.20.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

20.21.  On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

21.22.  The Second DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4

22.23.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

23.24.  On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

24.25.  The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

25.26.  The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.      On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.      The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

26.29.  The maturity date for the First Note and the Second Note was December 23, 2022.

27.30.  As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

28.31.  As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

5

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

~~29.~~32.  On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

~~30.~~33.  On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

~~31.~~34.  As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

~~32.~~35.  By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

~~33.~~36.  As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

~~34.~~37.  On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

~~35.~~38.  That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

6

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

~~36.~~39.  On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

~~37.~~40.  On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

~~38.~~41.  As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

~~39.~~42.  As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.    On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44.    SF NU is believed to also have a financial interest in the 2507 I Street Project.

40.45.  During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

41.46.  During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

42.47.  During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

8

43.48.  After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

44.49.  The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

45.50.  The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

46.51.  The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

47.52.  The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

48.53.  The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

49.54.  Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

50.55.  The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

9

51.56.  The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

52.57.  The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

53.58.  The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

54.59.  The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

55.60.  The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

**Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.**

56.61.  Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

57.62.  The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

4854-7315-1145.v1

58.63.  Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

59.64.  Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

60.65.  The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

61.66.  Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

62.67.  Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

4854-7315-1145.v1

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

63.68.  In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

64.69.  In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

65.70.  The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00.  *See* Ex. M.

66.71.  The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

67.72.  After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

68.73.  On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by

Developer RE1 under any of its loan documents.

~~69.~~74.   On information and belief, Mr. Huertas directed Mr. Drazin to come up with a

cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid

basis for declaring Developer RE1 to be in default under any of the loan documents and to

conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as

Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the

Second DOT.

76.     As of December 8, 2022, Mr. Drazin knew that that his representation of the

Lender Defendants ~~WCP and the WCP Fund~~ as counsel created an actual conflict of interest with

his fiduciary duty as Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully

ignored the fiduciary duty that he owed to Developer RE1, as borrower, and began to act solely

on behalf of, and take instructions solely from, and provide legal advice to, the Lender

Defendants.

77.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that

he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender

Defendants' issuance of the Default Notice.

~~70.~~78.   The real reason that the Lender Defendants improperly alleged that Developer

RE1 was in default under the loan documents was because the Lender Defendants and/or their

representatives, were angry that the 2507 I Street Project did not turn out the way that they

wanted it to.

71. 79.  The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and a another "commission" of 5.00% the proceeds of a foreclosure sale.

72. 80.  There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

73. 81.  As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

74. 82.  The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

75. 83.  The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

76. 84.  The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (i.e., 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]    423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct.  *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

14

77.85.  The Defendants knew that they had no legal right to demand that Developer RE1,

423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants

claimed existed at the 2507 I Street Project.

78.86.  The actions of the Defendants, which they took acting in concert, were taken to

attempt to inflict maximum economic and reputational damages upon Developer RE1 and its

members.  The Defendants' misconduct is a form of extortion.

### The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

79.87.  Mr. Drazin came up with the cover story that Mr. Huertas had requested that he

provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a

basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water

($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent

Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument

No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the

Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than

September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not

made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the

alleged defaults by Developer RE1 is attached as Exhibit O.

80.88.  For convenience, the alleged DC Water Debt will be referred to as the "DC Water

Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property

Tax Late Payment Claim."

15

81.89.  Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

82.90.  On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates."  Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

83.91.  On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

84.92.  Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

85.93.  Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

86.94.  The only provision of the loan documents that Mr. Drazin cited~~cited~~ as a claimed

basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

87.95.  The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness*, or any
> of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

88.96.  The second alleged default by Developer RE1 claimed by Mr. Drazin (the

Property Tax Late Payment Claim) involves the late payments of property taxes by Developer

RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

89.97.  The property taxes of $16,522.89 was paid by Developer RE1 on October 16,

2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True

copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R,

respectively.

90.98.  The late payment of taxes by Developer RE1 eased~~caused~~ no harm whatsoever to

the WCP Fund.

91.99.  The First DOT and the Second DOT contain language indicating that a

foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been

cured.

17

92.100.        No claim of default was made by WCP against Developer RE1 until after

WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with

Main Street Bank.

93.101.        On information and belief, Mr. Huertas directed Mr. Drazin to come up

with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no

valid basis for declaring Developer RE1 to be in default under any of the loan documents and to

conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

94.102.        The real reason that the Defendants improperly alleged that Developer

RE1 was in default under the loan documents was because the Defendants and/or their

representatives, were angry that the 2507 I Street Project did not turn out the way that they

wanted it to.

95.103.        The Defendants apparently claim that Section 7.9 is a cross-default

provision.  A cross-default provision in a contract is a provision that allows a "default" under one

agreement to constitute a "default" under another agreement.

96.104.        In order for Section 7.9 to apply as a cross-default provision as to

Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of

"any document or instrument evidencing or securing any indebtedness, obligation, or liability" to

the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

97.105.        The First DOT and the Second DOT do not define the term "affiliate."

Under federal banking law, the term "affiliate" means "any company that controls, is controlled

by, or is under common control with another company."  15 U.S. Code §6809 (6).

98.106.        Developer RE1 does not control 423 Kennedy and vice versa.

99.107.        Developer RE1 is not controlled by 423 Kennedy and vice versa.

100.108.      There is also no common control of Developer RE1 and 423 Kennedy.

101.109.      Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

102.110.      Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

103.111.      Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

104.112.      The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure. There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

105.113.      The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

106.114.      There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

107.115.      If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

19

1627

108.116.    The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

109.117.    The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.    As of January 11, 2023, none of the Defendants hadve sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

110.120.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

## COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

111.121.    Paragraphs 1-1192 of the Second First Amended Complaint are incorporated by reference.

20

112.122.　　　Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

113.123.　　　The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

114.124.　　　As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

115.125.　　　As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

116.126.　　　The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

117.127.　　　Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $31 million if the closing on the refinancing does not take place this year); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,5000,000.00; (d) costs; and (d) pre- and post-judgment interest.

21

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against Defendants WCP, ~~and~~ WCP Fund, and SF NU Only

~~118.~~128.        Paragraphs 1–12~~19~~27 of the Second~~First~~ Amended Complaint are

incorporated by reference.

~~119.~~129.        Every contract in the District of Columbia contains an implied covenant of

good faith and fair dealing.

~~120.~~130.        The First Note is a contract between Developer RE1 and the WCP Fund

and/or SF NU.

~~121.~~131.        The First DOT is a contract between Developer RE1 and the WCP Fund

and/or SF NU.

~~122.~~132.        The Second Note is a contract between Developer RE1 and the WCP Fund

and/or SF NU.

~~123.~~133.        The Second DOT is a contract between Developer RE1 and the WCP

Fund and/or SF NU.

~~124.~~134.        Through their ~~its~~ improper conduct, the WCP, ~~and~~ the WCP Fund, and/or

SF NU have breached the implied covenant of good faith and fair dealing contained in the First

Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this

Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC

d/b/a Washington Capital Partners, ~~and~~ the WCP Fund 1, LLC, and SF NU, LLC:  (a) any and all

damages (to be determined) that the Plaintiff has suffered will suffer as a result of the

Defendants' intentional interference with contracts (currently estimated to be $3~~1~~ million; (b)

reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

22

COUNT III

DECLARATORY JUDGMENT

Count III Is Asserted Against Defendants WCP, ~~the and~~ WCP Fund, and SF NU Only

~~125.~~135.        Paragraphs 1–~~134~~26 of the Second ~~First~~ Amended Complaint are

incorporated by reference.

~~126.~~136.        The First DOT is a contract between Developer RE1 and the WCP Fund

and/or SF NU.

~~127.~~137.        The Second DOT is a contract between Developer RE1 and the WCP

Fund and/or SF NU.

~~128.~~138.        There is an actual and justiciable controversy between Developer RE1 and

WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy,

which controversy is ripe for adjudication.

~~129.~~139.        It is settled law in the District that "equity abhors forfeitures ...… [and] so

indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association

of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

140.        There is an actual and justiciable controversy between Developer RE1, the WCP,

~~and~~ the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

~~130.~~141.        There is an actual and justiciable controversy between Developer RE1 and

the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First

4854-7315-1145.v1

Note, and the Second Note have unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) , the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

### COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

131.142.    Paragraphs 1–14132 of the Second First Amended Complaint are incorporated by reference.

132.143.    Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

24

144.   The Defendants unethical, outrageous, and illegal conduct, as described in this

Second ~~First~~ Amended Complaint, is causing irreparable harm to Developer RE1.  The Property

is unique, and Developer RE1 could lose its entire interest in the Property.

~~133.~~145.        Developer RE1 does not have an adequate remedy at law.

~~134.~~146.        If the Defendants are not enjoined, they will proceed to foreclose on the

Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY

Count V is Asserted Against Defendant Drazin Only

147.   Paragraphs 1-146 ~~39~~ of the Second Amended Complaint are incorporated by

reference.

148.   As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.   Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender ~~Defendants~~ and as Trustee under the First DOT and the

Second DOT.

25

4854-7315-1145.v1

150.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Lender Defendants.

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin

4854-7315-1145.v1

for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $31 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID

#### Count VI is Asserted Against All Defendants

156.    Paragraphs 1-15548 of the Second Amended Complaint are incorporated by reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

4854-7315-1145.v1

161.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the First Second Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 12, 2023March August 1—, 20243

/s/ James D. Sadowski

_____

James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

28

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this ~~First~~ Second Amended Complaint was filed

through eFileDC this 1st ~~12th~~ day of ~~January~~~~August~~ March, 202~~3~~4, and a notice of filing

should be sent by eFileDC to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

29

eFiled
03/01/2024 3:46:49 PM
Superior Court
of the District of Columbia

Case 25-10023-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 09:55:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part III)    Page 120 of 243    Page 1568 of 1716

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.*,

    *Defendants*.

2023-CAB-004260
Judge Milton Lee
Next Event – 03/25/24
Dispositive Motions Deadline

## CONSENT MOTION TO MODIFY THE SCHEDULING ORDER DEADLINES

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), and all of the

Defendants, jointly move this Court to modify the Scheduling Order pursuant to District of

Columbia Superior Court Rule 16(b)(7)(A). In support of this Consent Motion, the parties state

as follows:

1.     This case primarily involves a dispute between a developer, its lender, and

persons affiliated with the lender.

2.     The Court issued a Scheduling Order (Track II) at the Initial Scheduling

Conference on October 13, 2023.

3.     As the Initial Scheduling Conference, the parties alerted the Court to the fact that

they anticipated that they might attempt to mediate this dispute and the dispute in the related case

(2022-CAB-005965) via a private mediation with JAMS.

4.     Late last fall, the parties scheduled a private mediation before the Honorable

Richard Levy (Ret.), a private mediator with JAMS.

5.      The first in-person mediation session with JAMS was initially scheduled for December 19, 2023, but that first session was continued at the request of the mediator to January 9, 2024.

6.      The January 9, 2024 in-person mediation session did not result in a settlement, but was productive, so the parties agreed to attend a second mediation session on January 25, 2024.

7.      The second remote mediation session with JAMS did not result in a settlement, but the parties will continue to engage in settlement discussions.

8.      The Scheduling Order deadlines need to be reset as a result of the time that has passed while the parties attempted to settle this dispute through private mediation with JAMS.

9.      The parties did not complete any discovery in this case while they focused their resources and efforts at achieving a settlement during the private mediation.

10.     This is the parties' first request to modify the deadlines in the Scheduling Order.

11.     No trial date has been set in this case.

12.     The parties request that the Court set new Scheduling Order deadlines to allow this case to proceed on a schedule that is consistent with Track II.

13.     A copy of the existing Scheduling Order deadlines is shown in the screen shot below:

**Pretrial Deadlines**

| | |
|---|---|
| Exchange Lists of Fact Witnesses: | 12/12/2023 |
| Proponent's Rule 26(a)(2)(B) Report: | 12/19/2023 |
| Opponent's Rule 26(a)(2)(B) Report: | 01/11/2024 |
| Discovery Requests: | 01/25/2024 |
| Close of Discovery[1]: | 02/26/2024 |
| Filing Motions[2]: | 03/25/2024 |
| Dispositive Motions Decided: | 04/24/2024 |
| Mediation Date: | 05/09/2024 - 06/10/2024 |
| Pretrial Date[3]: | 07/08/2024-08/07/2024 |

2

Source:  Track II Scheduling Order dated October 13, 2023.

14.     No party will be prejudiced as a result of the relief that is requested in this consent

motion.

15.     Because there is good cause to extend the deadlines and no adverse or prejudicial

consequence to doing so, the parties' respectfully request that the deadlines in the Scheduling

Order be modified as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

16.     A proposed consent order is attached.

                                                Respectfully submitted,


Dated: March 1, 2024                    /s/ James D. Sadowski
                                        James D. Sadowski, Esq. # 446635
                                        Greenstein DeLorme & Luchs, P.C.
                                        801 17th Street, N.W., Suite 1000
                                        Washington, DC  20006
                                        Telephone:  (202) 452-1400
                                        Email:    jds@gdllaw.com
                                        *Counsel for Plaintiff*


Dated:  March 1, 2024                   /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq. #1034066
                                        The VerStandig Law Firm, LLC
                                        9812 Falls Road, #114-160
                                        Potomac, MD  20854
                                        Email:  mac@mbvesq.com
                                        *Counsel for Defendants*

                                        3

<u>C</u>ERTIFICATE OF <u>S</u>ERVICE

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DP CAPITAL d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants*.

2023-CAB-004260
Judge Milton Lee

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

Upon Consideration of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines ("Consent Motion") filed on February 28, 2024, and the entire record herein, it is this

_____ day of March, 2024, hereby

**ORDERED** that the Consent Motion is **GRANTED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

**SO ORDERED.**

_____
**Milton C. Lee**
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

     *Defendants*.

2022-CAB-005935
Judge Ebony M. Scott

## CONSENT MOTION TO MODIFY THE SCHEDULING ORDER DEADLINES

The Plaintiff, Developer RE1 LLC ("Developer RE1"), and all of the Defendants, jointly

move this Court to modify the Scheduling Order pursuant to District of Columbia Superior Court

Rule 16(b)(7)(A). In support of this Consent Motion, the parties state as follows:

1.    This case primarily involves a dispute between a developer, its lender, and

persons affiliated with the lender.

2.    The Court granted a prior consent motion to modify the Scheduling Order

deadlines on November 9 2023 to allow the parties to participate in a private mediation before

the Honorable Richard Levy (Ret.), a private mediator with JAMS.

3.    The first in-person mediation session with JAMS was initially scheduled for

December 19, 2023, but that first session was continued to January 9, 2024 at the request of the

mediator.

4.    The January 9, 2024 in-person mediation session did not result in a settlement, but

was productive, so the parties agreed to attend a second mediation session on January 25, 2024.

4854-5868-9704.v1

5.      The second remote mediation session with JAMS did not result in a settlement, but the parties will continue to engage in settlement discussions.

6.      The Scheduling Order deadlines need to be reset as a result of the time that has passed while the parties attempted to settle the dispute through private mediation with JAMS.

7.      The parties request that the Court set new Scheduling Order deadlines to allow this case to proceed on a schedule that is consistent with Track II.

8.      A copy of the existing Scheduling Order deadlines is shown in the screen shot below:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Discovery Requests | -- | 01/10/2024 |
| Close of Discovery | 11/10/2023 | 02/13/2024 |
| Filing Motions | 12/08/2023 | 03/13/2024 |
| Dispositive Motions Decided | 01/12/2024 | 04/15/2024 |
| Pretrial | To be set upon completion of Mediation | |

Source:  Order dated November 9, 2023.

9.      The trial date in this matter is not until September 9, 2024, so there remains sufficient time for the parties to re-engage in the discovery process, complete discovery, and file dispositive motions.   A list of discovery completed to date is attached as Exhibit A.

10.      No party will be prejudiced as a result of the relief that is requested in this consent motion.

11.      Because there is good cause to extend the deadlines and no adverse or prejudicial consequence to doing so, the parties' respectfully request that the deadlines be modified as follows:

2

|                                     | Current Date                            | Amended Date                            |
|-------------------------------------|-----------------------------------------|-----------------------------------------|
| Exchange Fact Witness Lists         | Expired                                 | 03/08/2024                              |
| Proponent's Rule 26(a)(2)(B) Report | Expired                                 | 03/15/2024                              |
| Opponent's Rule 26(a)(2)(B) Report  | Expired                                 | 04/12/2024                              |
| Discovery Requests                  | Expired                                 | 04/24/2024                              |
| Close of Discovery                  | Expired                                 | 05/24/2024                              |
| Dispositive Motions Deadline        | 03/13/24                                | 06/24/2024                              |
| Dispositive Motions Decided         | 04/14/2024                              | 07/24/2024                              |
| ADR - Mediation                     | Not set                                 | 07/25/2024 - 08/15/2024                 |
| Pretrial Date                       | To be set upon completion of ADR        | To be set upon completion of ADR        |
| Trial Readiness Hearing             | 09/06/2024                              | 09/06/24 [No Change]                    |
| Jury Trial                          | 09/09/2024                              | 09/09/24 [No Change]                    |

12.    A proposed consent order is attached.

Respectfully submitted,

Dated: March 1, 2024

/s/ James D. Sadowski
James D. Sadowski, Esq. # 446635
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Email:    jds@gdllaw.com
*Counsel for Plaintiff*

Dated:  March 1, 2024

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq. #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, MD  20854
Email:  mac@mbvesq.com
*Counsel for Defendants*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing

Consent Motion was filed using eFileDC, and a notice of filing should be sent electronically

through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

Superior Court of the District of Columbia
Civil Division

<table>
<tr><td>Developer RE1 LLC,<br><br>     *Plaintiff*,<br><br>v.<br><br>DP Capital, LLC d/b/a Washington<br>Capital Partners, *et al.*<br><br>     *Defendants*.</td><td>2022-CAB-005935<br>Judge Ebony M. Scott</td></tr>
</table>

## Consent Order Modifying the Scheduling Order

Upon Consideration of the Parties' Second Consent Motion to Extend the Scheduling

Order Deadlines ("Consent Motion") filed on February 28, 2024, and the entire record herein, it

is this _____ day of March, 2024, hereby

**ORDERED** that the Consent Motion is **GRANTED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

|  | Current Date | Amended Date |
|---|---|---|
| Exchange Fact Witness Lists | Expired | 03/08/2024 |
| Proponent's Rule 26(a)(2)(B) Report | Expired | 03/15/2024 |
| Opponent's Rule 26(a)(2)(B) Report | Expired | 04/12/2024 |
| Discovery Requests | Expired | 04/24/2024 |
| Close of Discovery | Expired | 05/24/2024 |
| Dispositive Motions Deadline | 03/13/24 | 06/24/2024 |
| Dispositive Motions Decided | 04/14/2024 | 07/24/2024 |
| ADR - Mediation | Not set | 07/25/2024 - 08/15/2024 |
| Pretrial Date | Not set | To be set upon completion of ADR |
| Trial Readiness Hearing | 09/06/2024 | 09/06/24 [No Change] |
| Jury Trial | 09/09/2024 | 09/09/24 [No Change] |

**SO ORDERED.**

_____
**Ebony M. Scott**
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

GDL Documents\4863-0161-3993.v1-3/1/24

Case 25-10308-ELG    Doc 1-2    Filed 09/04/25    Entered 09/04/25 19:05:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part III) Docket Entries 24 Page 1580 of 1716

# EXHIBIT A

## DISCOVERY COMPLETED TO DATE

| Description | Date Served |
|---|---|
| Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Objections and Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant WCP Fund I, LLC | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant WCP Fund I, LLC | July 8, 2023 |
| Notice of Deposition of Daniel Huertas | July 9, 2023 |
| Notice of Deposition of Russell Drazin | July 9, 2023 |
| WCP Fund I LLC's Requests for Production to Developer RE1 LLC | July 10, 2023 |
| WCP Fund I LLC's Request for Admission to Developer RE1 LLC | July 10, 2023 |
| Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | July 14, 2023 |
| Deposition (partial) of Daniel Huertas | July 19, 2023 |
| Developer RE1's Responses to WCP's Requests for Admissions | August 18, 2023 |

eFiled
03/01/2024 3:38:52 PM
Superior Court
of the District of Columbia

Case 25-10203-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 10:55:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) All Docket Entries   Page 1582 of 1716

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants.*

2023-CAB-004260
Judge Milton Lee

## STIPULATION OF DISMISSAL AS TO
## DEFENDANT SF NU, LLC ONLY

Pursuant to Rule 41(a)(1)(A)(i), the Clerk will please dismiss this matter as to the claims

filed by Plaintiff 423 Kennedy St Holdings LLC against one of the Defendants only, SF NU,

LLC,  with such dismissal to be without prejudice.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:  March 1, 2024

/s/ James D. Sadowski
James D. Sadowski, #446635
Alexandria J. Smith, #1781067
801 17th Street, NW, Suite 1000
Washington, DC  20006
Telephone:  (202) 452-1400
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff 423 Kennedy St Holdings
LLC*

4854-6174-9673.v1

THE VERSTANDIG LAW FIRM, LLC

Date:  March 1, 2024

/s/ Maurice B. VerStandig
Maurice B. VerStandig, #1034066
9812 Falls Road, #114-160
Potomac, MD  20854
Telephone: 301-444-4600
Email: mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC, WCP Fund I LLC, Daniel Huertas, and Russell Drazin*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 1, 2024, a true and correct copy of the foregoing Stipulation of Dismissal as to Defendant SF NU, LLC Only was filed using eFileDC, and a notice of filing should be sent electronically through eFileDC to all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff*, | |
| v. | 2023-CAB-004260 |
| | Judge Milton Lee |
| DP CAPITAL d/b/a WASHINGTON CAPITAL PARTNERS, ET AL. | |
| *Defendants*. | |

## CONSENT ORDER MODIFYING THE SCHEDULING ORDER

Upon Consideration of the Parties' Consent Motion to Extend the Scheduling Order

Deadlines ("Consent Motion") filed on March 1, 2024, and the entire record herein, it is this __4th__

day of March, 2024, hereby

**ORDERED** that the Consent Motion is **GRANTED**; and it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| | Current Date | Amended Date |
|---|---|---|
| Exchange Witness Lists | 12/12/2023 | 03/15/2024 |
| Proponent's Rule 26(a)(2)(B) Report | 12/19/2023 | 03/22/2024 |
| Opponent's Rule 26(a)(2)(B) Report | 01/11/2024 | 04/22/2024 |
| Discovery Requests | 01/24/2024 | 05/07/2024 |
| Close of Discovery | 02/26/2024 | 06/07/2024 |
| Dispositive Motions Deadline | 03/25/2024 | 07/09/2024 |
| Dispositive Motions Decided | 04/24/2024 | 08/09/2024 |
| ADR – Mediation Date | 05/09/2024 – 6/10/2024 | 08/26/2024 - 09/25/2024 |
| Pretrial Date | 07/08/2024 – 08/07/2024 | To be set upon completion of ADR |

**SO ORDERED.**

/s/

_____

Milton C. Lee, Jr.
Associate Judge

Copies via EfileDC  to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice B. VerStandig, Esq.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, | ) | September 6, 2024 at 2:00 p.m. |
| Defendants. | ) | |

## ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Upon consideration of the Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint, filed on March 1, 2024, and the entire record herein, it is this **7th day of March, 2024**, hereby:

**ORDERED** that the Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint is **GRANTED**; and it is further

**ORDERED** that the Second Amended Complaint, attached as Exhibit A, shall be accepted for filing.

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Page **1** of **2**

1656

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,*
*Daniel Huertas, & WCP Fund I LLC*

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

FILED
CIVIL ACTIONS BRANCH

MAR 07 2024

Superior Court
of the District of Columbia
Washington, D.C.

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC ("SF NU"). The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief. The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure. The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest. In

support of its Second Amended Complaint, Developer RE1 avers as follows:

4856-0691-6010.v1

## THE PARTIES

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.      The WCP controls the WCP Fund.

5.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

7.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

2

<u>STATEMENT OF FACTS APPLICABLE TO ALL COUNTS</u>

<u>The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"</u>

8.      In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.      But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

<u>The Ownership of Developer RE1, Its Purpose, and the Property.</u>

10.      Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.      Developer RE1 is partially owned by Mr. Negussie.

12.      Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.      The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4856-0691-6010.v1

1661

23.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.     The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29.     The maturity date for the First Note and the Second Note was December 23, 2022.

30.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

5

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

32.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

33.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

34.     As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.     By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.     As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

37.     On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

38.     That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

6

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

39.    On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

40.    On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

41.    As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

42.    As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.    On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

44.      SF NU is believed to also have a financial interest in the 2507 I Street Project.

45.      During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was

associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done," and that this Investor Lender "is very wealthy and will make life hard

for you", and "has now bought the notes" on Developer RE1 and another project financed by

WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the

honorable thing and have your investors buy 2507 I St to make things right" or have them "take

care of the $700,000" shortfall on the 2507 I Street Project.

46.      During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

47.      During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1

or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it

was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or

to be making threats to any other development project that Mr. Negussie was involved with.

8

48.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

49.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

50.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

51.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

52.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

53.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

54.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

55.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

9

56.    The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited

liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other

50% owner).

57.    The Defendants knew that there is no legal or other business relationship between

Developer RE1 and 2507 Holdings.

58.    The Defendants knew that 2507 Holdings does not control Developer RE1 and

that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two

entities are not affiliates of one another, and that the two entities have no business relationship

with each other.

59.    The Defendants knew that Developer RE1 has no interest in the 2507 I Street

Project

60.    The Defendants knew that Mr. Negussie did not have a controlling interest in

either 423 Kennedy or the 2507 I Street Project.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By
Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default
Interest" and By Threatening Developer RE1 With Foreclosure.

61.    Later that same day (December 8, 2022), Mr. Huertas followed through with his

threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development

project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas,

a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to

423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is

attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr.

Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.    The "Notice of Default" sent to Developer RE1 appears to reference the First

DOT, the First Note, the Second DOT, and the Second Note.

10

63.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP. The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

64.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

67.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent. The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

11

4856-0691-6010.v1

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements.  True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

72.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

74.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the Second DOT.

76.     As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

77.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

78.     The real reason that the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

.

13

4856-0691-6010.v1

79. The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and  another "commission" of 5.00% the proceeds of a foreclosure sale.

80. There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

81. As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82. The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

83. The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

84. The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.*, 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]  423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

14

85.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

87.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

15

89.     Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

90.     On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates." Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

91.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. Developer RE1 is currently waiting for an administrative hearing to be scheduled. A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

92.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

93.     Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

94. The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95. The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness. Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any
> of their affiliates. to Beneficiary.* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

96. The second alleged default by Developer RE1 claimed by Mr. Drazin (the

Property Tax Late Payment Claim) involves the late payments of property taxes by Developer

RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97. The property taxes of $16,522.89 was paid by Developer RE1 on October 16,

2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022. True

copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R,

respectively.

98. The late payment of taxes by Developer RE1 caused no harm whatsoever to the

WCP Fund.

99. The First DOT and the Second DOT contain language indicating that a

foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been

cured.

17

4856-0691-6010.v1

100.    No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

101.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102.    The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

104.    In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105.    The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

106.    Developer RE1 does not control 423 Kennedy and vice versa.

107.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

108.    There is also no common control of Developer RE1 and 423 Kennedy.

18

109.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

111.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

112.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

113.    The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

114.    There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

115.    If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

116.    The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally

19

and willfully disregarding Developer RE1's rights under the loan documents and under the law.
The Defendants' misconduct and improper lending practices also constitute outrageous conduct
further justifying an award of punitive damages.

117.  The Defendants knew that the First Note and the Second Note list a maturity date
of December 23, 2022.  The Defendants deliberately timed their improper interference with
Developer RE1's business relations -- right before a holiday period -- to make it close to
impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to
tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.  As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written
default notice that complies with the notice provisions of either the First Note, the First DOT, the
Second Note, or the Second DOT.

119.  On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer
RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure
Notice").

120.  On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he
resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to
resign as Trustee,

## COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

121.  Paragraphs 1-120 of the Second Amended Complaint are incorporated by
reference.

122.  Developer RE1 was in the process of closing on a refinancing of the existing
loans with Main Street Bank.

20

4856-0691-6010.v1

123.     The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124.     As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125.     As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126.     The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127.     Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

4856-0691-6010.v1

<div align="center">

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

128.    Paragraphs 1–127 of the Second Amended Complaint are incorporated by

reference.

129.    Every contract in the District of Columbia contains an implied covenant of good

faith and fair dealing.

130.    The First Note is a contract between Developer RE1 and the WCP Fund and/or SF

NU.

131.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or

SF NU.

132.    The Second Note is a contract between Developer RE1 and the WCP Fund and/or

SF NU.

133.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or

SF NU.

134.    Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have

breached the implied covenant of good faith and fair dealing contained in the First Note, the First

DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this

Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC

d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC: (a) any and all

damages (to be determined) that the Plaintiff has suffered will suffer as a result of the

Defendants' intentional interference with contracts (currently estimated to be $3 million; (b)

reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

22

</div>

## COUNT III
### DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135.    Paragraphs 1–134 of the Second Amended Complaint are incorporated by reference.

136.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

137.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

138.    There is an actual and justiciable controversy between Developer RE1 and WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

139.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

140.    There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

141.    There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

4856-0691-6010.v1

and the Second Note have unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a default by Developer RE1 after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) the First DOT, the Second DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

### COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

142. Paragraphs 1–141 of the Second Amended Complaint are incorporated by reference.

143. Unless enjoined, the Defendants will continue to improperly claim that Developer RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144. The Defendants unethical, outrageous, and illegal conduct, as described in this Second Amended Complaint, is causing irreparable harm to Developer RE1. The Property is unique, and Developer RE1 could lose its entire interest in the Property.

4856-0691-6010.v1

145.    Developer RE1 does not have an adequate remedy at law.

146.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

<div align="center">

COUNT V
BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

</div>

147.    Paragraphs 1-146 of the Second Amended Complaint are incorporated by

reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

150.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,

the Lender Defendants.

<div align="center">25</div>

4856-0691-6010.v1

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

4856-0691-6010.v1

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-and post-judgment interest.

<div align="center">

COUNT VI

DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE
TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants

</div>

156.    Paragraphs 1-155 of the Second Amended Complaint are incorporated by reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

161.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the

<div align="center">27</div>

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that

Defendant Drazin took while he had a conflict of interest must be either set aside or suspended

until Defendant Drazin bears his burden of proving that he was at all times faithful to his

fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and

the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second

Amended Complaint for which a jury trial is allowed under the law.


Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated:  March 1, 2024

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

28

4856-0691-6010.v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski

James D. Sadowski

29

1686

eFiled
3/8/2024 9:35:18 PM
Superior Court
of the
District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## DEFENDANTS' DISCLOSURE OF FACT WITNESSES

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he following list of persons (natural and legal) who may be called to testify at trial herein:

1. Mel Negussie
   c/o Counsel of Record for Developer RE1 LLC (the "Plaintiff")

2. The corporate designee of the Plaintiff
   c/o Counsel of Record for the Plaintiff

3. The records custodian of the Plaintiff
   c/o Counsel of Record for the Plaintiff

4. The corporate designee of 423 Kennedy St. Holdings LLC
   c/o Counsel of Record for the Plaintiff

5. The records custodian of 423 Kennedy St. Holdings LLC
   c/o Counsel of Record for the Plaintiff

6. The corporate designee of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

7. The records custodian of Brighton Capital, LLC
   c/o Counsel of Record for the Plaintiff

8. The corporate designee of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

9. The records custodian of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

10. Solomone Abebaw Desta
    4600 S Four Mile Run Dr.
    Apartment 227
    Arlington, Virginia 22204

11. Balakrishnarao V Sure
    14905 Capricorn Lane
    Charlotte, NC 28277

12. Naveen Vavilala
    3702 Brices Ford Ct
    Fairfax, VA 22033

13. Billy Freesmeier
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

14. Thomas Floyd
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

15. Patricia Clark
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

16. Joey Musmar
    2100 Reston Parkway Suite 400
    Reston, Virginia 20191

17. Hamza Wardere
    *Address Unknown*

18. Ghaith Musmar
    *Address Unknown*

19. Inas El Mezanen
    *Address Unknown*

20. The corporate designee of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

21. The records custodian of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

22. The records custodian of Bank of America, N.A.
    100 North Tryon Street
    Charlotte, North Carolina 28255

23. The records custodian of American Express Company
    28 Liberty Street
    42nd Floor
    New York, New York 10005

24. The records custodian of Citigroup Inc.
    288 Greenwich Street
    New York, New York 10007

25. The records custodian of BMW Financial Services NA, LLC
    300 Chestnut Ridge Road
    Woodcliff Lake, New Jersey 07677

26. The records custodian of Discover Financial Services
    2500 Lake Cook Road
    Riverwoods, Illinois 60015

27. The records custodian of HSBC Mortgage Services, Inc.
    1421 West Shure Drive
    Suite 100
    Arlington Heights, Illinois 60004

28. The records custodian of Pentagon Federal Credit Union
    7940 Jones Branch Drive
    McLean, Virginia 22102

29. The records custodian of JP Morgan Chase Bank, N.A.
    270 Park Avenue
    New York, New York 10017

30. Daniel Huertas
    c/o Undersigned Counsel

31. Christina Araujo
    c/o Undersigned Counsel

32. Russell Drazin
    c/o Undersigned Counsel

33. Jared Fausnaught
    c/o Undersigned Counsel

34. The records custodian of WCP Fund I LLC
    c/o Undersigned Counsel

35. The records custodian of DP Capital LLC
    c/o Undersigned Counsel

Dated: March 8, 2024

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 8th day of March 2024, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

eFiled
3/8/2024 7:56:11 PM
Superior Court
of the
District of Columbia

Superior Court of the District of Columbia
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: May 24, 2024
Close of Discovery

## PLAINTIFF'S LIST OF FACT WITNESSES

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, hereby submits its

List of Fact Witnesses. Developer RE1 anticipates that the following persons could be called as

witnesses at trial in Developer RE1's portion of the case:

1.     Melaku Negussie
    1629 K Street, NW, Suite 300
    Washington, DC 20006

2.     Daniel Huertas
    909 Chinquapin Road
    McLean, VA 22102

3.     Jared Fausnaught
    [current address unknown]

4.     Russell Drazin
    4400 Jenifer Street, NW, Suite 2
    Washington, DC 20015

5.     Greg R. Clucas
    [current address unknown]

6.     Greg Clucas, Jr.
    [current address unknown]

7.     Jason Shrensky
    [current address unknown]

8.      Christina Araujo
        [current address unknown]

9.      Leslie Calderas
        [current address unknown]

10.      Sara Fausnaught
        [current address unknown]

11.      Victoria (Tory) Junkins
        [current address unknown]

12.      Steve Sushner
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

13.      Karlen Blomquist
        [current address unknown]

14.      Charles Paret
        [address known to the Defendants]

15.      Darralyn D. Brown
        District Title
        1775 Eye Street, NW, Suite #560
        Washington, DC 20006

16.      Hailey Thomas
        [current address unknown]

17.      Cara Farley
        [current address unknown]

18.      Muhammad Bilal
        [current address unknown]

19.      Kenneth Welch
        [current address unknown]

20.      Michael Asheroff
        [current address unknown]

21.      Timothy L. Foster
        [current address unknown]

22.      Sandy DeAngelo
        [current address unknown]

4868-2924-0942.v1

23.     Custodian of Books and Records for DC Capital, LLC d/b/a
        Washington Capital Partners;

24.     Custodian of Books and Records for SF NU, LLC;

25.     Custodian of Books and Records for District Title;

26.     Custodian of Books and Records for WCP Fund I, LLC;

27.     Custodian of Books and Records for MainStreet Bank;

28.     James D. Sadowski, Esq.
        (as to the issue of reasonable attorney's fees and only if testimony
        is required)

29.     Any person designated by any other party in its List of Fact
        Witnesses.

Developer RE1 further reserves its right to note additional names of witnesses that are

discovered before or during the trial, for purposes or rebuttal and/or impeachment, that may be

needed to establish a foundation as to the admissibility of exhibits, and/or to designate experts in

accordance with the Scheduling Order issued in this case.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 8, 2024                    /s/ James D. Sadowski
                                         James D. Sadowski (No. 446635)
                                         Alexandria J. Smith (No. 1781067)
                                         801 17th Street, N.W., Suite 1000
                                         Washington, DC  20006
                                         Telephone: (202) 452-1400
                                         Email:    jds@gdllaw.com | ajs@gdllaw.com
                                         *Counsel for Plaintiff Developer RE1 LLC*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's List of Fact

Witnesses was served on March 8, 2024 using eFileDC, and a copy should be served by notice of

filing on all counsel of record in this case.

/s/ James D. Sadowski
James D. Sadowski

4

eFiled
3/13/2024 3:59:47 PM
Superior Court
of the District of Columbia

Case 2:25-1002 ... Doc 1.2 Filed 07/04/24 Entered 07/04/24 10:25:28 Desc
Exhibit B - All Pleadings And Docket Entries Part (A) Docket Entries 24 Page 1625 of 1716

**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

**Developer RE1 LLC**
_____
                                      Plaintiff
                    vs.
                                                    Case Number **2022 CAB 005935**

**SF NU, LLC**
_____
                                      Defendant

## SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**James D. Sadowski, #446635**
_____                                 _Clerk of the Court_
Name of Plaintiff's Attorney

**801 17th Street, NW, #1000**
_____                    By _____
Address                                                              Deputy Clerk
**Washington, DC  20006**
_____                                    March 19, 2024

**(202) 452-1400; ext. 5407**
_____                    Date _____
Telephone

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면,(202)879-4828로 전화주십시요    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

    IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                           Super. Ct. Civ. R. 4



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
DIVISIÓN CIVIL
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

**Developer RE1 LLC**
_____
Demandante
contra

Número de Caso: **2022 CAB 005935**

**SF NU, LLC**
_____
Demandado

### CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mi smo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficia o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

**James D. Sadowski, #446635**
_____
Nombre del abogado del Demandante

**801 17th Street, NW, #1000**
_____
Dirección
**Washington, DC 20006**
_____

**(202) 452-1400; ext. 5407**
_____
Teléfono

_SECRETARIO DEL TRIBUNAL_

Por: _____
Subsecretario

Fecha        March 19, 2024

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828로 전화주십시오         የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]        Super. Ct. Civ. R. 4

Case 25-10030-ELG   Doc 1-2   Filed 09/04/25   Entered 09/04/25 19:05:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part III)   Page 1627 of 1716

eFiled
3/15/2024 10:52:07 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

423 Kennedy St Holdings LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2023 CAB 004260
Judge Milton Lee

## **DEFENDANTS' DISCLOSURE OF FACT WITNESSES**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin"), by and through undersigned counsel, and furnish he following list of persons (natural and legal) who may be called to testify at trial herein:

1. Mel Negussie
c/o Counsel of Record for 423 Kennedy St Holdings LLC (the "Plaintiff")

2. The corporate designee of the Plaintiff
c/o Counsel of Record for the Plaintiff

3. The records custodian of the Plaintiff
c/o Counsel of Record for the Plaintiff

4. The corporate designee of Developer RE1 LLC
c/o Counsel of Record for the Plaintiff

5. The records custodian of Developer RE1 LLC
c/o Counsel of Record for the Plaintiff

6. The corporate designee of Brighton Capital, LLC
c/o Counsel of Record for the Plaintiff

7. The records custodian of Brighton Capital, LLC
c/o Counsel of Record for the Plaintiff

1

8. The corporate designee of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

9. The records custodian of NT Group LLC
   1629 K Street, NW
   Suite 300
   Washington, DC 20006

10. Solomone Abebaw Desta
    4600 S Four Mile Run Dr.
    Apartment 227
    Arlington, Virginia 22204

11. Balakrishnarao V Sure
    14905 Capricorn Lane
    Charlotte, NC 28277

12. Naveen Vavilala
    3702 Brices Ford Ct
    Fairfax, VA 22033

13. Billy Freesmeier
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

14. Thomas Floyd
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

15. Patricia Clark
    10089 Fairfax Boulevard
    Fairfax, Virginia 22030

16. Joey Musmar
    2100 Reston Parkway Suite 400
    Reston, Virginia 20191

17. Hamza Wardere
    *Address Unknown*

18. Ghaith Musmar
    *Address Unknown*

2

19. Inas El Mezanen
    *Address Unknown*

20. The corporate designee of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

21. The records custodian of NT-BANKERSBMSJV LLC
    1629 K Street, NW
    Suite 300
    Washington, DC 20006

22. The records custodian of Bank of America, N.A.
    100 North Tryon Street
    Charlotte, North Carolina 28255

23. The records custodian of American Express Company
    28 Liberty Street
    42nd Floor
    New York, New York 10005

24. The records custodian of Citigroup Inc.
    288 Greenwich Street
    New York, New York 10007

25. The records custodian of BMW Financial Services NA, LLC
    300 Chestnut Ridge Road
    Woodcliff Lake, New Jersey 07677

26. The records custodian of Discover Financial Services
    2500 Lake Cook Road
    Riverwoods, Illinois 60015

27. The records custodian of HSBC Mortgage Services, Inc.
    1421 West Shure Drive
    Suite 100
    Arlington Heights, Illinois 60004

28. The records custodian of Pentagon Federal Credit Union
    7940 Jones Branch Drive
    McLean, Virginia 22102

29. The records custodian of JP Morgan Chase Bank, N.A.
    270 Park Avenue
    New York, New York 10017

30. Daniel Huertas
    c/o Undersigned Counsel

31. Christina Araujo
    c/o Undersigned Counsel

32. Russell Drazin
    c/o Undersigned Counsel

33. Jared Fausnaught
    c/o Undersigned Counsel

34. The records custodian of WCP Fund I LLC
    c/o Undersigned Counsel

35. The records custodian of DP Capital LLC
    c/o Undersigned Counsel

Dated: March 15, 2024     Respectfully Submitted,

           /s/ Maurice B. VerStandig
           Maurice B. VerStandig, Esq.
           DC Bar #1034066
           The VerStandig Law Firm, LLC
           9812 Falls Road, #114-160
           Potomac, Maryland 20854
           Telephone: 301-444-4600
           Facsimile: 301-444-4600
           Electronic Mail: mac@mbvesq.com
           *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 15th day of March 2024, and a notice of filing should be served on all counsel

of record.

           /s/ Maurice B. VerStandig
           Maurice B. VerStandig, Esq.

eFiled
3/15/2024 10:41:44 PM
Superior Court
of the District of Columbia

## Superior Court of the District of Columbia
### Civil Division

423 KENNEDY ST HOLDINGS LLC,

     *Plaintiff*,

v.

DP CAPITAL D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.*,

     *Defendants*.

2023-CAB-004260
Judge Milton Lee
Next Event: 06/07/2024
Discovery Closed Deadline

## PLAINTIFF'S LIST OF FACT WITNESSES

The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), by counsel, hereby

submits its List of Fact Witnesses. 423 Kennedy anticipates that the following persons could be

called as witnesses at trial in 423 Kennedy's portion of the case:

1. Melaku Negussie
   1629 K Street, NW, Suite 300
   Washington, DC 20006

2. Bala Sure
   [address known to Defendants]

3. Venu Chidarala
   2781 Middleton Farm Court
   Herndon VA 20171

4. Daniel Huertas
   909 Chinquapin Road
   McLean, VA 22102

5. Jared Fausnaught
   [current address unknown]

6. Russell Drazin
   4400 Jenifer Street, NW, Suite 2
   Washington, DC 20015

7.     Greg R. Clucas
       [current address unknown]

8.     Greg Clucas, Jr.
       [current address unknown]

9.     Christina Araujo
       [current address unknown]

10.    Leslie Calderas
       [current address unknown]

11.    Sara Fausnaught
       [current address unknown]

12.    Victoria (Tory) Junkins
       [current address unknown]

13.    Steve Sushner
       District Title
       1775 Eye Street, NW, Suite #560
       Washington, DC 20006

14.    Karlen Blomquist
       [current address unknown]

15.    Charles Paxton Paret
       343 First Street
       Berryville, VA  22611

16.    Darralyn D. Brown
       District Title
       1775 Eye Street, NW, Suite #560
       Washington, DC 20006

17.    Billy Freesmeier
       Senior Vice President, Mainstreet Bank
       [current address unknown]

18.    Esther Sangiovanni
       MainStreet Bank
       [current address unknown]

19.    Thomas Floyd
       MainStreet Bank
       [current address unknown]

2

1702

20.     G.F. Joey Musmar
        MillerMusmar
        2100 Reston Parkway – Suite 400
        Reston, VA  20191

21.     Hamza Wardere
        [current address unknown]

22.     Inas Jamal Hussein El Mezanen
        [current address unknown[]

23.     Hailey Thomas
        [current address unknown]

24.     Cara Farley
        [current address unknown]

25.     Muhammad Bilal
        [current address unknown]

26.     Kenneth Welch
        [current address unknown]

27.     Michael Asheroff
        [current address unknown]

28.     Sandy DeAngelo
        10089 Fairfax Boulevard
        Fairfax, VA  22030

29.     Chase Pike
        Cushman & Wakefield, Valuation & Advisory Group
        2101 L Street NW - Suite 700
        Washington, D.C. 20037

30.     Richard Lightner, Construction Draw Manager, WCP
        [current address unknown]

31.     Joska Gal, Asset Manager, WCP
        [current address unknown]

32.     Giselle Bonzi, President, WCP
        [current address unknown]

33.     Custodian of Books and Records for DC Capital, LLC d/b/a
        Washington Capital Partners

34.     Custodian of Books and Records for CL Group, LLC

3

35.  Custodian of Books and Records for Cushman & Wakefield of
     Washington, D.C., Inc., Valuation & Advisory Group
     2101 L Street NW - Suite 700
     Washington, D.C. 20037

36.  Custodian of Books and Records for E3 Developers, LLC

37.  Custodian of Books and Records for District Title

38.  Custodian of Books and Records for WCP Fund I, LLC

39.  Custodian of Books and Records for MainStreet Bank
     10089 Fairfax Boulevard
     Fairfax, VA  22030

40.  James D. Sadowski, Esq.
     (as to the issue of reasonable attorney's fees and only if testimony
     is required)

41.  Any person designated by any other party in its List of Fact
     Witnesses.

       423 Kennedy further reserves its right to note additional names of witnesses that are

discovered before or during the trial, for purposes or rebuttal and/or impeachment, that may be

needed to establish a foundation as to the admissibility of exhibits, and/or to designate experts in

accordance with the Scheduling Order issued in this case.

                    Respectfully submitted,

                    GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 15, 2024         /s/ James D. Sadowski
                    James D. Sadowski (No. 446635)
                    Alexandria J. Smith (No. 1781067)
                    801 17th Street, N.W., Suite 1000
                    Washington, DC  20006
                    Telephone: (202) 452-1400
                    Email:   jds@gdllaw.com | ajs@gdllaw.com
                    *Counsel for Plaintiff 423 Kennedy St Holdings*
                    *LLC*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's List of Fact

Witnesses was served on March 15, 2024 using eFileDC, and a copy should be served by notice

of filing on all counsel of record in this case.

/s/ James D. Sadowski_____
James D. Sadowski

5

4884-9086-1742.v1

eFiled
4/2/2024 11:03:28 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 8, and in answer to the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), as well as the assertion of affirmative defenses and a counterclaim thereto, state as follows:

### Answer

1.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants generally deny all allegations in the Complaint except for those specifically admitted herein.

2.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(5), the Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations set forth in paragraph 1 of the Complaint.

3.    Pursuant to District of Columbia Rule of Civil Procedure 8(b)(3), the Defendants admit the allegations set forth in paragraphs 2-3, 7-8, 10-15, 18, 21, 24, 29, 32-33, 37-38, 44, 55-56, 62, 64, 67-71, 75, 79, 88, 95, 96-97, 119-120, 130-133, and 136-137 of the Complaint.

1

4.      The Defendants generally deny that "money is the root of all evil," as alleged on page 14 of the Complaint.

5.      Paragraphs 121, 128, 135, 142, 147 and 156 of the Complaint do not set forth contentions that call for an admission or denial.

6.      Various paragraphs in the Complaint set forth assertions that are contentions of law; an answer is an improper vehicle to admit or deny assertions of law. To the extent a further answer is required, the Defendants deny the same.

7.      Certain allegations in the Complaint speculate about the existence of privileged attorney/client communications; the Defendants do not specifically answer those allegations herein but, instead, generally note that (i) they will not waive the attorney/client privilege; (ii) the invocation of such privilege ought not be construed as an admission of any of the allegations in the Complaint; and (iii) to the extent necessary to preserve said privilege, the Defendants generally deny the subject allegations.

### Affirmative Defenses

1.      The Complaint fails to state a claim for which relief may be granted.

2.      The plain language of the promissory notes and deeds of trust appended to the original Complaint control the relationship between the Plaintiff and the Defendants.

3.      The Complaint fails to plead damages in a legally cognizable manner.

4.      The Plaintiff is barred from recovering herein by the economic loss rule.

5.      Injunctive relief is not a stand-alone cause of action in the District of Columbia.

6.      The Plaintiff is barred from recovering herein by the doctrine of unclean hands.

7.      The Plaintiff is barred from recovering herein by the doctrine of setoff.

8.      The Plaintiff is barred from recovering herein by the doctrine of recoupment.

9.        The Plaintiff is barred from recovering herein by the doctrine of first breach.

## COUNTERCLAIM

Comes now WCP Fund I LLC ("WCP" or the "Counter-Plaintiff"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 13, and as and for its counterclaim (the "Counterclaim") against Developer RE1 LLC (the "RE1" or the "Counter-Defendant") state as follows:

### Parties

1.        WCP is a Delaware limited liability company.

2.        Upon information and belief, the Counter-Defendant is a District of Columbia limited liability company.

### Jurisdiction and Venue

3.        This Honorable Court enjoys jurisdiction over the Counter-Defendant inasmuch as (i) the Counter-Defendant is organized under the laws of the District of Columbia; (ii) this Counterclaim concerns the Counter-Defendant borrowing funds in connection with its ownership of real property in the District of Columbia; and (iii) by filing the Complaint, the Counter-Defendant has voluntarily subjected itself to the personal jurisdiction of this Honorable Court.

4.        This Honorable Court is an appropriate venue for the Counterclaim inasmuch as the Counterclaim concerns the same subject matter as the Complaint.

### General Allegations: The WCP Promissory Note

5.        On or about December 23, 2021, the Counter-Defendant borrowed $3,579,000.00 (the "Loan Principal") from WCP, with said debt being evidenced by a promissory note (the "WCP Promissory Note"). *See* Promissory Note, attached to original Complaint as Exhibit B.

6.     Pursuant to the WCP Promissory Note, the Counter-Defendant was to repay the Loan Principal, together with interest thereupon, not later than December 23, 2022 (the "Maturity Date").

7.     Pursuant to the WCP Promissory Note, the Counter-Defendant was also to pay a late charge, equal to ten percent (10%) of the unpaid obligation due under the WCP Promissory Note, should a payment thereunder be more than five days late.

8.     Pursuant to the WCP Promissory Note, the Counter-Defendant was also to pay all "reasonable attorneys' fees" incurred by WCP in connection with its efforts to collect the Counter-Defendant's obligations under the WCP Promissory Note.

9.     The Counter-Defendant failed to make various payments under the terms of the WCP Promissory Note – sometimes failing to make such payments timely and sometimes failing to make such payments at all – and, as such, incurred certain late charges.

10.    The Counter-Defendant failed to pay the full sum due and owing, under the WCP Promissory Note, at maturity, and has failed to pay such sum, in part or whole, at all times since.

11.    As of the date of the filing of this Counterclaim, the Counter-Defendant is obligated to WCP, pursuant to the terms of the WCP Promissory Note, in the sum of $5,044,012.96, with said sum being comprised of (i) $3,579,000.00 in principal; (ii) $289,933.80 in ordinary interest; (iii) $1,111,876.00 in default interest; (iv) a default obligation of $357,900.00 in late fees; and (v) a credit of $297,082.84 for interest paid, with (vi) additional monies being due and owing pursuant to the accrual of attorneys' fees and suit costs incurred in connection with this matter.

### Count I – Breach of Contract

12.    WCP repeats and realleges each and every paragraph of this Counterclaim, as though fully set forth herein.

4

13. The WCP Promissory Note is a valid and binding contract between WCP and the Counter-Defendant.

14. WCP performed fully under the agreement by loaning the indicated sum to the Counter-Defendant.

15. The Counter-Defendant has repeatedly breached each agreement by (i) failing to make timely payments; (ii) failing to make certain payments at all; and (iii) failing to pay the obligations thereunder at maturity.

16. WCP has been damaged by these breaches in a sum equal to the monies bargained for under the express terms of the promissory note.

WHEREFORE, WCP respectfully prays this Honorable Court (i) enter judgment in favor of WCP, and against the Counter-Defendant, in the sum of $5,044,012.96, plus pre-judgment interest accruing at the rate of $2,386.00 per day; (ii) award WCP its reasonable and necessary attorneys' fees and suit costs incurred in connection with this action, pursuant to the terms of the promissory notes; and (iii) afford such other and further relief as may be just and proper.


Dated: April 2, 2024                          Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 2nd day of April 2024, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

6

eFiled
4/11/2024 8:28:35 AM
Superior Court
of the District of Columbia

Case 25-10020-ELG    Doc 1-2    Filed 09/04/24    Entered 09/04/24 19:25:28    Desc
Exhibit B - All Pleadings And All Docket Entries (Part I) All Docket Entries   Page 1642 of 1716

## AFFIDAVIT OF SERVICE

| Case:<br>2022-CAB-005935 | Court:<br>Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County:<br>District of Columbia, DC | | Job:<br>10660807 |
|---|---|---|---|---|
| Plaintiff / Petitioner:<br>Developer RE1 LLC | | Defendant / Respondent:<br>WCP Fund, I, LLC, et al. | | |
| Received by:<br>CPI - Columbia Process and Investigative Services LLC | | For:<br>Greenstein DeLorme & Luchs, P.C. | | |
| To be served upon:<br>SF NU, LLC, c/o Registered Agents, Inc. | | | | |

I, William Alexander, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** SF NU, LLC, c/o Registered Agents, Inc., 1209 Mountain Road Place Northeast Suite R, Albuquerque, NM 87110

**Manner of Service:** Personal Service on Registered Agent

**Documents:** Summons , First Amended Complaint, Exhibits, Second Amended Complaint, Complaint with Exhibits

**Additional Comments:**
On March 26, 2024 at 3:30 PM, I personally served the Defendant, SF NU, LLC c/o their Registered Agent, Registered Agents, Inc., the referenced documents at the referenced address, by personally serving Intake Specialist, Rene Mocker, who is authorized to accept service on behalf of the Defendant.

Rene Mocker is a White Male with brown/gray hair.  Mr. Mocker is approximately 5'8", 140 pounds and in his 40's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to best of knowledge, information, and belief.

_William Alexander_                     04/08/2024
William Alexander                          Date

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

*Subscribed and sworn to before me by the affiant who is personally known to me.*

_____
Notary Public

4/8/2024                              5/8/2024
Date                          Commission Expires

STATE OF NEW MEXICO
NOTARY PUBLIC
DUSTIN L. MILLS
Commission # 1128727
My Comm. Exp.   May 18, 2024



26 Mar 2024

Tuesday

03:30 PM
35.0915031,
-106.5581131

eFiled
4/11/2024 8:28:35 AM
Superior Court
of the District of Columbia

Case 25-10020-ELG   Doc 1-3   Filed 09/04/24   Entered 09/04/24 10:35:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) Docket Entries   Page 1644 of 1716

## AFFIDAVIT OF SERVICE

| Case: 2022-CAB-005935 | Court: Superior Court of the District of Columbia-Civil Division-Civil Actions Branch | County: District of Columbia, DC | Job: 10660824 |
|---|---|---|---|
| Plaintiff / Petitioner: Developer RE1 LLC | | Defendant / Respondent: WCP Fund, I, LLC, et al. | |
| Received by: CPI - Columbia Process and Investigative Services LLC | | For: Greenstein DeLorme & Luchs, P.C. | |
| To be served upon: SF NU, LLC, c/o Jason Shrensky, Managing Member | | | |

I, Brandi Eberhart, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** SF NU, LLC, c/o Jason Shrensky, 9300 Marseille Drive, Potomac, MD 20854
**Manner of Service:** Personal Service on Jason Shrensky, Managing Member
**Documents:** Summons , First Amended Complaint, Exhibits, Second Amended Complaint

**Additional Comments:**
On March 30, 2024 at 7:06 PM, I personally served the Defendant, SF NU, LLC, c/o Jason Shrensky, Managing Member,  the referenced documents at the referenced address.

Jason Shrensky is a Caucasian Male with grey hair.  Mr. Shrensky is approximately 6'0", 170 pounds, and in his 50's.

I do solemnly declare and affirm under the penalty of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief.

Brandi Eberhart                     Date  4/10/24

CPI - Columbia Process and Investigative Services LLC
5406 Connecticut Avenue, N.W. Suite 108
Washington, DC 20015

Subscribed and sworn to before me by the affiant who is personally known to me.

Notary Public

Date  04/10/2024          Commission Expires  02/04/2028

MARIA MAGDALENA GARCIA
Notary Public - State of Maryland
Montgomery County
My Commission Expires Feb 4, 2028

4/2/24, 9:53 AM

Case 25-10023-ELG   Doc 1-32   Filed 03/07/24   Entered 03/07/24 09:55:23   Desc
Exhibit B - All Pleadings and All Docket Entries Part II   Page 1645 of 1716



Add a Caption



eFiled
4/21/2024 11:53:53 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

    Plaintiff,

v.

    Case No. 2022 CAB 005935
    Judge Ebony Scott

DP Capital, LLC, et al.

    Defendants.

---

## MOTION TO DISMISS

Comes now SF NU, LLC ("SNL"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(7), and moves to dismiss the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof states as follows:

### I.    Introduction

This lawsuit concerns the Plaintiff's efforts to preempt the foreclosure of two deeds of trust, based upon a series of legally-unprecedented theories and factually-unmoored allegations. SNL has been added as a party to this case for reasons that are less-than-clear, other than that it appears the Plaintiff (i) believes suit must be brought against the holder of one of the two notes; and (ii) posits some broad, vague, and factually-unsupported theory of tort liability against SNL.

Notwithstanding the Plaintiff's wholesale failure to plead any allegations against SNL, aside from those generically lobbed at a grouping of parties of which the Plaintiff asserts SNL to be a part, SNL will preserve for another day the issues centered on the Plaintiff's failure to state a claim for which relief may be granted. For present purposes, however, the other aforementioned

1

issue looms large: the Plaintiff has failed to join an indispensable party to this litigation and, as such, can proceed no further.

As discussed in greater detail *infra*, the promissory note once held by SNL is now held by JPK NewCo LLC ("JNL"), a District of Columbia limited liability company. Insofar as JNL owns the note, and holds the rights arising under the correlative deed of trust, the joinder of JNL as a party to this suit is required under governing law.

## II.    Argument: The Plaintiff Has Failed to Join an Indispensable Party

On April 16, 2024, SNL assigned the deed of trust it formerly held, secured by the Plaintiff's real estate asset, to JNL. The subject assignment was recorded amongst the land records of the District of Columbia the following day. *See* Assignment of Deed of Trust, attached hereto as Exhibit A. Upon that assignment, JNL – being the current holder of the deed of trust and promissory note underlying this case – became a necessary party hereto.

The rules of this Honorable Court provide that "failure to join a party under Rule 19" is a defense properly raised by motion. D.C. R. Civ. P. 12(b)(7). Rule 19, in turn, provides, *inter alia*:

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

D.C. R. Civ. P. 19(a)(1).

2

JNL is subject to service of process, having a registered agent within the District of Columbia. And the joinder of JNL will not deprive this Honorable Court of subject matter jurisdiction as JNL's existence as a District of Columbia limited liability company subjects the entity to the general jurisdiction of this Honorable Court. D.C. Code § 13-422.

Here, the Plaintiff seeks to enjoin foreclosure of the deed of trust now held by JNL. It accordingly follows that such relief cannot be afforded without JNL being made a party hereto. Equally, JNL certainly claims an interest in the property that is the subject of this action and, should JNL not be joined hereto, this litigation would impede JNL's ability to protect that interest.

To be sure, SNL does not object to the Plaintiff being afforded leave to amend to join JNL as a defendant. And, in so amending, SNL is hopeful the Plaintiff will delineate what exactly the Plaintiff believes SNL has done to warrant being sued, as such is at-best unclear on the face of the current iteration of the pleading. For instant purposes, however, it is clear this suit cannot proceed in the absence of JNL, and dismissal is thusly warranted.

### III.    Conclusion

WHEREFORE, SF NU, LLC respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.


Dated: April 21, 2024                                     Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for SF NU, LLC*

3

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 21st day of April 2024, and a notice of filing should be served on all counsel of record.

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig, Esq.

4

Exhibit A

Doc #: 2024015623
04/17/2024 11:32 AM

When Recorded Return To:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **SF NU, LLC** ("Assignor"), a New Mexico limited liability company, having an office located at 1455 Research Boulevard, Suite 510, Rockville, MD 20850 hereby assigns and transfers to **JPK NEWCO LLC** ("Assignee"), a District of Columbia limited liability company, having an office located at 8401 Greensboro Drive, Suite 960, McLean, VA 22102, its successors and assigns, Assignor's rights, title and interests in and to that certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 among the land records of the District of Columbia from Developer RE1 LLC, a District of Columbia limited liability company, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, a Delaware limited liability company, as beneficiary, as well as all other documents memorializing, securing, or relating to the indebtedness secured by the Deed of Trust.

The real property and improvements thereon (if any) intended to be encumbered by the Deed of Trust is as follows:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof, the above-described land is designated in the Records of the Office of Tax and Revenue for assessment and taxation purposes as **Lot 0138** in **Square 3389**.

**IN WITNESS WHEREOF**, the undersigned has executed this Assignment of Deed of Trust as of the 15th day of April, 2024.

**SF NU, LLC,**
a New Mexico limited liability company

By: _____

Name: Jason Shrensky

Title: Manager

## ACKNOWLEDGEMENT

Rockville, MD

Mulgomery County

:
:      ss:
:

I HEREBY CERTIFY that on this _16_ day of _APRIL 2024_, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared **Jason Shrensky**, and acknowledged himself to be the Manager of **SF NU, LLC**, a New Mexico limited liability company, and acknowledged that he, being authorized so to do, executed the foregoing instrument in the aforesaid capacity for the purposes therein contained.

IN WITNESS MY Hand and Notarial Seal.

_____(SEAL)

NOTARY PUBLIC

My Commission Expires:

_____

**JEFFREY ROSENBLOOM**
Notary Public – State of Maryland
My Commission Expires Sept. 10, 2024

- 2 -

**Doc #: 2024035623**
**Filed & Recorded**
**04/17/2024 11:32 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      **$25.00**
  **SURCHARGE**      **$6.50**
**TOTAL:**      **$31.50**

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**[PROPOSED] ORDER**

Upon consideration of the Motion to Dismiss (the "Motion") filed by SF NU, LLC, any opposition of the plaintiff herein thereto, the authorities cited in the Motion, and the record herein, it is, this _____ day of _____, 2025, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the above-captioned matter be, and hereby is, DISMISSED WITHOUT PREJUDICE, with the plaintiff having 21 days from the date of this order to file a third amended complaint; should the plaintiff fail to do so, this case shall be DISMISSED WITH PREJUDICE without further order of this court.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

eFiled
4/23/2024 4:59:30 PM
Superior Court
of the
District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.*,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:   05/24/24
Proposed Close of Discovery

## PLAINTIFF DEVELOPER RE1 LLC'S MOTION TO DISMISS DEFENDANT WCP FUND I LLC'S COUNTERCLAIM

The Plaintiff Developer RE1 LLC ("Developer RE1"), by counsel, hereby moves to dismiss the Counterclaim asserted against Developer RE1 in the Answer, Affirmative Defenses, and Counterclaim (the "Second Answer") filed on April 2, 2024.  In the Second Answer, Defendant WCP Fund I, LLC (the "WCP Fund") asserted a Counterclaim against Developer RE1 for breach of contract -- a promissory note that was attached to the Complaint as Exhibit B.  The Counterclaim should be dismissed as untimely under D.C. Super. Ct. Civ. Rule 13 because it is a compulsory counterclaim that the WCP Fund did not file until almost a year after the due date.

I.    FACTS AND PROCEDURAL HISTORY

    This is a dispute involving multiple loan documents and a lender's intentional sabotage of a refinancing of those loan documents by the borrower -- Developer RE1.  Developer RE1 filed its Complaint on December 16, 2022, followed by a First Amended Complaint on January 12,

2023.[1]  The initial Defendants were DP Capital LLC, the WCP Fund, Daniel Huertas, and

Russell Drazin (the "Defendants"), who responded to the First Amended Complaint by filing a

Motion to Dismiss on January 26, 2023.  Developer RE1 filed an Opposition to the Motion to

Dismiss on February 16, 2023.  At the Initial Scheduling Conference on March 24, 2023, the

Court orally denied the Motion to Dismiss, and that decision was followed up by an Order on

April 7, 2023.  The Defendants filed an untimely Answer to the First Amended Complaint on

June 24, 2023 ("Initial Answer").[2]

Various motions have been filed and numerous orders have been entered since the filing

of the Initial Answer.  Developer RE1 filed an Emergency Motion for a Temporary Restraining

Order to Prevent an Imminent Foreclosure Sale on July 11, 2023, and Defendants filed an

Opposition thereto.  The WCP Fund filed an Opposed Motion for Protective Order to Prevent

Plaintiff from Deposing Defendants' Counsel on July 17, 2023, and Developer RE1 filed an

Opposition in response.  The parties filed a Consent Motion to Extend the Scheduling Order

Deadlines on March 1, 2024.

On March 1, 2024, Developer RE1 filed an Unopposed Motion for Leave to File a

Second Amended Complaint.  The Court granted that motion and the Second Amended

Complaint was accepted for filing on March 7, 2024.  The Second Amended Complaint did not

assert any new or amended claims against the WCP Fund, rather it: (1) added SF NU, LLC as a

Defendant; (2) added a claim for breach of fiduciary duty against Mr. Drazin; and (3) increased

the damages that had initially been estimated.  At no point prior to April 2, 2024, however, did

---

[1]    The First Amended Complaint corrected a few typographical errors in four (4) paragraphs of
the Complaint that were missed during the review process when the Complaint was filed on a rush
basis.

[2]    Pursuant to Rule 12, Defendants had fourteen (14) days to file an answer after the Court
denied the Motion to Dismiss on April 7, 2023. *See* Super. Ct. Civ. R. 12(A)(4)(a).

4876-0032-7096

the WCP Fund either file a counterclaim or a motion for leave to file a counterclaim after the deadline had expired.

On April 2, 2024, the Defendants filed the Second Answer, which for the first time included a Counterclaim.  The WCP Fund now seeks to assert a compulsory counterclaim filed -- almost one year after the deadline to do so has expired.  The Counterclaim is based upon amounts allegedly due under a promissory note, which note the WCP Fund admits was attached to the original Complaint  *See* Answer at 3, Counterclaim ¶ 4  (confirming that the Counterclaim is based upon "the WCP Promissory Note" that was attached to the Complaint as Exhibit B).

## II.    LEGAL ARGUMENT

Pursuant to Rule 13, a pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim:  (i) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (ii) does not require adding another party over whom the court cannot acquire jurisdiction.  *See* Super. Ct. Civ. R. 13(a).

A compulsory counterclaim must be filed at the time of the filing of the appropriate pleading such as an answer or it is lost forever.  *Bell v. First Investors Servicing Corp.*, 256 A.3d 246, 254 n.6 (D.C. 2021).  A compulsory counterclaim is one that arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.  *See Nat'l Hous. P'ship v. Mun. Capital Appreciation Partners 1, L.P.*, 935 A.2d 300, 321 n.62 (D.C. 2007); *see also* Super. Ct. Civ. R. 13(a).  The breach of contract claim asserted by the WCP Fund plainly arises out of one of the same transactions or occurrences involved in the Complaint, namely, the First Commercial Deed of Trust Note between the WCP Fund and Developer RE1

3

that was attached to the Complaint as Exhibit B. The Counterclaim itself admits that it is a compulsory counterclaim. *See* Counterclaim ¶ 5 ("This Honorable Court is an appropriate venue for the Counterclaim inasmuch as *the Counterclaim concerns the same subject matter as the Complaint*.") (italic emphasis added). Because the WCP Fund's Counterclaim is a compulsory one, the time for the WCP Fund to assert it was at the time that its appropriate responsive pleading was to be filed -- namely, twenty-one (21) days after the First Amended Complaint was filed (or fourteen (14) days after the Court denied the Motion to Dismiss. The WCP Fund also did not file any motion for leave to file a counterclaim against Developer RE1 before filing the Counterclaim. As a result, the Counterclaim is untimely and is not properly before the Court, so it should be dismissed for that reason.

## III.  CONCLUSION

For the foregoing reasons, Developer RE1 requests that the Court dismiss the WCP Fund's Counterclaim as untimely under Rule 13. Developer RE1 reserves its right to seek to have the Counterclaim dismissed on the merits if and when the Counterclaim is properly before the Court.

<div align="right">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated:  April 23, 2024

/s/ Alexandria J. Smith
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com | ajs@gdllaw.com | sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Motion to Dismiss Defendant WCP

Fund I  LLC's Counterclaim was served by the Court's electronic filing system this 23rd day of

April 2024, and a notice of filing should be served on all counsel of record.

<div align="right">
/s/ Alexandria J. Smith
Alexandria J. Smith
</div>

4876-0032-7096

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *et al.*,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  05/24/24
Proposed Close of Discovery

## [PROPOSED] ORDER

UPON CONSIDERATION of Plaintiff's Motion to Dismiss Defendant WCP Fund I

LLC's Counterclaim ("Motion"), any opposition, and any reply thereto, for the reasons stated in

the Motion, it is this _____ day of _____, 2024, hereby

**ORDERED** that the Motion is **GRANTED**; and it is

**FURTHER ORDERED**, that the Counterclaim filed by the WCP Fund I, LLC against

Developer RE1, LLC on April 2, 2024 is dismissed.

**SO ORDERED.**

_____
**Judge Ebony Scott**
Associate Judge

6

Copies to counsel or record via eFileDC.

James D. Sadowski, Esq.
Alexandira J. Smith, Esq.
Spencer B. Ritchie, Esq.
Maurice VerStandig, Esq.

4876-0032-7096

eFiled
5/6/2024 8:58:44 PM
Superior Court
of the
District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

  *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

  *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Trial Readiness Hearing
Date: September 6, 2024

## OPPOSITION TO DEFENDANT SF NU, LLC'S MOTION TO DISMISS

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, submits its

Opposition to the Motion to Dismiss ("Motion") filed by Defendant SF NU, LLC ("SNL"). SNL

asserts that JPK NewCo LLC ("JNL") is an indispensable party, and, therefore, the Court should

dismiss the Complaint against SNL. According to the Motion, SNL did not have any role with

respect to the loan documents at issue in this case until *after* the Second Amended Complaint

was filed, so it was impossible for Developer RE1 to name SNL as a defendant. For that reason

alone, the Motion should be denied. In further support of its Opposition, Developer RE1 states

as follows:

I.    THE FACTS IN THE SECOND AMENDED COMPLAINT[1]

Developer RE1 owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389

(the "Property"). Compl. ¶ 10.[2] Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 11.

---

[1]    Although the Court is already familiar with the facts as a result of the hearing held on Developer
RE1's Motion for a Temporary Restraining Order, Developer RE1 has included an outline of those
facts again for ease of reference since that hearing took place several months ago.

[2]    All "Compl." references are to the Second Amended Complaint filed on March 1, 2024.

4861-3174-1371.v3

The five defendants in this case are:  DP Capital, LLC, a company that uses the trade name
"Washington Capital Partners" ("WCP"); the WCP Fund I, LLC ("WCP Fund"), a company that
lends money in the District and is controlled by the WCP; Daniel Huertas ("Mr. Huertas"), an
individual that controls the WCP; SNL, a company that lends money in the District, and Russell
Drazin ("Mr. Drazin"), counsel to the WCP and the WCP Fund and the Trustee under two deeds
of trust.  *Id*. ¶¶ 2-7.

On December 23, 2021, the WCP helped Developer RE1 obtain an acquisition finance
loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 15-16.  As part of that
refinancing, Developer RE1 signed the following documents:

(1)      a Deed of Trust (the 'First DOT") for the Property that named the WCP
         Fund as Beneficiary and Mr. Drazin, as Trustee;

(2)      a Commercial Deed of Trust Note (the "First Note") in the amount of
         $3,579,000.00, as "Borrower", in favor of the WCP Fund;

(3)      a second Deed of Trust ("Second DOT") for the Property that also named
         the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

(4)      a second Commercial Deed of Trust Note (the "Second Note") in the
         amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 15, 18, 21, and 24 (collectively the "loan documents").  The loan documents were form
documents prepared by the WCP that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 16-17,
19-20, 22-23, and 25-26.  The loan documents provided security for the construction financing
loans that Developer RE1 needed to develop the Property.  WCP assigned its interest in the
Second DOT to SNL in an Assignment of Deed of Trust.  *Id.* ¶ 28.  As of November 3, 2022,
Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note.  *Id.*
¶ 30.

By November 15, 2022, the Defendants knew that Developer RE1 had secured alternative
financing for the Property with Main Street Bank and that Developer RE1 was expected to close

4861-3174-1371.v3

1733

on a refinancing loan in December of 2022. *Id.* ¶ 35. By November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 36. On November 30, 2022, Developer RE1 made a request to WCP for the payoff figures for both loans for the Property, and that same day WCP agreed to provide the requested payoff figures. *Id.* ¶¶ 36-37.

. As of December 8, 2022, there was no claim made by any of the Defendants that any default by Developer RE1 existed under any of the loan documents and by that date Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶¶ 42-43. That same day by phone, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out (the "2507 I Street Project"). *Id.* ¶ 43. SNL is believed to be controlled by Jason Shrensky. SNL is also believed to have a financial interest in the 2507 I Street Project. *Id.* ¶ 44. Mr. Huertas further stated that the unnamed investor "is very wealthy and will make life hard for you", and "has now bought the notes" on the Property and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* ¶ 45. Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them take care of the "$700,000 shortfall" on that project. *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 46. Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to try to force Developer RE1 or Mr. Negussie to pay for the debts owed for another, unrelated project, and that it was not

3

appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to any

other development project involving Mr. Negussie. *Id.* ¶ 47.

After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street

Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements under the loan documents

"were withdrawn" and that he would place Developer RE1 and the borrower on another,

unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their

loan documents. *Id.* ¶ 48. Mr. Huertas followed through with his threats to "make trouble" for

Mr. Negussie, 423 Kennedy, and Developer RE1 by arranging for an employee at WCP (Leslie

Calderas) to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.*

¶ 61. Each "Notice of Default" was unsigned and failed to include either a description of the

alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.*

¶¶ 63-65. WCP also sent two Payoff Statements to Developer RE1. The Payoff Statement for

the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a

"Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included a

demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default

Penalty". *Id.* ¶¶ 69-71.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims. *Id.* ¶ 71. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel. *Id.* Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the

decision to declare that Developer RE1 was in "default". *Id.* ¶¶ 74-75. Developer RE1 also

believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact

that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real

4

reason why Developer RE1 was improperly placed in default, *i.e.,* because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 74-78.

The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 81-84. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 83. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 84-85.

All of the "defaults" that have been alleged were all claimed after-the-fact as a pre-text. *Id.* ¶ 111-12. There was also no proper legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶¶ 113-114. The Defendants deliberately timed their improper interference with Developer RE1's business relations to make it almost impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 117.

## II.   PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed a Complaint against WPC, WCP Fund, Mr. Huertas and Mr. Drazin. JNL did not exist at the time Developer RE1 filed its Complaint or when Developer RE1 filed its first Motion for a Temporary Restraining Order a week later. *See* Exhibit A (screenprint showing the date of formation of JNL). On June 23, 2023, Mr. Drazin, on behalf of SNL, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). *Id.* ¶ 119. In response, Developer RE1 re-filed a

5

Motion for Temporary Restraining Order to Prevent Imminent Foreclosure Sale ("TRO

Motion"), which the Defendants opposed.  On July 25, 2023, the Court held a hearing and

granted the TRO Motion.  The Court ordered the Defendants to immediately cease taking any

action to foreclose on the Property pending further order of the Court.  The Court set a trial date

for September 9, 2024.

On March 7, 2024, Developer RE1 filed its Second Amended Complaint, adding SNL as

a defendant to the case and adding new claims against Mr. Drazin.  Developer RE1 added SNL

as a defendant because Developer RE1 saw that SNL was listed on the foreclosure notice, which

was issued six months after the First Amended Complaint was filed.  According to the Motion,

SNL assigned the Second Note and DOT to JNL on April 16, 2024, more than one month *after*

Developer RE1 filed the Second Amended Complaint.  *See* Mot. at 1.  Developer RE1 could not

have possibly known that SNL transferred the Second Note and DOT to JNL at the time the

Second Amended Complaint was filed.  JNL was formed on February 1, 2024, with none other

than Mr. Drazin listed as its registered agent.  The business address for JNL is also the business

address for the WCP.  The Motion appears to have been filed solely for purposes of delay and to

perhaps divert the attention of the Court away from SNL.

III.    LEGAL  ARGUMENT

    A.    The Legal Standard for Indispensable Parties

A motion to dismiss pursuant to Rule 12(b)(7) asserts that a complaint should be

dismissed for failure to join a party under Rule 19.  *See Asrat v. Trs. of Boston Univ.*, 2015 D.C.

Super. LEXIS 7, *4.  Courts are generally reluctant to grant Rule 12(b)(7) motions, and dismissal

is warranted only when the defect is serious and cannot be cured.  *Id.* (*quoting Direct Supply,

Inc. v. Specialty Hosps. Of Am., LLC*, 878 F. Supp. 2d 13, 23 (D.D.C. 2012)).  When ruling on a

Rule 12(b)(7) motion, the Court must accept the allegations in the complaint as true and may

consider matters outside the pleadings in order to determine whether Rule 19 requires that a

party be joined.  *Id.*

> A party is necessary to litigation and should be joined if:
>
> (1) in the person's absence complete relief cannot be accorded among those already
> parties, or (2) the person claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the person's absence may (i) as a practical
> matter impair or impede the person's ability to protect that interest or (ii) leave any of the
> persons already parties subject to a substantial risk incurring double, multiple, or
> otherwise inconsistent obligations by reason of the claimed interest.

Super. Ct. Civ. R. 19(a).  The burden is on SNL to demonstrate that JNL is required under Rule

19.  *See Asrat*, 2015 D.C. Super. LEXIS 7 at *5-6.  It is clear, however, that SNL cannot meet its

burden because JNL is not an indispensable party.

> B.  The Court Can Adjudicate Developer RE1's Claims Without JNL.

First, the Motion wholly fails explain why the Court cannot adjudicate Developer RE1's

claims without joining JNL as a defendant.[3]  The Court can adjudicate Developer RE1's claims

without joining JNL because any interest JNL has in the Second Note and DOT did not arise

until *after* SNL improperly issued the Foreclosure Notice and after Developer RE1 filed the

Secon Amended Complaint.  Put another way, SNL cannot assign away its liability to Developer

RE1 to JNL.  Moreover, the Court can accord complete relief between Developer RE1 and SNL

without JNL's presence.  Adding JNL as a defendant to this case will have no bearing on the six

claims pending against SNL.  Developer RE1 asserts that it is SNL, not JNL, that engaged in

unethical, outrageous conduct specifically designed to make Developer RE1's construction

project fail.  SNL's role in this matter can be determined by Developer RE1 during discovery.

---

[3]     In fact, SNL fails to cite a single case in the Motion.

7

C.    This Litigation Will Not Impede JNL's Ability to Protect Its Interest Because Mr. Drazin Cannot Foreclose on the Property.

SNL asserts that JNL is an indispensable party because JNL now owns the Second DOT, and Developer RE1 seeks to enjoin foreclosure of the Second DOT.  Mot. at 2-3.   However, just because JNL is now in possession of the Second DOT does not automatically make JNL an indispensable party.  In fact, possession is not the test of whether a party is indispensable.  *Habib v. Miller*, 284 A.2d 56, 57 (D.C. 1971).  Whether an entity is "indispensable" can only be determined in the context of particular litigation.  *See id.*  Here, SNL has failed to demonstrate at all how JNL's absence would undermine or hinder JNL's capability to safeguard its interests. The Defendants are already temporarily enjoined from foreclosing on the Property, including Mr. Drazin, who is responsible for initiating foreclosure proceedings as Trustee of the Second DOT.

Mr. Drazin is the named as Trustee in both the First and Second DOT -- and in the Assignment attached to the Motion.  Compl. at ¶¶ 15 and 21.  While JNL could theoretically instruct Mr. Drazin to initiate a foreclosure, it is Mr. Drazin, not JNL, that must conduct the foreclosure.  *See, e.g., Paroni v. Quick*, 211 A.2d 765, 767 (D.C. 1965) ("The secured debt under the first deed of trust, showing an unpaid balance of $4,597, being in default, the trustees were directed by the Home Building Association of the District of Columbia, as holder of the recorded first deed of trust, to foreclose under its terms.").  Pursuant to the Court's August 15, 2023 Order, Mr. Drazin is prohibited from taking any action to foreclose on the Property.  *See* August 15, 2023 Order at 5.  The Second Note and DOT could be transferred a dozen times to a dozen different entities, and the outcome is still the same.  As long as Mr. Drazin is the Trustee of the Second DOT,  Mr. Drazin is unable to foreclose on the Property regardless of any instruction he receives from JNL (or any other entity).

Under the caselaw, the Court has to consider the events leading up to the dispute, the parties involved, and the nature of the claims being made. *See Habib,* 284 A.2d at 57. Here, there are allegations and claims involving unfair business practices – claims that the Court has already found are likely to succeed. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. Compl. at ¶¶ 81-84. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 83. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (i.e., for the 2507 I Street Project). *Id.* ¶ 84-85. After Developer RE1 asked WCP to provide a basis for the "default" claim, Mr. Drazin claimed that Developer RE1 was in "default" because of: a balance due to DC Water ($44,857.93) that resulted in a lien (the "DC Water Alleged Debt Claim"); the late payment of real estate taxes (the "Property Tax Late Payment Claim"); and that "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default". *Id.* ¶ 87.

Taking these past events into consideration within a broader context, the Court should find it troubling that SNL secretly transferred the Second Note and DOT to JNL on April 16, 2024, *after* Developer RE1 filed the Second Amended Complaint adding SNL as a defendant and *before* the date that SNL had to respond to the Second Amended Complaint. The connection between all of the Defendants and JNL is also disturbing because JNL appears to have been formed with Mr. Drazin's assistance. If the Court finds that JNL is an indispensable party, the cycle of the filing of motions to dismiss could never end. That is because there is nothing

9

stopping the Defendants from creating endless new entities which they can use to continuously

transfer the Second Note and DOT to -- over and over again. Each predecessor entity (like SNL)

could then file a motion to dismiss arguing that the new entity is an indispensable party.

IV.   CONCLUSION

    For the foregoing reasons, Developer RE1 respectfully requests that the Count deny the

Motion to Dismiss filed by SNL. A proposed order is attached.


                                    Respectfully submitted,

                                    GREENSTEIN DELORME & LUCHS, P.C.

Dated: May 6, 2024                  /s/ Alexandria J. Smith
                                    James D. Sadowski (No. 446635)
                                    Alexandria J. Smith (No. 1781067)
                                    801 17th Street, N.W., Suite 1000
                                    Washington, DC 20006
                                    Telephone: (202) 452-1400
                                    Email: jds@gdllaw.com | ajs@gdllaw.com
                                    *Counsel for Plaintiff Developer RE1 LLC*


                                    10

4861-3174-1371.v3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2024, a true and correct copy of the

foregoing Opposition to Defendants' Motion to Dismiss was served using eFileDC and a notice

of service should be sent electronically by eFileDC to all counsel of record in this case.

<div style="text-align: right">

/s/ Alexandria J. Smith

Alexandria J. Smith

</div>

11

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

      *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

      *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event:  Trial Readiness Hearing
Date:  September 6, 2024

## [PROPOSED] ORDER DENYING MOTION TO DISMISS

Upon consideration of the SF NU, LLC's Motion to Dismiss ("Motion"), the Plaintiff's

Opposition thereto, and any reply, it is this _____ day of _____, 2024 hereby:

ORDERED, that the Motion is DENIED.

_____
Honorable Judge Ebony Scott
Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
*Counsel for Plaintiff*

Maurice B. VerStandig, Esq.
*Counsel for Defendants*

12

4861-3174-1371.v3

1743

# EXHIBIT A



# DC.gov

(/Home.aspx/index)

Mayor Muriel Bowser

---

**311 Online (https://311.dc.gov)**     **Agency Directory (https://dc.gov/directory)**

**Online Services (https://dc.gov/online-services)**     **Accessibility (https://dc.gov/page/dcgov-accessibility-policy)**

Home (/Home.aspx)

Edit Account (/Account.aspx/AccountManagement)

Sign Out (/Account.aspx/LogOff?signoutFromCropLogin=true)

# JPK NewCo LLC - Initial File Number: L00007898479

| Main | Reports | Trade Names | Beneficial Owners |

## Entity Info

**Business Name**

JPK NewCo

**Suffix**

LLC

**Registration / Effective Date**

2/01/2024

**Commencement Date**

2/01/2024

**Entity Status**

Active

**Foreign Name**

**Date of Organization**

**State**

**Country**

## Business Address

**Line1**

8401 Greensboro Drive

**Line2**

Suite 960

| City | State | Zip |
|------|-------|-----|
| McLean | Virginia | 22102 |

## Agent

**Is non-commercial Registered Agent?**

Yes

**Name**

Russell S. Drazin

# Address

**Line1**
4400 Jenifer Street, NW

**Line2**
Suite 2

| City | State | Zip |
|------|-------|-----|
| Washington | District of Columbia | 20015 |

**Email**
rdrazin@pardodrazin.com

## Return to Home

**District News**

- Mayor's Public Schedule (https://mayor.dc.gov/newsroom)
- Citywide News (https://newsroom.dc.gov)
- Citywide Calendar (https://calendar.dc.gov/events)
- Subscribe to Receive Emails (https://service.govdelivery.com/accounts/DCWASH/subscriber/new)
- Subscribe to Text Alerts (https://hsema.dc.gov/page/alertdc)
- Subscribe to Newsletters (https://public.govdelivery.com/accounts/DCWASH/subscriber/new)

**District Initiatives**

- Green DC (https://green.dc.gov)
- Grade DC (https://grade.dc.gov)
- Age-Friendly DC (https://agefriendly.dc.gov)
- Sustainable DC (https://sustainable.dc.gov)
- Connect DC (https://connect.dc.gov)
- Great Streets (https://greatstreets.dc.gov)

- Ready DC (https://ready.dc.gov)

**About DC**

- Open DC (https://open.dc.gov)

- Budget (https://cfo.dc.gov/budget)

- Emancipation (https://emancipation.dc.gov)

- Consumer Protection (https://oag.dc.gov/consumer-protection)

- Contracts (https://dc.gov/contracts)

- Property Quest (https://propertyquest.dc.gov)

- Track DC (https://track.dc.gov)

**Contact Us**

- Agency Director (https://directory.dc.gov)

- Call 311 (https://311.dc.gov)

- Contact the Mayor (https://dcforms.dc.gov/webform/executive-office-mayor-ask-mayor)

- Contact Agency Directors (https://dlcp.dc.gov/page/contact-agency-directors)

- FOIA Requests (https://foia.dc.gov)

- Report Website Problems (https://dcforms.dc.gov/webform/problems-dc-government-website)

- Send Feedback (https://feedback.dc.gov)

eFiled
5/8/2024 7:44:37 AM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM

Comes now WCP Fund I LLC ("WCP" or the "Defendant"), by and through undersigned counsel, in opposition to Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund I LLC's Counterclaim (the "Motion," with the proponent thereof being known as the "Plaintiff" or "RE1"), and states as follows:

### I.    Introduction

The Plaintiff borrowed a large sum of money from WCP, failed to make installment payments in a timely fashion, failed to abide by the rigors of the governing loan documents, and failed to repay the debt at maturity. Accordingly, in connection with the Plaintiff's ongoing litigation against the Defendant and other parties, WCP has filed a counterclaim for breach of contract. And none of this is particularly unusual or extraordinary; a lender suing a defaulting borrower is a rather mundane affair.

Yet, for some reason – whether gamesmanship, vexatiousness, or otherwise – the Plaintiff has opted to move to dismiss the counterclaim (the "Counterclaim") of WCP on the tenuous theory that (i) the pleading is a compulsory counterclaim; and (ii) a compulsory counterclaim is forever

1

waived if not included in the original iteration of a defendant's answer. Neither of these contentions are accurate.

To the contrary, the law is rather clear that the Counterclaim is most certainly not compulsory, being in the nature of a breach of contract action brought in the context of a tort case. And, equally, even if the Counterclaim were compulsory, the law is also quite clear that such a claim may be brought at any time during the subject litigation.

For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II.    Argument: The Counterclaim is Not Compulsory

This is a tort case where the Plaintiff is suing WCP – and other co-defendants – for (i) tortious interference with business relations; and (ii) breach of the duty of good faith and fair dealing. The Plaintiff also asserts a claim for breach of fiduciary duty against one of WCP's co-defendants, but not as against WCP. And amongst the forms of relief sought by the Plaintiff (which are pleaded as causes of action, even though in the nature of remedies) are injunctive and declaratory relief. None of the Plaintiff's claims sound in contract. And it thusly follows as somewhat surprising to learn the Plaintiff regards a contractual counterclaim as being compulsory in nature.

The rules of this Honorable Court familiarly adopt, verbatim, the provisions of Federal Rule of Civil Procedure 13 concerning compulsory counterclaims:

> A pleading must state as a counterclaim any claim that--at the time of its service the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction.

D.C. Super. Ct. R. Civ. P. 13(a)(1); Fed. R. Civ. P. 13(a)(1).

Given the symmetry of the federal and District of Columbia rules, federal precedent becomes instructive. *See, e.g.*, *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1027

(D.C. 1989) ("When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent, and we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule." (citing *Simpson v. Chesapeake & Potomac Telephone Co.*, 522 A.2d 880, 884 n. 4 (D.C. 1987); *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1027 (D.C. 1989); *Wallace v. Warehouse Employees Union No. 730*, 482 A.2d 801, 807 (D.C. 1984); *Vale Properties, Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n. 3 (D.C. 1981)).

Case law, in turn, holds that there is a critical distinction between "claims that are 'part of the same case or controversy,'" which are *not* compulsory in nature, and claims "arising out of the same 'transaction or occurrence,'" which are compulsory in nature. *Slaughter v. Alpha Drugs, LLC*, 907 F. Supp. 2d 50, 53 (D.D.C. 2012).

The Plaintiff's claims here sound uniformly in tort and concern the alleged actions of the parties after monies were loaned and binding agreements were entered into. The Counterclaim, in turn, is focused squarely on the provisions of the loan documents themselves and speaks, rather simply, to the Plaintiff's endemic failure to abide by the rigors of those loan documents. The Plaintiff is not suing for a declaration that it timely made payments on a promissory note or retired the obligation at maturity, nor is the Plaintiff alleging WCP breached the promissory note or any other loan document. And it thusly follows that while the Counterclaim may be "part of the same case or controversy," *Slaughter*, 907 F. Supp. 2d at 53, the Counterclaim is not of a compulsory variety.

## III. Even if the Counterclaim Were Compulsory, Its Pleading Would Still be Appropriate

Unsurprisingly, the enormously prejudicial pleading regime suggested by the Plaintiff – where a party summoned into litigation has only 21 days to file an answer complete with every

<div align="center">3</div>

cognizable compulsory counterclaim, for fear of irreparably losing such rights – is unsupported by case law and antithetical to governing precedent. Not only is there nothing novel about introducing a compulsory counterclaim in an amended answer, or the answer to an amended pleading, but precedent is well supportive of such counterclaims being introduced at any appropriate juncture during the course of a case's pre-judgment litigation. And so, even if, *arguendo*, the Counterclaim were compulsory, the pleading would still be appropriate and permissible.

The mandate of Rule 13 is simply that a compulsory counterclaim be pleaded during the pendency of an at-issue case – not at the first instance of an answer being docketed. As observed by one court: "Rule 13(a) does provide that a pleading 'must' state compulsory counterclaims and 'the consequence for failing to assert a compulsory counterclaim is a bar against the assertion of that claim in any other action.' But this bar applies mainly to *subsequent* litigation." *Alabama Mun. Ins. Corp. v. Munich Reinsurance Am., Inc.*, 2021 WL 2392421, at \*2 (M.D. Ala. June 11, 2021) (quoting Fed. R. Civ. P. 13(a)(1); *Univalor Tr., SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 380 (S.D. Ala. 2016); citing *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214, 220 (5th Cir. 1975); *Byker v. Smith*, 2019 WL 4408445 at \*7 (N.D. Ala. June 17, 2019)) (emphasis in original).

Indeed, as noted by the United States District Court for the District of Columbia, in observation of the temporal mandate, "[i]f a party fails to plead a compulsory counterclaim *while litigation is pending*, it is forever barred from raising the claim." *L. Offs. of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 361 (D.D.C. 1986) (citing *Crutcher v. Aetna Life Insurance Co.*, 746 F.2d 1076, 1080 (5th Cir. 1984); *Brown v. McCormick*, 608 F.2d 410, 416 (10th Cir. 1979); *Pipeliners Local Union No. 798 etc. v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974)) (emphasis added).

4

The Plaintiff, however, insists that "[a] compulsory counterclaim must be filed at the time of the filing of the appropriate pleading such as an answer or it is lost forever." Motion at p. 3 (citing *Bell v. First Investors Servicing Corp.*, 256 A.3d 246, 254 n.6 (D.C. 2021)). Yet this assertion is puzzling for two reasons. First, *Bell* is a case in which the District of Columbia Court of Appeals found "that counterclaims that Ms. Bell might have asserted in FISC's small claims action were permissive." *Id.* at 255. And, second, even the dicta footnote referenced by the Plaintiff goes on to observe that the standard is whether a compulsory counterclaim is pleaded in the subject "action," focusing on how the doctrine of *res judicate* prevents such a compulsory counterclaim from then being raised in a subsequent action. *See, e.g. Bell*, 256 A.3d at 254 n. 6 (D.C. 2021) ("[W]henever a compulsory counterclaim is not pleaded in an action when it should have been pleaded[,] the judgment entered in that action is clearly res judicata as to the merits of the unpleaded counterclaim.") (quoting *Firemen's Ins. Co. v. L. P. Steuart & Bro., Inc.*, 158 A.2d 675, 677 (D.C. Mun. App. 1960) (quoting *United States v. Eastport S. S. Corp.*, 255 F.2d 795, 805 (2d Cir. 1958)).

Indeed, *Bell* – the very case relied upon by the Plaintiff – notes the governing requirement to merely be that a compulsory counterclaim is filed in the relevant case. This is the same holding as is found in *Mideast Sys., Ltd*., a case that also notes the temporal mandate to be filing as part of the same case. And the notion is bolstered by the *Alabama Mun. Ins. Corp.* Court, which emphasizes that the bar created by Rule 13 is only applicable to "subsequent litigation."

Insofar as the counterclaim herein is not compulsory, this matters little. But even if this Honorable Court were to find the counterclaim to be of a compulsory character, the pleading would still be appropriate – having been properly interposed as part of an answer to an amended complaint, during the pendency of this case.

5

## IV.     Conclusion

WHEREFORE, WCP respectfully prays this Honorable Court (i) deny the Motion; and (ii)

afford such other and further relief as may be just and proper.


Dated: May 8, 2024                                      Respectfully Submitted,

                                                       /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.
                                                       DC Bar #1034066
                                                       The VerStandig Law Firm, LLC
                                                       9812 Falls Road, #114-160
                                                       Potomac, Maryland 20854
                                                       Telephone: 301-444-4600
                                                       Facsimile: 301-444-4600
                                                       Electronic Mail: mac@mbvesq.com
                                                       *Counsel for SF NU, LLC*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 8th day of May 2024, and a notice of filing should be served on all counsel of

record.


                                                       /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.

eFiled
5/15/2024 8:20:45 PM
Superior Court
of the District of Columbia

Case 2:25-100230-ELG Doc 1-2 Filed 09/04/24 Entered 09/04/24 09:25:28 Desc
Exhibit B - All Pleadings And All Docket Entries (Part II) Page 1685 of 1716

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

*Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

*Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Close of Discovery
Date: May 24, 2024

## REPLY IN SUPPORT OF PLAINTIFF DEVELOPER RE1 LLC'S
## MOTION TO DISMISS DEFENDANT WCP FUND I LLC'S COUNTERCLAIM

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, submits its Reply in

Support of Developer RE1's Motion to Dismiss Defendant WCP Fund I LLC's ("WCP Fund")

Counterclaim. The WCP Fund attempts to distort the plain language of D.C. Super. Ct. R. Civ.

P. 13(a)(1) ("Rule 13") in direct contradiction to that rule, the cases interpreting it, and the cases

cited by the WCP Fund in its Opposition. The Court should dismiss the WCP Fund's

Counterclaim because the Counterclaim clearly arises out of the same transaction or occurrence

– a promissory note that is part of the loan documents that are the heart of the dispute in this

case.

## I.   THE COUNTERCLAIM ARISES OUT OF THE SAME TRANSACTION OR OCCURRENCE

The WCP Fund argues that its Counterclaim cannot be compulsory because the

Counterclaim sounds in contract while Developer RE1's claims sound in tort. Opp. at 2.

Importantly, the WCP Fund cites no case law to support this argument. The WCP Fund's

argument also finds no support in reality because two of Developer RE1's claims sound in

contract. *See* 2nd Am. Compl. at Count II (breach of the duty of good faith and fair dealing

under the contracts) and Count III (seeking a declaratory judgment as to the enforceability and meaning of contract terms). Rule 13 does not differentiate between claims sound in contract versus those that sound in tort. *See* Rule 13. The linchpin of Rule 13 is simply whether the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Indeed, one of the very cases relied upon by the WCP Fund in the latter half of its Opposition cuts against its own argument. In *Law Offices of Jerris Leonard, P.C.*, the plaintiff-lawyers filed a complaint against former defendant-clients for legal fees due and were granted a default judgment against one defendant. *Law Offices of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 360 (1986). Defendant-client responded to the complaint and brought another suit alleging malpractice. *Id.* The court found that the defendant-client raising the malpractice claim, in essence, asserted a defense of failure to perform to the lawyer's claim for breach of contract. *Id.* at 361. Moreover, the court noted that several courts have held that a tort action stemming out of the same transaction as a breach of contract claim is a compulsory counterclaim to the contract action. *Id.* (internal citations omitted). The testimony and documents necessary to litigate both claims were likely to be substantially the same. As a result, the defendant-client's malpractice claim was dismissed because it was not previously asserted as a compulsory counterclaim under Rule 13(a). *Id.*

Just like the client-defendant in *Law Offices of Jerris Leonard, P.C*, the WCP Fund is now attempting to assert a Counterclaim involving a claim that it clearly knew about at the time its answer was filed, *i.e.,* alleged defaults under the promissory note by Developer RE1. The testimony and evidence necessary to litigate Developer RE1's claims and the WCP Fund's Counterclaim would be substantially similar, if not identical. The WCP Fund's breach of contract claim plainly arises out of one of the same transactions or occurrences involved in the

4875-2975-1230

Complaint, namely, the First Commercial Deed of Trust Note between the WCP Fund and

Developer RE1 that was attached to the Complaint as Exhibit B.[1]  Accordingly, the WCP Fund's

Counterclaim must be dismissed.

## II.   COMPULSORY COUNTERCLAIMS CANNOT BE INTRODUCED AT ANY JUNCTURE

The WCP Fund also claims that the "pleading regime suggested by Plaintiff – where a

party summoned into litigation has only 21 days to file an answer complete with every

cognizable counterclaim, for fear of irreparably losing such rights – is unsupported by case law

and antithetical to governing precedent."  Opp. at 3-4.  But this "pleading regime" is precisely

how the District of Columbia Court of Appeals and federal courts interpret Rule 13.  Compulsory

counterclaims must be filed at the time of the appropriate pleading, or they are lost forever.

*Bronson v. Borst*, 404 A.2d 960, 963 (D.C. 1979)  ("As a compulsory counterclaim, the claim

must be filed at the time of the filing of the appropriate pleading (here the answer) or it is lost

forever.")[2] (*citing Southern Construction Co. v. Pickard*, 371 U.S. 57, 83 S. Ct. 108, 9 L. Ed. 2d

31 (1962); *Owens v. Tiber Island Condominium Ass'n, D.C.App.*, 373 A.2d 890 (1977)); *Law

Offices of Jerris Leonard, P.C. v. Mideast Sys., Ltd.*, 111 F.R.D. 359, 361 (1986) ("If a party fails

to plead a compulsory counterclaim while litigation is pending, it is forever barred from raising

the claim.").

The WCP Fund also makes no claim that it was not aware of the existence of its claim for

breach of the promissory note at the time its Answer was filed, nor could it because on December

8, 2022, the WCP Fund alleged that Developer RE1 was in default under its loan documents.

---

[1]   The "binding agreements" and "loan documents" referenced by WCP Fund are the same documents.  *See* Opp. at 3.
[2]   This interpretation can be found in the "Commentary" and "Notes to Decisions", published with Rule 13.

3

*See* Compl. Exs. J, K, and L (December 8, 2022 email and default notices); *see also* Motion to Dismiss filed on January 26, 2023 at 1 ("The Plaintiff failed to timely make payments under a promissory note.") and at 5 ("the Plaintiff breached promissory notes and deeds of trust . . .").

The WCP Fund next argues that a party may plead a compulsory counterclaim while "litigation is pending" by citing to a federal decision to support this proposition. However, the WCP Fund misstates the holding of that decision. The *Law Offices of Jerris Leonard, P.C* court ultimately found that the legal malpractice claim by defendant-client against plaintiff-attorney was a "compulsory counterclaim," and that defendant-client "should have known of the existence of a potential claim at the time its answer was due in this Court, but instead chose to suffer default judgment…" 111 F.R.D. at 363. The time for the WCP Fund to assert its compulsory counterclaim was at the time that its appropriate responsive pleading was to be filed -- namely, twenty-one (21) days after the First Amended Complaint was filed or fourteen (14) days after the Court denied the first Motion to Dismiss (in open court on March 24, 2023).

III.   <u>CONCLUSION</u>

The WCP Fund's Counterclaim arises out of the same transactions and occurrences involved in Developer RE1's complaint. Accordingly, Developer RE1 requests that the Court dismiss the WCP Fund's Counterclaim as untimely under Rule 13.

4

4875-2975-1230

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 15, 2024               /s/ Alexandria J. Smith
                                   _____
                                   James D. Sadowski (D.C. Bar No. 446635)
                                   Alexandria J. Smith (D.C. Bar. No. 1781067)
                                   Spencer B. Ritchie (D.C. Bar No. 1673542)
                                   801 17th Street, NW, Suite 1000
                                   Washington, DC 20006
                                   Telephone:  (202) 452-1400
                                   Email:  jds@gdllaw.com | ajs@gdllaw.com |
                                   sbr@gdllaw.com
                                   *Counsel for Plaintiff Developer RE1 LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Reply in Support of Developer RE1's

Motion to Dismiss Defendant WCP Fund I  LLC's Counterclaim was served by the Court's

electronic filing system this 15th day of May 2024, and a notice of filing should be served on all

counsel of record.

                                   /s/ Alexandria J. Smith
                                   _____
                                   Alexandria J. Smith

5

eFiled
6/7/2024 1:36:49 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*,
*Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott

---

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al.*,

    *Defendants*.

Case No. 2023-CAB-004260
Judge Milton Lee

## PLAINTIFFS DEVELOPER RE1, LLC AND
## 423 KENNEDY ST HOLDINGS, LLC'S
## CONSENT MOTION TO CONSOLIDATE AND TO MODIFY SCHEDULING ORDER

Pursuant to D.C. Super. Ct. Civ. R. 42(a)(1)(B), counsel for 423 Kennedy St Holdings,

LLC ("423 Kennedy") and for Developer RE1, LLC ("Developer RE1") (collectively,

"Plaintiffs"), hereby move to consolidate the two above-captioned cases into a single proceeding.

The two cases involve common issues of fact, similar loan documents, the same Defendants, and

they relate to similar events and transactions.  In support of this consent motion to consolidate,

the Plaintiffs state as follows:[1]

I.    FACTUAL BACKGROUND

These cases pertain to disputes under multiple sets of loan documents between Developer

RE1 (in Case No. 2022-CAB-005935) and 423 Kennedy (in Case No. 2023-CAB-004260), as

Plaintiffs, and Defendants WCP Fund 1, LLC ("WCP Fund"), DPA Capital d/b/a Washington

Capital Partners ("WCP"), Daniel Huertas, who controls WCP, and Russell Drazin, the Trustee

under all four Deeds of Trust.  *See* Second Am. Compl. (in 2022-CAB-005935) ¶¶ 2-7 and

Counts I-II and Compl. (in 2023-CAB-004260) ¶¶ 2-7 (and Counts I-II).  Both cases also seek a

declaratory judgment as to the meaning of, and disputes about, certain, identical provisions in the

Deeds of Trust.  Compls. (Count III).  Both cases also seek temporary and permanent injunctive

relief to prevent a foreclosure sale.  Compls. (Count IV).  Finally, both cases assert a breach of

fiduciary duty claim against Mr. Drazin and seek declaratory judgment that Mr. Drazin cannot

serve as the trustee and that the foreclosure notice that he issued is invalid.  Compls. (Counts V-

VI).

In the earlier-filed case (2022-CA-005935),  Developer RE1 alleges that the Defendants

manufactured defaults under two Deeds of Trust as a pretext to prevent Developer RE1 from

closing on a refinancing loan.  Second Am. Compl. (2022-CA-005935) ¶ 111.  Developer RE1

further alleges that the Defendants acted in concert to inflict maximum economic and

reputational damages on Developer RE1 by engaging in conduct akin to extortion to leverage

their position in regard to an unrelated development.  *See id.* ¶¶ 72-80.   In the later filed case

---

[1]   The Defendants consent to the relief sought, but by doing so they do not agree with all of the
characterizations of the facts.

(2023-CAB-004260), 432 Kennedy alleges that the Defendants manufactured defaults under two

Deeds of Trust as a pretext to prevent 423 Kennedy from obtaining refinancing on a property

located at 423 Kennedy Street, N.W., Lot 56, Square 3260, in Washington, D.C.  Compl. 2023-

CAB-004260) ¶ 125.  432 Kennedy further alleges that the Defendants acted in concert to inflict

maximum economic and reputational damages against 423 Kennedy (and others) by engaging in

conduct akin to extortion to leverage their position with respect to an unrelated development.  *Id.*

¶¶ 86-97.

## II.    LEGAL STANDARD FOR MOTION TO CONSOLIDATE

Rule 42 of the District of Columbia Superior Court Rules of Civil Procedure provides

that if actions before the court involve a common question of law or fact, the court may

consolidate them.  D.C. Super. Ct. Civ. R. 42(a)(1)(B).  Any motion to consolidate two or more

civil actions must be decided by the judge on whose calendar appears the oldest assigned case

covered by the motion – here Judge Scott.  *See id.* R. 42(a)(2).  The question of whether to

consolidate multiple cases is a question over which the court has "great latitude" under the abuse

of discretion standard.  *See Altimont v. Chatelain, Samperton & Nolan,* 374 A.2d 284, 287-88

(D.C. 1977).  In deciding whether to consolidate multiple cases, a core principle of consideration

is the avoidance of the wasteful expenditure of energy and money incidental to the separate

litigation of identical issues.  *See Columbia Plaza v. Security National Bank,* 525 F.2d 620 (D.C.

Cir. 1975).

## III.   LEGAL ANALYSIS FOR A MOTION TO CONSOLIDATE

The two cases here concern numerous, common, and overlapping questions of law and

fact.  Namely, the cases involve the interpretation of two almost identical sets of loan documents

involving the same Defendants.  *See* Second Am. Compl. (2022-CAB 005935) ¶¶ 15-28 and

Compl. (2023-CAB-004260) ¶¶ 20-35. Both cases center around an assertion that the Defendants have deliberately interfered with the refinancing of the loans on the two properties and both cases contain the same cause of actions against the same parties. Both of the cases are also predicated on the legal theory that Defendants interfered with Plaintiffs' refinancing efforts to leverage their position with respect to an unrelated development. *Compare* Second Am. Compl. (2022-CAB-005935) ¶ 40 *with* Compl. (2023-CAB-004260) ¶ 54. Both cases will involve the same or similar witnesses. The consolidation of these two cases would both preserve judicial resources and preserve expenses to the litigants because the fact patterns and the disputed legal issues are nearly identical. Accordingly, consolidation of the two cases in this instance is appropriate.

IV.   SCHEDULING ORDER

The parties also request that the Court set a new Scheduling Order consolidating the discovery deadlines for the two cases. A copy of the existing Scheduling Order in Case 2022-CAB-005935 is attached as Exhibit A. A list of the discovery completed to date in both cases is attached as Exhibit B. The trial date in the earlier-filed case is set for September 9, 2024, so there remains sufficient time for the parties to complete discovery. No party would be prejudiced as a result of modifying the discovery deadlines. Moreover, there is good cause to modify the discovery deadlines and no adverse or prejudicial consequence to doing so. The parties respectfully request that the deadlines in the case, after consolidation, be modified as follows:

|  | Amended Date |
|---|---|
| Discovery Requests | 05/08/2024 |
| Close of Discovery | 07/09/2024 |
| Dispositive Motions Deadline | 07/26/2024 |

4

Dispositive Motions Decided                  08/26/2024
ADR - Mediation                               Completed
Trial Readiness Hearing                  09/06/2024 [No Change]
Jury Trial                                    09/09/2024 [No Change]

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs and the Defendants jointly request that the above-captioned cases be consolidated into the earlier-filed case (2022-CAB-005935) and that a new Scheduling Order be entered that extends the deadlines for the consolidated cases. A proposed order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Date:    June 7, 2024            /s/ Erin B. McAuliffe
                                        James D. Sadowski, #446635
                                        Alexandria J. Smith, #1781067
                                        Erin B. McAuliffe, #1722421
                                        801 17th Street, N.W., Suite 1000
                                        Washington, D.C. 20006
                                        Telephone: (202) 452-1400
                                        Facsimile: (202) 452-1410
                                        E-mail: jds@gdllaw.com / ajs@gdllaw.com / ebm@gdllaw.com
                                        *Counsel for Plaintiff 423 Kennedy St Holdings, LLC and Plaintiff Developer RE1 LLC*

5

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of June, 2024, a true copy of the foregoing

Motion to Consolidate and Modify Scheduling Order was filed in both of the above-captioned

cases (2022-CAB-005935 and 2023-CAB-004260) using eFileDC, and that a notice of filing

should be sent electronically to counsel of record in both cases.

/s/ Erin B. McAuliffe
Erin B. McAuliffe

CERTIFICATE REGARDING CONSENT

The Plaintiffs obtained Defendants' consent to the relief requested in this Motion by

phone calls and emails with Mac Verstandig, Esq.

/s/ Erin B. McAuliffe
Erin B. McAuliffe

6

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

<table>
<tr><td>

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, *et al.*,

*Defendants*.

</td><td>

Case No. 2022-CAB-005935
Judge Ebony Scott

Consolidated with
Case No. 2023-CAB-004260

</td></tr>
</table>

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff*,

v.

DPA CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS, *et al.*,

    *Defendants*.

## [PROPOSED] ORDER

UPON CONSIDERATION of the Plaintiffs' Consent Motion to Consolidate and Modify Scheduling Order, it is this _____ day of _____, 2024, hereby

ORDERED that the Motion is GRANTED; and it is further

ORDERED that case number 2023-CAB-004260 is hereby CONSOLIDATED with case number 2022-CAB-005935, and all future filings should be filed in the lead case (2022-CAB-005935); and it is further

ORDERED that the Scheduling Order will be amended as follows:

| | Amended  Date |
|---|---|
| Discovery Requests | 05/08/2024 |
| Close of Discovery | 07/09/2024 |
| Dispositive Motions Deadline | 07/26/2024 |
| Dispositive Motions Decided | 08/26/2024 |
| ADR - Mediation | Completed |
| Trial Readiness Hearing | 09/06/2024 [No Change] |
| Jury Trial | 09/09/2024 [No Change] |

SO ORDERED.

_____

Ebony Scott, Associate Judge


*Copies to counsel of record via eFileDC.*

# EXHIBIT A

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| DEVELOPER RE1 LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 2022 CAB 005935 |
| v. | ) | |
| | ) | Judge Ebony M. Scott |
| DP CAPITAL, LLC d/b/a | ) | |
| WASHINGTON CAPITAL | ) | Next Court Event:  Trial Readiness Hearing |
| PARTNERS, *et al.*, | ) | September 6, 2024 at 2:00 p.m. |
| Defendants. | ) | |

---

## ORDER GRANTING CONSENT MOTION TO EXTEND THE SCHEDULING ORDER DEADLINES

Upon consideration of the Consent Motion to Extend the Scheduling Order Deadlines, filed on March 1, 2024, and the entire record herein, it is this **7th day of March 2024**, hereby:

**ORDERED** that the Consent Motion is **GRANTED**; it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Exchange Fact Witness Lists | -- | 03/08/2024 |
| Proponent's Rule 26(a)(2)(B) Report | -- | 03/15/2024 |
| Opponent's Rule 26(a)(2)(B) Report | -- | 04/12/2024 |
| Discovery Requests | -- | 04/24/2024 |
| Close of Discovery | -- | 05/24/2024 |
| Filing Motions | 03/13/2024 | 06/24/2024 |
| Dispositive Motions Decided | 04/15/2024 | 07/24/2024 |
| Pretrial | To be set upon completion of Mediation | |

**SO ORDERED**.

_____
**Ebony M. Scott**
Associate Judge

Page **1** of **2**

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,
Daniel Huertas, & WCP Fund I LLC*

EXHIBIT B

## DISCOVERY COMPLETED TO DATE
### (2022-CAB-005935)

| Description | Date Served |
|---|---|
| Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | May 19, 2023 |
| Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Objections and Responses to Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital, LLC d/b/a Washington Capital Partners | June 20, 2023 |
| Defendant DP Capital, LLC d/b/a Washington Capital Partners' First Production of Documents to Plaintiff | July 2, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Daniel Huertas | July 6, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant Russell Drazin | July 8, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant WCP Fund I, LLC | July 8, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant WCP Fund I, LLC | July 8, 2023 |
| Notice of Deposition of Daniel Huertas | July 9, 2023 |
| Notice of Deposition of Russell Drazin | July 9, 2023 |
| WCP Fund I LLC's Requests for Production to Developer RE1 LLC | July 10, 2023 |
| WCP Fund I LLC's Requests for Admission to Developer RE1 LLC | July 10, 2023 |
| Supplemental Objections and Answers to Plaintiff's First Set of Interrogatories to Defendant DP Capital, LLC d/b/a Washington Capital Partners | July 14, 2023 |
| Defendant DP Capital, LLC d/b/a Washington Capital Partners' Supplemental Production of Documents to Plaintiff | July 14, 2023 |
| Deposition (partial) of Daniel Huertas | July 19, 2023 |

| Description | Date Served |
|---|---|
| Plaintiff Developer RE1's Responses to WCP's Requests for Admissions | August 18, 2023 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant SF NU, LLC | April 24, 2024 |
| Plaintiff's First Set of Interrogatories to Defendant SF NU, LLC | April 24, 2024 |
| Plaintiff's First Requests for Production of Documents to Defendant SF NU, LLC | April 24, 2024 |
| Plaintiff's Second Set of Requests for Production of Documents to Defendant Russell Drazin | April 24, 2024 |
| Plaintiff's Second Set of Interrogatories to Defendant Russell Drazin | April 24, 2024 |
| Defendant Drazin's Answers to Second Set of Interrogatories | May 28, 2024 |
| Responses to Second Set of Requests for Production of Documents to Defendant Russell Drazin | May 28, 2024 |
| Defendant SF NU, LLC's Answer to Interrogatories | May 28, 2024 |
| Defendant SF NU, LLC's Responses to Requests for Production of Documents | May 28, 2024 |
| Defendant SF NU, LLC's First Production of Documents to Plaintiff | May 28, 2024 |

## DISCOVERY COMPLETED TO DATE
(2023-CAB-004260)

| Description | Date Served |
|---|---|
| Notice of Subpoena to Main Street Bank | November 17, 2023 |
| Plaintiff's First Set of Interrogatories to Defendant DP Capital LLC d/b/a Washington Capital Partners | May 7, 2024 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant DP Capital LLC d/b/a Washington Capital Partners | May 7, 2024 |
| Plaintiff's First Set of Interrogatories to Defendant Russell Drazin | May 7, 2024 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Russell Drazin | May 7, 2024 |
| Plaintiff's First Set of Interrogatories to Defendant Daniel Huertas | May 8, 2024 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant Daniel Huertas | May 8, 2024 |
| Plaintiff's First Set of Interrogatories to Defendant WCP Fund I, LLC | May 8, 2024 |
| Plaintiff's First Set of Requests for Production of Documents to Defendant WCP Fund I, LLC | May 8, 2024 |

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br><br>**DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*,<br><br>    **Defendants.** | **Case No.**     **2022 CAB 005935**<br><br>**Judge Ebony M. Scott**<br><br>**Next Event:  Trial Readiness Hearing September 6, 2024 at 2:00 p.m.** |
| **423 KENNEDY ST HOLDINGS LLC.,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*,<br><br><br>    **Defendants.** | **Case No.**     **2023 CAB 004260**<br><br>**Judge Ebony M. Scott**<br><br>**Next Event:  Trial Readiness Hearing September 6, 2024 at 2:00 p.m.** |

## <u>ORDER GRANTING PLAINTIFFS' DEVELOPER RE1, LLC AND 423 KENNEDY ST HOLDINGS, LLC'S CONSENT MOTION TO CONSOLIDATE AND TO MODIFY SCHEDULING ORDER</u>

This matter is before the Court on the Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order, filed on June 7, 2024.  In the Motion, the Plaintiffs move the Court to consolidate the instant matter with *423 Kennedy St Holdings LLC. v. DP Capital, LLC d/b/a Washington Capital Partners, et al.* Case No.

Page **1** of **3**

2023 CAB 004260. Upon consideration of the Motion, and the entire record herein, the Court grants the Motion and consolidates the two cases.

Accordingly, on this **11ᵗʰ day of June 2024**, it is hereby:

**ORDERED** that the Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order is **GRANTED**; it is further

**ORDERED** that *423 Kennedy St Holdings LLC. v. DP Capital, LLC d/b/a Washington Capital Partners, et al.,* Case No. 2023 CAB 004260, is hereby **CONSOLIDATED** with the above-captioned civil action (Case No. 2022 CAB 005935); it is further

**ORDERED** that **ALL FILINGS SHALL BE MADE IN CASE NO. 2022 CAB 005935**; it is further

**ORDERED** that the Scheduling Order shall be amended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Discovery Requests | 04/24/2024 | 05/08/2024 |
| Close of Discovery | 05/24/2024 | 07/09/2024 |
| Filing Motions | 03/13/2024 | 07/26/2024 |
| Dispositive Motions Decided | 04/15/2024 | 08/26/2024; |

and it is further

**ORDERED** that the Mediation in *423 Kennedy St Holdings LLC. v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, Case No. 2023 CAB 004260, currently scheduled for September 17, 2024 is **VACATED.**

**SO ORDERED**.

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

Page **2** of **3**

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

Erin B. McAuliffe, Esq.
ebm@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants DP Capital, LLC d/b/a Washington Capital Partners, Russel Drazin,*
*Daniel Huertas, & WCP Fund I LLC*

Case 2:25-00230-ELG   Doc 1-2   Filed 09/04/24   Entered 09/04/24 19:05:28   Desc
Exhibit B - All Pleadings And All Docket Entries (Part II)   Page 1708 of 1716

eFiled
6/26/2024 10:03:56 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

      Plaintiff,

v.

DP Capital, LLC, et al.

      Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## MOTION TO QUASH SUBPOENA

Comes now Daniel Huertas ("Mr. Huertas" or the "Defendant"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 45(c)(3), and moves to quash the subpoena (the "Subpoena," a copy of which is attached hereto as Exhibit A) issued by Developer RE1 LLC (the "Plaintiff") to AT&T, and in support thereof states as follows:

**I.      Introduction**

In facial contravention of the Stored Communications Act, 18 U.S.C. § 2701, *et seq*., the Plaintiff is endeavoring to obtain electronic communications, from a third party electronic communications service. This is not merely a direct violation of controlling federal law but, too, an effort to pry into privileged communications between an attorney and a client, a husband and a wife, joint defendants, and parties sharing a common litigation interest. This is, too, an effort that would reveal myriad confidences at the heart of the Washington, DC real estate development and lending communities.

For these reasons, and as extrapolated upon *infra*, the Subpoena should be quashed.

1

## II.   Relevant Facts

The Subpoena is directed to AT&T, seeking records correlative to Mr. Huertas' cell phone account for the periods of September 1, 2022 through January 15, 2023 and June 1, 2023 through July 26, 2023. *See* Subpoena, Ex. A, at § A(6). Alternatively, the Subpoena seeks records for the full period between September 1, 2022 and July 26, 2023. *Id.* at § B(2).

Notably, this lawsuit was filed on December 16, 2022. *See* Complaint. As such, a large swath of the time period covered by the Subpoena runs concurrent with the pendency of this case.

The Subpoena seeks, *inter alia*, "Documents showing all Communications that occurred within the specified Date Ranges received or placed by the Subscriber." Subpoena, Ex. A, at § C(2). The word "Subscriber" is defined as Mr. Huertas. *Id.* at § A(5). "Communications," in turn, is defined to include "any form, whatsoever, of correspondence, discussion, instruction, report and/or written, electronic or oral exchange between two or more persons," *Id.* at § A(2), and is thusly inclusive of text messages and all other written forms of electronic communications.

The Subpoena also seeks *all* phone records for Mr. Huertas during the subject time period, *Id.* at § C(1), as well as all documents "received or sent by" Mr. Huertas during the same temporal range, *Id.* at § C(3).

The Subpoena appears to have been issued on or about June 13, 2024, though Mr. Huertas only became aware of the Subpoena on June 24, 2024.

## III.   Standard

Familiarly, this Honorable Court is required to quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies. . ." DC R. Civ. P. 45(c)(3)(A).  *See also Solers, Inc. v. Doe*, 977 A.2d 941, 950 (D.C. 2009).

2

Similarly, this Honorable Court may quash a subpoena that seeks confidential commercial information. DC R. Civ. P. 45(c)(3)(B).

**IV.     Argument: The Subpoena Should be Quashed**

    **a.   The Subpoena Violates the Stored Communications Act**

As a starting point, the usual Rule 45 analysis of the Subpoena is somewhat secondary insofar as the Subpoena is a facial violation of the Stored Communications Act (the "SCA"), being the embodiment of an activity proscribed by the federal criminal code. The relevant statute expressly prohibits AT&T—and all other electronic communication service providers—from divulging written communication records to third parties, even in the face of an otherwise-lawful subpoena, absent extenuating circumstances that generally arise only in the contexts of (i) imminent death or bodily injury; (ii) missing or exploited children; or (iii) requests promulgated by the owners of the subject communications account. This case does not nearly fall within any of the expressly limited exceptions and the Subpoena is accordingly illegal on its face.

  The SCA expressly provides, *inter alia*, ". . . a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service. . ." 18 U.S.C. § 2702(a)(1). As noted by the United States Court of Appeals for the Fifth Circuit:

> Generally, the SCA (1) prohibits unauthorized access to certain electronic communications; (2) restricts service providers from voluntarily disclosing the contents of customer communications or records to certain entities and individuals; and (3) permits a governmental entity to compel a service provider to disclose customer communications or records in certain circumstances.

*Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 250 (5th Cir. 2017) (citing 18 U.S.C. §§ 2701-03.

Precedent establishes that an "electronic communications service," for purposes of the SCA, is ". . . any service which provides to users . . . the ability to send or receive wire or electronic

<div align="center">3</div>

communications. . ." *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 974 (C.D. Cal. 2017) (quoting 18 U.S.C. § 2510(15); citing *Warshak v. United States*, 532 F.3d 521, 523 (6th Cir. 2008)). And an "electronic communication" is defined to be inclusive of, *inter alia*, "any wire or oral communication. . ." 18 U.S.C. § 2510(12).

Fortunately, little analysis is needed as to whether or not AT&T falls within the prism of the SCA or, in turn, whether or not text messages qualify as "electronic communications," since both are the subject of settled precedent. As observed by the United States District Court for the Central District of California:

> Because AT & T is an "electronic communication service" within the meaning of 18 U.S.C. § 2702(a)(1), it may not disclose the content of text messages unless Defendants are "an addressee or intended recipient of such communication or an agent of such addressee or intended recipient," or unless AT & T obtains "the lawful consent of the originator or an addressee or intended recipient of such communication."

*Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993 (C.D. Cal. 2012) (quoting 18 U.S.C. § 2702(b)).

Equally, "[t]he SCA does not contain an exception for civil discovery subpoenas." *Mintz*, 885 F. Supp. 2d at 991–92 (citing *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 976 (C.D. Cal. 2010); *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008); *Viacom International Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611 (E.D. Va. 2008); *O'Grady v. Superior Court*, 139 Cal.App.4th 1423, 1447 (Cal. App. 4th 2006)). *See also Bower v. Bower*, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) (noting that the SCA does not contain an exception for civil discovery).

Plainly, (i) AT&T is an electronic communications service under the SCA; (ii) text messages—and all other stored communications—fall within the scope of the SCA; (iii) this case does not concern imminent physical injury or a missing child; and (iv) the Subpoena seeks

<div align="center">4</div>

precisely those forms of records precisely forbade by the SCA. For these reasons alone, it is not merely appropriate but, indeed, something of a legal necessity, to quash the Subpoena.

**b. Even if Not a Violation of the SCA, the Subpoena Should be Quashed on Grounds of Privilege and Overbreadth**

One of the more harrowing aspects of the Subpoena is that the Plaintiff does not merely seek Mr. Huertas' phone records during a time period that is predominately—albeit not entirely—after this suit was commenced but, too, the Plaintiff seeks *all* of Mr. Huertas' phone records. These records will not only contain text messages with Mr. Huertas' counsel (subject to the attorney/client privilege), spouse (subject to the marital privilege), co-defendants (subject to the joint defense privilege), and persons holding a common interest in the outcome of this litigation (subject to the common interest privilege); these records will reveal the sensitive and/or privileged details of every call Mr. Huertas placed or received. Such records will show what Washington, DC developers are in talks with Mr. Huertas about obtaining loans, which borrowers are in frequent contact with the principal of their lender, and so much else—none of which is even vaguely relevant to the case at bar.

The District of Columbia recognizes each of the foregoing privileges. *See, e.g.*, *Adams v. Franklin*, 924 A.2d 993, 998 (D.C. 2007) ("The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection.") (quoting *In re Public Defender Serv.*, 831 A.2d 890, 900 (D.C.2003); citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); D.C. Code § 14-306(b) (setting forth the spousal privilege in the context of civil proceedings); *Minebea Co. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005) (discussing the "joint defense" and "common interest" privileges).

5

Plainly, any text messages with Mr. Huertas' counsel, spouse, and co-defendants are privileged, as are any text messages with parties with whom Mr. Huertas shares a common interest (including employees of DP Capital LLC and agents of the other entities whose interests are invoked by these proceedings). Equally, however, Mr. Huertas' phone records—showing what calls were placed, when they were placed, for how long they ensued, and so on and so forth—are, too, privileged when evidencing communications with parties falling into these categories. The District of Columbia Court of Appeals is express that privileged communications—especially between an attorney and a client—are "deemed worthy of maximum legal protection," *Adams*, 924 A.2d at 998, and such necessarily includes records showing when communications occurred, how long communications ensued, which party commenced the communications, and the general frequency of communications.

To be sure, these are enormously pertinent data points. Using a solely hypothetical example, and absolutely *not* proffering such example to be factual, if Mr. Huertas spoke to undersigned counsel in a series of five phone calls, totaling three hours and eighteen minutes, on the day he was served with this lawsuit, one might surmise that Mr. Huertas regarded this lawsuit as a point of supreme concern; rebutting that presumption—by explaining the calls actually involved unrelated cases with unrelated parties—would require delving even deeper into privileged waters. And, to the contrary, if Mr. Huertas did not speak with counsel, but for a brief three minute call, for weeks after being served with the summons and complaint herein, one might surmise that Mr. Huertas does not take seriously the issues in this case. No matter the frequency or nature of communications revealed, call records will expose information sacrosanct under the attorney/client privilege and accordingly well beyond the permissive contours of discovery.

6

The same goes for communications with Mr. Huertas' wife. Again positing a pure hypothetical that ought not be construed as a factual representation: If Mr. Huertas spoke to his wife at length on the day he was deposed in this litigation, but otherwise has phone records evidencing only short and fleeting conversations with his spouse, such would at least inferentially suggest Mr. Huertas felt the need to confer—extensively—with his spouse when facing the perils of litigation. Yet the Plaintiff is not entitled to such information; spousal communications are sacred for compelling public policy reasons and this case does not nearly present any exception to the underlying doctrine.

To be sure, the Plaintiff is seeking *all* of Mr. Huertas' phone records for a time span of as much as 328 days. These records will not only contain all of the foregoing privileged fodder but, too, the daily activities of an individual who operates a private lending business. The temporal scope is overly broad and the subject matter is even more broad; the Plaintiff is not seeking records of calls with the Plaintiff's own agents, or text messages with the Plaintiff's principal—the Plaintiff is seeking what basically amounts to a log of Mr. Huertas' personal and professional activities for a period of nearly 11 months. One could identify call counterparties to ascertain what companies are looking to refinance loans, or what borrowers may be having issues paying their loans. One could also examine text messages to see what borrowers are asking for extensions and what other borrowers are prepared to pay for new properties. This delves not merely into privileged territory but, too, highly confidential business territory; knowing from text messages that John Doe is prepared to pay X dollars to acquire a specific property, and is looking to line up financing for the acquisition, is a matter of enormous sensitivity wholly untethered to this case.

It is genuinely unclear why the Plaintiff would seek all of these records, absent some harassing or vexatious intent. The Subpoena is a patent effort to encroach on privileged

7

information, is wildly overbroad, and advances no properly-limited compelling purpose. The Plaintiff is looking for Mr. Huertas' personal communications—with *all* persons and companies—both before and after this suit was filed; this is truly an abuse of the discovery process and the Subpoena ought to be accordingly quashed.

## V.    Conclusion

WHEREFORE, Mr. Huertas respectfully prays this Honorable Court (i) quash the Subpoena; and (ii) afford such other and further relief as may be just and proper.

Dated: June 26, 2024                    Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for Mr. Huertas*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on Wednesday, June 25, 2024, I spoke with James Sadowski, counsel for the plaintiff herein, about concerns related to the Subpoena. I also e-mailed Mr. Sadowski on that date and he, in turn, sent me a substantive e-mail on that date, concerning the Subpoena. It does not appear the Plaintiff is willing to have the Subpoena quashed, though Mr. Sadowski and I do appear to be in accord concerning a separate, related issue, that is *not* raised in this motion because of our accord.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

8

1785

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 26th day of June 2024, and a notice of filing should be served on all counsel of

record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for SF NU, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS FILED BY SF NU, LLC

NOTICE IS HEREBY GIVEN that SF NU, LLC ("SNL") has filed a motion to dismiss

(the "Motion"), arguing Developer RE1 LLC ("DRL") has failed to join an indispensable party

1

insofar as this suit seeks equitable relief impacting a deed of trust but the current holder of that

deed of trust, JPK NewCo LLC, has not been made a party hereto. SNL seeks dismissal without

prejudice and does not oppose DRL being afforded leave to amend. A copy of the Motion is

attached hereto as Exhibit A and found at DE #1-2, pp. 1646-54. A copy of the opposition of DRL

is attached hereto as Exhibit B and found at DE #1-2, pp. 1662-78. A copy of the at-issue amended

complaint is attached hereto as Exhibit C and found at DE #1-2, pp. 1588-1616

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion

or if you would like the Court to consider your views, then ON OR BEFORE JULY 22, 2024, you

must file and serve a written objection to the Motion. The objection must be filed with the Clerk

of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001

and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a

complete specification of the factual and legal grounds upon which it is based. You may append

affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the

Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for July 23, 2024 at 10:00 AM.

The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom

video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at

Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

1788

Respectfully submitted,

Dated: July 4, 2024      By:    /s/ Maurice B. VerStandig
                    Maurice B. VerStandig, Esq.
                    Bar No. MD18071
                    The VerStandig Law Firm, LLC
                    9812 Falls Road, #114-160
                    Potomac, Maryland 20854
                    Phone: (301) 444-4600
                    mac@mbvesq.com
                    *Counsel for SF NU, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                    /s/ Maurice B. VerStandig
                    Maurice B. VerStandig

1789

eFiled
4/21/2024 11:53:53 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## <u>MOTION TO DISMISS</u>

Comes now SF NU, LLC ("SNL"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(7), and moves to dismiss the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof states as follows:

### I.    Introduction

This lawsuit concerns the Plaintiff's efforts to preempt the foreclosure of two deeds of trust, based upon a series of legally-unprecedented theories and factually-unmoored allegations. SNL has been added as a party to this case for reasons that are less-than-clear, other than that it appears the Plaintiff (i) believes suit must be brought against the holder of one of the two notes; and (ii) posits some broad, vague, and factually-unsupported theory of tort liability against SNL.

Notwithstanding the Plaintiff's wholesale failure to plead any allegations against SNL, aside from those generically lobbed at a grouping of parties of which the Plaintiff asserts SNL to be a part, SNL will preserve for another day the issues centered on the Plaintiff's failure to state a claim for which relief may be granted. For present purposes, however, the other aforementioned

1

issue looms large: the Plaintiff has failed to join an indispensable party to this litigation and, as such, can proceed no further.

As discussed in greater detail *infra*, the promissory note once held by SNL is now held by JPK NewCo LLC ("JNL"), a District of Columbia limited liability company. Insofar as JNL owns the note, and holds the rights arising under the correlative deed of trust, the joinder of JNL as a party to this suit is required under governing law.

## II.    Argument: The Plaintiff Has Failed to Join an Indispensable Party

On April 16, 2024, SNL assigned the deed of trust it formerly held, secured by the Plaintiff's real estate asset, to JNL. The subject assignment was recorded amongst the land records of the District of Columbia the following day. *See* Assignment of Deed of Trust, attached hereto as Exhibit A. Upon that assignment, JNL – being the current holder of the deed of trust and promissory note underlying this case – became a necessary party hereto.

The rules of this Honorable Court provide that "failure to join a party under Rule 19" is a defense properly raised by motion. D.C. R. Civ. P. 12(b)(7). Rule 19, in turn, provides, *inter alia*:

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

D.C. R. Civ. P. 19(a)(1).

JNL is subject to service of process, having a registered agent within the District of Columbia. And the joinder of JNL will not deprive this Honorable Court of subject matter jurisdiction as JNL's existence as a District of Columbia limited liability company subjects the entity to the general jurisdiction of this Honorable Court. D.C. Code § 13-422.

Here, the Plaintiff seeks to enjoin foreclosure of the deed of trust now held by JNL. It accordingly follows that such relief cannot be afforded without JNL being made a party hereto. Equally, JNL certainly claims an interest in the property that is the subject of this action and, should JNL not be joined hereto, this litigation would impede JNL's ability to protect that interest.

To be sure, SNL does not object to the Plaintiff being afforded leave to amend to join JNL as a defendant. And, in so amending, SNL is hopeful the Plaintiff will delineate what exactly the Plaintiff believes SNL has done to warrant being sued, as such is at-best unclear on the face of the current iteration of the pleading. For instant purposes, however, it is clear this suit cannot proceed in the absence of JNL, and dismissal is thusly warranted.

### III.     Conclusion

WHEREFORE, SF NU, LLC respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.


Dated: April 21, 2024                              Respectfully Submitted,

                                                  /s/ Maurice B. VerStandig
                                                  Maurice B. VerStandig, Esq.
                                                  DC Bar #1034066
                                                  The VerStandig Law Firm, LLC
                                                  9812 Falls Road, #114-160
                                                  Potomac, Maryland 20854
                                                  Telephone: 301-444-4600
                                                  Facsimile: 301-444-4600
                                                  Electronic Mail: mac@mbvesq.com
                                                  *Counsel for SF NU, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 21st day of April 2024, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

4

Exhibit A

When Recorded Return To:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **SF NU, LLC** ("Assignor"), a New Mexico limited liability company, having an office located at 1455 Research Boulevard, Suite 510, Rockville, MD 20850 hereby assigns and transfers to **JPK NEWCO LLC** ("Assignee"), a District of Columbia limited liability company, having an office located at 8401 Greensboro Drive, Suite 960, McLean, VA 22102, its successors and assigns, Assignor's rights, title and interests in and to that certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 among the land records of the District of Columbia from Developer RE1 LLC, a District of Columbia limited liability company, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, a Delaware limited liability company, as beneficiary, as well as all other documents memorializing, securing, or relating to the indebtedness secured by the Deed of Trust.

The real property and improvements thereon (if any) intended to be encumbered by the Deed of Trust is as follows:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof, the above-described land is designated in the Records of the Office of Tax and Revenue for assessment and taxation purposes as **Lot 0138** in **Square 3389**.

**IN WITNESS WHEREOF**, the undersigned has executed this Assignment of Deed of Trust as of the 15th day of April, 2024.

**SF NU, LLC,**
a New Mexico limited liability company

By: _____

Name: Jason Shrensky

Title: Manager

## ACKNOWLEDGEMENT

Rockville, MD
Montgomery County

:
: ss:
:

I HEREBY CERTIFY that on this _16_ day of _APRIL 2024_, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared **Jason Shrensky**, and acknowledged himself to be the Manager of **SF NU, LLC**, a New Mexico limited liability company, and acknowledged that he, being authorized so to do, executed the foregoing instrument in the aforesaid capacity for the purposes therein contained.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:

_____

JEFFREY ROSENBLOOM
Notary Public – State of Maryland
My Commission Expires Sept. 10, 2024

- 2 -

1796

**Doc #: 2024035623**
**Filed & Recorded**
**04/17/2024 11:32 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      $25.00

  **SURCHARGE**       $6.50

**TOTAL:**       $31.50

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## **[PROPOSED] ORDER**

Upon consideration of the Motion to Dismiss (the "Motion") filed by SF NU, LLC, any

opposition of the plaintiff herein thereto, the authorities cited in the Motion, and the record herein, it

is, this _____ day of _____, 2025, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the above-captioned matter be, and hereby is, DISMISSED WITHOUT

PREJUDICE, with the plaintiff having 21 days from the date of this order to file a third amended

complaint; should the plaintiff fail to do so, this case shall be DISMISSED WITH PREJUDICE without

further order of this court.


So Ordered.


_____
The Honorable Ebony Scott
Superior Court of the District of Columbia


Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

eFiled
5/6/2024 8:58:44 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

    *Defendants*.

2022-CAB-005935
Judge Ebony Scott
Next Event: Trial Readiness Hearing
Date: September 6, 2024

## OPPOSITION TO DEFENDANT SF NU, LLC'S MOTION TO DISMISS

The Plaintiff, Developer RE1 LLC ("Developer RE1"), by counsel, submits its

Opposition to the Motion to Dismiss ("Motion") filed by Defendant SF NU, LLC ("SNL"). SNL

asserts that JPK NewCo LLC ("JNL") is an indispensable party, and, therefore, the Court should

dismiss the Complaint against SNL. According to the Motion, SNL did not have any role with

respect to the loan documents at issue in this case until *after* the Second Amended Complaint

was filed, so it was impossible for Developer RE1 to name SNL as a defendant. For that reason

alone, the Motion should be denied. In further support of its Opposition, Developer RE1 states

as follows:

I.    THE FACTS IN THE SECOND AMENDED COMPLAINT[1]

Developer RE1 owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389

(the "Property"). Compl. ¶ 10.[2] Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 11.

---

[1]    Although the Court is already familiar with the facts as a result of the hearing held on Developer RE1's Motion for a Temporary Restraining Order, Developer RE1 has included an outline of those facts again for ease of reference since that hearing took place several months ago.

[2]    All "Compl." references are to the Second Amended Complaint filed on March 1, 2024.

The five defendants in this case are:  DP Capital, LLC, a company that uses the trade name

"Washington Capital Partners" ("WCP"); the WCP Fund I, LLC ("WCP Fund"), a company that

lends money in the District and is controlled by the WCP; Daniel Huertas ("Mr. Huertas"), an

individual that controls the WCP; SNL, a company that lends money in the District, and Russell

Drazin ("Mr. Drazin"), counsel to the WCP and the WCP Fund and the Trustee under two deeds

of trust.  *Id*. ¶¶ 2-7.

On December 23, 2021, the WCP helped Developer RE1 obtain an acquisition finance

loan for the Property, which original loan was later refinanced.  *Id.* ¶¶ 15-16.  As part of that

refinancing, Developer RE1 signed the following documents:

(1)     a Deed of Trust (the 'First DOT") for the Property that named the WCP
        Fund as Beneficiary and Mr. Drazin, as Trustee;

(2)     a Commercial Deed of Trust Note (the "First Note") in the amount of
        $3,579,000.00, as "Borrower", in favor of the WCP Fund;

(3)     a second Deed of Trust ("Second DOT") for the Property that also named
        the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and

(4)     a second Commercial Deed of Trust Note (the "Second Note") in the
        amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 15, 18, 21, and 24 (collectively the "loan documents").  The loan documents were form

documents prepared by the WCP that Developer RE1 was not allowed to modify.  *Id.* ¶¶ 16-17,

19-20, 22-23, and 25-26.  The loan documents provided security for the construction financing

loans that Developer RE1 needed to develop the Property.  WCP assigned its interest in the

Second DOT to SNL in an Assignment of Deed of Trust.  *Id.* ¶ 28.  As of November 3, 2022,

Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note.  *Id.*

¶ 30.

By November 15, 2022, the Defendants knew that Developer RE1 had secured alternative

financing for the Property with Main Street Bank and that Developer RE1 was expected to close

1800

on a refinancing loan in December of 2022. *Id.* ¶ 35. By November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 36. On November 30, 2022, Developer RE1 made a request to WCP for the payoff figures for both loans for the Property, and that same day WCP agreed to provide the requested payoff figures. *Id.* ¶¶ 36-37.

. As of December 8, 2022, there was no claim made by any of the Defendants that any default by Developer RE1 existed under any of the loan documents and by that date Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶¶ 42-43. That same day by phone, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out (the "2507 I Street Project"). *Id.* ¶ 43. SNL is believed to be controlled by Jason Shrensky. SNL is also believed to have a financial interest in the 2507 I Street Project. *Id.* ¶ 44. Mr. Huertas further stated that the unnamed investor "is very wealthy and will make life hard for you", and "has now bought the notes" on the Property and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* ¶ 45. Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them take care of the "$700,000 shortfall" on that project. *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 46. Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to try to force Developer RE1 or Mr. Negussie to pay for the debts owed for another, unrelated project, and that it was not

1801

appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to any

other development project involving Mr. Negussie.  *Id.* ¶ 47.

After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street

Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements under the loan documents

"were withdrawn" and that he would place Developer RE1 and the borrower on another,

unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their

loan documents.  *Id.* ¶ 48.   Mr. Huertas followed through with his threats to "make trouble" for

Mr. Negussie, 423 Kennedy, and Developer RE1 by arranging for an employee at WCP (Leslie

Calderas) to send two letters, each called a "Notice of Default" to Mr. Negussie by email.  *Id.*

¶ 61.  Each "Notice of Default" was unsigned and failed to include either a description of the

alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A".  *Id.*

¶¶ 63-65.  WCP also sent two Payoff Statements to Developer RE1.  The Payoff Statement for

the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a

"Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included a

demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default

Penalty".  *Id.* ¶¶ 69-71.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default"

claims.  *Id.* ¶ 71.  Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to

contact the WCP's counsel.  *Id.*  Developer RE1 believes that Mr. Huertas then instructed Mr.

Drazin to review every provision of the loan documents to try to find a reason to justify the

decision to declare that Developer RE1 was in "default".  *Id.* ¶¶ 74-75.  Developer RE1 also

believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact

that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real

reason why Developer RE1 was improperly placed in default, *i.e.,* because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 74-78.

The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 81-84. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 83. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 84-85.

All of the "defaults" that have been alleged were all claimed after-the-fact as a pre-text. *Id.* ¶ 111-12. There was also no proper legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶¶ 113-114. The Defendants deliberately timed their improper interference with Developer RE1's business relations to make it almost impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 117.

## II.    PROCEDURAL HISTORY

On December 16, 2022, Developer RE1 filed a Complaint against WPC, WCP Fund, Mr. Huertas and Mr. Drazin. JNL did not exist at the time Developer RE1 filed its Complaint or when Developer RE1 filed its first Motion for a Temporary Restraining Order a week later. *See* Exhibit A (screenprint showing the date of formation of JNL). On June 23, 2023, Mr. Drazin, on behalf of SNL, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). *Id.* ¶ 119. In response, Developer RE1 re-filed a

Motion for Temporary Restraining Order to Prevent Imminent Foreclosure Sale ("TRO

Motion"), which the Defendants opposed.  On July 25, 2023, the Court held a hearing and

granted the TRO Motion.  The Court ordered the Defendants to immediately cease taking any

action to foreclose on the Property pending further order of the Court.  The Court set a trial date

for September 9, 2024.

On March 7, 2024, Developer RE1 filed its Second Amended Complaint, adding SNL as

a defendant to the case and adding new claims against Mr. Drazin.  Developer RE1 added SNL

as a defendant because Developer RE1 saw that SNL was listed on the foreclosure notice, which

was issued six months after the First Amended Complaint was filed.  According to the Motion,

SNL assigned the Second Note and DOT to JNL on April 16, 2024, more than one month *after*

Developer RE1 filed the Second Amended Complaint.  *See* Mot. at 1.  Developer RE1 could not

have possibly known that SNL transferred the Second Note and DOT to JNL at the time the

Second Amended Complaint was filed.  JNL was formed on February 1, 2024, with none other

than Mr. Drazin listed as its registered agent.  The business address for JNL is also the business

address for the WCP.  The Motion appears to have been filed solely for purposes of delay and to

perhaps divert the attention of the Court away from SNL.

III.   Legal Argument

    A.   The Legal Standard for Indispensable Parties

        A motion to dismiss pursuant to Rule 12(b)(7) asserts that a complaint should be

dismissed for failure to join a party under Rule 19.  *See Asrat v. Trs. of Boston Univ.*, 2015 D.C.

Super. LEXIS 7, *4.  Courts are generally reluctant to grant Rule 12(b)(7) motions, and dismissal

is warranted only when the defect is serious and cannot be cured.  *Id.* (*quoting Direct Supply,

Inc. v. Specialty Hosps. Of Am., LLC*, 878 F. Supp. 2d 13, 23 (D.D.C. 2012)).  When ruling on a

6

1804

Rule 12(b)(7) motion, the Court must accept the allegations in the complaint as true and may consider matters outside the pleadings in order to determine whether Rule 19 requires that a party be joined.  *Id.*

> A party is necessary to litigation and should be joined if:
>
> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Super. Ct. Civ. R. 19(a).  The burden is on SNL to demonstrate that JNL is required under Rule 19.  *See Asrat*, 2015 D.C. Super. LEXIS 7 at *5-6.  It is clear, however, that SNL cannot meet its burden because JNL is not an indispensable party.

      B.    <u>The Court Can Adjudicate Developer RE1's Claims Without JNL.</u>

First, the Motion wholly fails explain why the Court cannot adjudicate Developer RE1's claims without joining JNL as a defendant.[3]  The Court can adjudicate Developer RE1's claims without joining JNL because any interest JNL has in the Second Note and DOT did not arise until *after* SNL improperly issued the Foreclosure Notice and after Developer RE1 filed the Secon Amended Complaint.  Put another way, SNL cannot assign away its liability to Developer RE1 to JNL.  Moreover, the Court can accord complete relief between Developer RE1 and SNL without JNL's presence.  Adding JNL as a defendant to this case will have no bearing on the six claims pending against SNL.  Developer RE1 asserts that it is SNL, not JNL, that engaged in unethical, outrageous conduct specifically designed to make Developer RE1's construction project fail.  SNL's role in this matter can be determined by Developer RE1 during discovery.

---

[3]      In fact, SNL fails to cite a single case in the Motion.

1805

C.      This Litigation Will Not Impede JNL's Ability to Protect Its Interest Because Mr.
        Drazin Cannot Foreclose on the Property.

SNL asserts that JNL is an indispensable party because JNL now owns the Second DOT,

and Developer RE1 seeks to enjoin foreclosure of the Second DOT.  Mot. at 2-3.    However,

just because JNL is now in possession of the Second DOT does not automatically make JNL an

indispensable party.  In fact, possession is not the test of whether a party is indispensable.  *Habib

v. Miller*, 284 A.2d 56, 57 (D.C. 1971).  Whether an entity is "indispensable" can only be

determined in the context of particular litigation.  *See id.*  Here, SNL has failed to demonstrate at

all how JNL's absence would undermine or hinder JNL's capability to safeguard its interests.

The Defendants are already temporarily enjoined from foreclosing on the Property, including Mr.

Drazin, who is responsible for initiating foreclosure proceedings as Trustee of the Second DOT.

Mr. Drazin is the named as Trustee in both the First and Second DOT -- and in the

Assignment attached to the Motion.  Compl. at ¶¶ 15 and 21.  While JNL could theoretically

instruct Mr. Drazin to initiate a foreclosure, it is Mr. Drazin, not JNL, that must conduct the

foreclosure.  *See, e.g., Paroni v. Quick*, 211 A.2d 765, 767 (D.C. 1965) ("The secured

debt under the first deed of trust, showing an unpaid balance of $4,597, being in default,

the trustees were directed by the Home Building Association of the District of Columbia, as

holder of the recorded first deed of trust, to foreclose under its terms.").  Pursuant to the Court's

August 15, 2023 Order, Mr. Drazin is prohibited from taking any action to foreclose on the

Property.  *See* August 15, 2023 Order at 5.  The Second Note and DOT could be transferred a

dozen times to a dozen different entities, and the outcome is still the same.  As long as Mr.

Drazin is the Trustee of the Second DOT,  Mr. Drazin is unable to foreclose on the Property

regardless of any instruction he receives from JNL (or any other entity).

Under the caselaw, the Court has to consider the events leading up to the dispute, the parties involved, and the nature of the claims being made. *See Habib*, 284 A.2d at 57. Here, there are allegations and claims involving unfair business practices – claims that the Court has already found are likely to succeed. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. Compl. at ¶¶ 81-84. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 83. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (i.e., for the 2507 I Street Project). *Id.* ¶ 84-85. After Developer RE1 asked WCP to provide a basis for the "default" claim, Mr. Drazin claimed that Developer RE1 was in "default" because of: a balance due to DC Water ($44,857.93) that resulted in a lien (the "DC Water Alleged Debt Claim"); the late payment of real estate taxes (the "Property Tax Late Payment Claim"); and that "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default". *Id.* ¶ 87.

Taking these past events into consideration within a broader context, the Court should find it troubling that SNL secretly transferred the Second Note and DOT to JNL on April 16, 2024, *after* Developer RE1 filed the Second Amended Complaint adding SNL as a defendant and *before* the date that SNL had to respond to the Second Amended Complaint. The connection between all of the Defendants and JNL is also disturbing because JNL appears to have been formed with Mr. Drazin's assistance. If the Court finds that JNL is an indispensable party, the cycle of the filing of motions to dismiss could never end. That is because there is nothing

1807

stopping the Defendants from creating endless new entities which they can use to continuously

transfer the Second Note and DOT to -- over and over again.  Each predecessor entity (like SNL)

could then file a motion to dismiss arguing that the new entity is an indispensable party.

IV.    CONCLUSION

For the foregoing reasons, Developer RE1 respectfully requests that the Count deny the

Motion to Dismiss filed by SNL.  A proposed order is attached.


                                        Respectfully submitted,

                                        GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 6, 2024                     /s/ Alexandria J. Smith
                                        James D. Sadowski (No. 446635)
                                        Alexandria J. Smith (No. 1781067)
                                        801 17th Street, N.W., Suite 1000
                                        Washington, DC  20006
                                        Telephone: (202) 452-1400
                                        Email:  jds@gdllaw.com | ajs@gdllaw.com
                                        *Counsel for Plaintiff Developer RE1 LLC*

10

4861-3174-1371.v3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2024, a true and correct copy of the

foregoing Opposition to Defendants' Motion to Dismiss was served using eFileDC and a notice

of service should be sent electronically by eFileDC to all counsel of record in this case.

/s/ Alexandria J. Smith
Alexandria J. Smith

4861-3174-1371.v3

1809

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, ET AL.

     *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event: Trial Readiness Hearing
Date: September 6, 2024

## [PROPOSED] ORDER DENYING MOTION TO DISMISS

Upon consideration of the SF NU, LLC's Motion to Dismiss ("Motion"), the Plaintiff's

Opposition thereto, and any reply, it is this _____ day of _____, 2024 hereby:

ORDERED, that the Motion is DENIED.

_____
Honorable Judge Ebony Scott
Associate Judge

Copies electronically to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
*Counsel for Plaintiff*

Maurice B. VerStandig, Esq.
*Counsel for Defendants*

4861-3174-1371.v3

1810

# EXHIBIT A

**311 Online (https://311.dc.gov)    Agency Directory (https://dc.gov/directory)**

**Online Services (https://dc.gov/online-services)    Accessibility (https://dc.gov/page/dcgov-accessibility-policy)**

Home (/Home.aspx)

Edit Account (/Account.aspx/AccountManagement)

Sign Out (/Account.aspx/LogOff?signoutFromCropLogin=true)

# JPK NewCo LLC - Initial File Number: L00007898479

| Main | Reports | Trade Names | Beneficial Owners |

## Entity Info

**Business Name**

JPK NewCo

**Suffix**

LLC

**Registration / Effective Date**

2/01/2024

**Commencement Date**

2/01/2024

**Entity Status**

Active

**Foreign Name**

**Date of Organization**

**State**

**Country**

## Business Address

**Line1**

8401 Greensboro Drive

**Line2**

Suite 960

| City | State | Zip |
|------|-------|-----|
| McLean | Virginia | 22102 |

## Agent

**Is non-commercial Registered Agent?**

Yes

**Name**

Russell S. Drazin

# Address

**Line1**
4400 Jenifer Street, NW

**Line2**
Suite 2

**City**            **State**                      **Zip**
Washington   District of Columbia   20015

**Email**
rdrazin@pardodrazin.com

## Return to Home

---

### District News

- Mayor's Public Schedule (https://mayor.dc.gov/newsroom)
- Citywide News (https://newsroom.dc.gov)
- Citywide Calendar (https://calendar.dc.gov/events)
- Subscribe to Receive Emails (https://service.govdelivery.com/accounts/DCWASH/subscriber/new)
- Subscribe to Text Alerts (https://hsema.dc.gov/page/alertdc)
- Subscribe to Newsletters (https://public.govdelivery.com/accounts/DCWASH/subscriber/new)

### District Initiatives

- Green DC (https://green.dc.gov)
- Grade DC (https://grade.dc.gov)
- Age-Friendly DC (https://agefriendly.dc.gov)
- Sustainable DC (https://sustainable.dc.gov)
- Connect DC (https://connect.dc.gov)
- Great Streets (https://greatstreets.dc.gov)

- Ready DC (https://ready.dc.gov)

**About DC**

- Open DC (https://open.dc.gov)

- Budget (https://cfo.dc.gov/budget)

- Emancipation (https://emancipation.dc.gov)

- Consumer Protection (https://oag.dc.gov/consumer-protection)

- Contracts (https://dc.gov/contracts)

- Property Quest (https://propertyquest.dc.gov)

- Track DC (https://track.dc.gov)

**Contact Us**

- Agency Director (https://directory.dc.gov)

- Call 311 (https://311.dc.gov)

- Contact the Mayor (https://dcforms.dc.gov/webform/executive-office-mayor-ask-mayor)

- Contact Agency Directors (https://dlcp.dc.gov/page/contact-agency-directors)

- FOIA Requests (https://foia.dc.gov)

- Report Website Problems (https://dcforms.dc.gov/webform/problems-dc-government-website)

- Send Feedback (https://feedback.dc.gov)

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

FILED
CIVIL ACTIONS BRANCH
MAR 07 2024
Superior Court
of the District of Columbia
Washington, D.C.

DEVELOPER RE1 LLC,

　　　*Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

　　　*Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC ("SF NU"). The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief. The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure. The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest. In

support of its Second Amended Complaint, Developer RE1 avers as follows:

4856-0691-6010.v1

1816

## THE PARTIES

1.     The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.     The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.     The second Defendant, WCP Fund 1, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.     The WCP controls the WCP Fund.

5.     The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.     The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

7.     The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

4856-0691-6010.v1

1817

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

8.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry,* which historically have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.     But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

### The Ownership of Developer RE1, Its Purpose, and the Property.

10.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.     Developer RE1 is partially owned by Mr. Negussie.

12.     Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.     The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

4856-0691-6010.v1

1818

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee. A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund. A true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee. A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

4856-0691-6010.v1

23.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25.     The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.     The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29.     The maturity date for the First Note and the Second Note was December 23, 2022.

30.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

4856-0691-6010.v1

1820

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

32.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.

Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas

wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of

5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

33.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via

Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the

November 15, 2022 email is attached as Exhibit F.

34.     As of November 15, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

35.     By as early as November 15, 2022, the Defendants each knew that Developer

RE1 had secured alternative financing for the Property with another lender named Main Street

Bank, and that Developer RE1 expected to close on the new refinancing loans in December of

2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.     As of November 30, 2022, there was no allegation made by any Defendant that

any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or

the Second DOT.

37.     On November 30, 2022, Developer RE1 made a request by email to WCP for the

payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by

Developer RE1 to WCP is attached as Exhibit H.

38.     That same day (November 30, 2022), Developer RE1 requested, and WCP

agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

6

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

39.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

40.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

41.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

42.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

1822

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the

"2507 I Street Project".

44.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

45.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

46.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

47.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

8

48.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan documents with the WCP Fund.

49.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

50.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the property located in the District at 423 Kennedy Street, NW.

51.     The Defendants knew that there is no legal or other business relationship between 423 Kennedy and Developer RE1.

52.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

53.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

54.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 in default under any of the loan documents for the Property, other than Mr. Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

55.     The Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

9

56.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

57.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

58.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

59.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

60.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment  of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

61.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

10

4856-0691-6010.v1

63.     Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP. The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

64.     Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.     The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.     Each Notice of Default did not contain any legal basis or other explanation for how or why Developer RE1 had defaulted under any of the loan documents.

67.     Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent. The "Notices" provision, which is Section 11.1 in both the First DOT and the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006

> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

> Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

11

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

72.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document. During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

74.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the Second DOT.

76.     As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

77.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

78.     The real reason that the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

.

13

1828

79.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

80.     There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

81.     As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that Developer RE1 was in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82.     The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans that they knew that Developer RE1 had secured with Main Street Bank.

83.     The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing loan with Main Street Bank.

84.     The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]     423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners, et al.*, 2022-CAB-005903.

85.    The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86.    The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

87.    Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

15

89.     Developer RE1 first became aware of that there may be outstanding DC Water

invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for

the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22,

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

claimed was due.

90.     On September 22, 2022, DC Water stated in an email that "the dispute deadline

date for these charges has expired" and that "[b]ills must be paid or disputed by their respective

due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,

2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already

expired by about sixty days.

91.     On September 22, 2022, Developer RE1 submitted (by email) a Petition for

Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for

an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the

Petition for Administrative Hearing are attached together as Exhibit P.

92.     Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1

reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim

"within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in

violation of the covenant in Section 7.6 (entitled "Judgments").

93.     Developer RE1 cannot be declared in "default" based upon the first pre-textual

basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because

cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section

7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

94. The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95. The First DOT and the Second DOT each have a Section 7.9 that are identical. Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT. Section 7.09 states:

> Other Indebtedness. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

96. The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97. The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022. True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively.

98. The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

99. The First DOT and the Second DOT contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

17

100. No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

101. On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103. The Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

104. In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred: (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105. The First DOT and the Second DOT do not define the term "affiliate." Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809 (6).

106. Developer RE1 does not control 423 Kennedy and vice versa.

107. Developer RE1 is not controlled by 423 Kennedy and vice versa.

108. There is also no common control of Developer RE1 and 423 Kennedy.

4856-0691-6010.v1

109.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

111.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

112.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated." *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

113.    The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

114.    There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

115.    If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

116.    The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally

19

and willfully disregarding Developer RE1's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

117.    The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022.  The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.    As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

120.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest.  Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against  All Defendants Except Mr. Drazin

121.    Paragraphs 1-120 of the Second Amended Complaint are incorporated by reference.

122.    Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

20

123.     The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124.     As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125.     As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126.     The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127.     Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

21

1836

## Count II
### Breach of the Duty of Good Faith and Fair Dealing
#### Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

128. Paragraphs 1–127 of the Second Amended Complaint are incorporated by reference.

129. Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

130. The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

131. The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

132. The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

133. The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

134. Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC: (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

COUNT III

DECLARATORY JUDGMENT

Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135. Paragraphs 1–134 of the Second Amended Complaint are incorporated by reference.

136. The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

137. The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

138. There is an actual and justiciable controversy between Developer RE1 and WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

139. It is settled law in the District that "equity abhors forfeitures ... [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

140. There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

141. There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

23

and the Second Note have unenforceable liquidated damages (and other) provisions, which

controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second

DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any

provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a

default by Developer RE1 after the fact, after the alleged default has already been cured (or is in

the process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c) the First DOT, the Second

DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that

are unenforceable and cannot be used to support any basis for a foreclosure.

### COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

142.    Paragraphs 1–141 of the Second Amended Complaint are incorporated by

reference.

143.    Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144.    The Defendants unethical, outrageous, and illegal conduct, as described in this

Second Amended Complaint, is causing irreparable harm to Developer RE1.  The Property is

unique, and Developer RE1 could lose its entire interest in the Property.

4856-0691-6010.v1

145.    Developer RE1 does not have an adequate remedy at law.

146.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

<div align="center">

COUNT V

BREACH OF FIDUCIARY DUTY

Count V is Asserted Against Defendant Drazin Only

</div>

147.    Paragraphs 1-146 of the Second Amended Complaint are incorporated by

reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and

has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving

simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the

Second DOT.

150.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,

the Lender Defendants.

<div align="center">25</div>

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT VI

DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID

Count VI is Asserted Against All Defendants

</div>

156.     Paragraphs 1-155 of the Second Amended Complaint are incorporated by reference.

157.     Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.     Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.     Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.     There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

161.     There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the

<div align="center">27</div>

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that

Defendant Drazin took while he had a conflict of interest must be either set aside or suspended

until Defendant Drazin bears his burden of proving that he was at all times faithful to his

fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and

the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second

Amended Complaint for which a jury trial is allowed under the law.


Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated: March 1, 2024

/s/ James D. Sadowski
_____
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

4856-0691-6010.v1

1843

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st  day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

4856-0691-6010.v1

1844

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for Daniel Huertas*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| v. | ) | (Cases Consolidated) |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEADLINE TO FILE AND SERVE OBJECTIONS
## TO MOTION TO QUASH SUBPOENA AND NOTICE OF HEARING THEREUPON

1

NOTICE IS HEREBY GIVEN that Daniel Huertas ("Mr. Huertas") has filed a motion to quash a subpoena issued by Developer RE1 LLC ("DRL") to AT&T ("AT&T"). A copy of the motion (the "Motion") is attached hereto as Exhibit A and found at DE #1-2, pp. 1708–16. A copy of the subpoena is attached hereto as Exhibit B.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion or if you would like the Court to consider your views, then ON OR BEFORE JULY 22, 2024, you must file and serve a written objection to the Motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for July 23, 2024 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

Respectfully submitted,

Dated: July 4, 2024      By:    /s/ Maurice B. VerStandig
                              Maurice B. VerStandig, Esq.
                              Bar No. MD18071
                              The VerStandig Law Firm, LLC
                              9812 Falls Road, #114-160
                              Potomac, Maryland 20854
                              Phone: (301) 444-4600
                              mac@mbvesq.com
                              *Counsel for Daniel Huertas*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                              /s/ Maurice B. VerStandig
                              Maurice B. VerStandig

eFiled
6/26/2024 10:03:56 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## **MOTION TO QUASH SUBPOENA**

Comes now Daniel Huertas ("Mr. Huertas" or the "Defendant"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 45(c)(3), and moves to quash the subpoena (the "Subpoena," a copy of which is attached hereto as Exhibit A) issued by Developer RE1 LLC (the "Plaintiff") to AT&T, and in support thereof states as follows:

### I.    Introduction

In facial contravention of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, the Plaintiff is endeavoring to obtain electronic communications, from a third party electronic communications service. This is not merely a direct violation of controlling federal law but, too, an effort to pry into privileged communications between an attorney and a client, a husband and a wife, joint defendants, and parties sharing a common litigation interest. This is, too, an effort that would reveal myriad confidences at the heart of the Washington, DC real estate development and lending communities.

For these reasons, and as extrapolated upon *infra*, the Subpoena should be quashed.

1

## II.      Relevant Facts

The Subpoena is directed to AT&T, seeking records correlative to Mr. Huertas' cell phone account for the periods of September 1, 2022 through January 15, 2023 and June 1, 2023 through July 26, 2023. *See* Subpoena, Ex. A, at § A(6). Alternatively, the Subpoena seeks records for the full period between September 1, 2022 and July 26, 2023. *Id.* at § B(2).

Notably, this lawsuit was filed on December 16, 2022. *See* Complaint. As such, a large swath of the time period covered by the Subpoena runs concurrent with the pendency of this case.

The Subpoena seeks, *inter alia*, "Documents showing all Communications that occurred within the specified Date Ranges received or placed by the Subscriber." Subpoena, Ex. A, at § C(2). The word "Subscriber" is defined as Mr. Huertas. *Id.* at § A(5). "Communications," in turn, is defined to include "any form, whatsoever, of correspondence, discussion, instruction, report and/or written, electronic or oral exchange between two or more persons," *Id.* at § A(2), and is thusly inclusive of text messages and all other written forms of electronic communications.

The Subpoena also seeks *all* phone records for Mr. Huertas during the subject time period, *Id.* at § C(1), as well as all documents "received or sent by" Mr. Huertas during the same temporal range, *Id.* at § C(3).

The Subpoena appears to have been issued on or about June 13, 2024, though Mr. Huertas only became aware of the Subpoena on June 24, 2024.

## III.     Standard

Familiarly, this Honorable Court is required to quash any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies. . ." DC R. Civ. P. 45(c)(3)(A).  *See also Solers, Inc. v. Doe*, 977 A.2d 941, 950 (D.C. 2009).

Similarly, this Honorable Court may quash a subpoena that seeks confidential commercial information. DC R. Civ. P. 45(c)(3)(B).

## IV.    Argument: The Subpoena Should be Quashed

### a.    The Subpoena Violates the Stored Communications Act

As a starting point, the usual Rule 45 analysis of the Subpoena is somewhat secondary insofar as the Subpoena is a facial violation of the Stored Communications Act (the "SCA"), being the embodiment of an activity proscribed by the federal criminal code. The relevant statute expressly prohibits AT&T—and all other electronic communication service providers—from divulging written communication records to third parties, even in the face of an otherwise-lawful subpoena, absent extenuating circumstances that generally arise only in the contexts of (i) imminent death or bodily injury; (ii) missing or exploited children; or (iii) requests promulgated by the owners of the subject communications account. This case does not nearly fall within any of the expressly limited exceptions and the Subpoena is accordingly illegal on its face.

 The SCA expressly provides, *inter alia*, ". . . a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service. . ." 18 U.S.C. § 2702(a)(1). As noted by the United States Court of Appeals for the Fifth Circuit:

> Generally, the SCA (1) prohibits unauthorized access to certain electronic communications; (2) restricts service providers from voluntarily disclosing the contents of customer communications or records to certain entities and individuals; and (3) permits a governmental entity to compel a service provider to disclose customer communications or records in certain circumstances.

*Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 250 (5th Cir. 2017) (citing 18 U.S.C. §§ 2701-03.

Precedent establishes that an "electronic communications service," for purposes of the SCA, is ". . . any service which provides to users . . .  the ability to send or receive wire or electronic

communications. . .” *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 974 (C.D. Cal. 2017) (quoting 18 U.S.C. § 2510(15); citing *Warshak v. United States*, 532 F.3d 521, 523 (6th Cir. 2008)). And an “electronic communication” is defined to be inclusive of, *inter alia*, “any wire or oral communication. . .” 18 U.S.C. § 2510(12).

Fortunately, little analysis is needed as to whether or not AT&T falls within the prism of the SCA or, in turn, whether or not text messages qualify as “electronic communications,” since both are the subject of settled precedent. As observed by the United States District Court for the Central District of California:

> Because AT & T is an “electronic communication service” within the meaning of 18 U.S.C. § 2702(a)(1), it may not disclose the content of text messages unless Defendants are “an addressee or intended recipient of such communication or an agent of such addressee or intended recipient,” or unless AT & T obtains “the lawful consent of the originator or an addressee or intended recipient of such communication.”

*Mintz v. Mark Bartelstein & Assocs., Inc.*, 885 F. Supp. 2d 987, 993 (C.D. Cal. 2012) (quoting 18 U.S.C. § 2702(b)).

Equally, “[t]he SCA does not contain an exception for civil discovery subpoenas.” *Mintz*, 885 F. Supp. 2d at 991–92 (citing *Crispin v. Christian Audigier, Inc.*, 717 F.Supp.2d 965, 976 (C.D. Cal. 2010); *Flagg v. City of Detroit*, 252 F.R.D. 346, 350 (E.D. Mich. 2008); *Viacom International Inc. v. Youtube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F.Supp.2d 606, 611 (E.D. Va. 2008); *O'Grady v. Superior Court*, 139 Cal.App.4th 1423, 1447 (Cal. App. 4th 2006)). *See also Bower v. Bower*, 808 F. Supp. 2d 348, 350 (D. Mass. 2011) (noting that the SCA does not contain an exception for civil discovery).

Plainly, (i) AT&T is an electronic communications service under the SCA; (ii) text messages—and all other stored communications—fall within the scope of the SCA; (iii) this case does not concern imminent physical injury or a missing child; and (iv) the Subpoena seeks

4

1851

precisely those forms of records precisely forbade by the SCA. For these reasons alone, it is not merely appropriate but, indeed, something of a legal necessity, to quash the Subpoena.

> **b. Even if Not a Violation of the SCA, the Subpoena Should be Quashed on Grounds of Privilege and Overbreadth**

One of the more harrowing aspects of the Subpoena is that the Plaintiff does not merely seek Mr. Huertas' phone records during a time period that is predominately—albeit not entirely—after this suit was commenced but, too, the Plaintiff seeks *all* of Mr. Huertas' phone records. These records will not only contain text messages with Mr. Huertas' counsel (subject to the attorney/client privilege), spouse (subject to the marital privilege), co-defendants (subject to the joint defense privilege), and persons holding a common interest in the outcome of this litigation (subject to the common interest privilege); these records will reveal the sensitive and/or privileged details of every call Mr. Huertas placed or received. Such records will show what Washington, DC developers are in talks with Mr. Huertas about obtaining loans, which borrowers are in frequent contact with the principal of their lender, and so much else—none of which is even vaguely relevant to the case at bar.

The District of Columbia recognizes each of the foregoing privileges. *See, e.g.*, *Adams v. Franklin*, 924 A.2d 993, 998 (D.C. 2007) ("The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection.") (quoting *In re Public Defender Serv.*, 831 A.2d 890, 900 (D.C.2003); citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)); D.C. Code § 14-306(b) (setting forth the spousal privilege in the context of civil proceedings); *Minebea Co. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005) (discussing the "joint defense" and "common interest" privileges).

Plainly, any text messages with Mr. Huertas' counsel, spouse, and co-defendants are privileged, as are any text messages with parties with whom Mr. Huertas shares a common interest (including employees of DP Capital LLC and agents of the other entities whose interests are invoked by these proceedings). Equally, however, Mr. Huertas' phone records—showing what calls were placed, when they were placed, for how long they ensued, and so on and so forth—are, too, privileged when evidencing communications with parties falling into these categories. The District of Columbia Court of Appeals is express that privileged communications—especially between an attorney and a client—are "deemed worthy of maximum legal protection," *Adams*, 924 A.2d at 998, and such necessarily includes records showing when communications occurred, how long communications ensued, which party commenced the communications, and the general frequency of communications.

To be sure, these are enormously pertinent data points. Using a solely hypothetical example, and absolutely *not* proffering such example to be factual, if Mr. Huertas spoke to undersigned counsel in a series of five phone calls, totaling three hours and eighteen minutes, on the day he was served with this lawsuit, one might surmise that Mr. Huertas regarded this lawsuit as a point of supreme concern; rebutting that presumption—by explaining the calls actually involved unrelated cases with unrelated parties—would require delving even deeper into privileged waters. And, to the contrary, if Mr. Huertas did not speak with counsel, but for a brief three minute call, for weeks after being served with the summons and complaint herein, one might surmise that Mr. Huertas does not take seriously the issues in this case. No matter the frequency or nature of communications revealed, call records will expose information sacrosanct under the attorney/client privilege and accordingly well beyond the permissive contours of discovery.

6

The same goes for communications with Mr. Huertas' wife. Again positing a pure hypothetical that ought not be construed as a factual representation: If Mr. Huertas spoke to his wife at length on the day he was deposed in this litigation, but otherwise has phone records evidencing only short and fleeting conversations with his spouse, such would at least inferentially suggest Mr. Huertas felt the need to confer—extensively—with his spouse when facing the perils of litigation. Yet the Plaintiff is not entitled to such information; spousal communications are sacred for compelling public policy reasons and this case does not nearly present any exception to the underlying doctrine.

To be sure, the Plaintiff is seeking *all* of Mr. Huertas' phone records for a time span of as much as 328 days. These records will not only contain all of the foregoing privileged fodder but, too, the daily activities of an individual who operates a private lending business. The temporal scope is overly broad and the subject matter is even more broad; the Plaintiff is not seeking records of calls with the Plaintiff's own agents, or text messages with the Plaintiff's principal—the Plaintiff is seeking what basically amounts to a log of Mr. Huertas' personal and professional activities for a period of nearly 11 months. One could identify call counterparties to ascertain what companies are looking to refinance loans, or what borrowers may be having issues paying their loans. One could also examine text messages to see what borrowers are asking for extensions and what other borrowers are prepared to pay for new properties. This delves not merely into privileged territory but, too, highly confidential business territory; knowing from text messages that John Doe is prepared to pay X dollars to acquire a specific property, and is looking to line up financing for the acquisition, is a matter of enormous sensitivity wholly untethered to this case.

It is genuinely unclear why the Plaintiff would seek all of these records, absent some harassing or vexatious intent. The Subpoena is a patent effort to encroach on privileged

7

information, is wildly overbroad, and advances no properly-limited compelling purpose. The Plaintiff is looking for Mr. Huertas' personal communications—with *all* persons and companies—both before and after this suit was filed; this is truly an abuse of the discovery process and the Subpoena ought to be accordingly quashed.

## V.    Conclusion

WHEREFORE, Mr. Huertas respectfully prays this Honorable Court (i) quash the Subpoena; and (ii) afford such other and further relief as may be just and proper.

Dated: June 26, 2024

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for Mr. Huertas*

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on Wednesday, June 25, 2024, I spoke with James Sadowski, counsel for the plaintiff herein, about concerns related to the Subpoena. I also e-mailed Mr. Sadowski on that date and he, in turn, sent me a substantive e-mail on that date, concerning the Subpoena. It does not appear the Plaintiff is willing to have the Subpoena quashed, though Mr. Sadowski and I do appear to be in accord concerning a separate, related issue, that is *not* raised in this motion because of our accord.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

8

1855

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 26th day of June 2024, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

9

1856

## Superior Court of the District of Columbia

### CIVIL DIVISION

**Check One:**

☑ **Civil Actions Branch**
500 Indiana Ave., N.W.
Room 5000
Washington, D.C. 20001
Telephone: (202) 879-1133

☐ **Landlord & Tenant Branch**
510 4th Street, N.W.
Room 110
Washington, D.C. 20001
Telephone: (202) 879-4879

☐ **Small Claims & Conciliation Branch**
510 4th Street, N.W.
Room 120
Washington, D.C. 20001
Telephone: (202) 879-1120

Developer RE1 LLC
_____
                    Plaintiff

**SUBPOENA FOR A CIVIL CASE**

v.

DP Capital, LLC d/b/a Washington Capital Partners et al.
_____
                    Defendant

**CASE NUMBER:** 2022-CAB-005935

**To:** AT&T
_____

☐ Check box if medical records are being requested

■ **YOU ARE COMMANDED** to appear in this Court at the place, date, and time specified below to testify in the above case.

| COURTROOM AND ADDRESS | DATE | TIME |
|---|---|---|
| | | |

■ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE | TIME |
|---|---|---|
| | | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition must designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which each person will testify. Super. Ct. Civ. R. 30(b)(6).

■ **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below *(list documents or objects)*:

| DOCUMENTS OR OBJECTS | | |
|---|---|---|
| See Attached List of Documents to be Produced | | |
| PLACE OF PRODUCTION | DATE | TIME |
| 801 17th Street N.W., Suite 1000, Washington, D.C. 20006 | June 28, 2024 | 10:00 a.m. |

■ **YOU ARE COMMANDED** to permit inspection of the following premises at the date, and time specified below.

| PREMISES | DATE | TIME |
|---|---|---|
| | | |

| ISSUING PERSON'S SIGNATURE AND TITLE (indicate if attorney for plaintiff or defendant) | DATE |
|---|---|
| *Alexandria Smith*, counsel for Developer RE1 LLC | June 13, 2024 |
| ISSUING PERSON'S NAME, ADDRESS AND PHONE NUMBER | |
| Alexandria J. Smith, 801 17th Street, N.W., Ste. 1000, Wash., DC 20006 (202) 452-1400 | |

Authorization as required by D.C. Code §14-307 and Brown v. U.S., 567 A.2d 426 (D.C. 1989), is hereby given for issuance of a subpoena for medical records concerning a person who has not consented to disclosure of the records and has not waived the privilege related to such records.

_____
                    JUDGE

(See Super. Ct. Civ. R. 45 (c) and (d) on the reverse side)
**WHITE - FOR RETURN OF SERVICE          YELLOW - FOR SERVICE**

CV-433A [Rev. June 2017]                                   Super. Ct. Civ. R. 45

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff,*

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

     *Defendants.*

2022-CAB-005935
Judge Ebony Scott
Next Event:  July 9, 2024
Close of Discovery

LIST OF DOCUMENTS TO BE PRODUCED PURSUANT TO
SUBPOENA DUCES TECUM TO AT&T

The Plaintiff, Developer RE1 LLC ("Developer RE1"), has issued a subpoena duces

tecum to AT&T.  The subpoena commands the production of documents from AT&T on June

28, 2024 (at 10:00 a.m.) at 801 17th Street N.W., Suite 1000, Washington D.C. 20006.

Responsive documents may also be sent electronically via email to jds@gdllaw.com and

ajs@gdllaw.com.

PART A - DEFINITIONS

1.     The term "Documents" includes electronically stored information, and means:

"writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or

data compilations—stored in any medium from which information can be obtained either directly

or, if necessary, after translation by the responding party into a reasonably usable form."  *See*

D.C. Superior Court Civil Procedure Rule 34(a)(1)(A).

2.     The term "Communications" means any form, whatsoever, of correspondence,

discussion, instruction, report and/or written, electronic or oral exchange between two or more

persons.

4865-2883-3720

3.    The term "Wireless Phone Records" means the phone records and call records produced, sent, or received by the Subject Number or by the Subscriber, including, but not limited to, text messages (and any images sent with text message) and phone call logs.

4.    The term "Subject Number" means phone number (703) 727-5464.

5.    The term "Subscriber" means Daniel Huertas. Mr. Huertas is believed to have a home address of 909 Chinquapin Road, McLean, VA 22102 and a business address of 8401 Greensboro Drive, Suite 960, McLean, VA 22102.

6.    The term "Date Ranges" means the periods between September 1, 2022 to January 15, 2023 and June 1, 2023 to July 26, 2023.

## PART B - INSTRUCTIONS

1.    In the event any document is withheld by you under a claim that it is privileged or subject to protection as trial-preparation materials, you must: (a) expressly make the claim; and (b) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim. *See* D.C. Super. Ct. Civ. R. 45(d)(2)(A).

2.    Unless otherwise specified by the context of the Request, the period for these requests is from September 1, 2022 to July 26, 2023.

## PART C - DOCUMENTS REQUESTED

1.    All Wireless Phone Records corresponding to the Subject Number and/or the Subscriber within the specified Date Ranges.

2.    Documents showing all Communications that occurred within the specified Date Ranges received or placed by the Subscriber.

3.      All Documents received or sent by the Subscriber within the specified Date

Ranges.

If you have any questions about this List of Documents, or need any additional

information, or would prefer to produce responsive documents directly to Plaintiff's counsel by

overnight courier or electronic means, please contact:

<div align="center">

James D. Sadowski, Esq. or
Alexandria J. Smith, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, NW - Suite 1000
Washington, DC  20006
(202) 452-1400 ext. 5407 (phone)
(202) 452-1400 ext. 5426 (phone)
jds@gdllaw.com (e-mail)
ajs@gdllaw.com (email)

</div>

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for SF NU, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION TO EXTEND SCHEDULING ORDER</u>

1

Comes now SF NU, LLC ("SNL"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 9006(b), and moves to extend the various deadlines in these consolidated cases, and in support thereof states as follows:

## I. Introduction

SNL was recently joined in these proceedings through the filing of a second amended complaint (the "Second Amended Complaint," as found at DE #1-2, pp. 1588-1616, and as attached hereto as Exhibit A) on March 1, 2024. A summons was thereafter issued on March 19, 2024, DE #1-2, pp. 1625-26, and served upon SNL on March 26, 2024, *Id*. at p. 1642. SNL, in turn, filed a motion to dismiss on April 21, 2024 (the "Motion to Dismiss," *Id*. at pp. 1646-54, attached hereto as Exhibit B), which is set for hearing on July 23, 2024. DE #3.

Yet discovery in these cases is set to close on July 9, 2024. DE #1-2 at pp. 1705-07. And there thusly exists a paradigm where the Motion to Dismiss will not even be heard until two weeks *after* the currently-scheduled close of discovery. Insofar as SNL does not seek dismissal with prejudice, but rather urges the joinder of a necessary party, a ruling on the Motion to Dismiss will almost assuredly result in either (i) a subsequent amended complaint being docketed; or (ii) SNL then filing an answer, affirmative defenses, and/or a counterclaim. And for this to all follow the close of discovery is simply untenable, going so far as to raise legitimate due process issues for SNL.

There exists, too, the simple logic that insofar as these consolidated cases have now been removed, a new trial schedule needs to be imposed. This Honorable Court's calendar does not mirror that of the Superior Court, the process for bringing motions to hearing differs in the two courts, and the trial-readiness procedure is also slightly different in the two courts. While SNL certainly does not wish to see this case languish, and is eager to proceed expeditiously should the

2

Motion to Dismiss not be granted, the currently-scheduled deadlines—including a dispositive motions deadline three days after the hearing on the Motion to Dismiss—are neither feasible nor pragmatic at this juncture in time.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged a new scheduling order be issued, permitting appropriate time for discovery to be taken and completed, allowing dispositive motions to trail the close of discovery, and establishing a pre-trial conference date following—or contemporaneous with—the adjudication of dispositive motions. These cases can—and should—move relatively quickly, and delay does not favor any of the parties hereto, but these cases also ought to proceed in a manner cognizant of the rights of the parties and the due process interests of SNL as well as any other parties that may be joined (with SNL urging that JPK NewCo LLC is a necessary, yet still-missing, party to these proceeding).

## II.  Standard

The Federal Rules of Bankruptcy Procedure allow for the enlargement of court-imposed deadlines "for cause shown." Fed. R. Bankr. P. 9006(b)(1). As noted in connection with an analogous provision of the Federal Rules of Civil Procedure, the standard "is not a high bar, but it does require some reasonable explanation for the party's delay." *Andrews v. Daughtry*, 994 F. Supp. 2d 728, 735 (M.D.N.C. 2014) (citing *Stanley v. Huntington Nat. Bank*, 492 Fed. Appx. 456 (4th Cir. 2012); *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3536691, at *17 (D. Md. Aug. 14, 2012); *Bonds v. Electrolux Home Prod., Inc.*, 2006 WL 3955825, at *3–4 (D. S.C. Dec. 6, 2006); *Strickland v. Alewine*, 2010 WL 679607, at *1 (D.S.C. Feb. 24, 2010)).

## III.  Argument: A New Scheduling Order is Appropriate

The parties hereto had not completed discovery at the time these cases were removed, and SNL had not commenced discovery insofar as SNL is waiting—as is familiar custom—to assess

3

the outcome of its Motion to Dismiss before expending time and resources on discovery. The

notion that the discovery deadline (and, with it, the other ensuing deadlines) ought to be extended

is accordingly rather uncontroversial in nature. The plaintiffs have not yet taken all the various

depositions they wish to conduct, the defendants—aside from SNL—are also yet to convene

certain depositions, and SNL wishes to take discovery (written and oral) if the Motion to Dismiss

is not granted (or if it is granted with leave to amend).

Familiarly, "[d]efendants have a right to take discovery so that they may prepare for trial.

. ." *Sorenson v. Minnesota*, 2022 WL 621151, at *2 (D. Minn. Mar. 3, 2022). And, unsurprisingly,

"[j]oinder of a new party will likely require additional discovery and delay to trial." *Castano v.

State Farm Mut. Auto. Ins. Co.*, 2015 WL 12838183, at *1 (M.D. Fla. July 7, 2015). *See also Davis

v. Perez*, 2017 WL 3567973, at *3 (D.N.J. Aug. 16, 2017) ("If joined, the new parties will likely

ask to re-open discovery which will extend the current scheduling deadlines.").

For the avoidance of ambiguity, none of the defendants objected to SNL being joined

through the Second Amended Complaint and SNL's grounds for seeking dismissal do *not* include

any assertion that the entity ought not have been joined at this temporal stage of the proceedings.

The issue here is not that SNL has been brought into these proceedings at a relatively late hour;

the issue is that since SNL has been brought into these proceedings—and it appears JPK NewCo

LLC still needs to be brought into these proceedings—the extant scheduling order is no longer

4

tenable, with SNL having a right to receive a ruling on the Motion to Dismiss and, should such not resolve in favor of SNL, to then proceed with the discovery process.[1]

SNL does not suggest this enlargement needs to be significant. A couple of months will more than suffice for the taking of discovery, during which time the plaintiffs—and other defendants—may continue with the discovery process as well. There is every reason to believe discovery may be concluded by September, with dispositive motions to follow two weeks thereafter and a pre-trial hearing to ensue before the autumn is too far along.

## IV.    Conclusion

WHEREFORE, SNL respectfully prays this Honorable Court (i) enter a new scheduling order in these consolidated cases; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 6, 2024            By:    /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for SF NU, LLC*

---

[1] It also remains to be seen if Wendell Webster, the Chapter 7 trustee of the estate of Charles Paret (the "Trustee"), will move to intervene in these proceedings. As observed in the Notice of Removal, DE #1, there is an intimate nexus between the allegations being advanced by the Trustee in a related adversary proceeding and the property rights at play in these consolidated proceedings. The Trustee asserts the debtor's estate has a partnership interest in some combination of the plaintiffs, defendants, loans, and/or real estate assets in these consolidated cases; given such posture, it would seem the Trustee may well wish to join in these proceedings to protect those interests.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for SF NU, LLC*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF HEARING ON MOTION TO EXTEND SCHEDULING ORDER</u>

NOTICE IS HEREBY GIVEN that SF NU, LLC ("SNL") has filed a motion to extend

scheduling order (the "Motion"), asking that a new scheduling order be issued in these

1

consolidated cases so that (i) SNL may take discovery following adjudication of a pending motion to dismiss (should the motion to dismiss not be granted); (ii) other parties may complete discovery; (iii) the Chapter 7 trustee may have occasion to assess if he wishes to intervene in these cases; and (iv) an expeditious—but orderly—pre-trial schedule may follow the close of discovery.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion or if you would like the Court to consider your views, then ON OR BEFORE JULY 22, 2024, you must file and serve a written objection to the Motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for July 23, 2024 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

1868

Respectfully submitted,

Dated: July 6, 2024    By:    /s/ Maurice B. VerStandig
                               Maurice B. VerStandig, Esq.
                               Bar No. MD18071
                               The VerStandig Law Firm, LLC
                               9812 Falls Road, #114-160
                               Potomac, Maryland 20854
                               Phone: (301) 444-4600
                               mac@mbvesq.com
                               *Counsel for SF NU, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July, 2024, a copy of the foregoing was served

electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

1869

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

FILED .
CIVIL ACTIONS BRANCH

MAR 07 2024

Superior Court
of the District of Columbia
Washington, D.C.

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, *ET AL.*

    *Defendants.*

Case No. 2022-CAB-005935
Judge Ebony Scott

## SECOND AMENDED COMPLAINT

COMES NOW THE PLAINTIFF, Developer RE1 LLC ("Developer RE1"), by

undersigned counsel, and sues DP Capital, LLC d/b/a Washington Capital Partners, the WCP

Fund I, LLC, Daniel Huertas, Russell Drazin, and SF NU, LLC ("SF NU"). The First Amended

Complaint includes claims for tortious interference with business relations, breach of the duty of

good faith and fair dealing, and permanent injunctive relief. The Second Amended Complaint

also seeks a declaratory judgment as to the meaning of certain provisions in the two Deeds of

Trust, and seeks injunctive relief to prevent a foreclosure. The Second Amended Complaint also

adds SF NU as a Defendant and adds a claim for breach of fiduciary duty against Mr. Drazin.

The Second Amended Complaint also seeks a declaratory judgment declaring that Mr. Drazin

cannot serve as the trustee under the two Deeds of Trust due to an actual conflict of interest. In

support of its Second Amended Complaint, Developer RE1 avers as follows:

4856-0691-6010.v1

## THE PARTIES

1.       The Plaintiff, Developer RE1 LLC ("Developer RE1") is a District of Columbia limited liability company that is authorized to do business in the District.

2.       The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

3.       The second Defendant, WCP Fund 1, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

4.       The WCP controls the WCP Fund.

5.       The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

6.       The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

7.       The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

2

4856-0691-6010.v1

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

### The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards"

8.　In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail*," says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to the highest ethical practices in the industry*, which historically have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

9.　But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make one of their client's construction projects fail.

### The Ownership of Developer RE1, Its Purpose, and the Property.

10.　Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property").

11.　Developer RE1 is partially owned by Mr. Negussie.

12.　Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

13.　The Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the Property and any the improvements that Developer RE1 made to the Property.

3

14.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an
acquisition finance loan for the Property with the WPC Fund.

The Loan Documents with the WCP and the WCP Fund.

15.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor,
signed a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as
Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First DOT is attached as Exhibit A.

16.     The First DOT was a form deed of trust that was prepared by Mr. Drazin as
counsel for the WCP and the WCP Fund.

17.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes
to the terms of the First DOT before it was signed.

18.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note
(the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.  A
true copy of the First Note is attached as Exhibit B.

19.     The First Note was a form of promissory note that was prepared by Mr. Drazin as
counsel for the WCP and the WCP Fund.

20.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes
to the terms of the First Note before it was signed.

21.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust
("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin
as Trustee.  A true copy of the Second DOT is attached as Exhibit C.

22.     The Second DOT was a form of deed of trust  prepared by Mr. Drazin as counsel
for the WCP and the WCP Fund.

4

1873

23.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second DOT before it was signed

24.    On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower", a copy of which is attached as Exhibit D.

25.    The Second Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

26.    The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second Note before it was signed.

27.    On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

28.    The WCP Fund appears to have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

29.    The maturity date for the First Note and the Second Note was December 23, 2022.

30.    As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT.

31.    As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First Note and the Second Note.

5

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 If Developer RE1 Did not
Accede to His Demands Regarding Another, Unrelated Development</u>

32.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr.
Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas
wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of
5505."  A copy of the November 3, 2022 email is attached as Exhibit E.

33.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via
Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the
November 15, 2022 email is attached as Exhibit F.

34.     As of November 15, 2022, there was no allegation made by any Defendant that
any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or
the Second DOT.

35.     By as early as November 15, 2022, the Defendants each knew that Developer
RE1 had secured alternative financing for the Property with another lender named Main Street
Bank, and that Developer RE1 expected to close on the new refinancing loans in December of
2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

36.     As of November 30, 2022, there was no allegation made by any Defendant that
any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or
the Second DOT.

37.     On November 30, 2022, Developer RE1 made a request by email to WCP for the
payoff figures for both loans for the Property.  A copy of the November 30, 2022 email sent by
Developer RE1 to WCP is attached as Exhibit H.

38.     That same day (November 30, 2022), Developer RE1 requested, and WCP
agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the

6

4856-0691-6010.v1

1875

second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I.

39.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal).

40.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

41.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed either the First Note, the Second Note, the First DOT, or the Second DOT.

42.     As of December 7, 2022, Developer RE1 had made all payments due under the First Note and the Second Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

43.     On December 8, 2022, Mr. Huertas told Developer RE1 during a telephone call with Mr. Negussie that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For

7

convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

44.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

45.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on Developer RE1 and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on the 2507 I Street Project.

46.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing" by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects".

47.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer RE1 or Mr. Negussie to pay for the debts of someone else on another, unrelated project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either Mr. Negussie or to be making threats to any other development project that Mr. Negussie was involved with.

8

4856-0691-6010.v1

48.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I

Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent

were withdrawn and that he would place Developer RE1 and the borrower on another, unrelated

project named 423 Kennedy St Holdings LLC ("423 Kennedy") in default under their loan

documents with the WCP Fund.

49.     The Defendants knew that 423 Kennedy is a domestic, sole purpose limited

liability company that is partially owned by Mr. Negussie.

50.     The Defendants knew that the sole purpose of 423 Kennedy is to develop the

property located in the District at 423 Kennedy Street, NW.

51.     The Defendants knew that there is no legal or other business relationship between

423 Kennedy and Developer RE1.

52.     The Defendants knew that 423 Kennedy does not control Developer RE1 and that

Developer RE1 does not control 423 Kennedy.

53.     The Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of

one another, and that those entities have no business relationship with each other.

54.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put

Developer RE1 in default under any of the loan documents for the Property, other than Mr.

Huertas' belief that he could put Developer RE1 in "default" under another, unrelated loan

because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street

Project.

55.     The Defendants knew that the developer of the 2507 I Street Project, and the

borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507

Holdings").

9

4856-0691-6010.v1

1878

56.     The Defendants knew that 2507 I Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

57.     The Defendants knew that there is no legal or other business relationship between Developer RE1 and 2507 Holdings.

58.     The Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings. The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

59.     The Defendants knew that Developer RE1 has no interest in the 2507 I Street Project

60.     The Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy or the 2507 I Street Project.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

61.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, another, unrelated development project being undertaken by 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email. A true copy of the email from Leslie Calderas is attached as Exhibit J. True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email are attached as Exhibit K and Exhibit L, respectively.

62.     The "Notice of Default" sent to Developer RE1 appears to reference the First DOT, the First Note, the Second DOT, and the Second Note.

10

63.     Each "Notice of Default" states that it was being sent by the "Vice President" of
the WCP, but neither notice was signed by anyone at the WCP. The WCP web site indicates that
the Vice President of the WCP is Christina Araujo.

64.     Each "Notice of Default" also states that it was referencing "a copy of the first
page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

65.     The lack of a signature on each "Notice of Default" and the failure by the WCP to
include the referenced exhibit with each "Notice of Default" are indications that the two notices
were hastily prepared by either Mr. Huertas or by someone else at the WCP.

66.     Each Notice of Default did not contain any legal basis or other explanation for
how or why Developer RE1 had defaulted under any of the loan documents.

67.     Each Deed of Trust contains a "Notices" provision that states how notices are
required to be sent. The "Notices" provision, which is Section 11.1 in both the First DOT and
the Second DOT states:

> All notices, demands, requests and other communications pursuant to the provisions of
> the Note and this Deed of Trust shall be in writing and shall be deemed to have been
> properly given or served for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight delivery service or a local
> courier service, charges prepaid, or three (3) calendar days after having been sent by
> United States Registered or Certified Mail - Return Receipt Requested, postage prepaid,
> to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA
> 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire,
> 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> (c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church,
> VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin,
> Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015
>
> Any of the parties may designate a change of address by notice in writing to the other.
> Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the

11

4856-0691-6010.v1

giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

See Ex. A (First DOT) at pages 17-18 and Ex. C (Second DOT) at pages 17-18.

68.     In the First DOT and the Second DOT, email is not listed as a permissible means to send notice.

69.     In the email that transmitted the letters purporting to be default notices under the two loans the WCP included two Payoff Statements. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" are attached as Exhibit M and Exhibit N, respectively.

70.     The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M.

71.     The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.</u>

72.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 was in default under any loan document. During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

73.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in

12

default of the loan documents when they each knew, in fact, that there were no defaults by
Developer RE1 under any of its loan documents.

74.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a
cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid
basis for declaring Developer RE1 to be in default under any of the loan documents and to
conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

75.     As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as
Trustee, to both the borrower (Developer RE1) and to the lender under the First DOT and the
Second DOT.

76.     As of December 8, 2022, Mr. Drazin knew that that his representation of the
Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as
Trustee to Developer RE1, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary
duty that he owed to Developer RE1, as borrower, and began to act solely on behalf of, and take
instructions solely from, and provide legal advice to, the Lender Defendants.

77.     Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that
he owed to Developer RE1, to try to find ways to justify -- after the fact -- the Lender
Defendants' issuance of the Default Notice.

78.     The real reason that the Lender Defendants improperly alleged that Developer
RE1 was in default under the loan documents was because the Lender Defendants and/or their
representatives, were angry that the 2507 I Street Project did not turn out the way that they
wanted it to.

13

4856-0691-6010.v1

79.     The First DOT and the Second DOT state that Mr. Drazin, as Trustee, could
collect of "commission" of 2.50% of the total amount then due, and another "commission" of
5.00% the proceeds of a foreclosure sale.

80.     There is a financial incentive for Mr. Drazin to inflate the amounts that are
claimed to be due from Developer RE1 by the WCP and the WCP Fund given that one of the two
"commissions" payable to him is based upon "the total amount then due".

<u>Money is the Root of All Evil</u>.

81.     As a result of their spite, their evil, improper motive, and their greed, the Lender
Defendants improperly alleged that Developer RE1 was in default under the loan documents to
try to line their own pockets and to cause as much financial and reputational damage as possible
to Developer RE1, to Mr. Negussie, and to 423 Kennedy.[1]

82.     The Lender Defendants also caused WCP to issue a "Notice of Default" to
Developer RE1 for the express purpose of trying to interfere with the refinancing of the loans
that they knew that Developer RE1 had secured with Main Street Bank.

83.     The Lender Defendants also caused WCP to issue each notice "Notice of Default"
to Developer RE1 for the express purpose of trying to prevent Developer RE1 from being able to
go to closing on the refinancing loan with Main Street Bank.

84.     The Lender Defendants also caused the WCP to issue the each "Notice of
Default" to Developer RE1 for the express purpose of improperly pressuring either Developer
RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF
NU (*i.e.,* 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

---

[1]     423 Kennedy has filed a lawsuit against the WCP, the WCP Fund, and Mr. Huertas for
similar claims of misconduct. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a
Washington Capital Partners, et al.,* 2022-CAB-005903.

4856-0691-6010.v1

85.     The Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Defendants claimed existed at the 2507 I Street Project.

86.     The actions of the Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1 and its members.  The Defendants' misconduct is a form of extortion.

The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

87.     Mr. Drazin came up with the cover story that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded be email that:

(a)     "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)     Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 is attached as Exhibit O.

88.     For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

15

89. Developer RE1 first became aware of that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due.

90. On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates." Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days.

91. On September 22, 2022, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. Developer RE1 is currently waiting for an administrative hearing to be scheduled. A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

92. Pursuant to Section 7.6 of the First DOT and the Second DOT, Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

93. Developer RE1 cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section 7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

16

94.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by Developer RE1 was Section 7.9 of the First DOT and the Second DOT.

95.    The First DOT and the Second DOT each have a Section 7.9 that are identical.

Section 7.9 is part of the "Events of Default" provisions of the First DOT and the Second DOT.

Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document or
> instrument evidencing or securing any indebtedness, obligation, or liability
> of any kind or nature - *other than the Indebtedness and the Obligations
> secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any
> of their affiliates, to Beneficiary,* whether now existing or hereafter created
> or arising, direct or indirect, material or immaterial, and whether absolute
> or contingent, joint, several or joint and severally and howsoever owned,
> held, or acquired.

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis

added).

96.    The second alleged default by Developer RE1 claimed by Mr. Drazin (the

Property Tax Late Payment Claim) involves the late payments of property taxes by Developer

RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

97.    The property taxes of $16,522.89 was paid by Developer RE1 on October 16,

2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True

copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R,

respectively.

98.    The late payment of taxes by Developer RE1 caused no harm whatsoever to the

WCP Fund.

99.    The First DOT and the Second DOT contain language indicating that a

foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been

cured.

17

100.    No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank.

101.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default under any of the loan documents and to conceal the real reason why Developer RE1 was improperly placed in default by the Defendants.

102.    The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

103.    The Defendants apparently claim that Section 7.9 is a cross-default provision.  A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

104.    In order for Section 7.9 to apply as a cross-default provision as to Developer RE1, two conditions must have occurred:  (1) Developer RE1 must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) Developer RE1 must be an "affiliate of" 423 Kennedy.

105.    The First DOT and the Second DOT do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

106.    Developer RE1 does not control 423 Kennedy and vice versa.

107.    Developer RE1 is not controlled by 423 Kennedy and vice versa.

108.    There is also no common control of Developer RE1 and 423 Kennedy.

18

1887

109. Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

110. Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred by Developer RE1 under either the First DOT or the Second DOT, even if 423 Kennedy was actually in "default" of any loan agreement with the WCP Fund.

111. Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Defendants falsely, and improperly, claimed that Developer RE1 was in default of the First DOT and/or the Second DOT.

112. The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that: "There is no right to cure. There is no right to deceleration. There is no right to reinstatement. The Loans are in default and are accelerated." *See* Ex. O (the use of "Loans" appears to be referring to the First Note, the First DOT, the Second Note, and the Second DOT).

### Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked

113. The Defendants have threatened to foreclose on the Property even though they know that they have no legal right to foreclose on the Property.

114. There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property.

115. If the Defendants follow through on their threat to foreclose on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

116. The Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally

and willfully disregarding Developer RE1's rights under the loan documents and under the law. The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

117.  The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022. The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property

118.  As of January 11, 2023, none of the Defendants had sent 423 Kennedy a written default notice that complies with the notice provisions of either the First Note, the First DOT, the Second Note, or the Second DOT.

119.  On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice").

120.  On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee due to his conflict of interest. Afte receiving that letter, Mr. Drazin refused to resign as Trustee,

## COUNT I
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against All Defendants Except Mr. Drazin

121.  Paragraphs 1-120 of the Second Amended Complaint are incorporated by reference.

122.  Developer RE1 was in the process of closing on a refinancing of the existing loans with Main Street Bank.

20

123.    The Defendants each knew of the existence of Developer RE1's business relations with Main Street Bank.

124.    As a result of the Defendants' improper demand that Developer RE1 pay Default Interest and Default Penalties, Developer RE1 will not be able to obtain a release of the First DOT and the Second DOT as part of the refinancing with Main Street Bank.

125.    As a direct result of the Defendants' direct and continuing interference with Developer RE1's business relations with Main Street Bank, Developer RE1 will not be able to go to closing on the refinancing loans with Main Street Bank.

126.    The Defendants have intentionally interfered with Developer RE1's development of the Property and Developer RE1's refinancing of the loans with Main Street Bank without any valid justification.

127.    Developer RE1 has been damaged by the Defendants' tortious interference with its business relations, and will continue to be damaged, if the Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully requests that this Honorable Court enter judgment in its favor and against Defendants WCP, WCP Fund 1, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendants' intentional interference with Developer RE1's business relations (currently estimated to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $1,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

21

1890

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### Count II Is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

128.   Paragraphs 1–127 of the Second Amended Complaint are incorporated by reference.

129.   Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

130.   The First Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

131.   The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

132.   The Second Note is a contract between Developer RE1 and the WCP Fund and/or SF NU.

133.   The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

134.   Through their improper conduct, the WCP, the WCP Fund, and/or SF NU have breached the implied covenant of good faith and fair dealing contained in the First Note, the First DOT, the Second Note, and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, and SF NU, LLC: (a) any and all damages (to be determined) that the Plaintiff has suffered will suffer as a result of the Defendants' intentional interference with contracts (currently estimated to be $3 million; (b) reasonable attorney's fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

22

4856-0691-6010.v1

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against Defendants WCP, the WCP Fund, and SF NU Only

135.    Paragraphs 1–134 of the Second Amended Complaint are incorporated by reference.

136.    The First DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

137.    The Second DOT is a contract between Developer RE1 and the WCP Fund and/or SF NU.

138.    There is an actual and justiciable controversy between Developer RE1 and WCP, the WCP Fund, and SF NU as to whether Developer RE1 is an "affiliate" of 423 Kennedy, which controversy is ripe for adjudication.

139.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.")).

140.    There is an actual and justiciable controversy between Developer RE1, the WCP, the WCP Fund, and SF NU as to whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property.

141.    There is an actual and justiciable controversy between Developer RE1 and the WCP, the WCP Fund, and SF NU as to whether the First DOT, the Second DOT, the First Note,

23

and the Second Note have unenforceable liquidated damages (and other) provisions, which

controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

III, this Honorable Court declare that: (a) under Section 7.9 of the First DOT and the Second

DOT, 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC; (b) any

provision of either the First DOT or the Second DOT that allows the WCP Fund to declare a

default by Developer RE1 after the fact, after the alleged default has already been cured (or is in

the process of being adjudicated), and without providing any notice to the borrower or any

opportunity to cure, and that results in either (i) additional interest and penalties entirely

disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is

unconscionable and enforceable as a matter of public policy; and (c) the First DOT, the Second

DOT, the First Note, and the Second Note have liquidated damages (and other) provisions that

are unenforceable and cannot be used to support any basis for a foreclosure.

<div align="center">

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE FIRST DOT,
THE SECOND DOT, AND ANY FORECLOSURE)
Count IV Is Asserted Against All Defendants

</div>

142.  Paragraphs 1–141 of the Second Amended Complaint are incorporated by

reference.

143.  Unless enjoined, the Defendants will continue to improperly claim that Developer

RE1 is in default of the First Note, the First DOT, the Second Note, and the Second DOT.

144.  The Defendants unethical, outrageous, and illegal conduct, as described in this

Second Amended Complaint, is causing irreparable harm to Developer RE1. The Property is

unique, and Developer RE1 could lose its entire interest in the Property.

<div align="center">24</div>

145.    Developer RE1 does not have an adequate remedy at law.

146.    If the Defendants are not enjoined, they will proceed to foreclose on the Property.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count

IV this Honorable Court enter an injunction prohibiting the Defendants from invoking any

remedy under the First Note, the First DOT, the Second Note, or the Second DOT, including,

without limitation, enjoining the Defendants: (a) from attempting to enforce any provisions in the

First Note, the First DOT, the Second Note, and the Second DOT that the court determines are

inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and

penalties; and (c) from initiating any foreclosure on the Property until after Developer RE1's

claims in Counts I, II and III of the First Amended Complaint have been decided.

<div align="center">

COUNT V
BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

</div>

147.    Paragraphs 1-146 of the Second Amended Complaint are incorporated by
reference.

148.    As Trustee under the First DOT and the Second DOT, Defendant Drazin had, and
has, a fiduciary duty to both the lender and the borrower (Developer RE1).

149.    Defendant Drazin has had an actual conflict of interest while serving
simultaneously as counsel for the Lender Defendants and as Trustee under the First DOT and the
Second DOT.

150.    While serving in his role as Trustee under the First DOT and the Second DOT,
Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of,
the Lender Defendants.

<div align="center">25</div>

4856-0691-6010.v1

151.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1, as borrower, under the First DOT and the Second DOT.

152.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

153.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has been in continual consultation with, and dominated by, the Lender Defendants.

154.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and the Lender Defendants became adverse, by continuing to act solely in favor of the Lender Defendants while Trustee, and by issuing correspondence and a Foreclosure Notice when he had actual knowledge of his conflict of interest.

155.    Due to his actual conflict of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Lender Defendants under the First DOT and the Second DOT.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for: (a) any and all damages (final amount to be determined) that the Plaintiff has suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated

26

to be at least $3 million); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre-and post-judgment interest.

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants

156.    Paragraphs 1-155 of the Second Amended Complaint are incorporated by reference.

157.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the First DOT and the Second DOT.

158.    Due to his conflict of interest as counsel for the Lender Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrower (Developer RE1) as Trustee under the First DOT and the Second DOT.

159.    Any actions taken by Defendant Drazin as Trustee under the First DOT and the Second DOT must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to both the borrower (Developer RE1) and the lender under the First DOT and the Second DOT.

160.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

161.    There is an actual and justiciable controversy between Developer RE1 and the Lender Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the

27

First DOT and the Second DOT due to an actual conflict of interest; and (b) that any action that

Defendant Drazin took while he had a conflict of interest must be either set aside or suspended

until Defendant Drazin bears his burden of proving that he was at all times faithful to his

fiduciary duties to both the borrower (Developer RE1) and the lender under the First DOT and

the Second DOT.

## DEMAND FOR A JURY TRIAL

Developer RE1, LLC demands a trial by jury as to all claims asserted in the Second

Amended Complaint for which a jury trial is allowed under the law.


Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.


Dated: March 1, 2024

/s/ James D. Sadowski
_____
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

28

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Second Amended Complaint was filed

through eFileDC this 1st day of March , 2024, and a notice of filing should be sent by eFileDC

to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

29

1898

eFiled
4/21/2024 11:53:53 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## MOTION TO DISMISS

Comes now SF NU, LLC ("SNL"), by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12(b)(7), and moves to dismiss the Second Amended Complaint (the "Complaint") filed by Developer RE1 LLC (the "Plaintiff" or "RE1"), and in support thereof states as follows:

### I. Introduction

This lawsuit concerns the Plaintiff's efforts to preempt the foreclosure of two deeds of trust, based upon a series of legally-unprecedented theories and factually-unmoored allegations. SNL has been added as a party to this case for reasons that are less-than-clear, other than that it appears the Plaintiff (i) believes suit must be brought against the holder of one of the two notes; and (ii) posits some broad, vague, and factually-unsupported theory of tort liability against SNL.

Notwithstanding the Plaintiff's wholesale failure to plead any allegations against SNL, aside from those generically lobbed at a grouping of parties of which the Plaintiff asserts SNL to be a part, SNL will preserve for another day the issues centered on the Plaintiff's failure to state a claim for which relief may be granted. For present purposes, however, the other aforementioned

1

issue looms large: the Plaintiff has failed to join an indispensable party to this litigation and, as such, can proceed no further.

As discussed in greater detail *infra*, the promissory note once held by SNL is now held by JPK NewCo LLC ("JNL"), a District of Columbia limited liability company. Insofar as JNL owns the note, and holds the rights arising under the correlative deed of trust, the joinder of JNL as a party to this suit is required under governing law.

## II.    Argument: The Plaintiff Has Failed to Join an Indispensable Party

On April 16, 2024, SNL assigned the deed of trust it formerly held, secured by the Plaintiff's real estate asset, to JNL. The subject assignment was recorded amongst the land records of the District of Columbia the following day. *See* Assignment of Deed of Trust, attached hereto as Exhibit A. Upon that assignment, JNL – being the current holder of the deed of trust and promissory note underlying this case – became a necessary party hereto.

The rules of this Honorable Court provide that "failure to join a party under Rule 19" is a defense properly raised by motion. D.C. R. Civ. P. 12(b)(7). Rule 19, in turn, provides, *inter alia*:

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

D.C. R. Civ. P. 19(a)(1).

1900

JNL is subject to service of process, having a registered agent within the District of Columbia. And the joinder of JNL will not deprive this Honorable Court of subject matter jurisdiction as JNL's existence as a District of Columbia limited liability company subjects the entity to the general jurisdiction of this Honorable Court. D.C. Code § 13-422.

Here, the Plaintiff seeks to enjoin foreclosure of the deed of trust now held by JNL. It accordingly follows that such relief cannot be afforded without JNL being made a party hereto. Equally, JNL certainly claims an interest in the property that is the subject of this action and, should JNL not be joined hereto, this litigation would impede JNL's ability to protect that interest.

To be sure, SNL does not object to the Plaintiff being afforded leave to amend to join JNL as a defendant. And, in so amending, SNL is hopeful the Plaintiff will delineate what exactly the Plaintiff believes SNL has done to warrant being sued, as such is at-best unclear on the face of the current iteration of the pleading. For instant purposes, however, it is clear this suit cannot proceed in the absence of JNL, and dismissal is thusly warranted.

### III.    Conclusion

WHEREFORE, SF NU, LLC respectfully prays this Honorable Court (i) dismiss the Complaint; and (ii) afford such other and further relief as may be just and proper.


Dated: April 21, 2024                                    Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for SF NU, LLC*

3

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic

filing system this 21st day of April 2024, and a notice of filing should be served on all counsel of

record.

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig, Esq.

4

# Exhibit A

Doc #: 2022015623
04/17/2024 11:32 AM

When Recorded Return To:

    Russell S. Drazin
    Pardo & Drazin, LLC
    4400 Jenifer Street, NW, Suite 2
    Washington, DC 20015

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **SF NU, LLC** ("Assignor"), a New Mexico limited liability company, having an office located at 1455 Research Boulevard, Suite 510, Rockville, MD 20850 hereby assigns and transfers to **JPK NEWCO LLC** ("Assignee"), a District of Columbia limited liability company, having an office located at 8401 Greensboro Drive, Suite 960, McLean, VA 22102, its successors and assigns, Assignor's rights, title and interests in and to that certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 among the land records of the District of Columbia from Developer RE1 LLC, a District of Columbia limited liability company, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, a Delaware limited liability company, as beneficiary, as well as all other documents memorializing, securing, or relating to the indebtedness secured by the Deed of Trust.

The real property and improvements thereon (if any) intended to be encumbered by the Deed of Trust is as follows:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof, the above-described land is designated in the Records of the Office of Tax and Revenue for assessment and taxation purposes as **Lot 0138** in **Square 3389**.

**IN WITNESS WHEREOF**, the undersigned has executed this Assignment of Deed of Trust as of the 15th day of April, 2024.

**SF NU, LLC,**
a New Mexico limited liability company

By: _____

Name: Jason Shrensky

Title: Manager

## ACKNOWLEDGEMENT

Rockville, MD

Montgomery County

:
:    ss:
:

I HEREBY CERTIFY that on this _16_ day of _APRIL 2024_, before me, the subscriber, a Notary Public of the jurisdiction aforesaid, personally appeared **Jason Shrensky**, and acknowledged himself to be the Manager of **SF NU, LLC**, a New Mexico limited liability company, and acknowledged that he, being authorized so to do, executed the foregoing instrument in the aforesaid capacity for the purposes therein contained.

IN WITNESS MY Hand and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC

My Commission Expires:

_____

**JEFFREY ROSENBLOOM**
Notary Public – State of Maryland
My Commission Expires Sept. 10, 2024

- 2 -

**Doc #: 2024035623**
**Filed & Recorded**
**04/17/2024 11:32 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      $25.00

  SURCHARGE      $6.50

**TOTAL:**      $31.50

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC,

     Plaintiff,

v.

DP Capital, LLC, et al.

     Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

**[PROPOSED] ORDER**

Upon consideration of the Motion to Dismiss (the "Motion") filed by SF NU, LLC, any

opposition of the plaintiff herein thereto, the authorities cited in the Motion, and the record herein, it

is, this _____ day of _____, 2025, by the Superior Court of the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, GRANTED; and it is further

ORDERED, that the above-captioned matter be, and hereby is, DISMISSED WITHOUT

PREJUDICE, with the plaintiff having 21 days from the date of this order to file a third amended

complaint; should the plaintiff fail to do so, this case shall be DISMISSED WITH PREJUDICE without

further order of this court.

So Ordered.

_____
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Russel Drazin, Esq.
Maurice VerStandig, Esq.

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
# Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn          *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
   *Nature[s] of Suit:*    01   Determination of removed claim or cause
                           21   Validity, priority or extent of lien or other interest
                                in property
                           91   Declaratory judgment
                           72   Injunctive relief – other


*Plaintiff*
————————————————
**Developer RE1 LLC**                      represented by **James D. Sadowski**
1629 K Street NW                           Greenstein DeLorme & Luchs, PC
Suite 300                                  801 17th Street, N.W.
Washington, DC 20006                       Suite 1000
                                           Washington DC, DC 20006
                                           202–452–1400
                                           Fax : 202–452–1410
                                           Email: jds@gdllaw.com
                                           *LEAD ATTORNEY*

                                           **Alexandria Jean Smith**
                                           Greenstein DeLorme and Luchs PC
                                           801 17th Street NW
                                           Suite 1000
                                           Washington, DC 20006
                                           202–452–1400
                                           Email: ajs@gdllaw.com
                                           *LEAD ATTORNEY*


*Plaintiff*
————————————————
**423 Kennedy St Holdings LLC**            represented by **James D. Sadowski**
1629 K Street, NW                          (See above for address)
Suite 300                                  *LEAD ATTORNEY*
Washington, DC 20006
                                           **Alexandria Jean Smith**
                                           (See above for address)
                                           *LEAD ATTORNEY*


V.

*Defendant*
————————————————
**WCP Fund I LLC**                         represented by **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.            The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC               9812 Falls Road
1452 W. Horizon Ridge Pkwy                 #114–160
#665                                       Potomac, MD 20854

1

Henderson, NV 89012                           301−444−4600
301−444−4600                                  Email: mac@mbvesq.com

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**DP Capital LLC**                            represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                            (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**SF NU, LLC**                                represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                            (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Daniel Huertas**                            represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                            (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Russell Drazin**                            represented by **Maurice Belmont VerStandig**
Pardo Drazin LLC                                            (See above for address)
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**JPK NewCo LLC**                             represented by **Maurice Belmont VerStandig**
8401 Greensboro Drive                                       (See above for address)
Suite 960
McLean, VA 22102

*Defendant*
−−−−−−−−−−−−−−−−−−−−−−−
**Shaheen Sairi**                             represented by **Shaheen Sairi**
                                                            PRO SE

| Filing Date | # | | Docket Text |
|-------------|---|---|-------------|
| 07/04/2024 | | 1 | Adversary case 24−10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A − Meeting of Creditors Transcript # 2 Exhibit B − All Pleading |

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24−10023−ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Dismiss # 2 Exhibit B − Opposition to Motion to Dismiss # 3 Exhibit C − Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Quash Subpoena # 2 Exhibit B − Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period − *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A − Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B − Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A − First Developer RE1 Promissory Note # 2 Exhibit B − Second Developer RE1 Promissory Note # 3 Exhibit C − First Developer RE1 Deed of Trust # 4 Exhibit D − Second Developer RE1 Deed of Trust # 5 Exhibit E − First 423 Kennedy Street Promissory Note # 6 Exhibit F − Second 423 Kennedy Street Promissory Note # 7 Exhibit G − First 423 Kennedy Street Deed of Trust # 8 Exhibit H − Second 423 Kennedy Street Deed of Trust # 9 Exhibit I − Developer RE1 Notice of Default # 10 Exhibit J − 423 Kennedy Street Notice of Default # 11 Exhibit K − Developer RE1 Affidavit of Non−Residential Mortgage Foreclosure # 12 Exhibit L − 423 Kennedy Street Affidavit of Non−Residential Mortgage Foreclosure # 13 Exhibit M − Developer RE1 Notice of Foreclosure # 14 Exhibit N − 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O − Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

3

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non−Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

6

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # <u>1</u> Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # <u>2</u> Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # <u>3</u> Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # <u>4</u> Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | <u>47</u> | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>46</u> Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>46</u>,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | <u>48</u> | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)<u>44</u> Motion to Dismiss Adversary Proceeding, <u>45</u> Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, <u>46</u> Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>44</u>, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>46</u>, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) <u>48</u> Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | <u>50</u> | BNC Certificate of Mailing – PDF Document. (RE: related document(s)<u>48</u> Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | <u>51</u> | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:<u>46</u> Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | <u>52</u> | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>44</u> Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, <u>46</u> Motion for Remand.) (Attachments: # <u>1</u> Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | <u>53</u> | Consent Order Granting Motion To Extend Deadlines. (Related Document #: <u>52</u>) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | <u>54</u> | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>44</u> Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # <u>1</u> Exhibit Response to Statement of Material Facts in Dispute # <u>2</u> Exhibit Declaration of Mel Negussie # <u>3</u> Exhibit DC Code Section 28–3104 # <u>4</u> Exhibit DC Code Section 28–3105 # <u>5</u> Exhibit First TRO Order # <u>6</u> Exhibit Second TRO Order # <u>7</u> Exhibit Developer RE1 Loan history # <u>8</u> Exhibit 423 Kennedy Loan History # <u>9</u> Exhibit Huertas Transcript Excerpts # <u>10</u> Exhibit 4–7–23 Order # <u>11</u> Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for Russell Drazin*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| v. | ) | (Cases Consolidated) |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MOTION FOR SUMMARY JUDGMENT ON CLAIMS AGAINST RUSSELL DRAZIN</u>

1

Comes now Russell Drazin ("Mr. Drazin" or the "Defendant"),[1] by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56, and moves for summary judgment on all claims against Mr. Drazin, and in support thereof states as follows:

## I.     Introduction

At core, these two consolidated cases denote the efforts of Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") to augment existing law such that consumer protections attach to commercial loans. Yet one aspect of the entities' claims goes even a step further, seeking to undermine the long established—and legally well-moored—tradition of secured lenders having their legal counsel serve as trustees in connection with foreclosure proceedings. DRL and 423 Kennedy (collectively, the "Plaintiffs," and each a "Plaintiff") surmise that Mr. Drazin committed legal error in both serving as counsel to WCP Fund I LLC ("WCP") and serving as a trustee under deeds of trust in favor of WCP. As a matter of law, the Plaintiffs are wrong.

Yet even if, *arguendo*, the Plaintiffs could find some legal foundation for their claims, the facts of these cases reveal a far simpler and more elementary error in the tort-based causes of action against Mr. Drazin: since neither DRL nor 423 Kennedy has seen its respective real estate asset actually foreclosed, and since Mr. Drazin has not actually carried out a foreclosure auction, it is a legal impossibility for his actions to have occasioned any compensable damages. Mr. Drazin is being sued for something that, as a direct byproduct of this litigation, everyone agrees he has not actually done.

---

[1] Mr. Drazin has various co-defendants in these consolidated cases. This motion is brought solely on behalf of Mr. Drazin and the term "Defendant" is accordingly defined to solely reference Mr. Drazin. Where co-defendants are referenced herein, they are separately identified.

2

To be sure, the inclusion of Mr. Drazin in these proceedings is not merely legally improper, but, too, the seeming work of vexatious gamesmanship. Mr. Drazin has been the principal outside counsel of WCP and DP Capital LLC ("DPCL") since the entities' inception. Joining Mr. Drazin as a defendant in these consolidated cases has not only furnished the Plaintiffs with cover for the otherwise-unfathomable act of propounding discovery on the defendants' counsel but it has, too, served to effectively sideline Mr. Drazin from serving as litigation co-counsel with the undersigned.

These are unseemly ends beget by unseemly litigation tactics and, as these cases now progress, it is appropriate for these improper maneuvers to proceed no further. The actions of Mr. Drazin, as a trustee, have been uniformly in accord with controlling standards. And, in any event, the actions cannot have invited damages.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged summary judgment be entered in favor of Mr. Drazin, and against the Plaintiffs, in these consolidated cases.

## II.    Standard

The standard for a motion seeking summary judgment is familiarly set forth in the Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. To determine what facts are "material," a court must look to the substantive law on

3

which each claim rests. A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. All evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party. However, a nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the ultimate burden of proof at trial." By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*, 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

4

## III. Material Facts Not in Dispute

1. On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 and $524,000.00, respectively (the "<u>DRL Promissory Notes</u>"). *See* DRL Promissory Notes, attached hereto as Exhibits A and B.

2. The DRL Promissory Notes are each secured by a deed of trust (collectively, the "<u>DRL Deeds of Trust</u>") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "<u>DRL Property</u>"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D.

3. Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 and $1,256,000.00, respectively (the "<u>423 Kennedy Notes</u>"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F.

4. The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "<u>423 Kennedy Deeds of Trust</u>") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "<u>423 Kennedy Property</u>"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H.

5. Mr. Drazin is the trustee named in the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust. *See* DRL Deeds of Trust, Exhibits C and D; 423 Kennedy Deeds of Trust, Exhibits G and H.

6. After DRL and 423 Kennedy both allowed senior liens to accrue on their respective properties and, after DRL and 423 Kennedy were both habitually late making payments on their respective promissory notes, WCP declared all four loans to be in default in December 2022. *See* Notices of Default, attached hereto as Exhibits I and J.

5

7.     Subsequently, and only after the respective loans matured pursuant to their express terms, without payment being made, WCP executed and recorded affidavits of non-residential mortgage foreclosures for both the DRL Property and the 423 Kennedy Property. *See* Affidavits of Non-Residential Mortgage Foreclosure, attached hereto as Exhibits K and L.[2]

8.     Consistent with governing law, notices of foreclosure were recorded shortly thereafter, for both the DRL Property and the 423 Kennedy Property. *See* Notices of Foreclosure, attached hereto as Exhibits M and N.[3]

9.     Mr. Drazin proceeded, as trustee under the deeds of trust, to mail the foreclosure notices to the Plaintiffs, to retain the services of an auctioneer, and to ensure the foreclosure auctions were appropriately advertised in *The Washington Post*. *See* Affidavit of Daniel Huertas, attached hereto as Exhibit O, at ¶ 4.

10.     The Superior Court of the District of Columbia enjoined both foreclosure sales from occurring, prior to the times at which they were fixed, and both WCP and Mr. Drazin honored the subject injunctions, proceeding no further. *Id*. at ¶ 5.

11.     Mr. Drazin is, and for many years has been, outside counsel to WCP and DPCL. *Id*. at ¶ 6.

---

[2] Somewhat confusingly, an "Affidavit of Non-Residential Mortgage Foreclosure," in the District of Columbia, is an affidavit indicating that such a foreclosure *will* occur—not an affidavit memorializing the occurrence of such a foreclosure. These are thusly prospective documents, prepared by the lender (not the trustee), and not records of an auction having actually been conducted.

[3] Similarly, notices of foreclosure are prospective documents memorializing that a foreclosure *will* occur—not that one has already been conducted. *See, supra,* n. 2.

6

## IV.  Argument: Summary Judgment is Proper

### a.  Mr. Drazin Has Not Breached any Fiduciary Duties

Both Plaintiffs are suing Mr. Drazin solely for breach of fiduciary duty.[4] At the core of such claims is a contention that Mr. Drazin, as trustee under the four deeds of trust, owed some ill-defined duty to not merely abide by the rigors of the appointing documents but, too, to act as some variety of an arbiter or third-party neutral. The Plaintiffs theorize Mr. Drazin was charged adjudicating any disputes between and amongst the Plaintiffs and WCP whilst, simultaneously, forbearing from proceeding with a foreclosure until such a time as the Plaintiffs either consented to the relief or Mr. Drazin's independent factual inquiry satisfied him—by some equally ill-defined burden—of the equitable propriety of foreclosing. This is not now, and never has been, the job of a trustee under a deed of trust—in either a commercial *or* consumer context, in the District of Columbia. And this proposed regime, if accepted, would not only undermine long-preserved norms

---

[4] The two operative complaints also state putative claims for "injunctive relief," against Mr. Drazin, but injunctive relief is a remedy—not a cause of action. *See, e.g., Equitas Disability Advocates, LLC v. Bryant*, 134 F. Supp. 3d 209, 222 (D.D.C. 2015) ("…the claim for injunctive relief must also be dismissed as injunctive relief is a type of remedy, not a freestanding cause of action.") (citing *Base One Techs., Inc. v. Ali*, 78 F.Supp.3d 186, 199 (D.D.C. 2015); *Johnson v. District of Columbia*, 49 F.Supp.3d 115, 117 n. 1 (D.D.C. 2014); *Guttenberg v. Emery*, 41 F.Supp.3d 61, 70 & n. 5 (D.D.C. 2014)); *Butler v. Georgetown Univ.*, 2022 WL 1773479, at *2 (D.D.C. 2022) ("A request for injunctive relief is 'a remedy and does not assert any separate cause of action.'") (quoting *Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 341 (D.D.C. 2016)); *C.F. Folks, Ltd. v. DC Jefferson Bldg., LLC*, 308 F. Supp. 3d 145, 152 (D.D.C. 2018) ("Injunctive relief, however, ' 'is not a freestanding cause of action, but rather ...a form of relief to redress' ' a plaintiff's other claims.") (quoting *Johnson v. Mao*, 174 F.Supp.3d 500, 523–524 (D.D.C. 2016) (quoting *Base One Techs., Inc.*, 78 F.Supp.3d at 199))).

of lenders utilizing their counsel as trustees but, too, would grind to a halt the commercial secured

paper market.[5]

    This Honorable Court has previously had occasion to observe the duties, *vel non*, owed by

trustees under deeds of trust, noting—in a discussion of precedent from the District of Columbia

Court of Appeals—the following standard:

> While recognizing that a trustee under a deed of trust owes fiduciary duties both to
> the noteholder and to the borrower, the court also stated that, as a general
> proposition, trustees of deeds have only those powers and duties imposed by the
> trust instrument itself, coupled with the applicable statute governing foreclosure
> sales in the District of Columbia.

*In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortgage and*

*Inv. Co.*, 412 A.2d 1194, 1197 (D.C. 1980)).

    *Rothenberg* and *Perry* are not outlying cases, either. As observed as far back as 1974, by

the United States Court of Appeals for the District of Columbia Circuit:

> A trustee under a deed of trust with conventional provisions, such as we have here,
> is basically a trustee of a power to convey title under certain circumstances, i.e.,
> after a forced sale or payment. His powers and duties must be exercised with
> religious fidelity to ethical principles but his management responsibilities fall short
> of those conferred on trustees generally.

---

[5] Lest this seem hyperbolic, the contention merits repetition: if trustees under deeds of trust
(whether counsel or laypersons) were required to forbear from foreclosing until the consent of
borrowers was obtained (something that, self-evidently, appears unlikely to often occur), or until
an entire adjudicative process plays out in some undefined tribunal helmed by the trustee, the entire
system of non-judicial foreclosures in the District of Columbia would almost-assuredly collapse
and, with that system, so too would collapse the market for the commercial paper secured by deeds
of trust. Non-judicial foreclosures would quickly become a thing of the past, atrophying in favor
of solely-judicial foreclosures, with lenders being at the oft-protracted temporal mercy of the
Superior Court to obtain possession of their collateral. No trustee of sound judgment would dare
take on the role of *ad hoc* judge, weighing the claims of lenders and borrowers against one another
before rendering a decision, for plain fear of facing a suit like the above-captioned action. It is not
merely that the regime proposed by the Plaintiffs is wildly at odds with the one that actually exists;
it is, too, that the regime proposed by the Plaintiffs is wildly at odds with the realistic contours of
what is actually tenable.

*S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 378 n. 21 (D.C. Cir. 1974). *See also Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) ("Trustees on deeds generally 'have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia.' Trustees on deeds must exercise their powers 'with religious fidelity to ethical principles.' Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.") (quoting *Rothenberg*, 173 B.R. at 16 (citing *Perry*, 412 A.2d at 1197); *S & G Inv.*, 505 F.2d at 377 n. 21; citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)).

From this Honorable Court's holding in *Rothenberg*, the District of Columbia Circuit's holding in *S &G Inv.*, the United States District Court for the District of Columbia's holding in *Evans*, and the District of Columbia Court of Appeals' holding in *Perry*, it appears fairly well settled—by what would seem every possible District of Columbia court in the business of issuing published opinions—that the duties owed by trustees, under deeds of trust, are limited to those expressly set forth in the deeds themselves and otherwise arising under the District of Columbia's statutory scheme. In this case, all that those duties impose upon Mr. Drazin is an obligation to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures.

Equally, even if some greater duty were to be imposed, suggesting Mr. Drazin had to verify the existence of a default before foreclosing (which, as urged *passim*, would be a significantly-problematic standard with far-reaching implications), it bears notation that the foreclosures for the DRL Property and the 423 Kennedy Property were scheduled *after* the DRL Promissory Notes and the 423 Kennedy Promissory Notes matured. No one is alleging the notes were paid at maturity

and no one is alleging the maturity dates were extended; it is genuinely difficult to conceive of a more objectively binary foundation upon which to premise a default and resulting foreclosure.

This seemingly leaves only the question of whether or not the long-observed custom of having lenders utilize their counsel as trustees must be abandoned. The plain language of the foregoing cases makes clear such is not so; the duties owed by trustees are merely those set forth in deeds of trust and those arising under governing statutes, so no duty in conflict with an ongoing legal representation arises in connection with a foreclosure. Yet one need not credit the legal analysis of Mr. Drazin or undersigned counsel; case law shows the propriety of this time-honored system, with the District of Columbia Court of Appeals having approved of the practice in *Perry*.

The *Perry* Court expressly confronted a situation where the substitute trustee was an "attorney . . . for the noteholder." *Perry*, 412 A.2d at 1197. The court thusly found that the attorney *does* have a duty of proving "faithfulness to their trust," *Id*., but, equally, that such "faithfulness" consists solely of (i) taking steps to "to advertise and sell the property and to pay all proper expenses and indebtedness," (ii) not committing fraud or misrepresentation; (iii) not self-dealing; (iv) not overreaching; (v) not personally benefiting from the foreclosure; (vi) not selling property at "a sum so shockingly low as to require invalidation of the sale," and (vii) not selling to a party who is not, in turn, a good faith purchaser. *Id*. at 1198.

No one is alleging Mr. Drazin failed to properly advertise the foreclosure auctions; in fact, the record shows that in lieu of running ads in some thinly-circulated trade publication, he caused them to be published in *The Washington Post*. Nor is anyone accusing Mr. Drazin of fraud or misrepresentation. The Plaintiffs do not allege Mr. Drazin has engaged in self-dealing. And since no foreclosures actually took place (a point touched upon in greater detail below), it is an

10

impossibility for Mr. Drazin to have overreached, benefited from the sale, sold properties at conscious-shocking sums, or sold properties in bad faith.

Core to the Plaintiffs' theory of these cases against Mr. Drazin is the notion that, as trustee, he has made substantive decisions universally favoring WCP. But such seems to miss the remarkably-ministerial nature of Mr. Drazin's duties as trustee: his obligations were to mail notice, to advertise a sale, to hire an auctioneer, and to execute a deed in favor of the high bidder upon closing. None of these duties invite much, if any, discretion on the part of Mr. Drazin. Quite sincerely, his only real choices were selecting the newspaper in which to run advertisements and the auction house at which to hold the foreclosure. Surely the Plaintiffs are not prepared to contend that *The Washington Post* was a choice so poor as to invite civil liability. And, equally assuredly, it seems a stretch to surmise anyone would contend the selection of Harvey West Auctioneers, Inc. as auctioneer was so thoroughly misplaced as to be tortious.

**b. Since No Foreclosures Have Occurred, No Damages Have Been Occasioned**

There is a much more basic reason the claims against Mr. Drazin necessarily fail: one cannot, as a matter of law, breach a fiduciary duty unless the subject breach results in damages being sustained. Yet because the foreclosures in both consolidated cases were enjoined, Mr. Drazin has not actually sold the DRL Property or the 423 Kennedy Property and, as such, cannot have caused any compensable damages.

As noted by the United States District Court for the District of Columbia, a claim for breach of fiduciary duty has three conjunctive elements:

> To state a claim for breach of fiduciary duty in the District of Columbia, a complaint "must allege facts sufficient to show (1) the existence of a fiduciary relationship; (2) a breach of the duties associated with the fiduciary relationship; and (3) injuries that were proximately caused by the breach of fiduciary duties."

11

*Friends Christian High Sch. v. Geneva Fin. Consultants*, <mark>39 F. Supp. 3d 58, 63</mark> (D.D.C. 2014)

(quoting *Armenian Genocide & Mem'l, Inc. v. Cafesjian Family Foundation, Inc*., <mark>607 F.Supp.2d 185, 190</mark>–91 (D.D.C. 2009)).

Here, quite plainly, the third element of such a claim cannot be satisfied. Since no foreclosures have actually occurred, no injuries can have been proximately caused by Mr. Drazin's actions—even if, *arguendo*, those actions otherwise satisfied the first two elements of the *Friends Christian High School* test.

Mr. Drazin has not sold the Plaintiffs' properties, taken money from the Plaintiffs, or deprived the Plaintiffs of their use and enjoyment of any legally-cognizable property interests. Yes, he was prepared to foreclose before injunctions were issued, since such was consistent with his fiduciary charge as trustee. But he never actually foreclosed since he obeyed the injunctions once issued. And these claims are thusly resolved with some ease, as it is an impossibility for any damages to have been occasioned by Mr. Drazin's actions.

The elemental requirement of damages for a tort action is a well-settled point of hornbook law, ingrained in the minds of law students and paramount in the practices of litigators. And the absence of damages here is thusly not merely grounds upon which to grant summary judgment but, too, grounds upon which to afford serious consideration to the motives of the Plaintiffs—two entities helmed by Mel Negussie, a practicing attorney. DRL and 423 Kennedy elected to not merely bring claims against their lenders but, too, to sue their lenders' counsel. Such reeks of gamesmanship of the worst variety. And such should be countenanced no further.

## V.    Conclusion

WHEREFORE, Mr. Drazin respectfully prays this Honorable Court (i) enter summary judgment in his favor; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: July 7, 2024     By:   /s/ Maurice B. VerStandig
                 Maurice B. VerStandig, Esq.
                 Bar No. MD18071
                 The VerStandig Law Firm, LLC
                 9812 Falls Road, #114-160
                 Potomac, Maryland 20854
                 Phone: (301) 444-4600
                 mac@mbvesq.com
                 *Counsel for Mr. Drazin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                 /s/ Maurice B. VerStandig
                 Maurice B. VerStandig

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.     **BORROWER'S PROMISE TO PAY**

      FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

      Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

      Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

23

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.     **INTEREST**

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

3.     **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

24

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.**     <u>**BORROWER'S RIGHT TO PREPAY**</u>

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.**     <u>**BORROWER'S FAILURE TO PAY AS REQUIRED**</u>

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

     a.   If default be made in any payment due under this Note;
     b.   If default be made in the performance of any other covenant contained in this Note;
     c.   If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
     d.   If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

28

### 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:    Solomone Abebaw Desta
Its:    Member

COUNTY OF _____
STATE OF _____

    I hereby certify on this 24 day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 12.2015                                        Page **9** of 9

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                        Page 1 of **9**

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.  **INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3.  **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.     BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.     BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.  If default be made in any payment due under this Note;

    b.  If default be made in the performance of any other covenant contained in this Note;

    c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Case 25-10021-ELG   Doc 7-2   Filed 09/01/25   Entered 09/01/25 19:20:26   Desc
Exhibit Ae Onh Docket Experience 2 (Part II) - Supplied 2-42 Page 43 of 9
5508 1st St NW Washington DC 9 0011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

7.    **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

8.    **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                          Page 5 of 9

Case 25-10023-ELG    Doc 7-32    Filed 09/01/25    Entered 09/01/25 19:20:26    Desc
Exhibit See Ahn Development RE (Part 1)    Page 26 of 9
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.  SUCCESSORS AND ASSIGNS

(a)  Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note.  Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)  Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)  Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Case 25-10020-ELG   Doc 7-2   Filed 09/01/25   Entered 09/01/25 15:24:26   Desc
Exhibit Ser A Docket Expenses (Part 1) ... Page 27 of 9
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## 10.   SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Managing Member


COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.


_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 12.2015                                                        Page 9 of 9

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

ARTICLE I

DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                 Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

## GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

44

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<u>ARTICLE V</u>

<u>NEGATIVE COVENANTS</u>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

Case 25-10023-ELG   Doc 7-3   Filed 09/01/25   Entered 09/01/25 19:30:26   Desc
Exhibit A First Deed of Trust (Part 1)   Page 12 of 25
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

### ARTICLE VII

### EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016                                                        Page **12** of 25

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

**Page 13 of 25**

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                                    **Page 17 of 25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

Page **19** of **25**

59

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Case 25-10020-ELG   Doc 7-3   Filed 09/01/25   Entered 09/01/25 19:20:26   Desc
Exhibit CA First Deed of Trust (Part 1 of 3)   Page 22 of 25
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

GRANTOR:

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

# EXHIBIT A

## LEGAL DESCRIPTION

64

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Doc #: 2022 0948?
02/07/2022 226   Dist
02/07/2022 11:42 PM

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

ARTICLE I

DEFINITIONS

</div>

1.0 Definitions.

    Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

    (a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

    (b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

    (c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

    (d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

    (e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

    (f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

    (g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

    (h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Case 25-10200-ELG    Doc 7-34    Filed 09/01/24    Entered 09/01/24 15:30:26    Desc
Exhibit A - Sch. 1b Deed of Trust    Page 4 of 25
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016                                                                 Page 3 of 25

Case 25-10020-ELG   Doc 7-4   Filed 09/07/24   Entered 09/07/24 15:50:26   Desc
Exhibit A-Sixth Deed of Plan   Page 4 of 25
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Case 25-10023-ELG   Doc 7-34   Filed 09/01/24   Entered 09/01/24 15:20:26   Desc
Exhibit A-Seattle Development Plan Part 3   Page 14   of 27
3501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">

ARTICLE IV

AFFIRMATIVE COVENANTS

</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

71

Case 25-10002-ELG   Doc 7-34   Filed 09/01/25   Entered 09/01/25 15:04:26   Desc
Exhibit A Second Deed of Trust   Page 46 of 98
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Case 25-10023-ELG    Doc 7-34    Filed 09/07/24    Entered 09/07/24 15:20:26    Desc
Exhibit A Seattle Condo Development Plan    Doc of Pages 10 of 26 Page 39 of 97
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V</div>

<div align="center">NEGATIVE COVENANTS</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

74

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

<div align="center">

ARTICLE VI

EMINENT DOMAIN – CONDEMNATION

</div>

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<u>ARTICLE VIII</u>

<u>DEFAULT AND FORECLOSURE</u>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

### ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page 17 of 25

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

   This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

   Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

   Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

   (a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

   (b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

   (c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">ARTICLE XII</div>

<div align="center">STATUTORY PROVISIONS</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">**[Signature Page to Follow]**</div>

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

89

90

# EXHIBIT "A"
## Property Description

**Closing Date:**        **December 23, 2021**

**Borrower(s):**         **Developer RE1 LLC**

**Property Address:**    **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.

**Doc #: 2022000482**
**Filed & Recorded**
**01/03/2022 12:42 PM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      $150.00

  **SURCHARGE**          $6.50

  **RECORDATION TAX FEES**   $13,100.00

**TOTAL:**              $13,256.50

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                   **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                          Page 1 of 9

LOAN-006491
1st Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.    **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.    **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                          Page **2** of 9

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

**4.     BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

**5.     BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                    Page 4 of 9

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.  WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.  GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page **5** of 9

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

99

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited   Liability
Company

_(signature)_ (SEAL)
By:      Mel Melaku Negussie
Its:      Member-Manager

By:      Brighton - KSDC, LLC
Its:      Member-Manager

By:      Brighton Capital LLC
Its:      Managing Member

_(signature)_ (SEAL)
By:      Mel Melaku Negussie
Its:      Authorized Signer, on behalf
             of Balakrishnarao Sure and
             Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal)_
JEFFREY DARRAH
NOTARY PUBLIC
MY COMMISSION EXPIRES
5/14/2025
DISTRICT OF COLUMBIA

_(signature)_
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of **9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                      **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**1.      BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                              Page 1 of 9

102

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

103

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

### 4.   **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

### 5.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.  If default be made in any payment due under this Note;
    b.  If default be made in the performance of any other covenant contained in this Note;
    c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
    d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015                                                     **Page 3 of 9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

106

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

      The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    <u>SUCCESSORS AND ASSIGNS</u>

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                         **Page 6 of 9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                         Page **7** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

Rev 12.2015

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC**,
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

   By:     Brighton Capital LLC
   Its:     Managing Member
   _____(SEAL)
   By:     Mel Melaku Negussie
   Its:     Authorized Signer, on behalf
            of Balakrishnarao Sure and
            Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                                    Page **9** of **9**

110

LOAN-006491

Case 25-10023-ELG    Doc 7-37    Filed 09/07/25    Entered 09/07/25 19:25:42    Desc Exhibit First A426 Kennedy Street Deed of Trust 150    Page 244 of 25

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

### DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                         Page 2 of 25

112

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument; (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">

ARTICLE IV

AFFIRMATIVE COVENANTS

</div>

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

### 4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

### 4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

### 4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

### 4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

### 4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

## 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

## 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

### 6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

### 6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

### 6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

120

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE -- THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature -- other than the Indebtedness

Rev 5.2016

Page **12** of **25**

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

## ARTICLE VIII

### DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

123

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

Page **15** of 25

125

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

126

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016                                             Page **18** of **25**

128

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016

Page **19** of **25**

129

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016                                                                 Page **20** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016                                                                     Page **21** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

     This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

     **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

### [Signature Page to Follow]

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

| By: | Mel Melaku Negussie |
|-----|---------------------|
| Its: | Member-Manager |

| By: | Brighton - KSDC, LLC |
|-----|---------------------|
| Its: | Member-Manager |

| By: | Brighton Capital LLC |
|-----|---------------------|
| Its: | Managing Member |

_(signature)_ (SEAL)

| By: | Mel Melaku Negussie |
|-----|---------------------|
| Its: | Authorized Signer, on behalf of Balakrishnarao Sure and Naveen Vavilala, Members |

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

133

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

134

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

LOAN-006652

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

136

Case 25-10023-ELG   Doc 7-3   Filed 09/07/24   Entered 09/07/24 19:52:26   Desc
Exhibit B - 2nd Deed of Trust   Page 1526 of 2443
Exhibit A - All Docket Entries (Part 1) of 26   Page 43 of 26

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                 **Page 2 of 25**

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

138

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

### ARTICLE II

### GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

139

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page **6** of **25**

141

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

### 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016

142

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">

ARTICLE V

NEGATIVE COVENANTS

</div>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

### ARTICLE VII

### EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

**Page 13 of 25**

148

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

150

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

Page **17** of **25**

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

   (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

   (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

   (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

   In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

   (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

   (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

154

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

155

(d)  The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property.  Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note.  This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption.  Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary.  Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

  This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

  **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

157

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia    Limited Liability
Company

_____ (SEAL)

By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

By:    Brighton Capital LLC
Its:    Managing Member

_____ (SEAL)

By:    Mel Melaku Negussie
Its:    Authorized Signer, on behalf
of Balakrishnarao Sure and
Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                                          **Page 23 of 25**

158

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT A

## LEGAL DESCRIPTION

159

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

160

# EXHIBIT "A"
## Property Description

**Closing Date:**          **March 31, 2022**

**Borrower(s):**           **423 Kennedy St Holdings LLC**

**Property Address:**   **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.



12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**


Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

    Re:    **NOTICE OF DEFAULT**

    5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.   I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan**.**

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners
Servicing Department
8401 Greensboro Dr Suite 960
McLean, VA 22102
Office - (703)-348-0549 ext. 924
Email - <u>servicing@wcp.team</u>**

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

     Re:    **NOTICE OF DEFAULT**

    419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

    I am the Vice President of Finance for Washington Capital Partners.  I'm writing to inform you that your business entity is presently in default for the <u>Loan</u> regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A**. Additionally, you signed a Guaranty for the Loan.

    This is your last notice before our legal counsel commences foreclosure proceedings.  Immediate payment is required to avoid foreclosure.  Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current.  Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

    Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

    As your lender, we will exercise all rights and remedies available at law and equity.  My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - <u>servicing@wcp.team</u>**



## AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the
District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374**

SSL:
3389/0138

Recording requested by:

Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:

Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, **Christina Araujo** [name], Vice President of Finance [title]

of **WCP Fund I LLC, as servicer to SF NU, LLC**
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

**5501 1st Street, NW, Washington, DC 20011**

3. **SF NU, LLC** is the holder of the mortgage
recorded as Instrument Number 2022000482 in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined
by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to
mandatory mediation and, therefore, does not require a Mediation Certificate issued by the
Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and
correct to the best of my knowledge, information and belief.

Signature:

Printed Name: **Christina Araujo**

Title: **Vice President of Finance**

Date: **June 21, 2023**

State of **Virginia**

County of **Fairfax**

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on
this **21st** day of **June**, 20 **23**

by **Christina Araujo** (name of person) as

**Vice President of Finance** (type of authority, e.g. officer,

trustee, etc.) of **WCP Fund I LLC, as servicer to SF NU, LLC**
(name of party on behalf of whom instrument was executed).

Notary Public

My Commission Expires:



164

**Doc #: 2023052259**
**Filed & Recorded**
**06/22/2023 09:01 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**          $25.00
    **SURCHARGE**             $6.50
**TOTAL:**                    $31.50



# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202) 727-5374

423 KENNEDY ST HOLDINGS LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0056/3260
Lot/Square Number:

I, Christina Araujo     [name], Vice President of Finance [title]

of WCP Fund I LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

423 Kennedy Street, NW, Washington, DC 20011

3. WCP Fund I LLC     is the holder of the mortgage
recorded as Instrument Number 2022038745     in the District
of Columbia Recorder of Deeds ('Mortgage').

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

SSL:

3260/0056

Signature:

Printed Name: Christina Araujo

Title: Vice President of Finance

Date: June 21, 2023

State of Virginia

County of Fairfax

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st     day of June     , 20 23

by Christina Araujo     (name of person) as

Vice President of Finance     (type of authority, e.g. officer,
trustee, etc.) of WCP Fund I LLC
(name of party on behalf of whom instrument was executed).

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

Notary Public

My Commission Expires:



Doc #: 2023052260
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
  RECORDING FEES     $25.00
   SURCHARGE     $6.50
TOTAL:     $31.50



**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square [ 3389 ]   Suffix [          ]   Lot [ 0138 ]
List Name and adress of each owner of the real property encumbered by said
deed of trust, mortgage, or security instrument.)

TO: [ Developer RE1 LLC ]

[ See Exhibit A ]

[          ]

[          ]

FROM: [ SF NU, LLC ]   PHONE: [ (703) 727-5464 ]

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT
SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER
SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM
UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE
TO BE HELD ON [ July 25 ], 20 [ 23 ], AT
THE OFFICE OF [ Harvey West Auctioneers, Inc. ]

[ 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015 ]

[ 2:00 ] P.M.   THIS SALE DATE IS SUBJECT TO POSTPONEMENT
FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM
THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS
NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the
Recorder of Deed on [ January 3 ], 20 [ 22 ].

Liber: [          ]   Folio: [          ]   Instrument No: [ 2022000482 ]

Maker(s) of the Note secured by the instrument: [ Developer RE1 LLC ]

[ See Exhibit A ]   [ See Exhibit A ]
Phone   Last Known Address

Description
of Property: [ commercial building ]
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: [ 5501 1st Street, NW, Washington, DC 20011 ]

Square: [ 3389 ]   Lot: [ 0138 ]   or Parcel No: [          ]

Holder of the Note (Name): [ SF NU, LLC ]
Phone: [ (703) 727-5464 ]   Address: [ 8401 Greensboro Drive, Suite 960, McLean, VA 22102 ]

Balance owed on the Note: $ [ 678,554.76 ]
Minimum balance required to cure default obligation pursuant to D.C. Law 5-82
ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î
$ [ N/A commercial loan ]

Name of person to contact to stop foreclosure sale: [ Russell S. Drazin ]
Address: [ 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 ]   Phone: [ (202) 223-7900 ]

** as of June 23, 2023

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052259



**NOTICE OF FORECLOSURE SALE OF REAL PROPERTY
OR CONDOMINIUM UNIT**

**Government of the
District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square 3389    Suffix    Lot 0138

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on June 23 ,20 23 ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

06/23/2023
Date

RD

(Signature of Noteholder or his agent)

I, Deborah A. Stewart , a Notary Public in and for the District of Columbia ,
DO HEREBY CERTIFY THAT Russell S. Drazin
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the 23rd day of June , 20 23 , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his act and deed.

Given under my hand and seal this 23rd day of June , 20 23 .

Deborah A. Stewart
Notary Public

My Commission Expires: 09/30/2025
mmddyyyy

169

# EXHIBIT A

Borrower, Grantor, Record Owner:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

**Doc #: 2023052772**
**Filed & Recorded**
**06/23/2023 10:07 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      **$25.00**
  **SURCHARGE**      **$6.50**
**TOTAL:**      **$31.50**

Case 24-10023-ELG Doc 7-34 Filed 09/07/24 Entered 09/07/24 15:26:22 Desc
Exhibit 423 Kennedy Street Notice of Foreclosure Sale Page 13 of 4

Case 25-10020-ELG Doc 7-34 Filed 09/07/24 Entered 09/07/24 15:26:22 Desc
Exhibit 423 Kennedy Street Notice of Foreclosure Sale Page 13 of 4



**Government of the**
**District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square **3260**   Suffix **[    ]**   Lot **0056**

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: **423 KENNEDY ST HOLDINGS LLC**

**See Exhibit A**

FROM: **WCP Fund I LLC**   PHONE: **(703) 727-5464**

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON **July 25** , 20 **23** , AT THE OFFICE OF **Harvey West Auctioneers, Inc.**

**5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015**

**2:10** P.M.   THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on **April 8** , 20 **22** .

Liber: **[    ]**   Folio: **[    ]**   Instrument No: **2022038745**

Maker(s) of the Note secured by the instrument: **423 KENNEDY ST HOLDINGS LLC**

**See Exhibit A**          **See Exhibit A**
Phone                    Last Known Address

Description of Property: **Multi-Family Residential Building**
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: **423 Kennedy Street, NW, Washington, DC 20011**

Square: **3260**   Lot: **0056**   or Parcel No: **[    ]**

Holder of the Note (Name): **WCP Fund I LLC**
Phone: **(703) 727-5464**   Address: **8401 Greensboro Drive, Suite 960, McLean, VA 22102**

Balance owed on the Note: $ **1,598,839.60**

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 iRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î

$ **N/A commercial loan**

Name of person to contact to stop foreclosure sale: **Russell S. Drazin**
Address: **4400 Jenifer Street, N.W., Suite 2, Washington DC 20015**   Phone: **(202) 223-7900**

Affidavit of
Non-Residential
Mortgage
Foreclosure
recorded on
June 22, 2023 as
Instrument No.
2023052260

** as of June 23, 2023

172

★★★

## NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

**Government of the District of Columbia**
Office of Tax
and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

Square [ 3260 ]  Suffix [    ]  Lot [ 0056 ]

    I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on [ June 23 ] ,20 [ 23 ] ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

[ 06/23/2023 ]
Date

_RD_
(Signature of Noteholder or his agent)

I, [ Deborah A. Stewart ] , a Notary Public in and for the District of Columbia ,
DO HEREBY CERTIFY THAT [ Russell S. Drazin ]
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the [ 23rd ] day of [ June ] , 20 [ 23 ], personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be [ his ] act and deed.

    Given under my hand and seal this [ 23rd ] day of [ June ] , 20 [ 23 ].

_Deborah A. Stewart_
Notary Public

My Commission Expires: [ 09/30/2025 ]
mmddyyyy



## EXHIBIT A

Borrower, Grantor, Record Owner:

**423 KENNEDY ST HOLDINGS LLC**, a District of Columbia limited liability company

423 Kennedy Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

1215 1st Street, NE, PHC, Washington, DC 20002

1140 3rd Street, NE, 2nd Floor, Washington, DC 20002

12359 Sunrise Valley Drive, #260, Reston, VA 20191

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

c/o Brighton Capital LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton Capital LLC, 3702 Brices Ford Court, Fairfax, VA 22033

c/o Brighton KSDC, LLC, 14905 Capricorn Lane, Charlotte, NC 28277

c/o Brighton KSDC, LLC, 3702 Brices Ford Court, Fairfax, VA 22033

(202) 775-0457
(202) 244-4245
(704) 957-3265
(704) 542-9084
(703) 587-0988
(703) 994-4490

**Doc #: 2023052773**
**Filed & Recorded**
**06/23/2023 10:09 AM**
**IDA WILLIAMS**
**RECORDER OF DEEDS**
**WASH DC RECORDER OF DEEDS**
  **RECORDING FEES**      **$25.00**

    SURCHARGE       **$6.50**

**TOTAL:**          **$31.50**

DocuSign Envelope ID: D51AEAB5-798B-4857-AC6A-BE7C94E7A636

Case 24-10023-ELG Doc 57-35 Filed 09/00/24 Entered 09/00/24 15:20:226 Desc
Exhibit Al - Affidavit of Daniel Huerta Page 165 of 243

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF DANIEL HUERTAS

1.      My name is Daniel Huertas, I am over the age of eighteen, and I am competent to testify to the matters set forth herein.

2.      I am the principal of WCP Fund I LLC ("WCP") and DP Capital LLC ("DPCL").

3.      I am familiar with the efforts of WCP to proceed with a foreclosure of the real estate assets of Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy").

DocuSign Envelope ID: D51AEAB57090-4857-AC6A-BE7C94E7A636

4.      As the trustee under the deeds of trust for the assets owned by DRL and 423 Kennedy, Russell Drazin ("Mr. Drazin") mailed foreclosure notices to DRL and 423 Kennedy, retained the services of Harvey West Auctioneers, Inc., and caused the auctions to be advertised in *The Washington Post*.

5.      Both foreclosures were enjoined and did not proceed.

6.      Mr. Drazin has been legal counsel to WCP and DPCL for many years.

7.      Further affiant sayeth naught.


I declare under penalty of perjury that the foregoing is true and correct.


7/7/2024
_____

Executed On

Daniel Huertas
_____

Daniel Huertas

177

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for Russell Drazin*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| Charles Paxton Paret, | ) Case No. 23-217-ELG |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| Developer RE1 LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. Case No. 24-10023-ELG |
| | ) |
| | ) (Cases Consolidated) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| 423 Kennedy St Holdings LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF HEARING ON MOTION FOR
## <u>SUMMARY JUDGMENT ON CLAIMS AGAINST RUSSELL DRAZIN</u>

1

NOTICE IS HEREBY GIVEN that Russell Drazin ("Mr. Drazin") has filed a motion for summary judgment in these consolidated cases. Mr. Drazin seeks summary judgment on the theories that (i) the plaintiffs seek to undermine long-settled law permitting lenders to utilize their counsel as trustees under deeds of trust; (ii) the plaintiffs fundamentally misapprehend the duties of a trustee under a deed of trust; and (iii) no damages could have been occasioned by the actions of Mr. Drazin since no foreclosures actually occurred.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion or if you would like the Court to consider your views, then ON OR BEFORE JULY 22, 2024, you must file and serve a written objection to the Motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for July 23, 2024 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

179

Respectfully submitted,

Dated: July 7, 2024      By:   /s/ Maurice B. VerStandig
                              Maurice B. VerStandig, Esq.
                              Bar No. MD18071
                              The VerStandig Law Firm, LLC
                              9812 Falls Road, #114-160
                              Potomac, Maryland 20854
                              Phone: (301) 444-4600
                              mac@mbvesq.com
                              *Counsel for Russell Drazin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                              /s/ Maurice B. VerStandig
                              Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for Russell Drazin*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING ON MOTION FOR
## SUMMARY JUDGMENT ON CLAIMS AGAINST RUSSELL DRAZIN

1

NOTICE IS HEREBY GIVEN that Russell Drazin ("Mr. Drazin") has filed a motion for summary judgment in these consolidated cases. Mr. Drazin seeks summary judgment on the theories that (i) the plaintiffs seek to undermine long-settled law permitting lenders to utilize their counsel as trustees under deeds of trust; (ii) the plaintiffs fundamentally misapprehend the duties of a trustee under a deed of trust; and (iii) no damages could have been occasioned by the actions of Mr. Drazin since no foreclosures actually occurred.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion or if you would like the Court to consider your views, then ON OR BEFORE JULY 22, 2024, you must file and serve a written objection to the Motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for July 23, 2024 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

Respectfully submitted,

Dated: July 7, 2024      By:     /s/ Maurice B. VerStandig
                                 Maurice B. VerStandig, Esq.
                                 Bar No. MD18071
                                 The VerStandig Law Firm, LLC
                                 9812 Falls Road, #114-160
                                 Potomac, Maryland 20854
                                 Phone: (301) 444-4600
                                 mac@mbvesq.com
                                 *Counsel for Russell Drazin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of July, 2024, a copy of the foregoing was served

electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                 /s/ Maurice B. VerStandig
                                 Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION FOR PROTECTIVE ORDER

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a

1

"Defendant"), by and through undersigned counsel, pursuant to <mark>Federal Rule of Civil Procedure 26(c)</mark>, and move this Honorable Court to enter a protective order prohibiting Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") from taking the deposition of Mr. Drazin, counsel for WCP and DPCL,[1] and in support thereof state as follows:

## I. Introduction

The Plaintiffs have noticed the deposition of Mr. Drazin, outside counsel to WCP and DPCL.[2] Mr. Drazin has counseled WCP and DPCL in connection with the loans at issue in this case and, as noted more extensively in a pending motion for summary judgment (the "Summary Judgment Motion," as found at DE #7) has been made a defendant hereto for reasons that appear to be rooted solely in gamesmanship.

Endeavoring to depose Mr. Drazin is facially improper for two reasons: (i) the Plaintiffs do not nearly satisfy the extraordinary burden, under applicable law, requisite to depose an opposing party's legal counsel; and (ii) even if that burden were somehow satisfied, the pendency of the Summary Judgment Motion precludes the taking of discovery from Mr. Drazin.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged a protective order be entered.

---

[1] A copy of the notice of deposition is attached hereto as Exhibit A.

[2] The deposition of Mr. Drazin—and myriad other witnesses—is scheduled for July 9, 2024. *See* Notice of Deposition, attached hereto as Exhibit A. Counsel for the Plaintiffs has indicated that he does not expect the depositions to actually proceed but, rather, that they have been noticed as placeholders. Accordingly, this motion is filed in advance of the scheduled deposition date solely to preserve Mr. Drazin's rights, though the Defendants appreciate that there is not an actual effort afoot to depose Mr. Drazin (or anyone else) on July 9, 2024.

## II.     Standard

The rules of this Honorable Court expressly permit parties to seek protective orders when faced with improper discovery efforts:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery. . .

Fed. R. Civ. P. 26(c)(1).

Ordinarily, "'the burden is upon the party seeking non-disclosure or a protective order' to show why it should be granted." *Office of People's Counsel v. Pub. Serv. Comm'n*, 21 A.3d 985, 993 n. 15 (D.C. 2011) (quoting *Penthouse Int'l v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Plough, Inc. v. Nat'l Acad. of Sciences*, 530 A.2d 1152, 1156 n. 5 (D.C. 1987)). However, where, as here, a protective order is sought to prohibit the deposition of a party's opposing counsel, "Courts … presume that deposing opposing counsel creates an inappropriate burden or hardship, and the burden is on the party seeking the deposition to show otherwise." *Coleman v. Dist. of Columbia*, 284 F.R.D. 16, 18 (D.D.C. 2012) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947); *Shelton v. Am. Motors Sales Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986); *Nguyen v. Excel Corp.*, 197 F.3d 200, 208–09 (5th Cir. 1999); *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir.2003); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009); *Sterne Kessler Goldstein & Fox PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380 (D.D.C. 2011)).

### III.   Argument: The Deposition of Mr. Drazin Should be Prohibited

#### a.   The Plaintiff Cannot Meet Its Burden

As noted *supra*, there exists a rebuttal presumption against permitting the deposition of a party's opposing counsel, and the burden thusly falls on the proponent of a deposition to show why such is proper. Here, the Plaintiffs cannot meet that burden. To the contrary, the record herein is such that all non-privileged information obtainable from Mr. Drazin can be obtained from other witnesses and, as such, there is no need to undertake the extraordinary measure of deposing counsel for WCP and DPCL.

The United States District Court for the District of Columbia has invoked a three prong test, established by the United States Court of Appeals for the Eighth Circuit, in assessing whether a deposition of opposing counsel ought to be permitted, requiring a proponent to demonstrate that "(1) no other means exists to obtain the information than to depose opposing counsel ...; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *White v. Boarman*, 2011 WL 13266589, at *2 (D.D.C. 2011) (quoting *Shelton*, 805 F.2d at 1327).

Here, Mr. Drazin has no discoverable knowledge that cannot be gleaned from WCP, DPCL and/or Mr. Huertas. While Mr. Drazin has counseled WCP and DPCL in connection with their loans to the Plaintiffs, the whole of the loan documents are possessed by his clients (which documents, through the discovery process, have now been produced to the Plaintiffs). Equally, Mr. Drazin never interacted directly with the Plaintiffs, except (a) through e-mails, which the Plaintiffs have; and (b) at a mediation held following the commencement of one of these consolidated cases. Even if some aspect of that mediation were to become discoverable (which is far-fetched), Mr.

Huertas was present for the entirety of the meeting and can accordingly testify to the events that occurred therein.

Indeed, Mr. Drazin's only knowledge relevant to these cases is directly attributable to either (i) his review of documents, furnished by his clients, all of which his clients can produce (and have produced) in discovery to the extent they are not privileged; and (ii) his communications with his clients, which are highly privileged and not subject to discovery. Mr. Drazin has no other pertinent knowledge—he has not interfaced with the Plaintiffs, except as disclosed above; he has never personally visited the buildings that are the collateral for the loans at issue in these cases; he did not personally collect payments from the Plaintiffs; and he did not elect to lend monies to the Plaintiffs.

Accordingly, in assessing the second prong of the *Shelton* test, there is no information that Mr. Drazin can uniquely produce, except for information that is either irrelevant or privileged. While he could testify to what legal advice he has given his clients and the foundation of that advice, such would be the epitome of privileged material well outside the permissive contours of discovery. And while he could testify to his other interactions with DPCL and WCP as their counsel, such would be equally privileged in nature and, too, would be starkly irrelevant to the consolidated cases at bar.

This leaves the third element—whether information is crucial to the cases at bar. Since there is no information that Mr. Drazin can uniquely provide, except for privileged information, it is difficult to fathom how that information could be crucial to the matters *sub judice*. It is not merely that Mr. Drazin lacks unique possession of discoverable information crucial to these cases; it is, too, that the only information he uniquely has is uniformly privileged in nature. Everything

else can be gleaned through WCP, DPCL, Mr. Huertas, and the troves of documents that DPCL
has produced pursuant to the Plaintiffs' elastic discovery requests herein.

In short, none of the three *Shelton* elements can be satisfied, and it is accordingly
appropriate to prohibit the Plaintiffs from deposing Mr. Drazin.

More macroscopically, it bears notation that case law rather strictly informs why such a
high burden is imposed on a party seeking to depose an opposing attorney, recognizing the unique
mischief that can be undertaken through such a process. As far back as 1947, the Supreme Court
of the United States had occasion to touch upon the perils of subjecting a lawyer to discovery:

> In performing his various duties, however, it is essential that a lawyer work with a
> certain degree of privacy, free from unnecessary intrusion by opposing parties and
> their counsel. Proper preparation of a client's case demands that he assemble
> information, sift what he considers to be the relevant from the irrelevant facts,
> prepare his legal theories and plan his strategy without undue and needless
> interference. That is the historical and the necessary way in which lawyers act
> within the framework of our system of jurisprudence to promote justice and to
> protect their clients' interests. This work is reflected, of course, in interviews,
> statements, memoranda, correspondence, briefs, mental impressions, personal
> beliefs, and countless other tangible and intangible ways—aptly though roughly
> termed by the Circuit Court of Appeals in this case as the 'Work product of the
> lawyer.' Were such materials open to opposing counsel on mere demand, much of
> what is now put down in writing would remain unwritten. An attorney's thoughts,
> heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp
> practices would inevitably develop in the giving of legal advice and in the
> preparation of cases for trial. The effect on the legal profession would be
> demoralizing. And the interests of the clients and the cause of justice would be
> poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947).

More recently, the United States District Court for the Southern District of Mississippi—
in a case invoking the same *Shelton* test as has been embraced in the District of Columbia—
explained, "[a]s this court has stated in previous cases, depositions of opposing counsel are
discouraged, as they disrupt the adversarial process and lower the standards of the profession.
Thus, a party should not be permitted to take the deposition of another party's attorney except in

6

the most unusual of circumstances." *Wilson v. Scruggs*, 2003 WL 23521358, at *1 (S.D. Miss. 2003) (citing *Shelton*, 805 F.2d 1323, 1327 (8th Cir.1986), *Hickman*, 329 U.S. at 513; *Jones v. Board of Police Commissioners of Kansas City, Missouri*, 176 F.R.D. 625 (W.D. Mo. 1997); *Caterpillar Inc. v. Friedemann*, 164 F.R.D. 76 (D. Or. 1995); *Buford v. Holladay*, 133 F.R.D. 487, 491 (S.D. Miss. 1990).

As observed by the United States District Court for the District of Kansas, "[w]hile the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters." *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (quoting *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

The *Wilson* and *Mike* holdings are neither random nor outliers. To the contrary, they are both cited herein because they have both been favorably cited by the United States District Court for the District of Columbia. *See Stern*, 276 F.R.D. at 381. And that local case also notes a blizzard of concurring holdings from other courts, including ones sitting in New York and Illinois. *Id.*

### b. Mr. Drazin's Ministerial Service as Substitute Trustee Does Not Alter the Impropriety of His Deposition Being Taken

It appears that at least one of the theories espoused for deposing Mr. Drazin is that he is the trustee on various deeds of trust, securing an obligation of the Plaintiffs to the Defendants. It is, however, a longstanding practice in the District of Columbia for secured parties to have their counsel serve as trustees under deeds of trust, with the resulting obligations being largely ministerial in nature. This reality does not change the analysis set forth above.

As a starting point, Mr. Drazin's service as trustee does not alter any of the *Shelton* factors discussed *supra*. In this capacity, Mr. Drazin has (i) caused a Notice of Foreclosure Sale of Real

Property or Condominium Unit to be mailed to all pertinent parties; (ii) scheduled foreclosure
auctions; and (iii) made arrangements to have notice of those foreclosure auctions advertised in
*The Washington Post*. The notices are a matter of public record and were sent to the Plaintiffs; the
time and date of the foreclosures are contained in the notices; the newspaper advertisements can
be found online and in the pages of the region's most-read daily newspaper. And there is, as such,
nothing about Mr. Drazin's service in this role that would lend itself to his being asked questions
at deposition where the answers to those questions are not readily ascertainable from other sources.

Further, though, the fact that Mr. Drazin's service as trustee does not alter the *Shelton*
factors speaks volumes to the ministerial nature of such service. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the
> trust instrument itself, coupled with the applicable statute governing foreclosure
> sales in the District of Columbia." Trustees on deeds must exercise their powers
> "with religious fidelity to ethical principles." Where a trustee has conflicting
> interests, the trustee bears the burden of showing that it faithfully executed its
> duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re
Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412
A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377
n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir.
1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope,
consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction,
and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162,
169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed
of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as

they relate to foreclosures. Such is scantly the variety of matter upon which a deposition needs to be taken.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he mailed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he scheduled auctions, and that he caused those auctions to be advertised. He, in the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to deposition within the contours of the *Shelton* standard.[3]

### c. The Pendency of the Summary Judgment Motion Militates in Favor of Staying the Deposition

Finally, the deposition should not proceed for an altogether more common reason: Mr. Drazin has now filed a thoroughly-dispositive motion for summary judgment and, under controlling precedent, such acts as a stay on the taking of discovery from Mr. Drazin. In fairness to the Plaintiffs, the Summary Judgment Motion was not pending when the deposition was noticed. But the dispositive motion is now pending and should, accordingly, independently give rise to a stay of any efforts to depose Mr. Drazin.

As noted by the United States District Court for the District of Columbia, "[i]t is settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion. . ." *Chavous v. Dist. of Columbia Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citing *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987); *Ladd v. Equicredit Corp. of Am.*, 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001); *White v. Fraternal Order of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990)). *See also Sai v.*

---

[3] Additionally, and of some palpable import, it bears notation that the auctions never actually occurred. Both were enjoined and proceeded no further. So there are not even auction-centric occurrences about which Mr. Drazin could be deposed.

9

*Dep't of Homeland Sec.*, <mark>99 F. Supp. 3d 50, 58</mark> (D.D.C. 2015) (holding similarly); *Moore v. Castro*,

<mark>2016 WL 10674309</mark>, at \*1 (D.D.C. Jan. 14, 2016) (holding similarly).

To be clear, only Mr. Drazin has moved for summary judgment and, as such, a stay of
discovery is only sought as to Mr. Drazin. While the other Defendants certainly may, too, seek
summary judgment at an appropriate juncture, no motions are presently pending that would be
thoroughly dispositive as to the claims against them and, as such, no stay of discovery is
appropriate as to those Defendants at this juncture. But Mr. Drazin has presented a motion that, if
granted, would serve to sever him from this case *en toto*. And precedent is clear that such a
construct does, in turn, invite a stay of correlative discovery.

## IV. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter an order
prohibiting the Plaintiffs from taking the deposition of Mr. Drazin; and (ii) afford such other and
further relief as may be just and proper.

Respectfully submitted,

Dated: July 8 ,2024      By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*[Certificate of Service on Following Page]*

10

193

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that on multiple occasions, I have spoken to counsel for the Plaintiffs about the permissibility, *vel non*, of deposing Mr. Drazin. Our discussions have been professional, cordial, and warm. We have not, however, found grounds upon which to reach an agreement that would narrow the issues set forth herein.

I further note that while no formal good faith conference was conducted in advance of this motion being filed, (i) a good faith conference was conducted the last time one of the plaintiffs noticed the deposition of Mr. Drazin; (ii) the issue has been discussed since, as recently as in the past few weeks; and (iii) ongoing discussions have made clear to the Plaintiffs that the Defendants would seek a protective order in advance of the noted deposition.

/s/ Maurice B. VerStandig
Maurice B. VerStandig


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

11

194

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

     *Defendants*.

2022-CAB-005935
(consolidated with 2023 CAB 004260)
Judge Ebony Scott
Next Event:  Trial Readiness Hearing
September 6, 2024 at 2:00 p.m.

## NOTICE OF INDIVIDUAL DEPOSITIONS OF LESLIE CALDERAS, CHRISTINA ARAUJO, JASON FAUSNAUGHT, JASON SHRENSKY, DANIEL HUERTAS, AND RUSSELL DRAZIN

Please take notice that the Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St. Holdings, LLC ("423 Kennedy"), by undersigned counsel, will take the depositions

of the following persons before an officer duly authorized to administer oaths, commencing at

the following times and continuing thereafter until completed or recessed.

| Deponent | Date & Time |
|---|---|
| Leslie Calderas | Tuesday, July 9, 2024 at 9:30 a.m. |
| Christina Araujo | Tuesday, July 9, 2024 at 10:30 a.m. |
| Jason Fausnaught | Tuesday, July 9, 2024 at 1:00 p.m. |
| Jason Shrensky | Tuesday, July 9, 2024 at 2:00 p.m. |
| Daniel Huertas | Tuesday, July 9, 2024 at 3:00 p.m. |
| Russell Drazin | Tuesday, July 9, 2024 at 4:00 p.m. |

The depositions will take place at the offices of Greenstein DeLorme & Luchs, P.C., 801

17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue day-to-day until

completed.  The depositions will be recorded by stenographic means and may also be recorded

by the Zoom video conferencing platform.  The depositions are being taken for the purposes of

4885-5084-5902.v1

discovery and/or for use at trial and for such other purposes as are permitted under applicable law.

<div align="center">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated: July 3, 2024        /s/ James D. Sadowski
                                       James D. Sadowski (No. 446635)
                                       Alexandria J. Smith (No. 1781067)
                                       801 17th Street, N.W., Suite 1000
                                       Washington, DC  20006
                                       Telephone: (202) 452-1400
                                       Email:   jds@gdllaw.com | ajs@gdllaw.com
                                       *Counsel for Developer RE1, LLC and*
                                       *423 Kennedy St. Holdings, LLC*

<div align="center">

CERTIFICATE OF SERVICE

</div>

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Individual Depositions was served was served on July 3, 2024 using eFileDC.

                                       /s/ James D. Sadowski
                                       James D. Sadowski

<div align="center">2</div>

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| Charles Paxton Paret, | ) Case No. 23-217-ELG |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| Developer RE1 LLC, | ) |
| | ) |
| | ) Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) |
| | ) (Cases Consolidated) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| 423 Kennedy St Holdings LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>NOTICE OF HEARING ON MOTION FOR PROTECTIVE ORDER</u>

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC

("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the

1

"Defendants") have filed a motion seeking a protective order to prohibit the plaintiffs herein from deposing Mr. Drazin. The motion argues that Mr. Drazin should not be deposed because, *inter alia*, (i) he is counsel to DPCL and WCP; (ii) nothing about his ministerial service as trustee under deeds of trust would invite questioning at deposition; and (iii) the pendency of a dispositive motion procedurally precludes his deposition from being taken.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the Motion or if you would like the Court to consider your views, then ON OR BEFORE AUGUST 21, 2024, you must file and serve a written objection to the Motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the Motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for August 28, 2024 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Courtroom Deputy Aimee Mathewes at Aimee_Mathewes@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

198

Respectfully submitted,

Dated: July 8, 2024          By:      /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for the Defendants*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

3

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | **Case No. 23-00217-ELG** |
| **Charles Paxton Paret**<br>**Debtor.** | **Chapter 7** |
| | |
| **Developer RE1 LLC**<br>**Plaintiff** | |
| **423 Kennedy St. Holdings LLC**<br>**Plaintiff** | |
| **v.** | **Adv. Pro. No. 24-10023-ELG** |
| **DP Capital LLC; Russell Drazin; Daniel Huertas; SF NU, LLC; and WCP Fund I LLC**<br>**Defendants** | |
| **DP Capital LLC; Russell Drazin; Daniel Huertas; and WCP Fund I LLC**<br>**Defendants** | |

### NOTICE OF DEFICIENT FILING

**To Filer(s) and/or Filer's Attorney:**

Upon authority of Local Bankruptcy Rule 5003-1, notice is hereby given that the documents submitted by you

**[ECF No. 1 - Notice of Removal]**

contains certain deficiencies as set forth below. You must correct the deficiencies on or before **7/23/2024.** Failure to timely correct the deficiencies may result in the pleading or other paper **being stricken from the record or, if a complaint is deficient, the adversary proceeding being dismissed.**

| | |
|---|---|
| ☐ | The case name and/or number does not match the above-captioned case. Please review this filing and docket to the correct case. |
| ☐ | The document does not match the event entry used for docketing. Please review this filing and redocket using the correct event entry or redocket to attach the correct document. |
| ☐ | Document does not appear to be complete. Please review this filing for possible error and relate any amendment/correction to the original document. |
| ☐ | The document has an electronic signature in an incorrect format. *See* Local Bankruptcy Rules Appendix D § 7(a). |
| ☐ | The document was filed using an out of date and/or unapproved form. |
| ☐ | The document is unsigned. |

1

| ☒ | The document has an insufficient attorney identifier as required by Local Bankruptcy Rule 5005-1(c). |
|---|---|
| ☐ | The document linked hereto contains an error which requires corrective action. |
| ☐ | The ECF registered participant attorney filing the document does not match the attorney's signature on the document. |
| ☐ | The document requires a proposed order. *See* Local Bankruptcy Rule 9072-1. |
| ☐ | The document is not formatted correctly, is double-sided, and/or is not legible. *See* Local Bankruptcy Rule 5005-1(b). |
| ☐ | The document contains information that should have been redacted and has been made inaccessible to the public. *See* Fed. R. Bankr. P. 9037. |
| ☐ | A certificate of service must be filed either separately or as an attachment to your pleading. *See Local Bankruptcy Rule 9013-1.* |
| ☐ | The document requires a notice, and the notice must be in substantial compliance with Local Bankruptcy Rule 9013-1. |
| ☐ | The date, time, and/or location in the notice is incorrect or omitted. |
| ☐ | This document requires a hearing. Please contact the Courtroom Deputy at (202) 354-3178. |
| ☐ | The notice is not properly linked to the associated pleading. |
| ☐ | Signature/Admission to Practice. Documents must be signed by an attorney authorized to practice in this Court or admitted pro hac vice in this case. *See* Local Bankruptcy Rule 5005-1(a). |
| ☐ | Other: |

For the Court:
Angela D. Caesar
BY: MB

Copies to: Recipients of electronic notifications; Debtor; appointed trustee.

2

201

UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **In re:** | **Case No. 23-00217-ELG** |
| **Charles Paxton Paret**<br>**Debtor.** | **Chapter 7** |
| **Developer RE1 LLC**<br>**Plaintiff** | |
| **423 Kennedy St. Holdings LLC**<br>**Plaintiff** | |
| **v.** | **Adv. Pro. No. 24-10023-ELG** |
| **DP Capital LLC; Russell Drazin; Daniel Huertas; SF NU, LLC; and WCP Fund I LLC**<br>**Defendants** | |
| **DP Capital LLC; Russell Drazin; Daniel Huertas; and WCP Fund I LLC**<br>**Defendants** | |

## NOTICE OF DEFICIENT FILING

**To Filer(s) and/or Filer's Attorney:**

Upon authority of Local Bankruptcy Rule 5003-1, notice is hereby given that the documents submitted by you

**[ECF No. 1 - Notice of Removal]**

contains certain deficiencies as set forth below. You must correct the deficiencies on or before ***7/23/2024.*** Failure to timely correct the deficiencies may result in the pleading or other paper ***being stricken from the record or, if a complaint is deficient, the adversary proceeding being dismissed.***

| | |
|---|---|
| ☐ | The case name and/or number does not match the above-captioned case. Please review this filing and docket to the correct case. |
| ☐ | The document does not match the event entry used for docketing. Please review this filing and redocket using the correct event entry or redocket to attach the correct document. |
| ☐ | Document does not appear to be complete. Please review this filing for possible error and relate any amendment/correction to the original document. |
| ☐ | The document has an electronic signature in an incorrect format. *See* Local Bankruptcy Rules Appendix D § 7(a). |
| ☐ | The document was filed using an out of date and/or unapproved form. |
| ☐ | The document is unsigned. |

1

| ☒ | The document has an insufficient attorney identifier as required by Local Bankruptcy Rule 5005-1(c). |
|---|---|
| ☐ | The document linked hereto contains an error which requires corrective action. |
| ☐ | The ECF registered participant attorney filing the document does not match the attorney's signature on the document. |
| ☐ | The document requires a proposed order. *See* Local Bankruptcy Rule 9072-1. |
| ☐ | The document is not formatted correctly, is double-sided, and/or is not legible. *See* Local Bankruptcy Rule 5005-1(b). |
| ☐ | The document contains information that should have been redacted and has been made inaccessible to the public. *See* Fed. R. Bankr. P. 9037. |
| ☐ | A certificate of service must be filed either separately or as an attachment to your pleading. *See Local Bankruptcy Rule 9013-1.* |
| ☐ | The document requires a notice, and the notice must be in substantial compliance with Local Bankruptcy Rule 9013-1. |
| ☐ | The date, time, and/or location in the notice is incorrect or omitted. |
| ☐ | This document requires a hearing. Please contact the Courtroom Deputy at (202) 354-3178. |
| ☐ | The notice is not properly linked to the associated pleading. |
| ☐ | Signature/Admission to Practice. Documents must be signed by an attorney authorized to practice in this Court or admitted pro hac vice in this case. *See* Local Bankruptcy Rule 5005-1(a). |
| ☐ | Other: |

For the Court:
Angela D. Caesar
BY: MB

Copies to: Recipients of electronic notifications; Debtor; appointed trustee.

United States Bankruptcy Court

District of Columbia

Developer RE1 LLC,

    Plaintiff

WCP Fund I LLC,

    Defendant

Adv. Proc. No. 24-10023-ELG

# CERTIFICATE OF NOTICE

| District/off: 0090-1 | User: admin | Page 1 of 2 |
|---|---|---|
| Date Rcvd: Jul 09, 2024 | Form ID: pdf001 | Total Noticed: 3 |

The following symbols are used throughout this certificate:

**Symbol**      **Definition**

+      Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 11, 2024:**

| Recip ID | Recipient Name and Address |
|---|---|
| dft | + DP Capital LLC, c/o The VerStandig Law Firm, LLC, 1452 W. Horizon Ridge Pkwy., #665, Henderson, NV 89012-4422 |
| dft | + Russell Drazin, Pardo Drazin LLC, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015-2089 |

TOTAL: 2

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|
| ust | + Email/Text: ustpregion04.ax.ecf@usdoj.gov | Jul 09 2024 21:41:00 | U. S. Trustee for Region Four, U. S. Trustee's Office, 1725 Duke Street, Suite 650, Alexandria, VA 22314-3489 |

TOTAL: 1

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Jul 11, 2024          Signature:     /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 9, 2024 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Alexandria Jean Smith | on behalf of Plaintiff Developer RE1 LLC ajs@gdllaw.com |
| Alexandria Jean Smith | on behalf of Plaintiff 423 Kennedy St Holdings LLC ajs@gdllaw.com |
| James D. Sadowski | |

Case 24-10205-ELG Doc 1 Doc - Filed 07/09/24 Entered 07/09/24 15:09:20 Desc Damaged
Exhibit A - All Docket Entries (Part Page Page 41594 of 2443

District/off: 0090-1                          User: admin                          Page 2 of 2
Date Rcvd: Jul 09, 2024                        Form ID: pdf001                      Total Noticed: 3

James D. Sadowski                 on behalf of Plaintiff Developer RE1 LLC jds@gdllaw.com

                                 on behalf of Plaintiff 423 Kennedy St Holdings LLC jds@gdllaw.com

Maurice Belmont VerStandig       on behalf of Defendant SF NU  LLC mac@mbvesq.com,
                                 lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

Maurice Belmont VerStandig       on behalf of Defendant WCP Fund I LLC mac@mbvesq.com
                                 lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

Maurice Belmont VerStandig       on behalf of Defendant Russell Drazin mac@mbvesq.com
                                 lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

Maurice Belmont VerStandig       on behalf of Defendant Daniel Huertas mac@mbvesq.com
                                 lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

Maurice Belmont VerStandig       on behalf of Defendant DP Capital LLC mac@mbvesq.com
                                 lisa@mbvesq.com;mac@dcbankruptcy.com;verstandig.mauricer104982@notify.bestcase.com;verstandiglaw@recap.email

TOTAL: 9

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Email: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

CHARLES PAXTON PARET

 *Debtor.*

Case No. 23-00217-ELG

Chapter 7

DEVELOPER RE1 LLC,

 *Plaintiff,*

v.

DP CAPITAL LLC D/B/A WASHINGTON CAPITAL PARTNERS, *ET AL.*,

 *Defendants.*

Adv. Pro. No. 24-10023-ELG
(D.C. Superior Court Consolidated
Case No. 2022-CAB-005935)

423 KENNEDY ST HOLDINGS LLC,

 *Plaintiff,*

v.

DP CAPITAL LLC D/B/A WASHINGTON CAPITAL PARTNERS, *ET AL.,*

 *Defendants.*

4866-9933-1793.v2

206

## Plaintiffs' Statement Under Fed. R. Bankr. P. 9027(e)(3) That They Do Not Consent to the Entry of Final Orders or Judgment

Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs"), file this statement under Fed. R. Bankr. P. 9027(e)(3). The Plaintiffs do not consent to this Court issuing any final orders or judgment for the following reasons:

1.     The Defendants have to date not cured the deficiency in the Notice of Removal that was listed in the deficiency notice issued on July 9, 2024.

2.     The removal of the D.C. Superior Court case was untimely under Fed. R. Bankr. P. 9027(a)(2). In the alleged "related" bankruptcy case, *In Re: Charles Paxton Paret,* Case No. 23-00217-ELG, an order of relief was entered on August 31, 2023 and an amended order of relief was entered on October 2, 2023. The notice or removal was filed on July 4, 2024, which was 308 days after the issuance of the order of relief on August 31, 2023 and 276 days after the issuance of the amended order of relief on October 2, 2023.

3.     The notice of removal of the Superior Court case was filed for multiple, improper purposes: (a) to delay the Plaintiffs from taking the depositions of the Defendants and their witnesses, which would have taken place in mid-July but for the improper removal of the case; (b) to prevent decisions from being made by the D.C. Superior Court on multiple pending motions, including a decision on Developer RE1's motion to dismiss an untimely Counterclaim filed by Defendant WP Fund I, LLC; (c) to delay the jury trial that was set to take place starting on September 9, 2024; and (d) to change to forum of the case to a forum that the Defendants believe will be more favorable to their positions (*i.e.,* forum shopping).

2

4.      The consolidated cases have been pending in the D.C. Superior Court since December 16, 2022 (the Developer RE1 case) and July 13, 2023 (the 423 Kennedy Case).  Two hearings were held (by different judges) on the Plaintiffs' motions for a temporary restraining order in July of 2023, and thirteen motions have been filed, including two dispositive motions, of which ten had already been decided and three were pending as of July 4, 2024.

5.      Extensive discovery had already taken place in the consolidated cases. Approximately forty-seven written discovery requests and responses were served (*e.g.*, interrogatories, request for production of documents, requests for admissions, and related responses), one deposition was partially completed, two subpoenas were issued, and the date for the completion of discovery was set for July 9, 2024.

6.      On July 3, 2024, one day before the Notice of Removal was filed, Plaintiffs' counsel sent an email to Defendants' counsel that attached to it multiple notices of depositions. *See* Exhibit 1 (July 3, 2024 email from James D. Sadowski to Maurice Verstandig attaching four deposition notices; three for the corporate defendants, and one additional combined notice for six individual witnesses' depositions).[1]  It is not a coincidence that the Defendants filed the Notice of Removal the day after they were put on notice of the Plaintiffs' intent to take multiple depositions of the Defendants and their witnesses.

7.      Most importantly, the claims that the Defendants are trying to improperly remove in this case -- after the deadline to do so under Fed. R. Bankr. P. 9027(a)(2) had long expired -- are not core proceedings.  The consolidated cases involve purely state law claims for breach of contract (in the 423 Kennedy case), tortious interference with business relations (both cases); breach of the duty of good faith a fair dealing (both cases), breach of fiduciary duty by

---

[1]      Only one of the three, similar corporate deposition notices is included in Exhibit 1.

4866-9933-1793.v2

the trustee under the deeds of trust (both cases), requests for declaratory judgments as to the unenforceability of certain provisions in the loan documents (both cases), and requests for injunctive relief (both cases).

8.      A bankruptcy judge may resolve non-core proceedings only if the parties consent.  *See* 28 U.S.C. § 157(c)(1)-(2).   The Plaintiffs do not consent to this Court resolving what are clearly non-core proceedings.

For these reasons, the Plaintiffs do not consent to the issuance of any final orders or judgment in this case.  The removal of the consolidated cases from D.C. Superior Court was an untimely and improper attempt at forum shopping and delay.  The only further orders that this Court should issue are:  (1) an order suspending the time for the Plaintiffs to respond to the four motions that the Defendants have improperly tried to forum shop to this Court (Dkt. Nos. 3, 5, 7, and 9) until after the Plaintiffs' motion for remand is decided;[2] and (2) an order remanding this case back to the D.C. Superior Court and imposing appropriate sanctions for the improper removal of the consolidated cases.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 17, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C.  20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC
and 423 Kennedy Holdings LLC*

---

[2]    The Plaintiffs will soon be filing a motion for remand.  The motion for remand will include a more detailed and further explanation as to why this case should be remanded to the D.C. Superior Court.  The Plaintiffs will probably also be filing a motion to suspend all response deadlines until after the motion for remand is decided.

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of July, 2024, a true copy of the foregoing

Statement under Fed. R. Bankr. P. 9027(e)(3) was served electronically and a Notice of

Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

I am also sending a copy of this Statement to the following persons by first class mail:

DP Capital, LLC d/b/a              WCP Fund I, LLC
Washington Capital Partners        8401 Greensboro Drive
8401 Greensboro Drive              Suite 960
Suite 960                          McLean, VA  22102
McLean, VA  22102

Russell Drazin                     Daniel Huertas
4400 Jenifer Street, NW            909 Chinquapin Road
Suite 2                            McLean, VA  22102
Washington, DC 20015

SF NU, LLC
Attn:  Jason Shrensky
Managing Member
9300 Marseille Drive
Potomac MD 2085

/s/ James D. Sadowski
James D. Sadowski

4866-9933-1793.v2

## James D. Sadowski

| | |
|---|---|
| **From:** | James D. Sadowski |
| **Sent:** | Wednesday, July 3, 2024 6:04 PM |
| **To:** | 'Mac VerStandig' |
| **Cc:** | Alex J. Smith |
| **Subject:** | Plaintiffs' Deposition Notices - 2022-CAB-005935 |
| **Attachments:** | 2024-07-03 Notice of Individual Depositions.pdf; 2024-07-03 Notice of Rule 30(b)(6) Deposition to DP Capital, LLC.pdf; 2024-07-03 Notice of Rule 30(b)(6) Deposition to the SF NU LLC.pdf; 2024-07-03 Notice of Rule 30(b)(6) Deposition to the WCP Fund I LLC.pdf |

Mac:

Here are courtesy copies of the Plaintiffs' Deposition Notices.

I served these today to remind you of who the Plaintiffs want to depose and to provide you with the topic lists for the corporate designees, which are very similar.

I do not expect these depositions to go forward on the dates and times noted, but rather to serve as placeholders given that we have to re-coordinate the scheduling of depositions that we previously planned to accomplish before the 7/9/24 close of discovery.

Let's plan to chat on Monday morning (July 8) about the revised deposition schedule, the AT&T subpoena, and getting another extension from the Court to complete depositions.

And as a reminder, unless I missed an email, I don't think any defendants have produced documents in response to 423 Kennedy's document requests.

Thanks.

Jim

PS – wouldn't you rather settle these cases to preserve resources to focus on the Paret Third Amended Complaint?  With Don Temple on a contingency fee basis, that is going to be a huge mess.  It could put your grandchildren through college.



**James D. Sadowski, Esq.**
**GREENSTEIN DELORME & LUCHS, P.C.**
Shareholder
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
202-452-1400; ext. 5407
JDS@gdllaw.com
www.gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE

INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER OF THIS MESSAGE. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

    *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

    *Defendants*.

2022-CAB-005935
(consolidated with 2023 CAB 004260)
Judge Ebony Scott
Next Event: Trial Readiness Hearing
September 6, 2024 at 2:00 p.m.

## NOTICE OF INDIVIDUAL DEPOSITIONS OF LESLIE CALDERAS, CHRISTINA ARAUJO, JASON FAUSNAUGHT, JASON SHRENSKY, DANIEL HUERTAS, AND RUSSELL DRAZIN

Please take notice that the Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St. Holdings, LLC ("423 Kennedy"), by undersigned counsel, will take the depositions

of the following persons before an officer duly authorized to administer oaths, commencing at

the following times and continuing thereafter until completed or recessed.

| Deponent | Date & Time |
|---|---|
| Leslie Calderas | Tuesday, July 9, 2024 at 9:30 a.m. |
| Christina Araujo | Tuesday, July 9, 2024 at 10:30 a.m. |
| Jason Fausnaught | Tuesday, July 9, 2024 at 1:00 p.m. |
| Jason Shrensky | Tuesday, July 9, 2024 at 2:00 p.m. |
| Daniel Huertas | Tuesday, July 9, 2024 at 3:00 p.m. |
| Russell Drazin | Tuesday, July 9, 2024 at 4:00 p.m. |

The depositions will take place at the offices of Greenstein DeLorme & Luchs, P.C., 801

17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue day-to-day until

completed. The depositions will be recorded by stenographic means and may also be recorded

by the Zoom video conferencing platform. The depositions are being taken for the purposes of

discovery and/or for use at trial and for such other purposes as are permitted under applicable

law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 3, 2024

/s/ James D. Sadowski
James D. Sadowski (No. 446635)
Alexandria J. Smith (No. 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Developer RE1, LLC and*
*423 Kennedy St. Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Individual

Depositions was served was served on July 3, 2024 using eFileDC.

/s/ James D. Sadowski
James D. Sadowski

2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1 LLC,

     *Plaintiff*,

v.

DP CAPITAL, LLC d/b/a WASHINGTON
CAPITAL PARTNERS, *et al*.

     *Defendants*.

2022-CAB-005935
(consolidated with 2023 CAB 004260)
Judge Ebony Scott
Next Event: Trial Readiness Hearing
September 6, 2024 at 2:00 p.m.

## NOTICE OF RULE 30(b)(6) DEPOSITION OF DP CAPITAL, LLC

Please take notice that Developer RE1 LLC ("Developer RE1") and 423 Kennedy St

Holdings LLC ("423 Kennedy"), by undersigned counsel, will take the deposition of the Rule

30(b)(6) designee(s) of DP Capital, LLC ("DP Capital") before an officer duly authorized to

administer oaths, commencing at the following time and continuing thereafter until completed or

recessed.

| Deponents | Date & Time |
|---|---|
| DP Capital, LLC | July 8, 2024 at 9:30 a.m. |

The deposition will take place at a conference room in the offices of Greenstein DeLorme

& Luchs, P.C., 801 17th Street, N.W., Suite 1000, Washington, D.C. 20006, and will continue

day-to-day until completed. The deposition will be recorded by stenographic means and may

also be recorded by the Zoom video conferencing platform. The deposition is being taken for the

purposes of discovery and/or for use at trial and for such other purposes as are permitted under

applicable law.

Unless the context indicates otherwise, the following definition applies to this Rule 30(b)(6) Notice of Deposition:

(a)     Pursuant to D.C. Superior Court Civil Procedure Rule 34(a)(1)(A), the term "documents" includes electronically stored information, and means:  "writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form."

(b)     The word "person," used in these Interrogatories, includes both the singular and plural, and includes legal entities and organizations as well as individual people.

(c)     The term "communication" means any form, whatsoever, of correspondence, discussion, instruction, report and/or written, electronic or oral exchange between two or more persons.

(d)     The pronouns "you" and "your, when used, refer to DP Capital, its members, agents, employees, and all other persons and entities representing it or acting on its behalf.

(e)     "Developer RE1" refers to Developer RE1 LLC, its members, agents, employees, and all other persons and entities representing it or acting on its behalf.

(f)     "423 Kennedy" refers to 423 Kennedy LLC, its members, agents, employees, and all other persons and entities representing it or acting on its behalf.

(g)     "Lender" refers to the WCP Fund I LLC and any other person that acquired or had an interest in the Loan Documents (such as by way of assignment or otherwise).

(h)     "Litigation" refers collectively to the following cases:

2

216

a. the case styled as Developer RE1 LLC v. DP Capital, LLC d/b/a Washington
Capital Partners, et al., Case No.: 2022-CAB-005935, in the Superior Court of
the District of Columbia; and

b. the case styled as 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a
Washington Capital Partners, et al., Case No.: 2023-CAB-004260, in the
Superior Court of the District of Columbia.

(i)     "RE1 Complaint" means the Complaint filed by RE1 LLC in Case No.: 2022-
CAB-005935.

(j)     "423 Kennedy Complaint" means the Complaint filed by 423 Kennedy in Case
No.: 2023-CAB-004260.

(k)     "Second Amended Complaint" means the Second Amended Complaint filed by
RE1 LLC in Case No.: 2022-CAB-005935.

(l)     "Counterclaim" means the Counterclaim (of the WCP Fund I, LLC) that was
included in the Answer, Affirmative Defendants, and Counterclaim filed by DP Capital, WCP
Fund I LLC, Daniel Huertas, and Russel Drazin in Case No.: 2022-CAB-005935 on April 2,
2024.

(m)     "First DOT (RE1)" means the Deed of Trust signed, on December 23, 2021,
2022, by Developer RE1, as Grantor, for the Property that named the WCP Fund as Beneficiary
and Mr. Drazin, as Trustee, a copy of which was attached to the original RE1 Complaint filed on
December 16, 2022 as Exhibit A.

(n)      "First DOT (423 Kennedy)" means the Deed of Trust signed, on March 31, 2022,
by 423 Kennedy, as Grantor, for the Property that named the WCP Fund I as Beneficiary and Mr.
Drazin, as Trustee, a copy of which was attached to the 423 Kennedy Complaint as Exhibit A.

3

217

(o)     "First Note (RE1)" means the Commercial Deed of Trust Note, signed on December 23, 2021, by Developer RE1, as Borrower, in favor of the WCP Fund, a copy of which was attached to the original RE1 Complaint filed on December 16, 2022 as Exhibit B.

(p)     "First Note (423 Kennedy)" means the Commercial Deed of Trust Note, signed on March 31, 2022, by 423 Kennedy, as Borrower, in favor of the WCP Fund I, a copy of which was attached to the 423 Complaint as Exhibit B.

(q)     "Second DOT (RE1)" means the second Deed of Trust signed, on December 23, 2021, by Developer RE1 for the Property that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee, a copy of which was attached to the original RE1 Complaint filed on December 16, 2022 as Exhibit C.

(r)     "Second DOT (423 Kennedy)" means the second Deed of Trust signed, on March 31, 2022, by 423 Kennedy for the Property that also named WCP Fund I as Beneficiary and Mr. Drazin as Trustee, a copy of which was attached to the 423 Kennedy Complaint as Exhibit C.

(s)     "Second Note (RE1)" means the second Commercial Deed of Trust Note, signed on December 23, 2021, by Developer RE1, a copy of which was attached to the original Complaint filed on December 16, 2022 as Exhibit D.

(t)     "Second Note (423 Kennedy)" means the second Commercial Deed of Trust Note, signed on March 31, 2022, by 423 Kennedy, a copy of which was attached to the Complaint as Exhibit D.

(u)     "Loan Documents (RE1)" refers to the First DOT (RE1), the First Note (RE1), the Second DOT (RE1), and the Second Note (RE1).

(v)     "RE1 Loan" refers collectively to the loan secured by the First DOT (RE1) and the loan secured by the Second DOT (RE1).

4

(w) "Loan Documents (423 Kennedy)" refers to the First DOT (423 Kennedy), the First Note (423 Kennedy), the Second DOT (423 Kennedy), and the Second Note (423 Kennedy).

(x) "423 Kennedy Loan" refers collectively to the loan secured by the First DOT (423 Kennedy) and the loan secured by the Second DOT (423 Kennedy).

(y) "DOTs" refers collectively to the First DOT (RE1), the Second DOT (RE1), the First DOT (423 Kennedy), and the Second DOT (423 Kennedy).

(z) "Loan Documents" refers collectively to the Loan Documents (RE1) and to the Loan Documents (423 Kennedy).

(aa) "Notice of Default (RE1)" refers collectively to the notices of default dated December 8, 2022, copies of which were attached as Exhibit K and L, respectively, to the RE1 Complaint.

(bb) "Notice of Default (423 Kennedy)" refers collectively to the notices of default dated December 8, 2022, copies of which were attached as Exhibit K and L, respectively, to the 423 Kennedy Complaint.

Pursuant to Rule 30(b)(6), DP Capital must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf, and it may set out the matters on which each person designated will testify. The person(s) designated must testify about information known or reasonably available to the organization as to the following matters:

## MATTERS FOR EXAMINATION

1. The terms of the Loan Documents, including, but not limited to, Sections 7.6, 7.9, 7.09, and 11.1 of the DOTs.

5

2.    The corporate and ownership structure of DP Capital and its subsidiaries, parents, or affiliates, including facts related to its organizational documents, its officers, its directors, the number of current and former employees, its decision makers, and the persons and companies that have (or had) any ownership, management, investment, financial, or other interest in DP Capital, and the type and extent of each person's interest in DP Capital.

3.    DP Capital's Operating Agreement and any other document that governs DP Capital's operations, and any changes to those documents.

4.    DP Capital's relationship with the Lender, Daniel Huertas, and Russell Drazin.

5.    Who owns, manages, controls, and makes decisions for the Lender.

6.    The individual(s) making any decisions on behalf of DP Capital related to the Loan Documents, the changes to who had such decision making authority for DP Capital, and how each person who was authorized to be a decisionmaker obtained such authority under DP Capital's governing documents or otherwise.

7.    All persons that were or are employees or agents of DP Capital from September 1, 2022 to present, the title or position of each employee or agent, and the period of employment for each employee or agent.

8.    Any pending, concluded, or threatened litigation involving DP Capital from 2017 to the present.

9.    What records were kept for any meetings of DP Capital related to the Loan Documents, or for any decisions made involving the Loan Documents, and the contents of all such records.

220

10. What records were kept for any meetings of or with the Lender, DP Capital's investors, any affiliate of DP Capital, or any board of DP Capital's investor groups related to the Loan Documents and the content of all such records.

11. DP Capital's communications with any person on or after December 23, 2021 about the Loan Documents or any decision made involving the Loan Documents.

12. DP Capital's non-privileged communications with the Lender, Daniel Huertas, and Russell Drazin related to the Loan Documents.

13. Any communications related to the December 8, 2022 phone call between Mel Negussie and Daniel Huertas that is referenced in paragraphs 43 and 45-48 of the Second Amended Complaint.

14. Any communications between anyone on behalf of DP Capital regarding the Notice of Default (RE1) and the Notice of Default (423 Kennedy).

15. Any communications between anyone and the Lender regarding the Notice of Default (RE1) and the Notice of Default (423 Kennedy).

16. Communications between DP Capital and any person (including SF NU, LLC and JPK Newco, LLC) related to any decision to sell or transfer any interest in the RE1 Loan and/or the 423 Kennedy Loan.

17. Non-privileged communications between DP Capital and Russell Drazin related in any way to the Loan Documents.

18. All default(s) DP Capital claims occurred or are occurring under the Loan Documents.

19.     Any notices or demand for payment sent or received concerning the Loan Documents, when DP Capital sent such notice(s), and the circumstances surrounding such notice(s).

20.     The date(s) DP Capital learned of the alleged defaults that served as the basis for the Notice of Default (RE1) and the Notice of Default (423 Kennedy) and how DP Capital learned of those alleged defaults.

21.     The date DP Capital first learned of the alleged defaults identified in Russell Drazin's email on December 9, 2022, attached as Exhibit N to the 423 Kennedy Complaint.

22.     Any documents related to the December 8, 2022 phone call between Mel Negussie and Daniel Huertas that is referenced in paragraphs 43 and 45-48 of the Second Amended Complaint.

23.     All persons that participated in the decision to issue the Notice of Default (RE1) and the Notice of Default (423 Kennedy), and whether each person agreed with the decision to issue the Notice of Default (RE1) and the Notice of Default (423 Kennedy).

24.     The reason(s) DP Capital issued the Notice of Default (RE1) and the Notice of Default (423 Kennedy).

25.     The reason(s) the Notice of Default (RE1) and the Notice of Default (423 Kennedy) failed to include any factual basis for the alleged default(s).

26.     Details surrounding how and why DP Capital authorized Leslie Calderas to send the Notice of Default (RE1) and the Notice of Default (423 Kennedy).

27.     Whether and to what extent DP Capital was involved with placing any borrower in default at a time when that borrower was in the process of refinancing any loan.

8

28.     Whether and to what extent DP Capital was involved with alleging a cross-default by a borrower under any cross-default provision that is similar to Section 7.9 of the DOTs.

29.     All facts upon which DP Capital is aware of regarding the claims in the Counterclaim.

30.     All damages that DP Capital claims to have suffered as a result of any default(s) by either RE1 Developer or 423 Kennedy, including the nature, extent, aspect, amount, and component of all claimed damages.

31.     The type(s) of computer system or database(s) used by DP Capital for accounting purposes as to the Loan Documents, the fields of information used in the computer system or database, the individual(s) who enter information into the computer system or database, the source of the information entered into the computer system or database, and whether entries into the computer system or database are verified.

32.     The method through which the computer system or database that DP Capital uses for accounting purposes as to the Loan Documents is accessed, the users of the computer system or database, and whether records exist showing: (a) when changes to records stored in the computer system or database are made, (b) what changes are made, (c) who made the changes, and (d) the content of those records.

33.     The types of reports that can be generated by the database or computer system that DP Capital uses for accounting purposes as to the Loan Documents, and whether the computer system or database can generate reports showing the information described in parts (a)-(d) of Topic No. 34.

34.     The identity of the system administrator(s) for the database or computer system that DP Capital uses for accounting purposes as to the Loan Documents.

35.     The "First Loan Payment History" and the "Second Loan Payment History," attached as Exhibits E and C, respectively, to DP Capital, WCP Fund I LLC, Danuel Huertas, and Russell's Drazin's Opposition to Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent Imminent Foreclosure Sale filed in Case No.: 2023-CAB-004260 on July 20, 2023.

36.     The "First Loan Payment History" and the "Second Loan Payment History," attached as Exhibits 1 and 2, respectively, to DP Capital, WCP Fund I LLC, Danuel Huertas, and Russell's Drazin's Opposition to Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent Imminent Foreclosure Sale filed in Case No.: 2022-CAB-005935 on July 17, 2023.

37.     The identity of the individual(s) who made the decision(s) to change the "Servicing Status" of the RE1 Loan to "Defaulted," the date such decision was made, and the circumstances surrounding such decision.

38.     The identity of the individual(s) who made the decision(s) to change the "Servicing Status" of the 423 Kennedy Loan to "Defaulted," the date such decision was made, and the circumstances surrounding such decision.

39.     The defenses that DP Capital has to the claims against it in the Litigation and the factual support for any such defense.

40.     Who DP Capital communicated with about any of the allegations in the Litigation, DP Capital's defenses, and/or about any aspect of this case and the substance of the communication, unless privileged.

41.     The persons that DP Capital may call as a fact witness at trial and the knowledge possessed by each such person(s).

42.     The extent that any of the fact witnesses for DP Capital has an interest in DP Capital, the Lender, or in the revenue or the performance of any DP Capital related entity or investment, including, without limitation, the percentage ownership interest held by each such person.

43.     The questions asked in Developer RE1's First Set of Interrogatories to DP Capital dated May 19, 2023, DP Capital's Answers to those interrogatories dated June 20, 2023, and the factual basis for DP Capital's answers.

44.     The requests in Developer RE1's First Set of Requests for Production of Documents to DP Capital dated May 19, 2023, DP Capital's Responses to those requests dated June 20, 2023, and the factual basis for DP Capital's responses including, but not limited to, any steps DP Capital took to locate and produce responsive documents.

45.     The questions asked in 423 Kennedy's First Set of Interrogatories to DP Capital dated May 7, 2024, DP Capital's Answers to those interrogatories dated June 7, 2024, and the factual basis for DP Capital's answers.

46.     The requests in 423 Kennedy's First Set of Requests for Production of Documents to DP Capital dated May 7, 2024, DP Capital's Responses to those requests dated June 7, 2024, and the factual basis for DP Capital's responses including, but not limited to, all steps DP Capital took to locate and produce responsive documents.

47.     All documents produced by DP Capital during discovery in the Litigation.

48.     DP Capital's document retention procedures, including, without limitation, those related to the retention of electronic records such as e-mail, text messages, and computer files.

49. All steps that DP Capital took to prepare for its deposition, including, without limitation, who, if anyone, DP Capital talked to and what, if any, documents DP Capital reviewed, unless privileged.

50. Who has been providing any legal advice or any other form of legal services to DP Capital about the Loan Documents or the Litigation since October 1, 2022.

51. Any attorney's fees and costs that DP Capital (or anyone else) has incurred for which reimbursement will be sought from either Developer RE1 and/or 423 Kennedy or that DP Capital or the Lender may include, or has included, in any balance due under the Loan Documents.

52. The terms of representation with any attorney or law firm and anyone else with respect to this dispute, including DP Capital, and if DP Capital is not the client in any engagement letter, the name of the client.

53. Whether DP Capital, any DP Capital affiliate, or any of investor of DP Capital owes (or will owe) legal fees or reimbursement of costs to any attorney or law firm with respect to this dispute and the amount of that indebtedness or future indebtedness.

54. The identity of the individual(s) who were involved with the decision(s) to issue any notice of foreclosure under any of the Loan Documents, the date such decision was made, and the circumstances surrounding such decision.

55. The services provided by Russell Drazin, in his capacity as Trustee, under the DOTs and all records related to those services, such as invoices and billing statements.

56. The corporate structure of SF NU, LLC, and its subsidiaries, parents, or affiliates, including facts related to its organizational documents, its officers, its directors, the number of current and former employees, its decision makers, and its owners.

12

57.     The corporate structure of JPK Newco, LLC and its subsidiaries, parents, or

affiliates, including facts related to its organizational documents, its officers, its directors, the

number of current and former employees, its decision makers, and its owners.

58.     Why a foreclosure was attempted under the Second DOT (RE1) and under the

Second DOT (423 Kennedy) as opposed to the First DOT (RE1) and First DOT (423 Kennedy).

<div align="right">

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

</div>

Dated:  July 3, 2024           /s/ James D. Sadowski
                     James D. Sadowski (D.C. Bar No. 446635)
                     Alexandria J. Smith (D.C. Bar No. 1781067)
                     Erin B. McAuliffe (D.C. Bar No. 1722421)
                     801 17th Street NW Suite 1000
                     Washington, DC  20006
                     Telephone:  (202) 452-1400
                     Facsimile:  (202) 452-1410
                     Email: jds@gdllaw.com | ajs@gdllaw.com
                         | ebm@gdllaw.com
                     *Counsel for Developer RE1, LLC and 423*
                     *Kennedy St. Holdings, LLC*

<div align="center">13</div>

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Rule 30(b)(6)

Deposition of DP Capital, LLC was served on July 3, 2024 using eFileDC.


 /s/ James D. Sadowski
James D. Sadowski

14

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com;
ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC
and 423 Kennedy Holdings LLC*

<div align="center">

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

</div>

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## PLAINTIFFS' MOTION FOR REMAND AND TO SUSPEND
## DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINES

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs"), pursuant to 11 U.S.C. § 105(a), 28 U.S.C. §1334(c) and §1452(b), Fed. R. Bankr. P. 9006, and LBR 9027-1(b) move this Court to: (a) remand this adversary proceeding to the D.C. Superior Court; and (b) suspend all other pending motions, hearing, and response deadlines until after a decision is made on the motion for remand. In support of these requests, the Plaintiffs submit the following memorandum of facts and law:

### OVERVIEW

1.      On July 4, 2024, Defendants DP Capital LLC ("DP Capital"), Russell Drazin ("Mr. Drazin"), Daniel Huertas ("Mr. Huertas"), WCP Fund I LLC ("WCP Fund I"), and SF NU, LLC ("SF NU") (collectively, "Defendants") filed an untimely notice of removal to remove two civil cases pending in the D.C. Superior Court that had been consolidated into one action (the "Consolidated Cases"). The Consolidated Cases are *Developer RE1 LLC v. . DP Capital d/b/a Washington Capital Partners, et al.*, Case No, 2022-CAB-005935) (the "Lead Case") and *423 Kennedy St. Holdings, LLC v. DP Capital d/b/a Washington Capital Partners, et al.*, Case No. 2023-CAB-004260 (the "423 Kennedy Case".

2.      The Defendants removed the Consolidated Cases under the guise that the Consolidated Cases involve a "core" proceeding (citing 28 U.S.C. §§ 157(b)(2)(I) and (O)). This contention is not accurate because the Consolidated Cases involve purely state law claims for breach of contract (in the 423 Kennedy case), tortious interference with business relations (both cases), breach of the duty of good faith a fair dealing (both cases), breach of fiduciary duty by the trustee under the deeds of trust (both cases), requests for declaratory judgments as to the

2

unenforceability of certain provisions in the loan documents (both cases), and requests for injunctive relief (both cases).

3.      The Consolidated Cases were pending at the time the involuntary bankruptcy petition against Charles Paxton Paret (the "Debtor" or "Mr. Paret") was filed on August 4, 2023, so this adversary proceeding should be remanded because the Notice of Removal was not timely filed under Fed. R. Bank. P. 9027(a)(2).

4.      The relationship that the Defendants allege between this case and another adversary proceeding (AP 23-10025) is remote at best.  The Consolidated Cases do not involve any core proceeding and should be remanded on the basis of mandatory abstention.  The Consolidated Cases should alternatively be remanded on the basis of permissive abstention.

### The Consolidated Cases

5.      On December 16, 2022, 566 days before the Notice of Removal was filed, Developer RE1, as plaintiff, filed a Complaint in D.C. Superior Court against DP Capital, WCP Fund I, Mr. Huertas, and Mr. Drazin in the Lead Case.  The initial complaint in the Lead Case was amended twice – first to correct errors and then a second time to add claims against Mr. Drazin and SF NU, LLC.

6.      On July 13, 2023, 357 days before the Notice of Removal was filed, 423 Kennedy, as plaintiff, filed a Complaint in the D.C. Court of the District of Columbia Case against the same Defendants in 423 Kennedy Case.[1]

7.      Mr. Paret has no membership interest in either Developer RE1 or 423 Kennedy, both of which are limited liability companies that are owned by others.

---

[1]   The claims in the 423 Kennedy Case were first raised in a prior complaint that was filed against the Defendants in D.C. Superior Court on December 15, 2022.  That first case was dismissed, without prejudice, at a hearing on 423 Kennedy's motion for a temporary restraining order.  *See 423 Kennedy St. Holdings v. DP Capital, LLC, et al.,* Case No.  2022-CAB-005093.

8.      By June 7, 2024, the parties had engaged in extensive motions practice and discovery in the Consolidated Cases.  Due to the common issues of fact, similar loan documents, the similarity of the Defendants,[2] and the similarity of events and transactions underlying the two disputes, the parties agreed that the Lead Case and the 423 Kennedy Case should be consolidated for trial.

9.      On June 7, 2024, the Plaintiffs filed a Consent Motion to Consolidate and Modify Scheduling Order.  Four days later, Judge Ebony M. Scott of the D.C. Superior Court issued an Order consolidating the 423 Kennedy Case with the Lead Case, and in that order Judge Scott directed that all future filings should be made in the Lead Case.

10.      The claims in the Consolidated Cases are state law claims related to multiple sets of loan documents between Developer RE1 (in the Lead Case) and 423 Kennedy (in the 423 Kennedy Case), as borrower.  The WCP Fund I, LLC ("WCP Fund") is the named lender in the loan documents.  DP Capital d/b/a Washington Capital Partners ("WCP") services the loans for the WCP Fund.  Mr. Huertas controls the WCP, and Mr. Drazin is the Trustee under all four Deeds of Trust

11.      Both cases also seek a declaratory judgment as to the meaning of, and disputes about certain provisions in the Deeds of Trust.  Both cases also seek temporary and permanent injunctive relief to prevent a foreclosure sale.  Finally, both cases assert a breach of fiduciary duty claim against Mr. Drazin and seek declaratory judgments that Mr. Drazin (a) cannot serve as the trustee under the Deeds of Trust due to an obvious conflict of interest, and (b) that the foreclosure notice that Mr. Drazin issued is invalid.

---

[2]      SF NU, LLC remains a defendant in the Lead Case only.

4894-1669-2944.v2

Case 24-10023-ELG Doc 63 Filed 07/09/24 Entered 07/09/24 23:19:20 Desc Main
Case 24-10023-ELG Doc 3-3 Filed 07/09/24 Entered 07/09/24 23:19:20 Desc Main
Exhibit A - All Docket Entries (Page 15 of 24) Page 1622 of 2443
Document Entries (Page 15) of 24 Page 1622 of 2443

12.    The Consolidated Cass were scheduled for a jury trial to begin on September 9, 2024.  With discovery scheduled to close on July 9, 2024, the parties were in the last stages of conducting discovery.  Specifically, on July 3, 2024, the Plaintiffs served several notices of deposition pursuant to Rule 30(b)(6) and had scheduled the depositions of DP Capital, SF NU, and the WCP Fund I for July 8, 2024.  The Plaintiffs also noted the individual depositions of six people associated with DP Capital, SF NU, and the WCP Fund for July 9, 2024.  *See* Exhibit 1 to Plaintiffs' Statement filed under Fed. R. Bank. P. 9027(e)(3) (Dkt. No. 12).

13.    On July 4, 2024, in an apparent effort to avoid having any depositions taken by the Plaintiffs, the Defendants filed their Notice of Removal.  Almost immediately after filing their untimely Notice of Removal, the Defendants began flooding this court with motions by filing multiple hearing notices and separate motions, two of which were already pending in the Consolidated Cases.  *See* Dkt. Nos. 3, 4, 5, 7 and 9.

14.    The dockets for the Consolidated Action reflect their lengthy history in D.C. Superior Court.  For ease of reference, printouts of the dockets for both cases are attached as Exhibits 1 and 2 to this motion.

### THE CHAPTER 7 PROCEEDING AND ADVERSARY PROCEEDINGS

15.    Two of the defendants in the Consolidated Cases initiated a Chapter 7 Case against Mr. Paret on August 4, 2023, nearly one year ago, in Case No. 23-00217-ELG (the "Chapter 7 Case").   Mr. Paret is *not* a party to the Consolidated Cases.  The Plaintiffs were also not named as creditors in the Chapter 7 Case.  The Chapter 7 Case was filed after each of the Consolidated Cases were filed.

16.    On September 1, 2023, Mr. Huertas filed a Notice of Removal of a complaint that Mr. Paret had filed against Mr. Huertas in the D.C. Superior Court known as *Charles Paret v.*

*Daniel Huertas,* Case No.: 2023-CAB-004507 (the "Paret Complaint"). In the Paret Complaint, which was filed on July 24, 2023, Mr. Paret alleged that he and Mr. Huertas entered into a partnership agreement. In the prayer for relief in the Paret Complaint, Mr. Paret asked that "a constructive trust be established to any and all partnership assets."

17.     On March 1, 2024, Wendell Webster, in his capacity as the Chapter 7 Trustee (the "Ch. 7 Trustee") filed a Second Amended Complaint, naming three of the five defendants in the Consolidated Action as defendants in the Adversary Proceeding initiated when Mr. Huertas removed Mr. Paret's case against him. On July 2, 2024, the Ch. 7 Trustee filed a Third Amended Complaint.

18.     In their Notice of Removal, the Defendants claim that the Ch. 7 Trustee has alleged the existence of a partnership that may or may not have included the properties that are the subject of the liens created by the loan documents at issue in the Consolidated Cases. The Defendants also point to the Ch. 7 Trustee's request for the imposition of a constructive trust over partnership properties. The Defendants have repeatedly denied the existence of any partnership between Mr. Paret and Mr. Huertas.

19.     To the extent that the Defendants seek to rely on the allegations related to a partnership in support of their "this is a core proceeding" contention, they failed to explain why they did not seek to timely remove the Consolidated Cases before July 4, 2024. The Defendants, by their own filings, have admitted that they were on actual notice of the Debtor's partnership allegations as early as March 3, 2024. *See, e.g.,* Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment filed on March 4, 2024 at ¶¶ 7 and 11 (specifically referencing the properties owned by 423 Kennedy and Developer RE1) (Dkt. # 15 in 23-10025).

20.     The Defendants were similarly on prior notice of Mr. Paret's, and later the Ch. 7 Trustee's, request for the imposition of a constructive trust.

21.     It is disingenuous for the Defendants to simultaneously deny the existence of the partnership alleged by the Ch. 7 Trustee, and to seek to dismiss any such partnership claims, while at the same time rely upon the same allegations as truthful for the purposes of removing the Consolidated Cases.

22.     In the Third Amended Complaint, the Ch. 7 Trustee alleges that 423 Kennedy purchased 419-423 Kennedy Street, NW on September 1, 2019.  That purchase date was *before* the date that it is alleged Mr. Paret and Mr. Huertas formed a partnership on September 20, 2019, so the Defendants' contention that the Consolidated Cases have an impact on the administration of Mr. Paret's estate is even more tenuous.

23.     The timing of the removal is further suspect given that the Third Amended Complaint is not yet at issue and may very well be subject to dismissal.  The Consolidated Cases, at best, have only a threadbare connection to the allegations in AP 23-10025.

24.     There is no objectively reasonable explanation for the delayed filing of the removal request other than that step being taken to forum shop state law claims (and related motions) to this Court, to delay the Plaintiffs from taking depositions, and to otherwise prevent the Plaintiffs from pursuing their claims in the Consolidated Cases in D.C. Superior Court.

## LEGAL ARGUMENTS

A.     Defendants' Notice of Removal Is Untimely.

25.     Fed. R. Bankr. P. Rule 9027(a)(2), which governs the time for filing a notice of removal of a civil action that is pending before commencement of a bankruptcy case, provides that:

4894-1669-2944.v2

> If the claim or cause of action in a civil action is pending when a
> case under the Code is commenced, a notice of removal may be
> filed only within the longest of (A) 90 days after the order for
> relief in the case under the Code, (B) 30 days after entry of an
> order terminating a stay, if the claim or cause of action in a civil
> action has been stayed under § 362 of the Code [11 USCS § 362],
> or (C) 30 days after a trustee qualifies in a chapter 11
> reorganization case but not later than 180 days after the order for
> relief.

Fed. R. Bankr.. P. 9027(a)(2).

26.    The first Order for Relief was signed and docketed on August 31, 2023, the

Amended Order for Relief was signed and docketed on October 2, 2023, and no stay was

imposed on the Consolidated Cases.  Under Fed. R. Bank. P. 9027(a)(2), any notice of removal

should have been filed no later than November 2, 2023.  The Notice of Removal here was filed

245 days after that deadline.  The Consolidated Cases must be remanded for this reason alone.

B.    <u>Mandatory Abstention Is Required.</u>

27.    Even if removal had been timely, the doctrine of mandatory abstention applies

because the claims in the Consolidated Cases are non-core proceedings.  This Court has

expressed approval of the Third Circuit's distinction between core and non-core proceedings.

"Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under

title 11 are referred to as 'core' proceedings; whereas proceedings [that are only otherwise]

'related to' a case under title 11 are referred to as 'non-core' proceedings."  *Va. Hosp. Ctr.-*

*Arlington Health Sys. v. Akl (In re Akl)*, 397 B.R. 546, 549 (Bankr. D.D.C. 2008) (*In re*

*Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004)).

28.    Although the Defendants nominally cited to 28 U.S.C §§157(b)(2)(I) and (O) in

support of their "core proceedings" contention, the claims in the Consolidated Cases did not arise

under title 11 nor did they arise in a case under title 11; rather, those claims arose under state law.

8

As a result, the claims in the Consolidated Cases could only possibly be "related to" the Chapter 7 Case or to AP 23-10025.

29.    With respect to mandatory abstention, 28 U.S.C. 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district *court shall abstain from hearing such proceeding if an*
> *action is commenced, and can be timely adjudicated, in a State*
> *forum of appropriate jurisdiction.*

28 U.S.C. 1334(c)(2) (italic emphasis added).

30.    There can be no dispute that the D.C. Superior Court can timely adjudicate the claims in the Consolidated Cases because the only disruption to the timely adjudication of those claims was the delay caused by the Defendants filing a Notice of Removal.  A jury trial was scheduled to start on September 9, 2024.

31.    The D.C. Superior Court has gained a much better familiarity with the claims and issues in the Consolidated Cases during the lengthy history of the cases.  As a result, this Court is required to abstain from hearing the Consolidated Cases under 28 U.S.C. 1334(c)(2).

C.    <u>Discretionary Abstention Is Also Appropriate Here.</u>

32.    Whether discretionary abstention is appropriate includes evaluating the following factors:

(a)    efficiency in the administration of the debtor's estate;
(b)    the extent to which state law issues predominate over bankruptcy issues;
(c)    whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;
(d)    the presence of a related proceeding commenced in state court;
(e)    the existence of a jurisdictional basis other than § 1334;
(f)    the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(g)    the substance rather than form of an asserted "core" proceeding;

9

<div style="margin-left:2em">

(h)    the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(i)    the burden of the federal court's docket;

(j)    the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(k)    the existence of a right to a jury trial; and

(l)    whether non-debtor parties are involved in the proceeding.

</div>

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at \*21-22 (Bankr. D.C. Dec. 14, 2018) (quoting *Power Plant Entm't Casino Resort Ind., LLC v. Mangano,* 484 B.R. 290, 299 (Bankr. D. Md. 2012)).

33.    An evaluation of the abstention factors supports the Plaintiffs' request for a remand. The adjudication of the Consolidated Cases will have no impact on the effective administration of Mr. Paret's estate. The state law issues in the Consolidated Cases are the only issues and therefore predominate. The D.C. Superior Court is also much more familiar with the claims and issues in the Consolidated Cases given the lengthy history of the cases.

34.    The allegations made by the Ch. 7 Trustee regarding the partnership and alleged partnership property combined with the Defendants' position that there was no partnership, do not create any clear connection between any of the claims in the Consolidated Cases that would somehow interfere with this Court's administration of the Chapter 7 Case. Any connection between AP 23-10025 and the Consolidated Cases is remote and tenuous, at best.

35.    This case will place an unnecessary burden on this Court's docket – as is already evident by the flood of motions that have already been filed and noticed for a hearing. Removal at this untimely and late stage, days before important depositions were about to be taken, and just nine weeks before trial, raises a strong likelihood of forum shopping. The parties in the Consolidated Cases are all non-debtor parties.

<div style="text-align:center">10</div>

36.    When making an abstention decision, "[c]ourts also consider factors such as (1) the efficient use of judicial resources; (2) the possibility of inconsistent results; (3) the expertise of the court where the action originated; and (4) duplicative and uneconomic effort of judicial resources in two forums." *Welch Family Ltd. P'ship Four* at 22-23.   These four other factors further support the Plaintiffs' request for a remand.

37.    As the Plaintiff's noted in their Statement of No Consent, two hearings were held (by different judges) on the Plaintiffs' motions for a temporary restraining order in July of 2023, and thirteen motions have been filed, including two dispositive motions, of which ten had already been decided and several were pending as of July 4, 2024.   Extensive discovery had also already taken place.[3]  *See* Dkt. No. 12.

38.    Here there is both a strong risk of inconsistent results and a grave risk of wasting this Court's judicial resources.  The D.C. Superior Court has already heard (and denied) multiple dispositive motions filed by the Defendants.  The D.C. Superior Court has also heard a prior motion for a protective order as to whether the Plaintiffs can take the deposition of Mr. Drazin.

D.    <u>The Court Can Also Remand this Case on Equitable Grounds.</u>

39.    Under 28 USC § 1452, this Court has the ability to remand the Consolidated Cases "on any equitable ground."  There is no question that the Plaintiffs will be prejudiced if the Defendants are permitted to proceed in this forum.  The Defendants' improper removal has already resulted in a delay in taking the Defendants' depositions and the jury trial date being cancelled.

---

[3]    Approximately forty-seven written discovery requests and responses were served (*e.g.*, interrogatories, request for production of documents, requests for admissions, and related responses), one deposition was partially completed, two subpoenas were issued, and the date for the completion of discovery was set for July 9, 2024.

11

40.     The Defendants are already asking this Court to re-invent the wheel by issuing a
new scheduling order with a new schedule of discovery "to be taken and completed." *See* Dkt.
No. 5.  In the Consolidated Cases, the Defendants did not serve *any* discovery requests on 423
Kennedy by the discovery requests deadline of May 8, 2024.  By removing the case and
immediately seeking a new discovery schedule, the Defendants could be trying to extend the
discovery requests deadline that they allowed to lapse, and did not seek to extend, with the D.C.
Superior Court before it expired.  This type of discovery gamesmanship should not be permitted.

E.     The Court Should Suspend All Defendants' Motions, Hearings, and Related Deadlines
       Until the Remand Decision is Made.

41.     It would be a complete waste of judicial resources for this Court to consider any
of the multiple motions that have been noticed and filed by the Defendants if this case is going to
be remanded to the D.C. Superior Court.  For purposes of judicial economy alone, the Court
should immediately issue an order under 11 U.S.C. §105(a) suspending the deadlines and
hearings for all of the motions that the Defendants are seeking to have this Court consider before
a remand decision is made.

CONCLUSION

42.     Given the remote and tenuous, if any, connection between the Chapter 7 Case, AP
23-10025, and the claims in the Consolidated Cases, as well as the Defendants' contention that
there is no partnership relationship as alleged by the Ch. 7 Trustee, the Defendants' purpose to
remove the Consolidated Cases was to forum shop and delay the Plaintiffs' efforts to hold the
Defendants accountable for their wrongful conduct in D.C. Superior Court.

43.     The Court should determine that removal of the Consolidated Cases was not
objectively reasonable under the circumstances.  If the Court makes that determination, it has the
discretion to enter an award of attorney's fees to the Plaintiffs as a sanction.  *See Martin v.*

12

*Franklin Capital Corp.,* 546 U.S. 132, 140-41 (2005) (addressing a sanctions award for an

improper removal under 28 U.S.C. § 1447(c))

WHEREFORE, Plaintiffs request that the Court grant this motion by: (a) suspending all

motions, hearings, and response deadlines for motions and hearings that have been noticed and

filed by the Defendants; (b) remanding the Consolidated Cases to the D.C. Superior Court; and

(c) requiring the Defendants to pay the Plaintiffs for the attorney's fees that they have incurred

and will incur as a result of the improper removal request. The Plaintiffs request that they be

permitted to submit an application in support of an award of attorneys' fees within a reasonable

time period after the entry of the remand order.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 21, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ajs@gdllaw.com |
           ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
  *and 423 Kennedy St. Holdings, LLC*

13

<u>C</u><small>ERTIFICATE</small> <small>OF</small> <u>S</u><small>ERVICE</small>

I H<small>EREBY</small> C<small>ERTIFY</small> that on this 21st day of July, 2024, a true copy of the foregoing

Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related

Response Deadlines was served electronically and a Notice of Electronic filing should be sent to

all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

14

Civil Actions

# Case Summary

## Case No. 2022-CAB-005935

| | | |
|---|---|---|
| **Developer RE1 LLC v. DP Capital, LLC** | § | Location: **Civil Actions** |
| **d/b/a Washington Capital Partners et al.** | § | Judicial Officer: **Scott, Ebony M** |
| | § | Filed on: **12/16/2022** |

---

## Case Information

| | |
|---|---|
| Case Type: | General Civil |
| Subtype: | Other - General Civil |
| Case Status: | **07/09/2024   Closed** |
| | 12/16/2022   Open |

## Related Cases
### Subordinate Cases
2023-CAB-004260 (Cases Consolidated)

## Statistical Closures
07/09/2024   Notice of Removal to USDC

---

## Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2022-CAB-005935 |
| Court | Civil Actions |
| Date Assigned | 12/16/2022 |
| Judicial Officer | Scott, Ebony M |

---

## Party Information

*Lead Attorneys*

**Plaintiff**     **LLC, Developer RE1**

1629 K Street, NW

**Smith, Alexandria J**
*Retained*
202-452-1410(F)

Suite 300
Washington DC, DC 20006

202-452-1400(W)
801 17TH ST NW
STE 1000
WASHINGTON, DC 20006
AJS@GDLLAW.COM

**Defendant**  **DP Capital, LLC d/b/a Washington Capital Partners**

8401 Greensboro Drive
Suite 960
McLean, VA 22102

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**Drazin, Russell**

4400 Jennifer Street, NW
Suite 2
Washington DC, DC 20015

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**Huertas, Daniel**

909 Chinquapin Road
McLean, VA 22102

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**SF NU, LLC**

**WCP Fund I, LLC**

2815 Hartland Road
Suite 200
Falls Church, VA 22043

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160

POTOMAC, MD 20854
mac@mbvesq.com

| | | |
|---|---|---|
| **Defendant Counter Plaintiff** | **WCP Fund I, LLC**<br><br>2815 Hartland Road<br>Suite 200<br>Falls Church, VA 22043 | **Verstandigm, Maurice B.**<br>*Retained*<br>301-576-6885(F)<br>301-444-4600(H)<br>THE VERSTANDIG LAW FIRM, LLC<br>9812 Falls Road, #114-160<br>POTOMAC, MD 20854<br>mac@mbvesq.com |
| **Plaintiff Counter Defendant** | **LLC, Developer RE1**<br><br>1629 K Street, NW<br>Suite 300<br>Washington DC, DC 20006 | **Smith, Alexandria J**<br>*Retained*<br>202-452-1410(F)<br>202-452-1400(W)<br>801 17TH ST NW<br>STE 1000<br>WASHINGTON, DC 20006<br>AJS@GDLLAW.COM |

---

## Events and Orders of the Court

12/16/2022    
**Complaint Filed**
    *Claim Amount: $0.00*
    Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

12/23/2022    
**Notice to Court (Praecipe) Filed**
    Docketed On:   12/28/2022
    Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

12/23/2022    
**Motion Filed**    (Judicial Officer: Scott, Ebony M)
    Docketed on:   12/23/2022
    Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

12/27/2022    
**Initial Order [Remote]**    (Judicial Officer: Scott, Ebony M)

12/27/2022    Notice

01/12/2023    📄

Affidavit/Declaration of Service of Summons and Complaint
     Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

01/12/2023    📄

Amended Complaint Filed
     *First Amended Complaint*
     Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

01/12/2023    📄

Affidavit/Declaration of Service of Summons and Complaint
     Docketed On:   01/17/2023
     Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1
     Served On:   Defendant Drazin, Russell

01/24/2023    📄

Reply Filed
     Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

01/26/2023    🔖

Motion to Dismiss Filed     (Judicial Officer: Scott, Ebony M)
     *Motion to Dismiss First Amended Complaint*
     Docketed on:   02/17/2023
     Filed by:   Defendant DP Capital, LLC d/b/a Washington Capital Partners;
                 Defendant Drazin, Russell;
                 Defendant Huertas, Daniel;
                 Defendant, Defendant Counter Plaintiff WCP Fund I, LLC

01/31/2023    📄

Opposition to Motion Filed
     *Opposition To Plaintiff's Motion For Temporary Restraining Order*
     Docketed on:   02/02/2023
     Filed by:   Defendant DP Capital, LLC d/b/a Washington Capital Partners

02/09/2023    📄

Motion to Extend Filed
     Docketed on:   02/09/2023
     Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

02/16/2023 

Opposition to Motion Filed
*Opposition to Motion to Dismiss*
Docketed on:   02/21/2023
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

02/23/2023

Order Granting Motion      (Judicial Officer: Scott, Ebony M)
*Consent Motion to Extend Deadline for Plaintiff to Respond to the Motion to Dismiss. Entered on docket and copies electronically served 2/23/23. tdk*
Signed on:   02/23/2023

02/23/2023   Notice

02/28/2023 

Notice to Court (Praecipe) Filed
*-Consent Praecipe to Withdraw Motion for Temporary Restraining Order*
Docketed On:   03/01/2023
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

03/24/2023

**Remote Initial Scheduling Conference**   (9:30 AM)   (Judicial Officer: Scott, Ebony M)
**MINUTES - 03/24/2023**
Held and Completed;
Journal Entry Details:
*Courtsmart 219/Webex. Atty. Jim Sadowski Present for plaintiff (remotely). Atty. Verstariding present for defendant (remotely). Motion to Dismiss the 1st Amended Complaint is Denied. Case placed on Track 2 Mediation.;*
   *Held and Completed*

03/24/2023

Oral Ruling on Written Motion Entered on the Docket      (Judicial Officer: Scott, Ebony M)
*Motion to Dismiss the 1st Amended Complaint is Denied*

03/29/2023



Track 2 - Mediation Scheduling Order Entered on the Docket      (Judicial Officer: Scott, Ebony M)

03/29/2023   Notice

04/07/2023   

Order Sua Sponte Entered on Docket      (Judicial Officer: Scott, Ebony M)
*Hearing Order*
Signed on:   04/07/2023


04/07/2023   Notice

06/24/2023   

Answer to Amended Complaint Filed
*(Answer and Affirmative Defenses)*
Docketed On:   06/27/2023
Filed By:    Defendant DP Capital, LLC d/b/a Washington Capital Partners;
             Defendant Drazin, Russell;
             Defendant Huertas, Daniel;
             Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


07/11/2023   

Motion Filed      (Judicial Officer: Scott, Ebony M)
*Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion*
Docketed on:   07/13/2023
Filed by:    Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/11/2023



Motion for Temporary Restraining Order Filed      (Judicial Officer: Scott, Ebony M)
*-Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an
Imminent Foreclosure Sale*
Docketed on:   07/14/2023
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1;
            Primary Attorney Sadowski, James D;
            Primary Attorney Smith, Alexandria J


07/13/2023   

Notice to Court (Praecipe) Filed
*Praecipe With Update On Pending Motion*
Docketed On:   07/14/2023
Filed By:    Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/13/2023   

Complaint Filed
Docketed on:   07/17/2023

07/14/2023    
Notice to Court (Praecipe) Filed
*Praecipe Regarding Missing Verification/Affidavit to Emergency Motion*
Docketed On:   07/14/2023
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/17/2023

Opposition to Motion Filed
*OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER
TO PREVENT AN IMMINENT FORECLOSURE SALE*
Docketed on:   07/17/2023
Filed by:   Defendant DP Capital, LLC d/b/a Washington Capital Partners


07/17/2023

Motion Filed
*Opposed Motion for Protective Order to Prevent Plaintiff from Deposing Defendants Counsel*
Docketed on:   07/18/2023
Filed by:   Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


07/17/2023    
Notice to Court (Praecipe) Filed
*Notice of Related Cases*
Docketed On:   07/18/2023
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/17/2023

Notice to Court (Praecipe) Filed
*Praecipe in Supplement to Opposition to Plaintiffs Opposed Motion for Temporary Restraining
Order to Prevent an Imminent Foreclosure Sale*
Docketed On:   07/18/2023
Filed By:   Defendant DP Capital, LLC d/b/a Washington Capital Partners;
            Defendant Drazin, Russell;
            Defendant Huertas, Daniel;
            Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


07/17/2023    
Initial Order [Remote]     (Judicial Officer: Lee, Milton C)

07/17/2023    
Notice

07/17/2023    

    Notice to Court (Praecipe) Filed
      *Notice of Related Cases*
    Docketed On:   07/18/2023

07/18/2023    

    Motion Filed      (Judicial Officer: Lee, Milton C)
      *Plaintiff's Consent Motion to Exceed the Page Limit in an Emergency Motion*
    Docketed on:   07/19/2023

07/18/2023



Motion for Temporary Restraining Order Filed      (Judicial Officer: Lee, Milton C)
    *Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
    Docketed on:   07/19/2023

07/20/2023



Opposition to Motion Filed

    *Opposition to Plaintiffs Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
    Docketed on:   07/20/2023

07/21/2023    

    Order Granting      (Judicial Officer: Lee, Milton C)
      *Order Granting Leave to Exceed Page Limits sent to parties on 7.21.23*
      Signed on:   07/21/2023

07/21/2023    Notice

07/22/2023    

    Notice to Court (Praecipe) Filed

07/24/2023    

    Order Filed and Entered on Docket      (Judicial Officer: Scott, Ebony M)
      *Order Setting Motion Hearing*
      Signed on:   07/24/2023

07/24/2023    Notice

07/24/2023



Reply Filed
*Plaintiff's Reply to the Defendants' Opposition to the Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
Docketed on:  07/26/2023
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/24/2023

Order Granting Motion      (Judicial Officer: Lee, Milton C)
*Order Granting Temporary Restraining Order sent to parties on 7.24.23*
Signed on:  07/24/2023


07/24/2023      Notice

07/24/2023

Reply Filed
*Plaintiff's Objection and Response to the Supplement Filed by the Defendants*
Docketed on:  07/25/2023


07/25/2023

**Motion Hearing**   (10:30 AM)
*Held and Completed*

07/25/2023

Exhibit List Filed
*Defendants Exhibit List for July 25, 2023 Hearing*
Docketed on:  07/26/2023
Filed by:   Defendant, Defendant Counter Plaintiff WCP Fund I, LLC;
            Primary Attorney Verstandigm, Maurice B.


07/31/2023

Notice to Court (Praecipe) to Enter Appearance Filed
*Notice of Appearance of Attorney Spencer B. Ritchie*
Docketed On:  08/01/2023
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


07/31/2023

Opposition to Motion Filed
*OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER*
Docketed on:  08/01/2023
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

08/07/2023



Reply Filed

*REPLY TO OPPOSITION TO MOTION FOR PROTECTIVE ORDER TO PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL*

Docketed on:   08/08/2023

Filed by:   Defendant, Defendant Counter Plaintiff WCP Fund I, LLC

08/15/2023   

Order Filed and Entered on Docket     (Judicial Officer: Scott, Ebony M)

*Hearing Order*

Signed on:   08/15/2023

08/15/2023   Notice

09/03/2023   

Answer to Complaint

Docketed On:   09/05/2023

09/19/2023



Order Granting     (Judicial Officer: Scott, Ebony M)

*ORDER GRANTING DEFENDANTS' OPPOSED MOTION FOR PROTECTIVE ORDER TO PREVENT PLAINTIFF FROM DEPOSING DEFENDANTS' COUNSEL*

Signed on:   09/19/2023

09/19/2023   Notice

10/13/2023



Track 2 - Mediation Scheduling Order Entered on the Docket     (Judicial Officer: Lee, Milton C)

*Track 2 Scheduling Order Issued*

11/06/2023



Order Sua Sponte Entered on Docket     (Judicial Officer: Scott, Ebony M)

*Setting Status Hearing. Entered on docket and copies electronically served 11/6/23.*

Signed on:   11/06/2023

11/06/2023   Notice

11/06/2023   

Motion to Extend Scheduling Order
*Consent Motion to Modify the Scheduling Order to Allow for Private Mediation*
Docketed on:   11/08/2023
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

11/09/2023



Order Granting   (Judicial Officer: Scott, Ebony M)
*Consent Motion to Extend the Scheduling Order Deadlines to Allow the Parties to Participate in A Private Mediation. Entered on docket and copies electronically served 11/9/23.*
Signed on:   11/09/2023

11/09/2023   Notice

11/16/2023   

*CANCELED* **Remote Mediation Session (Civil 2 and SC Jury Demand)**   (1:30 PM)
  *Mediation Readiness Certificate Not Submitted*

11/17/2023   

Notice to Court (Praecipe) Filed
  *NOTICE OF INTENT TO ISSUE SUBPOENA TO MAINSTREET BANK*
  Docketed On:   11/17/2023

01/05/2024   

*CANCELED* **Remote Status Hearing**   (10:00 AM)   (Judicial Officer: Scott, Ebony M)
  *Vacated*

03/01/2024   

Motion to Extend Scheduling Order
*Consent Motion to Modify the Scheduling Order Deadlines*
Docketed on:   03/05/2024
Filed by:   Defendant DP Capital, LLC d/b/a Washington Capital Partners;
            Defendant Drazin, Russell;
            Defendant Huertas, Daniel;
            Defendant, Defendant Counter Plaintiff WCP Fund I, LLC;
            Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

03/01/2024   

Motion for Leave of Court Filed
*Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint*
Docketed on:   03/05/2024
Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1;
Primary Attorney Smith, Alexandria J


03/01/2024   

Notice to Court (Praecipe) to Dismiss Filed
*Stipulation of Dismissal of Defendant SF NU, LLC Only*
Docketed on:   03/04/2024

03/01/2024   

Motion to Extend Scheduling Order     (Judicial Officer: Lee, Milton C)
*Consent Motion to Modify the Scheduling Order Deadlines*
Docketed on:   03/04/2024


03/05/2024   

Order Granting Motion     (Judicial Officer: Lee, Milton C)
*Order Granting Consent Mot to Ext SO, order sent to parties.*
Signed on:   03/04/2024

03/05/2024   Notice

03/07/2024   

Order Granting     (Judicial Officer: Scott, Ebony M)
*Consent Motion to Extend the Scheduling Order Deadlines.*
Signed on:   03/07/2024

03/07/2024   Notice

03/07/2024   

Order Granting     (Judicial Officer: Scott, Ebony M)
*Plaintiff's Unopposed Motion for Leave to File a Second Amended Complaint.*
Signed on:   03/07/2024


03/07/2024   Notice

03/07/2024   

Amended Complaint Filed
*Second Amended Complaint*
Docketed On:   03/14/2024
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

03/08/2024 

Witness List Filed
    Docketed on: 03/12/2024
    Filed by: Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

03/08/2024 

Witness List Filed
    Docketed on: 03/12/2024
    Filed by: Defendant DP Capital, LLC d/b/a Washington Capital Partners

03/13/2024 

Initial Summons Requested as to
    Party: Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

03/15/2024 

Witness List Filed
    Docketed on: 03/19/2024
    Filed by: Primary Attorney Sadowski, James D

03/15/2024 

Witness List Filed
*Defendants' Disclosure of Fact Witnesses*
    Docketed on: 03/19/2024
    Filed by: Primary Attorney Verstandigm, Maurice B.

04/02/2024 

Answer with Counterclaim Filed
*Answer, Affirmative Defenses, and Counterclaim*
    Docketed On: 04/03/2024
    Filed By: Defendant, Defendant Counter Plaintiff WCP Fund I, LLC

04/11/2024 

Affidavit/Declaration of Service of Summons and Complaint
*Served: SF NU, LLC, c/o Jason Shrensky. Personal Service*
    Docketed On: 04/11/2024
    Filed By: Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1
    Served On: Defendant DP Capital, LLC d/b/a Washington Capital Partners;
                Defendant Drazin, Russell;
                Defendant Huertas, Daniel;
                Defendant, Defendant Counter Plaintiff WCP Fund I, LLC

04/11/2024



Affidavit/Declaration of Service of Summons and Complaint
*Served: SF NU, LLC c/o Registered Agents, Inc. Personal Service on Registered Agent.*
Docketed On:   04/11/2024
Filed By:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1
Served On:   Defendant DP Capital, LLC d/b/a Washington Capital Partners;
    Defendant Drazin, Russell;
    Defendant Huertas, Daniel;
    Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


04/21/2024    

    Motion to Dismiss Filed      (Judicial Officer: Scott, Ebony M)
        Docketed on:   04/22/2024
        Filed by:   Defendant SF NU, LLC

04/23/2024    

    Motion to Dismiss Filed      (Judicial Officer: Scott, Ebony M)
        *Motion to Dismiss Defendant WCP Fund I LLC's Counterclaim*
        Docketed on:   04/24/2024
        Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


05/06/2024    

    Opposition to Motion Filed
        *Opposition to Defendant SF NU, LLC's Motion to Dismiss*
        Docketed on:   05/07/2024
        Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1


05/08/2024    🔖

    Opposition to Motion Filed
        *Opposition to Motion to Dismiss Counterclaim*
        Docketed on:   05/08/2024
        Filed by:   Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


05/15/2024

🔖

Reply Filed
    *Reply In Support of Plaintiff Developer REI LLC's Motion to Dismiss Defendant WCP Fund I,*
    *LLC's Counterclaim*
    Docketed on:   05/16/2024
    Filed by:   Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1

06/07/2024



Motion to Consolidate Filed     (Judicial Officer: Scott, Ebony M)

*Plaintiffs Developer RE1. LLC and 423 Kennedy St Holdings, LLC'S Consent Motion to Consolidate and to Modify Scheduling Order*

Docketed on:  06/07/2024

Filed by:  Plaintiff, Plaintiff Counter Defendant LLC, Developer RE1;

Primary Attorney Smith, Alexandria J


06/07/2024



Motion to Consolidate Filed     (Judicial Officer: Scott, Ebony M)

*Plaintiffs Developer REI, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*

Docketed on:  06/07/2024


06/11/2024



Order Granting Motion to Consolidate

*Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*


06/11/2024     Notice

06/11/2024



Order Granting     (Judicial Officer: Scott, Ebony M)

*Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*

Signed on:  06/11/2024


06/11/2024     Notice

06/26/2024     

Motion Filed     (Judicial Officer: Scott, Ebony M)

*/Motion to Quash Subpoena*

Docketed on:  06/27/2024

Filed by:  Defendant Huertas, Daniel

07/04/2024 

 Notice of Removal to US District Court
  Docketed on: 07/05/2024
  Party: Defendant DP Capital, LLC d/b/a Washington Capital Partners;
    Defendant Drazin, Russell;
    Defendant Huertas, Daniel;
    Defendant SF NU, LLC;
    Defendant, Defendant Counter Plaintiff WCP Fund I, LLC


07/09/2024


Order Sua Sponte Entered on Docket (Judicial Officer: Scott, Ebony M)
 *ORDER SUA SPONTE CLOSING CASE PER THE REMOVAL TO US DISTRICT COURT*
 Signed on: 07/09/2024


07/09/2024 Notice

09/06/2024 

 *CANCELED* **Trial Readiness Hearing** (2:00 PM) (Judicial Officer: Scott, Ebony M)
  *Vacated*

09/09/2024 

 *CANCELED* **Jury Trial** (9:30 AM) (Judicial Officer: Scott, Ebony M)
  *Vacated*

---

## Financial Information

**Defendant** Huertas, Daniel

| | |
|---|---:|
| Total Financial Assessment | 20.00 |
| Total Payments and Credits | 20.00 |
| **Balance Due as of 07/21/2024** | **0.00** |

**Defendant** SF NU, LLC

| | |
|---|---:|
| Total Financial Assessment | 20.00 |
| Total Payments and Credits | 20.00 |
| **Balance Due as of 07/21/2024** | **0.00** |

**Defendant** WCP Fund I, LLC

| | |
|---|---:|
| Total Financial Assessment | 60.00 |
| Total Payments and Credits | 60.00 |
| **Balance Due as of 07/21/2024** | **0.00** |

**Plaintiff** LLC, Developer RE1

| | |
|---|---:|
| Total Financial Assessment | 300.00 |

Total Payments and Credits                                              300.00

**Balance Due as of 07/21/2024**                                       **0.00**

Civil Actions

# Case Summary

### Case No. 2023-CAB-004260

| | | | |
|---|---|---|---|
| **423 Kennedy St Holdings, LLC v. DP Capital LLC et al.** | § § § | Location: Judicial Officer: Filed on: | **Civil Actions** **Scott, Ebony M** **07/13/2023** |

---

## Case Information

Case Type:  Contract
Subtype:  Breach of Contract
Case Status:  **07/09/2024   Closed**
07/13/2023   Open

## Related Cases
### Lead Case
2022-CAB-005935 (Cases Consolidated)

## Statistical Closures
07/09/2024   Notice of Removal to USDC

---

## Assignment Information

### Current Case Assignment
Case Number  2023-CAB-004260
Court  Civil Actions
Date Assigned  06/12/2024
Judicial Officer  Scott, Ebony M

### Previous Case Assignments
Case Number  2023-CAB-004260
Court  Civil Actions
Date Assigned  07/13/2023
Judicial Officer  Lee, Milton C
Reason  Case Transferred Because of Consolidation

---

## Party Information

*Lead Attorneys*

**Plaintiff**　　**423 Kennedy St Holdings, LLC**

1629 K ST Northwest
STE 300
Washington, DC 20006

**Sadowski, James D**
*Retained*
202-452-1410(F)
202-452-1400(W)
jds@gdllaw.com

**Defendant**　**DP Capital LLC**

*Doing Business As* Washington Capital
Partners
8401 Greensboro DR
STE 960
McLean, VA 22102

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM,
LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**Drazin, Russell S.**

4400 Jenifer ST Northwest
STE 2
Washington, DC 20015

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM,
LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**Huertas, Daniel**

909 Chinquapin RD
McLean, VA 22102

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)
THE VERSTANDIG LAW FIRM,
LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

**WCP Fund I, LLC**

2815 Hartland RD
STE 200
Falls Church, VA 22043

**Verstandigm, Maurice B.**
*Retained*
301-576-6885(F)
301-444-4600(H)

THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC, MD 20854
mac@mbvesq.com

---

## Events and Orders of the Court

07/13/2023     
Complaint Filed
    Docketed on:   07/17/2023
    Filed by:   Plaintiff 423 Kennedy St Holdings, LLC

07/13/2023
Complaint Filed
    Docketed on:   07/17/2023

07/17/2023
Initial Order [Remote]     (Judicial Officer: Lee, Milton C)

07/17/2023
Notice

07/17/2023
Notice to Court (Praecipe) Filed
    *Notice of Related Cases*
    Docketed On:   07/18/2023
    Filed By:   Plaintiff 423 Kennedy St Holdings, LLC

07/17/2023
Initial Order [Remote]     (Judicial Officer: Lee, Milton C)

07/17/2023     
Notice

07/17/2023
Notice to Court (Praecipe) Filed
    *Notice of Related Cases*
    Docketed On:   07/18/2023

07/18/2023
Motion Filed     (Judicial Officer: Lee, Milton C)
    *Plaintiff's Consent Motion to Exceed the Page Limit in an Emergency Motion*
    Docketed on:   07/19/2023
    Filed by:   Plaintiff 423 Kennedy St Holdings, LLC

07/18/2023



Motion for Temporary Restraining Order Filed    (Judicial Officer: Lee, Milton C)
*Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
Docketed on:  07/19/2023
Filed by:   Plaintiff 423 Kennedy St Holdings, LLC


07/18/2023    

Motion Filed    (Judicial Officer: Lee, Milton C)
*Plaintiff's Consent Motion to Exceed the Page Limit in an Emergency Motion*
Docketed on:  07/19/2023


07/18/2023



Motion for Temporary Restraining Order Filed    (Judicial Officer: Lee, Milton C)
*Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
Docketed on:  07/19/2023


07/20/2023



Opposition to Motion Filed
*Opposition to Plaintiffs Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
Docketed on:  07/20/2023
Filed by:   Defendant DP Capital LLC;
            Defendant Drazin, Russell S.;
            Defendant Huertas, Daniel;
            Defendant WCP Fund I, LLC


07/20/2023



Opposition to Motion Filed
*Opposition to Plaintiffs Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale*
Docketed on:  07/20/2023

07/21/2023 

**Temporary Restraining Order- Further Hearing** (1:30 PM) (Judicial Officer: Lee, Milton C)

**MINUTES - 07/21/2023**

Held and Completed;

Journal Entry Details:

*Courtsmart 318/webex REMOTE. Atty. Sadowski and Smith present on behalf of pltf. Atty. Verstandig present on behalf of defts, DP Capital LLC, Russell S. Drazin, Daniel Huertas and WCP Fund I, LLC. Deft, SF NU, LLC not present but no action taken against them at this time. After hearing arguments from both counsels on pltf's motion for temporary restraining order, the court takes this matter under advisement. Order to be issued by chambers and any future dates to be set by chambers. CY;*

Parties Present:   Primary Attorney   Smith, Alexandria J
                   Primary Attorney   Sadowski, James D
                   Defendant   DP Capital LLC
                   Defendant   WCP Fund I, LLC
                   Defendant   Huertas, Daniel
                   Defendant   Drazin, Russell S.

   *Held and Completed*

07/21/2023 

Order Granting   (Judicial Officer: Lee, Milton C)
   *Order Granting Leave to Exceed Page Limits sent to parties on 7.21.23*
   Signed on:   07/21/2023

07/21/2023 Notice

07/21/2023 

Order Granting   (Judicial Officer: Lee, Milton C)
   *Order Granting Leave to Exceed Page Limits sent to parties on 7.21.23*
   Signed on:   07/21/2023

07/21/2023 Notice

07/22/2023 

Notice to Court (Praecipe) Filed
   Filed By:   Defendant DP Capital LLC;
               Defendant Drazin, Russell S.;
               Defendant Huertas, Daniel;
               Defendant WCP Fund I, LLC

07/22/2023 

Notice to Court (Praecipe) Filed

07/24/2023

Order Granting Motion     (Judicial Officer: Lee, Milton C)
*Order Granting Temporary Restraining Order sent to parties on 7.24.23*
Signed on:   07/24/2023


07/24/2023     Notice

07/24/2023

Reply Filed
*Plaintiff's Objection and Response to the Supplement Filed by the Defendants*
Docketed on:   07/25/2023
Filed by:   Plaintiff 423 Kennedy St Holdings, LLC


07/24/2023

Order Granting Motion     (Judicial Officer: Lee, Milton C)
*Order Granting Temporary Restraining Order sent to parties on 7.24.23*
Signed on:   07/24/2023


07/24/2023     Notice

07/24/2023

Reply Filed
*Plaintiff's Objection and Response to the Supplement Filed by the Defendants*
Docketed on:   07/25/2023


09/03/2023

Answer to Complaint
Docketed On:   09/05/2023
Filed By:   Defendant DP Capital LLC;
            Defendant Drazin, Russell S.;
            Defendant Huertas, Daniel;
            Defendant WCP Fund I, LLC

09/03/2023

Answer to Complaint
Docketed On:   09/05/2023

10/13/2023   

**Remote Initial Scheduling Conference**   (9:30 AM)   (Judicial Officer: Lee, Milton C)

**MINUTES - 10/13/2023**
Held and Completed;
Journal Entry Details:
*Courtsmart 318/webex REMOTE. Atty. Sadowski present on behalf of pltf. Atty. Verstandigm present on behalf of defts. Counsels jointly agree to dismiss deft, SF NU, LLC as a party in this case. Case placed on track 2 as requested by parties. Scheduling order to be issued by chambers and emailed/mailed to counsels. CY;*
*Parties Present:   Primary Attorney   Verstandigm, Maurice B.*
*Primary Attorney   Sadowski, James D*
*Held and Completed*

10/13/2023


Track 2 - Mediation Scheduling Order Entered on the Docket     (Judicial Officer: Lee, Milton C)
*Track 2 Scheduling Order Issued*

10/13/2023


Track 2 - Mediation Scheduling Order Entered on the Docket     (Judicial Officer: Lee, Milton C)
*Track 2 Scheduling Order Issued*

11/17/2023   

Notice to Court (Praecipe) Filed
*NOTICE OF INTENT TO ISSUE SUBPOENA TO MAINSTREET BANK*
Docketed On:   11/17/2023
Filed By:   Defendant DP Capital LLC

11/17/2023   

Notice to Court (Praecipe) Filed
*NOTICE OF INTENT TO ISSUE SUBPOENA TO MAINSTREET BANK*
Docketed On:   11/17/2023

03/01/2024

Notice to Court (Praecipe) to Dismiss Filed
*Stipulation of Dismissal of Defendant SF NU, LLC Only*
Docketed on:   03/04/2024
Filed by:   Plaintiff 423 Kennedy St Holdings, LLC

03/01/2024    📄

     Motion to Extend Scheduling Order     (Judicial Officer: Lee, Milton C)
     *Consent Motion to Modify the Scheduling Order Deadlines*
     Docketed on:   03/04/2024
     Filed by:    Plaintiff 423 Kennedy St Holdings, LLC

03/01/2024    📄

     Notice to Court (Praecipe) to Dismiss Filed
     *Stipulation of Dismissal of Defendant SF NU, LLC Only*
     Docketed on:   03/04/2024

03/01/2024    📄

     Motion to Extend Scheduling Order     (Judicial Officer: Lee, Milton C)
     *Consent Motion to Modify the Scheduling Order Deadlines*
     Docketed on:   03/04/2024

03/05/2024    📄

     Order Granting Motion     (Judicial Officer: Lee, Milton C)
     *Order Granting Consent Mot to Ext SO, order sent to parties.*
     Signed on:   03/04/2024

03/05/2024    Notice

03/05/2024    📄

     Order Granting Motion     (Judicial Officer: Lee, Milton C)
     *Order Granting Consent Mot to Ext SO, order sent to parties.*
     Signed on:   03/04/2024

03/05/2024    Notice

03/15/2024    📄

     Witness List Filed
     Docketed on:   03/19/2024
     Filed by:    Plaintiff 423 Kennedy St Holdings, LLC;
               Primary Attorney Sadowski, James D

03/15/2024    📄

     Witness List Filed
     *Defendants' Disclosure of Fact Witnesses*
     Docketed on:   03/19/2024
     Filed by:    Defendant DP Capital LLC;
               Defendant Drazin, Russell S.;
               Defendant Huertas, Daniel;
               Defendant WCP Fund I, LLC;
               Primary Attorney Verstandigm, Maurice B.

03/15/2024 

Witness List Filed
> Docketed on:  03/19/2024
> Filed by:  Primary Attorney Sadowski, James D

03/15/2024 

Witness List Filed
> *Defendants' Disclosure of Fact Witnesses*
> Docketed on:  03/19/2024
> Filed by:  Primary Attorney Verstandigm, Maurice B.

05/29/2024 

*CANCELED* **Remote Mediation Session (Civil 2 and SC Jury Demand)**
> (9:00 AM)
> *Request of Party/Parties*

06/07/2024


Motion to Consolidate Filed    (Judicial Officer: Scott, Ebony M)
> *Plaintiffs Developer REI, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*
> Docketed on:  06/07/2024
> Filed by:  Plaintiff 423 Kennedy St Holdings, LLC

06/07/2024


Motion to Consolidate Filed    (Judicial Officer: Scott, Ebony M)
> *Plaintiffs Developer REI, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*
> Docketed on:  06/07/2024

06/11/2024


Order Granting    (Judicial Officer: Scott, Ebony M)
> *Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate and to Modify Scheduling Order*
> Signed on:  06/11/2024

06/11/2024    Notice

06/11/2024



Order Granting Motion to Consolidate
*Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate
and to Modify Scheduling Order*

06/11/2024   Notice

06/11/2024



Order Granting    (Judicial Officer: Scott, Ebony M)
*Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC's Consent Motion to Consolidate
and to Modify Scheduling Order*
Signed on:   06/11/2024

06/11/2024   Notice

09/06/2024   
*CANCELED* **Trial Readiness Hearing**   (2:00 PM)   (Judicial Officer: Scott, Ebony
M)
*Vacated*

09/09/2024   
*CANCELED* **Jury Trial**   (9:30 AM)   (Judicial Officer: Scott, Ebony M)
*Vacated*

09/17/2024   
*CANCELED* **Remote Mediation Session (Civil 2 and SC Jury Demand)**
(9:00 AM)
*Vacated*

---

## Financial Information

**Plaintiff**    423 Kennedy St Holdings, LLC
Total Financial Assessment                 200.00
Total Payments and Credits                 200.00
**Balance Due as of 07/21/2024**             **0.00**

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy Holdings LLC*

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Proc. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

4884-9143-7266.v1

270

## Notice of Hearing and Opportunity to Object to
## Plaintiff's Motion for Remand and to Suspend
## Defendants' Motions, Hearings, and Related Response Deadlines

NOTICE IS HEREBY GIVEN that the Plaintiffs, by undersigned counsel, have filed a

Motion for Remand and to Suspend the Defendants' Motions, Hearings, and Related Response

Deadlines ("Motions"). The Motions seek to remand this case back to D.C. Superior Court and

to suspend all related hearings for motions filed and noticed by the Defendants (Dkt. Nos. 3, 4, 5,

7 and 9.).

<u>YOUR RIGHTS MAY BE AFFECTED.</u> You should read these papers carefully and

discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an

attorney, you may wish to consult one).

NOTICE OF DEADLINE TO OBJECT: If you do not want the court to grant the

Motions, or if you want the Court to consider your views on the Motions, then on or before

**<u>August 21, 2024,</u>** you or your attorney must file with the Court a written objection to the

Motions, together with the proposed order required by Local Bankruptcy Rule 9072-1. The

objection and proposed order must be filed with the Clerk of the Bankruptcy Court, E. Barrett

Prettyman U.S. Courthouse, 3rd and Constitution Avenue, N.W., Washington, D.C. 20001. The

objection must contain a complete specification of the factual and legal grounds upon which it is

based. You may append affidavits and documents in support of your objection.

If you mail, rather than deliver, your response to the Clerk of the Bankruptcy Court for

filing, you must mail it early enough so that the court will receive it by the date stated above.

You must also mail a copy of your objection to:

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
*Counsel for Plaintiffs Developer RE1, LLC*
*  and 423 Kennedy St. Holdings, LLC*

NOTICE OF HEARING:  A hearing on the Motions has been schedule before the

Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for August 28, 2024 at 10:00

a.m. The hearing will be held in a hybrid in-person or Zoom for Government format. All

participants may choose to appear either (a) in-person in Courtroom 1, United States Bankruptcy

Court for the District of Columbia, E. Barrett Prettyman Courthouse, 333 Constitution Ave. NW,

Washington, DC 20001 or (b) by video using Zoom for Government.  All parties participating by

Zoom for Government before Judge Gunn should review and be familiar with the Virtual

Hearing expectations.  For the Zoom meeting code, you may contact Courtroom Deputy Aimee

Mathewes by email at Aimee_Mathewes@dcb.uscourts.gov.

If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motions and may enter an order granting the relief requested.

Parties in interest with questions may contact the undersigned.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 21, 2024

/s/ James D. Sadowski
James D. Sadowski, DC Bar. No. 446635
801 17th Street, N.W. - Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400 ext. 5407
Email:    jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and*
*  423  Kennedy St. Holdings, LLC*

3

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st of July, 2024, a true copy of this Notice of Hearing

and Opportunity to Object to Plaintiffs' Motion for Remand and to Suspend the Defendants'

Motions, Hearings, and Related Response Deadlines was served electronically and a Notice of

Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| SF NU, LLC; and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| Plaintiff, | ) | (State Court Cases Consolidated) |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC; Russell Drazin; Daniel Huertas; | ) | |
| and WCP Fund I LLC | ) | |
| | ) | |
| Defendants. | ) | |

1

### AMENDED NOTICE OF REMOVAL[1]

Come now WCP Fund I LLC ("WCP"), DP Capital LLC ("DPCL"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (the "Defendants"), by and through undersigned counsel, pursuant to Section 1452 of Title 28 of the United States Code, Section 1334 of Title 28 of the United States Code, and Federal Rule of Bankruptcy Procedure 9027, and hereby give notice of the removal of the above-captioned consolidated matters from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia (which, as noted *infra*, results in the referral of the matter to the United States Bankruptcy Court for the District of Columbia), and in support thereof note as follows:

### The Removed Cases

1.      These are civil actions commenced in the Superior Court of the District of Columbia by Developer RE1 LLC ("DRL"), on or about December 16, 2022, and by 423 Kennedy St Holdings LLC ("423 Kennedy"), on or about July 13, 2023, with the two cases being subsequently consolidated less than a month ago, on or about June 11, 2024.

2.      DRL owns the real property located at 5501 First Street, NW, Washington, DC 20011 (the "DRL Property").

3.      423 Kennedy owns the real property located at 423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property").

---

[1] This notice is amended to (i) insert an attorney identifier; (ii) include a date commensurate with the docketing of the amendment; and (iii) update the certificate of servicer to show service by CM/ECF. This amended notice is *not* being filed in the Superior Court, insofar as the amendment is purely to comply with the Local Rules of this Honorable Court and is not substantive in nature. As such, paragraph 32 hereof has also been edited to reflect such. Formatting changes have also been made, where appropriate, and a case number has been inserted. And in lieu of re-attaching exhibits, text has been altered to reflect their being appended to the original notice.

2

4.     WCP loaned monies to both DRL and 423 Kennedy, securing such loans with deeds of trust fixed upon the DRL Property and the 423 Kennedy Property, respectively.

5.     WCP declared both loans to be in default following the occurrence of various breaches of the promissory notes and deeds of trust; despite such defaults, WCP permitted each borrower until the maturity date of the loans to pay off the underlying promissory notes.

6.     When neither 423 Kennedy nor DRL paid their correlative loans at maturity, WCP commenced the process of foreclosing upon the respective properties.

7.     These cases were brought by 423 Kennedy and DRL in an effort to (i) enjoin WCP from foreclosing; (ii) assert WCP did not have the right to declare defaults under the promissory notes and deeds of trust; and (iii) seek various forms of damages, including forfeiture and monetary damages.

8.     423 Kennedy and DRL are also suing (i) Mr. Drazin, the substitute trustee under the deeds of trust, on a theory of breach of fiduciary duty; and (ii) Mr. Huertas, DPCL, and SF NU, on various theories (though SF NU is only a party to one of the two consolidated cases), some of which are pegged to ownership of the promissory notes and holding rights under the deeds of trust.

9.     Certain promissory notes and correlative deeds of trust, implicated in these two consolidated cases, are now held by JPK NewCo LLC ("JPK"), a party to whom certain debt instruments were transferred earlier this year. 423 Kennedy and DRL have refused to join JPK, the holder of such instruments, despite the economic and property rights of JPK being implicated by these proceedings.

10.     The core litigation goals in these two cases, on the parts of DRL and 423 Kennedy, appear to be frustrating the collection efforts of the Defendants and JPK, challenging the

3

276

indebtedness owed to various Defendants and JPK, and seeking relief from the terms of commercial loan documents.

## The Alleged Partnership

11.     On July 2, 2024, Wendell Webster ("Mr. Webster" or the "Trustee") filed an amended complaint (the "Amended Complaint"), in connection with the Chapter 7 bankruptcy of Charles Paret ("Mr. Paret" or the "Debtor"), alleging, *inter alia*, the existence of a partnership between Messrs. Paret and Huertas that "involve[s]" 423 Kennedy and myriad other companies and real estate assets. *See In re Paret*, Case No. 23-217-ELG at DE #132, ¶ 45.[2]

12.     The Amended Complaint further alleges, *inter alia*, that Mr. Huertas "used" DRL "to purchase foreclosed properties belonging" to the partnership between Messrs. Paret and Huertas. *Id.* at ¶ 46.[3]

13.     While the Amended Complaint suffers myriad flaws, a plain reading of the document reveals the Trustee is asserting that 423 Kennedy is a part of the partnership the Trustee alleges to exist and, further, that the same partnership has an interest in the property owned by DRL. *Id.*, *passim*.

14.     The Amended Complaint seeks "imposition of a constructive trust on" the properties comprising the alleged partnership, "transfer" of the alleged partnership's properties "to the trust," and injunctive relief, among myriad other remedies. *Id.* at pp. 17- 20.

---

[2] The Amended Complaint was subsequently also docketed in the adversary proceeding captioned *Webster v. Huertas, et al.*, Case No. 23-10025, at DE #39.

[3] The manner in which this allegation is worded is such that it is not clear if the Trustee is alleging DRL was used to purchase multiple properties or a single property; the Defendants do not mean to suggest the Trustee is alleging multiple properties to have been acquired by DRL, especially insofar as it is believed DRL has only ever owned the DRL Property.

4

15.     Stated otherwise: the Trustee is asserting that Mr. Huertas and Mr. Paret have a partnership that owns some combination of 423 Kennedy, DRL, the 423 Kennedy Property, the DRL Property, WCP's interest in the 423 Property, and/or WCP's interest in the DRL Property.

**Debtor Allegations**

16.     The assertions in the Amended Complaint are consistent with theories the Debtor has espoused in connection with his bankruptcy proceedings.

17.     Specifically, less than a week ago, on June 25, 2024, a meeting of creditors was held in the Debtor's bankruptcy case (the "Meeting of Creditors").

18.     At the Meeting of Creditors, the following colloquy touched upon the interplay of (i) the alleged partnership, (ii) 423 Kennedy, and (iii) the DRL Property:

> MR. SADOWSKI: Okay. One second, Mr. Gardner (sic).
> Now, when you were being asked some questions by Mr. VerStandig, you gave some answers that things were currently in debate. I'm not going to debate you over your answers, but would it be fair to sum it up that -- all right. Let me ask it this way. Do you currently own a membership interest in 423 Kennedy Street Holdings, LLC?
> MR. PARET: I believe I do.
> MR. SADOWSKI: Okay. And is that belief based upon this theory that WCP was a partner with you? Is that what the basis for that belief is?
> MR. PARET: That is correct.
> MR. SADOWSKI: Okay. And would the same hold true for 5501? Excuse me. I don't have the address right in front of my face here. 5501 First Street Holdings, LLC, you indicated that it's -- there's a debate over whether you have a membership interest in that. And my understanding from your testimony is that the date is -- that the belief that you have, you have a membership interest is on this partnership theory with the WCP. Is that right?
> MR. PARET: That is correct, along with the fact that the LLCs that were in ownership, the investor group have ownership in those LLCs. That's -- that's -- it's still unclear. But that is the -- that's the theory.

Transcript of Meeting of Creditors, attached to DE #1 as Exhibit A, at 46:19-47:17.

19.     The theories espoused by Mr. Paret at the Meeting of Creditors appear to be consistent with those promoted by the Trustee in the Amended Complaint.

5

Case 24-50220-EG Doc 5-3 Filed 07/09/24 Entered 07/09/24 10:03:27 Desc Main
Document (Page 116 of Page 1668 of 2443
Exhibit A - All Docu Entries (Page 116 of Page 1668 of 2443

**Core and "Related To" Status**

20.     If the Trustee is correct (i) that 423 Kennedy is part of the putative partnership between the Debtor and Mr. Huertas; and (ii) that Mr. Huertas has wrongfully "used" DRL to foreclose an asset belonging to the alleged partnership, the disposition of these cases will directly impact the administration of the Debtor's bankruptcy estate without regard to whether 423 Kennedy and DRL prevail, the Defendants prevail, or some combination thereof.

21.     Should the Defendants prevail in these actions, the the lone asset of 423 Kennedy—an alleged part of the partnership the Trustee is seeking to establish—will be foreclosed.

22.     Should 423 Kennedy and/or DRL prevail in these actions, 423 Kennedy—an entity the Trustee insists to be part of the alleged partnership—will retain its eponymous asset, and/or DRL (an entity the Trustee alleges to have been "used" by Mr. Huertas to take a partnership property) will retain its sole asset.

23.     Stated more simply: the Trustee is alleging a vast partnership, concerning myriad properties and interests therein; these cases concern the disposition of two such properties and security interests.

24.     The relief sought by DRL and 423 Kennedy in these cases includes, *inter alia*, a determination of the validity and extent of liens; to the extent that the Trustee is correct that one or both of those liens are partnership assets, this is a core proceeding pursuant to Section 157(b)(2)(I) of Title 28 of the United States Code.

25.     Equally, the Trustee asserts a partnership interest in assets titled in the name of both 423 Kennedy and DRL; to the extent the Trustee is correct in such assertion, these two cases will directly affect the liquidation of the assets of the Debtor's estate, thereby rendering this a core proceeding under Section 157(b)(2)(O) of Title 28 of the United States Code.

6

26.     Further, in light of the various allegations set forth in the Amended Complaint, these two cases are most certainly "related to" the administration of Mr. Paret's bankruptcy estate.

### General Denial

27.     For the avoidance of doubt or ambiguity, Mr. Huertas and WCP deny—in the most vehement terms possible—that there ever existed a partnership with Mr. Paret.

28.     The removal of these cases is not based upon any theory in which the Amended Complaint ought to be credited as true or legally proper but, rather, solely upon the relatively uncontroversial theory that the Amended Complaint ought to be credited as constituting the current allegations of a bankruptcy trustee in connection with the administration of the estate that he has been charged with liquidating for the benefit of creditors.

### Formalistic Recitations

29.     If the Trustee's allegations in the Amended Complaint are correct, the proceedings in these two cases are subject to the automatic stay set forth in Section 362 of Title 11 of the United States Code, and such stay has never been terminated.

30.     Pursuant to DCt.LBR 5011-1, these consolidated cases are automatically referred to the United States Bankruptcy Court for the District of Columbia upon being removed from the Superior Court of the District of Columbia.

31.     Attached to DE #1 as Exhibit B is "a copy of all process and pleadings," together with all docket entries, in the consolidated cases.

32.     The original iteration of this notice was docketed in the Superior Court of the District of Columbia, in a manner substantially contemporaneous with its filing herein, sans Exhibits A and B.

33.     The Defendants consent to the entry of final orders or judgments of the United States Bankruptcy Court for the District of Columbia.

Respectfully submitted,

Dated: July 22, 2024              By: /s/ Maurice B. VerStandig
                                         Maurice B. VerStandig, Esq.
                                         Bar No. MD18071
                                         The VerStandig Law Firm, LLC
                                         1452 W. Horizon Ridge Pkwy, #665
                                         Henderson, Nevada 89012
                                         Phone: (301) 444-4600
                                         Facsimile: (301) 444-4600
                                         mac@mbvesq.com
                                         *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2024, a copy of the foregoing is served via this Honorable Court's CM/ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Email: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC and*
   *423 Kennedy St Holdings LLC*

<div align="center">

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

</div>

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br>v.<br><br>DP CAPITAL LLC D/B/A WASHINGTON CAPITAL PARTNERS, *ET AL.*,<br><br>    *Defendants.* | Adv. Proc. No. 24-10023-ELG<br>(D.C. Superior Court Consolidated Case No. 2022-CAB-005935) |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br>v.<br><br>DP CAPITAL LLC D/B/A WASHINGTON CAPITAL PARTNERS, *ET AL.*,<br><br>    *Defendants.* | |

<div align="center">

**PLAINTIFFS' OMNIBUS OBJECTION TO MOTIONS FILED AND NOTICED BY THE DEFENDANTS AFTER AN IMPROPER REMOVAL OF NON-CORE PROCEEDINGS**

</div>

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings

LLC ("423 Kennedy") (collectively, "Plaintiffs"), file this omnibus Objection to multiple

motions that were noticed and filed by the Defendants after they improperly removed a
consolidated case from D.C. Superior Court to this Court. This Objection applies to the
following motions and hearing notices:

- The Notice of Hearing on Motion to Dismiss filed by SF NU, LLC
  on July 4, 2024 (Dkt. No. 3);

- The Notice of Deadline to File and Serve Objections to Motion to
  Quash Subpoena and Notice of Hearing Thereupon filed by
  Defendant Daniel Huertas on July 4, 2024 (Dkt. No. 4);

- The Motion to Extend Scheduling Order filed by the Defendant SF
  NU, LLC on July 6, 2024 (Dkt. Nos. 5 and 6);

- The Motion for Summary Judgment on Claims Against Russell
  Drazin and Notice of Hearing filed by Defendant Russell Drazin
  on July 7, 2024 (Dkt. Nos. 7 and 8); and

- The Motion for Protective Order and Notice of Hearing filed on
  July 8, 2024 by DP Capital, LLC, WCP Fund I, LLC, Daniel
  Huertas, and Russell Drazin on July 8, 2024 (Dkt. No. 9).

<u>The Legal Basis for the Omnibus Objection</u>

1.      The Defendants improperly removed this case as noted in the Plaintiffs'
Statement of No Consent to Final Orders or Judgment filed on July 18, 2024 (Dkt. No. 12) and in
the Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related
Response Deadlines filed on July 21, 2014 (Dkt. No. 13) ("Motion for Remand"), which are
incorporated by reference.

2.      This case should be remanded to the D.C. Superior Court because removal of a
consolidated case from the D.C. Superior Court was untimely under Fed. R. Bankr. P.
9027(a)(2), and because both the mandatory and the permissive abstention doctrines apply and
support the Plaintiffs' request to remand this case to the D.C. Superior Court. *See generally*
Motion for Remand (Dkt. No. 13).

3.      This Court should not be hearing or deciding any of the Defendants' motions until after a decision is made on the Motion for Remand.

4.      A bankruptcy judge may resolve non-core proceedings only if the parties consent.  *See* 28 U.S.C. § 157(c)(1)-(2).   The Plaintiffs do not consent to this Court resolving what are clearly non-core proceedings that the Defendants are attempting to forum shop to this Court before the Court has had any chance to determine whether it even has jurisdiction, or whether it should abstain from hearing this case for other reasons.

For these reasons, and for any reasons that may be advanced at the hearing on July 23, 2024, the Plaintiffs object to this Court deciding non-core proceedings in an improperly removed case.  The Court should refrain from considering any of the Defendants' motions until after the Motion for Remand is decided.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  July 22, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C.  20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
  *and 423 Kennedy St. Holdings LLC*

4853-8398-7666.v1

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of July, 2024, a true copy of the foregoing

Plaintiffs' Omnibus Objection to Motions and Hearing Notices Filed After the Defendants'

Improper Removal of Non-Core Proceedings was served electronically and a Notice of

Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

4853-8398-7666.v1

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF COLUMBIA**

PDF FILE WITH AUDIO FILE ATTACHMENT

2024-10023

Developer RE1 LLC et al v. WCP Fund I LLC et al

| | |
|---|---|
| Case Type : | ap |
| Case Number : | 2024-10023 |
| Case Title : | Developer RE1 LLC et al v. WCP Fund I LLC et al |
| Audio Date\Time: | 7/23/2024 10:35:59 AM |
| Audio File Name : | 1ap2024-10023_20240723-103559.mp3 |
| Audio File Size : | 5768 KB |
| Audio Run Time : | [00:12:01] (hh:mm:ss) |

**Help using this file:**

An audio file is embedded as an attachment in this PDF document. To listen to the file,
click the Attachments tab or the Paper Clip icon. Select the Audio File and click Open.

**MPEG Layer-3 audio coding technology from Fraunhofer IIS and Thomson.**

This digital recording is a copy of a court proceeding and is provided as
a convenience to the public. In accordance with 28 U.S.C. § 753 (b)
"[n]o transcripts of the proceedings of the court shall be considered as
official except those made from the records certified by the reporter or
other individual designated to produce the record."

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Special Counsel for
JPK NewCo LLC;
Counsel for the Defendants*

287

## TABLE OF CONTENTS

I. Introduction ....................................................................................................... 1

II. Relevant Facts and Allegations ........................................................................ 3

  a. Facts and Allegations Internal to the Consolidated Cases ..................... 4

  b. Facts and Allegations Correlative to *In re JPK NewCo LLC,* Case No.
   24-262-ELG (Bankr. D.D.C. 2024) ......................................................... 5

  c. Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case
   No. 23-10025-ELG (Bankr. D.D.C. 2023) ............................................. 6

III. Argument: The Motion Merits Denial .............................................................. 8

  a. Removal is Timely ................................................................................... 8

    i. Paret Case ....................................................................................... 8

    ii. JPK Case ...................................................................................... 12

  b. Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............. 13

    i. The Paret Case Renders this Dispute "Core" .......................................... 14

    ii. The JPK Case Renders this Dispute "Core" ........................................... 16

    iii. Mandatory Abstention is Inapplicable to Cases Removed from
     the Superior Court of the District of Columbia ...................................... 18

  c. The Centrality of this Case to Two Bankruptcy Estates—and this
   Honorable Court's Topical Expertise—Militate Against Discretionary
   Abstention ............................................................................................. 19

  d. Analysis of Equitable Abstention Occasions the Same Result ........................... 26

IV. Conclusion ...................................................................................................... 26

ii

## **TABLE OF AUTHORITIES**

**Cases**

*Bohm v. Howard (In re Howard)*,
2010 Bankr. LEXIS 5109 (Bankr. W.D. Pa. May 17, 2010) ......................................... 12

*Brown v. Chesnut (In re Chesnut)*,
422 F.3d 298 (5th Cir. 2005) ................................................... 10, 11, 12, 24

*Camofi Master LDC v. United States Coal Corp.*,
527 B.R. 138 (Bankr. S.D.N.Y. 2015) .................................................... 26

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008) ................................. 20

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976) ........................................................... 19, 26

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959) ........................................................... 19

*Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*,
432 B.R. 583 (Bankr. S.D. Tex. 2010) .................................................. 11

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023) .................................................... 20

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021) ................................................... 20

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ..................................................... 13

*In re Brittain*,
435 B.R. 318 (Bankr. D.S.C. 2010) ..................................................... 9

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004) ................................................... 19

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011) .................................................. 19

iii

289

*In re Glob. Outreach, S.A.*,
2009 Bankr. LEXIS 1602 (Bankr. D.N.J. June 8, 2009) ............................................ 11

*In re Grooms*,
599 B.R. 155 (Bankr. W.D. Okla. 2019) ....................................................... 9

*In re HP Bennett, LLC*,
2023 Bankr. LEXIS 3010 (Bankr. D.D.C. Dec. 22, 2023) ........................................ 25

*In re Levenstein*,
371 B.R. 45 (Bankr. S.D.N.Y. 2007) ........................................................ 11

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ........................................ 26

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) ............................................................... 20

*In re Okorie*,
2024 Bankr. LEXIS 339 (Bankr. S.D. Miss. Feb. 12, 2024) ...................................... 11

*In re Rosales*,
2012 Bankr. LEXIS 4366 (Bankr. W.D. Tex. Sep. 21, 2012) ...................................... 26

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995) ................................................................ 13

*In re Sklar*,
626 B.R. 750 (Bankr. S.D.N.Y. 2021) ......................................................... 25

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013) .......................................... 13

*Neufeld v. City of Baltimore*,
964 F.2d 347 (4th Cir. 1992) ............................................................... 19

*Patterson v. United States*,
2007 U.S. Dist. LEXIS 43705 (D.D.C. June 18, 2007) .......................................... 18

*Power Plant Entm't Casino Resort Ind., LLC v. Mangano*,
484 B.R. 290 (Bankr. D. Md. 2012) .......................................................... 21

iv

*Schmidt v. U.S. Marshal Serv. (In re Villarreal)*,
2007 WL 470507 (Bankr. S.D. Tex. Feb. 8, 2007) ......................................................... 11

*Stancil v. Bradley Invs., LLC (In re Stancil)*,
487 B.R. 331 (Bankr. D.D.C. 2013) ............................................................................... 25

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005) ........................................... 22

*Taub v. Taub (In re Taub)*,
427 B.R. 208 (Bankr. E.D.N.Y. 2010) ..................................................................... 11, 24

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) ............................................................................... 19

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ................................... 13, 20, 21

## Statutes

11 U.S.C. § 362 ................................................................................................................. 9

11 U.S.C. § 541 ................................................................................................................. 9

28 U.S.C. § 151 ............................................................................................................... 22

28 U.S.C. § 157 ............................................................................................... 2, 15, 17, 18

28 U.S.C. § 1334 ........................................................................................... 13, 14, 18

## Rules

Federal Rule of Bankruptcy Procedure 7065 .................................................................... 6

Federal Rule of Bankruptcy Procedure 9027 ................................................................ 8, 12

Federal Rule of Civil Procedure 65 ................................................................................. 6

Local Rule 9013-1 .......................................................................................................... 1

v

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Motion for Remand (the "Motion," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I. Introduction

This case concerns the Plaintiffs' breach of four promissory notes and ensuing efforts to enjoin creditors from exercising remedies under those notes and correlative deeds of trust. Two of those notes and deeds of trust are owned by JPK, a debtor in bankruptcy. Wendell Webster (the "Trustee"), the Chapter 7 trustee of the estate of Charles Paret—another debtor in bankruptcy—claims to own an interest in at least two (if not all four) of the notes and deeds of trust. The Trustee also claims to own an interest in at least one of the Plaintiffs. It necessarily follows that this litigation will have a momentous impact upon the administration of two separate bankruptcy estates, while also being likely dispositive of JPK's ability to reorganize. And there is thusly little question—pragmatically and legally—that this litigation is properly conducted in this Honorable Court.

Notwithstanding these realities, the Plaintiffs seek a remand to the District of Columbia Superior Court on four theories: (i) removal is untimely; (ii) mandatory abstention is required; (iii) discretionary abstention is appropriate; and (iv) equitable remand is appropriate. Each of these contentions is substantively and legally unavailing.

1

As to the timing of removal, the Plaintiffs appear to misapprehend the relationship between the governing rule and Title 11 of the United States Code (the "Bankruptcy Code"). The Motion suggests that "no stay was imposed on the Consolidated Cases," Motion, DE #13, at ¶ 26, but the automatic stay set forth in Section 362 of the Bankruptcy Code (the "Automatic Stay") is, as titularly suggested, automatic. No party ever sought relief from the Automatic Stay to pursue this litigation and, as such, the clock to remove this case never started running. Equally, however, even if there did exist a temporal defect, such would have been cured by the commencement of the JPK bankruptcy.

In terms of mandatory abstention, this is the epitome of a core proceeding. The Plaintiffs are seeking to void liens in which the Trustee claims an ownership interest, thereby directly invoking Section 157(b)(2)(K) of Title 28 of the United States Code. The Plaintiffs are also seeking to enjoin the liquidation of debt instruments in which the Trustee claims a partnership interest, thereby directly invoking Section 157(b)(2)(O) of the same Title. And while the JPK bankruptcy was filed after the Motion was docketed, it bears notation that the same two provisions would be applicable to JPK, with the Plaintiffs' requests to cancel debt instruments held by JPK additionally amounting to claims that concern the "allowance or disallowance of claims against the estate" of JPK, thereby further invoking Section 157(b)(2)(B) of the same Title.

The theory of discretionary abstention bodes no better. This case will be markedly important to the Trustee's administration of Charles Paret's bankruptcy estate and likely dispositive, nearly *en toto*, of JPK's bankruptcy estate. The issues raised in this litigation—which concern, chiefly, the adjudication of rights in a commercial debtor/creditor context—are issues on which this Honorable Court enjoys expertise. And while the Plaintiffs assert that the District of Columbia Superior Court is more familiar with these issues and these cases, such does not appear

293

to be a statement rooted in any fidelity to pragmatism; it has been well more than a year since a substantive hearing was held in either of these cases and the overwhelming docket activity has been merely that of the parties seeking to modify scheduling orders and consolidate claims.

The Motion only addresses equitable abstention fleetingly, but the arguments set forth on that matter are no more persuasive. It appears the real issue here is that the Plaintiffs do not wish for a new discovery schedule to be issued. Yet the Plaintiffs joined SNL as a party only recently, with that Defendant's motion to dismiss still pending and with that Defendant accordingly having not yet had occasion to take *any* discovery. And the Plaintiffs are somehow yet to join JPK, despite being affirmatively on notice—for several months—that JPK now holds two of the promissory notes and deeds of trust the Plaintiffs are seeking to nullify. In any event, however, whether or not a new discovery order is entered is a substantively separate question that can be addressed in due course, and that will need to be addressed without regard to whether or not this case is remanded; conflating a procedural question with a jurisdictional motion advances no cognizable purpose other than the muddying of matters.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged the Motion be denied.

## II. Relevant Facts and Allegations

The allegations at the core of this case are markedly familiar in nature, closely mirroring those regularly confronted by this Honorable Court in claim objections and adversary proceedings alike:

3

### a. Facts and Allegations Internal to the Consolidated Cases

1. On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2. The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3. Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4. The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5. Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6. DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

4

295

7. The two respective complaints are colorful in nature, expressly alleging that "Money is the Root of All Evil," DRP Complaint, DE #1-2, at p. 13, and accusing WCP of corruption, 423 Kennedy Complaint, DE #1-2, at p. 669.

8. In light of the two complaints and correlative motions for injunctive relief, the Superior Court entered injunctions prohibiting the Defendants from foreclosing on the DRL Deeds of Trust and the 423 Kennedy Deeds of Trust. *See* Hearing Order, DE #1-2, at pp. 1473-78.

9. The DRL Note for $524,000.00, and the 423 Kennedy Note for $1,256,000.00, were both transferred to JPK, which continues to hold both debt instruments and be the beneficiary of the correlative deeds of trust. *See* Notice of Removal, DE #1, at ¶ 9.

10. When DRL joined SNL as a defendant, just earlier this year, SNL moved to dismiss, noting that (i) the promissory note formerly held by WCP, and once assigned to SNL, has now been assigned to JPK; and (ii) JPK is thusly an indispensable party to these proceedings. *See* Motion to Dismiss, DE #1-2, at pp. 1646-1649; Assignment of Deed of Trust, DE #1-2, at pp. 1651-1652.

   **b. Facts and Allegations Correlative to *In re JPK NewCo LLC*, Case No. 24-262-ELG (Bankr. D.D.C. 2024)**

1. On July 23, 2024, Shaheen Sariri ("Mr. Sariri") filed an involuntary petition for Chapter 11 relief against JPK. *See In re JPK NewCo LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Main Case").

2. An order for relief was thereafter entered in the JPK bankruptcy. *See* JPK Main Case at DE #8.

3. JPK's two most valuable assets are the promissory notes on which DRL and 423 Kennedy are obligated. *See* JPK Main Case at DE #12, ¶ 3.

4.　　If not first joined by the Plaintiffs, JPK intends to move to intervene in this consolidated case so as to preserve its property rights in those two promissory notes. *Id.* at ¶ 4(b).

5.　　Enforcement of those two promissory notes and the correlative deeds of trust will be integral to JPK's formation of a plan of reorganization. *Id.* at ¶ 3.

6.　　JPK is presently bound by the injunctions entered in this case, <mark>Fed. R. Bankr. P. 7065</mark>; <mark>Fed. R. Civ. P. 65(d)(2)</mark>, despite not being a party to this case. *See* JPK Main Case at DE #12, ¶ 3.

7.　　In short, this litigation is actively preventing JPK from exercising its rights under the promissory notes and deeds of trust that are assets of JPK, and this litigation will prevent JPK from being able to reorganize in this Honorable Court, unless JPK is joined herein—either (i) by the Plaintiffs; (ii) pursuant to the motion to dismiss filed by SNL; or (iii) by JPK, pursuant to a motion to intervene.

**c. Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)**

1.　　Charles Paxton Paret ("Mr. Paret") is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2.　　In connection with the administration of Mr. Paret's bankruptcy estate, Wendell Webster, the Chapter 7 trustee ("Mr. Webster" or the "Trustee"), has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3.　　The Webster Complaint appears to allege the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

6

4.      The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5.      The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

6.      It genuinely appears that Mr. Webster, a seasoned Chapter 7 trustee is, upon the performance of due diligence and conducting of some variety of an investigation, alleging that he—in his capacity as Mr. Paret's trustee—owns some combination of the promissory notes, deeds of trusts, and real estate assets at issue in this case.

7.      Mr. Webster's beliefs appear to be rooted in those of Mr. Paret himself who, upon questioning under oath, has indicated that he believes his partnership with Mr. Huertas owns DRL and 423 Kennedy or, at minimum, the debt instruments upon which those entities are obligated and/or the real estate assets held by those entities. *See* Notice of Removal, DE #1, at ¶¶ 16-19.

8.      For the avoidance of ambiguity, Mr. Huertas, DPCL and WCP uniformly believe the Trustee's allegations, and Mr. Paret's mirror allegations, to be factually and legally errant, with no partnership existing. The summary of those allegations herein ought not be mistaken for a suggestion that (i) the allegations have any merit whatsoever; or (ii) the allegations can withstand a now-pending motion to dismiss, Paret Adversary at DE #41. But these are nonetheless the solemn extant allegations of a bankruptcy trustee with a sterling reputation and decades of experience.

7

III.    **Argument: The Motion Merits Denial**

a.  **Removal is Timely**

Removal of this case is timely for two reasons. First, the Plaintiffs never received stay relief

to proceed with this litigation, following initiation of Mr. Paret's bankruptcy case, and the deadline

to remove thusly never commenced running. And, second, even if removal were untimely in the

prism of Mr. Paret's case, removal would certainly be timely in the JPK case, where an order for

relief was entered less than two weeks ago.

i.    **Paret Case**

The rule governing removal of actions in the context of bankruptcy proceedings provides,

*inter alia*:

> If the claim or cause of action in a civil action is pending when a case under the
> Code is commenced, a notice of removal may be filed only within the longest of
> (A) 90 days after the order for relief in the case under the Code, (B) 30 days after
> entry of an order terminating a stay, if the claim or cause of action in a civil action
> has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in
> a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

Subsection (B) of the foregoing rule is critical. As noted in the official Notes of Advisory

Committee:

> As long as the stay remains in effect there is no reason to impose a time limit for
> removal to the bankruptcy court and, therefore, clause (B) of subdivision (a)(2)
> provides that a removal application may be filed within 30 days of entry of an
> order terminating the stay. Parties to stayed litigation will not be required to act
> immediately on commencement of a case under the Code to protect their right to
> remove.

Fed. R. Bankr. P. 9027 advisory committee's note.

The Plaintiffs, seemingly cognizant of the foregoing rule, posit, *inter alia*, ". . . no stay was

imposed on the Consolidated Cases." Motion, DE #13, at ¶ 26. Yet this is fundamentally inaccurate

8

since the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay") is, as titularly suggested, "automatic."

The Automatic Stay familiarly applies to all "property of the estate." 11 U.S.C. § 362(a)(3). "Property of the estate," in turn, is inclusive of ". . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). And, as observed by a sister court, ". . . a debtor may hold an equitable interest in property without holding title thereto under the theory of a resulting trust." *In re Brittain*, 435 B.R. 318, 324 (Bankr. D.S.C. 2010).

Importantly, it is not just the Webster Complaint that identifies the assets at issue in this litigation as being assets of Mr. Paret's estate. Rather, Mr. Paret has scheduled himself as owning a membership interest in 423 Kennedy. *See* Paret Main Case, Schedule A/B: Property, DE #50, at p. 10. And Mr. Paret has, too, claimed a direct ownership interest in both the DRL Property and the 423 Kennedy Property, on his schedules. *Id*. at p. 8, § 42; p. 12 at ll. 24-33, 50-60. Mr. Paret is expressly claiming to own a partnership interest in the real estate assets directly at issue in this case, while also claiming to own an interest in one of the two Plaintiffs herein.

The question, thusly, becomes whether the Automatic Stay is applicable to assets of a debtor's estate when ownership of those assets is in dispute. Certainly the Defendants herein gladly join the Plaintiffs in urging the Trustee's contentions, in the Paret Adversary, are folly. Yet case law firmly holds that no matter the convictions of parties in disagreement, the Automatic Stay *does* apply unless and until the subject dispute is resolved: "There has developed a doctrine that the stay should continue to apply when the ownership of the estate property is in bona fide dispute." *In re Grooms*, 599 B.R. 155, 165 (Bankr. W.D. Okla. 2019).

Indeed, application of the Automatic Stay to so-called "arguable property" is not a novel concept unique to this case. The United States Court of Appeals for the Fifth Circuit confronted

300

one such situation in the context of a case where there existed a dispute as to whether real estate

was a non-filing spouse's "separate property" or, rather, "community property" also owned by a

debtor on account of his marriage. *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir.

2005). This mattered a great deal since the spouse of the party listed on the deed to the property

sought bankruptcy protection but the individual actually named on the deed did not. *Id.*

The deed in *Chesnut* was signed only by the non-filing spouse, specifically reciting that

said property was being acquired "as her sole and separate property. . ." *Id.* Yet mortgage payments

were thereafter missed and a foreclosure was thusly scheduled. *Id.* Five days before the

foreclosure, the deed holder's husband filed for Chapter 13 protection, asserting an interest in the

property titled solely in his wife's name. *Id.*

The *Chesnut* lender, observing that the party on the subject deed had not sought bankruptcy

protection—with only the apparent owner's spouse having filed for Chapter 13 relief—proceeded

with a foreclosure of the real estate asset. *Id.* at 301. The debtor then brought suit for violation of

the Automatic Stay, reasoning that without permitting the bankruptcy court to first determine if

the debtor's claimed ownership interest was legitimate, any foreclosure was illegal. *Id.*

In *Chesnut*, the District Court—on appeal—ultimately held that the filing debtor did *not*

have an ownership interest in the foreclosed asset. *Id.* And, as such, the District Court overturned

the Bankruptcy Court's finding that the Automatic Stay had been violated. *Id.* But the Fifth Circuit,

in turn, reversed, holding that the ultimate disposition of property ownership is immaterial to

application of the Automatic Stay during a time period in which the subject asset falls into the

category of "arguable property" awaiting adjudication as to proper ownership:

> Where seized property is arguable property, it is no answer for the creditor to defend
> the foreclosure by claiming that the property was not properly covered by the stay.
>
> . . . a retroactive classification of the property to shape the scope of the stay would
> encourage creditor abuse. Knowing a debtor is in a difficult pecuniary condition

10

and may not be able to vindicate his rights in a later adversary proceeding, a creditor could simply seize arguable property without fear of later judicial retribution. Or the creditor could gamble that a court would accept potential legal arguments long after foreclosure (as did the district court here), when the harm may be more difficult to remedy. Given that in some instances arguable property is, in fact, the debtor's property, these outcomes increase the probability that the debtor will be permanently deprived of his wrongfully seized assets.

*Id.* at 304.

The holding in *Chesnut* is not an outlier. The United States Bankruptcy Court for the Southern District of Texas has observed that not only does the Automatic Stay apply to "arguable property" but, too, that any claims as to the ownership of "arguable property" are necessarily core proceedings since such "concern[] a claim against the estate." *Endeavour GP, LLC v. Endeavour Highrise, L.P. (In re Endeavour Highrise, L.P.)*, 432 B.R. 583, 630 (Bankr. S.D. Tex. 2010). The United States Bankruptcy Court for the Eastern District of New York has been perhaps blunter: "Courts in this Circuit have concluded that the automatic stay applies even where 'the debtor's claimed interest in property may turn out to be groundless.'" *Taub v. Taub (In re Taub)*, 427 B.R. 208, 221 (Bankr. E.D.N.Y. 2010) (quoting *In re Levenstein*, 371 B.R. 45, 47 (Bankr. S.D.N.Y. 2007); citing *Schmidt v. U.S. Marshal Serv. (In re Villarreal)*, 2007 WL 470507, at *2 (Bankr. S.D. Tex. Feb. 8, 2007)).

Other courts have held similarly, recognizing the enormous risk—and palpable injustice—that would be occasioned by allowing creditors to take action against arguable property merely because creditors have conviction that they will ultimately prevail in showing such arguable property to not actually be a debtor's asset. *See, e.g., In re Glob. Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at *22 (Bankr. D.N.J. June 8, 2009) (". . .the principle put forth regarding 'arguable property' is instructive here."); *In re Okorie*, 2024 Bankr. LEXIS 339, at *11-12 (Bankr. S.D. Miss. Feb. 12, 2024) ("PriorityOne was not free to decide for itself that the stay did not apply. In the absence of controlling authority, whether the stay protected the Clinic Property was a question

11

for this Court.") (citing *Chesnut*, 422 F.3d at 304); *Bohm v. Howard (In re Howard)*, 2010 Bankr. LEXIS 5109, at *10 (Bankr. W.D. Pa. May 17, 2010) ("Defendant's alleged 'good faith' belief that the Mineral Rights proceeds were not property of the estate, does not give the Defendant the right to unilaterally maintain control over and dissipate estate property. Allowing the Defendant to excuse her behavior on this 'good faith' defense would run contrary to the principals espoused in the Bankruptcy Code.").

The Trustee claims that the real estate assets and the promissory notes at issue in this litigation are assets of Mr. Paret's estate. Mr. Paret has not only scheduled them as assets but, too, gone a step further, claiming an ownership interest in one of the Plaintiffs. WCP, DPCL and Mr. Huertas certainly disagree with these assertions, but such does not change that the assertions render the promissory notes and the real estate assets herein "arguable property." Inherent in "arguable" property is the notion of an argument. It is a strange grouping to see DRL, 423 Kennedy, WCP, DPCL, and Mr. Huertas all on the same side of an issue, but that does not change that there is an issue, with someone no less formidable than a bankruptcy trustee on the other side. And such, in turn, means the Automatic Stay is—and has been—applicable to this case.

With the Automatic Stay being applicable, the timeliness argument of the Plaintiffs necessarily fails. Rule 9027 is express in using language that provides for a removal deadline that is the "longest of" three time periods, and the period applicable to termination of the Automatic Stay never even started running—much less lapsed—in this case. Removal is timely in nature.

### ii. JPK Case

Even if, *arguendo*, removal were untimely in the prism of the Paret Main Case, removal would certainly still be timely in the JPK bankruptcy, since an order for relief was entered a scant two weeks ago. Should this Honorable Court find removal to have not otherwise been timely in

nature, the Defendants respectfully request leave to amend their Notice of Removal, so as to expressly correlate the same with the JPK bankruptcy (which did not exist at the time of original removal). Such would, no doubt, be timely in nature. And, as discussed in greater detail *infra*, the JPK bankruptcy is as integral to maintenance of this case in this Honorable Court as is the Paret bankruptcy.

### b. Mandatory Abstention is Inapplicable Since this is a Core Proceeding

The Plaintiffs next assert that mandatory abstention is necessitated herein because these are not "core" proceedings. In so doing, the Plaintiffs appear to misconstrue what does—or does not—constitute a "core" proceeding, tainting the resulting analysis in the Motion. This matter is core, for multiple reasons, to both the Paret bankruptcy and the JPK bankruptcy, and mandatory abstention is thusly inapplicable *sub judice*.

As observed by this Honorable Court in, ironically, a case involving one of the entities the Trustee is apparently seeking to borrow money from to finance the Paret Adversary, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language of the mandatory abstention statute itself:

13

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

==28 U.S.C. § 1334(c)(2)==.

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been commenced in a "court of the United States." As discussed in detail *infra*, these are core proceedings, so this Honorable Court need not reach the second prong. Yet, even if the second prong were to be reached, it would not be satisfied *sub judice*.

### i.      The Paret Case Renders this Dispute "Core"

Mr. Paret claims an ownership interest in both the DRL Property and the 423 Kennedy Property, with the Trustee additionally asserting Mr. Paret to own an interest in the promissory notes secured by those real estate assets. The Plaintiffs are seeking cancellation of the subject debt instruments and permanent injunctions prohibiting foreclosure; the Defendants are seeking to proceed with foreclosures so both properties may be sold at public auction. It is accordingly rather difficult to surmise how this case is not core to Mr. Paret's bankruptcy.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11. . .

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

14

305

28 U.S.C. § 157(b)(2).

These proceedings are plainly core under Section 157(b)(2)(B) insofar as (i) Mr. Paret claims to own the DRL Property and the 423 Kennedy Property; (ii) WCP and JPK assert the existence of liens on the DRL Property and the 423 Kennedy Property; and (iii) this consolidated case will determine the validity, *vel non*, of those liens and their underlying debt instruments. If WCP and JPK ultimately prevail, each entity will have a claim against "arguable property" of Mr. Paret's estate. If the positions of the Plaintiffs are ultimately prevailing, these putative claims against "arguable property" of Mr. Paret's estate will be disallowed.

The same is true pursuant to Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. WCP and JPK assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens are each against "arguable property" of Mr. Paret's estate. Such very much renders these consolidated cases core proceedings.

Analysis under Section 157(b)(2)(O) invites the same result. WCP and JPK are seeking to foreclose assets that are "arguable property" of Mr. Paret's estate. The Trustee is affirmatively claiming to hold an interest in the promissory notes underlying the liens that would be foreclosed. Mr. Paret also appears to be contending that he owns part—or all—of 423 Kennedy (the entity), a single asset real estate company that will lose its sole notable asset if foreclosed. And while these positions of Mr. Paret are, no doubt, mildly schizophrenic (with there being a notable tension between claiming to both own a company and to own an interest in the secured debt owed by that company), such is not so brazenly strange a concept as to be facially implausible: the equity

15

interests of many debtors in this Honorable Court are, too, the holders of secured claims in the resulting cases.

Indeed, it is impossible to surmise an outcome to this litigation that does not directly impact the current posture of the Trustee's administration of Mr. Paret's estate. If WCP and JPK prevail, the Trustee will assuredly continue in positing that he is entitled to a share of any resulting proceeds, with the Trustee having alleged such monies ought to be held to constitute a constructive trust for the estate's benefit. If the Plaintiffs prevail, the Trustee will assuredly focus on the contention that Mr. Paret is the owner of 423 Kennedy (the entity), whilst simultaneously having to recognize that any claims of the estate to the proceeds of the DRL lending activity are now of diminished—if any—value.

### ii.       The JPK Case Renders this Dispute "Core"

This litigation is also manifestly core to the JPK bankruptcy case, with JPK owning two of the four at-issue promissory notes and two of the four at-issue deeds of trust. The Plaintiffs are seeking, through these consolidated cases, to cancel the debt instruments held by JPK; it is genuinely difficult to conceive of a proceeding more "core" in nature than one seeking to cancel or nullify the two largest assets of a debtor's bankruptcy estate.

In the context of the JPK case, the Section 157 analysis is similar but not entirely overlapping, with there being additional, independent factors militating in favor of a "core" finding:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate. . .

16

(K) determinations of the validity, extent, or priority of liens. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

Insofar as the two most significant assets of JPK's estate are one of the DRL Notes and one of the 423 Kennedy Notes, alongside the correlative deeds of trust, this litigation will be central to the administration of JPK's estate. As has already been intimated in a filing in the JPK case, a plan of reorganization will center on collecting on these two promissory notes, with the monies collected therefrom being utilized to fund a plan. *See* JPK Main Case at DE #12, ¶ 3. This litigation is accordingly "core" under Section 157(b)(2)(A).

Similarly, the crux of these lawsuits is the Plaintiffs' efforts to have promissory notes— including those held by JPK—cancelled. Even though the Plaintiffs have, remarkably, refused to join JPK in these consolidated cases, the Plaintiffs are making claims against JPK's estate by seeking equitable relief that will void assets of the estate if successful; there is simply no cogent manner of reading the *ad damnum* clauses herein without observing that the Plaintiffs are seeking direct relief against promissory notes belonging to JPK. This is accordingly the epitome of a core proceeding under Section 157(b)(2)(B).

In terms of Section 157(b)(2)(C), the analysis is slightly trickier. Since the Plaintiffs have refused to join JPK as a party to this litigation, JPK is yet to file a responsive pleading that would include a counterclaim. However, once joined, JPK will be suing both DRL and 423 Kennedy for breach of the at-issue promissory notes.

The Section 157(b)(2)(K) analysis is the same as with Mr. Paret's case: the Plaintiffs are seeking determinations as to the validity, *vel non*, of liens. The only difference is that with JPK the security instruments and underlying promissory notes are not "arguable property" but, rather,

17

seemingly unrefuted property.[1] A debtor in bankruptcy—JPK—is the record-holder of two deeds of trust; the Plaintiffs are arguing those deeds of trust are invalid and unenforceable. It is legitimately difficult to conceive of a fact pattern that falls more squarely in the ambit of Section 157(b)(2)(K).

Similarly, this case falls well within the scope of Section 157(b)(2)(O). While the catch-all provision is often stretched in other contexts, the facts *sub judice* rather firmly and properly invoke core status under this provision. This litigation will, more than any other judicial proceeding, impact the liquidation of assets of JPK's estate. If the Plaintiffs prevail in receiving all of the relief they seek, JPK will be unable to liquidate its two largest assets. If WCP and JPK prevail, at least in part, those assets will be ripe for prompt liquidation through foreclosure. There is a very direct correlation between the ultimate outcome of these consolidated cases and JPK's ability to liquidate assets pursuant to a plan of reorganization.

### iii. Mandatory Abstention is Inapplicable to Cases Removed from the Superior Court of the District of Columbia

As noted *supra*, there are two conjunctive prongs to mandatory abstention analysis: (i) whether a proceeding is core and (ii) whether a case could have been commenced in a "court of the United States" in the first instance. Since this is very much a core proceeding, the second prong need not be addressed. However, even if that second criterion were somehow reached, the Plaintiffs would still fail to show that this case "could not have been commenced in a court of the United States," 28 U.S.C. § 1334(c)(2), for the very simple reason that the Superior Court of the District of Columbia is a "court of the United States." *See, e.g.*, *Patterson v. United States*, 2007 U.S. Dist. LEXIS 43705, at *2 (D.D.C. June 18, 2007) (". . . Superior Court judges are federal

---

[1] Ironically, to the extent the notes and deeds of trust are "arguable property," such is solely because of the claims being leveled by Mr. Paret and the Trustee—further engulfing this consolidated action in the universe of two bankruptcy proceedings.

Article I judges appointed by the President of the United States for fixed terms and confirmed by the Senate.") (citing *Palmore v. United States*, 411 U.S. 389, 392 (1973)).

> ### c. The Centrality of this Case to Two Bankruptcy Estates—and this Honorable Court's Topical Expertise—Militate Against Discretionary Abstention

The Plaintiffs are also errant in suggesting discretionary abstention to be proper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and two separate bankruptcy cases pending in this Honorable Court. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents—are ones upon which this Honorable Court has expertise. The outcome of this litigation will have a profound impact upon the reorganization of JPK and will, too, materially inform the composition of the estate of Mr. Paret being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d. 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its

19

jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc*., 222 B.R. 254, 257 (D. Md. 1998)). The Plaintiffs suggest a more expansive set of twelve factors, Motion, DE #13, at ¶ 32, from this Honorable Court's ruling in *A V. Car & Home*:

> (a) efficiency in the administration of the debtor's estate;

> (b) the extent to which state law issues predominate over bankruptcy issues;

> (c) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court;

> (d) the presence of a related proceeding commenced in state court;

<center>20</center>

<center>311</center>

(e) the existence of a jurisdictional basis other than § 1334;

(f) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(g) the substance rather than form of an asserted "core" proceeding;

(h) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court;

(i) the burden of the federal court's docket;

(j) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties;

(k) the existence of a right to a jury trial; and

(l) whether non-debtor parties are involved in the proceeding.

*A V. Car & Home*, 2018 Bankr. LEXIS 3955, at *21-22 (quoting *Power Plant Entm't Casino Resort Ind., LLC v. Mangano*, 484 B.R. 290, 299 (Bankr. D. Md. 2012)). For purposes of symmetry between the briefs, the Defendants will analyze all of the *A V. Car & Home* factors.

Taking the first factor, this litigation needs to be brought to a resolution so as to allow both the Paret and JPK estates to be properly administered. If the Trustee owns the DRL Property and the 423 Kennedy Property, or any of the promissory notes, or 423 Kennedy itself, such will have a profound impact upon the estate he is charged with administering. Similarly, JPK cannot much go about liquidating its two most notable assets until the injunction prohibiting such liquidation is lifted, either by way of intervening order or final judgment. This litigation is absolutely central to both bankruptcy cases, and this factor accordingly weighs heavily in favor of denying abstention.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor

21

matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at *29 (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

In assessing the third criterion, there are no "difficult or unsettled questions of state law" at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

On the fourth question, there is no related proceeding commenced in state court, aside from the initial suit filed by 423 Kennedy that was *sua sponte* dismissed by the Superior Court more than a year-and-a-half ago. *See* Motion, DE #13, at p. 3, n. 1. These two consolidated cases are, of course, deeply related to one another. But both cases have been properly removed to this Honorable Court.

The fifth factor is one of the few that bodes in favor of the Plaintiffs: there is no jurisdictional basis for this suit to be heard in the United States District Court for the District of Columbia—or this Honorable Court, which is a "unit" of the District Court, 28 U.S.C. § 151— other than the pendency of the Paret and JPK bankruptcies.

The sixth inquiry is "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case." As noted *passim*, the relatedness of this proceeding to the Paret and JPK

22

bankruptcies is markedly intimate in nature. The disposition of these consolidated cases will directly weigh on whether the Trustee in Mr. Paret's case can liquidate multiple "arguable property" assets. And the disposition will be central to JPK's plan of reorganization, with the latter debtor having an asset base comprised largely—albeit not entirely—of two of the four promissory notes and deeds of trust that the Plaintiffs are seeking to have cancelled or nullified herein.

The seventh consideration is the substance—in lieu of form—of "core" proceedings. This is particularly important *sub judice*; while none of the causes of action in these consolidated cases are expressly titled as efforts to determine the validity of liens, such is very much the substance of what is being sought. Equally, this is a matter that will directly weigh on the administration of the JPK estate, for the reasons discussed throughout. And, as previewed above, this is a case in which JPK will absolutely be bringing counterclaims against the Plaintiffs as soon as JPK is joined, either by the Plaintiffs through amendment or by way of a motion to intervene.

The eighth question is "the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court." It genuinely does not appear possible to sever the non-core issues from these consolidated cases. Theoretically, the causes of action against Mr. Drazin, for breach of fiduciary duty, might be somehow severable. But severing those claims would only serve to work enormous logistical complications upon the litigation and risk the rendering of inconsistent judgments. Mr. Drazin is being sued for breaching his fiduciary duty, as a trustee under deeds of trust, by scheduling foreclosures in accord with the debt instruments owned by WCP, JPK and, per Mr. Paret's contentions, Mr. Paret. To consider Mr. Drazin's fidelity to his ministerial charge in one court, and the enforceability of the very deeds of trust that appoint Mr. Drazin in another court, would be a recipe for unbridled chaos. Put most simply, the core claims cannot be severed from the other claims without forcing a series of legal gymnastics that,

almost *per se*, run contra to the very equitable notions underlying remand in rare and extraordinary circumstances.

The ninth inquiry is the burden on this Honorable Court's docket. There does not appear to be any reason to surmise these consolidates cases would place an undue burden on the docket.

The tenth factor is the likelihood of forum shopping. The Plaintiffs suggest such to be a factor: "Removal at this untimely and late stage, days before important depositions were about to be taken, and just nine weeks before trial, raises a strong likelihood of forum shopping." Motion, DE #13, at ¶ 35. What the Plaintiffs miss, however, is that (i) per the Plaintiffs' own counsel, no such depositions were about to be taken; *see* E-mail from Counsel for Plaintiffs, DE #12-1 ("I do not expect these depositions to go forward on the dates and times noted, but rather to serve as placeholders given that we have to re-coordinate the scheduling of depositions that we previously planned to accomplish before the 7/9/24 close of discovery."); and (ii) the taking of depositions—or commencement of a trial—would have been a violation of the Automatic Stay and, as such, void.

As noted in Section III(a)(i), *supra*, the Automatic Stay applies to "arguable property." *Chesnut*, 422 F.3d at 300; *Taub*, 427 B.R. at 221. Mr. Paret has scheduled the DRL Property and the 423 Kennedy Property as assets of his estate. He has also asserted that he owns 423 Kennedy, rendering it an asset of his estate. Equally, the Trustee has contended that the promissory notes and deeds of trust at issue in these consolidated cases are, too, assets of Mr. Paret's estate. So the Automatic Stay has been in effect since, at minimum, November 15, 2023 (the date on which Mr. Paret filed schedules listing this arguable property). *See* Paret Main Case at DE #50. Quite plainly, the Plaintiffs have never sought stay relief. And, under the law of this Honorable Court, any actions in violation of the Automatic Stay are not merely voidable but, indeed, void. *See, e.g., In re HP*

*Bennett, LLC*, 2023 Bankr. LEXIS 3010, at *10 (Bankr. D.D.C. Dec. 22, 2023) ("This Court agrees with the majority that acts taken in violation of the automatic stay are void.") (citing *Stancil v. Bradley Invs., LLC (In re Stancil)*, 487 B.R. 331, 338 (Bankr. D.D.C. 2013); *In re Sklar*, 626 B.R. 750, 762-63 (Bankr. S.D.N.Y. 2021)). It necessarily follows that the Plaintiffs' theory of forum shopping is misplaced. This case was not removed to stop depositions and a trial from occurring; depositions and a trial could not have occurred, as a matter of law, because the Plaintiffs never sought relief from the Automatic Stay.

The eleventh factor is the right to a trial by jury. There can be no trial by jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory Note, DE #1-2, at p. 56, § 7.[2]

The final consideration is the existence of non-debtor parties in the proceedings. This criterion is unusually complex instantly for three reasons: (i) Mr. Paret and the Trustee are contending a partnership that encompasses the assets implicated in these proceedings; (ii) Mr. Paret contends he owns 423 Kennedy, which is a party to these proceedings; and (iii) as noted *passim*, JPK is an indispensable party to these proceedings and is a debtor in bankruptcy. So while no debtor is presently identified in the caption of these consolidated cases, one debtor and his Chapter 7 trustee are asserting their rights to be substantively implicated, and another debtor is noting that it is an indispensable party.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2,

---

[2] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical provision.

2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, 424

U.S. at 813. There is simply no basis to make such an exception in these consolidated cases, where

nearly every factor militates against abstention and where the administration of two separates

debtors' estates hangs in the proverbial balance. This Honorable Court has expertise in the issues

presented in this litigation, has a docket that can ably accommodate this litigation, and has

jurisdiction over this litigation.

### d. Analysis of Equitable Abstention Occasions the Same Result

The Motion also seeks abstention on equitable grounds. *See* Motion, DE #13, at § D, p. 11.

This doctrine, however, is generally regarded as being coterminous with discretionary abstention.

*Camofi Master LDC v. United States Coal Corp.*, 527 B.R. 138, 143 n.3 (Bankr. S.D.N.Y. 2015).

And where the two notions are viewed as not completely overlapping, courts nonetheless assess

such requests using the same factors. *In re Rosales*, 2012 Bankr. LEXIS 4366, at *13 (Bankr. W.D.

Tex. Sep. 21, 2012).

Nonetheless, it bears observation that the two arguments posited in support of equitable

abstention—delay in taking depositions and a pending request for a new scheduling order—are

undermined by the reality that this litigation is subject to the Automatic Stay. Insofar as this point

is discussed in some detail twice above, *see, supra,* §§ III(a)(i); III(c), the Defendants will forbear

from repeating the same analysis and simply incorporate the foregoing arguments by reference.

### IV. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion;

and (ii) afford such other and further relief as may be just and proper.

26

317

Respectfully submitted,

Dated: August 20, 2024      By:      /s/ Maurice B. VerStandig
                                                    Maurice B. VerStandig, Esq.
                                                    Bar No. MD18071
                                                    The VerStandig Law Firm, LLC
                                                    9812 Falls Road, #114-160
                                                    Potomac, Maryland 20854
                                                    Phone: (301) 444-4600
                                                    mac@mbvesq.com
                                                    *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of August, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                                    /s/ Maurice B. VerStandig
                                                    Maurice B. VerStandig

27

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

8161\0002\4870-1807-3307.v2

319

## Plaintiffs' Reply in Support of their Motion for Remand

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs") submit this reply in support of their Motion for Remand (the "Motion for Remand") (ECF No. 13) and to address the Opposition to the Motion for Remand (the "Opposition") filed on August 20, 2024 by DP Capital LLC ("DP Capital"), Russell Drazin ("Mr. Drazin"), Daniel Huertas ("Mr. Huertas"), WCP Fund I LLC ("WCP Fund I"), and SF NU, LLC ("SF NU") (collectively, "Defendants") and JPK NewCo LLC ("JPK Newco.") (ECF No. 20). In support of their reply, the Plaintiffs state as follows:

### Introduction

The Defendants and JPK Newco rely heavily on the fact that JPK Newco was put into involuntary bankruptcy a mere three days after Plaintiffs filed their Motion for Remand. *See In Re JPK NewCo, LLC*, Case No. 24-00262-EL (the "JPK Chapter 11 Case"). But that reliance is misplaced. While the Opposition was purportedly filed on behalf of Defendants *and* JPK Newco, JPK Newco currently lacks standing to contest the Motion for Remand.[1] The Defendants' newfound reliance on the JPK Bankruptcy Case fares no better than their original reliance on the Chapter 7 proceeding involving Charels Paret ("Mr. Paret"), *In Re Charles Paxton Paret,* Case No. 23-00217-ELG (the "Paret Chapter 7 Case") and a related adversary proceeding first filed by Mr. Paret against Daniel Huertas ("Mr. Huertas"), *Charles Paret v. Daniel Huertas*, AP No.: 23-10025-ELG (the "Paret Adversary Proceeding"). That is because neither Mr. Paret nor JPK Newco are parties to the Consolidated Cases. Moreover, any relation

---

[1]  Defendants' counsel, Maurice B. VerStandig, filed the Opposition on behalf of the Defendants and JPK NewCo even though he has not yet received approval to act as JP NewCo's counsel.

2

between the Paret Chapter 7 Case and the Paret Adversary Proceeding, on the one hand, and the
Consolidated Cases, on the other hand, is tenuous, at best.

<u>RESPONSE TO THE DEFENDANTS' OPPOSITION</u>

A.    <u>The Automatic Stay Does Not Apply to the Claims in the Consolidated Cases.</u>

In the Opposition, the Defendants argue that the automatic stay pursuant to 11 U.S.C.

§362(a)(3) is applicable to the Consolidated Cases as a result of the filing of the Paret Chapter 7

Case.[2]  Opp. at p. 9.  But the plain language of 11 U.S.C. §362(a)(3) makes clear that the

automatic stay only prevents "any act to obtain possession of the property of the estate or of

property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a)(3).

The automatic stay is not implicated here because the claims in the Consolidated Cases do not

involve either obtaining possession of any property of the estate, or obtaining property from the

estate, or exercising control over any property of the estate.  The Consolidated Cases involve

state-law claims for monetary damages against specific persons not in bankruptcy and stopping

two wrongful foreclosures.  Because the automatic stay does not apply to the Plaintiffs' claims,

the Defendants cannot rely upon Fed. R. Bankr. P. 9027(a)(2) to avoid the untimeliness of their

Notice of Removal.

B.    <u>The 423 Kennedy Property and the DRL Property Do Not Constitute Property of
the Estate of Mr. Paret.</u>

Before addressing why the Defendants' reliance on the JPK Chapter 11 Case is

misplaced, a brief response to the claim that the Consolidated Cases constitute a core proceeding

is appropriate.  The Plaintiffs both possess and own, and have for some time, the properties

---

[2]    The Defendants claim a stay was automatically imposed when the Paret Chapter 7 Case was
initiated, but Defendants then rely on Mr. Paret's schedules, which were not filed until months later.
*See* ECF No. 50 in the Paret Chapter 7 Case.

located at 423 Kennedy Street, NW, Wahington, DC 20011 (the "423 Kennedy Property") [3] and

5501st Street, NW, Washington, DC 20011 and 5505 1st Street, NW, Washington, DC 20011 (the

"DRL Property").[4]  Copies of the deeds to both properties will be provided at the August 27,

2024 hearing.  Any claim that the 423 Kennedy Property and the DRL Property are owned by

Mr. Paret, thus purportedly rendering the Consolidated Cases a "core proceeding," are

demonstrably false.

      1.   The Chapter 7 Trustee's Allegations Are Not Determinative.

In their removal notice, the Defendants relied on allegations made by Wendall Webster,

the Chapter 7 Trustee (the "Ch. 7 Trustee") who filed the Third Amended Complaint in the Paret

Adversary Proceeding against Mr. Huertas (and others).  More specifically, the Defendants

pointed to the Ch. 7 Trustee's allegations pertaining to a partnership that allegedly existed

between Mr. Paret and Mr. Huertas "that 'involve[s]' 423 Kennedy and myriad other companies

and real estate assets." *See* ECF No. 1 ("Notice of Removal") at p. 3, ¶ 11.  The Defendants also

claimed that "the Trustee asserts a partnership interest in assets titled in the name of both 423

Kennedy and [Developer RE1]." *Id.* p. 6, ¶ 25.[5]

---

    [3]    By Deed dated July 8, 2016 recorded in the District's land records as Document # 2016073584, 423 Kennedy St NW LLC conveyed part of what comprises the 423 Kennedy Property to 423 Kennedy.  By Deed dated August 3, 2017 and recorded in the District's land records as Document # 2017087687, Louis R. Williams and Patricia A. Williams conveyed the other portion of what comprises the 423 Kennedy Property to 423 Kennedy.

    [4]    By Deed dated December 23, 2021 recorded in the District's land records as Document # 2021169018, 5501 1st St Holdings LLC conveyed part of what makes up the DRL Property to Developer RE1.  By Deed dated December 23, 2021 recorded in the District's land records as Document # 2021169017, 71 Kennedy St Holdings LLC conveyed the other portion of what makes up the DRL Property to Developer RE1.  Both 5501 1st St Holdings LLC and 71 Kennedy St Holdings LLC are currently listed in the District's online records as dissolved companies.

    [5]    The Defendants dispute those partnership allegations.  *See, e.g.,* Notice of Removal at p. 6, ¶ 27 ("Mr. Huertas and WCP deny – in the most vehement terms possible – that there ever existed a partnership with Mr. Paret."); Motion to Dismiss filed on August 14, 2024 (ECF No. 41 in the Paret

The Defendants cite to several cases that dealt with disputed claims to property. According to the Defendants, the 423 Kennedy Property and the DRL Property constitute "arguable property" of Mr. Paret's bankruptcy estate. The Defendants, however, stretch the notion of "arguable property" a bit too far. *In Re Brittan*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010), one of the cases cited in the Opposition, helps explain why there is no real dispute that neither the 423 Kennedy Property nor the DRL Property are part of the bankruptcy estate of Mr. Paret. In that case, the South Carolina Bankruptcy Court explained, applying South Carolina law, that "a member's bankruptcy estate has no interest in property of an LLC and that the estate's property interest is limited to the member's distributional interest." *In re Brittain*, 435 B.R. at 322. The same concept holds true in the District where "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04.

This Court has also previously observed that, "[w]hen a member of an LLC files for bankruptcy, '[t]here is no question that the economic rights [of that member], that is the membership interest, becomes property of the estate.'" *Simu v. Carvalho* (In re Carvalho), 2016 Bankr. LEXIS 3969, at *8 (Bankr. D.D.C. Nov. 15, 2016) (citing *Spain v. Williams*, 455 B.R. 485, 502 (Bankr. E.D. Va. 2011)). The interest of a member in a domestic limited liability company is called a "Transferrable Interest", which is defined as:

> the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company in accordance with the operating agreement, whether or not the person remains a member or continues to own any part of the right. The term applies to any fraction of the interest, by whomever owned.

D.C. Code § 29-801.02. D.C. Code § 29-805.01 further provides that "[a] transferrable interest is personal property." It follows that the property interest that a member of a limited liability

---

Adversary Proceeding) at p. 21 ([DP Capital] and [WCP Fund I] maintain no partnership ever existed.").

company has is limited to that member's transferrable interest, which is personal property and that is the interest that becomes party of an individual debtor's bankruptcy estate.

There is no evidence before the Court that Mr. Paret, individually, has ever owned the 423 Kennedy Property or the DRL Property. The filings in the Paret Chapter 7 Case also make it clear that Mr. Paret may claim, at most, a *partnership interest* in a "General partnership with Daniel Huertas," as shown on Mr. Paret's Schedules (ECF No. 50 in the Paret Chapter 7 Case). Specifically, the Ch. 7 Trustee alleges is that "[m]ultiple limited liability corporations are involved in the HP partnership transaction, including as follows: ". . . 423 Kennedy St Holdings LLC purchased [the 423 Kennedy Property] for a combined amount of $1,725,000 . . . and 5505 1st St Holdings LLC purchased [the DRL Property] for $1,000,000 on July 19, 2017…" Third Am. Compl. at ¶ 45 (ECF No. 38-1 in the Paret Adversary Proceeding). The Trustee then alleges that an email from Mr. Huertas "effectuated" that the partnership "included 50% ownership of the LLC Properties." *Id*. at ¶ 45. The Trustee did not allege, however, that Mr. Paret, individually, has a member interest in either 423 Kennedy or Developer RE1. Even if he did so contend, Mr. Paret's interest, if any, would be limited to his membership interest in the limited liability company that owns the property, not an interest in the property itself.

It is also worth noting that neither Mr. Paret nor the Ch. 7 Trustee have initiated proceedings against either of the Plaintiffs as the record owners of the DRL Property and the 423 Kennedy Property. Both Mr. Paret and the Ch. 7 Trustee seemingly recognize that if causes of action exist regarding those properties, the only cognizable claims are properly brought against Mr. Paret's alleged partner and not against the actual property owners. For example, the Chapter 7 Trustee has not asserted a quiet title claim against the property owners of record.

6

2. <u>The Authority the Defendants Rely Upon is Either Inapplicable or Distinguishable</u>.

In *Brown v. Chestnut (In re Chestnut)* 422 F.3d 298, 300 (5th Cir. 2005), another case cited to support the "arguable property" contention, the Fifth Circuit considered a dispute over whether real estate was "separate property" versus "community property", and it was in the context of considering "the question whether the creditor violates the stay if, without permission of the bankruptcy court, he forecloses on an asset to which the debtor has only an arguable claim of right . . . ." *Brown,* 422 F.3d at 300. The facts in the Consolidated Cases are easily distinguishable from the facts in *Chesnut.* In the Consolidated Cases, it is the Plaintiffs who seek to enjoin the Defendants from proceeding with foreclosures on properties that the Plaintiffs own (not Mr. Paret). Indeed, if the automatic stay applied here, it is the Defendants who would seemingly be violating that stay by trying to foreclose on properties that are the "arguable property" of Mr. Paret. The *Chestnut* decision also cautioned that: "[n]ot every bankruptcy petition, with an attendant claim of a right in property, will transform what is obviously not property of the estate into arguable property that is subject to process requirements." *Id.* at 306.

The Defendants' citation to *Taub v. Taub (In re Taub),* 427 B.R. 208 (Bankr. E.D.N.Y. 2010), is also not helpful to their position. In *Taub,* the debtor had a legal interest in four properties, three of which were titled in her name alone and the other titled with her husband as tenants by the entirety. *Taub,* 427 B.R. at 213. The properties at issue in *Taub* were the subject of divorce proceedings. In this case, there is not even an allegation that either the 423 Kennedy Property or the DRL Property are now, or have ever been, titled in Mr. Paret's name.

C. <u>The Filing of JPK Chapter 11 Case Did Not Convert the Claims in the
Consolidated Cases Into A Core Proceeding.</u>

In support of removal, the Defendants initially cited to 28 U.S.C. §§ 157(b)(2)(I) and (O) under the guise that the Consolidated Cases involve a "core" proceeding. The Motion for

Remand shows why those provisions are inapplicable here, namely because the Consolidated

Cases seek monetary and injunctive relief against parties that are not debtors in any bankruptcy

proceeding.  In the Opposition, the Defendants again cite to inapplicable provisions, this time

claiming that the Consolidated Cases implicate 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (K).

In relying on U.S.C. § 157(b)(2)(A) and (B), the Defendants and JPK Newco point to

JPK Newco's *unrelated* bankruptcy proceeding.  JPK Newco's involuntary petition was filed on

July 23, 2024, three days after the Plaintiffs filed the Motion for Remand.  JPK Newco's

assertions can be dismissed based upon its lack of standing.  Several bankruptcy courts have

found that where a non-party to an adversary proceeding files a motion or objection to the relief

sought, that party lacks standing.  *See Flener v. Monticello Banking Co.* (*In re Alexander)*, Nos.

06-10238(1)(7), 08-1013, 2009 Bankr. LEXIS 3721, at *2 (Bankr. W.D. Ky. Nov. 16, 2009)

(denying debtor's motion where debtor lacked standing because he "is not a party to

this adversary proceeding and has not sought to intervene in this action as a party.) [6]

While JPK Newco claims it will move to intervene in the Consolidated Cases, it has not

done so – nor did it take that step in the Consolidated Cases before removal.  And contrary to

what is represented in the Opposition, the Plaintiffs do not seek relief "to determine the validity

of liens."  Opp. at p. 23.  As for U.S.C. § 157(b)(2)(C), the Defendants and JPK assert that "the

analysis is slightly trickier" and claim "JPK will be suing both DRL and 423 Kennedy for breach

of the at-issue promissory notes." Opp. at p. 17.  But as it stands, the Defendants and JPK

recognize there are no "counterclaims by the estate against persons filing claims against the

---

[6]     *See also Beekman Paper Co. v. Saint Theresa Props., Inc.* (*In re Saint Theresa Props., Inc.*),
152 B.R. 852, 853 n.1 (Bankr. S.D.N.Y. 1993) (declining to consider submissions from non-parties
who had not sought to intervene, but who "purported to file papers" objecting to motion); *Redmond
v. Brooke Holdings, Inc. (In re Brooke Corp.)*, Nos. 08-22786, 10-6225, 2017 Bankr. LEXIS 1038, at
*3 (Bankr. D. Kan. Apr. 14, 2017) (denying motion of non-party to an adversary proceeding).

estate," as contemplated by 28 U.S.C. § 157(b)(2)(C).  Regardless, the JPK Chapter 11 Case is

not related to Mr. Paret's Chapter 11 Case.  The filing of an involuntary petition against JPK

Newco does nothing to further the Defendants' contention that claims in the Consolidated Cases

are "core" claims.

Defendants also now claim that 28 U.S.C. § 157(b)(2)(K) is implicated.  Opp. at pp. 17-

18.  But that section pertains to "determinations of the validity, extent, or priority of liens."  The

injunctive relief sought by the Plaintiffs in the Consolidated Cases centers on the Plaintiffs'

request to enjoin wrongful foreclosures.[7]  The Plaintiffs are not asking for determinations of the

validity, extent, or priority of any lien.  Since the Plaintiffs' claims do not arise under title 11 nor

in a case under title 11, the Plaintiffs claims cannot be qualified as "core" proceedings.

> D.    Mandatory Abstention Is Applicable Here.

The Defendants also contend that mandatory abstention never applies to a case removed

from D.C. Superior Court.  Opp. at pp. 18-19.  Defendants cite only to *Patterson v. United*

*States*, 2007 U.S. Dist. LEXIS 43705, at *2 (D.D.C. June 18, 2007) in support of their contention

that D.C. Superior Court is "a court of the United States" within the meaning of 28 U.S.C.

1334(c)(2), rendering mandatory abstention inapplicable to cases removed from D.C. Superior

Court.  This contention is not correct.  With respect to mandatory abstention, the statute provides

that:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district *court shall abstain from hearing such proceeding if an*

---

[7]    Two DC Superior Court judges have already issued injunctions prohibiting any foreclosures
on the two properties until further order of the Court.

> *action is commenced, and can be timely adjudicated, in a State*
> *forum of appropriate jurisdiction.*

28 U.S.C. 1334(c)(2) (italic emphasis added).  This court has previously found that mandatory

abstention applied to cases removed from, and remanded back to, the D.C. Superior Court.  *See*

*e.g.*, *Welch Family Ltd. P'ship Four v. Brown* (*In re A V. Car & Home, LLC*), 2018 Bankr. LEXIS

3955, at *21 (Bankr. D.D.C. Dec. 14, 2018) (concluding mandatory abstention applies and

remanding case to D.C. Superior Court); and *Majidy v. Bello* (*In re Bello*), 2018 Bankr. LEXIS

1223 (Bankr. D.D.C. Apr. 17, 2018) (applying mandatory abstention under Section § 1334(c)(2)

and remanding case to D.C. Superior Court).

Additionally, while *Patterson* does include an observation that D.C. Superior Court

judges "are federal Article I judges," that case did not hold that the D.C. Superior Court is "a

court of the United States" versus "a State forum."  In *In re Bello*, this Court explained that

"court of the United States" equates to federal jurisdiction for purposes of 28 U.S.C. § 1334(c)(2)

observing that "Section 1334(c)(2) requires courts to abstain from hearing cases that are based on

a state law claim, for which the court only has related to jurisdiction, there is no other federal

jurisdiction, that is commenced in state court, and can be timely adjudicated in that state court."

*Id.* at 4.   Indeed, the Defendants acknowledge that "there is no jurisdictional basis for this suit to

be heard . . . in this Honorable Court . . . other than the pendency of the Paret and JPK Newco

bankruptcies."  Opp. at p. 22.  Since the Consolidated Cases are, at best, only related to a core

proceeding, mandatory abstention is required.  Accordingly, remand to the state-forum, in this

case the D.C. Superior Court, is appropriate.

E.    The Factors Governing Discretionary Abstention Also Require a Remand.

Even if this Court were to fall back to the factors governing discretionary abstention, an

analysis of those factors shows that a remand is appropriate.  In arguing that discretionary

abstention is not appropriate here, the Defendants (and JPK Newco) continually point to the administration of Mr. Paret's bankruptcy estate and of JPK Newco's bankruptcy estate as a key factor, but they fail to identify exactly how, it at all, the Consolidated Cases will impact the administration of either bankruptcy estate.  Again, in the Consolidated Cases the Plaintiffs seek monetary relief from certain parties and Mr. Paret is not one of those parties.  The Plaintiffs also sought to enjoin certain parties from wrongfully foreclosing on the properties that the Plaintiffs own.  To the extent JPK Newco now claims an interest in the loan documents related to the 423 Kennedy Property or the DRL Property, the Plaintiffs are not seeking to "cancel" the promissory notes or the deeds of trusts, but rather to have the court determine that certain provisions in the loan documents are either unenforceable or could not be invoked as a basis for either a default under the loan documents or in support of a foreclosure.

## CONCLUSION

The Consolidated Cases should be remanded because removal was untimely.  Alternatively, the Consolidated Cases should be remanded on the basis of either mandatory abstention or discretionary abstention.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  August 26, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
  *and 423 Kennedy St Holdings, LLC*

11

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2024, a true copy of the foregoing

Plaintiffs' Reply in Support of Motion for Remand was served electronically and a Notice of

Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James. D. Sadowski
James D. Sadowski

12

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Alexandra J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF
### IN SUPPORT OF THEIR MOTION FOR REMAND

Case 24-10023-ELG Doc 26-3 Filed 01/29/24 Entered 01/29/24 18:36:30 Desc Main
Case 1:25-cv-02460-GLG Document Entries (Page 1) of Page 1721 of 2443
Exhibit A - All Docket Entries (Page 1) of Page 1721 of 2443

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers") submit this supplemental brief in support of their Motion for Remand (the "Motion for Remand") (ECF # 13) to address subsequent developments in the two bankruptcy cases involving Charles Paret (23-10025) (adversary proceeding alleging a partnership) and the JPK NewCo LLC involuntary case petition (Case No. 24-00262). For convenience, the Borrowers will refer to Case. No. 23-10025 as the "Paret Adversary Proceeding" and to Case No. 24-00262 as the "JPK Involuntary Proceeding".

A. UPDATES IN THE PARET ADVERSARY PROCEEDING (23-10025)

After the Motion for Remand was filed, on August 14, 2024, Daniel Huertas, WCP Fund I, LLC, and DPA Capital d/b/a Washington Capital Partners (the "WCP Defendants") filed a twenty-seven page motion to dismiss all of the claims in the Third Amended Complaint, which the Chapter 7 Trustee opposed. See ECF # 41 in 23-10023. A hearing on that motion was initially set for October 30, 2024, but that hearing was continued to December 18, 2024. For reasons that were apparently never explained on the record, on November 12, 2024, the WCP Defendants and the Chapter 7 Trustee submitted a consent order to resolve the motion to dismiss, which the Court entered on November 12, 2024. ECF # 47 in 23-10023. In that consent order, the Court dismissed Count II (Breach of Fiduciary Duty), Count IV (Breach of the Duty of Good Faith and Fair Dealing), and Count V (Fraud) without prejudice. The surviving counts were Count I (Declaratory Judgment as to the existence of a partnership) and Count III (Breach of Partnership Agreement). The only surviving Count that contains a request for the imposition of a constructive trust over the Partnership Property *as a remedy* is Count II.

It is worth noting that a constructive trust is not a separate cause of action, rather, it is an equitable remedy that a court devises *after* litigation. *See, e.g., Hickey v. Scott,* 738 F.

Supp. 2d 55, 61 (D.D.C. 2010) (citing *Macharia v. United States*, 238 F. Supp. 2d 13, 31 (D.D.C.

2002) (italic emphasis added) and *United States v. BCCI Holdings (Lux.),* S.A., 46 F.3d 1185,

1190 (D.C. Cir. 1995). A constructive trust arises "where a person who holds title to property is

subject to an equitable duty to convey it to another on the ground that he would be unjustly

enriched if permitted to retain it." *Graves v. Graves,* 51 A.3d 521, 524 (D.C. 2012) (citing *Gray*

*v. Gray,* 412 A.2d 1208, 1210 (D.C. 1980); *In re Estate of Reilly,* 933 A.2d 830, 837 (D.C. 2003)

(same). The burden of proof for establishing a constructive trust is by clear and convincing

evidence. *Hertz v. Klavan,* 374 A.2d 871, 873 (D.C. 1977).

 Here, it would be speculation for the Court to now conclude that the Chapter 7

Trustee will prove that a partnership existed as alleged in the Paret Adversary Proceeding. It

would be even more speculative for the Court to now conclude that the Chapter 7 Trustee will

meet the clear and convincing standard of proof for the imposition of a constructive trust. But

speculation is what the WCP Defendants base one of their jurisdictional arguments upon. As the

argument goes, *if* it is later determined that there is a valid partnership, and *if* the loan documents

involving the properties owed by Developer RE1 and 423 Kennedy are considered Partnership

Property, and *if* the Court imposes a constructive trust over the loan documents (or the loan

proceeds), then the Court has jurisdiction over all of the claims in the removed cases. These

many "ifs" are the thinnest of reeds upon which the WCP Defendants can argue that the Court

has either core or "related to" jurisdiction over *all of the claims* in the Removed Cases as a result

of the still-unproven allegations in the Paret Adversary Proceeding.

 B. UPDATES IN THE JPK INVOLUNTARY CASE (24-00262)

 After the Motion for Remand was filed, on September 23, 2024 the US Trustee's

office filed a motion to dismiss JPK Involuntary Case as being filed in bad faith. ECF # 37 in

3

24-00262. Shaheen Sariri, the petitioning creditor, filed an opposition to the motion to dismiss

on October 9, 2024. ECF # 48 in 24-00262. On October 15, 2024, the WCP Defendants filed a

forty-eight page Opposition to the motion. ECF # 56 in 24-00262.

The first two Operating Reports filed by JPK NewCo confirmed that it has just $935.00

in a bank account, no other funds to operate, no income from customers, and that is has no

employee taxes to pay. ECF ## 62-63 in 24-00262. On October 25, 2024, Daniel Huertas gave

testimony at the meeting of creditors, during which he confirmed nearly all of the allegations that

the US Trustee's office had set forth in its motion to dismiss. Mr. Huertas confirmed that JPK

NewCo really had no business purposes and was created "on the advice of counsel". Mr.

Huertas' admissions are discussed in more detail in Section 2, *infra*. The US Trustee's office

will be pursuing discovery and taking depositions related to the motion to dismiss pursuant to the

Scheduling Order issued on November 13, 2024. ECF # 70 in 24-00262. The resolution of that

motion to dismiss is scheduled for an evidentiary hearing on February 4th and 6th of next year.

SUPPLEMENTAL ARGUMENTS IN SUPPORT OF THE MOTION FOR REMAND

1.   There Is Now No Question that the Petitioning Creditor Has Engaged in the
     Forum Shopping of a Simple Breach of Contract Claim.

In his Opposition to the motion to dismiss in the JPK Involuntary Proceeding, Mr.

Sariri represented that:

> Mr. Sariri *elected* to file an involuntary bankruptcy *rather than
> pursue his remedies in the Superior Court of the District of
> Columbia* because he was concerned about the length of time it
> would take for him to obtain a money judgment in Superior Court
> and whether the Debtor's assets would be dissipated by that time.

ECF # 48 in 24-00262 (Sariri Opp.) at 2, ¶ 5 (italic emphasis added).

This contention lacks merit on its face, other than conclusively showing that Mr. Sariri,

like the WCP Defendants, is attempting to engage in forum shopping. For starters, this Court is

not the proper court to use to collect a debt under a promissory note. Mr. Sariri's claim about

possible delay in obtaining a money judgment against JPK NewCo in Superior Court also rings

hollow. Given that his alleged claim is under a promissory note for which there was an

undisputed event of non-payment, such a claim would easily be decided quickly in Superior

Court by the filing a motion for summary judgment – this even assuming that JPK NewCo would

even invest any time in defending against the claim. Forum shopping of a routine breach of

contract claim by a lone disgruntled creditor is not a valid reason to file an involuntary

bankruptcy petition.

> 2. Mr. Huertas Has Confirmed That JPK NewCo is Not a Legitimate Business and
> That It Had No Real Business Purpose.

After the Motion for Remand was filed, many of the allegations that the US

Trustee's office made about JPK NewCo in the motion to dismiss the JPK Involuntary

Proceeding were confirmed at the meeting of creditors by Mr. Huertas in his sworn testimony.

*See generally* Exhibit 1 (complete transcript from the JPK NewCo meeting of creditors).

In response to various questions at the meeting of creditors, Mr. Huertas confirmed that JPK

NewCo's only purpose was to hold "troubled assets" as a result of "advice of counsel" as noted

in the following excerpt:

5

```
 5            MS. EUSTIS:  Okay.  Thank you.

 6            Mr. Huertas, what is the nature of the Debtor's

 7   business?  What does the Debtor do?

 8            MR. HUERTAS:  The Debtor business, are you -- are you

 9   referring to JPK NewCo?

10            MS. EUSTIS:  Yes.

11            MR. HUERTAS:  JPK NewCo is it's a holding company of

12   the -- some troubled assets that we had placed in there under

13   advice of counsel.

14            MS. EUSTIS:  So you said it's a holding company of

15   troubled assets that was formed on advice of counsel?  Is that

16   what you -- I just want to make sure I heard you correctly.

17            MR. HUERTAS:  Correct.  It's a holding company.

18   Holding two troubled assets that we have.
```

Ex. 1 at 7, lines 5-18.

Mr. Huertas also confirmed that JPK NewCo was not engaged in any business activities and had no other ongoing business operations:

```
13            MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14   NewCo engaged in any other business activities?

15            MR. HUERTAS:  Not at this time.

16            MS. EUSTIS:  So at the time that it was formed, there

17   was no other ongoing business operations of JPK NewCo?

18            MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

8161\0002\4916-0299-6481.v2

Mr. Huertas also confirmed that JPK NewCo was not engaged in any other business activities and had no other ongoing business operations:

```
13            MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK
14    NewCo engaged in any other business activities?
15            MR. HUERTAS:  Not at this time.
16            MS. EUSTIS:  So at the time that it was formed, there
17    was no other ongoing business operations of JPK NewCo?
18            MR. HUERTAS:  Correct.
```

Ex. 1 at 8, lines 13-17.

Mr. Huertas also confirmed that Mr. Sariri was a longtime friend of Mr. Huertas:

```
11            MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,
12    have a prior relationship with Mr. Sariri?
13            MR. HUERTAS:  Yes.
14            MS. EUSTIS:  And what was that relationship?
15            MR. HUERTAS:  A business relationship.
16            MS. EUSTIS:  How long had you previously known him
17    for?
18            MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been
19    a while.  Probably north of fourteen years, fifteen years.
20            MS. EUSTIS:  Would you consider Mr. Sariri a friend of
21    yours personally?
22            MR. HUERTAS:  Yes.
```

Ex. 1 at 9, lines 11-22.

7

Mr. Huertas also confirmed that JPK NewCo had the same address as his company, DP
Capital, LLC "and its affiliates":

```
23          MS. EUSTIS:  And your counsel indicated that the
24   principal address of JPK is in Virginia.  What is that address?
25          MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

1    McLean, Virginia 22102.
2           MS. EUSTIS:  And do any other businesses operate out
3    of that address?
4           MR. HUERTAS:  Yes.
5           MS. EUSTIS:  What businesses?
6           MR. HUERTAS:  DP Capital LLC and its affiliates.
```

Ex. 1 at 9, lines 11-22 and 10, lines 1-6.

Mr. Huertas also confirmed that JPK NewCo did not pay any rent and had no other
business locations:

```
7           MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --
8           MR. HUERTAS:  No.
9           MS. EUSTIS:  Okay.  Are there any other --
10          MR. HUERTAS:  The answer was no rent.
11          MS. EUSTIS:  I'm sorry.  Go ahead.
12          MR. HUERTAS:  Yeah.  The answer was no, no rent.

13          MS. EUSTIS:  Okay.  Are there any other locations
14   affiliated or associated with JPK NewCo?
15          MS. EUSTIS:  No.
```

8

Ex. 1 at 10, lines 1-15.

Mr. Huertas also confirmed that JPK NewCo had no operating expenses:

```
13          MS. EUSTIS:  What are JPK's post-petition obligations?
14   What are its operating costs?
15          MR. HUERTAS:  Sorry.  Can you please repeat the
16   question?  There was some noise in the background.
17          MS. EUSTIS:  Sure.  And if you are not me or Mr.
18   Huertas, can you please mute your line?  Thank you.
19          Yes.  So what are JPK NewCo's operating expenses?
20          MR. HUERTAS:  Currently, zero.
```

```
4           MS. EUSTIS:  Okay.  And you indicated that there are
5    no operating expenses currently.  Have there ever been any
6    operating expenses for JPK?
7           MR. HUERTAS:  No.  No.
8           MS. EUSTIS:  Do you anticipate that there will be any
9    operating expenses for JPK?
10          MR. HUERTAS:  Not at this time.
```

Ex. 1 at 17, lines 13-20, and 18, lines 4-10.

Mr. Huertas also confirmed that JPK NewCo did not have any employees, and that it had

no day-to-day operations, and that DP Capital LLC maintained JPK NewCo's books and records:

```
22              MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23              MR. HUERTAS:  No employees.

24              MS. EUSTIS:  Are there day-to-day operations of JPK

25      NewCo?

1               MR. HUERTAS:  No.

2               MS. EUSTIS:  Okay.  Who maintains the books and

3       records for JPK NewCo?

4               MR. HUERTAS:  Can you please repeat the question?

5               MS. EUSTIS:  Who maintains the books and records for

6       JPK NewCo?

7               MR. HUERTAS:  DP Capital LLC.
```

Ex. 1 at 10, lines 13-17, and 11, lines 1-7.

Mr. Huertas also testified that he did not know who owned SF NU, LLC, a 29.44% co-owner of JPK NewCo:

```
7               Mr. Huertas, do you know who the owners of SF NU, LLC

8       are?

9               MR. HUERTAS:  No.

10              MS. EUSTIS:  Do you have any ownership interest in SF

11      NU, LLC?

12              MR. HUERTAS:  No.
```

Ex. 1 at 12, lines 7-12.

Mr. Huertas also testified that he has an ownership interest in the WCP Fund I, LLC:

10

```
13              MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14    know who the members of this entity are?

15              MR. HUERTAS:  Yes, I know who the members are.

16              MS. EUSTIS:  And who are they?

17              MR. HUERTAS:  There are several members because it's a

18    fund in excess of thirty different LLCs or -- or individuals.

19    I don't have all of those right in my -- readily available, but

20    there is several members of the fund.

21              MS. EUSTIS:  Okay.  And do you have any interests

22    personally in WCP Fund I, LLC?

23              MR. HUERTAS:  Yes.
```

Ex. 1 at 17, lines 13-23.

These facts alone demonstrate that JPK NewCo was not a legitimate business, but was instead created on advice of the WCP Defendants' bankruptcy counsel for a non-business reason. The sole, improper purpose of creating JPK NewCo was to use that company as a means to manufacture JPK NewCo's insolvency in order to forum shop the Superior Court consolidated cases to this Court.[1]  The Court should not allow the manufactured involuntary bankruptcy filing of JPK NewCo to serve as a jurisdictional bootstrap for the removed cases.  Mr. Huertas' existing

---

[1]  JPK NewCo also contends that is was formed as a result of settlement discussions that took place at a mediation, but that mediation (before JAMS) concluded on January 25, 2024 after the WCP Defendants, acting through Mr. Huertas, unilaterally decided that the mediation was over. More than two months later on March 29, 2024, the WCP Defendants sent a settlement proposal (by email) that only involved the 423 Kennedy project.  That proposal made no mention of any special purpose entity that had been created, or needed to be created, and the "new" proposal contained economic terms that were less favorable to 423 Kennedy than the last proposal that was made during the mediation.  423 Kennedy did not respond to the March 25, 2025 proposal because it concluded that the proposal was just another sign of the WCP Defendants' bad faith tactics.  In any event, there was no legitimate settlement need for JPK NewCo to continue to exists because the March 29, 2024 proposal, by its plain terms, expired at "the close of business on Friday, April 12, 2024."

testimony demonstrates that JPK NewCo is the alter-ego of the existing Defendants in the

Superior Court cases who did not want to continue to lose the litigation battles in that court.

 3. The Court Should Not Put its Stamp of Approval on this Obvious Attempt to
Create Bankruptcy Court Jurisdiction In Order and to Improperly Forum Shop
State Law Claims.

 It does not take a vivid imagination to see the opportunity for future forum

shopping mischief that this Court will create if it allows the WCP Defendants to remove state

court claims after creating a limited liability company that only existed on paper, and whose only

purpose was to create removal jurisdiction to this Court.  Put another way, if the Court does not

remand these cases, this Court will put its stamp of approval on the deliberate forum shopping of

state law claims by a lender to a bankruptcy court.  In addition to unfairly allowing the WCP

Defendants to change the Borrower's choice of forum in this case, a decision denying the Motion

for Remand here will result in future consequences down the line.  No future borrower-plaintiff

will be able to successfully maintain litigation in DC Superior Court against a lender because a

future lender-defendant could replicate what the WCP Defendants have done here, *i.e.,* create a

new company with no business purpose, transfer assets to that company, create loans that the

newly-created company has no ability to pay, then consent to that newly-created company being

placed into involuntary bankruptcy by a friendly creditor.  This type of jurisdictional

gamesmanship is not what Congress envisioned when it created the bankruptcy court system that

placed statutory guard rails on the Court's ability to handle what are purely state law claims.

12

## CONCLUSION

The Consolidated Cases should be remanded because removal was untimely.

Alternatively, the Consolidated Cases should be remanded on the basis of either mandatory

abstention or discretionary abstention.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: November 27, 2024

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of November, 2024, a true copy of the

foregoing Plaintiffs' Supplemental Brief in Support of Their Motion for Remand was served

electronically and a Notice of Electronic filing should be sent to all persons receiving notices via

the Court's CM/ECF system.

/s/ James. D. Sadowski
James D. Sadowski

13

Case 25-10200-ELG   Doc 263-1   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcript from All Docket Entries (Part 1) Meeting of Creditors   Page 1 of 42

1

```
 1                       UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF COLUMBIA
 2
      In Re:                        .  Case No. 24-00262-ELG
 3                                  .  Chapter 11
      JPK NEWCO LLC,                .
 4                                  .  Washington, D.C.
                   Debtor.          .  October 29, 2024
 5     . . . . . . . . . . . . . .  .

 6    CONTINUED MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF
                         THE BANKRUTPCY CODE
 7                  BEFORE KRISTEN S. EUSTIS, ESQ.
                 OFFICE OF THE UNITED STATES TRUSTEE
 8
      APPEARANCES:
 9
      For the Debtor:            Wolff & Orenstein, LLC
10                               By: JEFFREY M. ORENSTEIN, ESQ.
                                 15245 Shady Grove Road
11                               Suite 465
                                 Rockville, Maryland 20852
12
      For Office of the U.S.     U.S. Department of Justice
13    Trustee:                   By: KRISTEN S. EUSTIS, ESQ.
                                 1725 Duke Street
14                               Suite 650
                                 Alexandria, Virginia 22314
15
      For Subchapter V           Offit Kurman, P.A.
16    Trustee:                   By: STEPHEN A. METZ, ESQ.
                                 7501 Wisconsin Avenue
17                               Suite 1000W
                                 Bethesda, Maryland 20814
18
      For Shaheen Sariri:        Hirschler Fleischer
19                               By: KRISTEN E. BURGERS, ESQ.
                                 1676 International Drive
20                               Suite 1350
                                 Tysons, Virginia 22102
21
      For 423 Kennedy St         Greenstein DeLorme & Luchs, P.C.
22    Holdings LLC and           By: JAMES D. SADOWSKI, ESQ.
      Developer RE1 LLC:         801 17th Street, Northwest
23                               Suite 1000
                                 Washington, District of Columbia
24                               20006

25
```

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Services (341 Meeting Creditors) Page 2 of 42

2

```
 1   Also Present:              Daniel Huertas
                               Debtor representative
 2
     Proceedings recorded by electronic sound recording.
 3   Transcript produced by transcription service.

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



Case 24-00262-ELG Doc 631 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (Part Meeting of Creditors) Page 3 of 42

3

```
 1              (Proceedings commenced at 10:02 a.m.)

 2              MS. EUSTIS:  Good morning.  This is the continued 341

 3     meeting of creditors in the case of JPK NewCo LLC, case number

 4     24-262, pending in the United States Bankruptcy Court for the

 5     District of Columbia.  My name's Kristen Eustis.  I'm an

 6     attorney with the Department of Justice, and I represent the

 7     United States Trustee for Region 4 in connection with this

 8     case.  Today's October 29th, 2024, and it is approximately

 9     10:02 a.m.

10              Counsel for the Debtor, can you please identify

11     yourself and your client for the record?

12              MR. ORENSTEIN:  Good morning.  Jeff Orenstein on

13     behalf of JPK NewCo, and with me this morning is Daniel

14     Huertas, principal.

15              MS. EUSTIS:  Thank you.  I can confirm for the record

16     that I have reviewed a copy of Mr. Huertas' identification, and

17     he is who he says he is.

18              Also on the line, Mr. Metz, can you please identify

19     yourself for the record?

20              MR. METZ:  Sure.  Good morning.  This is Steve Metz,

21     the subchapter V trustee.

22              MS. EUSTIS:  Thank you.

23              Mr. Sadowski.

24              Okay.  Ms. Burgers.

25              MS. BURGERS:  Good morning.  This is Kristen Burgers
```

Case 24-10120-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from All Docket Entries (Part Me) Page Creditors 244 Page 4 of 42

4

1    on behalf of the petitioning creditors, Shaheen Sabiri.

2            THE COURT:  Okay.  And Jim Sadowski is also on the

3    line.

4            Anyone else on the line that I have not identified?

5            Okay.  Pardon.

6            MR. SADOWSKI:  I'm sorry.  Mr. Eustis, I'm sorry.  I

7    think I was on mute when I said who I was here for.  It's Jim

8    Sadowski for Developer RE1 LLC and 423 Kennedy St Holdings LLC.

9    Sorry about that.

10            MS. EUSTIS:  That's okay.  Thank you.

11            Mr. Huertas.  So first, I will ask questions of you,

12    and then I will allow creditors and parties-in-interest the

13    opportunity to question you about the Debtor's financial

14    affairs.  For those that will be asking questions, please

15    identify yourselves before asking questions so that the Court

16    reporter, if a transcript is requested of this 341 meeting,

17    will be able to identify your voice.

18            So unless you have any questions, Mr. Huertas, we can

19    go ahead and get started.

20            MR. HUERTAS:  Let's get started.

21            MS. EUSTIS:  Okay.

22        (Debtor representative sworn.)

23            MS. EUSTIS:  Please state your name and address.

24            MR. HUERTAS:  Daniel Huertas.  909 Chinquapin Road,

25    McLean, Virginia, 22102.

Case 24-10023-ECG  Doc 631  Filed 09/27/24  Entered 09/27/24 18:06:02  Desc
Exhibit Transcript from All Docket Entries (Part 1) - Meeting of Creditors  Page 5 of 42

5

1          MS. EUSTIS:  Thank you.  And did you attend the

2     initial debtor interview in connection with this case?

3          MR. HUERTAS:  Yes.

4          MS. EUSTIS:  And to the best of your knowledge and

5     belief, have all of the schedules and the statement of

6     financial affairs been filed in this case?

7          MR. HUERTAS:  Yes.

8          MS. EUSTIS:  And to the best of your knowledge and

9     belief, is the information that's contained in the schedules

10    and statement of financial affairs true and correct?

11         MR. HUERTAS:  Yes.

12         MS. EUSTIS:  And did you review and sign the

13    statements and schedules before they were filed with the court?

14         MR. HUERTAS:  I did.  The one thing I want to point

15    out, there was a small typo that I -- I found, but I don't know

16    if this is the right time to do it or -- but I found a small

17    typo in the form.

18         MS. EUSTIS:  Sure.  What was the typographical error?

19         MR. HUERTAS:  It's on page 12 of my attachment of the

20    schedules.  We have an extra five on the junior lien.

21         MR. ORENSTEIN:  It's the continuation sheet for the

22    schedule A/B.

23         MS. EUSTIS:  Okay.  And Mr. Orenstein, what was that

24    address?

25         MR. ORENSTEIN:  And it's the address -- it's the

Case 24-00266-ELG Doc 631 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (2.01 Meeting of Creditors) Page 6 of 42

6

1    address of First Street, Northwest.  It's listed as 55501 First

2    Street, Northwest.  I believe it should be 5501 First Street,

3    Northwest.

4         MS. EUSTIS:  Okay.  Thank you.

5         And thank you, Mr. Huertas, for that.

6         Mr. Huertas, has the Debtor closed its pre-petition

7    bank accounts?

8         MR. HUERTAS:  Yes.

9         MS. EUSTIS:  And where did it maintain its pre-

10   petition bank account?

11        MR. HUERTAS:  Previously was in United Bank.

12        MS. EUSTIS:  Okay.  And was this the Debtor's only

13   account?

14        MR. HUERTAS:  Correct.  Yes.

15        MS. EUSTIS:  Okay.  And has the Debtor opened a

16   debtor-in-possession account?

17        MR. HUERTAS:  Have I opened a -- a -- the new account

18   as requested by the -- by the request?  Yes, I did as what I

19   was supposed to do.

20        MS. EUSTIS:  Okay.  And where is that account located,

21   the debtor-in-possession account?

22        MR. HUERTAS:  I believe it's the same bank, United

23   Bank, but it has a -- it's a different account number.

24        MS. EUSTIS:  Okay.  Mr. Orenstein, was a form 1 signed

25   by the bank?  I didn't see it.

Case 24-10020-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript from All Docket Sources (Part Meeting Page Creditors 244 Page 7 of 42

7

```
 1              MR. ORENSTEIN:  It was.

 2              MS. EUSTIS:  Okay.

 3              MR. ORENSTEIN:  It was.  It was provided some time

 4    ago.

 5              MS. EUSTIS:  Okay.  Thank you.

 6              Mr. Huertas, what is the nature of the Debtor's

 7    business?  What does the Debtor do?

 8              MR. HUERTAS:  The Debtor business, are you -- are you

 9    referring to JPK NewCo?

10              MS. EUSTIS:  Yes.

11              MR. HUERTAS:  JPK NewCo is it's a holding company of

12    the -- some troubled assets that we had placed in there under

13    advice of counsel.

14              MS. EUSTIS:  So you said it's a holding company of

15    troubled assets that was formed on advice of counsel?  Is that

16    what you -- I just want to make sure I heard you correctly.

17              MR. HUERTAS:  Correct.  It's a holding company.

18    Holding two troubled assets that we have.

19              MS. EUSTIS:  Okay.  Where was the business formed?

20              MR. HUERTAS:  I believe the business was formed in

21    Virginia.

22              MS. EUSTIS:  Okay.  In what year?

23              MR. HUERTAS:  This year.

24              MS. EUSTIS:  2024?

25              MR. HUERTAS:  Correct.
```

Case 24-10023-ELG Doc 263-1 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (2-21 Meeting of Creditors) Page 8 of 42

8

1          MS. EUSTIS:  Okay.  And you said it was formed to hold

2     these two troubled assets?

3          MR. HUERTAS:  Correct.

4          MS. EUSTIS:  And who previously held these two

5     troubled assets?

6          MR. HUERTAS:  One was held by WCP Fund I LLC.  And the

7     different one was held by SF NU, LLC.

8          MR. ORENSTEIN:  Kristen, just to clarify, it was

9     formed in the District of Columbia, not in Virginia.

10         MS. EUSTIS:  Okay.  Thank you, Mr. Orenstein.

11         MR. ORENSTEIN:  Thank you.  The principal office is in

12     Virginia, but it's a D.C. entity.

13         MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14     NewCo engaged in any other business activities?

15         MR. HUERTAS:  Not at this time.

16         MS. EUSTIS:  So at the time that it was formed, there

17     was no other ongoing business operations of JPK NewCo?

18         MR. HUERTAS:  Correct.

19         MS. EUSTIS:  And who is Sam Sariri?

20         MR. HUERTAS:  Shaheen Sariri.

21         MS. EUSTIS:  Okay.

22         MR. HUERTAS:  Shaheen Sariri is a creditor of JPK

23     NewCo.

24         MS. EUSTIS:  And he loaned JPK NewCo Money?

25         MR. HUERTAS:  Yes.

Case 25-10206-ELG Doc 263-1 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Sources (Part Meeting of Creditors) Page 9 of 42

9

1       MS. EUSTIS:  And how much did Mr. Sariri loan to JPK

2    NewCo?

3       MR. HUERTAS:  $50,000.

4       MS. EUSTIS:  And what was that $50,000 used for by

5    JPK?

6       MR. HUERTAS:  The $50,000 was utilized to fund the

7    cost associated with the litigation.  And we funded a loan to a

8    third-party.

9       MS. EUSTIS:  And who was the third-party?

10       MR. HUERTAS:  The third-party is Energy Morocco LLC.

11       MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,

12    have a prior relationship with Mr. Sariri?

13       MR. HUERTAS:  Yes.

14       MS. EUSTIS:  And what was that relationship?

15       MR. HUERTAS:  A business relationship.

16       MS. EUSTIS:  How long had you previously known him

17    for?

18       MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been

19    a while.  Probably north of fourteen years, fifteen years.

20       MS. EUSTIS:  Would you consider Mr. Sariri a friend of

21    yours personally?

22       MR. HUERTAS:  Yes.

23       MS. EUSTIS:  And your counsel indicated that the

24    principal address of JPK is in Virginia.  What is that address?

25       MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from the Docket News LLC (Part V) - Meeting of Creditors Page 10 of 42

10

1   McLean, Virginia 22102.

2          MS. EUSTIS:  And do any other businesses operate out

3   of that address?

4          MR. HUERTAS:  Yes.

5          MS. EUSTIS:  What businesses?

6          MR. HUERTAS:  DP Capital LLC and its affiliates.

7          MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --

8          MR. HUERTAS:  No.

9          MS. EUSTIS:  Okay.  Are there any other --

10         MR. HUERTAS:  The answer was no rent.

11         MS. EUSTIS:  I'm sorry.  Go ahead.

12         MR. HUERTAS:  Yeah.  The answer was no, no rent.

13         MS. EUSTIS:  Okay.  Are there any other locations

14  affiliated or associated with JPK NewCo?

15         MS. EUSTIS:  No.

16         MS. EUSTIS:  And just to be clear, JPK NewCo does not

17  own the space out of which it operates; is that correct?

18         MR. HUERTAS:  That is correct.

19         MS. EUSTIS:  Okay.  So there's no rental obligations

20  at all?

21         MR. HUERTAS:  That's correct.

22         MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23         MR. HUERTAS:  No employees.

24         MS. EUSTIS:  Are there day-to-day operations of JPK

25  NewCo?

Case 24-10200-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 19:06:02 Desc
Exhibit Transcript from the DP NewCo LLC Meeting of Creditors Page 11 of 42

11

1          MR. HUERTAS:  No.

2          MS. EUSTIS:  Okay.  Who maintains the books and

3    records for JPK NewCo?

4          MR. HUERTAS:  Can you please repeat the question?

5          MS. EUSTIS:  Who maintains the books and records for

6    JPK NewCo?

7          MR. HUERTAS:  DP Capital LLC.

8          MS. EUSTIS:  Okay.  Is there any individual at DP

9    Capital LLC that is in charge of maintaining the books and

10   records of the Debtor?

11         MR. HUERTAS:  Yes.

12         MS. EUSTIS:  And who would that be?

13         MR. HUERTAS:  Yes.  Christina with an H.  Christina.

14         MS. EUSTIS:  Um-hum.

15         MR. HUERTAS:  Araujo, A-R-A-U-J-O.

16         MS. EUSTIS:  Great.  Thank you for spelling that for

17   me.

18         MR. HUERTAS:  Sure.

19         MS. EUSTIS:  Okay.  Are the owners of the Debtor still

20   SF NU, LLC and WCP Fund I LLC?

21         MR. HUERTAS:  Yes.

22         MS. EUSTIS:  Okay.  And do you recall what the split

23   of ownership is between WCP Fund I and SF NU?

24         MR. HUERTAS:  I do not recall.  I wonder if I can ask

25   my counsel to see if he has that.  I don't recall the split.

Case 24-50200-EEG Doc 2631 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from All Docket Entries Page 12 of 42

12

1          MS. EUSTIS:  Okay.  That's okay.

2          MR. HUERTAS:  (Unintelligible) --

3          MR. ORENSTEIN:  I believe it's -- I believe it's in

4  the statement of financial affairs.

5          MS. EUSTIS:  It is, Mr. Orenstein.  That's fine.  If

6  he doesn't recall, that's fine.  I don't need the split.

7          Mr. Huertas, do you know who the owners of SF NU, LLC

8  are?

9          MR. HUERTAS:  No.

10          MS. EUSTIS:  Do you have any ownership interest in SF

11  NU, LLC?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14  know who the members of this entity are?

15          MR. HUERTAS:  Yes, I know who the members are.

16          MS. EUSTIS:  And who are they?

17          MR. HUERTAS:  There are several members because it's a

18  fund in excess of thirty different LLCs or -- or individuals.

19  I don't have all of those right in my -- readily available, but

20  there is several members of the fund.

21          MS. EUSTIS:  Okay.  And do you have any interests

22  personally in WCP Fund I, LLC?

23          MR. HUERTAS:  Yes.

24          MS. EUSTIS:  Okay.  Okay.  So going back to JPK NewCo,

25  are there any other officers or directors other than SF NU, LLC

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors Page 13 of 42

13

1    and WCP Fund I LLC?

2            MR. HUERTAS:  No.

3            MS. EUSTIS:  Have there been any changes in the

4    ownership of JPK in the last year?

5            MR. HUERTAS:  No.

6            MS. EUSTIS:  Does anyone receive any compensation from

7    JPK NewCo LLC?

8            MR. HUERTAS:  No.

9            MS. EUSTIS:  Does JPK have an interest in any other

10   business entity?

11           MR. HUERTAS:  No.

12           MS. EUSTIS:  Has any individual or entity guaranteed

13   any portion of the Debtor's debts?

14           MR. HUERTAS:  Can you please repeat the question?

15           MS. EUSTIS:  Sure.  Are there any individuals or

16   entities that have guaranteed any portion of the Debtor's

17   business debts?

18           MR. HUERTAS:  No.

19           MS. EUSTIS:  Does the Debtor utilize an accountant?

20           MR. HUERTAS:  No.

21           MS. EUSTIS:  Okay.  And since the Debtor was formed

22   this year, there have been no obligations to file state or

23   federal tax returns; is that correct?

24           MR. HUERTAS:  That's correct.  Yeah.  It was done this

25   year, so we haven't had any obligation to file tax returns or

Case 24-00262-ELG Doc 63-1 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript from the Docket Entries (Part) Meeting of Creditors Page 14 of 42

14

 1   any of that sort.

 2           MS. EUSTIS:  Okay.  Other than Mr. Sariri, are there

 3   any other creditors of JPK?

 4           MR. HUERTAS:  I listed, besides Mr. Sariri, the

 5   disputed litigation from 423 Kennedy St Holdings LLC and

 6   Developer RE1 LLC as potential creditors --

 7           MS. EUSTIS:  Okay.

 8           MR. HUERTAS:  -- due to the litigation.

 9           MS. EUSTIS:  And is there the potential that there

10   could be monetary amounts due and owing to Developer RE1 and

11   Kennedy St in connection with that litigation?

12           MR. HUERTAS:  Yes, there is a potential.  I don't -- I

13   don't think I owe them anything, but there's a potential for

14   the litigation.

15           MS. EUSTIS:  Okay.  But other than Developer RE1,

16   Kennedy St, and Sariri, there are no other creditors of JPK?

17           MR. HUERTAS:  That's correct.

18           MS. EUSTIS:  Has the Debtor loaned any money to any of

19   its owners, officers, or directors within the last year?

20           MR. HUERTAS:  No.

21           MS. EUSTIS:  Has JPK repaid any loan to any of its

22   owners, officers, or directors within the last year?

23           MR. HUERTAS:  No.

24           MS. EUSTIS:  Have any of its owners, officers,

25   directors loaned any money to the Debtor within the past year?

Case 25-10020-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from AH Docket Entrance L (Part Meeting Creditors) Page 15 of 42

15

1          MR. HUERTAS:  No.

2          MS. EUSTIS:  So other than the relationship that you

3    described with Mr. Sariri, does Mr. Sariri have any

4    relationship to SF NU or WCP and its members that you're aware

5    of?

6          MR. HUERTAS:  No, no.

7          MS. EUSTIS:  Okay.  And Mr. Sariri is not a relative

8    of yours; is that correct?

9          MR. HUERTAS:  That's correct.

10         MS. EUSTIS:  Has JPK NewCo sold or transferred any

11   property within the last year?

12         MR. HUERTAS:  No.

13         MS. EUSTIS:  Have there been any distributions paid by

14   JPK to anyone within the last year?

15         MR. HUERTAS:  No.

16         MS. EUSTIS:  And do Mr. Sariri, Developer RE1, or

17   Kennedy St have any liens on any of JPK's assets?

18         MR. HUERTAS:  No.

19         MS. EUSTIS:  And what are JPK's assets?

20         MR. HUERTAS:  JPK's assets are the three notes that it

21   holds today.

22         MS. EUSTIS:  So it holds three notes.

23         MR. HUERTAS:  That is correct.

24         MS. EUSTIS:  Can you describe those notes?

25         MR. HUERTAS:  The three notes are Energy Morocco LLC.

```
 1   Do you need an amount?

 2            MS. EUSTIS:  Yes, please.

 3            MR. HUERTAS:  $26,000.  There's a junior lien on 5501

 4   First Street, Northwest, Washington, D.C., for 711,741.83.  And

 5   there's one more junior lien on 419-423 Kennedy Street,

 6   Northwest, Washington, D.C., for $1,678,387.

 7            MS. EUSTIS:  Okay.  Thank you.  And is Energy Morocco

 8   current on its payments to JPK?

 9            MR. HUERTAS:  Not currently.

10            MS. EUSTIS:  Are any payments being made on the junior

11   liens?

12            MR. HUERTAS:  No.

13            MS. EUSTIS:  Have any payments been made by Energy

14   Morocco since the loan was made to it?

15            MR. HUERTAS:  Not.

16            MS. EUSTIS:  Were any payments --

17            MR. ORENSTEIN:  Wait, so the Energy Morocco -- oh, I'm

18   sorry.  The Energy Morocco loan is a note that balloons in

19   December.  And the two junior liens that he described, as you

20   know, that's the subject of litigation that's presently stayed.

21            MS. EUSTIS:  Right.  So Mr. Huertas, my next question

22   was were any payments due under the note to Energy Morocco?

23            MR. HUERTAS:  Were any payments due from Energy

24   Morocco?

25            MS. EUSTIS:  Yes.
```

```
 1              MR. HUERTAS:  Yes, as form of a loan.

 2              MS. EUSTIS:  Okay.  So Energy Morocco is in default

 3     under the note?

 4              MR. HUERTAS:  Under the note as written, yes.

 5              MS. EUSTIS:  Okay.  Since filing for bankruptcy, is

 6     the Debtor current with all of its post-petition obligations?

 7              MR. HUERTAS:  Can I ask counsel to help answer the

 8     question?

 9              MS. EUSTIS:  No.  I need to know if Energy Morocco --

10     or I'm sorry, not Energy Morocco.  I'm sorry.  JPK NewCo is

11     current on its post-petition obligations.

12              MR. HUERTAS:  I believe it is.

13              MS. EUSTIS:  What are JPK's post-petition obligations?

14     What are its operating costs?

15              MR. HUERTAS:  Sorry.  Can you please repeat the

16     question?  There was some noise in the background.

17              MS. EUSTIS:  Sure.  And if you are not me or Mr.

18     Huertas, can you please mute your line?  Thank you.

19              Yes.  So what are JPK NewCo's operating expenses?

20              MR. HUERTAS:  Currently, zero.

21              MS. EUSTIS:  Has the Debtor had to borrow any money

22     post-petition?

23              MR. HUERTAS:  Sorry.  Can you please repeat the

24     question?

25              MS. EUSTIS:  Sure.  Has the Debtor had to borrow any
```

Case 24-50200-EG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (Part) Meeting of Creditors Page 18 of 42

18

1       money since filing for bankruptcy?

2              MR. HUERTAS:  No.  Outside of what we have, no.  We

3       haven't borrowed anything else.

4              MS. EUSTIS:  Okay.  And you indicated that there are

5       no operating expenses currently.  Have there ever been any

6       operating expenses for JPK?

7              MR. HUERTAS:  No.  No.

8              MS. EUSTIS:  Do you anticipate that there will be any

9       operating expenses for JPK?

10             MR. HUERTAS:  Not at this time.

11             MS. EUSTIS:  Okay.  So Energy Morocco, there was a

12      loan made to it, you indicated, in the amount of $26,000; is

13      that correct?

14             MR. HUERTAS:  That's correct.

15             MS. EUSTIS:  What is Energy Morocco?

16             MR. HUERTAS:  Energy Morocco is -- is a company -- is

17      in the business of renovating real estate assets.

18             MS. EUSTIS:  And have you or any of the entities that

19      you have an interest in ever loaned money to Energy Morocco

20      before?

21             MR. HUERTAS:  Yes.

22             MS. EUSTIS:  And what entities have made loans to

23      Energy Morocco before?

24             MR. HUERTAS:  WCP Fund I.

25             MS. EUSTIS:  And what were those loans in connection

 1 | with?

 2 |      MR. HUERTAS:  I don't have that ready available.  We

 3 | had made similar loans to Energy Morocco in the past.

 4 |      MS. EUSTIS:  Okay.  Do you recall what this loan would

 5 | be used for, the $26,000 loan?

 6 |      MR. HUERTAS:  Renovation expenses.

 7 |      MS. EUSTIS:  Associated with what project?

 8 |      MR. HUERTAS:  Several projects.  It wasn't just

 9 | associated with one single project.

10 |      MS. EUSTIS:  Okay.  And do you know who the owners of

11 | Energy Morocco are or the members?

12 |      MR. HUERTAS:  No.

13 |      MS. EUSTIS:  Mr. Huertas, did you discuss the filing

14 | of an involuntary petition with Mr. Sariri?

15 |      MR. HUERTAS:  No.

16 |      MS. EUSTIS:  Did you discuss why JPK NewCo needed a

17 | loan from Mr. Sariri with Mr. Sariri?

18 |      MR. HUERTAS:  Did I discuss why I needed the loan?

19 |      MS. EUSTIS:  Yes.

20 |      MR. HUERTAS:  I needed -- let me recall.  Very

21 | briefly, I just requested a loan for $50,000.

22 |      MS. EUSTIS:  And you didn't have any -- did you have

23 | any other discussions with Mr. Sariri regarding the loan?

24 |      MR. HUERTAS:  No.

25 |      MS. EUSTIS:  Did you negotiate the terms of the loan

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from the Deke Newco LLC Meeting of Creditors Page 20 of 42

20

1    with Mr. Sariri?

2              MR. HUERTAS:  In our initial conversation.

3              MS. EUSTIS:  In your initial conversation, you did,

4    or --

5              MR. HUERTAS:  Yeah.  We -- we discuss -- yeah, we --

6    in our initial -- yeah, I mean, yes, we discussed the terms of

7    the loan.

8              MS. EUSTIS:  Did anyone else discuss the terms of the

9    loan with Mr. Sariri on --

10             MR. HUERTAS:  No.

11             MS. EUSTIS:  -- JPK NewCo's behalf?

12             MR. HUERTAS:  No.  And was JPK NewCo represented by

13   counsel in connection with the negotiation of the loan with Mr.

14   Sariri?

15             MR. HUERTAS:  No.

16             MS. EUSTIS:  Was Mr. Sariri represented by counsel

17   that you're aware of in connection with the loan?

18             MR. HUERTAS:  Not that I'm aware of.

19             MS. EUSTIS:  Who drafted the note with Mr. Sariri?

20             MR. HUERTAS:  I believe was one of my counsels, one of

21   my legal counsels.

22             MS. EUSTIS:  One of your attorneys?  One of JPK's

23   attorneys?

24             MR. HUERTAS:  Yes.

25             MS. EUSTIS:  I just want to clarify who you mean by

1   | "you" -- or "my".

2   |        MR. HUERTAS:  Right.  It has been a while.  I -- I

3   | believe it was one of the JPK -- it -- I mean, it was one of my

4   | counsels, not JPK counsels.  I don't -- I don't recall exactly

5   | how -- how we went about it.

6   |        MS. EUSTIS:  Okay.  Would it have been Mr. VerStandig?

7   |        MR. HUERTAS:  I don't recall.

8   |        MS. EUSTIS:  Were there any other attorneys other than

9   | Mr. VerStandig that were we're working with you at this time or

10  | JPK at this time?

11  |        MR. HUERTAS:  Yeah, there were other people I was

12  | working at that time.  There's some that I don't -- I don't

13  | recall exactly.  I don't recall exactly who wrote it.

14  |        MS. EUSTIS:  Do you recall the names of the attorneys

15  | that were working with JPK and you on this at the time?

16  |        MR. HUERTAS:  I don't think they were JPK attorneys.

17  | That's the reason that I don't recall exactly who it was.

18  |        MS. EUSTIS:  Okay.  What about with Energy Morocco?

19  | Who drafted the note between -- the note on behalf of Energy

20  | Morocco?  Was that drafted by folks on behalf of JPK, or was

21  | that drafted by Energy Morocco representatives?

22  |        MR. HUERTAS:  I -- I don't recall exactly how we wrote

23  | that note either.  I think it was internally, we -- we had one

24  | of our forms.  So I think I did it myself.  I don't recall

25  | exactly how I did it.  I have to go back and see how -- how it



Case 24-50200-CLG Doc 2631 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from the Docket - Entities (Part Meeting of Creditors 2443) Page 22 of 42

22

1    was done.

2          MS. EUSTIS:  Okay.  Part of the involuntary being

3    filed against JPK, did Mr. Sariri either on his own or through

4    counsel make demand for payment on JPK?

5          MR. HUERTAS:  Yes, make demand for payments.

6          MS. EUSTIS:  Mr. Sariri made demand for payment?

7          MR. HUERTAS:  Correct.  Yeah.

8          MS. EUSTIS:  And if you could provide to your counsel

9    to provide to me any written demand for payment that was made

10   by Mr. Sariri, I would appreciate that.

11         MR. HUERTAS:  I don't think I have anything in

12   writing.  It was a phone conversation.  I told Mr. Sariri that

13   based on the nature of where we stand with the notes, we would

14   not be able to make payments.  And we told him that we were not

15   able to -- to make the financial obligation at this -- at this

16   time.

17         MS. EUSTIS:  Okay.  And the note was -- the money was

18   loaned by Mr. Sariri only almost a month before the involuntary

19   was filed; is that accurate?

20         MR. HUERTAS:  Yes, that is correct.

21         MS. EUSTIS:  Okay.  Okay.  Mr. Metz, do you have any

22   questions for Mr. Huertas?

23         MR. METZ:  I do not.  Thank you.

24         MS. EUSTIS:  Thank you.

25         Mr. Sadowski.



Case 24-10023-ELG Doc 261 Filed 09/27/24 Entered 09/27/24 19:06:02 Desc
Exhibit Transcript from Debtor New Desc L Carr Meeting of Creditors Page 23 of 42

23

1          MR. SADOWSKI:  Yes, I do.  Jim Sadowski, counsel for

2     Developer RE1  and 423 Kennedy St Holdings LLC.

3          Good morning, Mr. Huertas.  To follow up on some of

4     the questions that Ms. Eustis asked, you mentioned that initial

5     conversation with Mr. Sariri about this promissory note or

6     loan.  What date did that happen, that initial conversations?

7          MR. HUERTAS:  I don't recall.

8          MR. SADOWSKI:  Well, was it six months ago?  Was it

9     two months ago?  What's your best range of when that happened?

10          MR. HUERTAS:  Before I received the funds.  I don't

11     recall exactly when.  I'm sorry.  Just before we received the

12     funds, obviously.

13          MR. SADOWSKI:  Okay.  And when did you receive the

14     funds?

15          MR. HUERTAS:  I -- I got to go look.  I don't have an

16     exact date.

17          MR. SADOWSKI:  Okay.  And how did you receive the

18     funds?

19          MR. HUERTAS:  I don't recall.  I'm sorry.

20          MR. SADOWSKI:  Was it a check?  Was it a wire

21     transfer?  Was it something else?

22          MR. HUERTAS:  I think it was a wire.  I'm not a

23     hundred-percent sure.

24          MR. SADOWSKI:  Okay.  Now, the bank account with

25     United Bank, when was that account opened?

Case 24-50200-CEG Doc 2631 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from 4th DPK NewCo LLC Meeting of C Section 2443 Page 24 of 42

24

1          MR. HUERTAS:  In the earlier part of this year.  I

2     don't have a date.

3          MR. SADOWSKI:  Okay.  But you have bank statements,

4     right, that would show when that account was opened?

5          MR. HUERTAS:  I'm sure we have bank statements.

6          MR. SADOWSKI:  Okay.  And what money went in and out

7     of that account during the period of time that JP (sic) NewCo

8     had activity in that account?

9          MR. HUERTAS:  It was related to this loan and the

10    other funds was related to this litigation.

11         MR. SADOWSKI:  Okay.  Is United Bank the same bank

12    that's used by DP Capital?

13         MR. HUERTAS:  Same bank.

14         MR. SADOWSKI:  Same bank?  And the same bank that's

15    used by WCP Fund?

16         MR. HUERTAS:  Same bank.  Different account numbers.

17         MR. SADOWSKI:  Okay.  Whose idea was it to create JPK

18    NewCo?

19         MR. HUERTAS:  I believe I've already answered the

20    question related to JPK NewCo.

21         MR. SADOWSKI:  It was your lawyer's idea then?

22         MR. HUERTAS:  JPK NewCo was created under advice of

23    counsel.

24         MR. SADOWSKI:  Okay.  So it wasn't your idea to do

25    that, right?

1        MR. HUERTAS:  I have already answered that question.

2        MR. SADOWSKI:  Is that a no?

3        MR. HUERTAS:  JPK NewCo was created under advice of

4   counsel.

5        MR. SADOWSKI:  Okay.  So it wasn't your idea, correct?

6        MR. HUERTAS:  JPK NewCo was created under advice of

7   counsel.

8        MR. SADOWSKI:  All right.  When was that advice given?

9   What time frame?

10        MR. HUERTAS:  Sometime late last year, early this

11   year.

12        MR. SADOWSKI:  And that advice that was given, was

13   that advice given by Mr. VerStandig?

14        MR. HUERTAS:  JPK NewCo was created under the advice

15   of counsel.

16        MR. SADOWSKI:  All right.  Which counsel?

17        MR. ORENSTEIN:  Daniel, you can answer that question.

18   You cannot tell him what was said, but you can tell him who

19   gave you the advice.

20        MR. HUERTAS:  Mr. Marc -- Mac VerStandig.

21        MR. SADOWSKI:  Okay.  Was there any other attorney

22   besides Mr. VerStandig involved in that advice?

23        MR. HUERTAS:  No.

24        MR. SADOWSKI:  Okay.  Who selected the name JP (sic)

25   NewCo?

Case 25-10020-EG Doc 231 Filed 09/27/24 Entered 09/27/24 19:06:02 Desc
Exhibit Transcript from the Deke NewCo (Part) Meeting of Creditors Page 26 of 42

26

```
 1              MR. HUERTAS:  Sorry.

 2              MR. SADOWSKI:  So who came up with the name, JPK

 3     NewCo?  JPK, does that stand for someone's initials, or why did

 4     you use JPK NewCo?

 5              MR. HUERTAS:  Yeah, it's, like, initials

 6              MR. SADOWSKI:  Okay.  And whose initials are JPK?

 7              MR. HUERTAS:  The initial JPK is Joseph P. Kennedy.

 8              MR. SADOWSKI:  Okay.  All right.  All right.  Is that

 9     just a political person that you decided to use his initials,

10     as opposed to, like, JPK or RFK?

11              MR. HUERTAS:  I just like the initials.

12              MR. SADOWSKI:  Okay.  And the preparation of the note

13     with Mr. Sariri, I believe you said you weren't sure who

14     prepared that.  Did JPK NewCo get a bill for the preparation of

15     that note from any attorney?

16              MR. HUERTAS:  No.

17              MS. EUSTIS:  How about the preparation of the note

18     with Energy Morocco?  Did JPK get the legal bill for

19     preparation of that note?

20              MR. HUERTAS:  I don't think so.  I don't know.  It

21     didn't.

22              MR. SADOWSKI:  Has JPK incurred any legal expenses

23     before it filed for bankruptcy?

24              MR. ORENSTEIN:  And just as a correction.  People keep

25     saying before it filed bankruptcy.  It's involuntary.
```

 1           MR. SADOWSKI:  Sorry.  You're right.  Before the

 2   involuntary petition was filed on July 3rd, had JPK incurred

 3   any legal expenses?

 4           MR. HUERTAS:  I don't recall nothing outside of this.

 5           MR. SADOWSKI:  All right.  Who's paying the bills to

 6   Mr. VerStandig related to any pre-petition services that he

 7   gave JPK NewCo?

 8           MR. HUERTAS:  Sorry.  Repeat the question.

 9           MR. SADOWSKI:  Yeah.  Before July 3rd, 2023, that's

10   the petition date.  When I say pre-petition, that means before

11   July 3rd, 2024.  Sorry.  Who was paying the legal bills for Mr.

12   VerStandig to give advice about forming JPK NewCo?  Was that

13   being paid by WCP Fund, DP Capital, or somebody else?

14           MR. HUERTAS:  I don't recall exactly the entity, but

15   it's one of -- one of DP Capital affiliates, I'm sure.

16           MR. SADOWSKI:  Okay.  Now, was it ever discussed that

17   one reason to create JPK NewCo was to be able to put that

18   company into bankruptcy so that the litigation with my clients

19   could be removed to bankruptcy court?

20           MR. ORENSTEIN:  Objection.  That would be attorney-

21   client privilege if such a conversation took place.

22           MR. SADOWSKI:  Okay.  Mr. Huertas, you're not going to

23   answer that --

24           MR. ORENSTEIN:  I'm instructing him not to answer that

25   question.

Case 24-10023-EG Doc 631 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript from All Pike Ventures LLC Partners Meeting Page 28 of 42

28

1    MR. SADOWSKI:  Okay.  What were the business reasons

2  for forming JPK NewCo?

3    MR. HUERTAS:  JPK NewCo was formed because at a time

4  after the mediation process that we had, I think sometime late

5  last year, there were some negotiations around how to make

6  those liens and ourselves have an agreement.  And the only --

7  the best way to -- to make that agreement work was to take the

8  troubled assets into one entity, as we had a discussion related

9  to participation.  So the only way to do it, like I said, was

10  this way, and it was done under advice of counsel.

11    MR. SADOWSKI:  Okay.  Now, when did the mediation

12  happen between the defendants in the litigation with my

13  clients?  When did that mediation occur with JAMS and Judge

14  Levie?  Do you remember the dates?

15    MR. HUERTAS:  I don't remember the dates, but I -- I

16  think sometime late last year or (unintelligible) I -- I don't

17  exactly when, but it was -- it was cold.

18    MR. SADOWSKI:  Yeah.  Let me see if I can help you

19  with that, Daniel, because I know it was a while ago.  On my

20  calendar, on January 9th, I have a time entry -- I'm sorry, a

21  calendar entry for mediation of JAMS, January 9th, 2024.  Does

22  that refresh your recollection as to when the first mediation

23  session was held?

24    MR. HUERTAS:  I mean, you want me to -- you want me to

25  take your word for it, then I know it was early this year or

Case 2:15-00200-EFG Doc 263 Filed 09/27/24 Entered 09/27/24 19:06:02 Desc Exhibit Transcript from the Dike New Docs (Part Meeting one Citations) 2443 Page 29 of 42

29

```
 1    sometime late last year.  I don't recall exactly.  It was a
 2    while ago --
 3            MR. SADOWSKI:  Yeah.
 4            MR. HUERTAS:  -- like you said very well.  But it was
 5    before JPK was formed.
 6            MR. SADOWSKI:  Okay.  And when was the last mediation
 7    session before Jams?  Do you remember that date?
 8            MR. HUERTAS:  No, I don't have it.  I don't remember
 9    the date.
10            MR. SADOWSKI:  Well, was it within a couple weeks of
11    the first session, or what's your recollection of that?
12            MR. HUERTAS:  I -- I don't recall.
13            MR. SADOWSKI:  Okay.  Do you know why the first
14    mediation session was continued to a second date in January?
15            MR. HUERTAS:  I mean, like I said, I -- I don't
16    recall.  It was a while ago.
17            MR. SADOWSKI:  Okay.
18            MR. HUERTAS:  I know that --
19            MR. SADOWSKI:  When did the -- okay.  When did the
20    mediation end?
21            MR. HUERTAS:  I don't understand your question.  When
22    did it end?
23            MR. SADOWSKI:  Well, my recollection from my calendars
24    and my time sheets and my bills that I sent to the client is
25    that there were two mediation sessions, one on January 9th, and
```

Case 24-50200-EG Doc 231 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from the Depot New Ocean LLC Meeting of Creditors Page 30 of 42

30

1    the second one on January 25th.  And the mediation concluded on

2    January 25th.  Does that sound about right in terms of timing?

3         MR. HUERTAS:  Unfortunately, you'll need to go by the

4    date you are stating.  I don't want to use your dates.  For --

5    like I said, it was some time before either late last year or

6    early this year.  I don't recall exactly.

7         MR. SADOWSKI:  Okay.  What was the reason the

8    mediation ended?

9         MR. HUERTAS:  I don't recall.

10        MR. SADOWSKI:  Well, isn't that true, Mr. Huertas,

11   that you were the one who told the mediator -- or sorry, who

12   ended the mediation?

13        MR. HUERTAS:  I don't recall.

14        MR. SADOWSKI:  Okay.  What would help refresh your

15   recollection as to why the mediation ended?  Do you have any

16   business records?  Do you have any notes?

17        MR. HUERTAS:  I don't have any notes.

18        MR. SADOWSKI:  Okay.  Returning to the schedules that

19   were filed -- sorry.  Let's talk about SF NU, LLC.  Now, Ms.

20   Eustis asked you if you knew who the owners are, and you said

21   you don't know.  Well, who do you communicate with when you

22   want to communicate with SF NU, LLC?

23        MR. HUERTAS:  I communicate with Mr. Shrensky, Jason

24   Shrensky.

25        MR. SADOWSKI:  Could you spell his name, please, for

1    the record?

2        MR. HUERTAS:  Jason, J-A-S-O-N, Shrensky,

3    S-H-R-E-N-S-K-Y.

4        MR. SADOWSKI:  Okay.  Other than Mr. Shrensky, is

5    there anyone else that you communicate with at SF NU, LLC?

6        MR. HUERTAS:  No.

7        MS. EUSTIS:  Okay.  Why were the notes -- the two

8    notes that I think you've described it as distressed assets or

9    tainted assets, why were they transferred to SF NU, LLC?

10       MR. HUERTAS:  I don't think that's a question for me.

11   I -- I already answer the question related to -- to that so --

12       MR. SADOWSKI:  Oh, because I had a question for you.

13       MR. HUERTAS:  I'm (unintelligible) question.  Okay.

14       MR. SADOWSKI:  Because I have a question for you, Mr.

15   Huertas.

16       MR. HUERTAS:  Well, I can't hear you.  No one answered

17   a question for a different company.  I don't know.

18       MR. SADOWSKI:  Well, you know the answer to that

19   question, correct?

20       MR. HUERTAS:  I don't have an answer for you.

21       MR. SADOWSKI:  So you don't know why the notes were

22   transferred to SF NU, LLC?

23       MR. HUERTAS:  Hold on.  Repeat that again.

24       MR. SADOWSKI:  You don't know why the notes were

25   transferred to SF NU, LLC?

Case 24-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from the DPK NewCo LLC Meeting of Creditors Page 32 of 42

32

 1          MR. HUERTAS:  Why the notes were transferred to SF NU,

 2   LLC?  I don't -- I don't -- I don't understand your question.

 3          MR. SADOWSKI:  Okay.  These notes that are being held

 4   by JPK NewCo were originally held by SF NU, LLC, correct.

 5          MR. HUERTAS:  One of them.  That's incorrect.

 6          MR. SADOWSKI:  Okay.

 7          MR. HUERTAS:  There's one of them.

 8          MR. SADOWSKI:  All right.  Which one was currently

 9   held by SF NU, LLC?

10          MR. HUERTAS:  I got to go look.  I don't have it

11   exactly, but I think it's the smaller -- the smaller one.

12          MR. SADOWSKI:  Okay.  So you think that -- well, I

13   guess I can just look at your continuation sheet.  So you think

14   that was the second -- where did I see that?

15          MR. ORENSTEIN:  The smaller one would be First Street.

16          MR. SADOWSKI:  Yeah.  Okay.  Yeah, I'm not real good,

17   Mr. Orenstein, with the street addresses.  I'm better with the

18   entity names, but okay.  So and the other one was -- what's the

19   other one, and why was that other one transferred from the

20   original holder to SF NU, LLC?

21          MR. HUERTAS:  I don't -- I don't understand question.

22   You're asking me why the other note was transferred to SF NU,

23   LLC?  That never happened.

24          MR. SADOWSKI:  Correct.  Correct.

25          MR. HUERTAS:  I don't understand your -- I -- I -- I

Case 25-00206-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 19:06:02 Desc
Exhibit Transcript from the Docket Nunes LLC Meeting of Creditors Page 33 of 42

33

1    don't understand your question.

2           MR. SADOWSKI:  Well, I'm trying to figure out what the

3    business purpose is for these notes getting transferred from

4    one entity to the next to the next.  And the business purpose

5    that we were told in some of your filings and in your testimony

6    was that these were tainted assets, and there was some sort of

7    settlement agreement that might be created to hold these assets

8    and figure out a settlement if the assets were held by somebody

9    else.  So I'm trying to figure out why was there a business

10   need to do that.  No settlement agreement was reached, correct,

11   between --

12          MR. ORENSTEIN:  Mr. Sadowski, I'm going to -- Mr.

13   Sadowski, I'm going to interrupt you for a moment, because I'm

14   not sure if you're confusing your own questions.  You asked him

15   why the notes were transferred to SF NU.  And for purposes of

16   the bankruptcy, he's already testified that WCP and SF NU

17   transferred the notes to JPK.  So I'm not sure if you're mixing

18   up your question.

19          MR. SADOWSKI:  Yeah, well, I'm trying to figure out

20   two pieces of that, Mr. Orenstein, and thanks for that because

21   maybe my questions aren't as great as I thought they should be.

22   I want to find out why they went from WCP Fund I LLC to SF NU,

23   and then why they then went from SF NU to JPK NewCo.  There's

24   two steps there because that's where I'm headed with this.

25          So the first question is why transfer the notes out of



```
 1    WCP Fund I to SF NU, LLC to begin with.  And then the second

 2    part of that question is why then transfer them again to JPK

 3    NewCo.

 4              MR. HUERTAS:  Okay.  So -- so the first question is

 5    related to internal business practices.  That's probably not

 6    the right forum for me to talk about WCP's or DP Capital

 7    business practices.  How we do business.

 8              The second question, I can't really answer your

 9    question as far as how or why we transfer the note from the

10    fund to JPK NewCo.  And I said to you multiple times that it

11    was under the advice of counsel.

12              MR. SADOWSKI:  Okay.  So is there any other reason

13    other than the advice of counsel why the notes were transferred

14    to JPK NewCo?

15              MR. HUERTAS:  I already gave you an answer.

16              MR. SADOWSKI:  That was the only reason they were

17    transferred, because of advice of counsel?

18              MR. HUERTAS:  On advice of counsel, correct.

19              MR. SADOWSKI:  Okay.  One second just to look through

20    my notes.

21              Now, you mentioned that the WCP Fund I is comprised

22    of -- and I'm not trying to pin you down exactly to what you

23    said, but I wrote down thirty different LLCs and individuals

24    and that you have an interest in WCP Fund I.  What is the

25    extent of your interest in WCP Fund I?
```

Case 24-10023-ELG Doc 2631 Filed 09/27/24 Entered 09/27/24 18:06:02 Desc
Exhibit Transcript from the Debtor's LLC Meeting Page 175 of 244 Page 35 of 42

35

1          MR. HUERTAS:  I'm a member of the fund.

2          MR. SADOWSKI:  Individually?  And what percentage do

3     you own?

4          MR. HUERTAS:  I own (unintelligible) percent.

5          MR. ORENSTEIN:  I'm going to -- I'm going to object to

6     this question.  I'm going to instruct him not to answer.  This

7     doesn't seem to have anything to do with the operations of JPK

8     or the issues in the JPK case.

9          It's your position that this is relevant with regard

10     to the motion to dismiss, which the United States Trustee has

11     filed.  We're in the process of scheduling -- in the process of

12     having a scheduling order entered that will allow for discovery

13     in this case.  And I think if you're going to ask questions

14     about WCP, it's appropriate for WCP to have its own counsel

15     present at that time to object to the extent that I think

16     it's -- to the extent that he thinks that it's necessary.  I

17     don't think this is appropriate for a 341 meeting.

18          MR. SADOWSKI:  Well, you didn't object before when he

19     gave that answer, Mr. Orenstein.  I'll ask a different

20     question.

21          Mr. Huertas, other than an individual interest in WCP

22     Fund I, do you have an individual interest in any of the LLCs

23     that make up WCP Fund I?

24          MR. ORENSTEIN:  I'm going to give the -- I'm going to

25     make the same objection.  For the reasons stated, I'm going to

1    instruct him not to answer that.

2          MS. EUSTIS:  Mr. Sadowski, this is Kristen Eustis.  I

3    agree with Mr. Orenstein that Mr. Huertas would be entitled to

4    have his own personal counsel present for anything further with

5    respect to his personal interests in these entities.

6          MR. SADOWSKI:  Okay.  Got it.  Okay.  Objection's been

7    noted.  Thank you, Counsel.

8          Mr. Huertas, how did you arrive at the numbers that

9    were used on the schedules to come up with the $2.4 million?

10   Where did those amounts come from?

11         MR. HUERTAS:  Those numbers, I believe, were the

12   unpaid principal balance at the time that I -- that I filled

13   this out.

14         MR. SADOWSKI:  Okay.  So you have some accounting

15   somewhere that shows as of the date you prepared the schedules,

16   X dollars was owed under each of the lien -- of the notes?

17   Sorry.

18         MR. HUERTAS:  Well, that's a face amount.  That's

19   the -- that's the face amount of the current value.  That's

20   what I was asked.

21         MR. SADOWSKI:  Okay.

22         MS. EUSTIS:  You asked me something different.  I'm

23   just clarifying that when I completed the schedules, it was

24   based on what's the total face amount and the current value.

25         MR. SADOWSKI:  Okay.  So getting to Energy of (sic)

Case 24-10120-ELG   Doc 261   Filed 09/02/24   Entered 09/02/24 18:06:02   Desc
Exhibit Transcript from the Docket Entry Meeting of Creditors   Page 37 of 42

37

1   Morocco LLC, was this $26,000 -- did that serve some other

2   purpose for Energy of (sic) Morocco LLC?  In other words, did

3   the Debtor use those funds -- I'm sorry.  Let me ask it a

4   different way.  Does Energy of (sic) Morocco LLC received draws

5   from DP Capital under various construction projects?

6          MR. HUERTAS:  I'm not going to answer that question.

7   It's related to a separate business, and I'll do it -- I'll do

8   it when my counsel is present for me to answer any other

9   questions related --

10          MR. SADOWSKI:  Okay.  Well, how about the --

11          MR. HUERTAS:  -- (unintelligible) DP Capital.

12          MR. HUERTAS:  How about this $26,000?  Why did Energy

13   of (sic) Morocco need that money at that time?

14          MR. HUERTAS:  They request additional funds for the

15   renovations, and we did a loan for that purpose.

16          MR. SADOWSKI:  And was JPK's business to be loaning

17   money to people for renovations?

18          MR. HUERTAS:  JPK business is again the holding

19   company and the holding company of loans -- of notes.

20          MR. SADOWSKI:  But it wasn't in the loaning business,

21   was it?

22          MR. HUERTAS:  Not before.

23          MR. SADOWSKI:  Okay.  How did JPK expect to pay Mr.

24   Sariri back the money that Mr. Sariri loaned JPK?

25          MR. HUERTAS:  Hopefully, some of these loans, we'll

1  start paying.  And for the payments of the loans, either from

2  Energy Morocco or once the payments for 423 Kennedy and

3  Developer RE1 start happening, we will take care of the

4  creditors.

5  MR. SADOWSKI:  Okay.  And when did JPK expect the --

6  MR. HUERTAS:  (Unintelligible).

7  MR. SADOWSKI:  When did JPK expect that either of my

8  clients were going to start paying money on those loans?

9  MR. HUERTAS:  I don't know.  That's a great question

10  for you and your clients.

11  MR. SADOWSKI:  No, that's a question for you.  You

12  said that you expected -- you just said that you expected that

13  at some point you would pay Mr. Sariri back with money that you

14  got from Developer RE1 and 423 Kennedy.  So what led JPK NewCo

15  to believe that there was going to be money coming in from

16  those two loans in the next year?

17  MR. HUERTAS:  I don't know.  I think if there is

18  payments received -- you ask me a question how I'm -- how I

19  am -- how am I going to pay Mr. Sariri, and the answer to your

20  question was out of the payments that we'll receive in the

21  future, who knows when, related to the Energy Morocco, as well

22  as the junior liens that are in here.

23  MR. SADOWSKI:  All right.  Just one second, Ms.

24  Eustis.

25  All right.  That concludes my questions, Ms. Eustis.



Case 24-10205-ELG   Doc 2631   Filed 09/27/24   Entered 09/27/24 18:06:02   Desc
Exhibit Transcript from A. Duke Newbouse (Part Meeting Ctr.) 1 of 1   Page 39 of 42

39

```
 1              Thank you, Mr. Huertas and Mr. Orenstein.

 2         MS. EUSTIS:  Thank you.

 3         Ms. Burgers, do you have any questions?

 4         Okay.  Ms. Burgers had indicated at the beginning of

 5    this meeting that she might have to drop off, so it appears

 6    that she has.

 7         Mr. Huertas, what is the Chapter 11 plan for JPK?

 8    It's my understanding from your testimony that there's no

 9    revenue currently coming in, that the notes that JPK holds are

10    no one is making payment on those notes.  So how does JPK

11    propose that it's going to exit bankruptcy?

12         MR. HUERTAS:  Sure.  Thank you for the question.  At

13    some point, our goal through the resolution of some of these

14    issues related to 423 Kennedy St and Developer RE1 LLC is

15    having the ability, once JPK NewCo is able to bring those funds

16    from these notes, being able to pay back its creditors so --

17         MS. EUSTIS:  And the plan is due, I believe, in two

18    weeks.  And so do you anticipate that those funds will start

19    coming in by the end of the year?

20         MR. HUERTAS:  I don't know.  I -- I'm not an expert on

21    this.  I have no idea.  But at this time, right now, we have

22    three -- two delinquent junior liens in -- in default.  And

23    unfortunately, the Energy Morocco is in default as well.

24         MR. ORENSTEIN:  This is Orenstein.

25         MS. EUSTIS:  Go ahead, Mr. Orenstein.
```

Case 24-10200-ELG  Doc 261  Filed 09/02/24  Entered 09/02/24 19:06:02  Desc
Exhibit Transcript from April 9th Meeting of Creditors (Part 1 of 2)  Page 40 of 42

40

 1          MR. ORENSTEIN:  Yeah, thanks.  I'm sure you saw the

 2    status report that we filed last week The money from Energy

 3    Morocco is due under the note to be paid in December.  We're

 4    hoping that that will come in by that time.  The litigation

 5    with 423 Kennedy and Developer RE1, as you know, is stayed

 6    pending the Court's decision on whether or not this bankruptcy

 7    case will be dismissed.  We're hoping that it's not going to be

 8    dismissed and at that point, that the Court will lift the stay

 9    so that the litigation can continue.

10          And you're right, the -- I believe it's -- I want to

11    say, off the top of my head, it's the 9th that the plan is due.

12    I may be wrong about that, but it's within the next two weeks.

13    And the plan, generally speaking, will provide that payments

14    will be made from the collection of these notes as and when the

15    payments are received.

16          MS. EUSTIS:  Okay.  All right.  Well, thank you.  I

17    appreciate that.

18          Does anyone else have any questions for Mr. Huertas

19    today?

20          Okay.  Hearing none.  I'm going to conclude this

21    meeting today.  And just, Mr. Orenstein and Mr. Huertas, for

22    your benefit, that does not mean I don't have any more

23    questions for you.  I do, and I do anticipate getting some

24    discovery out in connection with the motion to dismiss.  So I

25    just wanted to make sure that was clear for the record that by

Case 25-10200-ELG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from All Docket Entries (Part Meeting of Creditors) Page 41 of 42

41

1   concluding this meeting of creditors, that does not mean that

2   my office does not have any further questions for you in

3   relation to its motion to dismiss.

4           But with that, this --

5           MR. ORENSTEIN:  We understand, and Mr. Huertas is

6   aware of the fact that you may want to take depositions of JPK

7   or potentially Mr. Huertas himself.

8           MS. EUSTIS:  Great.  Thank you, Mr. Orenstein.

9           And thank you all so much for your time today.  I will

10  conclude this meeting.

11          (Whereupon the hearing was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 24-50200-CEG Doc 261 Filed 09/02/24 Entered 09/02/24 18:06:02 Desc
Exhibit Transcript from the Docket Entries (Part) Meeting of Creditors Page 42 of 42

42

```
 1                           CERTIFICATE

 2    I certify that the foregoing is a correct transcript from the

 3    electronic sound recording of the proceedings in the above-

 4    entitled matter.

 5

 6

 7

 8    /s/

 9    _____    Date: November 13, 2024
      ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY TO SUPPLEMENTAL BRIEF
## CONCERNING PLAINTIFFS' MOTION FOR REMAND

1

386

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant") and JPK NewCo LLC, debtor-in-possession ("JPK"), by and through undersigned counsel, in reply to the Plaintiffs' Supplemental Brief in Support of Their Motion for Remand (the "Supplemental Brief," as found at DE #26, with the underlying motion being known as the "Motion to Remand," as found at DE #13) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") and state as follows:

## I.    Introduction

This Honorable Court requested supplemental briefing on the Motion to Remand after entering an order granting in part, and denying in part, a previously-pending motion to dismiss the matter of *Webster v. DP Capital LLC, et al.*, Case No. 23-10025 (the "Paret Adversary"). It thusly comes as some surprise that the Plaintiffs have expended only three paragraphs—of their 12-page Supplemental Brief—addressing this issue, with the rest of the filing harping on issues raised by the bankruptcy filing of JPK NewCo LLC ("JPK"). This is all the more surprising given that a pending motion to dismiss the JPK bankruptcy is not set for hearing until February 2025, with discovery still ongoing in that matter.

To be sure, there exist two independent—albeit related—reasons to deny the Motion to Remand: this litigation is core to the chapter 7 bankruptcy case of Charles Paxton Paret ("Mr. Paret") and this litigation is core to the chapter 11 bankruptcy case of JPK. Insofar as the fate of the JPK bankruptcy will not be known until February 2025, and the centrality of this adversary proceeding to that bankruptcy has already been well briefed, it is unclear why the Plaintiffs would

2

387

focus their Supplemental Brief thereupon—especially after being asked to direct the brief toward the implications of the Paret Adversary partially surviving a motion to dismiss.

The Defendants and JPK, however, elect to not follow suit and will instead focus briefly on the JPK bankruptcy while dedicating the weight of this brief to the implications of the Paret Adversary. Indeed, the Defendants and JPK have already briefed the implications of the JPK bankruptcy on this adversary proceeding, DE #20 at §§ I, II(a-b), III(a)(ii); III(b)(ii)-IV, and see the JPK-focused analysis as unchanged from the time of that initial briefing. For instant purposes, however, suffice it to posit that the JPK-centric allegations in the Supplemental Brief do not come as notably troubling. The Plaintiffs appear to be preoccupied with the ideas that (i) JPK is a holding company for troubled assets, formed on the advice of counsel; (ii) JPK's business activities are limited to those of a holding company that has also engaged in direct lending activity; (iii) JPK's debtor representative has a pre-existing relationship with a lender who extended financing to JPK; (iv) JPK shares an address with one of its equity holders; (v) JPK does not have day-to-day operational expenses since JPK is a holding company engaged in direct lending activity; and (vi) the debtor representative does know the identities of both members of JPK (both of which are legal entities, not natural persons) but, when quizzed, does not know all the members of one of those legal entities.

None of the foregoing contentions about JPK are surprising or, for that matter, controversial. It would be surprising if a troubled asset holding company was *not* formed with the input or advice of counsel. It would be strange if a troubled asset holding company employed a staff, rented independent office space, or did not have a relationship with its lender. And while a debtor representative should certainly know the identities of a debtor's equity holders in a small

388

business case (perhaps not in a larger case), there is no reason a debtor representative should—or would—know the identities of the derivative equity holders of those equity holders.

In short, it appears the Plaintiffs are outraged that a holding company, formed on the advice of counsel, is permitted to seek bankruptcy protection. Short of lobbying Congress to amend Section 109 of the Bankruptcy Code, however, these qualms appear to be misplaced. And, as noted above, JPK was not the requested topic of supplemental briefing and is a debtor whose bankruptcy case will remain subject to a motion to dismiss until at least February 2025.

All of which necessarily returns to the oddity of this brief being a response to the three scant paragraphs of the Supplemental Brief in which the Paret Adversary is actually discussed. The Plaintiffs correctly observe, therein, that if Mr. Huertas, WCP or DPCL (the "Webster Defendants") succeed in the subject litigation, Mr. Paret's estate will not have an interest in the outcome of the above-captioned litigation. And while the Webster Defendants certainly will not argue herein—or anywhere else—that they ought not succeed in the Paret Adversary, the Plaintiffs' arguments seem to very much miss the point: a venerable chapter 7 trustee, with more than 30 years of experience and an esteemed reputation, is pursuing claims that an estate he helms actually owns an interest in (i) the very promissory notes at issue in this litigation; (ii) the very properties at issue in this litigation; (iii) any profits (or losses) occasioned in connection with the outcome of this litigation; and (iv) one of the Plaintiffs. Those claims have now survived a motion to dismiss. And it would be accordingly antithetical to both established law and common sense for this litigation, so central to the trustee's causes of action, to be sent away from the court in which the trustee is pursuing his own claims and administering Mr. Paret's bankruptcy estate.

4

## II.     Argument: Remand is Improper in Light of the Paret Adversary

The Plaintiffs' claims have been strange from the outset, as they essentially urge that consumer lending standards ought to apply to commercial loans and that trustees under commercial deeds of trust must serve as independent mediators and/or arbitrators of any grievances before coordinating the foreclosure of real property. Yet those contentions have now, somehow, grown even stranger, as the Plaintiffs appear to be advocating for the Webster Defendants in the Paret Adversary, taking the cliché of "strange bedfellows" to a new extreme. And, keeping with the word-of-the-moment theme, this places the Defendants and JPK in the strange position of agreeing with the Plaintiffs: The Webster Defendants probably should prevail in the Paret Adversary. But, unless and until such a victory is actually had (and the Paret Adversary is now subject to a scheduling order that puts a pretrial conference in October 2025), case law instructs the objects of the trustee's fixation are—and should continue—to be regarded as assets of Mr. Paret's estate.

In connection with a question concerning the timeliness of removal, and only in that narrow context, the Defendants have previously touched upon the doctrine of "arguable property." *See* Opposition to Plaintiffs' Motion to Remand, DE #20, at § III(a)(1). Under that doctrine, "arguable property" is defined as "an asset to which the debtor has only an arguable claim of right," *Brown v. Chesnut (In re Chesnut)*, 422 F.3d 298, 300 (5th Cir. 2005), and "[w]hen property is determined to be 'arguable property' of the estate, it should be presumed to be property of the estate." *William M. Condrey, P.C. v. Endeavour Highrise, L.P. (In re Endeavour Highrise L.P.)*, 425 B.R. 402, 414 (Bankr. S.D. Tex. 2010) (citing *In re Global Outreach, S.A.*, 2009 Bankr. LEXIS 1602, at * 21 (Bankr. D.N.J. June 8, 2009) (citing *In re Chesnut*, 422 F.3d at 303); *STFG, Inc. v. Int'l Bank of Commerce (In re S.T.F.G., Inc.)*, 2008 Bankr. LEXIS 1491, at *7 (Bankr. S.D. Tex. Apr. 14, 2008); *In re Levenstein*, 371 B.R. 45, 48 (Bankr. S.D.N.Y. 2007)).

5

This doctrine necessarily controls, as there is no question but that both Mr. Paret and his trustee have an *arguable* claim of right to the real estate assets and promissory notes at issue in this litigation, as well as an arguable claim of right to participate in any profit/loss occasioned by this litigation. They have made their argument in the form of a complaint; the portions of that complaint seeking a declaratory judgment as to the existence of a partnership—and seeking recourse for an alleged breach of that putative partnership—have survived a motion to dismiss. In short, almost everything at issue in this litigation is the "arguable property" of Mr. Paret's bankruptcy estate and is accordingly "presumed to be property of the estate." *In re Endeavour Highrise L.P.*, 425 B.R. at 414.

It also bears notate that enforcement of the "arguable property" doctrine necessarily extends to the definition of a bankruptcy court's jurisdiction, going so far as to stand for the proposition that a party's right to trial by jury can actually be waived if enforcing that right would hinder a bankruptcy court's ability to efficiently adjudicate disputes focused on "arguable property." *In re Endeavour Highrise L.P.*, 425 B.R. at 416-17 (citing *Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329 (2d. Cir. 1993)).

In short, this Honorable Court can—and should—retain the instant case. The "core" nature of the proceeding has been addressed in prior briefing and is unchanged, so there is no genuine question but that jurisdiction instantly exists. This leaves only a question as to whether remand ought to be discretionarily entertained. But, as also noted in prior briefing, discretionary remand is a rare and exceptional remedy, *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976), that case law implores only be exercised only fleetingly and in extraordinary circumstances, *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing

*Colorado River*, <mark>424 U.S. at 817</mark>; *Neufeld v. City of Baltimore*, <mark>964 F.2</mark>d. 347, 349 (4th Cir. 1992));

*Cty. Of Allegheny v. Frank Mashuda Co.*, <mark>360 U.S. 185, 188-89</mark> (1959)).

There is nothing about the Paret Adversary that suggests circumstances so rare and extraordinary as to justify or warrant "[a]bdication of the obligation to decide cases," *Cty. Of Allegheny*, <mark>360 U.S. at 188-189</mark>, when, to the contrary, case law is manifest that bankruptcy courts are to assume jurisdiction over "arguable property" unless and until a debtor or trustee's argument concerning such "arguable property" is defeated by final adjudication. The Plaintiffs are, in essence, asking that the disposition of "arguable property"—assets that, by legal definition, presumptively belong to Mr. Paret's estate—be permitted by the Superior Court. And such a contention is simply without any support in governing law.

Perhaps that absence of legal support is why the topical briefing of the Plaintiffs is a scant three paragraphs. Perhaps that absence of legal support is why the Plaintiffs veered off topic and harped so firmly on the JPK bankruptcy. And perhaps that absence of legal support is why the Plaintiffs have assumed the strange position of essentially advocating for the Webster Defendants in connection with the Paret Adversary. Regardless, however, that absence of legal support is dispositive of the Motion to Remand: this case properly belongs in this Honorable Court.

## III. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion to Remand; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

7

Respectfully submitted,

Dated: December 4, 2024    By:   /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig, Esq.
                                   Bar No. MD18071
                                   The VerStandig Law Firm, LLC
                                   9812 Falls Road, #114-160
                                   Potomac, Maryland 20854
                                   Phone: (301) 444-4600
                                   mac@mbvesq.com
                                   *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of December, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                   /s/ Maurice B. VerStandig
                                   Maurice B. VerStandig

8

GREENSTEIN DELORME & LUCHS, P.C.
James D. Sadowski (DC Bar #446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax (202) 452-1410
Emails: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC*
*and 423 Kennedy St Holdings LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## RUSSELL DRAZIN'S MOTION FOR SUMMARY JUDGMENT

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423

Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion for Summary

Judgment on Claims Against Russell Drazin ("Motion") [ECF No. 7].  For convenience, the

Borrowers will refer to Mr. Drazin as the "Trustee".

The Court should deny the Motion because:  (a) two Superior Court judges have already

determined that the Borrowers have sufficiently pled claims against the Trustee and those prior

decisions constitute the law of the case; (b) the Trustee failed to address the causes of action that

were asserted against him for declaratory judgment; (c) the sole affidavit filed by the Trustee in

support of the Motion is facially deficient and relies upon inadmissible hearsay; (d) multiple

material disputes of fact exist; and (e) the Motion is premature, as the Borrowers have not had

the benefit of full discovery.  The Borrowers have included a Declaration of Mel Negussie

("Negussie Decl.") in further support of this Opposition.

I.      BRIEF PROCEDURAL AND FACTUAL BACKGROUND

A.      The Consolidated Action

This action involves two consolidated cases, Case No.: 2022-CAB-005935 and Case No.:

2023-CAB-004260, (collectively, the "Consolidated Action") that deal with common issues of

fact, similar loan documents, similar events and transactions underlying the disputes in each

case, and nearly all of the same Defendants.[1]  The Borrowers, respectively, entered into

construction finance loans that were later financed.  Negussie Decl. ¶¶ 6-7.  WCP Fund is the

---

[1]      Borrowers note that SF NU, LLC remains a defendant only in Case No.: 2022-CAB-005935.
Defendants, DP Capital, LLC d/b/a Washington Capital Partners ("DP Capital"), the WCP Fund I,
LLC ("WCP Fund"), Danuel Huertas ("Mr. Huertas"), and the Trustee are defendants in both cases
in the Consolidated Action and are hereinafter referred to collectively as "Defendants."

lender under the relevant loan documents.  *Id.*  In the Consolidated Action, the Borrowers

maintain that the Defendants, including the Trustee, have committed wrongdoing under the loan

documents in their joint effort to sabotage a refinancing of the loans.  As for the Trustee, the

Borrowers have asserted three separate causes of action against the Trustee for:

1) Injunctive Relief – to prevent the Trustee (and the Defendants) from
foreclosing under the deeds of trust;

2) Breach of Fiduciary Duty – based on the Trustee's admitted conflict of
interest and his failure (and inability) to faithfully execute his duties to the
Borrowers under the deeds of trust given his admitted conflict of interest;
and

3) Declaratory Judgment – that the Trustee cannot serve as trustee under the
deeds of trust and that the foreclosure notices issued by the Trustee in June
of 2023 are invalid.

The Defendants removed the Consolidated Action to this Court from the Superior Court of the

District of Columbia on July 4, 2024.[2]

The Borrowers seek to prevent the Trustee from foreclosing on the properties they own

until all of their claims have been decided and to prevent the Defendants from wrongfully

executing on the powers of sale included in the loan documents.  The Borrowers also seek to

hold the Trustee liable for the damages caused by his breach of fiduciary duties.  The Trustee

makes two limited arguments in support of the Motion:  (a) that the Borrowers have suffered no

damages because the foreclosures were enjoined; and (b) that a Trustee can rarely be sued for

breach of fiduciary duties because a Trustee primarily performs ministerial acts.  As explained

below, each of these arguments lack merit, both factually and legally.

---

[2]   The Borrowers continue to contend that the Consolidated Action case was improperly
removed, with removal in large part based upon a bad faith, manufactured bankruptcy case filed by
JPK NewCo, LLC (24-00262-ELG), and that this case should be remanded to the Superior Court.
The Motion itself demonstrates that a primary reason, if not *the* primary reason, the Defendants
removed this case was to try to have this Court revisit and reverse prior adverse decisions that had
been made against them.

3

## II.    THE MOTION FOR SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law."  *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983).  In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.*  The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Rule 56 of the Federal Rules of Civil Procedure provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56.

## III.    LEGAL ARGUMENT

### A.    The Law of the Case Doctrine Bars the Trustee from Trying to Relitigate Issues That Have Already Been Decided by the Superior Court.

The law of the case doctrine generally discourages litigants from attempting to relitigate issues already determined in the same case.  *See Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) (applying the doctrine after explaining that "[t]he doctrine of law of the case conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single question.'").  The doctrine of law of the case generally means that "the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (1996) (emphasis in original).  In the Motion, the Trustee asks this

4

Court, without so stating, to disregard and effectively overturn multiple prior decisions of the Superior Court. The Trustee, however, has failed to allege error in those decisions or any exceptional circumstances that would allow this Court to either reexamine or reverse those prior decisions. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000) (The 9th Circuit explained the District Court may revisit "decisions entered by another judge in the same case if there are cogent reasons or exceptional circumstances.").

The fact that Defendants removed this case does not alter the applicability of the law of the case doctrine. It is well-established that federal courts may apply the doctrine of law of the case to follow state court decisions entered prior to removal. *See, e.g., Bowrin v. District of Columbia*, 2023 U.S. Dist. LEXIS 229958, at *19 (D.D.C. Decl. 28, 2023) (recognizing that courts have invoked the doctrine of law of the case to follow decisions by state courts prior to removal and choosing to do the same after observing that "[w]hile this Court's independent review may have produced a different outcome . . . the Superior Court's conclusion is reasonable."); *Pac. Emplrs. Ins. Co. v. Sav-A-Lot*, 291 F.3d 392, 398 (6th Cir. 2002) (explaining that "[t]he doctrine [of law of the case] also has relevance to rulings made by state courts prior to removal."); *Piekarski v. Home Owners Sav. Bank, F.S.B.*, 759 F. Supp. 542, 544 (D. Minn. 1991) (observing that "[u]pon removal, the federal court must treat all state court rulings as if they had occurred in federal court.").

B.   The Prior Decisions that the Trustee Impermissibly Seeks to Relitigate.

Three specific Orders are most relevant to the law of the case doctrine. First, the Superior Court already found that the claim for injunctive relief against Mr. Drazin was adequately pled by the Borrowers. Second, with regard to 423 Kennedy, the Superior Court already determined that the Trustee has a conflict of interest and that, consistent with DC law, the Trustee now has burden to show that he acted faithfully in carrying out his fiduciary duties to

the Borrowers and the transaction. This is a burden that the Trustee has not met in the Motion.

Third, as with 423 Kennedy, with regard to Developer RE1, the Superior Court granted similar

relief in enjoining the Defendants in that case, including the Trustee, from proceeding with a

foreclosure.

                1.      <u>The April 7, 2023 Order</u>

          On January 26, 2023, the Trustee (with his co-defendants) sought dismissal of

Case No. 2022-CAB-005935, including the cause of action for injunctive relief, by filing a

Motion to Dismiss. With their Motion to Dismiss, Defendants argued that injunctive relief was

not a viable cause of action. On April 7, 2023, the Honorable Ebony M. Scott issued an Order

*denying* the Motion to Dismiss (the "April 7, 2023 Order"). A copy of the April 7, 2023 Order,

as it is defined below, is attached hereto and incorporated herein as Exhibit 1. Developer RE1

subsequently filed a Second Amended Complaint in Case No. 2022-CAB-005935 that primarily

added claims against Mr. Drazin, to which the Trustee filed an Answer on April 2, 2024,

apparently recognizing that Judge Scott was likely not going to grant a new motion to dismiss.[3]

Perhaps realizing the futility of his prior assertions, the Trustee now relegates the s*ame argument*

on injunctive relief to a footnote. Motion at 7, n. 4. The Motion should be denied as the April 7,

2023 Order constitutes the law of the case, the causes of action for injunctive relief have been

sufficiently pled, and the Trustee has failed to set forth any basis for reversing this prior decision.

---

     [3]    The Borrowers note that the Trustee also responded to the Complaint (in Case No. 2023-
CAB-004260) with an Answer filed on September 3, 2023.

2.     The July 24, 2023 Order

On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive, twenty-wo page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 2. In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their burden by establishing a likelihood of success on the merits." *See* TRO Order at p. 17. Judge Lee also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that when the Trustee acted as counsel to WCP, this created a conflict. *See* First TRO Order at pp. 16-17. Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee." *Id* at p. 17. As a result of Judge Lee's determination, the Trustee bears the burden of demonstrating he faithfully executed his fiduciary duties to the Borrowers, something he has not done in the Motion -- and likely cannot due given his ongoing conflict of interest and the disputed facts here.

3.     The August 15, 2023 Order

On August 15, 2023, Judge Scott entered a Hearing Order by which she, among other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 3. In the Second TRO Order, Judge Scott came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record demonstrates that the *Defendants* 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *See* Second TRO Order at p. 4 (italic emphasis added). Pursuant to the Second TRO Order, Judge Scott ordered that the Defendants, including the Trustee, "must immediately stop taking any action to foreclose on the Property [owned by Developer RE1] pending further order of this Court." *Id*. at p. 5.

These three prior decisions, which were made after either extensive briefing, oral arguments, two evidentiary hearings, or some combination of those things, should not be revisited under the law of the case doctrine, in particular because the Trustee has not set forth any legal basis for disturbing those prior decisions.  *See e.g., Gabriel v. Weltmer*, 266 F. Supp. 664, 665 (D. Ariz. 1967) (applying the doctrine of law of the case and rejecting defendant's attempt to use "the process of removal to have [the federal court] sit in review of the [state court].").

C.  The Trustee's Assertions in the Motion Further Demonstrate Why His Removal is Appropriate.

The Trustee relies heavily upon *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194 (D.C. 1980) in support of his Motion.  Motion at 10 (citing *Perry).*  In *Perry*, an individual sought to set aside a foreclosure sale *after* it had occurred.   *Perry,* 412 A.2d at 1196.  The *Perry* Court observed that the individual did not allege "fraud, misrepresentation, self-dealing, or other overreaching by the trustees (or of related benefit to the noteholder)."  *Id*. at 1199.  Unlike the facts here, the individual in *Perry* did not allege she was not in default at the time of the foreclosure sale, or that the lender had ginned up defaults after the fact as a pretext.  The Borrowers here expressly allege that the Trustee acted as counsel to the Defendants to manufacture defaults after-the-fact as a pretext to support each of the Notices of Default.  *See generally* Developer RE1's Second Am. Compl. at ¶¶ 81-86 and 423 Kennedy's Compl. at ¶¶ 88-93.  The Borrowers further allege that the Trustee was dominated by the lender and acted at all times as counsel to the lender rather than as trustee under the loan documents in breach of his fiduciary duties to them.   *See, e.g.,* Developer RE1's Second Am. Compl. at ¶¶ 151-53; *see also Sheridan v. Perpetual Bldg. Asso.*, 322 F.2d 418, 422 (D.C. Cir. 1963) (trustees found liable where they showed "callous indifference to" the borrower's rights and "continual consultation

8

401

with, if not dominance by" the lender). Specifically, the Borrowers' position here is that the Trustee sought to proceed with foreclosures knowing that he had an irreconcilable conflict of interest and that most of the pretextual defaults that he initially asserted (as counsel for the Lender) had either been cured of were of a de minimis nature. Two different DC Superior Court judges have already determined that the Trustee's actions here constitute legally actionable misconduct, and that the Borrowers here are likely to prevail on their claims. One Superior Court judge also found that the Trustee has the burden to demonstrate that he faithfully upheld his duties to act in fairness to the Borrowers and the transactions, not just to the demands of the Lender. Moreover, contrary to the Trustee's position in the Motion, the Borrowers have alleged that the Trustee has a financial incentive to inflate the amounts that are claimed to be due. *See* Developer RE1's Second Am. Compl. at ¶ 80 and 423 Kennedy's Compl. at ¶ 96.[4]

It is well-established that "[w]hen it is shown that a fiduciary has conflicting interests, ancient principles require him to bear the burden of proving that he has been faithful to his trust." *Sheridan v. Perpetual Bldg. Asso.,* 299 F.2d 463, 465 (1962). The Motion does not meet that burden, and sidesteps the fact that to prevail here, the Trustee has the affirmative burden to prove that he faithfully upheld his duties to act in fairness to the Borrowers and the transactions. A Motion supported by an Affidavit that does not address those factual issues at all, and that is not based upon the personal knowledge of the Trustee does not cut it. *See* Part C, *infra.*

D.  The Motion Fails to Address the Declaratory Judgment Counts.

In the Motion, the Trustee requests dismissal of *all* counts against him, but he did not address at all the declaratory judgment claims. The Trustee's assertions in the Motion actually further illuminate why declaratory relief is appropriate. The Trustee asserts that as a result of the

---

[4]  Both operative Complaints are in the record from the Superior Court filed at ECF 1-2.

claims against him, he has been "sideline[d]…from serving as litigation co-counsel" in the instant action. Motion at 3. The Trustee also takes issue with what he refers to as the Borrowers' contention that the Trustee had a duty "to act as some variety of an arbiter or third-party neutral." Motion at 7. The Trustee also suggests, without any proof, that there is some nefarious reason for why he was sued. *Id.*

The Trustee's assertions further demonstrate that he has always been acting as attorney to WCP and the WCP Fund rather than as Trustee under the deeds of trust. The factual finding that the Trustee had a conflict of interest has already been made, and the Defendants did not contest that fact at either of the TRO hearings. While the Trustee argues that he does not need to function as a neutral in dealing with the Borrowers, it is well-established that a trustee has a duty to act in an impartial manner with regard to *both* the borrower and the lender. *See Nat'l Life Ins. Co. v. Silverman*, 147 U.S. App. D.C. 56, 454 F.2d 899, 915 (1971) ("Trustees under deeds of trust also have the duty to act for the benefit of both parties, borrower as well as lender, and to be impartial."). That the Trustee would suggest that, but for this lawsuit, he would be acting as litigation counsel, further illuminates his ongoing conflict interest exists that requires his removal as trustee.

E.    The Motion is Not Supported by Admissible Evidence.

Under the law, the burden of proof here is on the Trustee. Therefore, he is required, at a minimum, to set forth admissible evidence to prove that he faithfully carried out his duties to the Borrowers and the transactions, and that there are no material facts in dispute as to that issue. Despite this burden, the Trustee has failed to submit a single piece of admissible evidence regarding the actions he allegedly took in relation to upholding his fiduciary duties, as required. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The factual support

10

for the Motion is entirely based upon the Affidavit of Daniel Huertas, which is not based upon

personal knowledge, but inadmissible hearsay and the arguments of counsel, which are not

evidence. *Barnette v. Ridge*, 2004 U.S. Dist. LEXIS 27546, at *18 n.6 (D.D.C. Nov. 15, 2004)

(noting that the "mere arguments of counsel" to the contrary are not evidence). An affidavit in

support of a motion seeking summary judgment must be made on personal knowledge. *See* Fed.

R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated.").

Mr. Huertas' Affidavit is not made on personal knowledge. Instead, Mr. Huertas asserts

that he is "familiar with" the efforts taken with respect to the foreclosure sales – information that

he could not have personal knowledge about unless he was sitting next to Mr. Drazin when each

of the described actions were taken. Mr. Huertas's Affidavit is entirely based upon inadmissible

hearsay – either what Mr. Drazin told Mr. Huertas or what Mr. Drazin sent to Mr. Huertas -- so

that affidavit cannot be relied upon in support of a summary judgment decision. *See, e.g.,*

*Richardson v. District of Columbia*, 522 A.2d 1295, 1298 (D.C. 1987) (reversing the trial court's

granting of summary judgment after concluding that the affidavit submitted with the motion for

summary judgment was not based on personal knowledge, contained "patent hearsay," and was

inadequate to support the motion). More importantly, nowhere in his Affidavit does Mr. Huertas

mention, much less prove, that Mr. Drazin "at all times" faithfully complied with his fiduciary

duties to the Borrower and the transactions. This defect is fatal to the Trustee's request for

summary judgment at this stage.

    F.    <u>There Are Material Facts in Dispute.</u>

Regarding the purportedly undisputed facts set forth by the Trustee, the Borrowers

respond as follows:

As for No. 6 of the facts the Trustee claims are not in dispute, this fact is in dispute.  The
Borrowers dispute that they were "habitually" late in making payments on their respective
promissory notes and that both Borrowers allowed "senior liens" to accrue.  By December 8,
2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents
referenced herein.  Negussie Decl. ¶ 9.  Developer RE1 also presented evidence at the TRO
Hearing showing that the lender's own records did not list the loans in default status when the
Notices of Default were sent.  *See* Exhibit 4 (Exhibit S from the Developer RE1 TRO Hearing
showing that both loans for Developer RE1 were listed as "current").  Finally, at his deposition
on July 19, 2023, Mr. Huertas was confronted with the lender's loan records for Developer RE1
and was unable to identify what loans were current and what loans were not current.  *See* Exhibit
5 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could
not identify any specific reasons how Developer RE1 was in default, and confirming that the
lender's records did not list a "default" status until February 1, 2023).

The Trustee contends the Borrowers have not been damaged as a result of his actions
solely because the foreclosures have not yet occurred.[5]  Under the Trustee's incorrect damages
theory, the Borrowers would be forced to wait until the Trustee goes through with a foreclosure
before asserting causes of action against him.  There is no factual or legal basis for this
contention.  The Borrowers *have* already suffered damages as a result of the Trustee's
misconduct that includes damages caused by their inability to refinance the loans, rising interest
rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the
projects.  Negussie Decl. ¶ 13.  There will also be damages for the increased costs to complete
the projects as a result of supply chain shortages and inflation.  *Id.*  To top it off, due to nearly all

---

[5] Defendants previously raised this same argument which was rejected with entry of the April 7, 2023
Order in the Superior Court.

of those factors and a now depressed sales market, there is very little chance that either project
will result in a profit. *Id.* at ¶ 14. As to 423 Kennedy, there are also likely damages to the
building because it has been vacant and open to environmental elements. *Id.* Both Borrowers
have also incurred carrying costs, such as property taxes, insurance, and payments to vendors.
Both Borrowers have also suffered reputational damages. *Id.*

To protect their rights under the loan documents, the Borrowers were forced to take legal
action. Negussie Decl. ¶ 12. As a result, the Borrowers have incurred and continue to incur
attorneys' fees and costs. Negussie Decl. ¶ 13. The Borrowers dispute that the Trustee has acted
faithfully to his duties as Trustee since December of 2022. The Borrowers believe the Trustee
has acted as counsel for WCP at all times since December of 2022 rather than as a conflict-free
Trustee under the loan documents. Negussie Decl. ¶ 15.

As for the Trustee's claims that he is somehow being unfairly targeted here, the Trustee
could have easily avoided being implicated in nearly all of the Borrower's claims had he taken
the simple step of resigning as Trustee when the conflict first arose. Instead, the Trustee
"doubled down" and went forward with preparing foreclosure notices and scheduling foreclosure
sales after he knew that he had been sued and was already in serious legal jeopardy.

G.      The Borrowers Are Entitled to Additional Discovery to Oppose the Motion

Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they
cannot present essential facts to justify their opposition, "(1) defer considering the motion or
deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any
other appropriate order." Fed. R. Civ. P. 56(d). There are a variety of facts, documents, and
information that the Borrowers are entitled to discover that would further support the Borrower's
opposition to the Motion, such as:

13

406

- When the Trustee realized that he had a conflict of interest and whether he conducted any research on that issue;

- Complete records and communications related to the Notices of Foreclosure Sale of Real Property or Condominium Unit that the Trustee recorded (for example, did the Trustee vet those documents with the other Defendants);

- What the Trustee claims to have done (and not done) in order to faithfully execute his fiduciary duties to the Borrowers and the transaction;

- Records and information showing all payments the Trustee received from any of the Defendants (in his capacity as Trustee);

- All records and communications related to the Default Notices and how the Trustee contends he can comply with his fiduciary duties when he is bound to follow (as counsel) the instructions of his clients;

- Records of all commissions or other payments the Trustee received related to the deeds of trust including, but not limited to, the advertisement in the Washington Post;

- An explanation regarding how the Trustee could possibly faithfully execute his duties to the Borrowers and the transaction once he realized that a conflict of interest arose;

- Whether the Trustee was in continual consultation with the lender and was dominated by the lender;

- The length of the Trustee's relationship(s) with the Defendants and what disclosures, if any, the Trustee asserts were made to the Borrowers regarding such relationship(s).

Negussie Decl. ¶ 16.

As of the date this case was removed, the Trustee (and other Defendants) had failed to comply with discovery by, among other things: refusing to answer multiple interrogatories; refusing to allow his deposition to be taken (as Trustee); refusing to produce legal invoices; redacting legal invoices that were produced without explanation; and failing to produce any form of a privilege log. The evidence gathered thus far demonstrates that the Trustee always acted as

407

attorney to the lenders rather than as trustee under the loan documents, resulting in damages to the Borrowers.

At this stage, and because there is already no doubt that there are multiple material facts in dispute, the Court should give the Borrowers the opportunity to conduct further discovery. *See Travelers Indem. Co. v. United Food & Commer. Workers Int'l Union,* 770 A.2d 978 (D.C. 2001) (noting that Rule 56 (f) allows the Count to deny a motion for summary judgment to permit discovery "if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion."); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (a motion for summary judgment should be denied "when the non-moving party has not had the opportunity to discover information that is essential to his opposition.").  The Borrowers are entitled to complete discovery regarding many issues, such as the Trustee's conflicting roles here, what actions, if any, the Trustee took to comply with his fiduciary duties to the Borrowers and the transactions, his financial interests in the transactions, and why he did not resign as trustee given the conflict of interest.  This information would likely provide further reasons for why the Motion should be denied.

IV.   CONCLUSION

There are multiple reasons why the Court must deny the Motion.  For these reasons, and for any reasons that may be advanced at a hearing on the Motion, the Plaintiffs, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Motion.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  January 17, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ebm@gdllaw.com |
          ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
  and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of January, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendant Russell Drazin's Motion for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: <br><br>    CHARLES PAXTON PARET, <br><br>    *Debtor.* | Case No. 23-00217-ELG <br><br> Chapter 7 |
| DEVELOPER RE1 LLC, <br><br>    *Plaintiff,* <br><br> v. <br><br> DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, <br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC, <br><br>    *Plaintiff,* <br><br> v. <br><br> DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, <br><br>    *Defendants.* | |

## DECLARATION OF MEL NEGUSSIE

I, Mel Negussie, am over 18 years of age, have personal knowledge of the facts set forth herein, and declare as follows:

1. 423 Kennedy St Holdings, LLC ("423 Kennedy") is a domestic, sole purpose, limited liability company that owns the real property known as 423 Kennedy, N.W., Lot 56, Square 3260 (the "423 Kennedy Property").

2. Developer RE1, LLC ("Developer RE1") is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "5501 1st Street Property").

3. I am a member of both Developer RE1 and 423 Kennedy.

4. The sole purpose of 423 Kennedy is to own and develop the 423 Kennedy Property.

5. The sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

6. In January of 2020, DP Capital LLC d/b/a Washington Capital Partners ("WCP") helped 423 Kennedy obtain a construction finance loan for the 423 Kennedy Property, which original loan was later refinanced. WCP Fund I, LLC ("WCP Fund") is the lender under the loan documents.

7. On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the 5501 1st Street Property, which original loan was later refinanced. WCP Fund is the lender under the loan documents.

8. The loan documents referenced in paragraphs 6 and 7 above were documents prepared by the Trustee that 423 Kennedy and Developer RE1 were not allowed to modify.

9. By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein.

10. On December 8, 2022, I received two unsigned Notices of Default by email, one regarding the 5501 1st Street Property and the other regarding the 423 Kennedy Property. Neither Notice of Default set forth a default. The email also included Payoff Statements. The

2

Payoff Statements demanded additional amounts of $727,598.77 (for Developer RE1) and $1.5 million (for 423 Kennedy) for "Default Interest" and "Default Penalt[ies]."

11.     After receiving the Notices of Default, I immediately called Mr. Huertas who told me to contact WCP's counsel, the Trustee.

12.     As a direct result of the wrongful conduct of the Trustee, Developer RE1 and 423 Kennedy were forced to initiate legal action to protect their rights under the loan documents referenced herein.

13.     The Borrowers have already suffered damages as a result of the Trustee's misconduct to include damages caused by their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects.  There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation.  As to 423 Kennedy, there are likely damages to the building at the 423 Kennedy Property because it has been vacant and open to environmental elements.  Both Borrowers have incurred carrying costs, such as property taxes, insurance, and payments to vendors.  Both Borrowers have suffered reputational damages.  I have personally fielded questions from other developers and financers about why the projects at the 423 Kennedy Property and the 5501 1st Street Property were not completed.

14.     Due to nearly all of the factors listed above, and a now depressed sales market, there is very little chance that either project will result in a profit.

15.     The evidence that we have obtained so far shows that the Trustee has acted at all times on behalf of WCP and the WCP Fund as its counsel rather than as trustee under the loan documents referenced herein.

3

16.     Developer RE1 and 423 Kennedy seek to discover information and documents as
to the Trustee's actions in relation to his duties under the loan documents referenced herein to
include the following:

- When the Trustee realized that he had a conflict of interest and whether he
  conducted any research on that issue;

- Complete records and communications related to the Notices of
  Foreclosure Sale of Real Property or Condominium Unit that the Trustee
  recorded (for example, did the Trustee vet those documents with the other
  Defendants);

- What the Trustee claims to have done (and not done) in order to faithfully
  execute his fiduciary duties to the Borrowers and the transaction;

- Records and information showing all payments the Trustee received from
  any of the Defendants (in his capacity as Trustee);

- All records and communications related to the Default Notices and how
  the Trustee contends he can comply with his fiduciary duties when he is
  bound to follow (as counsel) the instructions of his clients;

- Records of all commissions or other payments the Trustee received related
  to the deeds of trust including, but not limited to, the advertisement in the
  Washington Post;

- An explanation regarding how the Trustee could possibly faithfully
  execute his duties to the Borrowers and the transaction once he realized
  that a conflict of interest arose;

- Whether the Trustee was in continual consultation with the lender and was
  dominated by the lender;

- The length of the Trustee's relationship(s) with the Defendants and what
  disclosures, if any, the Trustee asserts were made to the Borrowers
  regarding such relationship(s).

4

413

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this __17th__ day of January, 2025.

_____

Mel Negussie

414

# EXHIBIT 1

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.      2022-CAB-005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Court Event: Mediation November 16, 2023 at 1:30 p.m.** |
| **Defendants.** | |

### ORDER

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

Page **1** of **2**

416

<u>**Copies via Odyssey to**</u>:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

417

# EXHIBIT 2

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : | |
| **Plaintiff** | : | |
| | : | |
| | : | |
| **vs** | : | <mark>**Docket No. 2023**</mark> **CAB 4260** |
| | : | |
| | : | |
| **DP CAPITAL /D/B/A WASHINGTON** | : | |
| **PARTNERS, ET. AL.** | : | |
| **Defendant** | : | |

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of

Contract (Count 1); tortious interference with business relations (Court II); breach of

duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee

(Count VI). The Complaint also seeks declaratory judgments regarding the meaning

of provisions in the two Deeds of Trusts and a determination that the liquidated

damages provisions are unenforceable because those provisions constitute a penalty

(Count IV). Plaintiff also makes a claim that the trustee cannot serve in that position

because of the existence of a conflict (Count VII). Finally, in Count V plaintiff's

seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count

V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale. On July, 20, 2023

defendants filed an opposition. The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,

plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

419

requested injunction; 2) the likelihood of success on the merits for the underlying; 3) that the balance of injuries favors granting an injunction, and 4) that the public interest would be served by granting the request for an injunction. *Ifill v. District of Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to demonstrate that each of the factors, taken together, weigh in favor of issuing an injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I. Likelihood of Success on the Merits

### A. The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the existence of a valid contract between the parties; 2) an obligation or duty arising out of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute regarding whether there was a valid contract between the parties. The parties do not agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants improperly discontinued performance of the contract by stopping construction draws for the 423 Kennedy Street property (the project). When defendants discontinued construction draws, they knew that plaintiff would not be able to move forward with the project. Shortly after the construction draws stopped, defendant gave notice of default to plaintiffs. Plaintiffs claim that there is no basis for the default because plaintiffs had complied with the terms of both deeds of trust and the reasons advanced by defendants for the default is nothing more than a pretext. According to plaintiff, the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion. Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan. In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property. Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1] Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares. 423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property. According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022. Approximately 50% of the project was completed at the time of the refinancing. The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00. Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy.  According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble.  423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance.  Those payoff statements did not reflect a default or late fees.[3]  On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development.  Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6]  When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin.  On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7]  The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868,969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the

borrower or borrower's affiliates is an Event of Default." Immediately below that

passage, the email referenced the issuance of a District of Columbia Certificate of

Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid

principal, accrued interest, and any other charges would become immediately due and

payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract

claim because defendants' basis for default are a pretext and the stoppage of

construction draws was an improper, purposeful act undertaken by defendant to cause

the default on the loan because plaintiff would not be able to continue with the project

without the construction draws. Once construction draws ceased, plaintiff could not

make interest payments in 2023 and would not be able to make payments necessary

by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on

March 31, 2023 and that plaintiffs had made no payments since the December 2022

interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the

payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the

loan were consistently late each month, 2) of the Certificate of Delinquent Fines

issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs

made no interest payments in 2023 and did not satisfy the loan by the maturity date of

March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street. There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan. Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws. Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws. In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11] Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

 The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022.  Defendants provided notice there would be no further construction draws after October 2022.[13]  In that same email Daniel Huertas inquired about the "status of the payoffs of both loans."  Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14]  The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96.  There is no reference to a construction draw for the second deed of trust.  A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15]  The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022.  Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing.  Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id*, at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced
payments as construction draws. Perhaps some of the most compelling evidence
supporting the fact that the construction draws were part of the contract is that the
payoff statements that reflect the terms of payments between the parties includes a
reference to a construction draw balance that remained due. In addition, Negussie
testified that construction draws were consistently distributed for five or six months
following each request made by plaintiffs with the last payment occurring in October
2022. These facts are sufficient to establish that the parties acted as if the
construction draws were part of the agreement that obligated the parties and that the
parties understood that the construction draws were an essential part of the agreement
because the project could not move forward without those funds being available to
plaintiffs. Defendants argue that the failure of defendants to make construction draws
does not excuse plaintiffs' noncompliance with the second deeds because there was
no requirement for a construction draw on that agreement. Defendants' argument
glosses over the point that both deeds and their commercial counterparts were
identical in almost all respects, were executed at the same time and were part and
parcel of the same objective of the parties: the refinancing and development of the
423 Kennedy Street mixed use project. Too conclude otherwise is to simply ignore
the uncontroverted testimony of Negussie on each of these points and the objective
facts that support that testimony. The testimony further established that the parties
treated the construction draws as a part of the contract and plaintiffs relied on those
terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date.  In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default.  First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments.  It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem.  Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments.  According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current.  Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately.  Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]  As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.
[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the parties and that initial breach caused plaintiff to be unable to make future payments on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate 1) the existence of a valid contractual or other business relationship; 2) the defendant's knowledge of the relationship; 3) intentional interference with that relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279 (D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in November 2022 that plaintiffs were engaged in efforts to refinance the loan. The email exchanges between Negussie and Huertas demonstrates this knowledge. As Negussie testified, defendants provided "clean" payoff statements that were necessary for the completion of the refinancing on two occasions close in time to the Huertas emails and prior to December 2022. The closing with Main Street Bank was scheduled to take place prior to Thanksgiving but was delayed because of the holiday. When the closing was delayed, defendants issued new payoff statements on December 8, 2022 that reflected for the first time the default as well as default interest and penalties that were due. As Negussie testified these new payoff statements would prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were engaged in business relationship with Main Street Bank that included the creation of a term sheet for a new loan. Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank. The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank. The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan. As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere. Defendants have failed to

produce any evidence that would indicate otherwise.

### C. The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale. Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding. There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure. Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee. Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default. According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin. In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022. The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA,* 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994). The trustee has a duty to both the borrower and the lender. Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both. The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

435

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units.  A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project.  As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money.  The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III.  Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant.  The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023.  In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well.  In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action.  As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project.  The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project.  While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

436

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the

rule creates a mandatory imposition of a bond for the protection of the enjoined party

has not been directly addressed by the District of Columbia Court of appeals.  The

local rule is almost identical to the federal version, so federal precedent is instructive.

The circuits are split on this issue and the circuits that have interpreted the rule as

being discretionary have recognized several exceptions to the mandatory language.

The District of Columbia Court of Appeals has suggested that the security

requirement is phrased in mandatory terms with the amount of any bond imposed

being left to the discretion of the trial court.  If the trial court exercises its discretion

to waive the bond requirement, it is important that the trial judge states the reasons for

taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354

A.2d 233, 237 (D.C. 1976).

 Considering the underlying facts discussed in this order, the Court declines to

impose a bond for the following reasons.  First, defendant have not provided any

evidence of what an appropriate bond might be under the circumstances.  While

defendants' counsel made a proffer of what might be appropriate, that proffer was not

accompanied by any direct evidence that would demonstrate that the suggested bond

was rationally related to any potential harm.  Second, plaintiffs testified that they

made payments on the loan through the end of December 2022 even though

defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI.  Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


   July 24, 2023                                  /s/          
       Date                                     MILTON C. LEE, JR.
                                               ASSOCIATE JUDGE


cc:  James D. Sadowski, Esq.
      Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

EXHIBIT 3

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.     2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Event: Remote Mediation Session November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

## <u>HEARING ORDER</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day.  The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

443

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full. As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms. The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements. The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means. Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260. In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

444

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

445

that were necessary for the project to move forward. Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case. This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale. Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing. Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

446

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is **GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies via Odyssey to:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

447

# EXHIBIT 4

448

| Property: | 5501 1st St NW Washington DC 20011-5207 | |
|---|---|---|

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| GRAND TOTAL | $ 362,353.69 |
|---|---|

449



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifgmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i





https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
|---|---|
| Payment Amount: $24,624.51, Due Date: 04/01/2022 | |



https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





<https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy>





https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

5505 1st St NW Washington DC 20011-5207
Payment Amount: $5,410.15, Due Date: 06/01/2022                    Paid ✓



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e

| | |
|---|---|
| **5505 1st St NW Washington DC 20011-5207**<br>Payment Amount: $24,624.51, Due Date: 06/01/2022 | Paid ⊘ |



[https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44](https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44)





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay



5505 1st St NW Washington DC 20011-5207

Payment Amount: $24,624.51, Due Date: 08/01/2022

Paid ⊘



https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





[https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4](https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4)





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7ugcrtu4





https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcutegpdscyz4wj4m





https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e



# EXHIBIT 5

Page 1

1        SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                        CIVIL DIVISION

3      _____

4      DEVELOPER RE1, LLC,

5              Plaintiff,

6          v.                              No.

7      DP CAPITAL, LLC d/b/a WASHINGTON    2022-CAB-005935

8      CAPITAL PARTNERS, et al.,

9              Defendants.

10     _____

11                      DEPOSITION OF

12                      DANIEL HUERTAS

13     DATE:          Wednesday, July 19, 2023

14     TIME:          10:01 a.m.

15     LOCATION:      Greenstein DeLorme & Luchs, PC

16                    801 17th Street Northwest, Suite 1000

17                    Washington, DC 20006

18     REPORTED BY:   Matthew Yancey, Notary Public

19     JOB NO.:       6012872

20

21     PAGES 87-100, 105-222, 251-287 ARE CONFIDENTIAL

22

1    A P P E A R A N C E S

2  ON BEHALF OF PLAINTIFF DEVELOPER RE1, LLC:

3    JAMES D. SADOWSKI, ESQUIRE

4    ALEXANDRIA J. SMITH, ESQUIRE

5    Greenstein DeLorme & Luchs, PC

6    801 17th Street Northwest, Suite 1000

7    Washington, DC 20006

8    jds@gdllaw.com

9    ajs@gdllaw.com

10   (202) 452-1400

11

12  ON BEHALF OF DEFENDANTS:

13   MAURICE B. VERSTANDIG, ESQUIRE

14   The VerStandig Law Firm, LLC

15   1452 West Horizon Ridge Parkway, Suite 665

16   Henderson, NV 89012

17   mac@mbvesq.com

18   (301) 444-4600

19

20  ALSO PRESENT:

21   Mel Negussie, Developer RE1, LLC

22

1           I N D E X

2  EXAMINATION:                    PAGE

3    By Mr. Sadowski            7

4

5         E X H I B I T S

6  NO.      DESCRIPTION          PAGE

7  Exhibit 1   Plaintiff's requests production   73

8  Exhibit 2   Notice of foreclosure         90

9  Exhibit 3   Complaint Developer RE1, LLC   135

10 Exhibit 4   First amended complaint       138

11 Exhibit 5   Email Thread 4:31            155

12 Exhibit 6   Chart Status Reason          165

13 Exhibit 7   Chart Status Reason WCP 0708  176

14 Exhibit 8   Email Thread WCP 0628        258

15

16

     * retained by Mr Sadowski

17

18

19

20

21

22

1           I N D E X (Cont'd)

2    QUESTIONS INSTRUCTED NOT TO ANSWER

3    PAGE          LINE

4    27            19

5    34            6

6    50            15

7    51            10

8    110           12

9    269           8

10   274           8

11

12

13

14

15

16

17

18

19

20

21

22

1         P R O C E E D I N G S

2        THE REPORTER:  Good morning.  My name

3  is Matthew Yancey; I am the reporter assigned by

4  Veritext to take the record of this proceeding.  We

5  are now on the record at 10:01 a.m.

6        This is the deposition of Daniel

7  Huertas --

8        MR. HUERTAS:  Yes, sir.

9        THE REPORTER:  -- taken in the matter

10 of Developer RE1, LLC vs. DP Capital, LLC doing

11 business as Washington Capital Partners, et al., on

12 July 19, 2023, at 801 17th Street Northwest,

13 Suite 1000, Washington, DC, 20006.

14        I'm a notary authorized to take

15 acknowledgments and administer oaths in the District

16 of Columbia.

17        Additionally, absent any objection

18 before the witness is sworn, all parties and the

19 witness understand and agree that any certified

20 transcript produced from the recording of this

21 proceeding:

22        - is intended for all uses permitted

2 (Pages 2 - 5)

1  Q  Is Paragraph 29 true?

2  A  No, it's not true.

3  Q  Okay.  What's not true about it?

4  A  That he didn't make all the payments, it's

5  not true.

6  Q  What payments, as of November 30, 2022, had

7  not been made?

8  A  I don't have the record.  So I can't -- I

9  can't tell you.  I don't have the record.

10  Q  Okay.  Who has that record?

11  A  I don't have the record.

12  Q  I know you don't have the record.  You've

13  told me that now twice.

14  A  Yeah.

15  Q  Who has that record of payments as of

16  November 3, 2022, that there was an unpaid balance due

17  at that time?

18  A  Right.  The servicing department should have

19  that record.  I don't have that record.

20  MR. SADOWSKI:  Okay.  Just can second.

21  Mel, can I have the Post-its?  Okay.

22  //

1  BY MR. SADOWSKI:

2  Q  Paragraph 32, Page 5 of Exhibit 4, is that

3  true?

4  A  Paragraph 32?

5  Q  Paragraph 32, yes.

6  A  Okay.  Let me read it.  No, that's not true.

7  Q  Okay.  What's untrue about it?

8  A  Borrower was in default.

9  Q  And how did the WCP -- how do you know that?

10  A  Borrower was in default.

11  Q  Well, in Paragraph 29, you couldn't tell me

12  whether or not the borrow was in default because you

13  didn't have the records or how much was due.

14  A  Right.

15  Q  So how can you say with confidence that the

16  borrower's in default, under 32, if you don't have the

17  records?

18  A  Borrower's that are not current with their

19  payments are in default.

20  Q  Okay.  So --

21  A  That's a -- not making their -- not making a

22  payment is a form of default.

1  Q  Okay.  So as of November 15, 2022, what

2  outstanding payments were there under the loans?

3  A  Like I said, I don't have the record.

4  Q  So you don't know.

5  A  I can tell you that Mr. Negussie was in

6  default.

7  Q  Now, when you say Mr. Negussie is in the

8  default, do you mean RE1?

9  A  RE1.

10  Q  Okay.

11  A  All of the above.

12  MR. SADOWSKI:  All right.  Okay.  It's

13  two pages.  You're going to need to find us a stapler,

14  Alex.  I don't think you'll have to go far until this

15  stapler arrives.

16  THE REPORTER:  Sure.

17  MR. SADOWSKI:  Are we on No. 6?

18  MR. VERSTANDIG:  There's no Bates on

19  the second page.

20  MR. SADOWSKI:  That's because it's

21  all -- it's all one page.  I'll represent that --

22  MR. VERSTANDIG:  Oh.  It's just 54; got

1  it.

2  MR. SADOWSKI:  -- Exhibit 6 is an

3  enlarged printout of WCP 0054.

4  (Exhibit 6 was marked for

5  identification.)

6  MR. VERSTANDIG:  Thank you.

7  BY MR. SADOWSKI:

8  Q  Daniel, let me know when you're done looking

9  at Exhibit 6.

10  A  Sure.  Go ahead; ask your question.

11  Q  Oh, okay.  What is it?

12  A  It looks like -- I -- I mean, I don't have

13  here the record but payments of the 1 -- RE1, sorry.

14  Q  Okay.  Are you able to read the print on

15  this exhibit?

16  A  I don't have the property address here.  So

17  I'm sorry.  If I don't have a property address or

18  something that can say that to the fact, I cannot -- I

19  can't use this.

20  MR. VERSTANDIG:  I'll stipulate that

21  this is counterintuitively 54, which came first in the

22  production, is the second loan to Developer RE1

Page 166

1 secured by 5501/505 [sic] 1st Street.

2          MR. SADOWSKI:  Is there another one of

3 these for the first loan in the production?

4          MR. VERSTANDIG:  Yeah, I believe it's

5 either 606 or 608 in the production.  If I'm off by a

6 few pages, I am not messing with you for sport; I

7 promise.

8          MR. SADOWSKI:  Same drill for Margaret,

9 thanks.

10          MR. VERSTANDIG:  If it's not 606 or

11 608, look at 806 or 808.  I have the ability to jumble

12 numbers in my mind.

13          MR. SADOWSKI:  It's one of those days

14 of card counting.

15 BY MR. SADOWSKI:

16    Q   Okay.  So as for Exhibit 6, Daniel, your

17 counsel has indicated that he's represented that this

18 is a screen print from the system from the second deed

19 of trust.

20    A   Okay.

21    Q   Do you believe him?

22          MR. VERSTANDIG:  Just to be clear, I

Page 167

1 didn't say "from the system," and if you need me to

2 extrapolate there, I can.

3          MR. SADOWSKI:  All right.  Why don't

4 you just tell Daniel what it is so he knows what to

5 look at?

6          MR. VERSTANDIG:  All right.  I'll

7 represent as follows.  The loan file that was produced

8 in this case for the second loan to Developer RE1

9 includes an Excel sheet that is demonstrative of the

10 payment history on the second loan.  This is a print

11 of that Excel sheet.

12          THE WITNESS:  Okay.

13 BY MR. SADOWSKI:

14    Q   Okay.  Looking at Exhibit 6, can you tell me

15 whether, as of November 3, 2022, there was an overdue

16 payment under the second deed of trust?

17    A   Mr. Negussie was in default starting on

18 July 1st.

19    Q   That wasn't the question.  The question was,

20 looking at Exhibit 6, as of November 3, 2022, what

21 payments under the second deed of trust were unpaid as

22 of that date?

Page 168

1    A   Right.  I'm -- I'm responding based on what

2 I can answer in my role.  I can see that Mr. Negussie

3 was defaulted as of July.

4    Q   Right.  But that's not the question.  The

5 question is, how much money was owed, or was any money

6 owed, as of November 3, 2022?

7    A   I can't -- I can't answer that question.

8 I'm not in the accounting department.  I'm just going

9 to tell you, based on what I see, based on what you

10 presented to me, that Mr. Negussie was in default in

11 July.

12    Q   Okay.  So you can't read this printout and

13 figure out whether or not there was an outstanding

14 amount due under the loan at any date.

15    A   No, I can't.

16    Q   All right.

17    A   I can just tell you, based on what I see

18 here in front of me when Mr. Negussie got in default.

19 Mr. Negussie started being default July.

20    Q   Right.  But when was this notation put in

21 here, "defaulted"?

22    A   As I stated, I'm not in that department.

Page 169

1 You're asking me a question --

2    Q   I'm asking you to look at it right now.

3 What does it say?

4    A   I answered the question.

5    Q   Okay.  Well, I'm looking at it, and I'm

6 looking at the first page.  And the word "defaulted"

7 doesn't appear until February 1, 2023.  Do you see

8 that?  You're not looking at it.

9    A   No, because I answered your question.  You

10 can -- you can ask me 20 different ways --

11    Q   No, you're evading the question.

12    A   No, you can ask me 20 different ways, like I

13 explained to you.

14    Q   On Exhibit 6, when is the first indication

15 that RE1 was in default?  On Exhibit 6, where is it?

16          MR. VERSTANDIG:  Object, but you can

17 answer.

18          THE WITNESS:  I already answer your

19 question.

20 BY MR. SADOWSKI:

21    Q   You didn't answer the question.  Okay.  What

22 date was Developer RE1 noted in default?

43 (Pages 166 - 169)

Page 170

1    A   I'm looking -- I'm looking at the payment,
2   July 14th --
3    Q   Okay.  And under the Servicing Status
4   Category --
5    A   I'm also -- I'm -- sir, I'm speaking.  You
6   said not to interrupt me.
7    Q   You're right.
8    A   I don't interrupt you.  So please, don't
9   interrupt me.
10   Q   Yeah.
11   A   Mr. Negussie has a copy of his promissory
12  notes, and according to the promissory notes and the
13  stipulation of it, as the deed of trust,
14  that's -- he's in default.
15      So I don't have to look at it here.  I just
16  got to look at when the payment was made, July 14.
17   Q   That's not the question.  The question is
18  where on Exhibit 6 does it indicate -- does it use the
19  word "defaulted"?  What date was the first date?
20   A   I don't know how to answer your question.
21  I'm sorry.
22   Q   You can look at Exhibit 6, and you look for

Page 171

1   the word.
2    A   I already told you that Mr. Negussie is in
3   default.
4       MR. VERSTANDIG:  All right.  Hold on.
5   I object to the question.  I won't give a speaking
6   objection.
7       MR. SADOWSKI:  On what basis?
8       MR. VERSTANDIG:  That said --
9       MR. SADOWSKI:  A non-speaking
10  objection, basis?
11  BY MR. SADOWSKI:
12   Q   Where on this document --
13      MR. SADOWSKI:  What's the objection?
14      MR. VERSTANDIG:  Let me finish.  With
15  my objection noted, and if you want -- but let me
16  finish because I think you're going to like where this
17  goes.
18      Mr. Huertas, you can look at the
19  document and indicate, just reading the document,
20  without any external scope of knowledge, where on that
21  document the word "defaulted" first appears, and you
22  can answer that question.

Page 172

1       And I don't have an objection to you
2   answering that question.  Depending on how things get
3   rephrased, I may interpose a different objection in a
4   minute.
5       THE WITNESS:  Right.
6       MR. VERSTANDIG:  But you can indicate
7   where on this document the word "defaulted" first
8   appears.
9       THE WITNESS:  Right.  I see in this
10  document the word "default" appears in one, two -- on
11  the February 1, 2023, payment.
12  BY MR. SADOWSKI:
13   Q   Okay.  And is that also correct -- from the
14  Servicing Status Column?
15   A   Well, that's where --
16      MR. VERSTANDIG:  Can we stipule that
17  doesn't appear anywhere other than the Service --
18      MR. SADOWSKI:  Yeah.  Can I have the
19  witness here just --
20  BY MR. SADOWSKI:
21   Q   I'm talking about this.
22   A   Yeah, that's what I read.

Page 173

1    Q   Servicing Status.
2    A   Right.
3    Q   See that, those words.  Right?
4    A   Yeah, that's what I see.
5    Q   Now, going to the next page, which is the
6   continuation of the spreadsheet --
7    A   Right.
8    Q   -- where does the word "defaulted" first
9   appear on that second page of Exhibit 6?
10      MR. VERSTANDIG:  Hold on.  I don't
11  think it's a continuation.  I think it's just a
12  blowup.
13      THE WITNESS:  Yeah, that's --
14      MR. SADOWSKI:  You might be right.
15  Then I should be looking at the second page.
16  BY MR. SADOWSKI:
17   Q   Okay.  All right.  So the second page of
18  Exhibit 6 is just an enlarged version of the first
19  page.
20   A   Blurry version of the first page.
21   Q   Okay.  All right.  When does the system at
22  WCP start putting in the word "defaulted"?

44 (Pages 170 - 173)

Page 174

1    A    In this specific situation, it says right
2    here.  The "defaulted" word appears on the
3    February 1st payment.
4    Q    Right.  I got that.  But I'm trying to --
5    A    Right.
6    Q    Okay.  Why did it change from -- okay.
7  Let's go back.  Let's go to another question.  Looking
8  at the line right below February 1, 2023, there's a
9  date January 1, 2023.  Do you see that?
10   A    Yeah.  January 1, 2023, I see that.
11   Q    Okay.  And in the Servicing Status, what
12  does it indicate in that column?
13   A    Well, it reads Servicing Status Current.
14   Q    Okay.  So what does that mean, Serving
15  Status Current?
16   A    Well, I can tell you what it says here.  It
17  says "current."  It doesn't mean anything to me.
18   Q    Okay.  Then why --
19   A    It says the word "current."
20   Q    -- do you use the terms "current,"
21  "defaulted," "late," "one to 15 days," "originated"?
22  Why are those terms used on servicing status?

Page 175

1    A    As I stated, this is an internal code for
2  this.  So right now, it says "current."
3    Q    Okay.  Who's in charge of making the codes?
4    A    Nobody's in charge of making the codes.
5    Q    What is your understanding of what
6  the word "current" means?
7    A    Like I said, the -- the coding here is -- it
8  says "current."
9    Q    All right.  That's not the question.  What
10  is your understanding about what the word "current"
11  means?
12   A    That for this specific line, it says that
13  activity is "current."
14   Q    Okay.  So as of January 1, 2023, what, if
15  any, payment due under the loan was not current?
16   A    Except for that specific line, it says
17  "current."
18   Q    Okay.  So as of that date, doesn't that mean
19  that there's no amount owed under the loan?
20   A    For that specific activity, it shows that
21  it's current.
22   Q    Okay, so 7.

Page 176

1       (Exhibit 7 was marked for
2       identification.)
3       THE WITNESS:  What are these ones?
4       MR. VERSTANDIG:  I will stipulate for
5  the record that this is a printout of an Excel sheet
6  with the loan file for the first promissory note that
7  correlates to the first deed of trust where Developer
8  RE1 is obligated on the promissory note and the
9  property situated at 5501/5505 1st Street serves as
10  collateral on the deed of trust.
11   Q    Okay.  Mr. Huertas, what is Exhibit 7?
12   A    It's -- based on what I heard, it's -- it's
13  the first deed of trust for the subject property.
14   Q    And when does the word "defaulted" first
15  appear, in terms of time, on Exhibit 7 in the
16  Servicing Status Column?
17   A    Yeah.  The -- the word "defaulted" appears
18  on Line 2-1-2023.
19   Q    Okay.  And when does the -- word
20  immediately below that is the word "current."  Right?
21   A    Yes.
22   Q    And that indicates a date of January 1,

Page 177

1  2023.  Correct, "current"?
2    A    For that particular activity, correct.
3    Q    Okay.  Now, let's put 6 and 7 kind of next
4  to each other, if you will.
5       There's another column there that says
6  "Status Reason."  Do you see that?  It's the second
7  column from the left.
8    A    Yes.
9    Q    Okay.  As of January 1, 2023, what does
10  Exhibit 6 indicate in the Status Reason Column?
11   A    In which one?
12   Q    Well, doesn't the word "paid" appear there?
13   A    In which line?
14   Q    One, two, three, four -- one, two, three,
15  four, five, six, seven lines down from the top.
16   A    The word -- it says "paid."
17   Q    Okay.  And what does that indicate to you?
18   A    For that activity, it was paid.
19   Q    Okay.  And isn't it true that on Exhibit 6,
20  the word paid appears before every date before
21  January 1, 2023, in the Status Reason Column?
22   A    The word "paid" appears in the other lines,

45 (Pages 174 - 177)

Page 178

1 yeah.

2 Q Okay. And on Exhibit 7, isn't it also true

3 that the word "paid" appears on every line starting

4 with January 1, 2023, going down all the way to

5 December 23, 2021?

6 Isn't that correct that the word "paid"

7 appears in the Status Reason?

8 A The word "paid" appears.

9 Q And those dates there are corresponding to

10 what?

11 A Those dates?

12 Q Yeah. Isn't that a payment due date?

13 A That's a payment due date.

14 Q Okay. So to recap, on Exhibit 6 and

15 Exhibit 7, for every payment due on the date that's

16 listed on those two exhibits from December 23, 2021,

17 through January 1, 2023, it indicates "paid."

18 A The word "paid" appears in those lines.

19 Q Okay. And was RE1, in fact, current on the

20 payments due under the first deed of trust and the

21 second deed of trust as of January 1, 2023?

22 A No.

Page 179

1 Q Okay. What was outstanding as of those

2 two -- okay. Then why, if they were not current --

3 then why doesn't this indicate that?

4 A I cannot tell you how the system was

5 generating that, but the borrower was not current.

6 Q So what was incorrect about it? What's

7 incorrect about all those indications of "paid"?

8 A July payment, as you can see, on both, it's

9 July 14th, borrower was in default in the month of

10 July.

11 Q So what? So why does that change what's

12 listed here as "paid"?

13 A I can't speak about a system that shows

14 that. I can just tell you --

15 Q So your system doesn't work?

16 A I guess not.

17 Q All right. Who is the person most qualified

18 at WCP to answer questions about when amounts are paid

19 and unpaid under RE1's loans?

20 A I think I'm qualified.

21 Q Well, who's the best person? You said

22 before that you didn't know the records.

Page 180

1 A Right.

2 Q You weren't sure.

3 A If you want specific details on accounting,

4 that would be somebody else.

5 Q Who would that be?

6 A My VP of finance.

7 Q Who is that?

8 A Christina Araujo.

9 MR. VERSTANDIG: Alpha, Romeo, Alpha,

10 Uniform, Juliet, Oscar.

11 THE WITNESS: Yeah.

12 BY MR. SADOWSKI:

13 Q Okay. Okay. So let's go back to

14 Paragraph 29 of Exhibit 4.

15 A Which page?

16 Q Sorry, Page 5 of Exhibit 4, Paragraph 29.

17 A Okay.

18 Q And that's the same question that I asked a

19 few questions ago, several.

20 What amounts were outstanding under the RE1

21 first deed of trust or second deed of trust as of

22 November 3, 2022?

Page 181

1 A I don't have the specific amounts.

2 Q Okay. Well, these records here show

3 everything was paid. So if there was something that

4 was unpaid, what was it?

5 MR. VERSTANDIG: Hold on. Objection,

6 the records do not show everything being paid on

7 November 3rd.

8 MR. SADOWSKI: 2022? They show being

9 paid as of January 1, 2023, two months later.

10 MR. VERSTANDIG: You just asked us as of

11 November 3, 2022. This record shows that the payment

12 due November 1st was made on November 9th.

13 MR. SADOWSKI: You're coaching now,

14 Mr. VerStandig. Okay.

15 BY MR. SADOWSKI:

16 Q What amounts on November 3, 2022, did RE1

17 owe under either the first deed of trust or the second

18 deed of trust?

19 A I -- I already told you that.

20 Q What did they owe?

21 A I don't have the amounts.

22 Q You don't know?

46 (Pages 178 - 181)

Page 182

1    A    It's more.  I don't have the amounts.
2  Correct.
3    Q    Okay.  If they owed money as of that date,
4  why isn't it reflected on Exhibit 6 and Exhibit 7?
5    A    That's a report.
6    Q    Okay.
7    A    You just issue a report.
8    Q    So what other reports are there out there
9  that I haven't seen?
10   A    That's the one report that we have.
11   Q    Okay.
12   A    But that's a report that we had for the
13  payments, specific to something, to just one aspect of
14  it.
15   Q    Okay.  When do late charges get posted to
16  the WCP accounting system?
17   A    Late charges are posted, or the system
18  generates a late charge on the 5th.
19   Q    Okay.  Are there any late charges shown on
20  the system printouts in Exhibit 6 and Exhibit 7?
21   A    It shows some late charges.
22   Q    Where?

Page 183

1    A    Line 10/1, 12/1.  I don't know if I'm doing
2  this right.  That's on Exhibit 7.  Look -- are we
3  looking at Exhibit 7 or Exhibit 6?
4    Q    The Late Fee Amount Due Column.
5    A    Yeah.  Which exhibit do you want me to look
6  at?
7    Q    They're both there.  They have the same
8  column.  Right?  So are you talking about this column
9  here, right here with these?  Exhibit 6, it says
10  "523.56."
11   A    It shows two in here for 10/6 and 12/6.
12   Q    Okay.  That's the 523.56 number.
13   A    Yeah.
14   Q    And then on the corresponding Exhibit 7,
15  there's two entries as well on that for 238.02.  Do
16  you see that?
17   A    Mm-hmm.
18   Q    Right?
19   A    Yeah.
20   Q    Were those late charges ever paid?
21   A    I can infer from here that the ACH cleared.
22  So I'm guessing, yes.

Page 184

1    Q    Okay.  All right.  So as of January 1, 2023,
2  what amounts, if any, were owed for late charges as of
3  that date?
4    A    I don't have the specific amount.  I don't
5  have a response to your question.
6    Q    Okay.  Who would be able to answer that
7  question?
8    A    I already give you a name, Christina Araujo.
9    Q    Okay.  All right.  Now, when did somebody at
10  WCP -- oh, well, sorry, strike that.
11       How does the system change from "current" to
12  "defaulted," as it did here on February 1, 2023?
13   A    I cannot tell you for everything, but for
14  this specific situation, I guess it changed on 2/1.
15   Q    Right.  But does someone have to manually go
16  in and click a button and say a "loan is in default"?
17  How does that work?
18   A    I don't know.
19   Q    Will Christina know the answer to that
20  question?
21   A    Maybe, I don't know if she could answer.
22   Q    Who else might know the answer to that

Page 185

1  question?
2    A    I have to ask.  I don't know.  I have to
3  ask.
4    Q    Okay.
5    A    It's a great question for me, too.  I need
6  to figure it out.
7    Q    Okay.  Now, let's go back to Exhibit 4.
8    A    Page?
9    Q    Five.
10   A    Page 5.
11   Q    Now, down to Paragraph 33, I'd ask you to
12  read that and let me know when you're done.
13   A    Okay.
14   Q    Is the information in Paragraph 33 accurate?
15   A    No.
16   Q    What's not accurate about it?
17   A    It is obvious that the developer couldn't
18  secure the financing; otherwise, we wouldn't be here.
19   Q    Okay.  Did you know as of November 15th,
20  when I say "you," did either you or WCP know that RE1
21  was in the process of refinancing a loan with Main
22  Street Bank?

47 (Pages 182 - 185)

1 morning right before the sale.

2 BY MR. SADOWSKI:

3    Q   Okay. And is there a WCP investment

4 vehicle, whether it's an entity or not -- let me take

5 that back.

6    So let's assume we're at the day of the

7 foreclosure. What, in your experience, would WCP do

8 to make sure that it had a buyer prepared to meet the

9 criteria for the foreclosure sale at the foreclosure

10 sale?

11    How do you plan for that? What do you do?

12 Like, do you send somebody there? Do you create a new

13 entity? Those are the kind of questions I'm going to

14 have.

15    A   Right, I understand. For this specific

16 situation, we don't have anything at this time.

17    This happened on Tuesday. So prior to the

18 sale, maybe the night before or the morning of, we'll

19 figure out where we stand and make a determination.

20    Q   And who will be involved in that process,

21 other than any legal counsel?

22    A   I get involved in that process.

1    Q   And who else besides you?

2    A   I do it for the most part. I try not to get

3 involved -- more people, but I do it for the most

4 part.

5    Q   Okay. When there was a foreclosure of

6 2507 I Street -- there was one. Right?

7    A   Yes.

8    Q   Who ended up buying the property at

9 foreclosure?

10    A   The lender took it back.

11    Q   So what? Did the lender buy it, or did the

12 lender create some interim entity to serve as the

13 buyer?

14    A   The lender took it back because there were

15 no bidders at the foreclosure sale.

16    Q   Oh, okay. And of these other properties

17 that you mentioned that were "problematic," I'm just

18 using the term loosely.

19    A   Right.

20    Q   Did Holbrook go to foreclosure?

21    A   I'm sorry. Which one?

22    Q   1262 Holbrook.

1    A   1262 through 1268, again, that property, as

2 I recall, I believe we didn't have any real bidders on

3 the other end.

4    It was a second subject to the first. So

5 some people just -- and then most people don't want to

6 bid on a second trust just because they don't know the

7 nature of the first.

8    Q   Okay. So what are WCP's expectations as to

9 this foreclosure, given that you're foreclosing under

10 the second deed of trust?

11    A   I don't have any expectations; our goal is

12 to get our money back.

13    MR. SADOWSKI: So we're at exactly your

14 five o'clock. We, obviously, didn't finish. I don't

15 know that I can reconvene tomorrow, and I think you'd

16 probably rather work on your --

17    MR. VERSTANDIG: I mean, candidly, I

18 would.    MR. SADOWSKI: Yeah.

19    MR. VERSTANDIG: Hold on. We can do

20 this on the record. It may make sense to assess after

21 Friday anyway.

22    MR. SADOWSKI: Of course, right. So

1 we're going to leave it open. It's not completed

2 because we didn't finish either by time.

3    And then there are also some

4 outstanding document issues that we probably need to

5 address, but we'll agree to reconvene the deposition

6 at a mutually convenient date and time.

7    MR. VERSTANDIG: And for the record, I

8 will cross him at the close of the deposition.

9    MR. SADOWSKI: Okay.

10    THE WITNESS: How many hours did it go?

11    MR. SADOWSKI: Doctor's appointment, my

12 friend, go, go.

13    THE WITNESS: No, I understand.

14    THE REPORTER: Should I take us off?

15    MR. SADOWSKI: Yes.

16    THE REPORTER: We're off the record at

17 5:01 p.m.

18    (Signature waived.)

19    (Whereupon, at 5:01 p.m., the

20    proceeding was concluded.)

21

22

72 (Pages 282 - 285)

Page 286

1    CERTIFICATE OF DEPOSITION OFFICER
2        I, MATTHEW YANCEY, the officer before whom
3    the foregoing proceedings were taken, do hereby
4    certify that any witness(es) in the foregoing
5    proceedings, prior to testifying, were duly sworn;
6    that the proceedings were recorded by me and
7    thereafter reduced to typewriting by a qualified
8    transcriptionist; that said digital audio recording of
9    said proceedings are a true and accurate record to the
10   best of my knowledge, skills, and ability; that I am
11   neither counsel for, related to, nor employed by any
12   of the parties to the action in which this was taken;
13   and, further, that I am not a relative or employee of
14   any counsel or attorney employed by the parties
15   hereto, nor financially or otherwise interested in the
16   outcome of this action

17            MATTHEW YANCEY
18        Notary Public in and for the
19            District of Columbia
20
21
22

Page 287

1    CERTIFICATE OF TRANSCRIBER
2        I, AMY DAMOTH, do hereby certify that this
3    transcript was prepared from the digital audio
4    recording of the foregoing proceeding, that said
5    transcript is a true and accurate record of the
6    proceedings to the best of my knowledge, skills, and
7    ability; that I am neither counsel for, related to,
8    nor employed by any of the parties to the action in
9    which this was taken; and, further, that I am not a
10   relative or employee of any counsel or attorney
11   employed by the parties hereto, nor financially or
12   otherwise interested in the outcome of this action.
13

14
15            AMY DAMOTH
16
17
18
19
20
21
22

73 (Pages 286 - 287)

The order below is hereby signed.

Signed: January 28 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>    Charles Paxton Paret,<br>        Debtor. | Case No. 23-00217-ELG<br>Chapter 7 |
| Developer RE1 LLC,<br>    Plaintiff<br><br>      v.<br><br>DP Capital LLC, *et al.*,<br>    Defendants | Adv. Pro. No. 24-10023-ELG<br>(Cases Consolidated) |
| 423 Kennedy St Holdings LLC,<br>    Plaintiff<br><br>      v.<br><br>DP Capital, LLC, *et al.*,<br>    Defendants | |

## ORDER GRANTING DEFENDANT SF NU, LLC'S MOTION TO DISMISS WITH LEAVE TO AMEND AND DENYING PLAINTIFF DEVELOPER RE1 LLC'S MOTION TO DISMISS DEFENDANT WCP FUND I LLC'S COUNTERCLAIM WITHOUT PREJUDICE

The Court has before it the *Motion to Dismiss* (ECF No. 1-2, p. 1646[1]) (the "Motion to Dismiss") filed by SF NU, LLC (the "Defendant") and the *Motion to Dismiss Defendant WCP Fund I LLC's Counterclaim* (ECF No. 1-2, p. 1655) (the "Motion to Dismiss Counterclaim" and, together with the Motion to Dismiss, the "Motions") filed by Developer RE1 LLC (the "Plaintiff"), and the responses filed thereto. The Court held a hearing on both Motions on January 28, 2024 (the "Hearing"). Upon consideration of the Motions, the responses, the arguments of the parties at the Hearing, and for the reasons stated on the record at the Hearing, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that:

1) The *Motion to Dismiss* (ECF No. 1-2, p. 1646) is **GRANTED**, with leave to amend on or before February 25, 2025. Should a third amended complaint not be filed by February 25, 2025, the case shall be dismissed without further order of this Court.

2) The *Motion to Dismiss Counterclaim* (ECF No. 1-2, p. 1655) is **DENIED**, without prejudice.

3) The Defendants shall have fourteen (14) days after filing of any amended complaint to file an answer or other responsive pleading.

4) A scheduling conference shall be held on April 2, 2025 at 10:00 a.m. by Zoom for government. Parties should contact Gunn_Hearings@dcb.uscourts.gov for Zoom instructions and familiarize themselves with General Order 2024-03, *Order Establishing Hearing Protocols Before Judge Gunn*.


[signed and dated above]

---

[1] The Motion to Dismiss and Motion to Dismiss Counterclaim were originally filed in the Superior Court for the District of Columbia prior to the removal of this matter to this Court and were docketed herein as part of the transfer of the record as part of Exhibit B to the Notice of Removal found at ECF No. 1.

Copy to: All counsel of record.

The order below is hereby signed.

Signed: February 11 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO REMAND

1

Upon review of the Motion for Remand (the "Motion," as found at DE #13) filed by

Developer RE1 LLC and 423 Kennedy St Holdings LLC, the opposition of DP Capital, LLC, WCP

Fund I LLC, SF NU, LLC, Daniel Huertas, Russell Drazin  and JPK NewCo LLC, debtor-in-

possession thereto (the "Opposition," as found at DE #20), arguments adduced at a hearing

thereupon, governing law, and the record herein, it is, by the United States Bankruptcy Court for

the District of Columbia, hereby:

ORDERED, that the Motion be, and hereby is, DENIED WITHOUT PREJUDICE.

I ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*
*and Special Counsel for*
*JPK NewCo, LLC*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET,

    *Debtor.*

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,

    *Defendants.*

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

Case No. 23-00217-ELG

Chapter 7

Adv. Pro. No. 24-10023-ELG

## CONSENT MOTION TO EXTEND TIME TO FILE AMENDED COMPLAINT

Plaintiffs Developer RE1 LLC and 423 Kennedy St Holdings LLC, with the consent of the Defendants, move this Court to extend the deadline for the Plaintiffs to file an amended complaint. In support of their request, the Plaintiffs represent to the Court as follows:

1.    This case involves two consolidated cases that were removed from D.C. Superior Court on July 4, 2024.

2.      At the last motions hearing set in this case on January 28, 2025, the Court

ordered the Plaintiffs to file an amended complaint by February 25, 2025.  ECF # 31.

3.      The Plaintiffs need additional time to prepare the amended complaint in part due

to:  (a) several other emergency litigation matters that arose as a result of recent Executive

Orders; (b) the need to consult with the Plaintiffs as a result of the dismissal of JPK NewCo,

LLC's involuntary bankruptcy case (24-00262-ELG); and (c) because it now makes more sense

to file one combined amended complaint on behalf of both Plaintiffs rather than filing separate

amended complaints that will in large part be duplicative and overlap.

4.      The Defendants counsel has consented to a brief extension of time for the filing

of the amended complaint (to March 5, 2025).

5.      No party will be prejudiced by this brief extension of time.

For cause shown, the Plaintiffs and the Defendants jointly request that the Court extend

the deadline for the filing of an amended complaint to March 5, 2025.  A proposed order is

attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  February 25, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C.  20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Developer RE1 LLC and*
 *423 Kennedy St Holdings LLC*

2

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of February, 2025, a true copy of the foregoing

Consent Motion to Extend Time to File Amended Complaint was filed electronically and a

Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND
## TIME TO FILE AMENDED COMPLAINT

The Court has before it the Motion to Extend Time to File Amended Complaint (the

"Motion to Extend", ECF # 32) filed on February 24, 2025 by Developer RE1, LLC and 423

Kennedy St Holdings, LLC in the above-captioned case.

For cause shown, it is ORDERED that:

1.     The Motion to Extend is GRANTED; and

2.     The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file

an amended complaint is extended until March 5, 2025.

[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423
Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for Defendants*

3

497

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

## END OF ORDER

8161\0002\4918-5323-8303.v1

The order below is hereby signed.

Signed: February 25 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | Adv. Pro. No. 24-10023-ELG |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

8161\0002\4918-5323-8303.v1

**CONSENT ORDER GRANTING MOTION TO EXTEND
TIME TO FILE AMENDED COMPLAINT**

The Court has before it the Motion to Extend Time to File Amended Complaint (the "Motion to Extend", ECF # 32) filed on February 24, 2025 by Developer RE1, LLC and 423 Kennedy St Holdings, LLC in the above-captioned case.

For cause shown, it is ORDERED that:

1.      The Motion to Extend is GRANTED; and

2.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an amended complaint is extended until March 5, 2025.

[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423
Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for Defendants*

3

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

### END OF ORDER

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## THIRD AMENDED COMPLAINT

COME NOW THE PLAINTIFFS, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against

DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas,

Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri.

The Third Amended Complaint includes claims for tortious interference with business relations,

8161\0002\4927-8583-7600.v2
8161\0002\4927-8583-7600.v2

503

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances. The Third Amended Complaint also adds JPK NewCo and Mr. Sariri as Defendants.[1] In support of its Third Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

<u>THE PARTIES</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners". For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5.      The WCP controls the WCP Fund.

6.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012. Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website. Mr. Huertas controls WCP.

---

[1]      Counsel for the existing parties have agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a third amended complaint for Developer RE1 and a first amended complaint for 423 Kennedy.

7.      The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund.  Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.      The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District.  SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850.  For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.      The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.     The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

**The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".**

11.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

> *the highest ethical practices in the industry*, which historically
> have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.     But in reality, the WCP does not have the highest ethical standards.  The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail.

<u>The Ownership of Developer RE1, Its Purpose, and the Property.</u>

13.     Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.     Developer RE1 is partially owned by Mr. Negussie.

15.     Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.     The Lender Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the RE1 Property and the improvements that Developer RE1 made to the RE1 Property.

17.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

<u>The Ownership of 423 Kennedy, Its Purpose, and the Property.</u>

18.     423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the 423 Property.

4

20.     The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24.     Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing. 423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

The Developer RE1 Loan Documents with the WCP and the WCP Fund.

28. As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee. A true copy of the First RE1 DOT was attached to Developer RE1's Complaint as Exhibit A.[2]

29. The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

30. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 DOT before it was signed.

31. On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund. A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's Complaint.

32. The First RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

33. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 Note before it was signed.

---

[2] Counsel for the parties agreed that this Third Amended Complaint can reference the prior complaint exhibits that are already in the record and that there also is no need to attach those Exhibits again to this filing.

6

34. On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee. A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35. The Second RE1 DOT was a form of deed of trust prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37. On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38. The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40. On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41. The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42. The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

7

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

The 423 Kennedy Loan Documents with the WCP and the WCP Fund.

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

8

Drazin as Trustee. A true copy of the Second 423K DOT was attached as Exhibit C to 423 Kennedy's Complaint.

52. The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

53. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second 423K DOT before it was signed

54. On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which was attached to the 423 Kennedy Complaint as Exhibit D.

55. The Second 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

56. The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the Second 423K Note before it was signed.

57. As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58. The new, refinanced loans for 423 Kennedy were set to mature on March 31, 2023.

59. Beginning in April of 2022, the WCP and the WCP Fund started providing construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to closing.

60. The WCP Fund may have assigned its interest in the Second DOT to SF NU in an Assignment of Deed of Trust ("Assignment"). The Assignment lists Mr. Huertas as trustee, but

9

511

has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

61. Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the 423 Property with another lender.

62. As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

63. As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423 Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging the Refinancings of the Loans for Both Properties.

64. On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

65. The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

66. The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

67. On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

10

First 423K Note and to release the First 423K DOT from the Property. A true copy of the

October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint

as Exhibit E.

68.     On or about October 24, 2022, WCP transmitted a Payoff Statement for the

Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under

the Second 423K Note and to release the Second 423K DOT from the Property. A true copy of

the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69.     As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

70.     As of October 24, 2022, there was no allegation made by any Defendant to 423

Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If
They Did Not Accede to His Demands Regarding Another Unrelated
Development.</u>

71.     On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr.

Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas

stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of

the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72.     As of November 3, 2022, there was no allegation made by any Defendant that any

default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the

First 423K DOT, or the Second 423K DOT.

73.     As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

<div align="center">11</div>

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

12

80.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note and to release the First 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

83.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes and deeds of trust.

84.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached as to Developer RE1's Complaint as Exhibit I.

13

86.     WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

87.     None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included any request by any Defendant for the payment of default fees, default interest, or any other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K DOT.

88.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

90.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

14

91.     As of December 7, 2022, Developer RE1 had made all payments due under the

First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in

interest payments to the WCP Fund.

92.     As of December 8, 2022, 423 Kennedy had made all payments due under the First

423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in

interest payments to the WCP Fund.  That interest amount is in addition to prior payments made

by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds,
> Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr.
> Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated
> Project, "Or Else".

93.     On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during

a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were

displeased with how the development of another, unrelated property (located at 2507 I Street,

NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW

will be referred to as the "2507 I Street Project".

94.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the

payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was

associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I

Street Project has "turned out very bad and that the person who lent the money to WCP

("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the

quality of the work done," and that this Investor Lender "is very wealthy and will make life hard

for you", and "has now bought the notes" and another project financed by WCP, and that WCP is

"defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

<div align="center">15</div>

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"

shortfall on the 2507 I Street Project.

96.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"

by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to

the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the

Lender Defendants and the unnamed investor "would make trouble for you on all of your other

projects".

97.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it

was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer

RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated

project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either

Mr. Negussie or to be making threats to any other development project that Mr. Negussie was

involved with.

98.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I

Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent

were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their

loan documents with the WCP Fund.

99.     The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose

limited liability company that is partially owned by Mr. Negussie.

100.    The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop

the 423 Property.

101.    The Lender Defendants knew that there is no legal or other business relationship

between 423 Kennedy and Developer RE1.

<div align="center">16</div>

102.     The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.     The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.     The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.     The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.     The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.     The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.     The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

17

110.     The Lender Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.     The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

112.     The Lender Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

113.     The Lender Defendants knew that the sole purpose of Developer RE1 is to develop the RE1 Property.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 and 423 Kennedy By Improperly Demanding Payment More than $2 Million of "Default Penalties" and "Default Interest" And By Threatening Developer RE1 and 423 Kennedy With Foreclosure.</u>

114.     Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1 Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy Complaint.

115.     The "Notice of Default" sent to Developer RE1 appears to reference the First RE1 DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.    The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K

DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.    Each "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that

the Vice President of the WCP is Christina Araujo.

118.    Each "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.    The lack of a signature on each "Notice of Default" and the failure by the WCP to

include the referenced exhibit with each "Notice of Default" are indications that the two notices

were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.    Each Notice of Default did not contain any legal basis or other explanation for

how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan

documents.

121.    Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts,

states:

> All notices, demands, requests and other communications pursuant
> to the provisions of the Note and this Deed of Trust shall be in
> writing and shall be deemed to have been properly given or served
> for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight
> delivery service or a local courier service, charges prepaid, or three
> (3) calendar days after having been sent by United States
> Registered or Certified Mail - Return Receipt Requested, postage
> prepaid, to the respective addresses as follows:
>
>     (a) If to the Grantor, then to: 1629 K Street, Suite 300,
> Washington DC 20006
>
>     (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200,
> Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

19

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

*See* deeds of trust at pages 17-18.

122. In the deeds of trust, email is not listed as a permissible means to send notice.

123. In the email that transmitted the letters purporting to be default notices under the two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N, respectively.

124. The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M to Developer RE1's Complaint.

125. The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126. In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of the two Payoff Statements that were included with the email transmitting each "Notice of Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

20

127.    The new Payoff Statement sent by WCP for the first loan included a demand that
423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30.
Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423
Kennedy.

128.    The new Payoff Statement sent by WCP for the second loan including a demand
that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty".
Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by
the WCP.

### Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.

129.    After receiving the email with each Notice of Default, Mr. Negussie called Mr.
Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that
Developer RE1 and 423 Kennedy were in default under any loan document.  During that call,
Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr.
Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas
directed someone from the WCP to send the Notice of Default to Developer RE1 and 423
Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of
the loan documents to try to find a reason to justify the Defendants' decision to declare that
Developer RE1 was in default of the loan documents when they each knew, in fact, that there
were no defaults by Developer RE1 under any of its loan documents.

131.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a
cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no
valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were improperly placed in default by the Defendants.

132.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the deeds of trust.

133.    As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower.  Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

134.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

135.    The real reason that the Lender Defendants improperly alleged that Developer RE1 and 423 Kennedy were in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

136.    The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

22

137.    There is a financial incentive for Mr. Drazin to inflate the amounts that are

claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given

that one of the two "commissions" payable to him is based upon "the total amount then due".

_Money is the Root of All Evil._

138.    As a result of their spite, their evil, improper motive, and their greed, the Lender

Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under

the loan documents to try to line their own pockets and to cause as much financial and

reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.    The Lender Defendants also caused WCP to issue a "Notice of Default" to

Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and

prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had

secured, or were in the process of securing, with Main Street Bank.

140.    The Lender Defendants also caused WCP to issue each notice "Notice of Default"

to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1

from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.    The Lender Defendants also caused the WCP to issue the each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU (_i.e.,_ 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.    The Lender Defendants knew that they had no legal right to demand that

Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the

Lender Defendants claimed existed at the 2507 I Street Project.

143.    The actions of the Lender Defendants, which they took acting in concert, were

taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

and its members, and 423 Kennedy and its members.  The Lender Defendants' misconduct is a form of extortion.

>   The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144.    Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146.    Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed

<div align="center">24</div>

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water
claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline
date for these charges has expired" and that "[b]ills must be paid or disputed by their respective
due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,
2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already
expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for
Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for
an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the
Petition for Administrative Hearing were attached to Developer RE1's Complaint together as
Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT,
Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged
Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment
without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual
basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because
cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section
7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas
had requested that he provide for the Lender Defendants.  When asked by counsel for Developer
RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155.    423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156.    Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

26

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December

10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was

recorded as a result of the NOI.  A copy of confirmation of the $1,657.34 payment to the District

was attached to 423 Kennedy's Complaint as Exhibit R.

158.    December 10, 2022 is less than thirty days after November 17, 2022.

159.    On December 11, 2022, the District of Columbia Office of Administrative

Hearings (OAH) vacated the Final Order.  *See* Exhibit S to 423 Kennedy's Complaint.

160.    There are no outstanding fines owed by 423 Kennedy to the District.

161.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis

provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal

from, or to discharge (by payment), any lien filed by the District.

162.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis

for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163.    The deeds of trust each have a Section 7.9 that is identical.  Section 7.9 is part of

the "Events of Default" provisions of the deeds of trust.  Section 7.09 states:

> Other Indebtedness.  Any default under or breach of any document
> or instrument evidencing or securing any indebtedness, obligation,
> or liability of any kind or nature - *other than the Indebtedness and
> the Obligations secured hereby - of Grantor* or any guarantor of
> the Indebtedness, *or any of their affiliates, to Beneficiary,* whether
> now existing or hereafter created or arising, direct or indirect,
> material or immaterial, and whether absolute or contingent, joint,
> several or joint and severally and howsoever owned, held, or
> acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164.    The Lender Defendants apparently claim that Section 7.9 is a cross-default

provision.  A cross-default provision in a contract is a provision that allows a "default" under one

agreement to constitute a "default" under another agreement.

27

165.     In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or

Developer RE1, two conditions must have occurred:  (1) the borrower must be in "default" of

"any document or instrument evidencing or securing any indebtedness, obligation, or liability" to

the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166.     The deeds of trust do not define the term "affiliate."  Under federal banking law,

the term "affiliate" means "any company that controls, is controlled by, or is under common

control with another company."  15 U.S. Code §6809 (6).

167.     There is also no common control of Developer RE1 and 423 Kennedy.

168.     Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169.     Mr. Negussie does not have a "controlling" interest in Developer RE1.

170.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the

Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred

under any of the deeds of trust, even if one of them was actually in "default" of any loan

agreement with the WCP Fund.

171.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover

story, for the actual, improper reason that the Lender Defendants falsely, and improperly,

claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of

trust.

172.     The Lender Defendants have, through their counsel Mr. Drazin, also improperly

claimed, without any legal right or justification that:  "There is no right to cure.  There is no right

to deceleration.  There is no right to reinstatement.  The Loans are in default and are

accelerated."  *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint

(the use of "Loans" appears to be referring to the notes and deeds of trust).

28

173.     The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174.     The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175.     The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176.     The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177.     No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

**Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.**

178.     The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179.     There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180.     If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

29

181.    If any of the Defendants follow through on any scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investments.

182.    The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

183.    The Lender Defendants knew that the First 423K Note and the Second 423K Note list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their improper interference with Developer RE1's and 423 Kennedy's business relations -- right before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the two properties.

184.    As of January 11, 2023, none of the Lender Defendants had sent either Developer RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either the deed of trust.

185.    On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

186.    On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

30

532

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00 p.m. A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as Exhibit T.

187. On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee under the deeds of trust due to his conflict of interest. After receiving that letter, Mr. Drazin refused to resign as Trustee.

<u>423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.</u>

188. The Property owned by 423 Kennedy has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

189. The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

190. Around December of 2022, the Property owned by 423 Kennedy had a current value of $11.9 million.

191. Around December of 2022, the Property owned by Developer RE1 had a current value of $4 million.

192. There was no valid, legal basis under any provisions of the deeds of trust that would have permitted the Lender Defendants to foreclose on the Properties owned by Developer RE1 and 423 Kennedy.

193. The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete construction, and Developer RE1 and 423 Kennedy's refinancing efforts. But for the Lender

31

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP

Fund in full in December of 2022.

194.     The Lender Defendants also deliberately timed their improper interference with

423 Kennedy's and Developer RE1's business relations during the approaching Christmas and

New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close

on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any

refinancing indefinitely so that they can try to foreclose on the properties owned by Developer

RE1 and 423 Kennedy.

195.     The Lender Defendants' conduct shows that they have an evil motive, that they

are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others,

and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights

under the loan documents and under the law.  The Lender Defendants' misconduct and improper

lending practices also constitute outrageous conduct further justifying an award of punitive

damages.

<u>The DC Superior Court Enjoins the Lender Defendants.</u>

196.     On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive,

twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for

Temporary Restraining Order (the "First TRO Order").

197.     In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their

burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee

also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that

when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17.

Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of

demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

<p style="text-align:center">32</p>

198.    On August 15, 2023, Judge Scott entered a Hearing Order by which she, among other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). In the Second TRO Order, Judge Scott came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." Second TRO Order at p. 4 (italic emphasis added). Pursuant to the Second TRO Order, Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking any action to foreclose on the Property [owned by Developer RE1] pending further order of this Court." *Id.* p. 5.

<u>The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then
Engage in Multiple Fraudulent Transfers.</u>

199.    Some of the parties engaged in private mediation in January of 2024, but that mediation (with JAMS) was not successful. The second mediation session on January 25, 2024 was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.    JPK NewCo was formed after the mediation concluded, sometime in early February of 2024. Since its formation, JPK NewCo has conducted no business, it has no employees, it generates no income, it produces no goods, and it provides no services.

201.    On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.    On or about April 15, 2024, SF NU transferred the Developer RE1 loan documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.    This transfers described in paragraphs 201-202 were not supported by any consideration.

33

204.     This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.     The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.     On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.     The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.     The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.     The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.     Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.     Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

34

212.    The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213.    The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214.    The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215.    The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216.    At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217.    JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

35

<div align="center">

COUNT I

TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

</div>

218.    Paragraphs 1-217 of the Third Amended Complaint are incorporated by reference.

219.    423 Kennedy and Developer RE1 were in the process of closing on a refinancing
of their existing loans with Main Street Bank.

220.    The Count I Defendants each knew of the existence of Developer RE1's and 423
Kennedy's business relations with Main Street Bank.

221.    As a result of the Count I Defendants' improper demand that Developer RE1 and
423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could
not obtain a release of the respective deeds of trust on their properties as part of the refinancing
of their loans with Main Street Bank.

222.    As a direct result of the Count I Defendants' direct and continuing interference
with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were
not able to go to closing on the refinancing loans with Main Street Bank.

223.    The Count I Defendants have intentionally interfered with Developer RE1's and
423 Kennedy's development of their properties and their refinancing of the loans with Main
Street Bank without any valid justification.

224.    Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants'
tortious interference with their business relations, and will continue to be damaged if the Count I
Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,
respectfully request that this Honorable Court enter judgment in its favor and against Defendants
WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for:  (a) any and all damages (to be

<div align="center">36</div>

determined) that they have suffered and will suffer as a result of the Count I Defendants'
intentional interference with their business relations (currently estimated to be at least $3 million
for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of
$2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT II
BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

</div>

225.    Paragraphs 1–224 of the Third Amended Complaint are incorporated by
reference.

226.    Every contract in the District of Columbia contains an implied covenant of good
faith and fair dealing.

227.    The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or
SF NU, and/or JPK NewCo.

228.    The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF
NU, and or JPK NewCo. are contracts.

229.    Through their improper conduct, the Count II Defendants have breached the
implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC,
respectfully request that this Honorable Court enter judgment in its favor under Count II against
Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU,
LLC and/or JPK NewCo:  (a) any and all damages (to be determined) that the Plaintiffs has
suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and
fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's
fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

37

</div>

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

230.    Paragraphs 1–229 of the Third Amended Complaint are incorporated by
reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and
the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423
Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are
affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed
does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of
American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing
with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 ⁽7th Cir.1997) ("the law
abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP,
the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late
payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate
a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the
WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain
unenforceable liquidated damages (and other) provisions, which controversy is ripe for
adjudication.

38

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,
respectfully request that under Count III, this Honorable Court declare that: (a) under Section
7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI,
LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b)
any provision of either the deed of trust that allows the lender to declare a default by Developer
RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the
process of being adjudicated), and without providing any notice to the borrower or any
opportunity to cure, and that results in either (i) additional interest and penalties entirely
disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is
unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust
have liquidated damages (and other) provisions that are unenforceable and cannot be used to
support any basis for a foreclosure.

<div align="center">

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE DEEDS OF TRUST AND
ANY FORECLOSURE UNTIL AFTER A TRIAL ON THE MERITS)
Count IV Is Asserted Against All Defendants except Defendant Sariri

</div>

236.    Paragraphs 1–235 of the Third Amended Complaint are incorporated by
reference.

237.    Unless they are enjoined, the Count IV Defendants will continue to improperly
claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

238.    The Count IV Defendants' unethical, outrageous, and illegal conduct, as
described in this Third Amended Complaint, is causing irreparable harm to Developer RE1 and
423 Kennedy.  The properties that Developer RE1 and 423 Kennedy own are unique, and
Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

<div align="center">39</div>

239.     Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240.     If the Count IV Defendants are not all enjoined, they will proceed to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the Count IV Defendants from invoking any remedy under the note and deeds of trust, including, without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any provisions in the notes and deeds of trust that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's claims in the Third Amended Complaint have been decided.

COUNT V
BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241.     Paragraphs 1-240 of the Third Amended Complaint are incorporated by reference.

242.     As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243.     Defendant Drazin knew that he had actual conflicts of interest while serving simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244.     While serving in his role as Trustee under the deeds of trust, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

245.     While serving in his role as Trustee under the deed of trust, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

40

246.     While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.     While serving in his role as Trustee under the deeds of trust, Defendant Drazin has been in continual consultation with, and dominated by, the Defendants.

248.     Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Third Amended Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts of interest.

249.     Due to his actual conflicts of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

## COUNT VI
### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants Except Defendant Sariri

250.     Paragraphs 1-249 of the Third Amended Complaint are incorporated by reference.

41

251.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the deeds of trust.

252.    Due to his conflict of interest as counsel for one or more of the Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds of trust.

253.    Any actions taken by Defendant Drazin as Trustee under the deeds of trust must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to the borrowers under the deeds of trust.

254.    There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

255.    There is an actual and justiciable controversy between Developer RE1and 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that:  (a) Defendant Drazin cannot serve as Trustee under the deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

<div align="center">

COUNT VII
TO SET ASIDE FRAUDULENT TRANSFERS
Count VII is Asserted Against All Defendants except Defendant Drazin

</div>

256.    Paragraphs 1-255 of the Third Amended Complaint are incorporated by reference.

<div align="center">42</div>

257.     The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258.     The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of SF NU and/or the WCP Fund.

259.     The transfers described in paragraphs 201-202 were made without consideration and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange for the transfer.

260.     The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo believed or reasonably should have believed that it would incur a debt beyond its ability to pay that debt when it became due.

261.     The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count VII this Honorable Court:  (a) set aside all fraudulent transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an injunction preventing any further disposition of the loan documents for Developer RE1 and 423 Kennedy until after all claims in this case have been decided.

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Third Amended Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 5, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and*
*423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Third Amended Complaint was filed through eFileDC this 5th day of March, 2025, and a notice of filing should be sent by eFileDC to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

44

# United States Bankruptcy Court
## for the District of Columbia

In re:  Charles Paxton Paret

       Debtor

Developer RE1 LLC, et al.,

       Plaintiff

    v.

Shaheen Sariri, et al.,

       Defendant s

Bankruptcy Case No: 23-00217-ELG

Chapter: 7

Adv. Proceeding No: 24-10023-ELG

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to complain within 35 days.

| Address of the Clerk: | Clerk's Office |
|---|---|
| | U.S. Bankruptcy Court |
| | 333 Constitution Avenue NW |
| | Washington, DC 20001 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and address of Plaintiff's Attorney: | James D. Sadowski |
|---|---|
| | Greenstein DeLorme & Luchs, P.C. |
| | 801 17th Street, NW, Suite 1000 |
| | Washington, DC  20006 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a scheduling conference in this matter will be held in Courtroom 1, United States Courthouse, 333 Constitution Avenue NW, Washington, DC 20001 on   April 2, 2025    at 10:00 am .

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

       Angela Caesar
       Clerk of the Bankruptcy Court

By: _____

_____
Date

       Deputy Clerk

547

# CERTIFICATE OF SERVICE

I, _____ (name), certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this summons and a copy of the complaint was made _____ (date) by:

☐    Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐    Personal Service: By leaving the process with defendant or with an officer or agent of the defendant at:

☐    Residence Service: By leaving the process with the following adult at:

☐    Publication: The defendant was served as follows: [Describe briefly]

☐    State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]                      (name of state)

Under penalty of perjury, I declare the foregoing is true and correct.

_____
Date

_____
Signature

| Print Name |
| --- |
| _____ |
| Business Address |
| _____ |
| City                         State                 Zip |

**United States Bankruptcy Court for
the District of Columbia**

| | |
|---|---|
| In re: Charles Paxton Paret | Bankruptcy Case No: 23-00217-ELG |
| Debtor | Chapter: 7 |
| Developer RE1 LLC, et al | |
| Plaintiff | |
| v. | Adv. Proceeding No:    24-10023-ELG |
| Shaheen Sariri | **Scheduling Conference:** 4/2/2025 at 10:00 |
| Defendant | |

**SUMMONS IN AN ADVERSARY PROCEEDING**

YOU ARE SUMMONED and required to submit a motion or answer to the complaint which is attached to this summons to the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to complain within 35 days.

| Address of the Clerk: | Clerk's Office |
|---|---|
| | U.S. Bankruptcy Court |
| | 333 Constitution Avenue NW |
| | Washington, DC 20001 |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and address of Plaintiff's Attorney: | James D. Sadowski |
|---|---|
| | Greenstein DeLorme & Luchs, PC |
| | 801 17th Street, N.W. |
| | Suite 1000 |
| | Washington DC, DC 20006 |

If you make a motion, your time to answer is governed by Bankruptcy Rule 7012.

YOU ARE NOTIFIED that a scheduling conference in this matter will be held in Courtroom 1 and via Zoom (email Gunn_Hearings@dcb.uscourts.gov for meeting information) on    4/2/2025 at 10:00 AM.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

Angela Caesar
Clerk of the Bankruptcy Court

| 3/17/2025 | By:    /s/ Aimee Mathewes |
|---|---|
| Date | Deputy Clerk |

549

## CERTIFICATE OF SERVICE

      I, _____ (name), certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.  I further certify that the service of this summons and a copy of the complaint was made _____ (date) by:

☐    Mail Service: Regular, first class United States mail, postage fully pre-paid, addressed to:

☐    Personal Service: By leaving the process with defendant or with an officer or agent of the defendant at:

☐    Residence Service: By leaving the process with the following adult at:

☐    Publication: The defendant was served as follows: [Describe briefly]

☐    State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]                       (name of state)

Under penalty of perjury, I declare the foregoing is true and correct.

_____            _____
        Date                                         Signature

Print Name
_____
Business Address
_____
City                         State               Zip

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET, | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP CAPITAL LLC, ET AL, | |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC, ET AL, | |
| *Defendants.* | |

## DEVELOPER REI, LLC'S ANSWER TO COUNTERCLAIM

Plaintiff/Counter-Defendant, Developer RE1, LLC ("Developer RE1"), by undersigned counsel, hereby files its Answer to the Counterclaim filed by the WCP Fund I, LLC ("WCP Fund"). Developer RE1 responds to the allegations of the Counterclaim as follows:

### PARTIES[1]

1.   The allegations of paragraph 1 of the Counterclaim are admitted.

---

[1]   Developer RE1 cites to the subheadings in the Counterclaim for convenience only and not as an admission as to the validity of the terms used or as to the claims that have been asserted.

2.        The allegations of paragraph 2 of the Counterclaim are admitted.

<p style="text-align:center">JURISDICTION AND VENUE</p>

3.        The allegations of paragraph 3 of the Counterclaim state a legal conclusion regarding jurisdiction for which no response is required.

4.        The allegations of paragraph 4 of the Counterclaim state a legal conclusion regarding venue for which no response is required. To the extent a response is required, Developer RE1 denies that venue is appropriate in this Court.

<p style="text-align:center">GENERAL ALLEGATIONS: THE WCP PROMISSORY NOTE</p>

5.        The allegations of paragraph 5 of the Counterclaim are admitted.

6.        In response to the allegations of paragraph 6, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

7.        In response to the allegations of paragraph 7, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

8.        In response to the allegations of paragraph 8, Developer RE1 states that the terms of the referenced promissory note speak for themselves and not as characterized by the WCP Fund. Developer RE1 denies any allegations that are not consistent with the terms of the referenced promissory note.

9.        Developer RE1 denies the allegations of paragraph 9.

10.       Developer RE1 denies the allegations of paragraph 10.

<p style="text-align:center">2</p>

552

11.     Developer RE1 denies the allegations of paragraph 11.

<u>COUNT I – BREACH OF CONTRACT</u>

12.     Developer RE1 incorporates by reference its responses to paragraphs 1-11 of the Counterclaim.

13.     In response to the allegations of paragraph 13, Developer RE1 admits only that the referenced promissory note is considered to be a contract.

14.     Developer RE1 denies the allegations of paragraph 14.

15.     Developer RE1 denies the allegations of paragraph 15.

16.     Developer RE1 denies the allegations of paragraph 16.

17.     Developer RE1 denies all allegations of the Counterclaim that have not been expressly admitted.

<u>FIRST DEFENSE</u>

The claims in the Counterclaim are barred by the doctrine of first breach.

<u>SECOND DEFENSE</u>

The claims in the Counterclaim are barred by the prevention doctrine.

<u>THIRD DEFENSE</u>

The claims in the Counterclaim are barred by the WCP Fund's failure to comply with the duty of good faith and fair dealing.

<u>FOURTH DEFENSE</u>

The claims in the Counterclaim are barred by the WCP Fund's intentional interference with Developer RE1's business relations.

3

FIFTH DEFENSE

The WCP Fund may not have standing the enforce the terms of the referenced promissory note.

SIXTH DEFENSE

The claims in the Counterclaim are barred, in whole or in part, by the WCP Fund's unclean hands.

SEVENTH DEFENSE

The claims in the Counterclaim are barred, in whole or in part, because certain provisions of the referenced promissory note are unenforceable.

EIGHTH DEFENSE

The claims in the Counterclaim are barred, in whole or in part, by the doctrine of recoupment.

NINTH DEFENSE

The claims in the Counterclaim are barred, in whole or in part, by the doctrine of setoff.

WHEREFORE, having fully answered, Plaintiff/Counter-Defendant Developer RE1, LLC respectfully requests that this Honorable Court:

A.      Enter judgment against the WCP Fund I, LLC, on Count 1 of the Counterclaim.

B.      Dismiss the Counterclaim with prejudice;

C.      Award Developer RE1, LLC its costs and attorneys' fees, if allowed by law, incurred in connection with a defense of the Counterclaim; and

D.      Enter such other and further relief as this Court deems just and proper.

4

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 18, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiff Developer RE1, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of Developer REI LLC's Answer to Counterclaim

was filed through eFileDC this 18th day of March, 2025, and a Notice of Filing should be sent by

ECF to all counsel of record in the case.

/s/ James D. Sadowski
James D. Sadowski

5

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

*Table of Contents*

I.      Introduction ............................................................................................................. 1

II.     Standard: Motion to Dismiss ................................................................................ 3

III.    Standard: Motion for Summary Judgment............................................................ 4

IV.     Material Facts Not in Dispute .............................................................................. 5

        a.  Loan Issuance and Funding ...................................................................... 5

        b.  RE1 Defaults ............................................................................................ 6

        c.  423 Kennedy Defaults............................................................................... 8

V.      Plaintiffs' Allegations ........................................................................................ 10

VI.     Argument: Count VII of the Complaint—Seeking to Set Aside a Putative
        Fraudulent Transfer—Should be Dismissed ...................................................... 11

        a.  There is No Contention WCP or SNL are Insolvent ............................. 11

        b.  There is No Cogent Theory of Hinderance, Delay or Fraud................. 13

VII.    Argument: The Complaint Should be Dismissed as Against SNL ..................... 15

        a.  Count II – Breach of the Duty of Good Faith and Fair Dealing ......... 15

        b.  Count III – Declaratory Relief (Breaches) / Count IV – Injunctive
            Relief / Count VI – Declaratory Relief (Mr. Drazin's Services) ........ 17

        c.  Count VII – Fraudulent Conveyance .................................................... 18

VIII.   Argument: Summary Judgment is Proper ........................................................... 18

        a.  The Defendants' Repetitive and Habitual Defaults Bar Relief for
            Tortious Interference (Count I), Breach of the Duty of Good Faith
            and Fair Dealing (Count II), Declaratory Judgment (Count III) and
            Permanent Injunctive Relief (Count IV) .............................................. 18

            i.   Tortious Interference (Count I) ................................................. 20

            ii.  Breach of the Implied Covenant of Good Faith and Fair
                 Dealing (Count II) ................................................................... 21

        b.  Permanent Injunctive Relief (Count IV) is Not a Cause of Action..... 23

ii

c.  Summary Judgment is Properly Entered on the Claim for
    Declaratory Relief ................................................................................... 23

d.  Mr. Drazin Incorporates his Prior Summary Judgment Motion,
    which is Presently Under Advisement .................................................... 25

IX.  Conclusion ........................................................................................................ 25

iii

*Table of Authorities*

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................ 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................ 3

*Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co.*,
2021 WL 1921016 (S.D. Cal. 2021) ....................................................... 5

*Base One Techs., Inc. v. Ali*,
78 F. Supp. 3d 186 (D.D.C. 2015) ........................................................ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 3

*Branin v. TMC Enterprises, LLC*,
832 F. Supp. 2d 646 (W.D. Va. 2011) ................................................... 4

*Browning v. Clinton*,
292 F.3d 235 (D.C. Cir. 2002) ............................................................... 3

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................ 5

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*,
436 F. Supp. 3d 354 (D. D.C. 2020) ...................................................... 3

*Close It! Title Servs. v. Nadel*,
248 A.3d 132 (D.C. 2021) ..................................................................... 20

*Coe v. Holder*,
2013 U.S. Dist. LEXIS 85337 (D.D.C. June 18, 2013) ......................... 23

*Conley v. Gibson*,
355 U.S. 41 (1957) .................................................................................. 3

*Diamond v. Atwood*,
43 F.3d 1538 (D.C. Cir. 1995) ............................................................... 5

*Finard & Co. v. Capitol 801 Corp.*,
1992 U.S. App. LEXIS 23402 (D.C. Cir. Sep. 23, 1992) ...................... 19

*Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*,
2010 WL 2732334 (D. Md. 2010) .......................................................... 4

iv

*Flast v. Cohen*,
  392 U.S. 83 (1968) ................................................................................ 24

*Folksamerica Reinsurance Co. v. Republic Ins. Co.*,
  2004 WL 1043086 (S.D. N.Y. 2004) .................................................... 5

*Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC*,
  2023 U.S. Dist. LEXIS 84754 (D.D.C. May 15, 2023) ........................ 23

*Gordon v. Washington*,
  295 U.S. 30 (1935) ............................................................................... 23

*Guttenberg v. Emery*,
  41 F. Supp. 3d 61 (D.D.C. 2014) .......................................................... 23

*Hais v. Smith*,
  547 A.2d 986 (D.C. 1988) ............................................................... 15, 22

*Holcomb v. Powell*,
  433 F.3d 889 (D.C. Cir. 2006) ............................................................... 5

*HRH Servs., LLC v. Travelers Indem. Co.*,
  2024 U.S. Dist. LEXIS 234196 (D.D.C. Dec. 30, 2024) ...................... 17

*Kemp v. Eiland*,
  139 F. Supp. 3d 329 (D.D.C. 2015) ...................................................... 23

*Kiviti v. Bhatt*,
  80 F.4th 520 (4th Cir. 2023) ................................................................. 24

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ................................................................ 3

*Landow v. Georgetown-Inland W. Corp.*,
  454 A.2d 310 (D.C. 1982) ..................................................................... 18

*Martin v. Santorini Capital, LLC*,
  236 A.3d 386 (D.C. 2020) ..................................................................... 17

*Mayorga v. Merdon*,
  928 F.3d 84 (D.C. Cir. 2019) .................................................................. 5

*Mero v. City Segway Tours of Wash. DC, LLC*,
  826 F. Supp. 2d 100 (D.D.C. 2011) ................................................. 15, 16

v

*Nugent v. Unum Life Ins. Co. of Am.*,
  752 F. Supp. 2d 46 (D.D.C. 2010) ............................................................. 15

*Paul v. Howard Univ.*,
  754 A.2d 297 (D.C. 2000) ......................................................................... 22

*Pueschel v. Nat'l Air Traffic Controllers' Ass'n*,
  606 F. Supp. 2d 82 (D.D.C. 2009) ............................................................ 24

*Robinson v. Am. Honda Motor Co.*,
  551 F.3d 218 (4th Cir. 2009) ...................................................................... 4

*Schuler v. PricewaterhouseCoopers, LLP*,
  595 F.3d 370 (D.C. Cir. 2010) .................................................................. 24

*SJ Enters., LLC v. Quander*,
  207 A.3d 1179 (D.C. 2019) ....................................................................... 18

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) .................................................................................... 24

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ....................................................................... 5

*Tinsley v. OneWest Bank, FSB*,
  4 F. Supp. 3d 805 (S.D. W. Va. 2014) ........................................................ 4

*United States v. Robinson*,
  494 B.R. 715 (W.D. Tenn. 2013) .............................................................. 14

*Whitt v. Am. Prop. Constr., P.C.*,
  157 A.3d 196 (D.C. 2017) ......................................................................... 20

*Wyoming Outdoor Council v. Dombeck*,
  148 F.Supp.2d 1 (D.D.C. 2001) .................................................................. 5

**Statutes**
11 U.S.C. § 548 ............................................................................................. 11

D.C. Code § 28-3104 ............................................................................... 11, 12

D.C. Code § 28-3105 ............................................................................... 11, 12

D.C. Code § 29-3101 .................................................................................... 11

D.C. Code § 29-801.04 ................................................................................ 17

vi

Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5 .................................................................. 14

**Rules**

Federal Rule of Bankruptcy Procedure 7012 ................................................................. 1

Federal Rule of Bankruptcy Procedure 7056 ................................................................. 1

Federal Rule of Civil Procedure 8 ................................................................. 3

Federal Rule of Civil Procedure 12 ................................................................. 1

Federal Rule of Civil Procedure 56 ................................................................. 1

Come now DP Capital LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SNL"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants," and each a "Defendant"),[1] by and through undersigned counsel, pursuant to ==Federal Rule of Bankruptcy Procedure 7012==, ==Federal Rule of Bankruptcy Procedure 7056==, ==Federal Rule of Civil Procedure 12==, and ==Federal Rule of Civil Procedure 56==, and move to dismiss this action or, in the alternative, for summary judgment in favor of the Defendants and against Developer RE1 LLC ("RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs," and each a "Plaintiff"), and in support thereof state as follows:

## I.  Introduction

Time and again, the Plaintiffs defaulted under the terms of promissory notes and deeds of trust. The Plaintiffs were repetitively late making interest payments—sometimes by more than a month. One of the Plaintiffs outright failed to make various interest payments at all. Both Plaintiffs allowed senior liens to accrue on their lenders' collateral, in contravention of governing loan documents. And when loans were accordingly declared to be in default, and collateral scheduled for foreclosure, the Plaintiffs brought suit, insisting they ought not be held to the terms of the very loan documents they signed.

To be sure, the Plaintiffs' case is actually far more pernicious than summarized above. These two borrowers, seemingly intent on scorching earth, did not merely sue their lenders—they sued their lenders' principal, their lenders' attorney, and just about anyone with an even vaguely cognizable nexus to their lenders. In fact, it appears the Plaintiffs are now even suing an individual

---

[1] One additional defendant—Shaheen Sariri ("Mr. Sariri")—has been added to this action, though not added to the caption of the case. Undersigned counsel does not presently represent Mr. Sariri, though it is possible such an engagement may (or may not) ensue. This filing is not made on behalf of Mr. Sariri. The references herein to undersigned counsel representing "The Defendants" are not intended to suggest entry of an appearance on behalf of Mr. Sariri.

1

whose sole putative act of tortious wrongdoing was having the temerity to lend funds to a company that holds two of the at-issue promissory notes and deeds of trust.

It necessarily follows that the Plaintiffs' case ought to proceed no further. For too long, DRL and 423 Kennedy have both failed to repay the funds they borrowed and simultaneously obstructed efforts to sell the collateral they posted for those loans. For too long, DRL and 423 Kennedy have propagated legally meritless theories that commercial lenders ought to be held to the same standards as their consumer counterparts. And for too long, DRL and 423 Kennedy have treated their contractual obligations with equal parts nonchalance and disregard.

The core issue in this case is neither novel nor complex. The Plaintiffs are both commercial borrowers who repetitively and habitually failed to make interest payments on time. They allowed senior liens to accrue on collateral. And then, when they discovered the loans were being treated as defaulted, and foreclosures were being scheduled, they went on the offensive. DRL and 423 Kennedy insist such default declarations and foreclosures are improper because there is a lack of purity in the motivation underlying the lenders' post-default actions. Yet, in so doing, DRL and 423 Kennedy both overlook that the law does not regard motivation as having any material relevance. The law simply regards whether or not breaches occurred, and on this record there is no question but that breaches occurred—time and again and again and again.

With promissory notes and deeds of trust having been breached, the correlative lenders became entitled to charge the default interest rates thereunder and to proceed with foreclosures of the relevant collateral. That they may have initially declined to do so, forbearing out of generosity, is immaterial; the lenders' rights became cemented when the breaches occurred. That is not a controversial proposition. Yet that, somehow, is the very notion the Plaintiffs are endeavoring to challenge in this suit. And given that the challenge is one devoid of legal merit, it is thusly proper

564

to dismiss those causes of action not previously subjected to such a motion and to enter summary judgment on the remaining claims.

## II.    Standard: Motion to Dismiss

As recently observed by the United States District Court for the District of Columbia, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D. D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating a motion to dismiss, "the court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions." *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).

3

Further, while assessment of a motion to dismiss is generally confined to the four corners

of an underlying pleading, "the court may consider documents extrinsic to the complaint if they

are 'integral to and explicitly relied on in the complaint' and if there is no dispute as to their

authenticity." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D. W. Va. 2014) (citing

*Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222–23 (4th Cir. 2009); *Branin v. TMC*

*Enterprises, LLC*, 832 F. Supp. 2d 646, 649 (W.D. Va. 2011); *Fisher v. Maryland Dep't of Pub.*

*Safety & Corr. Servs.*, 2010 WL 2732334, at *2 n. 2 (D. Md. 2010)).

### III.    Standard: Motion for Summary Judgment

The standard for a motion seeking summary judgment is familiarly set forth in the Federal

Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or
> the part of each claim or defense--on which summary judgment is sought. The court
> shall grant summary judgment if the movant shows that there is no genuine dispute
> as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

As noted by the United States District Court for the District of Columbia, of the rule

governing summary judgment:

> Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate
> when the pleadings and evidence demonstrate that there is no genuine issue as to
> any material fact and the moving party is entitled to judgment as a matter of law.
> To determine what facts are "material," a court must look to the substantive law on
> which each claim rests. A "genuine issue" is one whose resolution could establish
> an element of a claim or defense and, therefore, affect the outcome of the action.
> In ruling on a motion for summary judgment, the court must draw all justifiable
> inferences in the nonmoving party's favor and accept the nonmoving party's
> evidence as true. All evidence and the inferences drawn therefrom must be
> considered in the light most favorable to the nonmoving party. However, a
> nonmoving party must establish more than "the mere existence of a scintilla of
> evidence" in support of its position. To prevail on a motion for summary judgment,
> the moving party must show that the nonmoving party "fail[ed] to make a showing
> sufficient to establish the existence of an element essential to that party's case, and
> in which that party will bear the ultimate burden of proof at trial." By pointing to

4

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.

*Wyoming Outdoor Council v. Dombeck*, 148 F. Supp. 2d 1, 7 (D.D.C. 2001) (citing Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); quoting *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. at 325).

As observed by the United States Court of Appeals for the District of Columbia Circuit, "[a] fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). *See also Folksamerica Reinsurance Co. v. Republic Ins. Co.*, 2004 WL 1043086, at *2 (S.D. N.Y. 2004) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment."); *Associated Indus. Ins. Co. v. Mt. Hawley Ins. Co*., 2021 WL 1921016, at *3 (S.D. Cal. 2021) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.") (quoting *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)).

## IV.    Material Facts Not in Dispute

### a.  Loan Issuance and Funding

1.      On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B.

5

2.      The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D.

3.      Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F.

4.      The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H.

###     b.  RE1 Defaults

5.      Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

6.      DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4.

7.      DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5.

568

8.       DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6.

9.       Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3.

10.      DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7.

11.      The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2.

12.      DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J.

13.      DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed).

14.      DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2]

---

[2] This does not include additional defaults under the First DRL Note

569

### c. 423 Kennedy Defaults

15. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3.

16. 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8.

17. 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9.

18. 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10.

19. 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11.

20. 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12.

21. 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13.

22.    423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14.

23.    Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3.

24.    The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15.

25.    Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1.

26.    On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L.

27.    In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3]

---

[3] This does not include additional defaults under the First 423 Kennedy Note.

9

### V.    Plaintiffs' Allegations

While not relevant to this motion, for the reasons discussed more fully *infra*, the core of the Plaintiffs' contentions in this suit is that defaults were only declared—and foreclosures were only scheduled—after a falling out occurred between the Plaintiffs' principal and Mr. Huertas. *See* Complaint, DE #40, at ¶¶ 64-187. Theorizing that "money is the root of all evil," *id.* at p. 23, and accusing the Defendants of having "corrupt" and "evil" motives, *id.* at pp. 10, 32, the Plaintiffs insist that they were well on their way to refinancing the subject debt when defaults were declared, *id.* at ¶¶ 193-194.

The only even vaguely relevant portion of these allegations, for purposes of this motion, is their temporal horizon. The Plaintiffs allege the Defendants to have commenced a "corrupt plan" on or about October 6, 2022. *Id.* at ¶ 64. Yet, as noted above, DRL and 423 Kennedy had each defaulted under their respective loan documents, multiple times, prior to October 6, 2022. *See, supra,* § IV(b-c).

The Complaint is rich with vitriol and makes often-counterfactual allegations. But, for purposes of this motion, the whole of those allegations may be rather simply restated as follows: WCP and DPCL initially forbore from exercising their remedies under loan documents, notwithstanding the myriad defaults of the Plaintiffs, until such a time as a falling out occurred between and amongst the parties. Once a falling out occurred, WCP and DPCL elected to no longer voluntarily forbear from exercising their legal rights. The Plaintiffs now wish to litigate the finer points of the falling out; the Defendants posit that such is immaterial, since the Defendants were never under any obligation to voluntarily forbear from exercising their default remedies in the first place.

10

## VI.    Argument: Count VII of the Complaint—Seeking to Set Aside a Putative Fraudulent Transfer—Should be Dismissed

The Plaintiffs, in Count VII, evince a fundamental misunderstanding of the laws governing fraudulent conveyances. This claim is brought against every Defendant, except Mr. Drazin, on the theory that a lender's transfer of a promissory note, in the midst of litigation, constitutes a violation of the modern version of the Statute of Elizabeth. Neither the relevant statutory language nor case law support such a wayward theory.

The Complaint does not cite to any statute for Count VII but, since neither Plaintiff is a debtor in bankruptcy (and since both plaintiffs are thusly without recourse under Section 548 of the Bankruptcy Code), it would seem this claim is brought pursuant to Section 29-3101, *et seq.* of the District of Columbia Code. The pertinent provisions thereof prohibit transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor" or undertaken for less than reasonably equivalent value at such a time as an obligor is either insolvent or on the verge of being rendered insolvent. D.C. Code §§ 28-3104; 28-3105. The Plaintiffs appear to be alleging both theories, and each is significantly misplaced.

### a.    There is No Contention WCP or SNL are Insolvent

The Complaint does not allege WCP or SNL to be insolvent. *See* Complaint, DE #40, *passim*. And this is, on its face, a core problem for the Section 28-3105 claim, since insolvency is an element of a fraudulent conveyance claim premised upon an absence of reasonably equivalent consideration. The Plaintiffs, rather, intimate that JPK is insolvent. *Id.* at ¶¶ 260-261. In so doing, the folly of the cause of action is revealed.

11

573

The focus of the District of Columbia fraudulent conveyance law (like seemingly every other fraudulent conveyance law) is on the solvency of the *transferor*, not the *transferee*. Section 28-3104 prohibits transactions for less than reasonably equivalent value where a *transferor* either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the [transferor] were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that the [transferor] would incur, debts beyond the [transferor's] ability to pay as they became due.

D.C. Code § 28-3104(a)(2) (interlineating "transferor" for "debtor" so as to track the statutory language without the confusion of the Plaintiffs actually being the parties who are indebted to certain of the Defendants).

The same is true for Section 28-3105, which prohibits transactions where "the transfer was made . . . if the [transferor] made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation and the [transferor] was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." D.C. Code § 28-3105(a) (similarly interlineating).

It bears notation that WCP and SNL both certainly realized reasonably equivalent value in transferring the at-issue promissory notes, insofar as they received equity in JPK in exchange for the transfers. But such is wholly immaterial for instant purposes. The Plaintiffs are trying to conflate the *transferors* with the *transferee*. The law does not regard—one iota—whether or not a recipient is solvent, on the verge of being rendered insolvent, or inadequately capitalized; the law is concerned solely with whether a *transferor* is at such a risk. And this portion of Count VII accordingly fails on its face.

12

**b. There is No Cogent Theory of Hinderance, Delay or Fraud**

The other theory of a fraudulent conveyance promulgated in the Complaint is equally wayward. The Plaintiffs theorize that the transfer of the promissory notes, to JPK, was undertaken to "hinder or delay the adjudication of the claims in this case," Complaint, DE #40, at ¶ 204, and to "hinder or delay the Plaintiffs from reaching the assets of [WCP] and [SNL]," *id.* at § 205. The second contention is facially non-sensical, as evidenced by the fact the Plaintiffs are still suing both WCP and SNL. The first contention is seemingly more dangerous, as the Plaintiffs seem to argue that *any* action undertaken to defend litigation is, *ipso facto*, an action to hinder, delay or defraud creditors.

As to the second contention (concerning the assets of WCP and SNL): the Plaintiffs either have tort claims against the Defendants, *in rem* claims against the promissory notes and deeds of trust, or some combination thereof. If the Plaintiffs have tort claims, transferring the promissory notes and deeds of trust does not move the needle in the slightest—WCP and SNL, to whatever extent they were liable in tort before the transfers, remain liable in tort after the transfers. The Complaint does not suggest or explain otherwise. No one is contending that any tort liabilities, resting on SNL or WCP, were sold or assigned, nor even that liabilities could be sold or assigned under District of Columbia law.

Equally, if the Plaintiffs have *in rem* claims against the promissory notes and deeds of trust, such claims survive the transfer. Not only do the Plaintiffs have the ability to join JPK in this suit, to advance such *in rem* claims, but—somewhat ironically—it is the Defendants who pointed out that JPK should be joined herein, it is the Defendants who noted JPK is a necessary party, and it is the Defendants who insisted upon such even when the Plaintiffs initially refused to bring suit against JPK.

13

Nothing about the transfer would wipe out any liability that rested with WCP or SNL. Nor would anything about the transfer wipe out any *in rem* liability that follows the promissory notes and deeds of trust. And it is thusly altogether unclear how it is the Plaintiffs maintain the transfer to have been designed to prevent assets of WCP and/or SNL from being reached.

As for a delay of the adjudication of claims in this case, such is an even odder proposition. As noted *supra*, the prohibition on fraudulent conveyances emanates from the Statute of Elizabeth, enacted some 454 years ago. *See* Fraudulent Conveyances Act of 1571, 13 Eliz. 1. c. 5; *United States v. Robinson*, 494 B.R. 715, 722 n.36 (W.D. Tenn. 2013). Yet the Defendants are unaware of—and undersigned counsel cannot locate—any case law, whatsoever, holding that tactics used in the defense of litigation can give rise to a violation of fraudulent conveyance laws.

To be sure, what the Plaintiffs are alleging is that the siloing of potentially troubled assets is, *ipso facto*, a fraudulent conveyance. If so, every so-called "Texas two step" would, too, be a fraudulent conveyance. And, equally, every sale of a troubled promissory note would be a fraudulent conveyance.

Clearly, such cannot be. Moreover, and of some note, the Plaintiffs do not cogently allege how it is that the transfer of the promissory notes actually caused any hinderance or delay. If the contemplated answer to such is that JPK became a debtor in bankruptcy, three problems emerge: (i) assuredly, the filing of a bankruptcy petition cannot constitute a hinderance or delay for purposes of fraudulent conveyance liability, or nearly every chapter 11 debtor in America will be committing a tort by docketing an order for relief; (ii) this litigation was removed *before* JPK was placed into bankruptcy; and (iii) it is the Plaintiffs—not the Defendants—who fervently sought a stay of open motions shortly following removal.

14

In short, Count VII of the Complaint is simply nonsensical. The Plaintiffs appear to either misapprehend controlling law or to be in search of some theory—any theory—upon which to rest a case they understand to be otherwise ill-fated. Either way, this count merits dismissal with prejudice.

## VII.    Argument: The Complaint Should be Dismissed as Against SNL

SNL is not alleged to have originated any loans. SNL is not alleged to have serviced any loans. And SNL is not alleged to currently own any loans. So it is—very genuinely—altogether unclear why SNL is still a party to this lawsuit.

SNL is a named defendant to the claims for breach of the duty of good faith and fair dealing (Count II), for declaratory relief as to whether a lender is allowed to foreclose following a borrower's breach of loan documents (Count III), permanent injunctive relief (Count IV), declaratory relief as to whether Mr. Drazin may serve as a trustee (Count VI), and avoidance of a fraudulent conveyance (Count VII). Yet none of these causes of action actually make sense as against SNL.

### a.    Count II – Breach of the Duty of Food Faith and Fair Dealing

Under District of Columbia law, survival of a motion to dismiss a claim for breach of the implied covenant of good faith and fair dealing requires a plaintiff to "allege facts to show that defendant 'has taken steps, or refused to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero v. City Segway Tours of Wash. DC, LLC*, 826 F. Supp. 2d 100, 106-07 (D.D.C. 2011) (quoting *Nugent v. Unum Life Ins. Co. of Am.*, 752 F. Supp. 2d 46, 56 (D.D.C. 2010) (quoting *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988))).

15

Here, the Plaintiffs allege that SNL "engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail." Complaint, DE #40, at ¶ 12. But the Complaint never actually alleges *what* that conduct was, or what actions constituted this unethical and outrageous conduct.

References to SNL, in the pleading, are notably sparse. The Plaintiffs allege that (i) WCP initially assigned the junior RE1 promissory note to SNL, *id.* at ¶ 41; (ii) WCP may have also assigned a 423 Kennedy deed of trust to SNL, *id.* at ¶ 60; (iii) SNL "is believed to also have a financial interest" in a loan the Plaintiffs insist to be of no relation, *id.* at ¶ 94; (iv) Mr. Drazin sent a foreclosure notice on behalf of SNL, *id.* at ¶ 185; and (v) SNL both transferred a note to JPK and owns part of JPK, *id.* at ¶¶ 201-202.

Purchasing a promissory note and then assigning the note to another entity—even when the seller owns part of the new entity—is a rather common practice; it is difficult to conceive of how such could rise to the level of "unethical, outrageous conduct," *id.* at ¶ 12. Similarly, having a financial interest in other loans is par for the course for a lender; it is equally difficult to conceive how such could amount to "unethical, outrageous conduct," *id.* And sending a foreclosure notice, after a borrower has repeatedly defaulted on a promissory note, is similarly well shy of the "unethical, outrageous conduct," *id.*, alleged.

Most pertinently, however, these actions cannot be said to amount to "tak[ing] steps, or refus[ing] to take steps, which ultimately had the effect of destroying or injuring the right to receive the fruits of the contract.'" *Mero*, 826 F. Supp. 2d at 106-07. None of what is alleged of SNL would have prevented the Plaintiffs from timely making loan payments. Nor would any of the actions have prevented the Plaintiffs from paying taxes and utility bills. Nor would any of the actions have prevented the Plaintiffs from doing much of anything else.

16

All that is alleged of SNL is that the entity purchased debt instruments and then exercised rights—including foreclosure and assignment rights—thereunder. Such assuredly cannot constitute a breach of the implied duty of good faith and fair dealing.

### b. Count III – Declaratory Relief (Breaches) / Count IV – Injunctive Relief / Count VI – Declaratory Relief (Mr. Drazin's Services)

The next three causes of action against SNL are for declaratory and injunctive relief concerning the forward-looking rights of noteholders and beneficiaries under deeds of trust, as well as Mr. Drazin's capacity to serve as a trustee. Yet, as the Plaintiffs themselves note in some detail, and bemoan at great length, SNL no longer owns any of the relevant promissory notes and is no longer a beneficiary under any of the relevant deeds of trust. The interests of SNL have been transferred to JPK. And it is thusly unclear why SNL is being made a party to causes of action directed toward the establishment of forward-looking rights, *vel non*.

Axiomatically, "[a] limited liability company is an entity distinct from its member or members." D.C. Code § 29-801.04(a). *See also Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) (holding a limited liability company is distinct from its members); *HRH Servs., LLC v. Travelers Indem. Co.*, 2024 U.S. Dist. LEXIS 234196, at *25 (D.D.C. Dec. 30, 2024) (holding similarly).

While there is no question but that SNL owns part of JPK, such is not grounds to sue SNL in connection with debt instruments held by JPK. Whether or not JPK can take actions based upon the Plaintiffs' habitual defaults is a question that impacts JPK, not SNL. The same goes for whether or not JPK can foreclosure and, too, whether or not JPK may rely upon the services of Mr. Drazin as a trustee under the pertinent deeds of trust held by JPK.

17

579

### c. Count VII – Fraudulent Conveyance

The issues with the fraudulent conveyance claim against SNL are discussed fully above.
*See, supra,* § VI.

## VIII. Argument: Summary Judgment is Proper

### a. The Defendants' Repetitive and Habitual Defaults Bar Relief for Tortious Interference (Count I), Breach of the Duty of Good Faith and Fair Dealing (Count II), Declaratory Judgment (Count III) and Permanent Injunctive Relief (Count IV)

The thrust of the Plaintiffs' claims in this case is that even though DRL and 423 Kennedy repeatedly and habitually were late making interest payments, and even though DRL and 423 Kennedy allowed senior liens to accrue on their respective assets, the Defendants could not lawfully declare the Plaintiffs to be in default and exercise remedies under the loan documents. The loan documents are notably devoid of provisions allowing for defaults to be cured (and, in any event, the Plaintiffs' defaults have steadily continued—through the present day—as punctuated by a failure to pay the loans at maturity). Yet the Plaintiffs rationalize that since they *eventually* made the payments, and since they *eventually* rid the properties of senior liens, their repetitive and habitual breaches ought to be disregarded. Such simply is not so.

Axiomatically, there cannot be a waiver of strict compliance with a contract "where time is contractually stipulated to be of the essence." *Landow v. Georgetown-Inland W. Corp.*, 454 A.2d 310, 313 (D.C. 1982). *See also SJ Enters., LLC v. Quander*, 207 A.3d 1179, 1184 (D.C. 2019) (noting a party's contractual obligations to be "discharged" when a contractual counterparty fails to adhere to a "time is of the essence" clause); *Landow*, 454 A.2d at 313 ("The gist of the buyer's argument is that so long as he was making a good faith effort to obtain building permits, the settlement date in the original written contract, even though containing a 'time is of the essence' clause, would be orally extended from time to time. We find that this argument is without legal

18

foundation as well as commercially impracticable."); *Finard & Co. v. Capitol 801 Corp.*, 1992 U.S. App. LEXIS 23402, at *3 (D.C. Cir. Sep. 23, 1992) (strictly construing a "time is of the essence" clause such that a contractual party's rights are waived for failing to timely perform thereunder).

Here, all four promissory notes provide, *inter alia*, "[t]ime is of the essence as to all provisions of this Note." First DRL Note, Ex. A, at § 10; Second DRL Note, Ex. B, at § 10; First 423 Kennedy Note, Ex. E, at § 10; Second 423 Kennedy Note, Ex. F, at § 10.

None of the promissory notes provide any allowance for the cure of monetary defaults. *Id.*, *passim*. Nor do any of the promissory notes require the borrowers to be given notice of any defaults thereunder. *Id., passim*. So once interest payments were not timely made, there existed defaults on the part of both DRL and 423 Kennedy that (i) ran afoul of the notes' plain terms; (ii) ran afoul of the notes' "time is of the essence" clauses; (iii) could not be cured through tardy payment; and (iv) did not require the giving of notice—much less occasion to cure—to the borrowers.

As noted *supra*, this happened on myriad occasions with both Plaintiffs. They were habitually late making payments. And these late payments largely came *before* the alleged confrontation between the Plaintiff's principal and Mr. Huertas that is central to the complaint.

So the question posed, in the form of the claims for tortious interference (Count I), breach of the implied covenant of good faith and fair dealing (Count II), declaratory relief (Count III), and injunctive relief (Count IV), is whether the lenders, following a series of repetitive and habitual contractual breaches by the borrowers, were entitled to exercise their correlative rights under the loan documents. And this question is, of course, answered in the affirmative. To suggest otherwise would be to not merely undermine the plain language of the promissory notes and District of

581

Columbia precedent on "time is of the essence" clauses but, too, to endeavor to impose on commercial debt instruments the standards heretofore only known to apply to consumer loans.

### i. Tortious Interference (Count I)

Count I of the Complaint posits that WCP, DPCL and Mr. Huertas are liable for tortious interference with business relations, with the putative underlying sin being the demand that the Plaintiffs "pay [d]efault [i]nterest and [d]efault [p]enalties," Complaint, DE #40, at ¶ 221. The borrowers theorize that the demand for such default interest and penalties—remedies provided for under the loan documents—caused an inability to refinance debt and a breakdown in relations with a potential refinance lender. *Id.* at ¶¶ 221-223. In so theorizing, the Plaintiffs seem to miss that incursion of default interest and penalties was in express accord with the provisions of the loan documents and came only after the Plaintiffs repetitively and habitually breached their obligations thereunder.

Under District of Columbia law, a claim for tortious interference with business relations requires the showing of four elements: "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Close It! Title Servs. v. Nadel*, 248 A.3d 132, 141 (D.C. 2021) (quoting *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017)).

For summary judgment purposes, the fourth element is key. While the Defendants do question the first element (it appears, from discovery, there may not have been as valid a relationship with a refinance lender as the Plaintiffs suggest) and vehemently dispute the third

element (there certainly was not any intentional interference), those two elements run too close to potential disputes of material fact. The fourth element, however, does not.

Rather plainly, the Plaintiffs' liability for default interest and other breach-centric damages stems not from any actions of the lenders but, rather, from the Plaintiffs' own habitual, repetitive, and recurring breaches of the promissory notes. At the time of the putative refinance efforts, the Plaintiffs owed default interest because they failed to timely make interest payments *ad nausea* and because they allowed senior liens to accrue on collateral. More defaults would, of course, follow later (most notably including a failure to repay the loans at maturity). But numerous breaches and defaults occurred long before the Plaintiffs even allege refinance efforts to have been afoot.

To be sure, the Plaintiffs cannot in good faith deny that they were habitually and repetitively late making interest payments. Nor can they deny that they permitted senior liens to accrue upon the collateral. Nor can they deny that these are plain language breaches of the applicable loan documents. What they contend, rather, is that it is unfair for the Defendants to actually enforce these plain language provisions, and that habitually tardy payments ought to be forgiven. But there is no actual legal foundation for these contentions, with such not only running afoul of the "time is of the essence" clauses in the loan documents but, too, of longstanding principles guiding the construction of commercial agreements in accord with the plain terms thereof.

### ii. Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II)

Count II of the Complaint alleges that by enforcing the default provisions of the loan documents, DPCL, WCP, SNL and JPK ran afoul of the implied covenant of good faith and fair dealing. In so doing, the Plaintiffs appear to conflate the implied duty of a contractual party to not

*interfere* with a counterparty's performance and the right of a party to enforce its rights under a contract following a counterparty's breach. The former is actionable in tort; the latter is nothing more than what the parties agreed to in executing the loan documents in the first instance.

Familiarly, District of Columbia law provides for a duty of good faith and fair dealing in connection with contractual performance:

> . . . all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing.

*Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (quoting *Hais v. Smith*, 547 A.2d 986, 987-988 (D.C. 1988)).

What the Plaintiffs allege here is that *by enforcing the plain terms of the loan documents*, the lenders violated the implied covenant of good faith and fair dealing. The Plaintiffs reason that even though there were habitual and repetitive defaults, WCP and its co-Defendants had a duty to *not* enforce the default provisions of the agreements, to not charge default interest, and to not exercise remedies under deeds of trust.

Or, stated otherwise, what the Plaintiffs allege here is that the "time is of the essence" provision of the promissory notes, coupled with the District of Columbia's extensive case law on the enforcement of such provisions, should be wholly disregarded. And, compounding the oddity of the theory, the Plaintiffs posit such ought to not merely be wholly disregarded but, too, the lenders' efforts to rely on this plain provision of the loan documents, and this extensive case law, is actually a violation of the implied covenant of good faith and fair dealing.

584

### b. Permanent Injunctive Relief (Count IV) is Not a Cause of Action

Count IV of the Complaint is for "permanent injunctive relief." Such is not a cause of action, however, but rather merely a remedy available to litigants who successfully pursue freestanding causes of action in certain circumstances. *See, e.g.*, *Genesis Capital, LLC v. Lauravin Luxury Apartments Homes, LLC*, 2023 U.S. Dist. LEXIS 84754, at *6 (D.D.C. May 15, 2023) ("Like a preliminary injunction, a receivership is not a cause of action but rather a form of relief.") (citing *Gordon v. Washington*, 295 U.S. 30, 37 (1935)); *Base One Techs., Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015) ("Injunctive relief, however, is not a freestanding cause of action, but rather — as its moniker makes clear — a form of relief to redress the other claims asserted by Plaintiff.") (citing *Guttenberg v. Emery*, 41 F. Supp. 3d 61 (D.D.C. 2014)); *Kemp v. Eiland*, 139 F. Supp. 3d 329, 343 (D.D.C. 2015) ("a 'request for injunctive relief is a remedy and does not assert any separate cause of action.'") (citing *Coe v. Holder*, 2013 U.S. Dist. LEXIS 85337 at *2 n.4 (D.D.C. June 18, 2013) (internal citations omitted)).

In light of this claim not actually being a cause of action, summary judgment is properly entered thereupon in favor of the Defendants.

### c. Summary Judgment is Properly Entered on the Claim for Declaratory Relief

Count III of the Complaint is premised upon a red herring. Therein, the Plaintiffs seek a declaratory judgment as to "whether an unresolved dispute about water bills, or the late payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate a forfeiture of the Property." Complaint, DE #40, at § 234. The answer, to be sure, is found in the affirmative: permitting senior liens to accrue on collateral is, in the prism of the loan documents *sub judice*, grounds of default upon which a foreclosure may be premised. But the question is also terrifically misstated in a deceptive fashion: the Plaintiffs defaulted, habitually and repetitively, under the loan documents by failing to timely make interest payments. The Plaintiffs then defaulted by failing to

23

pay the loans at maturity. And the question, thusly, should be rephrased as follows: "After a borrower has habitually defaulted under loan documents, by failing to make payments despite time being expressly of the essence, may a lender avail itself of the remedies set forth in those loan documents?" And that question is, unsurprisingly, also answered in the affirmative.

To be sure, what the Plaintiffs ask in Count III is either academic or misleading. If they simply inquire as to whether the accrual of senior liens may give rise to foreclosure, such is academic since the Plaintiffs committed numerous other defaults under the applicable loan documents. Answering that question, without recognizing the full scope of the breaches at issue herein, would be to issue an advisory opinion premised upon hypothetical facts. And such is, of course, forbade in this judicial circuit. *See, e.g.*, *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 86 (D.D.C. 2009) ("Pueschel's generic question is in essence a request for an advisory opinion, something federal courts are not empowered to render.") (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101, 104 (1998)); *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 377 (D.C. Cir. 2010) ("Because a federal court does not have jurisdiction to issue an advisory opinion, we must decline Murphy's request to consider the issue.") (citing *Flast v. Cohen*, 392 U.S. 83, 95 (1968)). *But see Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) (holding Article III case or controversy rigors to not attach to proceedings in bankruptcy courts).

Similarly, if the Plaintiffs pose the question under the pretense of having not otherwise breached the applicable loan documents time and again, such is misleading. As noted *supra*, the Plaintiffs' late payments and missed payments are extraordinary in nature and were of an extraordinary nature *before* a foreclosure was ever scheduled. They may wish to focus merely upon the senior liens they permitted to accrue on the lenders' collateral, even though such are

contractual breaches unto themselves, but the undisputed facts of this case set forth countless other

breaches of a monetary variety. And, as urged *passim*, such runs plainly afoul of case law

governing agreements in which time is expressly of the essence.

### d. Mr. Drazin Incorporates his Prior Summary Judgment Motion, which is Presently Under Advisement

Mr. Drazin has previously moved for summary judgment herein, DE #7, and the subject

motion is presently under advisement, having been fully briefed and then subsequently argued, DE

#32. Insofar as that motion is under advisement, the issue appears to have been fully submitted to

this Honorable Court. However, to whatever extent Mr. Drazin may need to formally reassert his

independent motion for summary judgment, upon the presentation of a new complaint, he hereby

does so and incorporates, by reference, his prior briefing on the matter.

### IX.   Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) enter judgment

in their favor, and against the Plaintiffs, on the Complaint; and (ii) afford such other and further

relief as may be just and proper.


                                    Respectfully submitted,

Dated: March 19, 2025          By:    /s/ Maurice B. VerStandig
                                      Maurice B. VerStandig, Esq.
                                      Bar No. MD18071
                                      The VerStandig Law Firm, LLC
                                      9812 Falls Road, #114-160
                                      Potomac, Maryland 20854
                                      Phone: (301) 444-4600
                                      mac@mbvesq.com
                                      *Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$3,579,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                              Page **1** of 9

WCP0449

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2.   INTEREST

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

## 3.   PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

WCP0450

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

WCP0451

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6.     <u>**OBLIGATIONS OF PERSONS UNDER THIS NOTE**</u>

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

WCP0452

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

### 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

### 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

WCP0453

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.   **SUCCESSORS AND ASSIGNS**

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.   Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.   Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.   Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

WCP0454

**10.**    **SEVERABILITY; RULES OF CONSTRUCTION**

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

**CONFESSION OF JUDGMENT**

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Rev 12.2015                                                             Page **7** of 9

WCP0455

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

WCP0456

596

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:     Mel Melaku Negussie
Its:    Managing Member

_____(SEAL)
By:     Solomone Abebaw Desta
Its:    Member


COUNTY OF _____
STATE OF _____

   I hereby certify on this 24 day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.


_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____


Rev 12.2015                                Page **9** of **9**

WCP0457
597

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021**                                    **$524,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION
WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY
HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A
JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.    **BORROWER'S PROMISE TO PAY**

        FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District
of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of
**WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200,
Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-
lending agreement (together with its successors and assigns, the "Lender"), at such address
and place, or at such other place or places as the Lender may from time to time designate
in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest
at the rate hereinafter provided, from the date of this Note (as set forth above) until paid.
All amounts due under this Note are secured by a Deed of Trust of even date herewith
("Deed of Trust") on the real property referenced in the Deed of Trust ("Property").
Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not
otherwise defined herein shall retain the meaning ascribed to such term in the Deed of
Trust.

        Borrower hereby assigns its right, title, and interest in and to all contracts and
contract rights in connection with the Property. So long as no default or Event of Default
exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to
use the contracts and contract rights to increase the value of the Property. However, upon
a default or Event of Default under this Note or the related Deed of Trust, Borrower's
license shall immediately and automatically be revoked.    **[ASSIGNMENT OF
CONTRACTS]**

        Borrower expressly and specifically agrees that the entire original principal balance
of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan
Amount memorialized by this Note and may be funded, if at all, in Lender's sole and
absolute discretion. Borrower further expressly and specifically agrees that interest shall
accrue on the entire original principal balance of this Note from the date this Note is made,

Rev 12.2015                                              Page 1 of **9**

598

Case 25-10200-ELG Doc 432 Filed 09/01/25 Entered 09/01/25 21:20:02 Desc
Exhibit A Docket Entries (Partially) Page 2 of 43
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

600

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

601

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015                                                                                     Page 5 of 9

Case 24-10023-ELG Doc 42 Filed 09/10/25 Entered 09/10/25 12:04:42 Desc
Exhibit A-D Docketed Entries (Pages) Note Page 6 of 13
3501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a)     Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note.  Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)     Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)     Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent").  Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement.  Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

603

### 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

Rev 12.2015

604

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5305 1st St NW Washington DC 20011
5301 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_____(SEAL)
By:   Mel Melaku Negussie
Its:   Managing Member



COUNTY OF _City of Washington_ SS:
STATE OF _District of Columbia_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 12.2015

606

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

WCP0469

607

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                              Page **2** of 25

WCP0470

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

WCP0471

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

WCP0472

610

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

.

ARTICLE III

REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

WCP0473

611

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

### 3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

### 4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

### 4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

### 4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

WCP0474

Case 24-10023-ELG Doc 43 Filed 09/01/25 Entered 09/01/25 21:20:02 Desc
Exhibit A1 Docket Entries (Part 1) Page 2002 of 2443
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

WCP0475

613

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

WCP0476

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<u>ARTICLE V</u>

<u>NEGATIVE COVENANTS</u>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

Rev 5.2016

Page **9** of **25**

WCP0477

615

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

WCP0478

Case 24-10023-ELG Doc 43 Filed 09/01/25 Entered 09/01/25 21:20:20 Desc
Exhibit A-1 - Deed of Trust (Part 1) Page 2006 of 2443
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<div align="center">

ARTICLE VII

EVENTS OF DEFAULT

</div>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

WCP0479

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page **12** of 25

WCP0480

618

and the Obligations secured hereby — of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

WCP0481

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016                                            Page **14** of **25**

WCP0482

620

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

WCP0483

621

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

WCP0484

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

WCP0485

623

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

WCP0486

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

WCP0487

**11.7 Applicable Law.**

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

**11.8 Time of Essence.**

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

**11.9 Business Purpose.**

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

**11.10 Tenant Leases and Rents.**

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

WCP0488

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016

Page **21** of 25

WCP0489

627

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">ARTICLE XII</div>

<div align="center">STATUTORY PROVISIONS</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">**[Signature Page to Follow]**</div>

WCP0490

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited   Liability
Company



By:     Mel Melaku Negussie                (SEAL)
Its:     Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

I hereby certify on this ___24___ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

Rev 5.2016

Page **23** of **25**

WCP0491

629

# EXHIBIT A

## LEGAL DESCRIPTION

WCP0492

630

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

WCP0493

631

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

ARTICLE I

DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                                 Page 2 of 25

633

Case 1:24-cv-00200-EGG Doc 434 Filed 09/01/25 Entered 09/01/25 20:02:02 Desc
Exhibit-A-I Deed-See-on-the Commercial Deed of Trust Page 2023 of 2443
3505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

634

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

ARTICLE II

GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Case 24-10020-ELG  Doc 434  Filed 09/01/25  Entered 09/01/25 20:20:02  Desc
Exhibit A-H Deck Second Deed of Trust  Page 2025 of 2443
303 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

636

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Case 25-00200-ELG Doc 44 Filed 09/01/25 Entered 09/01/25 12:04:02 Desc
Exhibit D-1 Deed of Second Deed of Trust Page 27 of 45
550 1st St NW Washington DC 20011
550 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

638

Case 25-10020-ELG Doc 434 Filed 09/01/25 Entered 09/01/25 21:20:02 Desc
Exhibit A - Deck 8e Exhibit C and Trust Page 28 of 29

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

639

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

640

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

641

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

<u>ARTICLE VII</u>

<u>EVENTS OF DEFAULT</u>

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

642

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page **12** of 25

Case 24-00262-ELG   Doc 4   Filed 09/19/25   Entered 09/19/25 12:04:02   Desc
Exhibit A to Declaration (Part Two) Page 33 of 41
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

**ARTICLE VIII**

**DEFAULT AND FORECLOSURE**

</div>

8.0 Remedies.

   If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

   (a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

   (b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

   The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

644

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

Page **16** of 25

647

Case 25-10020-ELG Doc 434 Filed 09/01/25 Entered 09/01/25 19:20:22 Desc
Exhibit A - Rucker Condominium Deed of Trust Page 17 of 25
5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

648

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

     (a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

     (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

     (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

     In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

     (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

     (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016                                                          Page **20** of **25**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

652

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

<div align="center">

ARTICLE XII

STATUTORY PROVISIONS

</div>

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

<div align="center">

**[Signature Page to Follow]**

</div>

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _(handwritten)_ ) SS:
STATE OF _(handwritten)_

    I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page **23** of **25**

654

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

655

656

# EXHIBIT "A"
## Property Description

**Closing Date:**       **December 23, 2021**

**Borrower(s):**       **Developer RE1 LLC**

**Property Address:**  **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st
ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the
Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and
Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now
known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the
Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor
for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in
Square numbered 3389.



**Government of the
District of Columbia**
Office of Tax and
Revenue
Recorder of Deeds
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

**PART A - Type of Instrument**

☐ Deed  ☒ Deed of Trust  ☐ Lease for a Term of 30 years or more

☐ Re-recording  ☐ Other: _____

**PART B - Property Description/Data/Property Being Conveyed**

| 3389 | | 0137 | | 3389 | | 71/72 |
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

**Square and/or Parcel** [_____]  **Lot(s)** [_____]

**Property Address:** [5501-5505] Street Number  [1st Street] Street Name  [NW] Quadrant  **Unit No.**

**Property Use:** ☐ Dwelling Units ≤ 5  ☐ Apartment  ☐ Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
☒ Yes*  ☐ No  ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†  ☐ No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?  ☐ Yes*  ☐ No

*If Yes, what type? [_____]  Estimated Value $ [_____]

**PART C - Instrument Submitted by or Contact Person**
Name [Steven Oxman]  Firm [District Title]
Address [1775 I Street Northwest, #560]
City [Washington]  State [DC]  Zip [20006]

**PART D - Return Instrument To**
Name [Steven Oxman]  Firm [District Title]
Address [1775 I Street Northwest, #560]  Phone No. [(202) 518-9300 ext. 309]
City [Washington]  State [DC]  Zip [20006]

**PART E – Grantor(s) Information**
Grantor [Developer RE1 LLC]  Grantor [_____]
Grantor [_____]  Grantor [_____]
Address [1629 K Street NW, Suite 300]  Phone No. [(202) 271-5046]
City [Washington]  State [DC]  Zip [20006]

**Grantor(s) Tenancy**  ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee
☐ Tenants by Entirety  ☐ Sole

ROD 1 Revised 08/2019

Case 25-10200-ELG Doc 434 Filed 09/01/25 Entered 09/01/25 21:04:02 Desc Exhibit A ID - Rock Creek Deed (Part II) Page 2048 of 2443

★★★

**Government of the**
**District of Columbia**
Office of Tax and
Revenue
1101 4th St. Street,
SW Washington, DC
20024          Phone
(202)727-5374

| 3389 | 0137, 71, 72 |
|------|------|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

| Grantee | WCP Fund I LLC | Grantee | |
|---------|---------------|---------|--|
| Grantee | | Grantee | |

Address 2815 Hartland Road, Suite 200      Phone No. (703) 344-1733

City Falls Church      State VA      Zip 22043

**Grantee(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| | | |
|--|--|--|
| Last Name | First Name | Middle Name |

Address _____ Unit No. _____

City _____ State _____ Zip _____

Phone _____

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

**I. Deed**

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

|  |  |  |
|---|---|---|
| 1.  Acquisition Price | _____ | _____ / _____ |
| Cash | _____ | _____ / _____ |
| *Amount of 1st Deed of Trust* | _____ | |
| Purchase Money Amount | _____ | |
| Other Exempt Amount | _____ | _____ |
| Nonexempt Amount: | _____ | |
| *Amount of 2nd Deed of Trust* | _____ | |
| Purchase Money Amount | _____ | |
| Other Exempt Amount | _____ | |
| Nonexempt Amount: | _____ | |
| *Amount of 3rd Deed of Trust* | _____ | |
| Purchase Money Amount | _____ | _____ |
| Other Exempt Amount | _____ | |
| Nonexempt Amount: | _____ | |
| 2. Current Tax Year Assessed Value (If No or Nominal Consideration) | _____ | _____ / _____ |

ROD 1 Revised 08/2019

**Government of the District of Columbia**

659

Office of Tax and Revenue
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## II. Deeds of Trust (no transfer of title)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

**Tax Exemption Application**
Recordation Tax
(Cite to Specific DC Code Provision)

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $524,000.00

| 3389 | | 0137 |
|---|---|---|
| | | ,71, |
| | | 72 |
| Square | Suffix | Lot |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher, use Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00, use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.

| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me
by Grantor(s) this 23rd day of December, 2021

Notary Public

My Commission Expires    ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Subscribed to and sworn to before me
by Grantee(s) this 23rd day of December, 2021

Notary Public

My Commission Expires:

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires Feb

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**



Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                              **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.    BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                      Page 1 of 9

Case 25-10020-EG Doc 435 Filed 09/01/25 Entered 09/01/25 12:04:02 Desc Exhibit A - 428 Berkeley Terrace Property Page 208 of 2443 Washington DC

LOAN-006491
1st Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2.     **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3.     **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.   BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.   BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

   a.  If default be made in any payment due under this Note;
   b.  If default be made in the performance of any other covenant contained in this Note;
   c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
   d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

Page 3 of 9

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

666

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

667

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

    _(signature)_ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH NOTARY PUBLIC MY COMMISSION EXPIRES 5/14/2025 DISTRICT OF COLUMBIA)_

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                        Page **9** of **9**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                                  **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.     **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.    **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                                          Page 1 of 9

LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

671

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.    **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

   a. If default be made in any payment due under this Note;
   b. If default be made in the performance of any other covenant contained in this Note;
   c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
   d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

6. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

673

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.   WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.   GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page 6 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10. SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

676

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

677

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)

By:     Mel Melaku Negussie
Its:    Member-Manager

By:     Brighton - KSDC, LLC
Its:    Member-Manager

    By:     Brighton Capital LLC
    Its:    Managing Member

_____(SEAL)

    By:     Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
          of Balakrishnarao Sure and
          Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ____5/14/2025____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of **9**

678

Case 25-00200-ELG Doc 437 Filed 09/01/25 Entered 09/01/25 12:04:02 Desc
Exhibit 6 - A13 Kennedy First (Deed) of Trust Page 2068 of 2443

LOAN-006491
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

680

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016                                                                 Page **4** of **25**

682

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                 Page **5** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">ARTICLE IV

AFFIRMATIVE COVENANTS</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

   Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

   Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<div align="center">ARTICLE V</div>

<div align="center">NEGATIVE COVENANTS</div>

5.0 Negative Covenants

   Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

   Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

689

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

690

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<div align="center">

ARTICLE VIII

DEFAULT AND FORECLOSURE

</div>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

691

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

692

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

694

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

696

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

## 11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

## 11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

## 11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016        Page **20** of **25**

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

700

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_(signature)_ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

    _(signature)_ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(signature)_
NOTARY PUBLIC

My commission expires: ___5/14/2025___

_(notary seal)_
JEFFREY DARRAH
NOTARY PUBLIC
MY COMMISSION EXPIRES
5/14/2025
DISTRICT OF COLUMBIA

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                           **Page 23 of 25**

701

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

702

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

<div align="center">

ARTICLE I

DEFINITIONS

</div>

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                 Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

<div align="center">

## ARTICLE II

### GRANT

</div>

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<div align="center">ARTICLE IV</div>

<div align="center">AFFIRMATIVE COVENANTS</div>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

**Page 6 of 25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

710

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

Rev 5.2016

Page 8 of 25

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

713

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

716

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

717

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

     Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

     Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

     In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

     Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

     Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

Rev 5.2016

**Page 16 of 25**

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

Page **18** of **25**

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

Rev 5.2016

Page **19** of **25**

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016

**Page 21 of 25**

## ARTICLE XII

### STATUTORY PROVISIONS

12.1 Statutory Provisions.

     This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

     **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

725

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

    By:    Brighton Capital LLC
    Its:    Managing Member

    _____ (SEAL)
    By:    Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF _Disrtict Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016

**Page 23 of 25**

726

# EXHIBIT A

## LEGAL DESCRIPTION

727

419-423 Kennedy St NW Washington DC 20011

LOAN-006652

2nd Trust

# EXHIBIT " A"
## Property Description

**Closing Date:**    **March 31, 2022**

**Borrower(s):**    **423 Kennedy St Holdings LLC**

**Property Address:**    **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.

Docusign Envelope ID: D8A4T3CC-F28E-4E5A-8C55-BC6262B99DA9

Case 24-10023-ELG Doc 439 Filed 09/19/25 Entered 09/19/25 12:04:02 Desc
Exhibit A - Declaration of Christina Araujo Page 1 of 3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: ) | |
| ) | |
| Charles Paxton Paret, ) | Case No. 23-217-ELG |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| Developer RE1 LLC, ) | |
| ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, ) | |
| ) | (Cases Consolidated) |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |
| ) | |
| 423 Kennedy St Holdings LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DP Capital LLC, *et al.* ) | |
| ) | |
| Defendants. ) | |

## <u>DECLARATION OF CHRISTINA ARAUJO</u>

1.       My name is Christian Araujo, I am over the age of eighteen, and I am competent to testify to the matters set forth herein.

2.       I am the Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners.

3.       In my capacity as Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners, I am familiar with the loans made to 423 Kennedy St Holdings LLC ("423

730

Docusign Envelope ID: D8A47ECC-F39E-4E5A-8C55-BC6C66B99DA9

Kennedy") and Developer RE1 LLC ("DRL") that are at issue in the above-referenced litigation, as well as the payment histories thereof.

4. In connection with the second loan to DRL (the "Second DRL Loan"), DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late.

5. In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late.

6. In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late.

7. DRL failed to pay the Second DRL Loan at maturity and the loan remains unpaid.

8. In connection with the second loan to 423 Kennedy (the "Second 423 Loan"), 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late.

9. In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late.

10. In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late.

11. In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late.

12. In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made.

731

13. In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made.

14. In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made.

15. 423 Kennedy failed to pay the Second 423 Loan at maturity and the loan remains unpaid.

16. Further declarant sayeth naught.

I declare under penalty of perjury that the foregoing is true and correct.

Executed On: 3/19/2025

Christina Araujo
Christina Araujo

732



Filed & Recorded
01/30/2023 10:15 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

Customer Service
202-354-3750

# DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

## DELINQUENT ACCOUNTS SECTION

| | |
|---|---|
| DC Water and Sewer Authority | Date: 2022-08-29 |
| Vs | Account No.: 2002583-9 |
| DEVELOPER RE1 LLC | Service Address: 5501 1ST ST NW |
| 1629 K ST NW, STE 300 | Square: 3389 |
| WASHINGTON, DC 20006 | Suffix: |
| | Lot: 0138 |

### Amount Due (including penalties, if any): $43,956.32
## CERTIFICATE OF DELINQUENT WATER/SEWER CHARGES

This is to certify that, pursuant to D.C. Official Code, 2001, Section 34-2407.02 and Section 34-2110, the Water and Sewer Authority has a continuing lien for delinquent water/sewer service charges upon the land and the improvements thereon at the above service address. From the date of its filing, this certificate shall have the force and effect of a lien created by a judgment entered by the Superior Court of the District of Columbia and will remain in force and effect until the water/sewer charges, plus any interest and penalties thereon, shall have been fully paid by cash, certified check or money order to the Water and Sewer Authority.

**By:**

Manager, Credit & Collections Customer Service Department DC Water and Sewer Authority.

## ACKNOWLEDGEMENT

This is to acknowledge that the foregoing certificate was filed with the Recorder of Deeds of the District of Columbia on the _____.

**By:** _____
Recorder of Deeds Government of the District of Columbia

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006


**DC Office of Tax and Revenue**

 MyTax DC 

‹ **Home**

# Property Details

› **Make a Payment**

SSL : 3389- -0138

**Balance Due** : **$20,...**

Premise Address : 5501 1ST ST NW WASHINGTON DC 20011-5258

| Details | Assessment | **Tax Information** | Map | Applications and Actions |

**Tax Summary**     **Tax History**     **Billing History**     **Payment History**

## Current Year

Help

**2025 First Half**

| Description | Amount | Balance |
|---|---|---|
| Real Property Tax | $20,625.00 | $20,625.00 |

## Past Years

**2024**

| Description | Amount | Balance |
|---|---|---|
| Real Property Payments/Credits | ($33,951.49) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |
| Real Property Interest | $1,132.29 | $0.00 |

| Description | Amount | Balance |
| --- | --- | --- |
| Real Property Penalty | $2,983.56 | $0.00 |

## 2023

| Description | Amount | Balance |
| --- | --- | --- |
| Real Property Payments/Credits | ($29,835.64) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |

## 2022

| Description | Amount | Balance |
| --- | --- | --- |
| Real Property Payments/Credits | ($16,745.17) | $0.00 |
| Real Property Tax | $14,818.74 | $0.00 |
| Real Property Interest | $444.56 | $0.00 |
| Real Property Penalty | $1,481.87 | $0.00 |

*For more historical data, please contact OTR Customer Service at (202) 727-4TAX.*

Filed & Recorded
11/17/2022 05:07 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE
DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
OFFICE OF CIVIL
INFRACTIONS

**CERTIFICATE OF DELINQUENT FINES**
FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO
THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:  Lot: 0056

NOI No. : VR22-00182

Address of Premises:

423 KENNEDY ST NW

This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1)
of the D.C. Code, which establishes a continuing lien upon the real property
(including improvements) and personal property of an owner in the District of
Columbia who fails to pay all outstanding fines, penalties or other costs associated
with a final adjudication of a Notice of Infraction issued pursuant to the Civil
Infractions Act of 1985, as amended.

This Certificate, from the date of its filing, has the force and effect, as against the
aforesaid delinquent party or parties, of a lien created by a judgment granted by the
Superior Court of the District of Columbia. This lien remains in force and effect until
the entire assessed amount set forth below, together with penalties and other costs
(including, but not limited to, court costs and administrative fees) are paid. Failure to
pay the outstanding amount within ninety (90) days after the date to appeal the final
decision and order, if no appeal has been filed, may result in the sale of the owner's
property for costs at the next tax sale in the same manner and under the same
conditions as property sold for delinquent general taxes.

Document No: 1

Assessed Amount: $1590.00

By

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

736

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1

737

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

738

Respectfully submitted,

Dated: March 19, 2025          By:     /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       Bar No. MD18071
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Phone: (301) 444-4600
                                       mac@mbvesq.com
                                       *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                       /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig

3

739

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

Respectfully submitted,

Dated: March 19, 2025    By:    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    Bar No. MD18071
    The VerStandig Law Firm, LLC
    9812 Falls Road, #114-160
    Potomac, Maryland 20854
    Phone: (301) 444-4600
    mac@mbvesq.com
    *Counsel for the Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

3

742

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

PLAINTIFFS' RENEWED MOTION FOR REMAND AND TO SUSPEND
DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINE

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings

LLC ("423 Kennedy") (collectively, "Plaintiffs"), pursuant to 11 U.S.C. § 105(a), 28 U.S.C.

§1334(c) and §1452(b), Fed. R. Bankr. P. 9006, and LBR 9027-1(b) move this Court to: (a)

remand this adversary proceeding to the D.C. Superior Court; and (b) suspend the other pending

motion, hearing, and response deadline until after a decision is made on this renewed motion for

remand. In support of these requests, the Plaintiffs represent as follows:

<div align="center">OVERVIEW</div>

1.     The Court is already familiar with the factual and procedural history of these

removed cases. Given that familiarity, and because brevity is the heart of good pleading, the

Plaintiffs refer the Court to the prior filings related to the remand issue, in particular:

     a.    the Plaintiffs' Statement of No Consent to Final Orders of
          Judgment filed on July 16, 2024 (ECF No. 12);

     b.    the Plaintiffs' first Motion for Remand and to Suspend Deadlines
          filed on July 21, 2024 (ECF No. 13);

     c.    the Plaintiffs' Omnibus Objections to Motions Filed and Notice
          by Defendants filed on July 22, 2024 (ECF No. 16); and

     d.    the Plaintiffs' Reply in Support of Motion for Remand filed on
          August 26, 2024 (ECF No. 21); and

     e.    the Plaintiffs' Supplemental Brief in Support of Motion for
          Remand filed on November 27, 2024 (ECF No. 26).

2.     The Court should also take into consideration the following filings in the

involuntary bankruptcy petition case (24-00262-ELG) involving JPK NewCo, LLC ("JPK

NewCo"). These filings outline the scheme that the Defendants engaged in to attempt to

bootstrap the threadbare jurisdictional arguments for removal by manufacturing a "core

proceeding", *i.e.,* the filing of the involuntary petition against JPK NewCo:

     a.    The US Trustee's Motion to Dismiss Chapter 11 Case Pursuant to
          11 U.S.C. 1112(b) (ECF No. 37 in 24-00262-ELG);

     b.    The Plaintiffs' Statement in Support of the US Trustee's Motion to
          Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b) (ECF No.
          57 in 24-00262-ELG);

     c.    The Monthly Operating Reports filed by JPK New Co that show
          no legitimate business activity whatsoever for JPK NewCo (ECF

<div align="center">2</div>

Nos. 62, 63, 71, 73, 80, and 84 in 24-00262-ELG);

d. The transcript from the meeting of creditors held in the JPK
NewCo case, again confirming that JPK NewCo was not a
legitimate business;[1] and

e. The Limited Objection to Application for Compensation (ECF
No. 86 in 24-00262-ELG).

3.      To reiterate, JPK NewCo was created by the Defendants and their counsel, acting

in concert, for the improper purposes of:  (a) delaying a trial on the Plaintiffs claims in D.C.

Superior Court and hindering their ability to pursue their claims; and (b) so that the Defendants

could relitigate prior decisions from that Court in this Court – a Court that they consider to be

their "home court" that would make decisions more favorable to their positions.

4.      After extensive briefing, this Court held a hearing on the motion for remand and

denied that motion without prejudice.  ECF Nos. 28 and 35.  The Court's denial of the motion for

remand "without prejudice" was in part due to the fact that the viability of the JPK NewCo

involuntary case (24-00262-ELG) was on thin ice because the US Trustee's Office had filed a

motion to dismiss that case for being filed in bad faith

5.      The original alleged basis for removal jurisdiction was the pendency of mere

*allegations* in an adversary proceeding involving Charles Paret in another case that one of the

Defendants (Daniel Huertas) removed to this Court on September 1, 2023, just shy of one month

*after* three of his related companies, as creditors, had filed an involuntary petition against Mr.

Paret (23-00217) on August 4, 2023.[2]

---

[1]     A copy of the transcript from the JPK NewCo meeting of creditors is attached as Exhibit 1.

[2]     The petitioning creditors in 23-00217-ELG were:  DP Capital, LLC; 1Sharpe Opportunity
Immediate Trust; and WCP Fund I, LLC.  *See* ECF No. 1 in 23-00217-ELG.  Christina Araujo, who
completed all of JPK New Co's monthly operating reports, and Mr. VerStandig signed the
involuntary petition.

3

6. To say that the allegations of Mr. Paret about an alleged partnership being formed, in which he claims, without support, that he has a continuing ownership interest in 423 Kennedy and Developer RE1, are "flimsy" would be the understatement of the year. Mr. Paret signed documents in December 2020 and December 2021 in which he confirmed that he no longer had any membership interests in the entities that owned the two properties now owned by Developer RE1 and 423 Kennedy. *See* Exhibit 2 and (two Declarations signed by Mr. Paret in December 2021 regarding the membership interests in the prior entities that owned the Developer RE1 property);[3] *see also* Exhibit 4 (Affidavit of Mr. Paret regarding the ownership of 423 Kennedy dated January 31, 2020).

7. Several of the Defendants in the adversary proceeding filed motions to dismiss Mr. Paret's partnership (and other) evolving claims, but later folded by signing an agreed order that kept several of Mr. Paret's claims intact. *See* ECF No. 3 (Motion to Dismiss filed by Mr. Huertas), ECF No. 15 (Motion to Dismiss filed by Mr. Huertas and DP Capital), ECF No. 41 (Motion to Dismiss filed by Mr. Huertas, DP Capital, and the WCP Fund), and ECF No. 46 (Order granting in part and denying in part the last motion to dismiss) in 23-10025-ELG. The timing of the decision to fold -- in November of 2024 -- before the Court issued a decision on the first motion for remand, should not be lost on this Court. It was to the Defendants benefit here to keep the Paret claims alive for jurisdictional purposes.

8. On February 24, 2025, the Court entered an order dismissing the JPK NewCo involuntary case "WITHOUT PREJUDICE" on the basis that the Debtor "failed to pay the quarterly fee due to the United States Truste [sic – "Trustee"]" and for no other reason. ECF No. 85 (in 24-00262-ELG).

---

[3] These documents reference 71 Kennedy Street Holdings LLC and 5501 1st St Holdings, LLC. Those entities conveyed title to NT Group, LLC, who then conveyed title to Developer RE1.

9.      As Plaintiffs' counsel predicted at a hearing in July of last year -- this before knowing anything about JPK NewCo. -- JPK NewCo was using the removal process to attempt to relitigate issues that have already been decided by the D.C. Superior Courts.  On March 19, 2025, the Defendants filed a Motion to Dismiss or, In the Alternative, for Summary Judgment ("Motion to Dismiss").  The Motion to Dismiss asserts many of the same arguments that were previously asserted, and rejected by, two different judges in D.C. Superior Court before the cases were removed.

10.      As a result of the dismissal of the JPK NewCo involuntary case, the jurisdictional dynamics have now shifted dramatically in favor of remanding these cases to the D.C. Superior Court.  JPK NewCo is no longer a defendant in a pending bankruptcy case, and the court does not have jurisdiction over JPK NewCo's property.

11.      This Court was never designed to be either the Defendants' "home court" or to act as the first line of appeal for the Defendants from prior, adverse decisions made by the D.C. Superior Court, but allowing this case to continue here is exactly what this Court will become.

12.      The type of manipulative, procedural gamesmanship that the Defendants have engaged in, which has to date gone unchecked, should not be condoned by this Court.  This Court was established, with limited jurisdiction, to hear legitimate core bankruptcy proceedings filed by legitimate debtors, with additional "related to" jurisdiction, all of which is sorely lacking here.

13.      This case should go no further until the Court decides this renewed motion for remand.

14.     For purposes of judicial economy, the Court should issue an order under 11 U.S.C. §105(a) suspending the deadlines and hearings for the Motion to Dismiss until after a decision is made on this renewed motion for remand.

WHEREFORE, Plaintiffs request that the Court grant this motion by: (a) continuing to withhold a decision on the Motion for Summary Judgment filed by Russell Drazin (ECF No. 7); (b) suspending the hearing and response deadline for the Motion to Dismiss (ECF No. 44); (c) remanding these consolidated cases to the D.C. Superior Court; and (d) requiring the Defendants to pay the Plaintiffs for the attorney's fees that they have incurred and will incur as a result of the Defendants' improper removal of the cases. The Plaintiffs request that they be permitted to submit an application in support of an award of attorneys' fees within a reasonable time period after the entry of the remand order.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 25, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:   jds@gdllaw.com | ajs@gdllaw.com |
         ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*  and 423 Kennedy St. Holdings, LLC*

6

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of March, 2025, a true copy of the foregoing

Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and

Related Response Deadlines was served electronically and a Notice of Electronic filing should

be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

```
 1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF COLUMBIA
 2
     In Re:                       . Case No. 24-00262-ELG
 3                                . Chapter 11
     JPK NEWCO LLC,               .
 4                                . Washington, D.C.
               Debtor.           . October 29, 2024
 5   . . . . . . . . . . . . . .

 6    CONTINUED MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF
                       THE BANKRUPTCY CODE
 7                 BEFORE KRISTEN S. EUSTIS, ESQ.
               OFFICE OF THE UNITED STATES TRUSTEE
 8
     APPEARANCES:
 9
     For the Debtor:         Wolff & Orenstein, LLC
10                           By: JEFFREY M. ORENSTEIN, ESQ.
                             15245 Shady Grove Road
11                           Suite 465
                             Rockville, Maryland 20852
12
     For Office of the U.S.  U.S. Department of Justice
13   Trustee:               By: KRISTEN S. EUSTIS, ESQ.
                             1725 Duke Street
14                           Suite 650
                             Alexandria, Virginia 22314
15
     For Subchapter V        Offit Kurman, P.A.
16   Trustee:               By: STEPHEN A. METZ, ESQ.
                             7501 Wisconsin Avenue
17                           Suite 1000W
                             Bethesda, Maryland 20814
18
     For Shaheen Sariri:     Hirschler Fleischer
19                           By: KRISTEN E. BURGERS, ESQ.
                             1676 International Drive
20                           Suite 1350
                             Tysons, Virginia 22102
21
     For 423 Kennedy St      Greenstein DeLorme & Luchs, P.C.
22   Holdings LLC and        By: JAMES D. SADOWSKI, ESQ.
     Developer RE1 LLC:      801 17th Street, Northwest
23                           Suite 1000
                             Washington, District of Columbia
24                           20006

25
```

Case 25-00200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. Transcript Meeting of Creditors (Part II) JPR Nov 21 Doc 24 Page 2 of 42

2

```
1    Also Present:              Daniel Huertas
                               Debtor representative
2

     Proceedings recorded by electronic sound recording.
3    Transcript produced by transcription service.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

escribers
www.escribers.net | 800-257-0885

Case 24-00262-ELG Doc 46-31 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. Exhibit Ex. AH - Transcript of Meeting of Creditors (Part II) JPK New Co... Page 3 of 42

3

1          (Proceedings commenced at 10:02 a.m.)

2          MS. EUSTIS:  Good morning.  This is the continued 341

3    meeting of creditors in the case of JPK NewCo LLC, case number

4    24-262, pending in the United States Bankruptcy Court for the

5    District of Columbia.  My name's Kristen Eustis.  I'm an

6    attorney with the Department of Justice, and I represent the

7    United States Trustee for Region 4 in connection with this

8    case.  Today's October 29th, 2024, and it is approximately

9    10:02 a.m.

10          Counsel for the Debtor, can you please identify

11   yourself and your client for the record?

12          MR. ORENSTEIN:  Good morning.  Jeff Orenstein on

13   behalf of JPK NewCo, and with me this morning is Daniel

14   Huertas, principal.

15          MS. EUSTIS:  Thank you.  I can confirm for the record

16   that I have reviewed a copy of Mr. Huertas' identification, and

17   he is who he says he is.

18          Also on the line, Mr. Metz, can you please identify

19   yourself for the record?

20          MR. METZ:  Sure.  Good morning.  This is Steve Metz,

21   the subchapter V trustee.

22          MS. EUSTIS:  Thank you.

23          Mr. Sadowski.

24          Okay.  Ms. Burgers.

25          MS. BURGERS:  Good morning.  This is Kristen Burgers



Case 25-00200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. Ex. 1 Trans. Ab. Meeting of Creditors (Part II)   Page 4 of 42

4

1  | on behalf of the petitioning creditors, Shaheen Sabiri.

2  |      THE COURT:  Okay.  And Jim Sadowski is also on the

3  | line.

4  |      Anyone else on the line that I have not identified?

5  |      Okay.  Pardon.

6  |      MR. SADOWSKI:  I'm sorry.  Mr. Eustis, I'm sorry.  I

7  | think I was on mute when I said who I was here for.  It's Jim

8  | Sadowski for Developer RE1 LLC and 423 Kennedy St Holdings LLC.

9  | Sorry about that.

10 |      MS. EUSTIS:  That's okay.  Thank you.

11 |      Mr. Huertas.  So first, I will ask questions of you,

12 | and then I will allow creditors and parties-in-interest the

13 | opportunity to question you about the Debtor's financial

14 | affairs.  For those that will be asking questions, please

15 | identify yourselves before asking questions so that the Court

16 | reporter, if a transcript is requested of this 341 meeting,

17 | will be able to identify your voice.

18 |      So unless you have any questions, Mr. Huertas, we can

19 | go ahead and get started.

20 |      MR. HUERTAS:  Let's get started.

21 |      MS. EUSTIS:  Okay.

22 |    (Debtor representative sworn.)

23 |      MS. EUSTIS:  Please state your name and address.

24 |      MR. HUERTAS:  Daniel Huertas.  909 Chinquapin Road,

25 | McLean, Virginia, 22102.

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Exhibit A to Motion to Enforce (Parts H) J P Kane 2143 of 2443 Page 5 of 42

5

```
1              MS. EUSTIS:  Thank you.  And did you attend the

2     initial debtor interview in connection with this case?

3              MR. HUERTAS:  Yes.

4              MS. EUSTIS:  And to the best of your knowledge and

5     belief, have all of the schedules and the statement of

6     financial affairs been filed in this case?

7              MR. HUERTAS:  Yes.

8              MS. EUSTIS:  And to the best of your knowledge and

9     belief, is the information that's contained in the schedules

10    and statement of financial affairs true and correct?

11             MR. HUERTAS:  Yes.

12             MS. EUSTIS:  And did you review and sign the

13    statements and schedules before they were filed with the court?

14             MR. HUERTAS:  I did.  The one thing I want to point

15    out, there was a small typo that I -- I found, but I don't know

16    if this is the right time to do it or -- but I found a small

17    typo in the form.

18             MS. EUSTIS:  Sure.  What was the typographical error?

19             MR. HUERTAS:  It's on page 12 of my attachment of the

20    schedules.  We have an extra five on the junior lien.

21             MR. ORENSTEIN:  It's the continuation sheet for the

22    schedule A/B.

23             MS. EUSTIS:  Okay.  And Mr. Orenstein, what was that

24    address?

25             MR. ORENSTEIN:  And it's the address -- it's the
```

Case 25-00200-ELG   Doc 46-31   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. Ex. Trans Alt Meeting of Creditors (Part II) JPR - Nov. 24 Lot C24 - Page 6 of 42

6

1    address of First Street, Northwest.  It's listed as 55501 First

2    Street, Northwest.  I believe it should be 5501 First Street,

3    Northwest.

4         MS. EUSTIS:  Okay.  Thank you.

5         And thank you, Mr. Huertas, for that.

6         Mr. Huertas, has the Debtor closed its pre-petition

7    bank accounts?

8         MR. HUERTAS:  Yes.

9         MS. EUSTIS:  And where did it maintain its pre-

10   petition bank account?

11        MR. HUERTAS:  Previously was in United Bank.

12        MS. EUSTIS:  Okay.  And was this the Debtor's only

13   account?

14        MR. HUERTAS:  Correct.  Yes.

15        MS. EUSTIS:  Okay.  And has the Debtor opened a

16   debtor-in-possession account?

17        MR. HUERTAS:  Have I opened a -- a -- the new account

18   as requested by the -- by the request?  Yes, I did as what I

19   was supposed to do.

20        MS. EUSTIS:  Okay.  And where is that account located,

21   the debtor-in-possession account?

22        MR. HUERTAS:  I believe it's the same bank, United

23   Bank, but it has a -- it's a different account number.

24        MS. EUSTIS:  Okay.  Mr. Orenstein, was a form 1 signed

25   by the bank?  I didn't see it.

Case 25-10200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 19:06:59   Desc
Exhibit Ex. Trans. A, B. of Meeting of Cee (Parts II) JPR   Page 2145 of 2443   Page 7 of 42

7

1          MR. ORENSTEIN:  It was.

2          MS. EUSTIS:  Okay.

3          MR. ORENSTEIN:  It was.  It was provided some time

4     ago.

5          MS. EUSTIS:  Okay.  Thank you.

6          Mr. Huertas, what is the nature of the Debtor's

7     business?  What does the Debtor do?

8          MR. HUERTAS:  The Debtor business, are you -- are you

9     referring to JPK NewCo?

10          MS. EUSTIS:  Yes.

11          MR. HUERTAS:  JPK NewCo is it's a holding company of

12     the -- some troubled assets that we had placed in there under

13     advice of counsel.

14          MS. EUSTIS:  So you said it's a holding company of

15     troubled assets that was formed on advice of counsel?  Is that

16     what you -- I just want to make sure I heard you correctly.

17          MR. HUERTAS:  Correct.  It's a holding company.

18     Holding two troubled assets that we have.

19          MS. EUSTIS:  Okay.  Where was the business formed?

20          MR. HUERTAS:  I believe the business was formed in

21     Virginia.

22          MS. EUSTIS:  Okay.  In what year?

23          MR. HUERTAS:  This year.

24          MS. EUSTIS:  2024?

25          MR. HUERTAS:  Correct.

Case 25-00200-ELG   Doc 46-1   Filed 09/25/25   Entered 09/25/25 19:06:59   Desc
Exhibit Exhibit A - Transcript of Meeting of Creditors (Parts I) JPK NewCo   Page 8 of 42

8

1          MS. EUSTIS:  Okay.  And you said it was formed to hold

2     these two troubled assets?

3          MR. HUERTAS:  Correct.

4          MS. EUSTIS:  And who previously held these two

5     troubled assets?

6          MR. HUERTAS:  One was held by WCP Fund I LLC.  And the

7     different one was held by SF NU, LLC.

8          MR. ORENSTEIN:  Kristen, just to clarify, it was

9     formed in the District of Columbia, not in Virginia.

10          MS. EUSTIS:  Okay.  Thank you, Mr. Orenstein.

11          MR. ORENSTEIN:  Thank you.  The principal office is in

12     Virginia, but it's a D.C. entity.

13          MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14     NewCo engaged in any other business activities?

15          MR. HUERTAS:  Not at this time.

16          MS. EUSTIS:  So at the time that it was formed, there

17     was no other ongoing business operations of JPK NewCo?

18          MR. HUERTAS:  Correct.

19          MS. EUSTIS:  And who is Sam Sariri?

20          MR. HUERTAS:  Shaheen Sariri.

21          MS. EUSTIS:  Okay.

22          MR. HUERTAS:  Shaheen Sariri is a creditor of JPK

23     NewCo.

24          MS. EUSTIS:  And he loaned JPK NewCo Money?

25          MR. HUERTAS:  Yes.

Case 25-10200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 19:06:59   Desc
Exhibit Ex. A To Ascap Meeting of Creditors (Part II)   Page 2147 of 2443   Page 9 of 42

9

1          MS. EUSTIS:  And how much did Mr. Sariri loan to JPK

2    NewCo?

3          MR. HUERTAS:  $50,000.

4          MS. EUSTIS:  And what was that $50,000 used for by

5    JPK?

6          MR. HUERTAS:  The $50,000 was utilized to fund the

7    cost associated with the litigation.  And we funded a loan to a

8    third-party.

9          MS. EUSTIS:  And who was the third-party?

10         MR. HUERTAS:  The third-party is Energy Morocco LLC.

11         MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,

12    have a prior relationship with Mr. Sariri?

13         MR. HUERTAS:  Yes.

14         MS. EUSTIS:  And what was that relationship?

15         MR. HUERTAS:  A business relationship.

16         MS. EUSTIS:  How long had you previously known him

17    for?

18         MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been

19    a while.  Probably north of fourteen years, fifteen years.

20         MS. EUSTIS:  Would you consider Mr. Sariri a friend of

21    yours personally?

22         MR. HUERTAS:  Yes.

23         MS. EUSTIS:  And your counsel indicated that the

24    principal address of JPK is in Virginia.  What is that address?

25         MR. HUERTAS:  8401 Greensboro Drive, Suite 960,

Case 24-10023-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. A Trial Transcript Docket Entries (Part II) Page 10 of 42

10

```
 1   McLean, Virginia 22102.

 2            MS. EUSTIS:  And do any other businesses operate out

 3   of that address?

 4            MR. HUERTAS:  Yes.

 5            MS. EUSTIS:  What businesses?

 6            MR. HUERTAS:  DP Capital LLC and its affiliates.

 7            MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --

 8            MR. HUERTAS:  No.

 9            MS. EUSTIS:  Okay.  Are there any other --

10            MR. HUERTAS:  The answer was no rent.

11            MS. EUSTIS:  I'm sorry.  Go ahead.

12            MR. HUERTAS:  Yeah.  The answer was no, no rent.

13            MS. EUSTIS:  Okay.  Are there any other locations

14   affiliated or associated with JPK NewCo?

15            MS. EUSTIS:  No.

16            MS. EUSTIS:  And just to be clear, JPK NewCo does not

17   own the space out of which it operates; is that correct?

18            MR. HUERTAS:  That is correct.

19            MS. EUSTIS:  Okay.  So there's no rental obligations

20   at all?

21            MR. HUERTAS:  That's correct.

22            MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23            MR. HUERTAS:  No employees.

24            MS. EUSTIS:  Are there day-to-day operations of JPK

25   NewCo?
```

Case 24-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. Exhibit A - Deposition Transcript of Gene Hurtas JPK NewCo LLC Page 11 of 42

11

 1          MR. HUERTAS:  No.

 2          MS. EUSTIS:  Okay.  Who maintains the books and

 3    records for JPK NewCo?

 4          MR. HUERTAS:  Can you please repeat the question?

 5          MS. EUSTIS:  Who maintains the books and records for

 6    JPK NewCo?

 7          MR. HUERTAS:  DP Capital LLC.

 8          MS. EUSTIS:  Okay.  Is there any individual at DP

 9    Capital LLC that is in charge of maintaining the books and

10    records of the Debtor?

11          MR. HUERTAS:  Yes.

12          MS. EUSTIS:  And who would that be?

13          MR. HUERTAS:  Yes.  Christina with an H.  Christina.

14          MS. EUSTIS:  Um-hum.

15          MR. HUERTAS:  Araujo, A-R-A-U-J-O.

16          MS. EUSTIS:  Great.  Thank you for spelling that for

17    me.

18          MR. HUERTAS:  Sure.

19          MS. EUSTIS:  Okay.  Are the owners of the Debtor still

20    SF NU, LLC and WCP Fund I LLC?

21          MR. HUERTAS:  Yes.

22          MS. EUSTIS:  Okay.  And do you recall what the split

23    of ownership is between WCP Fund I and SF NU?

24          MR. HUERTAS:  I do not recall.  I wonder if I can ask

25    my counsel to see if he has that.  I don't recall the split.

Case 24-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Transcript Docket Entries (Part II) JPK NewCo Page 12 of 42

12

```
 1              MS. EUSTIS:  Okay.  That's okay.

 2              MR. HUERTAS:  (Unintelligible) --

 3              MR. ORENSTEIN:  I believe it's -- I believe it's in

 4    the statement of financial affairs.

 5              MS. EUSTIS:  It is, Mr. Orenstein.  That's fine.  If

 6    he doesn't recall, that's fine.  I don't need the split.

 7              Mr. Huertas, do you know who the owners of SF NU, LLC

 8    are?

 9              MR. HUERTAS:  No.

10              MS. EUSTIS:  Do you have any ownership interest in SF

11    NU, LLC?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14    know who the members of this entity are?

15              MR. HUERTAS:  Yes, I know who the members are.

16              MS. EUSTIS:  And who are they?

17              MR. HUERTAS:  There are several members because it's a

18    fund in excess of thirty different LLCs or -- or individuals.

19    I don't have all of those right in my -- readily available, but

20    there is several members of the fund.

21              MS. EUSTIS:  Okay.  And do you have any interests

22    personally in WCP Fund I, LLC?

23              MR. HUERTAS:  Yes.

24              MS. EUSTIS:  Okay.  Okay.  So going back to JPK NewCo,

25    are there any other officers or directors other than SF NU, LLC
```

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. Exhibit A - Transcript Docket Entries (Part II) JPK NewCo LLC Page 13 of 42

13

1    and WCP Fund I LLC?

2            MR. HUERTAS:  No.

3            MS. EUSTIS:  Have there been any changes in the

4    ownership of JPK in the last year?

5            MR. HUERTAS:  No.

6            MS. EUSTIS:  Does anyone receive any compensation from

7    JPK NewCo LLC?

8            MR. HUERTAS:  No.

9            MS. EUSTIS:  Does JPK have an interest in any other

10   business entity?

11           MR. HUERTAS:  No.

12           MS. EUSTIS:  Has any individual or entity guaranteed

13   any portion of the Debtor's debts?

14           MR. HUERTAS:  Can you please repeat the question?

15           MS. EUSTIS:  Sure.  Are there any individuals or

16   entities that have guaranteed any portion of the Debtor's

17   business debts?

18           MR. HUERTAS:  No.

19           MS. EUSTIS:  Does the Debtor utilize an accountant?

20           MR. HUERTAS:  No.

21           MS. EUSTIS:  Okay.  And since the Debtor was formed

22   this year, there have been no obligations to file state or

23   federal tax returns; is that correct?

24           MR. HUERTAS:  That's correct.  Yeah.  It was done this

25   year, so we haven't had any obligation to file tax returns or

Case 25-00200-ELG Doc 46-31 Filed 09/02/25 Entered 09/02/25 18:06:59 Desc
Exhibit Ex. Ex. Thru Asr-Ar Docket Entries (Part II) JPK New Ct52 Lo 24 Page 14 of 42

14

1    any of that sort.

2          MS. EUSTIS:  Okay.  Other than Mr. Sariri, are there

3    any other creditors of JPK?

4          MR. HUERTAS:  I listed, besides Mr. Sariri, the

5    disputed litigation from 423 Kennedy St Holdings LLC and

6    Developer RE1 LLC as potential creditors --

7          MS. EUSTIS:  Okay.

8          MR. HUERTAS:  -- due to the litigation.

9          MS. EUSTIS:  And is there the potential that there

10    could be monetary amounts due and owing to Developer RE1 and

11    Kennedy St in connection with that litigation?

12          MR. HUERTAS:  Yes, there is a potential.  I don't -- I

13    don't think I owe them anything, but there's a potential for

14    the litigation.

15          MS. EUSTIS:  Okay.  But other than Developer RE1,

16    Kennedy St, and Sariri, there are no other creditors of JPK?

17          MR. HUERTAS:  That's correct.

18          MS. EUSTIS:  Has the Debtor loaned any money to any of

19    its owners, officers, or directors within the last year?

20          MR. HUERTAS:  No.

21          MS. EUSTIS:  Has JPK repaid any loan to any of its

22    owners, officers, or directors within the last year?

23          MR. HUERTAS:  No.

24          MS. EUSTIS:  Have any of its owners, officers,

25    directors loaned any money to the Debtor within the past year?

Case 25-10200-ELG Doc 461 Filed 09/02/25 Entered 09/02/25 19:06:59 Desc
Exhibit Ex. Exhibit A - Trial Ascript Docket Entries (Part 11) JPK NewCo 3 Page 15 of 42

15

1          MR. HUERTAS:  No.

2          MS. EUSTIS:  So other than the relationship that you

3     described with Mr. Sariri, does Mr. Sariri have any

4     relationship to SF NU or WCP and its members that you're aware

5     of?

6          MR. HUERTAS:  No, no.

7          MS. EUSTIS:  Okay.  And Mr. Sariri is not a relative

8     of yours; is that correct?

9          MR. HUERTAS:  That's correct.

10          MS. EUSTIS:  Has JPK NewCo sold or transferred any

11     property within the last year?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  Have there been any distributions paid by

14     JPK to anyone within the last year?

15          MR. HUERTAS:  No.

16          MS. EUSTIS:  And do Mr. Sariri, Developer RE1, or

17     Kennedy St have any liens on any of JPK's assets?

18          MR. HUERTAS:  No.

19          MS. EUSTIS:  And what are JPK's assets?

20          MR. HUERTAS:  JPK's assets are the three notes that it

21     holds today.

22          MS. EUSTIS:  So it holds three notes.

23          MR. HUERTAS:  That is correct.

24          MS. EUSTIS:  Can you describe those notes?

25          MR. HUERTAS:  The three notes are Energy Morocco LLC.

Case 24-00200-ELG Doc 46-31 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. Exhibit A - Trial Ascript - Docket Entries (Part II) JPK New 2154 of 2443 Page 16 of 42

16

1  Do you need an amount?

2  　　　MS. EUSTIS:  Yes, please.

3  　　　MR. HUERTAS:  $26,000.  There's a junior lien on 5501

4  First Street, Northwest, Washington, D.C., for 711,741.83.  And

5  there's one more junior lien on 419-423 Kennedy Street,

6  Northwest, Washington, D.C., for $1,678,387.

7  　　　MS. EUSTIS:  Okay.  Thank you.  And is Energy Morocco

8  current on its payments to JPK?

9  　　　MR. HUERTAS:  Not currently.

10  　　　MS. EUSTIS:  Are any payments being made on the junior

11  liens?

12  　　　MR. HUERTAS:  No.

13  　　　MS. EUSTIS:  Have any payments been made by Energy

14  Morocco since the loan was made to it?

15  　　　MR. HUERTAS:  Not.

16  　　　MS. EUSTIS:  Were any payments --

17  　　　MR. ORENSTEIN:  Wait, so the Energy Morocco -- oh, I'm

18  sorry.  The Energy Morocco loan is a note that balloons in

19  December.  And the two junior liens that he described, as you

20  know, that's the subject of litigation that's presently stayed.

21  　　　MS. EUSTIS:  Right.  So Mr. Huertas, my next question

22  was were any payments due under the note to Energy Morocco?

23  　　　MR. HUERTAS:  Were any payments due from Energy

24  Morocco?

25  　　　MS. EUSTIS:  Yes.

Case 25-10200-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 18:06:59  Desc
Exhibit Ex. Trial Ascript Docketing Case (Part II) JPK NewCo 155 of 2443  Page 17 of 42

17

```
 1                   MR. HUERTAS:  Yes, as form of a loan.

 2                   MS. EUSTIS:  Okay.  So Energy Morocco is in default

 3       under the note?

 4                   MR. HUERTAS:  Under the note as written, yes.

 5                   MS. EUSTIS:  Okay.  Since filing for bankruptcy, is

 6       the Debtor current with all of its post-petition obligations?

 7                   MR. HUERTAS:  Can I ask counsel to help answer the

 8       question?

 9                   MS. EUSTIS:  No.  I need to know if Energy Morocco --

10       or I'm sorry, not Energy Morocco.  I'm sorry.  JPK NewCo is

11       current on its post-petition obligations.

12                   MR. HUERTAS:  I believe it is.

13                   MS. EUSTIS:  What are JPK's post-petition obligations?

14       What are its operating costs?

15                   MR. HUERTAS:  Sorry.  Can you please repeat the

16       question?  There was some noise in the background.

17                   MS. EUSTIS:  Sure.  And if you are not me or Mr.

18       Huertas, can you please mute your line?  Thank you.

19                   Yes.  So what are JPK NewCo's operating expenses?

20                   MR. HUERTAS:  Currently, zero.

21                   MS. EUSTIS:  Has the Debtor had to borrow any money

22       post-petition?

23                   MR. HUERTAS:  Sorry.  Can you please repeat the

24       question?

25                   MS. EUSTIS:  Sure.  Has the Debtor had to borrow any
```

Case 24-10200-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 19:20:59  Desc
Exhibit Ex. E - Transcript Docketing for Case (Part II) JPK New 2156 of 2443  Page 18 of 42

18

1   money since filing for bankruptcy?

2           MR. HUERTAS:  No.  Outside of what we have, no.  We

3   haven't borrowed anything else.

4           MS. EUSTIS:  Okay.  And you indicated that there are

5   no operating expenses currently.  Have there ever been any

6   operating expenses for JPK?

7           MR. HUERTAS:  No.  No.

8           MS. EUSTIS:  Do you anticipate that there will be any

9   operating expenses for JPK?

10          MR. HUERTAS:  Not at this time.

11          MS. EUSTIS:  Okay.  So Energy Morocco, there was a

12  loan made to it, you indicated, in the amount of $26,000; is

13  that correct?

14          MR. HUERTAS:  That's correct.

15          MS. EUSTIS:  What is Energy Morocco?

16          MR. HUERTAS:  Energy Morocco is -- is a company -- is

17  in the business of renovating real estate assets.

18          MS. EUSTIS:  And have you or any of the entities that

19  you have an interest in ever loaned money to Energy Morocco

20  before?

21          MR. HUERTAS:  Yes.

22          MS. EUSTIS:  And what entities have made loans to

23  Energy Morocco before?

24          MR. HUERTAS:  WCP Fund I.

25          MS. EUSTIS:  And what were those loans in connection

1   with?

2           MR. HUERTAS:  I don't have that ready available.  We

3   had made similar loans to Energy Morocco in the past.

4           MS. EUSTIS:  Okay.  Do you recall what this loan would

5   be used for, the $26,000 loan?

6           MR. HUERTAS:  Renovation expenses.

7           MS. EUSTIS:  Associated with what project?

8           MR. HUERTAS:  Several projects.  It wasn't just

9   associated with one single project.

10          MS. EUSTIS:  Okay.  And do you know who the owners of

11  Energy Morocco are or the members?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  Mr. Huertas, did you discuss the filing

14  of an involuntary petition with Mr. Sariri?

15          MR. HUERTAS:  No.

16          MS. EUSTIS:  Did you discuss why JPK NewCo needed a

17  loan from Mr. Sariri with Mr. Sariri?

18          MR. HUERTAS:  Did I discuss why I needed the loan?

19          MS. EUSTIS:  Yes.

20          MR. HUERTAS:  I needed -- let me recall.  Very

21  briefly, I just requested a loan for $50,000.

22          MS. EUSTIS:  And you didn't have any -- did you have

23  any other discussions with Mr. Sariri regarding the loan?

24          MR. HUERTAS:  No.

25          MS. EUSTIS:  Did you negotiate the terms of the loan

Case 25-10200-ELG Doc 631 Filed 09/25/25 Entered 09/25/25 19:06:59 Desc
Exhibit Ex. Exhibit A - Trial Transcript Docket Conference (Part II) JPK NewCo Block 24 Page 20 of 42

20

1      with Mr. Sariri?

2              MR. HUERTAS:  In our initial conversation.

3              MS. EUSTIS:  In your initial conversation, you did,

4      or --

5              MR. HUERTAS:  Yeah.  We -- we discuss -- yeah, we --

6      in our initial -- yeah, I mean, yes, we discussed the terms of

7      the loan.

8              MS. EUSTIS:  Did anyone else discuss the terms of the

9      loan with Mr. Sariri on --

10             MR. HUERTAS:  No.

11             MS. EUSTIS:  -- JPK NewCo's behalf?

12             MR. HUERTAS:  No.  And was JPK NewCo represented by

13     counsel in connection with the negotiation of the loan with Mr.

14     Sariri?

15             MR. HUERTAS:  No.

16             MS. EUSTIS:  Was Mr. Sariri represented by counsel

17     that you're aware of in connection with the loan?

18             MR. HUERTAS:  Not that I'm aware of.

19             MS. EUSTIS:  Who drafted the note with Mr. Sariri?

20             MR. HUERTAS:  I believe was one of my counsels, one of

21     my legal counsels.

22             MS. EUSTIS:  One of your attorneys?  One of JPK's

23     attorneys?

24             MR. HUERTAS:  Yes.

25             MS. EUSTIS:  I just want to clarify who you mean by

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Transcript Docket Conference (Part II) JPK New Co LLC Page 21 of 42

21

1  "you" -- or "my".

2          MR. HUERTAS:  Right.  It has been a while.  I -- I

3  believe it was one of the JPK -- it -- I mean, it was one of my

4  counsels, not JPK counsels.  I don't -- I don't recall exactly

5  how -- how we went about it.

6          MS. EUSTIS:  Okay.  Would it have been Mr. VerStandig?

7          MR. HUERTAS:  I don't recall.

8          MS. EUSTIS:  Were there any other attorneys other than

9  Mr. VerStandig that were we're working with you at this time or

10  JPK at this time?

11          MR. HUERTAS:  Yeah, there were other people I was

12  working at that time.  There's some that I don't -- I don't

13  recall exactly.  I don't recall exactly who wrote it.

14          MS. EUSTIS:  Do you recall the names of the attorneys

15  that were working with JPK and you on this at the time?

16          MR. HUERTAS:  I don't think they were JPK attorneys.

17  That's the reason that I don't recall exactly who it was.

18          MS. EUSTIS:  Okay.  What about with Energy Morocco?

19  Who drafted the note between -- the note on behalf of Energy

20  Morocco?  Was that drafted by folks on behalf of JPK, or was

21  that drafted by Energy Morocco representatives?

22          MR. HUERTAS:  I -- I don't recall exactly how we wrote

23  that note either.  I think it was internally, we -- we had one

24  of our forms.  So I think I did it myself.  I don't recall

25  exactly how I did it.  I have to go back and see how -- how it

Case 25-10200-EG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Transcript Docket Entries (Part III) Page 22 of 42

22

1  was done.

2       MS. EUSTIS:  Okay.  Part of the involuntary being

3  filed against JPK, did Mr. Sariri either on his own or through

4  counsel make demand for payment on JPK?

5       MR. HUERTAS:  Yes, make demand for payments.

6       MS. EUSTIS:  Mr. Sariri made demand for payment?

7       MR. HUERTAS:  Correct.  Yeah.

8       MS. EUSTIS:  And if you could provide to your counsel

9  to provide to me any written demand for payment that was made

10  by Mr. Sariri, I would appreciate that.

11       MR. HUERTAS:  I don't think I have anything in

12  writing.  It was a phone conversation.  I told Mr. Sariri that

13  based on the nature of where we stand with the notes, we would

14  not be able to make payments.  And we told him that we were not

15  able to -- to make the financial obligation at this -- at this

16  time.

17       MS. EUSTIS:  Okay.  And the note was -- the money was

18  loaned by Mr. Sariri only almost a month before the involuntary

19  was filed; is that accurate?

20       MR. HUERTAS:  Yes, that is correct.

21       MS. EUSTIS:  Okay.  Okay.  Mr. Metz, do you have any

22  questions for Mr. Huertas?

23       MR. METZ:  I do not.  Thank you.

24       MS. EUSTIS:  Thank you.

25       Mr. Sadowski.

Case 25-10206-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. Exhibit A- Apt Docketed Conference (Part II) Page 2161 of 2443 Page 23 of 42

23

1    MR. SADOWSKI:  Yes, I do.  Jim Sadowski, counsel for

2    Developer RE1  and 423 Kennedy St Holdings LLC.

3         Good morning, Mr. Huertas.  To follow up on some of

4    the questions that Ms. Eustis asked, you mentioned that initial

5    conversation with Mr. Sariri about this promissory note or

6    loan.  What date did that happen, that initial conversations?

7         MR. HUERTAS:  I don't recall.

8         MR. SADOWSKI:  Well, was it six months ago?  Was it

9    two months ago?  What's your best range of when that happened?

10        MR. HUERTAS:  Before I received the funds.  I don't

11   recall exactly when.  I'm sorry.  Just before we received the

12   funds, obviously.

13        MR. SADOWSKI:  Okay.  And when did you receive the

14   funds?

15        MR. HUERTAS:  I -- I got to go look.  I don't have an

16   exact date.

17        MR. SADOWSKI:  Okay.  And how did you receive the

18   funds?

19        MR. HUERTAS:  I don't recall.  I'm sorry.

20        MR. SADOWSKI:  Was it a check?  Was it a wire

21   transfer?  Was it something else?

22        MR. HUERTAS:  I think it was a wire.  I'm not a

23   hundred-percent sure.

24        MR. SADOWSKI:  Okay.  Now, the bank account with

25   United Bank, when was that account opened?

Case 24-10020-ELG  Doc 461  Filed 09/25/25  Entered 09/25/25 19:06:59  Desc
Exhibit Ex. H Trial Ascript Docket Entries (Part II) JPK NewCo  Page 24 of 42

24

1          MR. HUERTAS:  In the earlier part of this year.  I

2     don't have a date.

3          MR. SADOWSKI:  Okay.  But you have bank statements,

4     right, that would show when that account was opened?

5          MR. HUERTAS:  I'm sure we have bank statements.

6          MR. SADOWSKI:  Okay.  And what money went in and out

7     of that account during the period of time that JP (sic) NewCo

8     had activity in that account?

9          MR. HUERTAS:  It was related to this loan and the

10    other funds was related to this litigation.

11         MR. SADOWSKI:  Okay.  Is United Bank the same bank

12    that's used by DP Capital?

13         MR. HUERTAS:  Same bank.

14         MR. SADOWSKI:  Same bank?  And the same bank that's

15    used by WCP Fund?

16         MR. HUERTAS:  Same bank.  Different account numbers.

17         MR. SADOWSKI:  Okay.  Whose idea was it to create JPK

18    NewCo?

19         MR. HUERTAS:  I believe I've already answered the

20    question related to JPK NewCo.

21         MR. SADOWSKI:  It was your lawyer's idea then?

22         MR. HUERTAS:  JPK NewCo was created under advice of

23    counsel.

24         MR. SADOWSKI:  Okay.  So it wasn't your idea to do

25    that, right?

Case 24-00200-ELG Doc 46-31 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. EE-Trial Ascript Docketed Entries (Part II) JPK NewCo Page 25 of 42

25

1                MR. HUERTAS:  I have already answered that question.

2                MR. SADOWSKI:  Is that a no?

3                MR. HUERTAS:  JPK NewCo was created under advice of

4        counsel.

5                MR. SADOWSKI:  Okay.  So it wasn't your idea, correct?

6                MR. HUERTAS:  JPK NewCo was created under advice of

7        counsel.

8                MR. SADOWSKI:  All right.  When was that advice given?

9        What time frame?

10               MR. HUERTAS:  Sometime late last year, early this

11       year.

12               MR. SADOWSKI:  And that advice that was given, was

13       that advice given by Mr. VerStandig?

14               MR. HUERTAS:  JPK NewCo was created under the advice

15       of counsel.

16               MR. SADOWSKI:  All right.  Which counsel?

17               MR. ORENSTEIN:  Daniel, you can answer that question.

18       You cannot tell him what was said, but you can tell him who

19       gave you the advice.

20               MR. HUERTAS:  Mr. Marc -- Mac VerStandig.

21               MR. SADOWSKI:  Okay.  Was there any other attorney

22       besides Mr. VerStandig involved in that advice?

23               MR. HUERTAS:  No.

24               MR. SADOWSKI:  Okay.  Who selected the name JP (sic)

25       NewCo?

Case 24-50200-CLC Doc 461 Filed 09/25/25 Entered 09/25/25 18:26:59 Desc
Exhibit Ex. A Transcript Docket Entries (Part III) Page 26 of 42

26

1             MR. HUERTAS: Sorry.

2             MR. SADOWSKI: So who came up with the name, JPK

3 NewCo? JPK, does that stand for someone's initials, or why did

4 you use JPK NewCo?

5             MR. HUERTAS: Yeah, it's, like, initials

6             MR. SADOWSKI: Okay. And whose initials are JPK?

7             MR. HUERTAS: The initial JPK is Joseph P. Kennedy.

8             MR. SADOWSKI: Okay. All right. All right. Is that

9 just a political person that you decided to use his initials,

10 as opposed to, like, JPK or RFK?

11             MR. HUERTAS: I just like the initials.

12             MR. SADOWSKI: Okay. And the preparation of the note

13 with Mr. Sariri, I believe you said you weren't sure who

14 prepared that. Did JPK NewCo get a bill for the preparation of

15 that note from any attorney?

16             MR. HUERTAS: No.

17             MS. EUSTIS: How about the preparation of the note

18 with Energy Morocco? Did JPK get the legal bill for

19 preparation of that note?

20             MR. HUERTAS: I don't think so. I don't know. It

21 didn't.

22             MR. SADOWSKI: Has JPK incurred any legal expenses

23 before it filed for bankruptcy?

24             MR. ORENSTEIN: And just as a correction. People keep

25 saying before it filed bankruptcy. It's involuntary.

1        MR. SADOWSKI:  Sorry.  You're right.  Before the

2   involuntary petition was filed on July 3rd, had JPK incurred

3   any legal expenses?

4        MR. HUERTAS:  I don't recall nothing outside of this.

5        MR. SADOWSKI:  All right.  Who's paying the bills to

6   Mr. VerStandig related to any pre-petition services that he

7   gave JPK NewCo?

8        MR. HUERTAS:  Sorry.  Repeat the question.

9        MR. SADOWSKI:  Yeah.  Before July 3rd, 2023, that's

10  the petition date.  When I say pre-petition, that means before

11  July 3rd, 2024.  Sorry.  Who was paying the legal bills for Mr.

12  VerStandig to give advice about forming JPK NewCo?  Was that

13  being paid by WCP Fund, DP Capital, or somebody else?

14        MR. HUERTAS:  I don't recall exactly the entity, but

15  it's one of -- one of DP Capital affiliates, I'm sure.

16        MR. SADOWSKI:  Okay.  Now, was it ever discussed that

17  one reason to create JPK NewCo was to be able to put that

18  company into bankruptcy so that the litigation with my clients

19  could be removed to bankruptcy court?

20        MR. ORENSTEIN:  Objection.  That would be attorney-

21  client privilege if such a conversation took place.

22        MR. SADOWSKI:  Okay.  Mr. Huertas, you're not going to

23  answer that --

24        MR. ORENSTEIN:  I'm instructing him not to answer that

25  question.

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. E Trial Ascript Docket Entries (Part II) JPK NewCo LLC 2443 Page 28 of 42

28

1          MR. SADOWSKI:  Okay.  What were the business reasons

2     for forming JPK NewCo?

3          MR. HUERTAS:  JPK NewCo was formed because at a time

4     after the mediation process that we had, I think sometime late

5     last year, there were some negotiations around how to make

6     those liens and ourselves have an agreement.  And the only --

7     the best way to -- to make that agreement work was to take the

8     troubled assets into one entity, as we had a discussion related

9     to participation.  So the only way to do it, like I said, was

10    this way, and it was done under advice of counsel.

11         MR. SADOWSKI:  Okay.  Now, when did the mediation

12    happen between the defendants in the litigation with my

13    clients?  When did that mediation occur with JAMS and Judge

14    Levie?  Do you remember the dates?

15         MR. HUERTAS:  I don't remember the dates, but I -- I

16    think sometime late last year or (unintelligible) I -- I don't

17    exactly when, but it was -- it was cold.

18         MR. SADOWSKI:  Yeah.  Let me see if I can help you

19    with that, Daniel, because I know it was a while ago.  On my

20    calendar, on January 9th, I have a time entry -- I'm sorry, a

21    calendar entry for mediation of JAMS, January 9th, 2024.  Does

22    that refresh your recollection as to when the first mediation

23    session was held?

24         MR. HUERTAS:  I mean, you want me to -- you want me to

25    take your word for it, then I know it was early this year or

Case 24-01200-CG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc Exhibit Ex. B - Trial Ascript Docket Entry Cred Part II) JPK New 2167 of 2443 Page 29 of 42

29

1  sometime late last year.  I don't recall exactly.  It was a

2  while ago --

3          MR. SADOWSKI:  Yeah.

4          MR. HUERTAS:  -- like you said very well.  But it was

5  before JPK was formed.

6          MR. SADOWSKI:  Okay.  And when was the last mediation

7  session before Jams?  Do you remember that date?

8          MR. HUERTAS:  No, I don't have it.  I don't remember

9  the date.

10          MR. SADOWSKI:  Well, was it within a couple weeks of

11  the first session, or what's your recollection of that?

12          MR. HUERTAS:  I -- I don't recall.

13          MR. SADOWSKI:  Okay.  Do you know why the first

14  mediation session was continued to a second date in January?

15          MR. HUERTAS:  I mean, like I said, I -- I don't

16  recall.  It was a while ago.

17          MR. SADOWSKI:  Okay.

18          MR. HUERTAS:  I know that --

19          MR. SADOWSKI:  When did the -- okay.  When did the

20  mediation end?

21          MR. HUERTAS:  I don't understand your question.  When

22  did it end?

23          MR. SADOWSKI:  Well, my recollection from my calendars

24  and my time sheets and my bills that I sent to the client is

25  that there were two mediation sessions, one on January 9th, and

Case 25-10200-ELG   Doc 461   Filed 09/25/25   Entered 09/25/25 18:06:59   Desc
Exhibit Ex. Ex. Trial Ascript Docket Entries (Part II) Phev 2168 of 24 Page 30 of 42

30

1    the second one on January 25th.  And the mediation concluded on

2    January 25th.  Does that sound about right in terms of timing?

3              MR. HUERTAS:  Unfortunately, you'll need to go by the

4    date you are stating.  I don't want to use your dates.  For --

5    like I said, it was some time before either late last year or

6    early this year.  I don't recall exactly.

7              MR. SADOWSKI:  Okay.  What was the reason the

8    mediation ended?

9              MR. HUERTAS:  I don't recall.

10             MR. SADOWSKI:  Well, isn't that true, Mr. Huertas,

11   that you were the one who told the mediator -- or sorry, who

12   ended the mediation?

13             MR. HUERTAS:  I don't recall.

14             MR. SADOWSKI:  Okay.  What would help refresh your

15   recollection as to why the mediation ended?  Do you have any

16   business records?  Do you have any notes?

17             MR. HUERTAS:  I don't have any notes.

18             MR. SADOWSKI:  Okay.  Returning to the schedules that

19   were filed -- sorry.  Let's talk about SF NU, LLC.  Now, Ms.

20   Eustis asked you if you knew who the owners are, and you said

21   you don't know.  Well, who do you communicate with when you

22   want to communicate with SF NU, LLC?

23             MR. HUERTAS:  I communicate with Mr. Shrensky, Jason

24   Shrensky.

25             MR. SADOWSKI:  Could you spell his name, please, for

Case 25-01020-EG Doc 46-31 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. 31 Trial Ascript Docketed Conference (Part II) Page 2169 of 2443 Page 31 of 42

31

1    the record?

2         MR. HUERTAS:  Jason, J-A-S-O-N, Shrensky,

3    S-H-R-E-N-S-K-Y.

4         MR. SADOWSKI:  Okay.  Other than Mr. Shrensky, is

5    there anyone else that you communicate with at SF NU, LLC?

6         MR. HUERTAS:  No.

7         MS. EUSTIS:  Okay.  Why were the notes -- the two

8    notes that I think you've described it as distressed assets or

9    tainted assets, why were they transferred to SF NU, LLC?

10        MR. HUERTAS:  I don't think that's a question for me.

11   I -- I already answer the question related to -- to that so --

12        MR. SADOWSKI:  Oh, because I had a question for you.

13        MR. HUERTAS:  I'm (unintelligible) question.  Okay.

14        MR. SADOWSKI:  Because I have a question for you, Mr.

15   Huertas.

16        MR. HUERTAS:  Well, I can't hear you.  No one answered

17   a question for a different company.  I don't know.

18        MR. SADOWSKI:  Well, you know the answer to that

19   question, correct?

20        MR. HUERTAS:  I don't have an answer for you.

21        MR. SADOWSKI:  So you don't know why the notes were

22   transferred to SF NU, LLC?

23        MR. HUERTAS:  Hold on.  Repeat that again.

24        MR. SADOWSKI:  You don't know why the notes were

25   transferred to SF NU, LLC?

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. E - Trial Transcript Docketed in Case (Part III) Page 32 of 42

32

1          MR. HUERTAS:  Why the notes were transferred to SF NU,

2     LLC?  I don't -- I don't -- I don't understand your question.

3          MR. SADOWSKI:  Okay.  These notes that are being held

4     by JPK NewCo were originally held by SF NU, LLC, correct.

5          MR. HUERTAS:  One of them.  That's incorrect.

6          MR. SADOWSKI:  Okay.

7          MR. HUERTAS:  There's one of them.

8          MR. SADOWSKI:  All right.  Which one was currently

9     held by SF NU, LLC?

10          MR. HUERTAS:  I got to go look.  I don't have it

11     exactly, but I think it's the smaller -- the smaller one.

12          MR. SADOWSKI:  Okay.  So you think that -- well, I

13     guess I can just look at your continuation sheet.  So you think

14     that was the second -- where did I see that?

15          MR. ORENSTEIN:  The smaller one would be First Street.

16          MR. SADOWSKI:  Yeah.  Okay.  Yeah, I'm not real good,

17     Mr. Orenstein, with the street addresses.  I'm better with the

18     entity names, but okay.  So and the other one was -- what's the

19     other one, and why was that other one transferred from the

20     original holder to SF NU, LLC?

21          MR. HUERTAS:  I don't -- I don't understand question.

22     You're asking me why the other note was transferred to SF NU,

23     LLC?  That never happened.

24          MR. SADOWSKI:  Correct.  Correct.

25          MR. HUERTAS:  I don't understand your -- I -- I -- I

Case 24-50200-EG Doc 461 Filed 09/25/25 Entered 09/25/25 18:20:59 Desc
Exhibit Ex. H Trial Ascript Docket Conference (Part II) JPK New Co. Page 33 of 42

33

1    don't understand your question.

2           MR. SADOWSKI:  Well, I'm trying to figure out what the

3    business purpose is for these notes getting transferred from

4    one entity to the next to the next.  And the business purpose

5    that we were told in some of your filings and in your testimony

6    was that these were tainted assets, and there was some sort of

7    settlement agreement that might be created to hold these assets

8    and figure out a settlement if the assets were held by somebody

9    else.  So I'm trying to figure out why was there a business

10   need to do that.  No settlement agreement was reached, correct,

11   between --

12          MR. ORENSTEIN:  Mr. Sadowski, I'm going to -- Mr.

13   Sadowski, I'm going to interrupt you for a moment, because I'm

14   not sure if you're confusing your own questions.  You asked him

15   why the notes were transferred to SF NU.  And for purposes of

16   the bankruptcy, he's already testified that WCP and SF NU

17   transferred the notes to JPK.  So I'm not sure if you're mixing

18   up your question.

19          MR. SADOWSKI:  Yeah, well, I'm trying to figure out

20   two pieces of that, Mr. Orenstein, and thanks for that because

21   maybe my questions aren't as great as I thought they should be.

22   I want to find out why they went from WCP Fund I LLC to SF NU,

23   and then why they then went from SF NU to JPK NewCo.  There's

24   two steps there because that's where I'm headed with this.

25          So the first question is why transfer the notes out of



Case 24-00200-ELG Doc 61 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Transcript Docket Conf. (Part II) Page 2172 of 2443 Page 34 of 42

34

 1   WCP Fund I to SF NU, LLC to begin with.  And then the second

 2   part of that question is why then transfer them again to JPK

 3   NewCo.

 4          MR. HUERTAS:  Okay.  So -- so the first question is

 5   related to internal business practices.  That's probably not

 6   the right forum for me to talk about WCP's or DP Capital

 7   business practices.  How we do business.

 8          The second question, I can't really answer your

 9   question as far as how or why we transfer the note from the

10   fund to JPK NewCo.  And I said to you multiple times that it

11   was under the advice of counsel.

12          MR. SADOWSKI:  Okay.  So is there any other reason

13   other than the advice of counsel why the notes were transferred

14   to JPK NewCo?

15          MR. HUERTAS:  I already gave you an answer.

16          MR. SADOWSKI:  That was the only reason they were

17   transferred, because of advice of counsel?

18          MR. HUERTAS:  On advice of counsel, correct.

19          MR. SADOWSKI:  Okay.  One second just to look through

20   my notes.

21          Now, you mentioned that the WCP Fund I is comprised

22   of -- and I'm not trying to pin you down exactly to what you

23   said, but I wrote down thirty different LLCs and individuals

24   and that you have an interest in WCP Fund I.  What is the

25   extent of your interest in WCP Fund I?

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. E - Trans. Ald. Docket - Conf. Cred. Part II JPK Nov 2073 - Page 35 of 42

35

1          MR. HUERTAS:  I'm a member of the fund.

2          MR. SADOWSKI:  Individually?  And what percentage do

3    you own?

4          MR. HUERTAS:  I own (unintelligible) percent.

5          MR. ORENSTEIN:  I'm going to -- I'm going to object to

6    this question.  I'm going to instruct him not to answer.  This

7    doesn't seem to have anything to do with the operations of JPK

8    or the issues in the JPK case.

9          It's your position that this is relevant with regard

10   to the motion to dismiss, which the United States Trustee has

11   filed.  We're in the process of scheduling -- in the process of

12   having a scheduling order entered that will allow for discovery

13   in this case.  And I think if you're going to ask questions

14   about WCP, it's appropriate for WCP to have its own counsel

15   present at that time to object to the extent that I think

16   it's -- to the extent that he thinks that it's necessary.  I

17   don't think this is appropriate for a 341 meeting.

18         MR. SADOWSKI:  Well, you didn't object before when he

19   gave that answer, Mr. Orenstein.  I'll ask a different

20   question.

21         Mr. Huertas, other than an individual interest in WCP

22   Fund I, do you have an individual interest in any of the LLCs

23   that make up WCP Fund I?

24         MR. ORENSTEIN:  I'm going to give the -- I'm going to

25   make the same objection.  For the reasons stated, I'm going to

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. Ex. Trans. Audit Docket Conference (Part II) PK New 2074 of 2443 Page 36 of 42

36

1    instruct him not to answer that.

2            MS. EUSTIS:  Mr. Sadowski, this is Kristen Eustis.  I

3    agree with Mr. Orenstein that Mr. Huertas would be entitled to

4    have his own personal counsel present for anything further with

5    respect to his personal interests in these entities.

6            MR. SADOWSKI:  Okay.  Got it.  Okay.  Objection's been

7    noted.  Thank you, Counsel.

8            Mr. Huertas, how did you arrive at the numbers that

9    were used on the schedules to come up with the $2.4 million?

10   Where did those amounts come from?

11           MR. HUERTAS:  Those numbers, I believe, were the

12   unpaid principal balance at the time that I -- that I filled

13   this out.

14           MR. SADOWSKI:  Okay.  So you have some accounting

15   somewhere that shows as of the date you prepared the schedules,

16   X dollars was owed under each of the lien -- of the notes?

17   Sorry.

18           MR. HUERTAS:  Well, that's a face amount.  That's

19   the -- that's the face amount of the current value.  That's

20   what I was asked.

21           MR. SADOWSKI:  Okay.

22           MS. EUSTIS:  You asked me something different.  I'm

23   just clarifying that when I completed the schedules, it was

24   based on what's the total face amount and the current value.

25           MR. SADOWSKI:  Okay.  So getting to Energy of (sic)



Case 24-10020-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Trial Ascript - Docket Entries (Part III) Page 2175 of 2443 Page 37 of 42

37

1   Morocco LLC, was this $26,000 -- did that serve some other

2   purpose for Energy of (sic) Morocco LLC?  In other words, did

3   the Debtor use those funds -- I'm sorry.  Let me ask it a

4   different way.  Does Energy of (sic) Morocco LLC received draws

5   from DP Capital under various construction projects?

6           MR. HUERTAS:  I'm not going to answer that question.

7   It's related to a separate business, and I'll do it -- I'll do

8   it when my counsel is present for me to answer any other

9   questions related --

10          MR. SADOWSKI:  Okay.  Well, how about the --

11          MR. HUERTAS:  -- (unintelligible) DP Capital.

12          MR. HUERTAS:  How about this $26,000?  Why did Energy

13  of (sic) Morocco need that money at that time?

14          MR. HUERTAS:  They request additional funds for the

15  renovations, and we did a loan for that purpose.

16          MR. SADOWSKI:  And was JPK's business to be loaning

17  money to people for renovations?

18          MR. HUERTAS:  JPK business is again the holding

19  company and the holding company of loans -- of notes.

20          MR. SADOWSKI:  But it wasn't in the loaning business,

21  was it?

22          MR. HUERTAS:  Not before.

23          MR. SADOWSKI:  Okay.  How did JPK expect to pay Mr.

24  Sariri back the money that Mr. Sariri loaned JPK?

25          MR. HUERTAS:  Hopefully, some of these loans, we'll

Case 25-10200-ELG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. E - Trial Ascript Docket Entree (Part II) JPK New 2176 of 2443 Page 38 of 42

38

1    start paying.  And for the payments of the loans, either from

2    Energy Morocco or once the payments for 423 Kennedy and

3    Developer RE1 start happening, we will take care of the

4    creditors.

5         MR. SADOWSKI:  Okay.  And when did JPK expect the --

6         MR. HUERTAS:  (Unintelligible).

7         MR. SADOWSKI:  When did JPK expect that either of my

8    clients were going to start paying money on those loans?

9         MR. HUERTAS:  I don't know.  That's a great question

10   for you and your clients.

11        MR. SADOWSKI:  No, that's a question for you.  You

12   said that you expected -- you just said that you expected that

13   at some point you would pay Mr. Sariri back with money that you

14   got from Developer RE1 and 423 Kennedy.  So what led JPK NewCo

15   to believe that there was going to be money coming in from

16   those two loans in the next year?

17        MR. HUERTAS:  I don't know.  I think if there is

18   payments received -- you ask me a question how I'm -- how I

19   am -- how am I going to pay Mr. Sariri, and the answer to your

20   question was out of the payments that we'll receive in the

21   future, who knows when, related to the Energy Morocco, as well

22   as the junior liens that are in here.

23        MR. SADOWSKI:  All right.  Just one second, Ms.

24   Eustis.

25        All right.  That concludes my questions, Ms. Eustis.



Case 25-00200-ELG Doc 431 Filed 09/25/25 Entered 09/25/25 19:20:59 Desc
Exhibit Ex. H Trial Ex. Alt Docket of Case (Part H) JPK New CoLLC Page 39 of 42

39

1          Thank you, Mr. Huertas and Mr. Orenstein.

2          MS. EUSTIS:  Thank you.

3          Ms. Burgers, do you have any questions?

4          Okay.  Ms. Burgers had indicated at the beginning of

5     this meeting that she might have to drop off, so it appears

6     that she has.

7          Mr. Huertas, what is the Chapter 11 plan for JPK?

8     It's my understanding from your testimony that there's no

9     revenue currently coming in, that the notes that JPK holds are

10    no one is making payment on those notes.  So how does JPK

11    propose that it's going to exit bankruptcy?

12         MR. HUERTAS:  Sure.  Thank you for the question.  At

13    some point, our goal through the resolution of some of these

14    issues related to 423 Kennedy St and Developer RE1 LLC is

15    having the ability, once JPK NewCo is able to bring those funds

16    from these notes, being able to pay back its creditors so --

17         MS. EUSTIS:  And the plan is due, I believe, in two

18    weeks.  And so do you anticipate that those funds will start

19    coming in by the end of the year?

20         MR. HUERTAS:  I don't know.  I -- I'm not an expert on

21    this.  I have no idea.  But at this time, right now, we have

22    three -- two delinquent junior liens in -- in default.  And

23    unfortunately, the Energy Morocco is in default as well.

24         MR. ORENSTEIN:  This is Orenstein.

25         MS. EUSTIS:  Go ahead, Mr. Orenstein.

1          MR. ORENSTEIN:  Yeah, thanks.  I'm sure you saw the

2     status report that we filed last week The money from Energy

3     Morocco is due under the note to be paid in December.  We're

4     hoping that that will come in by that time.  The litigation

5     with 423 Kennedy and Developer RE1, as you know, is stayed

6     pending the Court's decision on whether or not this bankruptcy

7     case will be dismissed.  We're hoping that it's not going to be

8     dismissed and at that point, that the Court will lift the stay

9     so that the litigation can continue.

10          And you're right, the -- I believe it's -- I want to

11     say, off the top of my head, it's the 9th that the plan is due.

12     I may be wrong about that, but it's within the next two weeks.

13     And the plan, generally speaking, will provide that payments

14     will be made from the collection of these notes as and when the

15     payments are received.

16          MS. EUSTIS:  Okay.  All right.  Well, thank you.  I

17     appreciate that.

18          Does anyone else have any questions for Mr. Huertas

19     today?

20          Okay.  Hearing none.  I'm going to conclude this

21     meeting today.  And just, Mr. Orenstein and Mr. Huertas, for

22     your benefit, that does not mean I don't have any more

23     questions for you.  I do, and I do anticipate getting some

24     discovery out in connection with the motion to dismiss.  So I

25     just wanted to make sure that was clear for the record that by

 1     concluding this meeting of creditors, that does not mean that

 2     my office does not have any further questions for you in

 3     relation to its motion to dismiss.

 4         But with that, this --

 5         MR. ORENSTEIN:  We understand, and Mr. Huertas is

 6     aware of the fact that you may want to take depositions of JPK

 7     or potentially Mr. Huertas himself.

 8         MS. EUSTIS:  Great.  Thank you, Mr. Orenstein.

 9         And thank you all so much for your time today.  I will

10     conclude this meeting.

11       (Whereupon the hearing was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 24-50200-EGG Doc 461 Filed 09/25/25 Entered 09/25/25 18:06:59 Desc
Exhibit Ex. H Trial Ascript Docket Entries (Part II) Pk New 2180 of 2443  Page 42 of 42

42

```
 1                              CERTIFICATE

 2     I certify that the foregoing is a correct transcript from the

 3     electronic sound recording of the proceedings in the above-

 4     entitled matter.

 5

 6

 7

 8     /s/

 9     _____          Date: November 13, 2024

       ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## CONSENT OF THE MEMBERS OF
### 5505 1st St Holdings LLC

The undersigned, Member(s) of 5505 1st St Holdings LLC a District of Columbia Limited Liability Company, adopt the following resolutions:

**WHEREAS,** resolutions were previously adopted by 5505 1st St Holdings LLC whereby the then existing members of 5505 1st St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS,** the previous resolutions were adopted in error and to correct the error therein, 5505 1st St Holdings LLC hereby executes the following resolutions;

**WHEREAS,** Coloma River Holdings LLC, a District of Columbia limited liability company is the sole member of the Company;

**WHEREAS,** Charles Paret is a sole member of Coloma River Holdings LLC; and

**WHEREAS,** Coloma River Holdings LLC hereby relinquishes its membership interest and resigns from membership in 5505 1st St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS,** the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED,** the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED,** that Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, hereby relinquishes its membership interest and resigns from membership of 5505 1st St Holdings LLC in exchange for the PREVIOUS PAYMENT.

**RESOLVED,** in exchange for PREVIOUS PAYMENT, NT Group LLC shall be the sole member of the Company.

**RESOLVED,** Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, Charles Paret, sole member of Coloma River Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED,** that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Coloma River Holdings LLC, sole member of the 5505 1st St Holdings LLC, hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**5505 1st St Holdings LLC**
a District of Columbia limited liability company

By: COLOMA RIVER HOLDINGS LLC, its
    Managing Member and Sole Member

          DATE: December 30, 2021

By: _____
    Charles Paret, its
    Managing Member and Sole Member


**ACKNOWLEDGED, ACCEPTED AND AGREED:**

**NT GROUP LLC,**
a Delaware limited liability company

          DATE: December 30, 2021

MEMBER:

_____
By: Mel Negussie, managing member

## UNANIMOUS WRITTEN CONSENT OF THE
## MEMBERS OF
## 71 Kennedy St Holdings LLC

The undersigned, Member(s) of 71 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company ("Company"), adopt the following resolutions:

**WHEREAS**, resolutions were previously adopted by 71 Kennedy St Holdings LLC whereby the then existing members of 71 Kennedy St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS**, the previous resolutions were adopted in error and to correct the error therein, 71 Kennedy St Holdings LLC hereby executes the following resolutions;

**WHEREAS**, Charles Paret is the sole member of 71 Kennedy St Holdings LLC;

**WHEREAS**, Charles Paret hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously been paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS**, the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED**, that Charles Paret, sole member of 71 Kennedy St Holdings LLC, hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for PREVIOUS PAYMENT.

**RESOLVED**, in exchange for PREVIOUS PAYMENT, NT Group LLC shall become the sole member of the Company.

**RESOLVED**, Charles Paret, sole member of 71 Kennedy St Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED**, that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Charles Paret, sole member of 71 Kennedy St Holdings LLC hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**71 Kennedy St Holdings LLC**
a District of Columbia limited liability company
**MEMBER:**

Charles, Paret, its
Sole member

**DATE: December 30, 2021**

**ACKNOWLEDGED, ACCEPTED AND AGREED:**

**NT GROUP LLC,**
a Delaware limited liability company

MEMBER:

By: Mel Negussie, managing member

**DATE: December 30, 2021**

## AFFIDAVIT OF CHARLES PARET

I, Charles Paret (the "Affiant"), solemnly swear under the penalties of perjury and upon personal knowledge and due inquiry that the following statements are true:

1.      That I am the organizer of Coloma River Holdings, LLC a Delaware Limited Liability Company organized on May 26, 2016 ("Coloma"). I am currently and at all times since its May 26, 2016 inception, until the date of this Affidavit, the sole owner/member and sole manager of Coloma.

2.      That I am the organizer of Charles Paret, LLC a District of Columbia Limited Liability Company organized on January 8, 2014 ("Paret LLC"). I am currently and at all times since its January 8, 2014 inception, until the date of this Affidavit, the sole owner/member and sole manager of Paret, LLC.

3.      That I am the organizer of 423 Kennedy St Holdings, LLC a District of Columbia Limited Liability Company organized on May 20, 2016 ("Kennedy Street").

4.      The initial owners of Kennedy Street were myself, Mr. Charles Paret, and Mr. Adam Lobene.  On or about April 17, 2017 Mr. Paret and Mr. Lobene entered into an agreement whereby all of Mr. Lobene's right title and interest to Kennedy Street was purchased by Mr. Paret for the sum of $30,000.  Such $30,000 was paid to Mr. Lobene and as a result I, Charles Paret was then the 100% holder of all right title and interest in and to Kennedy Street.

5.      That on or about July 31, 2017 Mr. John Gosnell acquired an equity interest in and to Kennedy Street. whereupon the owners of Kennedy Street were then Paret LLC and Mr. John Gosnell.

Case 25-00200-ELG Doc 46-34 Filed 09/25/25 Entered 09/25/25 18:06:39 Desc
Exhibit No. 4 - Affidavit of Charles Paret (47 Pages) Filed Page 2 of 3
Case 24-00262-ELG Doc 46-34 Filed 09/25/25 Entered 09/25/25 18:06:39 Desc
Exhibit No. 4 - Affidavit of Charles Paret (47 Pages) Page 2 of 3

6.      That on November 27, 2018, Brighton-KSDC, LLC acquired an equity interest in and to Kennedy Street. As of such November 27, 2018 date, the owners of Kennedy Street were Brighton-KSDC, LLC, Paret LLC, and Mr. John Gosnell.

7.      That on September 13, 2019, I Charles Paret executed an Assignment of Membership Interest whereby I purported to transfer 50% of all right title and interest from Paret, LLC to Coloma. This transfer was in error, and deemed null and void. For the avoidance of doubt, this error was further rectified by the joining of Coloma to the transfer to Mel Melaku Negussie referenced in paragraphs 9 and 10 below.

8.      That on January 17, 2020, Mr. John Gosnell did redeem all of his right title and interest in and to Kennedy Street. As a result of this transaction all of the membership interests in Kennedy Street were held by Brighton-KSDC, LLC and Paret, LLC.

9.      That simultaneously with the making of a loan from Washington Capital Partners "WCP") to Kennedy Street, WCP has required that the sole holders of membership interest in and to Kennedy Street be Brighton-KSDC, and Mel Melaku Negussie. I, Charles Paret do as of the date of closing on the WCP loan, transfer all right title and interest held by Paret LLC, to Mel Melaku Negussie.

10.     For the avoidance of doubt, I Charles Paret, have caused each of myself, Paret LLC and Coloma to join in the foregoing transfer to Mel Melaku Negussie such that the ownership of Kennedy Street is now as follows:

| | |
|---|---|
| Brighton-KSDC, LLC | 50% |
| Mel Melaku Negussie | 50% |

11.     I, Charles Paret also hereby provide further assurance that if any interests I may have either personally or through an entity of which I am a member, in either the property that is the

2

subject of this loan from WCP, or in an entity who holds an interest in said property are later discovered, I will execute any and all necessary documents to effect the complete transfer of said interest to Kennedy Street, or any successors in interest thereto.

This affidavit is provided for the benefit of Washington Capital Partners, LLC and Brighton-KSDC, LLC, such that they are entitled to rely on the same to ensure that the making of the loan is enforceable against Kennedy Street and not susceptible to fraud.

I HEREBY CERTIFY AS OF THIS 31st DAY OF JANUARY, 2020, UNDER PENALTIES OF PERJURY THAT THE MATTERS AND FACTS HERE AND ABOVE SET FORTH ARE UPON MY PERSONAL KNOWLEDGE AND ARE TRUE.

_____
Charles Paret

STATE OF VIRGINIA
COUNTY OF FAIRFAX

I hereby certify that, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Charles Paret, known to me (or satisfactorily proven) to be the persons whose name is subscribed to the within instrument, and acknowledged the same for the purposes therein contained, and further acknowledged the foregoing instrument to be their act, and in my presence signed and sealed the same, giving oath under penalties of perjury that the consideration recited herein is correct.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires  05 · 31 · 2021

PARAS SAXENA
Notary Public-Reg. # 7100494
COMMONWEALTH OF VIRGINIA
My Commission Expires May 31, 2021

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

CHARLES PAXTON PARET

*Debtor.*

DEVELOPER RE1 LLC,

*Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL
HUERTAS; SF NU, LLC; and WCP FUND I
LLC,

*Defendants.*

423 KENNEDY ST HOLDINGS LLC,

*Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL
HUERTAS; and WCP FUND I LLC,

*Defendants.*

Case No. 23-00217-ELG

Chapter 7

Adv. Proc. No. 24-10023-ELG

## NOTICE OF HEARING AND OPPORTUNITY TO OBJECT TO PLAINTIFF'S RENEWED MOTION FOR REMAND AND TO SUSPEND DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINES

NOTICE IS HEREBY GIVEN that the Plaintiffs, by undersigned counsel, have filed a

Renewed Motion for Remand and to Suspend the Defendants' Motions, Hearings, and Related

Response Deadlines ("Motions").  The Motions seek to remand this case back to D.C. Superior

Court and to suspend all related hearings for motions filed and noticed by the Defendants (ECF. Nos. 44 - 45).

<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

NOTICE OF DEADLINE TO OBJECT:  If you do not want the court to grant the Motions, or if you want the Court to consider your views on the Motions, then on or before **April 10, 2025,** you or your attorney must file with the Court a written objection to the Motions, together with the proposed order required by Local Bankruptcy Rule 9072-1.  The objection and proposed order must be filed with the Clerk of the Bankruptcy Court, E. Barrett Prettyman U.S. Courthouse, 3rd and Constitution Avenue, N.W., Washington, D.C. 20001.  The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

If you mail, rather than deliver, your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the court will receive it by the date stated above. You must also mail a copy of your objection to:

> James D. Sadowski, Esq.
> Greenstein DeLorme & Luchs, P.C.
> 801 17th Street, N.W., Suite 1000
> Washington, DC  20006
> *Counsel for Plaintiffs Developer RE1, LLC*
> *and 423 Kennedy St. Holdings, LLC*

NOTICE OF HEARING:  A hearing on the Motions has been schedule before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 a.m.  The hearing will be held in a hybrid in-person or Zoom for Government format. All participants may choose to appear either (a) in-person in Courtroom 1, United States Bankruptcy

Court for the District of Columbia, E. Barrett Prettyman Courthouse, 333 Constitution Ave. NW,

Washington, DC 20001 or (b) by video using Zoom for Government.  All parties participating by

Zoom for Government before Judge Gunn should review and be familiar with the Virtual

Hearing expectations.  For the Zoom meeting code, you may contact Courtroom Deputy Aimee

Mathewes by email at Aimee_Mathewes@dcb.uscourts.gov.

If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motions and may enter an order granting the relief requested.

Parties in interest with questions may contact the undersigned.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  March 25, 2025   /s/ James D. Sadowski
       James D. Sadowski, DC Bar. No. 446635
       Alexandria J. Smith, DC Bar. No. 1673542
       801 17th Street, N.W. - Suite 1000
       Washington, DC  20006
       Telephone: (202) 452-1400 ext. 5407
       Email:   jds@gdllaw.com; ajs@gdllaw.com
       *Counsel for Plaintiffs Developer RE1, LLC and*
        *423  Kennedy St. Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of April, 2025, a true copy of this Notice of

Hearing and Opportunity to Object to Plaintiffs' Renewed Motion for Remand and to Suspend

the Defendants' Motions, Hearings, and Related Response Deadlines was served electronically

and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

       /s/ James D. Sadowski
       James D. Sadowski

The order below is hereby signed.

Signed: April 1 2025



_____
Elizabeth L. Gunn
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) |
| | ) |
| Charles Paxton Paret, | ) Case No. 23-217-ELG |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| Developer RE1 LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. Case No. 24-10023-ELG |
| | ) |
| | ) (Cases Consolidated) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |
| 423 Kennedy St Holdings LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al.* | ) |
| | ) |
| Defendants. | ) |

## CONSENT ORDER RESCHEDULING HEARINGS AND DEADLINES

1

Upon the consent of Developer RE1 LLC and 423 Kennedy St Holdings LLC (the "Plaintiffs") and DP Capital, LLC, WCP Fund I LLC, SF NU, LLC, Daniel Huertas, Russell Drazin and JPK NewCo LLC (the "Defendants"), and in the interests of judicial economy, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

ORDERED, that the status conference currently scheduled in this matter be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44, with notice thereof being found at DE #45) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Plaintiffs' renewed motion for remand (as found at DE #46, with notice thereof being found at DE #47) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the deadline for the Plaintiffs to respond to the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44) be, and hereby is, EXTENDED to and through April 16, 2025.

We ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

/s/ James D. Sadowski (signed w/ express permission)
James D. Sadowski, Esq.
DC Bar # 446635
Greenstein Delorme & Luchs P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*and 423 Kennedy St. Holdings, LLC*

3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR REMAND

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## <u>TABLE OF CONTENTS</u>

I.     Introduction ................................................................................................................. 1

II.    Relevant Facts and Allegations ................................................................................. 2

        a.  Facts and Allegations Internal to the Consolidated Cases ................................... 3

        b.  Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case
            No. 23-10025-ELG (Bankr. D.D.C. 2023) ............................................................. 4

        c.  Settlement of the Paret Adversary ........................................................................ 4

        d.  Procedural Posture .............................................................................................. 5

III.   Argument: The Motion Merits Denial ..................................................................... 6

        a.  Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............... 6

        b.  The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this
            Honorable Court's Expertise Militate Against Discretionary Abstention ............. 9

        c.  The Plaintiffs' Latest Amendment Introduces a Question of Federal
            Bankruptcy Law .................................................................................................. 14

        d.  The Motion is Untimely ...................................................................................... 15

    IV.  Conclusion .......................................................................................................... 17

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1015 Half St. Corp. v. Warehouse Concepts, Inc.*,
1999 U.S. Dist. LEXIS 19135 (D.D.C. Oct. 26, 1999)................................................... 15

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008).................................................. 10

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976)..................................................................................... 9, 14

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959)........................................................................................ 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
463 U.S. 1 (1983)...................................................................................... 12, 15

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023)...................................................................... 10

*Holmstrom v. Peterson*,
492 F.3d 833 (7th Cir. 2007) ............................................................................. 16

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021)...................................................................... 10

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ........................................................................ 6

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004) .................................................................... 9

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011).................................................................... 9

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ........................................... 13

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998) .............................................................................. 10

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995)................................................................................. 7

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013)............................................. 6

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) ........................................................................ 9

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005) ........................... 11

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) ............................................................. 9

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ........................... 6

**Statutes**

28 U.S.C. § 1334 ..................................................................................... 6, 7

28 U.S.C. § 1447 ......................................................................................... 15

**Rules**

Local Rule 9013-1 ......................................................................................... 1

Local Rule 9027-1 ................................................................................... 2, 15

iv

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants" and each a "Defendant") by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Plaintiffs' Renewed Motion for Remand (the "Motion," as found at DE #46) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I. Introduction

Approximately nine months after this case was first removed, the Plaintiffs again seek a remand. This time, the Motion does not cite any case law—whatsoever—and only once invokes a statute outside the filing's prefatory paragraph. The Motion is, thusly, something of an enigma, appearing to be premised, *en toto*, upon contentions that (i) JPK never should have been permitted to be a debtor in bankruptcy in the first instance; and (ii) an absence of merit underlying the claims being asserted against various Defendants by the bankruptcy estate of Charles Paret ("Mr. Paret," with the underlying estate being known as the "Estate" and Wendell Webster, the trustee thereof, being known as the "Trustee").

The first contention would be immaterial, since this adversary proceeding was not docketed within the JPK bankruptcy (and, indeed, was filed before JPK even entered bankruptcy), except the Plaintiffs have now added a claim for relief premised upon the JPK bankruptcy being part and parcel of an alleged fraudulent conveyance. In light of that added claim, though, it becomes ever-important to establish that JPK's bankruptcy was a legitimate filing, for a proper purpose, undertaken in a manner consistent with federal bankruptcy law. It is not bad faith for an entity to be created with cognizance of potential reorganizational actions and the Plaintiffs are—and always

1

have been—errant in asserting otherwise. Remanding this case, and asking the Superior Court to opine on questions of bankruptcy law, would be not only illogical but, indeed, contra to the well-established design of bankruptcy courts being the forums that opine on questions of bankruptcy law.

The second contention—which is more centrally the focus of this brief—is fundamentally errant. There is now a proposed settlement of the Trustee's claims against certain Defendants that, if approved, will cement the Estate's partnership interest in the promissory notes and deeds of trust underlying this litigation. A direct correlation exists between the outcome of this litigation and the recovery occasioned by the Estate, with the Estate's assets including a partnership interest in the very debt instruments being litigated *sub judice*.

Accordingly, the Motion merits denial for three reasons. First, this case is a core proceeding in connection with Mr. Paret's bankruptcy and, as such, this case is properly heard in this Honorable Court. Second, by pleading a new cause of action that turns on resolution of a question of bankruptcy law, the Plaintiffs have introduced a federal question best resolved by this Honorable Court. And, third, the Motion is untimely in nature, having been filed after the thirty day deadline established by Local Rule 9027-1(b) and Title 28 of the United States Code. However, insofar as this Honorable Court did deny a prior remand motion without prejudice, DE #35, the Defendants will focus this brief on the former two issues, going to the substantive—and not procedural—infirmity of the current Motion.

## II.    Relevant Facts and Allegations

Insofar as this Honorable Court is, by now, no doubt quite familiar with the facts of these consolidated cases, the following overview is intentionally brief in nature:

2

### a. Facts and Allegations Internal to the Consolidated Cases

1.     On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2.     The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3.     Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4.     The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5.     Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6.     DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

3

**b. Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)**

1.      Mr. Paret is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2.      In connection with the administration of Mr. Paret's bankruptcy estate, the Trustee has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3.      The Webster Complaint alleges the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

4.       The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5.      The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

**c. Settlement of the Paret Adversary**

1.      In March 2025, the Trustee entered into a settlement agreement (the "Settlement Agreement"), with Mr. Huertas, WCP and DPCL—subject to judicial approval—to resolve the Paret Adversary. *See* Paret Main Case at DE #158.

2.      Pursuant to the Settlement Agreement, Mr. Huertas, WCP and DPCL will, *inter alia*, (i) cause a modest sum of money to be paid to the Trustee; (ii) recognize Mr. Paret's Estate as "having a limited partnership interest," *id.* at ¶ 10(b), in the DRL Notes and 423 Kennedy Notes;

4

(iii) use the proceeds of the DRL Notes and 423 Kennedy Notes to pay certain additional monies into Mr. Paret's estate, *id.* at ¶ 10(c); and (iv) owe one half of all "net proceeds" derived from the DRL Notes and the 423 Kennedy Notes, to the Trustee (with the computation of "net proceeds" depending on the ultimate performance of the DRL Notes and 423 Kennedy Notes), Paret Main Case at DE #158-1, § 3(c).

3.      In light of the Settlement Agreement, Mr. Paret's Estate is (i) recognized as a limited partner in connection with the promissory notes at issue in this litigation; and (ii) has a vested pecuniary interest in the outcome of this litigation. *Id.* at § 3.

### d.   Procedural Posture

1.      These consolidated cases were originally removed on July 4, 2024. *See* DE #1.

2.      Since removal, this Honorable Court has (i) held a hearing on the original remand motion, DE #23; (ii) denied the original remand motion, DE #35; (iii) held a hearing on Mr. Drazin's motion for summary judgment, taking the same under advisement, DE #34; (iv) held a hearing on SNL's motion to dismiss, *id.*; (v) held a hearing on the Plaintiff's motion to dismiss a counterclaim, *id.*; (vi) allowed additional time for the Plaintiffs to file an amended complaint, DE #38; (vii) seen an amended, consolidated pleading filed by the Plaintiffs, DE #40; (viii) issued a summons to a newly-added defendant, DE #42; and (ix) seen a motion to dismiss or, in the alternative, for summary judgment filed by all defendants except Shaheen Sariri ("Mr. Sariri"),[1] DE #44.

3.      The Plaintiffs' third amended complaint, docketed after this Honorable Court dismissed the prior iteration with leave to amend, adds a cause of action for fraudulent conveyance,

---

[1] For want of ambiguity, Mr. Sariri is not represented by undersigned counsel (at least as of present) and, despite being a defendant in this litigation, is not one of the defined "Defendants" for purposes of this brief.

premised upon the JPK bankruptcy. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261.

4.      The crux of the newly-added cause of action is that transferring assets to JPK, with knowledge JPK may then seek to reorganize in chapter 11, amount to a tortious act, since the Plaintiffs assert it is *per se* illegal for an entity to be created—and then receive assets—whilst cognizant that a reorganization may soon ensue. *Id.*

### III.     Argument: The Motion Merits Denial

Since the Motion does not engage any statutory analysis or cite any case law, the grounds upon which a remand is being sought are slightly unclear. However, since the Plaintiffs do invoke Sections 1334(c) and 1452(b) in the prefatory clause of the Motion, the Defendants will assume the request is premised upon some combination of (i) equitable abstention; and/or (ii) mandatory abstention. The facts of this case support neither.

#### a.   Mandatory Abstention is Inapplicable Since this is a Core Proceeding

Mandatory abstention is inapplicable to cases that encompass a core bankruptcy proceeding. Insofar as the litigation *sub judice* is objectively core in the prism of Mr. Paret's bankruptcy, mandatory abstention is accordingly inappropriate.

As observed by this Honorable Court, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*, 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman*, 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson*, 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-

6

core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, <mark>45 F.3d 702, 708</mark> (2d Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language of the mandatory abstention statute itself:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

<mark>28 U.S.C. § 1334(c)(2)</mark>.

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been commenced in a "court of the United States." As discussed in detail *infra*, these are core proceedings, so the second prong need not be reached. (To whatever extent the second prong is to be considered, the Defendants would note the District of Columbia Superior Court to be a "court of the United States," but the Defendants appreciate such consideration is one unlikely to be instantly dispositive.)

The Trustee has now been asserting, for nearly a year, that Mr. Paret owns an interest in the promissory notes at issue in the instant litigation. And, under the Settlement Agreement, Mr. Paret's Estate will be recognized as holding a limited partnership interest in those promissory notes and the proceeds thereof. The Plaintiffs, in turn, are seeking cancellation of the subject debt instruments and permanent injunctions prohibiting foreclosure. The Defendants, by contrast, are seeking to proceed with foreclosures so both properties may be sold at public auction to raise money to retire the promissory notes.

7

815

Stated otherwise: under the terms of the Settlement Agreement, the Trustee and Estate will hold a direct pecuniary interest in the outcome of this litigation. If the Defendants prevail, monies will flow into Mr. Paret's Estate. If the Plaintiffs prevail, the inflow of monies into Mr. Paret's Estate will be curtailed. The better the outcome for the Defendants, the better the outcome for Mr. Paret's Estate.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

> (K) determinations of the validity, extent, or priority of liens. . .

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

These proceedings are plainly core under Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. The Defendants assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens all secure promissory notes in which Mr. Paret's Estate is to hold a limited partnership interest under the Settlement Agreement. And this is accordingly a proceeding that will "determine[e] … the validity" of liens in which the Estate holds an interest.

Analysis under Section 157(b)(2)(O) invites the same result. The Defendants are seeking to collect upon promissory notes in which the Estate will have a limited partnership interest. If the Plaintiffs succeed, the assets of Mr. Paret's Estate will be diminished proportionately. If the Defendants succeed, the assets of Mr. Paret's Estate stand to grow proportionately. The promissory notes hanging in the balance are, under the Settlement Agreement, partially assets of the Estate.

8

And it is difficult to conceive of a proceeding more core than one that seeks to cancel, diminish, and enjoin collection of a bankruptcy estate's assets.

>    **b. The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this Honorable Court's Topical Expertise Militate Against Discretionary Abstention**

Discretionary abstention is also improper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and Mr. Paret's Estate. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents, as well as the permissibility of pre-structured bankruptcy filings—are ones upon which this Honorable Court has expertise. The outcome of this litigation will materially inform the composition of the Estate being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate

9

817

a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc*., 222 B.R. 254, 257 (D. Md. 1998)).

Taking the first factor, this litigation will have a direct impact on the Estate and needs to be concluded so the Estate may be fully administered. The Trustee will receive funds from the liquidation of the DRL Notes and the 423 Kennedy Notes. If those notes are cancelled, the Estate will be accordingly hampered. If those notes are collected in full, the Estate stands to make a great

deal of money. And so long as collection of those notes is enjoined,[2] the Estate stands in a state of paralysis.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at *29 (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

It also bears notation that—as discussed *infra*—the Third Amended Complaint introduces a substantial federal question into these proceedings. The Plaintiffs are contending that an entity may be held liable for a fraudulent conveyance if found to have siloed assets into a new entity with cognizance of a potential bankruptcy filing. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. If accepted, this would render every so-called "Texas two step" a tortious act for which civil liability may be sought. And consideration of this cause of action will, no doubt, require consideration of the law governing good faith bankruptcy filings. To be sure, not only is this cause of action not one truly subsumed within state law but, too, this cause of action is one that would render this case independently removable as now being inclusive of a federal question. *See, e.g.*,

---

[2] Insofar as a motion to dismiss was granted by this Honorable Court, DE #31, but leave to amend was granted, it is unclear if the pre-removal injunction survived dismissal and repleading. The Defendants do not herein take any position as to whether or not the injunction remains in effect.

819

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, <mark>463 U.S. 1, 13</mark> (1983) ("Even though state law creates appellant's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

In assessing the third criterion, there are no difficult or unsettled questions of state law at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

The fourth question is one of "comity," which militates in favor of denying the Motion. As noted *passim*, this litigation is intimately related to a pending bankruptcy case and now involves a substantive question of bankruptcy law There is no cognizable notion of comity that suggests cases tied to bankruptcy proceedings, involving questions of bankruptcy law, ought to be returned to state court; to the contrary, it is the longstanding practice of this Honorable Court—and sister bankruptcy courts—to retain jurisdiction over core proceedings.

On the fifth question, this case is closely related to Mr. Paret's main bankruptcy case. Mr. Paret has premised much of his case upon the notion that he has partnership rights in various assets of WCP. The Trustee, in turn, has followed on these contentions through an adversary proceeding. The Settlement Agreement likely represents the single largest opportunity for Mr. Paret's Estate

12

820

to yield funds for distribution to creditors. And the success, *vel non*, of the Plaintiffs in this case will accordingly impact—rather profoundly—the scope of any return to creditors of Mr. Paret.[3]

The sixth consideration is the existence of a right to trial by jury. There can be no trial by jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory Note, DE #1-2, at p. 56, § 7.[4]

The final consideration is one of prejudice to the "involuntarily removed defendants." Putting aside that it is the Defendants who removed these consolidated cases (and assuming prejudice to plaintiffs would accordingly stand in the place of this criterion), there is plainly no prejudice. This Honorable Court is located two blocks from the Superior Court. Remote appearances are as readily managed in this Honorable Court as the Superior Court. The docket of this Honorable Court is actually notably more nimble than that of the Superior Court, allowing for the prompter scheduling of hearings. And, as noted by the *Sticka* Court, bankruptcy courts enjoy preeminent expertise on the topic of the debtor/creditor relationship; this Honorable Court is exceedingly well qualified to adjudicate the various debtor/creditor issues that permeate these consolidated cases.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2, 2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

---

[3] It is, of course, entirely possible Mr. Paret is concealing other assets that may be discovered by the Trustee. As established at various hearings in the main case, Mr. Paret appears to be unusually apprehensive to making full disclosures and offering information in a candid, forthright and fulsome manner.

[4] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical provision.

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, <mark>424 U.S. at 813</mark>. There is simply no basis to make such an exception in these consolidated cases, where every factor militates against abstention and where the administration of the Estate hangs in the proverbial balance. This Honorable Court has expertise in the issues presented in this litigation, has a docket that can ably accommodate this litigation, and has jurisdiction over this litigation.

### c. The Plaintiffs' Latest Amendment Introduces a Question of Federal Bankruptcy Law

Remand is improper for all of the reasons set forth *supra*. Yet even if, *arguendo*, remand might otherwise be within the realm of discretion, the Plaintiffs have essentially foreclosed any such argument through their election to amend their pleading and sue the Defendants on the theory that the JPK bankruptcy was the *coup de grace* of a fraudulent conveyance. This is now a case that, as pleaded, turns on a substantive question of bankruptcy law. And this is, accordingly, a case that most certainly ought not be remanded to the Superior Court.

There is a circuitous infirmity to the Motion when juxtaposed to the latest pleading of the Plaintiffs: the Plaintiffs are now suing the Defendants, on the theory that the JPK bankruptcy was the byproduct of a fraudulent conveyance, whilst simultaneously urging this Honorable Court to remand (or abstain from hearing) the instant litigation. The Plaintiffs are, at once, now advancing a claim for relief premised upon an allegedly improper utilization of bankruptcy law *and* protesting that such claim for relief should not be adjudicated by a bankruptcy court. Suffice it to posit, this is not a cogent contention, and this new claim for relief only affords added rationale to deny the Motion.

As noted above, the Supreme Court has made clear that "[e]ven though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a

14

substantial question of federal law in dispute between the parties." *Constr. Laborers Vacation Tr.*, 463 U.S. at 13.

Here, the Plaintiffs are suing the Defendants on the theory that the transfer of promissory notes and deeds of trust, to JPK, with cognizance that a bankruptcy may follow, amounts to a fraudulent conveyance. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. The Defendants, if they are not successful on a pending motion to dismiss or for summary judgment, DE #44, will be compelled to defend this cause of action by noting the propriety of a bankruptcy-cognizant transfer. And this Honorable Court, in turn, will need to weigh in on the legality of such a bankruptcy-cognizant pre-petition asset transfer.

To be sure, adjudication of this newly-added cause of action will turn on "resolution of a substantial question of federal law," *Constr. Laborers Vacation Tr.*, 463 U.S. at 13. And this case is accordingly one that would now be independently removable as containing a federal question squarely within the expertise of this Honorable Court.

### d. The Motion is Untimely

Finally, the Defendants additionally note the Motion to be untimely in nature. Under the rules governing practice in this Honorable Court, a motion seeking remand must be filed within 30 days of the date of removal. Local Rule 9027-1(b). And the deadline is not merely rule-based but, too, statutory in nature. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).") *See also 1015 Half St. Corp. v. Warehouse Concepts, Inc.*, 1999 U.S. Dist. LEXIS 19135, at *12 (D.D.C. Oct. 26, 1999) (noting a motion to remand on any grounds other than an absence of subject matter jurisdiction must be filed within 30 days of removal).

15

While the Defendants do appreciate that the original remand motion was denied without prejudice, and that such denial may be construed as affording some relief from the temporal dictates of the Local Rules (or even Title 28), the Defendants also note that the tight timeline is designed to avoid the belated remand of cases that have long-since departed another court's docket. *See, e.g., Holmstrom v. Peterson*, 492 F.3d 833, 837 (7th Cir. 2007) (noting the 30-day statutory deadline is "designed to ensure that all remand motions based on defects other than lack of subject matter jurisdiction were made within 30 days to ensure judicial efficiency.")

Where, as here, a case has been pending in this Honorable Court for nearly ten months, and a litany of hearings have been held and an accompanying litany of orders having been issued, there is a synergy in keeping a case in this Honorable Court. Indeed, the operative pleading in this case— an amended, consolidated complaint—was filed *after* removal, in this Honorable Court. That operative pleading adds two new defendants, one of whom—Mr. Sariri—has been added for reasons solely correlative to his interactions with this Honorable Court. And this Honorable Court has, by now, held far more hearings on this case than did the court from which it was removed nearly 10 months ago.

Stated otherwise: Title 28 of the United States Code is designed to ensure cases not be hampered by delayed remand efforts, which unavoidably strain "judicial efficiency." *Holmstrom*, 492 F.3d at 837. Such is particularly true where, as there, this Honorable Court has gleaned a notable "familiarity" with the instant case. Motion, DE #46, at ¶ 1. And to the extent there exist equitable considerations in analysis of the Plaintiffs' second effort to secure a remand, such accordingly militate in favor of denying the Motion.

16

## IV. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 12, 2025        By:    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The VerStandig Law Firm, LLC
                                    9812 Falls Road, #114-160
                                    Potomac, Maryland 20854
                                    Phone: (301) 444-4600
                                    mac@mbvesq.com
                                    *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

17

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET, | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

## CONSENT MOTION TO EXTEND DEADLINES

The Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings LLC, and the initial

Defendants in these consolidated cases jointly move this Court to briefly extend two deadlines

related to two pending motions. In support of their consent request, the movants represent to the

Court as follows:

1.     This case involves two consolidated cases that were removed from D.C. Superior

Court on July 4, 2024.

2.      Pending before the Court are a Motion to Dismiss, or, in the Alternative, for
Summary Judgment (ECF # 44) ("Motion to Dismiss") and a Renewed Motion for Remand (ECF
# 46).  These motions are currently set for a hearing on May 8, 2025 at 10:00 a.m.

3.      The Defendants that filed the Motion to Dismiss[1] requested additional time (until
April 12, 2025) to respond to the Renewed Motion for Remand, which request was consented to
by the Plaintiffs.

4.      The Plaintiffs requested additional time (until April 18, 2025) to respond to the
Motion to Dismiss, which request was consented to by the Defendants that filed the Motion to
Dismiss.

5.      No party will be prejudiced by these brief extensions of time.

For cause shown, the movants jointly request that the Court extend the deadlines as noted
in paragraphs 3 and 4.  A proposed consent order is attached.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  April 16, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C.  20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails:  jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Developer RE1 LLC and*
*423 Kennedy St Holdings LLC*

---

[1]      The defendants that filed the Motion to Dismiss include all defendants named in the
Third Amended Complaint except Defendant Shaheen Shariri.

2

827

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 16th day of April, 2025, a true copy of the foregoing

Consent Motion to Extend Deadlines was filed electronically and a Notice of Electronic filing

should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

8161\0002\4898-5854-1623.v1

828

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND DEADLINES

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423 Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is ORDERED that:

1. The Motion to Extend is GRANTED; and

2. The deadline to respond to the Renewed Motion for Remand (ECF # 46) is extended, *nunc pro tunc,* to April 12, 2025; and

3. The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.

[Signed and dated above]

2

830

I ask for this:

/s/ James D. Sadowski
_____
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
_____
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen*
*Shariri)*

8161\0002\4904-5105-3367.v1

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

**END OF ORDER**

8161\0002\4904-5105-3367.v1

The order below is hereby signed.

Signed: April 17 2025



*Elizabeth L. Gunn*
*U.S. Bankruptcy Judge*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND DEADLINES

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423 Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is ORDERED that:

1. The Motion to Extend is GRANTED; and

2. The deadline to respond to the Renewed Motion for Remand (ECF # 46) is extended, *nunc pro tunc,* to April 12, 2025; and

3. The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.

[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Phone: 202-452-1400, ext. 5407
Fax: 202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD 20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen*
*Shariri)*

3

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

## END OF ORDER

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn        *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
  *Nature[s] of Suit:*   01   Determination of removed claim or cause
                         21   Validity, priority or extent of lien or other interest
                              in property
                         91   Declaratory judgment
                         72   Injunctive relief – other


*Plaintiff*
————————————————
**Developer RE1 LLC**                    represented by   **James D. Sadowski**
1629 K Street NW                                          Greenstein DeLorme & Luchs, PC
Suite 300                                                 801 17th Street, N.W.
Washington, DC 20006                                      Suite 1000
                                                          Washington DC, DC 20006
                                                          202–452–1400
                                                          Fax : 202–452–1410
                                                          Email: jds@gdllaw.com
                                                          *LEAD ATTORNEY*

                                                          **Alexandria Jean Smith**
                                                          Greenstein DeLorme and Luchs PC
                                                          801 17th Street NW
                                                          Suite 1000
                                                          Washington, DC 20006
                                                          202–452–1400
                                                          Email: ajs@gdllaw.com
                                                          *LEAD ATTORNEY*


*Plaintiff*
————————————————
**423 Kennedy St Holdings LLC**          represented by   **James D. Sadowski**
1629 K Street, NW                                         (See above for address)
Suite 300                                                 *LEAD ATTORNEY*
Washington, DC 20006
                                                          **Alexandria Jean Smith**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*


V.

*Defendant*
————————————————
**WCP Fund I LLC**                       represented by   **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                          The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                             9812 Falls Road
1452 W. Horizon Ridge Pkwy                               #114–160
#665                                                     Potomac, MD 20854

1

Henderson, NV 89012                              301–444–4600
301–444–4600                                     Email: mac@mbvesq.com

*Defendant*
————————————————
**DP Capital LLC**                               represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                 (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
————————————————
**SF NU, LLC**                                   represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                 (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
————————————————
**Daniel Huertas**                               represented by **Maurice Belmont VerStandig**
c/o The VerStandig Law Firm, LLC                 (See above for address)
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

*Defendant*
————————————————
**Russell Drazin**                               represented by **Maurice Belmont VerStandig**
Pardo Drazin LLC                                 (See above for address)
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

*Defendant*
————————————————
**JPK NewCo LLC**                                represented by **Maurice Belmont VerStandig**
8401 Greensboro Drive                            (See above for address)
Suite 960
McLean, VA 22102

*Defendant*
————————————————
**Shaheen Sairi**                                represented by **Shaheen Sairi**
                                                 PRO SE

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 07/04/2024 | | 1 | Adversary case 24–10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A – Meeting of Creditors Transcript # 2 Exhibit B – All Pleading |

2

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24–10023–ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Dismiss # 2 Exhibit B – Opposition to Motion to Dismiss # 3 Exhibit C – Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A – Motion to Quash Subpoena # 2 Exhibit B – Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period – *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A – Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B – Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A – First Developer RE1 Promissory Note # 2 Exhibit B – Second Developer RE1 Promissory Note # 3 Exhibit C – First Developer RE1 Deed of Trust # 4 Exhibit D – Second Developer RE1 Deed of Trust # 5 Exhibit E – First 423 Kennedy Street Promissory Note # 6 Exhibit F – Second 423 Kennedy Street Promissory Note # 7 Exhibit G – First 423 Kennedy Street Deed of Trust # 8 Exhibit H – Second 423 Kennedy Street Deed of Trust # 9 Exhibit I – Developer RE1 Notice of Default # 10 Exhibit J – 423 Kennedy Street Notice of Default # 11 Exhibit K – Developer RE1 Affidavit of Non–Residential Mortgage Foreclosure # 12 Exhibit L – 423 Kennedy Street Affidavit of Non–Residential Mortgage Foreclosure # 13 Exhibit M – Developer RE1 Notice of Foreclosure # 14 Exhibit N – 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O – Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non–Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # <u>1</u> Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # <u>2</u> Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # <u>3</u> Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # <u>4</u> Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | <u>47</u> | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>46</u> Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>46</u>,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | <u>48</u> | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)<u>44</u> Motion to Dismiss Adversary Proceeding, <u>45</u> Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, <u>46</u> Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>44</u>, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for <u>46</u>, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) <u>48</u> Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | <u>50</u> | BNC Certificate of Mailing – PDF Document. (RE: related document(s)<u>48</u> Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | <u>51</u> | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:<u>46</u> Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | <u>52</u> | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>44</u> Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, <u>46</u> Motion for Remand.) (Attachments: # <u>1</u> Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | <u>53</u> | Consent Order Granting Motion To Extend Deadlines. (Related Document #: <u>52</u>) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | <u>54</u> | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:<u>44</u> Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # <u>1</u> Exhibit Response to Statement of Material Facts in Dispute # <u>2</u> Exhibit Declaration of Mel Negussie # <u>3</u> Exhibit DC Code Section 28–3104 # <u>4</u> Exhibit DC Code Section 28–3105 # <u>5</u> Exhibit First TRO Order # <u>6</u> Exhibit Second TRO Order # <u>7</u> Exhibit Developer RE1 Loan history # <u>8</u> Exhibit 423 Kennedy Loan History # <u>9</u> Exhibit Huertas Transcript Excerpts # <u>10</u> Exhibit 4–7–23 Order # <u>11</u> Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET,

    *Debtor.*

Case No. 23-00217-ELG

Chapter 7

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN;
DANIEL HUERTAS; SF NU, LLC; AND WCP
FUND I LLC,

    *Defendants.*

Adv. Pro. No. 24-10023-ELG

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN;
DANIEL HUERTAS; AND WCP FUND I LLC,

    *Defendants.*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423
Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion to Dismiss or,
in the alternative, for Summary Judgment ("Motion") [ECF No. 44] filed by six of the seven
Defendants, namely: DP Capital LLC ("WCP"), WCP Fund I LLC ("WCP Fund"), Daniel

Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SF NU"), and JPK

NewCo LLC ("JPK") (collectively, "Defendants").

I.    INTRODUCTION

      The Court has some general familiarity with the factual and procedural background of

this litigation from prior filings, including the Borrowers' Opposition to Mr. Drazin's Motion for

Summary Judgment filed on January 17, 2025 (the "Opposition") [ECF No. 30].[1]  The

Borrowers continue to view the Defendants' removal of the cases from Superior Court as a form

of improper appeal.  The Defendants were dissatisfied with prior, unfavorable decisions rendered

in the Superior Court by two different judges.  *See* Plaintiffs' Renewed Motion for Remand and

to Suspend Defendants' Motions, Hearings, and Related Response Deadline [ECF No. 46].  With

the Motion, Defendants now seek the dismissal of Count VII - To Set Aside Fraudulent Transfers

of the Third Amended Complaint (the "Complaint"), as well as the dismissal of all claims against

SF NU.  The Defendants also request the entry of summary judgment on the remaining causes of

action against them.  For the reasons set forth below, and in the accompanying Exhibits, the

Court should deny both motions.[2]

II.    CONDENSED  BACKGROUND

    A.    The Loan Documents

      On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition

finance loan for the property located at as 5501 1st Street, N.W., in Washington, D.C. (the

---

    [1]    As Mr. Drazin's Motion for Summary Judgment is currently pending, pursuant to Fed. R. Civ. P. 10(c), the Borrowers hereby incorporate by reference the factual background and all the arguments made in the Opposition as if fully stated herein.

    [2]    To assist the Court with showing the many material facts in dispute, the Borrowers have assembled their Response to the Defendants' Material Facts Not in Dispute (the "Borrowers' Response"), which is attached as Exhibit 1.  The Borrowers have also included as support a Declaration of Mel Negussie ("Negussie Decl."), which is attached as Exhibit 2.

"Developer RE1 Property"), which original loan was later refinanced.  As part of that

refinancing, Developer RE1 signed the following documents:

- A Deed of Trust (the "Developer RE1 First DOT") for the Developer RE1 Property that named WCP Fund as Beneficiary and Mr. Drazin, as Trustee.
- A Commercial Deed of Trust Note (the "Developer RE1 First Note") in the amount of $3,579,000.00, as "Borrower," in favor of WCP Fund.
- A second, additional Deed of Trust ("Developer RE1 Second DOT") for the Developer RE1 Property that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second Commercial Deed of Trust Note (the "Developer RE1 Second Note") in the amount of $524,000.00, as "Borrower."

These documents are collectively referred to as the "Developer RE1 Loan Documents".

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records

of the District of Columbia as Document # 2024035623, SF NU assigned and transferred to JPK

its rights, title and interests in the Developer RE1 Second DOT.

In January of 2020, WCP helped 423 Kennedy obtain a construction finance loan for the

property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 in Washington, D.C. (the

"423 Kennedy Property"), which was later refinanced.  As part of that refinancing, 423 Kennedy

signed the following documents:

- A Deed of Trust (the "423 Kennedy First DOT") for the 423 Kennedy Property that named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A Commercial Deed of Trust Note (the "423 Kennedy First Note") in the amount of $8,689,693.00, as "Borrower" in favor of WCP Fund.
- A second, additional Deed of Trust for the 423 Kennedy Property (the "423 Kennedy Second DOT") that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second, Commercial Deed of Trust Note (the "423 Kennedy Second Note") in the amount of $1,256,000.00, as "Borrower."

These documents are collectively referred to as the "423 Kennedy Loan Documents."  The

Developer RE1 Loan Documents and the 423 Kennedy Loan Documents are collectively referred

to as the "Loan Documents."

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records of the District of Columbia as Document # 2024035864, WCP assigned and transferred to JPK its rights, title and interests in the 423 Kennedy Second DOT.

B.        Executive Summary of the Facts.

The Defendants removed these consolidated cases for the improper purpose of trying to avoid, and having this Court revisit, several key motions and decisions that they lost before two different judges in the D.C. Superior Court.  These decisions were made after extensive briefing, testimony from both sides at two evidentiary (TRO) hearings, oral argument, and some post-hearing briefing.  The Defendants were unsuccessful with a prior motion to dismiss that Judge Ebony Scott denied in the Developer RE1 case.  More importantly, the Defendants lost two motions for a TRO before two different judges in which they made the exact claims that they now assert again here in their summary judgment motion, *i.e.,* that multiple late or missed payments, along with other alleged defaults that had either been waived or cured, prevent the Borrowers from pursuing their claims.  Two different D.C. Superior Court judges have not just determined that the Borrowers' claims are viable, but that the Borrowers are likely to prevail on the merits of those claims.  This Court was never designed to be a first line of appeal from adverse decisions of the D.C. Superior Court, but as to all of the claims in the Third Amended Complaint except than new Count VII, that is precisely what the Defendants are asking this Court to be.  The Court should reject the Defendants' improper attempt to relitigate issues and arguments that have already been decided against them.

As for the condensed facts, this case is about the Lender Defendants decision to intentionally sabotage two development projects, to cause financial harm to the Borrowers and one of the Borrower's principals, and to improperly foreclose on two development projects, one of which was near completion, because one or more of the Lender Defendants was unhappy

about how another development project (at 2507 I Street) turned out. The Lender Defendants

knew that the Borrowers were well on their way toward refinancing their loans, which would

have resulted in payment in full of those loans. The Lender Defendants issued pre-textual

default notices to pressure the Borrowers into paying millions of dollars in "Default Interest" and

"Default Penalties." The Lender Defendants then tasked their lawyer, who was also serving as

Trustee under all of the deeds of trust, to find reasons to try to justify the pretextual defaults after

the fact.

This case was also removed in July of 2024 because the Borrowers were about to take the

corporate depositions of the Lender Defendants, and their employees, in which the Borrowers

were highly likely to develop additional evidence in support of their claims. Now the Lender

Defendants are trying, though a summary judgment decision, to prevent the Borrowers from

obtaining information in discovery that they know will be unfavorable to their positions.

III.     THE LEGAL STANDARDS

    A.     The Motion to Dismiss Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and

plain statement of the claim showing that the pleader is entitled to relief, to give the defendant

fair notice of what the claim is about and the grounds upon which it rests. *See, e.g.*, *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6), "the 'complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief [that?] is plausible on its face.'" *See, e.g.*, *Wood v. Moss*, 134 S. Ct.

2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Since our system

favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied

only after less dire alternatives have been explored without success." *Trakas v. Quality Brands,*

*Inc.*, 245 U.S. App. D.C. 165, 759 F.2d 185, 186-87 (1985) (citing *Camps v. C & P Telephone Co.,* 223 U.S. App. D.C. 396, 692 F.2d 120, 123-24 (D.C. Cir. 1981)).

Because the Borrowers have more than pled facts sufficient to support plausible claims against SF NU, the Motion to Dismiss should be denied.

B.   The Motion for Summary Judgment Standard

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.* The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Summary judgment "is not appropriate when 'a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Greer*, 451 U.S. App. D.C. 45, 47, 987 F.3d 1089, 1091 (2021) (quoting *Thompson v. District of Columbia*, 967 F.3d 804, 813, 448 U.S. App. D.C. 411 (D.C. Cir. 2020)). "Once it is determined that material facts are in dispute 'summary judgment may not be granted.'" *Weiss v. Kay Jewelry Stores, Inc.*, 152 U.S. App. D.C. 350, 470 F.2d 1259, 1262 (1972) (quoting *Dewey v. Clark*, 86 U.S. App. D.C. 137, 143, 180 F.2d 766, 772 (1950)). "Summary judgment is an extreme remedy and should be awarded only when the truth is clear; doubts must be resolved against the moving party." *BEACH v. RIGGS Nat'l BANK*, Civil Action No. 83-2402, 1985 U.S. Dist. LEXIS 19871, at *10 (May 13, 1985) (citing *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259 (D.C. Cir. 1972)).

When these standards are applied to Defendants' request for summary judgment, summary judgment should be denied.

6

## IV.  LEGAL ARGUMENT: WHY THE MOTION TO DISMISS SHOULD BE DENIED

The Court should deny the Motion because the Borrowers have sufficiently pled Count VII (To Set Aside Fraudulent Transfers), as well as all the other claims asserted against SF NU.

### A.  Count VII of the Complaint - To Set Aside Fraudulent Transfers - is Adequately Pled.

Count VII is primarily predicated on several transfers made to and by JPK NewCo, LLC ("JPK"), the named debtor in a now dismissed bankruptcy proceeding.[3]  The Court could deny the motion to dismiss based upon one undisputed fact alone that is also a judicial admission: JPK and the WCP have already admitted that the loan transfers to JPK were made with the express purpose of trying to hinder the Borrowers from collecting on their claims.  *See* Opposition of WCP Fund I LLC to the U.S. Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(B) ( ECF No. 56 in the JPK Case ("[I]nsofar as a good faith analysis of the claims in the litigation reveals relief to be sought in the form of an in rem setoff against liability due and owing on the four promissory notes, *transferring the two junior notes into a separate entity effectively serves to firewall any liability from reaching WCP or its various co-defendants*.") (italic emphasis added).[4]  This judicial admission, standing alone, defeats any argument that the Borrowers have not sufficiently pled a fraudulent conveyance claim.  The WCP and JPK have admitted that the "junior liens" were transferred to prevent liability (to the Borrowers) "from reaching WCP or its various co-defendants."[5]

---

[3]  *See In re JPK NewCo, LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Case").

[4]  In JPK's Opposition to the United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b), JPK repeated the arguments of the WCP Fund LLC in the WCP Opposition "as if set forth in substance here."  *See* ECF No. 58 at p.1. in the JPK Case.

[5]  "Firewall" is a term used both in the auto industry and the computer industry.  Cars have firewalls to prevent and hinder engine heat, noise, and fumes from reaching the passenger compartment.  Computers have "firewalls" to prevent and hinder hackers and viruses from gaining entry into, or spreading in, computer systems.

Indeed, the transfers to JPK represent just one type of fraudulent transfer contemplated by

D.C. law.  The Uniform Fraudulent Transfer Act, D.C. Code §§ 28-3101, *et seq.,* ("UFTA")

defines several types of fraudulent transfers.  D.C. Code

§ 28-3104(a) defines a fraudulent transfer as:

> (a) *A transfer made,* or obligation incurred, by a debtor *is fraudulent as to a creditor,* whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) With actual intent to *hinder, delay,* or defraud *any creditor of the debtor*; or
> >
> > (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

D.C. Code § 28-3104 (a) (italic emphasis added).

In the Third Amended Complaint, the Borrowers, as creditors, allege that, their debtor(s),

SN FU and/or the WCP, transferred the Loan Documents described in paragraphs 201-02 of the

Complaint with the intent to hinder or delay the claims of the Borrowers.  Comp. ¶¶ 257-48.

Nothing more is required to state a claim under D.C. Code § 28-3104(a)(1) or (2).  *See Bertram*

*v. WFI Stadium, Inc.*, 41 A.3d 1239, 1245 (D.C. 2012) (explaining that it is sufficient to state a

claim under the UFTA to allege that the debtor incurred an obligation with the intent to hinder,

delay, or defraud the creditor).  Moreover, contrary to Defendants' position, there is no

requirement in the UFTA that a plaintiff allege that either SN FU or the WCP were insolvent at

the time of the transfers.  Rather, the insolvency of the person that made the transfer is simply

one factor, among many others, that may be considered in determining intent.  *See* D.C. Code

§ 28-3104(b)(9) (one of the factors that may be considered when determining actual intent is

whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred").  A copy of D.C. Code § 28-3104 is attached as Exhibit 3 for the

Court's convenience.

Relatedly, D.C. Code § 28-3105(a) allows the Borrowers to pursue a claim based on

fraudulent conveyance against SF NU and/or the WCP if they made a transfer "to an insider for

an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to

believe that the debtor was insolvent."  D.C. Code § 28-3105.  A copy of D.C. Code § 28-3105 is

attached hereto as Exhibit 4.  As the Borrowers also allege, the transfers by SN FU and/or the

WCP were made when the obligation was incurred by JPK at a time when JPK believed or

reasonably believed that it would incur a debt beyond its ability to pay that debt when it became

due at a time when it was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred.  Compl. ¶¶ 260-61.  The transfers at issue here are precisely the kind

of fraudulent transfers contemplated by the express language of the UFTA.  The Borrowers have

stated a plausible claim in Count VII, so the Defendants' Motion to Dismiss Count VII  should

be denied.

      B.     <u>SF NU is a Proper Defendant.</u>

Contrary to Defendants' assertions, SF NU is a proper defendant and Borrowers have

stated plausible claims against SF NU under Count II (Breach of the Duty of Good Faith and Fair

Dealing); Count III (Declaratory Judgment); Count IV ( Permanent Injunctive Relief); Count VI

for (Declaratory Judgments - Mr. Drazin Cannot Serve as the Trustee and as to the Foreclosure

Notices), and Count VII (Set Aside Fraudulent Transfers).

1.    <u>The Borrowers Have Stated a Plausible Claim in Count II (Breach
of the Covenant of Good Faith and Fair Dealing).</u>

"Every contract includes an implied covenant of good faith and fair dealing.".  *See*

*Wright v. Howard Univ.*, 60 A.3d 749, 754-55 (D.C. 2013).  To state a claim for breach of the

covenant of good faith and fair dealing based on the laws of the District of Columbia, the

following is required:

> [A] plaintiff must allege either 'bad faith or conduct that is arbitrary or
> capricious.' . . . If a party 'evades the spirit of the contract, willfully
> renders imperfect performance, or interferes with performance by the
> other party, he or she may be liable for breach of the covenant of good
> faith and fair dealing.

*See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).

In Count II, the Borrowers allege that SF NU breached the covenant of good faith and

fair dealing that is implied in every contract in the District of Columbia.  The Defendants claim

that the allegations against SF NU are scant, but that is simply not true.  The Borrowers allege

that the WCP Fund appears to have assigned its interest in the Second Developer RE1 DOT to

SF NU in an Assignment of Deed of Trust.  Compl. ¶ 41.  SF NU is believed to also have a

financial interest in the 2507 I Street Project. Compl. ¶ 94.  JPK is dominated and controlled by

Mr. Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.  Compl. ¶

217.  WCP Fund, WCP, Mr. Huertas, and SF NU also caused the WCP to issue each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU.  Compl. ¶ 141.  SF NU is named in this action based, in part, on the

Notice of Foreclosure Sale of Real Property or Condominium to Developer RE1, issued on June

23, 2023, by Mr. Drazin, apparently on behalf of SF NU.  Compl. ¶ 185.  Thereafter, SFNU

transferred the Developer RE1 Loan Documents.  Borrowers allege that the transfer by SF NU of

the Developer RE1 Loan Documents to JPK was a transfer that was not supported by any consideration. Compl. ¶¶ 202-203. The Borrowers also allege that such transfer was made "with the specific intent to hinder or delay the adjudication of the claims in this case." Compl. ¶ 204. The Borrowers allege that the transfers were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP Fund and SF NU." Compl. ¶ 205.

The Borrowers further allege that the WCP Fund transferred the 423 Kennedy Loan Documents to JPK, an insider owned by the WCP Fund and SF NU. Compl. ¶ 201. The Borrowers allege notes and deeds of trust between the Borrowers and the WCP, and/or SF NU, and/or JPK that are contracts. Compl. ¶¶ 227-228. The Borrowers further allege that "[t]hrough their improper conduct, the Count II Defendants have breached the implied covenant of good faith and fair dealing contained in the respective contracts." Compl. ¶ 229. Additionally, SF NU is defined as one of the "Lender Defendants." Compl. ¶ 8. In the Third Amended Complaint, there are 49 allegations against the Lender Defendants. Compl. ¶¶ 16, 20, 79, 93, 96, 99, 100-03, 105-13, 131, 133-35, 138-44, 151, 157, 164, 171-72, 178, 182-84, 189, 192-95, 208-09, 212, 214-15). The Defendants do not substantively address this plethora of allegations in their Motion, instead focusing only on their claim that SF NU no longer holds the loan documents.

In pursuing this cause of action, the Borrowers' allegations against SF NU, including that it breached of the covenant of good faith and fair dealing through its actions in holding and/or wrongfully transferring the Developer RE1 Loan Documents and in interfering with the Borrowers' rights under the Loan Documents, are plainly enough to state a claim for breach of the covenant of good faith and fair dealing implicit in the Loan Documents. Therefore, dismissal of Count II is not appropriate.

11

2.    <u>The Borrowers Have Stated a Claim for Count III and VI (for Declaratory
Judgment) and Count IV (Injunctive Relief).</u>

As to Counts III, IV, and VI, the Defendants' sole argument seems to be their contention

that SF NU no longer owns the Loan Documents and is no longer a beneficiary under the

relevant Loan Documents.  The Borrowers, however, seek to set aside the fraudulent transfers of

the junior liens by SFNU to JPK.  If those transfers are set aside, the declaratory judgments and

injunctive relief claims will implicate the rights of SF NU.  SF NU also participated in an

attempted foreclosure on one of the properties (and may do so again).  SF NU is also responsible

for the misconduct that it engaged in, as one of the Lender Defendants, before the junior liens

were transferred.  Accordingly, SF NU is still a proper defendant even though it currently does

not hold title to the junior liens.

3.    <u>As Discussed Above, Borrowers Have Stated a Claim in Count VII to Set
Aside Fraudulent Transfers.</u>

That SF NU claims "[t]he interests of [SF NU] have been transferred to JPK" is just one

fact upon which Count VII is based.  The Borrowers also allege that SF NU fraudulently

transferred the Developer RE1 loan documents (the junior lien) "with the intent to hinder or

delay [the Borrowers] from reaching the assets of the WCP and SF NU."  Compl. ¶ 205.  Thus,

SF NU's request for dismissal of Count VII is without merit and should be denied.

V.    <u>ARGUMENT: WHY SUMMARY JUDGMENT IS NOT APPROPRIATE</u>

This Court should deny the request for summary judgment because: (a) the Defendants

should not be permitted to relitigate issues already determined by the Superior Court under the

law of the case doctrine; (b) the Borrowers have multiple, viable defenses as to why the loans

were not paid; (c) multiple disputes of material fact exist which preclude summary judgment on

Counts I – VI; and (d) the motion for summary judgment is premature because the Borrowers

have not have the benefit of full discovery.

As for the Defendants' "Material Facts Not in Dispute," that list consists largely of improper legal conclusions and Defendants' interpretations of the Loan Documents. In the Borrowers' Response, the Borrowers have designated each of Defendants' purported facts as disputed, admitted, and/or not material. The Borrowers also object to Defendants' legal conclusions to the extent that they are not supported by the record or are contrary to the terms of the Loan Documents. There are multiple, material disputes of fact exist that preclude the entry of summary judgment on Counts I – VI.

A.   The Defendants Impermissibly Seek to Relitigate Issues Already Determined.

As for the 423 Kennedy Loan Documents, on July 24, 2023, after a full evidentiary hearing, Judge Milton C. Lee, Jr. issued a comprehensive 22-page Order granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 5. In the First TRO Order, Judge Lee addressed and dismissed the Defendants' contentions as to "late" payments and a lien placed on the 423 Kennedy Property. As the Defendants have not raised any new facts, the Borrowers ask this Court to reject the Defendants' attempt to relitigate these issues and effectively reverse Judge Lee's prior factual findings and decision.

As for the Developer RE1 Loan Documents, on August 15, 2023, after a full evidentiary hearing, Judge Ebony M. Scott entered a Hearing Order by which she, among other things, granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 6. In the Second TRO Order, Judge Scott also addressed and dismissed the Defendants' contentions as to a water lien, real estate taxes, and "a breach of the deed of trust as a result of default." *See* Second TRO Order at p. 4. Relevant here, Judge Scott

observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of trust." *Id.* at p. 5. Judge Scott observed the that the parties had filed a Notice of Related Case due to the similarities between the case involving the 423 Kennedy Property and the Developer RE1 Property. Judge Scott stated that, "the Court found Judge Lee's opinion quite persuasive." *Id.*

The factual and legal determination made by Judge Lee and Judge Scott are discussed in further detail below.

1.  The July 24, 2023 Order

Regarding Defendants' claim that 423 Kennedy defaulted under the Loan Documents, these issues were determined by Judge Lee who concluded that "[i]n regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default." First TRO Order at p. 11. Another matter Defendants wholly fail to address was also determined by Judge Lee – Specifically, Judge Lee addressed the WCP Fund's failure to provide the agreed upon construction to 423 Kennedy. In doing so, Judge Lee stated that, "the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs." *Id.* at p. 10. Thus, Defendants' actions constituted both a first breach under the 423 Kennedy Loan Documents and prevented 423 Kennedy from moving forward with its project. Regarding the lien placed on the 423 Kennedy Property in relation to a final order regarding a notice of infraction, Judge Lee stated that "[i]t is difficult for the Court to concluded that defendants realistically believed that it was appropriate or legally proper to base a default for multi-million dollar protect [sic] on a $500 fine that plaintiffs did not know about and was cured almost immediately after plaintiffs learned of the lien through the default." *Id.* at p. 12. Judge Lee also pointed to Section 7.6 of the deed of

trust stating that "[t]hat provision indicates the plaintiffs had the right to discharge or appeal any

lien within 30 days of the judgment." *Id.* Judge Lee concluded that Mr. Negussie's testimony

"demonstrated that 423 Kennedy acted promptly to resolve the lien once they learned of the

existence of the violation." *Id.* at p. 12. Judge Lee ultimately concluded that 423 Kennedy

"carried their burden by establishing a likelihood of success on the merits." *See id.* at p. 17.

> 2.      The August 15, 2023 Order

In the Second TRO Order, Judge Scott observed that there is "evidence of a pretextual

basis for the default." Second TRO Order at p. 4. Judge Scott also noted that "Defendant's

counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water

bills were being sent to the wrong address." *Id.* at n. 2. Regarding the purportedly late

payments, Judge Scott observed that "[a]lthough [Mr. Negussie] admitted that four or five loan

payments were untimely, he testified that Defendants always accepted the payments." *Id.* at p. 3.

Judge Scott also observed that one of the purported defaults Defendants claim pertains to real

estate taxes "which were paid by the time Plaintiff received the default email." *Id.* at p. 4.

> B.      Material Disputes of Fact Exist that Preclude the Entry of Summary
> Judgment on Count I for Tortious Interference.

In claiming entitlement to summary judgment on Count I (Tortious Interference) the

Defendants claim that the fourth element, resulting damages, is "key." In making this claim, the

Defendants acknowledge that at least two of the elements of this cause of action "run too close to

potential disputes of material fact." Motion at p. 21. Rather, Defendants claim, without citation

to the record, that the Borrowers have not been damaged as a result of Defendants' actions. This

is insufficient, as material disputes of fact exist regarding the damages the Borrowers have

sustained and the cause of those damages.

As the Borrowers already demonstrated when responding to a similar argument made by Mr. Drazin, the Borrowers *have* suffered damages as a result of the Defendants' misconduct that includes their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects. *See* Negussie Decl. ¶ 18. There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation. *Id.* To top it off, due to nearly all of those factors and a now depressed sales market, there is very little chance that either project will result in a profit. *Id.* ¶ 19. There are also likely damages to the building because it has been vacant and open to environmental elements. *Id*. ¶ 18. Both Borrowers have also incurred carrying costs, such as property taxes, insurance, and payments to vendors. Both Borrowers have also suffered reputational damages. *Id.*

To protect their rights under the loan documents, the Borrowers were also forced to take legal action. *Id.* ¶ 10. As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs. *Id.* In sum, the damages element of Count I is the only element the Defendants attack and material disputes of fact exist that prevent the entry of summary judgment on the issue of damages. Moreover, the Defendants have again failed to cite to any admissible evidence in support of their claim that the Borrowers have not suffered damages, as required. As such, because the element of damages *is* a disputed material fact, the Defendants' request for summary judgment on Count I should be denied. *See Raskauskas v. Temple Realty Co*., 589 A.2d 17, 26 (D.C. 1991) (reversing trial court's grant of summary judgment in a case where "sworn complaint disputed all of the material facts relied on by [the movant's] summary judgment motion.").

16

C.    Material Disputes of Fact Exist That Preclude Summary Judgment on
      Count II for Breach of the Implied Covenant of Good Faith and Fair
      Dealing.

Contrary to Defendants' statement that they are alleged only to have enforced the plain

terms of the Loan Documents, the Borrowers have alleged much more in terms of facts. This

includes that DP Capital, the WCP Fund, and SF NU did not comply with and breached the loan

documents and actively interfered with the Borrowers' ability to comply with them. DP Capital,

the WCP Fund, and SF NU actively interfered with and/or prevented the Borrowers from

complying with the Loan Documents. *See* Borrowers' Response ¶¶ 14 and 27. There are also

material disputes of fact regarding whether the DP Capital, the WCP Fund, and SF NU complied

with the Loan Documents. Specifically, the Borrowers also contend that the DP Capital, the

WCP Fund, and SF NU, breached the relevant Loan Documents first. *See id.* ¶¶ 14 and 27.

Judge Lee and Judge Scott have already made factual determinations regarding both the

Defendants' breaches and the Defendants' interference with the Borrowers' ability to comply

with the Loan Documents. *See generally* First and Second TRO Orders.

In this case, the prevention doctrine and the first breach doctrine go hand in hand. To the

extent Lender Defendants claim the Borrowers defaulted under the Loan Documents, the

Borrowers contend that it was the Lender Defendant's prior breaches, namely the refusal to

provide construction draws and pre-textual claims of defaults, that prevented the Defendants

from refinancing their loans, and ultimately resulting in this litigation. *See* Borrowers' Response

¶¶ 14 and 27. As a result, the Borrowers maintain that they are not liable to the Lender

Defendants for any claimed breaches that occurred due to the Defendants' wrongful conduct, as

the Lender Defendants actively prevented the Borrowers' from complying with the loan

documents. *See Joyner v. Jonathan Woodner Co*., 479 A.2d 308, 311 n.4 (D.C. 1984) (referring

to "the firmly established principle of contract law that prevention by one party excuses

17

26

performance by the other"). The Lender Defendants' actions also constituted first breaches of the Loan documents that excused the Borrowers' further performance. *See Rosenthal v. Sonnenschein Nath & Rosenthal, LLP,* 985 A.2d 443, 452 (D.C. 2009) (explaining that after a party breaches a contract, "the injured party need not continue to perform; it may abjure the contract and sue for damages."). The WCP Fund's failure to provide construction draws to 423 Kennedy was already determined to be a first breach by Judge Lee, who noted that "the project could not move forward without those funds [construction draws] being available to plaintiffs." *See* First TRO Order at p. 10.

Regarding the Defendants' contention that the Borrowers' made late payments, the Borrowers contend that the WCP Fund accepted all late payments, or were themselves responsible for those late payments by not properly crediting an interest reserve escrow, and/or waived any defaults based upon late payment. Negussie Decl. ¶ 13. To the extent the Defendants point to a "time is of the essence" clause, the WCP Fund's failure to declare defaults at the time of any alleged nonpayment constituted a waiver of the right to later declare defaults based on late payments that were accepted. As the U.S. Court of Appeals for the D.C. Circuit has previously observed, "the course of conduct of the parties may bring about a modification of their strict legal rights and obligations to the point that the creditor could be said to have created a waiver of its right to accelerate 'without at least implicitly giving prior notice of its intention to do so should default again occur.'" *See Kummli v. Myers,* 400 F.2d 774, 777 (1968) (quoting *Har-Rich Realty Corp. v. Am. Consumer Indus., Inc.,* 351 F.2d 785, 777 (1965)). There is also language in the notes suggesting that a waiver of a default can occur. *See* Section 3 of Exhibits A and E to the Motion (first sentence after subpart (d) ("Failure to exercise any of the options aforementioned or the failure to exercise any other option herein…shall not constitute a waiver

18

of the right to exercise the same *in the event of any subsequent default*.")).  Most importantly for summary judgment purposes, the issue of waiver is always a question of fact.  *BDO USA, LLP v. Jia-Sobota,* ==283 A.3d 699== (D.C. 2022) (noting that the question of waiver is "a fact-intensive inquiry.").

The Borrowers also presented testimony and documentary evidence at the TRO hearings showing that the lender's own records did not list the loans in default status when the Notices of Default were sent.  *See* Exhibit 7 (Exhibit S from the Developer RE1 TRO Hearing showing that both loans for Developer RE1 were listed as "current").  The lender's records reflect the same for 423 Kennedy.  *See* screenprint from the lender's records attached hereto as Exhibit 8.  With respect to 423 Kennedy, the lender sent multiple payoff statements to 423 Kennedy, that, until December 8, 2022 did not include any default interest or default penalties that clearly, if not conclusively, supports a waiver defense and that the defaults alleged later were pre-textual.  Additionally, when Mr. Huertas was questioned about what types of default had occurred by Developer RE1, he was not able to identify any type of default nor when the loans were current or not.  *See* Exhibit 9 (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirming that the lender's records did not list a "default" status until February 1, 2023).

As the Borrowers have valid defenses to enforcement of the loan documents and there are material disputes of fact regarding DP Capital, the WCP Fund, SF NU, and JPK's intentional interference with their refinancing of the Loan Documents, the request for summary judgment on Count II should be denied.

D.      Defendants' Request as to Count IV (for Permanent Injunctive Relief)
        Should Be Rejected.

The sole basis of Defendants' request for entry of summary judgment on Count IV is their claim that injunctive relief is not a separate cause of action.  Defendants' do not, however, dispute that the Borrowers' may be entitled to injunctive relief.   Judge Scott implicitly rejected this argument when it was raised in a prior Motion to Dismiss.  A copy of Judge Scott's April 7, 2023 Order is attached as Exhibit 10.   A copy of the transcript from the March 24, 2023 Initial Scheduling Conference before Judge Scott is also attached as Exhibit 11.

The Defendants have not raised any new arguments on this issue, and relitigating the same issue that a prior judge already decided is barred by the law of the case doctrine.  *See Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) ("[t]he doctrine of law of the case conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single question.'").   Because the Defendants do not deny the Borrowers' entitlement to injunctive relief, the Court should not dismiss Count IV.  If the Court does not follow the law of the case doctrine, it should alternatively decide that injunctive relief is an available remedy here.[6]

E.      Defendants Have Not Met Their Burden as to Count III and Count VI for
        Declaratory Judgment.

As a preliminary matter, while Defendants claim they are seeking summary judgment on both Counts III and VI as to the Borrowers' causes of action for Declaratory Judgment, they fail to substantively address Count VI.  To the extent Defendants request summary judgment on

---

[6]  *See, e.g., Sunlight Trading, LLC v. Potomac Abatement, Inc.*, 2019 D.C. Super. LEXIS 578, 13 (D.C. 2019). In *Sunlight,* a trial judge observed that it could dismiss an injunctive relief count "based on stylistic preferences or deny its dismissal while acknowledging that it is merely a remedy." The judge in *Sunlight* ultimately chose the latter option by explaining "that injunctive relief is merely a remedy for the other independent causes of action."

Counts III and VI, they claim only that the Borrowers seek advisory opinions. The Defendants are wrong.

It is well-established that parties to a contract may seek a declaratory judgment regarding the existence of a contract, dispute(s) under a contract, and what the contract states and/or allows. *See Smith v. Wash. Post Co.,* 962 F. Supp. 2d 79, 89 (D.D.C. 2013) (explaining that "[p]arties to a contract may request a declaratory judgment stating whether a valid contract exists and, if so, what its provisions mean."); *see also Zlotnick v. Jack I. Bender & Sons, Inc.,* 285 F. Supp. 548, 555 (1968) (observing that "[d]eclaratory judgment is appropriate to interpret the written instrument running between the parties and to resolve their legal relationship."). This is exactly what the Borrowers seek with Counts III and VI of the Complaint – legal determinations as to the rights of the parties under the Loan Documents. *See* Complaint ¶¶ 230-35 and ¶¶ 250-55.

Defendants also suggest, without support, that the Borrowers seek advisory opinions in Count III. But the cases they cite for support are inapposite here because the Borrowers do not seek an advisory opinion. In *Pueschel,* a federal trial judge rejected a request that it issue what would amount to an advisory opinion on a dispute over the non-movant's objection to discovery requests. *See Pueschel v. Nat'l Air Traffic Controllers' Ass'n* 606 F. Supp. 2d 82, 86 (D.D.C. 2009) (determining that "there is no concrete discovery dispute upon which to rule" after observing that the movant's motion "does not set forth the text of any discovery request to which the defendant objected, much less the text of any objection."). But unlike the plaintiffs in *Pueschel,* the Borrowers here have set forth concrete disputes upon which they properly seek judicial determinations regarding the rights and liabilities under the Loan Documents. *See* Complaint ¶¶ 230-35 and ¶¶ 250-55. The Borrowers are entitled to the requested legal

determinations.  For these reasons, the Defendants' request for summary judgment as to Counts
III and VI should be denied.

      F.     <u>The Borrowers Are Entitled to Additional Discovery to Oppose the
Motion</u>

      Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they

cannot present essential facts to justify their opposition, the Court can: "(1) defer considering the

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order." Fed. R. Civ. P. 56(d).  Although the Borrowers believe that

they have already demonstrated that there are multiple, material facts in dispute that preclude

summary judgment, it should be noted that there are a variety of facts, documents, and

information that the Borrowers are entitled to discover that would further support the Borrower's

opposition to the Motion.  As the Borrowers noted at the outset, if the Borrowers take the

corporate depositions of the Lender Defendants and the individuals that participated in the

decisions and actions taken here, they are highly likely to find even more evidence to support

their claims and defenses.  Those essential facts that would further support this opposition

include:

- Confirming that the Lender Defendants have waived defaults related to the alleged late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to put pressure on the Borrowers related to the 2507 I Street project and to "make trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (ECF # 30, page 14).

## VI.  CONCLUSION

There are multiple reasons why the Court must deny the Motions.  For these reasons, and for any reasons that may be advanced at a hearing on the motions, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  April 18, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ebm@gdllaw.com |
         ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |

| | |
|---|---|
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; AND WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; AND WCP FUND I LLC,

    *Defendants.*

**PLAINTIFFS' RESPONSE TO DEFENDANTS' LIST OF
MATERIAL FACTS NOT IN DISPUTE AND
LIST OF ADDITIONAL MATERIAL FACTS IN DISPUTE**[1]

| Defendants' "Material Facts Not in Dispute" | Plaintiffs' Response & Supporting Evidence |
|---|---|
| 1. On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B. | The terms of the DRL Notes speak for themselves and are not disputed. |
| 2. The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D. | The terms of the DRL Deeds of Trust speak for themselves and are not disputed. |
| 3. Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 4. The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H. | The terms of the 423 Kennedy Deeds of Trust speak for themselves and are not disputed. |

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

| | |
|---|---|
| 5. Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | The terms of the Second DRL Note speak for themselves and are not disputed. |
| 6. DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 7. DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 8. DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |

35

|  |  |
|---|---|
| 9. Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | Denied/disputed. The terms of the Second DRL Note speak for themselves and are not disputed. But Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 10. DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7. | Denied/disputed. Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 11. The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2. | Denied/disputed. The terms of the DRL Deeds of Trust speak for themselves and are not disputed. But Developer RE1 has valid defenses and a right to cure an alleged lien default prior to a foreclosure. |
| 12. DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J. | Denied/disputed. Developer RE1 disputes this purported fact as the record demonstrates that Developer RE1 did not timely receive the water and sewer bills that resulted in the referenced lien. Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. Developer RE1 did not receive the invoices 2/23/22, 3/18/22, 4/19/22, and 6/16/22 until August 31, 2022. Negussie Decl. ¶ 11.<br><br>Judge Scott also made findings that Developer RE1 took immediate steps to resolve the lien and this could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition.<br><br>The lender's own records show that the loan was never in default status as a result of this |

| | lien. *See* Exhibit 7 to the Borrowers' Opposition. |
|---|---|
| 13. DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed). | Disputed. Developer RE1 disputes this purported fact as it paid the taxes on the Developer RE1 Property. Negussie Decl. ¶ 12. <br><br> The lender's own records show that the loan was never in default status as a result of this lien. *See* Exhibit 7 to the Borrowers' Opposition. |
| 14. DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2] | Developer RE1 presented evidence at the Developer RE1 TRO Hearing showing that the lender's own records did not list the loans in default status when the Notices of Default were sent. *See* Exhibit 7 to the Borrowers' Opposition and Exhibit S from the Developer RE1 TRO Hearing (showing that both loans for Developer RE1 were listed as "current"). <br><br> This alleged fact is also disputed because at his deposition, Mr. Huertas could not state what DRL loans were current and what loans were not current. *See* Exhibit 9 to Opposition (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirmed that the lender's records did not list a "default" status until February 1, 2023). <br><br> Developer RE1 further disputes this purported fact as WCP accepted all payments Developer RE1 made. Negussie Decl. ¶13. <br><br> Developer RE1 also disputes this purported fact because the Lander Defendants interfered with, and prevented, the refinancing of the loans that Developer RE1 had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 14. |

| | This summary of alleged defaults is also disputed for the reasons previously stated in the prior references to these alleged defaults. |
|---|---|
| 15. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 16. 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
| 17. 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 18. 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were |

| | |
|---|---|
| Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10. | either excused or waived, and could not serve as a basis for a default.  *See* Exhibit 5 to the Borrowers' Opposition.  The lender's records also show that all payments were current.  There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
| 19. 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11. | Denied/disputed.  The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally).  Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition.  The lender's records also show that all payments were current.  *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 20. 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12. | Denied/disputed.  423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 21. 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13. | Denied/disputed.  423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 22. 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14. | Denied/disputed.  423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |

| | |
|---|---|
| 23. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 24. The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 25. Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1. | The terms of the 423 Deeds of Trust are not disputed. |
| 26. On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L. | Denied/disputed. 423 Kennedy was not aware of the lien, and when it became aware, it immediately took steps to resolve it. Judge Lee also made a finding that 423 Kennedy took immediate steps to resolve the lien and that it was highly questionable this $500 fine could validly serve as a basis for a default on a multi-million dollar project. *See* Exhibit 5 to the Borrowers' Opposition. The lender's own records show that the loan was never in default status as a result of this lien. *See* Exhibit 8 to the Borrowers' Opposition. |
| 27. In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, | Disputed/denied. 423 Kennedy presented evidence at its TRO Hearing showing that the lender's own records did not list the loans in |

| | |
|---|---|
| with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3] | default status when the Notices of Default were sent. *See* Exhibit 8 to the Opposition.<br><br>423 Kennedy disputes this purported fact as it the lender who held the loan documents at the time of the alleged defaults who first breached the same with their refusal to provide construction draws. Negussie Decl. ¶ 16.<br><br>423 Kennedy further disputes this purported fact as WCP accepted all payments 423 Kennedy made. Negussie Decl. ¶ 13.<br><br>423 Kennedy also disputes this purported fact as the Lender Defendants interfered with – and—prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 15.<br><br>423 Kennedy had valid legal and factual defenses to the alleged defaults, such as first breach, the prevention doctrine, and waiver. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

DECLARATION OF MEL NEGUSSIE[1]

I, Mel Negussie, am over 18 years of age, have personal knowledge of the facts set forth

herein, and declare as follows:

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

1.     423 Kennedy St Holdings, LLC ("423 Kennedy") is a domestic, sole purpose, limited liability company that owns the real property known as 423 Kennedy, N.W., Lot 56, Square 3260 (the "423 Kennedy Property").

2.     Developer RE1, LLC ("Developer RE1") is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "5501 1st Street Property").

3.     I am a member of both Developer RE1 and 423 Kennedy.

4.     The sole purpose of 423 Kennedy is to own and develop the 423 Kennedy Property.

5.     The sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

6.     In January of 2020, DP Capital LLC d/b/a Washington Capital Partners ("WCP") helped 423 Kennedy obtain a construction finance loan for the 423 Kennedy Property, which original loan was later refinanced.  WCP Fund I, LLC ("WCP Fund") is the lender under the loan documents.

7.     On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the 5501 1st Street Property, which original loan was later refinanced. WCP Fund is the lender under the loan documents.

8.     By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein.

9.     On December 8, 2022, I received two unsigned Notices of Default by email, one regarding the 5501 1st Street Property and the other regarding the 423 Kennedy Property. Neither Notice of Default set forth a default.  The email also included Payoff Statements.  The

2

Payoff Statements demanded additional amounts of $727,598.77 (for Developer RE1) and $1.5

million (for 423 Kennedy) for "Default Interest" and "Default Penalt[ies]."

10.     As a direct result of the wrongful conduct of Defendants, Developer RE1 and 423

Kennedy were forced to initiate and/or maintain legal action to protect their rights under the loan

documents referenced herein. As a result, the Borrowers have incurred and continue to incur

attorneys' fees and costs.

11.     Developer RE1 first became aware that there may be outstanding DC Water

invoices on or about August 31, 2022.  Developer RE1 did not receive the invoices 2/23/22,

3/18/22, 4/19/22, and 6/16/22 until August 31, 2022.

12.     Developer RE1 paid all taxes on the Developer RE1 Property.

13.     All interest payments made by the Developer RE1 and 423 Kennedy were

accepted by WCP.

14.     The "Notice of Default" WCP issued to Developer RE1 interfered with –and—

prevented the refinancing of the loans that  Developer RE1 had secured, or was in the process of

securing with Main Street Bank.


15.     The "Notice of Default" WCP issued to 423 Kennedy interfered with –and—

prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of

securing with Main Street Bank.

16.     On or about October 6, 2022, Mr. Huertas informed 423 Kennedy by telephone

that the WCP would no longer provide construction draws to 423 Kennedy.

17.     Developer RE1 and 423 Kennedy were not required to make interest payments

after Defendants breached the Loan Documents.

18.     The Borrowers have already suffered damages as a result of Defendants'
misconduct to include damages caused by their inability to refinance the loans, rising interest
rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the
projects.  There will also be damages for the increased costs to complete the projects as a result
of supply chain shortages and inflation.  As to 423 Kennedy, there are likely damages to the
building at the 423 Kennedy Property because it has been vacant and open to environmental
elements.  Both Borrowers have incurred carrying costs, such as property taxes, insurance, and
payments to vendors.  Both Borrowers have suffered reputational damages.  I have personally
fielded questions from other developers and financers about why the projects at the 423 Kennedy
Property and the 5501 1st Street Property were not completed.

19.     Due to nearly all of the factors listed above, and a now depressed sales market,
there is very little chance that either project will result in a profit.

20.     Developer RE1 and 423 Kennedy seek to discover information and documents as
to the Defendants' actions in relation to the loan documents referenced herein to include the
following:

- Confirming that the Lender Defendants have waived defaults related to the alleged
  late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans
  to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to
  put pressure on the Borrowers related to the 2507 I Street project and to "make
  trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (ECF # 30, page 14).

21. The facts alleged in the Third Amended Complaint are true and correct to the best of my knowledge.

22. I testified truthfully at two different TRO hearings held on Friday, July 21, 2023 and Wednesday, July 26, 2023.

23. The decisions entering a TRO issued by both Judge Milton Lee and Judge Ebony Scott accurately reflect and summarize most of the testimony that I gave at the two TRO hearings.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of April, 2025

_Mel Negussie_
_____

Mel Negussie

## D.C. Code § 28-3104

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code > Division V. Local Business Affairs. (Titles 25 — 37) > Title 28. Commercial Instruments and Transactions. (Subts. I — II) > Subtitle II. Other Commercial Transactions. (Chs. 21 — 54) > Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3104. Transfers fraudulent as to present and future creditors.

**(a)** A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

**(1)** With actual intent to hinder, delay, or defraud any creditor of the debtor; or

**(2)** Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

**(A)** Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

**(B)** Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**(b)** In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

**(1)** The transfer or obligation was to an insider;

**(2)** The debtor retained possession or control of the property transferred after the transfer;

**(3)** The transfer or obligation was disclosed or concealed;

**(4)** Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

**(5)** The transfer was of substantially all the debtor's assets;

**(6)** The debtor absconded;

**(7)** The debtor removed or concealed assets;

**(8)** The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

**(9)** The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

**(10)** The transfer occurred shortly before or shortly after a substantial debt was incurred; and

**(11)** The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, *42 DCR 6773*.)

Erin McAuliffe

§ 28-3104. Transfers fraudulent as to present and future creditors.

Annotations

# Notes

**Prior Codifications.**

1981 Ed., *§ 28-3104.*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *§ 28-3101.*

**Editor's notes.**

Uniform Law: This section is based upon § 4 of the Uniform Fraudulent Transfer Act.

# CASE NOTES

   **Attachment.**

   **Transfer.**

**Attachment.**

Client's judgment lien did not automatically attach to the attorney's "share" of the property upon the divorce, because he had no such share as the property was owned solely by the wife, as resolved by the couple's property settlement agreement, the divorce decree, and the warranty deed; the Superior Court did not err in denying the client's motion for a determination that the property was dually owned by the couple, and the property was not an assert of the attorney that could be the subject of a transfer that was fraudulent, and the client had at no time a right to attach the property. *Blount v. Padgett, 261 A.3d 200, 2021 D.C. App. LEXIS 294 (D.C. 2021).*

**Transfer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64. 2-2603(G), a disclaimer was not a transfer. *Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020).*

# Research References & Practice Aids

**Section references.**

This section is referenced in *§ 28-3103*, *§ 28-3108*, and *§ 28-3109.*

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

## D.C. Code § 28-3105

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code  >  Division V. Local Business Affairs. (Titles 25 — 37)  >  Title 28. Commercial Instruments and Transactions. (Subts. I — II)  >  Subtitle II. Other Commercial Transactions. (Chs. 21 — 54)  >  Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3105. Transfers fraudulent as to present creditors.

**(a)**  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**(b)**  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, *42 DCR 6773*.)

Annotations

## Notes

**Prior Codifications.**

1981 Ed., *§ 28-3105.*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *§ 28-3101.*

**Editor's notes.**

Uniform Law: This section is based upon § 5 of the Uniform Fraudulent Transfer Act.

## CASE NOTES

**Disclaimer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64.2-2603(G), a disclaimer was not a transfer. *Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020).*

# Research References & Practice Aids

**Section references.**

This section is referenced in § 28-3103, § 28-3108, and § 28-3109.

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

423 KENNEDY ST HOLDINGS LLC, :
          **Plaintiff** :
           :
           :
**vs** : **Docket No. 2023 CAB 4260**
           :
           :
DP CAPITAL /D/B/A WASHINGTON :
PARTNERS, ET. AL. :
          **Defendant** :

### ORDER

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of
Contract (Count 1); tortious interference with business relations (Court II); breach of
duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee
(Count VI).  The Complaint also seeks declaratory judgments regarding the meaning
of provisions in the two Deeds of Trusts and a determination that the liquidated
damages provisions are unenforceable because those provisions constitute a penalty
(Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position
because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's
seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count
V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary
Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023
defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,
plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)
that the balance of injuries favors granting an injunction, and 4) that the public
interest would be served by granting the request for an injunction. *Ifill v. District of
Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to
demonstrate that each of the factors, taken together, weigh in favor of issuing an
injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

## I. Likelihood of Success on the Merits

### A. The Breach of Contract Claim

To prevail on the breach of contract claim plaintiff must establish: 1) the
existence of a valid contract between the parties; 2) an obligation or duty arising out
of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas
Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute
regarding whether there was a valid contract between the parties. The parties do not
agree on what is included in the terms of the contract and whether there was a breach.

In support of the claim of breach contract, plaintiffs argue that defendants
improperly discontinued performance of the contract by stopping construction draws
for the 423 Kennedy Street property (the project). When defendants discontinued
construction draws, they knew that plaintiff would not be able to move forward with
the project. Shortly after the construction draws stopped, defendant gave notice of
default to plaintiffs. Plaintiffs claim that there is no basis for the default because
plaintiffs had complied with the terms of both deeds of trust and the reasons advanced
by defendants for the default is nothing more than a pretext. According to plaintiff,
the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion. Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan. In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property. Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1] Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares. 423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property. According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022. Approximately 50% of the project was completed at the time of the refinancing. The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00. Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project. According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy. According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble. 423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance. Those payoff statements did not reflect a default or late fees.[3] On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development. Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6] When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin. On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7] The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the
borrower or borrower's affiliates is an Event of Default." Immediately below that
passage, the email referenced the issuance of a District of Columbia Certificate of
Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid
principal, accrued interest, and any other charges would become immediately due and
payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract
claim because defendants' basis for default are a pretext and the stoppage of
construction draws was an improper, purposeful act undertaken by defendant to cause
the default on the loan because plaintiff would not be able to continue with the project
without the construction draws. Once construction draws ceased, plaintiff could not
make interest payments in 2023 and would not be able to make payments necessary
by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on
March 31, 2023 and that plaintiffs had made no payments since the December 2022
interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the
payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the
loan were consistently late each month, 2) of the Certificate of Delinquent Fines
issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs
made no interest payments in 2023 and did not satisfy the loan by the maturity date of
March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street. There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan. Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws. Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws. In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11] Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

     The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id,* at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date. In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default. First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments. It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments. According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current. Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately. Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

61

Growth."[20]   As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.
[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited

Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the

parties and that initial breach caused plaintiff to be unable to make future payments

on the loan.

### B. The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate

1) the existence of a valid contractual or other business relationship; 2) the

defendant's knowledge of the relationship; 3) intentional interference with that

relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279

(D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in

November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The

email exchanges between Negussie and Huertas demonstrates this knowledge.  As

Negussie testified, defendants provided "clean" payoff statements  that were

necessary for the completion of the refinancing on two occasions close in time to the

Huertas emails and prior to December 2022.  The closing with Main Street Bank was

scheduled to take place prior to Thanksgiving but was delayed because of the holiday.

When the closing was delayed, defendants issued new payoff statements on

December 8, 2022 that reflected for the first time the default as well as default interest

and penalties that were due.  As Negussie testified these new payoff statements would

prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were

engaged in business relationship with Main Street Bank that included the creation of a

term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding. There is some support for this position in that the deeds of trust in Section 8.0 details the obligations of the trustee in the event of a default and foreclosure. Defendants further argue that the trustee's service is largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of default in December 2022, he had no contact with Mr. Drazin in connection with his duties as trustee. Contact with Drazin was suggested by Dan Huertas when Negussie sought an explanation for the default. According to Negussie, Huertas indicated that additional information regarding the default would have to come from WCP's attorney, Russell Drazin. In a December 9th email, Drazin indicated that he represented WCP in connection with the loans and went on to explain the basis for the default issued on December 8, 2022. The record does not indicate that plaintiffs had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interest, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994). The trustee has a duty to both the borrower and the lender. Here, the record establishes that Drazin served as trustee under the terms of the deed and had a fiduciary duty to act faithfully to both. The record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default. At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure. Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee. *Sheridan,* 299 F.2d at 465 Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits. Plaintiffs seek the appointment of substitute trustee given the existence of the conflict. The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II. Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them. Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project. In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III. Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the rule creates a mandatory imposition of a bond for the protection of the enjoined party has not been directly addressed by the District of Columbia Court of appeals.  The local rule is almost identical to the federal version, so federal precedent is instructive.  The circuits are split on this issue and the circuits that have interpreted the rule as being discretionary have recognized several exceptions to the mandatory language.  The District of Columbia Court of Appeals has suggested that the security requirement is phrased in mandatory terms with the amount of any bond imposed being left to the discretion of the trial court.  If the trial court exercises its discretion to waive the bond requirement, it is important that the trial judge states the reasons for taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354 A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  First, defendant have not provided any evidence of what an appropriate bond might be under the circumstances.  While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward. The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project. If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review. Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits. It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI. Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order. The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


   July 24, 2023                                      /s/                
      Date                                   MILTON C. LEE, JR.
                                           ASSOCIATE JUDGE


cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.     2022 CAB 005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Event: Remote Mediation Session November 16, 2023 at 1:30 P.M.** |
| **Defendant.** | |

## <u>HEARING ORDER</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day. The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full. As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms. The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements. The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means. Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260. In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

that were necessary for the project to move forward. Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case. This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale. Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing. Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies via Odyssey to:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

| Property: | 5501 1st St NW Washington DC 20011-5207 |
|---|---|

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| GRAND TOTAL | $ 362,353.69 |
|---|---|



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i





[https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu](https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu)





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym





https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy





https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





<https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm>

5505 1st St NW Washington DC 20011-5207
Payment Amount: $5,410.15, Due Date: 06/01/2022                    Paid ⊘



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e





https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay





https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4





https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcuteqpdscyz4wj4m

---

**5505 1st St NW Washington DC 20011-5207**
Payment Amount: $5,235.63, Due Date: 12/01/2022

Paid ⊘



https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e





https://payment-link.azurewebsites.net/p/d5t2iew65ufupjdzhpvbs6b7ge



https://payment-link.azurewebsites.net/p/gwgd3blbzgwujnppboapqylagu





https://payment-link.azurewebsites.net/p/7juaua4o4c7uxio72znu45x3bm



https://payment-link.azurewebsites.net/p/cfxd3oagjbfe7nzrzj6rncl7ra





https://payment-link.azurewebsites.net/p/dcxcbrbjrijunag77txkyukc3i



https://payment-link.azurewebsites.net/p/gmx2wqnzvuje5bpjy4b2nbvnji





https://payment-link.azurewebsites.net/p/ivghhm2crshexhazoa77nomije



https://payment-link.azurewebsites.net/p/uszys6sdzqfetjee47dbzortcm





https://payment-link.azurewebsites.net/p/ntgkzgurvkqu5eufpuzc42qjtm



https://payment-link.azurewebsites.net/p/rzmwi4pvsiqejgw7fylkt5mrsq





https://payment-link.azurewebsites.net/p/zt3j67rx26ie7h6hsaissn6dwg



https://payment-link.azurewebsites.net/p/qtssglpdepxutiyic4uns6ksuy





https://payment-link.azurewebsites.net/p/jgk2uho67krufandts7ohoprk4



https://payment-link.azurewebsites.net/p/qtssglpdepxutiyic4uns6ksuy





https://payment-link.azurewebsites.net/p/mpzefwl7eriufbxtjt4cngwb4a



https://payment-link.azurewebsites.net/p/qlrpvgtbr7yezcoqmwf2tbjx6q

419 Kennedy St NW # 423 Washington DC 20011-6523

Payment Amount: $46,166.18, Due Date: 11/01/2022



https://payment-link.azurewebsites.net/p/feyrtesljkzuddc2okywtmjevu



https://payment-link.azurewebsites.net/p/gppin77bqfyu7a47457vhksvyu



Page 1

1            SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                          CIVIL DIVISION

3    _____

4    DEVELOPER RE1, LLC,

5              Plaintiff,

6         v.                              No.

7    DP CAPITAL, LLC d/b/a WASHINGTON      2022-CAB-005935

8    CAPITAL PARTNERS, et al.,

9              Defendants.

10   _____

11                      DEPOSITION OF

12                     DANIEL HUERTAS

13   DATE:          Wednesday, July 19, 2023

14   TIME:          10:01 a.m.

15   LOCATION:      Greenstein DeLorme & Luchs, PC

16                  801 17th Street Northwest, Suite 1000

17                  Washington, DC 20006

18   REPORTED BY:   Matthew Yancey, Notary Public

19   JOB NO.:       6012872

20

21   PAGES 87-100, 105-222, 251-287 ARE CONFIDENTIAL

22

Page 2

| 1 | A P P E A R A N C E S |
| 2 | ON BEHALF OF PLAINTIFF DEVELOPER RE1, LLC: |
| 3 | JAMES D. SADOWSKI, ESQUIRE |
| 4 | ALEXANDRIA J. SMITH, ESQUIRE |
| 5 | Greenstein DeLorme & Luchs, PC |
| 6 | 801 17th Street Northwest, Suite 1000 |
| 7 | Washington, DC 20006 |
| 8 | jds@gdllaw.com |
| 9 | ajs@gdllaw.com |
| 10 | (202) 452-1400 |
| 11 | |
| 12 | ON BEHALF OF DEFENDANTS: |
| 13 | MAURICE B. VERSTANDIG, ESQUIRE |
| 14 | The VerStandig Law Firm, LLC |
| 15 | 1452 West Horizon Ridge Parkway, Suite 665 |
| 16 | Henderson, NV 89012 |
| 17 | mac@mbvesq.com |
| 18 | (301) 444-4600 |
| 19 | |
| 20 | ALSO PRESENT: |
| 21 | Mel Negussie, Developer RE1, LLC |
| 22 | |

Page 3

| 1 | I N D E X |
| 2 | EXAMINATION: PAGE |
| 3 | By Mr. Sadowski 7 |
| 4 | |
| 5 | E X H I B I T S |
| 6 | NO. DESCRIPTION PAGE |
| 7 | Exhibit 1 Plaintiff's requests production 73 |
| 8 | Exhibit 2 Notice of foreclosure 90 |
| 9 | Exhibit 3 Complaint Developer RE1, LLC 135 |
| 10 | Exhibit 4 First amended complaint 138 |
| 11 | Exhibit 5 Email Thread 4:31 155 |
| 12 | Exhibit 6 Chart Status Reason 165 |
| 13 | Exhibit 7 Chart Status Reason WCP 0708 176 |
| 14 | Exhibit 8 Email Thread WCP 0628 258 |
| 15 | |
| 16 | |
| | * retained by Mr Sadowski |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

Page 4

| 1 | I N D E X (Cont'd) |
| 2 | QUESTIONS INSTRUCTED NOT TO ANSWER |
| 3 | PAGE LINE |
| 4 | 27 19 |
| 5 | 34 6 |
| 6 | 50 15 |
| 7 | 51 10 |
| 8 | 110 12 |
| 9 | 269 8 |
| 10 | 274 8 |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |

Page 5

| 1 | P R O C E E D I N G S |
| 2 | THE REPORTER: Good morning. My name |
| 3 | is Matthew Yancey; I am the reporter assigned by |
| 4 | Veritext to take the record of this proceeding. We |
| 5 | are now on the record at 10:01 a.m. |
| 6 | This is the deposition of Daniel |
| 7 | Huertas -- |
| 8 | MR. HUERTAS: Yes, sir. |
| 9 | THE REPORTER: -- taken in the matter |
| 10 | of Developer RE1, LLC vs. DP Capital, LLC doing |
| 11 | business as Washington Capital Partners, et al., on |
| 12 | July 19, 2023, at 801 17th Street Northwest, |
| 13 | Suite 1000, Washington, DC, 20006. |
| 14 | I'm a notary authorized to take |
| 15 | acknowledgments and administer oaths in the District |
| 16 | of Columbia. |
| 17 | Additionally, absent any objection |
| 18 | before the witness is sworn, all parties and the |
| 19 | witness understand and agree that any certified |
| 20 | transcript produced from the recording of this |
| 21 | proceeding: |
| 22 | - is intended for all uses permitted |

2 (Pages 2 - 5)

1    Q    Is Paragraph 29 true?

2    A    No, it's not true.

3    Q    Okay.  What's not true about it?

4    A    That he didn't make all the payments, it's

5 not true.

6    Q    What payments, as of November 30, 2022, had

7 not been made?

8    A    I don't have the record.  So I can't -- I

9 can't tell you.  I don't have the record.

10    Q    Okay.  Who has that record?

11    A    I don't have the record.

12    Q    I know you don't have the record.  You've

13 told me that now twice.

14    A    Yeah.

15    Q    Who has that record of payments as of

16 November 3, 2022, that there was an unpaid balance due

17 at that time?

18    A    Right.  The servicing department should have

19 that record.  I don't have that record.

20          MR. SADOWSKI:  Okay.  Just can second.

21 Mel, can I have the Post-its?  Okay.

22 //

1 BY MR. SADOWSKI:

2    Q    Paragraph 32, Page 5 of Exhibit 4, is that

3 true?

4    A    Paragraph 32?

5    Q    Paragraph 32, yes.

6    A    Okay.  Let me read it.  No, that's not true.

7    Q    Okay.  What's untrue about it?

8    A    Borrower was in default.

9    Q    And how did the WCP -- how do you know that?

10    A    Borrower was in default.

11    Q    Well, in Paragraph 29, you couldn't tell me

12 whether or not the borrow was in default because you

13 didn't have the records or how much was due.

14    A    Right.

15    Q    So how can you say with confidence that the

16 borrower's in default, under 32, if you don't have the

17 records?

18    A    Borrower's that are not current with their

19 payments are in default.

20    Q    Okay.  So --

21    A    That's a -- not making their -- not making a

22 payment is a form of default.

1    Q    Okay.  So as of November 15, 2022, what

2 outstanding payments were there under the loans?

3    A    Like I said, I don't have the record.

4    Q    So you don't know.

5    A    I can tell you that Mr. Negussie was in

6 default.

7    Q    Now, when you say Mr. Negussie is in the

8 default, do you mean RE1?

9    A    RE1.

10    Q    Okay.

11    A    All of the above.

12          MR. SADOWSKI:  All right.  Okay.  It's

13 two pages.  You're going to need to find us a stapler,

14 Alex.  I don't think you'll have to go far until this

15 stapler arrives.

16          THE REPORTER:  Sure.

17          MR. SADOWSKI:  Are we on No. 6?

18          MR. VERSTANDIG:  There's no Bates on

19 the second page.

20          MR. SADOWSKI:  That's because it's

21 all -- it's all one page.  I'll represent that --

22          MR. VERSTANDIG:  Oh.  It's just 54; got

1 it.

2          MR. SADOWSKI:  -- Exhibit 6 is an

3 enlarged printout of WCP 0054.

4          (Exhibit 6 was marked for

5          identification.)

6          MR. VERSTANDIG:  Thank you.

7 BY MR. SADOWSKI:

8    Q    Daniel, let me know when you're done looking

9 at Exhibit 6.

10    A    Sure.  Go ahead; ask your question.

11    Q    Oh, okay.  What is it?

12    A    It looks like -- I -- I mean, I don't have

13 here the record but payments of the 1 -- RE1, sorry.

14    Q    Okay.  Are you able to read the print on

15 this exhibit?

16    A    I don't have the property address here.  So

17 I'm sorry.  If I don't have a property address or

18 something that can say that to the fact, I cannot -- I

19 can't use this.

20          MR. VERSTANDIG:  I'll stipulate that

21 this is counterintuitively 54, which came first in the

22 production, is the second loan to Developer RE1

42 (Pages 162 - 165)

Page 166

1  secured by 5501/505 [sic] 1st Street.

2         MR. SADOWSKI: Is there another one of

3  these for the first loan in the production?

4         MR. VERSTANDIG: Yeah, I believe it's

5  either 606 or 608 in the production. If I'm off by a

6  few pages, I am not messing with you for sport; I

7  promise.

8         MR. SADOWSKI: Same drill for Margaret,

9  thanks.

10        MR. VERSTANDIG: If it's not 606 or

11  608, look at 806 or 808. I have the ability to jumble

12  numbers in my mind.

13        MR. SADOWSKI: It's one of those days

14  of card counting.

15  BY MR. SADOWSKI:

16    Q  Okay. So as for Exhibit 6, Daniel, your

17  counsel has indicated that he's represented that this

18  is a screen print from the system from the second deed

19  of trust.

20    A  Okay.

21    Q  Do you believe him?

22        MR. VERSTANDIG: Just to be clear, I

Page 167

1  didn't say "from the system," and if you need me to

2  extrapolate there, I can.

3        MR. SADOWSKI: All right. Why don't

4  you just tell Daniel what it is so he knows what to

5  look at?

6        MR. VERSTANDIG: All right. I'll

7  represent as follows. The loan file that was produced

8  in this case for the second loan to Developer RE1

9  includes an Excel sheet that is demonstrative of the

10  payment history on the second loan. This is a print

11  of that Excel sheet.

12        THE WITNESS: Okay.

13  BY MR. SADOWSKI:

14    Q  Okay. Looking at Exhibit 6, can you tell me

15  whether, as of November 3, 2022, there was an overdue

16  payment under the second deed of trust?

17    A  Mr. Negussie was in default starting on

18  July 1st.

19    Q  That wasn't the question. The question was,

20  looking at Exhibit 6, as of November 3, 2022, what

21  payments under the second deed of trust were unpaid as

22  of that date?

Page 168

1    A  Right. I'm -- I'm responding based on what

2  I can answer in my role. I can see that Mr. Negussie

3  was defaulted as of July.

4    Q  Right. But that's not the question. The

5  question is, how much money was owed, or was any money

6  owed, as of November 3, 2022?

7    A  I can't -- I can't answer that question.

8  I'm not in the accounting department. I'm just going

9  to tell you, based on what I see, based on what you

10  presented to me, that Mr. Negussie was in default in

11  July.

12    Q  Okay. So you can't read this printout and

13  figure out whether or not there was an outstanding

14  amount due under the loan at any date.

15    A  No, I can't.

16    Q  All right.

17    A  I can just tell you, based on what I see

18  here in front of me when Mr. Negussie got in default.

19  Mr. Negussie started being default July.

20    Q  Right. But when was this notation put in

21  here, "defaulted"?

22    A  As I stated, I'm not in that department.

Page 169

1  You're asking me a question --

2    Q  I'm asking me to look at it right now.

3  What does it say?

4    A  I answered the question.

5    Q  Okay. Well, I'm looking at it, and I'm

6  looking at the first page. And the word "defaulted"

7  doesn't appear until February 1, 2023. Do you see

8  that? You're not looking at it.

9    A  No, because I answered your question. You

10  can -- you can ask me 20 different ways --

11    Q  No, you're evading the question.

12    A  No, you can ask me 20 different ways, like I

13  explained to you.

14    Q  On Exhibit 6, when is the first indication

15  that RE1 was in default? On Exhibit 6, where is it?

16        MR. VERSTANDIG: Object, but you can

17  answer.

18        THE WITNESS: I already answer your

19  question.

20  BY MR. SADOWSKI:

21    Q  You didn't answer the question. Okay. What

22  date was Developer RE1 noted in default?

43 (Pages 166 - 169)

1    A   I'm looking -- I'm looking at the payment,
2  July 14th --
3    Q   Okay.  And under the Servicing Status
4  Category --
5    A   I'm also -- I'm -- sir, I'm speaking.  You
6  said not to interrupt me.
7    Q   You're right.
8    A   I don't interrupt you.  So please, don't
9  interrupt me.
10    Q   Yeah.
11    A   Mr. Negussie has a copy of his promissory
12  notes, and according to the promissory notes and the
13  stipulation of it, as the deed of trust,
14  that's -- he's in default.
15      So I don't have to look at it here.  I just
16  got to look at when the payment was made, July 14.
17    Q   That's not the question.  The question is
18  where on Exhibit 6 does it indicate -- does it use the
19  word "defaulted"?  What date was the first date?
20    A   I don't know how to answer your question.
21  I'm sorry.
22    Q   You can look at Exhibit 6, and you look for

1  the word.
2    A   I already told you that Mr. Negussie is in
3  default.
4      MR. VERSTANDIG:  All right.  Hold on.
5  I object to the question.  I won't give a speaking
6  objection.
7      MR. SADOWSKI:  On what basis?
8      MR. VERSTANDIG:  That said --
9      MR. SADOWSKI:  A non-speaking
10  objection, basis?
11  BY MR. SADOWSKI:
12    Q   Where on this document --
13      MR. SADOWSKI:  What's the objection?
14      MR. VERSTANDIG:  Let me finish.  With
15  my objection noted, and if you want -- but let me
16  finish because I think you're going to like where this
17  goes.
18      Mr. Huertas, you can look at the
19  document and indicate, just reading the document,
20  without any external scope of knowledge, where on that
21  document the word "defaulted" first appears, and you
22  can answer that question.

1      And I don't have an objection to you
2  answering that question.  Depending on how things get
3  rephrased, I may interpose a different objection in a
4  minute.
5      THE WITNESS:  Right.
6      MR. VERSTANDIG:  But you can indicate
7  where on this document the word "defaulted" first
8  appears.
9      THE WITNESS:  Right.  I see in this
10  document the word "default" appears in one, two -- on
11  the February 1, 2023, payment.
12  BY MR. SADOWSKI:
13    Q   Okay.  And is that also correct -- from the
14  Servicing Status Column?
15    A   Well, that's where --
16      MR. VERSTANDIG:  Can we stipule that
17  doesn't appear anywhere other than the Service --
18      MR. SADOWSKI:  Yeah.  Can I have the
19  witness here just --
20  BY MR. SADOWSKI:
21    Q   I'm talking about this.
22    A   Yeah, that's what I read.

1    Q   Servicing Status.
2    A   Right.
3    Q   See that, those words.  Right?
4    A   Yeah, that's what I see.
5    Q   Now, going to the next page, which is the
6  continuation of the spreadsheet --
7    A   Right.
8    Q   -- where does the word "defaulted" first
9  appear on that second page of Exhibit 6?
10      MR. VERSTANDIG:  Hold on.  I don't
11  think it's a continuation.  I think it's just a
12  blowup.
13      THE WITNESS:  Yeah, that's --
14      MR. SADOWSKI:  You might be right.
15  Then I should be looking at the second page.
16  BY MR. SADOWSKI:
17    Q   Okay.  All right.  So the second page of
18  Exhibit 6 is just an enlarged version of the first
19  page.
20    A   Blurry version of the first page.
21    Q   Okay.  All right.  When does the system at
22  WCP start putting in the word "defaulted"?

44 (Pages 170 - 173)

**Page 174**

1   A   In this specific situation, it says right

2 here. The "defaulted" word appears on the

3 February 1st payment.

4   Q   Right. I got that. But I'm trying to --

5   A   Right.

6   Q   Okay. Why did it change from -- okay.

7 Let's go back. Let's go to another question. Looking

8 at the line right below February 1, 2023, there's a

9 date January 1, 2023. Do you see that?

10   A   Yeah. January 1, 2023, I see that.

11   Q   Okay. And in the Servicing Status, what

12 does it indicate in that column?

13   A   Well, it reads Servicing Status Current.

14   Q   Okay. So what does that mean, Serving

15 Status Current?

16   A   Well, I can tell you what it says here. It

17 says "current." It doesn't mean anything to me.

18   Q   Okay. Then why --

19   A   It says the word "current."

20   Q   -- do you use the terms "current,"

21 "defaulted," "late," "one to 15 days," "originated"?

22 Why are those terms used on servicing status?

**Page 175**

1   A   As I stated, this is an internal code for

2 this. So right now, it says "current."

3   Q   Okay. Who's in charge of making the codes?

4   A   Nobody's in charge of making the codes.

5   Q   What is your understanding of what

6 the word "current" means?

7   A   Like I said, the -- the coding here is -- it

8 says "current."

9   Q   All right. That's not the question. What

10 is your understanding about what the word "current"

11 means?

12   A   That for this specific line, it says that

13 activity is "current."

14   Q   Okay. So as of January 1, 2023, what, if

15 any, payment due under the loan was not current?

16   A   Except for that specific line, it says

17 "current."

18   Q   Okay. So as of that date, doesn't that mean

19 that there's no amount owed under the loan?

20   A   For that specific activity, it shows that

21 it's current.

22   Q   Okay, so 7.

**Page 176**

1       (Exhibit 7 was marked for

2 identification.)

3       THE WITNESS: What are these ones?

4       MR. VERSTANDIG: I will stipulate for

5 the record that this is a printout of an Excel sheet

6 with the loan file for the first promissory note that

7 correlates to the first deed of trust where Developer

8 RE1 is obligated on the promissory note and the

9 property situated at 5501/5505 1st Street serves as

10 collateral on the deed of trust.

11   Q   Okay. Mr. Huertas, what is Exhibit 7?

12   A   It's -- based on what I heard, it's -- it's

13 the first deed of trust for the subject property.

14   Q   And when does the word "defaulted" first

15 appear, in terms of time, on Exhibit 7 in the

16 Servicing Status Column?

17   A   Yeah. The -- the word "defaulted" appears

18 on Line 2-1-2023.

19   Q   Okay. And when does the -- the word

20 immediately below that is the word "current." Right?

21   A   Yes.

22   Q   And that indicates a date of January 1,

**Page 177**

1 2023. Correct, "current"?

2   A   For that particular activity, correct.

3   Q   Okay. Now, let's put 6 and 7 kind of next

4 to each other, if you will.

5       There's another column there that says

6 "Status Reason." Do you see that? It's the second

7 column from the left.

8   A   Yes.

9   Q   Okay. As of January 1, 2023, what does

10 Exhibit 6 indicate in the Status Reason Column?

11   A   In which one?

12   Q   Well, doesn't the word "paid" appear there?

13   A   In which line?

14   Q   One, two, three, four -- one, two, three,

15 four, five, six, seven lines down from the top.

16   A   The word -- it says "paid."

17   Q   Okay. And what does that indicate to you?

18   A   For that activity, it was paid.

19   Q   Okay. And isn't it true that on Exhibit 6,

20 the word paid appears before every date before

21 January 1, 2023, in the Status Reason Column?

22   A   The word "paid" appears in the other lines,

45 (Pages 174 - 177)

Page 178

1  yeah.

2    Q   Okay.  And on Exhibit 7, isn't it also true

3  that the word "paid" appears on every line starting

4  with January 1, 2023, going down all the way to

5  December 23, 2021?

6    Isn't that correct that the word "paid"

7  appears in the Status Reason?

8    A   The word "paid" appears.

9    Q   And those dates there are corresponding to

10  what?

11    A   Those dates?

12    Q   Yeah.  Isn't that a payment due date?

13    A   That's a payment due date.

14    Q   Okay.  So to recap, on Exhibit 6 and

15  Exhibit 7, for every payment due on the date that's

16  listed on those two exhibits from December 23, 2021,

17  through January 1, 2023, it indicates "paid."

18    A   The word "paid" appears in those lines.

19    Q   Okay.  And was RE1, in fact, current on the

20  payments due under the first deed of trust and the

21  second deed of trust as of January 1, 2023?

22    A   No.

Page 179

1    Q   Okay.  What was outstanding as of those

2  two -- okay.  Then why, if they were not current --

3  then why doesn't this indicate that?

4    A   I cannot tell you how the system was

5  generating that, but the borrower was not current.

6    Q   So what was incorrect about it?  What's

7  incorrect about all those indications of "paid"?

8    A   July payment, as you can see, on both, it's

9  July 14th, borrower was in default in the month of

10  July.

11    Q   So what?  So why does that change what's

12  listed here as "paid"?

13    A   I can't speak about a system that shows

14  that.  I can just tell you --

15    Q   So your system doesn't work?

16    A   I guess not.

17    Q   All right.  Who is the person most qualified

18  at WCP to answer questions about when amounts are paid

19  and unpaid under RE1's loans?

20    A   I think I'm qualified.

21    Q   Well, who's the best person?  You said

22  before that you didn't know the records.

Page 180

1    A   Right.

2    Q   You weren't sure.

3    A   If you want specific details on accounting,

4  that would be somebody else.

5    Q   Who would that be?

6    A   My VP of finance.

7    Q   Who is that?

8    A   Christina Araujo.

9    MR. VERSTANDIG:  Alpha, Romeo, Alpha,

10  Uniform, Juliet, Oscar.

11    THE WITNESS:  Yeah.

12  BY MR. SADOWSKI:

13    Q   Okay.  Okay.  So let's go back to

14  Paragraph 29 of Exhibit 4.

15    A   Which page?

16    Q   Sorry, Page 5 of Exhibit 4, Paragraph 29.

17    A   Okay.

18    Q   And that's the same question that I asked a

19  few questions ago, several.

20    What amounts were outstanding under the RE1

21  first deed of trust or second deed of trust as of

22  November 3, 2022?

Page 181

1    A   I don't have the specific amounts.

2    Q   Okay.  Well, these records here show

3  everything was paid.  So if there was something that

4  was unpaid, what was it?

5    MR. VERSTANDIG:  Hold on.  Objection.

6  the records do not show everything being paid on

7  November 3rd.

8    MR. SADOWSKI:  2022?  They show being

9  paid as of January 1, 2023, two months later.

10    MR. VERSTANDIG:  You just asked us as of

11  November 3, 2022.  This record shows that the payment

12  due November 1st was made on November 9th.

13    MR. SADOWSKI:  You're coaching now,

14  Mr. VerStandig.  Okay.

15  BY MR. SADOWSKI:

16    Q   What amounts on November 3, 2022, did RE1

17  owe under either the first deed of trust or the second

18  deed of trust?

19    A   I -- I already told you that.

20    Q   What did they owe?

21    A   I don't have the amounts.

22    Q   You don't know?

46 (Pages 178 - 181)

Page 182

1    A   It's more.  I don't have the amounts.
2    Correct.
3    Q   Okay.  If they owed money as of that date,
4    why isn't it reflected on Exhibit 6 and Exhibit 7?
5    A   That's a report.
6    Q   Okay.
7    A   You just issue a report.
8    Q   So what other reports are there out there
9    that I haven't seen?
10   A   That's the one report that we have.
11   Q   Okay.
12   A   But that's a report that we had for the
13   payments, specific to something, to just one aspect of
14   it.
15   Q   Okay.  When do late charges get posted to
16   the WCP accounting system?
17   A   Late charges are posted, or the system
18   generates a late charge on the 5th.
19   Q   Okay.  Are there any late charges shown on
20   the system printouts in Exhibit 6 and Exhibit 7?
21   A   It shows some late charges.
22   Q   Where?

Page 183

1    A   Line 10/1, 12/1.  I don't know if I'm doing
2    this right.  That's on Exhibit 7.  Look -- are we
3    looking at Exhibit 7 or Exhibit 6?
4    Q   The Late Fee Amount Due Column.
5    A   Yeah.  Which exhibit do you want me to look
6    at?
7    Q   They're both there.  They have the same
8    column.  Right?  So are you talking about this column
9    here, right here with these?  Exhibit 6, it says
10   "523.56."
11   A   It shows two in here for 10/6 and 12/6.
12   Q   Okay.  That's the 523.56 number.
13   A   Yeah.
14   Q   And then on the corresponding Exhibit 7,
15   there's two entries as well on that for 238.02.  Do
16   you see that?
17   A   Mm-hmm.
18   Q   Right?
19   A   Yeah.
20   Q   Were those late charges ever paid?
21   A   I can infer from here that the ACH cleared.
22   So I'm guessing, yes.

Page 184

1    Q   Okay.  All right.  So as of January 1, 2023,
2    what amounts, if any, were owed for late charges as of
3    that date?
4    A   I don't have the specific amount.  I don't
5    have a response to your question.
6    Q   Okay.  Who would be able to answer that
7    question?
8    A   I already give you a name, Christina Araujo.
9    Q   Okay.  All right.  Now, when did somebody at
10   WCP -- oh, well, sorry, strike that.
11       How does the system change from "current" to
12   "defaulted," as it did here on February 1, 2023?
13   A   I cannot tell you for everything, but for
14   this specific situation, I guess it changed on 2/1.
15   Q   Right.  But does someone have to manually go
16   in and click a button and say a "loan is in default"?
17   How does that work?
18   A   I don't know.
19   Q   Will Christina know the answer to that
20   question?
21   A   Maybe, I don't know if she could answer.
22   Q   Who else might know the answer to that

Page 185

1    question?
2    A   I have to ask.  I don't know.  I have to
3    ask.
4    Q   Okay.
5    A   It's a great question for me, too.  I need
6    to figure it out.
7    Q   Okay.  Now, let's go back to Exhibit 4.
8    A   Page?
9    Q   Five.
10   A   Page 5.
11   Q   Now, down to Paragraph 33, I'd ask you to
12   read that and let me know when you're done.
13   A   Okay.
14   Q   Is the information in Paragraph 33 accurate?
15   A   No.
16   Q   What's not accurate about it?
17   A   It is obvious that the developer couldn't
18   secure the financing; otherwise, we wouldn't be here.
19   Q   Okay.  Did you know as of November 15th,
20   when I say "you," did either you or WCP know that RE1
21   was in the process of refinancing a loan with Main
22   Street Bank?

47 (Pages 182 - 185)

Page 282

1 morning right before the sale.

2 BY MR. SADOWSKI:

3    Q   Okay. And is there a WCP investment

4 vehicle, whether it's an entity or not -- let me take

5 that back.

6    So let's assume we're at the day of the

7 foreclosure. What, in your experience, would WCP do

8 to make sure that it had a buyer prepared to meet the

9 criteria for the foreclosure sale at the foreclosure

10 sale?

11    How do you plan for that? What do you do?

12 Like, do you send somebody there? Do you create a new

13 entity? Those are the kind of questions I'm going to

14 have.

15    A   Right, I understand. For this specific

16 situation, we don't have anything at this time.

17    This happened on Tuesday. So prior to the

18 sale, maybe the night before or the morning of, we'll

19 figure out where we stand and make a determination.

20    Q   And who will be involved in that process,

21 other than any legal counsel?

22    A   I get involved in that process.

Page 283

1    Q   And who else besides you?

2    A   I do it for the most part. I try not to get

3 involved -- more people, but I do it for the most

4 part.

5    Q   Okay. When there was a foreclosure of

6 2507 I Street -- there was one. Right?

7    A   Yes.

8    Q   Who ended up buying the property at

9 foreclosure?

10    A   The lender took it back.

11    Q   So what? Did the lender buy it, or did the

12 lender create some interim entity to serve as the

13 buyer?

14    A   The lender took it back because there were

15 no bidders at the foreclosure sale.

16    Q   Oh, okay. And of these other properties

17 that you mentioned that were "problematic," I'm just

18 using the term loosely.

19    A   Right.

20    Q   Did Holbrook go to foreclosure?

21    A   I'm sorry. Which one?

22    Q   1262 Holbrook.

Page 284

1    A   1262 through 1268, again, that property, as

2 I recall, I believe we didn't have any real bidders on

3 the other end.

4    It was a second subject to the first. So

5 some people just -- and then most people don't want to

6 bid on a second trust just because they don't know the

7 nature of the first.

8    Q   Okay. So what are WCP's expectations as to

9 this foreclosure, given that you're foreclosing under

10 the second deed of trust?

11    A   I don't have any expectations; our goal is

12 to get our money back.

13    MR. SADOWSKI: So we're at exactly your

14 five o'clock. We, obviously, didn't finish. I don't

15 know that I can reconvene tomorrow, and I think you'd

16 probably rather work on your --

17    MR. VERSTANDIG: I mean, candidly, I

18 would.   MR. SADOWSKI: Yeah.

19    MR. VERSTANDIG: Hold on. We can do

20 this on the record. It may make sense to assess after

21 Friday anyway.

22    MR. SADOWSKI: Of course, right. So

Page 285

1 we're going to leave it open. It's not completed

2 because we didn't finish either by time.

3    And then there are also some

4 outstanding document issues that we probably need to

5 address, but we'll agree to reconvene the deposition

6 at a mutually convenient date and time.

7    MR. VERSTANDIG: And for the record, I

8 will cross him at the close of the deposition.

9    MR. SADOWSKI: Okay.

10    THE WITNESS: How many hours did it go?

11    MR. SADOWSKI: Doctor's appointment, my

12 friend, go, go.

13    THE WITNESS: No, I understand.

14    THE REPORTER: Should I take us off?

15    MR. SADOWSKI: Yes.

16    THE REPORTER: We're off the record at

17 5:01 p.m.

18    (Signature waived.)

19    (Whereupon, at 5:01 p.m., the

20    proceeding was concluded.)

21

22

72 (Pages 282 - 285)

Page 286

| | CERTIFICATE OF DEPOSITION OFFICER |
|---|---|
| 1 | CERTIFICATE OF DEPOSITION OFFICER |
| 2 | I, MATTHEW YANCEY, the officer before whom |
| 3 | the foregoing proceedings were taken, do hereby |
| 4 | certify that any witness(es) in the foregoing |
| 5 | proceedings, prior to testifying, were duly sworn; |
| 6 | that the proceedings were recorded by me and |
| 7 | thereafter reduced to typewriting by a qualified |
| 8 | transcriptionist; that said digital audio recording of |
| 9 | said proceedings are a true and accurate record to the |
| 10 | best of my knowledge, skills, and ability; that I am |
| 11 | neither counsel for, related to, nor employed by any |
| 12 | of the parties to the action in which this was taken; |
| 13 | and, further, that I am not a relative or employee of |
| 14 | any counsel or attorney employed by the parties |
| 15 | hereto, nor financially or otherwise interested in the |
| 16 | outcome of this action |

17            MATTHEW YANCEY

18          Notary Public in and for the

19            District of Columbia

20

21

22

Page 287

| | CERTIFICATE OF TRANSCRIBER |
|---|---|
| 1 | CERTIFICATE OF TRANSCRIBER |
| 2 | I, AMY DAMOTH, do hereby certify that this |
| 3 | transcript was prepared from the digital audio |
| 4 | recording of the foregoing proceeding, that said |
| 5 | transcript is a true and accurate record of the |
| 6 | proceedings to the best of my knowledge, skills, and |
| 7 | ability; that I am neither counsel for, related to, |
| 8 | nor employed by any of the parties to the action in |
| 9 | which this was taken; and, further, that I am not a |
| 10 | relative or employee of any counsel or attorney |
| 11 | employed by the parties hereto, nor financially or |
| 12 | otherwise interested in the outcome of this action. |

13

14

15           AMY DAMOTH

16

17

18

19

20

21

22

73 (Pages 286 - 287)

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**    **2022-CAB-005935** |
| **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS**, *et al.*, | **Next Court Event: Mediation** **November 16, 2023 at 1:30 p.m.** |
| **Defendants.** | |

### <u>ORDER</u>

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_____
**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

125

**Copies via Odyssey to**:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - x
DEVELOPER RE1, LLC,           : Docket Number:  2022 CAB 005935
          Plaintiff,          :
                              :
                              :
          VS.                 :
                              :
                              :
DP CAPITAL, LLC D/B/A         :
WASHINGTON CAPITAL            :
PARTNERS, ET AL.,            : Friday, March 24, 2023
          Defendants.         : Washington, D.C.
- - - - - - - - - - - - - - x
```

The above-entitled action came on for a remote

initial scheduling conference hearing before the HONORABLE

EBONY M. SCOTT, Associate Judge, in Courtroom Number 219.

APPEARANCES:

On Behalf of the Plaintiff:

JAMES D. SADOWSKI, Esquire
Washington, D.C.


On Behalf of the Defendants:

MAURICE B. VERSTANDIG, Esquire
Washington, D.C.


25-01498



1

T A B L E   O F   C O N T E N T S

M I S C E L L A N Y

PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DENIED                                                                    7



1                        P R O C E E D I N G S

2              THE DEPUTY CLERK:  Your Honor, calling number

3    three on the calendar, calling the matter of Developer REI

4    [sic], LLC versus DP Capital, LLC d/b/a Washington Capital

5    Partners, et al., case number 2022 CAB 5935.

6              Parties can you please state your name for the

7    record, starting with plaintiff attorney first.

8              MR. SADOWSKI:  Good morning, Judge Scott.  Jim

9    Sadowski for the plaintiff.

10             THE COURT:  Good morning, Counsel.

11             MR. VERSTANDIG:  Good morning, Your Honor.

12   Maurice VerStandig, on behalf of the defendants.

13             THE COURT:  All right.  Good morning to you as

14   well.  Where are you there?  Good.  There you are.  Good

15   morning to you.

16             So this matter is scheduled for a remote

17   scheduling conference, I understand that a motion to

18   dismiss was filed to dismiss the first amended complaint

19   on January the 26th.

20             An opposition was filed on February the 16th.  I

21   do not see that a reply was filed.  Was a reply so filed?

22             MR. VERSTANDIG:  Your Honor, I believe one had

23   been filed.  And I may be errant in that regard.  If Mr.

24   Sadowski says we didn't file one, I would take his word to

25   be accurate.



```
 1              MR. SADOWSKI:  I can't tell you if he didn't

 2    file it, Judge.  But I can tell you that I didn't have

 3    notice of a filing.  And I checked the docket this

 4    morning, and I didn't see it in there.

 5              So I think if it was filed, even with the

 6    Odyssey delays, it probably would have been on the docket

 7    by now.

 8              THE COURT:  Could we see it on the docket?

 9    Okay.  All right.

10              MR. SADOWSKI:  Your Honor, I suspect that to be

11    true.  And it likely means we did not file one.

12              THE COURT:  Well, I think I heard counsel say

13    that -- well, sir, you should know whether or not you

14    filed a reply, I suspect.

15              MR. VERSTANDIG:  Your Honor, I'm looking through

16    my file.  I don't see a reply.  I don't believe we

17    replied, no.

18              THE COURT:  Okay.  All right.  Give me one

19    moment.  Bear with me.

20              (Pause.)

21              THE COURT:  Okay.  While Odyssey is sort of

22    waking up, at least for me.  One of the things that we

23    must do is to set the matter on a scheduling track.

24              Have the parties discussed a track?

25              MR. SADOWSKI:  I haven't, Judge.  But I think
```



```
 1   this is a Track 2 type of case.
 2             THE COURT:  I believe that's true.  Any
 3   opposition to Track 2?
 4             MR. VERSTANDIG:  None, Your Honor.
 5             THE COURT:  Okay.  Track 2, it is.  Well, I
 6   did -- I was endeavoring to pull up the docket again.  But
 7   it's taking some time.  Let me say this.  The Court has
 8   reviewed the motion to dismiss the First Amendment
 9   complaint as well as the opposition.  And it appears there
10   was no reply filed.  One moment.
11             MR. VERSTANDIG:  Your Honor, I'm confident there
12   was no reply filed.  We would stand on the motion.
13             THE COURT:  The Court has reviewed the
14   opposition as well.  There doesn't appear to be a reply
15   filed.  And from the Court's understanding of the motion
16   to dismiss, the defendants contend that the plaintiffs,
17   that the plaintiff, rather, failed to make notes under --
18   or failed to make payments rather under a promissory note.
19             And then there are five or six reasons listed as
20   to why, high level listed, as to why the matter should not
21   proceed pursuant to 12(b)(6).
22             One of the claims is that the first amended
23   complaint fails to allege any damages.  Another contention
24   is that the first amended complaint lists or requests
25   injunctive relief solely.
```



```
 1            And according to the defendants, such relief
 2   cannot stand absent some other type of relief for a
 3   particular plaintiff.
 4            The defendants also -- the defendant also
 5   contends -- defendants, rather, also contend that there is
 6   no -- that there is a violation of the economic loss
 7   doctrine.
 8            And I believe that going back to the injunctive
 9   relief, that that is not relief according to the
10   defendants that's viable or cognizable under our law.
11            And so the Court will say that in determining
12   12(b)(6) matters, the Court is not looking at the merits
13   of the complaint.  Instead, the Court is looking to the
14   sufficiency of the complaint.
15            That means that the Court must determine, based
16   upon the face, the four corners of the complaint, whether
17   or not the complaint has any legal viability.
18            What does that mean?  That means that the
19   complaint is sufficient to put the defendants on notice of
20   what the claims are.  It's different than a motion for
21   summary judgment in which the Court can't review the
22   entire record, can review affidavits.
23            Discovery has proceeded at that point.  But at
24   this stage, the Court must discern whether or not the
25   complaint is legally sufficient.  One moment.
```



```
 1           Okay.  And so, accepting all of the allegations
 2  in the complaint as true and certainly reviewing the
 3  allegations in the complaint in the light most favorable
 4  to the plaintiff, the Court can draw the reasonable
 5  inferences that it may draw at this juncture to find that
 6  the defendants violated or committed the acts contained in
 7  the -- or alleged, rather, in the first amended complaint.
 8           Much of the arguments made in the motion to
 9  dismiss, again, they go to the merits of the case.  And
10  here the inquiry is that of sufficiency.
11                        JUDGE'S RULING
12           And the Court does find the first amended
13  complaint to be sufficient in this case, because the Court
14  finds that it puts the defendants on notice, and it
15  certainly passes the Rule 8 muster.  And so, the Court
16  will deny the motion to dismiss the first amended
17  complaint.
18           So we have a Track 2.  I think that's all that
19  we need to do today.  Okay.  Thank you all for your
20  patience.  Have a good weekend.
21           MR. SADOWSKI:  Thank you, Your Honor.
22           MR. VERSTANDIG:  You as well, Judge.
23           THE COURT:  My pleasure.  Bye-bye.
24           (Thereupon, the proceedings were concluded.)
25                        *  *  *  *  *
```



1
CERTIFICATE OF TRANSCRIBER

2
    I, Jennifer L. Sullivan, transcriber, do hereby

3
certify that I have transcribed the proceedings had and

4
the testimony adduced in the case of DEVELOPER RE1, LLC v.

5
DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,

6
Docket Number:  2022 CAB 005935, in said Court, on the

7
24th day of March, 2023.

8
    I further certify that the foregoing 7 pages

9
constitute the official transcript of said proceedings as

10
transcribed from audio recording to the best of my

11
ability.

12
    In witness whereof, I have hereto subscribed my

13
name, this 28th day of March, 2025.

14

15

16

17
_____

18
TRANSCRIBER

19

20

21

22

23

24

25



The order below is hereby signed.

Signed: May 6 2025



*Elizabeth L. Gunn*
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | |
| | Case No. 23-00217-ELG |
| Charles Paxton Paret, | Chapter 7 |
| Debtor. | |
| | |
| Developer RE1 LLC, | |
| Plaintiff | |
| | |
| v. | Adv. Pro. No. 24-10023-ELG |
| | (Cases Consolidated) |
| DP Capital LLC, *et al.*, | |
| Defendants | |
| | |
| 423 Kennedy St Holdings LLC, | |
| Plaintiff | |
| | |
| v. | |
| | |
| DP Capital, LLC, *et al.*, | |
| Defendants | |

## <u>ORDER REQUIRING SUPPLEMENTAL BRIEFING BY MAY 7, 2025</u>

The Court has before it the *Third Amended Complaint* (ECF No. 40) (the "Third Amended Complaint") filed by Developer RE1 LLC and 423 Kennedy St Holdings LLC (together, the "Plaintiffs"), the *Motion to Dismiss or, in the Alternative, for Summary Judgment* (ECF No. 44) (the "Motion to Dismiss") filed by DP Capital LLC, WCP Fund I LLC, Daniel Hertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (collectively, the "Defendants"), and the *Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadline* (ECF No. 46) (the "Motion for Remand") and responses filed thereto. The Motion to Dismiss and Motion for Remand are scheduled for hearing before this Court on May 8, 2025 at 10:00 a.m.

Following a hearing held on January 28, 2025, the Court has under advisement the *Motion for Summary Judgment on Claims Against Russell Drazin* (ECF No. 7) (the "Drazin Summary Judgment Motion") filed by the Defendants. Upon consideration of the Third Amended Complaint, the Motion to Dismiss, the Motion for Remand, the Drazin Summary Judgment Motion, and the responses filed thereto, the Court finds that further briefing is necessary regarding the pendency of the Drazin Summary Judgment Motion. It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that on or before May 7, 2025, the parties shall file supplemental briefing explaining whether the Drazin Summary Judgment Motion is moot given the pendency of the Third Amended Complaint and the Motion to Dismiss.

[signed and dated above]

Copy to: All counsel of record.

136

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs"), move this Court for leave to file a Fourth Amended Complaint to correct the inadvertent omission of one claim by 423 Kennedy. In support of this request, the Plaintiffs represent as follows:

<div style="text-align: center;">OVERVIEW</div>

1.　　The Court is already familiar with the factual and procedural history of these removed cases.  Pending before the Court are various motions, including the Plaintiffs' Renewed Motion for Remand.  This motion is being filed without prejudice to the Plaintiffs' position that these consolidated cases involving purely state law claims should be remanded to the D.C. Superior Court.

2.　　The Plaintiffs filed a Third Amended Complaint on March 5, 2025.  The Third Amended Complaint was filed as a result of several Defendants transferring certain loan documents to a sham company called JPK NewCo, LLC ("JPK").  After those loan documents were transferred, Defendant SF NU, LLC, a co-owner of JPK, argued that JPK was an indispensable party and filed a motion to dismiss on that basis.

3.　　The Third Amended Complaint was filed together by both Plaintiffs, with the consent of the Defendants, as one document in order to reduce the costs to all parties of having to respond to two separate, lengthy complaints that contained overlapping facts.

4.　　When combing the two, separate complaints into a single document, Plaintiffs' counsel inadvertently omitted including a previously asserted claim of breach of contract on behalf of 423 Kennedy.  *See* ECF #1-2, pp. 684-86 (423 Kennedy's Verified Complaint filed July 13, 2023 (Count I for Breach of Contract).

5.　　423 Kennedy's breach of contract claim is primarily premised upon several Defendants' unilateral decision to starve the 423 Kennedy development project of funds by refusing to release construction draws.  *See* Third Amended Complaint, ECF #40, at 10, ¶¶ 64-66.

<div style="text-align: center;">2</div>

6.      All of the Defendants were previously aware of 423 Kennedy's breach of contract claim as that claim was asserted in 423 Kennedy's complaint, and the viability of that claim was disputed by the initial Defendants and litigated at the hearing on 423 Kennedy's Motion for a Temporary Restraining Order.  *See* ==ECF #1-2==, Part I.A, pp. 1268-80 (Judge Milton Lee's Order dated July 24, 2023 summarizing the testimony and finding that 423 Kennedy was likely to prevail on its breach of contract claim).

<u>The Legal Standard for a Motion for Leave to Amend.</u>

7.      Rule 15(a) of the Federal Rules of Civil Procedure, which governs the relief requested in this motion, states that:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) , (e) , or (f) , whichever is earlier.
>
> (2) Other Amendments.  *In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.*

Fed. R Civ. Proc. 15(a) (italic emphasis added).

8.      In a decision involving leave to amend a complaint under Rule 15(a), the D.C. Circuit Court of Appeals noted that:

> The provision of Rule 15(a) allowing amendment with leave of court gives the District Court discretion and direction.  It instructs the District Court to determine the propriety of amendment on a case by case basis, using a generous standard.
>
> > In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

3

allowance of the amendment, futility of the amendment, etc. -- the
leave sought should, as the rules require, be "freely given."

*Harris v. Secretary, United States Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997)
(citing Foman v. Davis, 371 U.S. 178 (1962).

<u>Legal Argument: The Court Should Allow the Amendment.</u>

9.      Here there is no undue delay, or bad faith, or dilatory motive. Rather, a

previously asserted claim was inadvertently omitted when two long complaints involving many

overlapping facts and claims were combined into one document.

10.      There would be no prejudice to the Defendants as a result of allowing this

amendment because the inadvertently omitted claim for breach of contract was previously

disclosed, discovery in this case is not yet completed, and no trial date has been set.

WHEREFORE, the Plaintiffs respectfully request that the Court grant this motion by

entering an order granting them leave to file the Fourth Amended Complaint that is attached as

Exhibit 1. The previously omitted claim for breach of contract is now shown in Count VIII of

the Fourth Amended Complaint.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: May 5, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Phone: (202) 452-1400; Fax: 202-452-1410
Email:   jds@gdllaw.com | ajs@gdllaw.com |
              ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
  and 423 Kennedy St. Holdings, LLC*

4

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of May, 2025, a true copy of the foregoing

Plaintiffs' Motion for Leave to file Fourth Amended Complaint was filed electronically and a

Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

<div align="center">5</div>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>　　CHARLES PAXTON PARET,<br><br>　　*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>　　*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>　　*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>　　*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>　　*Defendants.* | |

## FOURTH AMENDED COMPLAINT

COME NOW THE PLAINTIFFS, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against

DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas,

Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri.

The Fourth Amended Complaint includes claims for tortious interference with business relations,

8161\0002\4916-8515-5391.v1

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances.[1]  In support of its Fourth Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

<u>THE PARTIES</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5.      The WCP controls the WCP Fund.

6.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

---

[1]    Counsel for the existing parties prior to the filing of the Third Amended Complaint agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a fourth amended complaint for Developer RE1 and a second amended complaint for 423 Kennedy.

7.     The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.     The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.     The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.     The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

<u>The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".</u>

11.     In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

> *the highest ethical practices in the industry*, which historically
> have been very informal."

Source: https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.    But in reality, the WCP does not have the highest ethical standards. The WCP is a company that has engaged in predatory lending practices, and as this Complaint will show, Mr. Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct that was specifically designed to make several of their clients' construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

13.    Developer RE1 is the record owner of real property in the District known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.    Developer RE1 is partially owned by Mr. Negussie.

15.    Developer RE1 is a domestic, sole purpose, limited liability company, and the sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.    The Lender Defendants all knew that Developer RE1 was a sole purpose entity whose only asset was the RE1 Property and the improvements that Developer RE1 made to the RE1 Property.

17.    On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an acquisition finance loan for the RE1 Property with the WPC Fund.

The Ownership of 423 Kennedy, Its Purpose, and the Property.

18.    423 Kennedy is the record owner of real property in the District known as 423 Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.    423 Kennedy is a domestic, sole purpose, limited liability company, and the sole purpose of 423 Kennedy is to own and develop the 423 Property.

4

20. The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21. 423 Kennedy is co-owned by two members: Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22. The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23. On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24. Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25. As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed. The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26. 423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27. The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing. 423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

**The Developer RE1 Loan Documents with the WCP and the WCP Fund.**

28.     As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee. A true copy of the First RE1 DOT was attached to Developer RE1's Complaint as Exhibit A.[2]

29.     The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

30.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 DOT before it was signed.

31.     On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund. A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's Complaint.

32.     The First RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

33.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 Note before it was signed.

---

[2]     Counsel for the parties before the Third Amended Complaint was filed agreed that the Third Amended Complaint could reference the prior complaint exhibits that are already in the record and that there also was no need to attach those Exhibits again to the Third Amended Complaint. No new exhibits are being added in the Fourth Amended Complaint.

6

34.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35.     The Second RE1 DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38.     The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41.     The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42.     The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

7

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

<u>The 423 Kennedy Loan Documents with the WCP and the WCP Fund.</u>

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

8

Drazin as Trustee.  A true copy of the Second 423K DOT was attached as Exhibit C to 423

Kennedy's Complaint.

52.     The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin

as counsel for the WCP and the WCP Fund.

53.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K DOT before it was signed

54.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust

Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which

was attached to the 423 Kennedy Complaint as Exhibit D.

55.     The Second 423K Note was a form of promissory note that was prepared by Mr.

Drazin as counsel for the WCP and the WCP Fund.

56.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K Note before it was signed.

57.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination

fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58.     The new, refinanced loans for 423 Kennedy were set to mature on March 31,

2023.

59.     Beginning in April of 2022, the WCP and the WCP Fund started providing

construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to

closing.

60.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an

Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there

is also a notary seal showing execution on June 28, 2022.

61.     Due to changing economic conditions, in September of 2022, 423 Kennedy began

the process of refinancing the two loans on the 423 Property with another lender.

62.     As of October 6, 2022, there was no allegation made by any Defendant to 423

Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second

423K Note, the First 423K DOT, or the Second 423K DOT.

63.     As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund

that were due under the First 423K Note and the Second 423K Note.

> **The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423
> Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging
> the Refinancings of the Loans for Both Properties.**

64.     On or about October 6, 2022, and contrary to the prior, express representations

that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of

construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no

longer provide construction draws to 423 Kennedy.

65.     The reason that Mr. Huertas gave for not funding any further construction draws

to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the

development of other projects (projects that were unrelated to the Property), and that the

Defendants were "disappointed" that those other projects "were not constructed well".

66.     The Defendants knew that if the WCP did not fund construction draws, 423

Kennedy would be harmed because it would not be able to complete the development of the

Property.

67.     On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423

Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

First 423K Note and to release the First 423K DOT from the Property. A true copy of the October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint as Exhibit E.

68. On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the Property. A true copy of the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69. As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

70. As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

### Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If They Did Not Accede to His Demands Regarding Another Unrelated Development.

71. On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy. Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy". A copy of the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72. As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

73. As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

11

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

80.     On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note and to release the First 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.     On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.     As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

83.     As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes and deeds of trust.

84.     On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.     That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached as to Developer RE1's Complaint as Exhibit I.

86. WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

87. None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included any request by any Defendant for the payment of default fees, default interest, or any other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K DOT.

88. On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89. On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

90. As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

14

91.     As of December 7, 2022, Developer RE1 had made all payments due under the First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

92.     As of December 8, 2022, 423 Kennedy had made all payments due under the First 423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in interest payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or  Else".

93.     On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

94.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"
shortfall on the 2507 I Street Project.

96.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"
by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to
the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the
Lender Defendants and the unnamed investor "would make trouble for you on all of your other
projects".

97.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it
was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer
RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated
project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either
Mr. Negussie or to be making threats to any other development project that Mr. Negussie was
involved with.

98.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I
Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent
were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their
loan documents with the WCP Fund.

99.     The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose
limited liability company that is partially owned by Mr. Negussie.

100.    The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop
the 423 Property.

101.    The Lender Defendants knew that there is no legal or other business relationship
between 423 Kennedy and Developer RE1.

8161\0002\4916-8515-5391.v1

102.     The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.     The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.     Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.     The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.     The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.     The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.     The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.     The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

17

110.    The Lender Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.    The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

112.    The Lender Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

113.    The Lender Defendants knew that the sole purpose of Developer RE1 is to develop the RE1 Property.

<u>Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1
and 423 Kennedy By Improperly Demanding Payment More than $2 Million of
"Default Penalties" and "Default Interest" And By Threatening Developer RE1
and 423 Kennedy With Foreclosure.</u>

114.    Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1 Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy Complaint.

115.    The "Notice of Default" sent to Developer RE1 appears to reference the First RE1 DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.     The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K

DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.     Each "Notice of Default" states that it was being sent by the "Vice President" of

the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that

the Vice President of the WCP is Christina Araujo.

118.     Each "Notice of Default" also states that it was referencing "a copy of the first

page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.     The lack of a signature on each "Notice of Default" and the failure by the WCP to

include the referenced exhibit with each "Notice of Default" are indications that the two notices

were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.     Each Notice of Default did not contain any legal basis or other explanation for

how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan

documents.

121.     Each Deed of Trust contains a "Notices" provision that states how notices are

required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts,

states:

> All notices, demands, requests and other communications pursuant
> to the provisions of the Note and this Deed of Trust shall be in
> writing and shall be deemed to have been properly given or served
> for all purposes when presented personally, or one business day
> after having been sent by a nationally recognized overnight
> delivery service or a local courier service, charges prepaid, or three
> (3) calendar days after having been sent by United States
> Registered or Certified Mail - Return Receipt Requested, postage
> prepaid, to the respective addresses as follows:
>
>     (a) If to the Grantor, then to: 1629 K Street, Suite 300,
> Washington DC 20006
>
>     (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200,
> Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

<center>19</center>

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW,
Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite
200, Falls Church, VA 22043, with a courtesy copy to Pardo &
Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street,
NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in
writing to the other. Whenever in this Deed of Trust the giving of
notice by mail or otherwise is required, the giving of such notice
may be waived in writing by the person or persons entitled to
receive such notice.

*See* deeds of trust at pages 17-18.

122.   In the deeds of trust, email is not listed as a permissible means to send notice.

123.   In the email that transmitted the letters purporting to be default notices under the
two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the
two Payoff Statements for Developer RE1 that were included with the email transmitting each
"Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N,
respectively.

124.   The Payoff Statement sent by WCP for the first loan included a demand that
Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00.
*See* Ex. M to Developer RE1's Complaint.

125.   The Payoff Statement sent by WCP for the second loan including a demand that
Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126.   In the email that transmitted the letter purporting to be a "Notice of Default"
under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of
the two Payoff Statements that were included with the email transmitting each "Notice of
Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

20

127.    The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

128.    The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty". Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

<u>Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover
Story.</u>

129.    After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 and 423 Kennedy were in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.    On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1 and 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

131.    On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

21

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were
improperly placed in default by the Defendants.

132.    As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as
Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the
deeds of trust.

133.    As of December 8, 2022, Mr. Drazin knew that that his representation of the
Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as
Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower.  Nevertheless, Mr.
Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423
Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from,
and provide legal advice to, the Lender Defendants.

134.    Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that
he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the
Lender Defendants' issuance of the Default Notice.

135.    The real reason that the Lender Defendants improperly alleged that Developer
RE1 and 423 Kennedy were in default under the loan documents was because the Lender
Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out
the way that they wanted it to.

136.    The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission"
of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a
foreclosure sale.

137.    There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

138.    As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.    The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had secured, or were in the process of securing, with Main Street Bank.

140.    The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.    The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (i.e., 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.    The Lender Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Lender Defendants claimed existed at the 2507 I Street Project.

143.    The actions of the Lender Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

and its members, and 423 Kennedy and its members. The Lender Defendants' misconduct is a form of extortion.

The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144.    Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants. When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022." A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146.    Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. That was because DC Water was sending the invoices for the Property to the wrong address. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). Upon learning of the Disputed

24

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water
claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline
date for these charges has expired" and that "[b]ills must be paid or disputed by their respective
due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,
2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already
expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for
Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for
an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the
Petition for Administrative Hearing were attached to Developer RE1's Complaint together as
Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT,
Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged
Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment
without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual
basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because
cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section
7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas
had requested that he provide for the Lender Defendants.  When asked by counsel for Developer
RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152. The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153. 423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154. On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155. 423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156. Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157. 423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

26

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI. A copy of confirmation of the $1,657.34 payment to the District was attached to 423 Kennedy's Complaint as Exhibit R.

158.    December 10, 2022 is less than thirty days after November 17, 2022.

159.    On December 11, 2022, the District of Columbia Office of Administrative Hearings (OAH) vacated the Final Order. *See* Exhibit S to 423 Kennedy's Complaint.

160.    There are no outstanding fines owed by 423 Kennedy to the District.

161.    423 Kennedy cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal from, or to discharge (by payment), any lien filed by the District.

162.    The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163.    The deeds of trust each have a Section 7.9 that is identical. Section 7.9 is part of the "Events of Default" provisions of the deeds of trust. Section 7.09 states:

> <u>Other Indebtedness</u>. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *<u>or any of their affiliates</u>, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164.    The Lender Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

27

165.     In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or

Developer RE1, two conditions must have occurred:  (1) the borrower must be in "default" of

"any document or instrument evidencing or securing any indebtedness, obligation, or liability" to

the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166.     The deeds of trust do not define the term "affiliate."  Under federal banking law,

the term "affiliate" means "any company that controls, is controlled by, or is under common

control with another company."  15 U.S. Code §6809 (6).

167.     There is also no common control of Developer RE1 and 423 Kennedy.

168.     Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169.     Mr. Negussie does not have a "controlling" interest in Developer RE1.

170.     Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the

Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred

under any of the deeds of trust, even if one of them was actually in "default" of any loan

agreement with the WCP Fund.

171.     Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover

story, for the actual, improper reason that the Lender Defendants falsely, and improperly,

claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of

trust.

172.     The Lender Defendants have, through their counsel Mr. Drazin, also improperly

claimed, without any legal right or justification that:  "There is no right to cure.  There is no right

to deceleration.  There is no right to reinstatement.  The Loans are in default and are

accelerated."  *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint

(the use of "Loans" appears to be referring to the notes and deeds of trust).

28

173.    The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174.    The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022.  True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175.    The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176.    The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177.    No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

<u>Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.</u>

178.    The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179.    There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180.    If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

29

181.     If any of the Defendants follow through on any scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investments.

182.     The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

183.     The Lender Defendants knew that the First 423K Note and the Second 423K Note list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their improper interference with Developer RE1's and 423 Kennedy's business relations -- right before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the two properties.

184.     As of January 11, 2023, none of the Lender Defendants had sent either Developer RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either the deed of trust.

185.     On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

186.     On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

30

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00 p.m. A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as Exhibit T.

187.     On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee under the deeds of trust due to his conflict of interest. After receiving that letter, Mr. Drazin refused to resign as Trustee.

> 423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants'
> Predatory Lending Practices Are Left Unchecked.

188.     The Property owned by 423 Kennedy has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

189.     The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

190.     Around December of 2022, the Property owned by 423 Kennedy had a current value of $11.9 million.

191.     Around December of 2022, the Property owned by Developer RE1 had a current value of $4 million.

192.     There was no valid, legal basis under any provisions of the deeds of trust that would have permitted the Lender Defendants to foreclose on the Properties owned by Developer RE1 and 423 Kennedy.

193.     The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete construction, and Developer RE1 and 423 Kennedy's refinancing efforts. But for the Lender

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP Fund in full in December of 2022.

194.     The Lender Defendants also deliberately timed their improper interference with 423 Kennedy's and Developer RE1's business relations during the approaching Christmas and New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any refinancing indefinitely so that they can try to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

195.     The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others, and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights under the loan documents and under the law.  The Lender Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

<u>The DC Superior Court Enjoins the Lender Defendants.</u>

196.     On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive, twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order").

197.     In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17. Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

198.     On August 15, 2023, Judge Scott entered a Hearing Order by which she, among
other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted
Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an
Imminent Foreclosure sale (the "Second TRO Order"). In the Second TRO Order, Judge Scott
came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record
demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of
trust." Second TRO Order at p. 4 (italic emphasis added). Pursuant to the Second TRO Order,
Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking
any action to foreclose on the Property [owned by Developer RE1] pending further order of this
Court." *Id.* p. 5.

### The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then Engage in Multiple Fraudulent Transfers.

199.     Some of the parties engaged in private mediation in January of 2024, but that
mediation (with JAMS) was not successful. The second mediation session on January 25, 2024
was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.     JPK NewCo was formed after the mediation concluded, sometime in early
February of 2024. Since its formation, JPK NewCo has conducted no business, it has no
employees, it generates no income, it produces no goods, and it provides no services.

201.     On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan
documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.     On or about April 15, 2024, SF NU transferred the Developer RE1 loan
documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.     This transfers described in paragraphs 201-202 were not supported by any
consideration.

33

204.    This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.    The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.    On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.    The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.    The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.    The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.    Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.    Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

34

212.    The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213.    The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214.    The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215.    The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216.    At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217.    JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

8161\0002\4916-8515-5391.v1

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

218.   Paragraphs 1-217 of the Fourth Amended Complaint are incorporated by reference.

219.   423 Kennedy and Developer RE1 were in the process of closing on a refinancing of their existing loans with Main Street Bank.

220.   The Count I Defendants each knew of the existence of Developer RE1's and 423 Kennedy's business relations with Main Street Bank.

221.   As a result of the Count I Defendants' improper demand that Developer RE1 and 423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could not obtain a release of the respective deeds of trust on their properties as part of the refinancing of their loans with Main Street Bank.

222.   As a direct result of the Count I Defendants' direct and continuing interference with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were not able to go to closing on the refinancing loans with Main Street Bank.

223.   The Count I Defendants have intentionally interfered with Developer RE1's and 423 Kennedy's development of their properties and their refinancing of the loans with Main Street Bank without any valid justification.

224.   Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants' tortious interference with their business relations, and will continue to be damaged if the Count I Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor and against Defendants

WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that they have suffered and will suffer as a result of the Count I Defendants' intentional interference with their business relations (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

</div>

225. Paragraphs 1–224 of the Fourth Amended Complaint are incorporated by reference.

226. Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

227. The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or SF NU, and/or JPK NewCo.

228. The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF NU, and or JPK NewCo. are contracts.

229. Through their improper conduct, the Count II Defendants have breached the implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU, LLC and/or JPK NewCo: (a) any and all damages (to be determined) that the Plaintiffs has suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and

<div align="center">37</div>

fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's

fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

<div align="center">

COUNT III
DECLARATORY JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

</div>

230.    Paragraphs 1–229 of the Fourth Amended Complaint are incorporated by

reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and

the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423

Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are

affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed

does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of*

*American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP,

the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the

WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain

<div align="center">

38

</div>

unenforceable liquidated damages (and other) provisions, which controversy is ripe for
adjudication.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,
respectfully request that under Count III, this Honorable Court declare that:  (a) under Section
7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI,
LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b)
any provision of either the deed of trust that allows the lender to declare a default by Developer
RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the
process of being adjudicated), and without providing any notice to the borrower or any
opportunity to cure, and that results in either (i) additional interest and penalties entirely
disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is
unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust
have liquidated damages (and other) provisions that are unenforceable and cannot be used to
support any basis for a foreclosure.

<div align="center">

COUNT IV
PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE DEEDS OF TRUST AND
ANY FORECLOSURE UNTIL AFTER A TRIAL ON THE MERITS)
Count IV Is Asserted Against All Defendants except Defendant Sariri

</div>

236.    Paragraphs 1–235 of the Fourth Amended Complaint are incorporated by
reference.

237.    Unless they are enjoined, the Count IV Defendants will continue to improperly
claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

238.    The Count IV Defendants' unethical, outrageous, and illegal conduct, as
described in this Fourth Amended Complaint, is causing irreparable harm to Developer RE1 and

<div align="center">39</div>

423 Kennedy. The properties that Developer RE1 and 423 Kennedy own are unique, and Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

239. Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240. If the Count IV Defendants are not all enjoined, they will proceed to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the Count IV Defendants from invoking any remedy under the note and deeds of trust, including, without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any provisions in the notes and deeds of trust that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's claims in the Fourth Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241. Paragraphs 1-240 of the Fourth Amended Complaint are incorporated by reference.

242. As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243. Defendant Drazin knew that he had actual conflicts of interest while serving simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244. While serving in his role as Trustee under the deeds of trust, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

40

245.    While serving in his role as Trustee under the deed of trust, Defendant Drazin has

at all times acted against, and made decisions that have all been against, the interests and rights

of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

246.    While serving in his role as Trustee under the First DOT and the Second DOT,

Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin

has been in continual consultation with, and dominated by, the Defendants.

248.    Defendant Drazin breached his fiduciary duty by engaging in the conduct

described in this Fourth Amended Complaint, by not immediately resigning as Trustee when he

had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to

the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by

issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts

of interest.

249.    Due to his actual conflicts of interest, Defendant Drazin bears the burden of

proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the

Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC,

respectfully request that this Honorable Court enter judgment in its favor under Count V against

Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that

the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his

fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

8161\0002\4916-8515-5391.v1

## COUNT VI

### DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
Count VI is Asserted Against All Defendants Except Defendant Sariri

250. Paragraphs 1-249 of the Fourth Amended Complaint are incorporated by reference.

251. Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the deeds of trust.

252. Due to his conflict of interest as counsel for one or more of the Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds of trust.

253. Any actions taken by Defendant Drazin as Trustee under the deeds of trust must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to the borrowers under the deeds of trust.

254. There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

255. There is an actual and justiciable controversy between Developer RE1and 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant

42

Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

<div align="center">

COUNT VII

TO SET ASIDE FRAUDULENT TRANSFERS

Count VII is Asserted Against All Defendants except Defendant Drazin

</div>

256.    Paragraphs 1-255 of the Fourth Amended Complaint are incorporated by reference.

257.    The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258.    The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of SF NU and/or the WCP Fund.

259.    The transfers described in paragraphs 201-202 were made without consideration and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange for the transfer.

260.    The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo believed or reasonably should have believed that it would incur a debt beyond its ability to pay that debt when it became due.

261.    The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count VII this Honorable Court:  (a) set aside all fraudulent transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of

<div align="center">43</div>

more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a

fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an

injunction preventing any further disposition of the loan documents for Developer RE1 and 423

Kennedy until after all claims in this case have been decided.

<div align="center">

COUNT VIII

BREACH OF CONTRACT – 423 KENNEDY

Count VIII is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

</div>

262.    Paragraphs 1-261 of the Fourth Complaint are incorporated by reference.

263.    There was either an express contract or an implied-in-fact contract between 423

Kennedy and the WCP and the WCP Fund to fund construction draws.

264.    The WCP and the WCP Fund breached the contract by unilaterally refusing to

fund construction draws and due to no fault of 423 Kennedy.

265.    To the extent that SF NU is found to have been assigned any rights in the contract

from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible

for its breach.

266.    423 Kennedy has been damaged by the breach of contract by the WCP, the WCP

Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that

under Count VIII this Honorable Court enter judgment in its favor and against Defendants DP

Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for:

(a) any and all damages that 423 Kennedy has suffered and will suffer as a result of the

Defendants' breach of contract (currently estimated to be at least $3 million); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

8161\0002\4916-8515-5391.v1

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Fourth Amended

Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 6, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and*
*423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Fourth Amended Complaint was filed as an

Exhibit to Plaintiff's Motion for Leave to File Fourth Amended Complaint through ECF this 6th

day of May, 2025, and a notice of electronic filing should be sent by ECF to all counsel of record

in the case.

/s/ James D. Sadowski
James D. Sadowski

8161\0002\4916-8515-5391.v1

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>BRIEF REGARDING LACK OF MOOTNESS OF SUMMARY JUDGMENT MOTION</u>

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK")

1

(collectively, the "Defendants"), by and through undersigned counsel, in response to this

Honorable Court's Order Requiring Supplemental Briefing by May 7, 2025 (the "Order," as found

at DE #56), and assert as follows:

## I.    Introduction

The plaintiffs herein (the "Plaintiffs") contend—in direct contravention of longstanding

case law from the District of Columbia Court of Appeals, the United States Court of Appeals for

the District of Columbia Circuit, the United States District Court for the District of Columbia, and

this Honorable Court—that Mr. Drazin, as a trustee under two deeds of trust, owed some

amorphous duty beyond that set forth in the deed of trust itself and District of Columbia statutory

law. This contention was errant when the Plaintiffs argued such in opposition to Mr. Drazin's

motion for summary judgment (the "Drazin Summary Judgment Motion," as found at DE #7), this

contention was errant when the Plaintiffs restated it in their third amended complaint (the "Third

Amended Complaint," as found at DE #40), and this contention will remain errant if the Plaintiffs

are permitted to docket their fourth amended complaint (the "Fourth Amended Complaint," as

found at DE #57-1).

Most importantly, though, because the core wrongfulness of this assertion has not been

altered by any subsequent pleading (or requested pleading), the Drazin Summary Judgment Motion

is not moot. Where, as here, an incurable deficiency survives an initial pleading and is incorporated

into a subsequent pleading, a dispositive motion—whether one for summary judgment or even one

seeking dismissal—is not mooted by the new pleading.

As discussed in greater detail *infra*, this notion is both well-explained by precedent (albeit

with competing precedent being extant) and sensible in nature. While amendment is often a tool

to plead additional facts or even alternative theories, amendment is not a tool through which

2

incurable legal maladies may be remedied or otherwise protracted. Especially where, as here, the dispositive motion turns not on sufficiency of pleading but, rather, the non-viability of an underlying theory, amendment is futile in the face of a dispositive motion.

Additionally, as also extrapolated upon below, the concern with mootness, while well-taken, is one that ought not interfere with the Drazin Summary Judgment Motion since (i) the motion is adopted in a separate summary judgment motion directed at the Third Amended Complaint, *see* Motion to Dismiss or, in the Alternative, for Summary Judgment, DE #44, at § VIII(d); and (ii) the doctrine of mootness does not bind bankruptcy courts in connection with adversary proceedings.

## II.    Argument: The Drazin Summary Judgment Motion is Not Moot

In connection with both motions for summary judgment and motions to dismiss, case law establishes that amendment of an at-issue pleading does not necessarily invite mootness. This is particularly true where, as here, the subject amendment does not alter the underlying legal defect upon which the correlative dispositive motion is premised. There is well-settled precedent of District of Columbia law only imposing on trustees, serving under deeds of trust, those duties set forth in the correlative lien instruments and under statutory law. No amendment to the pleadings in this case can change that case law or alter the robustness of that precedent. And it follows that no amendment can thusly moot a dispositive motion premised upon the subject precedent.

As noted by the United States District Court for the District of Maryland, in a recent case where mootness was raised in a similar prism: ". . . YWWS's motion for summary judgment was not mooted by Buechler's amended complaint because such a motion is not directed at the adequacy of a complaint's allegations but is instead focused on the merits of the substantive claim." *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012). *See also*

3

189

*United Sec. Fin. Corp. v. First Mariner Bank*, <mark>2017 U.S. Dist. LEXIS 121869, at *15</mark> (D. Utah Aug. 2, 2017) ("Because the claims on which First Mariner sought summary judgment are included in both the original counterclaim the amended counterclaim, the claims and evidence related to those claims were not affected by the filing of the amended counterclaim and First Mariner's motion is not moot.").

To be sure, there does exist conflicting case law, in which courts have found amendment to moot a pending summary judgment motion. Yet, as noted by one court, the key distinction is oftentimes that mootness is found to occur where the amendment alters the claim for relief upon which summary judgment is sought. *See, e.g.*, *Cottonwood Acres, Ltd. Liab. Co. v. First Am. Title Ins. Co.*, <mark>2023 U.S. Dist. LEXIS 157978, at *2</mark> (D. Utah July 21, 2023) ("That said, other courts have held that where the claims on which summary judgment is sought (and the evidence related to those claims) are not affected by the filing of an amended complaint, then summary judgment motions pending when the amended complaint was filed are not necessarily moot.") (citing *United Sec. Fin. Corp.*, <mark>2017 U.S. Dist. LEXIS at 121869</mark>).

This distinction, not coincidentally, traces neatly to the distinction often drawn in the prism of motions to dismiss: when an amendment does not—or, as here, cannot—cure the defect upon which a dispositive motion is premised, the original motion is not deemed moot:

> Generally, an "amended complaint supersedes the original complaint, thus making the motion to dismiss the original complaint moot." However, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." "That is particularly true if the amended complaint is 'substantially identical to the original complaint.'"

*McDuff v. Jones*, <mark>2023 U.S. Dist. LEXIS 213250, at *2-3</mark> (E.D. Mich. Nov. 6, 2023) (quoting *Ky. Press Ass'n v. Kentucky*, <mark>355 F. Supp. 2d 853, 857</mark> (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors of Mich., Inc.*, <mark>236 F.3d 299, 306</mark> (6th Cir. 2000)); citing *Glass v. Kellogg Co.*, <mark>252 F.R.D. 367,</mark>

368 (W.D. Mich. 2008); quoting *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D.

Ohio 2002); *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022) (citing

*Mandali v. Clark*, 2014 U.S. Dist. LEXIS 143850 (S.D. Ohio Oct. 9, 2014))).

    This doctrine emanates, in large part, from the longstanding recognition that amendment is

a futile exercise where a claim is legally impossible from the outset. *See, e.g.*, *Hall & Assocs. v.

EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) ("Amendment is futile if the amended complaint would

not withstand a motion to dismiss.") (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C.

Cir. 2012)). *See also Rainey v. Patton*, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26,

2011) (". . . when a motion to amend only addresses a discrete issue, it may not moot the underlying

motion to dismiss.") (citing *In re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir. 2004)).

    Ultimately, the reasoning of the *Buechler* Court is most persuasive: since the question here

is not one of pleading sufficiency but, rather, legal viability, amendment is immaterial. The Third

Amended Complaint does not allege that the at-issue deeds of trust set forth greater responsibilities

than are actually present therein (nor could they; the subject deeds of trust have long been part of

the record in this case). Nor does the Third Amended Complaint posit some independent theory of

fiduciary responsibility aside from Mr. Drazin's service as trustee under deeds of trust. So the non-

viability of the Plaintiffs' topical contention—that a trustee under a deed of trust has an affirmative

obligation to independently investigate and adjudicate disputes—is not curable through

amendment. And it is thusly proper to consider the Drazin Summary Judgment Motion, already

under advisement, on the merits of the briefing and arguments thereupon.[1]

---

[1] It bears notation that even if the Third Amended Complaint did moot the prior summary judgment
motion, the same argument has been restated in a summary judgment motion directed toward the
Third Amended Complaint. *See* Motion to Dismiss or, in the Alternative, for Summary Judgment,
DE #44, at § VIII(d).

### III.  Argument: The Doctrine of Mootness is Inapplicable to Adversary Proceedings

There is a second reason consideration of the Drazin Summary Judgment Motion is not precluded by the docketing of the Third Amended Complaint: the doctrine of mootness is inapplicable to adversary proceedings in bankruptcy courts. For so long as bankruptcy judges are appointed by Circuit Courts of Appeal and serve limited terms (subject to renewal), bankruptcy courts will invariably hold the distinction of both being the federal courts with which members of the public are most likely to come into contact and federal courts unprotected by the safeguards of the constitutional judiciary. A necessary byproduct of this admittedly-curious distinction is that since bankruptcy courts do not within the ambit of Article III of the Constitution, bankruptcy courts are not subject to the "case or controversy" doctrine from which the notion of mootness originates.

As observed by the Supreme Court, "[t]he doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808 (2003); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)). *See also Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) ("Mootness arises out of Article III's 'case-or-controversy' requirement.").

Yet bankruptcy courts are not Article III courts. *Stern v. Marshall*, 564 U.S. 462, 469 (2011). And insofar as bankruptcy judges lack both the tenure and salary protections of Article III judges, bankruptcy courts are idiosyncratically derivative of Article I—not Article III—of the Constitution. *Id.* at 515.

All of which means that, as Article I courts, bankruptcy courts are not bound by the limiting contours of Article III of the Constitution. Or, in the words of a recent Fourth Circuit opinion:

"Mootness is an Article III doctrine, and bankruptcy courts are not Article III courts. . . So they can constitutionally adjudicate cases that would be moot if heard in an Article III court." *Kiviti*, 80 F.4th at 532 (citing *Stern*, 564 U.S. at 503).

To be sure, the suggestion herein is not that this Honorable Court—or any of its sister courts—ought to commence entertaining moot cases for sport, or issuing advisory opinions on a whim. Nor is this brief necessarily a full-throated defense of *Kiviti*. Yet the Supreme Court, after issuing a call for response, declined to grant certiorari when presented an opportunity to overturn *Kiviti*. *See Kiviti v. Bhatt*, 144 S. Ct. 2519 (2024). And it thusly stands to reason that somewhere in the Fourth Circuit's reasoning there exists at least some kernel of pliable truth.

If ever a bankruptcy court's exemption from the mootness doctrine were to be valued, such would be here. The Defendants, as discussed *supra*, sincerely posit the Drazin Summary Judgment Motion to *not* be moot. Yet even if it were technically moot, declining to issue a ruling thereupon—simply because of an intervening amendment that does not so much as feign to cure the intrinsically-impossible nature of the claims against Mr. Drazin—would be contra to judicial economy and serve only to delay consideration of a motion otherwise destined for adjudication.

That the summary judgment motion directed at the Third Amended Complaint incorporates, by reference, the Drazin Summary Judgment motion, is of particular import in this regard. *Buechler* teaches that mootness does not arise when a claim is either uncured or incurable, just as *Kiviti* teaches that a bankruptcy court may entertain fleetingly moot matters when the interests of justice so dictate. Both independently establish cause to permit adjudication of the Drazin Summary Judgment Motion and, taken together, both well militates against disposing of the briefing and arguments that have already been had on this front.

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) not deem the

Drazin Summary Judgment Motion to be moot; (ii) grant the Drazin Summary Judgment Motion;

and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: May 6, 2025            By:    /s/ Maurice B. VerStandig
                                     Maurice B. VerStandig, Esq.
                                     Bar No. MD18071
                                     The VerStandig Law Firm, LLC
                                     9812 Falls Road, #114-160
                                     Potomac, Maryland 20854
                                     Phone: (301) 444-4600
                                     mac@mbvesq.com
                                     *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

8

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; SF NU, LLC; AND WCP<br>FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>    *Defendants.* | |

PLAINTIFFS' BRIEF REGARDING
MOOTNESS OF SUMMARY JUDGMENT MOTION

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423

Kennedy") (collectively, "Borrowers"), hereby file their response to the Court's Order Requiring

Supplemental Briefing by May 7, 2025 (the "Order") [ECF No. 56].  Although the Court invited

briefing *only* as to the issue of the mootness of Defendant Drazin's Motion for Summary

Judgment, the Defendants took that opportunity to take various pot shots at the merits of the

Third Amended Complaint. The Borrowers will not respond in kind.

I.    LEGAL ARGUMENT

The Court Could Exercise its Discretion as to the Issue of Mootness.

Contrary to Defendants' assertion that an amendment of an at-issue pleading does not

invite mootness, multiple cases have held that an amended complaint supersedes the original

complaint as the operative live pleading and renders a motion for summary judgment on the

original complaint moot. *Helena Chem. Co. v. Hood (In re Hood)*, Nos. 16-14511-SDM, 19-

01065-SDM, 2022 Bankr. LEXIS 1536, at *15 (Bankr. N.D. Miss. June 1, 2022). *Lofty, LLC v.

McKelly Roofing, LLC*, No. 2:17-CV-159-D-BR, 2018 U.S. Dist. LEXIS 194592, 2018 WL

6004307, at *1 (N.D. Tex. Nov. 15, 2018) (*citing King v. Dogan*, 31 F.3d 344, 346 (5th Cir.

1994) ("An amended complaint supersedes the original complaint and renders it of no legal

effect unless the amended complaint specifically refers to and adopts or incorporates by

reference the earlier pleading."); *Griffin v. Am. Zurich Ins. Co.,* 697 F. App'x 793, 797 (5th Cir.

2017) ("Once filed, that amended complaint rendered all earlier motions, including [the

plaintiff's] motion for partial summary judgment, moot."); and *Stredwick v. Dallas Margarita

Soc'y, Inc.*, No. 3:12-CV-623-F, 2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430, at *1

(N.D. Tex. June 27, 2012) ("The filing of an amended complaint generally renders pending

motions moot.").

As a result, the Court could determine that Defendant Drazin's Summary Judgment

Motion, which was directed at the Second Amended Complaint, is moot as a result of the filing

of the Third Amended Complaint. *See also Sango v. Johnson*, No. 13-12808, 2014 U.S. Dist.

LEXIS 130400, 2014 WL 4658379, at *1 (E.D. Mich. 2014) (denying as moot the

plaintiff's motion for summary judgment on the original complaint); *see also Malik v. AT & T*

2

*Mobility LLC*, No. 1:08-cv-234, 2008 U.S. Dist. LEXIS 66482, 2008 WL 4104555 (W.D. Mich. 2008) (denying as moot the defendant's motion to dismiss or, in the alternative, for partial summary judgment on the original complaint).

As stated in *Rainey*, a case cited by the Defendants, only in the rare case where the amended complaint is "substantially identical to the original complaint," may a properly filed amended complaint be insufficient to moot the motion to dismiss. *Rainey v. Patton*, No. 1:11cv327, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26, 2011) (citing *Greater Cincinnati Coalition for the Homeless*, 2009 U.S. Dist. LEXIS 84474, 2009 WL 3029661, at *4; *see also Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*, 529 B.R. 455, 458 (Bankr. D. Mass. 2015). For example, when a motion to amend only addresses a discrete issue, it may not moot an underlying motion to dismiss. *In Re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir. 2004).

The complaints at issue here are not substantially identical. There are major variations in the Third Amended Complaint when compared to the prior complaints, including: (a) combining two complaints that had overlapping facts into one document; (b) adding JPK NewCo, LLC and Shaheen Sariri as additional defendants; and (c) adding claims to set aside fraudulent conveyances. That said, and so the Court does not have to attempt a line-by-line comparison of the prior complaints with the Third Amended Complaint, the allegations and claims asserted against Mr. Drazin contained in the Third Amended Complaint were not substantially changed from the prior complaints.

Note finally that there was a short period of time for the Borrowers to brief this issue, and both counsel of record for the Borrowers had busy schedules today and yesterday afternoon that did not allow them to put "all hands on deck" toward an exhaustive research of the case law on

the mootness issue. The Borrowers' research did not yield any binding D.C. Circuit court cases, or prior decisions of this court, squarely addressing the mootness issue presented here. The Borrowers regret not being able to provide a more thorough brief on this issue.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: May 7, 2025

/s/ James D. Sadowski

James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ebm@gdllaw.com
| ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of May, 2025, a true copy of the foregoing Plaintiffs' Brief Regarding Mootness of Summary Judgment Motion was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski

James D. Sadowski

The order below is hereby signed.

Signed: May 12 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | Adv. Pro. No. 24-10023-ELG |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

## ORDER GRANTING RENEWED MOTION TO REMAND

Before the Court  is the Plaintiffs' *Renewed Motion for Remand* ("Motion for Remand")
(ECF No. 46) and the Defendants' *Opposition to the Motion for Remand* (ECF No. 51). At the
conclusion of the hearing held May 8, 2025 (the "Hearing"), the Court issued an oral ruling
granting the Motion for Remand. The Court enters this Order consistent with the oral ruling.

1. Mandatory Abstention

The Court finds that the Plaintiffs' claims in this case did not arise under Title 11 or arise
in a case under Title 11. As of the date of the Hearing, all of the Plaintiffs' claims as stated in the
Third Amended Complaint (ECF No. 40) arose under state law.[1] Further, none of the Plaintiffs'
claims could have been commenced in a court of the United States absent jurisdiction under 28
U.S.C. § 1334(c)(2). Therefore, the Court finds that it has "related to" jurisdiction over the
Plaintiffs' claims.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain (also referred to as
mandatory abstention):

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). For the reasons stated at the hearing, the Court finds that the renewed
Motion for Remand was timely filed after the dismissal of the JPK NewCo LLC chapter 11 case,

---

[1] The Court previously considered and denied without prejudice a motion to remand filed by the Plaintiffs. At the time
of the previous motion, defendant JPK NewCo LLC was a debtor in a chapter 11 case. The JPK NewCo LLC chapter
11 was dismissed less than 30 days prior to the filing of the Motion for Remand. The dismissal of the JPK NewCo
LLC chapter 11 substantially changed the Court's analysis as to its jurisdiction over the claims in the Third Amended
Complaint.

the Plaintiffs' claims can be timely adjudicated in the Superior Court of the District Court of

Columbia, and, therefore, mandatory abstention is appropriate.

    2.  <u>Permissive Abstention</u>

    Alternatively, the Court finds that abstention under 28 U.S.C. § 1334(c)(1)[2] (also referred

to as permissive abstention) is appropriate. In evaluating whether permissive abstention is

appropriate, courts have looked to a variety of factors, including but not limited to:

    (1) the effect on the efficient administration of the bankruptcy estate;

    (2) the extent to which issues of state law predominate;

    (3) the difficulty or unsettled nature of applicable state law;

    (4) comity;

    (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;

    (6) the existence of the right to a jury trial; and

    (7) prejudice to the involuntarily removed defendants.

*See*, *e.g.*, *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998).

As noted in more detail at the hearing, most of the permissive abstention factors either support or

are neutral as to abstention.

    Therefore, for the reasons stated herein and at the Hearing, it is hereby **ADJUDGED,**

**ORDERED**, and **DECREED** that:

    1.    The Plaintiffs' Motion for Remand is **GRANTED**;

    2.    The Court hereby **ABSTAINS** under 28 U.S.C. §§ 1334(c)(1) and (c)(2) from

hearing this case.

---

[2] "[N]othing in [§ 1334] prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1).

3.      This Order is not appealable under 28 U.S.C. § 1334(d).

4.      Due to remand, the Court takes no position or action on the *Motion to Dismiss or, In the Alternative, for Summary Judgment* filed by Defendants DP Capital LLC, WCP Fund I LLC, Daniel Huertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (ECF No. 44).

5.      This case is hereby **REMANDED** to the Superior Court of the District of Columbia.


[Signed and dated above]



Service to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854

James D. Sadowski, Esq.
Alexandria J. Smith
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006


**END OF ORDER**

4



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.

**To:**  Maurice B. Verstandigm                    **Case Number:**   2022-CAB-005935

### NOTICE OF REMOTE STATUS HEARING

Your case is scheduled for a(n) **Remote Status Hearing** on **06/27/2025** at **10:00 AM** in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924

2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)

   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሚ አገልግሎቶች፦**

የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤት ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመስጠት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC MD  20854

| Developer RE1 LLC | 2022-CAB-005935 |
|:---:|:---:|
| *Plaintiff/Petitioner* | *Case Number* |
| v. | |
| **DP Capital, LLC d/b/a** | |
| **Washington Capital Partners** | **Shana Frost Matini** |
| *Defendant/Respondent* | *Judicial Officer* |

### SHORT ORDER

On 05/27/2025, the following order was entered by the court:

Effective immediately, this case is transferred to the Honorable Ebony Scott on Civil 2, Calendar 8. The parties shall appear either in person or remotely for a status hearing on June 27, 2025 at 10:00am. All hearings will be held in Courtroom 219.  The courtroom can be accessed virtually at https://dccourts.webex.com/meet/ctb219 or by calling 844-992-4726 and entering meeting ID 129 315 2924.

This notice is being sent in accordance with Super. Ct. Civ. R. 77(d).

eFiled
5/30/2025 7:17:21 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC, *et al.*

    Plaintiff,

v.

DP Capital, LLC, *et al.*

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## SUGGESTION OF BANKRUPTCY AND STAY OF PROCEEDINGS

It is respectfully suggested that on May 27, 2025, JPK NewCo LLC ("JPK"), a defendant herein, filed a voluntary petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby commencing the matter of *In re JPK NewCo LLC*, Case No. 25-200-ELG (Bankr. D.D.C. 2025) (the "Bankruptcy Case").

It is further suggested that, by operation of Section 362 of Title 11 of the United States Code, the Bankruptcy Case acts as a stay upon these proceedings. Specifically, and without limitation, the Bankruptcy Case acts as a stay upon:

(1) the . . . continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

1

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . .

11 U.S.C. § 362(a).

JPK is a defendant in the above-captioned consolidated litigation and, equally importantly, the current holder of two of the promissory notes at issue in this litigation, whilst also being the current beneficiary of two of the deeds of trust at issue in this litigation. It is thusly respectfully suggested the continuation of this suit would offend the provisions of Section 362 of Title 11 of the United States Code cited *supra* and, as such, this case is stayed by operation of law.

Dated: May 30, 2025                                    Respectfully Submitted,

                                                       /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.
                                                       DC Bar #1034066
                                                       The VerStandig Law Firm, LLC
                                                       9812 Falls Road, #114-160
                                                       Potomac, Maryland 20854
                                                       Telephone: 301-444-4600
                                                       Facsimile: 301-444-4600
                                                       Electronic Mail: mac@mbvesq.com
                                                       *Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 30th day of May 2025, and a notice of filing should be served on all counsel of record.

                                                       /s/ Maurice B. VerStandig
                                                       Maurice B. VerStandig, Esq.

Case 25-00200-ELG    Doc -3    Filed 09/01/25    Entered 09/01/25 19:20:27    Desc
Exhibit A - All Docket Entries (Part III)    Page 2434 of 2443

eFiled
6/13/2025 4:48:17 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1, LLC AND
423 KENNEDY ST HOLDINGS, LLC,

     *Plaintiffs*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

     *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Remote Status Hearing
June 27, 2025 (10:00 a.m.)

### PLAINTIFFS' RESPONSE TO SUGGESTION OF STAY

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy"), by counsel, file this response to the Suggestion of Stay filed by the Defendants on May 28, 2025.  For convenience, Developer RE1 and 423 Kennedy will be referred to as the "Borrowers".

    1.    Defendant JPK NewCo, LLC ("JPK NewCo") is now a defendant in this case. The Defendants created JPK NewCo for multiple improper purposes.  The first improper purpose was to create an issue that Defendant SF NU, LLC ("SF NU") could use -- the failure to join an indispensable party -- to file a motion to dismiss as a means of delaying this case.  The second improper purpose JPK NewCo was created was so that the Defendants could delay their depositions and their employees' depositions (noticed for July 8-9, 2024) and the trial in this case (set for September 9, 2024).

    2.    JPK NewCo is not really a separate, independent company.  JPK NewCo is co-owned by Defendants WCP Fund I, LLC ("WCP Fund") and SF NU, with the WCP Fund holding a controlling interest.

3.      Defendant Daniel Huertas controls the corporate Defendants in this case.

4.      The Defendants intentionally caused JPK NewCo, which had no cash or funding, to become insolvent by borrowing money – a $50,000 loan (evidenced by a promissory note) from a friend of Mr. Huertas named Shaheen Sariri.  The Defendants knew that JPK NewCo could not pay back, and would not pay back, the loan from Mr. Sariri.

5.      After the first payment due under the loan was not made to Mr. Sariri, the Defendants arranged for JPK NewCo to become a debtor in an involuntary Chapter 11 bankruptcy case by using Mr. Sariri as the straw man to initiate that proceeding.  With JPK NewCo in bankruptcy, the Defendants could argue that all of the claims in this case should be heard by the bankruptcy court.  The involuntary Chapter 11 case is *In Re: JPK NewCo, LLC,* Case No. 24-0026-ELG ("*JPK NewCo I*").

6.      Put another way, the Defendants were unhappy with this Court's prior rulings, and with litigating the claims in this case in the D.C  Superior Court,[1] so they created a phony company that had no business purpose, moved limited assets over to that company, then arranged for JPK NewCo to make a loan they knew would not be repaid in order the create the appearance that JPK NewCo was a legitimate company that needed bankruptcy protection.  Once the claims in this case were under bankruptcy court jurisdiction, the plan was for the Defendants to try to undo, and overturn, multiple prior decisions that this Court had already made.

7.      The Defendants' manufactured bankruptcy case scheme was exposed after representatives of the U.S. Trustee's office interviewed Mr. Huertas, JPK NewCo's representative, at the initial debtor interview of JPK NewCo.  During that interview, the U.S.

---

[1]    The removal of these cases ensured that the September 9, 2024 trial date -- a trial date that this Court specially set and reserved at the Defendants' request outside of its normal scheduling procedures -- would not take place.

2

Trustee's office learned that JPK NewCo was a sham company that existed only on paper.  JPK

NewCo had no employees, no operating expenses, and it did not conduct any legitimate business.

As a result, the U.S. Trustee's Office filed a motion to dismiss *JPK NewCo I* for being filed in

bad faith.  A copy of that motion, which summarizes the Defendants' scheme, is attached as

Exhibit A.

8.      In *JPK NewCo I*, the Plaintiffs filed a Motion to Remand this case back to this

Court.  Judge Elizabeth Gunn denied that motion without prejudice, in part because she was not

sure whether *JPK NewCo I* would be dismissed as being filed in bad faith.

9.      Even though the issue of whether *JPK NewCo I* was filed in bad faith was set for

a two-day evidentiary hearing, that issue did not get decided.  Instead, on February 25, 2025,

*JPK NewCo I* was dismissed by an agreed order based upon JPK NewCo's failure to pay

required fees to the U.S. Trustee.

10.     After *JPK NewCo I* was dismissed, the Plaintiffs filed a Renewed Motion for

Remand, which was set for a hearing on May 15, 2025.  At that hearing, Judge Elizabeth Gunn

determined that these cases should be remanded back to this Court.

11.     On May 27, 2025, about two weeks after the remand order, and the same day that

this Court issued a notice of remote hearing, JPK New Co filed a new Chapter 11 bankruptcy

case known as *In Re JPK NewCo LLC,* Case No. 25-10015-ELG ("*JPK NewCo II*").

12.     The Borrowers will soon be filing a motion to dismiss *JPK NewCo II* for being

filed in bad faith because the Defendants are again misusing, and abusing, the bankruptcy court

process for improper purposes.

13.     The U.S. Trustee's office has not yet decided whether it will be filing a motion to

dismiss *JPK NewCo II* for being filed in bad faith.

8161\0002\4929-6867-4382

14.     The Defendants are trying again to improperly forum shop the claims in this case away from D.C. Superior Court.  The day after *JPK NewCo II* was filed, several of the Defendants here filed an adversary proceeding in the U.S. Bankruptcy Court against the Borrowers asserting claims that are based upon the same facts, the same loan documents, and similar issues in this case.  *See JPK NewCo, LLC. et al., v. Developer RE1, LLC and 423 Kennedy St Holdings, LLC,* Case. No. 25-10015-ELG.  This filing is part of a continuing pattern of the Defendants using their superior economic resources to bury the Borrowers with both duplicative litigation and legal expenses.

15.     By operation of federal law, even though *JPK NewCo II* is a manufactured bankruptcy case filed by a phony company for improper purposes in bad faith, the claims in this case as to JPK NewCo must be stayed by the automatic stay provisions of 11 U.S.C. § 362. However, no other defendant in this case is a debtor in a pending bankruptcy case.  The automatic stay provisions apply only to a debtor in a pending bankruptcy case, not to any co-defendants, so this case should not be stayed as to any defendant other than JPK New Co.

16.     The Borrowers request that the Court let this case move forward, and not stay the case, as to any defendant except JPK NewCo.

17.     The Borrowers will provide the Court with an update on the status of *JPK NewCo II* at the remote Status Hearing set for June 27, 2025.

4

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  June 13, 2025

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone:  (202) 452-1400
Email:  jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC and 423
Kennedy S. Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this 13th day of June 2025 a copy of the Plaintiffs' Response to

Suggestion of Stay was filed using the Court's electronic filing system (eFileDC) and a notice of

electronic filing should be served on all counsel of record.

/s/ James D. Sadowski
James D. Sadowski

5

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **DEVELOPER RE1 LLC**, *et al*., | |
| **Plaintiffs,** | **Case No. 2022-CAB-005935** |
| | **Consolidated with: 2023-CAB-004260** |
| **v.** | |
| **DP CAPITAL, LLC D/B/A** | **Judge Ebony M. Scott** |
| **WASHINGTON CAPITAL** | |
| **PARTNERS**, *et al*., | |
| | **Next Court Event:   Remote Status Hearing** |
| **Defendants.** | **September 19, 2025 at 10:00 a.m.** |

## <u>ORDER</u>

This matter is before the Court on Defendant JPK NewCo LLC's ("JPK") Suggestion of Bankruptcy and Stay of Proceedings, filed on May 27, 2025, and Plaintiffs' Response to Suggestion of Stay, filed on June 13, 2025.

In Defendant JPK's Suggestion of Bankruptcy, Defendant JPK indicates that it "filed a voluntary petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby commencing the matter of *In re JPK NewCo LLC*, Case No. 25-200-ELG (Bankr. D.D.C. 2025)." Suggestion at 1.  JPK then states that "JPK is a defendant in the above-captioned consolidated litigation and, equally importantly, the current holder of two of the promissory notes at issue in this litigation, whilst also being the current holder of two of the deeds of trust at issue in this litigation.  It is thusly respectfully suggested the continuation of this suit would offend the provisions of Section 362 of Title 11 of the United States Code… and, as such, this case is stayed by operation of law." *Id*. at 2.

In Plaintiffs' Response, Plaintiffs argue that "[t]he Defendants created JPK NewCo for multiple improper purposes" in an effort to delay the instant case. Pl.'s Resp. ¶ 1. Plaintiffs argue that "[t]he Defendants are trying to improperly forum shop the claims in this case away from D.C. Superior Court." *Id*. at ¶ 14. While Plaintiffs argue that the instant bankruptcy case is "manufactured… by a phony company for improper purposes in bad faith," Plaintiffs concede that "the claims in this case as to JPK NewCo must be stayed by the automatic stay provisions of 11 U.S.C. § 362." *Id*. at ¶ 15. However, Plaintiffs argue, without citing to any legal authority, that "no other defendant in this case is a debtor in a pending bankruptcy case," and that "[t]he automatic stay provisions apply only to a debtor in a pending bankruptcy case, not to any co-defendants, so this case should not be stayed as to any defendant other than JPK New Co." *Id*.

As noted, Plaintiffs cite no legal authority for the proposition that a matter need only be partially stayed to satisfy the requirements of 11 U.S.C. § 362(a). Rather, the statute states that "a petition filed under sections 301, 302, or 303 of this title… operates as a stay, applicable to all entities…." 11 U.S.C. § 362(a). Further, even if the instant matter could be stayed-in-part, doing such would frustrate the purpose of the statutory automatic stay and judicial efficiency as JPK is the record owner of the Deed of Trust and promissory note underlying the instant matter. *See* Suggestion at 2.

Accordingly, it is this **18th day of June, 2025,** hereby:

**ORDERED** that this matter is **STAYED** until the conclusion of Defendant JPK NewCo LLC's Bankruptcy Proceedings; it is further

**ORDERED** that the Remote Status Hearing on June 27, 2025, is **CONTINUED** to **September 19, 2025, at 10:00 a.m.**, in Remote Courtroom 219 before Judge Ebony M. Scott. Instructions for participation in the remote hearing are attached.

**SO ORDERED.**

_____
**Associate Judge Ebony M. Scott**
(*Signed in Chambers*)

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

Maurice B. VerStandig, Esq.
mac@mbvesq.com
*Counsel for Defendants WCP Fund I LLC, DP Capital LLC d/b/a Washington Capital Partners,
SF NU LLC, Daniel Huertas, Russell Drazin, and JPK NewCo LLC*

## <u>VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219</u>

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in <u>Virtual Courtroom 219</u>, which the parties and counsel may access in the following ways:

(1)    Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(2)    Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3)    Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**

## <u>COURTROOM PROTOCOL</u>

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, <u>no later than 5:00 p.m. two business days before the hearing</u>.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The <u>exhibits must be separately labeled</u> so that they can be easily identified by all parties and the Court during the remote hearing.