agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

WCP0472

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

WCP0473

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

WCP0474

### 4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

### 4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

### 4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

WCP0475

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

WCP0476

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

<u>ARTICLE V</u>

<u>NEGATIVE COVENANTS</u>

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

WCP0477

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

ARTICLE VI

EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

WCP0478

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

ARTICLE VII

EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

WCP0479

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

WCP0480

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

<u>ARTICLE VIII</u>

<u>DEFAULT AND FORECLOSURE</u>

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

WCP0481

5610

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

Page **14** of 25

WCP0482

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

## 8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

## 8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

WCP0483

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

Rev 5.2016

WCP0484

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

WCP0485

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to:  **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

WCP0486

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Rev 5.2016

WCP0487

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016                                                          Page **20** of 25

WCP0488

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

## 11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

## 11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

## 11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

Rev 5.2016

WCP0489

collateral.  Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

ARTICLE XII

STATUTORY PROVISIONS

12.1 Statutory Provisions.

    This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

    **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

WCP0490

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)

By:    Mel Melaku Negussie
Its:    Managing Member

COUNTY OF _District of Columbia_ ) SS:
STATE OF _City of Washington_

    I hereby certify on this _24_ day of December, 2021, before me in the
jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or
satisfactorily proven to be the person(s) whose name(s) is set forth in the within
instrument, and executed the within instrument and acknowledged the same instrument to
be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _____



Rev 5.2016

Page **23** of **25**

WCP0491

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

WCP0492

5630

WCP0493

5632

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

 **THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia  Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

 WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware  Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

 WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

### ARTICLE I

### DEFINITIONS

1.0 Definitions.

    Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

    (a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

    (b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

    (c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

    (d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

    (e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

    (f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

    (g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

    (h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

5623

Case 25-10037-ELG    Doc 43-3    Filed 09/09/25    Entered 09/09/25 19:20:02    Desc
Exhibit A-H Debtor Complex Page 23 of 243
3305 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

Rev 5.2016

Page 3 of 25

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

ARTICLE II

GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

Rev 5.2016

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

### REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Rev 5.2016

Page 5 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Rev 5.2016                                                                                    **Page 6 of 25**

Case 25-10037-ELG   Doc 43-3   Filed 08/09/25   Entered 08/09/25 10:08:02   Desc
Exhibit-All Dublicate Landing Page 27 of 29
5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

5638

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

5639

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b) any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

5632

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

Rev 5.2016

**Page 11 of 25**

Case 25-10308-ELG Doc 43-3 Filed 09/09/25 Entered 09/09/25 20:03:02 Desc
Exhibit A Ull Enclosed Cause Part 3 of 3 Page 34 of 23
3501 1st St NW Washington DC 20011
3501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

ARTICLE VIII

DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

**8.2 Conveyance by Trustee.**

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

**8.3 Purchase by Beneficiary.**

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

**8.4 Waiver of Redemption - Exemptions Waived.**

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

Rev 5.2016

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016 
**Page 15 of 25**

## ARTICLE IX

### THE TRUSTEE

**9.0 Acceptance - Standard of Conduct**

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

**9.1 Fees and Expenses.**

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

**9.2 Commissions on Sale.**

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

**9.3 Commission on Advertisement.**

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

**9.4 Resignation.**

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

**9.5 Acts of Trustee.**

Rev 5.2016

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

### RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

### MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

Rev 5.2016                                                    Page 17 of 25

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

Rev 5.2016                                            Page 18 of 25

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c) Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

Rev 5.2016                                                                 Page **20** of 25

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

ARTICLE XII

STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

Rev 5.2016

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability
Company

_[signature]_ (SEAL)

By:     Mel Melaku Negussie
Its:     Managing Member

COUNTY OF _[handwritten]_ ) SS:
STATE OF _[handwritten]_

I hereby certify on this _24_ day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_[signature]_
NOTARY PUBLIC

My commission expires: _____

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

Rev 5.2016

Page **23** of **25**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

## EXHIBIT A

## LEGAL DESCRIPTION

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

5687

# EXHIBIT "A"
## Property Description

**Closing Date:**     **December 23, 2021**

**Borrower(s):**     **Developer RE1 LLC**

**Property Address:**    **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.



**Government of the District of Columbia**

Office of Tax and Revenue
Recorder of Deeds
**1101 4th St. Street, SW
Washington, DC 20024**
Phone (202)727-5374

## Real Property Recordation and Transfer Tax Form FP-7/C

### PART A - Type of Instrument

☐ Deed   ☒ Deed of Trust   ☐ Lease for a Term of 30 years or more

☐ Re-recording   ☐ Other: _____

### PART B - Property Description/Data/Property Being Conveyed

| 3389 | | 0137 | | 3389 | | 71/72 |
|------|--|------|--|------|--|-------|
| Square | Suffix | Lot | | Square | Suffix | Lot |

If more than one lot, list Square/Suffix/Lots below or attach addendum.

**Square and/or Parcel** [_____]   **Lot(s)** [_____]

**Property Address:** [5501-5505] [1st Street] [NW] Unit No.
Street Number / Street Name / Quadrant

**Property Use:** ☐ Dwelling Units ≤ 5   ☐ Apartment   ☐ Commercial

**Is any part of the _entire_ building commercial (Class 2)?**
☒ Yes*   ☐ No   ☐ Unimproved

*If Yes, is there majority common ownership prior to this transfer? (See Instructions)
☐ Yes†   ☐ No

† If Yes, this instrument will be taxed as commercial.

**Fee Interest % Conveyed:** [100] %

Was personal property included in this transfer?   ☐ Yes*   ☐ No

*If Yes, what type? [_____]   Estimated Value $ [_____]

### PART C - Instrument Submitted by or Contact Person

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]

City [Washington]   State [DC]   Zip [20006]

### PART D - Return Instrument To

Name [Steven Oxman]   Firm [District Title]

Address [1775 I Street Northwest, #560]   Phone No. [(202) 518-9300 ext. 309]

City [Washington]   State [DC]   Zip [20006]

### PART E – Grantor(s) Information

Grantor [Developer RE1 LLC]   Grantor [_____]

Grantor [_____]   Grantor [_____]

Address [1629 K Street NW, Suite 300]   Phone No. [(202) 271-5046]

City [Washington]   State [DC]   Zip [20006]

**Grantor(s) Tenancy**   ☐ Tenants in Common   ☐ Joint Tenants   ☐ Trustee
☐ Tenants by Entirety   ☐ Sole

ROD 1 Revised 08/2019

★★★

**Government of the
District of Columbia**
Office of Tax and
Revenue
1101 4th St. Street,
SW Washington, DC
20024        Phone
(202)727-5374

| 3389 | 0137, 71, 72 |
|------|------|
| Square | Suffix | Lot |

## PART F – Grantee(s) Information

Grantee: WCP Fund I LLC            Grantee:

Grantee:                           Grantee:

Address: 2815 Hartland Road, Suite 200      Phone No.: (703) 344-1733

City: Falls Church        State: VA        Zip: 22043

**Grantee(s) Tenancy**   ☐ Tenants in Common  ☐ Joint Tenants  ☐ Trustee

☐ Tenants by Entirety  ☐ Sole

## PART G - Mailing Address for Grantee (If different from Part F)

| Last Name | First Name | Middle Name |
|---|---|---|
| | | |

Address:                     Unit No.:

City:        State:        Zip:

Phone:

## PART H- Consideration and Financing
"complete all items; insert zero if no amount"

**I. Deed**

Tax Exemption Application
Recordation Tax/Transfer Tax
(Cite to Specific DC Code Provision)

|  |  |  |
|---|---|---|
| 1. Acquisition Price | _____ | ____/____ |
| Cash | _____ | ____/____ |
| Amount of 1st Deed of Trust | _____ | |
| Purchase Money Amount | _____ | |
| Other Exempt Amount | _____ | |
| Nonexempt Amount: | _____ | |
| Amount of 2nd Deed of Trust | _____ | |
| Purchase Money Amount | _____ | |
| Other Exempt Amount | _____ | |
| Nonexempt Amount: | _____ | |
| Amount of 3rd Deed of Trust | _____ | |
| Purchase Money Amount | _____ | |
| Other Exempt Amount | _____ | |
| Nonexempt Amount: | _____ | |
| 2. Current Tax Year Assessed Value (If No or Nominal Consideration) | _____ | ____/____ |

ROD 1 Revised 08/2019

**Government of the District of Columbia**

**Office of Tax and Revenue**
1101 4th St. Street, SW
Washington, DC 20024
Phone (202)727-5374

## II. Deeds of Trust (no transfer of title)

| | |
|---|---|
| Amount of Deed of Trust | $ 524,000.00 |
| Exempt Amount (s) | 0.00 |
| Nonexempt Amount(s) | $524,000 |

3. Total Amount of all Nonexempt Deeds of Trust (I & II)    $524,000.00

**Tax Exemption Application**
Recordation Tax
(Cite to Specific DC Code Provision)

| 3389 | | 0137 ,71, 72 |
|---|---|---|
| Square | Suffix | Lot |

## PART I: Computation of Tax

For recordation tax on residential deed transfers by qualified first-time homebuyers, use Line 1. For residential deed transfers with a total consideration of less than $400,000.00, use Lines 2 and 3. For residential deed transfers with a total consideration of $400,000.00 and higher use, Lines 4 and 5. For commercial deeds and nonexempt security interest instruments with a total consideration of less than $2,000,000.00 use Lines 4, 5 and 6. For commercial deeds and nonexempt security interest instruments with a total consideration of $2,000,000.00 and higher, use Lines 7, 8 and 9. (See instructions)

| | | | |
|---|---|---|---|
| 1. | Recordation Tax | 0.725% of Line 1, Part H (attach form ROD 11) | $ |
| 2. | Recordation Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 3. | Transfer Tax | 1.1% of Line 1 or Line 2, Part H | $ |
| 4. | Recordation Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 5. | Transfer Tax | 1.45% of Line 1 or Line 2, Part H | $ |
| 6. | Recordation Tax | 1.1% of Line 3, Part H | $ |
| 7. | Recordation Tax | 2.5% of Line 1 or Line 2, Part H ($2,000,000.00 or higher) | $ 13,100.00 |
| 8. | Transfer Tax | 2.5% of Line 1, or Line 2, Part H ($2,000,000.00 or higher) | $ |
| 9. | Recordation Tax | 2.5% of Line 3, Part H ($2,000,000.00 or higher) | $ |
| 10. | Total | | $ 13,100.00 |

## PART J: Affidavit (Part A to J)

I/We hereby swear or affirm under penalty of perjury that this return, including any accompanying schedules/documents/and statements, has been examined by me/us and to the best of my/our knowledge and belief, the statements and representations are correct and true. I/We hereby acknowledge that any false statement or misrepresentations I/We made on this return is punishable by criminal penalties under the laws of the District of Columbia.



| Grantor(s) | Grantee(s) |
|---|---|
| Developer RE1 LLC | WCP Fund I LLC |
| Typed Name | Typed Name |
| Signature | Signature |
| Date December 23, 2021 | Date December 23, 2021 |

Subscribed to and sworn to before me by Grantor(s) this 23rd day of December, 2021

Subscribed to and sworn to before me by Grantee(s) this 23rd day of December, 2021

Notary Public

Notary Public

My Commission Expires: ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My Commission Expires:

STEVEN M. SUSHNER
NOTARY PUBLIC DISTRICT OF COLU
My Commission Expires

ROD 1 Revised 08/2019

**This information is subject to audit.**
**Please keep all supporting documentation.**

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                    **$8,689,693.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

### 1.   BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$8,689,693.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.   **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                          Page 1 of 9

5662

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$217,242.33** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$3,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **8.99%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015

Page **2** of 9

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4.  BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5.  BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a.  If default be made in any payment due under this Note;

    b.  If default be made in the performance of any other covenant contained in this Note;

    c.  If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d.  If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015

Page 4 of 9

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.  "Presentment" means the right to require the Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.   Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015                                                          Page **6** of 9

LOAN-006491
1st Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

## CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION, FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

5668

LOAN-006491
1st Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

5669

LOAN-006491
1st Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_(signature)_ (SEAL)

By:     Mel Melaku Negussie
Its:    Member-Manager

By:     Brighton - KSDC, LLC
Its:    Member-Manager

    By:     Brighton Capital LLC
    Its:    Managing Member

_(signature)_ (SEAL)
    By:     Mel Melaku Negussie
    Its:    Authorized Signer, on behalf
        of Balakrishnarao Sure and
        Naveen Vavilala, Members

COUNTY OF _District of Columbia_ ) SS:
STATE OF _____ )

    I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_(notary seal: JEFFREY DARRAH, NOTARY PUBLIC, MY COMMISSION EXPIRES 5/14/2025, DISTRICT OF COLUMBIA)_

NOTARY PUBLIC

My commission expires: _5/14/2025_

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015                                                              Page **9** of **9**

5669

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## COMMERCIAL DEED OF TRUST NOTE

**March 31, 2022**                                          **$1,256,000.00**

### IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

1.      **BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC**, a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$1,256,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked.      **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on only the total amount of the original principal balance that is disbursed and

Rev 12.2015                                          Page 1 of 9

5660

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

released from Lender to Borrower, until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$43,960.00** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,250.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

2. **INTEREST**

Interest shall accrue hereunder at the rate of **12%** per annum on the principal.

3. **PAYMENTS**

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **March 31, 2023** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

Rev 12.2015                                                    Page **2** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

### 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

    a. If default be made in any payment due under this Note;

    b. If default be made in the performance of any other covenant contained in this Note;

    c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;

    d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of 24% per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

Rev 12.2015

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

Rev 12.2015                                                                                    Page **4** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7.    **WAIVERS**

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8.    **GIVING OF NOTICES**

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1140 3rd St NE 2nd Floor, Washington, DC 20002; and to the Lender at the address stated in the first paragraph of this Note.

Rev 12.2015

Page **5** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9.    SUCCESSORS AND ASSIGNS

(a)    Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent.  Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder.  Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof.  Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b)    Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c)    Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the **"Agent"**). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

Rev 12.2015

Page **6** of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 10.    SEVERABILITY; RULES OF CONSTRUCTION

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

### CONFESSION OF JUDGMENT

IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS

Rev 12.2015                                                      Page 7 of 9

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.

THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.

[SIGNATURE PAGE TO FOLLOW]

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**BORROWER:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____(SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

  By:    Brighton Capital LLC
  Its:    Managing Member
_____(SEAL)
   By:    Mel Melaku Negussie
   Its:    Authorized Signer, on behalf
         of Balakrishnarao Sure and
         Naveen Vavilala, Members

COUNTY OF ___District of Columbia___ ) SS:
STATE OF _____)

    I hereby certify on this 31st day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 12.2015

Page **9** of 9

LOAN-006491
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON
PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and
grantor have an agreement whereby the noteholder may make or contemplates making
advances from time to time against the security described in this credit line deed of trust.
The maximum aggregate amount of principal to be secured at any one time is
$8,689,693.00. An explicit statement of the rights and obligations of the borrower (i.e.,
grantor) and the consequences of default are set forth herein.

  **THIS DEED OF TRUST,** made effective as of March 31, 2022, by and between
**423 Kennedy St Holdings LLC,** a District of Columbia  Limited Liability Company,
hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K
Street, Suite 300, Washington DC 20006, and **Russell S. Drazin,** hereinafter referred to
as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite
2, Washington, DC 20015.

  WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC,** a Delaware
Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address
of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as
hereinafter defined) under any co-lending agreement, for money borrowed in the
amount of **$8,689,693.00** ("Loan Amount"), for which amount the said Grantor
has  made  and  delivered a certain Commercial Deed of Trust Note of even date herewith,
in the original principal amount of the Loan Amount payable to the order of the
Beneficiary (the "Note"); and

  WHEREAS, the  Grantor  desires  to  secure  the Beneficiary and any
subsequent holder of the Note secured hereby the full and punctual payment of said debt,
when and as the same shall become due and payable, as well as any and all renewals and
extensions of said Note, or any part thereof, together with interest thereon, and the
performance of the covenants and agreements herein and therein contained, and
also  to  secure  the reimbursement to the holder or holders of said Note or to the
Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the
Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or
Substitute Trustee under the provisions of this Deed of Trust for all money which may be
advanced as herein provided for, and for any and all costs and expenses incurred or paid
on account of any litigation at law or in

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016                                                  Page 2 of 25

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

Rev 5.2016

Page **4** of **25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                    Page **5** of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

<u>ARTICLE IV</u>

<u>AFFIRMATIVE COVENANTS</u>

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

Page 6 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

Rev 5.2016                                                                                    Page 7 of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

5686

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

### 5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

### 5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

### ARTICLE VI

### EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

Rev 5.2016

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

5680

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

### 7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

### 8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

### 8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5682

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016                                                                 Page **15** of 25

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## ARTICLE IX

### THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

5698

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

5686

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon  a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

5699

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

      This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

      **IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

### [Signature Page to Follow]

5590

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia Limited Liability
Company

_____ (SEAL)
By:     Mel Melaku Negussie
Its:     Member-Manager

By:     Brighton - KSDC, LLC
Its:     Member-Manager

     By:     Brighton Capital LLC
     Its:     Managing Member

    _____(SEAL)
     By:     Mel Melaku Negussie
     Its:     Authorized Signer, on behalf
           of Balakrishnarao Sure and
           Naveen Vavilala, Members


COUNTY OF _____District of Columbia_____ ) SS:
STATE OF _____ )

     I hereby certify on this _31st_ day of March, 2022, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: _____5/14/2025_____

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016                                                  **Page 23 of 25**

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

## EXHIBIT A

## LEGAL DESCRIPTION

419-423 Kennedy St NW Washington DC
LOAN-006491
1st Trust

5593

LOAN-006652
423 Kennedy St N.W. Washington DC 20011

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

## DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $1,256,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of March 31, 2022, by and between **423 Kennedy St Holdings LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street, Suite 300, Washington DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$1,256,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

ARTICLE I

DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

Rev 5.2016

Page **2** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

Rev 5.2016                                                                 Page 3 of 25

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

Rev 5.2016                                                                    Page 5 of 25

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

Rev 5.2016

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

5600

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

5603

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

5603

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

### EVENTS OF DEFAULT

7.0 Events of Default.

      The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

      If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

      If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

      If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

      If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

### 7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

### 7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

### 7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

### 7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

### 7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

Rev 5.2016

Page **12** of **25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

ARTICLE VIII

DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## 8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

## 8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

## 8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5608

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE IX

## THE TRUSTEE

### 9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

### 9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

### 9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

### 9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

### 9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

### 9.5 Acts of Trustee.

5010

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

    (a) If to the Grantor, then to: **1629 K Street, Suite 300, Washington DC 20006**

    (b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

    (c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

    In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3 Successors and Assigns.

    (a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

    (b) Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Grantor to the Transferee

Rev 5.2016

**Page 18 of 25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

Rev 5.2016

**Page 20 of 25**

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

Rev 5.2016

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

**GRANTOR:**

**423 Kennedy St Holdings LLC,**
a District of Columbia   Limited Liability
Company

_____ (SEAL)
By:    Mel Melaku Negussie
Its:    Member-Manager

By:    Brighton - KSDC, LLC
Its:    Member-Manager

 By:    Brighton Capital LLC
 Its:    Managing Member
 _____ (SEAL)
 By:    Mel Melaku Negussie
 Its:    Authorized Signer, on behalf
  of Balakrishnarao Sure and
  Naveen Vavilala, Members

COUNTY OF _Disrict of Columbia_ ) SS:
STATE OF _____)

 I hereby certify on this __31st__ day of March, 2022, before me in the jurisdiction
aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven
to be the person(s) whose name(s) is set forth in the within instrument, and executed the
within instrument and acknowledged the same instrument to be his/her act and deed
for the purposes herein contained and in the capacity herein stated.

_____
NOTARY PUBLIC

My commission expires: ___5/14/2025___

Jeffrey Darrah
Notary Public, District of Columbia
My Commission Expires 5/14/2025

Rev 5.2016          **Page 23 of 25**

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT A

## LEGAL DESCRIPTION

419-423 Kennedy St NW Washington DC 20011
LOAN-006652
2nd Trust

# EXHIBIT "A"
## Property Description

**Closing Date:**    **March 31, 2022**

**Borrower(s):**    **423 Kennedy St Holdings LLC**

**Property Address:**    **419-423 Kennedy Street, NW, Washington, DC 20011**

PROPERTY DESCRIPTION:

Lots Fifty-Six (56) in Square numbered Thirty-Two Hundred Sixty (3260) in the subdivision made by Ashley Brown, as per plat thereof recorded in the Office of the Surveyor for the District of Columbia in Plat Book 214 at Page 78.

Docusign Envelope ID: D844473CC-F49F-4E5A-8C55-BC6682B99DA9

Case 23-10023-ELG   Doc 49-3   Filed 08/09/25   Entered 08/09/25 14:03:24   Desc
Exhibit A - Declaration Santos Pimentel Page 119 of 243

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF CHRISTINA ARAUJO</u>

1.      My name is Christian Araujo, I am over the age of eighteen, and I am competent to testify to the matters set forth herein.

2.      I am the Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners.

3.      In my capacity as Vice President of Finance of DP Capital LLC d/b/a Washington Capital Partners, I am familiar with the loans made to 423 Kennedy St Holdings LLC ("423

1 of 3

Kennedy") and Developer RE1 LLC ("DRL") that are at issue in the above-referenced litigation, as well as the payment histories thereof.

4.       In connection with the second loan to DRL (the "Second DRL Loan"), DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late.

5.       In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late.

6.       In connection with the Second DRL Loan, DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late.

7.       DRL failed to pay the Second DRL Loan at maturity and the loan remains unpaid.

8.       In connection with the second loan to 423 Kennedy (the "Second 423 Loan"), 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late.

9.       In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late.

10.      In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late.

11.      In connection with the Second 423 Loan, 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late.

12.      In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made.

5622

13.     In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made.

14.     In connection with the Second 423 Loan, 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made.

15.     423 Kennedy failed to pay the Second 423 Loan at maturity and the loan remains unpaid.

16.     Further declarant sayeth naught.


I declare under penalty of perjury that the foregoing is true and correct.


Executed On: _3/19/2025_

_Christina Araujo_
Christina Araujo



Filed & Recorded
04/30/22 10:15 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS
Customer Service
202-354-3750

## DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003

### DELINQUENT ACCOUNTS SECTION

DC Water and Sewer Authority
Vs
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 2022-08-29
Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389
Suffix:
Lot: 0138

### Amount Due (including penalties, if any): $43,956.32
### CERTIFICATE OF DELINQUENT WATER/SEWER CHARGES

This is to certify that, pursuant to D.C. Official Code, 2001, Section 34-2407.02 and Section 34-2110, the Water and Sewer Authority has a continuing lien for delinquent water/sewer service charges upon the land and the improvements thereon at the above service address. From the date of its filing, this certificate shall have the force and effect of a lien created by a judgment entered by the Superior Court of the District of Columbia and will remain in force and effect until the water/sewer charges, plus any interest and penalties thereon, shall have been fully paid by cash, certified check or money order to the Water and Sewer Authority.

By:

Manager, Credit & Collections Customer Service Department DC Water and Sewer Authority.

### ACKNOWLEDGEMENT

This is to acknowledge that the foregoing certificate was filed with the Recorder of Deeds of the District of Columbia on the _____.

By: _____
Recorder of Deeds Government of the District of Columbia

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006



**DC Office of Tax and Revenue**

 MyTax DC                                    ?

‹  **Home**

# Property Details

›  **Make a Payment**

SSL                    : 3389- -0138                    **Balance Due**          : **$20,**

Premise Address        : 5501 1ST ST NW WASHINGTON DC
                         20011-5258

Details    Assessment    **Tax Information**    Map    Applications and Actions

**Tax Summary**        **Tax History**        **Billing History**        **Payment History**

---

## Current Year                                          Help

**2025 First Half**

| Description | Amount | Balance |
|---|---|---|
| Real Property Tax | $20,625.00 | $20,625.00 |

---

## Past Years

**2024**

| Description | Amount | Balance |
|---|---|---|
| Real Property Payments/Credits | ($33,951.49) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |
| Real Property Interest | $1,132.29 | $0.00 |

Real Property Penalty | $2,983.56 | $0.00

## 2023

| Description | Amount | Balance |
| --- | --- | --- |
| Real Property Payments/Credits | ($29,835.64) | $0.00 |
| Real Property Tax | $29,835.64 | $0.00 |

## 2022

| Description | Amount | Balance |
| --- | --- | --- |
| Real Property Payments/Credits | ($16,745.17) | $0.00 |
| Real Property Tax | $14,818.74 | $0.00 |
| Real Property Interest | $444.56 | $0.00 |
| Real Property Penalty | $1,481.87 | $0.00 |

*For more historical data, please contact OTR Customer Service at (202) 727-4TAX.*

Filed & Recorded
11/17/2022 05:07 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS



**GOVERNMENT OF THE
DISTRICT OF COLUMBIA**
DC DEPARTMENT OF
BUILDINGS
OFFICE OF CIVIL
INFRACTIONS

**CERTIFICATE OF DELINQUENT FINES**
FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO
THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA

vs.

423 KENNEDY ST HOLDINGS LLC

Owner of Record

1629 K ST NW STE 300

Washington, DC 20006

Date: 11/17/2022

Square: 3260  Suffix:  Lot: 0056

NOI No. : VR22-00182

Address of Premises:

423 KENNEDY ST NW

This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1)
of the D.C. Code, which establishes a continuing lien upon the real property
(including improvements) and personal property of an owner in the District of
Columbia who fails to pay all outstanding fines, penalties or other costs associated
with a final adjudication of a Notice of Infraction issued pursuant to the Civil
Infractions Act of 1985, as amended.

This Certificate, from the date of its filing, has the force and effect, as against the
aforesaid delinquent party or parties, of a lien created by a judgment granted by the
Superior Court of the District of Columbia. This lien remains in force and effect until
the entire assessed amount set forth below, together with penalties and other costs
(including, but not limited to, court costs and administrative fees) are paid. Failure to
pay the outstanding amount within ninety (90) days after the date to appeal the final
decision and order, if no appeal has been filed, may result in the sale of the owner's
property for costs at the next tax sale in the same manner and under the same
conditions as property sold for delinquent general taxes.

Document No: 1

Assessed Amount: $1590.00

By

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

Respectfully submitted,

Dated: March 19, 2025    By:    /s/ Maurice B. VerStandig
                                      Maurice B. VerStandig, Esq.
                                        Bar No. MD18071
                                      The VerStandig Law Firm, LLC
                                        9812 Falls Road, #114-160
                                        Potomac, Maryland 20854
                                        Phone: (301) 444-4600
                                        mac@mbvesq.com
                                        *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                        /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig

3

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING ON MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

1

NOTICE IS HEREBY GIVEN that the DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK") (collectively, the "Defendants") have filed a motion seeking to dismiss various causes of action in this case and for the entry of summary judgment on all claims not dismissed.

NOTICE OF DEADLINE TO OBJECT. If you do not want the Court to grant the motion or if you would like the Court to consider your views, then ON OR BEFORE APRIL 9, 2025, you must file and serve a written objection to the motion. The objection must be filed with the Clerk of the Bankruptcy Court, U.S. Courthouse, 333 Constitution Ave., N.W., Washington, D.C. 20001 and served (by delivery or mailing a copy) upon the undersigned. The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

NOTICE OF HEARING. A hearing on the motion has been scheduled before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 AM. The hearing will be held in a hybrid format, in Courtroom 1 at the foregoing address and via Zoom video conferencing. For meeting code, contact Gunn_Hearings@dcb.uscourts.gov.

*[Signature and Certificate of Service on Following Page]*

2

Respectfully submitted,

Dated: March 19, 2025　　　By:　　/s/ Maurice B. VerStandig
　　　　　　　　　　　　　　　　　Maurice B. VerStandig, Esq.
　　　　　　　　　　　　　　　　　Bar No. MD18071
　　　　　　　　　　　　　　　　　The VerStandig Law Firm, LLC
　　　　　　　　　　　　　　　　　9812 Falls Road, #114-160
　　　　　　　　　　　　　　　　　Potomac, Maryland 20854
　　　　　　　　　　　　　　　　　Phone: (301) 444-4600
　　　　　　　　　　　　　　　　　mac@mbvesq.com
　　　　　　　　　　　　　　　　　*Counsel for the Defendants*


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of March, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

　　　　　　　　　　　　　　　　　/s/ Maurice B. VerStandig
　　　　　　　　　　　　　　　　　Maurice B. VerStandig

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

PLAINTIFFS' RENEWED MOTION FOR REMAND AND TO SUSPEND
DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINE

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings

LLC ("423 Kennedy") (collectively, "Plaintiffs"), pursuant to 11 U.S.C. § 105(a), 28 U.S.C.

§1334(c) and §1452(b), Fed. R. Bankr. P. 9006, and LBR 9027-1(b) move this Court to:  (a)

remand this adversary proceeding to the D.C. Superior Court; and (b) suspend the other pending

motion, hearing, and response deadline until after a decision is made on this renewed motion for

remand.  In support of these requests, the Plaintiffs represent as follows:

OVERVIEW

1.       The Court is already familiar with the factual and procedural history of these

removed cases.  Given that familiarity, and because brevity is the heart of good pleading, the

Plaintiffs refer the Court to the prior filings related to the remand issue, in particular:

a.     the Plaintiffs' Statement of No Consent to Final Orders of
Judgment filed on July 16, 2024 (ECF No. 12);

b.     the Plaintiffs' first Motion for Remand and to Suspend Deadlines
filed on July 21, 2024 (ECF No. 13);

c.     the Plaintiffs' Omnibus Objections to Motions Filed and Notice
by Defendants filed on July 22, 2024 (ECF No. 16); and

d.     the Plaintiffs' Reply in Support of Motion for Remand filed on
August 26, 2024 (ECF No. 21); and

e.     the Plaintiffs' Supplemental Brief in Support of Motion for
Remand filed on November 27, 2024 (ECF No. 26).

2.       The Court should also take into consideration the following filings in the

involuntary bankruptcy petition case (24-00262-ELG) involving JPK NewCo, LLC ("JPK

NewCo").  These filings outline the scheme that the Defendants engaged in to attempt to

bootstrap the threadbare jurisdictional arguments for removal by manufacturing a "core

proceeding", *i.e.,* the filing of the involuntary petition against JPK NewCo:

a.     The US Trustee's Motion to Dismiss Chapter 11 Case Pursuant to
11 U.S.C. 1112(b) (ECF No. 37 in 24-00262-ELG);

b.     The Plaintiffs' Statement in Support of the US Trustee's Motion to
Dismiss Chapter 11 Case Pursuant to 11 U.S.C. 1112(b) (ECF No.
57 in 24-00262-ELG);

c.     The Monthly Operating Reports filed by JPK New Co that show
no legitimate business activity whatsoever for JPK NewCo (ECF

2

Nos. 62, 63, 71, 73, 80, and 84 in 24-00262-ELG);

d. The transcript from the meeting of creditors held in the JPK
NewCo case, again confirming that JPK NewCo was not a
legitimate business;[1] and

e. The Limited Objection to Application for Compensation (ECF
No. 86 in 24-00262-ELG).

3. To reiterate, JPK NewCo was created by the Defendants and their counsel, acting
in concert, for the improper purposes of: (a) delaying a trial on the Plaintiffs claims in D.C.
Superior Court and hindering their ability to pursue their claims; and (b) so that the Defendants
could relitigate prior decisions from that Court in this Court – a Court that they consider to be
their "home court" that would make decisions more favorable to their positions.

4. After extensive briefing, this Court held a hearing on the motion for remand and
denied that motion without prejudice. ECF Nos. 28 and 35. The Court's denial of the motion for
remand "without prejudice" was in part due to the fact that the viability of the JPK NewCo
involuntary case (24-00262-ELG) was on thin ice because the US Trustee's Office had filed a
motion to dismiss that case for being filed in bad faith

5. The original alleged basis for removal jurisdiction was the pendency of mere
*allegations* in an adversary proceeding involving Charles Paret in another case that one of the
Defendants (Daniel Huertas) removed to this Court on September 1, 2023, just shy of one month
*after* three of his related companies, as creditors, had filed an involuntary petition against Mr.
Paret (23-00217) on August 4, 2023.[2]

---

[1] A copy of the transcript from the JPK NewCo meeting of creditors is attached as Exhibit 1.

[2] The petitioning creditors in 23-00217-ELG were: DP Capital, LLC; 1Sharpe Opportunity
Immediate Trust; and WCP Fund I, LLC. *See* ECF No. 1 in 23-00217-ELG. Christina Araujo, who
completed all of JPK New Co's monthly operating reports, and Mr. VerStandig signed the
involuntary petition.

8161\0002\4911-6425-8860.v1

6.      To say that the allegations of Mr. Paret about an alleged partnership being formed, in which he claims, without support, that he has a continuing ownership interest in 423 Kennedy and Developer RE1, are "flimsy" would be the understatement of the year.  Mr. Paret signed documents in December 2020 and December 2021 in which he confirmed that he no longer had any membership interests in the entities that owned the two properties now owned by Developer RE1 and 423 Kennedy.  *See* Exhibit 2 and (two Declarations signed by Mr. Paret in December 2021 regarding the membership interests in the prior entities that owned the Developer RE1 property);[3] *see also* Exhibit 4 (Affidavit of Mr. Paret regarding the ownership of 423 Kennedy dated January 31, 2020).

7.      Several of the Defendants in the adversary proceeding filed motions to dismiss Mr. Paret's partnership (and other) evolving claims, but later folded by signing an agreed order that kept several of Mr. Paret's claims intact.  *See* ECF No. 3 (Motion to Dismiss filed by Mr. Huertas), ECF No. 15 (Motion to Dismiss filed by Mr. Huertas and DP Capital), ECF No. 41 (Motion to Dismiss filed by Mr. Huertas, DP Capital, and the WCP Fund), and ECF No. 46 (Order granting in part and denying in part the last motion to dismiss) in 23-10025-ELG.  The timing of the decision to fold -- in November of 2024 -- before the Court issued a decision on the first motion for remand, should not be lost on this Court.  It was to the Defendants benefit here to keep the Paret claims alive for jurisdictional purposes.

8.      On February 24, 2025, the Court entered an order dismissing the JPK NewCo involuntary case "WITHOUT PREJUDICE" on the basis that the Debtor "failed to pay the quarterly fee due to the United States Truste [sic – "Trustee"]" and for no other reason.  ECF No. 85 (in 24-00262-ELG).

---

[3]   These documents reference 71 Kennedy Street Holdings LLC and 5501 1st St Holdings, LLC. Those entities conveyed title to NT Group, LLC, who then conveyed title to Developer RE1.

8161\0002\4911-6425-8860.v1

9.      As Plaintiffs' counsel predicted at a hearing in July of last year -- this before
knowing anything about JPK NewCo. -- JPK NewCo was using the removal process to attempt
to relitigate issues that have already been decided by the D.C. Superior Courts.  On March 19,
2025, the Defendants filed a Motion to Dismiss or, In the Alternative, for Summary Judgment
("Motion to Dismiss").  The Motion to Dismiss asserts many of the same arguments that were
previously asserted, and rejected by, two different judges in D.C. Superior Court before the cases
were removed.

10.      As a result of the dismissal of the JPK NewCo involuntary case, the jurisdictional
dynamics have now shifted dramatically in favor of remanding these cases to the D.C. Superior
Court.  JPK NewCo is no longer a defendant in a pending bankruptcy case, and the court does
not have jurisdiction over JPK NewCo's property.

11.      This Court was never designed to be either the Defendants' "home court" or to act
as the first line of appeal for the Defendants from prior, adverse decisions made by the D.C.
Superior Court, but allowing this case to continue here is exactly what this Court will become.

12.      The type of manipulative, procedural gamesmanship that the Defendants have
engaged in, which has to date gone unchecked, should not be condoned by this Court.  This
Court was established, with limited jurisdiction, to hear legitimate core bankruptcy proceedings
filed by legitimate debtors, with additional "related to" jurisdiction, all of which is sorely lacking
here.

13.      This case should go no further until the Court decides this renewed motion for
remand.

8161\0002\4911-6425-8860.v1

14.     For purposes of judicial economy, the Court should issue an order under 11

U.S.C. §105(a) suspending the deadlines and hearings for the Motion to Dismiss until after a

decision is made on this renewed motion for remand.

WHEREFORE, Plaintiffs request that the Court grant this motion by: (a) continuing to

withhold a decision on the Motion for Summary Judgment filed by Russell Drazin (ECF No. 7);

(b) suspending the hearing and response deadline for the Motion to Dismiss (ECF No. 44); (c)

remanding these consolidated cases to the D.C. Superior Court; and (d) requiring the Defendants

to pay the Plaintiffs for the attorney's fees that they have incurred and will incur as a result of the

Defendants' improper removal of the cases. The Plaintiffs request that they be permitted to

submit an application in support of an award of attorneys' fees within a reasonable time period

after the entry of the remand order.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 25, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com |
        ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
*and 423 Kennedy St. Holdings, LLC*

6

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of March, 2025, a true copy of the foregoing

Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and

Related Response Deadlines was served electronically and a Notice of Electronic filing should

be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

Case 25-10003-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:28:54 Desc
Exhibit Ex. Trans A. D. Meeting of Creditors 141 of 468 Page 1 of 42

1

<pre>
1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF COLUMBIA
2
      In Re:                    .  Case No. 24-00262-ELG
3                               .  Chapter 11
     JPK NEWCO LLC,             .
4                               .  Washington, D.C.
                 Debtor.        .  October 29, 2024
5     . . . . . . . . . . . . . .

6     CONTINUED MEETING OF THE CREDITORS PURSUANT TO SECTION 341 OF
                         THE BANKRUTPCY CODE
7               BEFORE KRISTEN S. EUSTIS, ESQ.
                OFFICE OF THE UNITED STATES TRUSTEE
8
     APPEARANCES:
9
     For the Debtor:          Wolff & Orenstein, LLC
10                            By: JEFFREY M. ORENSTEIN, ESQ.
                              15245 Shady Grove Road
11                            Suite 465
                              Rockville, Maryland 20852
12
     For Office of the U.S.   U.S. Department of Justice
13   Trustee:                 By: KRISTEN S. EUSTIS, ESQ.
                              1725 Duke Street
14                            Suite 650
                              Alexandria, Virginia 22314
15
     For Subchapter V         Offit Kurman, P.A.
16   Trustee:                 By: STEPHEN A. METZ, ESQ.
                              7501 Wisconsin Avenue
17                            Suite 1000W
                              Bethesda, Maryland 20814
18
     For Shaheen Sariri:      Hirschler Fleischer
19                            By: KRISTEN E. BURGERS, ESQ.
                              1676 International Drive
20                            Suite 1350
                              Tysons, Virginia 22102
21
     For 423 Kennedy St       Greenstein DeLorme & Luchs, P.C.
22   Holdings LLC and         By: JAMES D. SADOWSKI, ESQ.
     Developer RE1 LLC:       801 17th Street, Northwest
23                            Suite 1000
                              Washington, District of Columbia
24                            20006

25
</pre>



Case 25-10037-ELG   Doc 46-3   Filed 09/30/25   Entered 09/30/25 19:38:54   Desc
Exhibit Ex.Ex Hibit Trans Call Debtor Fault 3c eeting 142 PR Agv 21 40 of 24 42   Page 2 of 42

2

```
 1    Also Present:              Daniel Huertas
                                 Debtor representative
 2
      Proceedings recorded by electronic sound recording.
 3    Transcript produced by transcription service.

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Proceedings commenced at 10:02 a.m.)

 2              MS. EUSTIS:  Good morning.  This is the continued 341

 3    meeting of creditors in the case of JPK NewCo LLC, case number

 4    24-262, pending in the United States Bankruptcy Court for the

 5    District of Columbia.  My name's Kristen Eustis.  I'm an

 6    attorney with the Department of Justice, and I represent the

 7    United States Trustee for Region 4 in connection with this

 8    case.  Today's October 29th, 2024, and it is approximately

 9    10:02 a.m.

10              Counsel for the Debtor, can you please identify

11    yourself and your client for the record?

12              MR. ORENSTEIN:  Good morning.  Jeff Orenstein on

13    behalf of JPK NewCo, and with me this morning is Daniel

14    Huertas, principal.

15              MS. EUSTIS:  Thank you.  I can confirm for the record

16    that I have reviewed a copy of Mr. Huertas' identification, and

17    he is who he says he is.

18              Also on the line, Mr. Metz, can you please identify

19    yourself for the record?

20              MR. METZ:  Sure.  Good morning.  This is Steve Metz,

21    the subchapter V trustee.

22              MS. EUSTIS:  Thank you.

23              Mr. Sadowski.

24              Okay.  Ms. Burgers.

25              MS. BURGERS:  Good morning.  This is Kristen Burgers
```

Case 25-10321-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:28:54 Desc
Exhibit Ex. Ex. Thin Transcript of Meeting of Creditors 147 Page 142 of 242 Page 4 of 42

4

```
 1    on behalf of the petitioning creditors, Shaheen Sabiri.

 2            THE COURT:  Okay.  And Jim Sadowski is also on the

 3    line.

 4            Anyone else on the line that I have not identified?

 5            Okay.  Pardon.

 6            MR. SADOWSKI:  I'm sorry.  Mr. Eustis, I'm sorry.  I

 7    think I was on mute when I said who I was here for.  It's Jim

 8    Sadowski for Developer RE1 LLC and 423 Kennedy St Holdings LLC.

 9    Sorry about that.

10            MS. EUSTIS:  That's okay.  Thank you.

11            Mr. Huertas.  So first, I will ask questions of you,

12    and then I will allow creditors and parties-in-interest the

13    opportunity to question you about the Debtor's financial

14    affairs.  For those that will be asking questions, please

15    identify yourselves before asking questions so that the Court

16    reporter, if a transcript is requested of this 341 meeting,

17    will be able to identify your voice.

18            So unless you have any questions, Mr. Huertas, we can

19    go ahead and get started.

20            MR. HUERTAS:  Let's get started.

21            MS. EUSTIS:  Okay.

22        (Debtor representative sworn.)

23            MS. EUSTIS:  Please state your name and address.

24            MR. HUERTAS:  Daniel Huertas.  909 Chinquapin Road,

25    McLean, Virginia, 22102.
```

Case 25-10037-ELG    Doc 46-3    Filed 08/26/25    Entered 08/26/25 19:30:59    Desc
Exhibit Ex. Transcript of Meeting of Creditors 14-1 Page 5 of 42

5

1              MS. EUSTIS:  Thank you.  And did you attend the

2      initial debtor interview in connection with this case?

3              MR. HUERTAS:  Yes.

4              MS. EUSTIS:  And to the best of your knowledge and

5      belief, have all of the schedules and the statement of

6      financial affairs been filed in this case?

7              MR. HUERTAS:  Yes.

8              MS. EUSTIS:  And to the best of your knowledge and

9      belief, is the information that's contained in the schedules

10     and statement of financial affairs true and correct?

11             MR. HUERTAS:  Yes.

12             MS. EUSTIS:  And did you review and sign the

13     statements and schedules before they were filed with the court?

14             MR. HUERTAS:  I did.  The one thing I want to point

15     out, there was a small typo that I -- I found, but I don't know

16     if this is the right time to do it or -- but I found a small

17     typo in the form.

18             MS. EUSTIS:  Sure.  What was the typographical error?

19             MR. HUERTAS:  It's on page 12 of my attachment of the

20     schedules.  We have an extra five on the junior lien.

21             MR. ORENSTEIN:  It's the continuation sheet for the

22     schedule A/B.

23             MS. EUSTIS:  Okay.  And Mr. Orenstein, what was that

24     address?

25             MR. ORENSTEIN:  And it's the address -- it's the

www.escribers.net | 800-257-0885

Case 25-10088-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:38:54 Desc
Exhibit Ex. Transcript of Meeting of Creditors Page 6 of 42

6

1    address of First Street, Northwest.  It's listed as 55501 First

2    Street, Northwest.  I believe it should be 5501 First Street,

3    Northwest.

4            MS. EUSTIS:  Okay.  Thank you.

5            And thank you, Mr. Huertas, for that.

6            Mr. Huertas, has the Debtor closed its pre-petition

7    bank accounts?

8            MR. HUERTAS:  Yes.

9            MS. EUSTIS:  And where did it maintain its pre-

10   petition bank account?

11           MR. HUERTAS:  Previously was in United Bank.

12           MS. EUSTIS:  Okay.  And was this the Debtor's only

13   account?

14           MR. HUERTAS:  Correct.  Yes.

15           MS. EUSTIS:  Okay.  And has the Debtor opened a

16   debtor-in-possession account?

17           MR. HUERTAS:  Have I opened a -- a -- the new account

18   as requested by the -- by the request?  Yes, I did as what I

19   was supposed to do.

20           MS. EUSTIS:  Okay.  And where is that account located,

21   the debtor-in-possession account?

22           MR. HUERTAS:  I believe it's the same bank, United

23   Bank, but it has a -- it's a different account number.

24           MS. EUSTIS:  Okay.  Mr. Orenstein, was a form 1 signed

25   by the bank?  I didn't see it.

Case 25-10037-ELG   Doc 46-3   Filed 09/26/25   Entered 09/26/25 19:08:54   Desc
Exhibit Ex. Trans. AUE Meeting of Creditors 147 Page 21 of 24   Page 7 of 42

7

```
 1              MR. ORENSTEIN:  It was.

 2              MS. EUSTIS:  Okay.

 3              MR. ORENSTEIN:  It was.  It was provided some time

 4      ago.

 5              MS. EUSTIS:  Okay.  Thank you.

 6          Mr. Huertas, what is the nature of the Debtor's

 7      business?  What does the Debtor do?

 8              MR. HUERTAS:  The Debtor business, are you -- are you

 9      referring to JPK NewCo?

10              MS. EUSTIS:  Yes.

11              MR. HUERTAS:  JPK NewCo is it's a holding company of

12      the -- some troubled assets that we had placed in there under

13      advice of counsel.

14              MS. EUSTIS:  So you said it's a holding company of

15      troubled assets that was formed on advice of counsel?  Is that

16      what you -- I just want to make sure I heard you correctly.

17              MR. HUERTAS:  Correct.  It's a holding company.

18      Holding two troubled assets that we have.

19              MS. EUSTIS:  Okay.  Where was the business formed?

20              MR. HUERTAS:  I believe the business was formed in

21      Virginia.

22              MS. EUSTIS:  Okay.  In what year?

23              MR. HUERTAS:  This year.

24              MS. EUSTIS:  2024?

25              MR. HUERTAS:  Correct.
```

Case 25-10088-ELG   Doc 46-3   Filed 08/26/25   Entered 08/26/25 19:28:59   Desc
Exhibit Ex. Exhibit Transcript Deposition of Conference Page 148 of 246   Page 8 of 42

8

1            MS. EUSTIS:  Okay.  And you said it was formed to hold

2    these two troubled assets?

3            MR. HUERTAS:  Correct.

4            MS. EUSTIS:  And who previously held these two

5    troubled assets?

6            MR. HUERTAS:  One was held by WCP Fund I LLC.  And the

7    different one was held by SF NU, LLC.

8            MR. ORENSTEIN:  Kristen, just to clarify, it was

9    formed in the District of Columbia, not in Virginia.

10           MS. EUSTIS:  Okay.  Thank you, Mr. Orenstein.

11           MR. ORENSTEIN:  Thank you.  The principal office is in

12   Virginia, but it's a D.C. entity.

13           MS. EUSTIS:  Okay.  Okay.  Does JPK NewCo -- is JPK

14   NewCo engaged in any other business activities?

15           MR. HUERTAS:  Not at this time.

16           MS. EUSTIS:  So at the time that it was formed, there

17   was no other ongoing business operations of JPK NewCo?

18           MR. HUERTAS:  Correct.

19           MS. EUSTIS:  And who is Sam Sariri?

20           MR. HUERTAS:  Shaheen Sariri.

21           MS. EUSTIS:  Okay.

22           MR. HUERTAS:  Shaheen Sariri is a creditor of JPK

23   NewCo.

24           MS. EUSTIS:  And he loaned JPK NewCo Money?

25           MR. HUERTAS:  Yes.

```
 1              MS. EUSTIS:  And how much did Mr. Sariri loan to JPK

 2    NewCo?

 3              MR. HUERTAS:  $50,000.

 4              MS. EUSTIS:  And what was that $50,000 used for by

 5    JPK?

 6              MR. HUERTAS:  The $50,000 was utilized to fund the

 7    cost associated with the litigation.  And we funded a loan to a

 8    third-party.

 9              MS. EUSTIS:  And who was the third-party?

10              MR. HUERTAS:  The third-party is Energy Morocco LLC.

11              MS. EUSTIS:  Okay.  Thank you.  Did you, Mr. Huertas,

12    have a prior relationship with Mr. Sariri?

13              MR. HUERTAS:  Yes.

14              MS. EUSTIS:  And what was that relationship?

15              MR. HUERTAS:  A business relationship.

16              MS. EUSTIS:  How long had you previously known him

17    for?

18              MR. HUERTAS:  I know Mr. Sariri for -- gosh, it's been

19    a while.  Probably north of fourteen years, fifteen years.

20              MS. EUSTIS:  Would you consider Mr. Sariri a friend of

21    yours personally?

22              MR. HUERTAS:  Yes.

23              MS. EUSTIS:  And your counsel indicated that the

24    principal address of JPK is in Virginia.  What is that address?

25              MR. HUERTAS:  8401 Greensboro Drive, Suite 960,
```

Case 25-10037-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:28:54    Desc
Exhibit Ex. 3 Trial As. to Dbtr's Complaint Responses (Part 3) - KH Dep Tr. 4 of 24    Page 10 of 42

10

```
 1    McLean, Virginia 22102.

 2            MS. EUSTIS:  And do any other businesses operate out

 3    of that address?

 4            MR. HUERTAS:  Yes.

 5            MS. EUSTIS:  What businesses?

 6            MR. HUERTAS:  DP Capital LLC and its affiliates.

 7            MS. EUSTIS:  Okay.  Does JPK NewCo pay rent for its --

 8            MR. HUERTAS:  No.

 9            MS. EUSTIS:  Okay.  Are there any other --

10            MR. HUERTAS:  The answer was no rent.

11            MS. EUSTIS:  I'm sorry.  Go ahead.

12            MR. HUERTAS:  Yeah.  The answer was no, no rent.

13            MS. EUSTIS:  Okay.  Are there any other locations

14    affiliated or associated with JPK NewCo?

15            MS. EUSTIS:  No.

16            MS. EUSTIS:  And just to be clear, JPK NewCo does not

17    own the space out of which it operates; is that correct?

18            MR. HUERTAS:  That is correct.

19            MS. EUSTIS:  Okay.  So there's no rental obligations

20    at all?

21            MR. HUERTAS:  That's correct.

22            MS. EUSTIS:  Okay.  Does JPK NewCo have any employees?

23            MR. HUERTAS:  No employees.

24            MS. EUSTIS:  Are there day-to-day operations of JPK

25    NewCo?
```

Case 25-10308-ELG   Doc 416-3   Filed 09/26/25   Entered 09/26/25 19:28:54   Desc
Exhibit Ex. 3 - Transcript of Debtor Exam Cert. (Part 1) Page 11 of 42

11

```
 1                MR. HUERTAS:  No.

 2                MS. EUSTIS:  Okay.  Who maintains the books and

 3      records for JPK NewCo?

 4                MR. HUERTAS:  Can you please repeat the question?

 5                MS. EUSTIS:  Who maintains the books and records for

 6      JPK NewCo?

 7                MR. HUERTAS:  DP Capital LLC.

 8                MS. EUSTIS:  Okay.  Is there any individual at DP

 9      Capital LLC that is in charge of maintaining the books and

10      records of the Debtor?

11                MR. HUERTAS:  Yes.

12                MS. EUSTIS:  And who would that be?

13                MR. HUERTAS:  Yes.  Christina with an H.  Christina.

14                MS. EUSTIS:  Um-hum.

15                MR. HUERTAS:  Araujo, A-R-A-U-J-O.

16                MS. EUSTIS:  Great.  Thank you for spelling that for

17      me.

18                MR. HUERTAS:  Sure.

19                MS. EUSTIS:  Okay.  Are the owners of the Debtor still

20      SF NU, LLC and WCP Fund I LLC?

21                MR. HUERTAS:  Yes.

22                MS. EUSTIS:  Okay.  And do you recall what the split

23      of ownership is between WCP Fund I and SF NU?

24                MR. HUERTAS:  I do not recall.  I wonder if I can ask

25      my counsel to see if he has that.  I don't recall the split.
```

Case 25-10088-ELG Doc 46-3 Filed 09/26/25 Entered 09/26/25 19:30:54 Desc
Exhibit Ex. Exhibit A - Additional Documents (Part 11) Page 12 of 42

12

1           MS. EUSTIS:  Okay.  That's okay.

2           MR. HUERTAS:  (Unintelligible) --

3           MR. ORENSTEIN:  I believe it's -- I believe it's in

4     the statement of financial affairs.

5           MS. EUSTIS:  It is, Mr. Orenstein.  That's fine.  If

6     he doesn't recall, that's fine.  I don't need the split.

7           Mr. Huertas, do you know who the owners of SF NU, LLC

8     are?

9           MR. HUERTAS:  No.

10          MS. EUSTIS:  Do you have any ownership interest in SF

11    NU, LLC?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  And what about WCP Fund I LLC?  Do you

14    know who the members of this entity are?

15          MR. HUERTAS:  Yes, I know who the members are.

16          MS. EUSTIS:  And who are they?

17          MR. HUERTAS:  There are several members because it's a

18    fund in excess of thirty different LLCs or -- or individuals.

19    I don't have all of those right in my -- readily available, but

20    there is several members of the fund.

21          MS. EUSTIS:  Okay.  And do you have any interests

22    personally in WCP Fund I, LLC?

23          MR. HUERTAS:  Yes.

24          MS. EUSTIS:  Okay.  Okay.  So going back to JPK NewCo,

25    are there any other officers or directors other than SF NU, LLC

 1  and WCP Fund I LLC?

 2          MR. HUERTAS:  No.

 3          MS. EUSTIS:  Have there been any changes in the

 4  ownership of JPK in the last year?

 5          MR. HUERTAS:  No.

 6          MS. EUSTIS:  Does anyone receive any compensation from

 7  JPK NewCo LLC?

 8          MR. HUERTAS:  No.

 9          MS. EUSTIS:  Does JPK have an interest in any other

10  business entity?

11          MR. HUERTAS:  No.

12          MS. EUSTIS:  Has any individual or entity guaranteed

13  any portion of the Debtor's debts?

14          MR. HUERTAS:  Can you please repeat the question?

15          MS. EUSTIS:  Sure.  Are there any individuals or

16  entities that have guaranteed any portion of the Debtor's

17  business debts?

18          MR. HUERTAS:  No.

19          MS. EUSTIS:  Does the Debtor utilize an accountant?

20          MR. HUERTAS:  No.

21          MS. EUSTIS:  Okay.  And since the Debtor was formed

22  this year, there have been no obligations to file state or

23  federal tax returns; is that correct?

24          MR. HUERTAS:  That's correct.  Yeah.  It was done this

25  year, so we haven't had any obligation to file tax returns or

1   any of that sort.

2          MS. EUSTIS:  Okay.  Other than Mr. Sariri, are there

3   any other creditors of JPK?

4          MR. HUERTAS:  I listed, besides Mr. Sariri, the

5   disputed litigation from 423 Kennedy St Holdings LLC and

6   Developer RE1 LLC as potential creditors --

7          MS. EUSTIS:  Okay.

8          MR. HUERTAS:  -- due to the litigation.

9          MS. EUSTIS:  And is there the potential that there

10  could be monetary amounts due and owing to Developer RE1 and

11  Kennedy St in connection with that litigation?

12         MR. HUERTAS:  Yes, there is a potential.  I don't -- I

13  don't think I owe them anything, but there's a potential for

14  the litigation.

15         MS. EUSTIS:  Okay.  But other than Developer RE1,

16  Kennedy St, and Sariri, there are no other creditors of JPK?

17         MR. HUERTAS:  That's correct.

18         MS. EUSTIS:  Has the Debtor loaned any money to any of

19  its owners, officers, or directors within the last year?

20         MR. HUERTAS:  No.

21         MS. EUSTIS:  Has JPK repaid any loan to any of its

22  owners, officers, or directors within the last year?

23         MR. HUERTAS:  No.

24         MS. EUSTIS:  Have any of its owners, officers,

25  directors loaned any money to the Debtor within the past year?

```
 1              MR. HUERTAS:  No.

 2              MS. EUSTIS:  So other than the relationship that you

 3    described with Mr. Sariri, does Mr. Sariri have any

 4    relationship to SF NU or WCP and its members that you're aware

 5    of?

 6              MR. HUERTAS:  No, no.

 7              MS. EUSTIS:  Okay.  And Mr. Sariri is not a relative

 8    of yours; is that correct?

 9              MR. HUERTAS:  That's correct.

10              MS. EUSTIS:  Has JPK NewCo sold or transferred any

11    property within the last year?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  Have there been any distributions paid by

14    JPK to anyone within the last year?

15              MR. HUERTAS:  No.

16              MS. EUSTIS:  And do Mr. Sariri, Developer RE1, or

17    Kennedy St have any liens on any of JPK's assets?

18              MR. HUERTAS:  No.

19              MS. EUSTIS:  And what are JPK's assets?

20              MR. HUERTAS:  JPK's assets are the three notes that it

21    holds today.

22              MS. EUSTIS:  So it holds three notes.

23              MR. HUERTAS:  That is correct.

24              MS. EUSTIS:  Can you describe those notes?

25              MR. HUERTAS:  The three notes are Energy Morocco LLC.
```

Case 25-10033-ELG    Doc 46-3    Filed 08/26/25    Entered 08/26/25 19:28:54    Desc
Exhibit Ex. Exhibit A - Deposition Transcript of K. Huertas Page 16 of 42

16

1   Do you need an amount?

2           MS. EUSTIS:  Yes, please.

3           MR. HUERTAS:  $26,000.  There's a junior lien on 5501

4   First Street, Northwest, Washington, D.C., for 711,741.83.  And

5   there's one more junior lien on 419-423 Kennedy Street,

6   Northwest, Washington, D.C., for $1,678,387.

7           MS. EUSTIS:  Okay.  Thank you.  And is Energy Morocco

8   current on its payments to JPK?

9           MR. HUERTAS:  Not currently.

10          MS. EUSTIS:  Are any payments being made on the junior

11  liens?

12          MR. HUERTAS:  No.

13          MS. EUSTIS:  Have any payments been made by Energy

14  Morocco since the loan was made to it?

15          MR. HUERTAS:  Not.

16          MS. EUSTIS:  Were any payments --

17          MR. ORENSTEIN:  Wait, so the Energy Morocco -- oh, I'm

18  sorry.  The Energy Morocco loan is a note that balloons in

19  December.  And the two junior liens that he described, as you

20  know, that's the subject of litigation that's presently stayed.

21          MS. EUSTIS:  Right.  So Mr. Huertas, my next question

22  was were any payments due under the note to Energy Morocco?

23          MR. HUERTAS:  Were any payments due from Energy

24  Morocco?

25          MS. EUSTIS:  Yes.

Exhibit Ex. Ex. Trans. All Debtor Entities (Pages 1-17) Page 17 of 42

```
 1            MR. HUERTAS:  Yes, as form of a loan.

 2            MS. EUSTIS:  Okay.  So Energy Morocco is in default

 3    under the note?

 4            MR. HUERTAS:  Under the note as written, yes.

 5            MS. EUSTIS:  Okay.  Since filing for bankruptcy, is

 6    the Debtor current with all of its post-petition obligations?

 7            MR. HUERTAS:  Can I ask counsel to help answer the

 8    question?

 9            MS. EUSTIS:  No.  I need to know if Energy Morocco --

10    or I'm sorry, not Energy Morocco.  I'm sorry.  JPK NewCo is

11    current on its post-petition obligations.

12            MR. HUERTAS:  I believe it is.

13            MS. EUSTIS:  What are JPK's post-petition obligations?

14    What are its operating costs?

15            MR. HUERTAS:  Sorry.  Can you please repeat the

16    question?  There was some noise in the background.

17            MS. EUSTIS:  Sure.  And if you are not me or Mr.

18    Huertas, can you please mute your line?  Thank you.

19            Yes.  So what are JPK NewCo's operating expenses?

20            MR. HUERTAS:  Currently, zero.

21            MS. EUSTIS:  Has the Debtor had to borrow any money

22    post-petition?

23            MR. HUERTAS:  Sorry.  Can you please repeat the

24    question?

25            MS. EUSTIS:  Sure.  Has the Debtor had to borrow any
```

Case 25-10088-ELG   Doc 46-3   Filed 09/26/25   Entered 09/26/25 19:38:54   Desc
Exhibit Ex. Ex. Trans. All Debtor Entities (Page 157 of 256) Page 18 of 42

18

1   money since filing for bankruptcy?

2          MR. HUERTAS:  No.  Outside of what we have, no.  We

3   haven't borrowed anything else.

4          MS. EUSTIS:  Okay.  And you indicated that there are

5   no operating expenses currently.  Have there ever been any

6   operating expenses for JPK?

7          MR. HUERTAS:  No.  No.

8          MS. EUSTIS:  Do you anticipate that there will be any

9   operating expenses for JPK?

10          MR. HUERTAS:  Not at this time.

11          MS. EUSTIS:  Okay.  So Energy Morocco, there was a

12   loan made to it, you indicated, in the amount of $26,000; is

13   that correct?

14          MR. HUERTAS:  That's correct.

15          MS. EUSTIS:  What is Energy Morocco?

16          MR. HUERTAS:  Energy Morocco is -- is a company -- is

17   in the business of renovating real estate assets.

18          MS. EUSTIS:  And have you or any of the entities that

19   you have an interest in ever loaned money to Energy Morocco

20   before?

21          MR. HUERTAS:  Yes.

22          MS. EUSTIS:  And what entities have made loans to

23   Energy Morocco before?

24          MR. HUERTAS:  WCP Fund I.

25          MS. EUSTIS:  And what were those loans in connection

```
 1    with?

 2              MR. HUERTAS:  I don't have that ready available.  We

 3    had made similar loans to Energy Morocco in the past.

 4              MS. EUSTIS:  Okay.  Do you recall what this loan would

 5    be used for, the $26,000 loan?

 6              MR. HUERTAS:  Renovation expenses.

 7              MS. EUSTIS:  Associated with what project?

 8              MR. HUERTAS:  Several projects.  It wasn't just

 9    associated with one single project.

10              MS. EUSTIS:  Okay.  And do you know who the owners of

11    Energy Morocco are or the members?

12              MR. HUERTAS:  No.

13              MS. EUSTIS:  Mr. Huertas, did you discuss the filing

14    of an involuntary petition with Mr. Sariri?

15              MR. HUERTAS:  No.

16              MS. EUSTIS:  Did you discuss why JPK NewCo needed a

17    loan from Mr. Sariri with Mr. Sariri?

18              MR. HUERTAS:  Did I discuss why I needed the loan?

19              MS. EUSTIS:  Yes.

20              MR. HUERTAS:  I needed -- let me recall.  Very

21    briefly, I just requested a loan for $50,000.

22              MS. EUSTIS:  And you didn't have any -- did you have

23    any other discussions with Mr. Sariri regarding the loan?

24              MR. HUERTAS:  No.

25              MS. EUSTIS:  Did you negotiate the terms of the loan
```

Case 25-10037-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:38:54    Desc
Exhibit Ex. 3 - Trans. Apr. 10 Meeting Entire Proceeding (Part 1 of 2) Page 20 of 42

20

```
 1    with Mr. Sariri?

 2            MR. HUERTAS:  In our initial conversation.

 3            MS. EUSTIS:  In your initial conversation, you did,

 4    or --

 5            MR. HUERTAS:  Yeah.  We -- we discuss -- yeah, we --

 6    in our initial -- yeah, I mean, yes, we discussed the terms of

 7    the loan.

 8            MS. EUSTIS:  Did anyone else discuss the terms of the

 9    loan with Mr. Sariri on --

10            MR. HUERTAS:  No.

11            MS. EUSTIS:  -- JPK NewCo's behalf?

12            MR. HUERTAS:  No.  And was JPK NewCo represented by

13    counsel in connection with the negotiation of the loan with Mr.

14    Sariri?

15            MR. HUERTAS:  No.

16            MS. EUSTIS:  Was Mr. Sariri represented by counsel

17    that you're aware of in connection with the loan?

18            MR. HUERTAS:  Not that I'm aware of.

19            MS. EUSTIS:  Who drafted the note with Mr. Sariri?

20            MR. HUERTAS:  I believe was one of my counsels, one of

21    my legal counsels.

22            MS. EUSTIS:  One of your attorneys?  One of JPK's

23    attorneys?

24            MR. HUERTAS:  Yes.

25            MS. EUSTIS:  I just want to clarify who you mean by
```

Case 25-10037-ELG Doc 46-3 Filed 08/06/25 Entered 08/06/25 19:38:54 Desc
Exhibit Ex. 3 Trial Ascalon Declaration Ex. C Page 21 of 42

21

1    "you" -- or "my".

2         MR. HUERTAS:  Right.  It has been a while.  I -- I

3    believe it was one of the JPK -- it -- I mean, it was one of my

4    counsels, not JPK counsels.  I don't -- I don't recall exactly

5    how -- how we went about it.

6         MS. EUSTIS:  Okay.  Would it have been Mr. VerStandig?

7         MR. HUERTAS:  I don't recall.

8         MS. EUSTIS:  Were there any other attorneys other than

9    Mr. VerStandig that were we're working with you at this time or

10   JPK at this time?

11        MR. HUERTAS:  Yeah, there were other people I was

12   working at that time.  There's some that I don't -- I don't

13   recall exactly.  I don't recall exactly who wrote it.

14        MS. EUSTIS:  Do you recall the names of the attorneys

15   that were working with JPK and you on this at the time?

16        MR. HUERTAS:  I don't think they were JPK attorneys.

17   That's the reason that I don't recall exactly who it was.

18        MS. EUSTIS:  Okay.  What about with Energy Morocco?

19   Who drafted the note between -- the note on behalf of Energy

20   Morocco?  Was that drafted by folks on behalf of JPK, or was

21   that drafted by Energy Morocco representatives?

22        MR. HUERTAS:  I -- I don't recall exactly how we wrote

23   that note either.  I think it was internally, we -- we had one

24   of our forms.  So I think I did it myself.  I don't recall

25   exactly how I did it.  I have to go back and see how -- how it



```
 1    was done.

 2          MS. EUSTIS:  Okay.  Part of the involuntary being

 3    filed against JPK, did Mr. Sariri either on his own or through

 4    counsel make demand for payment on JPK?

 5          MR. HUERTAS:  Yes, make demand for payments.

 6          MS. EUSTIS:  Mr. Sariri made demand for payment?

 7          MR. HUERTAS:  Correct.  Yeah.

 8          MS. EUSTIS:  And if you could provide to your counsel

 9    to provide to me any written demand for payment that was made

10    by Mr. Sariri, I would appreciate that.

11          MR. HUERTAS:  I don't think I have anything in

12    writing.  It was a phone conversation.  I told Mr. Sariri that

13    based on the nature of where we stand with the notes, we would

14    not be able to make payments.  And we told him that we were not

15    able to -- to make the financial obligation at this -- at this

16    time.

17          MS. EUSTIS:  Okay.  And the note was -- the money was

18    loaned by Mr. Sariri only almost a month before the involuntary

19    was filed; is that accurate?

20          MR. HUERTAS:  Yes, that is correct.

21          MS. EUSTIS:  Okay.  Okay.  Mr. Metz, do you have any

22    questions for Mr. Huertas?

23          MR. METZ:  I do not.  Thank you.

24          MS. EUSTIS:  Thank you.

25          Mr. Sadowski.
```

Case 25-10088-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:28:54 Desc
Exhibit Ex. Ex-Trans A - Deposition Transcript Page 107 of 161 of 24 Page 23 of 42

23

1          MR. SADOWSKI:  Yes, I do.  Jim Sadowski, counsel for

2    Developer RE1  and 423 Kennedy St Holdings LLC.

3          Good morning, Mr. Huertas.  To follow up on some of

4    the questions that Ms. Eustis asked, you mentioned that initial

5    conversation with Mr. Sariri about this promissory note or

6    loan.  What date did that happen, that initial conversations?

7          MR. HUERTAS:  I don't recall.

8          MR. SADOWSKI:  Well, was it six months ago?  Was it

9    two months ago?  What's your best range of when that happened?

10          MR. HUERTAS:  Before I received the funds.  I don't

11   recall exactly when.  I'm sorry.  Just before we received the

12   funds, obviously.

13          MR. SADOWSKI:  Okay.  And when did you receive the

14   funds?

15          MR. HUERTAS:  I -- I got to go look.  I don't have an

16   exact date.

17          MR. SADOWSKI:  Okay.  And how did you receive the

18   funds?

19          MR. HUERTAS:  I don't recall.  I'm sorry.

20          MR. SADOWSKI:  Was it a check?  Was it a wire

21   transfer?  Was it something else?

22          MR. HUERTAS:  I think it was a wire.  I'm not a

23   hundred-percent sure.

24          MR. SADOWSKI:  Okay.  Now, the bank account with

25   United Bank, when was that account opened?

Case 25-10037-ELG  Doc 46-3  Filed 09/26/25  Entered 09/26/25 19:28:54  Desc
Exhibit Ex. E - Transcript of Meeting of Creditors 10/17 Page 24 of 42

24

1          MR. HUERTAS:  In the earlier part of this year.  I

2     don't have a date.

3          MR. SADOWSKI:  Okay.  But you have bank statements,

4     right, that would show when that account was opened?

5          MR. HUERTAS:  I'm sure we have bank statements.

6          MR. SADOWSKI:  Okay.  And what money went in and out

7     of that account during the period of time that JP (sic) NewCo

8     had activity in that account?

9          MR. HUERTAS:  It was related to this loan and the

10    other funds was related to this litigation.

11         MR. SADOWSKI:  Okay.  Is United Bank the same bank

12    that's used by DP Capital?

13         MR. HUERTAS:  Same bank.

14         MR. SADOWSKI:  Same bank?  And the same bank that's

15    used by WCP Fund?

16         MR. HUERTAS:  Same bank.  Different account numbers.

17         MR. SADOWSKI:  Okay.  Whose idea was it to create JPK

18    NewCo?

19         MR. HUERTAS:  I believe I've already answered the

20    question related to JPK NewCo.

21         MR. SADOWSKI:  It was your lawyer's idea then?

22         MR. HUERTAS:  JPK NewCo was created under advice of

23    counsel.

24         MR. SADOWSKI:  Okay.  So it wasn't your idea to do

25    that, right?

```
1              MR. HUERTAS:  I have already answered that question.

2              MR. SADOWSKI:  Is that a no?

3              MR. HUERTAS:  JPK NewCo was created under advice of

4    counsel.

5              MR. SADOWSKI:  Okay.  So it wasn't your idea, correct?

6              MR. HUERTAS:  JPK NewCo was created under advice of

7    counsel.

8              MR. SADOWSKI:  All right.  When was that advice given?

9    What time frame?

10             MR. HUERTAS:  Sometime late last year, early this

11   year.

12             MR. SADOWSKI:  And that advice that was given, was

13   that advice given by Mr. VerStandig?

14             MR. HUERTAS:  JPK NewCo was created under the advice

15   of counsel.

16             MR. SADOWSKI:  All right.  Which counsel?

17             MR. ORENSTEIN:  Daniel, you can answer that question.

18   You cannot tell him what was said, but you can tell him who

19   gave you the advice.

20             MR. HUERTAS:  Mr. Marc -- Mac VerStandig.

21             MR. SADOWSKI:  Okay.  Was there any other attorney

22   besides Mr. VerStandig involved in that advice?

23             MR. HUERTAS:  No.

24             MR. SADOWSKI:  Okay.  Who selected the name JP (sic)

25   NewCo?
```

```
 1                    MR. HUERTAS:  Sorry.

 2                    MR. SADOWSKI:  So who came up with the name, JPK

 3      NewCo?  JPK, does that stand for someone's initials, or why did

 4      you use JPK NewCo?

 5                    MR. HUERTAS:  Yeah, it's, like, initials

 6                    MR. SADOWSKI:  Okay.  And whose initials are JPK?

 7                    MR. HUERTAS:  The initial JPK is Joseph P. Kennedy.

 8                    MR. SADOWSKI:  Okay.  All right.  All right.  Is that

 9      just a political person that you decided to use his initials,

10      as opposed to, like, JPK or RFK?

11                    MR. HUERTAS:  I just like the initials.

12                    MR. SADOWSKI:  Okay.  And the preparation of the note

13      with Mr. Sariri, I believe you said you weren't sure who

14      prepared that.  Did JPK NewCo get a bill for the preparation of

15      that note from any attorney?

16                    MR. HUERTAS:  No.

17                    MS. EUSTIS:  How about the preparation of the note

18      with Energy Morocco?  Did JPK get the legal bill for

19      preparation of that note?

20                    MR. HUERTAS:  I don't think so.  I don't know.  It

21      didn't.

22                    MR. SADOWSKI:  Has JPK incurred any legal expenses

23      before it filed for bankruptcy?

24                    MR. ORENSTEIN:  And just as a correction.  People keep

25      saying before it filed bankruptcy.  It's involuntary.
```

1           MR. SADOWSKI:  Sorry.  You're right.  Before the

2    involuntary petition was filed on July 3rd, had JPK incurred

3    any legal expenses?

4           MR. HUERTAS:  I don't recall nothing outside of this.

5           MR. SADOWSKI:  All right.  Who's paying the bills to

6    Mr. VerStandig related to any pre-petition services that he

7    gave JPK NewCo?

8           MR. HUERTAS:  Sorry.  Repeat the question.

9           MR. SADOWSKI:  Yeah.  Before July 3rd, 2023, that's

10   the petition date.  When I say pre-petition, that means before

11   July 3rd, 2024.  Sorry.  Who was paying the legal bills for Mr.

12   VerStandig to give advice about forming JPK NewCo?  Was that

13   being paid by WCP Fund, DP Capital, or somebody else?

14          MR. HUERTAS:  I don't recall exactly the entity, but

15   it's one of -- one of DP Capital affiliates, I'm sure.

16          MR. SADOWSKI:  Okay.  Now, was it ever discussed that

17   one reason to create JPK NewCo was to be able to put that

18   company into bankruptcy so that the litigation with my clients

19   could be removed to bankruptcy court?

20          MR. ORENSTEIN:  Objection.  That would be attorney-

21   client privilege if such a conversation took place.

22          MR. SADOWSKI:  Okay.  Mr. Huertas, you're not going to

23   answer that --

24          MR. ORENSTEIN:  I'm instructing him not to answer that

25   question.

Case 25-10837-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:28:59 Desc
Exhibit Ex. Ex. Ex. Trian Ascr Audio Mediation Conference (Part 1) KPHE 2166 Lot 24 Page 28 of 42

28

1      MR. SADOWSKI:  Okay.  What were the business reasons

2   for forming JPK NewCo?

3      MR. HUERTAS:  JPK NewCo was formed because at a time

4   after the mediation process that we had, I think sometime late

5   last year, there were some negotiations around how to make

6   those liens and ourselves have an agreement.  And the only --

7   the best way to -- to make that agreement work was to take the

8   troubled assets into one entity, as we had a discussion related

9   to participation.  So the only way to do it, like I said, was

10   this way, and it was done under advice of counsel.

11      MR. SADOWSKI:  Okay.  Now, when did the mediation

12   happen between the defendants in the litigation with my

13   clients?  When did that mediation occur with JAMS and Judge

14   Levie?  Do you remember the dates?

15      MR. HUERTAS:  I don't remember the dates, but I -- I

16   think sometime late last year or (unintelligible) I -- I don't

17   exactly when, but it was -- it was cold.

18      MR. SADOWSKI:  Yeah.  Let me see if I can help you

19   with that, Daniel, because I know it was a while ago.  On my

20   calendar, on January 9th, I have a time entry -- I'm sorry, a

21   calendar entry for mediation of JAMS, January 9th, 2024.  Does

22   that refresh your recollection as to when the first mediation

23   session was held?

24      MR. HUERTAS:  I mean, you want me to -- you want me to

25   take your word for it, then I know it was early this year or



Case 25-10047-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:38:54    Desc
Exhibit Ex. A to Aldberle Engstrom Declaration-Part 1 of 2    Page 29 of 42

29

1    sometime late last year.  I don't recall exactly.  It was a

2    while ago --

3              MR. SADOWSKI:  Yeah.

4              MR. HUERTAS:  -- like you said very well.  But it was

5    before JPK was formed.

6              MR. SADOWSKI:  Okay.  And when was the last mediation

7    session before Jams?  Do you remember that date?

8              MR. HUERTAS:  No, I don't have it.  I don't remember

9    the date.

10             MR. SADOWSKI:  Well, was it within a couple weeks of

11   the first session, or what's your recollection of that?

12             MR. HUERTAS:  I -- I don't recall.

13             MR. SADOWSKI:  Okay.  Do you know why the first

14   mediation session was continued to a second date in January?

15             MR. HUERTAS:  I mean, like I said, I -- I don't

16   recall.  It was a while ago.

17             MR. SADOWSKI:  Okay.

18             MR. HUERTAS:  I know that --

19             MR. SADOWSKI:  When did the -- okay.  When did the

20   mediation end?

21             MR. HUERTAS:  I don't understand your question.  When

22   did it end?

23             MR. SADOWSKI:  Well, my recollection from my calendars

24   and my time sheets and my bills that I sent to the client is

25   that there were two mediation sessions, one on January 9th, and

1  the second one on January 25th.  And the mediation concluded on

2  January 25th.  Does that sound about right in terms of timing?

3          MR. HUERTAS:  Unfortunately, you'll need to go by the

4  date you are stating.  I don't want to use your dates.  For --

5  like I said, it was some time before either late last year or

6  early this year.  I don't recall exactly.

7          MR. SADOWSKI:  Okay.  What was the reason the

8  mediation ended?

9          MR. HUERTAS:  I don't recall.

10         MR. SADOWSKI:  Well, isn't that true, Mr. Huertas,

11  that you were the one who told the mediator -- or sorry, who

12  ended the mediation?

13         MR. HUERTAS:  I don't recall.

14         MR. SADOWSKI:  Okay.  What would help refresh your

15  recollection as to why the mediation ended?  Do you have any

16  business records?  Do you have any notes?

17         MR. HUERTAS:  I don't have any notes.

18         MR. SADOWSKI:  Okay.  Returning to the schedules that

19  were filed -- sorry.  Let's talk about SF NU, LLC.  Now, Ms.

20  Eustis asked you if you knew who the owners are, and you said

21  you don't know.  Well, who do you communicate with when you

22  want to communicate with SF NU, LLC?

23         MR. HUERTAS:  I communicate with Mr. Shrensky, Jason

24  Shrensky.

25         MR. SADOWSKI:  Could you spell his name, please, for

Case 25-10088-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:28:54    Desc
Exhibit Ex. Exhibit A - Amended Trial Balance Transcript Page 117 of 469    Page 31 of 42

31

```
 1    the record?

 2          MR. HUERTAS:  Jason, J-A-S-O-N, Shrensky,

 3    S-H-R-E-N-S-K-Y.

 4          MR. SADOWSKI:  Okay.  Other than Mr. Shrensky, is

 5    there anyone else that you communicate with at SF NU, LLC?

 6          MR. HUERTAS:  No.

 7          MS. EUSTIS:  Okay.  Why were the notes -- the two

 8    notes that I think you've described it as distressed assets or

 9    tainted assets, why were they transferred to SF NU, LLC?

10          MR. HUERTAS:  I don't think that's a question for me.

11    I -- I already answer the question related to -- to that so --

12          MR. SADOWSKI:  Oh, because I had a question for you.

13          MR. HUERTAS:  I'm (unintelligible) question.  Okay.

14          MR. SADOWSKI:  Because I have a question for you, Mr.

15    Huertas.

16          MR. HUERTAS:  Well, I can't hear you.  No one answered

17    a question for a different company.  I don't know.

18          MR. SADOWSKI:  Well, you know the answer to that

19    question, correct?

20          MR. HUERTAS:  I don't have an answer for you.

21          MR. SADOWSKI:  So you don't know why the notes were

22    transferred to SF NU, LLC?

23          MR. HUERTAS:  Hold on.  Repeat that again.

24          MR. SADOWSKI:  You don't know why the notes were

25    transferred to SF NU, LLC?
```

Case 25-10037-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:38:54    Desc
Exhibit Ex. Exhibit Transcript of October Cure Hearing 10.2.24   Page 32 of 42

32

1          MR. HUERTAS:  Why the notes were transferred to SF NU,

2    LLC?  I don't -- I don't -- I don't understand your question.

3          MR. SADOWSKI:  Okay.  These notes that are being held

4    by JPK NewCo were originally held by SF NU, LLC, correct.

5          MR. HUERTAS:  One of them.  That's incorrect.

6          MR. SADOWSKI:  Okay.

7          MR. HUERTAS:  There's one of them.

8          MR. SADOWSKI:  All right.  Which one was currently

9    held by SF NU, LLC?

10          MR. HUERTAS:  I got to go look.  I don't have it

11    exactly, but I think it's the smaller -- the smaller one.

12          MR. SADOWSKI:  Okay.  So you think that -- well, I

13    guess I can just look at your continuation sheet.  So you think

14    that was the second -- where did I see that?

15          MR. ORENSTEIN:  The smaller one would be First Street.

16          MR. SADOWSKI:  Yeah.  Okay.  Yeah, I'm not real good,

17    Mr. Orenstein, with the street addresses.  I'm better with the

18    entity names, but okay.  So and the other one was -- what's the

19    other one, and why was that other one transferred from the

20    original holder to SF NU, LLC?

21          MR. HUERTAS:  I don't -- I don't understand question.

22    You're asking me why the other note was transferred to SF NU,

23    LLC?  That never happened.

24          MR. SADOWSKI:  Correct.  Correct.

25          MR. HUERTAS:  I don't understand your -- I -- I -- I

Case 25-10308-ELG Doc 46-3 Filed 09/26/25 Entered 09/26/25 19:28:54 Desc
Exhibit Ex. Exhibit A - Ali Mother Gen 5 (Part 1 of 2) Page 33 of 42

33

1    don't understand your question.

2        MR. SADOWSKI:  Well, I'm trying to figure out what the

3    business purpose is for these notes getting transferred from

4    one entity to the next to the next.  And the business purpose

5    that we were told in some of your filings and in your testimony

6    was that these were tainted assets, and there was some sort of

7    settlement agreement that might be created to hold these assets

8    and figure out a settlement if the assets were held by somebody

9    else.  So I'm trying to figure out why was there a business

10   need to do that.  No settlement agreement was reached, correct,

11   between --

12       MR. ORENSTEIN:  Mr. Sadowski, I'm going to -- Mr.

13   Sadowski, I'm going to interrupt you for a moment, because I'm

14   not sure if you're confusing your own questions.  You asked him

15   why the notes were transferred to SF NU.  And for purposes of

16   the bankruptcy, he's already testified that WCP and SF NU

17   transferred the notes to JPK.  So I'm not sure if you're mixing

18   up your question.

19       MR. SADOWSKI:  Yeah, well, I'm trying to figure out

20   two pieces of that, Mr. Orenstein, and thanks for that because

21   maybe my questions aren't as great as I thought they should be.

22   I want to find out why they went from WCP Fund I LLC to SF NU,

23   and then why they then went from SF NU to JPK NewCo.  There's

24   two steps there because that's where I'm headed with this.

25       So the first question is why transfer the notes out of



```
1    WCP Fund I to SF NU, LLC to begin with.  And then the second

2    part of that question is why then transfer them again to JPK

3    NewCo.

4             MR. HUERTAS:  Okay.  So -- so the first question is

5    related to internal business practices.  That's probably not

6    the right forum for me to talk about WCP's or DP Capital

7    business practices.  How we do business.

8             The second question, I can't really answer your

9    question as far as how or why we transfer the note from the

10   fund to JPK NewCo.  And I said to you multiple times that it

11   was under the advice of counsel.

12            MR. SADOWSKI:  Okay.  So is there any other reason

13   other than the advice of counsel why the notes were transferred

14   to JPK NewCo?

15            MR. HUERTAS:  I already gave you an answer.

16            MR. SADOWSKI:  That was the only reason they were

17   transferred, because of advice of counsel?

18            MR. HUERTAS:  On advice of counsel, correct.

19            MR. SADOWSKI:  Okay.  One second just to look through

20   my notes.

21            Now, you mentioned that the WCP Fund I is comprised

22   of -- and I'm not trying to pin you down exactly to what you

23   said, but I wrote down thirty different LLCs and individuals

24   and that you have an interest in WCP Fund I.  What is the

25   extent of your interest in WCP Fund I?
```

```
 1              MR. HUERTAS:  I'm a member of the fund.

 2              MR. SADOWSKI:  Individually?  And what percentage do

 3    you own?

 4              MR. HUERTAS:  I own (unintelligible) percent.

 5              MR. ORENSTEIN:  I'm going to -- I'm going to object to

 6    this question.  I'm going to instruct him not to answer.  This

 7    doesn't seem to have anything to do with the operations of JPK

 8    or the issues in the JPK case.

 9              It's your position that this is relevant with regard

10    to the motion to dismiss, which the United States Trustee has

11    filed.  We're in the process of scheduling -- in the process of

12    having a scheduling order entered that will allow for discovery

13    in this case.  And I think if you're going to ask questions

14    about WCP, it's appropriate for WCP to have its own counsel

15    present at that time to object to the extent that I think

16    it's -- to the extent that he thinks that it's necessary.  I

17    don't think this is appropriate for a 341 meeting.

18              MR. SADOWSKI:  Well, you didn't object before when he

19    gave that answer, Mr. Orenstein.  I'll ask a different

20    question.

21              Mr. Huertas, other than an individual interest in WCP

22    Fund I, do you have an individual interest in any of the LLCs

23    that make up WCP Fund I?

24              MR. ORENSTEIN:  I'm going to give the -- I'm going to

25    make the same objection.  For the reasons stated, I'm going to
```

escribers

Case 25-10007-ELG Doc 46-3 Filed 08/26/25 Entered 08/26/25 19:28:54 Desc
Exhibit Ex. Exhibit A - Ali Mohebban Tr Cas (Huertas 07.16.2024) Page 36 of 42

36

1    instruct him not to answer that.

2         MS. EUSTIS:  Mr. Sadowski, this is Kristen Eustis.  I

3    agree with Mr. Orenstein that Mr. Huertas would be entitled to

4    have his own personal counsel present for anything further with

5    respect to his personal interests in these entities.

6         MR. SADOWSKI:  Okay.  Got it.  Okay.  Objection's been

7    noted.  Thank you, Counsel.

8         Mr. Huertas, how did you arrive at the numbers that

9    were used on the schedules to come up with the $2.4 million?

10   Where did those amounts come from?

11        MR. HUERTAS:  Those numbers, I believe, were the

12   unpaid principal balance at the time that I -- that I filled

13   this out.

14        MR. SADOWSKI:  Okay.  So you have some accounting

15   somewhere that shows as of the date you prepared the schedules,

16   X dollars was owed under each of the lien -- of the notes?

17   Sorry.

18        MR. HUERTAS:  Well, that's a face amount.  That's

19   the -- that's the face amount of the current value.  That's

20   what I was asked.

21        MR. SADOWSKI:  Okay.

22        MS. EUSTIS:  You asked me something different.  I'm

23   just clarifying that when I completed the schedules, it was

24   based on what's the total face amount and the current value.

25        MR. SADOWSKI:  Okay.  So getting to Energy of (sic)

escribers

www.escribers.net | 800-257-0885

Case 25-10037-ELG Doc 46-3 Filed 08/06/25 Entered 08/06/25 19:33:59 Desc Exhibit Ex. Exhibit A - Trans - All Meeting of Creditors (Part 1) 7 Pages 27-15 of 24 Page 37 of 42

37

1    Morocco LLC, was this $26,000 -- did that serve some other

2    purpose for Energy of (sic) Morocco LLC?  In other words, did

3    the Debtor use those funds -- I'm sorry.  Let me ask it a

4    different way.  Does Energy of (sic) Morocco LLC received draws

5    from DP Capital under various construction projects?

6           MR. HUERTAS:  I'm not going to answer that question.

7    It's related to a separate business, and I'll do it -- I'll do

8    it when my counsel is present for me to answer any other

9    questions related --

10           MR. SADOWSKI:  Okay.  Well, how about the --

11           MR. HUERTAS:  -- (unintelligible) DP Capital.

12           MR. HUERTAS:  How about this $26,000?  Why did Energy

13    of (sic) Morocco need that money at that time?

14           MR. HUERTAS:  They request additional funds for the

15    renovations, and we did a loan for that purpose.

16           MR. SADOWSKI:  And was JPK's business to be loaning

17    money to people for renovations?

18           MR. HUERTAS:  JPK business is again the holding

19    company and the holding company of loans -- of notes.

20           MR. SADOWSKI:  But it wasn't in the loaning business,

21    was it?

22           MR. HUERTAS:  Not before.

23           MR. SADOWSKI:  Okay.  How did JPK expect to pay Mr.

24    Sariri back the money that Mr. Sariri loaned JPK?

25           MR. HUERTAS:  Hopefully, some of these loans, we'll

1   start paying.  And for the payments of the loans, either from

2   Energy Morocco or once the payments for 423 Kennedy and

3   Developer RE1 start happening, we will take care of the

4   creditors.

5            MR. SADOWSKI:  Okay.  And when did JPK expect the --

6            MR. HUERTAS:  (Unintelligible).

7            MR. SADOWSKI:  When did JPK expect that either of my

8   clients were going to start paying money on those loans?

9            MR. HUERTAS:  I don't know.  That's a great question

10  for you and your clients.

11           MR. SADOWSKI:  No, that's a question for you.  You

12  said that you expected -- you just said that you expected that

13  at some point you would pay Mr. Sariri back with money that you

14  got from Developer RE1 and 423 Kennedy.  So what led JPK NewCo

15  to believe that there was going to be money coming in from

16  those two loans in the next year?

17           MR. HUERTAS:  I don't know.  I think if there is

18  payments received -- you ask me a question how I'm -- how I

19  am -- how am I going to pay Mr. Sariri, and the answer to your

20  question was out of the payments that we'll receive in the

21  future, who knows when, related to the Energy Morocco, as well

22  as the junior liens that are in here.

23           MR. SADOWSKI:  All right.  Just one second, Ms.

24  Eustis.

25           All right.  That concludes my questions, Ms. Eustis.

Case 25-10088-ELG   Doc 46-3   Filed 08/26/25   Entered 08/26/25 19:28:54   Desc
Exhibit Ex. Ex Tran As All Debtor Entities (Pages 179 of 262)   Page 39 of 42

39

1            Thank you, Mr. Huertas and Mr. Orenstein.

2            MS. EUSTIS:  Thank you.

3            Ms. Burgers, do you have any questions?

4            Okay.  Ms. Burgers had indicated at the beginning of

5    this meeting that she might have to drop off, so it appears

6    that she has.

7            Mr. Huertas, what is the Chapter 11 plan for JPK?

8    It's my understanding from your testimony that there's no

9    revenue currently coming in, that the notes that JPK holds are

10   no one is making payment on those notes.  So how does JPK

11   propose that it's going to exit bankruptcy?

12           MR. HUERTAS:  Sure.  Thank you for the question.  At

13   some point, our goal through the resolution of some of these

14   issues related to 423 Kennedy St and Developer RE1 LLC is

15   having the ability, once JPK NewCo is able to bring those funds

16   from these notes, being able to pay back its creditors so --

17           MS. EUSTIS:  And the plan is due, I believe, in two

18   weeks.  And so do you anticipate that those funds will start

19   coming in by the end of the year?

20           MR. HUERTAS:  I don't know.  I -- I'm not an expert on

21   this.  I have no idea.  But at this time, right now, we have

22   three -- two delinquent junior liens in -- in default.  And

23   unfortunately, the Energy Morocco is in default as well.

24           MR. ORENSTEIN:  This is Orenstein.

25           MS. EUSTIS:  Go ahead, Mr. Orenstein.

Case 25-10037-ELG    Doc 46-3    Filed 09/26/25    Entered 09/26/25 19:28:54    Desc
Exhibit Ex. Exhibit A - Transcript of Meeting of Creditors 170925    Page 40 of 42

40

1       MR. ORENSTEIN:  Yeah, thanks.  I'm sure you saw the

2    status report that we filed last week The money from Energy

3    Morocco is due under the note to be paid in December.  We're

4    hoping that that will come in by that time.  The litigation

5    with 423 Kennedy and Developer RE1, as you know, is stayed

6    pending the Court's decision on whether or not this bankruptcy

7    case will be dismissed.  We're hoping that it's not going to be

8    dismissed and at that point, that the Court will lift the stay

9    so that the litigation can continue.

10       And you're right, the -- I believe it's -- I want to

11   say, off the top of my head, it's the 9th that the plan is due.

12   I may be wrong about that, but it's within the next two weeks.

13   And the plan, generally speaking, will provide that payments

14   will be made from the collection of these notes as and when the

15   payments are received.

16       MS. EUSTIS:  Okay.  All right.  Well, thank you.  I

17   appreciate that.

18       Does anyone else have any questions for Mr. Huertas

19   today?

20       Okay.  Hearing none.  I'm going to conclude this

21   meeting today.  And just, Mr. Orenstein and Mr. Huertas, for

22   your benefit, that does not mean I don't have any more

23   questions for you.  I do, and I do anticipate getting some

24   discovery out in connection with the motion to dismiss.  So I

25   just wanted to make sure that was clear for the record that by

5690

1   concluding this meeting of creditors, that does not mean that

2   my office does not have any further questions for you in

3   relation to its motion to dismiss.

4          But with that, this --

5          MR. ORENSTEIN:  We understand, and Mr. Huertas is

6   aware of the fact that you may want to take depositions of JPK

7   or potentially Mr. Huertas himself.

8          MS. EUSTIS:  Great.  Thank you, Mr. Orenstein.

9          And thank you all so much for your time today.  I will

10  conclude this meeting.

11         (Whereupon the hearing was adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 25-10037-ELG   Doc 46-3   Filed 09/26/25   Entered 09/26/25 19:38:54   Desc
Exhibit Ex. E - Trial Ascap Evidentiary Grace (Part 1) 2 of 3 - Part 1   Page 42 of 42

42

```
 1                              CERTIFICATE

 2     I certify that the foregoing is a correct transcript from the

 3     electronic sound recording of the proceedings in the above-

 4     entitled matter.

 5

 6

 7

 8     /s/                                  Date: November 13, 2024

 9     ESCRIBERS LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## CONSENT OF THE MEMBERS OF
**5505 1st St Holdings LLC**

The undersigned, Member(s) of 5505 1st St Holdings LLC a District of Columbia Limited Liability Company, adopt the following resolutions:

**WHEREAS,** resolutions were previously adopted by 5505 1st St Holdings LLC whereby the then existing members of 5505 1st St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS,** the previous resolutions were adopted in error and to correct the error therein, 5505 1st St Holdings LLC hereby executes the following resolutions;

**WHEREAS,** Coloma River Holdings LLC, a District of Columbia limited liability company is the sole member of the Company;

**WHEREAS,** Charles Paret is a sole member of Coloma River Holdings LLC; and

**WHEREAS,** Coloma River Holdings LLC hereby relinquishes its membership interest and resigns from membership in 5505 1st St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS,** the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED,** the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED,** that Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, hereby relinquishes its membership interest and resigns from membership of 5505 1st St Holdings LLC in exchange for the PREVIOUS PAYMENT.

**RESOLVED,** in exchange for PREVIOUS PAYMENT, NT Group LLC shall be the sole member of the Company.

**RESOLVED,** Coloma River Holdings LLC, sole member of 5505 1st St Holdings LLC, Charles Paret, sole member of Coloma River Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED,** that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Coloma River Holdings LLC, sole member of the 5505 1st St Holdings LLC, hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**5505 1st St Holdings LLC**
a District of Columbia limited liability company

By: COLOMA RIVER HOLDINGS LLC, its          **DATE: December 30, 2021**
Managing Member and Sole Member

By: _____
Charles Paret, its
Managing Member and Sole Member


**ACKNOWLEDGED, ACCEPTED AND AGREED:**


**NT GROUP LLC,**                            **DATE: December 30, 2021**
a Delaware limited liability company

MEMBER:

_____
By: Mel Negussie, managing member

## UNANIMOUS WRITTEN CONSENT OF THE
## MEMBERS OF
### 71 Kennedy St Holdings LLC

The undersigned, Member(s) of 71 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company ("Company"), adopt the following resolutions:

**WHEREAS**, resolutions were previously adopted by 71 Kennedy St Holdings LLC whereby the then existing members of 71 Kennedy St Holdings LLC relinquished their membership interest in to NT Group LLC, copies of which are attached hereto;

**WHEREAS**, the previous resolutions were adopted in error and to correct the error therein, 71 Kennedy St Holdings LLC hereby executes the following resolutions;

**WHEREAS**, Charles Paret is the sole member of 71 Kennedy St Holdings LLC;

**WHEREAS**, Charles Paret hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for the $1,500,000.00 (One Million-Five-Hundred Thousand Dollars) that has previously been paid toward the purchase of the property owned by 5505 1st St Holdings LLC and the separate property owned by 71 Kennedy St Holdings LLC ("PREVIOUS PAYMENT");

**WHEREAS**, the Member(s) and the Company shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, the previously adopted resolutions were adopted in error and are corrected as set forth herein.

**RESOLVED**, that Charles Paret, sole member of 71 Kennedy St Holdings LLC, hereby relinquishes his membership interest and resigns from membership of 71 Kennedy St Holdings LLC in exchange for PREVIOUS PAYMENT.

**RESOLVED**, in exchange for PREVIOUS PAYMENT, NT Group LLC shall become the sole member of the Company.

**RESOLVED**, Charles Paret, sole member of 71 Kennedy St Holdings LLC, and NT GROUP LLC shall enter into any and all covenants and agreements and will take all actions as may be necessary to effectuate the foregoing.

**RESOLVED**, that all acts taken by the Company in connection with the foregoing are hereby ratified and affirmed.

Charles Paret, sole member of 71 Kennedy St Holdings LLC hereby certifies and guarantees:

(1) there are no unpaid real estate taxes, water & sewer bills, or assessments affecting the property except those currently due and payable and no notice has been received regarding future or pending special assessments.
(2) has no knowledge of government abatement and condemnation notices. Affiant has no knowledge of any problems which may/ have impeded the obtaining of a building permit.
(3) has delivered no unrecorded deed, deed of trust, mortgage or lien affecting the property.
(4) specifically swears that ALL property liens of EVERY kind are being paid off, subordinated or assumed.
(5) there are no unrecorded contracts of sale, options or leases affecting the property which contain a right of first refusal or an option to purchase the fee simple title to the property.
(6) knows of no action or proceeding relating to said property or to affiant, which is now pending in any State or Federal Court in the United States, said action to include a bankruptcy / insolvency action in any court.

**71 Kennedy St Holdings LLC**
a District of Columbia limited liability company
**MEMBER:**

DATE: December 30, 2021

Charles, Paret, its
Sole member


**ACKNOWLEDGED, ACCEPTED AND AGREED:**

**NT GROUP LLC,**
a Delaware limited liability company

MEMBER:

DATE: December 30, 2021

By: Mel Negussie, managing member

## AFFIDAVIT OF CHARLES PARET

I, Charles Paret (the "Affiant"), solemnly swear under the penalties of perjury and upon personal knowledge and due inquiry that the following statements are true:

1.     That I am the organizer of Coloma River Holdings, LLC a Delaware Limited Liability Company organized on May 26, 2016 ("Coloma"). I am currently and at all times since its May 26, 2016 inception, until the date of this Affidavit, the sole owner/member and sole manager of Coloma.

2.     That I am the organizer of Charles Paret, LLC a District of Columbia Limited Liability Company organized on January 8, 2014 ("Paret LLC"). I am currently and at all times since its January 8, 2014 inception, until the date of this Affidavit, the sole owner/member and sole manager of Paret, LLC.

3.     That I am the organizer of 423 Kennedy St Holdings, LLC a District of Columbia Limited Liability Company organized on May 20, 2016 ("Kennedy Street").

4.     The initial owners of Kennedy Street were myself, Mr. Charles Paret, and Mr. Adam Lobene.  On or about April 17, 2017 Mr. Paret and Mr. Lobene entered into an agreement whereby all of Mr. Lobene's right title and interest to Kennedy Street was purchased by Mr. Paret for the sum of $30,000.  Such $30,000 was paid to Mr. Lobene and as a result I, Charles Paret was then the 100% holder of all right title and interest in and to Kennedy Street.

5.     That on or about July 31, 2017 Mr. John Gosnell acquired an equity interest in and to Kennedy Street. whereupon the owners of Kennedy Street were then Paret LLC and Mr. John Gosnell.

6.    That on November 27, 2018, Brighton-KSDC, LLC acquired an equity interest in and to Kennedy Street. As of such November 27, 2018 date, the owners of Kennedy Street were Brighton-KSDC, LLC, Paret LLC, and Mr. John Gosnell.

7.    That on September 13, 2019, I Charles Paret executed an Assignment of Membership Interest whereby I purported to transfer 50% of all right title and interest from Paret, LLC to Coloma. This transfer was in error, and deemed null and void. For the avoidance of doubt, this error was further rectified by the joining of Coloma to the transfer to Mel Melaku Negussie referenced in paragraphs 9 and 10 below.

8.    That on January 17, 2020, Mr. John Gosnell did redeem all of his right title and interest in and to Kennedy Street. As a result of this transaction all of the membership interests in Kennedy Street were held by Brighton-KSDC, LLC and Paret, LLC.

9.    That simultaneously with the making of a loan from Washington Capital Partners "WCP") to Kennedy Street, WCP has required that the sole holders of membership interest in and to Kennedy Street be Brighton-KSDC, and Mel Melaku Negussie. I, Charles Paret do as of the date of closing on the WCP loan, transfer all right title and interest held by Paret LLC, to Mel Melaku Negussie.

10.    For the avoidance of doubt, I Charles Paret, have caused each of myself, Paret LLC and Coloma to join in the foregoing transfer to Mel Melaku Negussie such that the ownership of Kennedy Street is now as follows:

Brighton-KSDC, LLC          50%

Mel Melaku Negussie         50%

11.    I, Charles Paret also hereby provide further assurance that if any interests I may have either personally or through an entity of which I am a member, in either the property that is the

2

subject of this loan from WCP, or in an entity who holds an interest in said property are later discovered, I will execute any and all necessary documents to effect the complete transfer of said interest to Kennedy Street, or any successors in interest thereto.

This affidavit is provided for the benefit of Washington Capital Partners, LLC and Brighton-KSDC, LLC, such that they are entitled to rely on the same to ensure that the making of the loan is enforceable against Kennedy Street and not susceptible to fraud.

I HEREBY CERTIFY AS OF THIS 31st DAY OF JANUARY, 2020, UNDER PENALTIES OF PERJURY THAT THE MATTERS AND FACTS HERE AND ABOVE SET FORTH ARE UPON MY PERSONAL KNOWLEDGE AND ARE TRUE.

_____
Charles Paret

STATE OF VIRGINIA
COUNTY OF FAIRFAX

    I hereby certify that, before me, the subscriber, a Notary Public of the State and County aforesaid, personally appeared Charles Paret, known to me (or satisfactorily proven) to be the persons whose name is subscribed to the within instrument, and acknowledged the same for the purposes therein contained, and further acknowledged the foregoing instrument to be their act, and in my presence signed and sealed the same, giving oath under penalties of perjury that the consideration recited herein is correct.

    IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires   05 · 31 · 2021

PARAS SAXENA
Notary Public-Reg. # 7100494
COMMONWEALTH OF VIRGINIA
My Commission Expires May 31, 2021

3

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET

    *Debtor.*

| | |
|---|---|
| | Case No. 23-00217-ELG |
| | Chapter 7 |

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,

    *Defendants.*

Adv. Proc. No. 24-10023-ELG

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

## NOTICE OF HEARING AND OPPORTUNITY TO OBJECT TO PLAINTIFF'S RENEWED MOTION FOR REMAND AND TO SUSPEND DEFENDANTS' MOTIONS, HEARINGS, AND RELATED RESPONSE DEADLINES

NOTICE IS HEREBY GIVEN that the Plaintiffs, by undersigned counsel, have filed a

Renewed Motion for Remand and to Suspend the Defendants' Motions, Hearings, and Related

Response Deadlines ("Motions"). The Motions seek to remand this case back to D.C. Superior

Court and to suspend all related hearings for motions filed and noticed by the Defendants (ECF. Nos. 44 - 45).

<u>YOUR RIGHTS MAY BE AFFECTED.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one).

NOTICE OF DEADLINE TO OBJECT:  If you do not want the court to grant the Motions, or if you want the Court to consider your views on the Motions, then on or before **April 10, 2025,** you or your attorney must file with the Court a written objection to the Motions, together with the proposed order required by Local Bankruptcy Rule 9072-1.  The objection and proposed order must be filed with the Clerk of the Bankruptcy Court, E. Barrett Prettyman U.S. Courthouse, 3rd and Constitution Avenue, N.W., Washington, D.C. 20001.  The objection must contain a complete specification of the factual and legal grounds upon which it is based. You may append affidavits and documents in support of your objection.

If you mail, rather than deliver, your response to the Clerk of the Bankruptcy Court for filing, you must mail it early enough so that the court will receive it by the date stated above. You must also mail a copy of your objection to:

> James D. Sadowski, Esq.
> Greenstein DeLorme & Luchs, P.C.
> 801 17th Street, N.W., Suite 1000
> Washington, DC  20006
> *Counsel for Plaintiffs Developer RE1, LLC*
> *and 423 Kennedy St. Holdings, LLC*

NOTICE OF HEARING:  A hearing on the Motions has been schedule before the Honorable Elizabeth L. Gunn, United States Bankruptcy Judge, for April 16, 2025 at 10:00 a.m.  The hearing will be held in a hybrid in-person or Zoom for Government format. All participants may choose to appear either (a) in-person in Courtroom 1, United States Bankruptcy

Court for the District of Columbia, E. Barrett Prettyman Courthouse, 333 Constitution Ave. NW,

Washington, DC 20001 or (b) by video using Zoom for Government. All parties participating by

Zoom for Government before Judge Gunn should review and be familiar with the Virtual

Hearing expectations. For the Zoom meeting code, you may contact Courtroom Deputy Aimee

Mathewes by email at Aimee_Mathewes@dcb.uscourts.gov.

     If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motions and may enter an order granting the relief requested.

Parties in interest with questions may contact the undersigned.

               Respectfully submitted,

               GREENSTEIN DELORME & LUCHS, P.C.

Dated: March 25, 2025          /s/ James D. Sadowski
               James D. Sadowski, DC Bar. No. 446635
               Alexandria J. Smith, DC Bar. No. 1673542
               801 17th Street, N.W. - Suite 1000
               Washington, DC 20006
               Telephone: (202) 452-1400 ext. 5407
               Email: jds@gdllaw.com; ajs@gdllaw.com
               *Counsel for Plaintiffs Developer RE1, LLC and*
                 *423 Kennedy St. Holdings, LLC*

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 25th day of April, 2025, a true copy of this Notice of

Hearing and Opportunity to Object to Plaintiffs' Renewed Motion for Remand and to Suspend

the Defendants' Motions, Hearings, and Related Response Deadlines was served electronically

and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

               /s/ James D. Sadowski
               James D. Sadowski

The order below is hereby signed.

Signed: April 1 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT ORDER RESCHEDULING HEARINGS AND DEADLINES

1

Upon the consent of Developer RE1 LLC and 423 Kennedy St Holdings LLC (the "Plaintiffs") and DP Capital, LLC, WCP Fund I LLC, SF NU, LLC, Daniel Huertas, Russell Drazin  and JPK NewCo LLC (the "Defendants"), and in the interests of judicial economy, it is, by the United States Bankruptcy Court for the District of Columbia, hereby:

ORDERED, that the status conference currently scheduled in this matter be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44, with notice thereof being found at DE #45) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the hearing on the Plaintiffs' renewed motion for remand (as found at DE #46, with notice thereof being found at DE #47) be, and hereby is, CONTINUED to May 8, 2025 at 10:00 am prevailing eastern time; and it is further

ORDERED, that the deadline for the Plaintiffs to respond to the Defendants' motion to dismiss or, in the alternative, for summary judgment (as found at DE #44) be, and hereby is, EXTENDED to and through April 16, 2025.

2

We ask for this:

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

/s/ James D. Sadowski (signed w/ express permission)
James D. Sadowski, Esq.
DC Bar # 446635
Greenstein Delorme & Luchs P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC
and 423 Kennedy St. Holdings, LLC*

3

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | Adv. Case No. 24-10023-ELG |
| Plaintiff, | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR REMAND</u>

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## TABLE OF CONTENTS

I.     Introduction ........................................................................................................ 1

II.    Relevant Facts and Allegations ........................................................................ 2

      a.   Facts and Allegations Internal to the Consolidated Cases ...................... 3

      b.   Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case
         No. 23-10025-ELG (Bankr. D.D.C. 2023) ............................................. 4

      c.   Settlement of the Paret Adversary ....................................................... 4

      d.   Procedural Posture ............................................................................... 5

III.   Argument: The Motion Merits Denial .............................................................. 6

      a.   Mandatory Abstention is Inapplicable Since this is a Core Proceeding ............... 6

      b.   The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this
         Honorable Court's Expertise Militate Against Discretionary Abstention ............. 9

      c.   The Plaintiffs' Latest Amendment Introduces a Question of Federal
         Bankruptcy Law .................................................................................. 14

      d.   The Motion is Untimely ....................................................................... 15

   IV.   Conclusion .................................................................................................... 17

ii

## TABLE OF AUTHORITIES

**Cases**

*1015 Half St. Corp. v. Warehouse Concepts, Inc.*,
1999 U.S. Dist. LEXIS 19135 (D.D.C. Oct. 26, 1999)................................ 15

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*,
2008 U.S. Dist. LEXIS 50510 (D.D.C. July 2, 2008)................................ 10

*Colorado River Water Conservation Dist. v. U. S.*,
424 U.S. 800 (1976)................................................................ 9, 14

*Cty. Of Allegheny v. Frank Mashuda Co.*,
360 U.S. 185 (1959)................................................................ 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
463 U.S. 1 (1983)................................................................ 12, 15

*Geron v. Reifer (In re Eight-115 Assocs., LLC)*,
650 B.R. 43 (Bankr. S.D.N.Y. 2023)................................................ 10

*Holmstrom v. Peterson*,
492 F.3d 833 (7th Cir. 2007)...................................................... 16

*In re Aramid Ent. Fund, LLC*,
628 B.R. 584 (Bankr. S.D.N.Y. 2021).............................................. 10

*In re Blackman*,
55 B.R. 437 (Bankr. D.D.C. 1985) ................................................ 6

*In re First Va. Reinsurance, Ltd.*,
339 B.R. 366 (Bankr. E.D. Va. 2004).............................................. 9

*In re Freeway Foods of Greensboro, Inc.*,
449 B.R. 860 (Bankr. M.D.N.C. 2011)............................................. 9

*In re Lunt*,
2011 Bankr. LEXIS 1645 (Bankr. D. Kan. May 2, 2011) ............................ 13

*In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254 (D. Md. 1998)....................................................... 10

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995)....................................................... 7

*In re Wilson*,
2013 Bankr. LEXIS 3142 (Bankr. D.D.C. Aug. 5, 2013).............................. 6

iii

*Neufeld v. City of Baltimore*,
964 F.2d. 347 (4th Cir. 1992) ........................................................................ 9

*Sticka v. Rivera (In re Rivera)*,
2005 Bankr. LEXIS 3423 (B.A.P. 9th Cir. Sep. 14, 2005)........................... 11

*Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*,
92 F. Supp. 3d 469 (E.D. Va. 2015) ............................................................. 9

*Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC)*,
2018 Bankr. LEXIS 3955 (Bankr. D.D.C. Dec. 14, 2018) ........................... 6

**Statutes**

28 U.S.C. § 1334............................................................................................ 6, 7

28 U.S.C. § 1447............................................................................................ 15

**Rules**

Local Rule 9013-1.......................................................................................... 1

Local Rule 9027-1.......................................................................................... 2, 15

iv

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), and JPK NewCo LLC ("JPK") (collectively, the "Defendants" and each a "Defendant") by and through undersigned counsel, pursuant to Local Rule 9013-1(d), and in opposition to the Plaintiffs' Renewed Motion for Remand (the "Motion," as found at DE #46) filed by Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") state as follows:

## I.    Introduction

Approximately nine months after this case was first removed, the Plaintiffs again seek a remand. This time, the Motion does not cite any case law—whatsoever—and only once invokes a statute outside the filing's prefatory paragraph. The Motion is, thusly, something of an enigma, appearing to be premised, *en toto*, upon contentions that (i) JPK never should have been permitted to be a debtor in bankruptcy in the first instance; and (ii) an absence of merit underlying the claims being asserted against various Defendants by the bankruptcy estate of Charles Paret ("Mr. Paret," with the underlying estate being known as the "Estate" and Wendell Webster, the trustee thereof, being known as the "Trustee").

The first contention would be immaterial, since this adversary proceeding was not docketed within the JPK bankruptcy (and, indeed, was filed before JPK even entered bankruptcy), except the Plaintiffs have now added a claim for relief premised upon the JPK bankruptcy being part and parcel of an alleged fraudulent conveyance. In light of that added claim, though, it becomes ever-important to establish that JPK's bankruptcy was a legitimate filing, for a proper purpose, undertaken in a manner consistent with federal bankruptcy law. It is not bad faith for an entity to be created with cognizance of potential reorganizational actions and the Plaintiffs are—and always

1

have been—errant in asserting otherwise. Remanding this case, and asking the Superior Court to opine on questions of bankruptcy law, would be not only illogical but, indeed, contra to the well-established design of bankruptcy courts being the forums that opine on questions of bankruptcy law.

The second contention—which is more centrally the focus of this brief—is fundamentally errant. There is now a proposed settlement of the Trustee's claims against certain Defendants that, if approved, will cement the Estate's partnership interest in the promissory notes and deeds of trust underlying this litigation. A direct correlation exists between the outcome of this litigation and the recovery occasioned by the Estate, with the Estate's assets including a partnership interest in the very debt instruments being litigated *sub judice*.

Accordingly, the Motion merits denial for three reasons. First, this case is a core proceeding in connection with Mr. Paret's bankruptcy and, as such, this case is properly heard in this Honorable Court. Second, by pleading a new cause of action that turns on resolution of a question of bankruptcy law, the Plaintiffs have introduced a federal question best resolved by this Honorable Court. And, third, the Motion is untimely in nature, having been filed after the thirty day deadline established by Local Rule 9027-1(b) and Title 28 of the United States Code. However, insofar as this Honorable Court did deny a prior remand motion without prejudice, DE #35, the Defendants will focus this brief on the former two issues, going to the substantive—and not procedural—infirmity of the current Motion.

II.     **Relevant Facts and Allegations**

Insofar as this Honorable Court is, by now, no doubt quite familiar with the facts of these consolidated cases, the following overview is intentionally brief in nature:

2

a. **Facts and Allegations Internal to the Consolidated Cases**

1.      On December 23, 2021, DRL borrowed $4,103,000.00 from WCP, as memorialized by two promissory notes in the respective sums of $3,579,000.00 and $524,000.00 (the "DRL Notes"). *See* DRL Complaint, DE #1-2, at pp. 52-59, 90-97.

2.      The DRL Notes are both secured by deeds of trust (the "DRL Deeds of Trust") on the real property commonly known as 5501-5505 1st Street, NW, Washington, DC 20011 (the "DRL Property"). *Id.* at pp. 26-51, 61-89.

3.      Similarly, on March 31, 2022, 423 Kennedy borrowed $9,945,693.00 from WCP, as memorialized by two promissory notes in the respective sums of $8,689,693.00 and $1,256,000.00 (the "423 Kennedy Notes"). *See* 423 Complaint, DE #1-2, at pp. 722-730, 759-767.

4.      The 423 Kennedy Notes are secured by deeds of trust (the "423 Kennedy Deeds of Trust") on the entity's eponymous property (the "423 Kennedy Property"). *Id.* at pp. 696-720, 732-657.

5.      Both DRL and 423 Kennedy repeatedly defaulted under their respective notes and deeds of trust by, *inter alia*, allowing senior liens to accrue on the entities' properties, failing to make interest payments in a timely manner, and failing to pay any of the four—let alone all four—notes at maturity. *See* Notice of Removal, DE #1, at ¶¶ 5-6.

6.      DRL and 423 Kennedy do not believe their various breaches were sufficiently severe to warrant defaults being declared and foreclosures being scheduled, so they respectively brought suit to enjoin those foreclosures, alleging the declared defaults to have amounted to tortious interference with their respective business relations. *See* DRL Complaint, DE #1-2, at pp. 1-24; 423 Kennedy Complaint, DE #1-2, at pp. 663-693.

3

**b. Facts and Allegations Correlative to *Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023)**

1.     Mr. Paret is a Chapter 7 debtor in this Honorable Court. *See In re Paret*, Case No. 23-217-ELG (Bankr. D.D.C. 2023) (the "Paret Main Case").

2.     In connection with the administration of Mr. Paret's bankruptcy estate, the Trustee has filed an adversary complaint against DPCL, WCP, and Mr. Huertas. *See Webster v. Huertas, et al.*, Case No. 23-10025-ELG (Bankr. D.D.C. 2023) (the "Paret Adversary") at DE # #39-1 (the "Webster Complaint").

3.     The Webster Complaint alleges the loans made by WCP, to DRL and 423 Kennedy, to be "involved" in a partnership between Messrs. Huertas and Paret. *Id.* at ¶ 45.

4.      The Webster Complaint further alleges that Mr. Huertas "used" DRL "to purchase foreclosed properties" belonging to the putative partnership between Messrs. Huertas and Paret. *Id.* at ¶ 46.

5.     The Webster Complaint asks this Honorable Court to impose a constructive trust on the assets of the putative partnership (which would seemingly include either the DRL Notes and 423 Kennedy Notes or, based upon how one construes the Webster Complaint, potentially the DRL Property and the 423 Kennedy Property). *Id.* at pp. 17-20.

**c. Settlement of the Paret Adversary**

1.     In March 2025, the Trustee entered into a settlement agreement (the "Settlement Agreement"), with Mr. Huertas, WCP and DPCL—subject to judicial approval—to resolve the Paret Adversary. *See* Paret Main Case at DE #158.

2.     Pursuant to the Settlement Agreement, Mr. Huertas, WCP and DPCL will, *inter alia*, (i) cause a modest sum of money to be paid to the Trustee; (ii) recognize Mr. Paret's Estate as "having a limited partnership interest," *id.* at ¶ 10(b), in the DRL Notes and 423 Kennedy Notes;

4

(iii) use the proceeds of the DRL Notes and 423 Kennedy Notes to pay certain additional monies into Mr. Paret's estate, *id.* at ¶ 10(c); and (iv) owe one half of all "net proceeds" derived from the DRL Notes and the 423 Kennedy Notes, to the Trustee (with the computation of "net proceeds" depending on the ultimate performance of the DRL Notes and 423 Kennedy Notes), Paret Main Case at DE #158-1, § 3(c).

3.      In light of the Settlement Agreement, Mr. Paret's Estate is (i) recognized as a limited partner in connection with the promissory notes at issue in this litigation; and (ii) has a vested pecuniary interest in the outcome of this litigation. *Id.* at § 3.

### d.  Procedural Posture

1.      These consolidated cases were originally removed on July 4, 2024. *See* DE #1.

2.      Since removal, this Honorable Court has (i) held a hearing on the original remand motion, DE #23; (ii) denied the original remand motion, DE #35; (iii) held a hearing on Mr. Drazin's motion for summary judgment, taking the same under advisement, DE #34; (iv) held a hearing on SNL's motion to dismiss, *id.*; (v) held a hearing on the Plaintiff's motion to dismiss a counterclaim, *id.*; (vi) allowed additional time for the Plaintiffs to file an amended complaint, DE #38; (vii) seen an amended, consolidated pleading filed by the Plaintiffs, DE #40; (viii) issued a summons to a newly-added defendant, DE #42; and (ix) seen a motion to dismiss or, in the alternative, for summary judgment filed by all defendants except Shaheen Sariri ("Mr. Sariri"),[1] DE #44.

3.      The Plaintiffs' third amended complaint, docketed after this Honorable Court dismissed the prior iteration with leave to amend, adds a cause of action for fraudulent conveyance,

---

[1] For want of ambiguity, Mr. Sariri is not represented by undersigned counsel (at least as of present) and, despite being a defendant in this litigation, is not one of the defined "Defendants" for purposes of this brief.

premised upon the JPK bankruptcy. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261.

4.      The crux of the newly-added cause of action is that transferring assets to JPK, with knowledge JPK may then seek to reorganize in chapter 11, amount to a tortious act, since the Plaintiffs assert it is *per se* illegal for an entity to be created—and then receive assets—whilst cognizant that a reorganization may soon ensue. *Id.*

### III.    Argument: The Motion Merits Denial

Since the Motion does not engage any statutory analysis or cite any case law, the grounds upon which a remand is being sought are slightly unclear. However, since the Plaintiffs do invoke Sections 1334(c) and 1452(b) in the prefatory clause of the Motion, the Defendants will assume the request is premised upon some combination of (i) equitable abstention; and/or (ii) mandatory abstention. The facts of this case support neither.

### a.    Mandatory Abstention is Inapplicable Since this is a Core Proceeding

Mandatory abstention is inapplicable to cases that encompass a core bankruptcy proceeding. Insofar as the litigation *sub judice* is objectively core in the prism of Mr. Paret's bankruptcy, mandatory abstention is accordingly inappropriate.

As observed by this Honorable Court, "[u]nder 28 U.S.C. § 1334(c)(2) mandatory abstention does not apply if a proceeding is a core proceeding." *Welch Family Ltd. P'ship Four v. Brown (In re A V. Car & Home, LLC),* 2018 Bankr. LEXIS 3955, at *2-3 (Bankr. D.D.C. Dec. 14, 2018). *See also In re Blackman,* 55 B.R. 437, 445 (Bankr. D.D.C. 1985) (". . . mandatory abstention applies only in non-core proceedings. . ."); *In re Wilson,* 2013 Bankr. LEXIS 3142, at *5-7 n.4 (Bankr. D.D.C. Aug. 5, 2013) ("Mandatory abstention under 28 U.S.C. § 1334(c)(2) with respect to such a proceeding would be inapplicable because mandatory abstention applies only to non-

6

core, related to proceedings.") (citing *In re S.G. Phillips Constructors, Inc.*, <mark>45 F.3d 702, 708</mark> (2d

Cir. 1995)).

The inapplicability of mandatory abstention to core proceedings is rooted in the language

of the mandatory abstention statute itself:

> Upon timely motion of a party in a proceeding based upon a State law claim or
> State law cause of action, related to a case under title 11 but not arising under title
> 11 or arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

<mark>28 U.S.C. § 1334(c)(2).</mark>

There are thusly two conjunctive elements to mandatory abstention: (i) the matter must not

be a core proceeding; and (ii) the case must also be devoid of any independent basis to have been

commenced in a "court of the United States." As discussed in detail *infra*, these are core

proceedings, so the second prong need not be reached. (To whatever extent the second prong is to

be considered, the Defendants would note the District of Columbia Superior Court to be a "court

of the United States," but the Defendants appreciate such consideration is one unlikely to be

instantly dispositive.)

The Trustee has now been asserting, for nearly a year, that Mr. Paret owns an interest in

the promissory notes at issue in the instant litigation. And, under the Settlement Agreement, Mr.

Paret's Estate will be recognized as holding a limited partnership interest in those promissory notes

and the proceeds thereof. The Plaintiffs, in turn, are seeking cancellation of the subject debt

instruments and permanent injunctions prohibiting foreclosure. The Defendants, by contrast, are

seeking to proceed with foreclosures so both properties may be sold at public auction to raise

money to retire the promissory notes.

7

Stated otherwise: under the terms of the Settlement Agreement, the Trustee and Estate will hold a direct pecuniary interest in the outcome of this litigation. If the Defendants prevail, monies will flow into Mr. Paret's Estate. If the Plaintiffs prevail, the inflow of monies into Mr. Paret's Estate will be curtailed. The better the outcome for the Defendants, the better the outcome for Mr. Paret's Estate.

Title 28 of the United States Code provides, familiarly, for an expressly non-exhaustive list of "core proceedings," that includes, *inter alia*:

> (K) determinations of the validity, extent, or priority of liens. . .

> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. . .

28 U.S.C. § 157(b)(2).

These proceedings are plainly core under Section 157(b)(2)(K). The very heart of these consolidated cases is a dispute as to the enforceability, *vel non*, of four liens: the two DRL Deeds of Trust and the two 423 Kennedy Deeds of trust. The Defendants assert those to be valid, binding liens, ripe for foreclosure. The Plaintiffs assert those liens to be subject to equitable cancellation and/or voiding. The liens all secure promissory notes in which Mr. Paret's Estate is to hold a limited partnership interest under the Settlement Agreement. And this is accordingly a proceeding that will "determine[e] … the validity" of liens in which the Estate holds an interest.

Analysis under Section 157(b)(2)(O) invites the same result. The Defendants are seeking to collect upon promissory notes in which the Estate will have a limited partnership interest. If the Plaintiffs succeed, the assets of Mr. Paret's Estate will be diminished proportionately. If the Defendants succeed, the assets of Mr. Paret's Estate stand to grow proportionately. The promissory notes hanging in the balance are, under the Settlement Agreement, partially assets of the Estate.

8

And it is difficult to conceive of a proceeding more core than one that seeks to cancel, diminish, and enjoin collection of a bankruptcy estate's assets.

### b. The Centrality of this Case to Mr. Paret's Bankruptcy Estate and this Honorable Court's Topical Expertise Militate Against Discretionary Abstention

Discretionary abstention is also improper in these consolidated cases. As set forth above, there is an incredibly intimate nexus between this litigation and Mr. Paret's Estate. Equally, the issues raised *sub judice*—questions of the impact, *vel non*, of defaults under commercial loan documents, as well as the permissibility of pre-structured bankruptcy filings—are ones upon which this Honorable Court has expertise. The outcome of this litigation will materially inform the composition of the Estate being administered by the Trustee. It is not merely sensible but, indeed, legally proper for this litigation to remain in this venue.

As a starting point, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 813 (1976). *See also Va. ex rel. Integra Rec LLC v. Countrywide Sec. Corp.*, 92 F. Supp. 3d 469, 475 (E.D. Va. 2015) ("[A] federal court must accept the jurisdiction granted it, and only in rare occasions is discretionary abstention warranted.") (quoting *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr. M.D.N.C. 2011)).

As observed by Judge Tice, "[t]he general rule, however, is that a federal court must accept the jurisdiction granted it, and only on very rare occasions is discretionary abstention warranted." *In re First Va. Reinsurance, Ltd.*, 339 B.R. 366, 373 (Bankr. E.D. Va. 2004) (citing *Colorado River*, 424 U.S. at 817; *Neufeld v. City of Baltimore*, 964 F.2d. 347, 349 (4th Cir. 1992)). *See also Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959) ("The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate

a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.").

In seeking this rare and extraordinary remedy, the burden is on the party seeking discretionary abstention to set forth why such is appropriate. *See, e.g.*, *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 50 (Bankr. S.D.N.Y. 2023) ("The movant bears the burden of establishing that permissive abstention is warranted.") (citing *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021)).

The precedent of the United States District Court for the District of Columbia instructs that seven factors are to be considered when weighing whether a movant has met its burden on a motion seeking discretionary abstention:

> (1) "the effect on the efficient administration of the bankruptcy estate"; (2) "the extent to which issues of state law predominate"; (3) "the difficulty or unsettled nature of applicable state law"; (4) "comity"; (5) "the degree of relatedness or remoteness to the proceeding in the main bankruptcy court"; (6) "the existence of the right to a jury trial"; and (7) "prejudice to the involuntarily removed defendants."

*Capitol Hill Grp. v. Pillsbury Winthrop Shaw Pittmn, LLP*, 2008 U.S. Dist. LEXIS 50510, at *14 (D.D.C. July 2, 2008) (quoting *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998)).

Taking the first factor, this litigation will have a direct impact on the Estate and needs to be concluded so the Estate may be fully administered. The Trustee will receive funds from the liquidation of the DRL Notes and the 423 Kennedy Notes. If those notes are cancelled, the Estate will be accordingly hampered. If those notes are collected in full, the Estate stands to make a great

deal of money. And so long as collection of those notes is enjoined,[2] the Estate stands in a state of paralysis.

*Vis a vis* the second question, this is not a case where state law issues predominate over bankruptcy issues. And some attention is properly paid to the criterion being "bankruptcy issues" and not a more narrow consideration of "federal causes of action." As noted by the Bankruptcy Appellate Panel of the Ninth Circuit, "Congress gave the bankruptcy court exclusive jurisdiction over property of the estate, and the bankruptcy court has unique expertise on debtor-creditor matters." *Sticka v. Rivera (In re Rivera)*, 2005 Bankr. LEXIS 3423, at *29 (B.A.P. 9th Cir. Sep. 14, 2005). And such is particularly true in the prism of this case and this particular court: there is likely no court—state or federal—in the United States more expertly familiar with the adjustment of the creditor/debtor relationship, in the context of single asset real estate entities and promissory notes secured by such entities' titular assets, than this Honorable Court.

It also bears notation that—as discussed *infra*—the Third Amended Complaint introduces a substantial federal question into these proceedings. The Plaintiffs are contending that an entity may be held liable for a fraudulent conveyance if found to have siloed assets into a new entity with cognizance of a potential bankruptcy filing. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. If accepted, this would render every so-called "Texas two step" a tortious act for which civil liability may be sought. And consideration of this cause of action will, no doubt, require consideration of the law governing good faith bankruptcy filings. To be sure, not only is this cause of action not one truly subsumed within state law but, too, this cause of action is one that would render this case independently removable as now being inclusive of a federal question. *See, e.g.*,

---

[2] Insofar as a motion to dismiss was granted by this Honorable Court, DE #31, but leave to amend was granted, it is unclear if the pre-removal injunction survived dismissal and repleading. The Defendants do not herein take any position as to whether or not the injunction remains in effect.

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, <mark>463 U.S. 1, 13</mark> (1983) ("Even though state law creates appellant's causes of action, its case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

In assessing the third criterion, there are no difficult or unsettled questions of state law at issue in these consolidated cases. Yes, the Plaintiffs are trying to create new law—in direct contravention of well-settled law—that would subject commercial notes and deeds of trust to the standards of consumer loans. And, yes, the Plaintiffs are trying to overturn decades-old precedent instructing that trustees under deeds of trust have solely-ministerial duties. But such does not render the questions *sub judice* "difficult" or "unsettled;" such only means the Plaintiffs are endeavoring to confront a perilous fact pattern through a series of challenges to well-settled law.

The fourth question is one of "comity," which militates in favor of denying the Motion. As noted *passim*, this litigation is intimately related to a pending bankruptcy case and now involves a substantive question of bankruptcy law There is no cognizable notion of comity that suggests cases tied to bankruptcy proceedings, involving questions of bankruptcy law, ought to be returned to state court; to the contrary, it is the longstanding practice of this Honorable Court—and sister bankruptcy courts—to retain jurisdiction over core proceedings.

On the fifth question, this case is closely related to Mr. Paret's main bankruptcy case. Mr. Paret has premised much of his case upon the notion that he has partnership rights in various assets of WCP. The Trustee, in turn, has followed on these contentions through an adversary proceeding. The Settlement Agreement likely represents the single largest opportunity for Mr. Paret's Estate

to yield funds for distribution to creditors. And the success, *vel non*, of the Plaintiffs in this case will accordingly impact—rather profoundly—the scope of any return to creditors of Mr. Paret.[3]

The sixth consideration is the existence of a right to trial by jury. There can be no trial by jury in these consolidated cases for the simple reason that the Plaintiffs each waived their right to a trial by jury "fully to the extent that any such right shall now or hereafter exist." *See* Promissory Note, DE #1-2, at p. 56, § 7.[4]

The final consideration is one of prejudice to the "involuntarily removed defendants." Putting aside that it is the Defendants who removed these consolidated cases (and assuming prejudice to plaintiffs would accordingly stand in the place of this criterion), there is plainly no prejudice. This Honorable Court is located two blocks from the Superior Court. Remote appearances are as readily managed in this Honorable Court as the Superior Court. The docket of this Honorable Court is actually notably more nimble than that of the Superior Court, allowing for the prompter scheduling of hearings. And, as noted by the *Sticka* Court, bankruptcy courts enjoy preeminent expertise on the topic of the debtor/creditor relationship; this Honorable Court is exceedingly well qualified to adjudicate the various debtor/creditor issues that permeate these consolidated cases.

In assessing the foregoing factors, the existence of a core matter "strongly mitigates against" granting abstention. *In re Lunt*, 2011 Bankr. LEXIS 1645, at *6 (Bankr. D. Kan. May 2, 2011). And, of course, abstention remains a rare and extraordinary remedy, of which the Supreme

---

[3] It is, of course, entirely possible Mr. Paret is concealing other assets that may be discovered by the Trustee. As established at various hearings in the main case, Mr. Paret appears to be unusually apprehensive to making full disclosures and offering information in a candid, forthright and fulsome manner.

[4] All four promissory notes—both DRL Notes and both 423 Kennedy Notes—contain an identical provision.

13

Court has cautioned that utilization should be "the exception, not the rule." *Colorado River*, <mark>424 U.S. at 813</mark>. There is simply no basis to make such an exception in these consolidated cases, where every factor militates against abstention and where the administration of the Estate hangs in the proverbial balance. This Honorable Court has expertise in the issues presented in this litigation, has a docket that can ably accommodate this litigation, and has jurisdiction over this litigation.

### c. The Plaintiffs' Latest Amendment Introduces a Question of Federal Bankruptcy Law

Remand is improper for all of the reasons set forth *supra*. Yet even if, *arguendo*, remand might otherwise be within the realm of discretion, the Plaintiffs have essentially foreclosed any such argument through their election to amend their pleading and sue the Defendants on the theory that the JPK bankruptcy was the *coup de grace* of a fraudulent conveyance. This is now a case that, as pleaded, turns on a substantive question of bankruptcy law. And this is, accordingly, a case that most certainly ought not be remanded to the Superior Court.

There is a circuitous infirmity to the Motion when juxtaposed to the latest pleading of the Plaintiffs: the Plaintiffs are now suing the Defendants, on the theory that the JPK bankruptcy was the byproduct of a fraudulent conveyance, whilst simultaneously urging this Honorable Court to remand (or abstain from hearing) the instant litigation. The Plaintiffs are, at once, now advancing a claim for relief premised upon an allegedly improper utilization of bankruptcy law *and* protesting that such claim for relief should not be adjudicated by a bankruptcy court. Suffice it to posit, this is not a cogent contention, and this new claim for relief only affords added rationale to deny the Motion.

As noted above, the Supreme Court has made clear that "[e]ven though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a

14

substantial question of federal law in dispute between the parties." *Constr. Laborers Vacation Tr.*,
463 U.S. at 13.

Here, the Plaintiffs are suing the Defendants on the theory that the transfer of promissory
notes and deeds of trust, to JPK, with cognizance that a bankruptcy may follow, amounts to a
fraudulent conveyance. *See* Third Amended Complaint, DE #40, at ¶¶ 200-215; 257-261. The
Defendants, if they are not successful on a pending motion to dismiss or for summary judgment,
DE #44, will be compelled to defend this cause of action by noting the propriety of a bankruptcy-
cognizant transfer. And this Honorable Court, in turn, will need to weigh in on the legality of such
a bankruptcy-cognizant pre-petition asset transfer.

To be sure, adjudication of this newly-added cause of action will turn on "resolution of a
substantial question of federal law," *Constr. Laborers Vacation Tr.*, 463 U.S. at 13. And this case
is accordingly one that would now be independently removable as containing a federal question
squarely within the expertise of this Honorable Court.

### d. The Motion is Untimely

Finally, the Defendants additionally note the Motion to be untimely in nature. Under the
rules governing practice in this Honorable Court, a motion seeking remand must be filed within
30 days of the date of removal. Local Rule 9027-1(b). And the deadline is not merely rule-based
but, too, statutory in nature. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis
of any defect other than lack of subject matter jurisdiction must be made within 30 days after the
filing of the notice of removal under section 1446(a).") *See also 1015 Half St. Corp. v. Warehouse
Concepts, Inc.*, 1999 U.S. Dist. LEXIS 19135, at *12 (D.D.C. Oct. 26, 1999) (noting a motion to
remand on any grounds other than an absence of subject matter jurisdiction must be filed within
30 days of removal).

15

While the Defendants do appreciate that the original remand motion was denied without prejudice, and that such denial may be construed as affording some relief from the temporal dictates of the Local Rules (or even Title 28), the Defendants also note that the tight timeline is designed to avoid the belated remand of cases that have long-since departed another court's docket. *See, e.g., Holmstrom v. Peterson*, 492 F.3d 833, 837 (7th Cir. 2007) (noting the 30-day statutory deadline is "designed to ensure that all remand motions based on defects other than lack of subject matter jurisdiction were made within 30 days to ensure judicial efficiency.")

Where, as here, a case has been pending in this Honorable Court for nearly ten months, and a litany of hearings have been held and an accompanying litany of orders having been issued, there is a synergy in keeping a case in this Honorable Court. Indeed, the operative pleading in this case— an amended, consolidated complaint—was filed *after* removal, in this Honorable Court. That operative pleading adds two new defendants, one of whom—Mr. Sariri—has been added for reasons solely correlative to his interactions with this Honorable Court. And this Honorable Court has, by now, held far more hearings on this case than did the court from which it was removed nearly 10 months ago.

Stated otherwise: Title 28 of the United States Code is designed to ensure cases not be hampered by delayed remand efforts, which unavoidably strain "judicial efficiency." *Holmstrom*, 492 F.3d at 837. Such is particularly true where, as there, this Honorable Court has gleaned a notable "familiarity" with the instant case. Motion, DE #46, at ¶ 1. And to the extent there exist equitable considerations in analysis of the Plaintiffs' second effort to secure a remand, such accordingly militate in favor of denying the Motion.

16

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 12, 2025        By:    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The VerStandig Law Firm, LLC
                                    9812 Falls Road, #114-160
                                    Potomac, Maryland 20854
                                    Phone: (301) 444-4600
                                    mac@mbvesq.com
                                    *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of April, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

    CHARLES PAXTON PARET,

    *Debtor.*

Case No. 23-00217-ELG

Chapter 7

DEVELOPER RE1 LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,

    *Defendants.*

Adv. Pro. No. 24-10023-ELG

423 KENNEDY ST HOLDINGS LLC,

    *Plaintiff,*

v.

DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,

    *Defendants.*

## CONSENT MOTION TO EXTEND DEADLINES

The Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings LLC, and the initial Defendants in these consolidated cases jointly move this Court to briefly extend two deadlines related to two pending motions. In support of their consent request, the movants represent to the Court as follows:

1.    This case involves two consolidated cases that were removed from D.C. Superior Court on July 4, 2024.

8161\0002\4898-5854-1623.v1

2.        Pending before the Court are a Motion to Dismiss, or, in the Alternative, for

Summary Judgment (ECF # 44) ("Motion to Dismiss") and a Renewed Motion for Remand (ECF

# 46).  These motions are currently set for a hearing on May 8, 2025 at 10:00 a.m.

3.        The Defendants that filed the Motion to Dismiss[1] requested additional time (until

April 12, 2025) to respond to the Renewed Motion for Remand, which request was consented to

by the Plaintiffs.

4.        The Plaintiffs requested additional time (until April 18, 2025) to respond to the

Motion to Dismiss, which request was consented to by the Defendants that filed the Motion to

Dismiss.

5.        No party will be prejudiced by these brief extensions of time.

For cause shown, the movants jointly request that the Court extend the deadlines as noted

in paragraphs 3 and 4.  A proposed consent order is attached.

                                                Respectfully submitted,

                                                GREENSTEIN DELORME & LUCHS, P.C.

Dated:  April 16, 2025                 /s/ James D. Sadowski
                                                James D. Sadowski (DC Bar #446635)
                                                Alexandria J. Smith (DC Bar #1781067)
                                                801 17th Street, N.W., Suite 1000
                                                Washington, D.C.  20006
                                                Phone: (202) 452-1400; Fax: (202) 452-1410
                                                Emails:   jds@gdllaw.com; ajs@gdllaw.com
                                                *Counsel for Developer RE1 LLC and*
                                                *423 Kennedy St Holdings LLC*

---

[1]        The defendants that filed the Motion to Dismiss include all defendants named in the
Third Amended Complaint except Defendant Shaheen Shariri.

2

<u>C</u>ERTIFICATE  OF  <u>S</u>ERVICE

I <u>H</u>EREBY <u>C</u>ERTIFY that on this 16th day of April, 2025, a true copy of the foregoing

Consent Motion to Extend Deadlines was filed electronically and a Notice of Electronic filing

should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

8161\0002\4898-5854-1623.v1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Case No. 23-00217-ELG |
| CHARLES PAXTON PARET | Chapter 7 |
| *Debtor.* | |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | Adv. Pro. No. 24-10023-ELG |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC, | |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC, | |
| *Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND DEADLINES

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to

Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423

Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is ORDERED that:

1.      The Motion to Extend is GRANTED; and

2.      The deadline to respond to the Renewed Motion for Remand (ECF # 46) is

extended, *nunc pro tunc,* to April 12, 2025; and

3.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file

an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.

[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423
Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen
Shariri)*

3

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

## END OF ORDER

The order below is hereby signed.

Signed: April 17 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## CONSENT ORDER GRANTING MOTION TO EXTEND DEADLINES

The Court has before it the Consent Motion to Extend Deadlines (the "Motion to

Extend", ECF # 52) filed on April 16, 2025 by the Plaintiffs, Developer RE1, LLC and 423

Kennedy St Holdings, LLC, and all Defendants (except Shaeen Shariri) in this case.

For cause shown, it is ORDERED that:

1.      The Motion to Extend is GRANTED; and

2.      The deadline to respond to the Renewed Motion for Remand (ECF # 46) is

extended, *nunc pro tunc,* to April 12, 2025; and

3.      The Deadline for Developer RE1, LLC and 423 Kennedy St Holdings, LLC to file

an opposition to the Moton to Dismiss (ECF # 44) is extended to April 18, 2025.


[Signed and dated above]

2

I ask for this:

/s/ James D. Sadowski
James D. Sadowski
DC Bar. No. 446635
jds@gdllaw.com
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: 202-452-1400, ext. 5407
Fax:  202-452-1410
*Counsel for Developer RE1, LLC and 423*
*Kennedy St Holdings, LLC*


Seen and Agreed:

/s/ Maurice "Mac" VerStandig, Esq.
Maurice "Mac" VerStandig, Esq.
DC Bar. No. MD18071
mac@mbvesq.com
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
Phone: (301) 444-4600
Cell: (240) 351-6442
Facsimile: (301) 444-4600
*Counsel for All Defendants (Except Shaheen*
*Shariri)*

8161\0002\4904-5105-3367.v1

Copies to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854
mac@mbvesq.com

James D. Sadowski, Esq.
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006
jds@gdllaw.com

**END OF ORDER**

8161\0002\4904-5105-3367.v1

# U.S. Bankruptcy Court
# United States Bankruptcy Court for the District of Columbia (Washington, D.C.)
## Adversary Proceeding #: 24–10023–ELG

*Assigned to:* Bankruptcy Judge Elizabeth L. Gunn       *Date Filed:* 07/04/24
*Lead BK Case:* 23–00217
*Lead BK Title:* Charles Paxton Paret
*Lead BK Chapter:* 7
*Demand:* $3000000
    *Nature[s] of Suit:*    01    Determination of removed claim or cause
                         21    Validity, priority or extent of lien or other interest
                              in property
                         91    Declaratory judgment
                         72    Injunctive relief – other

### Plaintiff
————————————————
**Developer RE1 LLC**                represented by    **James D. Sadowski**
1629 K Street NW                               Greenstein DeLorme & Luchs, PC
Suite 300                                   801 17th Street, N.W.
Washington, DC 20006                       Suite 1000
                                               Washington DC, DC 20006
                                                 202–452–1400
                                                 Fax : 202–452–1410
                                                 Email: jds@gdllaw.com
                                                 *LEAD ATTORNEY*

                                                 **Alexandria Jean Smith**
                                                 Greenstein DeLorme and Luchs PC
                                                 801 17th Street NW
                                                 Suite 1000
                                                 Washington, DC 20006
                                                 202–452–1400
                                                 Email: ajs@gdllaw.com
                                                 *LEAD ATTORNEY*

### Plaintiff
————————————————
**423 Kennedy St Holdings LLC**         represented by    **James D. Sadowski**
1629 K Street, NW                                (See above for address)
Suite 300                                     *LEAD ATTORNEY*
Washington, DC 20006

                                                 **Alexandria Jean Smith**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*

V.

### Defendant
————————————————
**WCP Fund I LLC**                     represented by    **Maurice Belmont VerStandig**
c/o Maurice B. VertSandig, Esq.                     The VerStandig Law Firm, LLC
The VerStandig Law Firm, LLC                   9812 Falls Road
1452 W. Horizon Ridge Pkwy                    #114–160
#665                                             Potomac, MD 20854

Henderson, NV 89012
301–444–4600

301–444–4600
Email: mac@mbvesq.com

*Defendant*

———————————————
**DP Capital LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*

———————————————
**SF NU, LLC**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*

———————————————
**Daniel Huertas**
c/o The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy
#665
Henderson, NV 89012

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*

———————————————
**Russell Drazin**
Pardo Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*

———————————————
**JPK NewCo LLC**
8401 Greensboro Drive
Suite 960
McLean, VA 22102

represented by **Maurice Belmont VerStandig**
(See above for address)

*Defendant*

———————————————
**Shaheen Sairi**

represented by **Shaheen Sairi**
PRO SE

| Filing Date | # | Docket Text |
|---|---|---|
| 07/04/2024 | 1 | Adversary case 24–10023. Notice of Removal by Developer RE1 LLC, 423 Kennedy St Holdings LLC. Fee Amount $350 (Attachments: # 1 Exhibit A – Meeting of Creditors Transcript # 2 Exhibit B – All Pleading |

| | | | |
|---|---|---|---|
| | | | and Process, Together with All Docket Entries) (01 (Determination of removed claim or cause),21 (Validity, priority or extent of lien or other interest in property)) (VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 2 | Receipt of Notice of Removal( 24−10023−ELG) [cmp,ntcrmvl] ( 350.00) Filing Fee. Receipt numberA2758216. Fee Amount 350.00 (VerStandig, Maurice) (re:Doc# 1) (U.S. Treasury) (Entered: 07/04/2024) |
| 07/04/2024 | | 3 | Notice of Hearing *on Motion of SF NU, LLC to Dismiss Second Amended Complaint* Filed by SF NU, LLC (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Dismiss # 2 Exhibit B − Opposition to Motion to Dismiss # 3 Exhibit C − Second Amended Complaint)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/04/2024 | | 4 | Notice of Hearing *on Motion of Daniel Huertas to Quash Subpoena* Filed by Daniel Huertas (Re: Related Document(s) #:1 Notice of Removal.) Hearing scheduled for 7/23/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 1,. (Attachments: # 1 Exhibit A − Motion to Quash Subpoena # 2 Exhibit B − Subpoena)(VerStandig, Maurice) (Entered: 07/04/2024) |
| 07/06/2024 | | 5 | Motion to Extend Time Period − *to Extend Scheduling Order*. Filed by SF NU, LLC. Objections due by 7/22/2024.Hearing scheduled for 7/23/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/06/2024 | | 6 | Exhibit *A − Second Amended Complaint* Filed by SF NU, LLC. (Re: Related Document(s) #:5 Motion to Extend/Shorten Time.) (Attachments: # 1 Exhibit B − Motion to Dismiss)(VerStandig, Maurice) (Entered: 07/06/2024) |
| 07/07/2024 | | 7 | Motion For Summary Judgment Filed by Russell Drazin (Attachments: # 1 Exhibit A − First Developer RE1 Promissory Note # 2 Exhibit B − Second Developer RE1 Promissory Note # 3 Exhibit C − First Developer RE1 Deed of Trust # 4 Exhibit D − Second Developer RE1 Deed of Trust # 5 Exhibit E − First 423 Kennedy Street Promissory Note # 6 Exhibit F − Second 423 Kennedy Street Promissory Note # 7 Exhibit G − First 423 Kennedy Street Deed of Trust # 8 Exhibit H − Second 423 Kennedy Street Deed of Trust # 9 Exhibit I − Developer RE1 Notice of Default # 10 Exhibit J − 423 Kennedy Street Notice of Default # 11 Exhibit K − Developer RE1 Affidavit of Non−Residential Mortgage Foreclosure # 12 Exhibit L − 423 Kennedy Street Affidavit of Non−Residential Mortgage Foreclosure # 13 Exhibit M − Developer RE1 Notice of Foreclosure # 14 Exhibit N − 423 Kennedy Street Notice of Foreclosure # 15 Exhibit O − Affidavit of Daniel Huertas # 16 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/07/2024 | | 8 | Notice of Hearing Filed by Russell Drazin (Re: Related Document(s) #:7 Motion for Summary Judgment.) Hearing scheduled for 7/23/2024 at 10:00 AM for 7,. (VerStandig, Maurice) (Entered: 07/07/2024) |
| 07/08/2024 | | 9 | Motion for Protective Order Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, WCP Fund I LLC. Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 |

| | | | |
|---|---|---|---|
| | | | Exhibit A – Notice of Deposition # 2 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 07/08/2024) |
| 07/09/2024 | | 10 | Notice to Party Filing Deficient Pleading(s)/Document(s). (RE: related document(s)1 Notice of Removal) Deficient Pleading(s)/Document(s) due by 7/23/2024. (Bleskoski, Megan) (Entered: 07/09/2024) |
| 07/11/2024 | | 11 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)10 Notice to Party Filing Deficient Pleading(s)/Document(s)) No. of Notices: 2. Notice Date 07/11/2024. (Admin.) (Entered: 07/12/2024) |
| 07/17/2024 | | 12 | Statement of No Consent to Final Orders or Judgment Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) (Attachments: # 1 Exhibit July 3, 2024 email and copies of deposition notices) (Sadowski, James) Modified on 7/22/2024 MODIFIED TO EDIT TEXT (Mathewes, Aimee). (Entered: 07/17/2024) |
| 07/21/2024 | | 13 | Motion for Remand *and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines*, Motion Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal.) Objections due by 8/21/2024.Hearing scheduled for 8/28/2024 at 10:00 AM at Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Attachments: # 1 Exhibit Exhibit 1 – Docket Sheet for 2022–CAB–005935 # 2 Exhibit Exhibit 2 – Docket Sheet for 2023–CAB–004260) (Sadowski, James) (Entered: 07/21/2024) |
| 07/21/2024 | | 14 | Notice of Hearing *on Plaintiffs' Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Hearing scheduled for 8/28/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code for 8 and for 4 and for 13 and for 1 and for 12 and for 5 and for 9 and for 7 and for 3,. (Sadowski, James) (Entered: 07/21/2024) |
| 07/22/2024 | | 15 | Amended Document *Notice of Removal (Amended Solely to Cure Deficiency)* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:1 Notice of Removal.) (VerStandig, Maurice) (Entered: 07/22/2024) |
| 07/22/2024 | | 16 | Omnibus Objection *to Motions Filed by the Defendants After an Improper Removal of Non−Core Proceedings* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order.) (Sadowski, James) (Entered: 07/22/2024) |
| 07/23/2024 | | 17 | PDF with attached Audio File. Court Date & Time [ 7/23/2024 10:35:59 AM ]. File Size [ 5768 KB ]. Run Time [ 00:12:01 ]. (admin). (Entered: 07/24/2024) |
| 07/23/2024 | | 18 | |

| | | | |
|---|---|---|---|
| | | | Minute Entry RE: Hearing Continued (BK) (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 8 Notice of Hearing (Original or Amended), 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. All Pending Matters Rescheduled – Hearing scheduled for 8/27/2024 at 10:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 07/24/2024) |
| 08/09/2024 | | 19 | Record Transmitted from Superior Court (Attachments: # 1 Main Document Part 2, (2) Main Document Part 3) (Bleskoski, Megan) (Entered: 08/09/2024) |
| 08/20/2024 | | 20 | Opposition Filed by JPK NewCo LLC, DP Capital LLC, Russell Drazin, Daniel Huertas, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (VerStandig, Maurice) (Entered: 08/20/2024) |
| 08/26/2024 | | 21 | Reply *to Opposition to Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Sadowski, James) (Entered: 08/26/2024) |
| 08/27/2024 | | 22 | Minute Entry RE: Hearing Continued (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig, Jeffrey Orenstein, Kristen Eustis. All Pending Matters Stayed, All Deadline Tolled. Hearing scheduled for 11/13/2024 at 11:00 AM Courtroom 1 and Zoom; Contact aimee_mathewes@dcb.uscourts.gov for meeting code (Mathewes, Aimee) (Entered: 08/28/2024) |
| 08/28/2024 | | 23 | PDF with attached Audio File. Court Date & Time [ 8/27/2024 10:18:30 AM ]. File Size [ 28984 KB ]. Run Time [ 01:00:23 ]. (admin). (Entered: 08/29/2024) |
| 11/13/2024 | | 24 | Minute Entry RE: Hearing – Continued (AP) (Re: Related Document(s) #:1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand.) Appearances: James Sadowski, Maurice VerStandig. Motion to Remand Scheduled for Decision, Supplemental Briefs Due by 11/27/2024, Responses Due 12/4/2024. Remaining Matters Continued for Status, Hearing scheduled for 12/18/2024 at 12:00 PM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 11/13/2024) |
| 11/15/2024 | | 25 | PDF with attached Audio File. Court Date & Time [ 11/13/2024 11:43:57 AM ]. File Size [ 4904 KB ]. Run Time [ 00:10:13 ]. (admin). (Entered: 11/16/2024) |
| 11/27/2024 | | 26 | Supplemental Brief *in Support of Motion for Remand* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:13 Motion for Remand, Motion.) (Attachments: # 1 Exhibit Transcript from the JPK NewCo LLC Meeting of Creditors)(Sadowski, James) (Entered: 11/27/2024) |

| | | | |
|---|---|---|---|
| 12/04/2024 | | 27 | Reply Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:26 Brief.) (VerStandig, Maurice) (Entered: 12/04/2024) |
| 12/18/2024 | | 28 | Minute Entry RE: Hearing Held (RE: related document(s)1 Notice of Removal, 3 Notice of Hearing (Original or Amended), 4 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment, 9 Motion for Protective Order, 12 Objection, 13 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Denied, Order to be Submitted. Motion for Summary Judgment, Motion to Dismiss Filed by SF NU, LLC, Scheduling Order Motion, and Motion to Dismiss Counterclaim Continued, Remaining Pending Matters Disposed on Record. Hearing scheduled for 1/28/2025 at 09:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 12/19/2024) |
| 12/19/2024 | | 29 | PDF with attached Audio File. Court Date & Time [ 12/18/2024 12:22:38 PM ]. File Size [ 33184 KB ]. Run Time [ 01:09:08 ]. (admin). (Entered: 12/20/2024) |
| 01/17/2025 | | 30 | Opposition *to Motion for Summary Judgment* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:7 Motion for Summary Judgment.) (Attachments: # 1 Affidavit Declaration of Mel Negussie # 2 Exhibit No. 1 – April 7, 2023 Order from Judge Scott # 3 Exhibit No. 2 – July 24, 2023 Order Granting Injunctive Relief # 4 Exhibit No. 3 – Order Memorializing TRO Decision # 5 Exhibit No. 4 – Exhibit S from DevRE1 TRO Hearing (Loan Payment Records) # 6 Exhibit No. 5 – Huertas Deposition Excerpts) (Sadowski, James) (Entered: 01/17/2025) |
| 01/28/2025 | | 31 | Order Granting Defendant SF NU, LLC's Motion to Dismiss With Leave to Amend and Denying Plaintiff Developer RE1 LLC's Motion to Dismiss Defendant WCP Fund 1 LLC'S Counterclaim Without Prejudice (Re: Related Document(s)1 Notice of Removal.) Order entered on 1/28/2025. (Mathewes, Aimee) (Entered: 01/28/2025) |
| 01/28/2025 | | 32 | Minute Entry RE: Hearing Held (RE: related document(s)3 Notice of Hearing (Original or Amended), 5 Motion to Extend/Shorten Time, 7 Motion for Summary Judgment) Appearances: James Sadowski, Maurice VerStandig. Motion to Dismiss Complaint Granted, Amended Complaint Due by 2/25/2025, Answer Due by 3/11/2025. Motion for Summary Judgment Under Advisement. Scheduling Conference Scheduled for 4/2/2025 at 10:00 AM via Zoom. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/28/2025 | | 33 | Hearing Scheduled (AP) (Re: Related Document(s) #:1 Notice of Removal.) Scheduling Conference scheduled for 4/2/2025 at 10:00 AM Via Zoom–contact Gunn_Hearings@dcb.uscourts.gov for Meeting Code. (Mathewes, Aimee) (Entered: 01/29/2025) |
| 01/30/2025 | | 34 | PDF with attached Audio File. Court Date & Time [ 1/28/2025 9:03:41 AM ]. File Size [ 48640 KB ]. Run Time [ 01:41:20 ]. (admin). (Entered: 01/31/2025) |
| 02/11/2025 | | 35 | Order Denying Motion to Remand (Related Document #: 13) Entered on 2/11/2025. (Bleskoski, Megan) (Entered: 02/11/2025) |

| | | | |
|---|---|---|---|
| 02/13/2025 | | 36 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)35 Order on Motion For Remand) No. of Notices: 1. Notice Date 02/13/2025. (Admin.) (Entered: 02/14/2025) |
| 02/25/2025 | | 37 | Consent Motion to Extend Time Period *to File Amended Complaint*. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:31 Order – Generic.) (Attachments: # 1 Proposed Order Consent Order Extending Deadline to File Amended Complaint) (Sadowski, James) (Entered: 02/25/2025) |
| 02/25/2025 | | 38 | Consent Order Granting Motion to Extend Time to File Amended Complaint (Related Document #: 37) Entered on 2/25/2025. (Bleskoski, Megan). (Entered: 02/25/2025) |
| 02/27/2025 | | 39 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)38 Order on Motion to Extend Time) No. of Notices: 0. Notice Date 02/27/2025. (Admin.) (Entered: 02/28/2025) |
| 03/05/2025 | | 40 | Amended Complaint by 423 Kennedy St Holdings LLC, Developer RE1 LLC against DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:1 Notice of Removal.) (Sadowski, James) (Entered: 03/05/2025) |
| 03/16/2025 | | 41 | Draft Summons (Re: Related Document(s) #:40 Amended Complaint.) (Sadowski, James) (Entered: 03/16/2025) |
| 03/17/2025 | | 42 | Summons Issued on Shaheen Sairi. Number of Summons Issued: 1. Answer due by: 4/16/2025. YOU MUST PRINT YOUR ISSUED SUMMONS, WHICH IS ATTACHED TO THIS DOCUMENT. PAPER COPIES WILL NOT BE MAILED. (Re: Related Document(s) #:40 Amended Complaint.) Status Hearing to be held on 4/2/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code. (Mathewes, Aimee) (Entered: 03/17/2025) |
| 03/18/2025 | | 43 | Answer to Complaint *(Counterclaim of WCP Fund I LLC)* Filed by Developer RE1 LLC (Sadowski, James) (Entered: 03/18/2025) |
| 03/19/2025 | | 44 | Motion to Dismiss Adversary Proceeding *or, in the Alternative,*, Motion For Summary Judgment Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Attachments: # 1 Exhibit A – DRL First Promissory Note # 2 Exhibit B – DRL Second Promissory Note # 3 Exhibit C – DRL First Deed of Trust # 4 Exhibit D – DRL Second Deed of Trust # 5 Exhibit E – 423 Kennedy First Promissory Note # 6 Exhibit F – 423 Kennedy Second Promissory Note # 7 Exhibit G – 423 Kennedy First Deed of Trust # 8 Exhibit H – 423 Kennedy Second Deed of Trust # 9 Exhibit I – Declaration of Christina Araujo # 10 Exhibit J – Water and Sewer Lien # 11 Exhibit K – Tax Payment History # 12 Exhibit L – Department of Buildings Lien # 13 Notice of Opportunity to Object and of Hearing) (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/19/2025 | | 45 | Notice of Hearing Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44,. (VerStandig, Maurice) (Entered: 03/19/2025) |
| 03/25/2025 | | 46 | |

| | | | |
|---|---|---|---|
| | | | Motion for Remand *(Renewed)* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Attachments: # 1 Exhibit Ex. 1 – Transcript Meeting of Creditors – JPK NewCo LLC # 2 Exhibit Ex. 2 – Unanimous Consent – Charles Paret (5515 1st St Holdings LLC) # 3 Exhibit No. 3 – Unanimous Consent (Charles Paret – 71 Kennedy St Holdings LLC) # 4 Exhibit No. 4 – Affidavit of Charles Paret (423 Kennedy St Holdings LLC)) (Sadowski, James) (Entered: 03/25/2025) |
| 03/25/2025 | | 47 | Notice of Hearing *and Objection Deadline* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:46 Motion for Remand.) Hearing scheduled for 4/16/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46,. (Sadowski, James) (Entered: 03/25/2025) |
| 04/01/2025 | | 48 | Consent Order Rescheduling Hearings and Deadlines. (Re: Related Document(s)44 Motion to Dismiss Adversary Proceeding, 45 Notice of Hearing (Original or Amended) filed by Defendant DP Capital LLC, Defendant WCP Fund I LLC, Defendant Daniel Huertas, Defendant SF NU, LLC, Defendant Russell Drazin, Defendant JPK NewCo LLC, 46 Motion for Remand.) Order entered on 4/1/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 44, Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 46, . (Bleskoski, Megan). (Entered: 04/01/2025) |
| 04/02/2025 | | 49 | Notice of Returned Mail Undeliverable as to Shaheen Sairi – Incomplete Address. (RE: related document(s) 48 Hearing Continued) (Alde, Claude) (Entered: 04/02/2025) |
| 04/03/2025 | | 50 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)48 Hearing Continued) No. of Notices: 5. Notice Date 04/03/2025. (Admin.) (Entered: 04/04/2025) |
| 04/12/2025 | | 51 | Opposition Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC (Re: Related Document(s) #:46 Motion for Remand.) (VerStandig, Maurice) (Entered: 04/12/2025) |
| 04/16/2025 | | 52 | Consent Motion *to Extend Deadlines* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment, 46 Motion for Remand.) (Attachments: # 1 Proposed Order Proposed Order Granting Motion to Extend Deadlines) (Sadowski, James) (Entered: 04/16/2025) |
| 04/17/2025 | | 53 | Consent Order Granting Motion To Extend Deadlines. (Related Document #: 52) Entered on 4/17/2025. (Bleskoski, Megan) (Entered: 04/17/2025) |
| 04/18/2025 | | 54 | Opposition Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:44 Motion to Dismiss Adversary Proceeding, Motion for Summary Judgment.) (Attachments: # 1 Exhibit Response to Statement of Material Facts in Dispute # 2 Exhibit Declaration of Mel Negussie # 3 Exhibit DC Code Section 28–3104 # 4 Exhibit DC Code Section 28–3105 # 5 Exhibit First TRO Order # 6 Exhibit Second TRO Order # 7 Exhibit Developer RE1 Loan history # 8 Exhibit 423 Kennedy Loan History # 9 Exhibit Huertas Transcript Excerpts # 10 Exhibit 4–7–23 Order # 11 Exhibit DEV RE Scheduling Conference Transcript) (Sadowski, James) (Entered: 04/18/2025) |

| | | | |
|---|---|---|---|
| 04/19/2025 | | 55 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)53 Order on Motion) No. of Notices: 0. Notice Date 04/19/2025. (Admin.) (Entered: 04/20/2025) |
| 05/06/2025 | | 56 | Order Requiring Supplemental Briefing By May 7, 2025. (Re: Related Document(s)40 Amended Complaint.) Order entered on 5/6/2025.Hearing scheduled for 5/8/2025 at 10:00 AM Courtroom 1 and Zoom; Contact Gunn_Hearings@dcb.uscourts.gov for meeting code for 40, . (Bleskoski, Megan) (Entered: 05/06/2025) |
| 05/06/2025 | | 57 | Motion *for Leave to File Fourth Amended Complaint* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC (Re: Related Document(s) #:40 Amended Complaint.) (Attachments: # 1 Exhibit Fourth Amended Complaint) (Sadowski, James) (Entered: 05/06/2025) |
| 05/06/2025 | | 58 | Brief *Regarding Lack of Mootness of Summary Judgment Motion* Filed by DP Capital LLC, Russell Drazin, Daniel Huertas, JPK NewCo LLC, SF NU, LLC, WCP Fund I LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (VerStandig, Maurice) (Entered: 05/06/2025) |
| 05/07/2025 | | 59 | Notice of Returned Mail as Undeliverable to Shaheen Sairi, Incomplete Address. (RE: related document(s)56 Hearing Scheduled) (Bleskoski, Megan) (Entered: 05/07/2025) |
| 05/07/2025 | | 60 | Brief *Regarding Mootness* Filed by 423 Kennedy St Holdings LLC, Developer RE1 LLC. (Re: Related Document(s) #:56 Hearing Scheduled.) (Sadowski, James) (Entered: 05/07/2025) |
| 05/08/2025 | | 61 | Minute Entry RE: Hearing Held (BK) (RE: related document(s)44 Motion to Dismiss Adversary Proceeding, 46 Motion for Remand) Appearances: James Sadowski, Maurice VerStandig. Motion for Remand Granted, Order to be Submitted. (Mathewes, Aimee) (Entered: 05/08/2025) |
| 05/08/2025 | | 62 | BNC Certificate of Mailing – PDF Document. (RE: related document(s)56 Hearing Scheduled) No. of Notices: 10. Notice Date 05/08/2025. (Admin.) (Entered: 05/09/2025) |
| 05/09/2025 | | 63 | PDF with attached Audio File. Court Date & Time [ 5/8/2025 10:06:13 AM ]. File Size [ 40808 KB ]. Run Time [ 01:25:01 ]. (admin). (Entered: 05/10/2025) |
| 05/12/2025 | | 64 | Order Granting Renewed Motion To Remand (Re: Related Document(s)46 Motion for Remand.) Order entered on 5/12/2025. (Bleskoski, Megan) (Entered: 05/12/2025) |

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | |
| CHARLES PAXTON PARET, | Case No. 23-00217-ELG |
| *Debtor.* | Chapter 7 |
| DEVELOPER RE1 LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; AND WCP FUND I LLC, | Adv. Pro. No. 24-10023-ELG |
| *Defendants.* | |
| 423 KENNEDY ST HOLDINGS LLC, | |
| *Plaintiff,* | |
| v. | |
| DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; AND WCP FUND I LLC, | |
| *Defendants.* | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Borrowers"), hereby file their opposition to the Motion to Dismiss or, in the alternative, for Summary Judgment ("Motion") [ECF No. 44] filed by six of the seven Defendants, namely: DP Capital LLC ("WCP"), WCP Fund I LLC ("WCP Fund"), Daniel

Huertas ("Mr. Huertas"), Russell Drazin ("Mr. Drazin"), SF NU, LLC ("SF NU"), and JPK

NewCo LLC ("JPK") (collectively, "Defendants").

I.     INTRODUCTION

       The Court has some general familiarity with the factual and procedural background of

this litigation from prior filings, including the Borrowers' Opposition to Mr. Drazin's Motion for

Summary Judgment filed on January 17, 2025 (the "Opposition") [ECF No. 30].[1]   The

Borrowers continue to view the Defendants' removal of the cases from Superior Court as a form

of improper appeal.  The Defendants were dissatisfied with prior, unfavorable decisions rendered

in the Superior Court by two different judges.  *See* Plaintiffs' Renewed Motion for Remand and

to Suspend Defendants' Motions, Hearings, and Related Response Deadline [ECF No. 46].  With

the Motion, Defendants now seek the dismissal of Count VII - To Set Aside Fraudulent Transfers

of the Third Amended Complaint (the "Complaint"), as well as the dismissal of all claims against

SF NU.  The Defendants also request the entry of summary judgment on the remaining causes of

action against them.  For the reasons set forth below, and in the accompanying Exhibits, the

Court should deny both motions.[2]

II.    CONDENSED  BACKGROUND

       A.     The Loan Documents

       On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition

finance loan for the property located at as 5501 1st Street, N.W., in Washington, D.C. (the

---

[1]     As Mr. Drazin's Motion for Summary Judgment is currently pending, pursuant to Fed. R.
Civ. P. 10(c), the Borrowers hereby incorporate by reference the factual background and all the
arguments made in the Opposition as if fully stated herein.

[2]     To assist the Court with showing the many material facts in dispute, the Borrowers have
assembled their Response to the Defendants' Material Facts Not in Dispute (the "Borrowers'
Response"), which is attached as Exhibit 1.  The Borrowers have also included as support a
Declaration of Mel Negussie ("Negussie Decl."), which is attached as Exhibit 2.

2

"Developer RE1 Property"), which original loan was later refinanced. As part of that refinancing, Developer RE1 signed the following documents:

- A Deed of Trust (the "Developer RE1 First DOT") for the Developer RE1 Property that named WCP Fund as Beneficiary and Mr. Drazin, as Trustee.
- A Commercial Deed of Trust Note (the "Developer RE1 First Note") in the amount of $3,579,000.00, as "Borrower," in favor of WCP Fund.
- A second, additional Deed of Trust ("Developer RE1 Second DOT") for the Developer RE1 Property that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second Commercial Deed of Trust Note (the "Developer RE1 Second Note") in the amount of $524,000.00, as "Borrower."

These documents are collectively referred to as the "Developer RE1 Loan Documents".

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records of the District of Columbia as Document # 2024035623, SF NU assigned and transferred to JPK its rights, title and interests in the Developer RE1 Second DOT.

In January of 2020, WCP helped 423 Kennedy obtain a construction finance loan for the property located at 423 Kennedy Street, N.W., Lot 56, Square 3260 in Washington, D.C. (the "423 Kennedy Property"), which was later refinanced. As part of that refinancing, 423 Kennedy signed the following documents:

- A Deed of Trust (the "423 Kennedy First DOT") for the 423 Kennedy Property that named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A Commercial Deed of Trust Note (the "423 Kennedy First Note") in the amount of $8,689,693.00, as "Borrower" in favor of WCP Fund.
- A second, additional Deed of Trust for the 423 Kennedy Property (the "423 Kennedy Second DOT") that also named WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- A second, Commercial Deed of Trust Note (the "423 Kennedy Second Note") in the amount of $1,256,000.00, as "Borrower."

These documents are collectively referred to as the "423 Kennedy Loan Documents." The Developer RE1 Loan Documents and the 423 Kennedy Loan Documents are collectively referred to as the "Loan Documents."

3

By Assignment of Deed of Trust, dated April 17, 2024, and recorded in the land records

of the District of Columbia as Document # 2024035864, WCP assigned and transferred to JPK

its rights, title and interests in the 423 Kennedy Second DOT.

      B.      <u>Executive Summary of the Facts.</u>

      The Defendants removed these consolidated cases for the improper purpose of trying to

avoid, and having this Court revisit, several key motions and decisions that they lost before two

different judges in the D.C. Superior Court.  These decisions were made after extensive briefing,

testimony from both sides at two evidentiary (TRO) hearings, oral argument, and some post-

hearing briefing.  The Defendants were unsuccessful with a prior motion to dismiss that Judge

Ebony Scott denied in the Developer RE1 case.  More importantly, the Defendants lost two

motions for a TRO before two different judges in which they made the exact claims that they

now assert again here in their summary judgment motion, *i.e.,* that multiple late or missed

payments, along with other alleged defaults that had either been waived or cured, prevent the

Borrowers from pursuing their claims.  Two different D.C. Superior Court judges have not just

determined that the Borrowers' claims are viable, but that the Borrowers are likely to prevail on

the merits of those claims.  This Court was never designed to be a first line of appeal from

adverse decisions of the D.C. Superior Court, but as to all of the claims in the Third Amended

Complaint except than new Count VII, that is precisely what the Defendants are asking this

Court to be.  The Court should reject the Defendants' improper attempt to relitigate issues and

arguments that have already been decided against them.

      As for the condensed facts, this case is about the Lender Defendants decision to

intentionally sabotage two development projects, to cause financial harm to the Borrowers and

one of the Borrower's principals, and to improperly foreclose on two development projects, one

of which was near completion, because one or more of the Lender Defendants was unhappy

about how another development project (at 2507 I Street) turned out.  The Lender Defendants

knew that the Borrowers were well on their way toward refinancing their loans, which would

have resulted in payment in full of those loans.  The Lender Defendants issued pre-textual

default notices to pressure the Borrowers into paying millions of dollars in "Default Interest" and

"Default Penalties."  The Lender Defendants then tasked their lawyer, who was also serving as

Trustee under all of the deeds of trust, to find reasons to try to justify the pretextual defaults after

the fact.

　　This case was also removed in July of 2024 because the Borrowers were about to take the

corporate depositions of the Lender Defendants, and their employees, in which the Borrowers

were highly likely to develop additional evidence in support of their claims.  Now the Lender

Defendants are trying, though a summary judgment decision, to prevent the Borrowers from

obtaining information in discovery that they know will be unfavorable to their positions.

III.　　THE LEGAL STANDARDS

　　A.　　The Motion to Dismiss Standard

　　Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and

plain statement of the claim showing that the pleader is entitled to relief, to give the defendant

fair notice of what the claim is about and the grounds upon which it rests.  *See, e.g.*, *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6), "the 'complaint must contain sufficient factual matter, accepted as

true, to state a claim to relief [that?] is plausible on its face.'"  *See, e.g.*, *Wood v. Moss*, 134 S. Ct.

2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Since our system

favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied

only after less dire alternatives have been explored without success."  *Trakas v. Quality Brands,*

5

*Inc.*, 245 U.S. App. D.C. 165, 759 F.2d 185, 186-87 (1985) (citing *Camps v. C & P Telephone Co.,* 223 U.S. App. D.C. 396, 692 F.2d 120, 123-24 (D.C. Cir. 1981)).

Because the Borrowers have more than pled facts sufficient to support plausible claims against SF NU, the Motion to Dismiss should be denied.

B.  The Motion for Summary Judgment Standard

On a motion for summary judgment, "[t]he moving party has the burden of demonstrating clearly the absence of any genuine issue of material fact and entitlement to a judgment as a matter of law." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). In opposing a motion for summary judgment, the non-moving party "is entitled to the benefit of all favorable inferences that can be drawn from the evidence." *Id.* The court "may not make credibility determinations or weigh the evidence." *United States ex rel. El-Amin v. George Wash. Univ.*, 522 F. Supp. 2d 135, 139 (D.D.C. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Summary judgment "is not appropriate when 'a reasonable jury could return a verdict for the nonmoving party.'" *United States v. Greer*, 451 U.S. App. D.C. 45, 47, 987 F.3d 1089, 1091 (2021) (quoting *Thompson v. District of Columbia*, 967 F.3d 804, 813, 448 U.S. App. D.C. 411 (D.C. Cir. 2020)). "Once it is determined that material facts are in dispute 'summary judgment may not be granted.'" *Weiss v. Kay Jewelry Stores, Inc.*, 152 U.S. App. D.C. 350, 470 F.2d 1259, 1262 (1972) (quoting *Dewey v. Clark*, 86 U.S. App. D.C. 137, 143, 180 F.2d 766, 772 (1950)). "Summary judgment is an extreme remedy and should be awarded only when the truth is clear; doubts must be resolved against the moving party." *BEACH v. RIGGS Nat'l BANK*, Civil Action No. 83-2402, 1985 U.S. Dist. LEXIS 19871, at *10 (May 13, 1985) (citing *Weiss v. Kay Jewelry Stores, Inc.,* 470 F.2d 1259 (D.C. Cir. 1972)).

When these standards are applied to Defendants' request for summary judgment, summary judgment should be denied.

6

IV.    LEGAL ARGUMENT: WHY THE MOTION TO DISMISS SHOULD BE DENIED

The Court should deny the Motion because the Borrowers have sufficiently pled Count

VII (To Set Aside Fraudulent Transfers), as well as all the other claims asserted against SF NU.

    A.    Count VII of the Complaint - To Set Aside Fraudulent Transfers - is
        Adequately Pled.

Count VII is primarily predicated on several transfers made to and by JPK NewCo, LLC

("JPK"), the named debtor in a now dismissed bankruptcy proceeding.[3]  The Court could deny

the motion to dismiss based upon one undisputed fact alone that is also a judicial admission:

JPK and the WCP have already admitted that the loan transfers to JPK were made with the

express purpose of trying to hinder the Borrowers from collecting on their claims.  *See*

Opposition of WCP Fund I LLC to the U.S. Trustee's Motion to Dismiss Chapter 11 Case

Pursuant to 11 U.S.C. § 1112(B) ( ECF No. 56 in the JPK Case ("[I]nsofar as a good faith

analysis of the claims in the litigation reveals relief to be sought in the form of an in rem setoff

against liability due and owing on the four promissory notes, *transferring the two junior notes*

*into a separate entity effectively serves to firewall any liability from reaching WCP or its various*

*co-defendants*.") (italic emphasis added).[4]  This judicial admission, standing alone, defeats any

argument that the Borrowers have not sufficiently pled a fraudulent conveyance claim.  The

WCP and JPK have admitted that the "junior liens" were transferred to prevent liability (to the

Borrowers) "from reaching WCP or its various co-defendants."[5]

---

[3]    *See In re JPK NewCo, LLC*, Case No. 24-262 (Bankr. D.D.C. 2024) (the "JPK Case").

[4]    In JPK's Opposition to the United States Trustee's Motion to Dismiss Chapter 11 Case
Pursuant to 11 U.S.C. 1112(b), JPK repeated the arguments of the WCP Fund LLC in the WCP
Opposition "as if set forth in substance here."  *See* ECF No. 58 at p.1. in the JPK Case.

[5] "Firewall" is a term used both in the auto industry and the computer industry.  Cars
have firewalls to prevent and hinder engine heat, noise, and fumes from reaching the passenger
compartment.  Computers have "firewalls" to prevent and hinder hackers and viruses from
gaining entry into, or spreading in, computer systems.

Indeed, the transfers to JPK represent just one type of fraudulent transfer contemplated by

D.C. law.  The Uniform Fraudulent Transfer Act, D.C. Code §§ 28-3101, *et seq.,* ("UFTA")

defines several types of fraudulent transfers.  D.C. Code

§ 28-3104(a) defines a fraudulent transfer as:

> (a) *A transfer made,* or obligation incurred, by a debtor *is fraudulent as to a creditor,* whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>> (1) With actual intent to *hinder, delay,* or defraud *any creditor of the debtor*; or
>>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>>
>>> (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

D.C. Code § 28-3104 (a) (italic emphasis added).

In the Third Amended Complaint, the Borrowers, as creditors, allege that, their debtor(s),

SN FU and/or the WCP, transferred the Loan Documents described in paragraphs 201-02 of the

Complaint with the intent to hinder or delay the claims of the Borrowers.  Comp. ¶¶ 257-48.

Nothing more is required to state a claim under D.C. Code § 28-3104(a)(1) or (2).  *See Bertram*

*v. WFI Stadium, Inc.,* 41 A.3d 1239, 1245 (D.C. 2012) (explaining that it is sufficient to state a

claim under the UFTA to allege that the debtor incurred an obligation with the intent to hinder,

delay, or defraud the creditor).  Moreover, contrary to Defendants' position, there is no

requirement in the UFTA that a plaintiff allege that either SN FU or the WCP were insolvent at

the time of the transfers. Rather, the insolvency of the person that made the transfer is simply

one factor, among many others, that may be considered in determining intent. *See* D.C. Code

§ 28-3104(b)(9) (one of the factors that may be considered when determining actual intent is

whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred"). A copy of D.C. Code § 28-3104 is attached as Exhibit 3 for the

Court's convenience.

Relatedly, D.C. Code § 28-3105(a) allows the Borrowers to pursue a claim based on

fraudulent conveyance against SF NU and/or the WCP if they made a transfer "to an insider for

an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to

believe that the debtor was insolvent." D.C. Code § 28-3105. A copy of D.C. Code § 28-3105 is

attached hereto as Exhibit 4. As the Borrowers also allege, the transfers by SN FU and/or the

WCP were made when the obligation was incurred by JPK at a time when JPK believed or

reasonably believed that it would incur a debt beyond its ability to pay that debt when it became

due at a time when it was insolvent or became insolvent shortly after the transfer was made or

the obligation was incurred. Compl. ¶¶ 260-61. The transfers at issue here are precisely the kind

of fraudulent transfers contemplated by the express language of the UFTA. The Borrowers have

stated a plausible claim in Count VII, so the Defendants' Motion to Dismiss Count VII should

be denied.

B.      <u>SF NU is a Proper Defendant.</u>

Contrary to Defendants' assertions, SF NU is a proper defendant and Borrowers have

stated plausible claims against SF NU under Count II (Breach of the Duty of Good Faith and Fair

Dealing); Count III (Declaratory Judgment); Count IV ( Permanent Injunctive Relief); Count VI

for (Declaratory Judgments - Mr. Drazin Cannot Serve as the Trustee and as to the Foreclosure

Notices), and Count VII (Set Aside Fraudulent Transfers).

9

1.    The Borrowers Have Stated a Plausible Claim in Count II (Breach
of the Covenant of Good Faith and Fair Dealing).

"Every contract includes an implied covenant of good faith and fair dealing.".  *See*

*Wright v. Howard Univ.*, 60 A.3d 749, 754-55 (D.C. 2013).  To state a claim for breach of the

covenant of good faith and fair dealing based on the laws of the District of Columbia, the

following is required:

> [A] plaintiff must allege either 'bad faith or conduct that is arbitrary or
> capricious.' . . . If a party 'evades the spirit of the contract, willfully
> renders imperfect performance, or interferes with performance by the
> other party, he or she may be liable for breach of the covenant of good
> faith and fair dealing.

*See Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015).

In Count II, the Borrowers allege that SF NU breached the covenant of good faith and

fair dealing that is implied in every contract in the District of Columbia.  The Defendants claim

that the allegations against SF NU are scant, but that is simply not true.  The Borrowers allege

that the WCP Fund appears to have assigned its interest in the Second Developer RE1 DOT to

SF NU in an Assignment of Deed of Trust.  Compl. ¶ 41.  SF NU is believed to also have a

financial interest in the 2507 I Street Project. Compl. ¶ 94.  JPK is dominated and controlled by

Mr. Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.  Compl. ¶

217.  WCP Fund, WCP, Mr. Huertas, and SF NU also caused the WCP to issue each "Notice of

Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring

either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the

WCP Fund and/or SF NU.  Compl. ¶ 141.  SF NU is named in this action based, in part, on the

Notice of Foreclosure Sale of Real Property or Condominium to Developer RE1, issued on June

23, 2023, by Mr. Drazin, apparently on behalf of SF NU.  Compl. ¶ 185.  Thereafter, SFNU

transferred the Developer RE1 Loan Documents.  Borrowers allege that the transfer by SF NU of

the Developer RE1 Loan Documents to JPK was a transfer that was not supported by any consideration. Compl. ¶¶ 202-203. The Borrowers also allege that such transfer was made "with the specific intent to hinder or delay the adjudication of the claims in this case." Compl. ¶ 204. The Borrowers allege that the transfers were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP Fund and SF NU." Compl. ¶ 205.

The Borrowers further allege that the WCP Fund transferred the 423 Kennedy Loan Documents to JPK, an insider owned by the WCP Fund and SF NU. Compl. ¶ 201. The Borrowers allege notes and deeds of trust between the Borrowers and the WCP, and/or SF NU, and/or JPK that are contracts. Compl. ¶¶ 227-228. The Borrowers further allege that "[t]hrough their improper conduct, the Count II Defendants have breached the implied covenant of good faith and fair dealing contained in the respective contracts." Compl. ¶ 229. Additionally, SF NU is defined as one of the "Lender Defendants." Compl. ¶ 8. In the Third Amended Complaint, there are 49 allegations against the Lender Defendants. Compl. ¶¶ 16, 20, 79, 93, 96, 99, 100-03, 105-13, 131, 133-35, 138-44, 151, 157, 164, 171-72, 178, 182-84, 189, 192-95, 208-09, 212, 214-15). The Defendants do not substantively address this plethora of allegations in their Motion, instead focusing only on their claim that SF NU no longer holds the loan documents.

In pursuing this cause of action, the Borrowers' allegations against SF NU, including that it breached of the covenant of good faith and fair dealing through its actions in holding and/or wrongfully transferring the Developer RE1 Loan Documents and in interfering with the Borrowers' rights under the Loan Documents, are plainly enough to state a claim for breach of the covenant of good faith and fair dealing implicit in the Loan Documents. Therefore, dismissal of Count II is not appropriate.

2.      The Borrowers Have Stated a Claim for Count III and VI (for Declaratory Judgment) and Count IV (Injunctive Relief).

As to Counts III, IV, and VI, the Defendants' sole argument seems to be their contention that SF NU no longer owns the Loan Documents and is no longer a beneficiary under the relevant Loan Documents.  The Borrowers, however, seek to set aside the fraudulent transfers of the junior liens by SFNU to JPK.  If those transfers are set aside, the declaratory judgments and injunctive relief claims will implicate the rights of SF NU.  SF NU also participated in an attempted foreclosure on one of the properties (and may do so again).  SF NU is also responsible for the misconduct that it engaged in, as one of the Lender Defendants, before the junior liens were transferred.  Accordingly, SF NU is still a proper defendant even though it currently does not hold title to the junior liens.

3.      As Discussed Above, Borrowers Have Stated a Claim in Count VII to Set Aside Fraudulent Transfers.

That SF NU claims "[t]he interests of [SF NU] have been transferred to JPK" is just one fact upon which Count VII is based.  The Borrowers also allege that SF NU fraudulently transferred the Developer RE1 loan documents (the junior lien) "with the intent to hinder or delay [the Borrowers] from reaching the assets of the WCP and SF NU."  Compl. ¶ 205.  Thus, SF NU's request for dismissal of Count VII is without merit and should be denied.

V.     ARGUMENT: WHY SUMMARY JUDGMENT IS NOT APPROPRIATE

This Court should deny the request for summary judgment because: (a) the Defendants should not be permitted to relitigate issues already determined by the Superior Court under the law of the case doctrine; (b) the Borrowers have multiple, viable defenses as to why the loans were not paid; (c) multiple disputes of material fact exist which preclude summary judgment on Counts I – VI; and (d) the motion for summary judgment is premature because the Borrowers have not have the benefit of full discovery.

As for the Defendants' "Material Facts Not in Dispute," that list consists largely of improper legal conclusions and Defendants' interpretations of the Loan Documents. In the Borrowers' Response, the Borrowers have designated each of Defendants' purported facts as disputed, admitted, and/or not material. The Borrowers also object to Defendants' legal conclusions to the extent that they are not supported by the record or are contrary to the terms of the Loan Documents. There are multiple, material disputes of fact exist that preclude the entry of summary judgment on Counts I – VI.

A.      The Defendants Impermissibly Seek to Relitigate Issues Already
        Determined.

As for the 423 Kennedy Loan Documents, on July 24, 2023, after a full evidentiary hearing, Judge Milton C. Lee, Jr. issued a comprehensive 22-page Order granting 423 Kennedy's Motion for Temporary Restraining Order (the "First TRO Order"). A copy of the First TRO Order is attached as Exhibit 5. In the First TRO Order, Judge Lee addressed and dismissed the Defendants' contentions as to "late" payments and a lien placed on the 423 Kennedy Property. As the Defendants have not raised any new facts, the Borrowers ask this Court to reject the Defendants' attempt to relitigate these issues and effectively reverse Judge Lee's prior factual findings and decision.

As for the Developer RE1 Loan Documents, on August 15, 2023, after a full evidentiary hearing, Judge Ebony M. Scott entered a Hearing Order by which she, among other things, granted Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure sale (the "Second TRO Order"). A copy of the Second TRO Order is attached as Exhibit 6. In the Second TRO Order, Judge Scott also addressed and dismissed the Defendants' contentions as to a water lien, real estate taxes, and "a breach of the deed of trust as a result of default." *See* Second TRO Order at p. 4. Relevant here, Judge Scott

observed that "[t]he record demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to

perform under the deed of trust." *Id.* at p. 5. Judge Scott observed the that the parties had filed a

Notice of Related Case due to the similarities between the case involving the 423 Kennedy

Property and the Developer RE1 Property. Judge Scott stated that, "the Court found Judge Lee's

opinion quite persuasive." *Id.*

     The factual and legal determination made by Judge Lee and Judge Scott are discussed in

further detail below.

     1.    <u>The July 24, 2023 Order</u>

     Regarding Defendants' claim that 423 Kennedy defaulted under the Loan Documents,

these issues were determined by Judge Lee who concluded that "[i]n regard to the late payments

claim, the testimony of Mr. Negussie and a review of defendants' own records related to the

payment history demonstrate that late payments could not be a legitimate basis for the default."

First TRO Order at p. 11. Another matter Defendants wholly fail to address was also determined

by Judge Lee – Specifically, Judge Lee addressed the WCP Fund's failure to provide the agreed

upon construction to 423 Kennedy.   In doing so, Judge Lee stated that, "the parties understood

that the construction draws were an essential part of the agreement because the project could not

move forward without those funds being available to plaintiffs." *Id.* at p. 10.  Thus, Defendants'

actions constituted both a first breach under the 423 Kennedy Loan Documents and prevented

423 Kennedy from moving forward with its project.  Regarding the lien placed on the 423

Kennedy Property in relation to a final order regarding a notice of infraction, Judge Lee stated

that "[i]t is difficult for the Court to concluded that defendants realistically believed that it was

appropriate or legally proper to base a default for multi-million dollar protect [sic] on a $500 fine

that plaintiffs did not know about and was cured almost immediately after plaintiffs learned of

the lien through the default." *Id.* at p. 12.   Judge Lee also pointed to Section 7.6 of the deed of

14

trust stating that "[t]hat provision indicates the plaintiffs had the right to discharge or appeal any

lien within 30 days of the judgment." *Id.* Judge Lee concluded that Mr. Negussie's testimony

"demonstrated that 423 Kennedy acted promptly to resolve the lien once they learned of the

existence of the violation." *Id.* at p. 12. Judge Lee ultimately concluded that 423 Kennedy

"carried their burden by establishing a likelihood of success on the merits." *See id.* at p. 17.

> 2. The August 15, 2023 Order

In the Second TRO Order, Judge Scott observed that there is "evidence of a pretextual

basis for the default." Second TRO Order at p. 4. Judge Scott also noted that "Defendant's

counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water

bills were being sent to the wrong address." *Id.* at n. 2. Regarding the purportedly late

payments, Judge Scott observed that "[a]lthough [Mr. Negussie] admitted that four or five loan

payments were untimely, he testified that Defendants always accepted the payments." *Id.* at p. 3.

Judge Scott also observed that one of the purported defaults Defendants claim pertains to real

estate taxes "which were paid by the time Plaintiff received the default email." *Id.* at p. 4.

> B. Material Disputes of Fact Exist that Preclude the Entry of Summary
> Judgment on Count I for Tortious Interference.

In claiming entitlement to summary judgment on Count I (Tortious Interference) the

Defendants claim that the fourth element, resulting damages, is "key." In making this claim, the

Defendants acknowledge that at least two of the elements of this cause of action "run too close to

potential disputes of material fact." Motion at p. 21. Rather, Defendants claim, without citation

to the record, that the Borrowers have not been damaged as a result of Defendants' actions. This

is insufficient, as material disputes of fact exist regarding the damages the Borrowers have

sustained and the cause of those damages.

As the Borrowers already demonstrated when responding to a similar argument made by Mr. Drazin, the Borrowers *have* suffered damages as a result of the Defendants' misconduct that includes their inability to refinance the loans, rising interest rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the projects. *See* Negussie Decl. ¶ 18. There will also be damages for the increased costs to complete the projects as a result of supply chain shortages and inflation. *Id.* To top it off, due to nearly all of those factors and a now depressed sales market, there is very little chance that either project will result in a profit. *Id.* ¶ 19. There are also likely damages to the building because it has been vacant and open to environmental elements. *Id.* ¶ 18. Both Borrowers have also incurred carrying costs, such as property taxes, insurance, and payments to vendors. Both Borrowers have also suffered reputational damages. *Id.*

To protect their rights under the loan documents, the Borrowers were also forced to take legal action. *Id.* ¶ 10. As a result, the Borrowers have incurred and continue to incur attorneys' fees and costs. *Id.* In sum, the damages element of Count I is the only element the Defendants attack and material disputes of fact exist that prevent the entry of summary judgment on the issue of damages. Moreover, the Defendants have again failed to cite to any admissible evidence in support of their claim that the Borrowers have not suffered damages, as required. As such, because the element of damages *is* a disputed material fact, the Defendants' request for summary judgment on Count I should be denied. *See Raskauskas v. Temple Realty Co.*, 589 A.2d 17, 26 (D.C. 1991) (reversing trial court's grant of summary judgment in a case where "sworn complaint disputed all of the material facts relied on by [the movant's] summary judgment motion.").

C.   Material Disputes of Fact Exist That Preclude Summary Judgment on
     Count II for Breach of the Implied Covenant of Good Faith and Fair
     Dealing.

Contrary to Defendants' statement that they are alleged only to have enforced the plain

terms of the Loan Documents, the Borrowers have alleged much more in terms of facts.  This

includes that DP Capital, the WCP Fund, and SF NU did not comply with and breached the loan

documents and actively interfered with the Borrowers' ability to comply with them.  DP Capital,

the WCP Fund, and SF NU actively interfered with and/or prevented the Borrowers from

complying with the Loan Documents. *See* Borrowers' Response ¶¶ 14 and 27.   There are also

material disputes of fact regarding whether the DP Capital, the WCP Fund, and SF NU complied

with the Loan Documents.  Specifically, the Borrowers also contend that the DP Capital, the

WCP Fund, and SF NU, breached the relevant Loan Documents first.   *See id.* ¶¶ 14 and 27.

Judge Lee and Judge Scott have already made factual determinations regarding both the

Defendants' breaches and the Defendants' interference with the Borrowers' ability to comply

with the Loan Documents.  *See generally* First and Second TRO Orders.

In this case, the prevention doctrine and the first breach doctrine go hand in hand.  To the

extent Lender Defendants claim the Borrowers defaulted under the Loan Documents, the

Borrowers contend that it was the Lender Defendant's prior breaches, namely the refusal to

provide construction draws and pre-textual claims of defaults, that prevented the Defendants

from refinancing their loans, and ultimately resulting in this litigation.  *See* Borrowers' Response

¶¶ 14 and 27.  As a result, the Borrowers maintain that they are not liable to the Lender

Defendants for any claimed breaches that occurred due to the Defendants' wrongful conduct, as

the Lender Defendants actively prevented the Borrowers' from complying with the loan

documents.  *See Joyner v. Jonathan Woodner Co.*, 479 A.2d 308, 311 n.4 (D.C. 1984) (referring

to "the firmly established principle of contract law that prevention by one party excuses

17

performance by the other"). The Lender Defendants' actions also constituted first breaches of the Loan documents that excused the Borrowers' further performance. *See Rosenthal v. Sonnenschein Nath & Rosenthal, LLP,* 985 A.2d 443, 452 (D.C. 2009) (explaining that after a party breaches a contract, "the injured party need not continue to perform; it may abjure the contract and sue for damages."). The WCP Fund's failure to provide construction draws to 423 Kennedy was already determined to be a first breach by Judge Lee, who noted that "the project could not move forward without those funds [construction draws] being available to plaintiffs." *See* First TRO Order at p. 10.

Regarding the Defendants' contention that the Borrowers' made late payments, the Borrowers contend that the WCP Fund accepted all late payments, or were themselves responsible for those late payments by not properly crediting an interest reserve escrow, and/or waived any defaults based upon late payment. Negussie Decl. ¶ 13. To the extent the Defendants point to a "time is of the essence" clause, the WCP Fund's failure to declare defaults at the time of any alleged nonpayment constituted a waiver of the right to later declare defaults based on late payments that were accepted. As the U.S. Court of Appeals for the D.C. Circuit has previously observed, "the course of conduct of the parties may bring about a modification of their strict legal rights and obligations to the point that the creditor could be said to have created a waiver of its right to accelerate 'without at least implicitly giving prior notice of its intention to do so should default again occur.'" *See Kummli v. Myers,* 400 F.2d 774, 777 (1968) (quoting *Har-Rich Realty Corp. v. Am. Consumer Indus., Inc.,* 351 F.2d 785, 777 (1965)). There is also language in the notes suggesting that a waiver of a default can occur. *See* Section 3 of Exhibits A and E to the Motion (first sentence after subpart (d) ("Failure to exercise any of the options aforementioned or the failure to exercise any other option herein…shall not constitute a waiver

18

of the right to exercise the same *in the event of any subsequent default*.")).  Most importantly for
summary judgment purposes, the issue of waiver is always a question of fact.  *BDO USA, LLP v.
Jia-Sobota*, <mark>283 A.3d 699</mark> (D.C. 2022) (noting that the question of waiver is "a fact-intensive
inquiry.").

The Borrowers also presented testimony and documentary evidence at the TRO hearings
showing that the lender's own records did not list the loans in default status when the Notices of
Default were sent.  *See* Exhibit 7 (Exhibit S from the Developer RE1 TRO Hearing showing that
both loans for Developer RE1 were listed as "current").  The lender's records reflect the same for
423 Kennedy.  *See* screenprint from the lender's records attached hereto as Exhibit 8.  With
respect to 423 Kennedy, the lender sent multiple payoff statements to 423 Kennedy, that, until
December 8, 2022 did not include any default interest or default penalties that clearly, if not
conclusively, supports a waiver defense and that the defaults alleged later were pre-textual.
Additionally, when Mr. Huertas was questioned about what types of default had occurred by
Developer RE1, he was not able to identify any type of default nor when the loans were current
or not.  *See* Exhibit 9 (excerpts from the deposition transcript where Mr. Huertas evaded multiple
questions, could not identify any specific reasons how Developer RE1 was in default, and
confirming that the lender's records did not list a "default" status until February 1, 2023).

As the Borrowers have valid defenses to enforcement of the loan documents and there are
material disputes of fact regarding DP Capital, the WCP Fund, SF NU, and JPK's intentional
interference with their refinancing of the Loan Documents, the request for summary judgment on
Count II should be denied.

19

D.     Defendants' Request as to Count IV (for Permanent Injunctive Relief)
       Should Be Rejected.

The sole basis of Defendants' request for entry of summary judgment on Count IV is

their claim that injunctive relief is not a separate cause of action.  Defendants' do not, however,

dispute that the Borrowers' may be entitled to injunctive relief.   Judge Scott implicitly rejected

this argument when it was raised in a prior Motion to Dismiss.  A copy of Judge Scott's April 7,

2023 Order is attached as Exhibit 10.   A copy of the transcript from the March 24, 2023 Initial

Scheduling Conference before Judge Scott is also attached as Exhibit 11.

The Defendants have not raised any new arguments on this issue, and relitigating the

same issue that a prior judge already decided is barred by the law of the case doctrine.  *See*

*Minick v. United States*, 506 A.2d 1115, 1117 (D.C. 1986) ("[t]he doctrine of law of the case

conserves judicial time and resources by discouraging 'multiple attempts to prevail on a single

question.'").   Because the Defendants do not deny the Borrowers' entitlement to injunctive

relief, the Court should not dismiss Count IV.  If the Court does not follow the law of the case

doctrine, it should alternatively decide that injunctive relief is an available remedy here.[6]

E.     Defendants Have Not Met Their Burden as to Count III and Count VI for
       Declaratory Judgment.

As a preliminary matter, while Defendants claim they are seeking summary judgment on

both Counts III and VI as to the Borrowers' causes of action for Declaratory Judgment, they fail

to substantively address Count VI.  To the extent Defendants request summary judgment on

---

[6]     *See, e.g., Sunlight Trading, LLC v. Potomac Abatement, Inc.*, 2019 D.C. Super. LEXIS
578, 13 (D.C. 2019). In *Sunlight,* a trial judge observed that it could dismiss an injunctive relief count
"based on stylistic preferences or deny its dismissal while acknowledging that it is merely a remedy."
The judge in *Sunlight* ultimately chose the latter option by explaining "that injunctive relief is
merely a remedy for the other independent causes of action."

Counts III and VI, they claim only that the Borrowers seek advisory opinions.  The Defendants are wrong.

It is well-established that parties to a contract may seek a declaratory judgment regarding the existence of a contract, dispute(s) under a contract, and what the contract states and/or allows.  *See Smith v. Wash. Post Co.,* 962 F. Supp. 2d 79, 89 (D.D.C. 2013) (explaining that "[p]arties to a contract may request a declaratory judgment stating whether a valid contract exists and, if so, what its provisions mean."); *see also Zlotnick v. Jack I. Bender & Sons, Inc.,* 285 F. Supp. 548, 555 (1968) (observing that "[d]eclaratory judgment is appropriate to interpret the written instrument running between the parties and to resolve their legal relationship.").  This is exactly what the Borrowers seek with Counts III and VI of the Complaint – legal determinations as to the rights of the parties under the Loan Documents.  *See* Complaint ¶¶ 230-35 and ¶¶ 250-55.

Defendants also suggest, without support, that the Borrowers seek advisory opinions in Count III.  But the cases they cite for support are inapposite here because the Borrowers do not seek an advisory opinion.  In *Pueschel,* a federal trial judge rejected a request that it issue what would amount to an advisory opinion on a dispute over the non-movant's objection to discovery requests.  *See Pueschel v. Nat'l Air Traffic Controllers' Ass'n* 606 F. Supp. 2d 82, 86 (D.D.C. 2009) (determining that "there is no concrete discovery dispute upon which to rule" after observing that the movant's motion "does not set forth the text of any discovery request to which the defendant objected, much less the text of any objection.").  But unlike the plaintiffs in *Pueschel,* the Borrowers here have set forth concrete disputes upon which they properly seek judicial determinations regarding the rights and liabilities under the Loan Documents.  *See* Complaint ¶¶ 230-35 and ¶¶ 250-55.  The Borrowers are entitled to the requested legal

21

determinations.  For these reasons, the Defendants' request for summary judgment as to Counts III and VI should be denied.

      F.    <u>The Borrowers Are Entitled to Additional Discovery to Oppose the Motion</u>

Under Fed. R. Civ. P. 56(d), if the Borrowers show by affidavit or declaration that they cannot present essential facts to justify their opposition, the Court can: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  Although the Borrowers believe that they have already demonstrated that there are multiple, material facts in dispute that preclude summary judgment, it should be noted that there are a variety of facts, documents, and information that the Borrowers are entitled to discover that would further support the Borrower's opposition to the Motion.  As the Borrowers noted at the outset, if the Borrowers take the corporate depositions of the Lender Defendants and the individuals that participated in the decisions and actions taken here, they are highly likely to find even more evidence to support their claims and defenses.  Those essential facts that would further support this opposition include:

- Confirming that the Lender Defendants have waived defaults related to the alleged late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to put pressure on the Borrowers related to the 2507 I Street project and to "make trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

22

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (<mark>ECF # 30</mark>, page 14).

## VI. CONCLUSION

There are multiple reasons why the Court must deny the Motions. For these reasons, and for any reasons that may be advanced at a hearing on the motions, Developer RE1, LLC and 423 Kennedy, LLC, respectfully request that this Honorable Court deny the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: April 18, 2025

/s/ James D. Sadowski
_____
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email:    jds@gdllaw.com | ebm@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of April, 2025, a true copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
_____
James D. Sadowski

23

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; SF NU, LLC; AND WCP<br>FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>*Defendants.* | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' LIST OF
MATERIAL FACTS NOT IN DISPUTE AND
LIST OF ADDITIONAL MATERIAL FACTS IN DISPUTE[1]**

| Defendants' "Material Facts Not in Dispute" | Plaintiffs' Response & Supporting Evidence |
| --- | --- |
| 1. On December 23, 2021, WCP loaned $4,103,000.00 to DRL, with the loan being evidenced by promissory notes for $3,579,000.00 (the "First DRL Note") and $524,000.00 (the "Second DRL Note"), respectively. *See* DRL Promissory Notes, attached hereto as Exhibits A and B. | The terms of the DRL Notes speak for themselves and are not disputed. |
| 2. The DRL Promissory Notes are each secured by a deed of trust (collectively, the "DRL Deeds of Trust") on the real property commonly known as 5501 First Street, NW, Washington, DC 20011 (the "DRL Property"). *See* DRL Deeds of Trust, attached hereto as Exhibits C and D. | The terms of the DRL Deeds of Trust speak for themselves and are not disputed. |
| 3. Four months later, on March 31, 2022, WCP loaned $9,945,693.00 to 423 Kennedy, with the loan being evidenced by promissory notes for $8,689,693.00 (the "First 423 Kennedy Note") and $1,256,000.00 (the "Second 423 Kennedy Note"). *See* 423 Kennedy Notes, attached hereto as Exhibits E and F. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 4. The 423 Kennedy Notes are each secured by a deed of trust (collectively, the "423 Kennedy Deeds of Trust") on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (the "423 Kennedy Property"). *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H. | The terms of the 423 Kennedy Deeds of Trust speak for themselves and are not disputed. |

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

| | |
|---|---|
| 5. Pursuant to the Second DRL Note, DRL was required to make monthly interest payments to WCP. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | The terms of the Second DRL Note speak for themselves and are not disputed. |
| 6. DRL failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some thirteen days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 4. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 7. DRL failed to timely make the monthly interest payment due on October 1, 2022, with the payment coming some five days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 5. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 8. DRL failed to timely make the monthly interest payment due on November 1, 2022, with the payment coming some eight days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 6. | Denied/disputed. The timing of payments is not disputed, but Developer RE1 has valid defenses to all of the alleged defaults (both factually and legally). Judge Scott also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 7 to the Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |

| | |
|---|---|
| 9. Pursuant to the Second DRL Note, DRL was required to pay the Second DRL Note at maturity on December 24, 2022. *See* Second DRL Note, attached hereto as Exhibit B, at § 3. | Denied/disputed. The terms of the Second DRL Note speak for themselves and are not disputed. But Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 10. DRL failed to pay the Second DRL Note at maturity and has failed to pay the note at all times since. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 7. | Denied/disputed. Developer RE1 has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine and other legal and equitable defenses. |
| 11. The DRL Deeds of Trust require DRL to pay all taxes and obligations in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of the lenders. *See* DRL Deeds of Trust, attached hereto as Exhibits C and D, at § 4.2. | Denied/disputed. The terms of the DRL Deeds of Trust speak for themselves and are not disputed. But Developer RE1 has valid defenses and a right to cure an alleged lien default prior to a foreclosure. |
| 12. DRL failed to pay water and sewer bills, causing a $44,857.93 lien to be placed upon the DRL Property in August 2022. *See* Water and Sewer Lien, attached hereto as Exhibit J. | Denied/disputed. Developer RE1 disputes this purported fact as the record demonstrates that Developer RE1 did not timely receive the water and sewer bills that resulted in the referenced lien. Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022. Developer RE1 did not receive the invoices 2/23/22, 3/18/22, 4/19/22, and 6/16/22 until August 31, 2022.  Negussie Decl. ¶ 11. Judge Scott also made findings that Developer RE1 took immediate steps to resolve the lien and this could not serve as a basis for a default. *See* Exhibit 6 to the Borrowers' Opposition. The lender's own records show that the loan was never in default status as a result of this |

| | lien. *See* Exhibit 7 to the Borrowers' Opposition. |
|---|---|
| 13. DRL also failed to timely pay more than $16,700.00 in taxes on the DRL Property for the second half of 2022, causing another senior lien to accrue. *See* Tax Payment History, attached hereto as Exhibit K (showing interest and penalties to have been assessed). | Disputed. Developer RE1 disputes this purported fact as it paid the taxes on the Developer RE1 Property. Negussie Decl. ¶ 12.<br><br>The lender's own records show that the loan was never in default status as a result of this lien. *See* Exhibit 7 to the Borrowers' Opposition. |
| 14. DRL defaulted under the terms of the Second DRL Note and the DRL Deeds of Trust at least six times, with three defaults coming in the form of late interest payments, one default coming in the form of a failure to pay the note at maturity, and two defaults coming in the form of permitting senior liens to accrue on the DRL Property.[2] | Developer RE1 presented evidence at the Developer RE1 TRO Hearing showing that the lender's own records did not list the loans in default status when the Notices of Default were sent. *See* Exhibit 7 to the Borrowers' Opposition and Exhibit S from the Developer RE1 TRO Hearing (showing that both loans for Developer RE1 were listed as "current").<br><br>This alleged fact is also disputed because at his deposition, Mr. Huertas could not state what DRL loans were current and what loans were not current. *See* Exhibit 9 to Opposition (excerpts from the deposition transcript where Mr. Huertas evaded multiple questions, could not identify any specific reasons how Developer RE1 was in default, and confirmed that the lender's records did not list a "default" status until February 1, 2023).<br><br>Developer RE1 further disputes this purported fact as WCP accepted all payments Developer RE1 made. Negussie Decl. ¶13.<br><br>Developer RE1 also disputes this purported fact because the Lander Defendants interfered with, and prevented, the refinancing of the loans that Developer RE1 had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 14. |

| | This summary of alleged defaults is also disputed for the reasons previously stated in the prior references to these alleged defaults. |
|---|---|
| 15. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to make an interest payment of $12,560.00 on or before the first day of each month. *See* Second 423 Kennedy Note, attached hereto as Exhibit F, at § 3. | The terms of the 423 Kennedy Notes speak for themselves and are not disputed. |
| 16. 423 Kennedy failed to timely make the monthly interest payment due on May 1, 2022, with the payment coming some 74 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 8. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
| 17. 423 Kennedy failed to timely make the monthly interest payment due on June 1, 2022, with the payment coming some 43 days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 9. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 18. 423 Kennedy failed to timely make the monthly interest payment due on July 1, 2022, with the payment coming some 13 days late. *See* | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were |

| | |
|---|---|
| Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 10. | either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. *See* Exhibit 8 to the Borrowers' Opposition. |
| 19. 423 Kennedy failed to timely make the monthly interest payment due on December 1, 2022, with the payment coming some seven days late. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 11. | Denied/disputed. The timing of payments is not disputed, but 423 Kennedy has valid defenses to all of the alleged defaults (both factually and legally). Judge Lee also made findings that any alleged late payments were either excused or waived, and could not serve as a basis for a default. *See* Exhibit 5 to the Borrowers' Opposition. The lender's records also show that all payments were current. *See* Exhibit 8 to the Borrowers' Opposition. There are material facts in dispute as to any alleged "late" payments and as to a waiver defense. |
| 20. 423 Kennedy failed to make the monthly interest payment due on January 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 12. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 21. 423 Kennedy failed to make the monthly interest payment due on February 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 13. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 22. 423 Kennedy failed to make the monthly interest payment due on March 1, 2023, with the payment having never been made. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 14. | Denied/disputed. 423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |

| 23. Pursuant to the Second 423 Kennedy Note, 423 Kennedy was required to pay the Second 423 Kennedy Note, in full, not later than March 31, 2023. *See* Second 423 Kennedy Note, Ex. F, at § 3. | Denied/disputed.  423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 24. The Second 423 Kennedy Note was not paid at maturity and remains unpaid. *See* Declaration of Christina Araujo, attached hereto as Exhibit I, at ¶ 15. | Denied/disputed.  423 Kennedy has valid defenses to payment of all payments due after the Lender Defendants intentionally interfered with the refinancing in December 2022, such as the prevention doctrine, first breach, and other legal and equitable defenses. |
| 25. Pursuant to the 423 Kennedy Deeds of Trust, 423 Kennedy was to pay all obligations to third parties as they came due and ensure the 423 Kennedy Property remained free of municipal liens. *See* 423 Kennedy Deeds of Trust, attached hereto as Exhibits G and H, at § 1.0; 4.1-4.2; 5.1; 7.1. | The terms of the 423 Deeds of Trust are not disputed. |
| 26. On November 17, 2022, 423 Kennedy allowed a senior lien in favor of the District of Columbia Department of Buildings to accrue on the 423 Kennedy Property. *See* Department of Buildings Lien, attached hereto as Exhibit L. | Denied/disputed.  423 Kennedy was not aware of the lien, and when it became aware, it immediately took steps to resolve it.<br><br>Judge Lee also made a finding that 423 Kennedy took immediate steps to resolve the lien and that it was highly questionable this $500 fine could validly serve as a basis for a default on a multi-million dollar project.  *See* Exhibit 5 to the Borrowers' Opposition.<br><br>The lender's own records show that the loan was never in default status as a result of this lien.  *See* Exhibit 8 to the Borrowers' Opposition. |
| 27. In total, 423 Kennedy defaulted under the Second 423 Kennedy Note and the 423 Deeds of Trust some nine times, | Disputed/denied.  423 Kennedy presented evidence at its TRO Hearing showing that the lender's own records did not list the loans in |

| | |
|---|---|
| with four defaults coming in the form of late interest payments, three defaults coming in the form of interest payments being missed altogether, one default coming in the form of a failure to pay the debt at maturity, and one default coming in the form of allowing a municipal lien to erode that of the lender's from above.[3] | default status when the Notices of Default were sent. *See* Exhibit 8 to the Opposition.<br><br>423 Kennedy disputes this purported fact as it the lender who held the loan documents at the time of the alleged defaults who first breached the same with their refusal to provide construction draws. Negussie Decl. ¶ 16.<br><br>423 Kennedy further disputes this purported fact as WCP accepted all payments 423 Kennedy made. Negussie Decl. ¶ 13.<br><br>423 Kennedy also disputes this purported fact as the Lender Defendants interfered with – and—prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of securing with Main Street Bank. Negussie Decl. ¶ 15.<br><br>423 Kennedy had valid legal and factual defenses to the alleged defaults, such as first breach, the prevention doctrine, and waiver. |

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## DECLARATION OF MEL NEGUSSIE[1]

    I, Mel Negussie, am over 18 years of age, have personal knowledge of the facts set forth herein, and declare as follows:

---

[1] To the extent a defined term used herein is not defined, it carries the same meaning as defined in Plaintiffs' Opposition to Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

1.      423 Kennedy St Holdings, LLC ("423 Kennedy") is a domestic, sole purpose, limited liability company that owns the real property known as 423 Kennedy, N.W., Lot 56, Square 3260 (the "423 Kennedy Property").

2.      Developer RE1, LLC ("Developer RE1") is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "5501 1st Street Property").

3.      I am a member of both Developer RE1 and 423 Kennedy.

4.      The sole purpose of 423 Kennedy is to own and develop the 423 Kennedy Property.

5.      The sole purpose of Developer RE1 is to own and develop the 5501 1st Street Property.

6.      In January of 2020, DP Capital LLC d/b/a Washington Capital Partners ("WCP") helped 423 Kennedy obtain a construction finance loan for the 423 Kennedy Property, which original loan was later refinanced.  WCP Fund I, LLC ("WCP Fund") is the lender under the loan documents.

7.      On December 23, 2021, WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the 5501 1st Street Property, which original loan was later refinanced. WCP Fund is the lender under the loan documents.

8.      By December 8, 2022, Developer RE1 and 423 Kennedy had made all payments due under the loan documents referenced herein.

9.      On December 8, 2022, I received two unsigned Notices of Default by email, one regarding the 5501 1st Street Property and the other regarding the 423 Kennedy Property. Neither Notice of Default set forth a default.  The email also included Payoff Statements.  The

2

Payoff Statements demanded additional amounts of $727,598.77 (for Developer RE1) and $1.5

million (for 423 Kennedy) for "Default Interest" and "Default Penalt[ies]."

10.     As a direct result of the wrongful conduct of Defendants, Developer RE1 and 423

Kennedy were forced to initiate and/or maintain legal action to protect their rights under the loan

documents referenced herein. As a result, the Borrowers have incurred and continue to incur

attorneys' fees and costs.

11.     Developer RE1 first became aware that there may be outstanding DC Water

invoices on or about August 31, 2022.  Developer RE1 did not receive the invoices 2/23/22,

3/18/22, 4/19/22, and 6/16/22 until August 31, 2022.

12.     Developer RE1 paid all taxes on the Developer RE1 Property.

13.     All interest payments made by the Developer RE1 and 423 Kennedy were

accepted by WCP.

14.     The "Notice of Default" WCP issued to Developer RE1 interfered with –and—

prevented the refinancing of the loans that  Developer RE1 had secured, or was in the process of

securing with Main Street Bank.

15.     The "Notice of Default" WCP issued to 423 Kennedy interfered with –and—

prevented the refinancing of the loans that 423 Kennedy had secured, or was in the process of

securing with Main Street Bank.

16.     On or about October 6, 2022, Mr. Huertas informed 423 Kennedy by telephone

that the WCP would no longer provide construction draws to 423 Kennedy.

17.     Developer RE1 and 423 Kennedy were not required to make interest payments

after Defendants breached the Loan Documents.

3

18.    The Borrowers have already suffered damages as a result of Defendants'
misconduct to include damages caused by their inability to refinance the loans, rising interest
rates, hundreds of thousands of dollars in legal expenses, and their inability to complete the
projects.  There will also be damages for the increased costs to complete the projects as a result
of supply chain shortages and inflation.  As to 423 Kennedy, there are likely damages to the
building at the 423 Kennedy Property because it has been vacant and open to environmental
elements.  Both Borrowers have incurred carrying costs, such as property taxes, insurance, and
payments to vendors.  Both Borrowers have suffered reputational damages.  I have personally
fielded questions from other developers and financers about why the projects at the 423 Kennedy
Property and the 5501 1st Street Property were not completed.

19.    Due to nearly all of the factors listed above, and a now depressed sales market,
there is very little chance that either project will result in a profit.

20.    Developer RE1 and 423 Kennedy seek to discover information and documents as
to the Defendants' actions in relation to the loan documents referenced herein to include the
following:

- Confirming that the Lender Defendants have waived defaults related to the alleged
late payments and that they were not damaged by any alleged defaults;

- Further confirming that the Lender Defendants and did not consider any of the loans
to be in default for any reason prior to December 8, 2022;

- Confirming that Jason Shrensky (of SF NU) was the person that told Mr. Huertas to
put pressure on the Borrowers related to the 2507 I Street project and to "make
trouble" for the Borrowers and Mr. Negussie;

- Reviewing Mr. Drazin;s legal invoices to confirm that work related to justifying the defaults was performed after-the-fact; and

- All of the facts listed in the bullet points in the Borrower's Opposition to Mr. Drazin's Motion for Summary Judgment (ECF # 30, page 14).

21.    The facts alleged in the Third Amended Complaint are true and correct to the best of my knowledge.

22.    I testified truthfully at two different TRO hearings held on Friday, July 21, 2023 and Wednesday, July 26, 2023.

23.    The decisions entering a TRO issued by both Judge Milton Lee and Judge Ebony Scott accurately reflect and summarize most of the testimony that I gave at the two TRO hearings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of April, 2025

_____

Mel Negussie

5

## D.C. Code § 28-3104

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code  >  Division V. Local Business Affairs. (Titles 25 — 37)  >  Title 28. Commercial Instruments and Transactions. (Subts. I — II)  >  Subtitle II. Other Commercial Transactions. (Chs. 21 — 54)  >  Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3104. Transfers fraudulent as to present and future creditors.

**(a)**  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

**(1)**  With actual intent to hinder, delay, or defraud any creditor of the debtor; or

**(2)**  Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

**(A)**  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

**(B)**  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

**(b)**  In determining actual intent under subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

**(1)**  The transfer or obligation was to an insider;

**(2)**  The debtor retained possession or control of the property transferred after the transfer;

**(3)**  The transfer or obligation was disclosed or concealed;

**(4)**  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

**(5)**  The transfer was of substantially all the debtor's assets;

**(6)**  The debtor absconded;

**(7)**  The debtor removed or concealed assets;

**(8)**  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

**(9)**  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

**(10)**  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

**(11)**  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, *42 DCR 6773*.)

Erin McAuliffe

Case 25-10037-ELG    Doc 54-3    Filed 09/08/25    Entered 09/08/25 19:05:04    Desc
Exhibit Exhibit DC Code Transfers Page 274 of Page 276 of 443
§ 28-3104. Transfers fraudulent as to present and future creditors.

Annotations

# Notes

**Prior Codifications.**

1981 Ed., *§ 28-3104.*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *§ 28-3101.*

**Editor's notes.**

Uniform Law: This section is based upon § 4 of the Uniform Fraudulent Transfer Act.

# CASE NOTES

> **Attachment.**

> **Transfer.**

**Attachment.**

Client's judgment lien did not automatically attach to the attorney's "share" of the property upon the divorce, because he had no such share as the property was owned solely by the wife, as resolved by the couple's property settlement agreement, the divorce decree, and the warranty deed; the Superior Court did not err in denying the client's motion for a determination that the property was dually owned by the couple, and the property was not an assert of the attorney that could be the subject of a transfer that was fraudulent, and the client had at no time a right to attach the property. *Blount v. Padgett, 261 A.3d 200, 2021 D.C. App. LEXIS 294 (D.C. 2021)*.

**Transfer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64. 2-2603(G), a disclaimer was not a transfer. *Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020)*.

# Research References & Practice Aids

**Section references.**

This section is referenced in *§ 28-3103*, *§ 28-3108*, and *§ 28-3109.*

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

## D.C. Code § 28-3105

*** The Official Code is current through March 20, 2025 ***

*District of Columbia Official Code  >  Division V. Local Business Affairs. (Titles 25 — 37)  >  Title 28. Commercial Instruments and Transactions. (Subts. I — II)  >  Subtitle II. Other Commercial Transactions. (Chs. 21 — 54)  >  Chapter 31. Fraudulent Conveyances. (§§ 28-3101 — 28-3111)*

## § 28-3105. Transfers fraudulent as to present creditors.

**(a)**  A transfer made, or obligation incurred, by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

**(b)**  A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

## History

(Feb. 9, 1996, D.C. Law 11-83, § 2, *42 DCR 6773*.)

Annotations

## Notes

**Prior Codifications.**

1981 Ed., *§ 28-3105.*

**Legislative history of Law 11-83.**

For legislative history of D.C. Law 11-83, see Historical and Statutory Notes following *§ 28-3101.*

**Editor's notes.**

Uniform Law: This section is based upon § 5 of the Uniform Fraudulent Transfer Act.

## CASE NOTES

**Disclaimer.**

Chapter 7 trustee's complaint failed to allege that debtor effectively transferred her interest in property through the disclaimer of her interest in a trust because, pursuant to Va. Code § 64.2-2603(G), a disclaimer was not a transfer. *Webster v. TCA TrustCorp Am. (In re Du Hancourt), 2020 Bankr. LEXIS 3305 (Bankr. D.D.C. Nov. 24, 2020).*

# Research References & Practice Aids

**Section references.**

This section is referenced in § 28-3103, § 28-3108, and § 28-3109.

District of Columbia Official Code
Copyright © 2025 All rights reserved.

**End of Document**

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **423 KENNEDY ST HOLDINGS LLC,** | : |
| **Plaintiff** | : |
| | : |
| | : |
| **vs** | : ==Docket No. 2023== CAB 4260 |
| | : |
| | : |
| **DP CAPITAL /D/B/A WASHINGTON** | : |
| **PARTNERS, ET. AL.** | : |
| **Defendant** | : |

**ORDER**

On July 13, 2023, plaintiff filed a Complaint seeking relief for: Breach of

Contract (Count 1); tortious interference with business relations (Court II); breach of

duty of good faith and fair dealing (Count III); breach of fiduciary duty by the trustee

(Count VI).  The Complaint also seeks declaratory judgments regarding the meaning

of provisions in the two Deeds of Trusts and a determination that the liquidated

damages provisions are unenforceable because those provisions constitute a penalty

(Count IV).  Plaintiff also makes a claim that the trustee cannot serve in that position

because of the existence of a conflict (Count VII).  Finally, in Count V plaintiff's

seeks injunctive relief to stop a foreclosure sale scheduled for July 25, 2023 (Count

V).

On July 18, 2023, plaintiffs filed an Emergency Motion for a Temporary

Restraining Order to Prevent an Imminent Foreclosure Sale.  On July, 20, 2023

defendants filed an opposition.  The parties appeared for a hearing on July 21, 2023.

In determining whether to grant a request for temporary restraining order,

plaintiff must demonstrate: 1) the likelihood of irreparable injury in the absence of the

requested injunction; 2) the likelihood of success on the merits for the underlying; 3)
that the balance of injuries favors granting an injunction, and 4) that the public
interest would be served by granting the request for an injunction. *Ifill v. District of
Columbia,* 665 A.2d 185, 187-88 (D.C. 1995). The moving party has the burden to
demonstrate that each of the factors, taken together, weigh in favor of issuing an
injunction. *Davis v. Pension Be. Guar. Corp.,* 571 F.3d 1288 (D.C. D.C. Cir. 2009).

**I. Likelihood of Success on the Merits**

    **A. The Breach of Contract Claim**

        To prevail on the breach of contract claim plaintiff must establish: 1) the
existence of a valid contract between the parties; 2) an obligation or duty arising out
of the contract; 3) a breach of that duty; 4) damages caused by the breach. *Tsintolas
Realty Co. v. Mendez,* 984 A.2d 181, 186 (D.C. 2009). There is no real dispute
regarding whether there was a valid contract between the parties. The parties do not
agree on what is included in the terms of the contract and whether there was a breach.

        In support of the claim of breach contract, plaintiffs argue that defendants
improperly discontinued performance of the contract by stopping construction draws
for the 423 Kennedy Street property (the project). When defendants discontinued
construction draws, they knew that plaintiff would not be able to move forward with
the project. Shortly after the construction draws stopped, defendant gave notice of
default to plaintiffs. Plaintiffs claim that there is no basis for the default because
plaintiffs had complied with the terms of both deeds of trust and the reasons advanced
by defendants for the default is nothing more than a pretext. According to plaintiff,
the real reason for the default was to create leverage against plaintiffs to force them to

address a problem with an unrelated construction project and, alternatively, to gain control of the 423 Kennedy Street project before its completion. Plaintiffs argues that it is defendants initial breach of the deeds of trust that caused plaintiff to be unable to continue to make payments on the deeds.

Defendants contend that plaintiff was in default on the second deed of trust because plaintiffs continually made late payments the loan. In addition, defendant argues that plaintiff was in default because the District of Columbia Department of Regulatory Affairs issued a Notice of Infraction on November 17, 2021 and the fine due on that infraction remained unpaid causing a lien to be placed on the 423 property. Based on the terms of the deed of trust, defendants argue, that this failure to cure the lien caused by the failure to pay the infraction created a basis to default loan.[1] Lastly, defendants claim that plaintiffs have defaulted on the loan because they failed to make the payments necessary by the maturity date of the loan.

At the hearing, Mel Negussie testified that he is a 50 percent owner of 423 Kennedy ST. Holdings along with several small investors known as Brighton KSDC that owns the remaining shares. 423 Kennedy ST. Holdings is a sole purpose, limited liability company that owns and has developed the 423 Kennedy Street property. According to Mr. Negussie, his company entered into a construction financing loan with the defendants and executed two deeds of trusts and two commercial deeds of trust for each deed on March 31, 2022. Approximately 50% of the project was completed at the time of the refinancing. The first commercial deed of trust was for $8,689,693.00 and the second deed of trust was for $1,256.000.00. Defendants claim that a default occurred on the second deed of trust only.

---

[1] Def. opp. at 2.

According to Mr. Negussie there is no default.  During his testimony, Mr. Negussie indicated that each of the interest payments required by the second deed of trust were made on time except for the first payment.  The first payment was due on May 1, 2022.  That payment was not made on time because, as Mr. Negussie testified, all parties to the second deed of trust worked under the idea that the second deed included an escrow account that would be responsible for the payments in a manner that was identical to the first deed of trust.  When Mr. Negussie was notified by the lender of the failure to make the first payment, he testified that he immediately addressed the issue and payment was made in early July 2022.  Plaintiff further testified that all future payments were made on time or within the grace period created in the deed,[2] and plaintiffs' obligation on the loan was current through the end of 2022.

Mr. Negussie testified that in October 2022 there was a conversation with Daniel Huertas, the CEO of Washington Capital Partners.  Mr. Huertas informed Negussie that there would be no further construction draws for the project.  According to Negussie, the reason for the discontinuance of the construction draws was that Negussie participated in business dealing with Charles Paret, and that investors in that project were unhappy with Paret and the progress of a project known as 2507 I St Holdings.  Negussie testified that he was shocked by this development because all parties knew that without construction draws the project could not move forward and would not be completed on time.   Negussie testified that Huertas informed him that the project would continue if Negussie and his investors covered a $700,000 dollar shortfall that was created in 2507 I St. project and the failure to do so

---

[2] Plain. Exh. B.

would result in trouble because the investors were wealthy. According to Negussie, Huertas indicated that covering the $700,000 shortfall on the 2507 I ST project would be the right thing to do or otherwise the holders of the 423 Kennedy project would make trouble. 423 Kennedy ST. Holdings refuse to accede to Huertas' demands.

Negussie testified that these developments forced him and his partners to refinance the loan with defendants, so he began discussions with Main Street Bank. At this point, WCP had forwarded payoff statements to Negussie as he made efforts to refinance. Those payoff statements did not reflect a default or late fees.[3] On or about December 8, 2022, Huertas informed plaintiffs that all prior payoff statements would be withdrawn, and that he was defaulting all loans for 423 Kennedy including a separate property under development. Defendants almost immediately forwarded notice of default documents dated December 8, 2022 to plaintiffs.[4]

On that same day, Negussie received two new payoff statements[5] that included default interest of $97,130.67 and a default penalty of $125,600 on the second loan.[6] When Negussie called Huertas to inquire about the reason for the default, Huertas explained that Negussie would have to contact WCP's counsel, Russel Drazin. On December 9, 2022, Russell Drazin authored an email to counsel for 423 ST. Holdings that indicated that the email "amplifies and supersedes the Notices of Default issued" on December 8, 2022.[7] The only basis for the default included in that email was a reference to Section 7.9 of the Deeds of Trust that

---

[3] Plain. Exh. C, D, G and H.
[4] Plain. Exh. K and L.
[5] Plain. Exh. I and J.
[6] WCP included separate payoff statements for the first deed as well and that document included a default interest amount of $456,927.95 and a default penalty of $868.969.30.
[7] Plain. Exh. M.

provides that "any default or breach of any other loans, obligations, etc. of the borrower or borrower's affiliates is an Event of Default." Immediately below that passage, the email referenced the issuance of a District of Columbia Certificate of Delinquent Fines dated November 17, 2022. Drazin further indicated that any unpaid principal, accrued interest, and any other charges would become immediately due and payable prior to the maturity date.

Plaintiff claims that it is likely to prevail on the merits of its breach of contract claim because defendants' basis for default are a pretext and the stoppage of construction draws was an improper, purposeful act undertaken by defendant to cause the default on the loan because plaintiff would not be able to continue with the project without the construction draws. Once construction draws ceased, plaintiff could not make interest payments in 2023 and would not be able to make payments necessary by the March 31, 2023 maturity date.

During cross-examination, Mr. Negussie agreed that the loan matured on March 31, 2023 and that plaintiffs had made no payments since the December 2022 interest payment. Negussie also agreed that defendants' Exhibit 7 reflected the payment dates on the account including a delayed payment for May 2022.[8]

Defendants argue that plaintiffs are in default because: 1) payments on the loan were consistently late each month, 2) of the Certificate of Delinquent Fines issued by the District of Columbia Department of Regulatory Affairs, and 3) plaintiffs made no interest payments in 2023 and did not satisfy the loan by the maturity date of March 31, 2023.[9]

---

[8] This document was admitted over objection during defendants' case-in-chief.
[9] Def. Exh. 7.

There is no dispute that the parties had a contract related to the construction project known as 423 Kennedy Street.  There is, however, a dispute regarding whether the deeds of trust and commercial deeds of trust created an obligation for WCP to make construction draws available during the course of construction. Plaintiff argues that the HUD-1 and HUD-2 documents that were executed with the deeds of trust and signed by the parties make a direct reference to the construction draws including the total amount available during the life of the loan.  Plaintiffs argues that because all parties knew that construction draws were a necessary part of the project and that the draws where consistently advanced by defendants through October 2022 thereby creating a detrimental reliance on defendants conduct until Daniel Huertas improperly announced that there would be no future draws.[10] Plaintiffs contend that the terms of the HUD documents coupled with defendants' consistent payment of the draws through October 2022 created an obligation and expectation that defendants would continue to make draws.  Plaintiffs relied on the construction draw commitments to their detriment.

Defendants argue that construction draws were not a part of the deeds of trust or the commercial deeds, and that the second deed of trust contained no provision or reference to the construction draws.  In addition, the HUD documents reference to construction draws is nothing more than "a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing."[11]  Moreover, defendants contend that, if the Court were to conclude that the construction draws were a bargained for part of the loan contract, violation of the

---

[10] See Plain. Exh. E dated November 3, 2022.
[11] Def. opp. at 8-9.

construction draw provision provides a basis for a claim of monetary damages and not injunctive relief.[12]

The testimony from the hearing established that plaintiffs and defendants entered into a construction loan that obligated plaintiffs to make interest payments beginning May 1, 2022. Defendants provided notice there would be no further construction draws after October 2022.[13] In that same email Daniel Huertas inquired about the "status of the payoffs of both loans." Defendants previously issued payoff statements dated October 24, 2022 that made no reference to a default, late fees or any accelerated payments.[14] The payoff statement for the first deed of trust does reference a construction draw balance of $2,703,485.96. There is no reference to a construction draw for the second deed of trust. A second set of payoff statements was issued on November 21, 2022 that reflected no evidence of a default or lates fee but did reference the same amount due as a construction draw balance.[15] The evidence established that plaintiffs learned from Huertas that there would no more construction draws sometime in late October 2022. Negussie testified that based on the absence of additional construction draws, Huertas understood that plaintiffs would have to obtain new financing. Huertas' knowledge of plaintiffs' effort to obtain new financing is reflected in a November 3rd email exchange between Huertas and Negussie where the payoffs of both loans was discussed,[16] and later in a November 15th email where Huertas specifically referenced "the refinance process on both projects."[17]

---

[12] *Id*, at 10.
[13] Plain. Exh. E is an email from Daniel Huertas to Mel Negussie that references the stoppage of construction draws.
[14] Plain. Exh. D and E.
[15] Plain. Exh. G and H.
[16] Plain. Exh. E.
[17] Plain. Exh. F.

Notwithstanding defendants' knowledge that plaintiffs were engaged in ongoing efforts to obtain new financing, Negussie learned that defendants' intended to place the 423 Kennedy Street project in default and would withdraw all previous payoff statements during an exchange with Huertas on December 7, 2022. The following day plaintiffs received a notice of default on the Kennedy Street project as well as a project known as 5505 1st Street. Also on December 8, 2022, defendants issued two new payoff statements that for the first time made a demand for default interest and a default penalty.[18] Neither notice identifies the basis for the default. Each of the payoff statements make no reference to unpaid late fees. Huertas instructed Negussie to contact WPC counsel Russell Drazin for additional information. The next day, Drazin forwarded an email that for the first time indicated that the issuance of the Certificate of Delinquent Fines dated 17, 2022 was the basis for the default.[19]

Mr. Negussie testified in a very credible manner regarding the facts and circumstances related to the loan agreement with defendants. While there is some question regarding whether the terms related to the construction draws were actually included in the contract, it is clear from Negussie's testimony that all parties operated in a manner that indicates that both parties believed that the construction draw was a part of the agreement. In support this conclusion, Negussie testified that at the closing all parties signed each of the four deeds as well as the term sheet that detailed the amount due on the construction draws. Because the HUD documents where not admitted into evidence it remains unclear whether all parties signed those documents.? What is clear is that Negussie testified that there was a discussion of the

---

[18] Plain. Exh. K and L.
[19] Plain. Exh. M.

construction draws at the closing and that the HUD documents specifically referenced payments as construction draws.  Perhaps some of the most compelling evidence supporting the fact that the construction draws were part of the contract is that the payoff statements that reflect the terms of payments between the parties includes a reference to a construction draw balance that remained due.  In addition, Negussie testified that construction draws were consistently distributed for five or six months following each request made by plaintiffs with the last payment occurring in October 2022.  These facts are sufficient to establish that the parties acted as if the construction draws were part of the agreement that obligated the parties and that the parties understood that the construction draws were an essential part of the agreement because the project could not move forward without those funds being available to plaintiffs.  Defendants argue that the failure of defendants to make construction draws does not excuse plaintiffs' noncompliance with the second deeds because there was no requirement for a construction draw on that agreement.  Defendants' argument glosses over the point that both deeds and their commercial counterparts were identical in almost all respects, were executed at the same time and were part and parcel of the same objective of the parties: the refinancing and development of the 423 Kennedy Street mixed use project.  Too conclude otherwise is to simply ignore the uncontroverted testimony of Negussie on each of these points and the objective facts that support that testimony.  The testimony further established that the parties treated the construction draws as a part of the contract and plaintiffs relied on those terms to their detriment.

Defendant contends that the default was based on plaintiffs' history of late payments, the lien placed on the 423 Kennedy Street property, the failure to make interest payments in 2023 and the failure to satisfy the demands of the loan by the maturity date. In regard to the late payments claim, the testimony of Mr. Negussie and a review of defendants' own records related to the payment history demonstrate that late payments could not be a legitimate basis for the default. First, Negussie testified that all payments were timely made except for the first payment that was delayed because both parties filed to recognize that the second deed of trust did not have an escrow provision that would have automatically made the payments. It appears that this was a simple oversight by all parties and that once Negussie was made aware of this oversight, plaintiffs acted appropriately to rectify the problem. Second, Negussie testified that he had multiple discussions with defendants, and they continually assured him that there were no problems with payments. According to Negussie, the WCP payment portal website that reflects payment history always reflected that the account was current. Negussie also testified that the payment portal often displayed payments as having been made after the first of the month deadline because there were regular problems with getting the payments through the portal and credited on the account accurately. Again, defendants' own documents, defendant Exh. 7, support this contention and reflects that payments were timely made after the escrow error was addressed.

Defendants suggest that the default was proper because plaintiffs failed to cure a lien that was placed on the 423 Kennedy Street property by the Department of Consumer Affairs for a violation identified as a "Prohibitive Excessive Vegetative

Growth."[20]   As Mr. Negussie testified, plaintiffs were not aware of the $500 violation

for failure to cut the grass because the notice of infraction (NOI) was mailed to an

incorrect address.  The Office of Administrative Hearings issued a final order

regarding the NOI on September 7, 2022.  Once 423 Kennedy Street members

learned of the final order an appeal was filed.  Negussie testified that instead of

waiting for the appeal to be addressed, 423 Kennedy elected to pay the minimal fine.

It is difficult for the Court to conclude that defendants realistically believed that it

was appropriate or legally proper to base a default for multi-million dollar protect on

a $500 fine that plaintiffs did know about and was cured almost immediately after

plaintiffs learned of the lien through the default.  Section 7.6 of the deed of trust

addresses the issue of liens on the property.  That provision indicates that plaintiffs

had the right to discharge or appeal any lien within the 30 days of the judgment.  The

Office of Administrate Hearings final order was issued on December 11, 2022 and

that order vacated the lien because the fines had been paid by 423 Kennedy.  Mr.

Negussie's testified credibly on these points and demonstrated that 423 Kennedy

acted promptly to resolve the lien once they learned of the existence of the violation.

Defendants' final basis for the default relates to the failure of plaintiffs to

make interest payments on the loan in 2023 and the failure to satisfy the loan by the

maturity date.[21]  The reasons for the failed interest payments leading up to the

maturity date is accurately described by plaintiffs as a problem of defendants' own

---

[20] Plain. Exh. M.

[21] Defendants also contend that section 7.9 of the deeds of trust permit a default because Negussie's
connection as an affiliate of Developer REI.  This does order not address that basis for the default
because the only testimony on this point was received from Mr. Negussie who indicated under oath
that he was affiliated with Developer REI.  Based on that uncontroverted testimony the record
indicates that there was no basis for a default based on an affiliation.

creation.  This Court concludes that there is sufficient reliable evidence to conclude

that plaintiffs would have continued to make interest payments on the loan but for

defendants' unilateral decision to discontinue the agreed upon construction draws.

Even after the construction draws were discontinued, plaintiffs continued to make

monthly until the end of 2022.  There is no reason to believe that plaintiffs would not

have made payments by the maturity date given that the project was 75-80%

completed when the construction draws stopped.  Negussie's testimony that Huertas

discontinued the construction draws because the lenders were unhappy with work on

the Charles Paret project further supports plaintiffs' contention that the default was

actually a pretext.  Negussie testified that Huertas wanted 423 Kennedy to rescue the

Paret project by covering a $700,000 shortfall.  When Negussie refused to address the

shortfall created in a project that he was not involved with, it was not until then that

construction draws were discontinued, payoff statements were withdrawn and default

notices were issued.  It is more than curious that defendants issued a default notice on

the second deed that did not contain a construction draw provision while at the same

time included default notice on the 5501 1st Street project also under construction by

Negussie.

Based on the foregoing, plaintiffs are likely to prevail on the claim for breach

of contract.  The evidence presented by plaintiffs is more than sufficient to support

the conclusion that the defendants' claims that plaintiffs defaulted on the loans is a

pretext.  A breach of the terms of a contract means an unjustified failure to perform

all of any part of what is promised in the contract.  *District Cablevision v. Limited*

*Partnership v. Bassin,* 828 A.2d 714, 729 (D.C. 2003).  The record adequately

demonstrates an unjustified failure to perform the terms of the contract between the

parties and that initial breach caused plaintiff to be unable to make future payments

on the loan.

### B.  The Tortious Interference with Business Claim

On the intentional interference with business claim, plaintiff must demonstrate

1) the existence of a valid contractual or other business relationship; 2) the

defendant's knowledge of the relationship; 3) intentional interference with that

relationship by the defendant; and 4) damages. *Onyeoziri v. Spivok,* 44 A.3d 279

(D.C. 2012).

Negussie's testimony established that defendants' and Huertas knew in

November 2022 that plaintiffs were engaged in efforts to refinance the loan.  The

email exchanges between Negussie and Huertas demonstrates this knowledge.  As

Negussie testified, defendants provided "clean" payoff statements  that were

necessary for the completion of the refinancing on two occasions close in time to the

Huertas emails and prior to December 2022.  The closing with Main Street Bank was

scheduled to take place prior to Thanksgiving but was delayed because of the holiday.

When the closing was delayed, defendants issued new payoff statements on

December 8, 2022 that reflected for the first time the default as well as default interest

and penalties that were due.  As Negussie testified these new payoff statements would

prevent any refinancing from moving forward.

Negussie's uncontroverted testimony easily establishes that plaintiffs were

engaged in business relationship with Main Street Bank that included the creation of a

term sheet for a new loan.  Based on the email exchange, Huertas knew of the

impending refinancing efforts with Main Street Bank.  The issuance of the new

December 2022 payoff statements interfered with plaintiffs' ability to complete the

refinancing with Main Street Bank.  The evidence of defendants' intent to interfere

with the business relationship between plaintiffs and Main Street Bank is found in

WCP's pretextual efforts to default the loan.  As Negussie indicated, WCP had a

history of defaulting loans late in the construction process to gain control over the

project and because the 423 Kennedy project was close to completion, defendants

would be particularly motivated to declare a default on this project because it was so

close to completion.

Plaintiffs have produced evidence sufficient to support their claim that they

are likely to prevail on the claim for tortious interfere.  Defendants have failed to

produce any evidence that would indicate otherwise.

### C.  The Conflict of Interest Claim

On this claim, plaintiff contends that the Trustee Russell Drazin had a conflict

of interest created by the deeds of trust because he had a fiduciary duty to both the

borrow and the lenders and that duty was in conflict with Mr. Drazin's role as counsel

for defendants in connection with the default and foreclosure sale.  Plaintiff argues

that when a fiduciary has conflicting interest, the burden shifts to the trustee to

demonstrate that he has been faithful to his duties and did not take action that was

influenced by the conflict. *Sheridan v. Perpetual Building Association.,* 299 F.2d 463,

465 (1962) (en banc).

Defendant responds by contending that plaintiffs ignore the longstanding

tradition in this jurisdiction of having creditors' attorneys function as trustee in

connection with a foreclosure proceeding.  There is some support for this position in

that the deeds of trust in Section 8.0 details the obligations of the trustee in the event

of a default and foreclosure.  Defendants further argue that the trustee's service is

largely ministerial in nature and would not be influences by any potential conflict.

During the hearing, Mr. Negussie testified that prior to receiving the notice of

default in December 2022, he had no contact with Mr. Drazin in connection with his

duties as trustee.  Contact with Drazin was suggested by Dan Huertas when Negussie

sought an explanation for the default.  According to Negussie, Huertas indicated that

additional information regarding the default would have to come from WCP's

attorney, Russell Drazin.  In a December 9th email, Drazin indicated that he

represented WCP in connection with the loans and went on to explain the basis for

the default issued on December 8, 2022.  The record does not indicate that plaintiffs

had a prior contact with Drazin.

The parties agree that District of Columbia law provides:

> Trustees on deeds generally "have only those powers and
> duties imposed by the trust instrument itself, coupled with
> the applicable statute governing foreclosure sales in the
> District of Columbia."  Trustees on deeds must exercise
> their powers "with religious fidelity to ethical principles."
> Where a trustee has conflicting interest, the trustee bears
> the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 347, 356 (D.D.C. 20011) (quoting *In

re Rothenberg,* 173 B.R. 4, 16 (Bankr D.D.C. 1994).  The trustee has a duty to both

the borrower and the lender.  Here, the record establishes that Drazin served as trustee

under the terms of the deed and had a fiduciary duty to act faithfully to both.  The

record further established that Drazin took on a different role in December 2022 when

he functioned as counsel for WCP in connection with the default.  At that point, it appears that Drazin had a legal and ethical duty to zealously represent WCP's interest in the default and foreclosure.  Drazin's position as counsel to WCP created a conflict because Negussie and his partners were now adversaries over the disposition of the 423 Kennedy Street property.

When there is evidence of the conflict of interest, the burden of demonstrating the faithful discharge of duties shifts to the trustee.  *Sheridan,* 299 F.2d at 465  Given these burden shifting principles and the absence of any explanation by the trustee, the Court concludes that plaintiffs have carried their burden by establishing a likelihood of success on the merits.  Plaintiffs seek the appointment of substitute trustee given the existence of the conflict.  The Court declines to address that issue today because resolution of that is not necessary for the determination of whether to grant injunctive relief.

## II.  Irreparable Harm

In regard to irreparable harm, defendants suggest that plaintiffs have remedies other than injunctive relief available to them.  Defendants argue plaintiff could seek bankruptcy protection to address their interest in the 423 Kennedy Street project.  In addition, defendants contend that should the foreclosure move forward, plaintiff would be entitled to damages if they prevail on the merits.

Plaintiffs argue that if the foreclosure sale proceeds, they will be irreparably harmed because they will lose their entire investment, including the improvements to the property in a project that is 75-80% complete and that ability to later recover damages is speculative at best.

The 423 Kennedy Street project is a mixed use, six level building with thirty-three residential units. A foreclosure sale would undoubtedly result in the lose of investment for plaintiffs and would almost certainly mean that they would never see the fruits of their labor, the completion of the project. As plaintiffs argue, property is unique and money damages would address nothing more than a potential monetary loss to the extent that such a loss could be quantified by money. The bankruptcy option, while initially appealing, overlooks the impact that bankruptcy will have on the ability of plaintiffs to secure financing to complete the project if they prevail on the merits.

The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means.

### III.   Balancing of the Injuries

As stated, the harm to plaintiffs in the event of foreclosure is significant. The Court is cognizant of the fact that defendants have not received interest payments since the beginning of 2023. In addition, the loan maturity date was March 31, 2023 and plaintiffs have not satisfied that obligation as well. In light of the foregoing, the Court concludes that much of the harm experienced by defendants is due to their own action. As the Court has indicated, the improper ceasing of construction draw payments caused plaintiffs' inability to continue with the project. The reasons supporting the stoppage of the construction draws and moving to default and possible foreclosure appear pretextual and motivated by a plan to gain control of the 423 Kennedy Street project. While defendants have and will suffer harm, it is their failure to perform the duties created by the loan contract that is chiefly responsible for that

harm.  On this record, the Court concludes that the balancing of harms weighs in plaintiffs' favor.

### IV.  The Public Interest

There is a significant public interest involved in this dispute.  Obviously, the citizens of the District of Columbia benefit from the development of a mixed use property that brings thirty-three residential units to the community.  A more specific public interest is found in requiring individuals and other entities to conduct themselves fairly in business dealings.  The issuance of an injunction is not an effort to prevent lenders from using legal means to enforce the duties and obligations of a loan agreement.  This also is not an effort to empower borrowers with the ability to access judicial means to stave off a foreclosure when they believe that defaults are unfairly undertaken with little or no proof of wrongdoing by the lender.  Here, there is evidence of a pretextual basis for the default along with a conflict of interest for the trustee and an irreparable harm that cannot be adequately addressed by means other than the issuance of  an injunction.

### V.  Remaining Issues

In the Complaint, plaintiffs seek declaratory relief related to the liquidated damages provision in the loan agreement.  Determination of that issue is not necessary for the Court to determine the injunction relief claim.  Resolution of the liquidated damages provision will be addressed when the Court considers the merits at a later hearing.

The Court is aware that Super. Ct. Civ. R. 65 governs the issuance of injunctive relief.  That provision also includes reference to the imposition of a bond to

protect the interest of the enjoined party.[22]  The issue of whether the language in the

rule creates a mandatory imposition of a bond for the protection of the enjoined party

has not been directly addressed by the District of Columbia Court of appeals.  The

local rule is almost identical to the federal version, so federal precedent is instructive.

The circuits are split on this issue and the circuits that have interpreted the rule as

being discretionary have recognized several exceptions to the mandatory language.

The District of Columbia Court of Appeals has suggested that the security

requirement is phrased in mandatory terms with the amount of any bond imposed

being left to the discretion of the trial court.  If the trial court exercises its discretion

to waive the bond requirement, it is important that the trial judge states the reasons for

taking such action. *See L'Enfant Plaza Properties, Inc. v. Fitness Systems, Inc.,* 354

A.2d 233, 237 (D.C. 1976).

Considering the underlying facts discussed in this order, the Court declines to

impose a bond for the following reasons.  First, defendant have not provided any

evidence of what an appropriate bond might be under the circumstances.  While

defendants' counsel made a proffer of what might be appropriate, that proffer was not

accompanied by any direct evidence that would demonstrate that the suggested bond

was rationally related to any potential harm.  Second, plaintiffs testified that they

made payments on the loan through the end of December 2022 even though

defendants discontinued the construction draws that were necessary for the project to

---

[22] Rule 65(c) provides:

 SECURITY. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, the District of Columbia, and officers or agencies of either are not required to give security.

move forward.  The clear import of that testimony was that plaintiffs had limited

funds available to continue in the project.  If the bond requirement were interpreted as

a mandatory requirement, the inability of a moving party to pay a bond would

effectively deny access to judicial review.  Lastly, equity would support the waiver of

the bond requirement given the overall strength of the plaintiffs' case.

Section (a)(2) of the rule permits the trial court to consolidate the preliminary

injunction hearing with the trial on the merits.  It is the Court's intention to schedule

this matter for a combined hearing on a date convenient to the Court and available to

the parties.

### VI. Conclusion

The Court concludes that plaintiffs have made the showing necessary to

support the issuance of an order enjoining defendants from foreclosing on the 423

Kennedy Street project on July 25, 2023 or at anytime thereafter until this litigation is

concluded.

**WHEREFORE,** for the above stated reasons and any others that may appear

from a review of the entire record herein, it is this 24th day of July 2023 hereby

**ORDERED:** that an injunction shall immediately issue that prohibits

defendants from conducting a foreclosure sale on the property located at 423

Kennedy Street until further order of this Court or at any time before the conclusion

of the litigation in this matter, and it is further

**ORDERED:** that the parties will be required to provide their position on what

track should be used for a scheduling order.  The parties should also consider a more

expedited discovery, dispositive motion and mediation schedule that would permit

the parties to move forward to a trial within a reasonable period after the issuance of

this order.


   July 24, 2023                                        /s/               
        Date                                MILTON C. LEE, JR.
                                        ASSOCIATE JUDGE


cc:  James D. Sadowski, Esq.
     Alexandria J. Smith, Esq.
     Counsel for Plaintiffs
     jds@gdllaw.com

     Maurice B. Versandig
     Counsel for Defendants
     mac@mbvesq.com

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

|  |  |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**　　**2022 CAB 005935** |
| **Plaintiff,** |  |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a** **WASHINGTON CAPITAL** **PARTNERS,** *et al.,* | **Next Event: Remote Mediation Session** **November 16, 2023 at 1:30 P.M.** |
| **Defendant.** |  |

## <u>HEARING ORDER</u>

This matter was before the Court on July 25, 2023 to consider: (1) Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale ("Motion For TRO"), filed on July 11, 2023, and Opposition to Plaintiff's Opposed Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, filed on July 17, 2023; and (2) Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion, filed on July 11, 2023.

In the Motion for TRO, the Plaintiff sought to prevent a Foreclosure Sale of the Property at issue, which was scheduled for 2:00 p.m. the same day.  The source of the controversy is Defendants' allegation that Plaintiff defaulted on two loans, which matured on December 24, 2022. According to the Defendant, the failure to resolve the alleged default entitled Defendants to foreclose upon property, located at 5501 1st Street, N.W., Lot 138, Square 3389, pursuant to the operative Commercial Deeds of Trust signed by the parties on December 21, 2021.[1]

---

[1] The "1st Trust" was in the amount of $3,579,000.00 and the "2nd Trust" was in the amount of $524,000.00.

At the Hearing, the Plaintiff called Mr. Mel Negussie as a witness, Plaintiff's project developer. Mr. Negussie credibly testified that he has a 10% ownership interest in Plaintiff LLC and the LLC was created to develop 5501 1st Street, NW, Lot 138 (the Project"), exclusively. Mr. Negussie became involved in the Project in 2019 and brought in investors. In 2021, the Defendants agreed to refinance the Project and provided the Plaintiff with a loan for approximately $4,000,000.00. Mr. Negussie testified that no construction loan was attached to property so amounts to be paid were "always the same" because the Plaintiff was only making interest payments. Although he admitted that four or five loan payments were untimely, he testified that the Defendants always accepted the payments. Mr. Negussie testified that on November 30, 2022, he requested a payoff statement from the Defendants so that the Plaintiff could refinance, and that he began taking steps to refinance in August 2022 with different banks. Although he advised Defendant Daniel Huertas of his intent to refinance, he never received payoff statements for the Project. Soon after he requested these statements, the relationship began to breakdown. On December 6, 2022, Mr. Negussie had a conversation with Mr. Huertas and asked about the requested payoff statements. The next day, according to Mr. Negussie, Mr. Huertas advised that because of how the 2501 I Street project turned out, the investors for the Project were unhappy and unless Mr. Negussie did right by that project, he will "make life difficult for [him]," which Mr. Negussie considered to be a threat as Mr. Huertas was the "decisionmaker". That same evening, Mr. Negussie received an unsigned default notice, for the first time, via email, showing a new payoff dated December 8, 2022 with default interest. Mr. Negussie testified that given the default, the Plaintiff could not complete the refinancing and stopped construction on the Project. According to Mr. Negussie, the basis given for the alleged default was: (1) a water lien, which was

removed prior to the foreclosure notice was sent;[2] (2) real estate taxes, which were paid by the time Plaintiff received the default email; and (3) a breach of the deed of trust as a result of default. On June 23, 2023, a company called "SF NU, LLC" sent to Plaintiff a Notice of Foreclosure Sale of Real Property or Condominium Unit, setting the date of the foreclosure sale on July 25, 2023, at 2:00 p.m.

The Court reviewed the facts in light of Super. Ct. Civ. R. 65 to determine if an injunction is proper in this matter. In determining whether a Temporary Restraining Order should be issued, the Court must consider the following factors: (1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits of the underlying cause of action; (3) that the "balance of injuries" favors granting an injunction; and (4) that the public interest would be served by granting the injunctive relief sought. *In re Antioch University*, 418 A.2d 105, 109 (D.C. 1980).

At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full. As to the first element, certainly the deprivation of property is the one of the hallmarks of irreparable harms. The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements. The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means. Thus, the first element weighed in favor of the Plaintiff.

As to the second element, the Court noted that on July 17, 2023, the parties filed a Notice of Related Case in parallel matter 2023 CAB 4260. In the Notice, the Parties stated that the claims in both cases are substantially the same, they involve the same five Defendants, and the events are

---

[2] Defendant's counsel represented at the Hearing that he credits the testimony of Mr. Negussie that the water bills were being sent to the to the wrong address.

overlapping.  In the parallel matter, the Honorable Milton Lee granted the Plaintiff's request for an injunction to stop an immediate foreclosure initiated by the Defendants.   Judge Lee, in his Order dated July 24, 2023, found a likelihood of success on the merits of the claims plead, which includes tortious interference.  While not the law of the case in this case, the Court found Judge Lee's opinion quite persuasive.  As to Count I, the Tortious Interference with Business Relations claim, for the reasons stated on the record, the Court found that soon after Mr. Negussie demanded a payoff statement to refinance the Project loan, the Defendants intentionally frustrated the refinancing and caused a termination of the Project.  In terms of the breach of duty of good faith and fair dealing claim, the Court found that the Plaintiff would likely succeed on this claim as well because of Mr. Negussie's testimony – namely that the Defendants evaded the spirt of the contract, willfully rendered imperfect performance, and interfered with Plaintiff's ability to perform under the contract.  Thus, for the reasons more elucidated on the record, the Court found that the second element weighed in favor of the Plaintiff.

As to the third element, the Court found that the Plaintiff would be harmed more if the Court were to deny the instant Motion.  The record demonstrates that the Defendants "torpedoed" the Plaintiff's efforts to perform under the deed of trust.  As to the fourth element, the Court found that the public interest is best served when there is no tortious interference in property and in fair business dealings, especially here where there is evidence of a pretextual basis for the default.  Thus, for the reasons more elucidated on the record, the Court found that the third and fourth elements also weighed in favor of the Plaintiff.

Finally, as to the Bond, the Court agreed with Judge Lee that Defendants failed to provide evidence of what the bond might be, and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws

that were necessary for the project to move forward.   Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale, the Opposition thereto, the facts and arguments presented at the Hearing, and a review of the entire record herein, the Court granted the Motion, stopping the imminent foreclosure sale.  Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion was declared to be unopposed pursuant to a Praecipe filed by the Defendants and Defendants' representations at the Hearing.  Additionally, given the Court's ruling, the Court granted the Plaintiff's Oral Motion to Extend the Scheduling Order Deadlines, and the new deadlines shall be enumerated below.

Accordingly, based upon the entire record herein, it is this 15th day of August 2023, hereby:

**ORDERED** that the Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an Imminent Foreclosure Sale is **GRANTED**; it is further

**ORDERED** that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, it is further

**ORDERED** that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order; it is further

**ORDERED** that Plaintiff's Opposed Motion to Exceed the Page Limit in an Emergency Motion is **GRANTED**; it is further

**ORDERED** that Plaintiff's Oral Motion to Extend Scheduling Order Deadlines is

**GRANTED** and the new deadlines are as follows:

| | |
|---|---|
| Close of Discovery | November 10, 2023 |
| Motions Deadline | December 8, 2023 |
| Motions Decided Deadline | January 12, 2024 |
| Trial Readiness Hearing | September 6, 2024, at 2:00 p.m. |
| Jury Trial | September 9, 2024, at 9:30 a.m. |

**SO ORDERED**.

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies via Odyssey to:**

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandig, Esq.
mac@mbvesq.com
*Counsel for Defendants*

| Property: | 5501 1st St NW Washington DC 20011-5207 | |
|---|---|---|

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | $ 297,082.84 | $ 65,270.85 |

| GRAND TOTAL | | $ 362,353.69 |
|---|---|---|



https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem





https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca





https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly





https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64





[https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i](https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i)





https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu





https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
| Payment Amount: $24,624.51, Due Date: 04/01/2022 | |



https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm





https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy

5505 1st St NW Washington DC 20011-5207
Payment Amount: $23,830.18, Due Date: 05/01/2022                                    Paid ✓



https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca





https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

| 5505 1st St NW Washington DC 20011-5207 | Paid ⊘ |
| --- | --- |
| Payment Amount: $5,410.15, Due Date: 06/01/2022 | |



https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e

| | |
|---|---|
| **5505 1st St NW Washington DC 20011-5207**<br>Payment Amount: $24,624.51, Due Date: 06/01/2022 | Paid ⊘ |



https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim





https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay





https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y





https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3gm





https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u





https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4





https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4





https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44





https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm





https://payment-link.azurewebsites.net/p/sxtrel2sudcutegpdscyz4wj4m

| | |
|---|---|
| **5505 1st St NW Washington DC 20011-5207**<br>Payment Amount: $5,235.63, Due Date: 12/01/2022 | Paid ✓ |



https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely





https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e





https://payment-link.azurewebsites.net/p/d5t2iew65ufupjdzhpvbs6b7ge

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
| Payment Amount: $1,008.80, Due Date: 03/31/2022 | |



https://payment-link.azurewebsites.net/p/gwgd3blbzgwujnppboapqylagu

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
| Payment Amount: $418.67, Due Date: 03/31/2022 | |



https://payment-link.azurewebsites.net/p/7juaua4o4c7uxio72znu45x3bm

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
|---|---|
| Payment Amount: $31,628.07, Due Date: 05/01/2022 | |



https://payment-link.azurewebsites.net/p/cfxd3oagjbfe7nzrzj6rncl7ra

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
|---|---|
| Payment Amount: $12,560.00, Due Date: 05/01/2022 | |



https://payment-link.azurewebsites.net/p/dcxcbrbjrijunag77txkyukc3i



https://payment-link.azurewebsites.net/p/gmx2wqnzvuje5bpjy4b2nbvnji





https://payment-link.azurewebsites.net/p/ivghhm2crshexhazoa77nomije



https://payment-link.azurewebsites.net/p/uszys6sdzqfetjee47dbzortcm





https://payment-link.azurewebsites.net/p/ntgkzgurvkqu5eufpuzc42qjtm



https://payment-link.azurewebsites.net/p/rzmwi4pvsiqejgw7fylkt5mrsq





https://payment-link.azurewebsites.net/p/zt3j67rx26ie7h6hsaissn6dwq

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ⊘ |
| Payment Amount: $42,427.02, Due Date: 09/01/2022 | |



https://payment-link.azurewebsites.net/p/qtssglpdepxutivic4uns6ksuy



| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ⊘ |
| Payment Amount: $12,978.67, Due Date: 09/01/2022 | |



https://payment-link.azurewebsites.net/p/jgk2uho67krufandts7ohoprk4



https://payment-link.azurewebsites.net/p/qtssglpdepxutiyic4uns6ksuy





https://payment-link.azurewebsites.net/p/mpzefwl7eriufbxtjt4cngwb4a

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
|---|---|
| Payment Amount: $12,978.67, Due Date: 11/01/2022 | |



https://payment-link.azurewebsites.net/p/qlrpvgtbr7yezcoqmwf2tbjx6q

| 419 Kennedy St NW # 423 Washington DC 20011-6523 | Paid ✓ |
|---|---|
| Payment Amount: $46,166.18, Due Date: 11/01/2022 | |



https://payment-link.azurewebsites.net/p/feyrtesljkzuddc2okywtmjevu



419 Kennedy St NW # 423 Washington DC 20011-6523
Payment Amount: $44,846.67, Due Date: 12/01/2022          Paid ⊘

https://payment-link.azurewebsites.net/p/gppin77bqfyu7a47457vhksvyu



419 Kennedy St NW # 423 Washington DC 20011-6523
Payment Amount: $12,560.00, Due Date: 12/01/2022          Paid ⊘

Page 1

1          SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

2                          CIVIL DIVISION

3     _____

4     DEVELOPER RE1, LLC,

5              Plaintiff,

6          v.                              No.

7     DP CAPITAL, LLC d/b/a WASHINGTON    2022-CAB-005935

8     CAPITAL PARTNERS, et al.,

9              Defendants.

10    _____

11                        DEPOSITION OF

12                        DANIEL HUERTAS

13    DATE:          Wednesday, July 19, 2023

14    TIME:          10:01 a.m.

15    LOCATION:      Greenstein DeLorme & Luchs, PC

16                   801 17th Street Northwest, Suite 1000

17                   Washington, DC 20006

18    REPORTED BY:   Matthew Yancey, Notary Public

19    JOB NO.:       6012872

20

21    PAGES 87-100, 105-222, 251-287 ARE CONFIDENTIAL

22

|  | Page 2 |  |  | Page 4 |
|---|---|---|---|---|
| 1 | A P P E A R A N C E S | | 1 | I N D E X (Cont'd) |
| 2 | ON BEHALF OF PLAINTIFF DEVELOPER RE1, LLC: | | 2 | QUESTIONS INSTRUCTED NOT TO ANSWER |
| 3 | JAMES D. SADOWSKI, ESQUIRE | | 3 | PAGE          LINE |
| 4 | ALEXANDRIA J. SMITH, ESQUIRE | | 4 | 27          19 |
| 5 | Greenstein DeLorme & Luchs, PC | | 5 | 34          6 |
| 6 | 801 17th Street Northwest, Suite 1000 | | 6 | 50          15 |
| 7 | Washington, DC 20006 | | 7 | 51          10 |
| 8 | jds@gdllaw.com | | 8 | 110          12 |
| 9 | ajs@gdllaw.com | | 9 | 269          8 |
| 10 | (202) 452-1400 | | 10 | 274          8 |
| 11 | | | 11 | |
| 12 | ON BEHALF OF DEFENDANTS: | | 12 | |
| 13 | MAURICE B. VERSTANDIG, ESQUIRE | | 13 | |
| 14 | The VerStandig Law Firm, LLC | | 14 | |
| 15 | 1452 West Horizon Ridge Parkway, Suite 665 | | 15 | |
| 16 | Henderson, NV 89012 | | 16 | |
| 17 | mac@mbvesq.com | | 17 | |
| 18 | (301) 444-4600 | | 18 | |
| 19 | | | 19 | |
| 20 | ALSO PRESENT: | | 20 | |
| 21 | Mel Negussie, Developer RE1, LLC | | 21 | |
| 22 | | | 22 | |

|  | Page 3 |  |  | Page 5 |
|---|---|---|---|---|
| 1 | I N D E X | | 1 | P R O C E E D I N G S |
| 2 | EXAMINATION:                    PAGE | | 2 | THE REPORTER:  Good morning.  My name |
| 3 | By Mr. Sadowski                    7 | | 3 | is Matthew Yancey; I am the reporter assigned by |
| 4 | | | 4 | Veritext to take the record of this proceeding.  We |
| 5 | E X H I B I T S | | 5 | are now on the record at 10:01 a.m. |
| 6 | NO.        DESCRIPTION              PAGE | | 6 | This is the deposition of Daniel |
| 7 | Exhibit 1    Plaintiff's requests production   73 | | 7 | Huertas -- |
| 8 | Exhibit 2    Notice of foreclosure         90 | | 8 | MR. HUERTAS:  Yes, sir. |
| 9 | Exhibit 3    Complaint Developer RE1, LLC   135 | | 9 | THE REPORTER:  -- taken in the matter |
| 10 | Exhibit 4    First amended complaint       138 | | 10 | of Developer RE1, LLC vs. DP Capital, LLC doing |
| 11 | Exhibit 5    Email Thread 4:31           155 | | 11 | business as Washington Capital Partners, et al., on |
| 12 | Exhibit 6    Chart Status Reason         165 | | 12 | July 19, 2023, at 801 17th Street Northwest, |
| 13 | Exhibit 7    Chart Status Reason WCP 0708   176 | | 13 | Suite 1000, Washington, DC, 20006. |
| 14 | Exhibit 8    Email Thread WCP 0628        258 | | 14 | I'm a notary authorized to take |
| 15 | | | 15 | acknowledgments and administer oaths in the District |
| 16 | | | 16 | of Columbia. |
| 17 | * retained by Mr Sadowski | | 17 | Additionally, absent any objection |
| 18 | | | 18 | before the witness is sworn, all parties and the |
| 19 | | | 19 | witness understand and agree that any certified |
| 20 | | | 20 | transcript produced from the recording of this |
| 21 | | | 21 | proceeding: |
| 22 | | | 22 | - is intended for all uses permitted |

2 (Pages 2 - 5)

Page 162

1    Q    Is Paragraph 29 true?

2    A    No, it's not true.

3    Q    Okay.  What's not true about it?

4    A    That he didn't make all the payments, it's

5  not true.

6    Q    What payments, as of November 30, 2022, had

7  not been made?

8    A    I don't have the record.  So I can't -- I

9  can't tell you.  I don't have the record.

10   Q    Okay.  Who has that record?

11   A    I don't have the record.

12   Q    I know you don't have the record.  You've

13  told me that now twice.

14   A    Yeah.

15   Q    Who has that record of payments as of

16  November 3, 2022, that there was an unpaid balance due

17  at that time?

18   A    Right.  The servicing department should have

19  that record.  I don't have that record.

20        MR. SADOWSKI:  Okay.  Just can second.

21  Mel, can I have the Post-its?  Okay.

22  //

Page 163

1  BY MR. SADOWSKI:

2    Q    Paragraph 32, Page 5 of Exhibit 4, is that

3  true?

4    A    Paragraph 32?

5    Q    Paragraph 32, yes.

6    A    Okay.  Let me read it.  No, that's not true.

7    Q    Okay.  What's untrue about it?

8    A    Borrower was in default.

9    Q    And how did the WCP -- how do you know that?

10   A    Borrower was in default.

11   Q    Well, in Paragraph 29, you couldn't tell me

12  whether or not the borrow was in default because you

13  didn't have the records or how much was due.

14   A    Right.

15   Q    So how can you say with confidence that the

16  borrower's in default, under 32, if you don't have the

17  records?

18   A    Borrower's that are not current with their

19  payments are in default.

20   Q    Okay.  So --

21   A    That's a -- not making their -- not making a

22  payment is a form of default.

Page 164

1    Q    Okay.  So as of November 15, 2022, what

2  outstanding payments were there under the loans?

3    A    Like I said, I don't have the record.

4    Q    So you don't know.

5    A    I can tell you that Mr. Negussie was in

6  default.

7    Q    Now, when you say Mr. Negussie is in the

8  default, do you mean RE1?

9    A    RE1.

10   Q    Okay.

11   A    All of the above.

12        MR. SADOWSKI:  All right.  Okay.  It's

13  two pages.  You're going to need to find us a stapler,

14  Alex.  I don't think you'll have to go far until this

15  stapler arrives.

16        THE REPORTER:  Sure.

17        MR. SADOWSKI:  Are we on No. 6?

18        MR. VERSTANDIG:  There's no Bates on

19  the second page.

20        MR. SADOWSKI:  That's because it's

21  all -- it's all one page.  I'll represent that --

22        MR. VERSTANDIG:  Oh.  It's just 54; got

Page 165

1  it.

2        MR. SADOWSKI:  -- Exhibit 6 is an

3  enlarged printout of WCP 0054.

4        (Exhibit 6 was marked for

5        identification.)

6        MR. VERSTANDIG:  Thank you.

7  BY MR. SADOWSKI:

8    Q    Daniel, let me know when you're done looking

9  at Exhibit 6.

10   A    Sure.  Go ahead; ask your question.

11   Q    Oh, okay.  What is it?

12   A    It looks like -- I -- I mean, I don't have

13  here the record but payments of the 1 -- RE1, sorry.

14   Q    Okay.  Are you able to read the print on

15  this exhibit?

16   A    I don't have the property address here.  So

17  I'm sorry.  If I don't have a property address or

18  something that can say that to the fact, I cannot -- I

19  can't use this.

20        MR. VERSTANDIG:  I'll stipulate that

21  this is counterintuitively 54, which came first in the

22  production, is the second loan to Developer RE1

42 (Pages 162 - 165)

Page 166

1　secured by 5501/505 [sic] 1st Street.
2　　　　MR. SADOWSKI: Is there another one of
3　these for the first loan in the production?
4　　　　MR. VERSTANDIG: Yeah, I believe it's
5　either 606 or 608 in the production. If I'm off by a
6　few pages, I am not messing with you for sport; I
7　promise.
8　　　　MR. SADOWSKI: Same drill for Margaret,
9　thanks.
10　　　　MR. VERSTANDIG: If it's not 606 or
11　608, look at 806 or 808. I have the ability to jumble
12　numbers in my mind.
13　　　　MR. SADOWSKI: It's one of those days
14　of card counting.
15　BY MR. SADOWSKI:
16　　Q　Okay. So as for Exhibit 6, Daniel, your
17　counsel has indicated that he's represented that this
18　is a screen print from the system from the second deed
19　of trust.
20　　A　Okay.
21　　Q　Do you believe him?
22　　　　MR. VERSTANDIG: Just to be clear, I

Page 167

1　didn't say "from the system," and if you need me to
2　extrapolate there, I can.
3　　　　MR. SADOWSKI: All right. Why don't
4　you just tell Daniel what it is so he knows what to
5　look at?
6　　　　MR. VERSTANDIG: All right. I'll
7　represent as follows. The loan file that was produced
8　in this case for the second loan to Developer RE1
9　includes an Excel sheet that is demonstrative of the
10　payment history on the second loan. This is a print
11　of that Excel sheet.
12　　　　THE WITNESS: Okay.
13　BY MR. SADOWSKI:
14　　Q　Okay. Looking at Exhibit 6, can you tell me
15　whether, as of November 3, 2022, there was an overdue
16　payment under the second deed of trust?
17　　A　Mr. Negussie was in default starting on
18　July 1st.
19　　Q　That wasn't the question. The question was,
20　looking at Exhibit 6, as of November 3, 2022, what
21　payments under the second deed of trust were unpaid as
22　of that date?

Page 168

1　　A　Right. I'm -- I'm responding based on what
2　I can answer in my role. I can see that Mr. Negussie
3　was defaulted as of July.
4　　Q　Right. But that's not the question. The
5　question is, how much money was owed, or was any money
6　owed, as of November 3, 2022?
7　　A　I can't -- I can't answer that question.
8　I'm not in the accounting department. I'm just going
9　to tell you, based on what I see, based on what you
10　presented to me, that Mr. Negussie was in default in
11　July.
12　　Q　Okay. So you can't read this printout and
13　figure out whether or not there was an outstanding
14　amount due under the loan at any date.
15　　A　No, I can't.
16　　Q　All right.
17　　A　I can just tell you, based on what I see
18　here in front of me when Mr. Negussie got in default.
19　Mr. Negussie started being default July.
20　　Q　Right. But when was this notation put in
21　here, "defaulted"?
22　　A　As I stated, I'm not in that department.

Page 169

1　You're asking me a question --
2　　Q　I'm asking me to look at it right now.
3　What does it say?
4　　A　I answered the question.
5　　Q　Okay. Well, I'm looking at it, and I'm
6　looking at the first page. And the word "defaulted"
7　doesn't appear until February 1, 2023. Do you see
8　that? You're not looking at it.
9　　A　No, because I answered your question. You
10　can -- you can ask me 20 different ways --
11　　Q　No, you're evading the question.
12　　A　No, you can ask me 20 different ways, like I
13　explained to you.
14　　Q　On Exhibit 6, when is the first indication
15　that RE1 was in default? On Exhibit 6, where is it?
16　　　　MR. VERSTANDIG: Object, but you can
17　answer.
18　　　　THE WITNESS: I already answer your
19　question.
20　BY MR. SADOWSKI:
21　　Q　You didn't answer the question. Okay. What
22　date was Developer RE1 noted in default?

43 (Pages 166 - 169)

Page 170

1    A   I'm looking -- I'm looking at the payment,
2 July 14th --
3    Q   Okay.  And under the Servicing Status
4 Category --
5    A   I'm also -- I'm -- sir, I'm speaking.  You
6 said not to interrupt me.
7    Q   You're right.
8    A   I don't interrupt you.  So please, don't
9 interrupt me.
10    Q   Yeah.
11    A   Mr. Negussie has a copy of his promissory
12 notes, and according to the promissory notes and the
13 stipulation of it, as the deed of trust,
14 that's -- he's in default.
15        So I don't have to look at it here.  I just
16 got to look at when the payment was made, July 14.
17    Q   That's not the question.  The question is
18 where on Exhibit 6 does it indicate -- does it use the
19 word "defaulted"?  What date was the first date?
20    A   I don't know how to answer your question.
21 I'm sorry.
22    Q   You can look at Exhibit 6, and you look for

Page 171

1 the word.
2    A   I already told you that Mr. Negussie is in
3 default.
4        MR. VERSTANDIG:  All right.  Hold on.
5 I object to the question.  I won't give a speaking
6 objection.
7        MR. SADOWSKI:  On what basis?
8        MR. VERSTANDIG:  That said --
9        MR. SADOWSKI:  A non-speaking
10 objection, basis?
11 BY MR. SADOWSKI:
12    Q   Where on this document --
13        MR. SADOWSKI:  What's the objection?
14        MR. VERSTANDIG:  Let me finish.  With
15 my objection noted, and if you want -- but let me
16 finish because I think you're going to like where this
17 goes.
18        Mr. Huertas, you can look at the
19 document and indicate, just reading the document,
20 without any external scope of knowledge, where on that
21 document the word "defaulted" first appears, and you
22 can answer that question.

Page 172

1        And I don't have an objection to you
2 answering that question.  Depending on how things get
3 rephrased, I may interpose a different objection in a
4 minute.
5        THE WITNESS:  Right.
6        MR. VERSTANDIG:  But you can indicate
7 where on this document the word "defaulted" first
8 appears.
9        THE WITNESS:  Right.  I see in this
10 document the word "default" appears in one, two -- on
11 the February 1, 2023, payment.
12 BY MR. SADOWSKI:
13    Q   Okay.  And is that also correct -- from the
14 Servicing Status Column?
15    A   Well, that's where --
16        MR. VERSTANDIG:  Can we stipule that
17 doesn't appear anywhere other than the Service --
18        MR. SADOWSKI:  Yeah.  Can I have the
19 witness here just --
20 BY MR. SADOWSKI:
21    Q   I'm talking about this.
22    A   Yeah, that's what I read.

Page 173

1    Q   Servicing Status.
2    A   Right.
3    Q   See that, those words.  Right?
4    A   Yeah, that's what I see.
5    Q   Now, going to the next page, which is the
6 continuation of the spreadsheet --
7    A   Right.
8    Q   -- where does the word "defaulted" first
9 appear on that second page of Exhibit 6?
10        MR. VERSTANDIG:  Hold on.  I don't
11 think it's a continuation.  I think it's just a
12 blowup.
13        THE WITNESS:  Yeah, that's --
14        MR. SADOWSKI:  You might be right.
15 Then I should be looking at the second page.
16 BY MR. SADOWSKI:
17    Q   Okay.  All right.  So the second page of
18 Exhibit 6 is just an enlarged version of the first
19 page.
20    A   Blurry version of the first page.
21    Q   Okay.  All right.  When does the system at
22 WCP start putting in the word "defaulted"?

44 (Pages 170 - 173)

Page 174

1    A    In this specific situation, it says right
2    here.  The "defaulted" word appears on the
3    February 1st payment.
4    Q    Right.  I got that.  But I'm trying to --
5    A    Right.
6    Q    Okay.  Why did it change from -- okay.
7    Let's go back.  Let's go to another question.  Looking
8    at the line right below February 1, 2023, there's a
9    date January 1, 2023.  Do you see that?
10   A    Yeah.  January 1, 2023, I see that.
11   Q    Okay.  And in the Servicing Status, what
12   does it indicate in that column?
13   A    Well, it reads Servicing Status Current.
14   Q    Okay.  So what does that mean, Serving
15   Status Current?
16   A    Well, I can tell you what it says here.  It
17   says "current."  It doesn't mean anything to me.
18   Q    Okay.  Then why --
19   A    It says the word "current."
20   Q    -- do you use the terms "current,"
21   "defaulted," "late," "one to 15 days," "originated"?
22   Why are those terms used on servicing status?

Page 175

1    A    As I stated, this is an internal code for
2    this.  So right now, it says "current."
3    Q    Okay.  Who's in charge of making the codes?
4    A    Nobody's in charge of making the codes.
5    Q    What is your understanding of what
6    the word "current" means?
7    A    Like I said, the -- the coding here is -- it
8    says "current."
9    Q    All right.  That's not the question.  What
10   is your understanding about what the word "current"
11   means?
12   A    That for this specific line, it says that
13   activity is "current."
14   Q    Okay.  So as of January 1, 2023, what, if
15   any, payment due under the loan was not current?
16   A    Except for that specific line, it says
17   "current."
18   Q    Okay.  So as of that date, doesn't that mean
19   that there's no amount owed under the loan?
20   A    For that specific activity, it shows that
21   it's current.
22   Q    Okay, so 7.

Page 176

1    (Exhibit 7 was marked for
2    identification.)
3    THE WITNESS:  What are these ones?
4    MR. VERSTANDIG:  I will stipulate for
5    the record that this is a printout of an Excel sheet
6    with the loan file for the first promissory note that
7    correlates to the first deed of trust where Developer
8    RE1 is obligated on the promissory note and the
9    property situated at 5501/5505 1st Street serves as
10   collateral on the deed of trust.
11   Q    Okay.  Mr. Huertas, what is Exhibit 7?
12   A    It's -- based on what I heard, it's -- it's
13   the first deed of trust for the subject property.
14   Q    And when does the word "defaulted" first
15   appear, in terms of time, on Exhibit 7 in the
16   Servicing Status Column?
17   A    Yeah.  The -- the word "defaulted" appears
18   on Line 2-1-2023.
19   Q    Okay.  And when does the -- the word
20   immediately below that is the word "current."  Right?
21   A    Yes.
22   Q    And that indicates a date of January 1,

Page 177

1    2023.  Correct, "current"?
2    A    For that particular activity, correct.
3    Q    Okay.  Now, let's put 6 and 7 kind of next
4    to each other, if you will.
5    There's another column there that says
6    "Status Reason."  Do you see that?  It's the second
7    column from the left.
8    A    Yes.
9    Q    Okay.  As of January 1, 2023, what does
10   Exhibit 6 indicate in the Status Reason Column?
11   A    In which one?
12   Q    Well, doesn't the word "paid" appear there?
13   A    In which line?
14   Q    One, two, three, four -- one, two, three,
15   four, five, six, seven lines down from the top.
16   A    The word -- it says "paid."
17   Q    Okay.  And what does that indicate to you?
18   A    For that activity, it was paid.
19   Q    Okay.  And isn't it true that on Exhibit 6,
20   the word paid appears before every date before
21   January 1, 2023, in the Status Reason Column?
22   A    The word "paid" appears in the other lines,

45 (Pages 174 - 177)

Page 178

1   yeah.

2       Q   Okay.  And on Exhibit 7, isn't it also true

3   that the word "paid" appears on every line starting

4   with January 1, 2023, going down all the way to

5   December 23, 2021?

6       Isn't that correct that the word "paid"

7   appears in the Status Reason?

8       A   The word "paid" appears.

9       Q   And those dates there are corresponding to

10  what?

11      A   Those dates?

12      Q   Yeah.  Isn't that a payment due date?

13      A   That's a payment due date.

14      Q   Okay.  So to recap, on Exhibit 6 and

15  Exhibit 7, for every payment due on the date that's

16  listed on those two exhibits from December 23, 2021,

17  through January 1, 2023, it indicates "paid."

18      A   The word "paid" appears in those lines.

19      Q   Okay.  And was RE1, in fact, current on the

20  payments due under the first deed of trust and the

21  second deed of trust as of January 1, 2023?

22      A   No.

Page 179

1       Q   Okay.  What was outstanding as of those

2   two -- okay.  Then why, if they were not current --

3   then why doesn't this indicate that?

4       A   I cannot tell you how the system was

5   generating that, but the borrower was not current.

6       Q   So what was incorrect about it?  What's

7   incorrect about all those indications of "paid"?

8       A   July payment, as you can see, on both, it's

9   July 14th, borrower was in default in the month of

10  July.

11      Q   So what?  So why does that change what's

12  listed here as "paid"?

13      A   I can't speak about a system that shows

14  that.  I can just tell you --

15      Q   So your system doesn't work?

16      A   I guess not.

17      Q   All right.  Who is the person most qualified

18  at WCP to answer questions about when amounts are paid

19  and unpaid under RE1's loans?

20      A   I think I'm qualified.

21      Q   Well, who's the best person?  You said

22  before that you didn't know the records.

Page 180

1       A   Right.

2       Q   You weren't sure.

3       A   If you want specific details on accounting,

4   that would be somebody else.

5       Q   Who would that be?

6       A   My VP of finance.

7       Q   Who is that?

8       A   Christina Araujo.

9          MR. VERSTANDIG:  Alpha, Romeo, Alpha,

10  Uniform, Juliet, Oscar.

11         THE WITNESS:  Yeah.

12  BY MR. SADOWSKI:

13      Q   Okay.  Okay.  So let's go back to

14  Paragraph 29 of Exhibit 4.

15      A   Which page?

16      Q   Sorry, Page 5 of Exhibit 4, Paragraph 29.

17      A   Okay.

18      Q   And that's the same question that I asked a

19  few questions ago, several.

20      What amounts were outstanding under the RE1

21  first deed of trust or second deed of trust as of

22  November 3, 2022?

Page 181

1       A   I don't have the specific amounts.

2       Q   Okay.  Well, these records here show

3   everything was paid.  So if there was something that

4   was unpaid, what was it?

5          MR. VERSTANDIG:  Hold on.  Objection,

6   the records do not show everything being paid on

7   November 3rd.

8          MR. SADOWSKI:  2022?  They show being

9   paid as of January 1, 2023, two months later.

10         MR. VERSTANDIG:  You just asked as of

11  November 3, 2022.  This record shows that the payment

12  due November 1st was made on November 9th.

13         MR. SADOWSKI:  You're coaching now,

14  Mr. VerStandig.  Okay.

15  BY MR. SADOWSKI:

16      Q   What amounts on November 3, 2022, did RE1

17  owe under either the first deed of trust or the second

18  deed of trust?

19      A   I -- I already told you that.

20      Q   What did they owe?

21      A   I don't have the amounts.

22      Q   You don't know?

46 (Pages 178 - 181)

Page 182

1    A    It's more.  I don't have the amounts.
2 Correct.
3    Q    Okay.  If they owed money as of that date,
4 why isn't it reflected on Exhibit 6 and Exhibit 7?
5    A    That's a report.
6    Q    Okay.
7    A    You just issue a report.
8    Q    So what other reports are there out there
9 that I haven't seen?
10    A    That's the one report that we have.
11    Q    Okay.
12    A    But that's a report that we had for the
13 payments, specific to something, to just one aspect of
14 it.
15    Q    Okay.  When do late charges get posted to
16 the WCP accounting system?
17    A    Late charges are posted, or the system
18 generates a late charge on the 5th.
19    Q    Okay.  Are there any late charges shown on
20 the system printouts in Exhibit 6 and Exhibit 7?
21    A    It shows some late charges.
22    Q    Where?

Page 183

1    A    Line 10/1, 12/1.  I don't know if I'm doing
2 this right.  That's on Exhibit 7.  Look -- are we
3 looking at Exhibit 7 or Exhibit 6?
4    Q    The Late Fee Amount Due Column.
5    A    Yeah.  Which exhibit do you want me to look
6 at?
7    Q    They're both there.  They have the same
8 column.  Right?  So are you talking about this column
9 here, right here with these?  Exhibit 6, it says
10 "523.56."
11    A    It shows two in here for 10/6 and 12/6.
12    Q    Okay.  That's the 523.56 number.
13    A    Yeah.
14    Q    And then on the corresponding Exhibit 7,
15 there's two entries as well on that for 238.02.  Do
16 you see that?
17    A    Mm-hmm.
18    Q    Right?
19    A    Yeah.
20    Q    Were those late charges ever paid?
21    A    I can infer from here that the ACH cleared.
22 So I'm guessing, yes.

Page 184

1    Q    Okay.  All right.  So as of January 1, 2023,
2 what amounts, if any, were owed for late charges as of
3 that date?
4    A    I don't have the specific amount.  I don't
5 have a response to your question.
6    Q    Okay.  Who would be able to answer that
7 question?
8    A    I already give you a name, Christina Araujo.
9    Q    Okay.  All right.  Now, when did somebody at
10 WCP -- oh, well, sorry, strike that.
11        How does the system change from "current" to
12 "defaulted," as it did here on February 1, 2023?
13    A    I cannot tell you for everything, but for
14 this specific situation, I guess it changed on 2/1.
15    Q    Right.  But does someone have to manually go
16 in and click a button and say a "loan is in default"?
17 How does that work?
18    A    I don't know.
19    Q    Will Christina know the answer to that
20 question?
21    A    Maybe, I don't know if she could answer.
22    Q    Who else might know the answer to that

Page 185

1 question?
2    A    I have to ask.  I don't know.  I have to
3 ask.
4    Q    Okay.
5    A    It's a great question for me, too.  I need
6 to figure it out.
7    Q    Okay.  Now, let's go back to Exhibit 4.
8    A    Page?
9    Q    Five.
10    A    Page 5.
11    Q    Now, down to Paragraph 33, I'd ask you to
12 read that and let me know when you're done.
13    A    Okay.
14    Q    Is the information in Paragraph 33 accurate?
15    A    No.
16    Q    What's not accurate about it?
17    A    It is obvious that the developer couldn't
18 secure the financing; otherwise, we wouldn't be here.
19    Q    Okay.  Did you know as of November 15th,
20 when I say "you," did either you or WCP know that RE1
21 was in the process of refinancing a loan with Main
22 Street Bank?

47 (Pages 182 - 185)

Page 282

1  morning right before the sale.
2  BY MR. SADOWSKI:
3      Q   Okay.  And is there a WCP investment
4  vehicle, whether it's an entity or not -- let me take
5  that back.
6          So let's assume we're at the day of the
7  foreclosure.  What, in your experience, would WCP do
8  to make sure that it had a buyer prepared to meet the
9  criteria for the foreclosure sale at the foreclosure
10  sale?
11         How do you plan for that?  What do you do?
12  Like, do you send somebody there?  Do you create a new
13  entity?  Those are the kind of questions I'm going to
14  have.
15     A   Right, I understand.  For this specific
16  situation, we don't have anything at this time.
17         This happened on Tuesday.  So prior to the
18  sale, maybe the night before or the morning of, we'll
19  figure out where we stand and make a determination.
20     Q   And who will be involved in that process,
21  other than any legal counsel?
22     A   I get involved in that process.

Page 283

1      Q   And who else besides you?
2      A   I do it for the most part.  I try not to get
3  involved -- more people, but I do it for the most
4  part.
5      Q   Okay.  When there was a foreclosure of
6  2507 I Street -- there was one.  Right?
7      A   Yes.
8      Q   Who ended up buying the property at
9  foreclosure?
10     A   The lender took it back.
11     Q   So what?  Did the lender buy it, or did the
12  lender create some interim entity to serve as the
13  buyer?
14     A   The lender took it back because there were
15  no bidders at the foreclosure sale.
16     Q   Oh, okay.  And of these other properties
17  that you mentioned that were "problematic," I'm just
18  using the term loosely.
19     A   Right.
20     Q   Did Holbrook go to foreclosure?
21     A   I'm sorry.  Which one?
22     Q   1262 Holbrook.

Page 284

1      A   1262 through 1268, again, that property, as
2  I recall, I believe we didn't have any real bidders on
3  the other end.
4          It was a second subject to the first.  So
5  some people just -- and then most people don't want to
6  bid on a second trust just because they don't know the
7  nature of the first.
8      Q   Okay.  So what are WCP's expectations as to
9  this foreclosure, given that you're foreclosing under
10  the second deed of trust?
11     A   I don't have any expectations; our goal is
12  to get our money back.
13         MR. SADOWSKI:  So we're at exactly your
14  five o'clock.  We, obviously, didn't finish.  I don't
15  know that I can reconvene tomorrow, and I think you'd
16  probably rather work on your --
17         MR. VERSTANDIG:  I mean, candidly, I
18  would.       MR. SADOWSKI:  Yeah.
19         MR. VERSTANDIG:  Hold on.  We can do
20  this on the record.  It may make sense to assess after
21  Friday anyway.
22         MR. SADOWSKI:  Of course, right.  So

Page 285

1  we're going to leave it open.  It's not completed
2  because we didn't finish either by time.
3          And then there are also some
4  outstanding document issues that we probably need to
5  address, but we'll agree to reconvene the deposition
6  at a mutually convenient date and time.
7          MR. VERSTANDIG:  And for the record, I
8  will cross him at the close of the deposition.
9          MR. SADOWSKI:  Okay.
10         THE WITNESS:  How many hours did it go?
11         MR. SADOWSKI:  Doctor's appointment, my
12  friend, go, go.
13         THE WITNESS:  No, I understand.
14         THE REPORTER:  Should I take us off?
15         MR. SADOWSKI:  Yes.
16         THE REPORTER:  We're off the record at
17  5:01 p.m.
18         (Signature waived.)
19         (Whereupon, at 5:01 p.m., the
20         proceeding was concluded.)
21
22

72 (Pages 282 - 285)

Page 286

```
1          CERTIFICATE OF DEPOSITION OFFICER
2        I, MATTHEW YANCEY, the officer before whom
3    the foregoing proceedings were taken, do hereby
4    certify that any witness(es) in the foregoing
5    proceedings, prior to testifying, were duly sworn;
6    that the proceedings were recorded by me and
7    thereafter reduced to typewriting by a qualified
8    transcriptionist; that said digital audio recording of
9    said proceedings are a true and accurate record to the
10   best of my knowledge, skills, and ability; that I am
11   neither counsel for, related to, nor employed by any
12   of the parties to the action in which this was taken;
13   and, further, that I am not a relative or employee of
14   any counsel or attorney employed by the parties
15   hereto, nor financially or otherwise interested in the
16   outcome of this action
17              MATTHEW YANCEY
18           Notary Public in and for the
19              District of Columbia
20
21
22
```

Page 287

```
1          CERTIFICATE OF TRANSCRIBER
2        I, AMY DAMOTH, do hereby certify that this
3    transcript was prepared from the digital audio
4    recording of the foregoing proceeding, that said
5    transcript is a true and accurate record of the
6    proceedings to the best of my knowledge, skills, and
7    ability; that I am neither counsel for, related to,
8    nor employed by any of the parties to the action in
9    which this was taken; and, further, that I am not a
10   relative or employee of any counsel or attorney
11   employed by the parties hereto, nor financially or
12   otherwise interested in the outcome of this action.
13
14
15              AMY DAMOTH
16
17
18
19
20
21
22
```

73 (Pages 286 - 287)

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** | **Case No.**     **2022-CAB-005935** |
|     **Plaintiff,** | |
| **v.** | **Judge Ebony M. Scott** |
| **DP CAPITAL, LLC d/b/a WASHINGTON CAPITAL PARTNERS,** *et al.*, | **Next Court Event: Mediation November 16, 2023 at 1:30 p.m.** |
|     **Defendants.** | |

## <u>ORDER</u>

This matter was before the Court on March 24, 2023 for a Scheduling Conference Hearing. At the hearing, the Court denied Defendants' Motion to Dismiss First Amended Complaint, filed on January 26, 2023, and the Court placed the matter on a Track 2 Scheduling Order.

Accordingly, on this **7th day of April, 2023**, it is hereby:

**ORDERED** that Defendants' Motion to Dismiss First Amended Complaint is **DENIED**; and it is further

**ORDERED** that this matter is placed on a Track 2 Scheduling Order, which shall issue under separate Order.

**SO ORDERED**.

_Ebony M. Scott_

**Associate Judge Ebony M. Scott**
*(Signed in Chambers)*

**Copies via Odyssey to**:

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiff*

Maurice B. Verstandigm, Esq.
mac@mbvesq.com
*Counsel for Defendants*

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

```
- - - - - - - - - - - - - - x
DEVELOPER RE1, LLC,          : Docket Number:  2022 CAB 005935
        Plaintiff,           :
                             :
                             :
        VS.                  :
                             :
                             :
DP CAPITAL, LLC D/B/A        :
WASHINGTON CAPITAL           :
PARTNERS, ET AL.,            : Friday, March 24, 2023
        Defendants.          : Washington, D.C.
- - - - - - - - - - - - - - x
```

The above-entitled action came on for a remote

initial scheduling conference hearing before the HONORABLE

EBONY M. SCOTT, Associate Judge, in Courtroom Number 219.


APPEARANCES:

On Behalf of the Plaintiff:

JAMES D. SADOWSKI, Esquire
Washington, D.C.


On Behalf of the Defendants:

MAURICE B. VERSTANDIG, Esquire
Washington, D.C.


25-01498



1

T A B L E   O F   C O N T E N T S

M I S C E L L A N Y

PLAINTIFF'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DENIED                                                                          7



<pre>
 1                P R O C E E D I N G S

 2          THE DEPUTY CLERK:  Your Honor, calling number

 3   three on the calendar, calling the matter of Developer REI

 4   [sic], LLC versus DP Capital, LLC d/b/a Washington Capital

 5   Partners, et al., case number 2022 CAB 5935.

 6          Parties can you please state your name for the

 7   record, starting with plaintiff attorney first.

 8          MR. SADOWSKI:  Good morning, Judge Scott.  Jim

 9   Sadowski for the plaintiff.

10          THE COURT:  Good morning, Counsel.

11          MR. VERSTANDIG:  Good morning, Your Honor.

12   Maurice VerStandig, on behalf of the defendants.

13          THE COURT:  All right.  Good morning to you as

14   well.  Where are you there?  Good.  There you are.  Good

15   morning to you.

16          So this matter is scheduled for a remote

17   scheduling conference, I understand that a motion to

18   dismiss was filed to dismiss the first amended complaint

19   on January the 26th.

20          An opposition was filed on February the 16th.  I

21   do not see that a reply was filed.  Was a reply so filed?

22          MR. VERSTANDIG:  Your Honor, I believe one had

23   been filed.  And I may be errant in that regard.  If Mr.

24   Sadowski says we didn't file one, I would take his word to

25   be accurate.
</pre>



```
 1           MR. SADOWSKI:  I can't tell you if he didn't

 2    file it, Judge.  But I can tell you that I didn't have

 3    notice of a filing.  And I checked the docket this

 4    morning, and I didn't see it in there.

 5           So I think if it was filed, even with the

 6    Odyssey delays, it probably would have been on the docket

 7    by now.

 8           THE COURT:  Could we see it on the docket?

 9    Okay.  All right.

10           MR. SADOWSKI:  Your Honor, I suspect that to be

11    true.  And it likely means we did not file one.

12           THE COURT:  Well, I think I heard counsel say

13    that -- well, sir, you should know whether or not you

14    filed a reply, I suspect.

15           MR. VERSTANDIG:  Your Honor, I'm looking through

16    my file.  I don't see a reply.  I don't believe we

17    replied, no.

18           THE COURT:  Okay.  All right.  Give me one

19    moment.  Bear with me.

20           (Pause.)

21           THE COURT:  Okay.  While Odyssey is sort of

22    waking up, at least for me.  One of the things that we

23    must do is to set the matter on a scheduling track.

24           Have the parties discussed a track?

25           MR. SADOWSKI:  I haven't, Judge.  But I think
```



4

```
 1   this is a Track 2 type of case.

 2           THE COURT:  I believe that's true.  Any

 3   opposition to Track 2?

 4           MR. VERSTANDIG:  None, Your Honor.

 5           THE COURT:  Okay.  Track 2, it is.  Well, I

 6   did -- I was endeavoring to pull up the docket again.  But

 7   it's taking some time.  Let me say this.  The Court has

 8   reviewed the motion to dismiss the First Amendment

 9   complaint as well as the opposition.  And it appears there

10   was no reply filed.  One moment.

11           MR. VERSTANDIG:  Your Honor, I'm confident there

12   was no reply filed.  We would stand on the motion.

13           THE COURT:  The Court has reviewed the

14   opposition as well.  There doesn't appear to be a reply

15   filed.  And from the Court's understanding of the motion

16   to dismiss, the defendants contend that the plaintiffs,

17   that the plaintiff, rather, failed to make notes under --

18   or failed to make payments rather under a promissory note.

19           And then there are five or six reasons listed as

20   to why, high level listed, as to why the matter should not

21   proceed pursuant to 12(b)(6).

22           One of the claims is that the first amended

23   complaint fails to allege any damages.  Another contention

24   is that the first amended complaint lists or requests

25   injunctive relief solely.
```



5

```
 1            And according to the defendants, such relief

 2   cannot stand absent some other type of relief for a

 3   particular plaintiff.

 4            The defendants also -- the defendant also

 5   contends -- defendants, rather, also contend that there is

 6   no -- that there is a violation of the economic loss

 7   doctrine.

 8            And I believe that going back to the injunctive

 9   relief, that that is not relief according to the

10   defendants that's viable or cognizable under our law.

11            And so the Court will say that in determining

12   12(b)(6) matters, the Court is not looking at the merits

13   of the complaint.  Instead, the Court is looking to the

14   sufficiency of the complaint.

15            That means that the Court must determine, based

16   upon the face, the four corners of the complaint, whether

17   or not the complaint has any legal viability.

18            What does that mean?  That means that the

19   complaint is sufficient to put the defendants on notice of

20   what the claims are.  It's different than a motion for

21   summary judgment in which the Court can't review the

22   entire record, can review affidavits.

23            Discovery has proceeded at that point.  But at

24   this stage, the Court must discern whether or not the

25   complaint is legally sufficient.  One moment.
```



6

```
 1              Okay.  And so, accepting all of the allegations
 2    in the complaint as true and certainly reviewing the
 3    allegations in the complaint in the light most favorable
 4    to the plaintiff, the Court can draw the reasonable
 5    inferences that it may draw at this juncture to find that
 6    the defendants violated or committed the acts contained in
 7    the -- or alleged, rather, in the first amended complaint.
 8              Much of the arguments made in the motion to
 9    dismiss, again, they go to the merits of the case.  And
10    here the inquiry is that of sufficiency.
```

**JUDGE'S RULING**

```
12              And the Court does find the first amended
13    complaint to be sufficient in this case, because the Court
14    finds that it puts the defendants on notice, and it
15    certainly passes the Rule 8 muster.  And so, the Court
16    will deny the motion to dismiss the first amended
17    complaint.
18              So we have a Track 2.  I think that's all that
19    we need to do today.  Okay.  Thank you all for your
20    patience.  Have a good weekend.
21              MR. SADOWSKI:  Thank you, Your Honor.
22              MR. VERSTANDIG:  You as well, Judge.
23              THE COURT:  My pleasure.  Bye-bye.
24              (Thereupon, the proceedings were concluded.)
25                         * * * * *
```



```
1                     CERTIFICATE OF TRANSCRIBER

2              I, Jennifer L. Sullivan, transcriber, do hereby

3     certify that I have transcribed the proceedings had and

4     the testimony adduced in the case of DEVELOPER RE1, LLC v.

5     DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,

6     Docket Number:  2022 CAB 005935, in said Court, on the

7     24th day of March, 2023.

8              I further certify that the foregoing 7 pages

9     constitute the official transcript of said proceedings as

10    transcribed from audio recording to the best of my

11    ability.

12             In witness whereof, I have hereto subscribed my

13    name, this 28th day of March, 2025.

14

15

16

17    _____

18                    TRANSCRIBER

19

20

21

22

23

24

25
```



The order below is hereby signed.

Signed: May 6 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

In re:

        Charles Paxton Paret,
                Debtor.

Case No. 23-00217-ELG
Chapter 7

---

        Developer RE1 LLC,
                Plaintiff

                v.

        DP Capital LLC, *et al.*,
                Defendants

Adv. Pro. No. 24-10023-ELG
(Cases Consolidated)

---

        423 Kennedy St Holdings LLC,
                Plaintiff

                v.

        DP Capital, LLC, *et al.*,
                Defendants

## **ORDER REQUIRING SUPPLEMENTAL BRIEFING BY MAY 7, 2025**

The Court has before it the *Third Amended Complaint* (ECF No. 40) (the "Third Amended Complaint") filed by Developer RE1 LLC and 423 Kennedy St Holdings LLC (together, the "Plaintiffs"), the *Motion to Dismiss or, in the Alternative, for Summary Judgment* (ECF No. 44) (the "Motion to Dismiss") filed by DP Capital LLC, WCP Fund I LLC, Daniel Hertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (collectively, the "Defendants"), and the *Plaintiffs' Renewed Motion for Remand and to Suspend Defendants' Motions, Hearings, and Related Response Deadline* (ECF No. 46) (the "Motion for Remand") and responses filed thereto. The Motion to Dismiss and Motion for Remand are scheduled for hearing before this Court on May 8, 2025 at 10:00 a.m.

Following a hearing held on January 28, 2025, the Court has under advisement the *Motion for Summary Judgment on Claims Against Russell Drazin* (ECF No. 7) (the "Drazin Summary Judgment Motion") filed by the Defendants. Upon consideration of the Third Amended Complaint, the Motion to Dismiss, the Motion for Remand, the Drazin Summary Judgment Motion, and the responses filed thereto, the Court finds that further briefing is necessary regarding the pendency of the Drazin Summary Judgment Motion. It is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that on or before May 7, 2025, the parties shall file supplemental briefing explaining whether the Drazin Summary Judgment Motion is moot given the pendency of the Third Amended Complaint and the Motion to Dismiss.

[signed and dated above]

Copy to: All counsel of record.

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, "Plaintiffs"), move this Court for leave to file a Fourth Amended Complaint to correct the inadvertent omission of one claim by 423 Kennedy. In support of this request, the Plaintiffs represent as follows:

<u>OVERVIEW</u>

1. The Court is already familiar with the factual and procedural history of these removed cases. Pending before the Court are various motions, including the Plaintiffs' Renewed Motion for Remand. This motion is being filed without prejudice to the Plaintiffs' position that these consolidated cases involving purely state law claims should be remanded to the D.C. Superior Court.

2. The Plaintiffs filed a Third Amended Complaint on March 5, 2025. The Third Amended Complaint was filed as a result of several Defendants transferring certain loan documents to a sham company called JPK NewCo, LLC ("JPK"). After those loan documents were transferred, Defendant SF NU, LLC, a co-owner of JPK, argued that JPK was an indispensable party and filed a motion to dismiss on that basis.

3. The Third Amended Complaint was filed together by both Plaintiffs, with the consent of the Defendants, as one document in order to reduce the costs to all parties of having to respond to two separate, lengthy complaints that contained overlapping facts.

4. When combing the two, separate complaints into a single document, Plaintiffs' counsel inadvertently omitted including a previously asserted claim of breach of contract on behalf of 423 Kennedy. *See* ECF #1-2, pp. 684-86 (423 Kennedy's Verified Complaint filed July 13, 2023 (Count I for Breach of Contract).

5. 423 Kennedy's breach of contract claim is primarily premised upon several Defendants' unilateral decision to starve the 423 Kennedy development project of funds by refusing to release construction draws. *See* Third Amended Complaint, ECF #40, at 10, ¶¶ 64-66.

2

6. All of the Defendants were previously aware of 423 Kennedy's breach of contract claim as that claim was asserted in 423 Kennedy's complaint, and the viability of that claim was disputed by the initial Defendants and litigated at the hearing on 423 Kennedy's Motion for a Temporary Restraining Order.  *See* ==ECF #1-2==, Part I.A, pp. 1268-80 (Judge Milton Lee's Order dated July 24, 2023 summarizing the testimony and finding that 423 Kennedy was likely to prevail on its breach of contract claim).

<u>The Legal Standard for a Motion for Leave to Amend.</u>

7. Rule 15(a) of the Federal Rules of Civil Procedure, which governs the relief requested in this motion, states that:

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course no later than:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) , (e) , or (f) , whichever is earlier.
>
> (2) Other Amendments.  *In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.*

Fed. R Civ. Proc. 15(a) (italic emphasis added).

8. In a decision involving leave to amend a complaint under Rule 15(a), the D.C. Circuit Court of Appeals noted that:

> The provision of Rule 15(a) allowing amendment with leave of court gives the District Court discretion and direction.  It instructs the District Court to determine the propriety of amendment on a case by case basis, using a generous standard.
>
>> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

3

allowance of the amendment, futility of the amendment, etc. -- the
leave sought should, as the rules require, be "freely given."

*Harris v. Secretary, United States Dep't of Veterans Affairs*, <mark>126 F.3d 339, 344</mark> (D.C. Cir. 1997)
(citing Foman v. Davis, <mark>371 U.S. 178</mark> (1962).

<u>Legal Argument:  The Court Should Allow the Amendment.</u>

9.      Here there is no undue delay, or bad faith, or dilatory motive.  Rather, a

previously asserted claim was inadvertently omitted when two long complaints involving many

overlapping facts and claims were combined into one document.

10.      There would be no prejudice to the Defendants as a result of allowing this

amendment because the inadvertently omitted claim for breach of contract was previously

disclosed, discovery in this case is not yet completed, and no trial date has been set.

WHEREFORE, the Plaintiffs respectfully request that the Court grant this motion by

entering an order granting them leave to file the Fourth Amended Complaint that is attached as

Exhibit 1.  The previously omitted claim for breach of contract is now shown in Count VIII  of

the Fourth Amended Complaint.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  May 5, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Alexandria J. Smith (DC Bar # 1781067)
Erin B. McAuliffe (DC Bar #1722421)
801 17th Street, N.W., Suite 1000
Washington, DC  20006
Phone: (202) 452-1400; Fax: 202-452-1410
Email:    jds@gdllaw.com | ajs@gdllaw.com |
              ebm@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
 *and 423 Kennedy St. Holdings, LLC*

4

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2025, a true copy of the foregoing

Plaintiffs' Motion for Leave to file Fourth Amended Complaint was filed electronically and a

Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

5

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>    CHARLES PAXTON PARET,<br><br>    *Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>    *Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>    *Defendants.* | |

## <u>FOURTH AMENDED COMPLAINT</u>

COME NOW THE PLAINTIFFS, Developer RE1 LLC ("Developer RE1") and 423

Kennedy St Holdings LLC ("423 Kennedy"), by undersigned counsel, asserting claims against

DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, Daniel Huertas,

Russell Drazin, SF NU, LLC ("SF NU"), JPK NewCo LLC ("JPK NewCo"), and Shaheen Sariri.

The Fourth Amended Complaint includes claims for tortious interference with business relations,

breach of contract, breach of the duty of good faith and fair dealing, declaratory judgments, injunctive relief, breach of fiduciary duty, and to set aside fraudulent conveyances.[1]  In support of its Fourth Amended Complaint, Developer RE1 and 423 Kennedy aver as follows:

<u>THE PARTIES</u>

1.      The Plaintiff, Developer RE1 LLC ("Developer RE1"), is a District of Columbia limited liability company that is authorized to do business in the District.

2.      The Plaintiff, 423 Kennedy St Holdings LLC ("423 Kennedy"), is a District of Columbia limited liability company that is authorized to do business in the District.

3.      The first Defendant, DP Capital, LLC ("DP Capital"), is a Virginia limited liability company that does business under the trade name "Washington Capital Partners".  For convenience, the Complaint refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP".

4.      The second Defendant, WCP Fund I, LLC ("WCP Fund"), is a Delaware limited liability company that engages in a lending business in the District.

5.      The WCP controls the WCP Fund.

6.      The third defendant, Daniel Huertas ("Mr. Huertas"), is an individual that resides at 909 Chinquapin Road in McLean, Virginia, 22012.  Mr. Huertas is listed as the Chief Executive Officer of WCP on WCP's website.  Mr. Huertas controls WCP.

---

[1]      Counsel for the existing parties prior to the filing of the Third Amended Complaint agreed that given that the cases were consolidated and there are multiple overlapping facts and claims, for efficiency and judicial economy purposes it would be preferable to file one, combined Third Amended Complaint as opposed to each Plaintiff filing a separate amended complaint. This will be a fourth amended complaint for Developer RE1 and a second amended complaint for 423 Kennedy.

2

7.    The fourth defendant, Russell Drazin ("Mr. Drazin"), is an individual who is counsel to the WCP and the WCP Fund. Mr. Drazin is also listed as Trustee under two deeds of trust that he drafted, the terms of which are at issue in this case.

8.    The fifth defendant, SF NU, LLC ("SF NU"), is believed to be a New Mexico limited liability company that has not filed a certificate of authority to transact business in the District. SF NU has a business address of 1455 Research Boulevard, Suite 510, Rockville, Maryland, 20850. For convenience, the WCP, the WCP Fund, Mr. Huertas, and SF NU may sometimes be referred to as the "Lender Defendants".

9.    The sixth defendant, JPK NewCo LLC ("JPK"), District of Columbia limited liability company that was created by one or more of the Defendants for fraudulent and other improper purposes.

10.    The seventh defendant, Shaheen Sariri, is an individual that is believed to reside at 8305 Greensboro Drive, Unit 2319, in McLean, Virginia.

## STATEMENT OF FACTS APPLICABLE TO ALL COUNTS

The WCP Claims that It Is a Company That Can be Trusted and That It Has an "Unwavering Commitment to the Highest Ethical Standards".

11.    In a June 16, 2022 news article published on the internet by Modern Luxury DC, two officers of WCP were quoted as saying that:

> "*We never want to let our clients fail,*" says [Giselle] Bonzi. "Our borrowers end up trusting that if they work with us, we will do everything in our power to help them succeed." The duo understands the importance of a client's positive experience and the clear communication of each step in the lending process because it builds trust[;]" and

> "Real estate financing involves a lot of high trust," says [Daniel] Huertas. "We've developed a highly relational experience with our clients through innovative products, practices and standards. *What sets us apart from other lenders is our unwavering commitment to*

3

5844

*the highest ethical practices in the industry*, which historically
have been very informal."

Source:  https://dc.capitolfile.com/power-players-dc (italic emphasis added).

12.     But in reality, the WCP does not have the highest ethical standards.  The WCP is

a company that has engaged in predatory lending practices, and as this Complaint will show, Mr.

Huertas, the WCP, the WCP Fund, and SF NU have engaged in unethical, outrageous conduct

that was specifically designed to make several of their clients' construction projects fail.

The Ownership of Developer RE1, Its Purpose, and the Property.

13.     Developer RE1 is the record owner of real property in the District known as 5501

1st Street, N.W., Lot 138, Square 3389 (the "RE1 Property").

14.     Developer RE1 is partially owned by Mr. Negussie.

15.     Developer RE1 is a domestic, sole purpose, limited liability company, and the

sole purpose of Developer RE1 is to own and develop the RE1 Property.

16.     The Lender Defendants all knew that Developer RE1 was a sole purpose entity

whose only asset was the RE1 Property and the improvements that Developer RE1 made to the

RE1 Property.

17.     On December 23, 2021, the WCP helped facilitate Developer RE1 obtaining an

acquisition finance loan for the RE1 Property with the WPC Fund.

The Ownership of 423 Kennedy, Its Purpose, and the Property.

18.     423 Kennedy is the record owner of real property in the District known as 423

Kennedy Street, N.W., Lot 56, Square 3260 (the "423 Property").

19.     423 Kennedy is a domestic, sole purpose, limited liability company, and the sole

purpose of 423 Kennedy is to own and develop the 423 Property.

4

20.     The Lender Defendants all knew that 423 Kennedy was a sole purpose entity whose only asset was the Property and the improvements that 423 Kennedy made to the 423 Property.

21.     423 Kennedy is co-owned by two members:  Mel Negussie (a 50% owner) and the Brighton KSDC, LLC ("Brighton Group") (the other 50% owner).

22.     The Brighton Group is comprised of forty-one individual investors, many of whom used their personal retirement savings to invest in the Brighton Group's membership interest in 423 Kennedy.

23.     On January 31, 2020, the WCP helped facilitate 423 Kennedy obtaining a construction finance loan for the 423 Property with the WPC Fund.

24.     Due to unforeseen complications with the soil and water at the 423 Property, 423 Kennedy increased the original loan amount and refinanced the original construction finance loan on March 31, 2022.

Prior to Closing, the WCP and the WCP Fund Represent to 423 Kennedy That they Will Provide Construction Draws to Fund the Project.

25.     As part of the refinancing, the WCP and the WCP Fund agreed that they would provide construction draws to 423 Kennedy (up to $4,650,000.00) as construction on the project progressed.  The WCP and the WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing.

26.     423 Kennedy relied upon the WCP and the WCP Fund's express promise to provide construction draws to 423 Kennedy during the course of construction and prior to signing any closing documents.

27.     The total amount of construction draws that the WCP and the WCP Fund agreed to provide 423 Kennedy was also listed in an approved Construction Budget & Draw Schedule

5

and in Terms Sheets prepared by the WCP and the WCP Fund prior to closing. 423 Kennedy also relied upon the representations contained in these documents before signing any of the loan documents at closing.

The Developer RE1 Loan Documents with the WCP and the WCP Fund.

28. As part of the refinancing, on December 23, 2021, Developer RE1, as Grantor, signed a Deed of Trust (the "First RE1 DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee. A true copy of the First RE1 DOT was attached to Developer RE1's Complaint as Exhibit A.[2]

29. The First RE1 DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

30. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 DOT before it was signed.

31. On December 23, 2021, Developer RE1 signed a Commercial Deed of Trust Note (the "First RE1 Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund. A true copy of the First RE1 Note was attached as Exhibit B to Developer RE1's Complaint.

32. The First RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

33. The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the First RE1 Note before it was signed.

---

[2] Counsel for the parties before the Third Amended Complaint was filed agreed that the Third Amended Complaint could reference the prior complaint exhibits that are already in the record and that there also was no need to attach those Exhibits again to the Third Amended Complaint. No new exhibits are being added in the Fourth Amended Complaint.

6

34.     On December 23, 2021, Developer RE1 signed a second, additional Deed of Trust ("Second RE1 DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.  A true copy of the Second RE1 DOT was attached to Developer RE1's Complaint as Exhibit C.

35.     The Second RE1 DOT was a form of deed of trust  prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

36.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 DOT before it was signed

37.     On December 23, 2021, Developer RE1 signed a second Commercial Deed of Trust Note (the "Second RE1 Note") in the amount of $524,000.00, as "Borrower", a copy of which was attached to Developer RE1's Complaint as Exhibit D.

38.     The Second RE1 Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

39.     The WCP and the WCP Fund did not permit Developer RE1 to make any changes to the terms of the Second RE1 Note before it was signed.

40.     On December 23, 2021, Developer RE1 paid $122,679.70 in loan origination fees to the WCP Fund.

41.     The WCP Fund appears to have assigned its interest in the Second RE1 DOT to SF NU in an Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but has conflicting dates on it.  There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

42.     The maturity date for the First RE1 Note and the Second RE1 Note was December 23, 2022.

7

43.     As of November 3, 2022, there was no allegation made by any Defendant to Developer RE1 that any default by Developer RE1 existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

44.     As of November 3, 2022, Developer RE1 had made all payments to the WCP Fund that were due under the First RE1 Note and the Second RE1 Note.

The 423 Kennedy Loan Documents with the WCP and the WCP Fund.

45.     As part of the refinancing, on March 31, 2022, 423 Kennedy, as Grantor, signed a Deed of Trust (the "First 423K DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee.  A true copy of the First 423K DOT was attached as Exhibit A to 423 Kennedy's Complaint.

46.     The First 423K DOT was a form deed of trust that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

47.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K DOT before it was signed.

48.     On March 31, 2022, 423 Kennedy signed a Commercial Deed of Trust Note (the "First 423K Note") in the amount of $8,689,693.00, as "Borrower", in favor of the WCP Fund. A true copy of the First 423K Note is attached as Exhibit B to 423 Kennedy's Complaint.

49.     The First 423K Note was a form of promissory note that was prepared by Mr. Drazin as counsel for the WCP and the WCP Fund.

50.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes to the terms of the First 423K Note before it was signed.

51.     On March 31, 2022, 423 Kennedy signed a second, additional Deed of Trust ("Second 423K DOT") for the Property that also named the WCP Fund as Beneficiary and Mr.

8

Drazin as Trustee.  A true copy of the Second 423K DOT was attached as Exhibit C to 423

Kennedy's Complaint.

52.     The Second 423K DOT was a form of deed of trust was prepared by Mr. Drazin

as counsel for the WCP and the WCP Fund.

53.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K DOT before it was signed

54.     On March 31, 2022, 423 Kennedy signed a second Commercial Deed of Trust

Note (the "Second 423K Note") in the amount of $1,256.000.00, as "Borrower", a copy of which

was attached to the 423 Kennedy Complaint as Exhibit D.

55.     The Second 423K Note was a form of promissory note that was prepared by Mr.

Drazin as counsel for the WCP and the WCP Fund.

56.     The WCP and the WCP Fund did not permit 423 Kennedy to make any changes

to the terms of the Second 423K Note before it was signed.

57.     As of March 31, 2022, 423 Kennedy had paid $261,202.33 in loan origination

fees to the WCP Fund by making payments to company called "WCP Servicing, LLC".

58.     The new, refinanced loans for 423 Kennedy were set to mature on March 31,

2023.

59.     Beginning in April of 2022, the WCP and the WCP Fund started providing

construction draws to 423 Kennedy as they had initially promised to 423 Kennedy prior to

closing.

60.     The WCP Fund may have assigned its interest in the Second DOT to SF NU in an

Assignment of Deed of Trust ("Assignment").  The Assignment lists Mr. Huertas as trustee, but

9

has conflicting dates on it. There is text showing a December 21, 2021 execution date, but there is also a notary seal showing execution on June 28, 2022.

61. Due to changing economic conditions, in September of 2022, 423 Kennedy began the process of refinancing the two loans on the 423 Property with another lender.

62. As of October 6, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

63. As of October 6, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

The Lender Defendants Begin Their Corrupt Plan to Try To Foreclose on the 423 Property by Starving 423 Kennedy of Construction Draw Funds, then Sabotaging the Refinancings of the Loans for Both Properties.

64. On or about October 6, 2022, and contrary to the prior, express representations that WCP and WCP Fund had made to 423 Kennedy prior to closing about the funding of construction draws, Mr. Huertas informed 423 Kennedy by telephone that the WCP would no longer provide construction draws to 423 Kennedy.

65. The reason that Mr. Huertas gave for not funding any further construction draws to 423 Kennedy was because Mr. Negussie was involved with Mr. Charles Paret in the development of other projects (projects that were unrelated to the Property), and that the Defendants were "disappointed" that those other projects "were not constructed well".

66. The Defendants knew that if the WCP did not fund construction draws, 423 Kennedy would be harmed because it would not be able to complete the development of the Property.

67. On or about October 24, 2022, the WCP transmitted a Payoff Statement to 423 Kennedy listing the amounts required to pay the WCP Fund to retire the balances owed under the

First 423K Note and to release the First 423K DOT from the Property.  A true copy of the October 24, 2022 Payoff Statement for the first loan was attached to 423 Kennedy's Complaint as Exhibit E.

68.     On or about October 24, 2022, WCP transmitted a Payoff Statement for the Second 423K Note listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the Property.  A true copy of the Payoff Statement for the second loan was attached to 423 Kennedy's Complaint as Exhibit F.

69.     As of October 24, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

70.     As of October 24, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 and 423 Kennedy If They Did Not Accede to His Demands Regarding Another Unrelated Development.</u>

71.     On November 3, 2022, Mr. Huertas sent an email to 423 Kennedy (via Mr. Negussie) to inquire about the status of the payoff of both loans by 423 Kennedy.  Mr. Huertas stated that WCP "would not provide any construction loan draws to 423 Kennedy".  A copy of the November 3, 2022 email was attached to 423 Kennedy's Complaint as Exhibit G.

72.     As of November 3, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

73.     As of November 3, 2022, 423 Kennedy had made all payments to the WCP Fund that were due under the First 423K Note and the Second 423K Note.

8161\0002\4916-8515-5391.v1

74.     On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1.  Mr. Huertas wrote that:  "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505."  A copy of the November 3, 2022 email was attached to the Developer RE1 Complaint as Exhibit E.

75.     On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects."  A true copy of the November 15, 2022 email was attached the Developer RE1's Complaint as Exhibit F.

76.     As of November 15, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

77.     On November 15, 2022, Mr. Huertas sent another email to 423 Kennedy (via Mr. Negussie) in which he reiterated that WCP would not release any more construction draws.  A copy of the November 15, 2022 email was attached to 423 Kennedy's Complaint as Exhibit H.

78.     As of November 15, 2022, there was no allegation made by any Defendant that any default by 423 Kennedy existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

79.     By as early as November 17, 2022, the Lender Defendants each knew that Developer RE1 and 423 Kennedy had secured alternative financing, or were in the process of securing alternative financing, for their respective Properties with another lender named Main Street Bank, and that Developer RE1 and 423 Kennedy expected to close on the new refinancing loans in December of 2022.  A true copy of a November 17, 2022 email sent by Mr. Huertas is attached was the Developer RE1's Complaint as Exhibit G.

12

80.    On or about November 21, 2022, WCP transmitted another Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the First 423K Note and to release the First 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the first loan was attached as Exhibit I to 423 Kennedy's Complaint.

81.    On or about November 21, 2022, WCP transmitted a Payoff Statement listing the amounts required to pay the balance due to the WCP Fund under the Second 423K Note and to release the Second 423K DOT from the 423 Property.  A true copy of the November 21, 2022 Payoff Statement for the second loan was attached as Exhibit J to 423 Kennedy's Complaint.

82.    As of November 21, 2022, there was no allegation made by any Defendant to 423 Kennedy that any default existed under either the First 423K Note, the Second 423K Note, the First 423K DOT, or the Second 423K DOT.

83.    As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 or 423 Kennedy existed under either any of the respective notes and deeds of trust.

84.    On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the RE1 Property.  A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to Developer RE1's Complaint as Exhibit H.

85.    That same day (November 30, 2022), Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022.  A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached as to Developer RE1's Complaint as Exhibit I.

13

86.     WCP sent all the Payoff Statements listed in paragraphs 67, 68, 80, and 81 to 423 Kennedy because WCP knew that 423 Kennedy was attempting to go to closing on the refinance of both loans.

87.     None of the Payoff Statements that are referenced in 67, 68, 80, and 81 included any request by any Defendant for the payment of default fees, default interest, or any other amount that was based upon any allegation that there was a "default" by 423 Kennedy under either the First 423K Note, the Second 423K Note, the First 423K DOT or the Second 423K DOT.

88.     On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months.  Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First RE1 Note and the Second RE1 Note by $1 million to $1.5 million (in principal).

89.     On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First RE1 Note and the Second RE1 Note for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000.  Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million.  Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors.

90.     As of December 7, 2022, there was no allegation made by any Defendant to Developer RE1 that any default existed under either the First RE1 Note, the Second RE1 Note, the First RE1 DOT, or the Second RE1 DOT.

91.     As of December 7, 2022, Developer RE1 had made all payments due under the First RE1 Note and the Second RE1 Note.  By that date, Developer RE1 had paid $332,319.03 in interest payments to the WCP Fund.

92.     As of December 8, 2022, 423 Kennedy had made all payments due under the First 423K Note and the Second 423K Note.  By that date, 423 Kennedy had paid $514,560.80 in interest payments to the WCP Fund.  That interest amount is in addition to prior payments made by 423 Kennedy to the WCP of approximately $378,818.53 in interest under the original loan.

> After the Lender Defendants Starve 423 Kennedy of Construction Draw Funds, Mr. Huertas Then Demands that Either 423 Kennedy, Developer RE1, or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".

93.     On December 8, 2022, Mr. Huertas told 423 Kennedy and Developer RE1 during a telephone call with Mr. Negussie that the Lender Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out.  For convenience, the unrelated development project at 2507 I Street, NW will be referred to as the "2507 I Street Project".

94.     SF NU is believed to also have a financial interest in the 2507 I Street Project.

95.     During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans [Mr. Negussie] was associated with at WCP," including Developer RE1.  Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done," and that this Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" and another project financed by WCP, and that WCP is "defaulting the loans."  Mr. Huertas also said: "why don't you do the honorable thing and have

15

your investors buy 2507 I St to make things right" or have them "take care of the $700,000"
shortfall on the 2507 I Street Project.

96.     During that call, Mr. Huertas told Mr. Negussie that he should "do the right thing"
by arranging for an approximate $700,000 shortfall (on the 2507 I Street Project) to be paid to
the WCP Fund, and that if Mr. Negussie did not arrange for that shortfall to be paid, then the
Lender Defendants and the unnamed investor "would make trouble for you on all of your other
projects".

97.     During the December 8, 2022 phone call, Mr. Negussie told Mr. Huertas that it
was not appropriate for either him (Mr. Huertas) or the WCP to be trying to force Developer
RE1, 423 Kennedy, or Mr. Negussie to pay for the debts of someone else on another, unrelated
project, and that it was not appropriate for Mr. Huertas or the WCP to be making threats to either
Mr. Negussie or to be making threats to any other development project that Mr. Negussie was
involved with.

98.     After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I
Street Project, Mr. Huertas stated, in retaliation, that all prior Payoff Statements previously sent
were withdrawn and that he would place Developer RE1 and 423 Kennedy in default under their
loan documents with the WCP Fund.

99.     The Lender Defendants knew that 423 Kennedy is a domestic, sole purpose
limited liability company that is partially owned by Mr. Negussie.

100.    The Lender Defendants knew that the sole purpose of 423 Kennedy is to develop
the 423 Property.

101.    The Lender Defendants knew that there is no legal or other business relationship
between 423 Kennedy and Developer RE1.

16

102.    The Lender Defendants knew that 423 Kennedy does not control Developer RE1 and that Developer RE1 does not control 423 Kennedy.

103.    The Lender Defendants knew that Developer RE1 and 423 Kennedy are not "affiliates" of one another, and that those entities have no business relationship with each other.

104.    Mr. Huertas provided no basis for why or how the Defendants could suddenly put Developer RE1 or 423 Kennedy in default under any of the loan documents for the two properties, other than Mr. Huertas' belief that he could put Developer RE1 and 423 Kennedy in "default" under another, unrelated loan because he (Mr. Huertas) was dissatisfied with how construction turned out at the 2507 I Street Project.

105.    The Lender Defendants knew that the developer of the 2507 I Street Project, and the borrower under the loan documents for that project, was 2507 I St Holdings, LLC ("2507 Holdings").

106.    The Lender Defendants knew that 2507 Holdings is a domestic, sole purpose limited liability company that is owned by Charles Paret (a 50% owner) and by Mr. Negussie (the other 50% owner).

107.    The Lender Defendants knew that there is no legal or other business relationship between either Developer RE1 or 423 Kennedy and 2507 Holdings.

108.    The Lender Defendants knew that 2507 Holdings does not control Developer RE1 and that Developer RE1 does not control 2507 Holdings.  The Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

109.    The Lender Defendants knew that neither Developer RE1 nor 423 Kennedy had any interest in, or involvement with, the 2507 I Street Project

17

110.    The Lender Defendants knew that Mr. Negussie did not have a controlling interest in either 423 Kennedy, Developer RE1, or the 2507 Holdings.

111.    The Lender Defendants knew that 2507 Holdings does not control 423 Kennedy and 423 Kennedy does not control 2507 Holdings.  The Lender Defendants also knew that the two entities are not affiliates of one another, and that the two entities have no business relationship with each other.

112.    The Lender Defendants knew that Developer RE1 is a domestic, sole purpose limited liability company that is partially owned by Mr. Negussie.

113.    The Lender Defendants knew that the sole purpose of Developer RE1 is to develop the RE1 Property.

### Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 and 423 Kennedy By Improperly Demanding Payment More than $2 Million of "Default Penalties" and "Default Interest" and By Threatening Developer RE1 and 423 Kennedy With Foreclosure.

114.    Later that same day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for you (referring to Mr. Negussie, 423 Kennedy, and Developer RE1) by arranging for Leslie Calderas, a WCP Servicing Manager, to send a letter entitled "Notice of Default" to Developer RE1 and to 423 Kennedy (c/o Mr. Negussie) by email.  A true copy of the email from Leslie Calderas is attached as Exhibit J.  True copies of each "Notice of Default" that were included with Mr. Calderas' December 8, 2022 email were attached to the Developer RE1 Complaint as Exhibit K and Exhibit L, respectively, and Exhibit K to the 423 Kennedy Complaint.

115.    The "Notice of Default" sent to Developer RE1 appears to reference the First RE1 DOT, the First RE1 Note, the Second RE1 DOT, and the Second RE1 Note.

18

116.    The "Notice of Default" sent to 423 Kennedy appears to reference the First 423K DOT, the First 423K Note, the Second 423 DOT, and the Second 423K Note.

117.    Each "Notice of Default" states that it was being sent by the "Vice President" of the WCP, but neither notice was signed by anyone at the WCP.  The WCP web site indicates that the Vice President of the WCP is Christina Araujo.

118.    Each "Notice of Default" also states that it was referencing "a copy of the first page of the Deed of Trust as Exhibit A", but there was no "Exhibit A" attached to either notice.

119.    The lack of a signature on each "Notice of Default" and the failure by the WCP to include the referenced exhibit with each "Notice of Default" are indications that the two notices were hastily prepared by either Mr. Huertas or by someone else at the WCP.

120.    Each Notice of Default did not contain any legal basis or other explanation for how or why either Developer RE1 or 423 Kennedy had defaulted under any of the loan documents.

121.    Each Deed of Trust contains a "Notices" provision that states how notices are required to be sent.  The "Notices" provision, which is Section 11.1 in all of the deeds of trusts, states:

> All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:
>
> (a) If to the Grantor, then to: 1629 K Street, Suite 300, Washington DC 20006
>
> (b) If to the Beneficiary, then to: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin,

19

LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

(c) If to the Trustee, then to them at: 2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015

Any of the parties may designate a change of address by notice in writing to the other. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

*See* deeds of trust at pages 17-18.

122.    In the deeds of trust, email is not listed as a permissible means to send notice.

123.    In the email that transmitted the letters purporting to be default notices under the two RE1 loans, the WCP included two Payoff Statements for Developer RE1. True copies of the two Payoff Statements for Developer RE1 that were included with the email transmitting each "Notice of Default" were attached to Developer RE1's Complaint as Exhibit M and Exhibit N, respectively.

124.    The Payoff Statement sent by WCP for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00. *See* Ex. M to Developer RE1's Complaint.

125.    The Payoff Statement sent by WCP for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty".

126.    In the email that transmitted the letter purporting to be a "Notice of Default" under one of the two 423 Kennedy loans, the WCP included two Payoff Statements. A copy of the two Payoff Statements that were included with the email transmitting each "Notice of Default" to 423 Kennedy were attached to 423 Kennedy's Compliant as Exhibits L and M.

20

127.     The new Payoff Statement sent by WCP for the first loan included a demand that 423 Kennedy pay $456,927.95 in "Default Interest" and a "Default Penalty" of $868,969.30. Neither of those two charges appeared on any prior Payoff Statements sent by the WCP to 423 Kennedy.

128.     The new Payoff Statement sent by WCP for the second loan including a demand that 423 Kennedy pay $97,130.67 in "Default Interest" and $125,600.00 for a "Default Penalty". Neither of those two charges appeared on any prior Payoff Statements sent to 423 Kennedy by the WCP.

**Mr. Huertas "Lawyers Up" and Asks an Attorney to Come Up with A Cover Story.**

129.     After receiving the email with each Notice of Default, Mr. Negussie called Mr. Huertas by telephone to inquire as to the basis for why the Defendants were now claiming that Developer RE1 and 423 Kennedy were in default under any loan document.  During that call, Mr. Huertas told Mr. Negussie that he would not talk about the basis for the defaults, rather, Mr. Negussie would have to discuss the basis for the defaults with the WCP's counsel.

130.     On information and belief, on or about December 8, 2022, soon after Mr. Huertas directed someone from the WCP to send the Notice of Default to Developer RE1 and 423 Kennedy, Mr. Huertas called Mr. Drazin and told Mr. Drazin to scour through every provision of the loan documents to try to find a reason to justify the Defendants' decision to declare that Developer RE1 was in default of the loan documents when they each knew, in fact, that there were no defaults by Developer RE1 under any of its loan documents.

131.     On information and belief, Mr. Huertas directed Mr. Drazin to come up with a cover story as part of a joint effort by the Lender Defendants to conceal the fact that there was no valid basis for declaring Developer RE1 and 423 Kennedy to be in default under any of the loan

21

documents and to conceal the real reason why Developer RE1 and 423 Kennedy were improperly placed in default by the Defendants.

132. As of December 8, 2022, Mr. Drazin knew that he had a fiduciary duty, as Trustee, to both the borrowers (Developer RE1 and 423 Kennedy) and to the lender under the deeds of trust.

133. As of December 8, 2022, Mr. Drazin knew that that his representation of the Lender Defendants as counsel created an actual conflict of interest with his fiduciary duty as Trustee to Developer RE1, as borrower, and 423 Kennedy, as borrower. Nevertheless, Mr. Drazin willfully ignored the fiduciary duty that he owed to Developer RE1, as borrower, and 423 Kennedy, as borrower, and began to act solely on behalf of, and take instructions solely from, and provide legal advice to, the Lender Defendants.

134. Mr. Drazin also knew that it was improper, and a breach of the fiduciary duty that he owed to Developer RE1 and 423 Kennedy, to try to find ways to justify -- after the fact -- the Lender Defendants' issuance of the Default Notice.

135. The real reason that the Lender Defendants improperly alleged that Developer RE1 and 423 Kennedy were in default under the loan documents was because the Lender Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to.

136. The deeds of trust state that Mr. Drazin, as Trustee, could collect of "commission" of 2.50% of the total amount then due, and another "commission" of 5.00% the proceeds of a foreclosure sale.

22

137.    There is a financial incentive for Mr. Drazin to inflate the amounts that are claimed to be due from Developer RE1 and 423 Kennedy by the WCP and the WCP Fund given that one of the two "commissions" payable to him is based upon "the total amount then due".

Money is the Root of All Evil.

138.    As a result of their spite, their evil, improper motive, and their greed, the Lender Defendants improperly alleged that both Developer RE1 and 423 Kennedy were in default under the loan documents to try to line their own pockets and to cause as much financial and reputational damage as possible to Developer RE1, to Mr. Negussie, and to 423 Kennedy.

139.    The Lender Defendants also caused WCP to issue a "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to interfere with -- and prevent -- the refinancing of the loans that they knew that Developer RE1 and 423 Kennedy had secured, or were in the process of securing, with Main Street Bank.

140.    The Lender Defendants also caused WCP to issue each notice "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of trying to prevent Developer RE1 from being able to go to closing on the refinancing of their loans with Main Street Bank.

141.    The Lender Defendants also caused the WCP to issue the each "Notice of Default" to Developer RE1 and 423 Kennedy for the express purpose of improperly pressuring either Developer RE1, 423 Kennedy, and/or Mr. Negussie to pay someone else's debt to the WCP Fund and/or SF NU (*i.e.*, 2507 I Holdings' alleged debt to the WCP Fund and/or SF NU).

142.    The Lender Defendants knew that they had no legal right to demand that Developer RE1, 423 Kennedy, or Mr. Negussie either correct, or pay for, any problems that the Lender Defendants claimed existed at the 2507 I Street Project.

143.    The actions of the Lender Defendants, which they took acting in concert, were taken to attempt to inflict maximum economic and reputational damages upon Developer RE1

23

and its members, and 423 Kennedy and its members.  The Lender Defendants' misconduct is a form of extortion.

> The Cover Stories that Mr. Drazin Came Up with for Developer RE1 and 423 Kennedy Do Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.

144.    Mr. Drazin came up with the cover stories that Mr. Huertas had requested that he provide for the Lender Defendants.  When asked by counsel for Developer RE1 and 423 Kennedy to provide a basis for the default claims regarding Developer RE1, Mr. Drazin responded by email that:

(a)    "there is a massive Water/Sewer balance due and owing to DC Water ($44,857.93).  DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397).  The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

(b)    Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022.  DEVELOPER RE1 LLC did not timely pay those Taxes.  Payment was not made until October 16 and 19, 2022."  A true copy of Mr. Drazin's email response listing the alleged defaults by Developer RE1 was attached to Developer RE1's Complaint as Exhibit O.

145.    For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim."

146.    Developer RE1 first became aware that there may be outstanding DC Water invoices on or about August 31, 2022.  That was because DC Water was sending the invoices for the Property to the wrong address.  The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices").  Upon learning of the Disputed

24

Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water
claimed was due.

147.    On September 22, 2022, DC Water stated in an email that "the dispute deadline
date for these charges has expired" and that "[b]ills must be paid or disputed by their respective
due dates."  Because Developer RE1 did not receive an invoice until on or about August 31,
2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already
expired by about sixty days.

148.    On September 22, 2022, Developer RE1 submitted (by email) a Petition for
Administrative Hearing to contest the Disputed Invoices.  Developer RE1 is currently waiting for
an administrative hearing to be scheduled.  A true copy of the September 22, 2022 email and the
Petition for Administrative Hearing were attached to Developer RE1's Complaint together as
Exhibit P.

149.    Pursuant to Section 7.6 of the First RE1 DOT and the Second RE1 DOT,
Developer RE1 reasonably believes that it has the right to either discharge the DC Water Alleged
Debt Claim "within thirty (30) calendar days" or to "appeal therefrom" any final judgment
without being in violation of the covenant in Section 7.6 (entitled "Judgments").

150.    Developer RE1 cannot be declared in "default" based upon the first pre-textual
basis provided by Mr. Drazin (the DC Water Alleged Debt) for equitable reasons, and because
cure provisions in each deed of trust indicate that Developer RE1 had the right (under Section
7.6) to either appeal from, or to discharge (by payment) any lien filed by DC Water.

151.    Mr. Drazin also came up with the cover story for 423 Kennedy that Mr. Huertas
had requested that he provide for the Lender Defendants.  When asked by counsel for Developer
RE1 and 423 Kennedy to provide a basis for the default claims regarding 423 Kennedy, Mr.

8161\0002\4916-8515-5391.v1

Drazin responded that: "The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185 ("Fine Certificate"). A copy of Mr. Drazin's reply email listing the alleged defaults was attached to 423 Kennedy's Complaint as Exhibit N.

152.    The Fine Certificate relates to Notice of Infraction dated December 3, 2021 ("NOI") that was issued to 423 Kennedy by the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). The violation alleged in the NOI was listed as "Prohibitive Excessive Vegetative Growth" that carried with it a fine of $500.00. A true copy of the NOI was attached to 423 Kennedy's Complaint at Exhibit O.

153.    423 Kennedy did not have notice of the NOI at the time it was issued because the DCRA sent a copy of the NOI to the wrong email address.

154.    On September 7, 2022, the Office of Administrative Hearings issued a Final Order regarding the NOI. A copy of the Final Order was attached to 423 Kennedy's Complaint as Exhibit P.

155.    423 Kennedy noted an appeal of the Final Order on September 12, 2022. A copy is 423 Kennedy's appeal was attached to 423 Kennedy's Complaint as Exhibit Q.

156.    Pursuant to Section 7.6 of the First 423K DOT and the Second 423K DOT, 423 Kennedy has the right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments").

157.    423 Kennedy originally planned to wait for the District to respond to its appeal of the fine that was issued as a result of the NOI. However, after 423 Kennedy received each "Notice of Default", and even though 423 Kennedy believed that each "Notice of Default" that

26

was sent to it by the Lender Defendants was improper and was sent as a pretext, on December 10, 2022, 423 Kennedy paid the District $1,657.43 to discharge that fine and any lien that was recorded as a result of the NOI. A copy of confirmation of the $1,657.34 payment to the District was attached to 423 Kennedy's Complaint as Exhibit R.

158. December 10, 2022 is less than thirty days after November 17, 2022.

159. On December 11, 2022, the District of Columbia Office of Administrative Hearings (OAH) vacated the Final Order. *See* Exhibit S to 423 Kennedy's Complaint.

160. There are no outstanding fines owed by 423 Kennedy to the District.

161. 423 Kennedy cannot be declared in "default" based upon the first pre-textual basis provided by Mr. Drazin because 423 Kennedy had the right (under Section 7.6) to either appeal from, or to discharge (by payment), any lien filed by the District.

162. The only provision of the loan documents that Mr. Drazin cited as a claimed basis for a "default" by Developer RE1 and 423 Kennedy was Section 7.9 of deeds of trust.

163. The deeds of trust each have a Section 7.9 that is identical. Section 7.9 is part of the "Events of Default" provisions of the deeds of trust. Section 7.09 states:

> Other Indebtedness. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* deeds of trust at pages 11-12 (italic and underlined emphasis added).

164. The Lender Defendants apparently claim that Section 7.9 is a cross-default provision. A cross-default provision in a contract is a provision that allows a "default" under one agreement to constitute a "default" under another agreement.

27

165.    In order for Section 7.9 to apply as a cross-default provision as to 423 Kennedy or Developer RE1, two conditions must have occurred:  (1) the borrower must be in "default" of "any document or instrument evidencing or securing any indebtedness, obligation, or liability" to the WCP Fund; and (2) the borrower must be an "affiliate of" 423 Kennedy or Developer RE1.

166.    The deeds of trust do not define the term "affiliate."  Under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company."  15 U.S. Code §6809 (6).

167.    There is also no common control of Developer RE1 and 423 Kennedy.

168.    Mr. Negussie does not have a "controlling" interest in 423 Kennedy.

169.    Mr. Negussie does not have a "controlling" interest in Developer RE1.

170.    Because 423 Kennedy and Developer RE1 cannot be considered "affiliates", the Defendants cannot invoke Section 7.9 as a basis to find that an "Event of Default" has occurred under any of the deeds of trust, even if one of them was actually in "default" of any loan agreement with the WCP Fund.

171.    Mr. Drazin alleged a default under Section 7.9 as a pretext, and as part of a cover story, for the actual, improper reason that the Lender Defendants falsely, and improperly, claimed that 423 Kennedy and Developer RE1 were in default under the respective deeds of trust.

172.    The Lender Defendants have, through their counsel Mr. Drazin, also improperly claimed, without any legal right or justification that:  "There is no right to cure.  There is no right to deceleration.  There is no right to reinstatement.  The Loans are in default and are accelerated."  *See* Ex. O to Developer RE1's Complaint and Ex. N to 423 Kennedy's Complaint (the use of "Loans" appears to be referring to the notes and deeds of trust).

28

173. The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022.

174. The property taxes of $16,522.89 was paid by Developer RE1 on October 16, 2022, and the property tax of $222.28 was paid by Developer RE1 on October 19, 2022. True copies of the receipts for the property tax payments were attached to Developer RE1's Complaint as Exhibit Q and Exhibit R, respectively.

175. The late payment of taxes by Developer RE1 caused no harm whatsoever to the WCP Fund.

176. The deeds of trust contain language indicating that a foreclosure cannot occur if an Event of Default, whether alleged or actual, has already been cured.

177. No claim of default was made by WCP against Developer RE1 or 423 Kennedy until after WCP became aware that Developer RE1 and 423 Kennedy were obtaining refinance loans for their properties with Main Street Bank.

<u>Developer RE1 and 423 Kennedy Will Be Irreparably Harmed if the Defendants'
Predatory Lending Practices Are Left Unchecked.</u>

178. The Lender Defendants have threatened to foreclose on the Properties owned by Developer RE1 and 423 Kennedy even though they know that they have no legal right to foreclose on the Property.

179. There is no valid, legal basis under any provision any of the deeds of trust that would permit the Defendants to foreclose on the Property.

180. If any of the Defendants follow through on any foreclose sale on the Property, Developer RE1 and its members will be irreparably harmed and they could lose their entire investment.

8161\0002\4916-8515-5391.v1

589

181.     If any of the Defendants follow through on any scheduled foreclosure sale, 423 Kennedy, its members (Mr. Negussie and the Brighton Group), and all forty-one of the Brighton Group's investors, will be irreparably harmed and they could lose their entire investments.

182.     The Lender Defendants' conduct shows that they have an evil motive, that they are acting with actual malice to impose damages on Developer RE1 and others, and they are intentionally and willfully disregarding Developer RE1's rights under the loan documents and under the law.  The Defendants' misconduct and improper lending practices also constitute outrageous conduct further justifying an award of punitive damages.

183.     The Lender Defendants knew that the First 423K Note and the Second 423K Note list a maturity date of December 23, 2022.  The Lender Defendants deliberately timed their improper interference with Developer RE1's and 423 Kennedy's business relations -- right before the Christmas holiday period -- to make it close to impossible for 423 Kennedy to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the two properties.

184.     As of January 11, 2023, none of the Lender Defendants had sent either Developer RE1 or 423 Kennedy a written default notice that complies with the notice provisions of either the deed of trust.

185.     On June 23, 2023, Mr. Drazin, apparently on behalf of SF NU, sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("RE1 Foreclosure Notice").  The RE1 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:10 p.m.

186.     On June 23, 2023, Mr. Drazin, on behalf of the WCP Fund, sent to 423 Kennedy a Notice of Foreclosure Sale of Real Property or Condominium Unit ("423 Foreclosure Notice").

The 423 Foreclosure Notice set the date and time of the foreclosure sale on July 25, 2023 at 2:00 p.m.  A copy of the 423 Foreclosure Notice was attached to 423 Kennedy's Complaint as Exhibit T.

187.    On July 12, 2023, Developer RE1 sent a letter to Mr. Drazin demanding that he resign as Trustee under the deeds of trust due to his conflict of interest.  After receiving that letter, Mr. Drazin refused to resign as Trustee.

<u>423 Kennedy and Developer RE1 Will Be Irreparably Harmed if the Defendants' Predatory Lending Practices Are Left Unchecked.</u>

188.    The Property owned by 423 Kennedy has been improved by 423 Kennedy by constructing a mixed use, six level (including the lower cellar unit) building with thirty-three residential units and one commercial unit comprising 36,512 square feet.

189.    The improvements that 423 Kennedy made to the Property are 75-80% complete, and the Project would have been completed in the first quarter of 2023 but for the Lender Defendants' misconduct.

190.    Around December of 2022, the Property owned by 423 Kennedy had a current value of $11.9 million.

191.    Around December of 2022, the Property owned by Developer RE1 had a current value of $4 million.

192.    There was no valid, legal basis under any provisions of the deeds of trust that would have permitted the Lender Defendants to foreclose on the Properties owned by Developer RE1 and 423 Kennedy.

193.    The Lender Defendants deliberately sabotaged 423 Kennedy's ability to complete construction, and Developer RE1 and 423 Kennedy's refinancing efforts.  But for the Lender

31

Defendants' misconduct, 423 Kennedy would have closed on a refinance loan and paid the WCP

Fund in full in December of 2022.

194.    The Lender Defendants also deliberately timed their improper interference with

423 Kennedy's and Developer RE1's business relations during the approaching Christmas and

New Year's holiday periods to make it impossible for 423 Kennedy and Developer RE1 to close

on any refinancing loan with Main Street Bank prior to the end of 2022, and to tie up any

refinancing indefinitely so that they can try to foreclose on the properties owned by Developer

RE1 and 423 Kennedy.

195.    The Lender Defendants' conduct shows that they have an evil motive, that they

are acting with actual malice to inflict damages on Developer RE1, 423 Kennedy, and others,

and they are intentionally and willfully disregarding Developer RE1's and 423 Kennedy's rights

under the loan documents and under the law.  The Lender Defendants' misconduct and improper

lending practices also constitute outrageous conduct further justifying an award of punitive

damages.

### The DC Superior Court Enjoins the Lender Defendants.

196.    On July 24, 2023, the Honorable Milton C. Lee, Jr. issued a comprehensive,

twenty-two page Order in Case No.: 2023-CAB-004260 granting 423 Kennedy's Motion for

Temporary Restraining Order (the "First TRO Order").

197.    In the First TRO Order, Judge Lee concluded that 423 Kennedy "carried their

burden by establishing a likelihood of success on the merits."  TRO Order at p. 17.  Judge Lee

also determined that the Trustee had a fiduciary duty to act faithfully to the Borrowers and that

when the Trustee acted as counsel to WCP, this created a conflict.  First TRO Order at pp. 16-17.

Judge Lee concluded that "[w]hen there is evidence of the conflict of interest, the burden of

demonstrating the faithful discharge of duties shifts to the trustee."  *Id.*  p. 17.

32

198.    On August 15, 2023, Judge Scott entered a Hearing Order by which she, among

other things, memorialized her oral decision (from a July 25, 2023 TRO hearing) that granted

Developer RE1's Opposed Emergency Motion for a Temporary Restraining Order to Prevent an

Imminent Foreclosure sale (the "Second TRO Order").  In the Second TRO Order, Judge Scott

came to nearly the same conclusions as Judge Lee, and she observed that "[t]he record

demonstrates that the Defendants 'torpedoed' the Plaintiff's efforts to perform under the deed of

trust."  Second TRO Order at p. 4 (italic emphasis added).  Pursuant to the Second TRO Order,

Judge Scott ordered that the defendants, including the Trustee, "must immediately stop taking

any action to foreclose on the Property [owned by Developer RE1] pending further order of this

Court."  *Id.* p. 5.

### The Lender Defendants Create JPK NewCo for a Fraudulent Purpose, Then Engage in Multiple Fraudulent Transfers.

199.    Some of the parties engaged in private mediation in January of 2024, but that

mediation (with JAMS) was not successful.  The second mediation session on January 25, 2024

was abruptly terminated when Mr. Huertas decided to end the negotiations.

200.    JPK NewCo was formed after the mediation concluded, sometime in early

February of 2024.  Since its formation, JPK NewCo has conducted no business, it has no

employees, it generates no income, it produces no goods, and it provides no services.

201.    On or about April 15, 2024, the WCP Fund transferred the 423 Kennedy loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

202.    On or about April 15, 2024, SF NU transferred the Developer RE1 loan

documents to JPK NewCo, an insider that was owned by the WCP Fund and SF NU.

203.    This transfers described in paragraphs 201-202 were not supported by any

consideration.

33

204.    This transfers described in paragraphs 201-202 were made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the specific intent to hinder or delay the adjudication of the claims in this case.

205.    The transfers described in paragraphs 201-202 were also made by the WCP Fund, the WCP, SF NU, and/or Mr. Huertas with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and SF NU.

206.    On or about June 3, 2024, JPK NewCo borrowed $50,000 from Defendant Sariri, a longtime personal friend of Mr. Huertas.

207.    The transfer of funds from Mr. Sariri to JPK NewCo was a sham transaction.  The sham loan was part of a plan to make it appear that JPK NewCo was a legitimate company, when in fact it was a shell company that was created for improper purposes.

208.    The transfer described in paragraph 206 was made by Mr. Sariri, Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the adjudication of the claims in this case.

209.    The transfer described in in paragraph 206 was also made by Mr. Sariri, the Lender Defendants, and the other individuals behind JPK NewCo, with the intent to hinder or delay the Plaintiffs from reaching the assts of the WCP Fund and/or SF NU.

210.    Soon after the Sariri loan was made to JPK NewCo, JPK NewCo transferred $23,000 to a bankruptcy lawyer that would later represent JPK NewCo.

211.    Soon after the Sariri loan was made, JPK NewCo loaned $26,000 to a company called Energy of Morocco, LLC under a promissory note to make it appear that JPK NewCo was conducting business.  The funds loaned to Energy of Morocco, LLC were used for an unrelated development project that was funded by the WCP Fund.

34

212.     The loan to Energy of Morocco, LLC was also designed to create the appearance that JPK NewCo was a legitimate company that was conducting business, when in reality JPK NewCo was the alter ego of the Lender Defendants that was created for the purpose of hindering and delaying Developer RE1 and 423 Kennedy from reaching the assets of SF NU and the WCP Fund.

213.     The loan from Mr. Sariri was designed to never be paid by JPK NewCo so that Mr. Sariri could later claim that he was a legitimate creditor of JPK NewCo in order to file an involuntary bankruptcy petition against JPK NewCo so that the Defendants could argue that a "core proceeding" existed that would give this Court jurisdiction over Developer RE1 and 423 Kennedy's claims in the D.C. Superior Court cases.

214.     The Lender Defendants also hatched the scheme to create a "core proceeding" because they were dissatisfied with various rulings made by the D.C. Superior Court, so they wanted to get a new judge on the case and to delay the taking of their depositions that were scheduled the first few days of the week of July 8, 2024.

215.     The scheme to create a "core jurisdiction" argument appears to have been designed and orchestrated by counsel of record for the Lender Defendants, who, on information and belief, transferred part of JPK NewCo's funds through his escrow account.

216.     At the time JPK NewCo loaned money to Energy of Morocco, LLC, JPK NewCo knew that making that loan would render it unable to make any payment to Mr. Sariri.

217.     JPK NewCo is dominated and controlled by Daniel Huertas, who controls the WCP Fund, and Jason Shrensky, who controls SF NU.

35

COUNT I
TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
Count I is Asserted Against the WCP Fund, DP Capital, and Mr. Huertas

218.    Paragraphs 1-217 of the Fourth Amended Complaint are incorporated by reference.

219.    423 Kennedy and Developer RE1 were in the process of closing on a refinancing of their existing loans with Main Street Bank.

220.    The Count I Defendants each knew of the existence of Developer RE1's and 423 Kennedy's business relations with Main Street Bank.

221.    As a result of the Count I Defendants' improper demand that Developer RE1 and 423 Kennedy pay Default Interest and Default Penalties, Developer RE1 and 423 Kennedy could not obtain a release of the respective deeds of trust on their properties as part of the refinancing of their loans with Main Street Bank.

222.    As a direct result of the Count I Defendants' direct and continuing interference with Developer RE1's and 423 Kennedy's business relations with Main Street Bank, they were not able to go to closing on the refinancing loans with Main Street Bank.

223.    The Count I Defendants have intentionally interfered with Developer RE1's and 423 Kennedy's development of their properties and their refinancing of the loans with Main Street Bank without any valid justification.

224.    Developer RE1 and 423 Kennedy have been damaged by the Count I Defendants' tortious interference with their business relations, and will continue to be damaged if the Count I Defendants' misconduct is not stopped.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor and against Defendants

36

WCP, WCP Fund I, LLC, and Mr. Huertas under Count I for: (a) any and all damages (to be determined) that they have suffered and will suffer as a result of the Count I Defendants' intentional interference with their business relations (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) punitive damages of $2,000,000.00; (d) costs; and (d) pre- and post-judgment interest.

COUNT II

BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
Count II Is Asserted Against DP Capital, the WCP Fund, SF NU and JPK NewCo.

225.    Paragraphs 1–224 of the Fourth Amended Complaint are incorporated by reference.

226.    Every contract in the District of Columbia contains an implied covenant of good faith and fair dealing.

227.    The notes and deeds of trust between Developer RE1 and the WCP Fund, and/or SF NU, and/or JPK NewCo.

228.    The notes and deeds of trust between 423 Kennedy and the WCP Fund, and/or SF NU, and or JPK NewCo. are contracts.

229.    Through their improper conduct, the Count II Defendants have breached the implied covenant of good faith and fair dealing contained in the respective contracts.

WHEREFORE, the Plaintiffs, Developer RE1 LLC 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count II against Defendants DP Capital, LLC d/b/a Washington Capital Partners, the WCP Fund 1, LLC, SF NU, LLC and/or JPK NewCo: (a) any and all damages (to be determined) that the Plaintiffs has suffered will suffer as a result of the Count II Defendants' breach of the duty of good faith and

fair dealing (currently estimated to be $3 million for each Plaintiff); (b) reasonable attorney's

fees if allowed by law (c) costs; and (d) pre- and post-judgment interest.

COUNT III

DECLARATORY JUDGMENT
Count III Is Asserted Against
the WCP Fund, SF NU, and JPK NewCo Only)

230.    Paragraphs 1–229 of the Fourth Amended Complaint are incorporated by

reference.

231.    The deeds of trust are contracts between Developer RE1 and 423 Kennedy and

the WCP Fund and/or SF NU and/or JPK NewCo.

232.    There is an actual and justiciable controversy between Developer RE1 and 423

Kennedy and the Count III Defendants as to whether Developer RE1 or 423 Kennedy are

affiliates" under the deeds of trust, which controversy is ripe for adjudication.

233.    It is settled law in the District that "equity abhors forfeitures … [and] so indeed

does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of*

*American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted) and citing

with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law

abhors a forfeiture.")).

234.    There is an actual and justiciable controversy between Developer RE1, the WCP,

the WCP Fund, and/or SF NU as to whether an unresolved dispute about water bills, or the late

payment of taxes, neither of which caused any harm to the WCP Fund, can be used to effectuate

a forfeiture of the Property.

235.    There is an actual and justiciable controversy between Developer RE1 and the

WCP, the WCP Fund, SF NU, and/or JPK NewCo as to whether notes and deeds of trust contain

38

unenforceable liquidated damages (and other) provisions, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count III, this Honorable Court declare that: (a) under Section 7.9 of the deeds of trust, (i) 423 Kennedy St Holdings LLC is not an affiliate of Developer REI, LLC or 2507 I Street LLC; and (ii) Developer RE1 is not an affiliate of 2507 I Street LLC (b) any provision of either the deed of trust that allows the lender to declare a default by Developer RE1 or 423 Kennedy after the fact, after the alleged default has already been cured (or is in the process of being adjudicated), and without providing any notice to the borrower or any opportunity to cure, and that results in either (i) additional interest and penalties entirely disproportionate to the harm, if any, caused the alleged default; or (ii) a forfeiture, is unconscionable and enforceable as a matter of public policy; and (c) the notes and deeds of trust have liquidated damages (and other) provisions that are unenforceable and cannot be used to support any basis for a foreclosure.

### COUNT IV
### PERMANENT INJUNCTIVE RELIEF
(TO STOP ENFORCEMENT OF THE DEEDS OF TRUST AND
ANY FORECLOSURE UNTIL AFTER A TRIAL ON THE MERITS)
Count IV Is Asserted Against All Defendants except Defendant Sariri

236. Paragraphs 1–235 of the Fourth Amended Complaint are incorporated by reference.

237. Unless they are enjoined, the Count IV Defendants will continue to improperly claim that Developer RE1 and 423 Kennedy are in default of notes and deeds of trust.

238. The Count IV Defendants' unethical, outrageous, and illegal conduct, as described in this Fourth Amended Complaint, is causing irreparable harm to Developer RE1 and

423 Kennedy.  The properties that Developer RE1 and 423 Kennedy own are unique, and Developer RE1 and 423 Kennedy could lose their entire interests in their properties.

239.    Developer RE1 and 423 Kennedy do not have an adequate remedy at law.

240.    If the Count IV Defendants are not all enjoined, they will proceed to foreclose on the properties owned by Developer RE1 and 423 Kennedy.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count IV this Honorable Court enter an injunction prohibiting the Count IV Defendants from invoking any remedy under the note and deeds of trust, including, without limitation, enjoining the Count IV Defendants: (a) from attempting to enforce any provisions in the notes and deeds of trust that the court determines are inapplicable and/or unenforceable; (b) from collecting any impermissible fees, interest, and penalties; and (c) from initiating any foreclosure on the properties until after Developer RE1's and 423 Kennedy's claims in the Fourth Amended Complaint have been decided.

### COUNT V
### BREACH OF FIDUCIARY DUTY
Count V is Asserted Against Defendant Drazin Only

241.    Paragraphs 1-240 of the Fourth Amended Complaint are incorporated by reference.

242.    As Trustee under the deeds of trust, Defendant Drazin had, and has, a fiduciary duty to both the lender and the borrowers (Developer RE1 and 423 Kennedy).

243.    Defendant Drazin knew that he had actual conflicts of interest while serving simultaneously as counsel for the Defendants and as Trustee under the deeds of trust.

244.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin has at all times acted solely in favor of, and made decisions solely in favor of, the Defendants.

40

245.    While serving in his role as Trustee under the deed of trust, Defendant Drazin has at all times acted against, and made decisions that have all been against, the interests and rights of Developer RE1 and 423 Kennedy, as borrowers, under the deeds of trust.

246.    While serving in his role as Trustee under the First DOT and the Second DOT, Defendant Drazin has shown a callous indifference to Developer RE1's rights as borrower.

247.    While serving in his role as Trustee under the deeds of trust, Defendant Drazin has been in continual consultation with, and dominated by, the Defendants.

248.    Defendant Drazin breached his fiduciary duty by engaging in the conduct described in this Fourth Amended Complaint, by not immediately resigning as Trustee when he had actual knowledge that the interests of Developer RE1 and 423 Kennedy became adverse to the Defendants, by continuing to act solely in favor of the Defendants while Trustee, and by issuing correspondence and Foreclosure Notices when he had actual knowledge of his conflicts of interest.

249.    Due to his actual conflicts of interest, Defendant Drazin bears the burden of proving that he has been faithful to his trust, and that he carefully scrutinized the conduct of the Defendants under the deeds of trust.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that this Honorable Court enter judgment in its favor under Count V against Defendant Russell S. Drazin for:  (a) any and all damages (final amount to be determined) that the Plaintiffs have suffered and will suffer as a result of the Defendant Drazin's breach of his fiduciary duty (currently estimated to be at least $3 million for each Plaintiff); (b) reasonable attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

41

## COUNT VI
## DECLARATORY JUDGMENT THAT DEFENDANT DRAZIN CANNOT SERVE AS THE TRUSTEE AND THAT THE FORECLOSURE NOTICE IS INVALID
### Count VI is Asserted Against All Defendants Except Defendant Sariri

250.    Paragraphs 1-249 of the Fourth Amended Complaint are incorporated by reference.

251.    Defendant Drazin has an actual conflict of interest that prevents him from serving as Trustee under the deeds of trust.

252.    Due to his conflict of interest as counsel for one or more of the Defendants, Defendant Drazin cannot uphold his fiduciary duties to the borrowers as Trustee under the deeds of trust.

253.    Any actions taken by Defendant Drazin as Trustee under the deeds of trust must be either set aside or suspended unless and until Defendant Drazin proves that he has been faithful to his obligations to the borrowers under the deeds of trust.

254.    There is an actual and justiciable controversy between Developer RE1 and 423 Kennedy and the Defendants as to whether Defendant Drazin can serve as Trustee when he has an actual conflict of interest, which controversy is ripe for adjudication.

255.    There is an actual and justiciable controversy between Developer RE1and 423 Kennedy and the Defendants as to whether any actions that Defendant Drazin took as Trustee while he had an actual conflict of interest are valid, which controversy is ripe for adjudication.

WHEREFORE, the Plaintiff, Developer RE1 LLC, respectfully request that under Count VI this Honorable Court declare that: (a) Defendant Drazin cannot serve as Trustee under the deeds of trust due to an actual conflict of interest; and (b) that any actions that Defendant Drazin took while he had a conflict of interest must be either set aside or suspended until Defendant

42

Drazin bears his burden of proving that he was at all times faithful to his fiduciary duties to both the borrowers (Developer RE1 and 423 Kennedy) and under the deeds of trust.

COUNT VII
TO SET ASIDE FRAUDULENT TRANSFERS
Count VII is Asserted Against All Defendants except Defendant Drazin

256. Paragraphs 1-255 of the Fourth Amended Complaint are incorporated by reference.

257. The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay the claims of Developer RE1 and 423 Kennedy.

258. The transfer of the loan documents described in paragraphs 201-202 were made with the intent to hinder or delay Developer RE1 and 423 Kennedy from reaching the assets of SF NU and/or the WCP Fund.

259. The transfers described in paragraphs 201-202 were made without consideration and/or without SF NU and the WCP Fund receiving a reasonably equivalent value in exchange for the transfer.

260. The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo believed or reasonably should have believed that it would incur a debt beyond its ability to pay that debt when it became due.

261. The transfers described in paragraphs 206, 210, and 211 were made when JPK NewCo was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

WHEREFORE, the Plaintiffs, Developer RE1 LLC and 423 Kennedy St Holdings, LLC, respectfully request that under Count VII this Honorable Court: (a) set aside all fraudulent transfers; (b) disregard JPK NewCo as a company because it is in reality the alter ego of one of

43

more of the Lender Defendants that was formed to hinder and delay creditors and to perpetuate a

fraud (an orchestrated, phony involuntary bankruptcy case) upon this Court; and (c) issue an

injunction preventing any further disposition of the loan documents for Developer RE1 and 423

Kennedy until after all claims in this case have been decided.

COUNT VIII

BREACH OF CONTRACT – 423 KENNEDY

Count VIII is Asserted Against Defendants WCP, WCP Fund, and SF NU Only

262.     Paragraphs 1-261 of the Fourth Complaint are incorporated by reference.

263.     There was either an express contract or an implied-in-fact contract between 423

Kennedy and the WCP and the WCP Fund to fund construction draws.

264.      The WCP and the WCP Fund breached the contract by unilaterally refusing to

fund construction draws and due to no fault of 423 Kennedy.

265.     To the extent that SF NU is found to have been assigned any rights in the contract

from either the WCP or the WCP Fund, SF NU is bound by the contract and equally responsible

for its breach.

266.     423 Kennedy has been damaged by the breach of contract by the WCP, the WCP

Fund, and SF NU.

WHEREFORE, the Plaintiff, 423 Kennedy St Holdings LLC, respectfully requests that

under Count VIII this Honorable Court enter judgment in its favor and against Defendants DP

Capital, LLC d/b/a Washington Capital Partners, the WCP Fund I, LLC, and SF NU, LLC for:

(a) any and all damages that 423 Kennedy has suffered and will suffer as a result of the

Defendants' breach of contract (currently estimated to be at least $3 million); (b) reasonable

attorney's fees if allowed by law; (c) costs; and (d) pre- and post-judgment interest.

44

## DEMAND FOR A JURY TRIAL

The Plaintiffs demand a trial by jury as to all claims asserted in the Fourth Amended

Complaint for which a jury trial is allowed under the law.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: May 6, 2025

/s/ James D. Sadowski
James D. Sadowski (D.C. Bar No. 446635)
Alexandria J. Smith (D.C. Bar. No. 1781067)
Spencer B. Ritchie (D.C. Bar No. 1673542)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC and*
*423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of this Fourth Amended Complaint was filed as an

Exhibit to Plaintiff's Motion for Leave to File Fourth Amended Complaint through ECF this 6th

day of May, 2025, and a notice of electronic filing should be sent by ECF to all counsel of record

in the case.

/s/ James D. Sadowski
James D. Sadowski

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Charles Paxton Paret, | ) | Case No. 23-217-ELG |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| Developer RE1 LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Case No. 24-10023-ELG |
| | ) | |
| | ) | (Cases Consolidated) |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 Kennedy St Holdings LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DP Capital LLC, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## BRIEF REGARDING LACK OF MOOTNESS OF SUMMARY JUDGMENT MOTION

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr.

Huertas"), SF NU, LLC ("SNL"), Russell Drazin ("Mr. Drazin") and JPK NewCo LLC ("JPK")

1

(collectively, the "Defendants"), by and through undersigned counsel, in response to this

Honorable Court's Order Requiring Supplemental Briefing by May 7, 2025 (the "Order," as found

at DE #56), and assert as follows:

## I.    Introduction

The plaintiffs herein (the "Plaintiffs") contend—in direct contravention of longstanding

case law from the District of Columbia Court of Appeals, the United States Court of Appeals for

the District of Columbia Circuit, the United States District Court for the District of Columbia, and

this Honorable Court—that Mr. Drazin, as a trustee under two deeds of trust, owed some

amorphous duty beyond that set forth in the deed of trust itself and District of Columbia statutory

law. This contention was errant when the Plaintiffs argued such in opposition to Mr. Drazin's

motion for summary judgment (the "Drazin Summary Judgment Motion," as found at DE #7), this

contention was errant when the Plaintiffs restated it in their third amended complaint (the "Third

Amended Complaint," as found at DE #40), and this contention will remain errant if the Plaintiffs

are permitted to docket their fourth amended complaint (the "Fourth Amended Complaint," as

found at DE #57-1).

Most importantly, though, because the core wrongfulness of this assertion has not been

altered by any subsequent pleading (or requested pleading), the Drazin Summary Judgment Motion

is not moot. Where, as here, an incurable deficiency survives an initial pleading and is incorporated

into a subsequent pleading, a dispositive motion—whether one for summary judgment or even one

seeking dismissal—is not mooted by the new pleading.

As discussed in greater detail *infra*, this notion is both well-explained by precedent (albeit

with competing precedent being extant) and sensible in nature. While amendment is often a tool

to plead additional facts or even alternative theories, amendment is not a tool through which

incurable legal maladies may be remedied or otherwise protracted. Especially where, as here, the dispositive motion turns not on sufficiency of pleading but, rather, the non-viability of an underlying theory, amendment is futile in the face of a dispositive motion.

Additionally, as also extrapolated upon below, the concern with mootness, while well-taken, is one that ought not interfere with the Drazin Summary Judgment Motion since (i) the motion is adopted in a separate summary judgment motion directed at the Third Amended Complaint, *see* Motion to Dismiss or, in the Alternative, for Summary Judgment, DE #44, at § VIII(d); and (ii) the doctrine of mootness does not bind bankruptcy courts in connection with adversary proceedings.

## II. Argument: The Drazin Summary Judgment Motion is Not Moot

In connection with both motions for summary judgment and motions to dismiss, case law establishes that amendment of an at-issue pleading does not necessarily invite mootness. This is particularly true where, as here, the subject amendment does not alter the underlying legal defect upon which the correlative dispositive motion is premised. There is well-settled precedent of District of Columbia law only imposing on trustees, serving under deeds of trust, those duties set forth in the correlative lien instruments and under statutory law. No amendment to the pleadings in this case can change that case law or alter the robustness of that precedent. And it follows that no amendment can thusly moot a dispositive motion premised upon the subject precedent.

As noted by the United States District Court for the District of Maryland, in a recent case where mootness was raised in a similar prism: ". . . YWWS's motion for summary judgment was not mooted by Buechler's amended complaint because such a motion is not directed at the adequacy of a complaint's allegations but is instead focused on the merits of the substantive claim." *Buechler v. Your Wine & Spirit Shoppe, Inc.*, 846 F. Supp. 2d 406, 414 (D. Md. 2012). *See also*

*United Sec. Fin. Corp. v. First Mariner Bank*, 2017 U.S. Dist. LEXIS 121869, at \*15 (D. Utah

Aug. 2, 2017) ("Because the claims on which First Mariner sought summary judgment are included

in both the original counterclaim the amended counterclaim, the claims and evidence related to

those claims were not affected by the filing of the amended counterclaim and First Mariner's

motion is not moot.").

To be sure, there does exist conflicting case law, in which courts have found amendment

to moot a pending summary judgment motion. Yet, as noted by one court, the key distinction is

oftentimes that mootness is found to occur where the amendment alters the claim for relief upon

which summary judgment is sought. *See, e.g.*, *Cottonwood Acres, Ltd. Liab. Co. v. First Am. Title

Ins. Co.*, 2023 U.S. Dist. LEXIS 157978, at \*2 (D. Utah July 21, 2023) ("That said, other courts

have held that where the claims on which summary judgment is sought (and the evidence related

to those claims) are not affected by the filing of an amended complaint, then summary judgment

motions pending when the amended complaint was filed are not necessarily moot.") (citing *United

Sec. Fin. Corp.*, 2017 U.S. Dist. LEXIS at 121869).

This distinction, not coincidentally, traces neatly to the distinction often drawn in the prism

of motions to dismiss: when an amendment does not—or, as here, cannot—cure the defect upon

which a dispositive motion is premised, the original motion is not deemed moot:

> Generally, an "amended complaint supersedes the original complaint, thus making
> the motion to dismiss the original complaint moot." However, "[i]f some of the
> defects raised in the original motion remain in the new pleading, the court simply
> may consider the motion as being addressed to the amended pleading." "That is
> particularly true if the amended complaint is 'substantially identical to the original
> complaint.' "

*McDuff v. Jones*, 2023 U.S. Dist. LEXIS 213250, at \*2-3 (E.D. Mich. Nov. 6, 2023) (quoting *Ky.

Press Ass'n v. Kentucky*, 355 F. Supp. 2d 853, 857 (E.D. Ky. 2005) (citing *Parry v. Mohawk Motors

of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)); citing *Glass v. Kellogg Co.*, 252 F.R.D. 367,

368 (W.D. Mich. 2008); quoting *Yates v. Applied Performance Techs.*, 205 F.R.D. 497, 499 (S.D. Ohio 2002); *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022) (citing *Mandali v. Clark*, 2014 U.S. Dist. LEXIS 143850 (S.D. Ohio Oct. 9, 2014))).

This doctrine emanates, in large part, from the longstanding recognition that amendment is a futile exercise where a claim is legally impossible from the outset. *See, e.g.*, *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) ("Amendment is futile if the amended complaint would not withstand a motion to dismiss.") (citing *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012)). *See also Rainey v. Patton*, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26, 2011) (". . . when a motion to amend only addresses a discrete issue, it may not moot the underlying motion to dismiss.") (citing *In re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir. 2004)).

Ultimately, the reasoning of the *Buechler* Court is most persuasive: since the question here is not one of pleading sufficiency but, rather, legal viability, amendment is immaterial. The Third Amended Complaint does not allege that the at-issue deeds of trust set forth greater responsibilities than are actually present therein (nor could they; the subject deeds of trust have long been part of the record in this case). Nor does the Third Amended Complaint posit some independent theory of fiduciary responsibility aside from Mr. Drazin's service as trustee under deeds of trust. So the non-viability of the Plaintiffs' topical contention—that a trustee under a deed of trust has an affirmative obligation to independently investigate and adjudicate disputes—is not curable through amendment. And it is thusly proper to consider the Drazin Summary Judgment Motion, already under advisement, on the merits of the briefing and arguments thereupon.[1]

---

[1] It bears notation that even if the Third Amended Complaint did moot the prior summary judgment motion, the same argument has been restated in a summary judgment motion directed toward the Third Amended Complaint. *See* Motion to Dismiss or, in the Alternative, for Summary Judgment, DE #44, at § VIII(d).

5

### III. Argument: The Doctrine of Mootness is Inapplicable to Adversary Proceedings

There is a second reason consideration of the Drazin Summary Judgment Motion is not precluded by the docketing of the Third Amended Complaint: the doctrine of mootness is inapplicable to adversary proceedings in bankruptcy courts. For so long as bankruptcy judges are appointed by Circuit Courts of Appeal and serve limited terms (subject to renewal), bankruptcy courts will invariably hold the distinction of both being the federal courts with which members of the public are most likely to come into contact and federal courts unprotected by the safeguards of the constitutional judiciary. A necessary byproduct of this admittedly-curious distinction is that since bankruptcy courts do not within the ambit of Article III of the Constitution, bankruptcy courts are not subject to the "case or controversy" doctrine from which the notion of mootness originates.

As observed by the Supreme Court, "[t]he doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808 (2003); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974)). *See also Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) ("Mootness arises out of Article III's 'case-or-controversy' requirement.").

Yet bankruptcy courts are not Article III courts. *Stern v. Marshall*, 564 U.S. 462, 469 (2011). And insofar as bankruptcy judges lack both the tenure and salary protections of Article III judges, bankruptcy courts are idiosyncratically derivative of Article I—not Article III—of the Constitution. *Id.* at 515.

All of which means that, as Article I courts, bankruptcy courts are not bound by the limiting contours of Article III of the Constitution. Or, in the words of a recent Fourth Circuit opinion:

"Mootness is an Article III doctrine, and bankruptcy courts are not Article III courts. . . So they can constitutionally adjudicate cases that would be moot if heard in an Article III court." *Kiviti*, 80 F.4th at 532 (citing *Stern*, 564 U.S. at 503).

To be sure, the suggestion herein is not that this Honorable Court—or any of its sister courts—ought to commence entertaining moot cases for sport, or issuing advisory opinions on a whim. Nor is this brief necessarily a full-throated defense of *Kiviti*. Yet the Supreme Court, after issuing a call for response, declined to grant certiorari when presented an opportunity to overturn *Kiviti*. *See Kiviti v. Bhatt*, 144 S. Ct. 2519 (2024). And it thusly stands to reason that somewhere in the Fourth Circuit's reasoning there exists at least some kernel of pliable truth.

If ever a bankruptcy court's exemption from the mootness doctrine were to be valued, such would be here. The Defendants, as discussed *supra*, sincerely posit the Drazin Summary Judgment Motion to *not* be moot. Yet even if it were technically moot, declining to issue a ruling thereupon— simply because of an intervening amendment that does not so much as feign to cure the intrinsically-impossible nature of the claims against Mr. Drazin—would be contra to judicial economy and serve only to delay consideration of a motion otherwise destined for adjudication.

That the summary judgment motion directed at the Third Amended Complaint incorporates, by reference, the Drazin Summary Judgment motion, is of particular import in this regard. *Buechler* teaches that mootness does not arise when a claim is either uncured or incurable, just as *Kiviti* teaches that a bankruptcy court may entertain fleetingly moot matters when the interests of justice so dictate. Both independently establish cause to permit adjudication of the Drazin Summary Judgment Motion and, taken together, both well militates against disposing of the briefing and arguments that have already been had on this front.

## IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) not deem the

Drazin Summary Judgment Motion to be moot; (ii) grant the Drazin Summary Judgment Motion;

and (iii) afford such other and further relief as may be just and proper.


                                        Respectfully submitted,


Dated: May 6, 2025              By:     /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig, Esq.
                                        Bar No. MD18071
                                        The VerStandig Law Firm, LLC
                                        9812 Falls Road, #114-160
                                        Potomac, Maryland 20854
                                        Phone: (301) 444-4600
                                        mac@mbvesq.com
                                        *Counsel for the Defendants*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of May, 2025, a copy of the foregoing was

served electronically upon filing via the ECF system, with copies being sent to all parties receiving

electronic notice herein.

                                        /s/ Maurice B. VerStandig
                                        Maurice B. VerStandig

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET,<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; SF NU, LLC; AND WCP<br>FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN;<br>DANIEL HUERTAS; AND WCP FUND I LLC,<br><br>*Defendants.* | |

PLAINTIFFS' BRIEF REGARDING
MOOTNESS OF SUMMARY JUDGMENT MOTION

Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings LLC ("423

Kennedy") (collectively, "Borrowers"), hereby file their response to the Court's Order Requiring

Supplemental Briefing by May 7, 2025 (the "Order") [ECF No. 56].  Although the Court invited

briefing *only* as to the issue of the mootness of Defendant Drazin's Motion for Summary

Judgment, the Defendants took that opportunity to take various pot shots at the merits of the Third Amended Complaint. The Borrowers will not respond in kind.

I.    LEGAL ARGUMENT

       The Court Could Exercise its Discretion as to the Issue of Mootness.

       Contrary to Defendants' assertion that an amendment of an at-issue pleading does not invite mootness, multiple cases have held that an amended complaint supersedes the original complaint as the operative live pleading and renders a motion for summary judgment on the original complaint moot. *Helena Chem. Co. v. Hood (In re Hood)*, Nos. 16-14511-SDM, 19-01065-SDM, 2022 Bankr. LEXIS 1536, at *15 (Bankr. N.D. Miss. June 1, 2022). *Lofty, LLC v. McKelly Roofing, LLC*, No. 2:17-CV-159-D-BR, 2018 U.S. Dist. LEXIS 194592, 2018 WL 6004307, at *1 (N.D. Tex. Nov. 15, 2018) (*citing King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017) ("Once filed, that amended complaint rendered all earlier motions, including [the plaintiff's] motion for partial summary judgment, moot."); and *Stredwick v. Dallas Margarita Soc'y, Inc.*, No. 3:12-CV-623-F, 2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430, at *1 (N.D. Tex. June 27, 2012) ("The filing of an amended complaint generally renders pending motions moot.").

       As a result, the Court could determine that Defendant Drazin's Summary Judgment Motion, which was directed at the Second Amended Complaint, is moot as a result of the filing of the Third Amended Complaint. *See also Sango v. Johnson*, No. 13-12808, 2014 U.S. Dist. LEXIS 130400, 2014 WL 4658379, at * 1 (E.D. Mich. 2014) (denying as moot the plaintiff's motion for summary judgment on the original complaint); *see also Malik v. AT & T*

2

*Mobility LLC*, No. 1:08-cv-234, 2008 U.S. Dist. LEXIS 66482, 2008 WL 4104555 (W.D. Mich.

2008) (denying as moot the defendant's motion to dismiss or, in the alternative, for partial

summary judgment on the original complaint).

As stated in *Rainey*, a case cited by the Defendants, only in the rare case where the

amended complaint is "substantially identical to the original complaint," may a properly filed

amended complaint be insufficient to moot the motion to dismiss. *Rainey v. Patton*, No.

1:11cv327, 2011 U.S. Dist. LEXIS 126362, at *5 (S.D. Ohio Sep. 26, 2011) (citing *Greater

Cincinnati Coalition for the Homeless*, 2009 U.S. Dist. LEXIS 84474, 2009 WL 3029661, at *4;

*see also Butler v. Candlewood Rd. Partners, LLC (In re Raymond)*, 529 B.R. 455, 458 (Bankr.

D. Mass. 2015).   For example, when a motion to amend only addresses a discrete issue, it may

not moot an underlying motion to dismiss. *In Re: GI Holdings*, 122 F. App'x 554, 556 (3rd Cir.

2004).

The complaints at issue here are not substantially identical.  There are major variations in

the Third Amended Complaint when compared to the prior complaints, including:  (a) combining

two complaints that had overlapping facts into one document; (b) adding JPK NewCo, LLC and

Shaheen Sariri as additional defendants; and (c) adding claims to set aside fraudulent

conveyances.  That said, and so the Court does not have to attempt a line-by-line comparison of

the prior complaints with the Third Amended Complaint, the allegations and claims asserted

against Mr. Drazin contained in the Third Amended Complaint were not substantially changed

from the prior complaints.

Note finally that there was a short period of time for the Borrowers to brief this issue, and

both counsel of record for the Borrowers had busy schedules today and yesterday afternoon that

did not allow them to put "all hands on deck" toward an exhaustive research of the case law on

the mootness issue. The Borrowers' research did not yield any binding D.C. Circuit court cases,

or prior decisions of this court, squarely addressing the mootness issue presented here. The

Borrowers regret not being able to provide a more thorough brief on this issue.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: May 7, 2025

/s/ James D. Sadowski
James D. Sadowski (DC Bar # 446635)
Erin B. McAuliffe (DC Bar # 1722421)
Alexandria J. Smith (DC Bar # 1781067)
801 17th Street, N.W., Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com | ebm@gdllaw.com
| ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1, LLC*
 *and 423 Kennedy St Holdings, LLC*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of May, 2025, a true copy of the foregoing

Plaintiffs' Brief Regarding Mootness of Summary Judgment Motion was served electronically

and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's

CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

4

The order below is hereby signed.

Signed: May 12 2025



Elizabeth L. Gunn
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>CHARLES PAXTON PARET<br><br>*Debtor.* | Case No. 23-00217-ELG<br><br>Chapter 7 |
| DEVELOPER RE1 LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; SF NU, LLC; and WCP FUND I LLC,<br><br>*Defendants.* | Adv. Pro. No. 24-10023-ELG |
| 423 KENNEDY ST HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DP CAPITAL LLC; RUSSELL DRAZIN; DANIEL HUERTAS; and WCP FUND I LLC,<br><br>*Defendants.* | |

## <u>ORDER GRANTING RENEWED MOTION TO REMAND</u>

Before the Court  is the Plaintiffs' *Renewed Motion for Remand* ("Motion for Remand")

(ECF No. 46) and the Defendants' *Opposition to the Motion for Remand* (ECF No. 51). At the

conclusion of the hearing held May 8, 2025 (the "Hearing"), the Court issued an oral ruling

granting the Motion for Remand. The Court enters this Order consistent with the oral ruling.

1.  <u>Mandatory Abstention</u>

The Court finds that the Plaintiffs' claims in this case did not arise under Title 11 or arise

in a case under Title 11. As of the date of the Hearing, all of the Plaintiffs' claims as stated in the

Third Amended Complaint (ECF No. 40) arose under state law.[1] Further, none of the Plaintiffs'

claims could have been commenced in a court of the United States absent jurisdiction under 28

U.S.C. § 1334(c)(2). Therefore, the Court finds that it has "related to" jurisdiction over the

Plaintiffs' claims.

Under 28 U.S.C. § 1334(c)(2), a bankruptcy court must abstain (also referred to as

mandatory abstention):

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). For the reasons stated at the hearing, the Court finds that the renewed

Motion for Remand was timely filed after the dismissal of the JPK NewCo LLC chapter 11 case,

---

[1] The Court previously considered and denied without prejudice a motion to remand filed by the Plaintiffs. At the time
of the previous motion, defendant JPK NewCo LLC was a debtor in a chapter 11 case. The JPK NewCo LLC chapter
11 was dismissed less than 30 days prior to the filing of the Motion for Remand. The dismissal of the JPK NewCo
LLC chapter 11 substantially changed the Court's analysis as to its jurisdiction over the claims in the Third Amended
Complaint.

2

the Plaintiffs' claims can be timely adjudicated in the Superior Court of the District Court of Columbia, and, therefore, mandatory abstention is appropriate.

    2.  <u>Permissive Abstention</u>

    Alternatively, the Court finds that abstention under 28 U.S.C. § 1334(c)(1)[2] (also referred to as permissive abstention) is appropriate. In evaluating whether permissive abstention is appropriate, courts have looked to a variety of factors, including but not limited to:

    (1) the effect on the efficient administration of the bankruptcy estate;

    (2) the extent to which issues of state law predominate;

    (3) the difficulty or unsettled nature of applicable state law;

    (4) comity;

    (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy court;

    (6) the existence of the right to a jury trial; and

    (7) prejudice to the involuntarily removed defendants.

*See, e.g.*, *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257 (D. Md. 1998).

As noted in more detail at the hearing, most of the permissive abstention factors either support or are neutral as to abstention.

    Therefore, for the reasons stated herein and at the Hearing, it is hereby **ADJUDGED, ORDERED**, and **DECREED** that:

    1.    The Plaintiffs' Motion for Remand is **GRANTED**;

    2.    The Court hereby **ABSTAINS** under 28 U.S.C. §§ 1334(c)(1) and (c)(2) from hearing this case.

---

[2] "[N]othing in [§ 1334] prevents a . . . court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1).

3.      This Order is not appealable under 28 U.S.C. § 1334(d).

4.      Due to remand, the Court takes no position or action on the *Motion to Dismiss or,
In the Alternative, for Summary Judgment* filed by Defendants DP Capital LLC, WCP Fund I LLC,
Daniel Huertas, Russell Drazin, SF NU, LLC, and JPK NewCo LLC (ECF No. 44).

5.      This case is hereby **REMANDED** to the Superior Court of the District of
Columbia.


[Signed and dated above]



Service to:

Maurice Belmont VerStandig, Esq.
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, MD  20854

James D. Sadowski, Esq.
Alexandria J. Smith
Greenstein Delorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, DC  20006


**END OF ORDER**



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandigm
THE VERSTANDIG LAW FIRM LLC
9812 Falls Road #114-160
POTOMAC MD  20854

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:**   Developer RE1 LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.

**To:**  Maurice B. Verstandigm                    **Case Number:**    2022-CAB-005935

### NOTICE OF REMOTE STATUS HEARING
Your case is scheduled for a(n) **Remote Status Hearing** on **06/27/2025** at **10:00 AM** in **Remote Courtroom 219**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**
1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb219

   Meeting ID: 129 315 2924
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**
1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**
1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.


**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice.  For more information, visit https://www.dccourts.gov/language-access.


Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.


**Servicios de interpretación y traducción:**


Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.


El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.



**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፦**


የዲ.ሲ. ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤት ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።


የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።



Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Maurice B. Verstandig
THE VERSTANDIG LAW FIRM, LLC
9812 Falls Road, #114-160
POTOMAC MD  20854

| | |
|---|---|
| **Developer RE1 LLC** | **2022-CAB-005935** |
| *Plaintiff/Petitioner* | *Case Number* |
| v. | |
| **DP Capital, LLC d/b/a** | |
| **Washington Capital Partners** | **Shana Frost Matini** |
| *Defendant/Respondent* | *Judicial Officer* |

### SHORT ORDER

On 05/27/2025, the following order was entered by the court:

Effective immediately, this case is transferred to the Honorable Ebony Scott on Civil 2, Calendar 8. The parties shall appear either in person or remotely for a status hearing on June 27, 2025 at 10:00am. All hearings will be held in Courtroom 219.  The courtroom can be accessed virtually at https://dccourts.webex.com/meet/ctb219 or by calling 844-992-4726 and entering meeting ID 129 315 2924.

This notice is being sent in accordance with Super. Ct. Civ. R. 77(d).

eFiled
5/30/2025 7:17:21 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

Developer RE1 LLC, *et al.*

    Plaintiff,

v.

DP Capital, LLC, *et al.*

    Defendants.

Case No. 2022 CAB 005935
Judge Ebony Scott

## SUGGESTION OF BANKRUPTCY AND STAY OF PROCEEDINGS

It is respectfully suggested that on May 27, 2025, JPK NewCo LLC ("JPK"), a defendant herein, filed a voluntary petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby commencing the matter of *In re JPK NewCo LLC*, Case No. 25-200-ELG (Bankr. D.D.C. 2025) (the "Bankruptcy Case").

It is further suggested that, by operation of Section 362 of Title 11 of the United States Code, the Bankruptcy Case acts as a stay upon these proceedings. Specifically, and without limitation, the Bankruptcy Case acts as a stay upon:

> (1) the . . . continuation . . . of a judicial . . . action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>
> . . .
>
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
>
> . . .
>
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

1

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . .

11 U.S.C. § 362(a).

JPK is a defendant in the above-captioned consolidated litigation and, equally importantly, the current holder of two of the promissory notes at issue in this litigation, whilst also being the current beneficiary of two of the deeds of trust at issue in this litigation. It is thusly respectfully suggested the continuation of this suit would offend the provisions of Section 362 of Title 11 of the United States Code cited *supra* and, as such, this case is stayed by operation of law.

Dated: May 30, 2025                    Respectfully Submitted,

                                       /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.
                                       DC Bar #1034066
                                       The VerStandig Law Firm, LLC
                                       9812 Falls Road, #114-160
                                       Potomac, Maryland 20854
                                       Telephone: 301-444-4600
                                       Facsimile: 301-444-4600
                                       Electronic Mail: mac@mbvesq.com
                                       *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 30th day of May 2025, and a notice of filing should be served on all counsel of record.

                                       /s/ Maurice B. VerStandig
                                       Maurice B. VerStandig, Esq.

2

5935

eFiled
6/13/2025 4:48:17 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

DEVELOPER RE1, LLC AND
423 KENNEDY ST HOLDINGS, LLC,

    *Plaintiffs*,

v.

DP CAPITAL, LLC D/B/A WASHINGTON
CAPITAL PARTNERS, ET AL.,

    *Defendants*.

Case No. 2022-CAB-005935
Judge Ebony Scott
Next Event:  Remote Status Hearing
June 27, 2025 (10:00 a.m.)

## PLAINTIFFS' RESPONSE TO SUGGESTION OF STAY

The Plaintiffs, Developer RE1 LLC ("Developer RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy"), by counsel, file this response to the Suggestion of Stay filed by the Defendants on May 28, 2025.  For convenience, Developer RE1 and 423 Kennedy will be referred to as the "Borrowers".

1.    Defendant JPK NewCo, LLC ("JPK NewCo") is now a defendant in this case. The Defendants created JPK NewCo for multiple improper purposes.  The first improper purpose was to create an issue that Defendant SF NU, LLC ("SF NU") could use -- the failure to join an indispensable party -- to file a motion to dismiss as a means of delaying this case.  The second improper purpose JPK NewCo was created was so that the Defendants could delay their depositions and their employees' depositions (noticed for July 8-9, 2024) and the trial in this case (set for September 9, 2024).

2.    JPK NewCo is not really a separate, independent company.  JPK NewCo is co-owned by Defendants WCP Fund I, LLC ("WCP Fund") and SF NU, with the WCP Fund holding a controlling interest.

3.      Defendant Daniel Huertas controls the corporate Defendants in this case.

4.      The Defendants intentionally caused JPK NewCo, which had no cash or funding, to become insolvent by borrowing money – a $50,000 loan (evidenced by a promissory note) from a friend of Mr. Huertas named Shaheen Sariri.  The Defendants knew that JPK NewCo could not pay back, and would not pay back, the loan from Mr. Sariri.

5.      After the first payment due under the loan was not made to Mr. Sariri, the Defendants arranged for JPK NewCo to become a debtor in an involuntary Chapter 11 bankruptcy case by using Mr. Sariri as the straw man to initiate that proceeding.  With JPK NewCo in bankruptcy, the Defendants could argue that all of the claims in this case should be heard by the bankruptcy court.  The involuntary Chapter 11 case is *In Re: JPK NewCo, LLC,* Case No. 24-0026-ELG ("*JPK NewCo I*").

6.      Put another way, the Defendants were unhappy with this Court's prior rulings, and with litigating the claims in this case in the D.C  Superior Court,[1] so they created a phony company that had no business purpose, moved limited assets over to that company, then arranged for JPK NewCo to make a loan they knew would not be repaid in order the create the appearance that JPK NewCo was a legitimate company that needed bankruptcy protection.  Once the claims in this case were under bankruptcy court jurisdiction, the plan was for the Defendants to try to undo, and overturn, multiple prior decisions that this Court had already made.

7.      The Defendants' manufactured bankruptcy case scheme was exposed after representatives of the U.S. Trustee's office interviewed Mr. Huertas, JPK NewCo's representative, at the initial debtor interview of JPK NewCo.  During that interview, the U.S.

---

[1]   The removal of these cases ensured that the September 9, 2024 trial date -- a trial date that this Court specially set and reserved at the Defendants' request outside of its normal scheduling procedures -- would not take place.

2

5937

Trustee's office learned that JPK NewCo was a sham company that existed only on paper.  JPK

NewCo had no employees, no operating expenses, and it did not conduct any legitimate business.

As a result, the U.S. Trustee's Office filed a motion to dismiss *JPK NewCo I* for being filed in

bad faith.  A copy of that motion, which summarizes the Defendants' scheme, is attached as

Exhibit A.

8.      In *JPK NewCo I*, the Plaintiffs filed a Motion to Remand this case back to this

Court.  Judge Elizabeth Gunn denied that motion without prejudice, in part because she was not

sure whether *JPK NewCo I* would be dismissed as being filed in bad faith.

9.      Even though the issue of whether *JPK NewCo I* was filed in bad faith was set for

a two-day evidentiary hearing, that issue did not get decided.  Instead, on February 25, 2025,

*JPK NewCo I* was dismissed by an agreed order based upon JPK NewCo's failure to pay

required fees to the U.S. Trustee.

10.     After *JPK NewCo I* was dismissed, the Plaintiffs filed a Renewed Motion for

Remand, which was set for a hearing on May 15, 2025.  At that hearing, Judge Elizabeth Gunn

determined that these cases should be remanded back to this Court.

11.     On May 27, 2025, about two weeks after the remand order, and the same day that

this Court issued a notice of remote hearing, JPK New Co filed a new Chapter 11 bankruptcy

case known as *In Re JPK NewCo LLC,* Case No. 25-10015-ELG ("*JPK NewCo II*").

12.     The Borrowers will soon be filing a motion to dismiss *JPK NewCo II* for being

filed in bad faith because the Defendants are again misusing, and abusing, the bankruptcy court

process for improper purposes.

13.     The U.S. Trustee's office has not yet decided whether it will be filing a motion to

dismiss *JPK NewCo II* for being filed in bad faith.

3

14.     The Defendants are trying again to improperly forum shop the claims in this case away from D.C. Superior Court.  The day after *JPK NewCo II* was filed, several of the Defendants here filed an adversary proceeding in the U.S. Bankruptcy Court against the Borrowers asserting claims that are based upon the same facts, the same loan documents, and similar issues in this case.  *See JPK NewCo, LLC. et al., v. Developer RE1, LLC and 423 Kennedy St Holdings, LLC,* Case. No. 25-10015-ELG.  This filing is part of a continuing pattern of the Defendants using their superior economic resources to bury the Borrowers with both duplicative litigation and legal expenses.

15.     By operation of federal law, even though *JPK NewCo II* is a manufactured bankruptcy case filed by a phony company for improper purposes in bad faith, the claims in this case as to JPK NewCo must be stayed by the automatic stay provisions of 11 U.S.C. § 362. However, no other defendant in this case is a debtor in a pending bankruptcy case.  The automatic stay provisions apply only to a debtor in a pending bankruptcy case, not to any co-defendants, so this case should not be stayed as to any defendant other than JPK New Co.

16.     The Borrowers request that the Court let this case move forward, and not stay the case, as to any defendant except JPK NewCo.

17.     The Borrowers will provide the Court with an update on the status of *JPK NewCo II* at the remote Status Hearing set for June 27, 2025.

4

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated:  June 13, 2025                    /s/ James D. Sadowski
                                          Alexandria J. Smith (D.C. Bar. No. 1781067)
                                          James D. Sadowski (D.C. Bar No. 446635)
                                          801 17th Street, NW, Suite 1000
                                          Washington, DC 20006
                                          Telephone:  (202) 452-1400
                                          Email:  jds@gdllaw.com
                                          *Counsel for Plaintiffs Developer RE1 LLC and 423*
                                          *Kennedy S. Holdings, LLC*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this 13th day of June 2025 a copy of the Plaintiffs' Response to

Suggestion of Stay was filed using the Court's electronic filing system (eFileDC) and a notice of

electronic filing should be served on all counsel of record.


                                          /s/ James D. Sadowski
                                          James D. Sadowski

5

8161\0002\4929-6867-4382

5940

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| **DEVELOPER RE1 LLC,** *et al.*, | |
| **Plaintiffs,** | **Case No. 2022-CAB-005935** |
| | **Consolidated with: 2023-CAB-004260** |
| **v.** | |
| **DP CAPITAL, LLC D/B/A** | **Judge Ebony M. Scott** |
| **WASHINGTON CAPITAL** | |
| **PARTNERS,** *et al.*, | |
| | **Next Court Event:  Remote Status Hearing** |
| **Defendants.** | **September 19, 2025 at 10:00 a.m.** |

## ORDER

This matter is before the Court on Defendant JPK NewCo LLC's ("JPK") Suggestion of Bankruptcy and Stay of Proceedings, filed on May 27, 2025, and Plaintiffs' Response to Suggestion of Stay, filed on June 13, 2025.

In Defendant JPK's Suggestion of Bankruptcy, Defendant JPK indicates that it "filed a voluntary petition for chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code, in the United States Bankruptcy Court for the District of Columbia, thereby commencing the matter of *In re JPK NewCo LLC*, Case No. 25-200-ELG (Bankr. D.D.C. 2025)." Suggestion at 1.  JPK then states that "JPK is a defendant in the above-captioned consolidated litigation and, equally importantly, the current holder of two of the promissory notes at issue in this litigation, whilst also being the current holder of two of the deeds of trust at issue in this litigation.  It is thusly respectfully suggested the continuation of this suit would offend the provisions of Section 362 of Title 11 of the United States Code… and, as such, this case is stayed by operation of law." *Id*. at 2.

5942

In Plaintiffs' Response, Plaintiffs argue that "[t]he Defendants created JPK NewCo for multiple improper purposes" in an effort to delay the instant case.  Pl.'s Resp. ¶ 1.  Plaintiffs argue that "[t]he Defendants are trying to improperly forum shop the claims in this case away from D.C. Superior Court."  *Id*. at ¶ 14.  While Plaintiffs argue that the instant bankruptcy case is "manufactured… by a phony company for improper purposes in bad faith," Plaintiffs concede that "the claims in this case as to JPK NewCo must be stayed by the automatic stay provisions of 11 U.S.C. § 362."  *Id*. at ¶ 15.  However, Plaintiffs argue, without citing to any legal authority, that "no other defendant in this case is a debtor in a pending bankruptcy case," and that "[t]he automatic stay provisions apply only to a debtor in a pending bankruptcy case, not to any co-defendants, so this case should not be stayed as to any defendant other than JPK New Co."  *Id*.

As noted, Plaintiffs cite no legal authority for the proposition that a matter need only be partially stayed to satisfy the requirements of 11 U.S.C. § 362(a).  Rather, the statute states that "a petition filed under sections 301, 302, or 303 of this title… operates as a stay, applicable to all entities…."  11 U.S.C. § 362(a).  Further, even if the instant matter could be stayed-in-part, doing such would frustrate the purpose of the statutory automatic stay and judicial efficiency as JPK is the record owner of the Deed of Trust and promissory note underlying the instant matter.  *See* Suggestion at 2.

Accordingly, it is this **18th day of June, 2025,** hereby:

**ORDERED** that this matter is **STAYED** until the conclusion of Defendant JPK NewCo LLC's Bankruptcy Proceedings; it is further

**ORDERED** that the Remote Status Hearing on June 27, 2025, is **CONTINUED** to **September 19, 2025, at 10:00 a.m.**, in Remote Courtroom 219 before Judge Ebony M. Scott. Instructions for participation in the remote hearing are attached.

**SO ORDERED.**

_____

**Associate Judge Ebony M. Scott**
(*Signed in Chambers*)

**Copies Via Odyssey to:**

Alexandria J. Smith, Esq.
ajs@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

Spencer B. Ritchie, Esq.
sbr@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

James D. Sadowski, Esq.
jds@gdllaw.com
*Counsel for Plaintiffs RE1 Developer LLC and 423 Kennedy St. Holdings LLC*

Maurice B. VerStandig, Esq.
mac@mbvesq.com
*Counsel for Defendants WCP Fund I LLC, DP Capital LLC d/b/a Washington Capital Partners,
SF NU LLC, Daniel Huertas, Russell Drazin, and JPK NewCo LLC*

## VIRTUAL COURTROOM INSTRUCTIONS FOR COURTROOM 219

During the period of remote operation, as determined by the Chief Judge of the Superior Court, some proceedings in matters on Calendar 8 will take place in Virtual Courtroom 219, which the parties and counsel may access in the following ways:

(1)     Going to the WebEx website at https://dccourts.webex.com/meet/ctb219 or going to https://dccourts.webex.com and entering meeting ID number 129 315 2924; or

(2)     Downloading the WebEx Meetings app, opening the app, selecting Join Meeting, and entering https://dccourts.webex.com/meet/ctb219; or

(3)     Calling 1-844-992-4726 or 202-860-2110, then entering meeting ID number 129 315 2924#, then pressing # again to enter the meeting.

Parties having trouble connecting to their remote hearing may contact chambers at judgescottchambers@dcsc.gov as staff will be monitoring the e-mails closely during hearings.

**Failure to appear at a remote proceeding may result in the Court entering an unfavorable ruling against you, including dismissal of a case or entry of default.**

## COURTROOM PROTOCOL

**Guidelines**:  When entering the virtual courtroom (by dialing in on a phone, or signing in through the website or app), a party or counsel should not attempt to speak because another hearing may be underway.  Each party should be automatically muted by the courtroom clerk when you first arrive.  If you are using the WebEx website or the app, you may check in with the courtroom clerk using the "chat" function.  If you are on a telephone, you should wait for your case to be called.

**Option to Appear In-Person for Remote Hearings**:  Even though your case has been set as a remote hearing, you have the choice to come in person to the Court for your hearing. If you would like to participate in person, please try to notify the Court before your hearing date. Whether you come in person or participate remotely, your case will still be fully heard by the Judge. Instructions for participation in remote hearings may be found above and here: https://www.dccourts.gov/services/remote-hearing-information.

**Exhibits**:  If you intend to rely on exhibits or other documents during the hearing, you must e-mail the exhibits to the Court at judgescottchambers@dcsc.gov, copying all sides, no later than 5:00 p.m. two business days before the hearing.  You must also file the exhibits on the docket and provide a copy of the exhibits to any witness before the hearing.  The exhibits must be separately labeled so that they can be easily identified by all parties and the Court during the remote hearing.

5945

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (VSB No. 38326)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Chapter 11 |
| JPK NEWCO, LLC, | Case No. 25-00200 (ELG) |
| Debtor. | Subchapter V |
| DEVELOPER RE1, LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 25-10037-ELG |
| | State Court Case 2022-CAB-005935 |
| DP CAPITAL LLC, *et al.*, | |
| Defendants. | |
| 423 KENNEDY ST HOLDINGS, LLC, | |
| Plaintiff, | |
| | State Court Case 2022-CAB-005935 |
| v. | (State Court Cases Consolidated) |
| DP CAPITAL LLC, *et al.*, | |
| Defendants. | |

## PLAINTIFFS' MOTION FOR REMAND

Developer RE1, LLC and 423 Kennedy St Holdings, LLC (collectively, the "Claimants"

or "Plaintiffs"), by counsel, hereby move this Court for entry of an order, pursuant to 11 U.S.C. §

105(a), 28 U.S.C. §1334(c) and §1452(b), Fed. R. Bankr. P. 9006, and LBR 9027-1(b): (a) remanding the above-captioned adversary proceeding to the D.C. Superior Court; and (b) suspending all related deadlines pending the entry of an order affirming the same (the "Motion"). In support of the Motion, the Plaintiffs represent as follows:

## Background

1.      The factual and procedural background is well known to this Court from certain prior cases and is hereby incorporated by reference.[1]   Additional background is available in the *Motion to Dismiss Chapter 11 Petition Filed in Bad Faith* [Dkt. No. 19] and the *Motion of Developer RE1, LLC's and 423 Kennedy St Holdings, LLC for Abstention and to Dismiss or Stay Proceedings* [Dkt. No. 48] (the "Abstention Motion").

2.      To summarize, JPK NewCo, LLC (the "Debtor") was created by the defendants in the above-captioned adversary (the "Defendants") for the improper purposes of:  (a) delaying a trial on the Plaintiffs claims in D.C. Superior Court and hindering their ability to pursue their claims; and (b) so that the Defendants could relitigate prior decisions from that D.C. Superior Court in this Court – a Court that they consider to be their "home court" that would make decisions more favorable to their positions.

3.      This is the second time WCP Fund I LLC ("WCP Fund"), an insider of the Debtor, has attempted this maneuver.

4.      Specifically, the WCP Fund previously sought to remove the two above-captioned cases - *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.,* Case No. 2023-CAB-004260 (D.C. Super. Ct.) and *Developer RE1, LLC v. the WCP Fund I, LLC, et al.,* 2022-CAB-005935 (D.C. Super Ct.) (hereinafter, the "Consolidated Superior Court Cases") – to this Court in connection

---

[1]      *See* Case No. 24-00262-ELG and Adv. Proc. No. 24-10023-ELG.

5947

with a prior involuntary bankruptcy proceeding also filed by insiders of the Debtor – WCP Fund and DP Capital LLC. *See In re Charles Paret* [Case No. 23-00217; Adv. Proc. No. 24-10023] (in which case WCP Fund also sought removal of a D.C. Superior Court case).

5.      Around the same time, the Debtor was subject to an involuntary bankruptcy proceeding that was ultimately dismissed pursuant to the *Consent Order Granting the United States Trustee's Motion to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)* [Case No. 24-02262; Dkt. No. 85].

6.      The Court then remanded the Consolidated Superior Court Cases back to D.C. Superior Court pursuant to the *Order Granting Renewed Motion to Remand* [Adv. Proc. No. 24-10023; Dkt. No. 64] on the bases of both mandatory and permissive abstention.

7.      As the Court correctly predicted at the remand hearing, the Debtor, however, would not and did not give up.

8.      As Plaintiffs' counsel predicted at a hearing in July of last year – before knowing anything about the Debtor – the Debtor was using the removal process to attempt to relitigate issues that have already been decided by the D.C. Superior Court. Such efforts have now resumed in the form of the above-captioned bankruptcy, the related adversary proceeding, and a second removal of the Consolidated Superior Court Cases, which is now requiring this motion for remand.

9.      Specifically, on May 27, 2025, the Debtor initiated the above-captioned proceeding under Subchapter V of Chapter 11 of the Bankruptcy Code (the "Bankruptcy"). Almost immediately, thereafter, the Debtor, among others, initiated an adversary proceeding against the Claimants [Adv. Proc. No. 25-10015] (the "Adversary") which Adversary is premised on the exact same issues which are currently before the D.C. Superior Court pursuant to the Consolidated Superior Court Cases.

3

5948

10. Despite the fact that the issues raised not only in this Bankruptcy but also the Adversary, can and should be addressed by the D.C. Superior Court; despite the fact that the issues are already well underway of being resolved by the D.C. Superior Court; and despite the fact that the Debtor has no direct threat or business operations that require an immediate restructuring, the Debtor has nonetheless sought to cut off the rights of the Claimants and has forged ahead with its Bankruptcy and the Adversary.

11. In furtherance of this scheme, the Debtor has now removed the above-captioned Consolidated Superior Court Cases a second time (the "Removal").

12. This Court was never designed to be either the Defendants' "home court" or to act as the first line of appeal for the Defendants from prior, adverse decisions made by the D.C. Superior Court, but allowing this case to continue here is exactly what this Court will become.

13. The type of manipulative, procedural gamesmanship that the Defendants have engaged in should not be condoned by this Court. This Court was established to hear legitimate core bankruptcy proceedings filed by legitimate debtors, with additional "related to" jurisdiction, all of which is sorely lacking here.

14. In contrast, what we have here is a Debtor who was created solely as a siloed company for the purpose of filing bankruptcy. Such entity was assigned, seemingly without consideration, two subordinate debts allegedly owed by the Claimants. The Debtor seemingly fabricated a creditor and a receivable, which it utilized to get into bankruptcy in the first instance. When that case was dismissed and the Consolidated Superior Court Cases were properly remanded, the Debtor tried again. This time, it pursued its Bankruptcy voluntarily, and immediately upon filing, filed the Adversary, in an effort to gain more of a foothold with this Court.

4

The Debtor has now sprinted past the line of reasonableness and again sought removal of the Consolidated Superior Court Cases.

15.     A quick peak behind the veil reveals the reality of this situation.  The reality is that WCP Fund and its related entities did not like its chances in the Consolidated Superior Court Cases. As such, it has gone to extreme lengths to try to create bankruptcy jurisdiction, run up litigation costs for the Plaintiffs, and to try and entrench itself with this Court to have a second bite at the removal apple.

16.     The simplest solution here, which is supported by the Bankruptcy Code, the United States Code, the Bankruptcy Rules, and applicable case law, is to let the D.C. Superior Court finish the job is started and adjudicate the Consolidated Superior Court Cases.  Once the rights of the parties are adjudicated, the Bankruptcy and the Adversary, to the extent they even remain necessary, can be fast-tracked.  Enforcing the appropriate outcome here includes remanding the Consolidated Superior Court Cases to the Court which has been exercising jurisdiction over them for a substantial period of time – the D.C. Superior Court.

## **LEGAL ARGUMENTS**

17.     Permitting this Removal and not remanding the Consolidated Superior Court Cases requires that this Court suspend numerous rules and stretch the case law beyond reasonable interpretation.  From a global perspective, the only thing which has changed since the hearing held on May 8, 2025, when this Court previously remanded the Consolidated Superior Court Cases, is that the Debtor's case remains pending.  That fact does not change the numerous findings of this Court which justified remand. First, the Debtor, despite being well-aware of the existence of the Consolidated Superior Court Cases, missed the deadline for removal.  Second, mandatory abstention requires that these cases be remanded.  Finally, even if the Debtor somehow satisfied

5

each of these hurdles, which it cannot do, it would need to establish that permissive abstention is
not the more logical outcome here, which it clearly is.

### A.    Defendants' Notice of Removal is Untimely.

18.    The Debtor has not timely sought its Removal.  Fed. R. Bankr. P. Rule 9027(a)(2),
which governs the time for filing a notice of removal of a civil action that is pending before
commencement of a bankruptcy case, provides that:

> If the claim or cause of action in a civil action is pending when a
> case under the Code is commenced, a notice of removal may be filed
> only within the longest of (A) 90 days after the order for relief in the
> case under the Code, (B) 30 days after entry of an order terminating
> a stay, if the claim or cause of action in a civil action has been stayed
> under § 362 of the Code [11 USCS § 362], or (C) 30 days after a
> trustee qualifies in a chapter 11 reorganization case but not later than
> 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

19.    The Bankruptcy was filed on May 27, 2025.  Under Fed. R. Bank. P. 9027(a)(2),
any notice of removal should have been filed no later than August 25, 2025.  The Debtor is clearly
aware of the Consolidated Superior Court Cases and aware of the timing obligations for removal.
The Removal here was filed after that deadline and the Debtor did not otherwise seek to extend
such deadline.  The only reasonable assumption is that this delay was a tactic more so than a
necessity.  The Consolidated Superior Court Cases must be remanded for this reason alone and
such relief should be even more clear when considered in conjunction with the other procedural
defects.  *See In re Exchange Parts of America, Inc.*, 138 B.R. 585, 587 (Bankr. W.D. Ark. 1992)
(finding that court must remand removal not filed timely even though the litigation pertained to
property of the estate); *see also In re Jandous Elec. Const. Corp.*, 106 B.R. 48, 50 (Bankr. S.D.N.Y.
1989) (removal more than 90 days after Chapter 11 filing was time-barred).

### B.    Mandatory Abstention is Appropriate.

20.      Even if the Removal had been timely, the doctrine of mandatory abstention applies because the claims in the Consolidated Superior Court Cases are non-core proceedings.  This Court has expressed approval of the Third Circuit's distinction between core and non-core proceedings.  "Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as 'core' proceedings; whereas proceedings [that are only otherwise] 'related to' a case under title 11 are referred to as 'non-core' proceedings."  *Va. Hosp. Ctr.-Arlington Health Sys. v. Akl (In re Akl)*, 397 B.R. 546, 549 (Bankr. D.D.C. 2008) (*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225 (3d Cir. 2004)).

21.      With respect to mandatory abstention, 28 U.S.C. 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district *court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.*

28 U.S.C. 1334(c)(2) (italic emphasis added).

22.      As this Court noted at the hearing on May 8, 2025 [Adv. Proc. No. 24-10023], there can be no dispute that the D.C. Superior Court can timely adjudicate the claims in the Consolidated Superior Court Cases.  In fact, the only disruption to the timely adjudication of those claims was the delay caused by the prior bankruptcy filings and the pending actions.  A jury trial was scheduled to start on September 9, 2024 and had it not been for these proceedings, the rights of all parties would have already been adjudicated.  The request for a jury trial also favors remand given this Court's prior recognition that such consent is unlikely.  *See*  May 8, 2025 Hr'g [Adv. Proc. No. 24-10023].   The D.C. Superior Court has also gained a much better familiarity with the claims and

7

5952

issues in the Consolidated Superior Court Cases during the lengthy history of the cases. As a result, this Court should abstain from hearing the Consolidated Cases under 28 U.S.C. 1334(c)(2).

23. Even aside from such reasoning, the Debtor cannot meet its burden of showing that there is a core proceeding here. As an initial matter, the Consolidated Superior Court Cases are separate and apart from the Adversary. While the outcome of the Consolidated Superior Court Cases may ultimately mean there is no asset to be pursued in the Adversary, such relationship is tangential at best. What is more important, however, is that the "asset" sought in the Adversary does not meet the standard for a core proceeding. In the Adversary, the Debtor asserts that the receivable allegedly due from the Claimants is property of the Debtor and subject to section 542. What the Debtor ignores, however, is the remainder of section 542(b) which provides that such receivable must be "matured, payable on demand, or payable on order [ie: uncontingent and liquidated]." 11 U.S.C. § 542. Such debt must also be **presently** payable. *See Porter-Hayden Co. v. First State Mgmt. Group, Inc. (In re Porter-Hayden Co.)*, 304 B.R. 725, 732 (Bankr. D. Md. 2004) (quoting 5 Collier on Bankruptcy ¶ 542.03 n.1 (15th ed. rev. 2003)) (emphasis added). The terms 'matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor.' *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. August 14, 2007) (quoting *In re CIS Corp.*, 172 B.R. 748, 760 (S.D.N.Y. 1994)). In short, section 542(b) is appropriate only when the contracting party is **"unconditionally liable."** *See In re MF Glob., Inc.*, 531 B.R. 424, 437-38 (Bankr. S.D.N.Y. 2015) (emphasis added). The alleged receivable is anything but that. The Court can review the Consolidated Superior Court Cases and quickly determine that the Adversary is miles away from satisfying the applicable standard. As an initial matter, the Claimants are the Plaintiffs

8

in the underlying Consolidated Superior Court Cases.  Such cases arose because the Plaintiffs have

valid lender liability claims against various parties and all efforts of the WCP Fund parties to rebut

that assertion have been rejected to date.  If the Claimants prevail, then the alleged receivable

sought in the Adversary is worthless.  In fact, the only reason the Debtor has engaged in these

actions is because it was starting to become apparent that the Claimants were likely to prevail on

their lender liability claims.  Given that the alleged receivable is anything but certain, which section

542 of the Bankruptcy Code requires to impose jurisdiction, the Court must abstain.

**C.    Discretionary Abstention is Also Appropriate Here.**

24.    In the event this Court finds that the requirements for mandatory abstention are not

satisfied, it should still exercise its discretion to abstain from adjudicating this case in the interests

of comity and respect for state law pursuant to 28 U.S.C. § 1334(c)(1).

25.    Under 28 U.S.C. § 1334(c)(1), "[n]othing in this section prevents a district court in

the interest of justice, or in the interest of comity with state courts or respect for state law, from

abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a

case under title 11."

26.    In evaluating whether permissive abstention is appropriate, courts have looked to a

variety of factors, including but not limited to: (1) the effect on the efficient administration of the

bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or

unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness to

the proceeding in the main bankruptcy court; (6) the existence of the right to a jury trial; and (7)

prejudice to the involuntarily removed defendants.  *See, e.g., In re Merry-Go-Round Enters., Inc.*,

222 B.R. 254, 257 (D. Md. 1998).  In addition, if most of the factors have been established for

mandatory abstention, "bankruptcy courts should give careful consideration to whether it would

9

5954

be appropriate to exercise their discretion to abstain under section 1334(c)(1)." *Frelin*, 292 B.R. at 383 (citing *In re Williams*, 256 B.R. 885 (8th Cir. BAP 2001)).

27.    Abstention would provide the most efficient use of estate resources, and it would prevent unjustified interference with the D.C. Superior Court's authority, and it would will have a positive effect on the administration of the Debtor's bankruptcy estate. The Consolidated Superior Court Cases were filed significantly before the Adversary and the proceedings in the Consolidated Superior Court Cases have already progressed far beyond the current status of the Adversary. The Claimants have already spent considerable time, energy, and resources in the Consolidated Superior Court Cases. Forcing the Claimants to essentially re-litigate its efforts in the Consolidated Superior Court Cases in the Adversary Proceeding is duplicative and unnecessary. Thus, abstention by the Court will serve the best interests of judicial economy.

28.    As mentioned previously, the Adversary presents state law claims that are already being addressed in the Consolidated Superior Court Cases. There are no issues presented under the Adversary that are unique to bankruptcy law and any argument regarding jurisdictional basis for the Adversary Proceeding is questionable at best. The state law causes of action asserted by all parties involved are best determined by the D.C. Superior Court – the court that routinely hears such matters. Thus, the interest of comity favors abstention.

29.    In addition, permissive abstention is appropriate because other than the transfer of the underlying note and this Court's ruling in the prior proceedings, the Debtor would not be a party to the Consolidated Superior Court Cases and would not be able to remove these cases to this Court. *See* 28 U.S.C. § 1452 ("**a party** may remove any claim or cause of action . . ..") (emphasis added), *see also In re Providence Wireless, LLC*, 587 B.R. 858, 863-64 (Bankr. E.D.N.C. 2018); *In re Advance Iron Works, Inc.*, 495 B.R. 404, 410 (Bankr. S.D. Ill. 2013) (finding that

10

removal by debtor of proceeding to which it was not a party, even with consent, required remand). This reason alone warrants remand.

30. Since the Consolidated Superior Court Cases generally involve non-debtor defendants, it should proceed regardless of the Debtor's bankruptcy filing. *See Frelin*, 292 B.R. at 385; *see also In re Grubbs Construction Co.*, 305 B.R. at 482. For these reasons, abstention is the most logical conclusion.

**D.** **The Court Should Suspend All Deadlines.**

31. To the extent the Court takes this Motion under advisement, it would be a waste of judicial resources for this Court to consider any pending motions or other matters if this case is going to be remanded to the D.C. Superior Court. For purposes of judicial economy alone, the Court should immediately issue an order under 11 U.S.C. §105(a) suspending the deadlines and hearings for all matters the Defendants are seeking to have this Court consider before a remand decision is made.

WHEREFORE, Plaintiffs request that the Court grant this Motion by: (a) remanding the Consolidated Superior Court Cases to the D.C. Superior Court; (b) requiring the Defendants to pay the Plaintiffs for the attorney's fees that they have incurred and will incur as a result of the Defendants' improper removal of the cases; (c) suspending all pending deadlines, if necessary; and (d) granting such other and further relief as may be deemed appropriate.

Dated: September 1, 2025

**DEVELOPER RE1, LLC AND**
**423 KENNEDY ST HOLDINGS, LLC**

/s/ *Jeremy S. Williams*
Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

11

4901-1490-6467.2

5956

Email: jeremy.williams@kutakrock.com

and

James D. Sadowski (VSB No. 38326)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on September 1, 2025, a true and correct copy of the foregoing Motion for Remand was served via the Court's CM/ECF system to all necessary parties.

/s/ *Jeremy S. Williams*
Counsel

12

**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (VSB No. 38326)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 11 |
| JPK NEWCO, LLC, | ) |
| | ) Case No. 25-00200 (ELG) |
| Debtor. | ) |
| | ) Subchapter V |
| | ) |
| DEVELOPER RE1, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Pro. No. 25-10037-ELG |
| | ) State Court Case 2022-CAB-005935 |
| DP CAPITAL LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| 423 KENNEDY ST HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) State Court Case 2022-CAB-005935 |
| v. | ) (State Court Cases Consolidated) |
| | ) |
| DP CAPITAL LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MOTION FOR EXPEDITED HEARING ON
## CLAIMANTS' SECOND REMAND MOTION

Developer RE1, LLC and 423 Kennedy St Holdings, LLC (collectively, the "Claimants"),

by counsel, hereby move this Court for entry of an order, substantially in the form of **Exhibit A** attached hereto, granting an expedited hearing (the "Motion to Expedite") pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure and Rule 9013-2 of the Local Rules of the United States Bankruptcy Court for the District of Columbia to consider the *Plaintiffs' Motion for Remand* (the "Second Remand Motion"). Pursuant to the Local Rules of this Court, the Claimants state the following as the basis for the relief sought herein:

**Expedited Hearing**

1. On May 27, 2025, JPK initiated the above-captioned proceeding under Subchapter V, of Chapter 11 of the Bankruptcy Code (the "Bankruptcy") after its prior bankruptcy case was dismissed. [Case No. 24-00262; Dkt. No. 85]. Almost immediately, thereafter, JPK, among others initiated an adversary proceeding against the Claimants [Adv. Proc. No. 25-10015] (the "Adversary") which Adversary is premised on the exact same issues which are currently before the D.C. Superior Court in two-related actions (the "Consolidated Superior Court Cases").

2. On June 23, 2025, in opposition to JPK's litigation scheme, the Claimants filed Developer RE1, LLC's and 423 Kennedy St Holdings, LLC's Motion to Dismiss Chapter 11 Petition Filed in Bad Faith [Dkt. No. 19] (the "Motion to Dismiss").

3. On July 28, 2025, JPK NewCo, LLC ("JPK") filed the *Debtor's Chapter 11, Subchapter V Plan of Reorganization* [Dkt. No. 31] (the "Plan"),

4. On July 29, 2025, the Court entered the *Scheduling Order* [Dkt. No. 32] (the "Scheduling Order") in connection with the Plan. The Scheduling Order contains deadlines for the Claimants, among others, to object to the Plan and set a confirmation hearing date for October 1, 2025.

5. On August 1, 2025, the Claimants filed the *Developer RE1, LLC's and 423*

*Kennedy St Holdings, LLC's Objection to Subchapter V Designation* [Dkt. No. 42] (the "Designation Objection"). The Designation Objection is currently scheduled for hearing on September 3, 2025.

6. On August 20, 2025, the Claimants filed the *Motion of Developer RE1, LLC's and 423 Kennedy St Holdings, LLC for Abstention and to Dismiss or Stay Proceedings* [Dkt. No. 48] (the "Abstention Motion") which is also set for hearing on September 3, 2025.

7. On September 1, 2025, JPK again sought the removal of the Consolidated Superior Court Cases pursuant to the Notice of Removal [Dkt. No. 57] (the "Second Removal").

8. In opposition to the Second Removal, the Claimants are again seeking remand pursuant to the Second Remand Motion.

9. Given that there are numerous pending deadlines in this case, resolution of the Second Remand Motion, in conjunction with the previously scheduled Abstention Motion is appropriate.

10. Specifically, no party should be forced to incur unnecessary fees and expenses when such matters may ultimately be deemed moot.

11. Furthermore, the issues presented in the Second Remand Motion are not novel. The Court is intimately familiar with both the facts of these cases and the applicable legal standard, having previously granted the *Claimants' Renewed Motion for Remand*. *See* Adv. Proc. No. 24-10023; Dkt. No. 64.

12. Considering these matters on an expedited basis the most appropriate use of the Court's and the parties' resources.

## Notice Period

13. The Claimants hereby request that a hearing be set on the Second Remand Motion

for September 4, 2025, at 1:30 p.m., prevailing Eastern Time, or as soon as the Court is available thereafter, so that such matters can be considered in connection with the currently scheduled Designation Objection and Abstention Motion.

14.     The Claimants are also requesting that objections, if any, to the Second Remand Motion be filed on or before 12:00 p.m. on September 3, 2025, to allow the Claimants to prepare for the hearing on the same.

15.     Given the totality of the circumstances and nonprejudicial effect of the relief requested, the Claimants requests that the Court reduce the notice period as provided for herein.

## Notice Parties

16.     A copy of this Motion to Expedite has been provided to all necessary parties via CM/ECF.  The Trustee submits that no other or further notice is required.

**WHEREFORE**, the Claimants request that the Court to grant an expedited hearing with respect to the Second Remand Motion and award any further relief the Court deems proper.

Dated: September 1, 2025

**DEVELOPER RE1, LLC AND
423 KENNEDY ST HOLDINGS, LLC,**

/s/ *Jeremy S. Williams*
Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com

and

James D. Sadowski (VSB No. 38326)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006

4903-0651-0692.1

Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Local Rules of this Court, I hereby certify under penalty of perjury that on August 20, 2025, a true and correct copy of the foregoing was served via the Court's CM/ECF system to all necessary parties.

/s/ *Jeremy S. Williams*
Counsel

4903-0651-0692.1

# EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| JPK NEWCO, LLC, | ) | Case No. 25-00200 (ELG) |
| | ) | |
| Debtor. | ) | Subchapter V |
| | ) | |
| | ) | |
| DEVELOPER RE1, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 25-10037-ELG |
| | ) | State Court Case 2022-CAB-005935 |
| DP CAPITAL LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| 423 KENNEDY ST HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | State Court Case 2022-CAB-005935 |
| v. | ) | (State Court Cases Consolidated) |
| | ) | |
| DP CAPITAL LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER GRANTING MOTION FOR EXPEDITED HEARING</u>

THIS MATTER comes before the Court upon the *Motion for Expedited Hearing on
Claimants' Second Remand Motion* (the "<u>Motion to Expedite</u>") filed by filed by Developer RE1,

LLC and 423 Kennedy St Holdings, LLC (collectively, the "Claimants"), and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157; and this Court having found that venue of this proceeding and the Motion to Expedite in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion to Expedite is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Claimants having provided appropriate notice of the Motion to Expedite and the opportunity for a hearing on the Motion to Expedite under the circumstances; and this Court having reviewed the Motion to Expedite; and this Court having determined that the legal and factual bases set forth in the Motion to Expedite establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefore, it is HEREBY ORDERED THAT:

1.      The Motion to Expedite is granted as set forth herein.

2.      The *Plaintiffs' Motion for Remand* (the "Second Remand Motion") shall be heard on an expedited basis on September 4, 2025, at 1:30 p.m., prevailing Eastern Time.

3.      Objections to the Second Remand Motion shall be filed on or before 12:00 p.m. on September 3, 2025.

4.      The Claimants are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion to Expedite.

5.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Order submitted by:

/s/ *Jeremy S. Williams*
**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com

and

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (VSB No. 38326)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Email: jds@gdllaw.com

*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**KUTAK ROCK LLP**
**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700; Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax: (202) 452-1410

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| JPK NEWCO, LLC, | ) | Case No. 25-00200 (ELG) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DEVELOPER RE1, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 25-10037-ELG |
| | ) | State Court Case 2022-CAB-005935 |
| DP CAPITAL LLC, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| 423 KENNEDY ST HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | State Court Case 2022-CAB-005935 |
| | ) | (State Court Cases Consolidated) |
| DP CAPITAL LLC, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' STATEMENT THAT THEY DO NOT CONSENT
## TO THE ENTRY OF FINAL ORDERS OR JUDGMENT

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy" and

together with RE1, the "Plaintiffs"), by counsel, file this statement under Fed. R. Bankr. P.

9027(e)(3).  Plaintiffs do not consent to this Court issuing any final orders or judgment as to the removed cases.


Dated:  September 15, 2025                    **DEVELOPER RE1, LLC AND 423
                                              KENNEDY ST HOLDINGS, LLC,**

                                              /s/ James D. Sadowski
                                              James D. Sadowski (DC 446635)
                                              Alexandria J. Smith (DC 1781067)
                                              GREENSTEIN DELORME & LUCHS, P.C.
                                              801 17th Street, N.W., Suite 1000
                                              Washington, D.C. 20006
                                              Phone: (202) 452-1400
                                              Fax: (202) 452-1410
                                              Email: jds@gdllaw.com

                                              Jeremy S. Williams (DC 994825)
                                              KUTAK ROCK LLP
                                              1021 East Cary Street, Suite 810
                                              Richmond, Virginia  23219
                                              Telephone: (804) 644-1700
                                              Facsimile: (804) 783-6192
                                              Email: jeremy.williams@kutakrock.com

                                              *Co-Counsel for Developer RE1, LLC and
                                              423 Kennedy St Holdings, LLC*


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of September, 2025, a true copy of the foregoing was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.


                                              /s/ James D. Sadowski
                                              James D. Sadowski

8161\0002\4905-9866-3017.v1