Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Defendants*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re: | ) |
| | ) |
| JPK NewCo LLC, | ) Case No. 25-200-ELG |
| | ) |
| Debtor. | ) Chapter 11 |
| | ) |
| Developer RE1 LLC, *et al.* | ) Adv. Case No. 25-10037-ELG |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DP Capital LLC, *et al*. | ) |
| | ) |
| Defendants. | ) |

**MOTION TO DISSOLVE INJUNCTION**

Come now JPK NewCo LLC ("JPK"), DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), SF NU, LLC ("SNL"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (collectively, the "Defendants" and each a "Defendant"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 65 and Federal Rule of Bankruptcy Procedure 7065, and move to either (i) dissolve the injunctions entered in favor of Developer RE1 LLC ("DRL") and 423 Kennedy St Holdings LLC ("423 Kennedy") (collectively, the "Plaintiffs" and each a "Plaintiff") or, in the alternative, to (ii) condition the maintenance of such injunctions on

1

the posting, by each Plaintiff, of a bond in a sum equal to or greater than $2,000,000.00, and in support thereof state as follows:[1]

## I.     Introduction

As this Honorable Court is well aware, these consolidated cases center on novel theories of lender liability and were removed only after the District of Columbia Superior Court (the "Superior Court") entered injunctions prohibiting the Defendants from foreclosing on the Plaintiffs' respective real estate assets. In what appears to be an occurrence of first impression (and, for the latter-entered injunction, second impression), the Superior Court entered these injunctions without requiring the Plaintiffs to post bonds. The Defendants have always believed such to be legally and procedurally improper but, equally, have remained focused on the merits of these cases and have accordingly thus far refrained from attacking the Superior Court injunctions.

Unfortunately, Mel Negussie ("Mr. Negussie"), an attorney who is also the principal of DRL and an equity holder (either derivatively or directly) in 423 Kennedy, has formed a penchant for sending unsolicited e-mails to WCP's non-defendant business partner about the status of these proceedings. And, in one of the latest such e-mails, Mr. Negussie has (perhaps inadvertently) put the lie to his own entities' rationale about why a bond is not necessary: "I am writing because the 423 Kennedy Street NW construction project has now been stalled for approximately 3.5 years, and the property is deteriorating as a result." E-mail of M. Negussie, attached hereto as Exhibit A.

Indeed, based on Mr. Negussie's own word, JPK, WCP, and SNL hold loans secured by collateral that is "deteriorating" as a result of the litigation commenced by the Plaintiffs. So

---

[1] To the extent these cases have been stayed pending mediation, it bears notation that mediation has reached an impasse. The Defendants appreciate greatly the services of Judge Huennekens, as well as the efforts of counsel for the Plaintiffs. Unfortunately, a resolution simply was not ascertained during an in-person session or through various informal follow-up communications.

collateral that was of some discernable value on the date the injunctions were entered is now of less value, and the Defendants have no bond against which to seek recourse. Worse, it appears— again, from Mr. Negussie's own words—that the deterioration is continuing and will continue unless and until these properties can be foreclosed upon and placed in the hands of an economically-responsible owner motivated to arrest the flow of such deterioration.

For these reasons, and as extrapolated upon *infra*, it is respectfully urged this Honorable Court either (i) dissolve the injunctions; or (ii) condition the continuance of the injunctions upon *each* Plaintiff posting a bond of not less than $2,000,000.00, so as to furnish security against the perils of ongoing deterioration.

## II.      Relevant Facts and Allegations

Presently pending in this Honorable Court is a motion to dismiss or for summary judgment, DE #1, Exhibit A, Part III, pp. 1945-2126. In lieu of extensively revisiting the facts of these consolidated cases herein, the Defendants incorporate that filing by reference. However, by way of general notation:

1.      DRL borrowed approximately $4.1 million, spread across two promissory notes, secured by liens on the entity's singular real estate asset.

