**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700; Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400;
Fax: (202) 452-1410

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE: | Chapter 11 |
| JPK NEWCO, LLC, | Case No. 25-00200 (ELG) |
| Debtor. | |
| DEVELOPER RE1, LLC, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 25-10037-ELG |
| | State Court Case 2022-CAB-005935 |
| DP CAPITAL LLC, *et al*, | |
| Defendants. | |

### PLAINTIFFS' OPPOSITION TO MOTION TO DISSOLVE INJUNCTION

Developer RE1, LLC ("RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy" and together with RE1, the "Plaintiffs"), by counsel, file this opposition to the *Motion to Dissolve Injunction* (the "Motion to Dissolve") filed on April 23, 2026 (ECF #20).

### Background

1.      RE1 filed its lawsuit against the DP Capital (the "WCP"), the WCP Fund I, LLC ("WCP Fund"), Daniel Huertas, and Russell Drazin (together with Daniel Huertas, WCP and WCP Fund, the "Defendants") on December 16, 2022, in the case known as *Developer RE1, LLC v. the WCP Fund I, LLC, et al.*, 2022-CAB-005935 (D.C. Super. Ct.).

2.     423 Kennedy filed its lawsuit on July 12, 2023, against the WCP, the WCP Fund, Mr. Huertas, and Mr. Drazin in the case known as *423 Kennedy St Holdings, LLC. v. the WCP Fund, et al.*, Case No. 2023-CAB-004260 (D.C. Super. Ct.).

3.     There was nothing "novel" about the theories of liability or the claims asserted by the Plaintiffs, nor did those claims involve issues of first impression.[1]  The gravamen of the claims in both cases was that the Defendants sabotaged the refinancing of their loans by asserting pre-textual defaults under the loans in order to coerce the Plaintiffs into paying millions of dollars in late charges, default interest, and default penalties.

4.     On June 23, 2023, SF NU, LLC sent RE1 a notice of foreclosure sale and the WCP Fund sent a Notice of Foreclosure to 423 Kennedy.[2]  Both foreclosure notices were signed by Mr. Drazin.  The foreclosure sales for the two properties were both scheduled for July 25, 2023 (at 2:00 p.m. for RE1 and 2:10 p.m. for 423 Kennedy).

5.     Soon after receiving the foreclosure notices, the Plaintiffs either filed or renewed a Motion for a Temporary Restraining Order in each case to stop the scheduled foreclosures and prevent any future foreclosures until after the Plaintiffs' claims were resolved.

The TRO Hearing in the 423 Kennedy Case and Why No Bond Was Issued

6.     In the 423 Kennedy case, Judge Milton Lee set a TRO hearing for Friday, July 21, 2023, at 1:30 p.m.

---

[1]     RE1's claims included: tortious interference with business relations (Count I); breach of the duty of good faith and fair dealing (Count II); for declaratory judgment (Count III); injunctive relief to stop the foreclosure (Count IV); breach of fiduciary duty (Count V); and declaratory judgment (Mr. Drazin cannot serve as Trustee and the foreclosure notice is invalid) (Count VI).  423 Kennedy asserted nearly the same claims as RE1 in addition to a claim for breach of contract.

[2]     The WCP Fund assigned some of the 423 Kennedy loan documents to SF NU, LLC.

2

7.      Mel Negussie, who is part owner of both Plaintiffs, gave testimony on behalf of 423 Kennedy at the TRO hearing before Judge Lee, which testimony largely mirrored the allegations in the complaint in the 423 Kennedy case.  The Defendants did not rebut Mr. Negussie's testimony, either by submitting a contrary affidavit or by calling a witness that gave contrary testimony.  The Defendants called one witness whose testimony primarily consisted of authenticating a record of 423 Kennedy's loan payments kept by the WCP.

8.      Importantly, the Defendants provided no evidence to Judge Lee about the amount of any bond that could be imposed.

9.      On Monday, July 24, 2023, Judge Milton Lee issued an order granting 423 Kennedy's TRO Motion.  In that order, Judge Lee credited Mr. Negussie's testimony, rejected nearly all the arguments made by the Defendants, and determined that 423 Kennedy would suffer irreparable harm and was likely to prevail on the merits as to its claims.

10.     As for the request for a bond in the 423 Kennedy case, Judge Lee noted in his order that:

> Considering the underlying facts discussed in this order, the Court declines to impose a bond for the following reasons.  *First, defendant [sic – "defendants"] have not provided any evidence of what an appropriate bond might be under the circumstances. While defendants' counsel made a proffer of what might be appropriate, that proffer was not accompanied by any direct evidence that would demonstrate that the suggested bond was rationally related to any potential harm.*  Second, plaintiffs testified that they made payments on the loan through the end of December 2022 even though defendants discontinued the construction draws that were necessary for the project to move forward.  The clear import of that testimony was that plaintiffs had limited funds available to continue in the project. If the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review.  Lastly, equity would support the waiver of the bond requirement given the overall strength of the plaintiffs' case.

3

ECF #1-2, Pages 1390-91 (lower right corner page numbering) (July 24, 2023 Order of Judge Lee) (italic emphasis added).