2.      423 Kennedy similarly borrowed approximately $9.4 million, through two promissory notes, with those obligations also being secured against that entity's singular real estate asset.

3.      These were all commercial loan transactions between validly organized limited liability companies and private lenders, with the subject loans being used to develop commercial real estate.

4.      The promissory notes and deeds of trust were held by WCP and certain related parties through the dates of maturity. DRL and 423 Kennedy failed to make several interest payments on time, failed to timely pay real estate taxes, and allowed other senior liens to accrue on the real estate assets.

5.      After these failures—all of which are events of default under the pertinent loan documents—WCP (one of the lenders and the servicer for all lenders) declared the Plaintiffs to be in default.

6.      The Plaintiffs believe WCP's default declaration was made with pretextual motivations and stemmed not from these objective defaults but, rather, discontent between WCP's principal and Mr. Negussie, who helmed another entity that had also borrowed money from WCP and had seen that loan fall into disrepair and default.

7.      DRL and 423 Kennedy then failed to repay the notes at maturity and, instead, commenced litigation endeavoring to enjoin WCP and related entities from foreclosing.

8.      As part of that litigation, DRL and 423 Kennedy have urged that (i) consumer lending standards should apply to commercial debt instruments; and (ii) District of Columbia law governing the roles of trustees, serving under deeds of trust, should be modified to impose upon such trustees an affirmative obligation to conduct fact-finding inquiries and adjudicate disputes between lenders and borrowers before performing foreclosures.

9.      DRL and 423 Kennedy, as part of their claims, seek *in rem* relief against the promissory notes on which they are obligated, essentially arguing for partial or full cancellation of the debt.

10.     The Superior Court, after initially dismissing the first such lawsuit, had different judges assigned when that suit was re-filed and a second suit was filed, with injunctions ultimately being entered against the Defendants, prohibiting them from foreclosing on the Plaintiffs' assets.

11.     The injunctions were both entered without any requirement a bond or other security be posted—something that appears to be unprecedented for a non-governmental plaintiff in the Superior Court.

12.     In an effort to silo the promissory notes under attack from DRL and 423 Kennedy, and after the Superior Court enjoined the entities and the trustee under the deeds of trust from foreclosing, certain notes were transferred to JPK.

13.     JPK is now a debtor in bankruptcy.

## III.     Argument: The Injunctions Should be Dissolved

There are two reasons the injunctions should be dissolved, one of which is substantive and the other of which is procedural. The Defendants had refrained from raising the procedural point previously, in hopes of instead focusing on seeking a prompt adjudication of these cases. However, insofar as the substantive issue—a deterioration of the Defendants' collateral—has now emerged, it is appropriate to address both matters herein, especially insofar as they significantly overlap.

As a starting point, these consolidated cases became subject to federal law upon removal.[2] *See, e.g.*, *Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 437 (1974) (". . . once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior

---

[2] As has been addressed in separate briefing, District of Columbia law is "federal" law for various arcane, constitutional reasons. However—and as is often the case in this Honorable Court—it is perhaps easier to conceptualize the Superior Court as a "state court" simply for informal purposes of distinguishing the procedural mechanizations governing the two respective tribunals.

5

to removal."). This reality, in turn, means that the oftentimes more stringent requirements of a federal injunction came to bind these cases upon removal. As observed by Judge Chutkan:

> When a case is removed to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." Importantly, however, "federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."
>
> Under federal law, injunctive relief is an "extraordinary and drastic remedy" that is "never awarded as of right," and "that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."

*Jones v. District of Columbia*, 177 F. Supp. 3d 542, 545 (D.D.C. 2016) (quoting 28 U.S.C. § 1450; *Granny Goose Foods*, 415 U.S. at 437; *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)).

Moreover, a federal trial court retains—for the life of a case—the inherent power to modify or dissolve any injunction. As explained by the Supreme Court in 1961:

> "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions though it was entered by consent. . . . Power to modify the decree was reserved by its very terms, and so from the beginning went hand in hand with its restraints. If the reservation had been omitted, power there still would be by force of principles inherent in the jurisdiction of the chancery. A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need."