<u>The TRO Hearing in the RE1 Case and Why No Bond Was Issued</u>

11.      On July 24, 2023, Judge Ebony Scott issued an order setting a hearing RE1's Renewed TRO Motion for July 25, 2023, at 10:30 a.m.

12.      At the TRO hearing before Judge Scott, Mr. Negussie gave testimony on behalf of RE1.  Once again, the Defendants did not rebut Mr. Negussie's testimony, either by submitting a contrary affidavit or by calling a witness that gave contrary testimony at the hearing.  The Defendants again called the same, lone witness, whose testimony again primarily consisted of authenticating a record of RE1's loan payments kept by the WCP.

13.      After excusing the parties during a recess, Judge Scott issued an oral decision granting RE1's TRO Motion and determining that RE1 would suffer irreparable harm and was likely to prevail on the merits as to its claims.  Judge Scott, like Judge Lee a few days earlier, declined to enter any bond in part because the Defendants again did not produce any evidence to support what the bond amount should be.

14.      As a result of this second "no bond" decision, Defendants' counsel requested that Judge Scott set an expedited trial date, which Judge Scott was reluctant to do given the backlog of available trial dates that still existed post-Covid.  Judge Scott nevertheless diverged from the usual D.C. Superior Court practice by setting a trial date for September 9, 2024.[3]

15.      Judge Scott later memorialized her oral decision granting the TRO Motion and declining to require a bond in a written order dated August 15, 2023.  Judge Scott's order stated in relevant part that:

---

[3]   The usual practice in Superior Court is to not set a trial date until after discovery had closed, dispositive motions had been decided, and mandatory mediation had first occurred.

> Finally, as to the Bond, the Court agreed with Judge Lee that *Defendants failed to provide evidence of what the bond might be,* and Plaintiff testified that they made payments on the loan through the end of December 2022 even though Defendants discontinued the construction draws that were necessary for the project to move forward.  Judge Lee stated that Plaintiffs clearly had limited funds to continue the project and if the bond requirement were interpreted as a mandatory requirement, the inability of a moving party to pay a bond would effectively deny access to judicial review, and equity would support the waiver of the bond requirement given the overall strength of the Plaintiff's case.  This Court agrees.

ECF #1-2, Pages 1546-47  (lower right corner page numbering) (August 15, 2023 Hearing Order of Judge Scott memorializing her rulings from the bench at the TRO hearing) (italic emphasis added).

### The Legal Standards

16.     When a case is removed to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." *Jones v. District of Columbia*, 177 F. Supp. 3d 542, 545 (D.D.C. 2016).  Notwithstanding court orders issued prior to removal, federal rather than state law governs the future course of proceedings. *Id.*  The D.C. Code mirrors the traditional preliminary junction factors utilized by Federal Courts, so the standard is the same as under applicable D.C. law. *See* D.C. Code § 42-3603 and *Starbucks Corp. v. McKinney*, 602 U.S. 339 (2024) (generally discussing the traditional injunctive relief factors and collecting cases).

17.     The purpose of a preliminary injunction is not to determine any controverted right, but rather preserve the status quo, to prevent a threatened wrong, or to avoid any further perpetration of an injury. *SEC v. Vision Communs.*, 1995 U.S. Dist. LEXIS 2868, at *5 (Mar. 6, 1995) (citing 11 Wright & Miller, § 2947).

18.     Whether a preliminary injunction should be dissolved rests in the Court's sound discretion. *Vision Communs.*, 1995 U.S. Dist. LEXIS at 6 (internal citations omitted).  An

5

injunction may be dissolved where there is evidence of changed circumstances that eliminates the need for an injunction, or whether failure to dissolve the injunction would pose severe hardship upon the parties. *Id.* (internal citation omitted). Hardship alone does not constitute, in and of itself, "changed circumstances". *Id.* (internal citation omitted).

19. Rule 65(c) vests broad discretion in the Court to determine the appropriate amount of an injunction bond, including the discretion to require no bond at all. *See Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 130 (D.D.C. 2025).

### **Legal Arguments**

<u>The Motion to Dissolve is Procedurally Improper as this Case Was Stayed.</u>

20. On October 31, 2025, this Court entered an order staying this case pending completion of mediation. ECF #16. Judge Huennekens, the appointed mediator, has not been formally advised that mediation has been terminated and no mediation report has been filed with this Court. Accordingly, the prior stay remains in effect. The Motion to Dissolve should be denied on that basis alone.

<u>The Motion to Dissolve is Factually Inaccurate.</u>

21. The Defendants contend that the prior D.C. Superior court decisions to not impose a bond "[appear] to be unprecedented for a non-governmental plaintiff in the Superior Court" and that those rulings "have created a prism whereby here is—as of present—no such security to shelter the losses of JPK, WCP, and SNL on account of a now-acknowledged ongoing 'deterioration'". Motion to Dissolve ¶¶ 11 and p. 8. Put another way, the Defendants effectively throw Judge Lee and Judge Scott under the bus for making what the Defendants characterize as "unprecedented" decisions to not impose a bond.

22. The Defendants' characterization of the Superior Court rulings as "unprecedented" is not supported by the record -- or by anything else. Both Judge Lee and Judge

6

Scott took care to review the injunctive relief factors, which all weighed heavily in favor of the Plaintiffs.  The failure of the Defendants to provide *any* evidence needed to support a bond amount decision was clearly noted by both judges in their orders.

<u>The Motion to Dissolve Otherwise Fails on the Merits.</u>

23.     The only evidence offered as support for the Moton to Dissolve is an email written by Mr. Negussie citing "deterioration" of the subject properties.  That email was sent by Mr. Negussie to apply some pressure for further settlement discussions.  A lone email sent for settlement purposes and without any other supporting facts is insufficient to show changed circumstances.

24.     The word "deterioration" can also mean many things depending upon the context, and there has been no evidence offered that show any actual decline in the value of either property as a result of any "deterioration".

25.     The request for a $2 million bond per Plaintiff is outrageous on its face.  Nowhere to be found in the Motion to Dissolve is any explanation for how the Defendants arrived at the $2 million figure, leaving the Court and the Plaintiffs guessing as to how that amount would be appropriate under the circumstances.

26.     The Motion to Dissolve also fails to move the needle as to the required balancing of the harms required under Rule 65.  "The basis of injunctive relief in the federal courts has always been irreparable harm." *See Jones,* 177 F. Supp. 3d at 545 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747, 313 U.S. App. D.C. 178 (D.C. Cir. 1995) (quoting *Sampson v. Murray,* 415 U.S. 61, 88, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974)) and *Trudeau v. FTC,* 384 F. Supp. 2d 281, 296-97 (D.D.C. 2005), *aff'd,* 456 F.3d 178, (D.C. Cir. 2006) (noting that a showing of irreparable harm is the sine qua non of the preliminary injunction inquiry.)).

27. The law considers property to be unique, so the fact that RE1 and 423 Kennedy could lose their interest in their respective properties via a foreclosure is sufficient to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury.").

28. The potential harms to RE1 and 423 Kennedy were also imminent when the injunctions were first issued since the foreclosure sales were already scheduled. *See. e.g., Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and not theoretical (citations and internal quotations omitted)…[t]he court must bear in mind whether the movant has substantiated the claim that irreparable injury is "likely" to occur.").

29. Two judges have already made findings of irreparable harm -- and that the Plaintiffs are likely to prevail on the merits. The prior orders speak clearly on those issues:

> At the onset, the Court found Mr. Negussie to be credible and credited his testimony in full. As to the first element, *certainly the deprivation of property is the one of the hallmarks of irreparable harms.* The Court noted that if the foreclosure went forward, the Plaintiff would lose its interests in the property and the improvements. The Court found that the likelihood of irreparable harm is significant and cannot be addressed through other means. Thus, the first element weighed in favor of the Plaintiff.

ECF #1-2, Page 1545 (lower right corner numbering) (Aug. 15, 2023 Hearing Order of Judge Scott). "The likelihood of irreparable harm for plaintiffs is significant and cannot be adequately addressed through other legal means". ECF #1-2, Page 1354 (lower right corner numbering) (July 24, 2023 Order of Judge Lee). The Motion to Dissolve completely fails to address these key issues.

8

30.     The Motion to Dissolve is yet another effort by the Defendants to use this Court as an appellate court to reverse Superior Court decisions that did not go their way.

31.     Finally, the Defendants are requesting an exorbitant bond amount -- untethered to any actual evidence of quantifiable damages -- that they know the Plaintiffs are incapable of posting.  A bond of that magnitude functions not as a protective device, but as a barrier to judicial review.  The fact that an exorbitant bond is being sought now, coupled with the fact that the Defendants delayed seeking any relief related to any bond for nearly three years, highlights the Defendants' real motives here:  (a) to foreclose on the properties at all cost; and (b) to retaliate against, and punish, Mr. Negussie for communicating with representatives of 1Sharpe.

## Conclusion

If the Court does not resolve the Motion to Dissolve on procedural grounds, the Motion should be denied because it fails on the merits.  The Defendants have not demonstrated changed circumstances, nor have they provided any evidence showing how and why a $2 million bond is appropriate.  The Defendants have also not addressed or challenged the prior findings of irreparable harm and likelihood of success on the merits.  For these reasons, and for any reasons that may be advanced at the upcoming hearing, the Court should deny the Motion to Dissolve.

Dated:  May 8, 2026

**DEVELOPER RE1, LLC AND 423 KENNEDY ST HOLDINGS, LLC,**

/s/ James D. Sadowski
James D. Sadowski (DC 446635)
Alexandria J. Smith (DC 1781067)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400;Fax: (202) 452-1410
Email: jds@gdllaw.com; ajs@gdllaw.com

9

8161\0002\4926-1640-4393.v3

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Email: jeremy.williams@kutakrock.com
*Co-Counsel for Developer RE1, LLC and*
*423 Kennedy St Holdings, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of May, 2026, a true copy of the foregoing Opposition was served electronically and a Notice of Electronic filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ James D. Sadowski
James D. Sadowski

8161\0002\4926-1640-4393.v3