*Sys. Fed'n No. 91 Ry. Employees' Dep't v. Wright*, 364 U.S. 642, 647 (1961) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) (quoting *Ladner v. Siegel*, 148 A. 699 (Pa. 1930))). *See also A&M Records v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts.") (citing *Wright*, 364 U.S. at 647-48; *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 810 (9th Cir. 1963)).

The question, accordingly, is whether (i) new facts justify dissolution or modification of the injunctions; and/or (ii) the changed legal posture of these cases—now being in federal court—

6

justifies such a dissolution or modification. Both portions of the question are answered in the affirmative for overlapping reasons.

The requirement of a bond, in federal court, is enshrined in the Federal Rules of Civil Procedure: "The court may issue a preliminary injunction or a temporary restraining order **only if** the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added).

The Federal Rules of Bankruptcy Procedure actually emphasize the mandatory nature of the posting of such a bond or security, by specifically exempting debtors and trustees from the requirement: "Fed. R. Civ. P. 65 applies in an adversary proceeding. But on application of a debtor, trustee, or debtor in possession, the court may issue a temporary restraining order or preliminary injunction without complying with subdivision (c) of that rule." Fed. R. Bankr. P. 7065. In other words, the requirement of a bond is so thoroughly mandatory and non-discretionary, in federal court, that there exists a need to specifically exempt debtors and trustees from the rigor, since a court would otherwise be without the authority to do so.

There is, too, good reason for this federal mandate. As noted by Justice Stevens, "[t]he bond, in effect, is the moving party's warranty that the law will uphold the issuance of the injunction." *Edgar v. Mite Corp.*, 457 U.S. 624, 649 (1982) (Stevens, J., concurring). *See also Citizens for Responsibility & Ethics in Wash. v. United States DOJ*, 2026 U.S. Dist. LEXIS 34466, at *37 (D.D.C. Feb. 19, 2026) ("As a panel of the D.C. Circuit recently clarified, 'injunction bonds are generally required' when a court grants preliminary injunctive relief, even in cases in which the public interest clearly favors the injunction and the Government is the opposing party.")

(quoting *Nat'l Treasury Emps. Union v. Trump*, 2025 U.S. App. LEXIS 11952, at *3 n.4 (D.C. Cir. May 16, 2025)).

Here, we know—from Mr. Negussie's own missive—that at least the property owned by 423 Kennedy has been "deteriorating" during the period in which the Defendants have been enjoined from foreclosing thereupon. Yet it is JPK—a debtor in bankruptcy—and the other noteholder Defendants that bear the full economic liability for such deterioration, since the injunctions did not come with the requirement of any security being posted and since both Plaintiffs are single asset real estate entities.

This is the precise economic harm against which Rule 65 is intended to guard. Sure, a party may be enjoined from taking action during the pendency of a preliminary injunction but, too, that party can look to security to be made whole when the injunction lapses if that party is ultimately successful. In these cases, though, the rulings of the Superior Court have created a prism whereby there is—as of present—no such security to shelter the losses of JPK, WCP, and SNL on account of a now-acknowledged ongoing "deterioration." And such is both a contravention of the rules governing injunctions in federal court and, too, the precise variety of factual change that would necessitate the revisiting the conditions of an injunction in any event.

### IV.    Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) dissolve the injunctions entered by the Superior Court; (ii) in the alternative, condition the continuance of each injunction upon the respective Plaintiff posting a bond of not less than $2,000,000.00; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully submitted,

Dated: April 23, 2026          By:    /s/ Maurice B. VerStandig
                                      Maurice B. VerStandig, Esq.
                                      Bar No. MD18071
                                      The VerStandig Law Firm, LLC
                                      9812 Falls Road, #114-160
                                      Potomac, Maryland 20854
                                      Phone: (301) 444-4600
                                      mac@mbvesq.com
                                      *Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of April, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig